1 | Robert M. Waxman (SBN 89754)
      rwaxman@ecjlaw.com
2 | David N. Tarlow (SBN 214050)
      dtarlow@ecjlaw.com
3 | Jason L. Haas (SBN 217290)
      jhaas@ecjlaw.com
4 | **ERVIN COHEN & JESSUP LLP**
    9401 Wilshire Boulevard, Ninth Floor
5 | Beverly Hills, California 90212-2974
    Telephone  (310) 273-6333
6 | Facsimile  (310) 859-2325

7 | Attorneys for Plaintiff VIZIO, INC., a California corporation

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10 |

11 | VIZIO, INC., a California corporation, | Case No. 8:17-1175

12 |            Plaintiff, | **COMPLAINT FOR:**
**1)  BREACH OF FRAMEWORK**
13 |      v. | **AGREEMENT;**
**2)  FRAUD UNDERLYING**
14 | LeECO V. LTD., an exempted | **FRAMEWORK AGREEMENT;**
company with limited liability | **3)  NEGLIGENT**
15 | incorporated under the laws of the | **MISREPRESENTATION**
Cayman Islands; LeECO GLOBAL | **UNDERLYING FRAMEWORK**
16 | HOLDING LTD., a/k/a LE GLOBAL | **AGREEMENT;**
GROUP LTD., a corporation organized | **4)  PROMISSORY ESTOPPEL;**
17 | and existing under the laws of the | **5)  RESCISSION OF THE**
People's Republic of China; and DOES | **FRAMEWORK AGREEMENT FOR**
18 | 1 through 10, | **FRAUD; AND**
**6)  BREACH OF MERGER**
19 |            Defendants. | **AGREEMENT; AND DEMAND**
**FOR JURY TRIAL**

20 |

21 |          Plaintiff VIZIO, INC., a California corporation ("VIZIO" or "Plaintiff"),

22 | submits this Complaint against Defendant LeECO V. LTD. ("LeEco"), an exempted

23 | company with limited liability incorporated under the laws of the Cayman Islands,

24 | and LeECO GLOBAL HOLDING LTD., aka LeECO GLOBAL GROUP LTD.,

25 | ("Global Holding"), a corporation organized and existing under the laws of the

26 | People's Republic of China; and DOES 1-10, inclusive, and alleges herein as

27 | follows:

28 |

14676.8:3242834.1

COMPLAINT

1

## COMMON ALLEGATIONS

2     1.     Plaintiff is a California corporation with its principal place of business

3 in Irvine, California, and is a well-known, worldwide leader engaged generally in

4 the business of consumer electronic sales, such as smart televisions, displays and

5 sound bars.

6     2.     Plaintiff is informed and believes, and thereon alleges, that Defendant

7 LeEco is an exempted company with limited liability incorporated under the laws of

8 the Cayman Islands with its principal place of business in Chaoyang District,

9 Beijing, P.R. China.

10     3.     Plaintiff is informed and believes, and based thereon alleges, that

11 Defendant Global Holding is a corporation organized and existing under the laws of

12 the People's Republic of China with its principal place of business in Chaoyang

13 District, Beijing, P.R. China.  Plaintiff is informed and believes, and based thereon

14 alleges that , Global Holding is the ultimate parent company of LeEco and is

15 engaged in the business of manufacturing and distributing electronics.

16     4.     Due to LeEco and Global Holding's status as foreign citizen

17 corporations organized and existing under the laws of the Cayman Islands and the

18 People's Republic of China, respectively, Plaintiff may be required to serve them

19 pursuant to the procedures established under the Hague Convention.

20     5.     Plaintiff is ignorant of the true names and capacities of the defendants

21 named herein as DOES 1 through 10, inclusive ("Doe Defendants") (collectively,

22 with all other Defendants whether named, added by Doe Amendment or otherwise

23 joined into the action shall hereinafter be referred to as "Defendants") and therefore

24 names said defendants by such fictitious names.  Plaintiff is informed and believes

25 and thereon alleges that the Doe Defendants are in some manner responsible to

26 Plaintiff for the wrongful conduct and occurrences alleged herein.  Plaintiff will

27 amend its Complaint to allege the true names and capacities of any fictitiously

28 named defendants once they have been ascertained.

ERVIN COHEN & JESSUP LLP

6.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was acting as an agent, representative, servant, partner, or employee of each of the other Defendants and was acting in the course and scope of such agency, employment and representation.  Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of each or any of the other Defendants as alleged herein.

## JURISDICTION, VENUE, TIMELINESS AND CHOICE OF LAW

7.     This Court has jurisdiction over this action due to a diversity of citizenship pursuant to 28 U.S.C. § 1332 because at all times relevant hereto Defendants, were and are corporations organized and existing under the laws of the Cayman Islands and the People's Republic of China, respectively, and all have their principal place of business in Beijing, P.R. China, whereas Plaintiff is a California corporation with its principal place of business in Irvine, California.  The amount in controversy exceeds $75,000,000 exclusive of interest and costs.

8.     Venue in the above-entitled Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District, namely the failure to pay monies due and owing to VIZIO.

## FACTUAL ALLEGATIONS

A.   **THE MERGER REPRESENTATIONS**

9.     Starting in or about December 2015, and continuing through and including approximately July 6, 2016, (the "Serious Negotiations Period"), VIZIO, by and through William Wang, ("Wang"), its Chief Executive Officer, Ben Wong ("Wong"), its President, and Kurt Binder ("Binder"), its Chief Financial Officer, among others, entered into serious negotiations over the phone, electronically and in person at Irvine, California, and Beijing, People's Republic of China, with Global

3

COMPLAINT

Holding, by and through, among others, Yueting Jia ("JIA"), the Chairman of the Board and then Chief Executive Officer of Global Holding, Winston Cheng ("Cheng"), its Sr. Vice President of Finance, and Charles Hsieh ("Hsieh"), a director of Global Holding, for the merger of VIZIO with LeEco and Merger Sub.

10. Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it, prior to, and during the Serious Negotiations Period, Global Holding and its extended subsidiary or affiliated corporate entities were experiencing severe cash flow and financial problems. Plaintiff is further informed and believes, and based thereon alleges, that during the Serious Negotiations Period, Global Holding, through, inter alia, JIA, represented to one or more of Wong, Binder, and/or Wang, among others, over the phone, electronically and in person at Irvine, California, and Bejing, People's Republic of China, that Global Holding and various of its subsidiary or affiliated corporate entities, were financially healthy and that they had the financial wherewithal to complete a $2,000,000,000.00, merger transaction with VIZIO (the "$2BB Financial Wherewithal Representations").

11. Plaintiff is informed and believes, and based thereon alleges, that the $2BB Financial Wherewithal Representations were false at the time that they were made, and that Defendants, and each or either of them, knew that they were false and that they did not have the financial wherewithal to complete a $2BB merger with VIZIO.

12. Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it, at the time that $2BB Financial Wherewithal Representations were made, Global Holding and its far-flung corporate empire had begun to collapse due to their severe cash flow and financial problems, and that they desperately needed to either obtain the instant financial stability, credibility and resources that a merger with VIZIO would bring, or at least to create a widespread and dramatic public impression of their own financial health and well-being to grow or continue in business that would come with the announcement of such an intended merger.

13.     Plaintiff is informed and believes, and based thereon alleges, that Global Holding and/or various of its subsidiary or affiliated corporate entities then concocted a secret plan at or about that time to (a) use a publicly announced intended merger with VIZIO to gain or try to obtain access to VIZIO's large corporate customers and key decision makers threat for their own purposes and by means of confidential customer information that had been developed by VIZIO at substantial cost, time and expense, and (b) create a false widespread public impression of their own financial health during the Serious Negotiations Period and beyond, with Defendants making the $2BB Financial Wherewithal Representations to further that secret plan, and intending to induce Plaintiff to enter into such a merger agreement and provide LeEco with access to VIZIO's confidential customer information, including contact information, account history, purchasing needs or requirements, contract terms, and the like.

B.     **THE MERGER AGREEMENT**

14.     On or about July 6, 2016, VIZIO, on the one hand, and LeEco, on the other hand, as well as two other corporate entities named Le V Merger Sub, Inc. ("Merger Sub") and Shareholder Representative Services LLC ("SRS") entered into a written agreement entitled Agreement and Plan of Merger (hereinafter the "Merger Agreement").

15.     Plaintiff is informed and believes, and based thereon alleges, that between the date that the Merger Agreement was executed until its termination by VIZIO as set forth below, LeEco obtained access to VIZIO's confidential client information such as contact information, account history, purchasing needs and requirements, contract terms and the like, and then used that confidential customer information strictly for its own purposes and/or for various of its ultimate parent, affiliated or subsidiary corporate entities.

16.     Section 11.7 of the Merger Agreement provides that the internal laws of the State of California govern the Merger Agreement and any claims or

5

COMPLAINT

controversies relating to it.

17.     Section 11.8 of the Merger Agreement provides for exclusive jurisdiction and venue in the Santa Ana Branch of the Orange County Superior Court and/or the Southern Division of the United States District Court for the Central District of California in any action or proceeding relating to the Merger Agreement and the transactions contemplated thereunder.

18.     Pursuant to Section 9.2 of the Merger Agreement, in the event that the Merger Agreement was terminated by VIZIO pursuant to any of "Section 9.1(b)(ii) (Buyer's (LeEco) or Merger Sub's Breach of Representations and Warranties); (ii) Section 9.1(c)(ii) (Buyer's (LeEco) or Merger Sub's Breach of Covenants or Agreements); (iii) Section 9.1(d) (End Date), and/or immediately prior to such termination, the conditions in Section 7.1(d) (PRC Regulatory Approvals) have not been satisfied primarily due to Buyer's (LeEco) or Merger Sub's failure to have available sufficient cash on hand, together with Committed Financing, to consummate the Merger and the other transactions contemplated by this Agreement, and to perform their respective obligations under this Agreement; or (iv) Section 9.1(f) (Buyer's (LeEco) Failure to Close) (Each a Qualifying Buyer (LeEco) Termination"), then Buyer (LeEco) shall pay, or cause to be paid, the Buyer Termination Fee to the Company."

19.     Pursuant to Section 10.2 of the Merger Agreement, "'Buyer Termination Fee' means the Buyer Termination Fee Deposit plus the Buyer Termination Fee Remainder."

20.     Pursuant to Section 10.2 of the Merger Agreement, "'Buyer Termination Fee Deposit' means the amount of fifty million dollars ($50,000,000.00) that Plaintiff is informed and believes, and based thereon alleges, was deposited into escrow on or about the signing of the Merger Agreement by Global Holding and/or various of its subsidiary or affiliated corporate entities pursuant to the terms of the Merger Agreement and under Section 9.2(b) of the

Merger Agreement is to be automatically released by escrow and paid directly to Plaintiff upon written notice from VIZIO of its termination of the Merger Agreement as a result of a Qualifying Buyer Termination unless the Escrow Agent has received an Order issued by a Governmental Entity of competent jurisdiction or has received joint instructions from LeEco and Plaintiff to do otherwise.

21.     Pursuant to Section 10.2 of the Merger Agreement, "'Buyer Termination Fee Remainder', means the amount of fifty million dollars ($50,000,000.00)" that under Section 9.2(b) of the Merger Agreement is also to be paid directly to VIZIO by LeEco through wire transfer within three (3) business days following the occurrence of a closing or a valid termination of the Merger Agreement by VIZIO as a result of a Qualifying Buyer Termination.

22.     Plaintiff relied on the $2BB Financial Wherewithal Representations to enter into the Merger Agreement, and to permit LeEco to obtain access to VIZIO's confidential client customer information as set forth above.  VIZIO's reliance was reasonable since it had no means to discover either the falsity of the $2BB Financial Wherewithal Representations at the time they were made, nor the secret plan concocted by Global Holding and/or various of its subsidiary or affiliated corporate entities to (a) use a publicly announced intended merger with VIZIO to gain or try to obtain access to VIZIO's large corporate customers and key decision makers thereat for their own purposes and by means of the confidential customer information that had been developed by VIZIO at substantial cost, time, and expense, and (b) create a false widespread public impression of their own financial health and well-being. Indeed, Section 6.8 of the Merger Agreement justifies such reliance by VIZIO since it is consistent with the $2BB Financial Wherewithal Representations and provides that there were no financial contingencies to the obligations of LeEco and Merger Sub.

C.     **THE ESCROW AGREEMENT**

23.     Plaintiff is informed and believes, and based thereon alleges, that

ERVIN COHEN & JESSUP LLP

1    concurrently with the execution of the Merger Agreement, VIZIO, LeEco, and SRS

2    entered into an Escrow Agreement ("the Escrow Agreement") with the Los Angeles

3    office of Citibank, National Association ("CNB") as Escrow Agent ("the CNB

4    escrow").  Plaintiff is further informed and believes, and based thereon alleges, that

5    consistent with the terms of the Merger Agreement, the $50,000,000 Buyer

6    Termination Fee Deposit was, among other things, deposited into that escrow by

7    Global Holding and/or various of its subsidiary or affiliated corporate entities.

8           24.    Section 4(a)(iii) of the Escrow Agreement largely tracks the terms of

9    Section 10.2 of the Merger Agreement as described in paragraph 20 of this

10   Complaint with respect to the release and payment of the $50,000,000 Buyer

11   Termination Fee Deposit directly to VIZIO, albeit a joint written notice from VIZIO

12   and LeEco to CNB is listed in the Escrow Agreement as a trigger for any such

13   disbursement.  However, Section 4(a)(iv) of the Escrow Agreement also provides

14   that in any event CNB can distribute the $50,000,000 Buyer Termination Fee

15   Deposit consistent with the terms of a Final Determination made by a court of

16   competent jurisdiction.

17          25.    Section 5 of the Escrow Agreement provides that to the extent

18   practicable, the Escrow Agent is not to be made a party to any litigation involving

19   disputes between the parties.

20   D.     **BREACH AND TERMINATION OF THE MERGER AGREEMENT**

21          26.    On January 6, 2017, the merger deadline for the consummation of the

22   merger under the terms of the Merger Agreement was extended by the parties in

23   writing to April 6, 2017.

24          27.    Plaintiff is informed and believes, and based thereon alleges, that

25   LeEco breached the Merger Agreement.  These breaches by LeEco are tied to

26   specific terms of the Merger Agreement and include, inter alia:

27          a.     The failure of LeEco to use its reasonable best efforts "to
            consummate and make effective, in the most expeditious manner
28          practicable, the Merger" as required by Section 5.3 of the Merger

ERVIN COHEN & JESSUP LLP

Agreement.

b.     The failure of Le Eco to use its reasonable best efforts to satisfy "on a timely basis all conditions precedent to funding under the Equity Commitment Letters…and in any Debt Financing Document," and to then "promptly notify [VIZIO] of such Financing Failure Event and…, the reasons therefore," coupled with its failure to "use…reasonable best efforts to obtain alternative financing…as promptly as practicable following the occurrence of such event" as required by Section 5.8 of the Merger Agreement.

c.     The concomitant failure of Le Eco to give Plaintiff "prompt notice of any breach, repudiation or threatened breach or repudiation by any party to the Equity Commitment Letters or any Debt Financing Documents" and to "provide [VIZIO] with a copy of, a new financing commitment" as required by Section 5.8 of the Merger Agreement.

d.     Acts taken by LeEco and/or its Affiliates "to amend, modify, supplement, restate, assign, substitute or replace any of the Equity Commitment Letters or any Debt Financing Document…without the consent of [VIZIO], particularly since such amendments, modifications, supplements, restatements, assignments, substitutions, replacements or waivers…resulted in a net reduction in the aggregate amount of the Financing…[or], imposed "new conditions on funding"…[and/or] expanded, amended, or modified any provision of the Equity Commitment Letters, in a manner that would be reasonably expected to…materially delay or prevent the funding in full of the Financing" contrary to Section 5.8 of the Merger Agreement.

e.     The failure of LeEco to "promptly prepare, file, effect and obtain as soon as reasonably practicable all Consents necessary to obtain from any person including from any Governmental Entity in order to consummate the Merger" and its concomitant failure to "prepare and file all filings required to obtain the PRC Overseas Investment Approvals as promptly as practicable" as required by Section 5.4(a) of the Merger Agreement.

f.     The failure of LeEco to (i) "promptly inform [VIZIO] of any material communication from…any…Governmental Entity", (ii) give VIZIO "reasonable advanced notice of all meetings or planned communications with any Governmental Entity", (iii) give VIZIO an opportunity to participate in each of such meetings or communications, (iv) keep VIZIO promptly apprised with respect to any material oral communications with any Governmental Entity, (v) provide VIZIO with a reasonable advance opportunity to review and comment upon…all material written communications…and planned oral communication with a Governmental Entity regarding the Merger and (vi) provide VIZIO with copies of "all written communications to or from any Governmental Entity relating to the Merger" as required by Section 5.4(d) of the Merger Agreement.

28.     Subsequent to LeEco's breaches of the Merger Agreement as set forth above, and on or about March 30, 2017, Plaintiff served a written Termination of

ERVIN COHEN & JESSUP LLP

Merger Agreement (the "Termination Notice") on LeEco, among others, through LeEco Global Group Ltd., aka now as Global Holding, as required by Section 11.6 of the Merger Agreement, which triggered the Buyer Termination Fee provisions of the Merger Agreement. The Termination Notice described each such breach in detail.

29. Plaintiff is informed and believes, and based thereon alleges, that as a further and separate breach of the Merger Agreement, LeEco was not in position to be able to close or consummate the merger by the mutually agreed extended date of April 6, 2017 due to its failure to have sufficient cash on hand, together with committed financing, as required by the Merger Agreement. This additional and further breach of the Merger Agreement was also included in the Termination Notice and is likewise described in detail therein.

30. Plaintiff is informed and believes, and based thereon alleges, that none of the breaches of the Merger Agreement by LeEco were cured. Plaintiff is further informed and believes, and based thereon alleges, that in any event, such breaches were not capable of being cured by LeEco. Accordingly, the merger was not consummated.

E. **THE FRAMEWORK AGREEMENT**

31. Shortly after receipt of the Termination Notice, Global Holding and LeEco, by and through, inter alia, JIA, discussed with Plaintiff by and through Wong and/or Wang, among others, that the parties mutually terminate the Merger Agreement, with specified carve outs or exceptions, and that going forward, VIZIO and LeEco form a joint venture distributorship for operation in the People's Republic of China, a primary purpose of which would be to promote, market and sell VIZIO branded devices, such as televisions, displays and sound bars through LeEco's distributing/Omni channels in China ("the Sales JV"). LeEco and Global Holding by and through, inter alia, JIA, then ultimately promised Wong and/or Wang, among others, that in consideration for VIZIO's agreement to, inter alia,

10

COMPLAINT

1  jointly terminate the Merger Agreement subject to specified carve outs or

2  exceptions, and forgo immediate payment of the $100,000,000 Buyer Termination

3  Fee, LeEco would (a) cause joint escrow instructions to be prepared and signed in

4  order to release from the CNB escrow the sum of $40,000,000 which would be paid

5  directly to VIZIO from the Buyer Termination Fee Deposit upon the signing of a

6  Framework, Termination and Mutual General Release Agreement between or

7  among VIZIO and LeEco; (b) cause the remaining $10,000,000 of the Buyer

8  Termination Fee Deposit to be released from that escrow and paid directly to VIZIO

9  upon the execution within 45 days of a joint venture distributorship agreement for

10 the Sales JV between VIZIO and LeEco - - but that if no such joint venture

11 distributorship agreement was so signed within that 45 day time frame - - then

12 nevertheless have that $10,000,000 sum released from the CNB escrow and paid

13 directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit

14 provisions of the Merger Agreement; and (c) contribute capital in the form of non-

15 cash assets to the Sales JV with a verified fair market value of at least

16 $50,000,000.00.  In other words, the Defendants were promising to pay to VIZIO an

17 amount equal to the $100,000,000 Buyer Termination Fee, albeit the former Buyer

18 Termination Fee Remainder in the sum of $50,000,000 would now be in the form of

19 a capital contribution from LeEco to the Sales JV which would also benefit VIZIO.

20      32.      Plaintiff is informed and believes, and based thereon alleges, that the

21 promises described in subparts (b) and (c) of paragraph 31 of this Complaint were

22 false at the time they were made and that Defendants made these promises with

23 knowledge of their falsity and the intent to induce VIZIO to, inter alia, jointly

24 terminate the Merger Agreement subject to specified exceptions or carve outs and

25 forego immediate payment of the $100,000,000 Buyer Termination Fee, and enter

26 into a Framework, Termination and Mutual Release Agreement with LeEco.

27      33.      In reliance on the false promises of Global Holding and LeEco

28 described in Paragraph 31 of this Complaint, VIZIO agreed to, and did enter into a

ERVIN COHEN & JESSUP LLP

Framework, Termination and Mutual General Release Agreement with LeEco and Merger Sub on or about April 5, 2017 (the "Framework Agreement").

34.     Although the Merger Agreement was terminated by the Termination Notice with the exception of, inter alia, the Buyer Termination Fee provisions, Section 1.1 of the Framework Agreement provides for the further joint termination of the Merger Agreement subject to specified carve outs or exceptions, concurrent with the release from the CNB escrow and direct payment to VIZIO of $40,000,000 from the Buyer Termination Fee Deposit.

35.     That $40,000,000 sum was released from the CNB escrow and paid directly to VIZIO concurrently with the execution of the Framework Agreement. Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently with the execution of the joint venture distribution agreement for the Sales JV within 45 days from signature of the Framework Agreement and VIZIO's concomitant receipt of the $40,000,000 portion of the Buyer Fee Termination Deposit.  However, notwithstanding the foregoing, Section 1.1 of the Framework Agreement specifically carves out and creates an exception for the terms of the Merger Agreement governing the release of the remaining Buyer Termination Fee Deposit, i.e., the $10,000,000 sum.  In other words, the Framework Agreement expressly carved out and left fully intact the provisions of the Merger Agreement governing the release and payment of that $10,000,000 sum.

36.     Section 3 of the Framework Agreement requires that VIZIO and LeEco negotiate in good faith and use reasonable efforts to reach further or additional terms as to a commercial relationship between them in the form of a joint venture distributorship (i.e., the Sales JV) to be owned 50/50 and under which, inter alia, (a) VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably competitive rates with the Sales JV, in turn, to have the exclusive right to distribute

and sell VIZIO-branded devices in the People's Republic of China during the initial term, and (b) LeEco to contribute in the form of capital to the Sales JV non-cash assets with a verified fair market value equal to $50,000,000.  Section 4 of the Framework Agreement likewise requires the parties to negotiate in good faith and execute one or more agreements to, among other things, document the Sales JV within 45 days from the signing of the Framework Agreement and receipt by VIZIO of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April 5, 2017, i.e., May 20, 2017.

37.     Plaintiff is informed and believes, and based thereon alleges, that as a result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to negotiate additional or further terms as well as to execute the joint venture distributorship agreement and document the Sales JV, and (b) the express exception carved out in in Section 1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the execution of a joint venture distribution agreement between VIZIO and LeEco and/or that any such joint venture distribution agreement was somehow a condition to the release and payment of that $10,000,000 sum, the Defendants have prevented the fulfillment of the alleged condition or performance of that term and cannot rely

1    on same to defeat their liability thereon as set forth more fully below.

2        38.    Section 9.4 of the Framework Agreement provides that any claims or

3    controversies relating to the Framework Agreement are to be governed by the

4    internal laws of the State of California.  VIZIO is informed and believes, and based

5    thereon alleges, that the Framework Agreement and the joint venture distribution

6    agreement are therefore, subject to, inter alia, the provisions of the California

7    Commercial Code governing the sale of goods.

8        39.    Section 9.6 of the Framework Agreement provides for exclusive

9    jurisdiction and venue in the Orange County Superior Court and/or the Southern

10   Division of the United States District Court for the Central District of California for

11   any actions or proceedings related to the Framework Agreement.

12       40.    Section 7.9 of the Framework Agreement requires each party to execute

13   any further and additional documents that are reasonable and necessary to carry out

14   the provisions of the Framework Agreement.  Similarly, Section 9.8 of the

15   Framework Agreement reflects that irreparable damage will occur if any provisions

16   thereof are breached or not performed in accordance with their specific terms and

17   provides, among other things, for specific performance of the terms of the

18   Framework Agreement.

19   F.    **BREACH OF THE FRAMEWORK AGREEMENT**

20       41.    Shortly after the parties executed the Framework Agreement and

21   continuing thereafter, VIZIO made repeated efforts to communicate with and

22   negotiate further or additional terms of the Sales JV with LeEco, among others,

23   consistent with the Framework Agreement, including preparing and tendering a

24   draft thereof to, inter alia, LeEco.  Those efforts fell on deaf ears.  VIZIO's efforts

25   were met with practical radio silence notwithstanding that the 45 day time limit

26   imposed with regard thereto under Section 4 of the Framework Agreement, i.e., May

27   20, 2017, has come and gone.

28       42.    From and after the execution of the Framework Agreement, the

14

COMPLAINT

Defendants have failed and refused to participate in any substantive negotiations whatsoever under or pursuant to the Framework Agreement, let alone in good faith during the mandatory 45 day time limit or otherwise.  The Defendants have not used any efforts, let alone reasonable efforts to form any sort of commercial joint-venture distributorship agreement with VIZIO within the required 45 day time limit and beyond.

43.     Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it and at the time Defendants made the promises described in subparts (b) and (c) of Paragraph 31 of this Complaint and then executed the Framework Agreement, they had no intention to pay VIZIO the $10,000,000 remaining portion of the Buyer Termination Fee Deposit under the terms of the Merger Agreement or the Framework Agreement, nor did Defendants intend to execute a joint venture distributorship agreement with VIZIO and/or fund same with a capital contribution of $50,000,000 in verified non-cash assets, let alone participate in any negotiations related thereto, whether in good faith or otherwise. Instead, Plaintiff is further informed and believes, and based thereon alleges, that Defendants knowingly and secretly intended to do none of these things at that time and merely engaged in a subterfuge to try to reduce their liability from the $100,000,000 Buyer Termination Fee to the $40,000,000 sum that was released from the CNB escrow and paid directly to VIZIO concurrently with the Framework Agreement.

44.     Plaintiff relied on the promises described in Paragraph 31 of this Complaint and the concomitant execution of the Framework Agreement to, inter alia, enter into the Framework Agreement and, among other things, ostensibly forego immediate payment of the entire Buyer Termination Fee as would otherwise have been required under the Merger Agreement.  VIZIO's reliance was reasonable since it had no means to discover either the falsity of the promises described in Paragraph 31 of this Complaint at the time that they were made nor the secret

1  intention of Defendants not to perform as set forth in Paragraph 43 of this

2  Complaint.

3      45.    Plaintiff would not have entered into the Framework Agreement had it

4  known of the falsity of the promises described in paragraph 31 of this Complaint at

5  the time that they were made, nor the secret intention of Defendants not to perform

6  as set forth in paragraph 43 of this Complaint.  Plaintiff is further informed and

7  believes, and based thereon alleges, that it has suffered reliance and/or lost

8  opportunity damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining

9  portion of the Buyer Termination Fee Deposit and the $50,000,000 Buyer

10 Termination Fee Remainder) as a direct and proximate result of the false promises

11 alleged in paragraph 31 of this Complaint, together with the false representations

12 and promises made by Defendants to induce VIZIO to enter into the Framework

13 Agreement and the Defendants' failure, *inter alia*, to participate in the negotiations

14 required thereunder, whether in good faith or otherwise.

15 G.    **DEMANDS FOR PAYMENT**

16     46.    On June 9, 2017, Plaintiff sent a demand for payment ("the June 9

17 Payment Demand") to LeEco and LeEco Global Group Ltd., aka now as Global

18 Holding, in the manner set forth in the Framework Agreement and the Merger

19 Agreement.  This demand letter detailed Defendants' fraudulent conduct and

20 concomitant breach of the Framework Agreement, as well as LeEco's breach of the

21 Merger Agreement, while at the same time describing their complete failure to

22 negotiate further and additional terms of the Sales JV - - whether in good faith or

23 otherwise - - let alone to memorialize the Sales JV within the required 45 day time

24 limit despite repeated oral and written overtures, requests and instructions from

25 VIZIO with regard thereto, including submission of a draft joint venture agreement

26 to Defendants.

27     47.    The June 9 Payment Demand stated in pertinent part that "since the

28 terms of the Buyer Termination Fee Deposit remain in effect and in any event

ERVIN COHEN & JESSUP LLP

LeEco has prevented performance, the remaining $10,000,000 Buyer Termination Fee Deposit must be released from escrow and paid to VIZIO forthwith." Indeed, to facilitate that payment, the June 9 Payment Demand also enclosed Joint Written Instructions to be signed and returned by LeEco. No such signed Joint Written Escrow Instructions were returned by LeEco.

48. The June 9 Payment Demand also explained that LeEco's failure to release and pay the remaining $10,000,000 of the Buyer Termination Fee Deposit was just the tip of the iceberg. It described at length that LeEco has neither paid the $50,000,000 Buyer Termination Fee Remainder to VIZIO nor has LeEco executed the required joint venture distribution agreement, let alone funded the Sales JV with a capital contribution of $50,000,000 in verified non-cash assets. Accordingly, the June 9 Payment Demand then demanded that LeEco pay directly to VIZIO the $50,000,000 Buyer Termination Fee Remainder.

49. LeEco has failed and refused to comply with the June 9 Payment Demand. As a result, on June 11, 2017, Plaintiff delivered an instruction (the "June 11 Instruction") to CNB notifying the Escrow Agent of the breaches discussed above and demanding that it release payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit in accordance with terms of Section 9.2(b) of the Merger Agreement and Section 1.1 of the Framework Agreement. CNB has neither responded to the June 11 Instruction, nor has it released and paid the remaining $10,000,000 portion of the Buyer Termination Fee Deposit directly to VIZIO.

50. On June 22, 2017, Global Holding finally responded (the "Global Holding Response") to the June 9 Payment Demand and the June 11 Instruction. Global Holding therein compounded its misconduct by actually instructing the Escrow Agent to refrain from releasing and paying the remaining $10,000,000 portion of the Buyer Termination Fee Deposit directly to VIZIO.

51. Plaintiff replied to the Global Holding Response on June 23, 2017.

1  Among other things, Plaintiff explained that Global Holding had compounded its

2  unlawful conduct by denying that the $10,000,000,000 in the CNB escrow should be

3  immediately released to VIZIO and instructing the Escrow Agent to refrain from so

4  releasing that sum.  Plaintiff then reiterated the demands made in, inter alia, the June

5  9 Payment Demand, the June 11 Instruction, while continuing to stand by the

6  Termination Notice.

7       52.    Section 8 of the Framework Agreement provides under certain

8  circumstances for the recovery of all costs and expenses, including reasonable

9  attorneys' fees, with respect to various claims brought or maintained in connection

10  with the Framework Agreement.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (BREACH OF THE FRAMEWORK AGREEMENT)

13       AS AND FOR A FIRST CLAIM FOR RELIEF BY VIZIO FOR BREACH

14  OF THE FRAMEWORK AGREEMENT AGAINST DEFENDANTS, AND EACH

15  OF THEM, PLAINTIFF ALLEGES AS FOLLOWS:

16       53.    VIZIO restates, realleges and incorporates paragraphs 1-52 as if fully

17  set forth herein.

18       54.    Plaintiff is informed and believes, and based thereon alleges, that at all

19  relevant times there existed a unity of interest and ownership between Global

20  Holding and LeEco, such that LeEco is the alter ego of Global Holding.  Plaintiff is

21  further informed and believes, and based thereon, alleges that adherence to the

22  fiction of the separate existence of LeEco and Global Holding would permit an

23  abuse of the corporate privilege and promote injustice by protecting Global Holding

24  from liability for the wrongful acts committed by it through or under the name of

25  LeEco.

26       55.    On or about April 5, 2017, VIZIO and LeEco entered into the

27  Framework Agreement.

28       56.    Plaintiff has performed each of the obligations required under the

ERVIN COHEN & JESSUP LLP

18

COMPLAINT

Framework Agreement, except for those obligations that have been waived or which it has otherwise been excused from performing due to Defendants' breach of the Framework Agreement.

57.     Plaintiff is informed and believes, and based thereon alleges, that Defendants have breached the terms of the Framework Agreement, by among other things, failing to:

(a)     Participate in any negotiations whatsoever under or pursuant to the Framework Agreement, let alone in good faith within the required 45 day time limit;

(b)     Use any efforts, let alone reasonable efforts, to further execute or memorialize the commercial distribution joint-venture relationship under or pursuant to the Framework Agreement within the required 45 day time limit;

(c)     Execute or memorialize the Sales JV under or pursuant to the Framework Agreement within the required 45 day time limit;

(d)     Release from escrow and pay directly to VIZIO the remaining $10,000,000 of the Buyer Termination Fee Deposit;

(e)     Pay VIZIO the $50,000,000 Buyer Termination Fee Remainder and/or to fund the Sales JV with a capital contribution in the form of non-cash assets having a verified fair market value of $50,000,000.

58.     Plaintiff relied on the promises described in paragraph 31 of this Complaint and the concomitant execution of the Framework Agreement, to inter alia, enter into the Framework Agreement and ostensibly forego immediate payment of the entire Buyer Termination Fee as would otherwise have been required under this Merger Agreement.  VIZIO's reliance was reasonable since it had no means to discover either the falsity of the proposal and promises described in paragraph 31 of this Complaint at the time that they were made, nor the secret intention of Defendants not to perform as set forth in paragraph 43 of this Complaint.

59.     Plaintiff would not have entered into the Framework Agreement had it

ERVIN COHEN & JESSUP LLP

known of the falsity of the promises described in Paragraph 31 of this Complaint at the time that they were made, nor the secret intention of Defendants not to perform as set forth in Paragraph 43 of this Complaint.

60.    Plaintiff is informed and believes, and based thereon alleges, that Defendants have also breached the implied covenant of good faith and fair dealing which is implied in all contracts, in the acts taken above, which have substantially deprived Plaintiff of material fruits and benefits of the Framework Agreement.

61.    Plaintiff is informed and believes, and based thereon alleges, that it has suffered reliance and/or lost opportunity damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee Deposit and the $50,000,000 Buyer Termination Fee Remainder) as a direct and proximate result of the false promises alleged in paragraph 31 of this Complaint, together with the false representations and promises made by Defendants to induce VIZIO to enter into the Framework Agreement and the Defendants' failure, *inter alia*, to participate in the negotiations required thereunder, whether in good faith or otherwise, during the required 45 day time limit and beyond.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (FRAUD UNDERLYING THE FRAMEWORK AGREEMENT)

AS AND FOR A SECOND CLAIM FOR RELIEF BY VIZIO FOR FRAUD AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES AS FOLLOWS:

62.    Plaintiff restates, realleges and incorporates paragraphs 1-52, and 54-61 as if fully set forth herein.

63.    Shortly after receipt of the Termination Notice, Defendants Global Holding and LeEco, by and through, inter alia, JIA, contacted VIZIO by and through Wong and/or Wang, among others, to discuss that the parties mutually terminate the Merger Agreement with specified carve outs or exceptions, and that going forward, VIZIO and LeEco form a joint venture distributorship for operation

ERVIN COHEN & JESSUP LLP

in the People's Republic of China, a primary purpose of which would be to promote, market and sell VIZIO branded devices, such as televisions, displays and sound bars through LeEco's distributing/Omni channels in China.  LeEco and Global Holding by and through, inter alia, JIA, then ultimately promised Wong and/or Wang, among others, that in consideration for VIZIO's agreement to, inter alia, jointly terminate the Merger Agreement with LeEco subject to specified carve outs or exceptions, and forgo immediate payment of the $100,000,000 Buyer Termination Fee, LeEco would (a) cause joint escrow instructions to be prepared and signed in order to release from the CNB escrow the sum of $40,000,000 which would be paid directly to VIZIO from the Buyer Termination Fee Deposit upon the signing of a Framework, Termination and Mutual General Release Agreement between or among VIZIO and LeEco; (b) cause the remaining $10,000,000 of the Buyer Termination Fee Deposit to be released from that escrow and paid directly to VIZIO upon the execution within 45 days of a joint venture distributorship agreement for the Sales JV between VIZIO and LeEco - - but that if no such joint venture distributorship agreement was so signed within that 45 day time frame - - then nevertheless have that $10,000,000 sum released from the CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit provisions of the Merger Agreement; and (c) contribute capital in the form of non-cash assets to the Sales JV with a verified fair market value of at least $50,000,000.00.  In other words, the Defendants were promising to pay to VIZIO an amount equal to the $100,000,000 Buyer Termination Fee, albeit the former Buyer Termination Fee Remainder in the sum of $50,000,000 would now be in the form of a capital contribution from LeEco to the Sales JV, which would also benefit VIZIO.

64.     Plaintiff is informed and believes, and based thereon alleges, that the promises described in subparts (b) and (c) of paragraph 63 of this Complaint were false at the time that they were made and that Defendants made these promises with knowledge of their falsity and the intent to induce VIZIO to, inter alia, terminate the

Merger Agreement subject to specified exceptions or carve outs, forego immediate payment of the $100,000,000 Buyer Termination Fee and enter into a Framework Termination and Mutual General Release Agreement with LeEco.

65.    In reliance on the false promises of Global Holding and LeEco described in Paragraph 63 of this Complaint, VIZIO agreed to, and did enter into the Framework Agreement with LeEco on or about April 5, 2017.

66.    Although the Merger Agreement was terminated by the Termination Notice with exception of, inter alia, the Buyer Termination Fee provisions, Section 1.1 of the Framework Agreement provides for the further joint termination of the Merger Agreement subject to specified carve outs or exceptions, concurrent with the release from the CNB escrow and direct payment to VIZIO of $40,000,000 from the Buyer Termination Fee Deposit.

67.    That $40,000,000 sum was released from the CNB escrow and paid directly to VIZIO concurrently with the execution of the Framework Agreement. Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently with the execution of the joint venture distribution agreement for the Sales JV within 45 days from signature of the Framework Agreement and VIZIO's concomitant receipt of the $40,000,000 portion of the Buyer Termination Fee Deposit. However, notwithstanding the foregoing, Section 1.1 of the Framework Agreement specifically carves out and creates an exception for the terms of the Merger Agreement governing the release of the remaining Buyer Termination Fee Deposit, i.e., the $10,000,000 sum. Stated differently, the Framework Agreement expressly carved out and left fully intact the provisions of the Merger Agreement governing the release and payment of that $10,000,000 sum.

68.    Section 3 of the Framework Agreement requires that VIZIO and LeEco negotiate in good faith and use reasonable efforts to reach further or additional terms

as to a commercial relationship between them in the form of a joint venture distributorship (i.e., the Sales JV) to be owned 50/50 and under which, inter alia, (a) VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably competitive rates with the Sales JV, in turn, to have the exclusive right to distribute and sell VIZIO-branded devices in the People's Republic of China during the initial term, and (b) LeEco to contribute in the form of capital to the Sales JV non-cash assets with a verified fair market value equal to $50,000,000.  Section 4 of the Framework Agreement likewise requires the parties to negotiate in good faith and execute one or more agreements to, among other things, document the Sales JV within 45 days from the signing of the Framework Agreement and receipt by VIZIO of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April 5, 2017, i.e., May 20, 2017.

69.     Plaintiff is informed and believes, and based thereon alleges, that as a result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to negotiate additional or further terms as well as execute the joint venture agreement and to document the Sales JV, and (b) the express exception carved out in Section 1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff, with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the

1  execution of a joint venture distribution agreement between VIZIO and LeEco

2  and/or that any such joint venture distribution agreement was somehow a condition

3  to the release and payment of that $10,000,000 sum, the Defendants have prevented

4  the fulfillment of the alleged condition or performance of that term and cannot rely

5  on same to defeat their liability thereon.

6      70.    Shortly after the parties executed the Framework Agreement and

7  continuing thereafter, VIZIO made repeated efforts to communicate with and

8  negotiate further or additional terms of the Sales JV with LeEco consistent with the

9  Framework Agreement, including preparing and tendering a draft thereof to LeEco.

10  Those efforts fell on deaf ears.  VIZIO's efforts were met with practical radio

11  silence notwithstanding that the 45 day time limit imposed with regard thereto under

12  Section 4 of the Framework Agreement, i.e., May 20, 2017, has come and gone.

13      71.    From and after the execution of the Framework Agreement, the

14  Defendants have failed and refused to participate in any substantive negotiations

15  whatsoever under or pursuant to the Framework Agreement, let alone in good faith

16  during the 45 day time limit or otherwise.  The Defendants have not used any

17  efforts, let alone reasonable efforts to form any sort of commercial joint-venture

18  distributorship agreement with VIZIO within the 45 day time limit and beyond.

19      72.    Plaintiff is informed and believes, and based thereon alleges, that

20  unbeknownst to it and at the time Defendants made the promises described in

21  Paragraph 63 of this Complaint and then executed the Framework Agreement, they

22  had no intention to pay VIZIO the $10,000,000 remaining portion of the Buyer

23  Termination Fee Deposit under the terms of the Merger Agreement or the

24  Framework Agreement, nor did Defendants intend to execute a joint venture

25  distributorship agreement with VIZIO and/or fund same with a capital contribution

26  of $50,000,000 in verified non-cash assets, let alone participate in any negotiations

27  related thereto, whether in good faith or otherwise.  Instead, Plaintiff is further

28  informed and believes, and based thereon alleges, that Defendants knowingly and

24

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   secretly intended to do none of these things at that time and merely engaged in a

2   subterfuge to try to reduce their liability from the $100,000,000 Buyer Termination

3   Fee to the $40,000,000 sum that was released from the CNB escrow and paid

4   directly to VIZIO concurrently with the Framework Agreement.

5        73.    Plaintiff relied on the promises described in Paragraph 63 of this

6   Complaint and the concomitant execution of the Framework Agreement to, inter

7   alia, enter into the Framework Agreement and, among other things, ostensibly

8   forego immediate payment of the entire Buyer Termination Fee as would otherwise

9   have been required under the Merger Agreement.  VIZIO's reliance was reasonable

10   since it had no means to discover either the falsity of the promises described in

11   paragraph 63 of this Complaint at the time that they were made nor the secret

12   intention of Defendants not to perform as set forth in paragraph 72 of this

13   Complaint.

14        74.    Plaintiff would not have entered into the Framework Agreement had it

15   known of the falsity of the promises described in paragraph 63 of this Complaint at

16   the time that they were made, nor the secret intention of Defendants not to perform

17   as set forth in paragraph 72 of this Complaint.  Plaintiff is further informed and

18   believes, and based thereon alleges, that it has suffered damages in the sum of

19   $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee

20   Deposit and the $50,000,000 Buyer Termination Fee Remainder) as a direct and

21   proximate result of the false promises alleged in paragraph 63 of this Complaint,

22   together with the false representations and promises made by Defendants to induce

23   VIZIO to enter into the Framework Agreement and the Defendants' failure, *inter*

24   *alia*, to participate in the negotiations required thereunder, whether in good faith or

25   otherwise.

26        75.    Plaintiff is informed and believes, and based thereon alleges, that the

27   fraudulent conduct by Defendants as described above was willful, wanton and taken

28   with a conscious disregard of the rights of Plaintiff, and was intended to, or likely to

1  cause injury.  Therefore, Plaintiff respectfully requests that it be granted an award of

2  punitive and exemplary damages against the Defendants herein.

3  ## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

4  ## (NEGLIGENT MISREPRESENTATION UNDERLYING THE

5  ## FRAMEWORK AGREEMENT)

6  AS AND FOR A THIRD CLAIM FOR RELIEF BY VIZIO FOR

7  NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS, AND EACH

8  OF THEM, PLAINTIFF ALLEGES AS FOLLOWS:

9  76.  Plaintiff restates, realleges and incorporates paragraphs 1-31, 33-42,

10  46-52, 54-61, 63, and 65-71 as if fully set forth herein.

11  77.  Shortly after receipt of the Termination Notice, Defendants Global

12  Holding and LeEco, by and through, inter alia, JIA, contacted VIZIO by and

13  through Wong and/or Wang, among others, to discuss that the parties mutually

14  terminate the Merger Agreement with specified carve outs or exceptions, and that

15  going forward, VIZIO and LeEco form a joint venture distributorship for operation

16  in the People's Republic of China, a primary purpose of which would be to promote,

17  market and sell VIZIO branded devices, such as televisions, displays and sound bars

18  through LeEco's distributing/Omni channels in China.  LeEco and Global Holding

19  by and through, inter alia, JIA, then ultimately promised Wong and/or Wang, among

20  others, that in consideration for VIZIO's agreement to, inter alia, jointly terminate

21  the Merger Agreement with LeEco subject to specified carve outs or exceptions, and

22  forgo immediate payment of the $100,000,000 Buyer Termination Fee, LeEco

23  would (a) cause joint escrow instructions to be prepared and signed in order to

24  release from the CNB escrow the sum of $40,000,000 which would be paid directly

25  to VIZIO from the Buyer Termination Fee Deposit upon the signing of a

26  Framework, Termination and Mutual General Release Agreement between or

27  among VIZIO and LeEco; (b) cause the remaining $10,000,000 of the Buyer

28  Termination Fee Deposit to be released from that escrow and paid directly to VIZIO

ERVIN COHEN & JESSUP LLP

26

upon the execution within 45 days of a joint venture distributorship agreement for the Sales JV between VIZIO and LeEco - - but that if no such joint venture distributorship agreement was so signed within that 45 day time frame - - then nevertheless have that $10,000,000 sum released from the CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit provisions of the Merger Agreement; and (c) contribute capital in the form of non-cash assets to the Sales JV with a verified fair market value of at least $50,000,000.00.  In other words, the Defendants were promising to pay to VIZIO an amount equal to the $100,000,000 Buyer Termination Fee, albeit the former Buyer Termination Fee Remainder in the sum of $50,000,000 would now be in the form of a capital contribution from LeEco to the Sales JV, which would also benefit VIZIO.

78.     Plaintiff is informed and believes, and based thereon alleges, that the promises described in subparts (b) and (c) of paragraph 77 of this Complaint were false at the time they were made and that Defendants made these promises with no reasonable grounds for believing them to be true and the intent to induce VIZIO to, inter alia, terminate the Merger Agreement subject to specified exceptions or carve outs, forego immediate payment of the $100,000,00 payment of the Buyer Termination Fee and enter into a Framework Termination and Mutual General Release Agreement with LeEco.

79.     In reliance on the false promises of Global Holding and LeEco described in paragraph 77 of this Complaint, VIZIO agreed to, and did enter into the Framework Agreement with LeEco on or about April 5, 2017.

80.     Although the Merger Agreement was terminated by the Termination Notice with exception of, inter alia, the Buyer Termination Fee provisions, Section 1.1 of the Framework Agreement provides for the further joint termination of the Merger Agreement subject to specified carve outs or exceptions, concurrent with the release from the CNB escrow and direct payment to VIZIO of $40,000,000 from the Buyer Termination Fee Deposit.

81.     That $40,000,000 sum was released from the CNB escrow and paid directly to VIZIO concurrently with the execution of the Framework Agreement. Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently with the execution of the joint venture distribution agreement for the Sales JV within 45 days from signature of the Framework Agreement and VIZIO's concomitant receipt of the $40,000,000 portion of the Buyer Termination Fee Deposit.  However, notwithstanding the foregoing, Section 1.1 of the Framework Agreement specifically carves out and creates an exception for the terms of the Merger Agreement governing the release of the remaining Buyer Termination Fee Deposit, i.e., the $10,000,000 sum.  Stated differently, the Framework Agreement expressly carved out and left fully intact the provisions of the Merger Agreement governing the release and payment of that $10,000,000 sum.

82.     Section 3 of the Framework Agreement requires that VIZIO and LeEco negotiate in good faith and use reasonable efforts to reach further or additional terms as to a commercial relationship between them in the form of a joint venture distributorship (i.e., the Sales JV) to be owned 50/50 and under which, inter alia, (a) VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably competitive rates with the Sales JV, in turn, to have the exclusive right to distribute and sell VIZIO-branded devices in the People's Republic of China during the initial term; and (b) LeEco to contribute in the form of capital to the Sales JV non-cash assets with a verified fair market value equal to $50,000,000.  Section 4 of the Framework Agreement likewise requires the parties to negotiate in good faith and execute one or more agreements to, among other things, document the Sales JV within 45 days from the signing of the Framework Agreement and receipt by VIZIO of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April 5, 2017, i.e., May 20, 2017.

83.     Plaintiff is informed and believes, and based thereon alleges, that as a result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to negotiate additional or further terms as well as execute the joint venture agreement and to document the Sales JV, and (b) the express exception carved out in Section 1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff, with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the execution of a joint venture distribution agreement between VIZIO and LeEco and/or that any such joint venture distribution agreement was somehow a condition to the release and payment of that $10,000,000 sum, the Defendants have prevented the fulfillment of the alleged condition or performance of that term and cannot rely on same to defeat their liability thereon.

84.     Shortly after the parties executed the Framework Agreement and continuing thereafter, VIZIO made repeated efforts to communicate with and negotiate further or additional terms of the Sales JV with LeEco consistent with the Framework Agreement, including preparing and tendering a draft thereof to LeEco.  Those efforts fell on deaf ears.  VIZIO's efforts were met with practical radio silence notwithstanding that the 45 day time limit imposed with regard thereto under Section 4 of the Framework Agreement, i.e., May 20, 2017, has come and gone.

85.     From and after the execution of the Framework Agreement, the Defendants have failed and refused to participate in any substantive negotiations whatsoever under or pursuant to the Framework Agreement, let alone in good faith during the 45 day time limit or otherwise.  The Defendants have not used any efforts, let alone reasonable efforts to form any sort of commercial joint-venture distributorship agreement with VIZIO within the 45 day time limit and beyond.

86.     Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it and at the time Defendants made the promises described in Paragraph 77 of this Complaint and then executed the Framework Agreement, they had no reasonable grounds to believe that they would pay VIZIO the $10,000,000 remaining portion of the Buyer Termination Fee Deposit under the terms of the Merger Agreement or the Framework Agreement, nor did Defendants have any reasonable grounds to believe that they would execute a joint venture distributorship agreement with VIZIO and/or fund same with a capital contribution of $50,000,000 in verified non-cash assets, let alone participate in any negotiations related thereto, whether in good faith or otherwise.  Instead, Plaintiff is further informed and believes, and based thereon alleges, that Defendants had no reasonable grounds to believe that they would do any of these things at that time and merely engaged in a subterfuge to try to reduce their liability from the $100,000,000 Buyer Termination Fee to the $40,000,000 sum that was released from the CNB escrow and paid directly to VIZIO concurrently with the Framework Agreement.

87.     Plaintiff relied on the promises described in Paragraph 77 of this Complaint and the concomitant execution of the Framework Agreement to, inter alia, enter into the Framework Agreement and, among other things, ostensibly forego immediate payment of the entire Buyer Termination Fee as would otherwise have been required under the Merger Agreement.  VIZIO's reliance was reasonable since it had no means to discover either the falsity of the promises described in paragraph 77 of this Complaint at the time that they were made nor that Defendants

ERVIN COHEN & JESSUP LLP

had no reasonable grounds to believe that they would do any of these things not to perform as set forth in paragraph 86 of this Complaint.

88. Plaintiff would not have entered into the Framework Agreement had it known of the falsity of the promises described in paragraph 77 of this Complaint at the time that they were made, nor that Defendants had no reasonable grounds to believe that they would do any of these things as set forth in paragraph 86 of this Complaint. Plaintiff is further informed and believes, and based thereon alleges, that it has suffered damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee Deposit and the $50,000,000 Buyer Termination Fee Remainder) as a direct and proximate result of the false promises alleged in paragraph 77 of this Complaint, together with the false representations and promises made by Defendants to induce VIZIO to enter into the Framework Agreement and the Defendants' failure, *inter alia*, to participate in the negotiations required thereunder, whether in good faith or otherwise.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (PROMISSORY ESTOPPEL)

AS AND FOR A FOURTH CLAIM FOR RELIEF BY VIZIO FOR PROMISSORY ESTOPPEL AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES AS FOLLOWS:

89. Plaintiff restates, realleges and incorporates paragraphs 1-52, 54-61, and 63-74 as if fully set forth herein.

90. Shortly after receipt of the Termination Notice, Defendants Global Holding and LeEco, by and through, inter alia, JIA, contacted VIZIO by and through Wong and/or Wang, among others, to discuss that the parties mutually terminate the Merger Agreement with specified carve outs or exceptions, and that going forward, VIZIO and LeEco form a joint venture distributorship for operation in the People's Republic of China, a primary purpose of which would be to promote, market and sell VIZIO branded devices, such as televisions, displays and sound bars

through LeEco's distributing/Omni channels in China.  LeEco and Global Holding by and through, inter alai, JIA, then ultimately promised Wong and/or Wang, among others, that in consideration for VIZIO's agreement to, inter alia, jointly terminate the Merger Agreement with LeEco subject to specified carve outs or exceptions, and forgo immediate payment of the $100,000,000 Buyer Termination Fee, LeEco would (a) cause joint escrow instructions to be prepared and signed in order to release from the CNB escrow the sum of $40,000,000 which would be paid directly to VIZIO from the Buyer Termination Fee Deposit upon the signing of a Framework, Termination and Mutual General Release Agreement between or among VIZIO and LeEco; (b) cause the remaining $10,000,000 of the Buyer Termination Fee Deposit to be released from that escrow and paid directly to VIZIO upon the execution within 45 days of a joint venture distributorship agreement for the Sales JV between VIZIO and LeEco - - but that if no such joint venture distributorship agreement was so signed within that 45 day time frame - - then nevertheless have that $10,000,000 sum released from the CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit provisions of the Merger Agreement; and (c) contribute capital in the form of non-cash assets to the Sales JV with a verified fair market value of at least $50,000,000.00.  In other words, the Defendants were promising to pay to VIZIO an amount equal to the $100,000,000 Buyer Termination Fee, albeit the former Buyer Termination Fee Remainder in the sum of $50,000,000 would now be in the form of a capital contribution from LeEco to the Sales JV, which would also benefit VIZIO.

91.     Plaintiff is informed and believes, and based thereon alleges, that the promises described in subparts (b) and (c) of paragraph 90 of this Complaint were false at the time that they were made and that Defendants made these promises with knowledge of their falsity and the intent to induce VIZIO to, inter alia, terminate the Merger Agreement subject to specified exceptions or carve outs, forego immediate payment of the $100,000,000 Buyer Termination Fee and enter into a Framework

1  Termination and Mutual General Release Agreement with LeEco.

2       92.     In reliance on the false promises of Global Holding and LeEco

3  described in Paragraph 90 of this Complaint, VIZIO agreed to, and did enter into the

4  Framework Agreement with LeEco on or about April 5, 2017.

5       93.     Although the Merger Agreement was terminated by the Termination

6  Notice with exception of, inter alia, the Buyer Termination Fee provisions, Section

7  1.1 of the Framework Agreement provides for the further joint termination of the

8  Merger Agreement subject to specified carve outs or exceptions, concurrent with the

9  release from the CNB escrow and direct payment to VIZIO of $40,000,000 from the

10  Buyer Termination Fee Deposit.

11       94.     That $40,000,000 sum was released from the CNB escrow and paid

12  directly to VIZIO concurrently with the execution of the Framework Agreement.

13  Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to

14  release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have

15  that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently

16  with the execution of the joint venture distribution agreement for the Sales JV

17  within 45 days from signature of the Framework Agreement and VIZIO's

18  concomitant receipt of the $40,000,000 portion of the Buyer Termination Fee

19  Deposit.  However, notwithstanding the foregoing, Section 1.1 of the Framework

20  Agreement specifically carves out and creates an exception for the terms of the

21  Merger Agreement governing the release of the remaining Buyer Termination Fee

22  Deposit, i.e., the $10,000,000 sum.  Stated differently, the Framework Agreement

23  expressly carved out and left fully intact the provisions of the Merger Agreement

24  governing the release and payment of that $10,000,000 sum.

25       95.     Section 3 of the Framework Agreement requires that VIZIO and LeEco

26  negotiate in good faith and use reasonable efforts to reach further or additional terms

27  as to a commercial relationship between them in the form of a joint venture

28  distributorship (i.e., the Sales JV) to be owned 50/50 and under which, inter alia, (a)

ERVIN COHEN & JESSUP LLP

VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably competitive rates with the Sales JV, in turn, to have the exclusive right to distribute and sell VIZIO-branded devices in the People's Republic of China during the initial term; and (b) LeEco to contribute in the form of capital to the Sales JV non-cash assets with a verified fair market value equal to $50,000,000.  Section 4 of the Framework Agreement likewise requires the parties to negotiate in good faith and execute one or more agreements to, among other things, document the Sales JV within 45 days from the signing of the Framework Agreement and receipt by VIZIO of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April 5, 2017, i.e., May 20, 2017.

96.     Plaintiff is informed and believes, and based thereon alleges, that as a result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to negotiate additional or further terms as well as execute the joint venture agreement and to document the Sales JV, and (b) the express exception carved out in Section 1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff, with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the execution of a joint venture distribution agreement between VIZIO and LeEco and/or that any such joint venture distribution agreement was somehow a condition

ERVIN COHEN & JESSUP LLP

1   to the release and payment of that $10,000,000 sum, the Defendants have prevented

2   the fulfillment of the alleged condition or performance of that term and cannot rely

3   on same to defeat their liability thereon.

4        97.    Shortly after the parties executed the Framework Agreement and

5   continuing thereafter, VIZIO made repeated efforts to communicate with and

6   negotiate further or additional terms of the Sales JV with LeEco consistent with the

7   Framework Agreement, including preparing and tendering a draft thereof to LeEco.

8   Those efforts fell on deaf ears.  VIZIO's efforts were met with practical radio

9   silence notwithstanding that the 45 day time limit imposed with regard thereto under

10  Section 4 of the Framework Agreement, i.e., May 20, 2017, has come and gone.

11       98.    From and after the execution of the Framework Agreement, the

12  Defendants have failed and refused to participate in any substantive negotiations

13  whatsoever under or pursuant to the Framework Agreement, let alone in good faith

14  during the 45 day time limit or otherwise.  The Defendants have not used any

15  efforts, let alone reasonable efforts to form any sort of commercial joint-venture

16  distributorship agreement with VIZIO within the 45 day time limit and beyond.

17       99.    Plaintiff is informed and believes, and based thereon alleges, that

18  unbeknownst to it and at the time Defendants made the promises described in

19  Paragraph 90 of this Complaint and then executed the Framework Agreement, they

20  had no intention to pay VIZIO the $10,000,000 remaining portion of the Buyer

21  Termination Fee Deposit under the terms of the Merger Agreement or the

22  Framework Agreement, nor did Defendants intend to execute a joint venture

23  distributorship agreement with VIZIO and/or fund same with a capital contribution

24  of $50,000,000 in verified non-cash assets, let alone participate in any negotiations

25  related thereto, whether in good faith or otherwise.  Instead, Plaintiff is further

26  informed and believes, and based thereon alleges, that Defendants knowingly and

27  secretly intended to do none of these things at that time and merely engaged in a

28  subterfuge to try to reduce their liability from the $100,000,000 Buyer Termination

ERVIN COHEN & JESSUP LLP

Fee to the $40,000,000 sum that was released from the CNB escrow and paid directly to VIZIO concurrently with the Framework Agreement.

100.   Plaintiff relied on the promises described in Paragraph 90 of this Complaint and the concomitant execution of the Framework Agreement to, inter alia, enter into the Framework Agreement and, among other things, ostensibly forego immediate payment of the entire Buyer Termination Fee as would otherwise have been required under the Merger Agreement.  VIZIO's reliance was reasonable since it had no means to discover either the falsity of the promises described in paragraph 90 of this Complaint at the time that they were made nor the secret intention of Defendants not to perform as set forth in paragraph 99 of this Complaint.

101.   Plaintiff would not have entered into the Framework Agreement had it known of the falsity of the promises described in paragraph 90 of this Complaint at the time that they were made, nor the secret intention of Defendants not to perform as set forth in paragraph 99 of this Complaint.  Plaintiff is further informed and believes, and based thereon alleges, that it has suffered damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee Deposit and the $50,000,000 Buyer Termination Fee Remainder) as a direct and proximate result of the false promises alleged in paragraph 90 of this Complaint, together with the false representations and promises made by Defendants to induce VIZIO to enter into the Framework Agreement and the Defendants' failure, *inter alia*, to participate in the negotiations required thereunder, whether in good faith or otherwise.

## FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (RESCISSION OF FRAMEWORK AGREEMENT)

IN THE ALTERNATIVE, AS AND FOR A FIFTH CLAIM FOR RELIEF FOR RESCISSION OF THE FRAMEWORK AGREEMENT BY VIZIO AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES AS

FOLLOWS:

102.   Plaintiff restates, realleges and incorporates paragraphs 1-52, 54-61, 63-75, and 90-101 as if fully set forth herein.

103.   Plaintiff is informed and believes, and based thereon alleges, that it will suffer substantial harm and injury under the Framework Agreement if it is not rescinded due to the fraudulent conduct of Defendants set forth in paragraphs 63-75 of this Complaint, but only with (a) the $40,000,000 portion of the Buyer Termination Fee Deposit that was released from the CNB escrow and paid directly to VIZIO concurrent with, inter alia, the signing of the Framework Agreement to be applied solely as a credit against further payment from Defendants to VIZIO of the entire $100,00,000 Buyer Termination Fee otherwise due to Plaintiff under the terminated state of the Merger Agreement as it existed immediately before the execution of the Framework Agreement and with the Buyer Termination Fee provisions remaining intact and having been triggered as described in paragraphs 27-30 of this Complaint, (b) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit also be released from the CNB escrow and paid directly to VIZIO, with that $10,000,000 sum likewise to be applied solely as a credit against further payment from Defendants of the entire $100,000,000 Buyer Termination Fee otherwise due to Plaintiff under the terminated state of the Merger Agreement as it existed immediately before execution of the Framework Agreement and with the Buyer Termination Fee provisions remaining intact and having been triggered as described in paragraphs 27-30 of this Complaint, and in any event, (c) with any Order so crediting or otherwise concerning either or both (i) the $40,000,000 portion of the Buyer Termination Fee Deposit already released from the CNB escrow and paid to VIZIO, and (ii) the remaining $10,000,000 of the Buyer Termination Fee Deposit that is likewise to be released from the CNB escrow and paid directly to VIZIO, only to be made as a condition of a judgment for rescission restoring the Merger Agreement to its terminated state as it existed immediately before the

1   execution of the Framework Agreement with the Buyer Termination Fee provisions

2   remaining intact and having been triggered as described in paragraphs 27-30 of this

3   Complaint, pursuant to Section 1693 of the California Civil Code.

4          104.   Plaintiff intends service of the summons and Complaint in this action

5   as an alternate theory of recovery and as notice of the rescission of the Framework

6   Agreement subject to (a) the $40,000,000 portion of the Buyer Termination Fee

7   Deposit that was released from the CNB escrow and paid directly to VIZIO

8   concurrent with, inter alia, the signing of the Framework Agreement being applied

9   solely as a credit against further payment from Defendants to VIZIO of the entire

10  $100,000,000 Buyer Termination Fee otherwise due to Plaintiff under the

11  terminated state of the Merger Agreement as it existed immediately before

12  execution of the Merger Agreement and with the Buyer Termination Fee provisions

13  remaining intact and having been triggered as described in paragraphs 27-30 of this

14  Complaint, (b) the $10,000,000 remaining portion of the Buyer Termination Fee

15  Deposit also being released from the CNB escrow and paid directly to VIZIO, with

16  that $10,000,000,000 sum likewise applied solely as a credit against further payment

17  from Defendants of the entire $100,000,000 Buyer Termination Fee otherwise due

18  to Plaintiff as it existed immediately before execution of the Framework Agreement

19  and with the Buyer Termination Fee provisions remaining intact and having been

20  triggered as described in paragraphs 27-30 of this Complaint, and (c) any Order so

21  crediting or otherwise concerning either or both (i) the $40,000,000 portion of the

22  Buyer Termination Fee Deposit already released from the CNB escrow and paid to

23  VIZIO, and (ii) the remaining $10,000,000 of the Buyer Termination Fee Deposit

24  that is likewise to be released from the CNB escrow and paid directly to VIZIO,

25  only to be made as a condition of judgment for rescission that restores the Merger

26  Agreement to its terminated state as it existed immediately before the execution of

27  the Framework Agreement with the Buyer Termination Fee provisions remaining

28  intact and having been triggered as described in paragraphs 27-30 of this Complaint,

ERVIN COHEN & JESSUP LLP

1  pursuant to Section 1693 of the California Civil Code.

2  **SIXTH CLAIM FOR RELIEF AGAINST LeECO AND DOES 1-10**

3  **(BREACH OF THE MERGER AGREEMENT)**

4  IN THE ALTERNATIVE, AS AND FOR A SIXTH CLAIM FOR RELIEF

5  FOR BREACH OF WRITTEN CONTRACT BY VIZIO AGAINST LeECO, DOE

6  DEFENDANTS 1-10, AND EACH OF THEM, PLAINTIFF ALLEGES AS

7  FOLLOWS:

8  105.   As an alternative theory of recovery and subject to the entry of a

9  judgment for rescission based on fraud as specifically set forth in the Fifth Claim for

10  Relief, Plaintiff restates, realleges and incorporates paragraphs 1-52, as if fully set

11  forth herein.

12  106.   On or about July 6, 2016, VIZIO and LeEco entered into the Merger

13  Agreement.

14  107.   Plaintiff has performed each of the obligations required under the

15  Merger Agreement, except for those obligations for which it was excused from

16  performing or which have otherwise been waived due to LeEco's breach of same.

17  108.   Plaintiff is informed and believes, and based thereon alleges, that

18  LeEco breached the Merger Agreement.  These breaches are tied to specific terms of

19  the Merger Agreement and include, inter alia:

20  a.      The failure of LeEco to use its reasonable best efforts "to
consummate and make effective, in the most expeditious manner
21  practicable, the Merger" as required by Section 5.3 of the Merger
Agreement.
22

b.      The failure of Le Eco to use its reasonable best efforts to satisfy
23  "on a timely basis all conditions precedent to funding under the Equity
Concomitant Letters…and in any Debt Financing Document," and to
24  then "promptly notify [VIZIO] of such Financing Failure Event and…,
the reasons therefore," coupled with its failure to "use…reasonable best
25  efforts to obtain alternative financing…as promptly as practicable
following the occurrence of such event" as required by Section 5.8 of
26  the Merger Agreement.

27  c.      The commitment failure of Le Eco to give Plaintiff "prompt
notice of any breach, repudiation or threatened breach or repudiation by
28  any party to the Equity Commitment Letters or any Debt Financing

ERVIN COHEN & JESSUP LLP

Documents" and to "provide [VIZIO] with a copy of, a new financing commitment" as required by Section 5.8 of the Merger Agreement.

d.      Acts taken by LeEco and/or its Affiliates "to amend, modify, supplement, restate, assign, substitute or replace any of the Equity Commitment Letters or any Debt Financing Document…without the consent of [VIZIO], particularly since such amendments, modifications, supplements, restatements, assignments, substitutions, replacements or waivers…resulted in a net reduction in the aggregate amount of the Financing…[or], imposed "new conditions on funding"…[and/or] expanded, amended, or modified any provision of the Equity Commitment Letters, in a manner that would be reasonably expected to…materially delay or prevent the funding in full of the Financing" contrary to Section 5.8 of the Merger Agreement.

e.      The failure of LeEco to "promptly prepare, file, effect and obtain as soon as reasonably practicable all Consents necessary to obtain from any person including from any Governmental Entity in order to consummate the Merger" and its concomitant failure to "prepare and file all filings required to obtain the PRC Overseas Investment Approvals as promptly as practicable" as required by Section 5.4(a) of the Merger Agreement.

f.      The failure of LeEco to (i) "promptly inform [VIZIO] of any material communication from…any…Governmental Entity", (ii) give VIZIO "reasonable advanced notice of all meetings or planned communications with any Governmental Entity", (iii) give VIZIO an opportunity to participate in each of such meetings or communications, (iv) keep VIZIO promptly apprised with respect to any material oral communications with any Governmental Entity, (v) provide VIZIO with a reasonable advance opportunity to review and comment upon…all material written communications…and planned oral communication with a Governmental Entity regarding the Merger and (vi) provide VIZIO with copies of "all written communications to or from any Governmental Entity relating to the Merger" as required by Section 5.4(d) of the Merger Agreement.

109.    Subsequent to LeEco's breaches of the Merger Agreement as set forth above, and on or about March 30, 2017, Plaintiff served a written Termination of Merger Agreement (the "Termination Notice") on LeEco, among others, through LeEco Global Group Ltd., aka now as Global Holding, as required by Section 11.6 of the Merger Agreement, which triggered the Buyer Termination Fee provisions of the Merger Agreement.  The Termination Notice described each such breach in detail.

110.    Plaintiff is informed and believes, and based thereon alleges, that as a further and separate breach of the Merger Agreement, LeEco was not in position to

be able to close or consummate the merger by the mutually agreed extended date of April 6, 2017 due to its failure to have sufficient cash on hand, together with committed financing, as required by the Merger Agreement.  This additional and further breach of the Merger Agreement was also included in the Termination Notice and is likewise described in detail therein.

111.   Plaintiff is informed and believes, and based thereon alleges, that none of the breaches of the Merger Agreement by LeEco were cured.  Plaintiff is further informed and believes, and based thereon alleges, that in any event, such breaches were not capable of being cured by LeEco.  Accordingly, the merger was not consummated.

112.   Plaintiff is informed and believes, and based thereon alleges, that LeEco has also breached the implied covenant of good faith and fair dealing which is implied in all contracts, in the acts taken which have deprived Plaintiff of the fruits and benefits of the contract.

113.   As a direct and proximate result of LeEco's breaches of the Merger Agreement, Plaintiff has been damaged in the amount of the $100,000,000 Buyer Termination Fee, but with the $40,000,000 portion of the Buyer Termination Fee Deposit that has already been released from the CNB escrow and paid directly to VIZIO, to be applied solely as a credit against the entire amount of the Buyer Termination Fee that is otherwise due and owing.

WHEREFORE, Plaintiff prays for judgment as follows:

**FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

(1)   For damages to be proven at time of trial, but believed to be in the sum of $60,000,000.00 with lawful interest thereon;

(2)   Reasonable attorneys' fees and costs;

**SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

(3)   For damages to be proven at time of trial, but believed to be in the sum of $60,000,000.00 with lawful interest thereon;

ERVIN COHEN & JESSUP LLP

1    (4)    For punitive and exemplary damages thereon;

2    **THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

3    (5)    For damages to be proven at time of trial, but believed to be the sum of

4    $60,000,000.00 with lawful interest thereon;

5    **FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

6    (6)    For damages to be proven at time of trial, but believed to be in the sum

7    of $60,000,000.00 with lawful interest and reasonable attorneys' fees and costs;

8    **FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

9    (7)    The entry of a judgment for rescission of the Framework Agreement for

10   fraud subject to:

11            (a)    The $40,000,000 portion of the Buyer Termination Fee Deposit

12   that was released from the CNB escrow and paid directly to VIZIO concurrent with,

13   inter alia, the signing of the Framework Agreement being applied solely as a credit

14   against further payment from Defendants to VIZIO of the entire $100,000,000

15   Buyer Termination Fee otherwise due to Plaintiff under the terminated state of the

16   Merger Agreement as it existed immediately before execution of the Merger

17   Agreement and with the Buyer Termination Fee provisions remaining intact and

18   having been triggered as described in paragraphs 27-30 of this Complaint;

19            (b)    The $10,000,000 remaining portion of the Buyer Termination

20   Fee Deposit also being released from the CNB escrow and paid directly to VIZIO,

21   with that $10,000,000,000 sum likewise being applied solely as a credit against

22   further payment from Defendants of the entire $100,000,000 Buyer Termination Fee

23   otherwise due to Plaintiff as it existed immediately before execution of the

24   Framework Agreement and with the Buyer Termination Fee provisions remaining

25   intact and having been triggered as described in paragraphs 27-30 of this Complaint,

26   and

27            (c)    Any Order so crediting or otherwise concerning either or both (i)

28   the $40,000,000 portion of the Buyer Termination Fee Deposit already released

1  from the CNB escrow and paid to VIZIO, and (ii) the remaining $10,000,000 of the

2  Buyer Termination Fee Deposit that is likewise to be released from the CNB escrow

3  and paid directly to VIZIO, only to be made as a condition of judgment for

4  rescission that restores the Merger Agreement to its terminated state as it existed

5  immediately before the execution of the Framework Agreement with the Buyer

6  Termination Fee provisions remaining intact and having been triggered as described

7  in paragraphs 27-30 of this Complaint, pursuant to Section 1693 of the California

8  Civil Code.

9      (8)    For punitive and exemplary damages in an amount according to proof;

10             **SIXTH CLAIM FOR RELIEF AGAINST LeECO**

11     (9)    Subject to the entry of a judgment for rescission of the Framework

12  Agreement based on fraud and as specifically prayed in the Fifth Claim for Relief,

13  then for damages to be proven at time of trial, but believed to be in the sum of

14  $60,000,000 with lawful interest thereon.

15             **ON ALL CLAIMS FOR RELIEF**

16     (10)   For costs of suit; and

17     (11)   For such other and further relief as the Court deems just and proper.

18             **DEMAND FOR JURY TRIAL**

19  Plaintiff hereby demands a jury trial in this action.

20  DATED: July 11, 2017              ERVIN COHEN & JESSUP LLP
                                      Robert M. Waxman
21                                    David N. Tarlow
                                      Jason L. Haas
22

23

24

25                                By:  /s/ Robert M. Waxman
                                      Robert M. Waxman
26                                    Attorneys for Plaintiff VIZIO, INC., a
                                      California corporation
27

28