Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
  jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendant.<br><hr>LeECO V. LTD.,<br><br>Counter-Claimant,<br><br>vs.<br><br>VIZIO, INC., a California corporation,<br><br>Counter-Defendant. | Case No. 8:17-CV-01175-DOC-JDE<br><br>The Hon. David O. Carter<br><br>**PLAINTIFF VIZIO, INC.'S OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION**<br><br>*[Filed concurrently with Declarations of Christine Wessel and Jason L. Haas, Application for Leave to File Under Seal; and [Proposed] Order Granting Leave to File Under Seal]*<br><br>**Date:          April 2, 2018<br>Time:          8:30 a.m.<br>Courtroom:   9D**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

14676.8:9206854.3

8:17-CV-01175-DOC-JDE

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................1

II.   LELE AND JIA AFFIRMATIVELY SEEK TO MISLEAD THE COURT SO THAT LELE CAN TRY TO EVADE SERVICE AND AVOID THIS COURT'S JURISDICTION ........................................3

    A.    Deng Seeks to Dupe the Court About Her Ability to Accept Service for LeLe.........................................................................3

        1.    Deng Admitted to Her Ability to Accept Service on Behalf of Lele Before Accepting Service of the Summons and Complaint Against Lele ..............................................3

        2.    Deng is Intimately involved in LeEco's Global Operations and is a Proper Agent for Service of Process ...................4

    B.    Jia Seeks to Deceive the Court about the Location of LeLe's Principal Place of Business ....................................................6

    C.    Jia and Deng Mislead the Court About Faraday's "Independence" from LeEco ...............................................7

III.  VIZIO PROPERLY SERVED LELE HOLDINGS.............................9

IV.   THIS COURT HAS PERSONAL JURISDICTION OVER LELE...............10

    A.    The Court has Specific Jurisdiction Over Lele Based on Lele's Acts in California ....................................................10

        1.    Vizio's Allegations and Evidence Show Lele Directed its Activities towards Vizio in California.........................11

        2.    The Court's Exercise of Personal Jurisdiction Over Lele is Completely Reasonable ..................................14

    B.    Lele is an Alter Ego of LeEco Global and LeEco V ............15

V.    IF THE COURT HAS ANY DOUBTS REGARDING ITS JURISDICTION OVER LELE, IT SHOULD PERMIT VIZIO TO TAKE JURISDICTIONAL DISCOVERY .......................................18

VI.   CONCLUSION ..................................................................................19

ERVIN COHEN & JESSUP LLP

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Associated Vendors, Inc. v. Oakland Meat Co.*,
   210 Cal. App. 2d 825 (1962) ................................................................................... 17

*AT & T Co. v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir.1996) ..................................................................................... 16

*Bein v. Brechtel-Jochim Group, Inc.*,
   6 Cal. App. 4th 1387 (1992) ..................................................................................... 9

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ................................................................................ 11

*CollegeSource, Inc. v. AcademyOne Inc.*,
   653 F.3d 1066 (2011) .............................................................................................. 11

*Data Disc, Inc. v. Systems Technology Associates, Inc.*,
   557 F.2d 1280 (9th Cir. 1977) .................................................................................. 9

*Dill v. Berquist Construction Co.*,
   24 Cal. App.4th 1426 ................................................................................................ 9

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd. Eyeglasses*,
   328 F.3d 1122 (9th Cir. 2003) .......................................................................... 16, 19

*M. Lowenstein & Sons, Inv. v. Superior Court*,
   80 Cal. App.3d 762 ................................................................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................................. 10

*Sonora Diamond Corp. v. Superior Court*,
   83 Cal.App.4th 523 (2000) ...................................................................................... 16

<u>Rules</u>

Fed. R. Civ. P. 4(h)(1)(B) ................................................................................................ 9

ERVIN COHEN & JESSUP LLP

I.      **INTRODUCTION**

The Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction ("Motion") filed by Defendant Lele Holding Ltd. ("Lele") can barely contain Lele's sense of righteous indignation at being drawn into this litigation by its purported "harasser", Plaintiff Vizio Inc..  Lele portrays itself as a foreign holding company with no ties to California whose only tie to this dispute was that one of its subsidiaries—several steps removed—was part of the merger transaction in dispute.  Lele further challenges Vizio's service of summons as improper because, it claims, Vizio served the vice president of a "completely independent" company, Faraday & Future, Inc. ("Faraday"), an executive who allegedly had no right to accept service of process for Lele.  Lele's portrayal of the relevant facts is entirely inaccurate.  Moreover, the declarations Lele submits in support of its Motion repeatedly misstate and distort the truth.

The record in this case establishes that Lele was part of an concerted effort to defraud Vizio orchestrated by Defendant Yueting Jia, ▮▮▮▮▮▮▮, and implemented with the assistance of Lele, Defendant LeEco Global Group Ltd. ("LeEco Global"), and Defendant LeEco V. Ltd. ("LeEco V"). These defendants, with the assistance of other businesses and special purpose entities created as part of Jia's global "LeEco" business, first attempted to acquire Vizio for $2 billion. When unable to do so, Defendants engaged in fraud in an effort to minimize the $100 million break-up fee owed to Vizio.  Lele's involvement in this scheme render it subject to personal jurisdiction in California.

Lele is also subject to personal jurisdiction as an alter ego of LeEco Global and LeEco V.  Lele admits that it is the parent of LeEco Global.  (Motion at 1:8-10.) But it shares far more than just a parent-subsidiary bond.  The facts show Lele and the other corporate defendants are all under the common ownership and control of Jia, and that Lele shares ▮▮▮▮▮▮▮ and counsel with other defendants.  Of even greater note is that LeEco V represented to the U.S.

ERVIN COHEN & JESSUP LLP

1   Government ███████████████████████████████

2   ████████████████████████████████████████████████

3   █████████████████████████████████████. LeEco V certified

4   to the government that ████████████████████████████

5   ███████ Lele now tries to tell this Court a different story, but it cannot evade the

6   admissions LeEco V has already made on its behalf.

7          Lele also cannot defeat Vizio's proper service of process through declarations

8   that are false and misleading.  As explained below, Vizio has submitted Declarations

9   of Diligence by two of its several process-servers, who engaged in months-long

10  efforts to serve Lele and Jia with summons.  Those diligence declarations directly

11  contradict the facts in Chaoying Deng's declaration on which Lele relies. Moreover,

12  California public records demonstrate that Deng is far from being a simple vice-

13  president at Faraday, as she claims. Rather, Deng is enmeshed throughout the

14  leadership of the LeEco enterprise and reasonably had the authority to accept service

15  on behalf of Lele.  Faraday, meanwhile, has substantial ties to the other LeEco

16  businesses and is nowhere close to being "completely independent" from them as

17  Lele's declarations assert.  Finally, Jia directly misrepresents to the Court that Lele's

18  "sole" place of business is in the British Virgin Islands, ███████████████

19  ████████████████████████████████████████████████

20  ███████████████████████████████████.

21          After engaging in the breaches of contract and torts now alleged in Vizio's

22  First Amended Complaint (D.E. 35), Defendants first failed to respond to Vizio's

23  original complaint.  While this Court ultimately set aside the default against LeEco

24  V, it nevertheless found that LeEco V was culpable for having notice of the

25  Complaint and intentionally failing to respond.  (*See* Order, D.E. 31, 6.)  Now Lele

26  (and Jia) have filed procedural motions in an attempt to evade service of process and

27  personal jurisdiction that are based on false and misleading facts.  This Court should

28  deny both motions and require Lele and Jia to answer Vizio's Complaint.  In the

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

1  alternative, the Court should authorize Vizio to conduct written and deposition

2  discovery from Lele and other parties as needed to obtain the facts necessary to

3  establish this Court's proper jurisdiction over Lele.

4  **II.**   **LELE AND JIA AFFIRMATIVELY SEEK TO MISLEAD THE**

5      **COURT SO THAT LELE CAN TRY TO EVADE SERVICE AND**

6      **AVOID THIS COURT'S JURISDICTION**

7      The declarations submitted in support of the Motion and the companion

8  Motion to Dismiss on behalf of Jia contain several false and misleading statements

9  of fact.  The Jia and Deng declarations also carefully omit other facts, which reveal

10  the numerous and strong ties between Deng and LeEco, and between Faraday and

11  the defendants in this action.  These declarations are not credible and should be

12  given no weight.

13      **A.**   **Deng Seeks to Dupe the Court About Her Ability to Accept Service**

14          **for LeLe**

15          **1.**   **Deng Admitted to Her Ability to Accept Service on Behalf of**

16              **Lele Before Accepting Service of the Summons and**

17              **Complaint Against Lele**

18      Deng claims she is not a designated agent for service of process for Lele, a

19  claim echoed by Jia.  (*See*  Decl. Chaoying Deng, D.E. 64 (hereafter "Deng Decl."),

20  ¶ 7; Decl. Yueting Jia, D.E. 63-2 (hereafter "Jia Decl."), ¶ 5.)  Deng further claims

21  that none of Vizios' process servers "ever asked [her] if [she] was authorized to

22  accept service on LeLe's behalf."  These statements are false.

23      On the morning of December 22, 2017, Vizio process server Dean Carroll

24  staked out the residence where Ms. Deng lives.  (Carroll Decl. of Diligence, D.E.

25  66.)  After several hours, Mr. Carroll was granted access to the residence by a

26  gardener, and he was able to speak to Deng.  Mr. Carroll's report of their interaction

27  specifically notes that he "spoke with Chaoying Deng (Female) who stated that *she*

28  *is the agent for service of Lele Holdings and that she can accept the documents*."

ERVIN COHEN & JESSUP LLP

1  (*Id.* (emph. added).)  While the process server did not serve the Lele summons on

2  Deng at that time—in hopes of serving the Lele and Jia papers at the same time on

3  Jia—the process server's sworn declaration directly contradicts Deng's declaration.

4  Several weeks later, a different process server for Vizio, Cesar Hernandez-

5  Govea, served the Lele summons and other documents on Deng.  On January 9,

6  2018, that server waited nearly an hour at Deng's place of work for Deng to come

7  out of the building.  When she finally did, Deng accepted the documents on behalf

8  of Lele, but she told Mr. Hernandez-Govea that she could not accept service on

9  behalf of Jia.  (Hernandez-Govea Decl. of Diligence, D.E. 67.)[1]  Deng was thus able

10  to distinguish clearly between parties for whom she was authorized to accept service

11  and those for whom she could supposedly not accept service. The fact that she chose

12  to accept service on behalf of Lele is evidence that she had the authority to do so.

13  (*See id.*; *see also* Proof Serv. D.E. 55.)

14  **2.      Deng is Intimately involved in LeEco's Global Operations**

15  **and is a Proper Agent for Service of Process**

16  The Motion and Ms. Deng's declaration convey a misleading picture of

17  Deng's role.  Deng claims only that she is a Vice-President at Faraday, which, she

18  asserts, is "completely independent" from any of the other corporate defendants in

19  this action.  (Deng Decl. ¶2.)  Faraday's alleged independence is discussed below,

20  but the suggestion that Deng has no ties to LeEco or this litigation is simply wrong.

21  Publically-available facts show that Deng plays a key role in LeEco's US

22  operations, including entities involved in the underlying transactions in this matter.

23  Most notably, the California Secretary of State's files show that Deng was listed as

24  the Chief Executive Officer for Le Technology, Inc. ("Le Tech") throughout the

25

26  [1] Because several different process servers spent a couple of months trying to

27  serve both Jia and Lele, the voluminous record of their diligence was maintained across more than one electronic file.  Different portions of this diligence record have been filed in several places with the Court.

28

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

ERVIN COHEN & JESSUP LLP

1   relevant time period.  (Haas Decl. Ex. 1 [Le Tech Stmt. Info. dated Dec. 17, 2015

2   and Jan. 19, 2017].)  Le Tech was the entity that guaranteed Vizio payment of a **$50**

3   **million** "Buyer Termination Fee Remainder" if Defendant LeEco V. Ltd. were to

4   fail to perform on the underlying Merger Agreement and that payment became due.

5   (*See* Christine Wessel Decl. Ex. 1 [Limited Guarantee], ¶1.)  Crucially, the Limited

6   Guarantee by Le Tech did not provide any consideration to Le Tech in exchange for

7   taking on this substantial liability for LeEco, a transaction to which no truly

8   independent company would have ever agreed.  (*Id.*)  LeEco executive Charles

9   Hsieh also previously identified himself in this litigation as the "Director of

10  Corporate Finance & Development" for Le Tech when he declared that he "was a

11  principal negotiator for [Defendant] LeEco Global Group, Ltd.…which owned

12  [Defendant] LeEco V. Ltd." with respect to both the Merger Agreement and the

13  Framework Agreement." (Hsieh Decl. D.E. 26-1, ¶¶ 2, 3.) Thus, far from having no

14  connection to LeEco or this litigation, Deng was responsible for both the company

15  that took on a potential $50 million liability if Defendants here failed to complete

16  the merger and for serving as the direct or indirect supervisor of one of LeEco's

17  primary negotiators.

18      In addition to her role with Le Tech, Deng is also a registered agent for

19  service of process for LeEco Real Estate Group LLC ("LREG").  (Haas Decl. Ex. 2

20  [LREG Cert. Conversion, dated June 10, 2016].)  The California records for LREG

21  show not only that Deng is the agent for service of process for LREG, but that Le

22  Tech was the sole member of LREG.  (*Id.* (Certificate signed by "Shawn Williams,

23  Chief Administrative Office, Le Technology Inc., Sole Member").) In turn, LREG

24  has been another integral part of LeEco's operations, as it purchased nearly 50 acres

25  of land in San Jose from Yahoo in 2016 for a reported $250 million, with plans to

26  build a huge R&D facility for LeEco North American operations.  (*See id.* Ex. 3

27  [June 16, 2016 Deed from Yahoo to LREG, noting payment of transfer tax of

28  $275,000].)  Deng has thus been a key player in LeEco's plans for North America,

ERVIN COHEN & JESSUP LLP

all of which took place under the direction of Jia and his personal holding company, Lele.  Deng's statement to Vizio's process server on December 22, 2017, that she was authorized to accept service on Lele, is fully credible in light of these facts.

**B.**    **Jia Seeks to Deceive the Court about the Location of LeLe's Principal Place of Business**

Jia declares that "Lele is domiciled in [the British Virgin Islands], where its *sole* place of business is located." (Jia Decl. ¶ 2 (emph. added).)  Vizio does not dispute that Lele is domiciled in the British Virgin Islands.  But Jia is misleading the Court, if not outright lying to it, with respect to Lele's principal place of business.

In connection with the proposed merger, Vizio and LeEco V, Ltd. submitted a "Joint Voluntary Notice" to the Committee on Foreign Investment in the United States (the "Joint Notice").  (*See* Wessel Decl., Ex. 2 [Joint Notice].)  This report was submitted because the merger would have resulted in Vizio being controlled by a foreign business.



ERVIN COHEN & JESSUP LLP

1 █████████████████████████

## C.    Jia and Deng Mislead the Court About Faraday's "Independence" from LeEco

Both Jia and Deng declare definitively that Faraday Future is "completely independent of Lele and any of the other corporate defendants named in this lawsuit." (Jia Decl. ¶ 4; Deng Decl. ¶ 2.) These statements are not true. Both Jia and Deng are heavily involved in both Faraday and the global LeEco operations. But Faraday's ties to LeEco appear to be substantially deeper than just overlapping personnel.

The problems at Faraday and its ties with LeEco have generated substantial attention in the press. One online publication, the Verge.Com, has written a series of articles about LeEco and Faraday, including a *16-page* in-depth investigative report just published in December 2017. (*See* Haas Decl., Ex. 4.) That article, which claimed to be based on evidence from eleven witnesses (including 10 former Faraday employees), (*id.* at 1), and reviews of public records, (*id.* at 3), reported on numerous ties between Faraday and LeEco. These ties included the overlapping roles of Jia and Deng, (*id.* at 3, 4, 6, 7), extensive reliance by Faraday on money from other LeEco businesses to pay its bills, (*id.* at 7, 8), Faraday's contribution of intellectual property to another of LeEco's related Chinese entities, LeSee, (*id.* at 4, 5), and Faraday's plans to build electric cars for LeSee at Faraday's planned production facility, (*id.* at 4, 5). The article even reported that former employees described Faraday as being, "financially…run more like an affiliate of LeEco…:." (*id.* at 7),

While much of the information contained in the Verge.com article cannot be

_____

██ ████████████████████████████████████████████████████
█████

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   confirmed without discovery, a number of the facts can be verified or confirmed.

2   For example, the limited public information available on Faraday's website

3   discloses that Jia was the founder of Faraday and, in February of this year,

4   welcomed participants to a "Global Supplier Summit" at Faraday's Gardena

5   headquarters. (Haas Decl., Ex. 5.)  In addition, U.S. Design Patent No. D797620,

6   which is assigned to Faraday, displays images of a steering wheel containing LeEco

7   trademarks, showing a clear working relationship.  (*Cf:* Haas Decl. Ex. 6 [Patent No.

8   D797620], *fig.* 1, 3, *with* Ex. 7 [U.S. Trademark No. 86844689, LeEco trademark

9   assigned to "Le Holdings Ltd."], 1+.)  The Verge.com article also discusses three

10  properties in the Rancho Palos Verdes that are owned by yet another LeEco

11  subsidiary, Ocean Properties Inc., and headed by Deng, in which Deng and Jia,

12  among others reportedly live.  (Haas Decl. Ex. 4 [Article], 11-12.)  The encounter

13  between Deng and Vizio process server Dean Carroll, in which Deng admitted to

14  being an agent for service of process for Lele, took place at one of those properties.

15  (*See* Decl. Diligence Carroll, D.E. 66.)  California public records for Faraday also

16  reflect that, as of February 2017, Deng was listed with the Secretary of State as

17  being the *CEO* of Faraday, not as a Vice-President.  (Haas Decl. Ex. 8 [Faraday

18  Filings], 4.)  A review of the California public filings for Faraday also reveals that,

19  until February 2017, Faraday's registered business address was the *same* Beijing

20  address that is listed in the Joint Notice for Defendants Lele, Jia, and LeEco V.  [*Cf:*

21  Wessel Decl. Ex. 2 [Joint Notice], 7 *with* Haas Decl. Ex. 8 [Faraday Filings], 1.)

22       In short, the allegedly "completely independent" Faraday shares *at least*

23  leadership, intellectual property, and real estate with Lele and LeEco, while the

24  Verge.cm articles suggests the ties run even deeper.  Either way, the declarations

25  submitted by Jia and Deng are again false.

26       //

27       //

28       //

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

III. <u>**VIZIO PROPERLY SERVED LELE HOLDINGS**</u>

Fed. R. Civ. P. 4(h)(1)(B) provides that a foreign corporation may be served with a summons in a judicial district "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process…" Lele agrees that satisfying this standard constitutes proper service. (*See* Mot. 14:13-23.)

"It has been held that the filing of a proof of service creates a rebuttable presumption that the service was proper." *Dill v. Berquist Construction Co.*, 24 Cal. App.4th 1426, 1442; *see also M. Lowenstein & Sons, Inv. v. Superior Court*, 80 Cal. App.3d 762, 770 (The filing of a proof of service with an affidavit or other proof of service presumptively establishes the fact of proper service, but it may be impeached and the lack of proper service shown by contradictory evidence.).

"[T]he provisions (of the service of process statutes) are now to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant." *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1392 (1992). Indeed, "[i]f the court determines that it will receive only affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted material in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).

Vizio's proof of service (D.E. 55) establishes that Vizio properly served Lele through serving the summons on Deng. Deng previously admitted to being able to accept service on behalf of Lele. (Carroll Decl. Diligence, D.E. 66.) Deng then reinforced her admission by later accepting service of papers for Lele while simultaneously rejecting service of the papers on Jia. (Carroll Decl. Diligence, D.E.66.) Deng—as the agent for service of process and recent CEO for Faraday, the CEO of Le Tech, the agent for service of process for LREG, and some unknown number of other positions with the various LeEco entities—was empowered to

ERVIN COHEN & JESSUP LLP

1  accept service on the various LeEco entities.  (*See* Haas Decl. Ex. 1,[Le Tech Stmt.

2  Info.]  3 [LREG Stmt. Info.], and 8 [Faraday Filings, 2, 4].)  Jia and Deng's denials

3  of Deng's authority to accept service for Lele are not credible in light of their

4  repeated misstatements.  The Court should reject Lele's efforts to negate Vizio'

5  proper service.

6  **IV.   THIS COURT HAS PERSONAL JURISDICTION OVER LELE**

7        Lele contends that this Court lacks personal jurisdiction over it because "Lele

8  is not alleged to have made any statement to Vizio or have had any contacts with

9  California whatsoever."  (Mot. 1:14-15.)  Not so.  While Vizio does not contend that

10  the Court has general jurisdiction directly over Lele, Lele is subject to personal

11  jurisdiction under two separate theories: (1) the Court has specific jurisdiction over

12  Lele based on Lele's direct involvement in the acts alleged in the First Amended

13  Complaint, and (2) the Court has personal jurisdiction over Lele because Lele is an

14  alter ego of, at least, Defendants LeEco Global and LeEco V.

15      **A.   The Court has Specific Jurisdiction Over Lele Based on Lele's Acts**

16            **in California**

17        Vizio agrees with Lele that the Ninth Circuit uses a three-prong test for

18  determining specific personal jurisdiction.  (*Cf:* Motion 10-11.)  For our purposes,

19  Vizio must establish that Lele, as a non-resident defendant, "purposefully directed"

20  its activities towards California or completed a transaction in California, and Vizio

21  must show that its claims "arise out of or relate to" Lele's activities in California.

22  *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004).  If

23  Vizio satisfies this burden, then Lele is put to the test of "present[ing] a compelling

24  case" that the Court's exercise of jurisdiction over Lele would not be reasonable.

25  (*Id.*)

26        In assessing whether the parties have met their respective burdens, when a

27  motion is based solely on written materials like the one is here, only a "prima facie"

28  showing of jurisdictional facts by a plaintiff is required to defeat a motion to

ERVIN COHEN & JESSUP LLP

1 dismiss. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th

2 Cir. 2010).  All allegations from a complaint not contradicted by affidavit are

3 assumed to be true, and all factual disputes are resolved in a plaintiff's favor.

4 *CollegeSource, Inc. v. AcademyOne Inc.*, 653 F.3d 1066, 1073 (2011).

5          Here, the only declarations submitted in support of Lele's Motion are the Jia

6 and Deng Declarations.  As shown above, both declarations are riddled with

7 misstatements and inaccuracies, so the Court should give them no weight

8 whatsoever.  But even if that were not the case, those declarations have little bearing

9 on the key allegations needed to establish this Court's specific personal jurisdiction

10 over Lele.  The Deng Declaration, for instance, includes absolutely no facts

11 regarding the actions of Lele or the other LeEco entities in the underlying

12 transactions.  (*See* Deng Decl.)

13                    **1.     Vizio's Allegations and Evidence Show Lele Directed its**

14                            **Activities towards Vizio in California**

15          Jia's Declaration does not contradict Vizio's allegations showing that Lele

16 purposefully directed its activities toward Vizio in California in order to convince

17 Vizio to engage in a transaction with Lele's subsidiaries in California that would be

18 governed by California law.  (*Cf:* Wang Decl. Opp. Mot Set Aside Default, D.E. 23-

19 2 (hereafter "Wang Decl."), Ex. 1 [Merger Agmt.], §11.7 (California law governs);

20 Wong Decl. Opp. Mot Set Aside Default, D.E. 23-3, (hereafter "Wong Decl."), Ex.

21 2 [Framework Agmt.] §9.4 (same).)  These allegations include:

22          •    Vizio "entered into serious negotiations over the phone, electronically

23               and in person at Irvine, California,…with both *Lele Holding* by and

24               through JIA, its sole and controlling owner, as well as with Global

25               Group, by and through, among others, JIA...and Charles Hsieh…for the

26               merger of VIZIO with LeEco and Merger Sub." (First Amd. Compl.,

27               D.E. 35, ¶ 11 (emph. added).)

28

ERVIN COHEN & JESSUP LLP

- during the negotiations, "*Lele Holding* and Global Group, through, inter alia, JIA, represented to one or more of Wong, Binder, and/or Wang, among others, over the phone, electronically and in person at Irvine, California…that *Lele Holding* and Global Group and various of their subsidiary or affiliated corporate entities, were financially healthy and that they had the financial wherewithal to complete a $2,000,000,000.00, merger transaction with VIZIO (the "$2BB Financial Wherewithal Representations")."" (*Id*. at ¶ 12 (emph. added).)

- "Plaintiff is informed and believes, and based thereon alleges, that JIA as well as *Lele Holding*, Global Group and/or various of their subsidiary or affiliated corporate entities then concocted a secret plan at or about that time to (a) use a publicly announced intended merger with VIZIO to gain or try to obtain access to VIZIO's large corporate clients and key decision makers…, and (b) create a false widespread public impression of their own financial health…with Defendants making the $2BB Financial Wherewithal Representations to further that secret plan, and intending to induce Plaintiff to enter into such a merger agreement…." (*Id*. at ¶ 15 (emph. added).)

- "Pursuant to Section 10.2 of the Merger Agreement, 'Buyer Termination Fee Deposit' means the amount of fifty million dollars ($50,000,000.00)" that Plaintiff is informed and believes, and based thereon alleges, was deposited into escrow on or about the signing of the Merger Agreement by *Lele Holding*, Global Group and/or various of their subsidiary or affiliated corporate entities pursuant to the terms of the Merger Agreement…." (*Id*. at ¶ 22 (emph. added).)

- "Shortly after receipt of the Termination Notice, *Lele Holding*, Global Group and LeEco, by and through, inter alia, JIA, Hsieh…discussed

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  with Plaintiff…that the parties mutually terminate the Merger

2  Agreement…and that going forward, VIZIO and LeEco form a joint

3  venture distributorship for operation in the People's Republic of

4  China…"  (*Id*. at ¶ 33 (emph. added).)

5  • "LeEco, *Lele Holding*, and Global Group by and through, inter alia, JIA

6  and/or Hsieh, then ultimately promised Wong and/or Wang, among

7  others, that in consideration for VIZIO's agreement to, inter alia, jointly

8  terminate the Merger Agreement…, and forgo immediate payment of

9  the $100,000,000 Buyer Termination Fee, LeEco would (a)

10  cause…[the] release from the CNB escrow [of] the sum of $40,000,000

11  which would be paid directly to VIZIO…(b) cause the remaining

12  $10,000,000 of the Buyer Termination Fee Deposit to be released from

13  that escrow and paid directly to VIZIO upon the execution within 45

14  days of a joint venture distributorship agreement for the Sales JV

15  between VIZIO and LeEco…and (c) contribute capital in the form of

16  non-cash assets to the Sales JV with a verified fair market value of at

17  least $50,000,000.00."  (*Id*. at ¶ 33 (emph. added).)

18  Jia's Declaration does not contradict *any* of these allegations.  The closest it comes

19  is the statement that LeEco purportedly "has made no investment or business

20  activities directly in California (*only via its subsidiaries*)."  (Jia Decl. ¶ 3 (emph.

21  added).)  Yet Jia does not dispute that he, Hsieh, and others from LeEco negotiated

22  in California and made the representations and misrepresentations alleged by Vizio.

23  Jia attempts only to draw a legal distinction regarding *which* defendants he and the

24  others were negotiating on behalf of in the course of the undisputed negotiations.

25  What is further undisputed is that Vizio relied on the representations Jia and

26  Hsieh made during the merger negotiations to enter into the Merger Agreement.

27  (*See* Wang Decl., ¶ 9, *see also* ¶¶ 7, 8, 12.)  Vizio also relied on the representations

28  of Hsieh and LeEco North America CEO, Richard Ren, in entering into the

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

ERVIN COHEN & JESSUP LLP

1   Framework Agreement.  (*See* Wong Decl., ¶ 17, *see also* ¶¶ 12-16.)[3]  So the only

2   question becomes whether, in making the various representations and statements

3   alleged in the First Amended Complaint, and supported in the previously-filed

4   Wang and Wong Declarations, for which entities were Jia and the other LeEco

5   executives acting?  As shown in the next section, Lele, LeEco Global, and LeEco V

6   are alter egos of each other, and the right answer to this question is "all of them."

7   The contracts Vizio entered into were with LeEco V and its special purpose merger

8   subsidiary, but Vizio would not have entered into those transactions without the

9   backing of Lele and LeEco Global. (Wang Decl. ¶¶ 8, 9.)  Indeed, those were the

10  only entities with any assets for LeEco.  (*Cf:* Wessel Decl., Ex. 1 [Limited

11  Guarantee], § 13 ("[Vizio] acknowledges and agrees that the sole asset of [LeEco V]

12  is cash in a *de minimis* amount, and that no additional funds are expected to be

13  contributed to [LeEco V] unless and until the Closing [of the Merger] occurs."),

14  *with* Wessel Decl., Ex. 3 (Lele Balance Sheet), Ex. 4 (LeEco Global Balance

15  Sheet).)

16          **2.      The Court's Exercise of Personal Jurisdiction Over Lele is**

17                  **Completely Reasonable**

18          As there can be no question that Vizio's claims arise out of and relate to

19  Lele's activities in California, the only remaining issue is whether Lele can show it

20  is not reasonable for the Court to exercise jurisdiction over it.  Lele's arguments on

21  this issue boil down to a contention that it has not interjected itself into California,

22  which Vizio has already explained above is not true, and that it would allegedly be

23  "burdensome" for Lele to defend itself here in Court.  (*See* Motion 12:22-13:24.)

24  _____

25          [3] The Wang and Wong Declarations were submitted prior to Lele being added

26  to this action via the First Amended Complaint, so they do not specifically reference
    Lele.  But they do reference LeEco Global's affiliated corporate entities in several

27  places, which included Lele. (*See e.g.* Wang Decl. Opp. Mot Set Aside Default, D.E.
    23-2, ¶ 6, 8, 23, 26.)

28

1  Nonsense.  Lele is represented by the same counsel, Greenberg Traurig, that have

2  already appeared in this action on behalf of LeEco V and Jia.  The same witnesses

3  that must testify on behalf of the other defendants will have to testify on Lele's

4  behalf.  Indeed, it would be a complete waste of the parties' and judicial resources to

5  force Vizio to litigate the same issues against Lele elsewhere as it will litigate

6  against the other defendants here.

7  　　Lele makes a bland assertion that the other five factors in the Ninth Circuit's

8  analysis also support the unreasonableness of forcing Lele to litigate here, but it

9  offers no explanation at all, let alone a convincing one, for this assertion.  (*See*

10  Motion 12:22-28; 13:18-24.)  Lele also does not explain how forcing Lele to litigate

11  in California would offend the sovereignty of the British Virgin Islands when the

12  challenged conduct was all directed towards a California corporation and *none* of it

13  is alleged to have derived from or involved those islands.  By contrast, California

14  has a strong interest in protecting its corporations and businesses from being

15  exploited by undercapitalized foreign businesses that make promises they cannot

16  keep and that then engage in fraud in an effort to avoid their contractual obligations.

17  Nor is there any reason for this lawsuit to be litigated elsewhere, when the other

18  cases and many, if not most, of the witnesses reside in California.  There is

19  particularly no justification for the parties to litigate in the British Virgin Islands,

20  when none of the witnesses live there and no events at issue in this litigation took

21  place in that locale.  Notably, Lele does not even contend the case should be there or

22  suggest an alternative forum that it claims would be better suited to oversee the

23  resolution of Vizio's claims against Lele.  Lele only suggests that, since the Court

24  has jurisdiction over LeEco V, it is unreasonable for the Court to also exercise

25  jurisdiction over Lele, which is a complete non sequitur.  (*See* Motion 13:18-20.)

26  **B.**　**Lele is an Alter Ego of LeEco Global and LeEco V**

27  　　Lele is separately subject to personal jurisdiction as an alter ego of LeEco

28  Global and LeEco V.  There is no dispute that LeEco V is subject to this Court's

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

ERVIN COHEN & JESSUP LLP

1  jurisdiction, as it was a party to the Merger Agreement and consented to jurisdiction

2  in California.  (Wang Decl., Ex. 1, 101 §11.8.)  LeEco Global is the direct parent of

3  LeEco V, is the subject of the same allegations discussed above, and it is named in

4  the Wang and Wong Declarations in the paragraphs discussed above, which together

5  grant this Court specific jurisdiction over it.  If Lele is the alter ego for either entity

6  (or for Jia), then if one of those defendants is subject to the jurisdiction of this court,

7  Lele will also be subject to the Court's jurisdiction.  *See Harris Rutsky & Co. Ins.*

8  *Services, Inc. v. Bell & Clements Ltd. Eyeglasses,* 328 F.3d 1122 (9th Cir. 2003)

9  (holding parent corporation could potentially be subject to jurisdiction as an alter

10  ego for a subsidiary that was subject to court's specific personal jurisdiction).

11       To satisfy the alter ego test, Vizio "must make out a prima facie case" that

12  there is such a "unity of interest and ownership" that the separate personalities of

13  Lele and LeEco Global and/or Lele and LeEco V no longer exists and that failure to

14  find them to be alter egos would result in "fraud or injustice." *See AT & T Co. v.*

15  *Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996).  Some of the

16  factors to be considered in applying the alter ego doctrine include:

17            [the] commingling of funds and other assets of the two
18            entities, the holding out by one entity that it is liable for
           the debts of the other, identical equitable ownership in the
19            two entities, use of the same offices and employees, and
           use of one as a mere shell or conduit for the affairs of the
20            other. Other factors which have been described in the case
           law include inadequate capitalization, disregard of
21            corporate formalities, lack of segregation of corporate
           records, and identical directors and officers. No one
22            characteristic governs, but the courts must look at all the
           circumstances to determine whether the doctrine should be
23            applied.
24

25  *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538-39

26  (2000)(omitting citations).  Some of the other factors cited by California courts in

27  support of a finding of alter ego status have included: (1) sole ownership of all of the

28

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

ERVIN COHEN & JESSUP LLP

1  stock in a corporation by one individual; (2) employment of the same attorney; and

2  (3) the total absence of corporate assets.  *See Associated Vendors, Inc. v. Oakland*

3  *Meat Co.*, 210 Cal. App. 2d 825, 838-840 (1962).

4        Vizio has alleged that Lele is the alter ego of LeEco Global and/or LeEco V.

5  Paragraph 56 of the First Amended Complaint specifically alleges that, at all

6  relevant times, "there existed a unity of interest and ownership between Lele

7  Holding, Global Group and LeEco, such that LeEco is the alter ego of each or either

8  of them."  Vizio further alleged "adherence to the fiction of the separate existence of

9  LeEco, Lele Holding, and Global Group would permit an abuse of the corporate

10  privilege and promote injustice" by protecting them from liability for the wrongful

11  acts they each performed under the LeEco name.

12        The facts currently available to Vizio shows that at least several of these

13  factors can be established for Lele and LeEco Global and/or LeEco V.  For example,

14  in the Joint Notice, LeEco V submitted unaudited 2015 financial statements for both

15  Lele and LeEco Global. (*See* Wessel Decl. Ex. 3 [Lele], Ex. 4 [LeEco Global].)



24  Meanwhile, LeEco V was undercapitalized almost to the

25  point of having no assets at all, and it was always relying on the assets of

26  Lele/LeEco Global to conduct the merger with Vizio.  (*See* Wessel Decl., Ex. 1

27  [Limited Guarantee], § 13 ("[Vizio] acknowledges and agrees that the sole asset of

28  [LeEco V] is cash in a *de minimis* amount, and that no additional funds are expected

ERVIN COHEN & JESSUP LLP

1   to be contributed to [LeEco V] unless and until the Closing [of the Merger]

2   occurs."). ████████████████████████████████████████████

3   ████████████████████████████████████████████████████████ The

4   Defendants also all use the same counsel in this action.

5   ████████████████████████████████████████████████

6   ███████████████████████████████████████

7   ████████████████████████████████████████

8   ██████████████████████████████████████████

9   ████████████████████████████████████████

10  ███████████████████████████ There can be little

11  question that LeEco Global and LeEco V served simply as conduits through which

12  Jia and his holding company Lele managed their affairs.[4] (*See also* FAC, ¶¶ 4, 5

13  (alleging Lele was Jia's personal investment vehicle")

14       Because Lele was an alter ego of both LeEco Global and LeEco V, it is

15  subject to the Court's specific jurisdiction.

16  **V.    IF THE COURT HAS ANY DOUBTS REGARDING ITS**

17       **JURISDICTION OVER LELE, IT SHOULD PERMIT VIZIO TO**

18       **TAKE JURISDICTIONAL DISCOVERY**

19       Vizio has offered significant evidence and uncontroverted allegations to

20  demonstrate that Lele was both properly served in this action and is subject to the

21  Court's jurisdiction.  However, if the Court were to conclude that Vizio has not

22  sufficiently met its burden in any respect, then Vizio respectfully requests the Court

23  authorize Vizio to take written and deposition discovery directed towards the issues

24  needed to establish the requisite jurisdictional facts.

25  _____

26       [4] Vizio anticipates that the officers and directors of Lele, LeEco Global and
    LeEco V include only Jia himself, and perhaps some of his key executives that cross

27  multiple companies, such as Deng or Hsieh, but discovery would be needed to
    establish this and other facts relevant to Lele's alter ego status.

28

ERVIN COHEN & JESSUP LLP

1    If such discovery is needed, Vizio anticipates serving document requests on at

2  least Lele, LeEco V and, once LeEco Global has been served under the Hague

3  Convention and appears in this action, on LeEco Global.  Vizio would further seek

4  to depose Jia and Deng regarding their roles in, and the ties between, Lele and the

5  various LeEco entities.  Depending on the results of this discovery, Vizio might

6  need a limited number of additional depositions.

7    Denying a party jurisdictional discovery can be an abuse of discretion.  When

8  additional discovery "might well demonstrate facts sufficient to constitute a basis

9  for jurisdiction", the Ninth Circuit will reverse and remand district courts that deny

10  requests to conduct that jurisdictional discovery.  *See Harris Rutsky & Co. Ins.*

11  *Services, Inc.*, 328 F.3d at 1135 (reversing and remanding to allow a plaintiff "the

12  opportunity to develop the record and make a prima facie showing of jurisdictional

13  facts with respect to" its alleged alter ego).

14  **VI.    CONCLUSION**

15    Lele cannot be allowed to escape its liability for its wrongdoing against Vizio

16  based on two skimpy declarations that are rife with misstatements.  Lele's Motion to

17  Dismiss should be denied.  In the alternative, the Court should authorize Vizio to

18  conduct written and deposition discovery from Lele and other parties as needed to

19  obtain the facts necessary to establish this Court's proper jurisdiction over Lele.

20  DATED: March 12, 2018          ERVIN COHEN & JESSUP LLP

21                                            Robert M. Waxman
                                              David N. Tarlow
22                                            Jason L. Haas

23

24

25                                    By:  /s/ Robert M. Waxman

26                                          Robert M. Waxman
                                            Attorneys for Plaintiff VIZIO, INC., a
27                                          California corporation

28

OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
AND LACK OF PERSONAL JURISDICTION

ERVIN COHEN & JESSUP LLP