Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
  jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendant.<br>_____<br>LeECO V. LTD.,<br><br>Counter-Claimant,<br><br>vs.<br><br>VIZIO, INC., a California corporation,<br><br>Counter-Defendant. | Case No. 8:17-CV-01175-DOC-JDE<br><br>The Hon. David O. Carter<br><br>**DECLARATION OF CHRISTINE WESSEL IN SUPPORT OF PLAINTIFF VIZIO, INC.'S OPPOSITION TO MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION AND VIZIO'S APPLICATION FOR LEAVE TO FILE UNDER SEAL**<br><br>*[Filed Concurrently with Plaintiff Vizio, Inc.'s Opposition to Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction; Declaration of Jason Haas; Application for Leave to File Under Seal and [Proposed] Order Granting Leave to File Under Seal]*<br><br>**Date:        April 2, 2018**<br>**Time:        8:30 a.m.**<br>**Courtroom:    9D**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

# DECLARATION OF CHRISTINE WESSEL

I, Christine Wessel, declare and say:

1.      I am employed by Plaintiff Vizio, Inc., a California corporation ("Vizio" or "Plaintiff") in the capacity of Corporate Counsel - Securities and Governance.  I have worked at Vizio since 2014.  I make this Declaration in support of Plaintiff's Opposition to Defendant Lele Holding, Ltd.'s Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction (the "Opposition") as well as Vizio's Application for Leave to File Under Seal (the "Application").

2.      I have personal knowledge of the facts set forth in this Declaration.  If called upon as a witness to testify, I could and would testify competently to the facts set forth below, except as otherwise set forth below, and as to those matters, I believe them to be true.

3.      As Corporate Counsel – Securities and Governance for Vizio, I was involved in Vizio's efforts to finalize and implement its Merger Agreement with LeEco V. Ltd. ("LeEco").  In connection with this work, I am familiar with the Merger Agreement and received the exhibits to that Agreement when it was finalized.  Exhibit H to the Merger Agreement is a "Limited Guarantee" executed by Vizio and Le Technology, Inc. on or about July 6, 2016.  A true and correct copy of the Limited Guarantee is attached hereto as Exhibit "1" and incorporated herein by this reference.

4.      On or about September 7, 2016, Vizio and LeEco filed a confidential notice with the Committee on Foreign Investment of the United States ("CFIUS"), entitled "Joint Voluntary Notice with Respect to the Proposed Acquisition of Vizio, Inc. by LeEco V Ltd." (the "Joint Notice").  Along with Vizio's outside counsel, I was the primary person involved in drafting Vizio's portions of the Joint Notice, while LeEco worked with its own counsel to draft LeEco's portions of the Joint Notice.  I reviewed LeEco's portions prior to filing the CFIUS Joint Notice and am

familiar with the final document.  A true and correct copy of the Joint Notice is attached hereto as Exhibit "2" and incorporated herein by this reference.

5.    I am also familiar with the exhibits that were submitted with the Joint Notice.  Among the exhibits submitted with the Joint Notice were an unaudited balance sheet for Lele Holding Ltd. (the "Lele Balance Sheet"), an unaudited balance sheet for LeEco Global Group Ltd. (the "LeEco Balance Sheet"), and a chart demonstrating the post-closing ownership structure for LeEco, its subsidiaries, parents and ultimate beneficial owner, Yueting Jia (the "Ownership Chart").  True and correct copies of the Lele Balance Sheet, the LeEco Balance Sheet, and the Ownership Chart are attached hereto as Exhibits 3, 4 and 5, respectively, and are incorporated herein by this reference.

6.    The Joint Notice (and its exhibits) were filed confidentially with CFIUS.  The cover page of the Joint Notice specifically identifies that Notice as being confidential pursuant to 50 U.S.C. § 4565, and as exempt from disclosure under 5 U.S.C. §552(B), 50 U.S.C. § 4565(C), 31 C.F.R. § 800.702, and 32 C.F.R. § 286.  I understand and am informed that, under the relevant statutes and regulations, confidential information submitted to CFIUS can be filed in certain circumstances in judicial or administrative proceedings.  I further understand, however, that at least one federal court has found  that the "clearly articulated intention, on the part of each of the legislative and executive branches of our government, that the CFIUS process remain confidential" justifies protecting documents filed in court proceedings from disclosure.  *See In re Glob. Crossing Ltd.*, 295 B.R. 720, 724–25 (Bankr. S.D.N.Y. 2003)  While Vizio has no objection to making the documents attached hereto as Exhibits 2, 3, 4, and 5 public, in an abundance of caution, Vizio intends to submit an Application to file these exhibits under seal, and to file that Application concurrently with the Opposition and this Declaration.  Vizio's Application will permit Lele and/or LeEco V time to take any action they might deem appropriate to maintain the confidentiality of these exhibits.

1  I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3  Executed March 12, 2018, at Irvine, California.

4

5  _____

6  CHRISTINE WESSEL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

14676.8 9209087.5

3

8:17-CV-01175-DOC-JDE

DECLARATION OF CHRISTINE WESSEL

# EXHIBIT 1

**EXECUTION VERSION**

## <u>LIMITED GUARANTEE</u>

This Limited Guarantee (this "<u>Guarantee</u>") is made as of July 6, 2016, by Le Technology, Inc., a California corporation (the "<u>Guarantor</u>"), in favor of VIZIO, Inc., a California corporation ("<u>Company</u>").

WHEREAS, reference is made herein to that certain Agreement and Plan of Merger, dated as of the date hereof, (the "<u>Merger Agreement</u>"), by and among LeEco V Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands ("<u>Buyer</u>"), Le V Merger Sub Inc., a California corporation and direct wholly owned subsidiary of Buyer ("<u>Merger Sub</u>"), the Company and William W. Wang, an individual, solely in his capacity as shareholder representative. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Merger Agreement.

NOW, THEREFORE, as an inducement to the Company to enter into the Merger Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, the Guarantor undertakes and agrees for the benefit of the Company as follows:

1.      The Guarantor hereby absolutely, unconditionally and irrevocably guarantees to the Company the due and punctual payment, performance and discharge to the Company of the Buyer Termination Fee Remainder if and when payable under Section 9.2(b) of the Merger Agreement (the "<u>Obligation</u>"). Notwithstanding any of the terms or conditions of this Guarantee, (a) under no circumstance shall the maximum liability of the Guarantor to the Company under this Guarantee exceed the amount of the Obligation (the "<u>Cap</u>") for any reason (it being understood that this Guarantee may not be enforced without giving effect to the Cap); (b) under no circumstances shall the Guarantor be liable for special, incidental, consequential, exemplary or punitive damages; (c) in no event shall the Guarantor be required to pay an amount in the aggregate in excess of the Cap to any Person pursuant to, under, or in respect of this Guarantee; and (d) the Guarantor shall not have any obligation or liability to any Person relating to, arising out of, or in connection with the Merger Agreement, this Guarantee, or the transactions contemplated therein or herein, or any other agreement or instrument contemplated thereby or hereby, other than as expressly set forth herein. The Guarantor shall make prompt payment (in any event, no later than ten (10) Business Days after written demand by the Company therefor) to the Company of the amount of the Obligation if and when due under the Merger Agreement. All payments hereunder shall be made in lawful money of the United States in immediately available funds.

2.      In furtherance of the foregoing, the Guarantor acknowledges that, if the Obligation is due pursuant to the Merger Agreement, the Company may, in its sole discretion, bring and prosecute a separate action or actions against the Guarantor for the full amount of the Guarantor's liabilities hereunder in respect of the Obligation (subject to the terms and conditions of this Guarantee, including, without limitation, the Cap), regardless of whether action is brought against Buyer or whether Buyer is joined in any such action or actions.

3.      Subject to the express terms and conditions of this Guarantee, the Guarantor's liability hereunder is absolute, unconditional and irrevocable.  Without limiting the foregoing,

774451.02-LACSR01A - MSW

the Company shall not be obligated to file any claim relating to the Obligation in the event that the Buyer becomes subject to a bankruptcy, reorganization or similar proceeding, and the failure of the Company to so file shall not affect the Guarantor's obligations hereunder.  In the event that any payment hereunder is rescinded or must otherwise be returned for any reason whatsoever, the Guarantor shall remain liable hereunder as if such payment had not been made. This Guarantee is an unconditional and continuing guarantee of payment of the Obligation and not of collection.

4.      Notwithstanding anything to the contrary contained in this Guarantee, the Company hereby agrees that to the extent the Buyer is relieved of all or any portion of the Obligation by the satisfaction thereof or pursuant to any written agreement with the Company entered into prior to the Closing (any amount so relieved, the "Reduction Amount"), the Cap shall be reduced by an amount equal to the Reduction Amount.

5.      The Guarantor represents and warrants to the Company that:

(a)      The Guarantor is a corporation, validly existing and in good standing under the laws of the State of California, and has all requisite power and authority necessary to execute and deliver this Guarantee, and to perform its obligations hereunder. The execution, delivery and performance by the Guarantor of this Guarantee have been approved by the requisite corporate action, and no other action on the part of the Guarantor is necessary to authorize the execution, delivery and performance by the Guarantor of this Guarantee.

(b)      This Guarantee has been duly executed and delivered by the Guarantor and, assuming due authorization, execution and delivery of this Guarantee by the Company, constitutes legal, valid and binding obligations of the Guarantor, enforceable against the Guarantor in accordance with its terms, subject to applicable bankruptcy, fraudulent conveyance, insolvency, reorganization, moratorium and similar laws now or hereafter in effect relating to or affecting creditors' rights and remedies generally and to general principles of equity. Neither the execution and delivery of this Guarantee by the Guarantor, nor compliance by it with any of the terms or provisions of this Guarantee will (i) conflict with or violate any provision of the organizational documents of the Guarantor; (ii) violate any law, judgment, writ, stipulation or injunction of any governmental authority applicable to the Guarantor; or (iii) violate or constitute a default under any of the terms, conditions or provisions of any contract to which the Guarantor is a party.

(c)      All consents, approvals, authorizations, permits of, filings with and notifications to, any governmental authority necessary for the due execution, delivery and performance of this Guarantee by the Guarantor have been obtained or made and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any governmental authority is required in connection with the execution, delivery or performance of this Guarantee.

(d)      The Guarantor has the financial capacity to pay and perform the Obligation, and Guarantor shall maintain such financial capacity for so long as this Guarantee shall remain in effect in accordance with Section 8.

6.      No failure on the part of the Company to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Company of any right, remedy or power hereunder preclude any other or future exercise of any right, remedy or power.  Each and every right, remedy and power hereby granted to the Company or allowed it by law or other agreement shall be cumulative and not exclusive of any other and may be exercised by the Company at any time or from time to time.

7.      The Guarantor agrees that the Company may, in its sole discretion, at any time and from time to time, without notice to or further consent of the Guarantor, extend the time of payment of the Obligation, and may also make any agreement with the Buyer for the extension, renewal, payment, compromise, discharge or release thereof, in whole or in part, without in any way impairing or affecting the Guarantor's obligations under this Guarantee or affecting the validity or enforceability of this Guarantee.  To the fullest extent permitted by Law, the Guarantor hereby expressly waives any and all rights or defenses arising by reason of any Law which would otherwise require any election of remedies by the Company.  The Guarantor waives promptness, diligence, notice of the acceptance of this Guarantee and of the Obligation, presentment, demand for payment, notice of non-performance, default, dishonor and protest, notice of the Obligation incurred and all other notices of any kind (in each case, other than notices required to be made to the Buyer pursuant to the Merger Agreement), all defenses which may be available by virtue of any valuation, stay, moratorium Law or other similar Law now or hereafter in effect or any right to require the marshaling of assets of the Buyer or any other Person now or hereafter liable with respect to the Obligation or otherwise interested in the transactions contemplated by the Merger Agreement.  The Guarantor acknowledges that it will receive substantial direct and indirect benefits from the transactions contemplated by the Merger Agreement and that the waivers set forth in this Guarantee are knowingly made in contemplation of such benefits.  The Guarantor hereby covenants and agrees that it shall not assert as a defense in any proceeding to enforce this Guarantee, and shall cause its Affiliates not to assert as a defense in any such proceeding, that this Guarantee is illegal, invalid or unenforceable in accordance with its terms.

8.      This Guarantee is a continuing guarantee and shall be binding upon the Guarantor until the Obligation has been satisfied or paid in full. Notwithstanding the foregoing, this Guarantee shall terminate and the Guarantor shall have no further obligations under this Guarantee as of the earlier of (a) the Closing; and (b) 90 days after the termination of the Merger Agreement in accordance with its terms, if the Company has not presented a claim for payment hereunder to the Guarantor by such 90th day; provided that such claim shall set forth in reasonable detail the basis for such claim.  This Guarantee is a guarantee of payment of the Obligation; provided that the Guarantor shall be entitled to raise as a defense to the Obligation any and all defenses available to be raised by the Buyer.  Notwithstanding the foregoing, in the event that the Company or any of its Affiliates asserts in any litigation or other proceeding relating to this Guarantee that the provisions hereof (including, without limitation, Section 1 hereof) limiting the Guarantor's liability or any other provisions of this Guarantee are illegal, invalid or unenforceable in whole or in part, or asserting any theory of liability against the Guarantor with respect to the transactions contemplated by the Merger Agreement or this Guarantee, other than liability of the Guarantor under this Guarantee (as limited by the provisions hereof), then (i) the obligations of the Guarantor under this Guarantee shall terminate *ab initio* and thereupon be null and void; (ii) if the Guarantor has previously made any payments

3

under this Guarantee it shall be entitled to have such payments refunded by the Company; and (iii) neither the Guarantor nor any Non-Recourse Parties (as defined below) shall have any liability to the Company with respect to the transactions contemplated by the Merger Agreement or under this Guarantee.

9.      The Guarantor hereby agrees that the Obligation shall not be deemed to have been released, dismissed, impaired, reduced, discharged, paid, observed or performed or affected as the result of the bankruptcy, insolvency, disability, dissolution, termination, receivership, reorganization or lack of corporate or other power of the Buyer, and the Guarantor's liability in respect of the Obligation shall continue and not be discharged, including the case where any payment or performance thereof by the Buyer is recovered from or paid over by or on behalf of the Company by reason of a fraudulent transfer by the Buyer, or as a preference in any bankruptcy of the Buyer.

10.     No waiver, modification or amendment of any provisions of this Guarantee shall be effective except pursuant to a written agreement signed by the Company and the Guarantor, and then such waiver shall be effective only in the specific instance and for the purpose for which given. This Guarantee shall be binding upon and inure to the benefit of the successors-in-interest and permitted assigns of each party hereto. No rights or obligations hereunder shall be assignable (by operation of law or otherwise) by the Guarantor or the Company without the prior written consent of the Company or the Guarantor, as the case may be; provided that any such assignment shall not relieve the Guarantor of its obligations hereunder.

11.     This Guarantee may be executed and delivered (including by facsimile, PDF or other electronic transmission) in one or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

12.     This Guarantee shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof that would apply the laws of any other jurisdiction). Each of the parties hereto (a) consents to submit itself to the personal jurisdiction of the federal court of the Southern District of New York or any state court located in New York County, State of New York, in the event any dispute arises out of this Guarantee; (b) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from such court; and (c) agrees that it will not bring any action relating to this Guarantee in any court other than the federal court of the Southern District of New York or any state court located in New York County, State of New York.

13.     The Company acknowledges and agrees that the sole asset of the Buyer is cash in a *de minimis* amount, and that no additional funds are expected to be contributed to the Buyer unless and until the Closing occurs. Notwithstanding anything that may be expressed or implied in this Guarantee or any document or instrument delivered concurrently herewith, by its acceptance of the benefits of this Guarantee, the Company acknowledges and agrees that it has no right of recovery against, and no personal liability shall attach to, the Guarantor or any of its former, current or future director, officer, employee, agent, general or limited partner, manager, member, stockholder, Affiliate or assignee or any former, current or future director, officer, employee, agent, general or limited partner, manager, member, stockholder, Affiliate or assignee

4

of any of the foregoing (collectively, but not including the Buyer and Merger Sub, each a "Non-Recourse Party") through the Buyer or otherwise, whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of the Buyer against any Non-Recourse Party, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute, regulation or applicable law, or otherwise, except for its rights to recover from the Guarantor under and to the extent provided in this Guarantee and subject always to the Cap and the other limitations described herein. The Company further acknowledges and agrees that recourse against the Guarantor under and pursuant to the terms of this Guarantee shall be the sole and exclusive remedy of the Company and its Affiliates against the Guarantor and the Non-Recourse Parties in respect of any liabilities or obligations arising under, or in connection with, the Merger Agreement or the transactions contemplated thereby, including by piercing of the corporate veil or by or through a claim by or on behalf of the Buyer. Nothing set forth in this Guarantee shall affect or be construed to affect any liability of the Buyer or Merger Sub to the Company or shall confer or give or be construed to confer or give to any Person other than the Company (including any individual acting in a representative capacity) any rights or remedies against any Person, including the Guarantor, except as expressly set forth herein.

14.     Notwithstanding anything in this Guarantee to the contrary, in no event shall the Company be entitled to both the recovery under this Guarantee in respect of the Obligation and specific performance under the Merger Agreement as expressly contemplated by Section 11.12 thereof. The Company hereby covenants and agrees that it shall not institute, directly or indirectly, and shall cause its Affiliates not to institute, any proceeding or bring any other claim arising under, or in connection with, the Merger Agreement or the transactions contemplated thereby or otherwise relating thereto, against the Guarantor or any Non-Recourse Party except claims against the Guarantor under this Guarantee.

15.     All notices, requests, claims, demands and other communications hereunder shall be given by the means specified in the Merger Agreement (and shall be deemed given as specified therein), as follows:

If to the Guarantor:

Le Technology, Inc.
3553 North First Street
San Jose, CA 95134
Attention:  Eva Long
Facsimile No.:  669-253-2222
E-mail:  elong@hotmail.com

with a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071
Attention: Michael V. Gisser and Michael J. Mies
Facsimile No.: (213) 621-5213 and (650) 798-6510
E-mail: michael.gisser@skadden.com and michael.mies@skadden.com

5

If to the Company, as provided in the Merger Agreement.

16.     EACH OF THE PARTIES HERETO HEREBY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTEE OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY.

[Remainder of page intentionally left blank]

6

Wessel Dec. Exhibit 1 p.10

IN WITNESS WHEREOF, the Guarantor has duly executed and delivered this Guarantee as of the day first written above.

GUARANTOR:

LE TECHNOLOGY, INC.

By _Dongge Jiang_____
    Name: Dongge JIANG
    Title:  Director

Agreed to and accepted by:

THE COMPANY:

VIZIO, INC.

By_____
    Name:
    Title:

*[Signature Page to Limited Guarantee]*

Wessel Dec. Exhibit 1 p.11

IN WITNESS WHEREOF, the Guarantor has duly executed and delivered this Guarantee as of the day first written above.

GUARANTOR:

LE TECHNOLOGY, INC.

By _____
   Name: Dongge JIANG
   Title:   Director

Agreed to and accepted by:

THE COMPANY:

VIZIO, INC.

By _____
   Name:   KURTIS BINDER
   Title:    CFO

*[Signature Page to Limited Guarantee]*

Wessel Dec. Exhibit 1 p.12

# EXHIBIT 2

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



THIS INFORMATION IS SUBMITTED IN CONNECTION WITH THE CFIUS REVIEW PROCEDURES OF THE U.S. GOVERNMENT AND IS SUBMITTED ON THE BASIS THAT IT WILL BE EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT.

EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552(B), 50 U.S.C. § 4565(C),
31 C.F.R. § 800.702, 32 C.F.R. § 286

**CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;**
**EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552**



2

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



3

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.17

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



5

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



6

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.20

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



8

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



9

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.23

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.24

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.25

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



13

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.28

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.29

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



17

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.31

**CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;**
**EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552**



Wessel Dec. Exhibit 2 p.32

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.33

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



21

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.35

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.36

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.37

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



25

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.39

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



27

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



Wessel Dec. Exhibit 2 p.41



*Confidential Business Information*



# EXHIBIT 3



CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. 552



CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



# EXHIBIT 4

EXHIBIT F

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



CONFIDENTIAL PURSUANT TO 58 U.S.C. § 4565
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552



# EXHIBIT 5

CONFIDENTIAL PURSUANT TO 50 U.S.C. § 4565;
EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. 552

