Jeff K. Joyner (SBN CA 180485)
*joynerj@gtlaw.com*
Daniel Tyukody (SBN CA 123323)
*tyukodyd@gtlaw.com*
Robert H. Gruber (SBN CA 301620)
*gruberr@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendant
LeECO V. LTD.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL HOLDING LT., a/k/a LE GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; and DOES 1 through 10,<br><br>    Defendants. | CASE NO.  8:17-CV-01175-DOC-JDE<br><br>**DEFENDANT LeECO V. LTD.'S OPPOSITION TO PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**<br><br>Date:       April 23, 2018<br>Time:      8:30 A.M.<br>Courtroom: 9D<br><br>JUDGE:  Hon. David O. Carter |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. THE COUNTERCLAIMS AT ISSUE ........................................................... 2

    A. Count One for Breach of the Framework Agreement. ........................ 2

    B. Count Three for Declaratory Relief. .................................................... 4

III. ARGUMENT ................................................................................................. 5

    A. Legal Standard. ..................................................................................... 5

    B. Count One of the Counterclaims States a Plausible Claim for Breach of the Framework Agreement. ................................................ 6

    C. LeEco's Third Counterclaim for Declaratory Relief States a Plausible Claim. ..................................................................................... 6

        1. *The Essential Terms of the China JV Were Not Agreed Upon in the Framework Agreement.* ............................................. 7

        2. *The Framework Agreement Does Not Contain an Enforceable Obligation to Negotiate in Good Faith.* ........................ 11

    D. The Court Should Ignore Vizio's Specious Claim that LeEco's Argument Is Subject to Estoppel. ....................................................... 13

IV. CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Federal Cases**

*AK Metals, LLC v. Norman Indus. Materials, Inc.*,
   No. 12-CV-2595 IEG(WVG), 2013 WL 12123519 (S.D. Cal. Feb. 21, 2013) ............... 7

*Am. Gen. Life & Accident Ins. Co. v. Findley*,
   No. CV-1201753 MMM, 2012 WL 12893798 (C.D. Cal. July 6, 2012) ....................... 7

*Architectronics, Inc. v. Control Sys., Inc.*,
   935 F. Supp. 425 (S.D.N.Y. 1996) ............................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 5

*Busch v. Dyno Nobel, Inc.*,
   40 Fed. App'x 947 (6th Cir. 2002) ........................................................................... 10

*Haupricht v. Garno*,
   811 F.2d 605, 1986 WL 18451 (6th Cir. 1986) ......................................................... 8

*Miller Farms Nursery, Inc. v. Nedegaard Const. Co. Inc.*,
   68 F. App'x 845 (9th Cir. 2003) ................................................................................ 8

*Multi–Tech Sys., Inc. v. Floreat, Inc.*,
   No. CIV. 01–1320 DDA/FLN, 2002 WL 432016 (D. Minn. Mar. 18, 2002) ............ 8

*Naidong Chen v. Fleetcor Techs., Inc.*,
   No. 16-CV-00135-LHK, 2017 WL 1092342 (N.D. Cal. Mar. 23, 2017) ............ 11, 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................. 6

**State Cases**

*Boyd v. Bevilacqua*,
   247 Cal. App. 2d 272 (1966) ............................................................................... 9, 10

*Bustamante v. Intuit*,
   141 Cal. App. 4th 199 (2006) ................................................................................... 9

*Copeland v. Baskin Robbins U.S.A.*,
   96 Cal. App. 4th 1251 (2002) ............................................................................ 11, 12

*Holmes v. Lerner*,
   74 Cal. App. 4th 442 (1999) ............................................................................... 9, 10

GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121

ii                              CASE NO.  8:17-CV-01175-DOC-JDE
DEFENDANT LeECO V. LTD.'S OPPOSITION TO PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS
LA 133583275v6

*Ladas v. Cal. State Auto. Assn.*,
   19 Cal. App. 4th 761 (1993) ................................................................................. 9

*Okun v. Morton*,
   203 Cal. App. 3d 805 (1988) ........................................................................... 9, 10

*W. Homes, Inc. v. Herbert Ketell, Inc.*,
   236 Cal. App. 2d 142 (1965) ............................................................................ 9, 12

**Statutes**

28 U.S.C. § 2072(b) ..................................................................................................... 6

**Other Authorities**

9 Williston on Contracts § 26:21 (4th ed.) ................................................................... 7

GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121

iii                                                     CASE NO.  8:17-CV-01175-DOC-JDE
DEFENDANT LeECO V. LTD.'S OPPOSITION TO PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS
LA 133583275v6

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant LeEco V. Ltd. ("LeEco") files its Opposition in response to Plaintiff Vizio, Inc.'s ("Vizio") Motion to Dismiss ("Motion") the first and third counts in LeEco's Counterclaim.

## I.   INTRODUCTION

LeEco states plausible claims in its Counterclaim and thus Vizio's Motion must be denied.

LeEco's first Counterclaim states a plausible claim that Vizio breached the Framework Agreement[1] by bringing claims that the parties had settled and released (the "Released Claims").  The Rules Enabling Act precludes Vizio's argument that pleading its sixth claim for breach of the Merger Agreement[2] (a Released Claim) "in the alternative" does not constitute a breach of the Framework Agreement.  In addition, Vizio's argument overlooks the central fact that LeEco's first Counterclaim is also directed to each of Vizio's "Fraud Based Claims," (i.e., counts two through five, also Released Claims) which Vizio does *not* plead in the alternative.

LeEco also states a plausible Counterclaim for Declaratory Relief that the portions of the Framework Agreement related to the proposed China Joint Venture ("China JV") constitute an unenforceable "agreement to agree."  Vizio's reliance in its Motion on the California Commercial Code—California's enactment of the Uniform Commercial Code ("UCC")—is misplaced because the UCC does not apply to the Framework Agreement.  But more importantly, whether the UCC applies or not, the "gap filling" cases cited in

---

[1] Framework, Termination, and Mutual General Release Agreement, dated April 5, 2017, entered into by LeEco V. Ltd. with Vizio.  Citations to Framework Agreement are referenced as "FA" herein.  As has been LeEco's past practice, throughout this brief all emphasis has been added.

[2] Agreement and Plan of Merger, dated July 6, 2016, entered into by LeEco V. Ltd. and Le V Merger Sub Inc. with Vizio.  Citations to Merger Agreement are to "MA" herein.  True and correct copies of the Framework Agreement and Merger Agreement (minus its voluminous exhibits) are attached to the Declaration of Robert H. Gruber (Dkt. No. 47-2) in support of LeEco's motion to dismiss as Exhibits "A" and "B" respectively.

1  Vizio's Motion do not support Vizio's conclusion that the terms needed to complete the
2  proposed China JV are minor matters that the Court can fill in.  Instead, the Motion's
3  inapposite cases confirm that this portion of the Framework Agreement is an
4  unenforceable "agreement to agree."  Moreover, the Court should ignore Vizio's estoppel
5  argument because LeEco has never asserted that "there is *no valid contract* between the
6  parties."  Motion at 10.  Rather, LeEco's consistent position has been that the "*portions*"
7  of the Framework Agreement "*relating to the China JV* do not constitute a binding
8  contract."  Counterclaim ¶ 34.  For these reasons, the Court should deny Vizio's Motion.

## II.     THE COUNTERCLAIMS AT ISSUE

### A.     Count One for Breach of the Framework Agreement.

Count one of LeEco's Counterclaim alleges that Vizio breached the Framework Agreement when it brought claims in the Underlying Lawsuit[3] for the termination and breach of the Merger Agreement.  The "Framework, Termination and Mutual General Release Agreement," as its name suggests, terminated the Merger Agreement on specified terms, and settled and released all potential claims "aris[ing] out of or in any way relate[d]" to any claim of breach of the Merger Agreement.  FA § 6.2.  Vizio specifically released any claim related to (i) its entry into the Merger Agreement, (ii) any alleged breach of the Merger Agreement, and (iii) the termination of the Merger Agreement (collectively defined in the Framework Agreement as "Company Released Claims.").  FA § 6.2.  Vizio settled and released those claims in exchange for LeEco's payment of $40 million to Vizio under the Framework Agreement.  FA § 1.1.

Notwithstanding that binding settlement agreement, which eliminated all potential claims relating to the Merger Agreement, Vizio's sixth cause of action is for "Breach of the Merger Agreement," and its second through fifth causes of action seek to undo the settlement by alleging fraud in connection with the termination of the Merger Agreement.

---

[3] The "Underlying Lawsuit" is defined in LeEco's Counterclaim as the case Vizio filed against LeEco on July 11, 2017, entitled *Vizio Inc. v. LeEco V. Ltd., et al.,* Case No.  8:17-CV-01175-DOC-JDE.

It is undisputed that Vizio's sixth cause of action is a Released Claim. In addition, Vizio's claims two through five (the "Fraud Based Claims") of the First Amended Complaint ("FAC") are also Released Claims. The Fraud Based Claims allege that the Merger Agreement was terminated as a result of fraud, which contradicts the parties' agreement that the Merger Agreement was settled knowingly and voluntarily. FA § 1.1 (terminating the Merger Agreement pursuant to MA § 9.1(a), which is the mutual walk-away without penalty).

The Framework Agreement includes representations, warranties and remedies demonstrating the parties' intention to insulate themselves from the kind of "fraud in the inducement" contention that underlies each of Vizio's Fraud Based Claims. The Framework Agreement provides that neither party relied upon "any statement, representation or promise of any other Party . . . in making the settlement provided for herein" (FA § 7.6). The parties also set forth two "Representations and Warranties" in Sections 7.5 and 7.8 that are specific to the settlement and release of claims under the Merger Agreement. Section 7.5 specifies that each "Party has received independent legal advice with respect to the matters set forth in this Agreement, the Claims released in Sections 1.1 and 6 hereof and with respect to the rights and asserted rights arising out of such matters. . . ." FA § 7.5. Section 7.8 provides that each "Party has made such investigation of the facts pertaining to this settlement and Sections 1.1 and 6 hereof, and of all the matters pertaining thereto, as it deemed necessary." FA § 7.8. The Framework Agreement explicitly provides for an injunction and attorneys' fees for a violation of the release as follows:

> [The] agreements in Sections 1.1 and 6 [i.e., the Sections dealing with the settlement and release of Released Claims] may be used as the basis for an *injunction against any action* … instituted or maintained …. *If any Claim is brought* or maintained against any Buyer Released Party … in violation of this Agreement, *the releasing party will be responsible* for all costs and expenses, including, without limitation, *reasonable attorneys' fees*, incurred by the released party in defending same.

FA § 8.  LeEco's first Counterclaim seeks attorney's fees and other damages to which LeEco is entitled based on Vizio's breach of the Framework Agreement.

### B. Count Three for Declaratory Relief.

Count three of the Counterclaim requests a declaration that the portions of the Framework Agreement related to the proposed China JV do not create an enforceable legal obligation, but instead constitute an unenforceable "agreement to agree."[4]  The Framework Agreement left multiple essential elements for future agreement ("Essential Terms") including how long the joint venture was to last, what its capital structure was to be, what sales targets would qualify as a success, and what prices would be charged for products that had yet to be designed and manufactured.  The FA:

- References an "Initial JV Term" but never defines how long that "initial" term would be.  FA § 3.2.2.
- Suggests that the parties would operate with a "long term partnership spirit" but fails to define that term.  *Id.*
- Mentions that LeEco "will lend up to a maximum amount to be agreed upon … for working capital" (defined as the "Buyer Loan") over that Initial JV term, making up the initial working capital structure of the joint venture.  Yet, it does not say how much the "Buyer Loan" would be (much less what its other terms would be).  FA § 3.2.7.
- Mentions that if the China JV achieves an undefined "Sales Target," the "Buyer Loan" shall be "repaid in full."  FA § 3.2.7(a).  The agreement fails to state what the Sales Target would have been for brand new, not yet even designed consumer products.

---

[4] In addition to a determination regarding the rights and responsibilities of the parties with respect to the China JV, LeEco's request for Declaratory Relief also seeks a judicial declaration that "the $10 million remaining in escrow should be immediately returned to LeEco." Counterclaim ¶ 34.  Vizio does not mention this aspect of LeEco's third Counterclaim, conceding the benefit of the Court deciding this issue.

- Did not set intracompany prices between Vizio and LeEco for the brand new products that were supposed to combine the respective proprietary technologies of each company—from LeEco, its "Le App" technology, and from Vizio, its "Inscape Data" technology, FA §§ 2.1 & 2.2—except for a reference that they would be priced on a "per user/per television" basis. FA § 2.2.3.
- Does not mention the prices that the joint venture would charge consumers, which would affect whether the "Sales Target" would be achieved (and thus whether the "Buyer Loan" would be considered paid in full).

Nowhere in the Framework Agreement does it set out an enforceable obligation to negotiate or agree upon these missing Essential Terms. The few principles outlined in the Framework Agreement for the proposed formation of the China JV are preceded by a statement that they are only "*proposed* terms." FA § 3.2. The Framework Agreement mentions that "the Parties shall negotiate in good faith and use reasonable efforts to form a commercial relationship" in China, referring to it as a "*proposed* commercial relationship." FA § 3.1. The Framework Agreement omits any requirement that the parties *actually achieve* that future agreement.

### III.  ARGUMENT

#### A.  Legal Standard.

In considering a motion to dismiss, all allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff (in this case Counterclaimant LeEco). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need only allege sufficient facts to show "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For the reasons discussed below, LeEco's Counterclaim easily satisfies this standard.

**B.  Count One of the Counterclaims States a Plausible Claim for Breach of the Framework Agreement.**

The Rules Enabling Act prohibits Vizio from using Federal Rule of Civil Procedure 18, a rule of procedure, to abridge LeEco's substantive right to bring its first Counterclaim for Breach of the Framework Agreement. *See* 28 U.S.C. § 2072(b) (the Federal Rules "shall not abridge, enlarge or modify any substantive right"); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("[T]he Rules Enabling Act forbids interpreting [the Federal Rules of Civil Procedure] to abridge, enlarge or modify any substantive right."). Vizio's argument—that LeEco's claim is not plausible because Vizio's sixth cause of action is pled "in the alternative"—must fail because its interpretation of Rule 18 abridges LeEco's substantive rights. The Framework Agreement explicitly states that LeEco may seek relief "against *any action* … instituted or maintained … in violation" of the release granted for Released Claims, regardless of whether that action is pled in the alternative. FA § 8.

Although Vizio's Motion tacitly acknowledges the Framework Agreement settled and released Vizio's sixth cause of action, it fails to acknowledge that LeEco's Counterclaim is also directed towards Vizio's "Fraud-Based Claims," which are claims two through five of the FAC. So, even under Vizio's improper Rule 18 argument, LeEco still has a valid Counterclaim for Vizio's breach of the "Fraud Based Claims," which are not plead in the alternative. The Framework Agreement explicitly prohibits Vizio from asserting the kind of fraud in the inducement claim that underlies each of Vizio's Fraud Based Claims. Plainly, LeEco's first Counterclaim states a plausible claim under *Iqbal* and its progeny.

**C.  LeEco's Third Counterclaim for Declaratory Relief States a Plausible Claim.**

LeEco states a plausible claim for a judicial declaration that "the terms of the Framework Agreement relating to the China JV do not constitute a binding contract, and instead constitute an unenforceable 'agreement to agree.'" Counterclaim ¶ 34.

Vizio's argument that the China JV portion of the Framework Agreement constitutes an enforceable agreement and that "minor details" relating to "post-acquisition management" of the China JV can be filled by "statutory gap fillers under the California Commercial Code" (Motion at 7) is wrong on two fronts. First, the California Commercial Code does not apply to the Framework Agreement, which concerns the creation of a joint venture, not the sale of goods.[5] Second, even if the Commercial Code did apply, none of Vizio's authorities support the Court "gap filling" the proposed China JV. *See* Section III.C.1. In addition, as discussed in Section III.C.2., the Framework agreement does not contain an enforceable obligation to negotiate in good faith.

Significantly, Vizio does not object to LeEco's declaratory relief request on the usual grounds for objecting to declaratory relief, which is that it would not serve a useful purpose in hastening the ultimate resolution of the litigation.[6] The dispute over LeEco's Counterclaims shows that it is appropriate and useful for the Court to declare the parties' rights and obligations on the face of the Framework Agreement to ultimately resolve this case.

### 1. *The Essential Terms of the China JV Were Not Agreed Upon in the Framework Agreement.*

The Essential Terms of the China JV are missing from the Framework Agreement, and Vizio's attempt to use the UCC's "gap filling" approach is not appropriate. Vizio's

---

[5] *See* 9 Williston on Contracts § 26:21 (4th ed.) ("A contract by which the parties agree as partners, or as joint venturers, to acquire and divide goods or to acquire and then sell goods to a third person or persons, or simply to sell goods to a third person or persons for their joint benefit, has not historically been treated as a contract for the sale of goods within the terms of the [UCC Statute of Frauds].").

[6] *See AK Metals, LLC v. Norman Indus. Materials, Inc.*, No. 12-CV-2595 IEG(WVG), 2013 WL 12123519, at *3 (S.D. Cal. Feb. 21, 2013) (denying motion to dismiss counterclaim for declaratory relief because "Plaintiff … does not adequately demonstrate that Defendant's counterclaims serve no useful purpose"); *Am. Gen. Life & Accident Ins. Co. v. Findley*, No. CV-1201753 MMM, 2012 WL 12893798, at *5 (C.D. Cal. July 6, 2012) (denying motion to dismiss where insurer's declaratory relief claim had the potential to prevent a claim by the insured for denial of benefits).

fundamental premise that the California Commercial Code applies to this case is wrong. The Framework Agreement consists of two things, neither of which principally pertains to the sale of goods. First and foremost, as its full name suggests, the "Framework, Termination and Mutual General Release Agreement" is primarily a settlement agreement pursuant to which Vizio settled and released all claims relating to the Merger Agreement. Second, it provides the "framework" for a "proposed" joint venture.

In determining whether the UCC applies under California law, "a court must look to the essence of the agreement." *Miller Farms Nursery, Inc. v. Nedegaard Const. Co. Inc.*, 68 F. App'x 845, 846–47 (9th Cir. 2003) (essence of the contract was services, not the sale of goods). The case Vizio relies upon for its assertion that "'the majority view is that distributorship and dealership contracts are governed by the [UCC]'" is pure *dicta*, as the parties in that case were not disputing the application of the UCC. Motion at 7 (quoting *Boyd v. Oscar Fisher Co.*, 210 Cal. App. 3d 368, 378 (1989)). Rather, most courts have determined that a joint venture like the one contemplated in the Framework Agreement does not have as its essence the "sale of goods."[7] No one reviewing the Framework Agreement could rationally conclude that it was primarily about a distribution or dealership contract.

Even if the Court were to apply the UCC, "[t]he general rule is that if an essential element of a promise is reserved for the future agreement of both parties, the promise

---

[7] *See, e.g., Haupricht v. Garno*, 811 F.2d 605, 1986 WL 18451, at *1 (6th Cir. 1986) ("This court … concludes upon a review of the entire record that the cited section of the UCC was inapplicable inasmuch as … the agreement between the parties was more appropriately characterized as a joint venture rather than a seller-buyer relationship."); *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 432 (S.D.N.Y. 1996) (in a joint venture to develop and distribute computer display drivers, the predominant purpose of the parties license agreement was not the sale of goods but rather a transfer of intellectual property rights); *Multi–Tech Sys., Inc. v. Floreat, Inc.*, No. CIV. 01–1320 DDA/FLN, 2002 WL 432016, at *3 (D. Minn. Mar. 18, 2002) ("The few cases considering the question indicate that the UCC does not apply to an agreement to design and develop a product, even if compensation under that agreement is based in part on later sales of that product.").

gives rise to no legal obligation until such future agreement is made." *Boyd v. Bevilacqua,* 247 Cal. App. 2d 272, 285 (1966) (internal citation omitted) (cited in Motion at 6). In addition, "[a] contract which leaves an essential element for future agreement of the parties is usually held fatally uncertain and unenforceable." *Okun v. Morton*, 203 Cal. App. 3d 805, 817 (1988) (internal citation omitted) (cited in Motion at 5-6). As set forth in Section II.B, the Framework Agreement omits numerous Essential Terms.

The Essential Terms missing from the Framework Agreement are not matters of mere "'post-acquisition management'" (Motion at 5, 7), a phrase that comes from *dicta* in *Holmes v. Lerner*, 74 Cal. App. 4th 442, 458 (1999). The China JV is only identified as a proposal in the Framework Agreement, and Essential Terms like price, capital structure, and even the length of time the "proposed" joint venture would be in operation have not been agreed upon. The Court cannot formulate such Essential Terms for the parties. *See Bustamante v. Intuit*, 141 Cal. App. 4th 199, 209 (2006) (finding proposed joint venture not enforceable where parties failed to agree on numerous material terms including the duration of the plaintiff's management role, his compensation, and the amount of the defendant's royalty); *W. Homes, Inc. v. Herbert Ketell, Inc.*, 236 Cal. App. 2d 142, 144–46 (1965) (court could not fill in the gaps where the alleged agreement had a "complete absence" of essential terms, including the duration of the relationship and the form and amount of compensation); *Ladas v. Cal. State Auto. Assn.*, 19 Cal. App. 4th 761, 770 (1993) ("Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable."). Moreover, the contract Vizio envisions the Court drafting would not be enforceable because any damages from a breach of the Essential Terms never agreed upon would be speculative.

None of the cases that Vizio cites adopt a "gap filling" approach along lines that are remotely similar to what Vizio envisions the Court should do here. Instead, they involve parties who were trying to back out of agreements in an attempt to take advantage of their joint venture partner. For example, *Holmes v. Lerner* involved a post-trial appeal (as

opposed to a motion to dismiss) where a defendant attempted to abscond with a business opportunity presented by a joint venture. 74 Cal. App. 4th at 449-51. The court in *Holmes* did not engage in "gap filling" and, instead, affirmed a jury verdict's conclusion that the two parties had formed a partnership notwithstanding the absence of an express agreement to share profits. *Id.* (finding "Holmes was not seeking enforcement of a single vague term … and her agreement [had been] completely renounced.").

*Busch v. Dyno Nobel, Inc.*, 40 Fed. App'x 947 (6th Cir. 2002) is likewise inapplicable. There, the plaintiff went deeply into debt and built a new factory tailored to the defendant's exacting specifications, but the defendant contended that it was not obligated to buy anything because the contract was allegedly indefinite. Contrary to Vizio's contention that "a *minor element* of the contract … included the construction of the plant" (Motion at 7), the Sixth Circuit characterized "the creation of a manufacturing plant" as a "*major element* of the contract." *Id*. at 955. The court found that the letter agreement had specified the quantity the defendant would buy, and prices the plaintiff would charge, for a particular chemical. *Id.* at 956, n.4. Based on this finding, the Sixth Circuit overturned the trial court's decision granting judgment to the defendant at the close of plaintiff's case. *Id.* at 965.

Similarly, *Okun* featured a situation where the parties had agreed upon the essential terms of their contract. The parties had a long history of actual performance before the defendant tried to back out of the deal. The contract gave the plaintiff the right to participate in all future business expansion opportunities at a defined ownership level, with a defined capital structure, and an agreement regarding the payment of operating expenses. On appeal from a jury verdict in favor of plaintiff, the court held the essential terms of the agreement were defined, and the defendant could not escape the basic bargain on grounds of contractual ambiguity. *Okun,* 203 Cal. App. 3d at 817. Likewise, in the *Boyd* case, the parties reached agreement on the basic terms for the development of a parcel of land. Yet, the defendant breached that agreement by absconding with the business opportunity. *See Boyd,* 247 Cal. App. 2d at 291 (finding "the jury were

warranted in concluding that defendants … breached their duties … and secured an advantage by acquiring the property of the joint venture to the exclusion of plaintiffs.").

In sum, the case law cited by Vizio does not support the drastic "gap filling" it asks the Court to perform here. The Framework Agreement is missing Essential Terms regarding the China JV and thus LeEco has at minimum alleged sufficient facts under existing law to state a plausible claim for declaratory relief under *Iqbal*.

### 2. *The Framework Agreement Does Not Contain an Enforceable Obligation to Negotiate in Good Faith.*

The Framework Agreement's provision for the parties to negotiate in good faith is not an enforceable obligation because it is entirely equivocal about the "*proposed commercial relationship*." FA § 3.1. The Framework Agreement states that the parties will "negotiate in good faith and use reasonable efforts to form a commercial relationship" in China, referring to it as a "*proposed* commercial relationship," under the heading of "*proposed* terms." FA §§ 3.1, 3.2. This language is distinguishable from that used in the contracts at issue in Vizio's primary authorities. *See* Motion at 8-9 (citing *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251 (2002) and *Naidong Chen v. Fleetcor Techs., Inc.*, 16-CV-00135-LHK, 2017 WL 1092342 (N.D. Cal. Mar. 23, 2017)).

In *Copeland*, the offer letter stated that Baskin Robbins "*would agree*, subject to a separate co-packing agreement and negotiated pricing, to provide [Copeland] a three year co-packing agreement." 96 Cal. App. 4th at 1254. In *Naidong Chen*, the subject agreement said "*You will be* awarded 10,000 of … Stock Options. *We will* work together to establish the performance criteria [for vesting] over the next months." 2017 WL 1092342 at * 1 & 12. The court in *Copeland* found that the sale of the plant to plaintiff was not economically viable without a "co-packing" agreement, and Baskin Robbins had committed to buy a specific volume of product from the plant over a defined term. 96 Cal. App. 4th at 1255. The *Naidong Chen* court articulated the self-evident fact that options have no value unless they can vest. The court also found that there was substantial evidence that the plaintiff was being unfairly subjected to an ever-vanishing

time horizon for vesting, and ever-changing performance criteria, some of which were impossible to satisfy.  2017 WL 1092342, at *12.  Unlike the Framework Agreement, there was nothing uncertain in either of these cases because the defendants had reached an underlying agreement and were committing themselves to an agreement on future items.  The Framework Agreement is different.  There is nothing saying the parties "would agree" as in *Copeland*, or that "we will" reach a subsequent agreement as in *Naidong Chen*.  Instead, the China JV is labelled as just a proposal and nothing more.

The language employed in the Framework Agreement is more similar to the language employed in *W. Homes, Inc.* where the relevant provision provided, "The Parties *contemplate* that Western Homes, Inc. … shall handle leasing, rental collection, and management of the entire project."  236 Cal. App. 2d at 143-144.  The Court in *W. Homes* found that the failure of this provision to create an enforceable obligation is directly tied to the absence of agreement on other key terms, i.e. "complete absence of essentials":

> Nothing is said about the amount of compensation, nor … is there a word about the duration of employment. ….[T]here is no termination date. . . .[or indication of] whether . . . plaintiff . . . was to be engaged as an independent contractor or as an employee.  It is evident that the parties had not yet struck an agreement, and that … the parties had not arrived at a binding agreement ….The instrument is essentially lacking in certainty of terms.

*Id*. at 145.  Like the contract in *W. Homes*, the Framework Agreement lacks the Essential Terms necessary to constitute an enforceable legal obligation.

In addition, Vizio's authorities make clear the important point that even an enforceable contract to negotiate a future agreement *does not* require that the parties *actually achieve* that future agreement:  "If, despite their good faith efforts, the parties fail to reach ultimate agreement on the terms in issue the contract to negotiate is deemed performed and the parties are discharged from their obligations.  Failure to agree is not, itself, a breach of the contract to negotiate."  *Copeland*, 96 Cal. App. 4th at 1257; *see also Naidong Chen*, 2017 WL 1092342 at *7 (quoting the above language from *Copeland*).

Moreover, the Parties' argument over these issues, which can be resolved by reference to the Framework Agreement, demonstrates why a declaratory relief claim is useful and appropriate in this case. Therefore, LeEco's third Counterclaim for declaratory relief states a plausible case under *Iqbal*.

### D. The Court Should Ignore Vizio's Specious Claim that LeEco's Argument Is Subject to Estoppel.

The Court should ignore Vizio's closing argument that LeEco is allegedly estopped from "claiming that there is no valid contract between the parties." Motion at 10. Vizio's misleading argument mischaracterizes LeEco's position. LeEco's position has always been that while the termination and release portions of the Framework Agreement are binding, the speculative *portions of the Framework Agreement pertaining to a proposed China JV* constitute an unenforceable "agreement to agree."[8] LeEco's motion to dismiss Vizio's FAC makes this distinction,[9] so the Court could not have been misled about LeEco's fundamental position. The Court should not countenance Vizio's attempt to distort the record.

///
///
///
///

---

[8] The Framework Agreement provides that its terms may be severable. FA § 9.7.

[9] In its Motion to Dismiss Vizio's FAC (Dkt. 47-1), LeEco stated, "[The Parties] agreed upon a contract that had *two distinct components*: (i) the *unconditional release* of all claims under the Merger Agreement upon the payment of $40 million to Vizio; and (ii) *an agreement to try to agree* upon the terms of a joint venture based in China." Motion to Dismiss Vizio's FAC at 8:9-12. Similarly, LeEco's Reply (Dkt. 51) in support of its Motion to Dismiss stated that, "[T]he Framework Agreement draws a *sharp distinction* between the *unequivocal release* of claims under the Merger Agreement on the one hand, and the *tenuous language* regarding the potential formation of a proposed China JV on the other." LeEco's Reply in support of LeEco's Motion to Dismiss at 1.

## IV. CONCLUSION

For the foregoing reasons, LeEco respectfully requests that the Court deny Vizio's Motion.

Respectfully submitted,

DATED:  March 26, 2018            GREENBERG TRAURIG, LLP


By  /s/ Jeff K. Joyner
Jeff K. Joyner
Daniel Tyukody
Attorneys for Defendant
LeECO V. LTD.