Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
  jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>LeECO V. LTC., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL HOLDING LTD., a/k/a LE GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; and DOES 1 through 10,<br><br>        Defendant. | Case No. 8:17-CV-01175-DOC-JDE<br><br>**PLAINTIFF/CROSS-DEFENDANT VIZIO, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).**<br><br>The Hon. Judge David O. Carter<br><br>Date:          April 2, 2018<br>Time:         8:30 a.m.<br>Courtroom: 9D |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 2

II. ARGUMENT ......................................................................................................... 2

    A. Count One of the Counterclaim Fails to State a Plausible Claim For Breach of the Framework Agreement, As Any Such Claim Would Be Premature. ................................................................................... 2

    B. LeEco's Third Counterclaim for Declaratory Relief Does Not State a Plausible Claim. ................................................................................ 7

        1. The UCC Is Applicable to The Framework Agreement ............... 7

        2. The Essential Terms of the Joint Venture Agreement Were Agreed to in the Framework Agreement. .................................... 8

        3. The Framework Agreement Contains An Enforceable Obligation to Negotiate In Good Faith. ...................................... 11

    C. LeEco Should Be Judicially Estopped From Pursuing its Counterclaim for Declaratory Relief. ..................................................... 13

III. CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Architectronics, Inc. v. Control Sys., Inc.*,
  925 F. Supp. 425 (S.D.N.Y. 1996)...............................................................................8

*Boyd v. Bevilacqua*,
  247 Cal. App.2d 272 (1966).........................................................................................9

*Boyd v. Oscar Fisher Co.*,
  210 Cal. App.3d 368 (1989).........................................................................................7

*Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*,
  2012 WL 12883616 @ 19-21 (C.D. Cal.)....................................................................6

*C.J.L. Construction, Inc. v. Universal Plumbing*,
  18 Cal. App.4th 376 (1993).......................................................................................14

*Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.*,
  214 F.3d 1030 (9th Cir. 2000)...................................................................................13

*Copeland v. Baskin-Robbins, U.S.A.*,
  96 Cal. App.4th 1251 (fn. 2)(2002).........................................................9, 11, 12, 13

*Fisher v. Pennsylvania Life Co.,* 69 Cal. App. 3d 506 (1977) ........................................5

*Hauprict v. Garno*,
  811 F.2d 605, 1986 WL 18451 at *1 (6th Circuit).....................................................8

*Huntress v. Huntress' Estate*,
  235 F.2d 205 (7th Cir. 1956).......................................................................................2

*Lasry v. Lederman*,
  147 Cal. App.2d 480 (1957).........................................................................................9

*Morgan Tire of Sacramento v. Goodyear Tire & Rubber Co.*,
  60 F. Supp. 1109 (E.D. 2014).....................................................................................7

*Multi-Tech Sys., Inc. v. Floreat, Inc.*,
  NO. CIV. 01-1320 DDA/FLN, 2002 WL 432016 at *3 (D. Minn. Mar. 18, 2002)..............................................................................................................................8

*Naidong Chen v. Fleetcor Techs., Inc.*,
  16-CV-00135- LHK, 2017 WL 1092342 (N.D. Cal. Mar. 23, 2017).......11, 12

*Reiydelle v. J.P. Morgan Chase Bank, N.A.*,
  2014 WL 2159010, * 8 (N.D. Cal.)...........................................................................14

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corporation*,
  32 Cal. App.4th 985 (1995).........................................................................................5

*Sally Beauty Co, Inc. v. Nexxus Products Co., Inc.*,
    801 F.2d 1001 (7th Cir. 1986) ................................................................................ 7

*Sanchez v. Mortgagelt, Inc.*,
    2011 WL 588178, *3 (N.D. Cal.) ......................................................................... 14

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
    559 U.S. 393, 130 S.Ct. 1431, 1442, 176 L.Ed.2d 311, (2010) ......................... 4

*Ticketmaster, L.L.C. v. RMG Technologies, Inc.*,
    536 F. Supp.2d 1191 (C.D. Cal. 2008) ............................................................... 14

*Varni Bros. Corp. v. Wine World, Inc.*,
    35 Cal. App.4th 880 (1995) ................................................................................... 7

*Western Homes, Inc. v. Herbert Ketell, Inc.*,
    236 Cal.App.2d 142 (1965) ................................................................................. 13

**STATUTES**

*California Civil Code* § 1667 ...................................................................................... 6

*California Civil Code* § 1668 ...................................................................................... 6

*California Commercial Code* § 2204(1)(c) ............................................................... 8

*California Commercial* Code § 2309(2) .................................................................... 8

**RULES**

*Federal Rules of Civil Procedure* 18(b) .................................................................... 2

*Federal Rules of Civil Procedure* 12(b)(6) ............................................................... 2

## I. INTRODUCTION

Plaintiff/Counter-Defendant VIZIO, INC. ("VIZIO") and Defendant/Counterclaimant LeECO V. LTD. ("LeEco") entered into a written agreement with respect to a Joint Venture (the "China JV") for the distribution of VIZIO products in China through LeEco's distributing/omni channels. LeEco has denied the relationship, and has counterclaimed against VIZIO in this action. In its Counterclaims, LeEco has not stated, and cannot state a claim for its First and Third Counterclaims of Breach of Contract and Declaratory Relief, respectively. Accordingly, VIZIO filed its Motion to Dismiss the First and Third Counterclaims pursuant to *Fed. R. Civ. P.* 12(b)(6) ("Motion to Dismiss"). In its Opposition Papers (Docket No. 79), LeEco has failed to provide almost any relevant authority to counter VIZIO's arguments. Instead, LeEco has drawn irrelevant distinctions between the authorities cited by VIZIO in its Motion to Dismiss, and the Framework Agreement between the parties, while citing to cases which are simply not on point. It is respectfully submitted that LeEco's opposition papers fail to demonstrate that its First Counterclaim for Breach of Contract and its Third Counterclaim for Declaratory relief fail to state plausible claims. Therefore, the instant motion to dismiss should be granted without leave to amend.

## II. ARGUMENT

### A. **Count One of the Counterclaim Fails to State a Plausible Claim For Breach of the Framework Agreement, As Any Such Claim Would Be Premature.**

*Fed. R. Civ. P.* 18(b) provides in relevant part "[a] party may join two claims even though one of them is contingent on the disposition of the other; but the court may grant relief only in accordance with the parties substantive rights." "[W]here a claim is one previously **cognizable only after another claim has been prosecuted to a conclusion**, the two may be joined in a single action…" *Huntress v. Huntress' Estate*, 235 F.2d 205, 207 (7th Cir. 1956).

In VIZIO's Sixth Claim, it has specifically pleaded "[a]s an alternative theory of recovery and subject **to the entry of a judgment for rescission based on fraud as specifically set forth in the Fifth Claim for Relief**", LeEco breached the Merger Agreement.  (Docket No. 35, page 41).  Clearly, VIZIO's 6th Cause of Action will only become cognizable after the Fifth Claim for Relief in its First Amended Complaint ("FAC") has been prosecuted to a successful conclusion, and even then, only in the event that the Court ultimately rescinds the Framework Agreement. VIZIO asserted its Breach of Merger Agreement in these proceedings as a placeholder, so that any claim for Breach of the Merger Agreement did not become time barred by any statute of limitations while the parties litigated the Claim for Rescission of the Framework Agreement.

In Count One of LeEco's Counterclaims, the only act alleged by LeEco which form the basis of its breach of contract claim is "VIZIO's filing suit under the Merger Agreement"[1] or, phrased another way, VIZIO's bringing suit "for claims based upon the Merger Agreement" in the Sixth Claim of the FAC.[2]  (See Docket No. 61, Page 5 (Counterclaims)).  This Counterclaim is premature because Plaintiff's Sixth Claim for Breach of the Merger Agreement **is not yet cognizable**.

LeEco makes several disingenuous arguments to support its claim that its Breach of Contract Counterclaim is presently viable, rather than premature.  First, LeEco argues that VIZIO is somehow prohibited from arguing that its claim for Breach of the Merger Agreement is not presently cognizable, because the Rules Enabling Act (28 U.S.C. § 2072(b)) prohibits VIZIO from using the Federal Rules of Civil Procedure for "abridging" LeEco's substantive rights.  LeEco's argument is not supported by the law.  In fact, in *Shady Grove Orthopedic Associates, P.A. v.*

---

[1] As stated in the Counterclaim's heading.

[2] As alleged in Paragraph 21 of the Counterclaim.

*Allstate Insurance Co.*, 559 U.S. 393, 130 S.Ct. 1431, 1442, 176 L.Ed.2d 311, (2010) the Supreme Court held:

> In the Rules Enabling Act, Congress authorized this Court to promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules "shall not abridge, enlarge or modify any substantive right," § 2072(b).  We have long held that this limitation means that the Rule must "really regulat[e] procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them," [Citation].  The test is not whether the rule affects a litigant's substantive rights; most procedural rules do. [Citation]. What matters is what the rule itself regulates: **If it governs only "the manner and the means" by which the litigants' rights are "enforced," it is valid; if it alters "the rules of decision by which [the] court will adjudicate [those] rights," it is not**. (Emphasis added).

LeEco's right to bring its Counterclaim for Breach of Contract *immediately*, as opposed to *after* the Court has made a determination as to whether to rescind the Framework Agreement, governs only the "manner and the means" by which LeEco may bring its claim, not how the court will adjudicate those rights.  Accordingly, the Rules Enabling Act does not invalidate Rule 18's applicability to LeEco's First Count for Breach of Contract.  Instead, Rule 18 applies to LeEco's Counterclaim for Breach of Contract.

Second, LeEco argues that its Counterclaim for Breach of Contract is also directed towards VIZIO's fraud based claims set forth in Claims Two through Five of the FAC, not merely to the Sixth Claim for Breach of the Merger Agreement. Wrong!  The First Count in the Counterclaim for Breach of Contract, on its face, states that it is expressly "Based Upon VIZIO's Filing Suit Under the Merger Agreement in Violation of The Framework Agreement's Unconditional Release of All Claims Under the Merger Agreement."  Further, the only act of breach alleged in the First Counterclaim is VIZIO's bringing suit against LeEco for claims based upon the Merger Agreement. (Docket No. 61, p. 4-5).  Nowhere in the First Counterclaim are there any allegations directed towards VIZIO Claims Two through Five of the FAC.

Third, LeEco contends that the express terms of the Framework Agreement found in sections 7.5, 7.6 and 7.8 prohibit VIZIO from asserting any kind of fraud in the inducement claim with respect to the Framework Agreement. LeEco's argument is misplaced and not supported by those terms in the Framework Agreement. It cannot be disputed that these fraud claims are tailored to the Framework Agreement, not the Merger Agreement. While in Section 7.5, VIZIO agreed that it had received independent legal advice and was entering into the agreement of its own free will (Docket No. 61, page 19), that provision does not include any agreement by VIZIO that the promises made within the Framework Agreement were actually made by LeEco with the intent to perform, or that LeEco did not commit fraud in the inducement of the Framework Agreement. Nor does Section 7.5 include a waiver by VIZIO of any claims for fraud against LeEco with respect to the Framework Agreement. (Docket No. 61, page 19).

With respect to Section 7.6 of the Framework Agreement, LeEco claims that, as a matter of law, the Framework agreement precludes any fraud claim against it by VIZIO, since the Framework Agreement contains this "no representations" clause. This argument is patently false and has been squarely rejected in California.

The case of *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corporation,* 32 Cal. App.4th 985, 996 (1995), is directly on point. In that decision, the California Court of Appeal discussed the lone California appellate opinion holding that an integration clause can somehow obviate justifiable reliance as a matter of law. *Fisher v. Pennsylvania Life Co.,* 69 Cal. App. 3d 506 (1977). The *Greenspan* court emphatically held "that such a per se rule is inconsistent with California law." 32 Cal. App. 4th at 987. The *Greenspan* court then addressed the *Fisher* case, bluntly stating "that *Fisher* was wrongly decided." *Id.,* at 990. The *Greenspan* court explained that (a) *Fisher* ignored express California Supreme Court decisions to the contrary (*id.,* at 992-993), (b) the two cases on which *Fisher* relied did not support its conclusion (*id.,* at 991-992), (c) the *Fisher* holding was

inconsistent with "the well-established rule that parol evidence is admissible to prove fraud in the inducement 'even though the contract recites that all conditions and representations are embodied therein'" (*id.,* at 995), and (d) that no other California case has applied the *Fisher* rule. (*Id.*) Accord, *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited,* 2012 WL 12883616 @ 19-21 (C.D. Cal.). LeEco's false promise which is the basis of VIZIO's FAC is its promise to negotiate the China joint venture ("China JV") agreement "in good faith." This promise is expressly stated in the Framework Agreement, and therefore, no claim based on that false promise is prohibited by this "no representations provision. Section 7.6 also does not include a waiver by VIZIO of any claims for fraud against LeEco.

Finally, in Section 7.8 of the Framework Agreement, VIZIO agreed that it had made an investigation of the facts relating to the Framework Agreement and Sections 1.1 and 6 of the Framework Agreement. (Docket No. 61, page 19). However, the intent of LeEco in entering into the Framework Agreement is not a fact pertaining to the same which VIZIO could have investigated. Further, Section 7.8 also does not include any waiver by VIZIO of any claims for fraud against LeEco. LeEco's argument to the contrary is simply frivolous.

LeEco has also asserted that its Breach of Contract claim is plausible because the Framework Agreement exempts it from responsibility for its own acts of fraud. LeEco's argument is frivolous, as such a contract would be unlawful as a matter of law under *California Civil Code* § 1667, which states "That is not lawful which is 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good moral," as well as *California Civil Code* § 1668, which expressly states "all contracts which have for their object, directly or indirectly, **to exempt any one from responsibility for his own fraud**, or willful injury to the person or property of another, or violation of law, whether willful or negligent are against the policy of the law." (Emphasis added).

For the foregoing reasons, LeEco's claim for Breach of Contract should be

dismissed with prejudice.

### B. LeEco's Third Counterclaim for Declaratory Relief Does Not State a Plausible Claim.

#### 1. The UCC Is Applicable to The Framework Agreement.

It is well settled law that "distributorship and dealership contracts are governed by the Uniform Commercial Code Sections 2101 through 2801." *Boyd v. Oscar Fisher Co.*, 210 Cal. App.3d 368 (1989). "[T]he rule in the majority of jurisdictions is that distributorships (both exclusive and non-exclusive) are to be treated as sale of goods contracts under the UCC." *Sally Beauty Co, Inc. v. Nexxus Products Co., Inc.*, 801 F.2d 1001, 1005-1006 (7th Cir. 1986). "California courts have applied its (UCC) provisions to (distributorship) agreements." *Morgan Tire of Sacramento v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 1109, 1116 (E.D. 2014). *See also Varni Bros. Corp. v. Wine World, Inc.,* 35 Cal. App.4th 880 (1995).

When a contract governed by the UCC contains provisions which are indefinite, statutory gap fillers under *California Commercial Code* § 2204 can be employed to remove any uncertainty.

The Framework Agreement clearly reflects the parties' intent to form a joint venture distributorship agreement for the sale of VIZIO televisions. Specifically, in Section 3.1 of the Framework Agreement, the stated purpose of commercial relationship of the parties is "the Company granting the China JV **the right to sell Company televisions** in China subject to the mutual consent of the Company and Buyer on branding and distribution." (Docket No. 61, p. 15). Thus, the essence of the joint venture provisions of the Framework Agreement (Section 3) is that of a distributorship for the sale of goods in China. As a matter of law in California, the Framework Agreement is governed by the *California Commercial Code.*

LeEco argues, without any adequate authority, that "most courts" have determined that a joint venture such as the one contemplated in the Framework Agreement does not have the "sale of goods" as its essence. (Docket No. 79,

Opposition Brief at p. 8). Curiously, the only cases cited by LeEco for this point of law are cases from outside of California. None of those cases are on point. The first case cited by LeEco is to the unpublished case of *Hauprict v. Garno*, 811 F.2d 605, 1986 WL 18451 at *1 (6th Circuit). Unfortunately, there is no statement of facts in *Hauprict* such that one may be able to draw any comparisons or distinctions with the case at bar. Accordingly, *Hauprict* does not support LeEco's argument. Next, LeEco cites to a case out of the Southern District of New York, *Architectronics, Inc. v. Control Sys., Inc.* 925 F. Supp. 425, 432 (S.D.N.Y. 1996), under which the court found that the UCC was inapplicable to a joint venture agreement between the parties. In that case, however, the predominant feature was for the transfer of intellectual property rights to software, whereby the Plaintiff would have received royalties, **not the sale of goods**, which is very different than the case at bar. Finally, LeEco has cited to the matter of *Multi-Tech Sys., Inc. v. Floreat, Inc.*, NO. CIV. 01-1320 DDA/FLN, 2002 WL 432016 at *3 (D. Minn. Mar. 18, 2002). Again, *Multi-Tech Sys., Inc.* is not applicable to the instant matter. In *Multi-Tech Sys., Inc.*, the Court specifically found that while the sale of software in a tangible medium would be a "transaction in goods" which triggers the provisions of the UCC, a joint venture to design and develop software, rather than to sell it, is not a transaction in goods which triggers the provisions of the UCC.

Plainly stated, LeEco is grasping at straws to argue that the joint venture **to distribute televisions at bar** is not governed by the *California Commercial Code*. This is clearly reflected in the fact that the authorities to which it has cited are not on point. Accordingly, the gap filling provisions of the *California Commercial Code* § 2204 are applicable and should be properly utilized to fill in any missing or indefinite terms in the joint venture agreement, *i.e.*, *California Commercial Code* § 2204(1)(c) (gap filler where price term left open) and § 2309(2) (gap filler for unstated duration).

2. **The Essential Terms of the Joint Venture Agreement Were**

**Agreed to in the Framework Agreement.**

It is well settled law that "[t]he law requires little formality in the creation of a joint venture and the agreement is not invalid because it may be indefinite with respect to details."  *Lasry v. Lederman*, 147 Cal. App.2d 480, 487 (1957). "The law does not favor, but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties, if that can be ascertained." *Boyd v. Bevilacqua*, 247 Cal. App.2d 272, 287 (1966).

While is undisputed that generally no legal obligation exists on a contract whereby essential elements of the promise are reserved for future agreement, it also is well settled law that "[w]hether a term is 'essential' depends on its relative importance to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party." *Copeland v. Baskin-Robbins, U.S.A.*, 96 Cal. App.4th 1251, 1255 (fn. 2)(2002).

As reflected in VIZIO's opening brief, all of the essential terms of the joint venture agreement between VIZIO and LeEco were agreed to by the parties.  In particular, the parties agreed: 1) LeEco's contribution of non-cash assets with a fair market value equal to $50,000,000.00 to the China JV (Docket No. 61, Counterclaim, Exhibit A, ¶ 3.2.1); 2) the parties mutual execution of a formal joint venture agreement with a long-term partnership spirit to expand the VIZIO branded products (Docket No. 61, Counterclaim, Exhibit A, ¶ 3.2.2); 3) the 50/50 ownership and control of the China JV of both VIZIO and LeEco (Docket No. 61, Counterclaim, Exhibit A, ¶ 3.2.3); 4) the China JV's promotion and marketing of VIZIO branded devices through LeEco's distributing/omni channels in China (Docket No. 61, Counterclaim, Exhibit A, ¶ 3.2.4); 5) VIZIO would sell units to the China JV at reasonable competitive rates that allow a reasonable margin of profit per unit sold by the China JV (Docket No. 61, Counterclaim, Exhibit A, ¶ 3.2.5(a)); 6) that during the Initial JV Term, the VIZIO branded devices will be distributed in

China exclusively through the China JV, with EUI and Le content as the exclusive content/streaming platform (Docket No. 61, Counterclaim, Exhibit A, ¶ 3.2.6).

Notwithstanding the large number of specific China JV terms agreed to among the parties, LeEco argues, without any authority, that the failure in the agreement to specify the length of the initial term of the JV, the definition of the term's "long term partnership spirit," the amount of any "Buyer Loan," the amount of the "Sales Target" and the pricing of goods, are essential terms, without which there could not be a joint venture. However, nowhere in Counterclaim Three for Declaratory Relief did LeEco plead facts (or conclusions for that matter) which show that any of these terms were essential. Moreover, LeEco failed to even argue in its Opposition Papers why any such terms should be considered essential, and why or how it would be unfair to LeEco if the joint venture agreement was deemed to be in existence without certainty as to those specific terms. Finally, LeEco has no answer for the fact that when the UCC gap fillers are applied, they removed any such purported uncertainty.

Further, even where the UCC gap fillers do not apply, a joint venture agreement is not invalid because it is actually indefinite with respect to details, so long as the evidence adequately shows the intent to create a joint venture. LeEco's failure to show that the supposedly undefined terms are essential to the China JV is fatal to its Declaratory Relief Counterclaim. So long as the parties intended to create a joint venture, the indefiniteness of length of time of the joint venture and the definition of the "long term partnership spirit" do not destroy the joint venture, especially in light of the specificity of the other terms of the joint venture which were expressly agreed upon.

Lastly, details such as "Sales Targets" and amount the Buyer will lend to the joint venture are matters which are fluid and affected by business conditions, consumer demands and manufacturing capabilities, all of which naturally tend to fluctuate over time. Clearly, these details are not the type which, in the face of the

parties' express intention to create a joint venture, would invalidate and destroy and agreed upon joint venture.

For the foregoing reasons, it is clear that LeEco has failed to plead a plausible claim for Declaratory Relief.

### 3. The Framework Agreement Contains An Enforceable Obligation to Negotiate In Good Faith.

It is well settled, "[a] contract to negotiate the terms of an agreement is not, in form or substance, an agreement to agree." *Copeland v. Baskin-Robbins, U.S.A.*, 96 Cal. App.4th 1251, 1257 (fn. 2)(2002). "[W]e see no reason why in principle the parties could not enter into a valid, enforceable contract to negotiate the terms of a co-packing agreement." *Id.*. at 1256. "A party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." *Id.* at 1257. *See Naidong Chen v. Fleetcor Techs., Inc.*, 16-CV-00135- LHK, 2017 WL 1092342 (N.D. Cal. Mar. 23, 2017)

LeEco's second argument with respect to its Third Counterclaim for Declaratory Relief is that "The Framework Agreement does not Contain an Enforceable Obligation to Negotiate in Good Faith." Once again however, LeEco has failed to cite to any authority supporting its argument that the agreement to negotiate in good faith found in the Framework Agreement is somehow unenforceable. In fact, LeEco does not cite to a single state or federal case holding that a contract which contains language similar to that of the Framework Agreement did not impose a duty upon the parties to negotiate in good faith.[3] It is crystal clear that the reason for this is that no such case exists. The reason why LeEco has failed to cite to any cases in support of its argument is that *Copeland* is on point-an

---

[3] ,The Framework Agreement states "the Parties shall negotiate in good faith and use reasonable efforts to form a commercial relationship between the Company and Buyer" (Docket No. 61, page 15).

agreement to negotiate a contract in good faith is enforceable- Period.

Knowing that there is no legal support for its position, LeEco argues that the language in the relevant agreements in the *Copeland* and the *Naidong Chen* cases, which require the parties to negotiate in the future, are substantively different than that in the Framework Agreement, and therefore, those cases are inapplicable. Wrong. The relevant language of the agreements in *Copeland* and *Naidong Chen* requiring the parties to negotiate terms in the future, and those of the Framework Agreement, are very similar in substance. All agreements expressly state or imply that that parties will negotiate either another agreement, or other terms of an agreement in the future. All three agreements are premised upon business relationships where some of the details of the agreements between the parties are indefinite and need to be agreed upon in future negotiation. All three agreements contemplate that in the event that the parties can agree to the details of the indefinite provisions, that they will enter into the other agreements. Hence, the effect of the agreements to negotiate in the *Copeland* and *Naigong Chen* are identical to that of the Framework Agreement. *Copeland* and *Naidong Chen* are directly on point.

LeEco further argues that *Copeland* and *Naidong Chen* are somehow distinguishable from the instant matter because "there was nothing uncertain in either of these cases because the defendants had reached an underlying agreement and were committing themselves to an agreement on future items." LeEco's argument is totally off base. First, in *Copeland* and *Naidong Chen*, the parties were not committing themselves to an agreement on future items, they were committing themselves **to negotiate** an agreement of future items. In fact, both courts were specific in pointing out that "A party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." *Copeland,* 96 Cal. App. 4th at 1257. *See Naidong Chen*, 16-CV-00135- LHK, 2017 WL 1092342, *7 (N.D. Cal. Mar. 23, 2017). If the negotiations were held and failed in *Copeland*, there would be no agreement

between the parties, and *Copeland* would not have had any recourse against Baskin Robbins as "Failure to agree is not, itself, a breach of the contract to negotiate. *Id.* at 1257. The *Copeland* and *Naidong Chen* Courts made it totally clear in their rulings that an agreement to negotiate in good faith was not merely limited to matters where there had already been an underlying agreement between the parties, and the only matters to be decided in the future were details of their existing agreement, but such agreements constituted standalone contracts in and of themselves which could be breached. Pointedly, both courts expressly ruled that:

> [C]ourts will enforce "[a] contract to negotiate the terms of an agreement." *Copeland*, 96 Cal. App. 4th at 1257; see also *Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1035 (9th Cir. 2000) ("Unlike an agreement to agree, an agreement to use best efforts to achieve a common objective is a closed, discrete, and actionable proposition."). Under a "contract to negotiate," "[a] party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." *Copeland*, 96 Cal. App. 4th at 1257. "Failure to agree is not, itself, a breach of the contract to negotiate." *Id*. "[D]amages for breach of a contract to negotiate an agreement are measured by the injury the plaintiff suffered in relying on the defendant to negotiate in good faith." *Id*. at 1262–63.

*Naidong Chen v. Fleetcor Techs., Inc.*, 16-CV-00135- LHK, 2017 WL 1092342, *7 (N.D. Cal. Mar. 23, 2017).

Moreover, it is beyond dispute that there is an underlying contract between VIZIO and LeEco- - the Framework Agreement. Accordingly, LeEco's arguments that those cases do not apply because in *Copeland* and *Naidong Chen*, unlike in this case, the parties had "reached an underlying agreement" is simply baseless.

Finally, LeEco's reliance upon *Western Homes, Inc. v. Herbert Ketell, Inc.*, 236 Cal.App.2d 142 (1965), a case decided thirty seven (37) years before *Copeland*, is misplaced. The agreement in *Western Homes* did not include any agreement to negotiate, whether in good faith or not. It was completely silent as to any obligation to negotiate whatsoever. Accordingly, it has no applicability to LeEco's baseless argument that the agreement to negotiate in good faith was somehow unenforceable.

C. **LeEco Should Be Judicially Estopped From Pursuing its**

**Counterclaim for Declaratory Relief.**

The fact of the matter is that LeEco has claimed, in the same lawsuit, that the Framework Agreement constitutes an unenforceable "agreement to agree" and a valid and existing contract. The doctrine of judicial estoppel should be employed here to stop LeEco from playing fast and loose with this Court and making inconsistent and frivolous arguments. To hold otherwise would be to allow LeEco to turn an alleged affirmative defense- - uncertainty- - into a counterclaim for declaratory relief, somehow obviating a jury trial. *See Ticketmaster, L.L.C. v. RMG Technologies, Inc.*, 536 F. Supp.2d 1191, 1199 (C.D. Cal. 2008) (court dismissed counterclaim for declaratory relief for copyright infringement misuse, where the declaratory plaintiff maintained an affirmative defense for copyright misuse which might serve the purposes of declaratory relief, such as affording a declaratory plaintiff relief from uncertainty). *See also C.J.L. Construction, Inc. v. Universal Plumbing*, 18 Cal. App.4th 376, 392 (1993) (court may properly dismiss a claim for declaratory relief when the same issue is raised by an affirmative defense). This is particularly true here, where it is well settled that once a party has supposedly breached the underlying agreement- - which LeEco now claims- - declaratory relief as to whether or not an enforceable agreement exists is unavailable as a matter of law. *See Reiydelle v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 2159010, * 8 (N.D. Cal.) (where there is an accrued cause of action for a past breach of contract, declaratory relief is inappropriate.) *See also Sanchez v. Mortgagelt, Inc.,* 2011 WL 588178, *3 (N.D. Cal.). Accordingly, the Third Counterclaim should be dismissed with prejudice.

### III. CONCLUSION

Based upon the foregoing, it is respectfully requested that the First and Third Counterclaims be dismissed with prejudice, along with whatever further relief this Court deems fair and just.

|  |  |
|---|---|
| DATED: April 9, 2018 | ERVIN COHEN & JESSUP LLP<br>Robert M. Waxman<br>David N. Tarlow<br>Jason L. Haas<br><br>By:  /s/ Robert M. Waxman<br>Robert M. Waxman<br>Attorneys for Plaintiff VIZIO, INC., a California corporation |

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

On April 9, 2018, I served true copies of the following document described as **PLAINTIFF/CROSS-DEFENDANT VIZIO, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** on the interested parties in this action as follows:

Jeffrey K, Joyner
joynerj@gtlaw.com
Daniel J. Tyukody
tyukodyd@gtlaw.com
Greenberg Traurig LLP
1840 Century Park East, Suite 1900
Los Angeles, California  90067

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 9, 2018, at Beverly Hills, California.

*/s/ Teresa M. Castelli*
Teresa M. Castelli