Robert M. Waxman (SBN 89754)
   rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
   dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
   jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendant. | Case No. 8:17-CV-01175-DOC-JDE<br><br>The Hon. David O. Carter<br><br>**JOINT STIPULATION RE PLAINTIFF'S DISCOVERY MOTION TO COMPEL LeECO V. LTD. AND LELE HOLDING, LTD. TO RESPOND TO REQUESTS FOR PRODUCTION OF DOCUMENTS WITHOUT OBJECTIONS**<br><br>*[Notice Of Plaintiff VIZIO, Inc.'s Discovery Motion To Compel LeECO V. Ltd. And LELE HOLDING, Ltd. To Respond To Requests For Production Of Documents Without Objections Filed Concurrently Herewith]* |
| LeECO V. LTD.,<br><br>Counter-Claimant,<br><br>vs.<br><br>VIZIO, INC., a California corporation,<br><br>Counter-Defendant. | Date:        May 17, 2018<br>Time:        10:00 a.m.<br>Courtroom:    6B<br><br>Discovery Cutoff: December 14, 2018<br>Pre-trial Conference: August 5, 2019<br>Trial: August 13, 2019 |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................... 1

    A.   Plaintiff's Introductory Statement................................................ 1

        1.   Factual Background ............................................................ 1

    B.   Defendants' Introductory Statement ........................................... 6

II.  SPECIFICATION OF THE ISSUES IN DISPUTE............................... 9

    A.   Plaintiff's Statement..................................................................... 9

        1.   Defendants Should be Compelled to Produce Documents Responsive to RFP Nos. 1 through 65 to both LeEco and LeLe ..................................................................................... 9

    B.   Defendants' Statement ............................................................... 17

        1.   Defendants Timely Served Responses to Plaintiff's Early RFPs Nos. 1 through 65 ................................................... 17

III. THE PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES...... 18

    A.   Plaintiff's Statement................................................................... 18

        1.   Reasons why LeEco and LeLe Should be Compelled to Respond to All 65 RFPs Forthwith and Without Objections ........................................................................ 18

        2.   Monetary Sanctions Should Be Imposed Against LeEco and LeLe ......................................................................... 20

    B.   Defendants' Statement. ............................................................. 21

        1.   Background Facts ............................................................. 21

        2.   Defendants Did Not Waive Their Right to Include Objections in Their Responses to the Early RFPs...................... 25

        3.   Monetary Sanctions Should Not Be Imposed Against Defendants ...................................................................... 31

ERVIN COHEN & JESSUP LLP

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Anderson v. The Hain Celestial* Group,
2014 WL 2967603 at *4 (C.D. Cal. July 1, 2014) ............................................ 8

*Batts v. Cnty. of Santa Clara,*
2010 WL 1027990, at *3 (N.D. Cal. Mar. 18, 2010) ............................... 28, 32

*Brown v. Stroud,*
2010 WL 3339524 (N.D. Cal. Aug. 24, 2010) ................................................. 28

*Kanawi v. Bechtel Corp.,*
2008 WL 4642168 (N.D. Cal. Oct. 17, 2008) .................................................. 29

*Karr v. Napolitano,*
2012 U.S. Dist. LEXIS 75709 (N.D. Cal. May 31, 2012) ....................... 29, 32

*Lofton v. Verizon Wireless LLC,*
308 F.R.D. 276 (N.D. Cal. 2015) ................................................................... 31

*Richmark Corp. v. Timber Falling Consultants,*
959 F.2d 1468 (9th Cir. 1992) ................................................................. 18, 30

*Trustees of the Suburban Teamsters of No. Illinois Pension Fund v.*
*Bolingbrook Redi-Mix Co.,*
2016 WL 1258849 (N.D. Ill. Mar. 28, 2016) ................................................. 29

*Trustees of the Suburban v. Bolingbrook Redi-Mix Co.,*
2016 WL 1258849 * 2 ...................................................................................... 18

*United States ex rel. Brown v. Celgene Corp.,* 2014 U.S. Dist. LEXIS 194470,
at *3 (C.D. Cal. Mar. 21, 2014) ...................................................................... 26

*Zuniga v. W. Apartments,*
2014 U.S. Dist. LEXIS 83135, at *4-5 (C.D. Cal. Mar. 25, 2014) ................ 28

**RULES**

*Fed. R. Civ. P 33(b)(2)* .................................................................................. 18

*Fed. R. Civ. P. 26(d)(2)* ...........................................................................passim

*Fed. R. Civ. P. 26(d)(2)(B)* ............................................................................ 21

*Fed. R. Civ. P. 26(f)* ................................................................................passim

*Fed. R. Civ. P. 34(b)(2)(A)* ........................................................................ 3, 4

*Fed. R. Civ. P. 37 (a)(5)(A)(ii)* ........................................................ 20, 31

*Fed. R. Civ. P. 37(a)(3)(iv)* ................................................................... 20

*Fed. R. Civ. P. 37(a)(5)* ......................................................................... 21

*Fed. R. Civ. P. 4* ...................................................................................... 2

*Rule 26(a)(1)(C)* ..................................................................................... 33

*U.S.D.C. Central District Local Rule 37-1.2.1* ............................... 1, 17, 33

## **MISCELLANEOUS**

Bender's Federal Practice Forms Scope (2017) 8-34 .............................. 25

Moore's Federal Practice - Civil § 26 App. 14 (2018) 6-26 ..................... 26

ERVIN COHEN & JESSUP LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ERVIN COHEN & JESSUP LLP

# I.    INTRODUCTION

Pursuant to Rules 30, 34 and 37 of the Federal Rules of Civil Procedure and Local Rule 37-2.1, Plaintiff and Counter-Defendant VIZIO, INC. ("Plaintiffs" or "VIZIO") and Defendants and Counterclaimant LeEco V. Ltd.  ("LeEco") and LeLe Holding, Ltd. ("LeLe") (LeEco and LeLe are collectively referred to as "Defendants") submit this Joint Stipulation regarding Plaintiff's Motion to Compel Defendants to Respond to Plaintiff's Requests for Production of Documents (Set One) (hereinafter "RFPs"), Without Objections.[1]

### A.    Plaintiff's Introductory Statement

#### 1.    Factual Background

##### a.    Plaintiff's Claims

This action arises out of two agreements between VIZIO, Inc. ("VIZIO") on the one hand, and LeEco V. Ltd. ("LeEco") on the other hand.  In the first of the two agreements (the "Merger Agreement"), which was signed in July 2016, LeEco agreed to pay $2.25BB ($2,250,000,000) to acquire VIZIO in a merger that was ultimately set to close on April 6, 2017.  LeEco was unable to close on the deal, obligating it to pay VIZIO a $100 million break-up fee.  Rather than pay this amount, LeEco and the other Defendants (including its alter ego Lele) fraudulently induced VIZIO into signing a new agreement (the "Framework Agreement"), in which VIZIO essentially agreed to trade the $100 million termination fee, in its entirety, for a $40 million cash payment on execution of the new Agreement, a second payment of $10 million within 45 days, and a 50% stake in a joint venture with LeEco in China worth tens of millions of dollars to VIZIO.  Key terms for the joint venture—including LeEco's promise to contribute non-cash assets with a verified fair market value of $50 million to the venture without any matching

---

[1] Pursuant to Central District Local Rule 37-1.2.1, a copy of the order establishing the initial case schedule is attached to the Joint Stipulation as Exhibit 1.

1  contribution by VIZIO—were set forth in the Framework Agreement, but, in

2  addition, LeEco committed to negotiate in good faith and execute a formal joint

3  venture agreement within 45 days.  Unfortunately, LeEco had no intent to fulfill its

4  new promises.  From the day the Framework Agreement was signed, LeEco refused

5  to substantively negotiate with VIZIO during the required time frame.  LeEco

6  further refused to release the second $10 million payment.  Accordingly, VIZIO

7  filed this action on July 11, 2017 to recover $60 million in contract and tort

8  damages.

9         VIZIO has brought claims against Defendants, and each of them (including

10 LeEco's alter egos), for Breach of the Framework Agreement, Fraud Underlying the

11 Framework Agreement, Negligent Misrepresentation Underlying the Framework

12 Agreement, Promissory Estoppel, Rescission of the Framework Agreement, and In

13 the Alternative, a Cause of Action against LeEco for Breach of the Merger

14 Agreement.

15             **b.    Defendants' Failure to Provide Responses to Plaintiff's**

16                         **Requests for Production of Documents**

17        Defendants are playing fast and loose with Plaintiff and this Court.  They

18 have done so from the beginning of this lawsuit.  Their "culpable conduct" in

19 connection with the service of the Complaint is a prime example.

20        As the Court will surely remember, Defendant LeEco agreed to accept

21 service of process via email in both the Merger Agreement and the Framework

22 Agreement.  Plaintiff then served the Summons and Complaint upon LeEco in that

23 manner.  Notwithstanding the fact that LeEco had been served pursuant to express

24 agreement of the parties, LeEco did not file a timely Answer.  Plaintiff took LeEco's

25 default.  LeEco then filed a motion to vacate its default, whereby it did not dispute

26 the fact that it had been served with the Summons and Complaint as agreed upon by

27 the parties, but rather, made the technical argument that it had never been served

28 with the Complaint as the service provisions stated in *Fed. R. Civ. P.* 4 somehow

ERVIN COHEN & JESSUP LLP

1   contravened the agreement of the parties.  This Court flatly disagreed with LeEco

2   finding that not only had LeEco been properly served with the Summons and

3   Complaint, but that but that it's conduct in not filing a timely response constituted

4   culpable conduct.  (Docket No. 31, pages 4-6).  Notwithstanding that finding, the

5   Court ultimately vacated LeEco's default.

6       LeEco's "culpable conduct" has once again resurfaced.  This time in the form

7   of abject failure to respond to written discovery.  These "stone-wall" tactics cannot

8   be tolerated.

9       On January 10, 2018, the Court issued its Order Setting Scheduling

10  Conference.  (Docket No. 54).  Therein, the Court ordered that "[u]nless there is a

11  likelihood that upon motion by a party the Court would order that any or all

12  discovery is premature, **the Court encourages the parties to begin discovery**

13  **before the Scheduling Conference.**  The parties shall comply fully with the letter

14  and spirit of Rule 26(a) and thereby obtain and produce most of what would be

15  produced in the early stages of discovery, because at the Scheduling Conference the

16  Court will impose tight deadlines to complete discovery."

17      On January 12, 2018, Plaintiff served its first set of Request for Production of

18  Documents (Set One) on both LeEco and Lele Holdings, Ltd. ("Lele") (hereinafter'

19  the "RFPs") (See Declaration of David N. Tarlow ("Tarlow Dec.") Exhibits ("Exs.")

20  A and B) pursuant to *Fed. R. Civ. P.* 34(b)(2)(A).  Pursuant to *Fed. R. Civ. P.*

21  34(b)(2)(A), LeEco and Lele's response dates to the RFPs were due within 30 days

22  of service, which was on or before February 15, 2018.

23      Defendants LeEco and Lele have failed to respond to the RFPs.

24      On or about February 7, 2018, Plaintiff's counsel Robert M. Waxman and

25  Defendants' counsel Jeff K. Joyner had a telephonic conference.  During that call,

26  Mr. Waxman specifically reminded Mr. Joyner that the written discovery responses

27  to the RFPs would be due shortly.  Mr. Joyner then stated his belief that the response

28  date would not be until after the Rule 26(f) conference.  Mr. Waxman disagreed,

ERVIN COHEN & JESSUP LLP

1  reminding counsel that the RFPs had been served only after Judge Carter's Order

2  concerning discovery was issued.  Notwithstanding Mr. Waxman's warning, no

3  discovery responses to the RFPs were forthcoming.

4      On February 21, 2018, Plaintiff's counsel sent a meet and confer letter to

5  Defendants' counsel, once again reminding Defendants' counsel that the Court

6  authorized the parties to begin conducting discovery, that the RFPs were served

7  pursuant to *Fed. R. Civ. P.* 34(b)(2)(A), not Rule 26(d)(2), and that discovery was

8  past due.  Indeed, that the RFPs themselves specifically reflected service pursuant to

9  *Fed. R. Civ. P.* 34(b)(2)(A).  Accordingly, Plaintiff demanded that Defendants

10  provide responses to the overdue RFPs, without objections, on or before March 5,

11  2018.  (See Tarlow, Dec., Ex. C).

12      On or about February 28, 2018, the parties conducted a meet and confer

13  session on the telephone, whereby Mr. Joyner reiterated his belief that the RFPs

14  somehow constituted "Early Rule 34 Requests" and that the responses thereto were

15  not due until 30 days after the parties had their Rule 26(f) conference under Rule

16  26(d)(2)(B).  Mr. Joyner then stated that Defendants would not consider the RPFs to

17  have been served until the Rule 26(f) conference was held, but would respond to

18  same within 30 days of the Rule 26(f) conference.  Mr. Joyner then stated that he

19  was going to put Defendants' position in writing and that he hoped that after he did

20  so, that Plaintiff would choose not to file a motion to compel.

21      On March 1, 2018, Mr. Joyner, sent a meet and confer letter to Plaintiff's

22  counsel, mis-describing the telephone conversation that he had with Mr. Waxman

23  on February 7, 2018.  Among other things, Mr. Joyner claimed that he informed Mr.

24  Waxman that the RFPs were "Early Rule 34 Requests" which are considered to be

25  served at the first Rule 26(f) conference, and were therefore, due thirty days after the

26  Rule 26(f) conference.

27      Mr. Waxman immediately sent a reply letter to Mr. Joyner.  Mr. Waxman

28  disagreed with Mr. Joyner's earlier letter of March 1, 2018 in no uncertain terms.

ERVIN COHEN & JESSUP LLP

Mr. Waxman explained that not only did Judge Carter's Order speak for itself, but that it encompassed all forms of discovery and there would be no reason for the Court to make that Order if document requests served thereafter would still somehow be deemed to be "early requests." (Declaration of Robert M. Waxman ("Waxman Dec."), Ex. E)

Mr. Waxman then corrected Mr. Joyner's mis-description of their February 7, 2018 telephone conversation. Mr. Waxman stated that during the call, he "specifically reminded [counsel] that [the] discovery responses would be due shortly." Indeed, that Mr. Waxman neither had, nor did agree that the response date would be triggered by the Rule 26(f) conference. Instead, that Mr. Waxman had "reminded [counsel] that the discovery had been served only after Judge Carter's Order concerning discovery was issued."

Finally, Mr. Waxman noted that the RFPs "themselves specify that they were not propounded as early requests, but rather, under the Federal Rules requiring a written response within 30 days." Mr. Waxman observed that "the notion…opposing counsel would need to provided further information to [Defendants] about the due date is simply not in accord with the facts or the law."[2] (See Waxman Dec., Ex. E)

To date, notwithstanding the fact that this Court authorized and encouraged the parties to commence discovery immediately, Defendants have refused to participate in discovery, have failed to respond to Plaintiff's RFPs and have failed to produce any documents responsive thereto. Defendants' dilatory conduct during discovery mirrors their dilatory conduct in responding to the Complaint in this matter. Defendants should be compelled to provide responses to Plaintiff's RFPs, forthwith, and without any objections.

///

---

[2] The Rule 26(f) conference ultimately occurred on March 12, 2018. (See Tarlow Dec., Ex. D).

**B.    Defendants' Introductory Statement**

The Court should deny Plaintiff's request that the Court compel Defendants to respond to Plaintiff's Requests for Production ("Early Requests" or "Early RFPs") without objection as moot because Defendants timely responded to the Early RFPs.

There are three reasons why Plaintiff's motion should be rejected:

- First, Plaintiff's discovery requests constituted "early discovery" within the meaning of Rule 34 of the FRCP[3], and thus Defendants' responses were not due until 30 days after the Rule 26(f) conference (i.e., April 11, 2018) ***when responses were in fact served upon Plaintiff*** ("April 11 Responses").  The Court's Order dated January 10, 2018 (the "Jan. 10 Order") "encourages" such discovery but does not address when responses thereto would be due.

- Second, even if it could be argued that the Jan. 10 Order contemplates that responses could be due in some circumstances prior to the Rule 26(f) conference, the Jan. 10 Order makes a clear exception when discovery would be "premature": "Unless there is a *likelihood*[4] that upon motion by a party the Court would order that *any* or all discovery is premature ...."  Here, as set out in the Defendants' April 11 Responses, the Early Requests are "premature" because they are almost entirely based on claims that are subject to dismissal following the Court's ruling on Defendants' pending motions to dismiss.[5]  For

---

[3] Federal Rules of Civil Procedure.

[4] All emphasis in Defendants' portion of the Joint Stipulation is added.

[5] LeEco has a pending motion to dismiss five of Plaintiff's six causes of action, which the Court has taken under submission.  Roughly three-quarters of Plaintiff's Early Requests concern issues that would be rendered irrelevant if the Court grants LeEco's pending motion to dismiss, and thus the Requests are "premature" within the meaning of the Jan. 10 Order.  LeLe's motion to dismiss pursuant to Rules 12(b)(2)&(5) is pending before the Court and is set for hearing on April 23, 2018.  Therefore, Plaintiff's Early Requests to LeLe, which were served on LeLe three days after

Plaintiff to argue otherwise would render the Court's proviso regarding "premature" discovery meaningless.

- Third, Defendants had a good faith belief that the responses were due on April 11 and Plaintiff does not make any claim of prejudice, therefore, good cause exists to conclude that objections have not been waived.

Significantly, a diligent search of the case law revealed *no case* where a court ordered the waiver of objections in similar circumstances. Instead, the case law overwhelmingly favors allowing responses to be served that include substantive objections absent a finding of either bad faith or prejudice.

Defendants have always acted diligently and in good faith and, therefore, Plaintiff's request for sanctions is absurd. Defendants have consistently taken the position that responses to Plaintiff's Early RFPs were due on April 11, 2018. On February 7, 2018, Defendants' counsel informed Plaintiff's counsel that responses were not due until after the Rule 26(f) conference because the Early RFPs are considered early discovery under the FRCP. (Declaration of Jeff K. Joyner ("Joyner Dec."), ¶ 5.[6] Despite this, Plaintiff waited until February 21, 2018, after the date it claims the responses were due, to send a "meet and confer" letter (*See* Ex. C.)[7] claiming for the first time that Defendants had waived all objections. Defendants

_____

LeLe was allegedly served with the summons and First Amended Complaint, are premature because LeLe has not been properly served and the Court lacks personal jurisdiction over it.

[6] Plaintiff's asserted "mis-description" of the telephone conversation between Plaintiff's counsel Robert M. Waxman and Defendants' counsel Jeff K. Joyner is limited to the "notion [Plaintiff's] counsel would need to provide further information to [Defendants] about the due date." (Joint Stipulation at 5.) Plaintiff does not dispute in the Joint Stipulation the relevant fact that Defendants' counsel had notified Plaintiff that Defendants believed responses were due after the Rule 26(f) conference in April 2018. Knowing this, Plaintiff waited until after it believed the responses were due to send its February 21, 2018 letter as subterfuge to claim Defendants waived their objections.

[7] References to Exhibits A-F are to Exhibits attached to the Declaration of David Tarlow or the Declaration of Robert M. Waxman.

ERVIN COHEN & JESSUP LLP

1   responded in a March 1, 2018 letter to Plaintiff with legal authority supporting its

2   position but, in the spirit of compromise, also offered to find a mutually agreeable

3   date for Defendants to respond prior to the April 11 deadline.  (*See* Ex. D.)  Plaintiff

4   refused an opportunity to reach a reasonable compromise, and responded: "The

5   objections have been waived."  (*See* Ex. E.)  Reasonable parties should have been

6   able to work out this discovery dispute without judicial intervention.  But, Plaintiff

7   made any resolution impossible by taking an extreme position, lacking in legal

8   support, just as it did when it sought entry of default[8] against LeEco.  Plaintiff's

9   repeated reference in the Joint Stipulation to the Court's mention of the legal term

10  "culpable conduct"[9] in its Order setting aside the entry of default is irrelevant to the

11  present discovery dispute, and was only relevant within the nomenclature of Rule 4

12  in the default proceedings.  Thus, Defendants have always acted in good faith and it

13  is Plaintiff that has been unreasonable.

14          Therefore, the Court should deny Plaintiff's Motion to Compel Defendants to

15  Respond to Requests for Production of Documents Without Objections.

16  ///

17  ///

18  _____

19  [8] LeEco showed in the default proceedings that it overlooked a provision in a lengthy merger
    agreement that allowed for service by email, which otherwise would not be have been permissible

20  under Rule 4 of the FRCP.  LeEco's newly retained counsel offered to promptly file a responsive
    pleading immediately after learning about the default.  Unreasonably, Plaintiff would not stipulate

21  to set aside the Clerk's entry of default unless LeEco tendered the $10 million at dispute in this
    case.  Plaintiff's untenable position caused the parties to engage in an enormously expensive,

22  summary judgement-style briefing that created make-work for LeEco and the Court over whether
    there was "some possibility" that the outcome of a trial could be different than a default.  *See*

23  *Anderson v. The Hain Celestial* Group, 2014 WL 2967603 at *4 (C.D. Cal. July 1, 2014).  As
    expected, the Court found the presence of meritorious defenses and the absence of prejudice to

24  Plaintiff holding that "where LeEco has made clear its desire to appear and actively litigate this

25  case … the Court … finds good cause to set aside entry of default."  Order at 8 (Dkt No. 31).

26  [9] It was in ruling upon the third default factor, that the Court referenced "culpable conduct" as the
    equivalent of "willful" given the Court's conclusion that LeEco was a sophisticated party that

27  should not have overlooked the service by email provision of the Merger Agreement.  Order at 6

28  (Dkt. No. 31).

ERVIN COHEN & JESSUP LLP

**II.**     <u>SPECIFICATION OF THE ISSUES IN DISPUTE</u>

    **A.**     <u>Plaintiff's Statement</u>

          **1.**     **Defendants Should be Compelled to Produce Documents Responsive to RFP Nos. 1 through 65 to both LeEco and LeLe**

<u>PLAINTIFF'S RFPS NOS. 1 THROUGH 65</u>

On January 12, 2018, Plaintiff propounded nearly identical sets of RFPs to both LeEco and Lele. (See Tarlow Dec., Exs. A and B). The RFPs were served upon Defendants' after Plaintiff was expressly authorized to do so via Order of this Court. (Docket No. 54).

The requests made by Plaintiff to both LeEco and Lele are as follows:

    1.     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the negotiations that resulted in the MERGER AGREEMENT.

    2.     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the GUARANTY.

    3.     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the negotiations that resulted in the FRAMEWORK AGREEMENT.

    4.     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations that resulted in the ESCROW AGREEMENT.

    5.     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of management meetings, emails, marketing plans, operational plans, financial analyses, and strategy documents.

    6.     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER.

    7.     ALL DOCUMENTS and COMMUNICATIONS posted by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or the MERGER.

    8.     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW.

ERVIN COHEN & JESSUP LLP

9.      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

10.      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES expected to receive from the public announcement of the MERGER AGREEMENT or that any of those PERSONS actually received following that announcement.

11.      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the response of U.S. and Chinese markets or press to the proposed MERGER, INCLUDING all articles, reports and other documents issued by stock markets, bond markets, financial press, newspapers, and financial analysts.

12.      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to implement, meet the conditions for, or complete the MERGER with VIZIO.

13.      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

14.      ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU received from any PERSON, including AFFILIATES, third party businesses, and governmental entities, regarding the proposed MERGER.

15.      ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—whether located in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

16.      ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued, made or published by any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai

ERVIN COHEN & JESSUP LLP

Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

17.    ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such investments.

18.    ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the proposed MERGER with VIZIO.

19.    ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER SUB to complete the proposed MERGER with VIZIO INCLUDING DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International Capital; the Bank of China; Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

20.    ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the terms on which the financing needed by LeECO and MERGER SUB to complete the proposed MERGER with VIZIO could be obtained, INCLUDING DOCUMENTS OR COMMUNICATIONS to or from: Hollyhigh International Capital; the Bank of China; Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

21.    ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, regarding efforts to implement, meet the conditions for, or complete the MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete the MERGER.

22.    ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of the MERGER AGREEMENT.

ERVIN COHEN & JESSUP LLP

23.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

24.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the actual assets and financing available to LeECO and MERGER SUB on or about April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

25.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

26.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the source of monies deposited in ESCROW to serve as the "Buyer Termination Fee Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

27.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the termination of the MERGER AGREEMENT.

28.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to reasons why the MERGER was not, or could not, be completed.

29.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO products in CHINA, INCLUDING emails, marketing plans, operational plans, financial analyses, and strategy documents.

30.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to negotiations or discussions between VIZIO and LeECO to "negotiate in good faith and execute one or more agreements" regarding a joint venture in CHINA as required by Section 4 of the FRAMEWORK AGREEMENT.

31.     DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual relationships, and the terms of those relationships, between LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other PERSON on the other hand, that would have been impacted or affected by a joint venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

32.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to develop and obtain certification of the "LeEco Le App", as required of LeECO under Section 2.1.1 of the FRAMEWORK AGREEMENT.

33.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to identify and/or obtain "non-cash assets with a fair market value

ERVIN COHEN & JESSUP LLP

equal to US $50,000,000 as a capital contribution" to contribute to a proposed joint venture with VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

34.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to ALL assets owned by LTI or financial resources available to LTI, at any time between July 6, 2016 and the present, that were available to satisfy LTI's representation in Section 5(d) of the GUARANTY that LTI would have "the financial capacity to pay and perform the Obligation" of LeECO to pay the Buyer Termination Fee Remainder if it should become due under the MERGER AGREEMENT and that LTI "shall maintain such financial capacity for so long as this Guarantee shall remain in effect."

35.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO payments or transfers made by LTI after July 6, 2016, if any, in which the total assets then owned by LTI, or the total financial resources available to LTI, was less than $50,000,000.00 either before and/or after the transaction.

36.     ANY and ALL articles of incorporation, amended articles of incorporation, bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL, LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1, 2012.

37.     DOCUMENTS sufficient to identify ALL officers, directors, partners, shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012.

38.     ANY and ALL shares of stock, stock certificates, partnership interests, or membership interests currently held or owned by any PERSONS in LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

39.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY contract or agreement - - INCLUDING all written amendments and supplements to any such contract or agreement and all written assignments and modifications of any such contract or agreement - - whereby any PERSONS acquired on any date after January 1, 2012, either in their own respective names or under and pursuant to any fictitious business names, any right, title or interest in or to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and each or any of their respective employees, shares of stock, partnership interests, membership interests, assets and/or liabilities, INCLUDING all loan commitments, offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty agreements, stock transfer agreements, membership interest transfer agreements, credit agreements, sales orders, partnership agreements, sales agreements, assignment agreements, hypothecation agreements, deregistration agreements, dissolution agreements, purchase agreements, options agreements, stock agreements, shares of stock, certificates of stock, joint venture agreements, asset sale agreements, debt payment agreements, accommodation agreements, debt

protection agreements, asset transfer agreements, indemnity agreements, defense agreements, hold harmless agreements, employee sharing agreements, employee transfer agreements, security agreements, financing agreements, memorandum agreements, letter agreements, loan agreements, insolvency agreements, intercompany transfer agreements, escrow agreements, operating agreements, loan commitments, limited liability company agreements, assumption agreements, liquidation agreements, winding up agreements, creditor's agreements, letters of credit, asset distribution or preservation agreements, liability distribution or transfer agreements, membership distribution or transfer agreements, payment records, promissory notes, governmental filings, security instruments, deeds and deeds of trust.

40.     ANY and ALL agendas, corporate minutes, and corporate resolutions for ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL, LELE, LTI, and LREG held on any date after January 1, 2012.

41.     ANY and ALL agendas, minutes, and resolutions for ALL meetings of the shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any date after January 1, 2012.

42.     ANY and ALL voting or operating agreements among shareholders or members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any date after January 1, 2012.

43.     ANY and ALL contracts and agreements between or among LeECO, GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in effect at any point in time after January 1, 2012.

44.     ANY and ALL DOCUMENTS prepared at any time since 2012 and through and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES represented, stated, or otherwise held out that LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE or GLOBAL and/or to be substantially the same as LELE or GLOBAL, INCLUDING advertising or promotional materials, press releases, WeChat and other social media postings, investment reports, financial documents, and ANY DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or market entity.

45.     DOCUMENTS sufficient to identify the location of the headquarters and all administrative, manufacturing and distribution facilities for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at all times after January 1, 2012 and through the present day.

46.     DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012 and through the present day. "Identify" in this request means to provide the full name, title, and current (or last known) address and phone number of each employee, the entity with which each individual was employed, the date on

ERVIN COHEN & JESSUP LLP

1  which the individual's employment began, and, if the individual is no longer
2  employed, the dates of his or her service with LeECO, GLOBAL, LELE, LTI,
   LREG or their AFFILIATES.
3         47.    DOCUMENTS sufficient to identify ALL employees, managers,
4  consultants, independent contractors, agents, attorneys, accountants, officers and/or
   directors shared by, used by, loaned to, or otherwise transferred between one or
5  more of LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at
   any time after January 1, 2012.
6         48.    ANY and ALL DOCUMENTS RELATING TO monies transferred by,
7  between or among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their
8  AFFILIATES since January 1, 2012, and through and including the present date,
   INCLUDING intercorporate transfers, hypothecations, loans, gifts, dividends,
9  earnings and profits.
10        49.    ANY and ALL DOCUMENTS RELATING TO contracts or
   agreements with third parties, loans, other obligations or instruments of debt that
11 were paid, co-signed or guaranteed by LeECO, GLOBAL, LELE, LTI, LREG
12 and/or any of their AFFILIATES for or on behalf of LeECO, GLOBAL, LELE,
   LTI, or LREG since January 1, 2012, and through and including the present date.
13        50.    ANY and ALL DOCUMENTS RELATING TO the capitalization of
14 LeECO, GLOBAL, LELE, LTI, and LREG at or about (a) the date of its
   incorporation or formation, and (b) from and after January 1, 2012 and including the
15 present date.
16        51.    ANY and ALL financial statements and analyses for LeECO,
   GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through and including
17 the present date, INCLUDING 1) earnings statements, 2) profit and loss statements,
18 3) balance sheets, and 4) ANY financial summaries or reports prepared for a) the
   use of JIA or other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use
19 of potential investors in, joint venturers with, or lenders to LeECO, GLOBAL,
20 LELE, LTI, LREG and/or any of their AFFILIATES.
         52.    ANY and ALL DOCUMENTS RELATING TO quarterly and annual
21 audits of LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and
22 through and including the present date.
         53.    DOCUMENTS OR COMMUNICATIONS sufficient to identify all
23 tangible and intangible assets of any kind with a value in excess of $100,000 in
24 which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their
   AFFILIATES possessed an ownership interest at any point after July 1, 2016.
25 "Identify" in this request means to provide the description and location for each
26 tangible and intangible asset, the nature and size of the interest in that asset (e.g. a
   50% equity interest, a joint owner in common), and the last known market value of
27 the asset.

28

ERVIN COHEN & JESSUP LLP

54.     DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or liabilities of any kind with a value in excess of $100,000 owed by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point after July 1, 2016. "Identify" in this request means to provide the type of liability, the amount currently owed, the PERSON to whom the liability is owed and that PERSON's address and telephone number.

55.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible assets of any kind that it possessed after July 1, 2016.

56.     The Master Agreement executed in or after December 2016 among LREG, the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS RELATING TO property owned by LREG in Santa Clara, California and ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master Agreement or to ANY transaction that occurred pursuant to the terms of the Master Agreement.

57.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY transfers of equity interests in LREG to the Genzon Group or to ANY PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016, INCLUDING agreements, emails, records of all payments made, and stock certificates or other documents reflecting the transfer of any interest.

58.     DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES was listed as an owner of the account at any point in 2017.

59.     The letter or memo by JIA issued in or about November 2016 RELATING TO financing issues being experienced by the global LeEco businesses and announcing that JIA would reduce his own income to one yuan.  This letter was referenced in an article by Bloomberg News, which article can be found at https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-confesses-to-cash-crunch-at-leeco.

60.     ANY and ALL orders issued after January 1, 2016 by ANY court, governmental entity, or administrative body that has the effect of seizing, or restricting the disposition of, ANY assets owned by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES.

61.     DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES filed or pending in the United States at any point after January 1, 2016.  "Identify" in this request means to identify the court or administrative body in which the action is pending, the name of the action, and the case number(s) of that action or actions.

62.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to make payments that were or are due and owing at any point after January 1, 2016.

63.     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO Yueting Jia's resignation in July 2017 as Chairman of ANY of the global LeEco businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi Holding Co., Ltd. (Beijing) and/or any of their AFFILIATES.

64.     ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO the sale, transfer, dissolution, winding up, or liquidation of LELE, GLOBAL, LeECO, LTI, LREG or ANY of their AFFILIATES.

65.     ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make arrangements or accommodations for or with their creditors; (b) assign, assume, distribute or transfer any stock, membership interests, actual assets, actual liabilities, contractual obligations, contingent liabilities, contingent assets, or employees of LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or (c) to indemnify, hold harmless or defend the obligations of any PERSON.

## B.     **Defendants' Statement**

### 1.     **Defendants Timely Served Responses to Plaintiff's Early RFPs Nos. 1 through 65**

Defendants timely served responses to Plaintiff's Early RFPs on their due date, April 11, 2018 and, therefore, did not waive such objections.  *See* Exs. 2 & 3.[10]

///

///

///

///

///

---

[10] Exhibits 2 and 3 are attached to the Joint Stipulation.  Although Central District Local Rule 37-2.1 requires that "if the sufficiency of a [response to RFP] is in issue, the stipulation shall contain, verbatim . . . the allegedly insufficient [response,]" the sufficiency of the April 11 Responses themselves are not at issue.  Rather, the issue is whether Defendants waived their objections.  Therefore, the responses are not inserted after every Early RFP but instead attached to the Joint Stipulation to show that they were timely served.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

## III.   THE PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES

### A.   Plaintiff's Statement

1.   Reasons why LeEco and LeLe Should be Compelled to Respond to All 65 RFPs Forthwith and Without Objections

a.   Defendants' Responses to Plaintiff's RFPs Were Due Within 30 days of Service

Pursuant to *Fed. R. Civ. P.* 26(d)(1): "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), **except** in a proceeding exempted from initial disclosures under Rule 26(a)(1)(B), **or when authorized by these rules, by stipulation, or by court order.**"  Emphasis added.

Pursuant to *Fed. R. Civ. P.* 34(A): "The party to whom a request is directed must respond in writing within 30 days after being served, or – if the request was delivered under Rule 26(d)(2)- within 30 days after the parties first Rule 26(f) conference.  A shorter or longer time may be stipulated to under Rule 29 or be ordered by the Court."

"Under Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2), a party must respond or object to interrogatories and requests to produce within 30 days of being served with the discovery requests (**unless the document requests were delivered under Rule 26(d)(2)**), *Fed. R. Civ. P* 33(b)(2), 34(b)(2)."  (Emphasis added).  *Trustees of the Suburban v. Bolingbrook Redi-Mix Co.*, 2016 WL 1258849 * 2.

"[I]t is well established that a failure to object to discovery requests within the time required constitutes a waiver of objections."  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

In this matter, the Court expressly ordered that the parties could immediately start discovery, because the Court would "impose tight deadlines to complete discovery" upon the parties after the Scheduling Conference.  Plaintiff took the Court's order seriously and immediately propounded discovery.  Plaintiff's RFPs to

both LeEco and Lele were specifically delivered to Defendants pursuant to Rule 34(b)(2). In fact, the RFPs state on their face:

> **Pursuant to Federal Rule of Civil Procedure 34**, Plaintiff Vizio, Inc. propounds the following Request for Production of Documents, Set One to LeEco V. Ltd. ("Responding Party" or "LeECO") [Defendant, Lele Holding Ltd. ("Responding Party" or "LELE")], to be responded to fully, verified in writing under oath, within thirty (30) days of service of these requests **as provided for by Federal Rule of Civil Procedure 34(b)(2)(A)**. (Emphasis added).

As Plaintiff served its RFPs on Defendants pursuant to Rule 34(b)(2), responses and objections thereto were due within 30 days of service. This is particularly true, where these RFPs were only served after Judge Carter's Order permitting discovery.

**b.      Plaintiff's RFPs Do Not Constitute Early Rule 34 Requests, As They Were Expressly Authorized By The Court**

Defendants, however, claim that Plaintiff's RFPs constitute Early Rule 34 Requests. Wrong! Under Rules 26(d)(2)(A) and 26(d)(2)(B), Early Rule 34 Discovery Requests are those requests which are propounded before the parties conferred as required by Rule 26(f) without the need of a Court Order. Clearly, the reason that such "early requests" are permitted is that those requests are not deemed served until the first Rule 26(f) conference of the parties. Accordingly, the early service of such RFPs does not require the opposing party to take any actions to respond to same earlier than it would have had same been served at the time of the Rule 26(f) conference. Rules 26(d)(2)(A) and 26(d)(2)(B) are simply intended to "not penalize" a zealous party who may have served a document request early by negating the request altogether. Rules 26(d)(2)(A) and 26(d)(2)(B) are totally inapplicable here, where the Court expressly authorized the parties to conduct discovery immediately, and not to wait. Defendant's responses to Plaintiff's RFPs are unjustifiably late.

ERVIN COHEN & JESSUP LLP

1    Based upon the foregoing, it is respectfully requested that both LeEco and

2    Lele be compelled to provide responses to Plaintiff's RFP Nos. 1 through 65,

3    forthwith, and without any objections.

4               **c.**      **Defendant's Anticipated Response Has Not Merit**

5    It is anticipated that Defendants will argue that the Court did not authorize

6    discovery with respect to any matter where there was a "likelihood that upon motion

7    by any party, the Court would order that any or all discovery is premature."  It is

8    further anticipated that Defendants will argue that since they filed a 12(b)(6) Motion

9    to Dismiss certain claims in Plaintiff's First Amended Complaint, such a

10    "premature" scenario was "likely."  Such an argument is specious at best.

11    Defendants are attempting to play both judge and litigant at the same time.  To the

12    extent Defendants believed that discovery was "premature," rather than taking it

13    upon themselves to simply ignore Plaintiff's Court authorized discovery requests,

14    Defendants should have objected on that ground.  Instead, Defendants did nothing.

15    Defendants clearly waived any objections that they may have had to Plaintiff's

16    RFPs.

17         **2.**      **Monetary Sanctions Should Be Imposed Against LeEco and**

18                **LeLe**

19    Under Rule 37(a)(3)(iv), a party may move for an order compelling a

20    discovery response where the opposing party fails to respond that a request for

21    production of documents will be permitted.  In this case, Defendants simply failed to

22    respond in any way to Plaintiff's RFPs.  Therefore, this motion is proper.

23    Under *Fed. R. Civ. P.* 37 (a)(5)(A)(ii), sanctions "must" be awarded if a

24    motion to compel is granted unless the Court finds the opposing party's

25    nondisclosure was "substantially justified."  Plaintiffs propounded RFPs upon

26    Defendants because it was authorized to do so by the Court.  Defendants have never

27    responded or objected to any of said RFPs, thereby waiving any objections that they

28    had to same, and conceding that same were properly propounded, relevant and

ERVIN COHEN & JESSUP LLP

1  requested in good faith.  Moreover, Defendants have failed to provide any

2  documents requested in the RFPs.

3  Defendants' continued gamesmanship in this case has rendered the discovery

4  process unduly burdensome and unnecessarily expensive for all parties and the

5  Court.  Defendants have engaged in the type of discovery abuse that an award of

6  sanctions is designed to deter and curtail.

7  As a result, Plaintiffs have unnecessarily incurred attorney's fees and costs by

8  engaging in futile efforts to meet and confer with Defendants' counsel and by filing

9  this motion to compel and for sanctions.  Defendants' willful and inexcusable

10  disregard of its discovery obligations deserves the imposition of sanctions, as

11  authorized in *Fed. R. Civ. P.* 37(a)(5).

12  If the Court agrees that Defendants should be required to pay Plaintiffs'

13  reasonable expenses and attorney's fees incurred in making the motion, then

14  Plaintiffs' counsel will file a declaration containing the amount of attorneys' fees

15  incurred in this motion in accordance with the Court's ruling.

16  **B.**     **Defendants' Statement.**

17     **1.     Background Facts**

18       **a.     Plaintiff's Service of the Early Requests and**

19          **Defendants' Response Thereto**

20  On January 12, 2018, Plaintiff served the Early RFPs on Defendants.  (*See*

21  Exs. A and B.)  Upon receipt of the Early RFPs, Defendants' counsel reviewed

22  FRCP Rule 26(d)(2)(B) and calendared Defendants' responses to be served no later

23  than 30 days after the FRCP Rule 26(f) conference.  (*See* Joyner Dec., ¶ 3.)  On

24  February 7, 2018, Plaintiff and Defendants' counsel met and conferred by telephone

25  on a subject other than this discovery dispute.  (*Id.* ¶ 4.)  During the February 7

26  telephone conversation Plaintiff's counsel mentioned that he believed Defendants

27  would be responding to the Early RFPs soon.  (*Id.* ¶ 5.)  Defendants' counsel

28  responded during that telephone conversation that Defendants' responses were due

ERVIN COHEN & JESSUP LLP

1  after the Rule 26(f) conference because the Early RFPs were served under the FRCP

2  rules governing early discovery.  (*Id.*)  Defendant's counsel requested during that

3  telephone conversation that Plaintiff's counsel speak with the Plaintiff's attorney

4  who prepared the Early RFPs because they could have only been served under the

5  FRCP early discovery rules.  (*Id.*)

6       On February 21, 2018, Plaintiff's counsel sent a meet and confer letter to

7  Defendants' counsel claiming that Defendants' responses were past due and arguing

8  for the first time that Defendants' had waived their objections to the Early RFPs.

9  (*See* Ex. C).  On March 1, 2018, Defendants' counsel sent a letter to Plaintiff's

10  counsel setting out a detailed analysis of legal authority supporting Defendants'

11  position.  (*See* Ex. D.)  In the March 1 letter, Defendants' counsel reiterated

12  Defendants' belief that the Early RFPs constituted early discovery under Rule

13  26(d)(2)(B) and as such responses were not due until 30 days after the Rule 26(f)

14  conference (i.e. April 11, 2018).  (*Id.*)  In the spirit of compromise, Defendants

15  offered in the March 1 letter to find a mutually agreeable date for Defendants to

16  respond prior to the deadline.  (*Id.*)  On March 1, 2018, Plaintiff's counsel

17  responded in writing: "The objections have been waived."  (Ex. E.)

18  **b.   Creation of the Framework Agreement Settling All**

19  **Claims Under the Merger Agreement**

20       On July 6, 2017, the Plaintiff and LeEco entered into the "Agreement and

21  Plan of Merger" (the "Merger Agreement" or "MA"), which, had it been

22  consummated, would have resulted in LeEco's acquisition of Plaintiff.  Among the

23  "Conditions" to the merger going forward was the approval of both the U.S. and the

24  Chinese governments.  MA § 7.2.  It is undisputed that the Chinese government did

25  not grant its approval to the merger, but the reasons why that approval was not

26  granted were contested by the Parties.  Section 9.1(e) of the Merger Agreement

27  provided that if a "Governmental Entity" (defined to include the People's Republic

28  of China, or "PRC") failed to grant approval, the Merger Agreement could be

1   terminated without payment of a $100 million "Buyer Termination Fee" penalty.

2   MA § 9.1(e).  The Parties extended the Closing Date for the Merger to April 6, 2017

3   (First Amended Complaint or "FAC" ¶ 31) in order to allow themselves additional

4   time to obtain the necessary approvals or come to some other resolution.  However,

5   just prior to that time, Plaintiff attempted to terminate the Merger Agreement via a

6   termination letter dated March 30, 2017, in which Plaintiff blamed LeEco for

7   allegedly violating several provisions of the Merger Agreement.

8           Both before and after that termination letter was received, LeEco and Plaintiff

9   had settlement discussions regarding their dispute under the Merger Agreement.

10  Those discussions ultimately resulted in the April 5, 2017 "Framework,

11  Termination, and Mutual General Release Agreement" (the "Framework

12  Agreement" or "FA").  In the Framework Agreement, the Parties agreed they were

13  terminating the Merger Agreement pursuant to Section 9.1(a), which is the mutual

14  walk-away provision (under which there would be no Buyer Termination Fee),[11] and

15  the Parties agreed to a joint press release stating that they "terminate[d] the Merger

16  Agreement due to failure to obtain PRC regulatory approvals . . ."  FA § 5.

17          Plaintiff initiated this action and contends in the FAC that LeEco violated

18  both the Merger Agreement and the Framework Agreement.  On November 20,

19  2017, LeEco filed its Partial Motion to Dismiss Plaintiff's First Amended Complaint

20  ("LeEco's Motion") requesting the Court to dismiss claims two through six of the

21  First Amended Complaint.  LeEco's Motion sets out in detail that the "Framework,

22  Termination and Mutual General Release Agreement," as its name suggests,

23  terminated the Merger Agreement on specified terms, and settled and released all

24  potential claims. These include all claims "aris[ing] out of or in any way relate[d]"

25  to any claim arising from (i) the negotiation or entry into the Merger Agreement, (ii)

26  _____

27  [11] FA § 1.1; MA §§ 9.1(a), 9.2(a) (Buyer Termination Fee not applicable to termination under §9.1(a)).

28

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  any breach of the Merger Agreement, and (iii) the termination of the Merger

2  Agreement ("Released Claims").  FA § 6.2.  LeEco argues in the Motion that the

3  sixth claim based upon an alleged breach of the Merger Agreement must be

4  dismissed pursuant to the literal terms of the Framework Agreement, as Plaintiff

5  itself acknowledges in the FAC.[12]  LeEco further asserts in the Motion that causes of

6  action two through five are nearly identically pled sets of allegations related to the

7  termination of the Merger Agreement through the Framework Agreement.[13]

8  Plaintiff acknowledges that (pursuant to the Framework Agreement) it

9  received $40 million from LeEco to settle all claims under the Merger Agreement,

10  and therefore Plaintiff does not contend that LeEco never intended to perform under

11  the Framework Agreement as a whole.  LeEo argues in the Motion that only the

12  Framework Agreement is properly at issue before the Court.  That dispute involves

13  competing interpretations of parts of the Framework Agreement that are unrelated to

14  the unequivocal release of claims. These pertain to conditions for the release of an

15  additional $10 million held in escrow and the Parties' performance and remaining

16  obligations (if any) related to the formation of a proposed China-based joint venture

17  ("China JV").[14]

18  Roughly three-quarters of Plaintiff's Early Requests concern issues related to

19  the Merger Agreement that would be rendered irrelevant if the Court grants LeEco's

20  _____

21  [12] FAC ¶ 108 (pleading breach of the Merger Agreement "[a]s an alternative theory of recovery
   and subject to the entry of a judgment for rescission"); *see also* ECF Dkt. No. 23 [Opposition to

22  Motion to Set Aside Entry of Default], at 28-29 (acknowledging that the Framework Agreement
   would have to be rescinded "[f]or the Court even to reach this [Breach of the Merger Agreement]

23  claim").

24  [13] Plaintiff's key arguments are made at paragraphs 33-39 of the FAC, and these are repeated
   more or less verbatim at ¶¶ 66-72 (fraud), 80-86 (negligent misrepresentation), 93-99 (promissory

25  estopped) and 106 (rescission).

26  [14] LeEco has filed a Counterclaim against Plaintiff that seeks the declaratory relief determination
   by the Court that the portions of the Framework Agreement related to the China JV do not create

27  an enforceable legal obligation.  In the event that the Court determines that it does, LeEco pleads
   in the alternative that Plaintiff breached those portions of the Framework Agreement.

28

1  pending motion to dismiss and limits this action to the dispute over the Framework

2  Agreement.

3       Plaintiff attempted to add LeLe, who is not a party to the Merger Agreement

4  or Framework Agreement, as a defendant in the FAC.  LeLe's motion to dismiss

5  pursuant to FRCP Rule 12(b)(2)&(5) is pending before the Court and is set for

6  hearing on April 23, 2018.  Plaintiff's Early Requests to LeLe, which were served

7  on LeLe three days after LeLe was allegedly served with the summons and FAC,

8  would be improper if the Court dismisses LeLe as a defendant.

9       **2.      Defendants Did Not Waive Their Right to Include Objections**

10           **in Their Responses to the Early RFPs**

11           **a.      Defendants Served Timely Responses to Plaintiff's**

12                **Early Requests for Production**

13       The deadline for responding to Plaintiff's Early Requests was April 11, 2018,

14  and Defendants served the April 11 Responses on that date.  Ex. 2 (LeEco's

15  response) & Ex. 3 (LeLe's response).

16       Plaintiff's Early Requests were served pursuant to Rule 34 prior to the Rule

17  26(f) conference of counsel, and thus constituted early Rule 34 requests that are

18  "considered to have been served at the first Rule 26(f) conference."  FRCP Rule

19  26(d)(2)(B).  While Plaintiff delivered its Requests to Defendants on January 12,

20  2018, the clock on Defendants' response did not start running until the first Rule

21  26(f) conference took place on March 12, 2018.[15]  Thus, Defendants' responses

22  were not due until April 11, 2018, Rule 26(d)(2), and they were served on that date.

23  Early discovery requests are designed to facilitate "a substantive Rule 26(f)

24  conference in which the parties are able to engage in a meaningful two-way

25  dialogue about a comprehensive, efficient discovery plan."  *United States ex rel.*

---

27  [15] *See* 8-34 Bender's Federal Practice Forms Scope (2017) ("The [Rule 34] request is considered
28  to have been served at the first Rule 26(f) conference, as delivery does not count as service.").

ERVIN COHEN & JESSUP LLP

1   *Brown v. Celgene Corp.*, No. CV 10-3165-GHK (SSx), 2014 U.S. Dist. LEXIS

2   194470, at *3 (C.D. Cal. Mar. 21, 2014).[16]  Indeed, the Early Requests did cause

3   Defendants to send the March 1 letter notifying Plaintiff that the vast majority of

4   Plaintiff's Early Requests are beyond the pale of what a court will find to be

5   permissible discovery.  For example, Plaintiff's Early Requests seek premature and

6   overbroad discovery regarding (1) the Released Claims that Plaintiff settled pursuant

7   to the Framework Agreement and (2) purportedly "alter-ego" related documents that

8   would require the production of virtually every document from a multitude of

9   foreign entities that are not before the Court and over which the Court would lack

10  jurisdiction.

11       While the Court's Jan. 10 Order "encourages" early discovery it does not

12  address when responses to such discovery would be due.  Moreover, as discussed

13  below, that encouragement came with an important caveat regarding "premature"

14  discovery that Plaintiff quotes but then completely ignores in its section of the Joint

15  Stipulation.

16              b.     **The Court's Jan. 10 Order Contained An Important**

17                     **Caveat Regarding "Premature" Discovery**

18       Plaintiff's Early Requests are premature.  The Court's Jan. 10 Order states,

19  "*Unless there is a **likelihood** that upon motion by a party the Court would order that*

20  ***any** or all discovery is premature . . . .*"  Here, the Court has pending before it (and

21  has taken under submission) LeEco's fully briefed motion to dismiss Plaintiff's

22  second through sixth causes of action.  LeEco's motion sets out in detail that in the

23  Framework Agreement Plaintiff settled and released all claims relating to the

24  _____

25  [16] *See also* 8-34 Bender's Federal Practice Forms Scope (2017)  (early discovery under Rule 34 is
    "designed to facilitate focused discussion during the Rule 26(f) conference"); 6-26 Moore's

26  Federal Practice - Civil § 26 App. 14 (2018)  (the "relaxation of the discovery moratorium"
    allowing for early discovery was "designed to facilitate focused discussion during the Rule 26(f)

27  conference").

28

Merger Agreement, including all claims related to its entry into the Merger Agreement and the termination of the Merger Agreement, in exchange for LeEco's payment to Plaintiff of $40 million.  These Released Claims include Plaintiff's cause of action for breach of the Merger Agreement (Sixth Claim), and Plaintiff's various theories of promissory fraud (pursuant to which Plaintiff raises its alter-ego theories of liability) (Second through Fifth Claims).  If the Court grants LeEco's motion to dismiss, the vast majority of Plaintiff's Early Requests would be rendered entirely irrelevant, as nearly one-third of them seek documents pertaining to the proposed merger or the Merger Agreement itself.  *See* RFPs 1, 6, 7, 9-16, 18-28 & 34.  As to the small number of Early Requests related to the Framework Agreement, LeEco has already responded that it will timely produce non-privileged responsive documents subject to specific objections set out in the April 11 Responses.  Ex. 2.

If the Court grants LeLe's pending motion set for hearing on April 23, 2018 LeLe will be dismissed entirely from this action.  In the April 11 Responses, LeLe stated that it will also produce non-privileged responsive documents, if any, subject to specific objections if the Court denies its pending motion to dismiss.  Ex. 3.

In addition, nearly half of Plaintiff's Early RFPs seek discovery from individuals and entities pursuant to Plaintiff's alter-ego theories of liability. Responding to those RFPs without objection would require the production of almost every document not just in Defendants' possession, but also from a massively overbroad defined group of so-called "Affiliates" involving dozens of companies headquartered abroad with no relationship to this case.  *See* RFPs 7, 9, 10, 12, 14, 15, 19-21, 29, 31-33, 36-39, 43-49, 51-54, 58 & 60-65.  These Early Requests reveal broad categories of such sweeping scope that no court would find them allowable without substantial limitations, even if a court were to require documents to be

1   produced at all.[17]  Thus, the Early Requests are "premature" within the meaning of

2   the Court's Jan. 10 Order.

3                        **c.    Plaintiff's Position That "All Objections Have Been**

4                               **Waived" Has No Support in the Applicable Case Law**

5          Even if Defendants' April 11 Responses were not timely, which they were,

6   the court should find good cause that Defendants did not waive their objections.

7   Courts look primarily to two factors in assessing whether the "draconian result" of a

8   waiver of objections is the inappropriate outcome. *See Batts v. Cnty. of Santa Clara*,

9   No. C08-00286 JW (HRL), 2010 WL 1027990, at *3 (N.D. Cal. Mar. 18, 2010) ("a

10  waiver of all objections would be a draconian result that is not warranted"

11  notwithstanding an unexplained two-week delay in responding).

12         First, courts look to whether the responding party had a good faith basis for its

13  belief.  In *Brown v. Stroud*, No. C-08-02348-VRW (DMR), 2010 WL 3339524

14  (N.D. Cal. Aug. 24, 2010), for example, the plaintiff failed to make timely written

15  responses to discovery requests because it erroneously believed they had been

16  served prematurely.  *Id.* at *1.  The court concluded that because the plaintiff had

17  articulable, non-frivolous grounds as to why it believed the discovery was due on a

18  later date, there was good cause to find that objections had not been waived.  *Id.* at

19  *6.[18]  Here, Defendants similarly had reasonable grounds as to why they believed

20  

---

21  [17] As a representative sample, Defendants would theoretically be required to produce overbroad
    document categories  regarding all evidence of any ownership interests in any Defendant as well
22  as each of the so-called "Affiliates" (RFP 39); all corporate minutes, board agendas and
    resolutions (regardless of topic) since January 1, 2012 (RFPs 39-42);  all contracts of any kind
23  since January 1, 2012 (RFP 43);  the identities and contact information of all employees since
    January 1, 2012 (RFP 45-46);  any monies transferred since January 1, 2012 (RFP 47); all loan
24  agreements since January 1, 2012 (RFP 49);  all documents related to the capitalization of any of
    these companies (RFP 50);  all financial statements since January 1, 2012 (RFP 51);  all assets in
25  excess of $100,000 (RFP 53);  all liabilities in excess of $100,000 (RFP 54).  As set out in the
    objections in the April 11 Responses, Plaintiff is requesting literally *everything* regardless of
26  proportionately or relevance and the Early Requests are clearly intended to harass.

27  [18] *See also Zuniga v. W. Apartments*, No. CV 13-4637 JFW(JCx), 2014 U.S. Dist. LEXIS 83135,
28  at *4-5 (C.D. Cal. Mar. 25, 2014) (good cause excuses a waiver of untimely objections).

---

ERVIN COHEN & JESSUP LLP

the discovery responses were not due when Plaintiff claimed they were.

Second, courts look to whether the propounding party has been prejudiced by the delay. In *Karr v. Napolitano*, No. C 11-02207 LB, 2012 U.S. Dist. LEXIS 75709 (N.D. Cal. May 31, 2012), the defendant's responses to RFPs were late due to a calendaring error, and the plaintiff argued the defendant waived his objections as a result. *Id.* at *15. The court found that the plaintiff did not provide a reason to doubt defendant's explanation, and "most significantly" the court did not see how the plaintiff would have been prejudiced by the delay. *Id.* at *17-18. The court held that without any prejudice, a complete waiver of the defendant's objections would be "a disproportionately harsh result." *Id.* at *18.[19] In this case, Plaintiff does not even attempt to argue "prejudice" in its portion of the Joint Stipulation. This makes sense because the Early Requests were served prior to the Rule 26(f) conference, Defendants served their April 11 Responses, and the Court has not yet had an opportunity to hear all of the pending motions to dismiss. The Court set the trial for August 13, 2019, or more than a year from the April 11 Responses.

A diligent search revealed no case supporting Plaintiff's extreme position of waiver and the cases that Plaintiff cites in the Joint Stipulation are unavailing. Plaintiff's primary authority in its meet-and-confer letter and in the Joint Stipulation is *Trustees of the Suburban Teamsters of No. Illinois Pension Fund v. Bolingbrook Redi-Mix Co.*, No. 15-CV-2690, 2016 WL 1258849 (N.D. Ill. Mar. 28, 2016) ("*Trustees*"). In *Trustees*, the plaintiff failed to respond to RFPs and interrogatories within 30 days so the parties agreed to extend the response date three weeks. The court found that "[d]efendants were accommodating; they agreed to give the Fund until the end of the week of January 17" (*Id.* at *2), which is what the Court would presumably expect of the parties here. Defendants, in fact, offered to respond short

---

[19] *See also Kanawi v. Bechtel Corp.*, No. C 06-05566 CRB (EDL), 2008 WL 4642168 (N.D. Cal. Oct. 17, 2008) (plaintiff failed to timely respond to discovery due to a calendaring error and the court held that objections were not waived where the defendant failed to show prejudice).

ERVIN COHEN & JESSUP LLP

of April 11 in order to obviate this unnecessary motion.  In *Trustees*, the plaintiff failed to provide any response after the agreed upon extended deadline and then for the first time raised a blanket objection to all discovery.  Even after concluding that the objection was *not* well-taken, the court *still allowed* the plaintiff to "respond to Defendants' outstanding discovery requests . . . within 14 days of the date of this ruling . . ."  *Id.* at *5.  While the court referenced the principle that the failure to timely respond "may" have waived the ability to object absent "good cause," *the court did not impose a waiver.  Id.*

The other case Plaintiff relies on, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992), exemplifies that even in the most egregious circumstances courts still strive to decide disputes on the substantive merits.  In *Richmark*, a default judgment was entered against a Chinese corporation ("Beijing") in the District Court.  As part of proceedings to enforce the judgment, Beijing refused to comply with the District Court's order regarding discovery and the plaintiff was forced to move for contempt and discovery sanctions.  As part of the contempt proceedings, the District Court again ordered Beijing to comply because it rejected Beijing's objection for the first time that "State Secrecy Laws" prohibited it from disclosing the requested discovery.  *Id.* at 1472.  Because Beijing again refused to comply despite repeated court orders, the District Court held Beijing in contempt of court.  *Id.*  Even in the face of such egregious conduct, the Ninth Circuit still considered the merits of Beijing's State Secrecy arguments, and concluded that they were not well-taken under the circumstances.  The Ninth Circuit upheld that contempt order because "[no] good faith [was] evident from the record."  *Id.* at 1479.

In the present case, the evidence shows that Defendants have acted in good faith.  Defendants in fact served their Responses when they believed them to be due.  Defendants also have been responsive in connection with the only discovery dispute raised at this early stage of the case.  Plaintiff raised the issue of objections being

ERVIN COHEN & JESSUP LLP

1   allegedly waived in its February 21, 2018 letter citing the case law discussed above.

2   Defendants timely responded on March 1, 2018 with a substantive analysis as to

3   why the April 11 Responses were not yet due and a discussion of why Plaintiff's

4   cited cases did not support Plaintiff's contrary position.  In addition, Defendants

5   offered a reasonable compromise on the response date so as not to burden the parties

6   and the Court with a Joint Stipulation that is a waste of time and resources.  Plaintiff

7   rebuffed those efforts.[20]  Defendants have in fact served their responses on the date

8   they believe them to be due.

9          **3.    Monetary Sanctions Should Not Be Imposed Against**

10                **Defendants**

11         As discussed in Section III.B.2.a, Defendants have acted in good faith.

12   Before a court may impose sanctions against a party, a finding of bad faith and

13   prejudice is required. *See Lofton v. Verizon Wireless LLC*, 308 F.R.D. 276, 285

14   (N.D. Cal. 2015).   Defendants served what they in good faith believe to be timely

15   responses to Plaintiff's Early Requests.  Pursuant to Rule 37(a)(5)(A)(ii), sanctions

16   should not be awarded if the opposing party's nondisclosure was substantially

17   justified.  Here, Defendants' position that discovery responses were not due until

18   April 11, 2018 was substantially justified because they relied on the Federal Rules

19   of Civil Procedure regarding the response time for Plaintiff's Early RFPs.  Even if

20   Plaintiff's Early RFPs are not considered to be early discovery requests by virtue of

21   the Court's Jan. 10 Order, Defendants justifiably relied on that Order's important

22   caveat regarding "premature" discovery.  It is beyond argument that a majority of

23   Plaintiff 's Requests are "premature" under the Jan. 10 Order because, as discussed

24   above and in LeEco's motion to dismiss, they seek discovery of the Released Claims

25   and from entities not before the Court.  Finally, LeLe has a pending motion to

26

27   [20] Defendants also filed a timely Joint 26(f) Report and timely served their Initial Disclosures
pursuant to Rule 26(a)(1) upon Plaintiff, so Plaintiff's assertion that "Defendants have refused to

28   participate in discovery" (Joint Stipulation at 5:20-21) is hyperbole.

ERVIN COHEN & JESSUP LLP

1   dismiss pursuant to Rules 12(b)(2) and Rule 12(b)(5) set for hearing on April 23,

2   2018.  Defendants' good faith belief that the responses to Plaintiffs' Early RFPs

3   were not due until April 11, 2018 is substantially justified and monetary sanctions

4   should not be imposed against Defendants.

5       In addition, even if the responses were served late—which Defendants

6   deny—Plaintiff makes no claim of prejudice in the Joint Stipulation.  Plaintiff fails

7   to cite a single case that supports its extreme position, and ignores a wealth of case

8   law focusing on bad faith and prejudice as the only instances which justify the

9   "draconian result" of a waiver of objections.[21]  As discussed in Section III.B.2.c, the

10  cases Plaintiff cites in the Joint Stipulation only undermine its position.

11      Moreover, as was the case with its refusal to stipulate to set aside the Clerk's

12  entry of default, Plaintiff turned down Defendants' attempt to find a mutually

13  acceptable date for responding to the Early Requests that would have avoided

14  unnecessary judicial intervention and expense.  The lack of legal authority in

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  _____

26

27  [21] *See Batts v. Cnty. of Santa Clara*, No. C08-00286 JW (HRL), 2010 WL 1027990, at *3 (N.D. Cal. Mar. 18, 2010); *see also Karr v. Napolitano*, No. C 11-02207 LB, 2012 U.S. Dist. LEXIS

28  75709 (N.D. Cal. May 31, 2012).

1  Plaintiff's portion of the Joint Stipulation shows that it is Plaintiff that has acted in

2  bad faith[22] by filing a Joint Stipulation that lacks substantial legal support.

3  DATED: April 19, 2018          ERVIN COHEN & JESSUP LLP
                                       Robert M. Waxman
4                                      David N. Tarlow
5                                      Jason L. Haas

6

7

8                              By:  /s/ Robert M. Waxman
                                       Robert M. Waxman
9                                      Attorneys for Plaintiff VIZIO, INC., a
10                                     California corporation

11 DATED: April 19, 2018          GREENBERG TRAURIG, LLP
                                       Jeff K. Joyner
12                                     Daniel Tyukody

13

14

15                             By:  /s/Jeff K. Joyner
                                       Jeff K. Joyner
16                                     Attorneys for Defendants LeECO V. LTD.,
                                       an exempted company with limited liability
17                                     incorporated under the laws of the Cayman
18                                     Islands, and; LELE HOLDING, LTD., a
                                       British Virgin Islands Personal Holding
19                                     Company

20

21

22 [22] Plaintiff also included a five-page introductory statement in this Joint Stipulation that exceeds
   the three-page limit under Central District Local Rule 37-2.1.  In addition, Plaintiff served its
23 Initial Disclosures a day late.  *See* Ex. 4.  Pursuant to Rule 26(a)(1)(C), "[a] party must make the
   initial disclosures at or within 14 days after the parties' Rule 26(f) conference . . ."  The parties'
24 Rule 26(f) conference took place on March 12, 2018, and thus Plaintiffs' initial disclosures were
   due on March 26, 2018.  However, Plaintiff did not serve its initial disclosures until March 27,
25 2018. *See* Ex.4.  Given the early stages of the litigation, Defendants do not intend to move to
26 exclude Plaintiff's witnesses and documents because they were untimely disclosed.  Not every
   error merits judicial intervention.
27

28