# EXHIBIT A

1   Robert M. Waxman (SBN 89754)
      rwaxman@ecjlaw.com
2   David N. Tarlow (SBN 214050)
      dtarlow@ecjlaw.com
3   Jason L. Haas (SBN 217290)
      jhaas@ecjlaw.com
4   **ERVIN COHEN & JESSUP LLP**
    9401 Wilshire Boulevard, Ninth Floor
5   Beverly Hills, California 90212-2974
    Telephone  (310) 273-6333
6   Facsimile  (310) 859-2325

7   Attorneys for Plaintiff VIZIO, INC., a California corporation

8

9              **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11

| 12 | VIZIO, INC., a California corporation, | Case No. 8:17-CV-01175-DOC-JDE |
|---|---|---|
| 13 | Plaintiff, | The Hon. John D. Early |
| 14 | v. | **JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.** |
| 15 | LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10, | |
| 16 | | |
| 17 | | **Date:        August 16, 2018** |
| 18 | | **Time:        10:00 a.m.** |
| 19 | | **Courtroom:   6A** |
| 20 | | |
| 21 | Defendant. | |
| 22 | LeECO V. LTD., | |
| 23 | Counter-Claimant, | |
| 24 | vs. | |
| 25 | VIZIO, INC., a California corporation, | |
| 26 | Counter-Defendant. | |
| 27 | | |
| 28 | | |

ERVIN COHEN & JESSUP LLP

1 **I.     <u>INTRODUCTION</u>**

2      Pursuant to Rules 30, 34 and 37 of the *Federal Rules of Civil Procedure* and

3  Local Rule 37-2.1, Plaintiff and Counter-Defendant VIZIO, Inc. ("Plaintiff" or

4  "VIZIO") and Defendants and Counterclaimant LeEco V. Ltd.  ("LeEco") and LeLe

5  Holding, Ltd. ("Lele Holding") (LeEco and Lele Holding are sometimes hereinafter

6  collectively referred to as "Defendants") submit this Joint Stipulation regarding

7  Plaintiff's Motion to Compel Defendants to provide a Further Response to

8  Plaintiff's Requests for Production of Documents (Set One) (hereinafter "RFPs")

9  and to Produce Documents, Without Objections.

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

ERVIN COHEN & JESSUP LLP

## II.   PLAINTIFF'S' INTRODUCTORY STATEMENT

Defendants are playing fast and loose with Plaintiff and this Court. They have done so from the beginning of this lawsuit. The "culpable conduct" of LeEco already found by Judge Carter in connection with the service of the Complaint is a prime example. (Docket No. 31, pp. 4-6). LeEco's "culpable conduct" has once again resurfaced. This time in the form of a willful failure to fully and properly respond to requests for production of documents. Indeed, even "objecting" to, and then refusing to provide, the required privilege log. These "stone-wall" tactics cannot be tolerated.

Plaintiff's claims are stated in the First Amended Complaint ("FAC"). (Docket No. 35). The gist of this case is that LeEco agreed to acquire VIZIO for approximately $2BB. (*Id.,* at ¶¶ 12 & 16). The document which the parties negotiated and executed to consummate LeEco's acquisition of VIZIO is the Merger Agreement. (*Id.*) The Merger Agreement was the product of serious misrepresentations by the Defendants. (Docket No. 35, FAC, ¶¶ 11–15). However, in the event of a termination of the Merger Agreement by VIZIO for LeEco's breach, LeEco's failure to obtain regulatory approvals from the People's Republic of China or LeEco's failure to close the transaction for lack of the requisite financial wherewithal and/or pursuant to the provisions set forth in the Merger Agreement, LeEco agreed to pay VIZIO a $100MM termination fee. (*Id.,* at ¶¶ 22-23).

On March 30, 2017, VIZIO provided LeEco with a Notice of Termination of the Merger Agreement due to LeEco's breaches, triggering its obligation to pay the $100MM termination fee. (*Id.,* at ¶¶ 29-30). Thereafter, Defendants Lele Holding, LeEco Global Group Ltd., and LeEco, by and through Defendant Yueting Jia, among others, falsely promised VIZIO that, inter alia, in connection with VIZIO's agreement to terminate the Merger Agreement subject to specified carve-outs and forgo immediate payment of the $100MM termination fee, LeEco would enter into a Joint Venture with VIZIO to distribute VIZIO products in China. (*Id.,* at ¶¶ 33-35).

1 Additionally, $40MM which had been deposited into escrow under the Merger

2 Agreement would be immediately released to VIZIO (*Id.,* at ¶ 33), while the

3 remaining $10MM in that escrow was falsely promised to be withheld until 45 days

4 after the parties executed the joint venture agreement - - but if no joint venture

5 agreement was executed, then that $10MM sum was also to be released to VIZIO in

6 accordance with the specifically carved out and still operative Buyer Termination

7 Fee Deposit provisions of the Merger Agreement. (*Id.,* at ¶¶ 33-35).

8 This proposal was memorialized in the Framework Agreement. (*Id.,* at ¶¶ 34-

9 39). LeEco then refused to negotiate the substantive terms of the joint venture

10 agreement with VIZIO. (*Id.,* at ¶¶ 43-45). This lawsuit followed. LeEco is named

11 in each Claim for Relief. The remaining defendants consist of LeEco Global Group,

12 Ltd. ("Global Group"), the Chinese corporate parent of LeEco, (*Id.,* at ¶ 3),

13 Defendant Lele Holding, a British Virgin Islands investment vehicle and personal

14 holding company that is owned and controlled by Defendant Yueting Jia ("JIA"), let

15 alone the parent company of Global Group as well as the ultimate corporate parent

16 of LeEco (*Id.,* at ¶ 4), and Defendant JIA, who at all relevant times is or was (a) the

17 Chairman of the Board of Global Group and its Chief Executive Officer, and (b) the

18 sole or controlling owner of Lele Holding. (*Id.,* at ¶ 5). The remaining defendants

19 were sued as the alter-egos of LeEco in the 1st through 5th Claims for Relief. (*Id.,* at

20 ¶¶ 56-57, 65, 79, 92, and 105). They were also sued for the direct

21 misrepresentations each made to fraudulently induce VIZIO to enter into the

22 Framework Agreement in the 2nd through 5th Claims for Relief. (*Id.,* at ¶¶ 66-68,

23 75-77, 80-82, 89-90, 93-95, 102-104, and 105).

24 In November 2017, LeEco filed a Motion to Dismiss the 2nd through 6th

25 Claims for Relief in the FAC. (Docket No. 47-1). VIZIO filed comprehensive

26 Opposition. (Docket No. 50). That Motion has been under submission since

27 January 8, 2018. In the meantime, on January 10, 2018, the Court issued an Order

28 Setting Scheduling Conference. (Docket No. 54). This Scheduling Order

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  "encouraged the parties to begin discovery." (*Id.*).  To that end, on January 12,

2  2018, Plaintiff served its first set of Request for Production of Documents (Set One)

3  on both LeEco and Lele Holding (hereinafter' the "RFPs") (See Declaration of

4  David N. Tarlow ("Tarlow Dec.") Exhibits ("Exs.") A and B) pursuant to *Fed. R.*

5  *Civ. P.* 34(b)(2)(A).  Plaintiff's RFPs sought 65 separate categories of documents

6  that are relevant to the claims made in the FAC.

7      In March 2018, Lele Holding also filed its Motion to Dismiss the FAC.

8  (Docket No. 63-1).  Once again, VIZIO filed comprehensive Opposition.  (Docket

9  Nos. 69, 69-1, 69-2, 69-3, 70, 71, 71-1, 71-2, 77 and 78).  That motion has been

10  under submission since April 2, 2018.  In the meantime, on April 3, 2018, the Court

11  issued its Scheduling Order & Order Re: Pretrial and Trial Procedures.  (Docket No.

12  82.)  The cutoff date for fact based discovery is December 14, 2018.  (*Id.*).

13      On April 11, 2018, Defendants responded to the RFPs.  They interposed a

14  litany of boilerplate and specious objections to each request.  Defendants agreed to

15  produce documents on a rolling basis as to just six Categories, while at the same

16  time objecting and refusing to even provide a privilege log.  Indeed, with respect to

17  every other RFP (other than RFP No. 33), Defendants asserted objections only.  But

18  worse still, nowhere do Defendants even indicate whether they are withholding

19  documents pursuant to those objections.  Instead, at the pre-motion conference,

20  Defendants asserted that discovery pertaining to claims addressed by their Motions

21  to Dismiss should be stayed pending the rulings thereon; *i.e.,* effectively bifurcating

22  the lawsuit without bothering to file a motion for bifurcation.  Nor have Defendants

23  filed the required motion for a stay or protective order, even though the discovery

24  cutoff is less than six (6) months away.  But rather, Defendants propounded written

25  discovery of their own.  (Tarlow Dec., Ex. C).

26      All of Plaintiff's Claims for Relief are viable.  Plaintiff is entitled to full

27  production and substantive responses without objection in order to prepare for trial.

28

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

## III.   **DEFENDANTS' INTRODUCTORY STATEMENT**

## **DEFINITIONS**

As used herein, and only for the purposes of these discovery requests, the following terms have the following meanings:

1.      As used herein, the terms "YOU" or "YOUR" shall mean LELE, and to all agents and representatives of LELE, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

2.      As used herein, the terms "YOU" or "YOUR" shall mean LeECO, and to all agents and representatives of LeECO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

3.      The word "COMPLAINT" shall mean and refer to the First Amended Complaint filed by Vizio, Inc. in the above-captioned action on November 6, 2017.

4.      "VIZIO" shall mean and refer to Plaintiff Vizio, Inc., a California corporation, and to all agents and representatives of VIZIO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its direction or request.

5.      "LeECO" shall mean Defendant LeEco V. Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands, and to all agents and representatives of LeECO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

6.      "GLOBAL" shall mean Defendant LeEco Global Group Ltd., a corporation organized and existing under the laws of the People's Republic of China, and to all agents and representatives of GLOBAL, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

7.      "LELE" shall mean Defendant Lele Holding Ltd., a personal holding company organized and existing under the laws of the British Virgin Islands, and to all agents and representatives of LELE, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

ERVIN COHEN & JESSUP LLP

8.     "JIA" shall mean Defendant Yueting Jia, an individual who resides in China and is the owner of GLOBAL through LELE, and to all agents and representatives of JIA, and to all PERSONS acting or purporting to act on his behalf or pursuant to his request.

9.     "MERGER SUB" shall mean Le V Merger Sub Inc., a California corporation and indirect wholly-owned subsidiary of LeECO, and to all agents and representatives of MERGER SUB, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

10.     "LTI" shall mean Le Technology, Inc., a California corporation and subsidiary of GLOBAL, and to all agents and representatives of LTI, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

11.     "LREG" shall mean LeEco Real Estate Group LLC, a Delaware limited liability company, and to all agents and representatives of LeEco Real Estate Group LLC, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

12.     "MERGER AGREEMENT" shall mean and refer to that certain Agreement and Plan of Merger, made as of July 6, 2016, by and among VIZIO, LeECO, MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited liability company.

13.     "MERGER" shall mean and refer to that transaction among VIZIO, LeECO, and MERGER SUB agreed to in the MERGER AGREEMENT and to any and all potential transactions discussed between VIZIO and LeECO prior to entry of the MERGER AGREEMENT, whether the potential transaction took the form of a merger, acquisition, purchase of assets or other structure.

14.     "GUARANTY" shall mean and refer to that certain Limited Guarantee made as of July 6, 2016, by LTI in favor of VIZIO.

15.     "FRAMEWORK AGREEMENT" shall mean and refer to that certain Framework, Termination and Mutual General Release Agreement entered into as of

ERVIN COHEN & JESSUP LLP

1   April 5, 2017 by and among VIZIO, LeECO, and MERGER SUB.

2        16.    "ESCROW AGREEMENT" shall mean and refer to that certain

3   Escrow Agreement, made as of July 6, 2016, by and among VIZIO, LeECO,

4   MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited

5   liability company, with Citibank, National Association.

6        17.    "ESCROW" shall mean and refer to the escrow created by the

7   ESCROW AGREEMENT in connection with the MERGER AGREEMENT.

8        18.    "CHINA" shall mean and refer to the People's Republic of China.

9        19.    As used herein, the term "COMMUNICATION" or

10  "COMMUNICATIONS" means the transmittal of information (in the form of facts,

11  ideas, inquiries, or otherwise) by any means, including but not limited to, any

12  meeting, conversation, discussion, conference, correspondence, message, or other

13  written or oral transmission, exchange, or transfer of information in any form

14  between two or more PERSONS, including in person or by telephone, facsimile,

15  telegraph, telex, e-mail or other tangible or electronic medium.

16       20.    As used herein, the terms "DOCUMENT" and "DOCUMENTS" shall

17  mean writings of every kind, source, and authorship, both originals and copies

18  thereof, in YOUR custody or control, or known by YOU to exist, irrespective of

19  whether the writing is one intended for or transmitted internally by YOU or intended

20  for or transmitted to any other person or entity, INCLUDING any government

21  agency, department, administrative entity, or other person or entity, the contents of

22  which in any way RELATE, discuss, consider, or otherwise refer to the subject

23  matter of the particular discovery requested.  "DOCUMENT" and "DOCUMENTS"

24  shall include the following:  (1) all matter that is written, handwritten, typewritten,

25  printed, graphic, photocopied, photographic, or recorded, including sound

26  recordings or reproductions, however produced, reproduced or prepared, including,

27  but not limited to, notes, telegrams, notebooks, brochures, charts, photographs,

28  agreements, proposals, minutes, communications in words or symbols, interoffice

1  communications, studies, technical data, brochures, bulletins, reviews, compilations,
2  films, audio recordings, audio cassettes, videotapes, calendars, appointment books,
3  diaries, and work papers of any kind; (2) all machine or computer readable data
4  compilations or electronic or mechanical devices which contain information,
5  including, but not limited to, computer server(s), texts, tapes, diskettes, cards, hard
6  disks, optical disks, cassettes, and all other information storage or retrieval systems,
7  together with the codes, passwords and/or programming instructions and other
8  materials necessary to understand and use such systems; (3) all electronic mail,
9  instant mail, and social media accounts belonging to YOU; (4) all originals, drafts,
10 and copies that differ in any respect from the original, all marginal comments that
11 appear on such DOCUMENTS, and all transcripts or recordings of such
12 DOCUMENTS; (5) all attachments, enclosures or DOCUMENTS affixed or
13 referred to in such DOCUMENTS; and (6) all material within the scope of Rule
14 1001 of the Federal Rules of Evidence and California Evidence Code Sections 250,
15 255 and 260.

16      21.   The terms "ANY," "ALL," "EACH," and "EVERY" should be
17 understood in their most inclusive sense as necessary to bring within the scope of
18 the discovery request all responses that might otherwise be construed to be outside
19 of their scope.

20      22.   As used herein, the term "INCLUDING" shall mean including, but not
21 limited to, and shall not be interpreted to exclude any information otherwise within
22 the scope of these Requests.

23      23.   As used herein, the term "PERSON" shall mean, without limitation, a
24 natural person, corporation, limited liability company, partnership, trust, association,
25 joint venture, firm, tenancy-in-common or other business enterprise, governmental
26 or legal entity and includes both the singular and plural as well as all representatives
27 of such PERSON or PERSON(S).

28      24.   The words "RELATING," "RELATE," "RELATE TO," "RELATING

ERVIN COHEN & JESSUP LLP

1  TO," and "REFERRING" as used herein shall mean all matters or things that in any

2  way discuss, are connected to, arise from, consist of, reflect, summarize, evaluate, or

3  comment on the subject or object of the particular Request, or that have any logical

4  or factual connection to the matter discussed, and they shall include the common

5  meanings of all those terms, and shall include indirect as well as direct references to

6  the subject matter set forth in the Requests.

7      25.    The term "AFFILIATE" shall mean a subsidiary corporation, sister

8  corporation, subsidiary limited liability company, sister limited liability company, or

9  ANY other form of business entity where: (1) at least 20% or more of the stock or

10  membership interests of that entity are held, owned, or controlled, either directly or

11  indirectly, by the PERSON identified in the request; (2) the entity holds, owns or

12  controls, either directly or indirectly, at least 20% or more of the stock or

13  membership interests of the PERSON identified in the request; or (3) at least 20% or

14  more of the stock or membership interests in both the entity and the PERSON

15  identified in the request are held, owned, or controlled, either directly or indirectly,

16  by the same PERSON.

17                     **INSTRUCTIONS**

18      1.    The time period covered by each of the within Requests shall be from

19  July 1, 2015 to the date of the service of your response to these Requests, except as

20  to those Requests that specifically state any other time period.

21      2.    To the extent that documents responsive to these requests contain text

22  in the Chinese language (or any language other than English), YOU should produce

23  both the original document and any documents in YOUR possession, custody or

24  control that contain an English translation, in whole or in part, of the Chinese text in

25  the original document.

26      3.    As used herein, the terms "and" and "or" shall be interpreted

27  conjunctively or disjunctively, as necessary, to bring within the scope of these

28  Requests all DOCUMENTS that might otherwise be construed to be outside of the

ERVIN COHEN & JESSUP LLP

1  scope of these requests.

2  4.  These Requests include DOCUMENTS within the custody, possession

3  and control of YOU and YOUR agents or AFFILIATES, INCLUDING YOUR

4  agent(s), representative(s), attorney(s), accountant(s), tax advisor(s) and investment

5  advisor(s), and any phone companies or banks YOU use.  If a DOCUMENT is

6  responsive to a request for production and is in YOUR control but is not in YOUR

7  possession or custody, identify the PERSON or entity with possession or custody.

8  5.  If a requested DOCUMENT is withheld or objected to based on a claim

9  of privilege or for other reasons, please serve the undersigned a privilege log, and

10  state with respect to each such withheld DOCUMENT:

11  (a)  The nature or basis of the claim of privilege or other ground for

12  nonproduction;

13  (b)  The names and addresses of all parties to the

14  COMMUNICATION (INCLUDING ALL parties who have been copied on the

15  COMMUNICATION);

16  (c)  The date, subject matter, and number of pages of the

17  DOCUMENT; and

18  (d)  The current custodian and present location of the DOCUMENT.

19  6.  A representation of inability to comply with a particular request shall

20  state the specific reason for the inability to comply, INCLUDING whether the

21  particular DOCUMENT or other tangible thing has never existed, has been

22  destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in

23  YOUR possession, custody, or control and/or the possession, custody or control of

24  any of YOUR AFFILIATES.  The statement shall set forth the name and address of

25  any PERSON known or believed by that party to have possession, custody, or

26  control of that item or category of item.

27  7.  If only a part of a request is objectionable, the response shall identify

28  with particularity any DOCUMENT or other tangible thing falling within any

ERVIN COHEN & JESSUP LLP

1  category of item in the request to which an objection is being made, and shall set

2  forth clearly the extent of and the specific ground for the objection.  If there are no

3  DOCUMENTS responsive to any particular request or category, please so state in

4  writing, providing a representation of inability to comply with respect to the

5  remainder of that item or category.

6      8.    All paper DOCUMENTS are to be produced as they are kept in the

7  usual course of business with any identifying labels, file markings or similar

8  identifying features, and shall be organized and labeled to correspond to the

9  appropriate request herein.  If a portion of a DOCUMENT is responsive, the entire

10  DOCUMENT is to be produced.

11      With respect to electronic DOCUMENTS, all spreadsheets, presentation and

12  design files (e.g. Excel, PowerPoint) are to be produced in electronic form in native

13  format, as kept in the ordinary course of business.  All other electronically stored

14  information ("ESI") and imaged hard copy shall be produced in the format outlined

15  below.  All ESI shall be rendered to TIFF image format, and accompanied by a

16  Concordance Image Cross Reference file.  All applicable metadata/database fields

17  shall be extracted and provided in Concordance load file format:

18      (a)    Image File Format:  All images, paper documents scanned to

19  images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files,

20  CCITT Group IV (2D Compression).  Documents should be uniquely and

21  sequentially Bates numbered with an endorsement burned into each image.  All

22  TIFF file names shall include the unique Bates number burned into the image.  Each

23  Bates number shall be a standard length, include leading zeros in the number, and be

24  unique for each produced page.  All TIFF image files shall be stored with the ".tiff"

25  extension.  Images shall be OCR'd using a standard COTS products.  All pages of a

26  document or all pages of a collection of documents that comprise a folder or other

27  logical grouping, including a box, shall be delivered on a single piece of media.  No

28  image folder shall contain more than 2000 images.

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1        (b)    Concordance Image Cross Reference File:  Images should be

2 accompanied by a Concordance Image Cross Reference file that associates each

3 Bates number with its corresponding single-page TIFF image file.  The Cross

4 Reference file should also contain the image file path for each Bates numbered page.

5        (c)    Concordance Load File:  Images should also be accompanied by

6 a "text load file" containing delimited text that will populate fields in a searchable,

7 flat database environment.

8     9.    If any DOCUMENT called for within a request has been destroyed or

9 discarded, identify the DOCUMENT and describe the date, manner of and reason

10 for its destruction.

11     10.    Each Request shall be construed independently, and no Request shall

12 be viewed as limiting the scope of any other Document Request.

13     11.    Each non-identical copy of a DOCUMENT, whether different from the

14 original because of handwritten notes, marks, attachments, or any other reason, is a

15 separate DOCUMENT that must be produced.

16     12.    The use of the singular form of any word includes the plural, and the

17 use of the plural form of any word includes the singular.

18                    **REQUESTS FOR PRODUCTION**

19 **REQUEST FOR PRODUCTION NO. 1:**

20     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

21 the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the

22 negotiations that resulted in the MERGER AGREEMENT.

23 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

24     LeEco restates and incorporates by reference the Preliminary Statement and

25 General Objections set forth above.  LeEco further objects to this Request as

26 premature and improper because Vizio's second through sixth causes of action in

27 the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

28 LeEco's Motion to Dismiss, then the information and documents sought by this

1  Request are not relevant, making the Request disproportionate to the needs of the

2  case.  LeEco contends that, at this stage, any discovery in this matter should be

3  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

4  Merger Agreement (including its various theories of fraud related to that alleged

5  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

6  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

7  Merger Agreement, including the negotiation or entry into the Merger Agreement,

8  any breach of the Merger Agreement, or the termination of the Merger Agreement

9  has any relevance.  LeEco reserves all rights, including the right to amend and

10  supplement its Response to this Request, should it become necessary and

11  appropriate to do so.

12      LeEco further objects that this Request is compound and overbroad,

13  particularly in its request for "Any and All Documents or Communications that

14  Relate To the Merger Agreement, drafts of the Merger Agreement, or the

15  negotiations that resulted in the Merger Agreement."

16      LeEco further objects that, as phrased, this Request appears to seek

17  documents that are equally available to Vizio.  LeEco objects to searching for and

18  producing documents equally available to Vizio.

19      LeEco further objects that this Request appears to seek documents and

20  communications protected by the attorney-client privilege and work product

21  doctrine.  LeEco objects to producing any privileged communications.  LeEco

22  further objects to producing any such documents created after this lawsuit was filed

23  that merely "Relate To" the Merger Agreement, *et. al.*, as those documents would

24  clearly be protected by the attorney client privilege and attorney work product

25  doctrine.  LeEco further objects to logging all privileged and work product

26  documents created after this lawsuit was filed as unduly burdensome and

27  disproportionate to the needs of the case.  LeEco further objects to producing any

28  such documents created before or during the negotiation and drafting of the Merger

14676.8:9283165.1                                    13                        8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  Agreement that are protected by the attorney client privilege and attorney work

2  product doctrine.

3  **LELE HOLDING'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

4      Lele restates and incorporates by reference the Preliminary Statement and

5  General Objections set forth above.  Lele Holding further objects to this Request on

6  the grounds that it is premature, overbroad, irrelevant, and not proportional to the

7  needs of the case.  Vizio's Requests (identical to, and duplicative of, those

8  propounded on LeEco V. Ltd.) are "premature" because they would be rendered

9  irrelevant were the Court to grant Lele Holding's pending Motion to Dismiss for

10  insufficient service of process and lack of personal jurisdiction ("MTD").  Lele is not

11  a party to the contracts with Vizio that give rise to this action nor is Lele Holding

12  alleged to have made any statement to Vizio or have had any contacts with

13  California whatsoever.  Furthermore, Lele Holding was never properly served in this

14  action.  In addition to being premature, the Requests directed at Lele Holding and

15  the other individuals and entities ("Unrelated Third Parties") are calculated merely

16  to harass and are overbroad, irrelevant, and not proportional to the needs of the case.

17  Moreover, Lele Holding objects to this Request on the grounds that it seeks the

18  documents and communications of third parties or documents and communications

19  which are not in Lele Holding's possession, custody or control.

20      Furthermore, Vizio's Requests are premature because they pertain to issues

21  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

22  Vizio's second through sixth causes of action in the FAC (in which Lele Holding

23  joined).  LeEco's pending MTD would eliminate Vizio's second through sixth

24  causes of action for breach of the Merger Agreement including its various theories

25  of fraud related to that alleged breach.  Vizio gave a release of all such claims to

26  LeEco in the Framework Agreement upon receipt of $40 million ("Released

27  Claims"), which Vizio acknowledges receiving.  Thus, nothing about the

28  negotiations regarding the Merger Agreement, including the negotiation or entry

ERVIN COHEN & JESSUP LLP

1   into the Merger Agreement, any breach of the Merger Agreement, or the termination

2   of the Merger Agreement has any relevance, and discovery should be limited to

3   whether there was a breach of the Framework Agreement. Lele Holding reserves all

4   rights, including the right to amend and supplement its Responses and Objections to

5   Vizio's Requests, should it become necessary and appropriate to do so.

6          Lele Holding further objects that this Request is compound and overbroad,

7   particularly in its request for "Any and All Documents or Communications that

8   Relate To the Merger Agreement, drafts of the Merger Agreement, or the

9   negotiations that resulted in the Merger Agreement."

10          Lele Holding further objects that, as phrased, this Request appears to seek

11   documents that are equally available to Vizio.  Lele Holding objects to searching for

12   and producing documents equally available to Vizio.

13          Lele Holding further objects that this Request appears to seek documents and

14   communications protected by the attorney-client privilege and work product

15   doctrine.  Lele Holding objects to producing any privileged communications. Lele

16   Holding further objects to producing any such documents created after this lawsuit

17   was filed that merely "Relate To" the subject matter of the Request as those

18   documents would clearly be protected by the attorney client privilege and attorney

19   work product doctrine.  Lele Holding further objects to logging all privileged and

20   work product documents created after this lawsuit was filed as unduly burdensome

21   and disproportionate to the needs of the case.

22   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

23   **NO. 1 SHOULD BE COMPELLED:**

24          Defendants' objections to this request are without merit and improper.

25          1.          **Defendants Have The Burden To Show That Discovery**

26                      **Should Not Be Allowed And Boilerplate Objections Do Not**

27                      **Suffice**

28          Rule 26(b)(1) of the *Federal Rules of Civil Procedure* provides that parties

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  may obtain discovery of any nonprivileged matter that is "relevant to any party's

2  claim or defense and proportional to the needs of the case...."  This Rule also states

3  that "[i]information within the scope of discovery need not be admissible in

4  evidence to be discoverable."  (*Id.*)  Accordingly, "a party may request the

5  production of any document within the scope of Rule 26(b)."  *San Diego Unified*

6  *Port Dist. v. National Union Fire Insurance Company*, 2017 WL 3877730*2 (S.D.

7  Cal.).

8       Rule 34(b)(2)(B) of the *Federal Rules of Civil Procedure* provides that "[f]or

9  each item or category, the response must either state that inspection and related

10 activities will be permitted as requested or state any objection to the request,

11 including the reasons."  Indeed, where objections are made, the objections "must

12 state whether any responsive materials are being withheld on the basis of that

13 objection" under Rule 34(b)(2)(c) of the *Federal Rules of Civil Procedure*.

14      Defendants have flagrantly violated these rules.  With one exception, nowhere

15 do their objections state "whether any responsive materials are being withheld"

16 pursuant to each or any of their litany of boilerplate objections.  Hence, their

17 "responses which do not state whether any responsive materials are being withheld

18 on the basis of objections...are improper and inappropriate."  *Loop Al Labs Inc. v.*

19 *Gatti*, 2016 WL 9132846*2 (N.D. Cal.).

20      Finally, it is well settled that "[t]he party who resists discovery has the burden

21 to show that discovery should not be allowed, and has the burden of clarifying,

22 explaining and supporting its objections."  *Blemaster v. Sabo*, 2017 WL 4843241*1

23 (D. Ariz.), citing *DIRECTV, Inc. v. Trome*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

24 This burden is not met where, as here, Defendants respond to virtually each request

25 other than RFP Nos. 3, 5, 27, 30, 33, 32 and 36 with only the same boilerplate

26 objections.  *Blemaster*, *supra*, *4 (holding that boilerplate objections asserting the

27 same litany of relevance, burden, vague, overbreadth, compound, and equally

28 accessible challenges as well as blanket attorney-client/work product claims, to be

ERVIN COHEN & JESSUP LLP

1 "flagrant violation of the discovery rules", which "are inappropriate [and]

2 tantamount to no objection at all."), citing *Walker v. Lakewood Condo. Owners*

3 *Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). *See also San Diego Unified Port*

4 *Dist.*, *supra*, 2017 WL 3877730*3, stating "Plaintiff asserts some meaningless,

5 improper objections. For example, it is not a proper objection that the requested

6 documents are equally available to and in the possession of Defendant'" [and] "in

7 that same vein, Plaintiff's assertion of privilege and work-product protection is

8 worthless without complying with Rule 26(b)(5)(A), which requires a description of

9 the documents not produced."

10      Not only did Defendants interpose the same litany of meaningless and

11 inappropriate boilerplate objections at bar which "are tantamount to no objections at

12 all", but in addition, they objected to and even refused to provide a privilege log - -

13 let alone list/describe the documents not produced, with one exception.

14 Accordingly, it is equally clear here that these "flagrant violations of the discovery

15 rules" cannot be countenanced.

16        **2.**     **The Motions To Dismiss Do Not Obviate Discovery Since**

17              **Any Ruling To The Contrary Would Emasculate The**

18              **Procedures In Place For The Resolution Of These Motions**

19              **By Judge Carter**

20      The filing of Motions to Dismiss by LeEco and Lele Holding does not excuse

21 their failure to respond to discovery, let alone somehow bifurcate the case. *See*

22 *Vista del Sol Health Care Services, Inc. v. NLRB*, 2014 WL 12631660*2 (C.D. Cal.,

23 Morrow, J.) (noting that "if the Federal Rules contemplated that a motion to dismiss

24 under Rule 12(b)(6) would stay discovery, they would have explicitly so stated

25 "[such that] finding a stay of discovery [would be] directly at odds with the need for

26 expeditious resolution of litigation.") It is axiomatic that a 12(b)(6) motion does not

27 ordinarily warrant a protective order or stay on discovery in the Ninth Circuit. *See*

28 *Turner Broadcasting System, Inc., v. Tracinda Corp.*, 175 F.R.D. 554, 555-56 (D.

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  Nevada 1997) ("To show good cause in the Ninth Circuit, the moving party must
2  show more than an apparently meritorious 12(b)(6) claim [since] a pending Motion
3  to Dismiss is not ordinarily a situation that in and of itself would warrant a stay of
4  discovery.")  That is because "[w]here a party claims that dismissal is likely, it
5  requires the Court to make a preliminary finding of the likelihood of success on the
6  Motion [and] this would circumvent the procedures for the resolution of such a
7  motion." (*Id.*, citing 4 J. Moore, Federal Practice § 26.70[2], at 461.)  *Accord, Twin*
8  *City Fire Ins. Co. v. Employers Ins. of Wassau*, 124 F.R.D. 652, 653 (D. Nevada
9  1989) (denying motion to stay discovery while 12(b)(6) motion was pending).

### 3.   The Pending Motions To Dismiss Cannot Obviate Discovery In The Absence Of A Motion For Stay Or Protective Order

12  Equally important, at no time prior to providing Defendants with Plaintiff's
13  portion of this Joint Stipulation, has LeEco or Lele Holding ever filed a motion for
14  bifurcation, stay of discovery, or a protective order.  Instead, they commenced their
15  own written discovery.  Nevertheless, it is axiomatic that a motion for stay or
16  protective order is required "[w]here a dispute arises regarding the appropriateness
17  of discovery pending a motion to dismiss", regardless of whether the challenge is
18  jurisdictional or otherwise. *Brown v. Stroud*, 2010 WL 3339524*2, n. 3 (N.D. Cal.).
19  Therefore, the issue of whether or not to stay discovery is not even before the Court.
20  Accordingly, the filing of 12(b)(6) motions is irrelevant.  It does not constitute
21  proper grounds for an objection, nor does it justify Defendants' failure to
22  substantively respond to outstanding discovery.

### 4.   The Motions To Dismiss Are Not Well Taken In Any Event

### a.   LeEco's Motion to Dismiss

25  Plaintiff does not believe that it is appropriate for LeEco's Motion to Dismiss
26  to be adjudicated by way of a discovery motion since that would require this Court
27  "to circumvent the procedures for the resolution of such a motion" that has been
28  fully briefed and is currently under submission before Judge Carter.  Should this

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  Court somehow disagree, then VIZIO respectfully submits that its Opposition to that

2  Motion to Dismiss is dispositive.  Opposition which makes short shrift of LeEco's

3  wild arguments that:

4       i.  Plaintiff somehow did not plead its fraud claims

5  against Defendants with the required particularity notwithstanding the existence of

6  the "who", "what", "when", "how", and "where".  (Docket No. 50, Plaintiff's

7  Opposition to Defendants' Partial Motion to Dismiss the First Amended Complaint,

8  p. 7, ln 13 – p. 11, ln 3).

9       ii.  Plaintiff somehow did not plead reasonable reliance

10  on the false promises of Defendants notwithstanding that (a) the existence of an

11  integration clause in the Framework Agreement and/or (b) representation by counsel

12  in the negotiation of the underlying agreements, do not obviate justifiable reliance as

13  a matter of law.  (*Id.,* at p. 11, ln 6 – p. 14, ln 4).

14       iii.  Plaintiff's fraud based claims are somehow barred

15  by the economic loss rule notwithstanding that it does not apply to fraudulent

16  inducement of the Framework Agreement.  (*Id.,* at p. 14, ln 8 – p. 19, ln 24).

17       iv.  Plaintiff's basis for damages for breach of the

18  Framework Agreement supposedly does not differ from the recovery that it has

19  sought in tort even though (a) the viability of a fraud claim rests on the defendant's

20  conduct and not on the type of damage, and (b) the factual basis for the damages

21  sought is significantly different between the contract and tort claims.  (*Id.,* at p. 20,

22  ln 4 – p. 21, ln 6).

23       v.  Plaintiff somehow did not plead a claim for

24  promissory estoppel under the Framework Agreement notwithstanding that (a) each

25  of the elements necessary to state such a claim exists, (b) the unique nature of a

26  breach of an agreement to negotiate in good faith - - here there was far more - - does

27  not obviate a claim for promissory estoppel, and (c) LeEco has [now] attacked the

28  validity of the Framework Agreement in its own Cross-Complaint (Docket No. 61).

14676.8:9283165.1               **19**          8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  (*See also* Docket No. 50, Plaintiff's Opposition to Defendant's Partial Motion to

2  Dismiss The First Amended Complaint, p. 21, ln 9 – p. 22, ln 12),

3                           vi.      Rescission of the Framework Agreement is

4  somehow unavailable in the alternative because not pled in a single claim for relief

5  notwithstanding (a) the requirement that the underlying contract be affirmed or

6  rejected - - but not both - - in a single claim for relief, (b) California law expressly

7  provides that tender of benefits received need not be made until it is actually

8  determined whether grounds for recession exist, and (c) no such tender need be

9  made in any event where the amount of underlying damages exceeds the sums that

10  would otherwise be restored.  (*Id.,* at p. 22, ln 15 – p. 24, ln 6).

11                          vii.     Plaintiff somehow cannot sue for breach of the

12  Merger Agreement in the alternative notwithstanding that (a) this claim is expressly

13  subject to the action for Rescission of the Framework Agreement as permitted by

14  Rule 18(b) of the *Federal Rules of Civil Procedure*, and (b) it is axiomatic that a

15  fraud claim for rescission would operate to restore the Merger Agreement to its

16  terminated state immediately prior to the Framework Agreement.  (*Id.,* at p. 24, lns

17  7-23).

18                   **b.      Lele Holding's Motion To Dismiss**

19              Plaintiff does not believe that it is appropriate for Lele Holding's Motion to

20  Dismiss to be adjudicated by way of a discovery motion since that would likewise

21  require this Court "to circumvent the procedures for the resolution of such a motion"

22  that has been fully briefed and is currently under submission before Judge Carter.

23  Should this Court somehow disagree, then VIZIO respectfully submits that its

24  Opposition to that Motion to Dismiss is equally dispositive.  Opposition which

25  makes short shrift of LeEco's wild arguments that:

26                          i.      Chaoying Deng ("Deng"), the corporate

27  officer/agent served on behalf of Lele Holding, was somehow not properly served

28  for the latter notwithstanding that (a) Deng specifically stated to the process server

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   that she is the agent for service of process for Lele Holding and could accept service

2   for it.  (Docket No., 77, Plaintiff VIZIO, Inc.'s Opposition to Motion to Dismiss for

3   Insufficient Service of Process and Lack of Personal Jurisdiction ("Jurisdictional

4   Opposition"), p. 3, ln 18 – p. 4, ln 13; Docket No. 66, Carroll Dec. of Diligence),

5   and (b) Deng later specifically accepted service for Lele Holding (Docket No. 77,

6   Jurisdictional Opposition, p. 4, lns 4-13; Docket No. 67, Hernandez-Govea Dec. of

7   Diligence.  *See also* Proof of Service, Docket No. 55).

8                                ii.        Deng supposedly has no ties to LeEco

9   notwithstanding that she played a key role in LeEco's U.S. operations, including (a)

10  serving as Chief Executive Officer of Le Technology, the corporate entity that

11  guaranteed payment of the $50MM Buyer Termination Fee Remainder if LeEco

12  failed to perform under the Merger Agreement (Docket No. 77, Jurisdictional

13  Opposition, p. 4, ln 21 – p. 5, ln 8; Docket No. 71-2, Haas Dec., Ex. 1 (Le

14  Technology Statement of Information dated December 17, 2015 and January 9,

15  2017)), (b) directly or indirectly serving as the corporate supervisor of an individual

16  who has declared under oath that he was a principal negotiator as to both the Merger

17  and Framework Agreements for Defendant Global Group, Ltd. - - which owned

18  [Defendant] LeEco (Docket No. 26-1, Hsieh Dec., ¶¶ 2-3).  *See also* Docket No. 77,

19  Jurisdictional Opposition, p. 5, lns 8-17), and (c) serving as the registered agent for

20  service of process for LeEco Real Estate Group LLC ("LREG"), which is a single

21  member limited liability company where Le Technology - - the corporate guarantor

22  of $50 MM of LeEco debt to VIZIO - - is the sole member (Docket No. 77,

23  Jurisdictional Opposition, p. 5, ln 18 – p. 6, ln 3; Docket No. 71-2, Hass Dec., Ex. 2,

24  LREG Cert. Conversion, dated June 10, 2016).  While in turn, LREG was another

25  integral part of LeEco's operations, as it purchased nearly 50 acres of land in San

26  Jose from Yahoo in 2016 for a reported $250 MM, with plans to build a huge R&D

27  facility for LeEco's North American operations (Docket No. 77, Jurisdictional

28  Opposition, p. 5, lns 23-28; Docket No. 71-2, Haas Dec., Ex. 3, June 16, 2016 Deed

1  from Yahoo to the LREG, noting payment of transfer tax of $275,00).

2              iii.    Lele Holding's sole business is supposedly located

3  in the British Virgin Islands notwithstanding that (a) LeEco is a subsidiary of

4  Defendant Global Group and the latter is wholly owned by Defendant JIA through

5  Lele Holding.  (Docket No. 77, Jurisdictional Opposition, p. 6, ln 10 – p. 7, ln 6;

6  Docket No. 78, Ex. 2 to Wessel Dec., Joint Voluntary Notice to the Committee on

7  Foreign Investment in the United States ("Joint Notice"); p. 4.), and (b) the Joint

8  Notice specifically lists Lele Holding's principal place of business at the same

9  Beijing address listed for JIA and LeEco (*Id.,* at p. 7).

10             iv.    Faraday Future, where Deng, is also an executive, is

11  somehow independent of Defendant Lele Holding and any other corporate defendant

12  named in this lawsuit notwithstanding the wealth of publicly reported information to

13  the contrary (Docket No. 77, Jurisdictional Opposition, pp. 7-8).

14             v.     Lele Holding was somehow not properly served

15  through Deng notwithstanding that (a) under Rule 4(h)(1)(B) of the *Federal Rules of*

16  *Civil Procedure* a foreign corporation may be served with a summons in a judicial

17  district "by delivering a copy of the summons and complaint to an officer, a

18  managing or a general agent, or any other agent authorized by appointment or by

19  law to receive service of process….", (b) the filing of a proof of service creates a

20  rebuttable presumption that the service was proper, (c) Deng admitted to being able

21  to accept service for Lele Holding and then later did so (Docket No. 77,

22  Jurisdictional Opposition, p. 9, lns 22-25; Docket No. 66, Carroll Dec., Diligence),

23  (d) Deng was also the agent for service of process and recent CEO of Faraday

24  Future, the CEO of Le Tech, and the agent for service of process for LREG, (Docket

25  No. 77, Jurisdictional Opposition, p. 9, ln 26 – p. 10, ln 2; Docket No. 71-2, Haas

26  Dec., Ex. 1 [Le Tech Stmt. Info], Ex. 2 [LREG Cert. Conversion], and Ex. 8

27  [Faraday Future Filings, 2, 4], and (e) Plaintiff's Proof of Service (Docket No. 55)

28  establishes that Lele Holding was properly served through serving the Summons and

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  FAC on Deng.  (Docket No. 77, Jurisdictional Opposition, pp. 9-10).

2                    vi.     Lele Holding is somehow not subject to personal

3  jurisdiction in the within action notwithstanding (a) that Lele Holding purposefully

4  directed its activities toward Plaintiff in California in order to convince VIZIO to

5  engage in transactions with subsidiaries of Lele Holding governed by California

6  law, including direct negotiations of the Merger and/or Framework Agreements *vis-*

7  *a-vies* fraudulent misrepresentations made by and on behalf of Lele Holding through

8  JIA, and/or others, with respect thereto (Docket No. 77, Jurisdictional Opposition,

9  pp. 11, ln 13 – p. 14, ln 5) (*See also* Docket No. 23-2, Wang Dec., Opp. Mot. Set

10  Aside Default, ¶¶ 6-9, 12, 23, 26).  *See also* Docket No. 23-3, Wong Dec. Opp. Mot.

11  Set Aside Default, ¶¶ 12-17); and (b) ample evidence exists that Lele Holding is an

12  alter-ego of Global Corp. and LeEco, including that (i) the 2015 unaudited financial

13  statements for Lele Holding and Global Group that LeEco submitted with the Joint

14  Notice to the Committee on Foreign Investment in the United States are virtually

15  identical; *i.e.,* have almost no separate financial existence (Docket No. 77,

16  Jurisdictional Opposition, p. 17, lns 12-21; Docket No. 78, Ex. 3 [Lele Holding] and

17  Ex. 4 [Global Group] to Wessel Dec., (ii) Defendant JIA owns 100% of Lele

18  Holding, which owns 100% of Global Group, which owns 100% of LeEco (Docket

19  No. 77, Jurisdictional Opposition, p. 17, lns 21-25; Docket No. 78, Ex. 5 to Wessel

20  Dec., [Ex. H to Joint Notice]), (iii) LeEco was undercapitalized almost to the point

21  of having no assets at all, *i.e.,* always relying on the assets of Lele Holding/Global

22  Group to conduct the merger with VIZIO (Docket No. 77, Jurisdictional Opposition,

23  p. 17, ln 24 – p. 18, ln 2); Docket No. 77-1, Ex. 1 to Wessel Dec., [Limited

24  Guarantee], § 13 ["[VIZIO] acknowledges and agrees that the sole asset of [LeEco]

25  is cash in a *de minimus* amount, and that no additional funds are to be contributed to

26  [LeEco] unless and until the Closing [of the Merger] occurs."), (iv) Lele Holding

27  has the same principal place of business as LeEco and JIA (Docket No. 77,

28  Jurisdictional Opposition, p. 18, lns 2-5; Docket No. 78, Ex. 2 to Wessel Dec., Joint

ERVIN COHEN & JESSUP LLP

1    Notice, ¶ 7); and (v) all of the Defendants in this lawsuit are represented by the same

2    counsel in the within action.[1]

3         **5.    Defendants' Failure to Describe Any Documents Withheld**

4              **Pursuant to Its Attorney-Client Privilege/Work Product**

5              **Doctrine Objections Should Be Deemed a Waiver of the**

6              **Privilege.**

7         Defendants' objections to this request on the basis of attorney-client

8    privilege/work product doctrine, without describing the nature of any documents

9    communications, or tangible things which have not been produced so that Plaintiff

10   can assess any privilege claim, is improper and violates the *Fed. R. Civ. P.*

11   Specifically, *Fed. R. Civ. P.* 26(b)(5)(A) requires that parties asserting attorney-

12   client privilege/work product doctrine objections "describe the nature of the

13   documents, communications, or tangible things not produced or disclosed and to do

14   so in a manner that, without revealing information itself privileged or protected, will

15   enable other parties to assess the claim," *i.e.,* a privilege log.  Defendants have failed

16   to provide any information about documents withheld pursuant to the attorney-client

17   privilege and/or work product doctrine, let alone information which would permit

18   Plaintiff or the Court to assess any claim of privilege.  Accordingly, Defendants'

19   "assertion of privilege and work product protection is worthless without complying

20

21         [1] These factors fall squarely within the criteria applied in the Ninth Circuit and California courts to determine alter-ego liability.  (Docket No. 77, Jurisdictional

22   Opposition, p. 15, ln 26 – p. 17, ln 3).  Equally important, if there is even a scintilla of doubt as to whether Lele Holding is subject to the jurisdiction of this Court,

23   jurisdictional discovery - - e.g., the alter-ego discovery sought at bar, would certainly be allowed notwithstanding Lele Holding's Motion to Dismiss.  See *Harris*

24   *Rutsky & Co. Inc. Services, Inc. v. Bell & Clements Ltd. Eyeglasses*, 328 F. 3d 1122, 1135 (9th Cir. 2003) (reversing and remanding to allow a plaintiff "the opportunity

25   to develop the record and make a prima facie showing of jurisdictional facts with respect to "its alleged alter-ego.)  This is particularly true here, where alter-ego non-

26   parties can even be added as judgment debtors subsequent to the entry of judgment. *In re Levander*, 180 F. 3d 1114, 1121-23 (9th Cir. 1999).  Stated differently, the

27   alter-ego issues pervade this lawsuit, notwithstanding Lele Holding's Motion to Dismiss.

28

ERVIN COHEN & JESSUP LLP

1  with Rule 26(b)(5)(A), which requires a description of the documents not

2  produced." *San Diego Unified Port Dist., supra,* 2017 WL 3877730*3.

3       Worse still, Defendants have not simply failed to submit a privilege log

4  through mistake or inadvertence.  Instead, they actually objected to producing any

5  privilege log at all; *i.e.*, their refusal was deliberate.  This is especially egregious

6  because a waiver of the privilege may very well be deemed to occur, where, as here,

7  the party asserting same has failed to produce the required privilege log.  "In the

8  Ninth Circuit, in determining whether waiver has occurred, the court must look at:

9  (1) 'the degree to which the objection or assertion of privilege enables the litigant

10  seeking discovery and the court to evaluate whether each of the withheld documents

11  is privileged;' (2) 'the timeliness of the objection and accompanying information

12  about the withheld documents;' (3) 'the magnitude of the document production;'

13  and (4) 'other particular circumstances of the litigation that make responding to

14  discovery unusually easy ... or unusually hard.'" *Phillips v. C.R. Bard, Inc.*, 290

15  F.R.D. 615, 638 (Nev. 2013).   *See Burlington Northern & Santa Fe Ry. Co. v. U.S.*

16  *Dist. Ct. for the Dist. of Mont.,* 408 F.3d 1142, 1149 (9th Cir. 2005).

17       Defendants' objections, coupled with their utter failure to describe any

18  documents withheld pursuant to the privilege, let alone address the magnitude of

19  documents which may be responsive along with their abject refusal to produce any

20  privilege log whatsoever, make it impossible for Plaintiff or the Court to evaluate

21  their claim of privilege.  Accordingly, Defendants must be deemed to have waived

22  these objections.

23       **6.    The Boilerplate Objections Based On Relevance,**

24            **Overbreadth, Compound, Equally Available As Well As**

25            **Attorney-Client/Work Product Assertions Should Be**

26            **Rejected Out Of Hand**

27       As discussed above, Defendants' litany of boilerplate relevance, burden,

28  vague, overbreadth, compound and equally available objections, together with their

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   blanket attorney-client/work product assertions, are inappropriate and tantamount to

2   no objection at all.  *Blemaster*, *supra*, 2017 WL 4843241*4.  *Accord, San Diego*

3   *Unified Port Dist.*, *supra*, 2017 WL 3877730*3.  *See also Fed R. Civ. P.*

4   34(b)(2)(C), providing that even where an objection may lie as to part of a request,

5   the objectionable part must be specified, while inspection is allowed as to the rest.

6   Indeed, this is particularly true here, where Defendants have failed to even state

7   whether any responsive documents are being withheld on the basis of each or any

8   particularized objection.  *Loop v. Al Labs Inc. v. Gatti*, *supra*, 2016 WL 9132846*2.

9   In short, Defendants have failed to sustain their burden of proof.

10          Moreover, it is impossible for them to do so.  The notion that documents

11   which relate to the Merger Agreement are somehow irrelevant flies directly in the

12   face of the alternative Claim for Relief for Breach of the Merger Agreement, let

13   alone Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules*

14   *of Civil Procedure* specifically provides that "[P]arties may obtain discovery

15   regarding any unprivileged matter that is relevant to any party's claim or defense

16   and proportional to the needs of the case, considering the importance of the issues at

17   stake in the action, the amount in controversy, the parties' relative access to relevant

18   information, the parties' resources, the importance of discovery in resolving the

19   issues and whether the burden or expense of the proposed discovery outweighs its

20   likely benefit.  Information…need not be admissible in evidence to be

21   discoverable."  That is because "[t]he purpose of discovery is to allow a broad

22   search for facts, the names of witnesses, or any other matters which may aid a party

23   in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

24   Cal.)

25          The notion that these documents need not be produced because the Franchise

26   Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

27   Framework Agreement specifically carved out and left intact the "remaining Buyer

28   Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

2   Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

3   settled law that if a defrauded party is induced by false representations to execute a

4   contract, the party has the option of rescinding the contract or affirming it and

5   recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

6   B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart*

7   *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

8   defrauded party is induced by false representations to execute a contract, the party

9   has the option rescinding the contract or affirming it and recovering damages for

10   the fraud.")  Third, where, as here, the release was not the sole object of the

11   Framework Agreement, there is no requirement that any consideration be restored to

12   permit the pursuit of damages for fraudulent inducement of a settlement agreement.

13   *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

14   15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

15   rescission, such relief "shall not be denied because of a delay in restoring or

16   tendering restoration of such benefits before judgment unless such delay has been

17   substantially prejudicial to the other party, but [rather], the court may make a tender

18   of restoration a condition of its judgment." *Cal. Civ. Code* §1693. *Accord Taylor v.*

19   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

20   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

21   and Cabrera….But Taylor's claim for rescission…is a claim about the

22   circumstances that brought about the Settlement Agreement and therefore the tender

23   need not be made prior to determining whether Taylor actually has a definite ground

24   to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

25   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

26   claim that the Framework Agreement somehow substitutes for the Merger

27   Agreement in its entirety, with or without the express carve out of the $50MM

28   Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

ERVIN COHEN & JESSUP LLP

1  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

2  California law and holding that fraud claim for rescission would operate to restore

3  old agreement notwithstanding that a new agreement had been substituted for the

4  old agreement).  Sixth, documents related to the Merger and the fraudulent

5  misrepresentations that gave rise to the Merger are germane to explaining the

6  circumstances which gave rise to the Framework Agreement and/or whether

7  Defendants likewise made fraudulent representations or otherwise acted in good

8  faith with respect to it, *i.e.* are equally probative on issues of intent, knowledge,

9  good faith and absence of mistake as to the Framework Agreement and the dealings

10  between VIZIO and Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

11  Cir.), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad acts of

12  defendants in obtaining conventional mobile home loans (*i.e.,* loan irregularities)

13  admissible in subsequent trial of fraudulent scheme to obtain FHA loans since "[t]he

14  fact that Jenkins used fraudulent means to secure conventional loans is probative on

15  issues of intent, knowledge, good faith and absence of mistake in dealing with FHA

16  transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior

17  fraudulent land patent scheme and past failure to file tax returns admissible in

18  subsequent complex tax fraud conspiracy trial since the former "was used to explain

19  how the…conspirators met each other and garnered customers, while the latter

20  constituted "prior acts" that were "probative of issues of intent, knowledge, good

21  faith and absence of mistake.")

22       In short, production should be ordered in full, without objection.

23  ### 7.  Lele Holding Should Be Compelled To Produce Documents

24  ###     In The Possession, Custody, Or Control Of Its Subsidiaries

25  ###     And Defined Corporate Affiliates

26       Lele Holding's objection that it cannot be ordered to produce documents that

27  are in the possession, custody and control of its subsidiaries or affiliated corporate

28  entities is nonsense.  It is well settled that "[a] corporate party may be ordered to

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    produce documents that are held by a subsidiary that is not [even] a party to the

2    action…" *Kim v. Goddard*, 2008 WL 11422046 *2 (C.D. Cal.), *Accord St. Jude*

3    *Medical S.C., Inc. v. Jansen –Counotte*, 305 F.R.D. 630, 638-639 (D. Ore. 2015),

4    holding that a United States based third party subpoena recipient was required to

5    produce documents in the possession, custody or control of its European parent

6    company and their related corporate affiliates since:  (a) the plaintiff's former high

7    level corporate officer that was sued for trade secret theft and who had become the

8    president of the third party subpoena recipient negotiated her new employment

9    agreement with "the beneficial owner of the entire [enterprise]" as well as two

10    additional high level enterprise affiliated corporate executives, such that (b) "it

11    [was] reasonable to infer that the persons associated with [the third party subpoena

12    recipient's] European affiliates…were acting as agents for [it]…."; *i.e.*, just as Lele

13    Holding, Global Group, JIA and the other high level affiliated corporate executives

14    did at bar. (*See* Docket No. 23-2, Wang Dec., Opp. Mot. Set Aside Default, ¶¶ 6-9,

15    12, 23, 26). (*See also* Docket No. 23-3, Wong Dec. Opp. Mot. Set Aside Default,

16    ¶¶ 12-17). (*See also* Docket No. 35, FAC, ¶¶ 12-15 and 33-35).

17        The *St. Jude* court explained that "[a]ctual possession of a document need not

18    be established [nor must] legal ownership of a document…need be shown."  Instead,

19    "control is sufficient", citing *In re: Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir.

20    1999); and, because "control is defined as the legal right to obtain documents on

21    demand…a corporate party may be ordered to produce documents held by a

22    subsidiary that is not a party to the action on the grounds that such documents are

23    subject to the effective control of the parent." (*Id.*)  Indeed, that "[e]ven documents

24    held by a parent company have been held to be within the 'control' of a subsidiary

25    when there is a sufficiently 'close nature' in the actual corporate relationship." (*Id.*)

26    The *St. Jude* court observed that "[t]he control analysis for Rule 34 purposes does

27    not require the party to have actual managerial power over the foreign corporation,

28    but rather that there be close coordination between them" [and that] "[c]ontrol may

14676.8:9283165.1            29            8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  be established by the existence of a principal-agent relationship." (*Id.*).

2      This criteria is plainly met here, where (a) the direct negotiations for the

3  Merger and Framework Agreements and the serious misrepresentations giving rise

4  to each were likewise made by Defendants through JIA and the other high level

5  enterprise affiliated executives,  (b) JIA owns Lele Holding, Lele Holding owns

6  Global Group, Global Group owns LeEco, (c) Lele Holding and Global Group have

7  almost no separate financial existence, and (d) LeEco was undercapitalized almost

8  to the point of having no assets at all.  (*See* pp. 23-24, (vi), *supra*).  In short, Lele

9  Holding can and should be required to produce documents in the possession,

10  custody and control of its subsidiaries and defined corporate affiliates.

11  **REQUEST FOR PRODUCTION NO. 2:**

12      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

13  the GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the

14  GUARANTY.

15  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

16      LeEco restates and incorporates by reference the Preliminary Statement and

17  General Objections set forth above.  LeEco further objects to this Request as

18  premature and improper because VIZIO's second through sixth causes of action in

19  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

20  LeEco's Motion to Dismiss, then the information and documents sought by this

21  Request are not relevant, making the Request disproportionate to the needs of the

22  case.  LeEco contends that, at this stage, any discovery in this matter should be

23  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

24  Merger Agreement (including its various theories of fraud related to that alleged

25  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

26  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

27  Merger Agreement, including the negotiation or entry into the Merger Agreement,

28  any breach of the Merger Agreement, or the termination of the Merger Agreement

14676.8:9283165.1

30

8:17-CV-01175-DOC-JDE

1   has any relevance.  The Guaranty only applied to the Buyer Termination Fee

2   Remainder which was eliminated following the Parties' agreement they were

3   terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

4   the mutual walk-away without there being any Buyer Termination Fee Penalty

5   (including but not limited to the Buyer Termination Fee Remainder).

6        LeEco further objects that this Request is compound and overbroad,

7   particularly in its request for "Any and All Documents or Communications that

8   "Relate To the Guaranty, drafts of the Guaranty, or the negotiations that resulted in

9   the Guaranty."

10       LeEco further objects that, as phrased, this Request appears to seek

11  documents that are equally available to Vizio.  LeEco objects to searching for and

12  producing documents equally available to Vizio.

13       LeEco further objects that this Request appears to seek documents and

14  communications protected by the attorney-client privilege and work product

15  doctrine.  LeEco objects to producing any privileged communications.  LeEco

16  further objects to producing any such documents created after this lawsuit was filed

17  that merely "Relate To" the Guaranty, *et al.*, as those documents would clearly be

18  protected by the attorney client privilege and attorney work product doctrine.

19  LeEco further objects to logging all privileged and work product documents created

20  after this lawsuit was filed as unduly burdensome and disproportionate to the needs

21  of the case.  LeEco further objects to producing any such documents created before

22  or during the negotiation and drafting of the Merger Agreement (including the

23  Guaranty) that are protected by the attorney client privilege and attorney work

24  product doctrine.

25  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

26       LeLe restates and incorporates by reference the Preliminary Statement and

27  General Objections set forth above.  LeLe further objects to this Request on the

28  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

ERVIN COHEN & JESSUP LLP

1  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

2  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

3  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

4  and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with

5  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

6  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

7  never properly served in this action.  In addition to being premature, the Requests

8  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

9  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

10  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

11  seeks the documents and communications of third parties or documents and

12  communications which are not in LeLe's possession, custody or control.

13         Furthermore, Vizio's Requests are premature because they pertain to issues

14  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

15  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

16  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

17  action for breach of the Merger Agreement including its various theories of fraud

18  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

19  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

20  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

21  Merger Agreement, including the negotiation or entry into the Merger Agreement,

22  any breach of the Merger Agreement, or the termination of the Merger Agreement

23  has any relevance, and discovery should be limited to whether there was a breach of

24  the Framework Agreement. LeLe reserves all rights, including the right to amend

25  and supplement its Responses and Objections to Vizio's Requests, should it become

26  necessary and appropriate to do so.

27         LeLe further objects that this Request is compound and overbroad,

28  particularly in its request for "Any and All Documents that Relate To the Guaranty,

ERVIN COHEN & JESSUP LLP

1  drafts of the Guaranty, or the negotiations that resulted in the Guaranty."

2      LeLe further objects that, as phrased, this Request appears to seek documents
3  that are equally available to Vizio.  LeLe objects to searching for and producing
4  documents equally available to Vizio.

5      LeLe further objects that this Request appears to seek documents and
6  communications protected by the attorney-client privilege and work product
7  doctrine.  LeLe objects to producing any privileged communications. LeLe further
8  objects to producing any such documents created after this lawsuit was filed that
9  merely "Relate To" the subject matter of the Request as those documents would
10 clearly be protected by the attorney client privilege and attorney work product
11 doctrine.  LeLe further objects to logging all privileged and work product
12 documents created after this lawsuit was filed as unduly burdensome and
13 disproportionate to the needs of the case.

14 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
15 **NO. 2 SHOULD BE COMPELLED:**

16     As Defendants' objections to this RFP are either in whole, or in substantial
17 part identical to the objections which they asserted to Plaintiff's RFP No. One,
18 Plaintiff hereby incorporates by reference all of its reasons why a further response to
19 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
20 though set forth fully in this place.

21     Wholly apart from these reasons, the notion that documents which relate to
22 the Merger Agreement and/or the Guaranty thereof are somehow irrelevant flies
23 directly in the face of the alternative Claim for Relief for Breach of the Merger
24 Agreement, let alone Rescission of the Framework Agreement.  The Guaranty is
25 part of the Merger Agreement, and therefore relevant to all issues concerning the
26 Merger Agreement.  The Guaranty also states that LeEco has few, if any assets, and
27 therefore, is relevant to Plaintiff's alter ego claims against its parents.  Rule 26(b)(1)
28 of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties may

ERVIN COHEN & JESSUP LLP

1  obtain discovery regarding any unprivileged matter that is relevant to any party's

2  claim or defense and proportional to the needs of the case, considering the

3  importance of the issues at stake in the action, the amount in controversy, the

4  parties' relative access to relevant information, the parties' resources, the

5  importance of discovery in resolving the issues and whether the burden or expense

6  of the proposed discovery outweighs its likely benefit.  Information…need not be

7  admissible in evidence to be discoverable."  That is because "[t]he purpose of

8  discovery is to allow a broad search for facts, the names of witnesses, or any other

9  matters which may aid a party in the preparation of his case." *Anderson v. Hansen*,

10  2013 WL 428737*4 (E.D. Cal.)

11      The notion that these documents need not be produced because the Franchise

12  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

13  Framework Agreement specifically carved out and left intact the "remaining Buyer

14  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

15  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

16  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

17  settled law that if a defrauded party is induced by false representations to execute a

18  contract, the party has the option of rescinding the contract or affirming it and

19  recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

20  B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart*

21  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

22  defrauded party is induced by false representations to execute a contract, the party

23  has the option of rescinding the contract or affirming it and recovering damages for

24  the fraud.")  Third, where, as here, the release was not the sole object of the

25  Framework Agreement, there is no requirement that any consideration be restored to

26  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

27  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

28  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

ERVIN COHEN & JESSUP LLP

14676.8:9283165.1                    34                    8:17-CV-01175-DOC-JDE

ERVIN COHEN & JESSUP LLP

1   rescission, such relief "shall not be denied because of a delay in restoring or

2   tendering restoration of such benefits before judgment unless such delay has been

3   substantially prejudicial to the other party, but [rather], the court may make a tender

4   of restoration a condition of its judgment." *Cal. Civ. Code* §1693. *Accord Taylor v.*

5   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

6   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

7   and Cabrera….But Taylor's claim for rescission…is a claim about the

8   circumstances that brought about the Settlement Agreement and therefore the tender

9   need not be made prior to determining whether Taylor actually has a definite ground

10   to rescind."). Fifth, a successful claim for rescission based on fraud would operate

11   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

12   claim that the Framework Agreement somehow substitutes for the Merger

13   Agreement in its entirety, with or without the express carve out of the $50MM

14   Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

15   *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

16   California law and holding that fraud claim for rescission would operate to restore

17   old agreement notwithstanding that a new agreement had been substituted for the

18   old agreement). Sixth, documents related to the Merger Agreement and the

19   Guaranty thereof as well as the fraudulent misrepresentations that gave rise to them

20   are germane to explaining the circumstances which gave rise to the Framework

21   Agreement and/or whether Defendants likewise made fraudulent representations or

22   otherwise acted in good faith with respect to it, *i.e.,* are equally probative on issues

23   of intent, knowledge, good faith and absence of mistake as to the Framework

24   Agreement and the dealings between VIZIO and Defendants. *U.S. v. Jenkins*, 785

25   F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889

26   (1986) (evidence of prior bad acts of defendants in obtaining conventional mobile

27   home loans (*i.e.,* loan irregularities) admissible in subsequent trial of fraudulent

28   scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent means to

1 | secure conventional loans is probative on issues of intent, knowledge, good faith and
2 | absence of mistake in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665
3 | Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent scheme and past
4 | failure to file tax returns admissible in subsequent complex tax fraud conspiracy trial
5 | since the former "was used to explain how the…conspirators met each other and
6 | garnered customers, while the latter constituted "prior acts" that were "probative of
7 | issues of intent, knowledge, good faith and absence of mistake.")

8 | In short, production should be ordered in full, without objection.

9 | **REQUEST FOR PRODUCTION NO. 3:**

10 | ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO
11 | the FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT,
12 | or the negotiations that resulted in the FRAMEWORK AGREEMENT.

13 | **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

14 | LeEco restates and incorporates by reference the Preliminary Statement and
15 | General Objections set forth above.  LeEco further objects that this Request is
16 | compound and overbroad, particularly in its request for "Any and All Documents or
17 | Communications that Relate To the Framework Agreement, drafts of the
18 | Framework Agreement, or the negotiations that resulted in the Framework
19 | Agreement."

20 | LeEco further objects that, as phrased, this Request appears to seek
21 | documents that are equally available to Vizio.  LeEco objects to searching for and
22 | producing documents equally available to Vizio.

23 | LeEco further objects that this Request appears to seek documents and
24 | communications protected by the attorney-client privilege and work product
25 | doctrine.  LeEco objects to producing any privileged communications.  LeEco
26 | further objects to producing any such documents created after this lawsuit was filed
27 | that merely "Relate To" the Framework Agreement, *et. al.*, as those documents
28 | would clearly be protected by the attorney client privilege and attorney work

ERVIN COHEN & JESSUP LLP

1  product doctrine.  LeEco further objects to logging all privileged and work product

2  documents created after this lawsuit was filed as unduly burdensome and

3  disproportionate to the needs of the case.  LeEco further objects to producing any

4  such documents created before or during the negotiation and drafting of the

5  Framework Agreement that are protected by the attorney client privilege and

6  attorney work product doctrine.  LeEco therefore interprets this Request as seeking

7  non-privileged documents and communications relating to the Framework

8  Agreement created before the filing of this lawsuit.

9        Subject to and without waiving any of its objections, LeEco responds as

10  follows: LeEco will conduct a reasonable search of documents within its possession,

11  custody or control created prior to this lawsuit's filing date that relate to non-

12  privileged documents and communications relating to the Framework Agreement.

13  LeEco will produce nonprivileged documents identified during the search on a

14  rolling basis, starting on April 25, 2018.  LeEco expects to complete its rolling

15  production on or before approximately July 25, 2018.

16  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

17        LeLe restates and incorporates by reference the Preliminary Statement and

18  General Objections set forth above.  LeLe further objects to this Request on the

19  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

20  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

21  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

22  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

23  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

24  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

25  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

26  never properly served in this action.  In addition to being premature, the Requests

27  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

28  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

ERVIN COHEN & JESSUP LLP

14676.8:9283165.1        37        8:17-CV-01175-DOC-JDE

1 | the needs of the case. Moreover, LeLe objects to this Request on the grounds that it
2 | seeks the documents and communications of third parties or documents and
3 | communications which are not in LeLe's possession, custody or control.

4 | Furthermore, Vizio's Requests are premature because they pertain to issues
5 | that would be rendered irrelevant were the Court to grant LeEco's pending MTD
6 | Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
7 | LeEco's pending MTD would eliminate Vizio's second through sixth causes of
8 | action for breach of the Merger Agreement including its various theories of fraud
9 | related to that alleged breach. Vizio gave a release of all such claims to LeEco in
10 | the Framework Agreement upon receipt of $40 million ("Released Claims"), which
11 | Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the
12 | Merger Agreement, including the negotiation or entry into the Merger Agreement,
13 | any breach of the Merger Agreement, or the termination of the Merger Agreement
14 | has any relevance, and discovery should be limited to whether there was a breach of
15 | the Framework Agreement. LeLe reserves all rights, including the right to amend
16 | and supplement its Responses and Objections to Vizio's Requests, should it become
17 | necessary and appropriate to do so.

18 | LeLe further objects that this Request is compound and overbroad,
19 | particularly in its request for "Any and All Documents or Communications that
20 | Relate To the Framework Agreement, drafts of the Framework Agreement, or the
21 | negotiations that resulted in the Framework Agreement."

22 | LeLe further objects that, as phrased, this Request appears to seek documents
23 | that are equally available to Vizio. LeLe objects to searching for and producing
24 | documents equally available to Vizio.

25 | LeLe further objects that this Request appears to seek documents and
26 | communications protected by the attorney-client privilege and work product
27 | doctrine. LeLe objects to producing any privileged communications. LeLe further
28 | objects to producing any such documents created after this lawsuit was filed that

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   merely "Relate To" the subject matter of the Request as those documents would

2   clearly be protected by the attorney client privilege and attorney work product

3   doctrine. LeLe further objects to logging all privileged and work product

4   documents created after this lawsuit was filed as unduly burdensome and

5   disproportionate to the needs of the case.

6   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

7   **NO. 3 SHOULD BE COMPELLED:**

8       Pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents

9   as they are kept in the usual course of business or must organize and label them to

10  correspond with the categories in the request." In response to Plaintiff's RFPs,

11  Defendants produced 336 pages of documents consisting mostly of emails and

12  redlined versions of the agreements between the parties. The responses were not

13  labeled to correspond with any specific categories set forth in Plaintiff's RFPs, nor

14  were they produced as kept in the ordinary and regular course of business.

15  Pointedly, no information was provided as to which file they came from, whose

16  possession they were in or which custodian or custodians of record maintained

17  them. Instead, they were all loaded onto a ZIP file and emailed to Plaintiff. This is

18  tantamount to simply placing the documents in a box, and providing them to

19  Plaintiff, which does not satisfy Rule 34(b)(2)(i). *See CooperVision, Inc. v. Ciba*

20  *Vision Corp.,* No. 2:06 CV 149, 2007 WL 2264848, at *5 (E.D.Tex. Aug. 6, 2007),

21  ("[S]imply placing documents in boxes and making them available does not

22  conform to the rule."); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535,

23  541 (D.Kan.2006) (where a producing party provided no information regarding the

24  manner in which the documents were produced, including where they were

25  maintained, the identity of the custodian, and whether they were from a single

26  source or multiple sources of files, the producing party failed to carry its burden of

27  demonstrating that the documents were produced as they were maintained)*; Wagner*

28  *v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001) ( "[P]roducing large

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1  amounts of documents in no apparent order does not comply with a party's

2  obligation under Rule 34.") (*citations omitted*)*; Stiller v. Arnold,* 167 F.R.D. 68, 71

3  (N.D.Ind.1996) ("Producing 7,000 pages of documents in no apparent order does

4  not comply with a party's obligation under Rule 34(b).")*; T.N. Taube Corp. v.*

5  *Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (in

6  response to production of 789 documents, bates-stamped and provided in a box with

7  no discernable order, the court expressed doubt that production was made as the

8  documents were kept in the usual course of business, and thus directed that the

9  documents be organized and labeled to indicate the specific document demand to

10  which each related); *Scripps Clinic & Research Found. v. Baxter Travenol*

11  *Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at * 3–4 (D.Del. June 21,

12  1988) (production of 45,000 documents "arranged in bundles within each of the

13  fifteen boxes, most of the bundles contain[ings] no designation as to the origin of

14  the file, the name of the file, or whether the bundle contained documents from

15  multiple files" deemed insufficient to satisfy the requirements of Rule 34(b)).  As

16  Defendants' production suffers for the same defects as those in the aforementioned

17  cases, Defendants must be compelled to produce the documents labeled per

18  category.

19  **REQUEST FOR PRODUCTION NO. 4:**

20  ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

21  the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the

22  negotiations that resulted in the ESCROW AGREEMENT.

23  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

24  LeEco restates and incorporates by reference the Preliminary Statement and

25  General Objections set forth above.  LeEco further objects to this Request as

26  premature and improper because Vizio's second through sixth causes of action in

27  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

28  LeEco's Motion to Dismiss, then the information and documents sought by this

14676.8:9283165.1   40   8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   Request are not relevant, making the Request disproportionate to the needs of the

2   case. Specifically, Vizio gave a release of all claims for breach of the Merger

3   Agreement (including its various theories of fraud related to that alleged breach) to

4   LeEco in the Framework Agreement upon receipt of $40 million, which Vizio

5   acknowledges receiving. Thus, nothing about the negotiations regarding the Merger

6   Agreement, including the negotiation or entry into the Merger Agreement, any

7   breach of the Merger Agreement, or the termination of the Merger Agreement has

8   any relevance. Indeed, there is no dispute relating to the existence of the funds in

9   escrow or that $40 million was paid to Vizio from the escrow account held by

10  Citibank. Furthermore, the terms of the "Escrow Agreement" have no relation to

11  the resolution of the disposition of the remaining $10 million held in the escrow

12  account. LeEco reserves all rights, including the right to amend and supplement its

13  Response to this Request, should it become necessary and appropriate to do so.

14      LeEco further objects that this Request is compound and overbroad,

15  particularly in its request for "Any and All Documents or Communications that

16  Relate To the Escrow Agreement, drafts of the Escrow Agreement, or the

17  negotiations that resulted in the Escrow Agreement."

18      LeEco further objects that, as phrased, this Request appears to seek

19  documents that are equally available to Vizio. LeEco objects to searching for and

20  producing documents equally available to Vizio.

21      LeEco further objects that this Request appears to seek documents and

22  communications protected by the attorney-client privilege and work product

23  doctrine. LeEco objects to producing any privileged communications. LeEco

24  further objects to producing any such documents created after this lawsuit was filed

25  that merely "Relate To" the Escrow Agreement, *et.al.*, as those documents would

26  clearly be protected by the attorney client privilege and attorney work product

27  doctrine. LeEco further objects to logging all privileged and work product

28  documents created after this lawsuit was filed as unduly burdensome and

1  disproportionate to the needs of the case.  LeEco further objects to producing any

2  such documents created before or during the negotiation and drafting of the Merger

3  Agreement (including the Escrow Agreement) that are protected by the attorney

4  client privilege and attorney work product doctrine.

5  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

6        LeLe restates and incorporates by reference the Preliminary Statement and

7  General Objections set forth above.  LeLe further objects to this Request on the

8  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

9  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

10  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

11  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

12  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

13  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

14  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

15  never properly served in this action.  In addition to being premature, the Requests

16  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

17  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

18  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

19  seeks the documents and communications of third parties or documents and

20  communications which are not in LeLe's possession, custody or control.

21        Furthermore, Vizio's Requests are premature because they pertain to issues

22  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

23  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

24  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

25  action for breach of the Merger Agreement including its various theories of fraud

26  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

27  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

28  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

ERVIN COHEN & JESSUP LLP

1   Merger Agreement, including the negotiation or entry into the Merger Agreement,

2   any breach of the Merger Agreement, or the termination of the Merger Agreement

3   has any relevance, and discovery should be limited to whether there was a breach of

4   the Framework Agreement.  LeLe reserves all rights, including the right to amend

5   and supplement its Responses and Objections to Vizio's Requests, should it become

6   necessary and appropriate to do so.

7        LeLe further objects that this Request is compound and overbroad,

8   particularly in its request for "Any and All Documents or Communications that

9   Relate To the Escrow Agreement, drafts of the Escrow Agreement, or the

10  negotiations that resulted in the Escrow Agreement."

11       LeLe further objects that, as phrased, this Request appears to seek documents

12  that are equally available to Vizio.  LeLe objects to searching for and producing

13  documents equally available to Vizio.

14       LeLe further objects that this Request appears to seek documents and

15  communications protected by the attorney-client privilege and work product

16  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

17  objects to producing any such documents created after this lawsuit was filed that

18  merely "Relate To" the subject matter of the Request as those documents would

19  clearly be protected by the attorney client privilege and attorney work product

20  doctrine.  LeLe further objects to logging all privileged and work product

21  documents created after this lawsuit was filed as unduly burdensome and

22  disproportionate to the needs of the case.

23  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

24  **NO. 4 SHOULD BE COMPELLED:**

25       As Defendants' objections to this RFP are either in whole, or in substantial

26  part identical to the objections which they asserted to Plaintiff's RFP No. One,

27  Plaintiff hereby incorporates by reference all of its reasons why a further response to

28  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

ERVIN COHEN & JESSUP LLP

1   though set forth fully in this place.

2   Wholly apart from these reasons, the notion that documents which relate to
3   the Merger Agreement and/or the Escrow thereof are somehow irrelevant flies
4   directly in the face of the alternative Claim for Relief for Breach of the Merger
5   Agreement, let alone Rescission of the Framework Agreement.  The Escrow is part
6   of the Merger Agreement, and therefore relevant to all issues concerning the Merger
7   Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically
8   provides that "[P]arties may obtain discovery regarding any unprivileged matter that
9   is relevant to any party's claim or defense and proportional to the needs of the case,
10  considering the importance of the issues at stake in the action, the amount in
11  controversy, the parties' relative access to relevant information, the parties'
12  resources, the importance of discovery in resolving the issues and whether the
13  burden or expense of the proposed discovery outweighs its likely benefit.
14  Information…need not be admissible in evidence to be discoverable."  That is
15  because "[t]he purpose of discovery is to allow a broad search for facts, the names
16  of witnesses, or any other matters which may aid a party in the preparation of his
17  case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

18  The notion that these documents need not be produced because the Franchise
19  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the
20  Framework Agreement specifically carved out and left intact the "remaining Buyer
21  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM
22  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,
23  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is
24  settled law that if a defrauded party is induced by false representations to execute a
25  contract, the party has the option of rescinding the contract or affirming it and
26  recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.
27  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*
28  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1 defrauded party is induced by false representations to execute a contract, the party
2 has the option of rescinding the contract or affirming it and recovering damages for
3 the fraud.")  Third, where, as here, the release was not the sole object of the
4 Framework Agreement, there is no requirement that any consideration be restored to
5 permit the pursuit of damages for fraudulent inducement of a settlement agreement.
6 *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-
7 15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on
8 rescission, such relief "shall not be denied because of a delay in restoring or
9 tendering restoration of such benefits before judgment unless such delay has been
10 substantially prejudicial to the other party, but [rather], the court may make a tender
11 of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*
12 *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that
13 Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao
14 and Cabrera….But Taylor's claim for rescission…is a claim about the
15 circumstances that brought about the Settlement Agreement and therefore the tender
16 need not be made prior to determining whether Taylor actually has a definite ground
17 to rescind.").  Fifth, a successful claim for rescission based on fraud would operate
18 to restore the Merger Agreement in its terminated state notwithstanding Defendants'
19 claim that the Framework Agreement somehow substitutes for the Merger
20 Agreement in its entirety, with or without the express carve out of the $50MM
21 Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*
22 *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying
23 California law and holding that fraud claim for rescission would operate to restore
24 old agreement notwithstanding that a new agreement had been substituted for the
25 old agreement).  Sixth, documents related to the Merger Agreement as well as the
26 Escrow Agreement which was part and parcel thereof and the fraudulent
27 misrepresentations that gave rise to them are germane to explaining the
28 circumstances which gave rise to the Framework Agreement and/or whether

ERVIN COHEN & JESSUP LLP

1  Defendants likewise made fraudulent representations or otherwise acted in good

2  faith with respect to it, *i.e.* are equally probative on issues of intent, knowledge,

3  good faith and absence of mistake as to the Framework Agreement and the dealings

4  between VIZIO and Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

5  Cir. 1986), *cert. den'd, White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad

6  acts of defendants in obtaining conventional mobile home loans (*i.e.*, loan

7  irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

8  loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

9  loans is probative on issues of intent, knowledge, good faith and absence of mistake

10  in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

11  (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

12  returns admissible in subsequent complex tax fraud conspiracy trial since the former

13  "was used to explain how the…conspirators met each other and garnered customers,

14  while the latter constituted "prior acts" that were "probative of issues of intent,

15  knowledge, good faith and absence of mistake.")

16      In short, production should be ordered in full, without objection.

17  **REQUEST FOR PRODUCTION NO. 5:**

18      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

19  VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes,

20  board minutes or notes, corporate resolutions, shareholder minutes, minutes or notes

21  of management meetings, emails, marketing plans, operational plans, financial

22  analyses, and strategy documents.

23  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

24      LeEco restates and incorporates by reference the Preliminary Statement and

25  General Objections set forth above.  LeEco further objects to this Request as

26  premature and improper because Vizio's second through sixth causes of action in

27  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

28  LeEco's Motion to Dismiss, then the information and documents sought by this

ERVIN COHEN & JESSUP LLP

1   Request are not relevant, making the Request disproportionate to the needs of the

2   case.  LeEco contends that, at this stage, any discovery in this matter should be

3   limited in scope.  LeEco reserves all rights, including the right to amend and

4   supplement its Response to this Request, should it become necessary and

5   appropriate to do so.

6        LeEco further objects that this Request is compound and overbroad,

7   particularly in its request for "Any and All Documents or Communications that

8   Relate To Vizio or any transaction with Vizio...." LeEco further objects to this

9   Request on the grounds that it fails to describe the items for production with

10  reasonable particularity as required by Rule 34, as the Request is not tethered to the

11  claims at issue in this lawsuit.  The only transactions related to Vizio that are

12  relevant here are those related to the Framework Agreement and potentially the

13  Merger Agreement depending on how the Court rules on LeEco's Motion to

14  Dismiss.  LeEco further objects that this Request appears to seek documents

15  protected by the attorney-client privilege and work product doctrine.  Read literally,

16  this Request could call for the production of attorney-client privileged

17  communications and work product materials from LeEco's defense team that simply

18  include Vizio's name.  Defendant objects to producing any such documents created

19  after this lawsuit was filed that merely "Relate To" Vizio as those documents would

20  clearly be protected by the attorney client privilege and attorney work product

21  doctrine.  LeEco further objects to logging all privileged and work product

22  documents created after this lawsuit was filed as unduly burdensome and

23  disproportionate to the needs of the case.  LeEco interprets this Request as seeking

24  non-privileged documents and communications, created prior to this lawsuit,

25  relating to Vizio, or transactions between LeEco and Vizio, in the context of the

26  Framework Agreement.

27        Subject to and without waiving any of its objections, LeEco responds as

28  follows: LeEco will conduct a reasonable search of documents within its possession,

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1    custody or control created prior to this lawsuit's filing date that relate to the

2    Framework Agreement.  LeEco will produce nonprivileged documents identified

3    during the search on a rolling basis, starting on April 25, 2018.  LeEco expects to

4    complete its rolling production on or before approximately July 25, 2018.

5    **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

6           LeLe restates and incorporates by reference the Preliminary Statement and

7    General Objections set forth above.  LeLe further objects to this Request on the

8    grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

9    of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

10   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

11   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

12   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

13   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

14   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

15   never properly served in this action.  In addition to being premature, the Requests

16   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

17   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

18   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

19   seeks the documents and communications of third parties or documents and

20   communications which are not in LeLe's possession, custody or control.

21          Furthermore, Vizio's Requests are premature because they pertain to issues

22   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

23   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

24   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

25   action for breach of the Merger Agreement including its various theories of fraud

26   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

27   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

28   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

ERVIN COHEN & JESSUP LLP

1  Merger Agreement, including the negotiation or entry into the Merger Agreement,
2  any breach of the Merger Agreement, or the termination of the Merger Agreement
3  has any relevance, and discovery should be limited to whether there was a breach of
4  the Framework Agreement.  LeLe reserves all rights, including the right to amend
5  and supplement its Responses and Objections to Vizio's Requests, should it become
6  necessary and appropriate to do so.

7      LeLe further objects that this Request is compound and overbroad,
8  particularly in its request for "Any and All Documents or Communications that
9  Relate To Vizio or any transaction with Vizio...." LeLe further objects to this
10  Request on the grounds that it fails to describe the items for production with
11  reasonable particularity as required by Rule 34, as the Request is not tethered to the
12  claims at issue in this lawsuit.  The only transactions related to Vizio that are
13  relevant here are those related to the Framework Agreement and potentially the
14  Merger Agreement depending on how the Court rules on LeEco's Motion to
15  Dismiss (to which LeLe joined).

16      LeLe further objects that this Request appears to seek documents and
17  communications protected by the attorney-client privilege and work product
18  doctrine.  LeLe objects to producing any privileged communications.  Read literally,
19  this Request could call for the production of attorney-client privileged
20  communications and work product materials from LeLe's defense team that simply
21  include Vizio's name.  LeLe further objects to producing any such documents
22  created after this lawsuit was filed that merely "Relate To" the subject matter of the
23  Request as those documents would clearly be protected by the attorney client
24  privilege and attorney work product doctrine.  LeLe further objects to logging all
25  privileged and work product documents created after this lawsuit was filed as
26  unduly burdensome and disproportionate to the needs of the case.

27

28

1 | **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
2 | **NO. 5 SHOULD BE COMPELLED:**

3 |     Pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents
4 | as they are kept in the usual course of business or must organize and label them to
5 | correspond with the categories in the request." In response to Plaintiff's RFPs,
6 | Defendants produced 336 pages of documents consisting mostly of emails and
7 | redlined versions of the agreements between the parties. The responses were not
8 | labeled to correspond with any specific categories set forth in Plaintiff's RFPs, nor
9 | were they produced as kept in the ordinary and regular course of business.
10 | Pointedly, no information was provided as to which file they came from, whose
11 | possession they were in or which custodian or custodians of record maintained
12 | them. Instead, they were all loaded onto a ZIP file and emailed to Plaintiff. This is
13 | tantamount to simply placing the documents in a box, and providing them to
14 | Plaintiff, which does not satisfy Rule 34(b)(2)(i). *See CooperVision, Inc. v. Ciba*
15 | *Vision Corp.,* No. 2:06 CV 149, 2007 WL 2264848, at *5 (E.D.Tex. Aug. 6, 2007),
16 | ("[S]imply placing documents in boxes and making them available does not
17 | conform to the rule."); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535,
18 | 541 (D.Kan.2006) (where a producing party provided no information regarding the
19 | manner in which the documents were produced, including where they were
20 | maintained, the identity of the custodian, and whether they were from a single
21 | source or multiple sources of files, the producing party failed to carry its burden of
22 | demonstrating that the documents were produced as they were maintained*); Wagner*
23 | *v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001) ( "[P]roducing large
24 | amounts of documents in no apparent order does not comply with a party's
25 | obligation under Rule 34.") (*citations omitted*)*; Stiller v. Arnold,* 167 F.R.D. 68, 71
26 | (N.D.Ind.1996) ("Producing 7,000 pages of documents in no apparent order does
27 | not comply with a party's obligation under Rule 34(b).")*; T.N. Taube Corp. v.*
28 | *Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (in

ERVIN COHEN & JESSUP LLP

1  response to production of 789 documents, bates-stamped and provided in a box with

2  no discernable order, the court expressed doubt that production was made as the

3  documents were kept in the usual course of business, and thus directed that the

4  documents be organized and labeled to indicate the specific document demand to

5  which each related); *Scripps Clinic & Research Found. v. Baxter Travenol*

6  *Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at * 3–4 (D.Del. June 21,

7  1988) (production of 45,000 documents "arranged in bundles within each of the

8  fifteen boxes, most of the bundles contain[ing] no designation as to the origin of the

9  file, the name of the file, or whether the bundle contained documents from multiple

10  files" deemed insufficient to satisfy the requirements of Rule 34(b)).  As

11  Defendants' production suffers for the same defects as those in the aforementioned

12  cases, Defendants must be compelled to produce the documents labeled per

13  category.

14  **REQUEST FOR PRODUCTION NO. 6:**

15      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

16  the MERGER.

17  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

18      LeEco restates and incorporates by reference the Preliminary Statement and

19  General Objections set forth above.  LeEco further objects to this Request as

20  premature and improper because Vizio's second through sixth causes of action in

21  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

22  LeEco's Motion to Dismiss, then the information and documents sought by this

23  Request are not relevant, making the Request disproportionate to the needs of the

24  case.  LeEco contends that, at this stage, any discovery in this matter should be

25  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

26  Merger Agreement (including its various theories of fraud related to that alleged

27  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

28  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

ERVIN COHEN & JESSUP LLP

1  Merger Agreement, including the negotiation or entry into the Merger Agreement,

2  any breach of the Merger Agreement, or the termination of the Merger Agreement

3  has any relevance.  LeEco reserves all rights, including the right to amend and

4  supplement its Response to this Request, should it become necessary and

5  appropriate to do so.

6      LeEco further objects that this Request is compound and overbroad,

7  particularly in its request for "Any and All Documents or Communications that

8  Relate To the Merger."

9      LeEco further objects that, as phrased, this Request appears to seek

10  documents that are equally available to Vizio.  LeEco objects to searching for and

11  producing documents equally available to Vizio.

12      LeEco further objects that this Request appears to seek documents and

13  communications protected by the attorney-client privilege and work product

14  doctrine.  LeEco objects to producing any privileged communications.  LeEco

15  further objects to producing any such documents created after this lawsuit was filed

16  that merely "Relate To" the Merger, as those documents would clearly be protected

17  by the attorney client privilege and attorney work product doctrine.  LeEco further

18  objects to logging all privileged and work product documents created after this

19  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

20  case.

21  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

22      LeLe restates and incorporates by reference the Preliminary Statement and

23  General Objections set forth above.  LeLe further objects to this Request on the

24  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

25  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

26  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

27  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

28  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
2  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
3  never properly served in this action.  In addition to being premature, the Requests
4  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
5  are calculated merely to harass and are overbroad, irrelevant, and not proportional to
6  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
7  seeks the documents and communications of third parties or documents and
8  communications which are not in LeLe's possession, custody or control.

9          Furthermore, Vizio's Requests are premature because they pertain to issues
10  that would be rendered irrelevant were the Court to grant LeEco's pending MTD
11  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
12  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
13  action for breach of the Merger Agreement including its various theories of fraud
14  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
15  the Framework Agreement upon receipt of $40 million ("Released Claims"), which
16  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
17  Merger Agreement, including the negotiation or entry into the Merger Agreement,
18  any breach of the Merger Agreement, or the termination of the Merger Agreement
19  has any relevance, and discovery should be limited to whether there was a breach of
20  the Framework Agreement.  LeLe reserves all rights, including the right to amend
21  and supplement its Responses and Objections to Vizio's Requests, should it become
22  necessary and appropriate to do so.

23          LeLe further objects that this Request is compound and overbroad,
24  particularly in its request for "Any and All Documents or Communications that
25  Relate To the Merger."

26          LeLe further objects that, as phrased, this Request appears to seek documents
27  that are equally available to Vizio.  LeLe objects to searching for and producing
28  documents equally available to Vizio.

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   LeLe further objects that this Request appears to seek documents and

2   communications protected by the attorney-client privilege and work product

3   doctrine.  LeLe objects to producing any privileged communications.  LeLe further

4   objects to producing any such documents created after this lawsuit was filed that

5   merely "Relate To" the subject matter of the Request as those documents would

6   clearly be protected by the attorney client privilege and attorney work product

7   doctrine.  LeLe further objects to logging all privileged and work product

8   documents created after this lawsuit was filed as unduly burdensome and

9   disproportionate to the needs of the case.

10   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

11   **NO. 6 SHOULD BE COMPELLED:**

12   As Defendants' objections to this RFP are either in whole, or in substantial

13   part identical to the objections which they asserted to Plaintiff's RFP No. One,

14   Plaintiff hereby incorporates by reference all of its reasons why a further response to

15   RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

16   though set forth fully in this place.

17   Wholly apart from these reasons, the notion that documents which relate to

18   the Merger are somehow irrelevant flies directly in the face of the alternative Claim

19   for Relief for Breach of the Merger Agreement, let alone Rescission of the

20   Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure*

21   specifically provides that "[P]arties may obtain discovery regarding any

22   unprivileged matter that is relevant to any party's claim or defense and proportional

23   to the needs of the case, considering the importance of the issues at stake in the

24   action, the amount in controversy, the parties' relative access to relevant

25   information, the parties' resources, the importance of discovery in resolving the

26   issues and whether the burden or expense of the proposed discovery outweighs its

27   likely benefit.  Information…need not be admissible in evidence to be

28   discoverable."  That is because "[t]he purpose of discovery is to allow a broad

ERVIN COHEN & JESSUP LLP

1 search for facts, the names of witnesses, or any other matters which may aid a party

2 in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

3 Cal.)

4       The notion that these documents need not be produced because the Franchise

5 Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

6 Framework Agreement specifically carved out and left intact the "remaining Buyer

7 Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

8 sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

9 Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

10 settled law that if a defrauded party is induced by false representations to execute a

11 contract, the party has the option of rescinding the contract or affirming it and

12 recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

13 B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

14 *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

15 defrauded party is induced by false representations to execute a contract, the party

16 has the option of rescinding the contract or affirming it and recovering damages for

17 the fraud.")  Third, where, as here, the release was not the sole object of the

18 Framework Agreement, there is no requirement that any consideration be restored to

19 permit the pursuit of damages for fraudulent inducement of a settlement agreement.

20 *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

21 15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

22 rescission, such relief "shall not be denied because of a delay in restoring or

23 tendering restoration of such benefits before judgment unless such delay has been

24 substantially prejudicial to the other party, but [rather], the court may make a tender

25 of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.*

26 *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

27 Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

28 and Cabrera….But Taylor's claim for rescission…is a claim about the

ERVIN COHEN & JESSUP LLP

1  circumstances that brought about the Settlement Agreement and therefore the tender

2  need not be made prior to determining whether Taylor actually has a definite ground

3  to rescind."). Fifth, a successful claim for rescission based on fraud would operate

4  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

5  claim that the Framework Agreement somehow substitutes for the Merger

6  Agreement in its entirety, with or without the express carve out of the $50MM

7  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

8  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

9  California law and holding that fraud claim for rescission would operate to restore

10  old agreement notwithstanding that a new agreement had been substituted for the

11  old agreement). Sixth, documents related to the Merger and the fraudulent

12  misrepresentations that gave rise to the Merger are germane to explaining the

13  circumstances which gave rise to the Framework Agreement and/or whether

14  Defendants likewise made fraudulent representations or otherwise acted in good

15  faith with respect to the Framework Agreement, *i.e.,* are equally probative on issues

16  of intent, knowledge, good faith and absence of mistake as to the Framework

17  Agreement and the dealings between VIZIO and Defendants. *U.S. v. Jenkins*, 785

18  F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889

19  (1986) (evidence of prior bad acts of defendants in obtaining conventional mobile

20  home loans (*i.e.,* loan irregularities) admissible in subsequent trial of fraudulent

21  scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent means to

22  secure conventional loans is probative on issues of intent, knowledge, good faith and

23  absence of mistake in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665

24  Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent scheme and past

25  failure to file tax returns admissible in subsequent complex tax fraud conspiracy trial

26  since the former "was used to explain how the…conspirators met each other and

27  garnered customers, while the latter constituted "prior acts" that were "probative of

28  issues of intent, knowledge, good faith and absence of mistake.")

1     In short, production should be ordered in full, without objection.

2 **REQUEST FOR PRODUCTION NO. 7:**

3     ALL DOCUMENTS and COMMUNICATIONS posted by LeECO,

4 GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat

5 RELATING TO VIZIO or the MERGER.

6 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

7     LeEco restates and incorporates by reference the Preliminary Statement and

8 General Objections set forth above.  LeEco further objects to this Request as

9 premature and improper because Vizio's second through sixth causes of action in

10 the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

11 LeEco's Motion to Dismiss, then the information and documents sought by this

12 Request are not relevant, making the Request disproportionate to the needs of the

13 case.  LeEco contends that, at this stage, any discovery in this matter should be

14 limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

15 Merger Agreement (including its various theories of fraud related to that alleged

16 breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

17 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

18 Merger Agreement, including the negotiation or entry into the Merger Agreement,

19 any breach of the Merger Agreement, or the termination of the Merger Agreement

20 has any relevance.  LeEco reserves all rights, including the right to amend and

21 supplement its Response to this Request, should it become necessary and

22 appropriate to do so.

23     LeEco further objects that this Request is compound and overbroad,

24 particularly in its request for "Any and All Documents or Communications ...

25 Relating To Vizio or the Merger." LeEco further objects to this Request on the

26 grounds that it fails to describe the items for production with reasonable particularity

27 as required by Rule 34, as the Request is not tethered to the claims at issue in this

28 lawsuit.  The only transactions related to Vizio that are relevant here are those

ERVIN COHEN & JESSUP LLP

1  related to the Framework Agreement and potentially the Merger Agreement

2  depending on how the Court rules on LeEco's Motion to Dismiss.  LeEco further

3  objects that this Request appears to seek documents protected by the attorney-client

4  privilege and work product doctrine.  Read literally, this Request could call for the

5  production of attorney-client privileged communications and work product materials

6  from LeEco's defense team that simply include Vizio's name.  Defendant objects to

7  producing any such documents created after this lawsuit was filed that merely

8  "Relate To" the Merger or Vizio as those documents would clearly be protected by

9  the attorney client privilege and attorney work product doctrine.  LeEco further

10 objects to logging all privileged and work product documents created after this

11 lawsuit was filed as unduly burdensome and disproportionate to the needs of the

12 case.

13        LeEco also objects that the term "posted by" is vague and ambiguous.

14        LeEco further objects that the definition of "Affiliates" is overbroad, vague

15 and ambiguous and seeks the documents and communications of third parties or

16 documents and communications which are not in LeEco's possession, custody or

17 control.  Furthermore, this Request, which seeks discovery from individuals and

18 entities ("Unrelated Third Parties") supposedly "affiliated" with LeEco appears

19 calculated merely to harass and is overbroad, irrelevant, and not proportional to the

20 needs of the case.  Particularly if the case is limited to a breach of the Framework

21 Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

22 payment to Vizio of $40 million and another $10 million in escrow that is disputed.

23 The remaining dispute concerns the Parties' obligations to each other in the context

24 of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd.

25 and Yueting Jia have not been served with the Summons and FAC, and

26 LeTechnology, Inc. is not a party to this action.

27 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

28        LeLe restates and incorporates by reference the Preliminary Statement and

ERVIN COHEN & JESSUP LLP

1   General Objections set forth above.  LeLe further objects to this Request on the

2   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

3   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

4   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

5   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

6   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

7   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

8   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

9   never properly served in this action.  In addition to being premature, the Requests

10  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

11  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

12  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

13  seeks the documents and communications of third parties or documents and

14  communications which are not in LeLe's possession, custody or control.

15       Furthermore, Vizio's Requests are premature because they pertain to issues

16  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

17  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

18  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

19  action for breach of the Merger Agreement including its various theories of fraud

20  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

21  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

22  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

23  Merger Agreement, including the negotiation or entry into the Merger Agreement,

24  any breach of the Merger Agreement, or the termination of the Merger Agreement

25  has any relevance, and discovery should be limited to whether there was a breach of

26  the Framework Agreement.  LeLe reserves all rights, including the right to amend

27  and supplement its Responses and Objections to Vizio's Requests, should it become

28  necessary and appropriate to do so.

ERVIN COHEN & JESSUP LLP

1      LeLe further objects that this Request is compound and overbroad,

2  particularly in its request for "Any and All Documents or Communications ...

3  Relating To Vizio or the Merger." LeLe further objects to this Request on the

4  grounds that it fails to describe the items for production with reasonable particularity

5  as required by Rule 34, as the Request is not tethered to the claims at issue in this

6  lawsuit.  The only transactions related to Vizio that are relevant here are those

7  related to the Framework Agreement and potentially the Merger Agreement

8  depending on how the Court rules on LeEco's Motion to Dismiss (to which LeLe

9  joined).

10      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

11  ambiguous and seeks the documents and communications of third parties or

12  documents and communications which are not in LeLe's possession, custody or

13  control.  Furthermore, this Request, which seeks discovery from individuals and

14  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

15  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

16  needs of the case.  Particularly if the case is limited to a breach of the Framework

17  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

18  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

19  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

20  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

21  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

22  LeTechnology, Inc. is not a party to this action.

23      LeLe further objects that this Request appears to seek documents and

24  communications protected by the attorney-client privilege and work product

25  doctrine.  LeLe objects to producing any privileged communications.  Read literally,

26  this Request could call for the production of attorney-client privileged

27  communications and work product materials from LeLe's defense team that simply

28  include Vizio's name.  LeLe further objects to producing any such documents

ERVIN COHEN & JESSUP LLP

1   created after this lawsuit was filed that merely "Relate To" the subject matter of the

2   Request as those documents would clearly be protected by the attorney client

3   privilege and attorney work product doctrine.  LeLe further objects to logging all

4   privileged and work product documents created after this lawsuit was filed as

5   unduly burdensome and disproportionate to the needs of the case.

6   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

7   **NO. 7 SHOULD BE COMPELLED:**

8        As Defendants' objections to this RFP are either in whole, or in substantial

9   part identical to the objections which they asserted to Plaintiff's RFP No. One,

10  Plaintiff hereby incorporates by reference all of its reasons why a further response to

11  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

12  though set forth fully in this place.

13       Wholly apart from these reasons, the notion that documents which relate to

14  the Merger and/or VIZIO are somehow irrelevant flies directly in the face of the

15  alternative Claim for Relief for Breach of the Merger Agreement, let alone

16  Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of*

17  *Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding

18  any unprivileged matter that is relevant to any party's claim or defense and

19  proportional to the needs of the case, considering the importance of the issues at

20  stake in the action, the amount in controversy, the parties' relative access to relevant

21  information, the parties' resources, the importance of discovery in resolving the

22  issues and whether the burden or expense of the proposed discovery outweighs its

23  likely benefit.  Information…need not be admissible in evidence to be

24  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

25  search for facts, the names of witnesses, or any other matters which may aid a party

26  in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

27  Cal.)

28       The notion that these documents need not be produced because the Franchise

ERVIN COHEN & JESSUP LLP

1    Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

2    Framework Agreement specifically carved out and left intact the "remaining Buyer

3    Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

4    sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

5    Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

6    settled law that if a defrauded party is induced by false representations to execute a

7    contract, the party has the option of rescinding the contract or affirming it and

8    recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

9    B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

10   *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

11   defrauded party is induced by false representations to execute a contract, the party

12   has the option of rescinding the contract or affirming it and recovering damages for

13   the fraud.")  Third, where, as here, the release was not the sole object of the

14   Framework Agreement, there is no requirement that any consideration be restored to

15   permit the pursuit of damages for fraudulent inducement of a settlement agreement.

16   *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

17   15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

18   rescission, such relief "shall not be denied because of a delay in restoring or

19   tendering restoration of such benefits before judgment unless such delay has been

20   substantially prejudicial to the other party, but [rather], the court may make a tender

21   of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.*

22   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

23   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

24   and Cabrera….But Taylor's claim for rescission…is a claim about the

25   circumstances that brought about the Settlement Agreement and therefore the tender

26   need not be made prior to determining whether Taylor actually has a definite ground

27   to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

28   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

14676.8:9283165.1                    62                    8:17-CV-01175-DOC-JDE

ERVIN COHEN & JESSUP LLP

1 claim that the Framework Agreement somehow substitutes for the Merger

2 Agreement in its entirety, with or without the express carve out of the $50MM

3 Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

4 *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

5 California law and holding that fraud claim for rescission would operate to restore

6 old agreement notwithstanding that a new agreement had been substituted for the

7 old agreement).  Sixth, documents related to the Merger and/or VIZIO and the

8 fraudulent misrepresentations that gave rise to the Merger are germane to explaining

9 the circumstances which gave rise to the Framework Agreement and/or whether

10 Defendants likewise made fraudulent representations or otherwise acted in good

11 faith with respect to it, *i.e.*, are equally probative on issues of intent, knowledge,

12 good faith and absence of mistake as to the Framework Agreement and the dealings

13 between VIZIO and Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

14 Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad

15 acts of defendants in obtaining conventional mobile home loans (*i.e.*, loan

16 irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

17 loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

18 loans is probative on issues of intent, knowledge, good faith and absence of mistake

19 in dealing with FHA transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

20 (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

21 returns admissible in subsequent complex tax fraud conspiracy trial since the former

22 "was used to explain how the…conspirators met each other and garnered customers,

23 while the latter constituted "prior acts" that were "probative of issues of intent,

24 knowledge, good faith and absence of mistake.")

25      In short, production should be ordered in full, without objection.

26 **REQUEST FOR PRODUCTION NO. 8:**

27      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

28 the ESCROW.

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  Indeed, there is no dispute relating to the existence of the funds in escrow or that $40 million was paid to Vizio from the escrow account held by Citibank.  Furthermore, the terms of the "Escrow Agreement" have no relation to the resolution of the disposition of the remaining $10 million held in the escrow account.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Escrow."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeEco objects to producing any privileged communications.  LeEco

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   further objects to producing any such documents created after this lawsuit was filed

2   that merely "Relate To" the Escrow, as those documents would clearly be protected

3   by the attorney client privilege and attorney work product doctrine.  LeEco further

4   objects to logging all privileged and work product documents created after this

5   lawsuit was filed as unduly burdensome and disproportionate to the needs of the

6   case.  LeEco further objects to producing any such documents created before or

7   during the negotiation and drafting of the Merger Agreement (including the Escrow)

8   that are protected by the attorney client privilege and attorney work product

9   doctrine.

10   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

11        LeLe restates and incorporates by reference the Preliminary Statement and

12   General Objections set forth above.  LeLe further objects to this Request on the

13   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

14   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

15   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

16   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

17   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

18   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

19   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

20   never properly served in this action.  In addition to being premature, the Requests

21   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

22   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

23   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

24   seeks the documents and communications of third parties or documents and

25   communications which are not in LeLe's possession, custody or control.

26        Furthermore, Vizio's Requests are premature because they pertain to issues

27   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

28   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

ERVIN COHEN & JESSUP LLP

1  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

2  action for breach of the Merger Agreement including its various theories of fraud

3  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

4  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

5  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

6  Merger Agreement, including the negotiation or entry into the Merger Agreement,

7  any breach of the Merger Agreement, or the termination of the Merger Agreement

8  has any relevance, and discovery should be limited to whether there was a breach of

9  the Framework Agreement.  LeLe reserves all rights, including the right to amend

10  and supplement its Responses and Objections to Vizio's Requests, should it become

11  necessary and appropriate to do so.

12      LeLe further objects that this Request is compound and overbroad,

13  particularly in its request for "Any and All Documents or Communications that

14  Relate To the Escrow."

15      LeLe further objects that, as phrased, this Request appears to seek documents

16  that are equally available to Vizio.  LeLe objects to searching for and producing

17  documents equally available to Vizio.

18      LeLe further objects that this Request appears to seek documents and

19  communications protected by the attorney-client privilege and work product

20  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

21  objects to producing any such documents created after this lawsuit was filed that

22  merely "Relate To" the subject matter of the Request as those documents would

23  clearly be protected by the attorney client privilege and attorney work product

24  doctrine.  LeLe further objects to logging all privileged and work product

25  documents created after this lawsuit was filed as unduly burdensome and

26  disproportionate to the needs of the case.

27

28

ERVIN COHEN & JESSUP LLP

**REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
**NO. 8 SHOULD BE COMPELLED:**

As Defendants' objections to this RFP are either in whole, or in substantial part identical to the objections which they asserted to Plaintiff's RFP No. One, Plaintiff hereby incorporates by reference all of its reasons why a further response to RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as though set forth fully in this place.

Wholly apart from these reasons, the notion that documents which relate to the Merger Agreement and the Escrow which is part and parcel thereto are somehow irrelevant flies directly in the face of the alternative Claim for Relief for Breach of the Merger Agreement, let alone Rescission of the Framework Agreement.  The Escrow Agreement is part of the Merger Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding any unprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information…need not be admissible in evidence to be discoverable."  That is because "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

The notion that these documents need not be produced because the Franchise Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the Framework Agreement specifically carved out and left intact the "remaining Buyer Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

ERVIN COHEN & JESSUP LLP

1   Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is
2   settled law that if a defrauded party is induced by false representations to execute a
3   contract, the party has the option of rescinding the contract or affirming it and
4   recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.
5   B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*
6   *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a
7   defrauded party is induced by false representations to execute a contract, the party
8   has the option of rescinding the contract or affirming it and recovering damages for
9   the fraud.")  Third, where, as here, the release was not the sole object of the
10  Framework Agreement, there is no requirement that any consideration be restored to
11  permit the pursuit of damages for fraudulent inducement of a settlement agreement.
12  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-
13  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on
14  rescission, such relief "shall not be denied because of a delay in restoring or
15  tendering restoration of such benefits before judgment unless such delay has been
16  substantially prejudicial to the other party, but [rather], the court may make a tender
17  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*
18  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that
19  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao
20  and Cabrera….But Taylor's claim for rescission…is a claim about the
21  circumstances that brought about the Settlement Agreement and therefore the tender
22  need not be made prior to determining whether Taylor actually has a definite ground
23  to rescind.")  Fifth, a successful claim for rescission based on fraud would operate
24  to restore the Merger Agreement in its terminated state notwithstanding Defendants'
25  claim that the Framework Agreement somehow substitutes for the Merger
26  Agreement in its entirety, with or without the express carve out of the $50MM
27  Remaining Buyer Termination Fee Deposit provisions.  *Airs Intern, Inc. v. Perfect*
28  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

ERVIN COHEN & JESSUP LLP

1   California law and holding that fraud claim for rescission would operate to restore

2   old agreement notwithstanding that a new agreement had been substituted for the

3   old agreement).  Sixth, documents related to the Merger Agreement as well as the

4   Escrow that was part and parcel thereto and the fraudulent misrepresentations that

5   gave rise to them are germane to explaining the circumstances which gave rise to the

6   Framework Agreement and/or whether Defendants likewise made fraudulent

7   representations or otherwise acted in good faith with respect to it, *i.e.,* are equally

8   probative on issues of intent, knowledge, good faith and absence of mistake as to the

9   Framework Agreement and the dealings between VIZIO and Defendants.  *U.S. v.*

10  *Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479

11  U.S. 889 (1986) (evidence of prior bad acts of defendants in obtaining conventional

12  mobile home loans (*i.e.,* loan irregularities) admissible in subsequent trial of

13  fraudulent scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent

14  means to secure conventional loans is probative on issues of intent, knowledge,

15  good faith and absence of mistake in dealing with FHA transactions.").  *Accord,*

16  *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent

17  scheme and past failure to file tax returns admissible in subsequent complex tax

18  fraud conspiracy trial since the former "was used to explain how the…conspirators

19  met each other and garnered customers, while the latter constituted "prior acts" that

20  were "probative of issues of intent, knowledge, good faith and absence of mistake.")

21        In short, production should be ordered in full, without objection.

22  **REQUEST FOR PRODUCTION NO. 9:**

23        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

24  the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

25  JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

26  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

27        LeEco restates and incorporates by reference the Preliminary Statement and

28  General Objections set forth above.  LeEco further objects to this Request as

ERVIN COHEN & JESSUP LLP

1   premature and improper because Vizio's second through sixth causes of action in

2   the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

3   LeEco's Motion to Dismiss, then the information and documents sought by this

4   Request are not relevant, making the Request disproportionate to the needs of the

5   case.  LeEco contends that, at this stage, any discovery in this matter should be

6   limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

7   Merger Agreement (including its various theories of fraud related to that alleged

8   breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

9   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

10  Merger Agreement, including the negotiation or entry into the Merger Agreement,

11  any breach of the Merger Agreement, or the termination of the Merger Agreement

12  has any relevance.  LeEco reserves all rights, including the right to amend and

13  supplement its Response to this Request, should it become necessary and

14  appropriate to do so.

15        LeEco further objects that this Request is compound and overbroad,

16  particularly in its request for "Any and All Documents or Communications that

17  Relate To the benefits—financial, operational or otherwise—that LeECO,

18  GLOBAL, LELE, JIA, LTI or any of their Affiliates expected to receive from the

19  Merger."

20        LeEco further objects that the definition of "Affiliates" is overbroad, vague

21  and ambiguous and seeks the documents and communications of third parties or

22  documents and communications which are not in LeEco's possession, custody or

23  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

24  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

25  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

26  the case is limited to a breach of the Framework Agreement, the dispute is limited to

27  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

28  another $10 million in escrow that is disputed.  The remaining dispute concerns the

ERVIN COHEN & JESSUP LLP

1  Parties' obligations to each other in the context of the proposed China JV.
2  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
3  been served with the Summons and FAC, and LeTechnology, Inc. is not a party to
4  this action.

5        LeEco further objects that this Request appears to seek documents and
6  communications protected by the attorney-client privilege and work product
7  doctrine.  LeEco objects to producing any privileged communications.  LeEco
8  further objects to producing any such documents created after this lawsuit was filed
9  that merely "Relate To" the Merger, as those documents would clearly be protected
10  by the attorney client privilege and attorney work product doctrine.  LeEco further
11  objects to logging all privileged and work product documents created after this
12  lawsuit was filed as unduly burdensome and disproportionate to the needs of the
13  case.

14  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

15        LeLe restates and incorporates by reference the Preliminary Statement and
16  General Objections set forth above.  LeLe further objects to this Request on the
17  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
18  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
19  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
20  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
21  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
22  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
23  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
24  never properly served in this action.  In addition to being premature, the Requests
25  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
26  are calculated merely to harass and are overbroad, irrelevant, and not proportional to
27  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
28  seeks the documents and communications of third parties or documents and

ERVIN COHEN & JESSUP LLP

1    communications which are not in LeLe's possession, custody or control.

2            Furthermore, Vizio's Requests are premature because they pertain to issues

3    that would be rendered irrelevant were the Court to grant LeEco's pending MTD

4    Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

5    LeEco's pending MTD would eliminate Vizio's second through sixth causes of

6    action for breach of the Merger Agreement including its various theories of fraud

7    related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

8    the Framework Agreement upon receipt of $40 million ("Released Claims"), which

9    Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

10   Merger Agreement, including the negotiation or entry into the Merger Agreement,

11   any breach of the Merger Agreement, or the termination of the Merger Agreement

12   has any relevance, and discovery should be limited to whether there was a breach of

13   the Framework Agreement.  LeLe reserves all rights, including the right to amend

14   and supplement its Responses and Objections to Vizio's Requests, should it become

15   necessary and appropriate to do so.

16           LeLe further objects that this Request is compound and overbroad,

17   particularly in its request for "Any and All Documents or Communications that

18   Relate To the benefits—financial, operational or otherwise—that LeECO,

19   GLOBAL, LELE, JIA, LTI or any of their Affiliates expected to receive from the

20   Merger."

21           LeLe further objects that the definition of "Affiliates" is overbroad, vague and

22   ambiguous and seeks the documents and communications of third parties or

23   documents and communications which are not in LeLe's possession, custody or

24   control.  Furthermore, this Request, which seeks discovery from individuals and

25   entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

26   calculated merely to harass and is overbroad, irrelevant, and not proportional to the

27   needs of the case.  Particularly if the case is limited to a breach of the Framework

28   Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

1  payment to Vizio of $40 million and another $10 million in escrow that is disputed.
2  The remaining dispute concerns LeEco and Vizio's obligations to each other in the
3  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele
4  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and
5  LeTechnology, Inc. is not a party to this action.

6         LeLe further objects that this Request appears to seek documents and
7  communications protected by the attorney-client privilege and work product
8  doctrine.  LeLe objects to producing any privileged communications.  LeLe further
9  objects to producing any such documents created after this lawsuit was filed that
10 merely "Relate To" the subject matter of the Request as those documents would
11 clearly be protected by the attorney client privilege and attorney work product
12 doctrine.  LeLe further objects to logging all privileged and work product
13 documents created after this lawsuit was filed as unduly burdensome and
14 disproportionate to the needs of the case.

15 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
16 **NO. 9 SHOULD BE COMPELLED:**

17        As Defendants' objections to this RFP are either in whole, or in substantial
18 part identical to the objections which they asserted to Plaintiff's RFP No. One,
19 Plaintiff hereby incorporates by reference all of its reasons why a further response to
20 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
21 though set forth fully in this place.

22        Wholly apart from these reasons, the notion that documents which relate to
23 expected benefits from the Merger Agreement are somehow irrelevant flies directly
24 in the face of the alternative Claim for Relief for Breach of the Merger Agreement,
25 let alone Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal*
26 *Rules of Civil Procedure* specifically provides that "[P]arties may obtain discovery
27 regarding any unprivileged matter that is relevant to any party's claim or defense
28 and proportional to the needs of the case, considering the importance of the issues at

ERVIN COHEN & JESSUP LLP

1 stake in the action, the amount in controversy, the parties' relative access to relevant

2 information, the parties' resources, the importance of discovery in resolving the

3 issues and whether the burden or expense of the proposed discovery outweighs its

4 likely benefit.  Information…need not be admissible in evidence to be

5 discoverable." That is because "[t]he purpose of discovery is to allow a broad

6 search for facts, the names of witnesses, or any other matters which may aid a party

7 in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

8 Cal.)

9      The notion that these documents need not be produced because the Franchise

10 Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

11 Framework Agreement specifically carved out and left intact the "remaining Buyer

12 Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

13 sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

14 Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

15 settled law that if a defrauded party is induced by false representations to execute a

16 contract, the party has the option of rescinding the contract or affirming it and

17 recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

18 B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart

19 Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

20 defrauded party is induced by false representations to execute a contract, the party

21 has the option of rescinding the contract or affirming it and recovering damages for

22 the fraud.")  Third, where, as here, the release was not the sole object of the

23 Framework Agreement, there is no requirement that any consideration be restored to

24 permit the pursuit of damages for fraudulent inducement of a settlement agreement.

25 *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

26 15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

27 rescission, such relief "shall not be denied because of a delay in restoring or

28 tendering restoration of such benefits before judgment unless such delay has been

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  substantially prejudicial to the other party, but [rather], the court may make a tender

2  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

3  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

4  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

5  and Cabrera….But Taylor's claim for rescission…is a claim about the

6  circumstances that brought about the Settlement Agreement and therefore the tender

7  need not be made prior to determining whether Taylor actually has a definite ground

8  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

9  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

10  claim that the Framework Agreement somehow substitutes for the Merger

11  Agreement in its entirety, with or without the express carve out of the $50MM

12  Remaining Buyer Termination Fee Deposit provisions.  *Airs Intern, Inc. v. Perfect*

13  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

14  California law and holding that fraud claim for rescission would operate to restore

15  old agreement notwithstanding that a new agreement had been substituted for the

16  old agreement).  Sixth, documents related to expected benefits from the Merger and

17  the fraudulent misrepresentations that gave rise to it are germane to explaining the

18  circumstances which gave rise to the Framework Agreement and/or whether

19  Defendants likewise made fraudulent representations or otherwise acted in good

20  faith with respect to it and its benefits, *i.e.,* are equally probative on issues of intent,

21  knowledge, good faith and absence of mistake as to the Framework Agreement and

22  the dealings between VIZIO and Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-

23  1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of

24  prior bad acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan

25  irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

26  loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

27  loans is probative on issues of intent, knowledge, good faith and absence of mistake

28  in dealing with FHA transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

ERVIN COHEN & JESSUP LLP

1 (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

2 returns admissible in subsequent complex tax fraud conspiracy trial since the former

3 "was used to explain how the…conspirators met each other and garnered customers,

4 while the latter constituted "prior acts" that were "probative of issues of intent,

5 knowledge, good faith and absence of mistake.")

6      In short, production should be ordered in full, without objection.

7 **REQUEST FOR PRODUCTION NO. 10:**

8      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

9 the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

10 JIA, LTI or any of their AFFILIATES expected to receive from the public

11 announcement of the MERGER AGREEMENT or that any of those PERSONS

12 actually received following that announcement.

13 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

14      LeEco restates and incorporates by reference the Preliminary Statement and

15 General Objections set forth above.  LeEco further objects to this Request as

16 premature and improper because Vizio's second through sixth causes of action in

17 the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

18 LeEco's Motion to Dismiss, then the information and documents sought by this

19 Request are not relevant, making the Request disproportionate to the needs of the

20 case.  LeEco contends that, at this stage, any discovery in this matter should be

21 limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

22 Merger Agreement (including its various theories of fraud related to that alleged

23 breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

24 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

25 Merger Agreement, including the negotiation or entry into the Merger Agreement,

26 any breach of the Merger Agreement, or the termination of the Merger Agreement

27 has any relevance.  LeEco reserves all rights, including the right to amend and

28 supplement its Response to this Request, should it become necessary and

14676.8:9283165.1      76      8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  appropriate to do so.

2      LeEco further objects that this Request is compound and overbroad,

3  particularly in its request for "Any and All Documents or Communications that

4  Relate To the benefits—financial, operational or otherwise that LeECO, GLOBAL,

5  LELE, JIA, LTI or any of their Affiliates expected to receive from the public

6  announcement of the Merger Agreement or that any of those Persons actually

7  received following that announcement."

8      LeEco further objects that the definition of "Affiliates" is overbroad, vague

9  and ambiguous and seeks the documents and communications of third parties or

10  documents and communications which are not in LeEco's possession, custody or

11  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

12  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

13  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

14  the case is limited to a breach of the Framework Agreement, the dispute is limited to

15  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

16  another $10 million in escrow that is disputed.  The remaining dispute concerns the

17  Parties' obligations to each other in the context of the proposed China JV.

18  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

19  been served with the Summons and FAC, and LeTechnology, Inc. is not a party to

20  this action.

21      LeEco further objects that this Request appears to seek documents and

22  communications protected by the attorney-client privilege and work product

23  doctrine.  LeEco objects to producing any privileged communications.  LeEco

24  further objects to producing any such documents created after this lawsuit was filed

25  that merely "Relate To" the Merger Agreement, as those documents would clearly

26  be protected by the attorney client privilege and attorney work product doctrine.

27  LeEco further objects to logging all privileged and work product documents created

28  after this lawsuit was filed as unduly burdensome and disproportionate to the needs

ERVIN COHEN & JESSUP LLP

1 | of the case.

2 | **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

3 | LeLe restates and incorporates by reference the Preliminary Statement and

4 | General Objections set forth above.  LeLe further objects to this Request on the

5 | grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

6 | of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

7 | LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

8 | Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

9 | and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

10 | Vizio that give rise to this action nor is LeLe alleged to have made any statement to

11 | Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

12 | never properly served in this action.  In addition to being premature, the Requests

13 | directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

14 | are calculated merely to harass and are overbroad, irrelevant, and not proportional to

15 | the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

16 | seeks the documents and communications of third parties or documents and

17 | communications which are not in LeLe's possession, custody or control.

18 | Furthermore, Vizio's Requests are premature because they pertain to issues

19 | that would be rendered irrelevant were the Court to grant LeEco's pending MTD

20 | Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

21 | LeEco's pending MTD would eliminate Vizio's second through sixth causes of

22 | action for breach of the Merger Agreement including its various theories of fraud

23 | related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

24 | the Framework Agreement upon receipt of $40 million ("Released Claims"), which

25 | Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

26 | Merger Agreement, including the negotiation or entry into the Merger Agreement,

27 | any breach of the Merger Agreement, or the termination of the Merger Agreement

28 | has any relevance, and discovery should be limited to whether there was a breach of

ERVIN COHEN & JESSUP LLP

1 | the Framework Agreement.  LeLe reserves all rights, including the right to amend

2 | and supplement its Responses and Objections to Vizio's Requests, should it become

3 | necessary and appropriate to do so.

4 |     LeLe further objects that this Request is compound and overbroad,

5 | particularly in its request for "Any and All Documents or Communications that

6 | Relate To the benefits—financial, operational or otherwise that LeECO, GLOBAL,

7 | LELE, JIA, LTI or any of their Affiliates expected to receive from the public

8 | announcement of the Merger Agreement or that any of those Persons actually

9 | received following that announcement."

10 |     LeLe further objects that the definition of "Affiliates" is overbroad, vague and

11 | ambiguous and seeks the documents and communications of third parties or

12 | documents and communications which are not in LeLe's possession, custody or

13 | control.  Furthermore, this Request, which seeks discovery from individuals and

14 | entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

15 | calculated merely to harass and is overbroad, irrelevant, and not proportional to the

16 | needs of the case.  Particularly if the case is limited to a breach of the Framework

17 | Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

18 | payment to Vizio of $40 million and another $10 million in escrow that is disputed.

19 | The remaining dispute concerns LeEco and Vizio's obligations to each other in the

20 | context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

21 | Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

22 | LeTechnology, Inc. is not a party to this action.

23 |     LeLe further objects that this Request appears to seek documents and

24 | communications protected by the attorney-client privilege and work product

25 | doctrine.  LeLe objects to producing any privileged communications.  LeLe further

26 | objects to producing any such documents created after this lawsuit was filed that

27 | merely "Relate To" the subject matter of the Request as those documents would

28 | clearly be protected by the attorney client privilege and attorney work product

ERVIN COHEN & JESSUP LLP

1  doctrine.  LeLe further objects to logging all privileged and work product
2  documents created after this lawsuit was filed as unduly burdensome and
3  disproportionate to the needs of the case.

4  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
5  **NO. 10 SHOULD BE COMPELLED:**

6  As Defendants' objections to this RFP are either in whole, or in substantial
7  part identical to the objections which they asserted to Plaintiff's RFP No. One,
8  Plaintiff hereby incorporates by reference all of its reasons why a further response to
9  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
10  though set forth fully in this place.

11  Wholly apart from these reasons, the notion that documents which relate to
12  expected public benefits from announcement of the Merger are somehow irrelevant
13  flies directly in the face of the alternative Claim for Relief for Breach of the Merger
14  Agreement, let alone Rescission of the Framework Agreement.  Rule 26(b)(1) of the
15  *Federal Rules of Civil Procedure* specifically provides that "[P]arties may obtain
16  discovery regarding any unprivileged matter that is relevant to any party's claim or
17  defense and proportional to the needs of the case, considering the importance of the
18  issues at stake in the action, the amount in controversy, the parties' relative access to
19  relevant information, the parties' resources, the importance of discovery in resolving
20  the issues and whether the burden or expense of the proposed discovery outweighs
21  its likely benefit.  Information…need not be admissible in evidence to be
22  discoverable."  That is because "[t]he purpose of discovery is to allow a broad
23  search for facts, the names of witnesses, or any other matters which may aid a party
24  in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.
25  Cal.)

26  The notion that these documents need not be produced because the Franchise
27  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the
28  Framework Agreement specifically carved out and left intact the "remaining Buyer

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1 │ Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

2 │ sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

3 │ Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

4 │ settled law that if a defrauded party is induced by false representations to execute a

5 │ contract, the party has the option of rescinding the contract or affirming it and

6 │ recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

7 │ B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

8 │ *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

9 │ defrauded party is induced by false representations to execute a contract, the party

10 │ has the option of rescinding the contract or affirming it and recovering damages for

11 │ the fraud.")  Third, where, as here, the release was not the sole object of the

12 │ Framework Agreement, there is no requirement that any consideration be restored to

13 │ permit the pursuit of damages for fraudulent inducement of a settlement agreement.

14 │ *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

15 │ 15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

16 │ rescission, such relief "shall not be denied because of a delay in restoring or

17 │ tendering restoration of such benefits before judgment unless such delay has been

18 │ substantially prejudicial to the other party, but [rather], the court may make a tender

19 │ of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.*

20 │ *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

21 │ Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

22 │ and Cabrera….But Taylor's claim for rescission…is a claim about the

23 │ circumstances that brought about the Settlement Agreement and therefore the tender

24 │ need not be made prior to determining whether Taylor actually has a definite ground

25 │ to rescind.")  Fifth, a successful claim for rescission based on fraud would operate

26 │ to restore the Merger Agreement in its terminated state notwithstanding Defendants'

27 │ claim that the Framework Agreement somehow substitutes for the Merger

28 │ Agreement in its entirety, with or without the express carve out of the $50MM

ERVIN COHEN & JESSUP LLP

1  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

2  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

3  California law and holding that fraud claim for rescission would operate to restore

4  old agreement notwithstanding that a new agreement had been substituted for the

5  old agreement).  Sixth, documents related to expected benefits from the public

6  announcement of the Merger and the fraudulent misrepresentations that gave rise to

7  it are germane to explaining the circumstances which gave rise to the Framework

8  Agreement and/or whether Defendants likewise made fraudulent representations or

9  otherwise acted in good faith with respect to it, *i.e.* are equally probative on issues of

10  intent, knowledge, good faith and absence of mistake as to the Framework

11  Agreement and the dealings between VIZIO and Defendants. *U.S. v. Jenkins*, 785

12  F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889

13  (1986) (evidence of prior bad acts of defendants in obtaining conventional mobile

14  home loans (*i.e.,* loan irregularities) admissible in subsequent trial of fraudulent

15  scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent means to

16  secure conventional loans is probative on issues of intent, knowledge, good faith and

17  absence of mistake in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665

18  Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent scheme and past

19  failure to file tax returns admissible in subsequent complex tax fraud conspiracy trial

20  since the former "was used to explain how the…conspirators met each other and

21  garnered customers, while the latter constituted "prior acts" that were "probative of

22  issues of intent, knowledge, good faith and absence of mistake.")

23  In short, production should be ordered in full, without objection.

24  **REQUEST FOR PRODUCTION NO. 11:**

25  ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

26  the response of U.S. and Chinese markets or press to the proposed MERGER,

27  INCLUDING all articles, reports and other documents issued by stock markets,

28  bond markets, financial press, newspapers, and financial analysts.

ERVIN COHEN & JESSUP LLP

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance. LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the response of U.S. and Chinese markets or press to the proposed Merger...."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio, as the Request expressly calls for public information. LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications. LeEco

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  further objects to producing any such documents created after this lawsuit was filed
2  that merely "Relate To" the Merger, as those documents would clearly be protected
3  by the attorney client privilege and attorney work product doctrine.  LeEco further
4  objects to logging all privileged and work product documents created after this
5  lawsuit was filed as unduly burdensome and disproportionate to the needs of the
6  case.

7  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

8        LeLe restates and incorporates by reference the Preliminary Statement and
9  General Objections set forth above.  LeLe further objects to this Request on the
10  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
11  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
12  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
13  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
14  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
15  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
16  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
17  never properly served in this action.  In addition to being premature, the Requests
18  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
19  are calculated merely to harass and are overbroad, irrelevant, and not proportional to
20  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
21  seeks the documents and communications of third parties or documents and
22  communications which are not in LeLe's possession, custody or control.

23        Furthermore, Vizio's Requests are premature because they pertain to issues
24  that would be rendered irrelevant were the Court to grant LeEco's pending MTD
25  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
26  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
27  action for breach of the Merger Agreement including its various theories of fraud
28  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

ERVIN COHEN & JESSUP LLP

1    the Framework Agreement upon receipt of $40 million ("Released Claims"), which
2    Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
3    Merger Agreement, including the negotiation or entry into the Merger Agreement,
4    any breach of the Merger Agreement, or the termination of the Merger Agreement
5    has any relevance, and discovery should be limited to whether there was a breach of
6    the Framework Agreement.  LeLe reserves all rights, including the right to amend
7    and supplement its Responses and Objections to Vizio's Requests, should it become
8    necessary and appropriate to do so.

9        LeLe further objects that this Request is compound and overbroad,
10   particularly in its request for "Any and All Documents or Communications that
11   Relate To the response of U.S. and Chinese markets or press to the proposed
12   Merger...."

13       LeLe further objects that, as phrased, this Request appears to seek documents
14   that are equally available to Vizio, as the Request expressly calls for public
15   information.  LeLe objects to searching for and producing documents equally
16   available to Vizio.

17       LeLe further objects that this Request appears to seek documents and
18   communications protected by the attorney-client privilege and work product
19   doctrine.  LeLe objects to producing any privileged communications.  LeLe further
20   objects to producing any such documents created after this lawsuit was filed that
21   merely "Relate To" the subject matter of the Request as those documents would
22   clearly be protected by the attorney client privilege and attorney work product
23   doctrine.  LeLe further objects to logging all privileged and work product
24   documents created after this lawsuit was filed as unduly burdensome and
25   disproportionate to the needs of the case.

26   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
27   **NO. 11 SHOULD BE COMPELLED:**

28       As Defendants' objections to this RFP are either in whole, or in substantial

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  part identical to the objections which they asserted to Plaintiff's RFP No. One,

2  Plaintiff hereby incorporates by reference all of its reasons why a further response to

3  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

4  though set forth fully in this place.

5       Wholly apart from these reasons, the notion that documents which relate to

6  market reaction and/or press reports of the Merger as well as statements contained

7  therein made by Defendants are somehow irrelevant flies directly in the face of the

8  alternative Claim for Relief for Breach of the Merger Agreement, let alone

9  Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of*

10  *Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding

11  any unprivileged matter that is relevant to any party's claim or defense and

12  proportional to the needs of the case, considering the importance of the issues at

13  stake in the action, the amount in controversy, the parties' relative access to relevant

14  information, the parties' resources, the importance of discovery in resolving the

15  issues and whether the burden or expense of the proposed discovery outweighs its

16  likely benefit.  Information…need not be admissible in evidence to be

17  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

18  search for facts, the names of witnesses, or any other matters which may aid a party

19  in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

20  Cal.)

21       The notion that these documents need not be produced because the Franchise

22  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

23  Framework Agreement specifically carved out and left intact the "remaining Buyer

24  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

25  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

26  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

27  settled law that if a defrauded party is induced by false representations to execute a

28  contract, the party has the option of rescinding the contract or affirming it and

ERVIN COHEN & JESSUP _LP_

1   recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

2   B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

3   *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

4   defrauded party is induced by false representations to execute a contract, the party

5   has the option of rescinding the contract or affirming it and recovering damages for

6   the fraud.")  Third, where, as here, the release was not the sole object of the

7   Framework Agreement, there is no requirement that any consideration be restored to

8   permit the pursuit of damages for fraudulent inducement of a settlement agreement.

9   *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

10  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

11  rescission, such relief "shall not be denied because of a delay in restoring or

12  tendering restoration of such benefits before judgment unless such delay has been

13  substantially prejudicial to the other party, but [rather], the court may make a tender

14  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

15  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

16  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

17  and Cabrera….But Taylor's claim for rescission…is a claim about the

18  circumstances that brought about the Settlement Agreement and therefore the tender

19  need not be made prior to determining whether Taylor actually has a definite ground

20  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

21  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

22  claim that the Framework Agreement somehow substitutes for the Merger

23  Agreement in its entirety, with or without the express carve out of the $50MM

24  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

25  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

26  California law and holding that fraud claim for rescission would operate to restore

27  old agreement notwithstanding that a new agreement had been substituted for the

28  old agreement).  Sixth, documents related to market reaction and/or press reports

ERVIN COHEN & JESSUP LLP

1   concerning the Merger as well as statements made therein by Defendants and the

2   fraudulent misrepresentations that gave rise to that Merger are germane to

3   explaining the circumstances which gave rise to the Framework Agreement and/or

4   whether Defendants likewise made fraudulent representations or otherwise acted in

5   good faith with respect to the it, *i.e.,* are equally probative on issues of intent,

6   knowledge, good faith and absence of mistake as to the Framework Agreement and

7   the dealings between VIZIO and Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-

8   1396 (9th Cir. 1986), *cert. den'd, White v. U.S.*, 479 U.S. 889 (1986) (evidence of

9   prior bad acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan

10  irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

11  loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

12  loans is probative on issues of intent, knowledge, good faith and absence of mistake

13  in dealing with FHA transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

14  (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

15  returns admissible in subsequent complex tax fraud conspiracy trial since the former

16  "was used to explain how the…conspirators met each other and garnered customers,

17  while the latter constituted "prior acts" that were "probative of issues of intent,

18  knowledge, good faith and absence of mistake.")

19       In short, production should be ordered in full, without objection.

20  **REQUEST FOR PRODUCTION NO. 12:**

21       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

22  efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to

23  implement, meet the conditions for, or complete the MERGER with VIZIO.

24  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

25       LeEco restates and incorporates by reference the Preliminary Statement and

26  General Objections set forth above.  LeEco further objects to this Request as

27  premature and improper because Vizio's second through sixth causes of action in

28  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

ERVIN COHEN & JESSUP LLP

1  LeEco's Motion to Dismiss, then the information and documents sought by this

2  Request are not relevant, making the Request disproportionate to the needs of the

3  case.  LeEco contends that, at this stage, any discovery in this matter should be

4  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

5  Merger Agreement (including its various theories of fraud related to that alleged

6  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

7  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

8  Merger Agreement, including the negotiation or entry into the Merger Agreement,

9  any breach of the Merger Agreement, or the termination of the Merger Agreement

10  has any relevance.  LeEco reserves all rights, including the right to amend and

11  supplement its Response to this Request, should it become necessary and

12  appropriate to do so.

13       LeEco further objects that this Request is compound and overbroad,

14  particularly in its request for "Any and All Documents or Communications that

15  Relate To efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their

16  Affiliates to implement, meet the conditions for, or complete the Merger with

17  Vizio."

18       LeEco further objects that this Request appears to seek documents and

19  communications protected by the attorney-client privilege and work product

20  doctrine.  LeEco objects to producing any privileged communications.  LeEco

21  further objects to producing any such documents created after this lawsuit was filed

22  that merely "Relate To" the Merger, as those documents would clearly be protected

23  by the attorney client privilege and attorney work product doctrine.  LeEco further

24  objects to logging all privileged and work product documents created after this

25  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

26  case.

27       LeEco further objects that the definition of "Affiliates" is overbroad, vague

28  and ambiguous and seeks the documents and communications of third parties or

ERVIN COHEN & JESSUP LLP

1  documents and communications which are not in LeEco's possession, custody or

2  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

3  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

4  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

5  the case is limited to a breach of the Framework Agreement, the dispute is limited to

6  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

7  another $10 million in escrow that is disputed.  The remaining dispute concerns the

8  Parties' obligations to each other in the context of the proposed China JV.

9  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

10  been served with the Summons and FAC, and LeTechnology, Inc. is not a party to

11  this action.

12  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

13  LeLe restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.  LeLe further objects to this Request on the

15  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

16  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

17  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

18  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

19  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

20  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

21  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

22  never properly served in this action.  In addition to being premature, the Requests

23  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

24  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

25  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

26  seeks the documents and communications of third parties or documents and

27  communications which are not in LeLe's possession, custody or control.

28  Furthermore, Vizio's Requests are premature because they pertain to issues

ERVIN COHEN & JESSUP LLP

1   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

2   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

3   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

4   action for breach of the Merger Agreement including its various theories of fraud

5   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

6   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

7   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

8   Merger Agreement, including the negotiation or entry into the Merger Agreement,

9   any breach of the Merger Agreement, or the termination of the Merger Agreement

10  has any relevance, and discovery should be limited to whether there was a breach of

11  the Framework Agreement.  LeLe reserves all rights, including the right to amend

12  and supplement its Responses and Objections to Vizio's Requests, should it become

13  necessary and appropriate to do so.

14        LeLe further objects that this Request is compound and overbroad,

15  particularly in its request for "Any and All Documents or Communications that

16  Relate To efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their

17  Affiliates to implement, meet the conditions for, or complete the Merger with

18  Vizio."

19        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

20  ambiguous and seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or

22  control.  Furthermore, this Request, which seeks discovery from individuals and

23  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

24  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

25  needs of the case.  Particularly if the case is limited to a breach of the Framework

26  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

27  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

28  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

ERVIN COHEN & JESSUP LLP

1   context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

2   Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

3   LeTechnology, Inc. is not a party to this action.

4        LeLe further objects that this Request appears to seek documents and

5   communications protected by the attorney-client privilege and work product

6   doctrine.  LeLe objects to producing any privileged communications.  LeLe further

7   objects to producing any such documents created after this lawsuit was filed that

8   merely "Relate To" the subject matter of the Request as those documents would

9   clearly be protected by the attorney client privilege and attorney work product

10  doctrine.  LeLe further objects to logging all privileged and work product

11  documents created after this lawsuit was filed as unduly burdensome and

12  disproportionate to the needs of the case.

13  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

14  **NO. 12 SHOULD BE COMPELLED:**

15       As Defendants' objections to this RFP are either in whole, or in substantial

16  part identical to the objections which they asserted to Plaintiff's RFP No. One,

17  Plaintiff hereby incorporates by reference all of its reasons why a further response to

18  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

19  though set forth fully in this place.

20       Wholly apart from these reasons, the notion that documents which relate to

21  efforts by Defendants to meet the terms of, or otherwise satisfy conditions with

22  respect to, the Merger are somehow irrelevant flies directly in the face of the

23  alternative Claim for Relief for Breach of the Merger Agreement, let alone

24  Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of*

25  *Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding

26  any unprivileged matter that is relevant to any party's claim or defense and

27  proportional to the needs of the case, considering the importance of the issues at

28  stake in the action, the amount in controversy, the parties' relative access to relevant

ERVIN COHEN & JESSUP LLP

1  information, the parties' resources, the importance of discovery in resolving the

2  issues and whether the burden or expense of the proposed discovery outweighs its

3  likely benefit.  Information…need not be admissible in evidence to be

4  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

5  search for facts, the names of witnesses, or any other matters which may aid a party

6  in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

7  Cal.)

8          The notion that these documents need not be produced because the Franchise

9  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

10  Framework Agreement specifically carved out and left intact the "remaining Buyer

11  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

12  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

13  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

14  settled law that if a defrauded party is induced by false representations to execute a

15  contract, the party has the option of rescinding the contract or affirming it and

16  recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

17  B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart*

18  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

19  defrauded party is induced by false representations to execute a contract, the party

20  has the option of rescinding the contract or affirming it and recovering damages for

21  the fraud.")  Third, where, as here, the release was not the sole object of the

22  Framework Agreement, there is no requirement that any consideration be restored to

23  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

24  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

25  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

26  rescission, such relief "shall not be denied because of a delay in restoring or

27  tendering restoration of such benefits before judgment unless such delay has been

28  substantially prejudicial to the other party, but [rather], the court may make a tender

ERVIN COHEN & JESSUP LLP

1 of restoration a condition of its judgment." *Cal. Civ. Code* §1693. *Accord Taylor v.*
2 *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that
3 Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao
4 and Cabrera….But Taylor's claim for rescission…is a claim about the
5 circumstances that brought about the Settlement Agreement and therefore the tender
6 need not be made prior to determining whether Taylor actually has a definite ground
7 to rescind."). Fifth, a successful claim for rescission based on fraud would operate
8 to restore the Merger Agreement in its terminated state notwithstanding Defendants'
9 claim that the Framework Agreement somehow substitutes for the Merger
10 Agreement in its entirety, with or without the express carve out of the $50MM
11 Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*
12 *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying
13 California law and holding that fraud claim for rescission would operate to restore
14 old agreement notwithstanding that a new agreement had been substituted for the
15 old agreement). Sixth, documents related to efforts by Defendants to meet the terms
16 of, or otherwise satisfy conditions with respect to, the Merger and the fraudulent
17 misrepresentations that gave rise to the Merger are germane to explaining the
18 circumstances which gave rise to the Framework Agreement and/or whether
19 Defendants likewise made fraudulent representations or otherwise acted in good
20 faith with respect to it, *i.e.,* are equally probative on issues of intent, knowledge,
21 good faith and absence of mistake as to the Framework Agreement and the dealings
22 between VIZIO and Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th
23 Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad
24 acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan
25 irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA
26 loans since "[t]he fact that Jenkins used fraudulent means to secure conventional
27 loans is probative on issues of intent, knowledge, good faith and absence of mistake
28 in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

ERVIN COHEN & JESSUP LLP

1   (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

2   returns admissible in subsequent complex tax fraud conspiracy trial since the former

3   "was used to explain how the…conspirators met each other and garnered customers,

4   while the latter constituted "prior acts" that were "probative of issues of intent,

5   knowledge, good faith and absence of mistake.")

6       In short, production should be ordered in full, without objection.

7   **REQUEST FOR PRODUCTION NO. 13:**

8       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

9   Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

10  agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

11  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

12      LeEco restates and incorporates by reference the Preliminary Statement and

13  General Objections set forth above.  LeEco further objects to this Request as

14  premature and improper because Vizio's second through sixth causes of action in

15  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

16  LeEco's Motion to Dismiss, then the information and documents sought by this

17  Request are not relevant, making the Request disproportionate to the needs of the

18  case.  LeEco contends that, at this stage, any discovery in this matter should be

19  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

20  Merger Agreement (including its various theories of fraud related to that alleged

21  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

22  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

23  Merger Agreement, including the negotiation or entry into the Merger Agreement,

24  any breach of the Merger Agreement, or the termination of the Merger Agreement

25  has any relevance.  LeEco reserves all rights, including the right to amend and

26  supplement its Response to this Request, should it become necessary and

27  appropriate to do so.

28      LeEco further objects that this Request is compound and overbroad,

ERVIN COHEN & JESSUP LLP

1  particularly in its request for "Any and All Documents or Communications that

2  Relate To the Merger Agreement...."

3      LeEco further objects that, as phrased, this Request appears to seek

4  documents that are equally available to Vizio.  LeEco objects to searching for and

5  producing documents equally available to Vizio.

6      LeEco further objects that this Request appears to seek documents and

7  communications protected by the attorney-client privilege and work product

8  doctrine.  LeEco objects to producing any privileged communications.  LeEco

9  further objects to producing any such documents created after this lawsuit was filed

10 that merely "Relate To" the Merger Agreement, as those documents would clearly

11 be protected by the attorney client privilege and attorney work product doctrine.

12 LeEco further objects to logging all privileged and work product documents created

13 after this lawsuit was filed as unduly burdensome and disproportionate to the needs

14 of the case.  LeEco further objects to producing any such documents created before

15 or during the negotiation and drafting of the Merger Agreement that are protected by

16 the attorney client privilege and attorney work product doctrine.

17 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

18     LeLe restates and incorporates by reference the Preliminary Statement and

19 General Objections set forth above.  LeLe further objects to this Request on the

20 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

21 of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

22 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

23 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

24 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

25 Vizio that give rise to this action nor is LeLe alleged to have made any statement to

26 Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

27 never properly served in this action.  In addition to being premature, the Requests

28 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

ERVIN COHEN & JESSUP LLP

1 are calculated merely to harass and are overbroad, irrelevant, and not proportional to
2 the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
3 seeks the documents and communications of third parties or documents and
4 communications which are not in LeLe's possession, custody or control.

5      Furthermore, Vizio's Requests are premature because they pertain to issues
6 that would be rendered irrelevant were the Court to grant LeEco's pending MTD
7 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
8 LeEco's pending MTD would eliminate Vizio's second through sixth causes of
9 action for breach of the Merger Agreement including its various theories of fraud
10 related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
11 the Framework Agreement upon receipt of $40 million ("Released Claims"), which
12 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
13 Merger Agreement, including the negotiation or entry into the Merger Agreement,
14 any breach of the Merger Agreement, or the termination of the Merger Agreement
15 has any relevance, and discovery should be limited to whether there was a breach of
16 the Framework Agreement.  LeLe reserves all rights, including the right to amend
17 and supplement its Responses and Objections to Vizio's Requests, should it become
18 necessary and appropriate to do so.

19      LeLe further objects that this Request is compound and overbroad,
20 particularly in its request for "Any and All Documents or Communications that
21 Relate To the Merger Agreement...."

22      LeLe further objects that, as phrased, this Request appears to seek documents
23 that are equally available to Vizio.  LeLe objects to searching for and producing
24 documents equally available to Vizio.

25      LeLe further objects that this Request appears to seek documents and
26 communications protected by the attorney-client privilege and work product
27 doctrine.  LeLe objects to producing any privileged communications.  LeLe further
28 objects to producing any such documents created after this lawsuit was filed that

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1 merely "Relate To" the subject matter of the Request as those documents would
2 clearly be protected by the attorney client privilege and attorney work product
3 doctrine.  LeLe further objects to logging all privileged and work product
4 documents created after this lawsuit was filed as unduly burdensome and
5 disproportionate to the needs of the case.

6 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
7 **NO. 13 SHOULD BE COMPELLED:**

8      As Defendants' objections to this RFP are either in whole, or in substantial
9 part identical to the objections which they asserted to Plaintiff's RFP No. One,
10 Plaintiff hereby incorporates by reference all of its reasons why a further response to
11 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
12 though set forth fully in this place.

13      Wholly apart from these reasons, the notion that documents which relate to
14 the Merger Agreement and Schedules thereto are somehow irrelevant flies directly
15 in the face of the alternative Claim for Relief for Breach of the Merger Agreement,
16 let alone Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal*
17 *Rules of Civil Procedure* specifically provides that "[P]arties may obtain discovery
18 regarding any unprivileged matter that is relevant to any party's claim or defense
19 and proportional to the needs of the case, considering the importance of the issues at
20 stake in the action, the amount in controversy, the parties' relative access to relevant
21 information, the parties' resources, the importance of discovery in resolving the
22 issues and whether the burden or expense of the proposed discovery outweighs its
23 likely benefit.  Information…need not be admissible in evidence to be
24 discoverable."  That is because "[t]he purpose of discovery is to allow a broad
25 search for facts, the names of witnesses, or any other matters which may aid a party
26 in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.
27 Cal.)

28      The notion that these documents need not be produced because the Franchise

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the
2  Framework Agreement specifically carved out and left intact the "remaining Buyer
3  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM
4  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,
5  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is
6  settled law that if a defrauded party is induced by false representations to execute a
7  contract, the party has the option of rescinding the contract or affirming it and
8  recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.
9  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart
10  Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a
11  defrauded party is induced by false representations to execute a contract, the party
12  has the option of rescinding the contract or affirming it and recovering damages for
13  the fraud.")  Third, where, as here, the release was not the sole object of the
14  Framework Agreement, there is no requirement that any consideration be restored to
15  permit the pursuit of damages for fraudulent inducement of a settlement agreement.
16  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-
17  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on
18  rescission, such relief "shall not be denied because of a delay in restoring or
19  tendering restoration of such benefits before judgment unless such delay has been
20  substantially prejudicial to the other party, but [rather], the court may make a tender
21  of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.
22  Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that
23  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao
24  and Cabrera….But Taylor's claim for rescission…is a claim about the
25  circumstances that brought about the Settlement Agreement and therefore the tender
26  need not be made prior to determining whether Taylor actually has a definite ground
27  to rescind.")  Fifth, a successful claim for rescission based on fraud would operate
28  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   claim that the Framework Agreement somehow substitutes for the Merger
2   Agreement in its entirety, with or without the express carve out of the $50MM
3   Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*
4   *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying
5   California law and holding that fraud claim for rescission would operate to restore
6   old agreement notwithstanding that a new agreement had been substituted for the
7   old agreement).  Sixth, documents related to the Merger Agreement and Schedules
8   thereto as well as the fraudulent misrepresentations that gave rise to them are
9   germane to explaining the circumstances which gave rise to the Framework
10  Agreement and/or whether Defendants likewise made fraudulent representations or
11  otherwise acted in good faith with respect to it, *i.e.,* are equally probative on issues
12  of intent, knowledge, good faith and absence of mistake as to the Framework
13  Agreement and the dealings between VIZIO and Defendants.  *U.S. v. Jenkins*, 785
14  F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889
15  (1986) (evidence of prior bad acts of defendants in obtaining conventional mobile
16  home loans (*i.e.,* loan irregularities) admissible in subsequent trial of fraudulent
17  scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent means to
18  secure conventional loans is probative on issues of intent, knowledge, good faith and
19  absence of mistake in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665
20  Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent scheme and past
21  failure to file tax returns admissible in subsequent complex tax fraud conspiracy trial
22  since the former "was used to explain how the…conspirators met each other and
23  garnered customers, while the latter constituted "prior acts" that were "probative of
24  issues of intent, knowledge, good faith and absence of mistake.")

25       In short, production should be ordered in full, without objection.

26  **REQUEST FOR PRODUCTION NO. 14:**

27       ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU
28  received from any PERSON, including AFFILIATES, third party businesses, and

ERVIN COHEN & JESSUP LLP

1  governmental entities, regarding the proposed MERGER.

2  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

3    LeEco restates and incorporates by reference the Preliminary Statement and

4  General Objections set forth above.  LeEco further objects to this Request as

5  premature and improper because Vizio's second through sixth causes of action in

6  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

7  LeEco's Motion to Dismiss, then the information and documents sought by this

8  Request are not relevant, making the Request disproportionate to the needs of the

9  case.  LeEco contends that, at this stage, any discovery in this matter should be

10  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

11  Merger Agreement (including its various theories of fraud related to that alleged

12  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

13  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

14  Merger Agreement, including the negotiation or entry into the Merger Agreement,

15  any breach of the Merger Agreement, or the termination of the Merger Agreement

16  has any relevance.  LeEco reserves all rights, including the right to amend and

17  supplement its Response to this Request, should it become necessary and

18  appropriate to do so.

19    LeEco further objects that this Request is compound and overbroad,

20  particularly in its request for "Any and All Documents or Communications ...

21  regarding ... the proposed Merger."

22    LeEco further objects that, as phrased, this Request appears to seek

23  documents that are equally available to Vizio.  LeEco objects to searching for and

24  producing documents equally available to Vizio.

25    LeEco further objects that the definition of "Affiliates" is overbroad, vague

26  and ambiguous and seeks the documents and communications of third parties or

27  documents and communications which are not in LeEco's possession, custody or

28  control.

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  LeEco further objects that this Request appears to seek documents and

2 communications protected by the attorney-client privilege and work product

3 doctrine.  LeEco objects to producing any privileged communications.  LeEco

4 further objects to producing any such documents created after this lawsuit was filed

5 that merely "Relate To" the Merger, as those documents would clearly be protected

6 by the attorney client privilege and attorney work product doctrine.  LeEco further

7 objects to logging all privileged and work product documents created after this

8 lawsuit was filed as unduly burdensome and disproportionate to the needs of the

9 case.

10 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

11  LeLe restates and incorporates by reference the Preliminary Statement and

12 General Objections set forth above.  LeLe further objects to this Request on the

13 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

14 of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

15 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

16 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

17 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

18 Vizio that give rise to this action nor is LeLe alleged to have made any statement to

19 Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

20 never properly served in this action.  In addition to being premature, the Requests

21 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

22 are calculated merely to harass and are overbroad, irrelevant, and not proportional to

23 the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

24 seeks the documents and communications of third parties or documents and

25 communications which are not in LeLe's possession, custody or control.

26  Furthermore, Vizio's Requests are premature because they pertain to issues

27 that would be rendered irrelevant were the Court to grant LeEco's pending MTD

28 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

ERVIN COHEN & JESSUP LLP

1  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

2  action for breach of the Merger Agreement including its various theories of fraud

3  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

4  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

5  Vizio acknowledges receiving.

6       Thus, nothing about the negotiations regarding the Merger Agreement,

7  including the negotiation or entry into the Merger Agreement, any breach of the

8  Merger Agreement, or the termination of the Merger Agreement has any relevance,

9  and discovery should be limited to whether there was a breach of the Framework

10  Agreement.  LeLe reserves all rights, including the right to amend and supplement

11  its Responses and Objections to Vizio's Requests, should it become necessary and

12  appropriate to do so.

13       LeLe further objects that this Request is compound and overbroad,

14  particularly in its request for "Any and All Documents or Communications ...

15  regarding ... the proposed Merger."

16       LeLe further objects that, as phrased, this Request appears to seek documents

17  that are equally available to Vizio.  LeLe objects to searching for and producing

18  documents equally available to Vizio.

19       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

20  ambiguous and seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or

22  control.

23       LeLe further objects that this Request appears to seek documents and

24  communications protected by the attorney-client privilege and work product

25  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

26  objects to producing any such documents created after this lawsuit was filed that

27  merely "Relate To" the subject matter of the Request as those documents would

28  clearly be protected by the attorney client privilege and attorney work product

ERVIN COHEN & JESSUP LLP

1  doctrine.  LeLe further objects to logging all privileged and work product

2  documents created after this lawsuit was filed as unduly burdensome and

3  disproportionate to the needs of the case.

4  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

5  **NO. 14 SHOULD BE COMPELLED:**

6  As Defendants' objections to this RFP are either in whole, or in substantial

7  part identical to the objections which they asserted to Plaintiff's RFP No. One,

8  Plaintiff hereby incorporates by reference all of its reasons why a further response to

9  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

10  though set forth fully in this place.

11  Wholly apart from these reasons, the notion that documents which relate to

12  communications received by Defendants concerning the Merger are somehow

13  irrelevant flies directly in the face of the alternative Claim for Relief for Breach of

14  the Merger Agreement, let alone Rescission of the Framework Agreement.  Rule

15  26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties

16  may obtain discovery regarding any unprivileged matter that is relevant to any

17  party's claim or defense and proportional to the needs of the case, considering the

18  importance of the issues at stake in the action, the amount in controversy, the

19  parties' relative access to relevant information, the parties' resources, the

20  importance of discovery in resolving the issues and whether the burden or expense

21  of the proposed discovery outweighs its likely benefit.  Information…need not be

22  admissible in evidence to be discoverable."  That is because "[t]he purpose of

23  discovery is to allow a broad search for facts, the names of witnesses, or any other

24  matters which may aid a party in the preparation of his case." *Anderson v. Hansen*,

25  2013 WL 428737*4 (E.D. Cal.)

26  The notion that these documents need not be produced because the Franchise

27  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

28  Framework Agreement specifically carved out and left intact the "remaining Buyer

ERVIN COHEN & JESSUP LLP

1   Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

2   sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

3   Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

4   settled law that if a defrauded party is induced by false representations to execute a

5   contract, the party has the option of rescinding the contract or affirming it and

6   recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

7   B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart*

8   *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

9   defrauded party is induced by false representations to execute a contract, the party

10   has the option of rescinding the contract or affirming it and recovering damages for

11   the fraud.")  Third, where, as here, the release was not the sole object of the

12   Framework Agreement, there is no requirement that any consideration be restored to

13   permit the pursuit of damages for fraudulent inducement of a settlement agreement.

14   *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

15   15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

16   rescission, such relief "shall not be denied because of a delay in restoring or

17   tendering restoration of such benefits before judgment unless such delay has been

18   substantially prejudicial to the other party, but [rather], the court may make a tender

19   of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

20   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

21   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

22   and Cabrera….But Taylor's claim for rescission…is a claim about the

23   circumstances that brought about the Settlement Agreement and therefore the tender

24   need not be made prior to determining whether Taylor actually has a definite ground

25   to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

26   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

27   claim that the Framework Agreement somehow substitutes for the Merger

28   Agreement in its entirety, with or without the express carve out of the $50MM

ERVIN COHEN & JESSUP LLP

1 │ Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*
2 │ *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying
3 │ California law and holding that fraud claim for rescission would operate to restore
4 │ old agreement notwithstanding that a new agreement had been substituted for the
5 │ old agreement). Sixth, documents related to communications received by
6 │ Defendants concerning the Merger (*e.g.,* communications from lenders or
7 │ governmental entities demonstrating lack of financial wherewithal, etc.) as well as
8 │ the fraudulent misrepresentations that gave rise to the Merger are germane to
9 │ explaining the circumstances which gave rise to the Framework Agreement and/or
10 │ whether Defendants likewise made fraudulent representations or otherwise acted in
11 │ good faith with respect to it, *i.e.,* are equally probative on issues of intent,
12 │ knowledge, good faith and absence of mistake as to the Framework Agreement and
13 │ the dealings between VIZIO and Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-
14 │ 1396 (9th Cir. 1986), *cert. den'd, White v. U.S.*, 479 U.S. 889 (1986) (evidence of
15 │ prior bad acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan
16 │ irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA
17 │ loans since "[t]he fact that Jenkins used fraudulent means to secure conventional
18 │ loans is probative on issues of intent, knowledge, good faith and absence of mistake
19 │ in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610
20 │ (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax
21 │ returns admissible in subsequent complex tax fraud conspiracy trial since the former
22 │ "was used to explain how the…conspirators met each other and garnered customers,
23 │ while the latter constituted "prior acts" that were "probative of issues of intent,
24 │ knowledge, good faith and absence of mistake.")

25 │ In short, production should be ordered in full, without objection.

26 │ **REQUEST FOR PRODUCTION NO. 15:**

27 │ ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO,
28 │ GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental

*(left margin, vertical)* ERVIN COHEN & JESSUP LLP

1 Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—

2 whether located in the United States, CHINA, Taiwan, or otherwise—that

3 RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S.

4 Federal Trade Commission, the U.S. Department of Justice, the Committee on

5 Foreign Investment in the United States, the CHINA Ministry of Commerce, the

6 China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National

7 Development Reform Commission ("NRDC"), Chaoyang District Commission of

8 Commerce, and the Beijing Commission of Commerce.

9 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

10 LeEco restates and incorporates by reference the Preliminary Statement and

11 General Objections set forth above.  LeEco further objects to this Request as

12 premature and improper because Vizio's second through sixth causes of action in

13 FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

14 LeEco's Motion to Dismiss, then the information and documents sought by this

15 Request are not relevant, making the Request disproportionate to the needs of the

16 case.  LeEco contends that, at this stage, any discovery in this matter should be

17 limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

18 Merger Agreement (including its various theories of fraud related to that alleged

19 breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

20 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

21 Merger Agreement, including the negotiation or entry into the Merger Agreement,

22 any breach of the Merger Agreement, or the termination of the Merger Agreement

23 has any relevance.  LeEco reserves all rights, including the right to amend and

24 supplement its Response to this Request, should it become necessary and

25 appropriate to do so.

26 LeEco further objects that this Request is compound and overbroad,

27 particularly in its request for "Any and All Documents or Communications sent by

28 LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to any "Governmental

ERVIN COHEN & JESSUP LLP

1  Entity," ... whether located in the United States, China, Taiwan, or otherwise—that
2  Relates To the Merger Agreement Or Merger...." Furthermore, any information
3  related to the U.S. approval is irrelevant because it is undisputed that the U.S.
4  approval was obtained.

5       LeEco further objects that this Request appears to seek documents and
6  communications protected by the attorney-client privilege and work product
7  doctrine.  LeEco objects to producing any privileged communications.  LeEco
8  further objects to producing any such documents created after this lawsuit was filed
9  that merely "Relate To" the Merger or Merger Agreement, as those documents
10  would clearly be protected by the attorney client privilege and attorney work
11  product doctrine.  LeEco further objects to logging all privileged and work product
12  documents created after this lawsuit was filed as unduly burdensome and
13  disproportionate to the needs of the case.

14       LeEco further objects that the definition of "Affiliates" is overbroad, vague
15  and ambiguous and seeks the documents and communications of third parties or
16  documents and communications which are not in LeEco's possession, custody or
17  control.  Furthermore, this Request, which seeks discovery from Unrelated Third
18  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
19  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if
20  the case is limited to a breach of the Framework Agreement, the dispute is limited to
21  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
22  another $10 million in escrow that is disputed.  The remaining dispute concerns the
23  Parties' obligations to each other in the context of the proposed China JV.
24  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
25  been served with the Summons and FAC, and LeTechnology, Inc. is not a party to
26  this action.

27  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

28       LeLe restates and incorporates by reference the Preliminary Statement and

ERVIN COHEN & JESSUP LLP

1   General Objections set forth above.  LeLe further objects to this Request on the
2   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
3   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
4   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
5   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
6   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
7   Vizio that give rise to this action nor is LeLe alleged to have made any statement to
8   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
9   never properly served in this action.  In addition to being premature, the Requests
10  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
11  are calculated merely to harass and are overbroad, irrelevant, and not proportional to
12  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
13  seeks the documents and communications of third parties or documents and
14  communications which are not in LeLe's possession, custody or control.

15          Furthermore, Vizio's Requests are premature because they pertain to issues
16  that would be rendered irrelevant were the Court to grant LeEco's pending MTD
17  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
18  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
19  action for breach of the Merger Agreement including its various theories of fraud
20  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
21  the Framework Agreement upon receipt of $40 million ("Released Claims"), which
22  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
23  Merger Agreement, including the negotiation or entry into the Merger Agreement,
24  any breach of the Merger Agreement, or the termination of the Merger Agreement
25  has any relevance, and discovery should be limited to whether there was a breach of
26  the Framework Agreement.  LeLe reserves all rights, including the right to amend
27  and supplement its Responses and Objections to Vizio's Requests, should it become
28  necessary and appropriate to do so.

ERVIN COHEN & JESSUP LLP

1    LeLe further objects that this Request is compound and overbroad,

2  particularly in its request for "Any and All Documents or Communications sent by

3  LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to any "Governmental

4  Entity," ... whether located in the United States, China, Taiwan, or otherwise—that

5  Relates To the Merger Agreement Or Merger...." Furthermore, any information

6  related to the U.S. approval is irrelevant because it is undisputed that the U.S.

7  approval was obtained.

8    LeLe further objects that the definition of "Affiliates" is overbroad, vague and

9  ambiguous and seeks the documents and communications of third parties or

10  documents and communications which are not in LeLe's possession, custody or

11  control.

12    Furthermore, this Request, which seeks discovery from individuals and

13  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

14  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

15  needs of the case.  Particularly if the case is limited to a breach of the Framework

16  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

17  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

18  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

19  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

20  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

21  LeTechnology, Inc. is not a party to this action.

22    LeLe further objects that this Request appears to seek documents and

23  communications protected by the attorney-client privilege and work product

24  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

25  objects to producing any such documents created after this lawsuit was filed that

26  merely "Relate To" the subject matter of the Request as those documents would

27  clearly be protected by the attorney client privilege and attorney work product

28  doctrine.  LeLe further objects to logging all privileged and work product

ERVIN COHEN & JESSUP LLP

1  documents created after this lawsuit was filed as unduly burdensome and

2  disproportionate to the needs of the case.

3  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

4  **NO. 15 SHOULD BE COMPELLED:**

5       As Defendants' objections to this RFP are either in whole, or in substantial

6  part identical to the objections which they asserted to Plaintiff's RFP No. One,

7  Plaintiff hereby incorporates by reference all of its reasons why a further response to

8  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

9  though set forth fully in this place.

10       Wholly apart from these reasons, the notion that documents which relate to

11  Defendants' communications to governmental agencies with respect to the Merger

12  are somehow irrelevant flies directly in the face of the alternative Claim for Relief

13  for Breach of the Merger Agreement, let alone Rescission of the Framework

14  Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically

15  provides that "[P]arties may obtain discovery regarding any unprivileged matter that

16  is relevant to any party's claim or defense and proportional to the needs of the case,

17  considering the importance of the issues at stake in the action, the amount in

18  controversy, the parties' relative access to relevant information, the parties'

19  resources, the importance of discovery in resolving the issues and whether the

20  burden or expense of the proposed discovery outweighs its likely benefit.

21  Information…need not be admissible in evidence to be discoverable."  That is

22  because "[t]he purpose of discovery is to allow a broad search for facts, the names

23  of witnesses, or any other matters which may aid a party in the preparation of his

24  case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

25       The notion that these documents need not be produced because the Franchise

26  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

27  Framework Agreement specifically carved out and left intact the "remaining Buyer

28  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

ERVIN COHEN & JESSUP LLP

111

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1   sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

2   Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

3   settled law that if a defrauded party is induced by false representations to execute a

4   contract, the party has the option of rescinding the contract or affirming it and

5   recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

6   B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart*

7   *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

8   defrauded party is induced by false representations to execute a contract, the party

9   has the option of rescinding the contract or affirming it and recovering damages for

10  the fraud.")  Third, where, as here, the release was not the sole object of the

11  Framework Agreement, there is no requirement that any consideration be restored to

12  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

13  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

14  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

15  rescission, such relief "shall not be denied because of a delay in restoring or

16  tendering restoration of such benefits before judgment unless such delay has been

17  substantially prejudicial to the other party, but [rather], the court may make a tender

18  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

19  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

20  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

21  and Cabrera….But Taylor's claim for rescission…is a claim about the

22  circumstances that brought about the Settlement Agreement and therefore the tender

23  need not be made prior to determining whether Taylor actually has a definite ground

24  to rescind.")  Fifth, a successful claim for rescission based on fraud would operate

25  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

26  claim that the Framework Agreement somehow substitutes for the Merger

27  Agreement in its entirety, with or without the express carve out of the $50MM

28  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

ERVIN COHEN & JESSUP LLP

1  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

2  California law and holding that fraud claim for rescission would operate to restore

3  old agreement notwithstanding that a new agreement had been substituted for the

4  old agreement).  Sixth, documents related to Defendants' communications to

5  governmental agencies with respect to the Merger (*e.g.,* obtaining requisite

6  governmental approvals, reasons for denial, etc.) and the fraudulent

7  misrepresentations that gave rise to it are germane to explaining the circumstances

8  which gave rise to the Framework Agreement and/or whether Defendants likewise

9  made fraudulent representations or otherwise acted in good faith with respect to it,

10 *i.e.,* are equally probative on issues of intent, knowledge, good faith and absence of

11 mistake as to the Framework Agreement and the dealings between VIZIO and

12 Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd,*

13 *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad acts of defendants in

14 obtaining conventional mobile home loans (*i.e.,* loan irregularities) admissible in

15 subsequent trial of fraudulent scheme to obtain FHA loans since "[t]he fact that

16 Jenkins used fraudulent means to secure conventional loans is probative on issues of

17 intent, knowledge, good faith and absence of mistake in dealing with FHA

18 transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior

19 fraudulent land patent scheme and past failure to file tax returns admissible in

20 subsequent complex tax fraud conspiracy trial since the former "was used to explain

21 how the…conspirators met each other and garnered customers, while the latter

22 constituted "prior acts" that were "probative of issues of intent, knowledge, good

23 faith and absence of mistake.")

24       In short, production should be ordered in full, without objection.

25 **REQUEST FOR PRODUCTION NO. 16:**

26       ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent,

27 issued, made or published by any "Governmental Entity," as that term is defined in

28 Section 10.2 of the MERGER AGREEMENT—in the United States, CHINA,

ERVIN COHEN & JESSUP LLP

1 Taiwan, or otherwise—RELATING TO the MERGER AGREEMENT OR

2 MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department

3 of Justice, the Committee on Foreign Investment in the United States, the CHINA

4 Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai

5 Free Trade Zone, National Development Reform Commission ("NRDC"),

6 Chaoyang District Commission of Commerce, and the Beijing Commission of

7 Commerce.

8 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

9 LeEco restates and incorporates by reference the Preliminary Statement and

10 General Objections set forth above. LeEco further objects to this Request as

11 premature and improper because Vizio's second through sixth causes of action in

12 the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants

13 LeEco's Motion to Dismiss, then the information and documents sought by this

14 Request are not relevant, making the Request disproportionate to the needs of the

15 case. LeEco contends that, at this stage, any discovery in this matter should be

16 limited in scope. Specifically, Vizio gave a release of all claims for breach of the

17 Merger Agreement (including its various theories of fraud related to that alleged

18 breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

19 Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the

20 Merger Agreement, including the negotiation or entry into the Merger Agreement,

21 any breach of the Merger Agreement, or the termination of the Merger Agreement

22 has any relevance. LeEco reserves all rights, including the right to amend and

23 supplement its Response to this Request, should it become necessary and

24 appropriate to do so.

25 LeEco further objects that this Request is compound and overbroad,

26 particularly in its request for "Any and All Documents or Communications drafted,

27 sent, issued, made or published by any "Governmental Entity," ... in the United

28 States, China, Taiwan, or otherwise—Relating To Merger Agreement Or Merger...."

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  Furthermore, any information related to the U.S. approval is irrelevant because it is

2  undisputed that the U.S. approval was obtained.

3      LeEco further objects that, as phrased, this Request appears to seek

4  documents that are equally available to Vizio.  LeEco objects to searching for and

5  producing documents equally available to Vizio.

6      LeEco further objects that this Request seeks the documents and

7  communications of third parties or documents and communications which are not in

8  LeEco's possession, custody or control.

9      LeEco further objects that this Request appears to seek documents and

10  communications protected by the attorney-client privilege and work product

11  doctrine.  LeEco objects to producing any privileged communications.  LeEco

12  further objects to producing any such documents created after this lawsuit was filed

13  that merely "Relate To" the Merger or Merger Agreement as those documents

14  would clearly be protected by the attorney client privilege and attorney work

15  product doctrine.  LeEco further objects to logging all privileged and work product

16  documents created after this lawsuit was filed as unduly burdensome and

17  disproportionate to the needs of the case.  LeEco further objects to producing any

18  such documents created before or during the negotiation and drafting of the Merger

19  Agreement that are protected by the attorney client privilege and attorney work

20  product doctrine.

21  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

22      LeLe restates and incorporates by reference the Preliminary Statement and

23  General Objections set forth above.  LeLe further objects to this Request on the

24  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

25  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

26  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

27  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

28  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

ERVIN COHEN & JESSUP LLP

1  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

2  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

3  never properly served in this action.  In addition to being premature, the Requests

4  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

5  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

6  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

7  seeks the documents and communications of third parties or documents and

8  communications which are not in LeLe's possession, custody or control.

9        Furthermore, Vizio's Requests are premature because they pertain to issues

10  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

11  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

12  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

13  action for breach of the Merger Agreement including its various theories of fraud

14  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

15  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

16  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

17  Merger Agreement, including the negotiation or entry into the Merger Agreement,

18  any breach of the Merger Agreement, or the termination of the Merger Agreement

19  has any relevance, and discovery should be limited to whether there was a breach of

20  the Framework Agreement.  LeLe reserves all rights, including the right to amend

21  and supplement its Responses and Objections to Vizio's Requests, should it become

22  necessary and appropriate to do so.

23        LeLe further objects that this Request is compound and overbroad,

24  particularly in its request for "Any and All Documents or Communications drafted,

25  sent, issued, made or published by any "Governmental Entity," ... in the United

26  States, China, Taiwan, or otherwise—Relating To Merger Agreement Or Merger...."

27  Furthermore, any information related to the U.S. approval is irrelevant because it is

28  undisputed that the U.S. approval was obtained.

14676.8:9283165.1                                              116                                  8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 16 SHOULD BE COMPELLED:

As Defendants' objections to this RFP are either in whole, or in substantial part identical to the objections which they asserted to Plaintiff's RFP No. One, Plaintiff hereby incorporates by reference all of its reasons why a further response to RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as though set forth fully in this place.

Wholly apart from these reasons, the notion that documents which relate to communications or demands issued by governmental entities with respect to the Merger are somehow irrelevant flies directly in the face of the alternative Claim for Relief for Breach of the Merger Agreement, let alone Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding any unprivileged matter that

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   is relevant to any party's claim or defense and proportional to the needs of the case,

2   considering the importance of the issues at stake in the action, the amount in

3   controversy, the parties' relative access to relevant information, the parties'

4   resources, the importance of discovery in resolving the issues and whether the

5   burden or expense of the proposed discovery outweighs its likely benefit.

6   Information…need not be admissible in evidence to be discoverable." That is

7   because "[t]he purpose of discovery is to allow a broad search for facts, the names

8   of witnesses, or any other matters which may aid a party in the preparation of his

9   case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

10          The notion that these documents need not be produced because the Franchise

11  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

12  Framework Agreement specifically carved out and left intact the "remaining Buyer

13  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

14  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

15  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

16  settled law that if a defrauded party is induced by false representations to execute a

17  contract, the party has the option of rescinding the contract or affirming it and

18  recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

19  B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart

20  Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

21  defrauded party is induced by false representations to execute a contract, the party

22  has the option of rescinding the contract or affirming it and recovering damages for

23  the fraud.")  Third, where, as here, the release was not the sole object of the

24  Framework Agreement, there is no requirement that any consideration be restored to

25  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

26  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

27  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

28  rescission, such relief "shall not be denied because of a delay in restoring or

1  tendering restoration of such benefits before judgment unless such delay has been

2  substantially prejudicial to the other party, but [rather], the court may make a tender

3  of restoration a condition of its judgment." *Cal. Civ. Code* §1693. *Accord Taylor v.*

4  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The...Defendants argue that

5  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

6  and Cabrera....But Taylor's claim for rescission...is a claim about the

7  circumstances that brought about the Settlement Agreement and therefore the tender

8  need not be made prior to determining whether Taylor actually has a definite ground

9  to rescind."). Fifth, a successful claim for rescission based on fraud would operate

10 to restore the Merger Agreement in its terminated state notwithstanding Defendants'

11 claim that the Framework Agreement somehow substitutes for the Merger

12 Agreement in its entirety, with or without the express carve out of the $50MM

13 Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

14 *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

15 California law and holding that fraud claim for rescission would operate to restore

16 old agreement notwithstanding that a new agreement had been substituted for the

17 old agreement). Sixth, documents related to communications or demands issued by

18 governmental entities with respect to the Merger (*e.g.,* Chinese government

19 disapproval due to lack of Defendants' financial wherewithal, etc.) and the

20 fraudulent misrepresentations that gave rise to it are germane to explaining the

21 circumstances which gave rise to the Framework Agreement and/or whether

22 Defendants likewise made fraudulent representations or otherwise acted in good

23 faith with respect to it, *i.e.,* are equally probative on issues of intent, knowledge,

24 good faith and absence of mistake as to the Framework Agreement and the dealings

25 between VIZIO and Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

26 Cir. 1986), *cert. den'd, White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad

27 acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan

28 irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

ERVIN COHEN & JESSUP LLP

1  loans since "[t]he fact that Jenkins used fraudulent means to secure conventional
2  loans is probative on issues of intent, knowledge, good faith and absence of mistake
3  in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610
4  (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax
5  returns admissible in subsequent complex tax fraud conspiracy trial since the former
6  "was used to explain how the…conspirators met each other and garnered customers,
7  while the latter constituted "prior acts" that were "probative of issues of intent,
8  knowledge, good faith and absence of mistake.")

9      In short, production should be ordered in full, without objection.

10  **REQUEST FOR PRODUCTION NO. 17:**

11      ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made
12  or published by any governmental entity in CHINA RELATING TO the standards
13  of review to be applied to proposed investments that originate in CHINA and are
14  directed to another country, INCLUDING any and all press releases issued on or
15  about December 6, 2016 regarding new standards of review to be applied to such
16  investments.

17  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

18      LeEco restates and incorporates by reference the Preliminary Statement and
19  General Objections set forth above.  LeEco further objects to this Request as
20  premature and improper because Vizio's second through sixth causes of action in
21  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants
22  LeEco's Motion to Dismiss, then the information and documents sought by this
23  Request are not relevant, making the Request disproportionate to the needs of the
24  case.  LeEco contends that, at this stage, any discovery in this matter should be
25  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the
26  Merger Agreement (including its various theories of fraud related to that alleged
27  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which
28  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

ERVIN COHEN & JESSUP LLP

1  Merger Agreement, including the negotiation or entry into the Merger Agreement,
2  any breach of the Merger Agreement, or the termination of the Merger Agreement
3  has any relevance.  LeEco reserves all rights, including the right to amend and
4  supplement its Response to this Request, should it become necessary and
5  appropriate to do so.

6  LeEco further objects that this Request is compound and overbroad,
7  particularly in its request for "Any and All Documents or Communications sent,
8  issued, made or published by any governmental entity in China Relating To the
9  standards of review...."

10  LeEco further objects that, as phrased, this Request appears to seek
11  documents that are equally available to Vizio.  LeEco objects to searching for and
12  producing documents equally available to Vizio.

13  LeEco further objects that this Request seeks the documents and
14  communications of third parties or documents and communications which are not in
15  LeEco's possession, custody or control.  Defendant objects to producing any such
16  documents created after this lawsuit was filed that merely "Relate To" the subject
17  matter of the Request as those documents would clearly be protected by the attorney
18  client privilege and attorney work product doctrine.

19  LeEco further objects to the extent that this Request seeks documents and
20  communications protected by the attorney-client privilege and work product
21  doctrine.  LeEco objects to producing any privileged communications.

22  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

23  LeLe restates and incorporates by reference the Preliminary Statement and
24  General Objections set forth above.  LeLe further objects to this Request on the
25  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
26  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
27  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
28  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

ERVIN COHEN & JESSUP LLP

1  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

2  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

3  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

4  never properly served in this action.  In addition to being premature, the Requests

5  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

6  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

7  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

8  seeks the documents and communications of third parties or documents and

9  communications which are not in LeLe's possession, custody or control.

10       Furthermore, Vizio's Requests are premature because they pertain to issues

11  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

12  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

13  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

14  action for breach of the Merger Agreement including its various theories of fraud

15  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

16  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

17  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

18  Merger Agreement, including the negotiation or entry into the Merger Agreement,

19  any breach of the Merger Agreement, or the termination of the Merger Agreement

20  has any relevance, and discovery should be limited to whether there was a breach of

21  the Framework Agreement.  LeLe reserves all rights, including the right to amend

22  and supplement its Responses and Objections to Vizio's Requests, should it become

23  necessary and appropriate to do so.

24       LeLe further objects that this Request is compound and overbroad,

25  particularly in its request for "Any and All Documents or Communications sent,

26  issued, made or published by any governmental entity in China Relating To the

27  standards of review...."

28       LeLe further objects that, as phrased, this Request appears to seek documents

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1 that are equally available to Vizio.  LeLe objects to searching for and producing

2 documents equally available to Vizio.

3      LeLe further objects that the Request seeks the documents and

4 communications of third parties or documents and communications which are not in

5 LeLe's possession, custody or control.

6      LeLe further objects that this Request appears to seek documents and

7 communications protected by the attorney-client privilege and work product

8 doctrine.  LeLe objects to producing any privileged communications.  LeLe further

9 objects to producing any such documents created after this lawsuit was filed that

10 merely "Relate To" the subject matter of the Request as those documents would

11 clearly be protected by the attorney client privilege and attorney work product

12 doctrine.  LeLe further objects to logging all privileged and work product

13 documents created after this lawsuit was filed as unduly burdensome and

14 disproportionate to the needs of the case.

15 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

16 **NO. 17 SHOULD BE COMPELLED:**

17      As Defendants' objections to this RFP are either in whole, or in substantial

18 part identical to the objections which they asserted to Plaintiff's RFP No. One,

19 Plaintiff hereby incorporates by reference all of its reasons why a further response to

20 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

21 though set forth fully in this place.

22      Wholly apart from these reasons, the notion that documents which relate to

23 standards of review by Chinese governmental agencies with respect to investments

24 abroad such as the Merger are somehow irrelevant flies directly in the face of the

25 alternative Claim for Relief for Breach of the Merger Agreement, let alone

26 Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of*

27 *Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding

28 any unprivileged matter that is relevant to any party's claim or defense and

1  proportional to the needs of the case, considering the importance of the issues at
2  stake in the action, the amount in controversy, the parties' relative access to relevant
3  information, the parties' resources, the importance of discovery in resolving the
4  issues and whether the burden or expense of the proposed discovery outweighs its
5  likely benefit. Information…need not be admissible in evidence to be
6  discoverable." That is because "[t]he purpose of discovery is to allow a broad
7  search for facts, the names of witnesses, or any other matters which may aid a party
8  in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.
9  Cal.)

10      The notion that these documents need not be produced because the Franchise
11  Agreement terminated the Merger Agreement is absurd. First, Section 1.1 of the
12  Framework Agreement specifically carved out and left intact the "remaining Buyer
13  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM
14  sum remaining in escrow. (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,
15  Wong Dec., Ex. 2 [Framework Agreement]). Second, "under California law, [i]t is
16  settled law that if a defrauded party is induced by false representations to execute a
17  contract, the party has the option of rescinding the contract or affirming it and
18  recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.
19  B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart
20  Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a
21  defrauded party is induced by false representations to execute a contract, the party
22  has the option of rescinding the contract or affirming it and recovering damages for
23  the fraud.") Third, where, as here, the release was not the sole object of the
24  Framework Agreement, there is no requirement that any consideration be restored to
25  permit the pursuit of damages for fraudulent inducement of a settlement agreement.
26  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-
27  15 (C.D. Cal.). Fourth, even where a party that is so defrauded seeks relief based on
28  rescission, such relief "shall not be denied because of a delay in restoring or

ERVIN COHEN & JESSUP LLP

1  tendering restoration of such benefits before judgment unless such delay has been

2  substantially prejudicial to the other party, but [rather], the court may make a tender

3  of restoration a condition of its judgment." *Cal. Civ. Code* §1693. *Accord Taylor v.*

4  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

5  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

6  and Cabrera….But Taylor's claim for rescission…is a claim about the

7  circumstances that brought about the Settlement Agreement and therefore the tender

8  need not be made prior to determining whether Taylor actually has a definite ground

9  to rescind."). Fifth, a successful claim for rescission based on fraud would operate

10  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

11  claim that the Framework Agreement somehow substitutes for the Merger

12  Agreement in its entirety, with or without the express carve out of the $50MM

13  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

14  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

15  California law and holding that fraud claim for rescission would operate to restore

16  old agreement notwithstanding that a new agreement had been substituted for the

17  old agreement). Sixth, documents related to standards of review by Chinese

18  governmental agencies with respect to investments made abroad such as the Merger

19  (*e.g.,* reasons why the Chinese government may or may not have approved same)

20  and the fraudulent misrepresentations that gave rise to it are germane to explaining

21  the circumstances which gave rise to the Framework Agreement and/or whether

22  Defendants likewise made fraudulent representations or otherwise acted in good

23  faith with respect to it, *i.e.,* are equally probative on issues of intent, knowledge,

24  good faith and absence of mistake as to the Framework Agreement and the dealings

25  between VIZIO and Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

26  Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad

27  acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan

28  irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

ERVIN COHEN & JESSUP LLP

1   loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

2   loans is probative on issues of intent, knowledge, good faith and absence of mistake

3   in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

4   (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

5   returns admissible in subsequent complex tax fraud conspiracy trial since the former

6   "was used to explain how the…conspirators met each other and garnered customers,

7   while the latter constituted "prior acts" that were "probative of issues of intent,

8   knowledge, good faith and absence of mistake.")

9       In short, production should be ordered in full, without objection.

10  **REQUEST FOR PRODUCTION NO. 18:**

11      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

12  the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed

13  to complete the proposed MERGER with VIZIO.

14  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

15      LeEco restates and incorporates by reference the Preliminary Statement and

16  General Objections set forth above.  LeEco further objects to this Request as

17  premature and improper because Vizio's second through sixth causes of action in

18  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

19  LeEco's Motion to Dismiss, then the information and documents sought by this

20  Request are not relevant, making the Request disproportionate to the needs of the

21  case.  LeEco contends that, at this stage, any discovery in this matter should be

22  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

23  Merger Agreement (including its various theories of fraud related to that alleged

24  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

25  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

26  Merger Agreement, including the negotiation or entry into the Merger Agreement,

27  any breach of the Merger Agreement, or the termination of the Merger Agreement

28  has any relevance.  LeEco reserves all rights, including the right to amend and

ERVIN COHEN & JESSUP LLP

1 | supplement its Response to this Request, should it become necessary and
2 | appropriate to do so.

3 |     LeEco further objects that this Request is compound and overbroad,
4 | particularly in its request for "Any and All Documents or Communications Relating
5 | To the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing
6 | needed to complete the proposed Merger with Vizio." LeEco further objects that the
7 | phrase "obtain the financing needed" is vague and ambiguous and, as phrased, calls
8 | for speculation.

9 |     LeEco further objects that this Request appears to seek documents and
10 | communications protected by the attorney-client privilege and work product
11 | doctrine.  LeEco objects to producing any privileged communications.  LeEco
12 | further objects to producing any such documents created after this lawsuit was filed
13 | that merely "Relate To" the Merger or Vizio, as those documents would clearly be
14 | protected by the attorney client privilege and attorney work product doctrine.
15 | LeEco further objects to logging all privileged and work product documents created
16 | after this lawsuit was filed as unduly burdensome and disproportionate to the needs
17 | of the case.

18 |     LeEco further objects that the Request seeks the documents and
19 | communications of third parties or documents and communications which are not in
20 | LeEco's possession, custody or control.  Furthermore, this Request, which seeks
21 | discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears
22 | calculated merely to harass and is overbroad, irrelevant, and not proportional to the
23 | needs of the case.  Particularly if the case is limited to a breach of the Framework
24 | Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
25 | payment to Vizio of $40 million and another $10 million in escrow that is disputed.
26 | The remaining dispute concerns the Parties' obligations to each other in the context
27 | of the proposed China JV.
28 | Moreover, LeEco Global Group Ltd., has not been served with the Summons and

ERVIN COHEN & JESSUP LLP

1  FAC, and Merger Sub is not a party to this action.

2  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

3     LeLe restates and incorporates by reference the Preliminary Statement and

4  General Objections set forth above.  LeLe further objects to this Request on the

5  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

6  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

7  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

8  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

9  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

10  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

11  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

12  never properly served in this action.  In addition to being premature, the Requests

13  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

14  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

15  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

16  seeks the documents and communications of third parties or documents and

17  communications which are not in LeLe's possession, custody or control.

18     Furthermore, Vizio's Requests are premature because they pertain to issues

19  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

20  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

21  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

22  action for breach of the Merger Agreement including its various theories of fraud

23  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

24  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

25  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

26  Merger Agreement, including the negotiation or entry into the Merger Agreement,

27  any breach of the Merger Agreement, or the termination of the Merger Agreement

28  has any relevance, and discovery should be limited to whether there was a breach of

ERVIN COHEN & JESSUP LLP

1   the Framework Agreement.  LeLe reserves all rights, including the right to amend

2   and supplement its Responses and Objections to Vizio's Requests, should it become

3   necessary and appropriate to do so.

4        LeLe further objects that this Request is compound and overbroad,

5   particularly in its request for "Any and All Documents or Communications Relating

6   To the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing

7   needed to complete the proposed Merger with Vizio." LeLe further objects that the

8   phrase "obtain the financing needed" is vague and ambiguous and, as phrased, calls

9   for speculation.

10       LeLe further objects that the Request seeks the documents and

11  communications of third parties or documents and communications which are not in

12  LeLe's possession, custody or control.  Furthermore, this Request, which seeks

13  discovery from individuals and entities ("Unrelated Third Parties") supposedly

14  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

15  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

16  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

17  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

18  million in escrow that is disputed.  The remaining dispute concerns LeEco and

19  Vizio's obligations to each other in the context of the proposed China JV.

20  Moreover, LeEco Global Group Ltd., has not been served with the Summons and

21  FAC, and Merger Sub is not a party to this action.

22       LeLe further objects that this Request appears to seek documents and

23  communications protected by the attorney-client privilege and work product

24  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

25  objects to producing any such documents created after this lawsuit was filed that

26  merely "Relate To" the subject matter of the Request as those documents would

27  clearly be protected by the attorney client privilege and attorney work product

28  doctrine.  LeLe further objects to logging all privileged and work product

ERVIN COHEN & JESSUP LLP

1 documents created after this lawsuit was filed as unduly burdensome and

2 disproportionate to the needs of the case.

3 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

4 **NO. 18 SHOULD BE COMPELLED:**

5      As Defendants' objections to this RFP are either in whole, or in substantial

6 part identical to the objections which they asserted to Plaintiff's RFP No. One,

7 Plaintiff hereby incorporates by reference all of its reasons why a further response to

8 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

9 though set forth fully in this place.

10      Wholly apart from these reasons, the notion that documents which relate to

11 the financial wherewithal of Defendants to complete the Merger are somehow

12 irrelevant flies directly in the face of the alternative Claim for Relief for Breach of

13 the Merger Agreement, let alone Rescission of the Framework Agreement.  Rule

14 26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties

15 may obtain discovery regarding any unprivileged matter that is relevant to any

16 party's claim or defense and proportional to the needs of the case, considering the

17 importance of the issues at stake in the action, the amount in controversy, the

18 parties' relative access to relevant information, the parties' resources, the

19 importance of discovery in resolving the issues and whether the burden or expense

20 of the proposed discovery outweighs its likely benefit.  Information…need not be

21 admissible in evidence to be discoverable."  That is because "[t]he purpose of

22 discovery is to allow a broad search for facts, the names of witnesses, or any other

23 matters which may aid a party in the preparation of his case." *Anderson v. Hansen*,

24 2013 WL 428737*4 (E.D. Cal.)

25      The notion that these documents need not be produced because the Franchise

26 Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

27 Framework Agreement specifically carved out and left intact the "remaining Buyer

28 Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

ERVIN COHEN & JESSUP LLP

1 sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

2 Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

3 settled law that if a defrauded party is induced by false representations to execute a

4 contract, the party has the option of rescinding the contract or affirming it and

5 recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

6 B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart*

7 *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

8 defrauded party is induced by false representations to execute a contract, the party

9 has the option of rescinding the contract or affirming it and recovering damages for

10 the fraud.")  Third, where, as here, the release was not the sole object of the

11 Framework Agreement, there is no requirement that any consideration be restored to

12 permit the pursuit of damages for fraudulent inducement of a settlement agreement.

13 *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

14 15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

15 rescission, such relief "shall not be denied because of a delay in restoring or

16 tendering restoration of such benefits before judgment unless such delay has been

17 substantially prejudicial to the other party, but [rather], the court may make a tender

18 of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

19 *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

20 Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

21 and Cabrera….But Taylor's claim for rescission…is a claim about the

22 circumstances that brought about the Settlement Agreement and therefore the tender

23 need not be made prior to determining whether Taylor actually has a definite ground

24 to rescind.")  Fifth, a successful claim for rescission based on fraud would operate

25 to restore the Merger Agreement in its terminated state notwithstanding Defendants'

26 claim that the Framework Agreement somehow substitutes for the Merger

27 Agreement in its entirety, with or without the express carve out of the $50MM

28 Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1    *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

2    California law and holding that fraud claim for rescission would operate to restore

3    old agreement notwithstanding that a new agreement had been substituted for the

4    old agreement).  Sixth, documents related to the financial wherewithal of

5    Defendants to complete the Merger and the fraudulent misrepresentations that gave

6    rise to it are germane to explaining the circumstances which gave rise to the

7    Framework Agreement and/or whether Defendants likewise made fraudulent

8    representations or otherwise acted in good faith with respect to it, *i.e.,* are equally

9    probative on issues of intent, knowledge, good faith and absence of mistake as to the

10    Framework Agreement and the dealings between VIZIO and Defendants.  *U.S. v.*

11    *Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479

12    U.S. 889 (1986) (evidence of prior bad acts of defendants in obtaining conventional

13    mobile home loans (*i.e.,* loan irregularities) admissible in subsequent trial of

14    fraudulent scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent

15    means to secure conventional loans is probative on issues of intent, knowledge,

16    good faith and absence of mistake in dealing with FHA transactions.").  *Accord,*

17    *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent

18    scheme and past failure to file tax returns admissible in subsequent complex tax

19    fraud conspiracy trial since the former "was used to explain how the…conspirators

20    met each other and garnered customers, while the latter constituted "prior acts" that

21    were "probative of issues of intent, knowledge, good faith and absence of mistake.")

22        In short, production should be ordered in full, without objection.

23    **REQUEST FOR PRODUCTION NO. 19:**

24        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

25    efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER

26    SUB to complete the proposed MERGER with VIZIO INCLUDING

27    DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International

28    Capital; the Bank of China; Bank of China Limited Macau Branch; China

ERVIN COHEN & JESSUP LLP

1  Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;
2  Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet
3  Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment
4  Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.
5  Ltd. or any of their AFFILIATES.

6  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

7       LeEco restates and incorporates by reference the Preliminary Statement and
8  General Objections set forth above.  LeEco further objects to this Request as
9  premature and improper because Vizio's second through sixth causes of action in
10  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants
11  LeEco's Motion to Dismiss, then the information and documents sought by this
12  Request are not relevant, making the Request disproportionate to the needs of the
13  case.  LeEco contends that, at this stage, any discovery in this matter should be
14  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the
15  Merger Agreement (including its various theories of fraud related to that alleged
16  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which
17  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
18  Merger Agreement, including the negotiation or entry into the Merger Agreement,
19  any breach of the Merger Agreement, or the termination of the Merger Agreement
20  has any relevance.  LeEco reserves all rights, including the right to amend and
21  supplement its Response to this Request, should it become necessary and
22  appropriate to do so.

23       LeEco further objects that this Request is compound and overbroad,
24  particularly in its request for "Any and All Documents or Communications Relating
25  To efforts, by any Person, to obtain the financing needed to complete the proposed
26  Merger with Vizio...." LeEco further objects that the phrase "obtain the financing
27  needed" is vague and ambiguous and, as phrased, calls for speculation.

28       LeEco further objects that this Request appears to seek documents and

ERVIN COHEN & JESSUP LLP

1  communications protected by the attorney-client privilege and work product

2  doctrine.  LeEco objects to producing any privileged communications.  LeEco

3  further objects to producing any such documents created after this lawsuit was filed

4  that merely "Relate To" the Merger or Vizio, as those documents would clearly be

5  protected by the attorney client privilege and attorney work product doctrine.

6  LeEco further objects to logging all privileged and work product documents created

7  after this lawsuit was filed as unduly burdensome and disproportionate to the needs

8  of the case.

9       LeEco further objects that the Request seeks the documents and

10  communications of third parties or documents and communications which are not in

11  LeEco's possession, custody or control.  Furthermore, this Request, which seeks

12  discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears

13  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

14  needs of the case.  Particularly if the case is limited to a breach of the Framework

15  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

16  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

17  The remaining dispute concerns the Parties' obligations to each other in the context

18  of the proposed China JV.  Moreover, Merger Sub is not a party to this action.

19  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

20       LeLe restates and incorporates by reference the Preliminary Statement and

21  General Objections set forth above.  LeLe further objects to this Request on the

22  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

23  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

24  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

25  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

26  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

27  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

28  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

ERVIN COHEN & JESSUP LLP

1   never properly served in this action.  In addition to being premature, the Requests

2   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

3   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

4   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

5   seeks the documents and communications of third parties or documents and

6   communications which are not in LeLe's possession, custody or control.

7        Furthermore, Vizio's Requests are premature because they pertain to issues

8   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

9   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

10  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

11  action for breach of the Merger Agreement including its various theories of fraud

12  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

13  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

14  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

15  Merger Agreement, including the negotiation or entry into the Merger Agreement,

16  any breach of the Merger Agreement, or the termination of the Merger Agreement

17  has any relevance, and discovery should be limited to whether there was a breach of

18  the Framework Agreement.  LeLe reserves all rights, including the right to amend

19  and supplement its Responses and Objections to Vizio's Requests, should it become

20  necessary and appropriate to do so.

21       LeLe further objects that this Request is compound and overbroad,

22  particularly in its request for "Any and All Documents or Communications Relating

23  To efforts, by any Person, to obtain the financing needed to complete the proposed

24  Merger with Vizio...." LeLe further objects that the phrase "obtain the financing

25  needed" is vague and ambiguous and, as phrased, calls for speculation.

26       LeLe further objects that the Request seeks the documents and

27  communications of third parties or documents and communications which are not in

28  LeLe's possession, custody or control.  Furthermore, this Request, which seeks

ERVIN COHEN & JESSUP LLP

1  discovery from individuals and entities ("Unrelated Third Parties") supposedly

2  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

3  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

4  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

5  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

6  million in escrow that is disputed.  The remaining dispute concerns LeEco and

7  Vizio's obligations to each other in the context of the proposed China JV.

8  Moreover, Merger Sub is not a party to this action.

9       LeLe further objects that this Request appears to seek documents and

10  communications protected by the attorney-client privilege and work product

11  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

12  objects to producing any such documents created after this lawsuit was filed that

13  merely "Relate To" the subject matter of the Request as those documents would

14  clearly be protected by the attorney client privilege and attorney work product

15  doctrine.  LeLe further objects to logging all privileged and work product

16  documents created after this lawsuit was filed as unduly burdensome and

17  disproportionate to the needs of the case.

18  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

19  **NO. 19 SHOULD BE COMPELLED:**

20       As Defendants' objections to this RFP are either in whole, or in substantial

21  part identical to the objections which they asserted to Plaintiff's RFP No. One,

22  Plaintiff hereby incorporates by reference all of its reasons why a further response to

23  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

24  though set forth fully in this place.

25       Wholly apart from these reasons, the notion that documents which relate to

26  Defendants' efforts to obtain the necessary financing to complete the Merger from

27  specified entities are somehow irrelevant flies directly in the face of the alternative

28  Claim for Relief for Breach of the Merger Agreement, let alone Rescission of the

ERVIN COHEN & JESSUP LLP

1  Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure*

2  specifically provides that "[P]arties may obtain discovery regarding any

3  unprivileged matter that is relevant to any party's claim or defense and proportional

4  to the needs of the case, considering the importance of the issues at stake in the

5  action, the amount in controversy, the parties' relative access to relevant

6  information, the parties' resources, the importance of discovery in resolving the

7  issues and whether the burden or expense of the proposed discovery outweighs its

8  likely benefit.  Information…need not be admissible in evidence to be

9  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

10  search for facts, the names of witnesses, or any other matters which may aid a party

11  in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

12  Cal.)

13        The notion that these documents need not be produced because the Franchise

14  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

15  Framework Agreement specifically carved out and left intact the "remaining Buyer

16  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

17  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

18  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

19  settled law that if a defrauded party is induced by false representations to execute a

20  contract, the party has the option of rescinding the contract or affirming it and

21  recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

22  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

23  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

24  defrauded party is induced by false representations to execute a contract, the party

25  has the option of rescinding the contract or affirming it and recovering damages for

26  the fraud.")  Third, where, as here, the release was not the sole object of the

27  Framework Agreement, there is no requirement that any consideration be restored to

28  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1   *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

2   15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

3   rescission, such relief "shall not be denied because of a delay in restoring or

4   tendering restoration of such benefits before judgment unless such delay has been

5   substantially prejudicial to the other party, but [rather], the court may make a tender

6   of restoration a condition of its judgment." *Cal. Civ. Code* §1693. *Accord Taylor v.*

7   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

8   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

9   and Cabrera….But Taylor's claim for rescission…is a claim about the

10   circumstances that brought about the Settlement Agreement and therefore the tender

11   need not be made prior to determining whether Taylor actually has a definite ground

12   to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

13   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

14   claim that the Framework Agreement somehow substitutes for the Merger

15   Agreement in its entirety, with or without the express carve out of the $50MM

16   Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

17   *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

18   California law and holding that fraud claim for rescission would operate to restore

19   old agreement notwithstanding that a new agreement had been substituted for the

20   old agreement).  Sixth, documents related to Defendants' efforts to obtain the

21   necessary financing to complete the Merger from specified entities and the

22   fraudulent misrepresentations that gave rise to it are germane to explaining the

23   circumstances which gave rise to the Framework Agreement and/or whether

24   Defendants likewise made fraudulent representations or otherwise acted in good

25   faith with respect to it, *i.e.,* are equally probative on issues of intent, knowledge,

26   good faith and absence of mistake as to the Framework Agreement and the dealings

27   between VIZIO and Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

28   Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad

14676.8:9283165.1      138      8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1 acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan
2 irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA
3 loans since "[t]he fact that Jenkins used fraudulent means to secure conventional
4 loans is probative on issues of intent, knowledge, good faith and absence of mistake
5 in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610
6 (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax
7 returns admissible in subsequent complex tax fraud conspiracy trial since the former
8 "was used to explain how the…conspirators met each other and garnered customers,
9 while the latter constituted "prior acts" that were "probative of issues of intent,
10 knowledge, good faith and absence of mistake.")

11      In short, production should be ordered in full, without objection.

12 **REQUEST FOR PRODUCTION NO. 20:**

13      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
14 the terms on which the financing needed by LeECO and MERGER SUB to
15 complete the proposed MERGER with VIZIO could be obtained, INCLUDING
16 DOCUMENTS OR COMMUNICATIONS to or from: Hollyhigh International
17 Capital; the Bank of China; Bank of China Limited Macau Branch; China
18 Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;
19 Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet
20 Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment
21 Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.
22 Ltd. or any of their AFFILIATES.

23 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

24      LeEco restates and incorporates by reference the Preliminary Statement and
25 General Objections set forth above.  LeEco further objects to this Request as
26 premature and improper because Vizio's second through sixth causes of action in
27 the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants
28 LeECO's Motion to Dismiss, then the information and documents sought by this

ERVIN COHEN & JESSUP LLP

1 │ Request are not relevant, making the Request disproportionate to the needs of the

2 │ case.  LeEco contends that, at this stage, any discovery in this matter should be

3 │ limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

4 │ Merger Agreement (including its various theories of fraud related to that alleged

5 │ breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

6 │ Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

7 │ Merger Agreement, including the negotiation or entry into the Merger Agreement,

8 │ any breach of the Merger Agreement, or the termination of the Merger Agreement

9 │ has any relevance.  LeEco reserves all rights, including the right to amend and

10 │ supplement its Response to this Request, should it become necessary and

11 │ appropriate to do so.

12 │ LeEco further objects that this Request is compound and overbroad.  LeEco

13 │ further objects that the phrase "terms on which financing...could be obtained" is

14 │ vague and ambiguous and, as phrased, calls for speculation.

15 │ LeEco further objects that this Request appears to seek documents and

16 │ communications protected by the attorney-client privilege and work product

17 │ doctrine.  LeEco objects to producing any privileged communications.  LeEco

18 │ further objects to producing any such documents created after this lawsuit was filed

19 │ that merely "Relate To" the Merger or Vizio, as those documents would clearly be

20 │ protected by the attorney client privilege and attorney work product doctrine.

21 │ LeEco further objects to logging all privileged and work product documents created

22 │ after this lawsuit was filed as unduly burdensome and disproportionate to the needs

23 │ of the case.

24 │ LeEco further objects that the Request seeks the documents and

25 │ communications of third parties or documents and communications which are not in

26 │ LeEco's possession, custody or control.  Furthermore, this Request, which seeks

27 │ discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears

28 │ calculated merely to harass and is overbroad, irrelevant, and not proportional to the

ERVIN COHEN & JESSUP LLP

1  needs of the case.  Particularly if the case is limited to a breach of the Framework

2  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

3  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

4  The remaining dispute concerns the Parties' obligations to each other in the context

5  of the proposed China JV.

6  Moreover, Merger Sub is not a party to this action.

7  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

8         LeLe restates and incorporates by reference the Preliminary Statement and

9  General Objections set forth above.  LeLe further objects to this Request on the

10  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

11  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

12  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

13  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

14  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

15  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

16  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

17  never properly served in this action.  In addition to being premature, the Requests

18  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

19  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

20  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

21  seeks the documents and communications of third parties or documents and

22  communications which are not in LeLe's possession, custody or control.

23         Furthermore, Vizio's Requests are premature because they pertain to issues

24  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

25  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

26  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

27  action for breach of the Merger Agreement including its various theories of fraud

28  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

ERVIN COHEN & JESSUP LLP

14676.8:9283165.1                                   141                          8:17-CV-01175-DOC-JDE
JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

2  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

3  Merger Agreement, including the negotiation or entry into the Merger Agreement,

4  any breach of the Merger Agreement, or the termination of the Merger Agreement

5  has any relevance, and discovery should be limited to whether there was a breach of

6  the Framework Agreement.  LeLe reserves all rights, including the right to amend

7  and supplement its Responses and Objections to Vizio's Requests, should it become

8  necessary and appropriate to do so.

9       LeLe further objects that this Request is compound and overbroad.  LeLe

10  further objects that the phrase "terms on which financing...could be obtained" is

11  vague and ambiguous and, as phrased, calls for speculation.

12       LeLe further objects that the Request seeks the documents and

13  communications of third parties or documents and communications which are not in

14  LeLe's possession, custody or control.  Furthermore, this Request, which seeks

15  discovery from individuals and entities ("Unrelated Third Parties") supposedly

16  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

17  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

18  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

19  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

20  million in escrow that is disputed.  The remaining dispute concerns LeEco and

21  Vizio's obligations to each other in the context of the proposed China JV.

22  Moreover, Merger Sub is not a party to this action.

23       LeLe further objects that this Request appears to seek documents and

24  communications protected by the attorney-client privilege and work product

25  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

26  objects to producing any such documents created after this lawsuit was filed that

27  merely "Relate To" the subject matter of the Request as those documents would

28  clearly be protected by the attorney client privilege and attorney work product

ERVIN COHEN & JESSUP LLP

1  doctrine.  LeLe further objects to logging all privileged and work product

2  documents created after this lawsuit was filed as unduly burdensome and

3  disproportionate to the needs of the case.

4  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

5  **NO. 20 SHOULD BE COMPELLED:**

6          As Defendants' objections to this RFP are either in whole, or in substantial

7  part identical to the objections which they asserted to Plaintiff's RFP No. One,

8  Plaintiff hereby incorporates by reference all of its reasons why a further response to

9  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

10  though set forth fully in this place.

11          Wholly apart from these reasons, the notion that documents which relate to

12  the terms on which financing required by Defendants to complete the Merger could

13  be obtained are somehow irrelevant flies directly in the face of the alternative Claim

14  for Relief for Breach of the Merger Agreement, let alone Rescission of the

15  Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure*

16  specifically provides that "[P]arties may obtain discovery regarding any

17  unprivileged matter that is relevant to any party's claim or defense and proportional

18  to the needs of the case, considering the importance of the issues at stake in the

19  action, the amount in controversy, the parties' relative access to relevant

20  information, the parties' resources, the importance of discovery in resolving the

21  issues and whether the burden or expense of the proposed discovery outweighs its

22  likely benefit.  Information…need not be admissible in evidence to be

23  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

24  search for facts, the names of witnesses, or any other matters which may aid a party

25  in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

26  Cal.)

27          The notion that these documents need not be produced because the Franchise

28  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

ERVIN COHEN & JESSUP LLP

1    Framework Agreement specifically carved out and left intact the "remaining Buyer

2    Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

3    sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

4    Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

5    settled law that if a defrauded party is induced by false representations to execute a

6    contract, the party has the option of rescinding the contract or affirming it and

7    recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

8    B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

9    *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

10   defrauded party is induced by false representations to execute a contract, the party

11   has the option of rescinding the contract or affirming it and recovering damages for

12   the fraud.")  Third, where, as here, the release was not the sole object of the

13   Framework Agreement, there is no requirement that any consideration be restored to

14   permit the pursuit of damages for fraudulent inducement of a settlement agreement.

15   *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

16   15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

17   rescission, such relief "shall not be denied because of a delay in restoring or

18   tendering restoration of such benefits before judgment unless such delay has been

19   substantially prejudicial to the other party, but [rather], the court may make a tender

20   of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.*

21   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

22   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

23   and Cabrera….But Taylor's claim for rescission…is a claim about the

24   circumstances that brought about the Settlement Agreement and therefore the tender

25   need not be made prior to determining whether Taylor actually has a definite ground

26   to rescind.")  Fifth, a successful claim for rescission based on fraud would operate

27   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

28   claim that the Framework Agreement somehow substitutes for the Merger

ERVIN COHEN & JESSUP LLP

1  Agreement in its entirety, with or without the express carve out of the $50MM

2  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

3  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

4  California law and holding that fraud claim for rescission would operate to restore

5  old agreement notwithstanding that a new agreement had been substituted for the

6  old agreement).  Sixth, documents related to the terms on which financing by

7  Defendants to complete the Merger could be obtained and the fraudulent

8  misrepresentations that gave rise to it are germane to explaining the circumstances

9  which gave rise to the Framework Agreement and/or whether Defendants likewise

10  made fraudulent representations or otherwise acted in good faith with respect to it,

11  *i.e.,* are equally probative on issues of intent, knowledge, good faith and absence of

12  mistake as to the Framework Agreement and the dealings between VIZIO and

13  Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*,

14  *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad acts of defendants in

15  obtaining conventional mobile home loans (*i.e.,* loan irregularities) admissible in

16  subsequent trial of fraudulent scheme to obtain FHA loans since "[t]he fact that

17  Jenkins used fraudulent means to secure conventional loans is probative on issues of

18  intent, knowledge, good faith and absence of mistake in dealing with FHA

19  transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior

20  fraudulent land patent scheme and past failure to file tax returns admissible in

21  subsequent complex tax fraud conspiracy trial since the former "was used to explain

22  how the…conspirators met each other and garnered customers, while the latter

23  constituted "prior acts" that were "probative of issues of intent, knowledge, good

24  faith and absence of mistake.")

25      In short, production should be ordered in full, without objection.

26  **REQUEST FOR PRODUCTION NO. 21:**

27      ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO,

28  on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

ERVIN COHEN & JESSUP LLP

1 | AFFILIATES, on the other hand, regarding efforts to implement, meet the

2 | conditions for, or complete the MERGER or to obtain the financing needed by

3 | LeECO and MERGER SUB to complete the MERGER.

4 | **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

5 | LeEco restates and incorporates by reference the Preliminary Statement and

6 | General Objections set forth above.  LeEco further objects to this Request as

7 | premature and improper because Vizio's second through sixth causes of action in

8 | the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

9 | LeEco's Motion to Dismiss, then the information and documents sought by this

10 | Request are not relevant, making the Request disproportionate to the needs of the

11 | case.  LeEco contends that, at this stage, any discovery in this matter should be

12 | limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

13 | Merger Agreement (including its various theories of fraud related to that alleged

14 | breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

15 | Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

16 | Merger Agreement, including the negotiation or entry into the Merger Agreement,

17 | any breach of the Merger Agreement, or the termination of the Merger Agreement

18 | has any relevance.  LeEco reserves all rights, including the right to amend and

19 | supplement its Response to this Request, should it become necessary and

20 | appropriate to do so.

21 | LeEco further objects that this Request is compound and overbroad,

22 | particularly in its request for "Any and All Documents or Communications between

23 | Vizio, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

24 | Affiliates, on the other hand, regarding efforts to implement; meet the conditions

25 | for, or complete the Merger or to obtain the financing needed by LeECO and

26 | MERGER SUB to complete the Merger." LeEco further objects that the phrase

27 | "obtain the financing needed" is vague and ambiguous and, as phrased, calls for

28 | speculation.

ERVIN COHEN & JESSUP LLP

1   LeEco further objects that this Request appears to seek documents and

2   communications protected by the attorney-client privilege and work product

3   doctrine.  LeEco objects to producing any privileged communications.  LeEco

4   further objects to producing any such documents created after this lawsuit was filed

5   that merely "Relate To" the Merger or Vizio, as those documents would clearly be

6   protected by the attorney client privilege and attorney work product doctrine.

7   LeEco further objects to logging all privileged and work product documents created

8   after this lawsuit was filed as unduly burdensome and disproportionate to the needs

9   of the case.

10   LeEco further objects that the definition of "Affiliates" is overbroad, vague

11   and ambiguous and seeks the documents and communications of third parties or

12   documents and communications which are not in LeEco's possession, custody or

13   control.  Furthermore, this Request, which seeks discovery from Unrelated Third

14   Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

15   is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

16   the case is limited to a breach of the Framework Agreement, the dispute is limited to

17   LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

18   another $10 million in escrow that is disputed.  The remaining dispute concerns the

19   Parties' obligations to each other in the context of the proposed China JV.

20   Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

21   been served with the Summons and FAC, and Merger Sub and LeTechnology, Inc.

22   are not parties to this action.

23   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

24   LeLe restates and incorporates by reference the Preliminary Statement and

25   General Objections set forth above.  LeLe further objects to this Request on the

26   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

27   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

28   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

ERVIN COHEN & JESSUP LLP

1  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

2  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

3  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

4  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

5  never properly served in this action.  In addition to being premature, the Requests

6  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

7  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

8  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

9  seeks the documents and communications of third parties or documents and

10  communications which are not in LeLe's possession, custody or control.

11       Furthermore, Vizio's Requests are premature because they pertain to issues

12  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

13  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

14  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

15  action for breach of the Merger Agreement including its various theories of fraud

16  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

17  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

18  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

19  Merger Agreement, including the negotiation or entry into the Merger Agreement,

20  any breach of the Merger Agreement, or the termination of the Merger Agreement

21  has any relevance, and discovery should be limited to whether there was a breach of

22  the Framework Agreement.  LeLe reserves all rights, including the right to amend

23  and supplement its Responses and Objections to Vizio's Requests, should it become

24  necessary and appropriate to do so.

25       LeLe further objects that this Request is compound and overbroad,

26  particularly in its request for "Any and All Documents or Communications between

27  Vizio, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

28  Affiliates, on the other hand, regarding efforts to implement; meet the conditions

ERVIN COHEN & JESSUP LLP

1  for, or complete the Merger or to obtain the financing needed by LeECO and

2  MERGER SUB to complete the Merger." LeLe further objects that the phrase

3  "obtain the financing needed" is vague and ambiguous and, as phrased, calls for

4  speculation.

5  LeLe further objects that the definition of "Affiliates" is overbroad, vague and

6  ambiguous and seeks the documents and communications of third parties or

7  documents and communications which are not in LeLe's possession, custody or

8  control.  Furthermore, this Request, which seeks discovery from individuals and

9  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

10 calculated merely to harass and is overbroad, irrelevant, and not proportional to the

11 needs of the case.  Particularly if the case is limited to a breach of the Framework

12 Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

13 payment to Vizio of $40 million and another $10 million in escrow that is disputed.

14 The remaining dispute concerns LeEco and Vizio's obligations to each other in the

15 context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

16 Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

17 Merger Sub and LeTechnology, Inc. are not parties to this action.

18 LeLe further objects that this Request appears to seek documents and

19 communications protected by the attorney-client privilege and work product

20 doctrine.  LeLe objects to producing any privileged communications.  LeLe further

21 objects to producing any such documents created after this lawsuit was filed that

22 merely "Relate To" the subject matter of the Request as those documents would

23 clearly be protected by the attorney client privilege and attorney work product

24 doctrine.  LeLe further objects to logging all privileged and work product

25 documents created after this lawsuit was filed as unduly burdensome and

26 disproportionate to the needs of the case.

27

28

ERVIN COHEN & JESSUP LLP

## REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 21 SHOULD BE COMPELLED:

As Defendants' objections to this RFP are either in whole, or in substantial part identical to the objections which they asserted to Plaintiff's RFP No. One, Plaintiff hereby incorporates by reference all of its reasons why a further response to RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as though set forth fully in this place.

Wholly apart from these reasons, the notion that documents which relate to communications between VIZIO and specified persons or entities with respect to Defendants' efforts to implement or complete the Merger are somehow irrelevant flies directly in the face of the alternative Claim for Relief for Breach of the Merger Agreement, let alone Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding any unprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information…need not be admissible in evidence to be discoverable."  That is because "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

The notion that these documents need not be produced because the Franchise Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the Framework Agreement specifically carved out and left intact the "remaining Buyer Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

ERVIN COHEN & JESSUP LLP

1  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

2  settled law that if a defrauded party is induced by false representations to execute a

3  contract, the party has the option of rescinding the contract or affirming it and

4  recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

5  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart

6  Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

7  defrauded party is induced by false representations to execute a contract, the party

8  has the option of rescinding the contract or affirming it and recovering damages for

9  the fraud.")  Third, where, as here, the release was not the sole object of the

10  Framework Agreement, there is no requirement that any consideration be restored to

11  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

12  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

13  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

14  rescission, such relief "shall not be denied because of a delay in restoring or

15  tendering restoration of such benefits before judgment unless such delay has been

16  substantially prejudicial to the other party, but [rather], the court may make a tender

17  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.

18  Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

19  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

20  and Cabrera….But Taylor's claim for rescission…is a claim about the

21  circumstances that brought about the Settlement Agreement and therefore the tender

22  need not be made prior to determining whether Taylor actually has a definite ground

23  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

24  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

25  claim that the Framework Agreement somehow substitutes for the Merger

26  Agreement in its entirety, with or without the express carve out of the $50MM

27  Remaining Buyer Termination Fee Deposit provisions.  *Airs Intern, Inc. v. Perfect

28  Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

California law and holding that fraud claim for rescission would operate to restore
old agreement notwithstanding that a new agreement had been substituted for the
old agreement).  Sixth, documents related to communications between VIZIO and
specified persons or entities with respect to Defendants' efforts to implement or
complete the Merger Agreement and the fraudulent misrepresentations that gave rise
to it are germane to explaining the circumstances which gave rise to the Framework
Agreement and/or whether Defendants likewise made fraudulent representations or
otherwise acted in good faith with respect to it, *i.e.,* are equally probative on issues
of intent, knowledge, good faith and absence of mistake as to the Framework
Agreement and the dealings between VIZIO and Defendants.  *U.S. v. Jenkins*, 785
F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889
(1986) (evidence of prior bad acts of defendants in obtaining conventional mobile
home loans (*i.e.,* loan irregularities) admissible in subsequent trial of fraudulent
scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent means to
secure conventional loans is probative on issues of intent, knowledge, good faith and
absence of mistake in dealing with FHA transactions.").  *Accord, U.S. v. Ruiz*, 665
Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent scheme and past
failure to file tax returns admissible in subsequent complex tax fraud conspiracy trial
since the former "was used to explain how the…conspirators met each other and
garnered customers, while the latter constituted "prior acts" that were "probative of
issues of intent, knowledge, good faith and absence of mistake.")

In short, production should be ordered in full, without objection.

**REQUEST FOR PRODUCTION NO. 22:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
the "Equity Commitment Letters", as that term is defined and used in Sections 4.10
and 5.8 of the MERGER AGREEMENT.

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

LeEco restates and incorporates by reference the Preliminary Statement and

ERVIN COHEN & JESSUP LLP

1  General Objections set forth above.  LeEco further objects to this Request as

2  premature and improper because Vizio's second through sixth causes of action in

3  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

4  LeEco's Motion to Dismiss, then the information and documents sought by this

5  Request are not relevant, making the Request disproportionate to the needs of the

6  case.  LeEco contends that, at this stage, any discovery in this matter should be

7  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

8  Merger Agreement (including its various theories of fraud related to that alleged

9  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

10 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

11 Merger Agreement, including the negotiation or entry into the Merger Agreement,

12 any breach of the Merger Agreement, or the termination of the Merger Agreement

13 has any relevance.  LeEco reserves all rights, including the right to amend and

14 supplement its Response to this Request, should it become necessary and

15 appropriate to do so.

16 LeEco further objects that this Request is compound and overbroad,

17 particularly in its request for "Any and All Documents or Communications Relating

18 To the Equity Commitment Letters..."

19 LeEco further objects that, as phrased, this Request appears to seek

20 documents that are equally available to Vizio.  LeEco objects to searching for and

21 producing documents equally available to Vizio.

22 LeEco further objects that this Request appears to seek documents and

23 communications protected by the attorney-client privilege and work product

24 doctrine.  LeEco objects to producing any privileged communications.  LeEco

25 further objects to producing any such documents created after this lawsuit was filed

26 that merely "Relate To" terms within Merger Agreement, as those documents would

27 clearly be protected by the attorney client privilege and attorney work product

28 doctrine.  LeEco further objects to logging all privileged and work product

ERVIN COHEN & JESSUP LLP

1  documents created after this lawsuit was filed as unduly burdensome and

2  disproportionate to the needs of the case.

3  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

4        LeLe restates and incorporates by reference the Preliminary Statement and

5  General Objections set forth above. LeLe further objects to this Request on the

6  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

7  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

8  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

9  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

10  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

11  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

12  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

13  never properly served in this action.  In addition to being premature, the Requests

14  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

15  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

16  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

17  seeks the documents and communications of third parties or documents and

18  communications which are not in LeLe's possession, custody or control.

19        Furthermore, Vizio's Requests are premature because they pertain to issues

20  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

21  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

22  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

23  action for breach of the Merger Agreement including its various theories of fraud

24  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

25  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

26  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

27  Merger Agreement, including the negotiation or entry into the Merger Agreement,

28  any breach of the Merger Agreement, or the termination of the Merger Agreement

ERVIN COHEN & JESSUP LLP

1 | has any relevance, and discovery should be limited to whether there was a breach of

2 | the Framework Agreement. LeLe reserves all rights, including the right to amend

3 | and supplement its Responses and Objections to Vizio's Requests, should it become

4 | necessary and appropriate to do so.

5 | LeLe further objects that this Request is compound and overbroad,

6 | particularly in its request for "Any and All Documents or Communications Relating

7 | To the Equity Commitment Letters..."

8 | LeLe further objects that, as phrased, this Request appears to seek documents

9 | that are equally available to Vizio. LeLe objects to searching for and producing

10 | documents equally available to Vizio.

11 | LeLe further objects that this Request appears to seek documents and

12 | communications protected by the attorney-client privilege and work product

13 | doctrine. LeLe objects to producing any privileged communications. LeLe further

14 | objects to producing any such documents created after this lawsuit was filed that

15 | merely "Relate To" the subject matter of the Request as those documents would

16 | clearly be protected by the attorney client privilege and attorney work product

17 | doctrine. LeLe further objects to logging all privileged and work product

18 | documents created after this lawsuit was filed as unduly burdensome and

19 | disproportionate to the needs of the case.

20 | **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

21 | **NO. 22 SHOULD BE COMPELLED:**

22 | As Defendants' objections to this RFP are either in whole, or in substantial

23 | part identical to the objections which they asserted to Plaintiff's RFP No. One,

24 | Plaintiff hereby incorporates by reference all of its reasons why a further response to

25 | RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

26 | though set forth fully in this place.

27 | Wholly apart from these reasons, the notion that documents which relate to

28 | the Merger Agreement and/or Equity Commitment Letters defined therein are

155

ERVIN COHEN & JESSUP LLP

1  somehow irrelevant flies directly in the face of the alternative Claim for Relief for

2  Breach of the Merger Agreement, let alone Rescission of the Framework

3  Agreement.  Equity Commitment letters are expressly called for in the Merger

4  Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically

5  provides that "[P]arties may obtain discovery regarding any unprivileged matter that

6  is relevant to any party's claim or defense and proportional to the needs of the case,

7  considering the importance of the issues at stake in the action, the amount in

8  controversy, the parties' relative access to relevant information, the parties'

9  resources, the importance of discovery in resolving the issues and whether the

10  burden or expense of the proposed discovery outweighs its likely benefit.

11  Information…need not be admissible in evidence to be discoverable."  That is

12  because "[t]he purpose of discovery is to allow a broad search for facts, the names

13  of witnesses, or any other matters which may aid a party in the preparation of his

14  case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

15        The notion that these documents need not be produced because the Franchise

16  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

17  Framework Agreement specifically carved out and left intact the "remaining Buyer

18  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

19  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

20  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

21  settled law that if a defrauded party is induced by false representations to execute a

22  contract, the party has the option of rescinding the contract or affirming it and

23  recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

24  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

25  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

26  defrauded party is induced by false representations to execute a contract, the party

27  has the option of rescinding the contract or affirming it and recovering damages for

28  the fraud.")  Third, where, as here, the release was not the sole object of the

ERVIN COHEN & JESSUP LLP

1  Framework Agreement, there is no requirement that any consideration be restored to
2  permit the pursuit of damages for fraudulent inducement of a settlement agreement.
3  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-
4  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on
5  rescission, such relief "shall not be denied because of a delay in restoring or
6  tendering restoration of such benefits before judgment unless such delay has been
7  substantially prejudicial to the other party, but [rather], the court may make a tender
8  of restoration a condition of its judgment." *Cal. Civ. Code* §1693. *Accord Taylor v.*
9  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that
10 Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao
11 and Cabrera….But Taylor's claim for rescission…is a claim about the
12 circumstances that brought about the Settlement Agreement and therefore the tender
13 need not be made prior to determining whether Taylor actually has a definite ground
14 to rescind.").  Fifth, a successful claim for rescission based on fraud would operate
15 to restore the Merger Agreement in its terminated state notwithstanding Defendants'
16 claim that the Framework Agreement somehow substitutes for the Merger
17 Agreement in its entirety, with or without the express carve out of the $50MM
18 Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*
19 *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying
20 California law and holding that fraud claim for rescission would operate to restore
21 old agreement notwithstanding that a new agreement had been substituted for the
22 old agreement).  Sixth, documents related to the Merger Agreement as well as the
23 Equity Commitment Letters defined therein and the fraudulent misrepresentations
24 that gave rise to them are germane to explaining the circumstances which gave rise
25 to the Framework Agreement and/or whether Defendants likewise made fraudulent
26 representations or otherwise acted in good faith with respect to it, *i.e.,* are equally
27 probative on issues of intent, knowledge, good faith and absence of mistake as to the
28 Framework Agreement and the dealings between VIZIO and Defendants. *U.S. v.*

ERVIN COHEN & JESSUP LLP

1    *Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479

2    U.S. 889 (1986) (evidence of prior bad acts of defendants in obtaining conventional

3    mobile home loans (*i.e.,* loan irregularities) admissible in subsequent trial of

4    fraudulent scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent

5    means to secure conventional loans is probative on issues of intent, knowledge,

6    good faith and absence of mistake in dealing with FHA transactions."). *Accord,*

7    *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent

8    scheme and past failure to file tax returns admissible in subsequent complex tax

9    fraud conspiracy trial since the former "was used to explain how the…conspirators

10   met each other and garnered customers, while the latter constituted "prior acts" that

11   were "probative of issues of intent, knowledge, good faith and absence of mistake.")

12         In short, production should be ordered in full, without objection.

13   **REQUEST FOR PRODUCTION NO. 23:**

14         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

15   the "Debt Financing Documents", as that term is defined in Section 10.2 of the

16   MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER

17   AGREEMENT.

18   **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

19         LeEco restates and incorporates by reference the Preliminary Statement and

20   General Objections set forth above.  LeEco further objects to this Request as

21   premature and improper because Vizio's second through sixth causes of action in

22   the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

23   LeEco's Motion to Dismiss, then the information and documents sought by this

24   Request are not relevant, making the Request disproportionate to the needs of the

25   case.  LeEco contends that, at this stage, any discovery in this matter should be

26   limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

27   Merger Agreement (including its various theories of fraud related to that alleged

28   breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

ERVIN COHEN & JESSUP LLP

1 | Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

2 | Merger Agreement, including the negotiation or entry into the Merger Agreement,

3 | any breach of the Merger Agreement, or the termination of the Merger Agreement

4 | has any relevance.  LeEco reserves all rights, including the right to amend and

5 | supplement its Response to this Request, should it become necessary and

6 | appropriate to do so.

7 | LeEco further objects that this Request is compound and overbroad,

8 | particularly in its request for "Any and All Documents or Communications Relating

9 | To the Debt Financing Documents ..."

10 | LeEco further objects that, as phrased, this Request appears to seek

11 | documents that are equally available to Vizio.  LeEco objects to searching for and

12 | producing documents equally available to Vizio.

13 | LeEco further objects that this Request appears to seek documents and

14 | communications protected by the attorney-client privilege and work product

15 | doctrine.  LeEco objects to producing any privileged communications.  LeEco

16 | further objects to producing any such documents created after this lawsuit was filed

17 | that merely "Relate To" terms within Merger Agreement, as those documents would

18 | clearly be protected by the attorney client privilege and attorney work product

19 | doctrine.  LeEco further objects to logging all privileged and work product

20 | documents created after this lawsuit was filed as unduly burdensome and

21 | disproportionate to the needs of the case.

22 | **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

23 | LeLe restates and incorporates by reference the Preliminary Statement and

24 | General Objections set forth above.  LeLe further objects to this Request on the

25 | grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

26 | of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

27 | LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

28 | Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

ERVIN COHEN & JESSUP LLP

1  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

2  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

3  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

4  never properly served in this action.  In addition to being premature, the Requests

5  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

6  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

7  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

8  seeks the documents and communications of third parties or documents and

9  communications which are not in LeLe's possession, custody or control.

10      Furthermore, Vizio's Requests are premature because they pertain to issues

11  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

12  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

13  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

14  action for breach of the Merger Agreement including its various theories of fraud

15  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

16  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

17  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

18  Merger Agreement, including the negotiation or entry into the Merger Agreement,

19  any breach of the Merger Agreement, or the termination of the Merger Agreement

20  has any relevance, and discovery should be limited to whether there was a breach of

21  the Framework Agreement.  LeLe reserves all rights, including the right to amend

22  and supplement its Responses and Objections to Vizio's Requests, should it become

23  necessary and appropriate to do so.

24      LeLe further objects that this Request is compound and overbroad,

25  particularly in its request for "Any and All Documents or Communications Relating

26  To the Debt Financing Documents ..."

27      LeLe further objects that, as phrased, this Request appears to seek documents

28  that are equally available to Vizio.  LeLe objects to searching for and producing

ERVIN COHEN & JESSUP LLP

1   documents equally available to Vizio.

2        LeLe further objects that this Request appears to seek documents and

3   communications protected by the attorney-client privilege and work product

4   doctrine.  LeLe objects to producing any privileged communications.  LeLe further

5   objects to producing any such documents created after this lawsuit was filed that

6   merely "Relate To" the subject matter of the Request as those documents would

7   clearly be protected by the attorney client privilege and attorney work product

8   doctrine.  LeLe further objects to logging all privileged and work product

9   documents created after this lawsuit was filed as unduly burdensome and

10  disproportionate to the needs of the case.

11  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

12  **NO. 23 SHOULD BE COMPELLED:**

13       As Defendants' objections to this RFP are either in whole, or in substantial

14  part identical to the objections which they asserted to Plaintiff's RFP No. One,

15  Plaintiff hereby incorporates by reference all of its reasons why a further response to

16  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

17  though set forth fully in this place.

18       Wholly apart from these reasons, the notion that documents which relate to

19  the Merger Agreement and Debt Financing Documents defined therein are somehow

20  irrelevant flies directly in the face of the alternative Claim for Relief for Breach of

21  the Merger Agreement, let alone Rescission of the Framework Agreement.  Debt

22  Financing Documents are expressly called for in the Merger Agreement.  Rule

23  26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties

24  may obtain discovery regarding any unprivileged matter that is relevant to any

25  party's claim or defense and proportional to the needs of the case, considering the

26  importance of the issues at stake in the action, the amount in controversy, the

27  parties' relative access to relevant information, the parties' resources, the

28  importance of discovery in resolving the issues and whether the burden or expense

ERVIN COHEN & JESSUP LLP

14676.8:9283165.1                                    161                          8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1 of the proposed discovery outweighs its likely benefit.  Information…need not be

2 admissible in evidence to be discoverable."  That is because "[t]he purpose of

3 discovery is to allow a broad search for facts, the names of witnesses, or any other

4 matters which may aid a party in the preparation of his case."  *Anderson v. Hansen*,

5 2013 WL 428737*4 (E.D. Cal.)

6      The notion that these documents need not be produced because the Franchise

7 Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

8 Framework Agreement specifically carved out and left intact the "remaining Buyer

9 Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

10 sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

11 Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

12 settled law that if a defrauded party is induced by false representations to execute a

13 contract, the party has the option of rescinding the contract or affirming it and

14 recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

15 B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

16 *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

17 defrauded party is induced by false representations to execute a contract, the party

18 has the option of rescinding the contract or affirming it and recovering damages for

19 the fraud.")  Third, where, as here, the release was not the sole object of the

20 Framework Agreement, there is no requirement that any consideration be restored to

21 permit the pursuit of damages for fraudulent inducement of a settlement agreement.

22 *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

23 15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

24 rescission, such relief "shall not be denied because of a delay in restoring or

25 tendering restoration of such benefits before judgment unless such delay has been

26 substantially prejudicial to the other party, but [rather], the court may make a tender

27 of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.*

28 *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

ERVIN COHEN & JESSUP LLP

1   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

2   and Cabrera….But Taylor's claim for rescission…is a claim about the

3   circumstances that brought about the Settlement Agreement and therefore the tender

4   need not be made prior to determining whether Taylor actually has a definite ground

5   to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

6   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

7   claim that the Framework Agreement somehow substitutes for the Merger

8   Agreement in its entirety, with or without the express carve out of the $50MM

9   Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

10  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

11  California law and holding that fraud claim for rescission would operate to restore

12  old agreement notwithstanding that a new agreement had been substituted for the

13  old agreement).  Sixth, documents related to the Merger Agreement as well as the

14  Debt Financing Documents described therein and the fraudulent misrepresentations

15  that gave rise to them are germane to explaining the circumstances which gave rise

16  to the Framework Agreement and/or whether Defendants likewise made fraudulent

17  representations or otherwise acted in good faith with respect to it, *i.e.,* are equally

18  probative on issues of intent, knowledge, good faith and absence of mistake as to the

19  Framework Agreement and the dealings between VIZIO and Defendants. *U.S. v.*

20  *Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479

21  U.S. 889 (1986) (evidence of prior bad acts of defendants in obtaining conventional

22  mobile home loans (*i.e.,* loan irregularities) admissible in subsequent trial of

23  fraudulent scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent

24  means to secure conventional loans is probative on issues of intent, knowledge,

25  good faith and absence of mistake in dealing with FHA transactions."). *Accord,*

26  *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent

27  scheme and past failure to file tax returns admissible in subsequent complex tax

28  fraud conspiracy trial since the former "was used to explain how the…conspirators

ERVIN COHEN & JESSUP LLP

1  met each other and garnered customers, while the latter constituted "prior acts" that

2  were "probative of issues of intent, knowledge, good faith and absence of mistake.")

3      In short, production should be ordered in full, without objection.

4  **REQUEST FOR PRODUCTION NO. 24:**

5      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

6  the actual assets and financing available to LeECO and MERGER SUB on or about

7  April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

8  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

9      LeEco restates and incorporates by reference the Preliminary Statement and

10  General Objections set forth above.  LeEco further objects to this Request as

11  premature and improper because Vizio's second through sixth causes of action in

12  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

13  LeEco's Motion to Dismiss, then the information and documents sought by this

14  Request are not relevant, making the Request disproportionate to the needs of the

15  case.  LeEco contends that, at this stage, any discovery in this matter should be

16  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

17  Merger Agreement (including its various theories of fraud related to that alleged

18  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

19  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

20  Merger Agreement, including the negotiation or entry into the Merger Agreement,

21  any breach of the Merger Agreement, or the termination of the Merger Agreement

22  has any relevance.  LeEco reserves all rights, including the right to amend and

23  supplement its Response to this Request, should it become necessary and

24  appropriate to do so.

25      LeEco further objects that this Request is compound and overbroad.  LeEco

26  further objects that the phrase "actual assets and financing available" is vague and

27  ambiguous.

28      LeEco further objects that this Request appears to seek documents and

ERVIN COHEN & JESSUP LLP

1   communications protected by the attorney-client privilege and work product
2   doctrine.  LeEco objects to producing any privileged communications.  LeEco
3   further objects to producing any such documents created after this lawsuit was filed
4   that merely "Relate To" the Merger or Vizio, as those documents would clearly be
5   protected by the attorney client privilege and attorney work product doctrine.
6   LeEco further objects to logging all privileged and work product documents created
7   after this lawsuit was filed as unduly burdensome and disproportionate to the needs
8   of the case.

9        LeEco further objects that the Request seeks the documents and
10  communications of third parties or documents and communications which are not in
11  LeEco's possession, custody or control.  Furthermore, this Request, which seeks
12  discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears
13  calculated merely to harass and is overbroad, irrelevant, and not proportional to the
14  needs of the case.  Particularly if the case is limited to a breach of the Framework
15  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
16  payment to Vizio of $40 million and another $10 million in escrow that is disputed.
17  The remaining dispute concerns the Parties' obligations to each other in the context
18  of the proposed China JV.

19  Moreover, Merger Sub is not a party to this action.

20  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

21       LeLe restates and incorporates by reference the Preliminary Statement and
22  General Objections set forth above.  LeLe further objects to this Request on the
23  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
24  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
25  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
26  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
27  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
28  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
2   never properly served in this action.  In addition to being premature, the Requests
3   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
4   are calculated merely to harass and are overbroad, irrelevant, and not proportional to
5   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
6   seeks the documents and communications of third parties or documents and
7   communications which are not in LeLe's possession, custody or control.

8          Furthermore, Vizio's Requests are premature because they pertain to issues
9   that would be rendered irrelevant were the Court to grant LeEco's pending MTD
10  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
11  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
12  action for breach of the Merger Agreement including its various theories of fraud
13  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
14  the Framework Agreement upon receipt of $40 million ("Released Claims"), which
15  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
16  Merger Agreement, including the negotiation or entry into the Merger Agreement,
17  any breach of the Merger Agreement, or the termination of the Merger Agreement
18  has any relevance, and discovery should be limited to whether there was a breach of
19  the Framework Agreement.  LeLe reserves all rights, including the right to amend
20  and supplement its Responses and Objections to Vizio's Requests, should it become
21  necessary and appropriate to do so.

22         LeLe further objects that this Request is compound and overbroad.  LeLe
23  further objects that the phrase "actual assets and financing available" is vague and
24  ambiguous.

25         LeLe further objects that the Request seeks the documents and
26  communications of third parties or documents and communications which are not in
27  LeLe's possession, custody or control.  Furthermore, this Request, which seeks
28  discovery from individuals and entities ("Unrelated Third Parties") supposedly

ERVIN COHEN & JESSUP LLP

1   "affiliated" with LeLe appears calculated merely to harass and is overbroad,

2   irrelevant, and not proportional to the needs of the case.  Particularly if the case is

3   limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

4   (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

5   million in escrow that is disputed.  The remaining dispute concerns LeEco and

6   Vizio's obligations to each other in the context of the proposed China JV.

7   Moreover, Merger Sub is not a party to this action.

8        LeLe further objects that this Request appears to seek documents and

9   communications protected by the attorney-client privilege and work product

10   doctrine.  LeLe objects to producing any privileged communications.  LeLe further

11   objects to producing any such documents created after this lawsuit was filed that

12   merely "Relate To" the subject matter of the Request as those documents would

13   clearly be protected by the attorney client privilege and attorney work product

14   doctrine.  LeLe further objects to logging all privileged and work product

15   documents created after this lawsuit was filed as unduly burdensome and

16   disproportionate to the needs of the case.

17   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

18   **NO. 24 SHOULD BE COMPELLED:**

19        As Defendants' objections to this RFP are either in whole, or in substantial

20   part identical to the objections which they asserted to Plaintiff's RFP No. One,

21   Plaintiff hereby incorporates by reference all of its reasons why a further response to

22   RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

23   though set forth fully in this place.

24        Wholly apart from these reasons, the notion that documents which relate to

25   the assets and funding of Defendants to be able to complete the Merger on the

26   closing date are somehow irrelevant flies directly in the face of the alternative Claim

27   for Relief for Breach of the Merger Agreement, let alone Rescission of the

28   Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure*

ERVIN COHEN & JESSUP LLP

1  specifically provides that "[P]arties may obtain discovery regarding any

2  unprivileged matter that is relevant to any party's claim or defense and proportional

3  to the needs of the case, considering the importance of the issues at stake in the

4  action, the amount in controversy, the parties' relative access to relevant

5  information, the parties' resources, the importance of discovery in resolving the

6  issues and whether the burden or expense of the proposed discovery outweighs its

7  likely benefit.  Information…need not be admissible in evidence to be

8  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

9  search for facts, the names of witnesses, or any other matters which may aid a party

10  in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

11  Cal.)

12          The notion that these documents need not be produced because the Franchise

13  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

14  Framework Agreement specifically carved out and left intact the "remaining Buyer

15  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

16  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

17  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

18  settled law that if a defrauded party is induced by false representations to execute a

19  contract, the party has the option of rescinding the contract or affirming it and

20  recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

21  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart

22  Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

23  defrauded party is induced by false representations to execute a contract, the party

24  has the option of rescinding the contract or affirming it and recovering damages for

25  the fraud.")  Third, where, as here, the release was not the sole object of the

26  Framework Agreement, there is no requirement that any consideration be restored to

27  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

28  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

2   rescission, such relief "shall not be denied because of a delay in restoring or

3   tendering restoration of such benefits before judgment unless such delay has been

4   substantially prejudicial to the other party, but [rather], the court may make a tender

5   of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

6   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

7   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

8   and Cabrera….But Taylor's claim for rescission…is a claim about the

9   circumstances that brought about the Settlement Agreement and therefore the tender

10  need not be made prior to determining whether Taylor actually has a definite ground

11  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

12  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

13  claim that the Framework Agreement somehow substitutes for the Merger

14  Agreement in its entirety, with or without the express carve out of the $50MM

15  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

16  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

17  California law and holding that fraud claim for rescission would operate to restore

18  old agreement notwithstanding that a new agreement had been substituted for the

19  old agreement).  Sixth, documents related to assets and funding of the Defendants to

20  be able to complete the Merger on the closing date and the fraudulent

21  misrepresentations that gave rise to it are germane to explaining the circumstances

22  which gave rise to the Framework Agreement and/or whether Defendants likewise

23  made fraudulent representations or otherwise acted in good faith with respect to it,

24  *i.e.,* are equally probative on issues of intent, knowledge, good faith and absence of

25  mistake as to the Framework Agreement and the dealings between VIZIO and

26  Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*,

27  *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad acts of defendants in

28  obtaining conventional mobile home loans (*i.e.,* loan irregularities) admissible in

1  subsequent trial of fraudulent scheme to obtain FHA loans since "[t]he fact that
2  Jenkins used fraudulent means to secure conventional loans is probative on issues of
3  intent, knowledge, good faith and absence of mistake in dealing with FHA
4  transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior
5  fraudulent land patent scheme and past failure to file tax returns admissible in
6  subsequent complex tax fraud conspiracy trial since the former "was used to explain
7  how the…conspirators met each other and garnered customers, while the latter
8  constituted "prior acts" that were "probative of issues of intent, knowledge, good
9  faith and absence of mistake.")

10      In short, production should be ordered in full, without objection.

11  **REQUEST FOR PRODUCTION NO. 25:**

12      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
13  the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer
14  Termination Fee Remainder" as those terms are defined in Section 10.2 of the
15  MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

16  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

17      LeEco restates and incorporates by reference the Preliminary Statement and
18  General Objections set forth above.  LeEco further objects to this Request as
19  premature and improper because Vizio's second through sixth causes of action in
20  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants
21  LeEco's Motion to Dismiss, then the information and documents sought by this
22  Request are not relevant, making the Request disproportionate to the needs of the
23  case.  LeEco contends that, at this stage, any discovery in this matter should be
24  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the
25  Merger Agreement (including its various theories of fraud related to that alleged
26  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which
27  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
28  Merger Agreement, including the negotiation or entry into the Merger Agreement,

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1  any breach of the Merger Agreement, or the termination of the Merger Agreement
2  has any relevance.  The Guaranty only applied to the Buyer Termination Fee
3  Remainder which was eliminated following the Parties' agreement they were
4  terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is
5  the mutual walk-away without there being any Buyer Termination Fee Penalty
6  (including but not limited to the Buyer Termination Fee Remainder).

7  LeEco further objects that this Request is compound and overbroad,
8  particularly in its request for "Any and All Documents or Communications Relating
9  To the to the Buyer Termination Fee, Buyer Termination Fee Deposit or Buyer
10  Termination Fee Remainder...."

11  LeEco further objects that, as phrased, this Request appears to seek
12  documents that are equally available to Vizio.  LeEco objects to searching for and
13  producing documents equally available to Vizio.

14  LeEco further objects that this Request appears to seek documents and
15  communications protected by the attorney-client privilege and work product
16  doctrine.  LeEco objects to producing any privileged communications.  LeEco
17  further objects to producing any such documents created after this lawsuit was filed
18  that merely "Relate To" terms within Merger Agreement, as those documents would
19  clearly be protected by the attorney client privilege and attorney work product
20  doctrine.  LeEco further objects to logging all privileged and work product
21  documents created after this lawsuit was filed as unduly burdensome and
22  disproportionate to the needs of the case.

23  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

24  LeLe restates and incorporates by reference the Preliminary Statement and
25  General Objections set forth above.  LeLe further objects to this Request on the
26  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
27  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
28  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

ERVIN COHEN & JESSUP LLP

1   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

2   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

3   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

4   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

5   never properly served in this action.  In addition to being premature, the Requests

6   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

7   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

8   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

9   seeks the documents and communications of third parties or documents and

10  communications which are not in LeLe's possession, custody or control.

11        Furthermore, Vizio's Requests are premature because they pertain to issues

12  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

13  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

14  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

15  action for breach of the Merger Agreement including its various theories of fraud

16  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

17  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

18  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

19  Merger Agreement, including the negotiation or entry into the Merger Agreement,

20  any breach of the Merger Agreement, or the termination of the Merger Agreement

21  has any relevance, and discovery should be limited to whether there was a breach of

22  the Framework Agreement.  LeLe reserves all rights, including the right to amend

23  and supplement its Responses and Objections to Vizio's Requests, should it become

24  necessary and appropriate to do so.

25        LeLe further objects that this Request is compound and overbroad,

26  particularly in its request for "Any and All Documents or Communications Relating

27  To the to the Buyer Termination Fee, Buyer Termination Fee Deposit or Buyer

28  Termination Fee Remainder...."

ERVIN COHEN & JESSUP LLP

1    LeLe further objects that, as phrased, this Request appears to seek documents

2  that are equally available to Vizio.  LeLe objects to searching for and producing

3  documents equally available to Vizio.

4    LeLe further objects that this Request appears to seek documents and

5  communications protected by the attorney-client privilege and work product

6  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

7  objects to producing any such documents created after this lawsuit was filed that

8  merely "Relate To" the subject matter of the Request as those documents would

9  clearly be protected by the attorney client privilege and attorney work product

10  doctrine.  LeLe further objects to logging all privileged and work product

11  documents created after this lawsuit was filed as unduly burdensome and

12  disproportionate to the needs of the case.

13  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

14  **NO. 25 SHOULD BE COMPELLED:**

15    As Defendants' objections to this RFP are either in whole, or in substantial

16  part identical to the objections which they asserted to Plaintiff's RFP No. One,

17  Plaintiff hereby incorporates by reference all of its reasons why a further response to

18  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

19  though set forth fully in this place.

20    Wholly apart from these reasons, the notion that documents which relate to

21  the Merger Agreement, the "Buyer Termination Fee", and "Buyer Termination Fee

22  Deposit" defined therein are somehow irrelevant flies directly in the face of the

23  alternative Claim for Relief for Breach of the Merger Agreement, let alone

24  Rescission of the Framework Agreement.  The and the "Buyer Termination Fee"

25  and "Buyer Termination Fee Deposit" are matters called for in the Merger

26  Agreement.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically

27  provides that "[P]arties may obtain discovery regarding any unprivileged matter that

28  is relevant to any party's claim or defense and proportional to the needs of the case,

ERVIN COHEN & JESSUP LLP

1  considering the importance of the issues at stake in the action, the amount in

2  controversy, the parties' relative access to relevant information, the parties'

3  resources, the importance of discovery in resolving the issues and whether the

4  burden or expense of the proposed discovery outweighs its likely benefit.

5  Information…need not be admissible in evidence to be discoverable." That is

6  because "[t]he purpose of discovery is to allow a broad search for facts, the names

7  of witnesses, or any other matters which may aid a party in the preparation of his

8  case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

9       The notion that these documents need not be produced because the Franchise

10  Agreement terminated the Merger Agreement is absurd. First, Section 1.1 of the

11  Framework Agreement specifically carved out and left intact the "remaining Buyer

12  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

13  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

14  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

15  settled law that if a defrauded party is induced by false representations to execute a

16  contract, the party has the option of rescinding the contract or affirming it and

17  recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

18  B.A.P. (applying this rule to settlement agreements.) *Accord, Persson v. Smart*

19  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

20  defrauded party is induced by false representations to execute a contract, the party

21  has the option of rescinding the contract or affirming it and recovering damages for

22  the fraud.")  Third, where, as here, the release was not the sole object of the

23  Framework Agreement, there is no requirement that any consideration be restored to

24  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

25  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

26  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

27  rescission, such relief "shall not be denied because of a delay in restoring or

28  tendering restoration of such benefits before judgment unless such delay has been

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  substantially prejudicial to the other party, but [rather], the court may make a tender

2  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

3  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

4  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

5  and Cabrera….But Taylor's claim for rescission…is a claim about the

6  circumstances that brought about the Settlement Agreement and therefore the tender

7  need not be made prior to determining whether Taylor actually has a definite ground

8  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

9  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

10  claim that the Framework Agreement somehow substitutes for the Merger

11  Agreement in its entirety, with or without the express carve out of the $50MM

12  Remaining Buyer Termination Fee Deposit provisions.  *Airs Intern, Inc. v. Perfect*

13  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

14  California law and holding that fraud claim for rescission would operate to restore

15  old agreement notwithstanding that a new agreement had been substituted for the

16  old agreement).  Sixth, documents related to the Merger Agreement, the "Buyer

17  Termination Fee", and "Buyer Termination Fee Deposit" defined therein as well as

18  the fraudulent misrepresentations that gave rise to them are germane to explaining

19  the circumstances which gave rise to the Framework Agreement and/or whether

20  Defendants likewise made fraudulent representations or otherwise acted in good

21  faith with respect to it, *i.e.,* are equally probative on issues of intent, knowledge,

22  good faith and absence of mistake as to the Framework Agreement and the dealings

23  between VIZIO and Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

24  Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad

25  acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan

26  irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

27  loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

28  loans is probative on issues of intent, knowledge, good faith and absence of mistake

ERVIN COHEN & JESSUP LLP

1   in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

2   (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

3   returns admissible in subsequent complex tax fraud conspiracy trial since the former

4   "was used to explain how the…conspirators met each other and garnered customers,

5   while the latter constituted "prior acts" that were "probative of issues of intent,

6   knowledge, good faith and absence of mistake.")

7        In short, production should be ordered in full, without objection.

8   **REQUEST FOR PRODUCTION NO. 26:**

9        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

10   the source of monies deposited in ESCROW to serve as the "Buyer Termination Fee

11   Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT

12   and used in Section 9.2 of the MERGER AGREEMENT.

13   **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

14        LeEco restates and incorporates by reference the Preliminary Statement and

15   General Objections set forth above.  LeEco further objects to this Request as

16   premature and improper because Vizio's second through sixth causes of action in

17   the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

18   LeEco's Motion to Dismiss, then the information and documents sought by this

19   Request are not relevant, making the Request disproportionate to the needs of the

20   case.  LeEco contends that, at this stage, any discovery in this matter should be

21   limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

22   Merger Agreement (including its various theories of fraud related to that alleged

23   breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

24   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

25   Merger Agreement, including the negotiation or entry into the Merger Agreement,

26   any breach of the Merger Agreement, or the termination of the Merger Agreement

27   has any relevance.  The Guaranty only applied to the Buyer Termination Fee

28   Remainder which was eliminated following the Parties' agreement they were

ERVIN COHEN & JESSUP LLP

1 terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

2 the mutual walk-away without there being any Buyer Termination Fee Penalty

3 (including but not limited to the Buyer Termination Fee Remainder).

4     LeEco further objects that this Request is compound and overbroad,

5 particularly in its request for "Any and All Documents or Communications Relating

6 To the to the source of monies deposited in Escrow to serve as the Buyer

7 Termination Fee Deposit…"

8     LeEco further objects that, as phrased, this Request appears to seek

9 documents that are equally available to Vizio.  LeEco objects to searching for and

10 producing documents equally available to Vizio.

11     LeEco further objects that this Request appears to seek documents and

12 communications protected by the attorney-client privilege and work product

13 doctrine.  LeEco objects to producing any privileged communications.  LeEco

14 further objects to producing any such documents created after this lawsuit was filed

15 that merely "Relate To" terms within Merger Agreement, as those documents would

16 clearly be protected by the attorney client privilege and attorney work product

17 doctrine.  LeEco further objects to logging all privileged and work product

18 documents created after this lawsuit was filed as unduly burdensome and

19 disproportionate to the needs of the case.

20 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

21     LeLe restates and incorporates by reference the Preliminary Statement and

22 General Objections set forth above.  LeLe further objects to this Request on the

23 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

24 of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

25 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

26 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

27 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

28 Vizio that give rise to this action nor is LeLe alleged to have made any statement to

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1 | Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

2 | never properly served in this action.  In addition to being premature, the Requests

3 | directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

4 | are calculated merely to harass and are overbroad, irrelevant, and not proportional to

5 | the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

6 | seeks the documents and communications of third parties or documents and

7 | communications which are not in LeLe's possession, custody or control.

8 | Furthermore, Vizio's Requests are premature because they pertain to issues

9 | that would be rendered irrelevant were the Court to grant LeEco's pending MTD

10 | Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

11 | LeEco's pending MTD would eliminate Vizio's second through sixth causes of

12 | action for breach of the Merger Agreement including its various theories of fraud

13 | related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

14 | the Framework Agreement upon receipt of $40 million ("Released Claims"), which

15 | Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

16 | Merger Agreement, including the negotiation or entry into the Merger Agreement,

17 | any breach of the Merger Agreement, or the termination of the Merger Agreement

18 | has any relevance, and discovery should be limited to whether there was a breach of

19 | the Framework Agreement.  LeLe reserves all rights, including the right to amend

20 | and supplement its Responses and Objections to Vizio's Requests, should it become

21 | necessary and appropriate to do so.

22 | LeLe further objects that this Request is compound and overbroad,

23 | particularly in its request for "Any and All Documents or Communications Relating

24 | To the to the source of monies deposited in Escrow to serve as the Buyer

25 | Termination Fee Deposit ..."

26 | LeLe further objects that, as phrased, this Request appears to seek documents

27 | that are equally available to Vizio.  LeLe objects to searching for and producing

28 | documents equally available to Vizio.

ERVIN COHEN & JESSUP LLP

1   LeLe further objects that this Request appears to seek documents and
2   communications protected by the attorney-client privilege and work product
3   doctrine.  LeLe objects to producing any privileged communications.  LeLe further
4   objects to producing any such documents created after this lawsuit was filed that
5   merely "Relate To" the subject matter of the Request as those documents would
6   clearly be protected by the attorney client privilege and attorney work product
7   doctrine.  LeLe further objects to logging all privileged and work product
8   documents created after this lawsuit was filed as unduly burdensome and
9   disproportionate to the needs of the case.

**10  REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
**11  NO. 26 SHOULD BE COMPELLED:**

12   As Defendants' objections to this RFP are either in whole, or in substantial
13   part identical to the objections which they asserted to Plaintiff's RFP No. One,
14   Plaintiff hereby incorporates by reference all of its reasons why a further response to
15   RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
16   though set forth fully in this place.

17   Wholly apart from these reasons, the notion that documents which relate to
18   the Merger Agreement and the source of funding for Escrow of the "Buyer
19   Termination Fee" and "Buyer Termination Fee Deposit" as defined therein are
20   somehow irrelevant flies directly in the face of the alternative Claim for Relief for
21   Breach of the Merger Agreement, let alone Rescission of the Framework
22   Agreement.  The Escrow of the "Buyer Termination Fee" and "Buyer Termination
23   Fee Deposit" are matters called for in the Merger Agreement.  Rule 26(b)(1) of the
24   *Federal Rules of Civil Procedure* specifically provides that "[P]arties may obtain
25   discovery regarding any unprivileged matter that is relevant to any party's claim or
26   defense and proportional to the needs of the case, considering the importance of the
27   issues at stake in the action, the amount in controversy, the parties' relative access to
28   relevant information, the parties' resources, the importance of discovery in resolving

1   the issues and whether the burden or expense of the proposed discovery outweighs

2   its likely benefit.  Information…need not be admissible in evidence to be

3   discoverable."  That is because "[t]he purpose of discovery is to allow a broad

4   search for facts, the names of witnesses, or any other matters which may aid a party

5   in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

6   Cal.)

7         The notion that these documents need not be produced because the Franchise

8   Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

9   Framework Agreement specifically carved out and left intact the "remaining Buyer

10  Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

11  sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

12  Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

13  settled law that if a defrauded party is induced by false representations to execute a

14  contract, the party has the option of rescinding the contract or affirming it and

15  recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

16  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

17  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

18  defrauded party is induced by false representations to execute a contract, the party

19  has the option of rescinding the contract or affirming it and recovering damages for

20  the fraud.")  Third, where, as here, the release was not the sole object of the

21  Framework Agreement, there is no requirement that any consideration be restored to

22  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

23  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

24  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

25  rescission, such relief "shall not be denied because of a delay in restoring or

26  tendering restoration of such benefits before judgment unless such delay has been

27  substantially prejudicial to the other party, but [rather], the court may make a tender

28  of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.*

ERVIN COHEN & JESSUP LLP

1   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

2   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

3   and Cabrera….But Taylor's claim for rescission…is a claim about the

4   circumstances that brought about the Settlement Agreement and therefore the tender

5   need not be made prior to determining whether Taylor actually has a definite ground

6   to rescind."). Fifth, a successful claim for rescission based on fraud would operate

7   to restore the Merger Agreement in its terminated state notwithstanding Defendants'

8   claim that the Framework Agreement somehow substitutes for the Merger

9   Agreement in its entirety, with or without the express carve out of the $50MM

10  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

11  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

12  California law and holding that fraud claim for rescission would operate to restore

13  old agreement notwithstanding that a new agreement had been substituted for the

14  old agreement). Sixth, documents related to the Merger Agreement as well as the

15  source of funding for Escrow of the "Buyer Termination Fee" and "Buyer

16  Termination Fee Deposit" as defined therein and the fraudulent misrepresentations

17  that gave rise to them are germane to alter-ego liability, let alone explaining the

18  circumstances which gave rise to the Framework Agreement and/or whether

19  Defendants likewise made fraudulent representations or otherwise acted in good

20  faith with respect to it, *i.e.,* are equally probative on issues of intent, knowledge,

21  good faith and absence of mistake as to the Framework Agreement and the dealings

22  between VIZIO and Defendants. *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th

23  Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad

24  acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan

25  irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

26  loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

27  loans is probative on issues of intent, knowledge, good faith and absence of mistake

28  in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

ERVIN COHEN & JESSUP LLP

1  (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

2  returns admissible in subsequent complex tax fraud conspiracy trial since the former

3  "was used to explain how the…conspirators met each other and garnered customers,

4  while the latter constituted "prior acts" that were "probative of issues of intent,

5  knowledge, good faith and absence of mistake.")

6      In short, production should be ordered in full, without objection.

7  **REQUEST FOR PRODUCTION NO. 27:**

8      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

9  the termination of the MERGER AGREEMENT.

10  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

11      LeEco restates and incorporates by reference the Preliminary Statement and

12  General Objections set forth above.  LeEco further objects to this Request as

13  premature and improper because Vizio's second through sixth causes of action in

14  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

15  LeEco's Motion to Dismiss, then the information and documents sought by this

16  Request are not relevant, making the Request disproportionate to the needs of the

17  case.  LeEco contends that, at this stage, any discovery in this matter should be

18  limited in scope.  LeEco reserves all rights, including the right to amend and

19  supplement its Response to this Request, should it become necessary and

20  appropriate to do so.

21      LeEco further objects that this Request is compound and overbroad,

22  particularly in its request for "Any and All Documents or Communications Relating

23  To the termination of the Merger Agreement." LeEco further objects that this

24  Request appears to seek documents protected by the attorney-client privilege and

25  work product doctrine.  Defendant objects to producing any such documents created

26  after this lawsuit was filed that merely "Relate To" the Merger Agreement (or

27  termination of it) as those documents would clearly be protected by the attorney

28  client privilege and attorney work product doctrine.  LeEco further objects to

ERVIN COHEN & JESSUP LLP

1  logging all privileged and work product documents created after this lawsuit was

2  filed as unduly burdensome and disproportionate to the needs of the case.  LeEco

3  interprets this Request as seeking non-privileged documents and communications,

4  created prior to this lawsuit, relating to the termination of the Merger Agreement in

5  the context of the formation, negotiation and execution of the Framework

6  Agreement.

7         Subject to and without waiving any of its objections, LeEco responds as

8  follows: LeEco will conduct a reasonable search of documents within its possession,

9  custody or control created prior to this lawsuit's filing date that relate to relating to

10  the termination of the Merger Agreement in the context of the formation,

11  negotiation and execution of the Framework Agreement.  LeEco will produce

12  nonprivileged documents identified during the search on a rolling basis, starting on

13  April 25, 2018.  LeEco expects to complete its rolling production on or before

14  approximately July 25, 2018.

15  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

16         LeLe restates and incorporates by reference the Preliminary Statement and

17  General Objections set forth above.  LeLe further objects to this Request on the

18  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

19  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

20  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

21  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

22  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

23  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

24  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

25  never properly served in this action.  In addition to being premature, the Requests

26  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

27  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

28  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1 │ seeks the documents and communications of third parties or documents and
2 │ communications which are not in LeLe's possession, custody or control.

3 │     Furthermore, Vizio's Requests are premature because they pertain to issues
4 │ that would be rendered irrelevant were the Court to grant LeEco's pending MTD
5 │ Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
6 │ LeEco's pending MTD would eliminate Vizio's second through sixth causes of
7 │ action for breach of the Merger Agreement including its various theories of fraud
8 │ related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
9 │ the Framework Agreement upon receipt of $40 million ("Released Claims"), which
10 │ Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
11 │ Merger Agreement, including the negotiation or entry into the Merger Agreement,
12 │ any breach of the Merger Agreement, or the termination of the Merger Agreement
13 │ has any relevance, and discovery should be limited to whether there was a breach of
14 │ the Framework Agreement.  LeLe reserves all rights, including the right to amend
15 │ and supplement its Responses and Objections to Vizio's Requests, should it become
16 │ necessary and appropriate to do so.

17 │     LeLe further objects that this Request is compound and overbroad,
18 │ particularly in its request for "Any and All Documents or Communications Relating
19 │ To the termination of the Merger Agreement."

20 │     LeLe further objects that this Request appears to seek documents and
21 │ communications protected by the attorney-client privilege and work product
22 │ doctrine.  LeLe objects to producing any privileged communications.  LeLe further
23 │ objects to producing any such documents created after this lawsuit was filed that
24 │ merely "Relate To" the subject matter of the Request as those documents would
25 │ clearly be protected by the attorney client privilege and attorney work product
26 │ doctrine.  LeLe further objects to logging all privileged and work product
27 │ documents created after this lawsuit was filed as unduly burdensome and
28 │ disproportionate to the needs of the case.

Ervin Cohen & Jessup LLP

**REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 27 SHOULD BE COMPELLED:**

Pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories in the request." In response to Plaintiff's RFPs, Defendants produced 336 pages of documents consisting mostly of emails and redlined versions of the agreements between the parties. The responses were not labeled to correspond with any specific categories set forth in Plaintiff's RFPs, nor were they produced as kept in the ordinary and regular course of business. Pointedly, no information was provided as to which file they came from, whose possession they were in or which custodian or custodians of record maintained them. Instead, they were all loaded onto a ZIP file and emailed to Plaintiff. This is tantamount to simply placing the documents in a box, and providing them to Plaintiff, which does not satisfy Rule 34(b)(2)(i). *See CooperVision, Inc. v. Ciba Vision Corp.,* No. 2:06 CV 149, 2007 WL 2264848, at *5 (E.D.Tex. Aug. 6, 2007), ("[S]imply placing documents in boxes and making them available does not conform to the rule."); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535, 541 (D.Kan.2006) (where a producing party provided no information regarding the manner in which the documents were produced, including where they were maintained, the identity of the custodian, and whether they were from a single source or multiple sources of files, the producing party failed to carry its burden of demonstrating that the documents were produced as they were maintained)*; Wagner v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001) ( "[P]roducing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34.") (*citations omitted*)*; Stiller v. Arnold,* 167 F.R.D. 68, 71 (N.D.Ind.1996) ("Producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b).")*; T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (in

ERVIN COHEN & JESSUP LLP

1    response to production of 789 documents, bates-stamped and provided in a box with
2    no discernable order, the court expressed doubt that production was made as the
3    documents were kept in the usual course of business, and thus directed that the
4    documents be organized and labeled to indicate the specific document demand to
5    which each related); *Scripps Clinic & Research Found. v. Baxter Travenol*
6    *Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at * 3–4 (D.Del. June 21,
7    1988) (production of 45,000 documents "arranged in bundles within each of the
8    fifteen boxes, most of the bundles contain[ing] no designation as to the origin of the
9    file, the name of the file, or whether the bundle contained documents from multiple
10   files" deemed insufficient to satisfy the requirements of Rule 34(b)).  As
11   Defendants' production suffers for the same defects as those in the aforementioned
12   cases, Defendants must be compelled to produce the documents labeled per
13   category.

14   **REQUEST FOR PRODUCTION NO. 28:**

15        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
16   reasons why the MERGER was not, or could not, be completed.

17   **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

18        LeEco restates and incorporates by reference the Preliminary Statement and
19   General Objections set forth above.  LeEco further objects to this Request as
20   premature and improper because Vizio's second through sixth causes of action in
21   the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants
22   LeEco's Motion to Dismiss, then the information and documents sought by this
23   Request are not relevant, making the Request disproportionate to the needs of the
24   case.  LeEco contends that, at this stage, any discovery in this matter should be
25   limited in scope.  Specifically, Vizio gave a release of all claims for breach of the
26   Merger Agreement (including its various theories of fraud related to that alleged
27   breach) to LeEco in the Framework Agreement upon receipt of $40 million, which
28   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

ERVIN COHEN & JESSUP LLP

1  Merger Agreement, including the negotiation or entry into the Merger Agreement,
2  any breach of the Merger Agreement, or the termination of the Merger Agreement
3  has any relevance.  LeEco reserves all rights, including the right to amend and
4  supplement its Response to this Request, should it become necessary and
5  appropriate to do so.

6       LeEco further objects that, as phrased, this Request appears to seek
7  documents that are equally available to Vizio.  LeEco objects to searching for and
8  producing documents equally available to Vizio.

9       LeEco further objects that this Request appears to seek documents and
10  communications protected by the attorney-client privilege and work product
11  doctrine.  LeEco objects to producing any privileged communications.  LeEco
12  further objects to producing any such documents created after this lawsuit was filed
13  that merely "Relate To" the Merger, as those documents would clearly be protected
14  by the attorney client privilege and attorney work product doctrine.  LeEco further
15  objects to logging all privileged and work product documents created after this
16  lawsuit was filed as unduly burdensome and disproportionate to the needs of the
17  case.

18  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

19       LeLe restates and incorporates by reference the Preliminary Statement and
20  General Objections set forth above.  LeLe further objects to this Request on the
21  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
22  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
23  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
24  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
25  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
26  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
27  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
28  never properly served in this action.  In addition to being premature, the Requests

ERVIN COHEN & JESSUP LLP

1   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
2   are calculated merely to harass and are overbroad, irrelevant, and not proportional to
3   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
4   seeks the documents and communications of third parties or documents and
5   communications which are not in LeLe's possession, custody or control.

6          Furthermore, Vizio's Requests are premature because they pertain to issues
7   that would be rendered irrelevant were the Court to grant LeEco's pending MTD
8   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
9   LeEco's pending MTD would eliminate Vizio's second through sixth causes of
10   action for breach of the Merger Agreement including its various theories of fraud
11   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
12   the Framework Agreement upon receipt of $40 million ("Released Claims"), which
13   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
14   Merger Agreement, including the negotiation or entry into the Merger Agreement,
15   any breach of the Merger Agreement, or the termination of the Merger Agreement
16   has any relevance, and discovery should be limited to whether there was a breach of
17   the Framework Agreement.  LeLe reserves all rights, including the right to amend
18   and supplement its Responses and Objections to Vizio's Requests, should it become
19   necessary and appropriate to do so.

20          LeLe further objects that, as phrased, this Request appears to seek documents
21   that are equally available to Vizio.  LeLe objects to searching for and producing
22   documents equally available to Vizio.

23          LeLe further objects that this Request appears to seek documents and
24   communications protected by the attorney-client privilege and work product
25   doctrine.  LeLe objects to producing any privileged communications.  LeLe further
26   objects to producing any such documents created after this lawsuit was filed that
27   merely "Relate To" the subject matter of the Request as those documents would
28   clearly be protected by the attorney client privilege and attorney work product

ERVIN COHEN & JESSUP LLP

1   doctrine.  LeLe further objects to logging all privileged and work product

2   documents created after this lawsuit was filed as unduly burdensome and

3   disproportionate to the needs of the case.

4   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

5   **NO. 28 SHOULD BE COMPELLED:**

6        As Defendants' objections to this RFP are either in whole, or in substantial

7   part identical to the objections which they asserted to Plaintiff's RFP No. One,

8   Plaintiff hereby incorporates by reference all of its reasons why a further response to

9   RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

10  though set forth fully in this place.

11       Wholly apart from these reasons, the notion that documents which relate to

12  why the Merger was not completed are somehow irrelevant flies directly in the face

13  of the alternative Claim for Relief for Breach of the Merger Agreement, let alone

14  Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of*

15  *Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding

16  any unprivileged matter that is relevant to any party's claim or defense and

17  proportional to the needs of the case, considering the importance of the issues at

18  stake in the action, the amount in controversy, the parties' relative access to relevant

19  information, the parties' resources, the importance of discovery in resolving the

20  issues and whether the burden or expense of the proposed discovery outweighs its

21  likely benefit.  Information…need not be admissible in evidence to be

22  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

23  search for facts, the names of witnesses, or any other matters which may aid a party

24  in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

25  Cal.)

26       The notion that these documents need not be produced because the Franchise

27  Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

28  Framework Agreement specifically carved out and left intact the "remaining Buyer

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

2   sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

3   Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

4   settled law that if a defrauded party is induced by false representations to execute a

5   contract, the party has the option of rescinding the contract or affirming it and

6   recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

7   B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

8   *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

9   defrauded party is induced by false representations to execute a contract, the party

10  has the option of rescinding the contract or affirming it and recovering damages for

11  the fraud.")  Third, where, as here, the release was not the sole object of the

12  Framework Agreement, there is no requirement that any consideration be restored to

13  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

14  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

15  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

16  rescission, such relief "shall not be denied because of a delay in restoring or

17  tendering restoration of such benefits before judgment unless such delay has been

18  substantially prejudicial to the other party, but [rather], the court may make a tender

19  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

20  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

21  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

22  and Cabrera….But Taylor's claim for rescission…is a claim about the

23  circumstances that brought about the Settlement Agreement and therefore the tender

24  need not be made prior to determining whether Taylor actually has a definite ground

25  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

26  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

27  claim that the Framework Agreement somehow substitutes for the Merger

28  Agreement in its entirety, with or without the express carve out of the $50MM

ERVIN COHEN & JESSUP LLP

1  Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*
2  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying
3  California law and holding that fraud claim for rescission would operate to restore
4  old agreement notwithstanding that a new agreement had been substituted for the
5  old agreement).  Sixth, documents related to why the Merger was not completed and
6  the fraudulent misrepresentations that gave rise to it are germane to explaining the
7  circumstances which gave rise to the Framework Agreement and/or whether
8  Defendants likewise made fraudulent representations or otherwise acted in good
9  faith with respect to it, *i.e.,* are equally probative on issues of intent, knowledge,
10  good faith and absence of mistake as to the Framework Agreement and the dealings
11  between VIZIO and Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th
12  Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad
13  acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan
14  irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA
15  loans since "[t]he fact that Jenkins used fraudulent means to secure conventional
16  loans is probative on issues of intent, knowledge, good faith and absence of mistake
17  in dealing with FHA transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610
18  (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax
19  returns admissible in subsequent complex tax fraud conspiracy trial since the former
20  "was used to explain how the…conspirators met each other and garnered customers,
21  while the latter constituted "prior acts" that were "probative of issues of intent,
22  knowledge, good faith and absence of mistake.")

23       In short, production should be ordered in full, without objection.

24  **REQUEST FOR PRODUCTION NO. 29:**

25       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a
26  potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE,
27  JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO
28  products in CHINA, INCLUDING emails, marketing plans, operational plans,

1  financial analyses, and strategy documents.

2  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

3  LeEco restates and incorporates by reference the Preliminary Statement and
4  General Objections set forth above.

5  LeEco further objects that the definition of "Affiliates" is overbroad, vague
6  and ambiguous and seeks the documents and communications of third parties or
7  documents and communications which are not in LeEco's possession, custody or
8  control.  Furthermore, this Request, which seeks discovery from Unrelated Third
9  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
10 is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if
11 the case is limited to a breach of the Framework Agreement, the dispute is limited to
12 LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
13 another $10 million in escrow that is disputed.  The remaining dispute concerns the
14 Parties' obligations to each other in the context of the proposed China JV.
15 Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
16 been served with the Summons and FAC, and LeTechnology, Inc. is not a party to
17 this action.

18 LeEco further objects that this Request appears to seek documents protected
19 by the attorney-client privilege and work product doctrine.  Defendant objects to
20 producing any such documents created after this lawsuit was filed that merely
21 "Relate To" the potential joint venture as those documents would clearly be
22 protected by the attorney client privilege and attorney work product doctrine.
23 LeEco further objects to logging all privileged and work product documents created
24 after this lawsuit was filed as unduly burdensome and disproportionate to the needs
25 of the case.  LeEco interprets this Request as seeking non-privileged documents and
26 communications, created prior to this lawsuit, relating to a potential joint venture
27 between Vizio, on one hand, and LeEco, on the other.

28 Subject to and without waiving any of its objections, LeEco responds as

ERVIN COHEN & JESSUP LLP

1 follows: LeEco will conduct a reasonable search of documents within its possession,
2 custody or control created prior to this lawsuit's filing date that relate to relating to a
3 potential joint venture between Vizio, on one hand, and LeEco, on the other.  LeEco
4 will produce nonprivileged documents identified during the search on a rolling
5 basis, starting on April 25, 2018.  LeEco expects to complete its rolling production
6 on or before approximately July 25, 2018.

7 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

8       LeLe restates and incorporates by reference the Preliminary Statement and
9 General Objections set forth above.  LeLe further objects to this Request on the
10 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
11 of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
12 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
13 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
14 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
15 Vizio that give rise to this action nor is LeLe alleged to have made any statement to
16 Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
17 never properly served in this action.  In addition to being premature, the Requests
18 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
19 are calculated merely to harass and are overbroad, irrelevant, and not proportional to
20 the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
21 seeks the documents and communications of third parties or documents and
22 communications which are not in LeLe's possession, custody or control.

23       Furthermore, Vizio's Requests are premature because they pertain to issues
24 that would be rendered irrelevant were the Court to grant LeEco's pending MTD
25 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
26 LeEco's pending MTD would eliminate Vizio's second through sixth causes of
27 action for breach of the Merger Agreement including its various theories of fraud
28 related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

2   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

3   Merger Agreement, including the negotiation or entry into the Merger Agreement,

4   any breach of the Merger Agreement, or the termination of the Merger Agreement

5   has any relevance, and discovery should be limited to whether there was a breach of

6   the Framework Agreement.  LeLe reserves all rights, including the right to amend

7   and supplement its Responses and Objections to Vizio's Requests, should it become

8   necessary and appropriate to do so.

9        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

10  ambiguous and seeks the documents and communications of third parties or

11  documents and communications which are not in LeLe's possession, custody or

12  control.  Furthermore, this Request, which seeks discovery from individuals and

13  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

14  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

15  needs of the case.  Particularly if the case is limited to a breach of the Framework

16  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

17  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

18  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

19  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

20  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

21  LeTechnology, Inc. is not a party to this action.

22       LeLe further objects that this Request appears to seek documents and

23  communications protected by the attorney-client privilege and work product

24  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

25  objects to producing any such documents created after this lawsuit was filed that

26  merely "Relate To" the subject matter of the Request as those documents would

27  clearly be protected by the attorney client privilege and attorney work product

28  doctrine.  LeLe further objects to logging all privileged and work product

1  documents created after this lawsuit was filed as unduly burdensome and

2  disproportionate to the needs of the case.

3  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

4  **NO. 29 SHOULD BE COMPELLED:**

5        Pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents

6  as they are kept in the usual course of business or must organize and label them to

7  correspond with the categories in the request."  In response to Plaintiff's RFPs,

8  Defendants produced 336 pages of documents consisting mostly of emails and

9  redlined versions of the agreements between the parties.  The responses were not

10  labeled to correspond with any specific categories set forth in Plaintiff's RFPs, nor

11  were they produced as kept in the ordinary and regular course of business.

12  Pointedly, no information was provided as to which file they came from, whose

13  possession they were in or which custodian or custodians of record maintained

14  them.  Instead, they were all loaded onto a ZIP file and emailed to Plaintiff.  This is

15  tantamount to simply placing the documents in a box, and providing them to

16  Plaintiff, which does not satisfy Rule 34(b)(2)(i).  *See  CooperVision, Inc. v. Ciba*

17  *Vision Corp.,* No. 2:06 CV 149, 2007 WL 2264848, at *5 (E.D.Tex. Aug. 6, 2007),

18  ("[S]imply placing documents in boxes and making them available does not

19  conform to the rule."); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535,

20  541 (D.Kan.2006) (where a producing party provided no information regarding the

21  manner in which the documents were produced, including where they were

22  maintained, the identity of the custodian, and whether they were from a single

23  source or multiple sources of files, the producing party failed to carry its burden of

24  demonstrating that the documents were produced as they were maintained)*; Wagner*

25  *v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001) ( "[P]roducing large

26  amounts of documents in no apparent order does not comply with a party's

27  obligation under Rule 34.") (*citations omitted); Stiller v. Arnold,* 167 F.R.D. 68, 71

28  (N.D.Ind.1996) ("Producing 7,000 pages of documents in no apparent order does

ERVIN COHEN & JESSUP LLP

1   not comply with a party's obligation under Rule 34(b)."); *T.N. Taube Corp. v.*
2   *Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (in
3   response to production of 789 documents, bates-stamped and provided in a box with
4   no discernable order, the court expressed doubt that production was made as the
5   documents were kept in the usual course of business, and thus directed that the
6   documents be organized and labeled to indicate the specific document demand to
7   which each related); *Scripps Clinic & Research Found. v. Baxter Travenol*
8   *Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at * 3–4 (D.Del. June 21,
9   1988) (production of 45,000 documents "arranged in bundles within each of the
10  fifteen boxes, most of the bundles contain[ing] no designation as to the origin of the
11  file, the name of the file, or whether the bundle contained documents from multiple
12  files" deemed insufficient to satisfy the requirements of Rule 34(b)).  As
13  Defendants' production suffers for the same defects as those in the aforementioned
14  cases, Defendants must be compelled to produce the documents labeled per
15  category.

16  **REQUEST FOR PRODUCTION NO. 30:**

17         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
18  negotiations or discussions between VIZIO and LeECO to "negotiate in good faith
19  and execute one or more agreements" regarding a joint venture in CHINA as
20  required by Section 4 of the FRAMEWORK AGREEMENT.

21  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

22         LeEco restates and incorporates by reference the Preliminary Statement and
23  General Objections set forth above.

24         LeEco further objects that this Request appears to seek documents protected
25  by the attorney-client privilege and work product doctrine.  Defendant objects to
26  producing any such documents created after this lawsuit was filed that merely
27  "Relate To" the subject matter of the Request as those documents would clearly be
28  protected by the attorney client privilege and attorney work product doctrine.

ERVIN COHEN & JESSUP LLP

1  LeEco further objects to logging all privileged and work product documents created

2  after this lawsuit was filed as unduly burdensome and disproportionate to the needs

3  of the case.

4      Subject to and without waiving any of its objections, LeEco responds as

5  follows: LeEco will conduct a reasonable search of documents within its possession,

6  custody or control created prior to this lawsuit's filing date.  LeEco will produce

7  nonprivileged documents identified during the search on a rolling basis, starting on

8  April 25, 2018.  LeEco expects to complete its rolling production on or before

9  approximately July 25, 2018.

10  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

11      LeLe restates and incorporates by reference the Preliminary Statement and

12  General Objections set forth above.  LeLe further objects to this Request on the

13  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

14  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

15  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

16  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

17  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

18  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

19  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

20  never properly served in this action.  In addition to being premature, the Requests

21  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

22  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

23  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

24  seeks the documents and communications of third parties or documents and

25  communications which are not in LeLe's possession, custody or control.

26      Furthermore, Vizio's Requests are premature because they pertain to issues

27  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

28  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
2  action for breach of the Merger Agreement including its various theories of fraud
3  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
4  the Framework Agreement upon receipt of $40 million ("Released Claims"), which
5  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
6  Merger Agreement, including the negotiation or entry into the Merger Agreement,
7  any breach of the Merger Agreement, or the termination of the Merger Agreement
8  has any relevance, and discovery should be limited to whether there was a breach of
9  the Framework Agreement.  LeLe reserves all rights, including the right to amend
10 and supplement its Responses and Objections to Vizio's Requests, should it become
11 necessary and appropriate to do so.

12      LeLe further objects that this Request appears to seek documents and
13 communications protected by the attorney-client privilege and work product
14 doctrine.  LeLe objects to producing any privileged communications.  LeLe further
15 objects to producing any such documents created after this lawsuit was filed that
16 merely "Relate To" the subject matter of the Request as those documents would
17 clearly be protected by the attorney client privilege and attorney work product
18 doctrine.  LeLe further objects to logging all privileged and work product
19 documents created after this lawsuit was filed as unduly burdensome and
20 disproportionate to the needs of the case.

21 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
22 **NO. 30 SHOULD BE COMPELLED:**

23      Pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents
24 as they are kept in the usual course of business or must organize and label them to
25 correspond with the categories in the request."  In response to Plaintiff's RFPs,
26 Defendants produced 336 pages of documents consisting mostly of emails and
27 redlined versions of the agreements between the parties.  The responses were not
28 labeled to correspond with any specific categories set forth in Plaintiff's RFPs, nor

1  were they produced as kept in the ordinary and regular course of business.

2  Pointedly, no information was provided as to which file they came from, whose

3  possession they were in or which custodian or custodians of record maintained

4  them.  Instead, they were all loaded onto a ZIP file and emailed to Plaintiff.  This is

5  tantamount to simply placing the documents in a box, and providing them to

6  Plaintiff, which does not satisfy Rule 34(b)(2)(i).  *See  CooperVision, Inc. v. Ciba*

7  *Vision Corp.,* No. 2:06 CV 149, 2007 WL 2264848, at *5 (E.D.Tex. Aug. 6, 2007),

8  ("[S]imply placing documents in boxes and making them available does not

9  conform to the rule."); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535,

10  541 (D.Kan.2006) (where a producing party provided no information regarding the

11  manner in which the documents were produced, including where they were

12  maintained, the identity of the custodian, and whether they were from a single

13  source or multiple sources of files, the producing party failed to carry its burden of

14  demonstrating that the documents were produced as they were maintained*); Wagner*

15  *v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001) ( "[P]roducing large

16  amounts of documents in no apparent order does not comply with a party's

17  obligation under Rule 34.") (*citations omitted); Stiller v. Arnold,* 167 F.R.D. 68, 71

18  (N.D.Ind.1996) ("Producing 7,000 pages of documents in no apparent order does

19  not comply with a party's obligation under Rule 34(b).")*; T.N. Taube Corp. v.*

20  *Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (in

21  response to production of 789 documents, bates-stamped and provided in a box with

22  no discernable order, the court expressed doubt that production was made as the

23  documents were kept in the usual course of business, and thus directed that the

24  documents be organized and labeled to indicate the specific document demand to

25  which each related); *Scripps Clinic & Research Found. v. Baxter Travenol*

26  *Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at * 3–4 (D.Del. June 21,

27  1988) (production of 45,000 documents "arranged in bundles within each of the

28  fifteen boxes, most of the bundles contain[ing] no designation as to the origin of the

199

ERVIN COHEN & JESSUP LLP

1  file, the name of the file, or whether the bundle contained documents from multiple

2  files" deemed insufficient to satisfy the requirements of Rule 34(b)).  As

3  Defendants' production suffers for the same defects as those in the aforementioned

4  cases, Defendants must be compelled to produce the documents labeled per

5  category.

6  **REQUEST FOR PRODUCTION NO. 31:**

7      DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual

8  relationships, and the terms of those relationships, between LeECO, GLOBAL,

9  LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other

10  PERSON on the other hand, that would have been impacted or affected by a joint

11  venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

12  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

13      LeEco restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.  LeEco further objects to this Request as

15  premature and improper because Vizio's second through sixth causes of action in

16  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

17  LeEco's Motion to Dismiss, then the information and documents sought by this

18  Request are not relevant, making the Request disproportionate to the needs of the

19  case.  LeEco contends that, at this stage, any discovery in this matter should be

20  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

21  Merger Agreement (including its various theories of fraud related to that alleged

22  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

23  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

24  Merger Agreement, including the negotiation or entry into the Merger Agreement,

25  any breach of the Merger Agreement, or the termination of the Merger Agreement

26  has any relevance.  LeEco reserves all rights, including the right to amend and

27  supplement its Response to this Request, should it become necessary and

28  appropriate to do so.

ERVIN COHEN & JESSUP LLP

1    LeEco further objects that this Request is compound and overbroad.  LeEco
2    also objects that the Request is unintelligible.  LeEco further objects that the phrase
3    "would have been impacted or affected by a joint venture" is vague and ambiguous
4    and, as phrased, calls for speculation.

5    LeEco further objects that this Request appears to seek documents and
6    communications protected by the attorney-client privilege and work product
7    doctrine.  LeEco objects to producing any privileged communications.  Defendant
8    objects to producing any such documents created after this lawsuit was filed that
9    merely "Relate To" the subject matter of the Request as those documents would
10   clearly be protected by the attorney client privilege and attorney work product
11   doctrine.  LeEco further objects to logging all privileged and work product
12   documents created after this lawsuit was filed as unduly burdensome and
13   disproportionate to the needs of the case.

14   LeEco further objects that the definition of "Affiliates" is overbroad, vague
15   and ambiguous and seeks the documents and communications of third parties or
16   documents and communications which are not in LeEco's possession, custody or
17   control.  Furthermore, this Request, which seeks discovery from Unrelated Third
18   Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
19   is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if
20   the case is limited to a breach of the Framework Agreement, the dispute is limited to
21   LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
22   another $10 million in escrow that is disputed.  The remaining dispute concerns the
23   Parties' obligations to each other in the context of the proposed China JV.
24   Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
25   been served with the Summons and FAC, and LeTechnology, Inc. is not a party to
26   this action.

27   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

28   LeLe restates and incorporates by reference the Preliminary Statement and

ERVIN COHEN & JESSUP LLP

1  General Objections set forth above.  LeLe further objects to this Request on the

2  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

3  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

4  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

5  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

6  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

7  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

8  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

9  never properly served in this action.  In addition to being premature, the Requests

10  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

11  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

12  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

13  seeks the documents and communications of third parties or documents and

14  communications which are not in LeLe's possession, custody or control.

15       Furthermore, Vizio's Requests are premature because they pertain to issues

16  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

17  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

18  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

19  action for breach of the Merger Agreement including its various theories of fraud

20  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

21  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

22  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

23  Merger Agreement, including the negotiation or entry into the Merger Agreement,

24  any breach of the Merger Agreement, or the termination of the Merger Agreement

25  has any relevance, and discovery should be limited to whether there was a breach of

26  the Framework Agreement.  LeLe reserves all rights, including the right to amend

27  and supplement its Responses and Objections to Vizio's Requests, should it become

28  necessary and appropriate to do so.

ERVIN COHEN & JESSUP LLP

1    LeLe further objects that this Request is compound and overbroad.  LeEco
2  also objects that the Request is unintelligible.  LeLe further objects that the phrase
3  "would have been impacted or affected by a joint venture" is vague and ambiguous
4  and, as phrased, calls for speculation.

5    LeLe further objects that the definition of "Affiliates" is overbroad, vague and
6  ambiguous and seeks the documents and communications of third parties or
7  documents and communications which are not in LeLe's possession, custody or
8  control.

9    Furthermore, this Request, which seeks discovery from individuals and
10  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears
11  calculated merely to harass and is overbroad, irrelevant, and not proportional to the
12  needs of the case.  Particularly if the case is limited to a breach of the Framework
13  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
14  payment to Vizio of $40 million and another $10 million in escrow that is disputed.
15  The remaining dispute concerns LeEco and Vizio's obligations to each other in the
16  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele
17  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and
18  LeTechnology, Inc. is not a party to this action.

19    LeLe further objects that this Request appears to seek documents and
20  communications protected by the attorney-client privilege and work product
21  doctrine.  LeLe objects to producing any privileged communications.  LeLe further
22  objects to producing any such documents created after this lawsuit was filed that
23  merely "Relate To" the subject matter of the Request as those documents would
24  clearly be protected by the attorney client privilege and attorney work product
25  doctrine.  LeLe further objects to logging all privileged and work product
26  documents created after this lawsuit was filed as unduly burdensome and
27  disproportionate to the needs of the case.

28

ERVIN COHEN & JESSUP LLP

1  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
2  **NO. 31 SHOULD BE COMPELLED:**

3       As Defendants' objections to this RFP are either in whole, or in substantial
4  part identical to the objections which they asserted to Plaintiff's RFP No. One,
5  Plaintiff hereby incorporates by reference all of its reasons why a further response to
6  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
7  though set forth fully in this place.

8  **REQUEST FOR PRODUCTION NO. 32:**

9       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
10  efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to
11  develop and obtain certification of the "LeEco Le App", as required of LeECO
12  under Section 2.1.1 of the FRAMEWORK AGREEMENT.

13  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

14       LeEco restates and incorporates by reference the Preliminary Statement and
15  General Objections set forth above.

16       LeEco further objects that the definition of "Affiliates" is overbroad, vague
17  and ambiguous and seeks the documents and communications of third parties or
18  documents and communications which are not in LeEco's possession, custody or
19  control.  Furthermore, this Request, which seeks discovery from Unrelated Third
20  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
21  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if
22  the case is limited to a breach of the Framework Agreement, the dispute is limited to
23  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
24  another $10 million in escrow that is disputed.  The remaining dispute concerns the
25  Parties' obligations to each other in the context of the proposed China JV.
26  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
27  been served with the Summons and FAC, and LeTechnology, Inc. is not a party to
28  this action.

14676.8:9283165.1                                                        8:17-CV-01175-DOC-JDE

ERVIN COHEN & JESSUP LLP

1   LeEco further objects that this Request appears to seek documents protected

2   by the attorney-client privilege and work product doctrine.  Defendant objects to

3   producing any such documents created after this lawsuit was filed that merely

4   "Relate To" the subject matter of the Request as those documents would clearly be

5   protected by the attorney client privilege and attorney work product doctrine.

6   LeEco further objects to logging all privileged and work product documents created

7   after this lawsuit was filed as unduly burdensome and disproportionate to the needs

8   of the case.

9   Subject to and without waiving any of its objections, LeEco responds as

10   follows: LeEco will conduct a reasonable search of documents within its possession,

11   custody or control created prior to this lawsuit's filing date.  LeEco will produce

12   nonprivileged documents identified during the search on a rolling basis, starting on

13   April 25, 2018.  LeEco expects to complete its rolling production on or before

14   approximately July 25, 2018.

15   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

16   LeLe restates and incorporates by reference the Preliminary Statement and

17   General Objections set forth above.  LeLe further objects to this Request on the

18   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

19   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

20   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

21   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

22   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

23   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

24   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

25   never properly served in this action.  In addition to being premature, the Requests

26   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

27   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

28   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

ERVIN COHEN & JESSUP LLP

1  seeks the documents and communications of third parties or documents and

2  communications which are not in LeLe's possession, custody or control.

3      Furthermore, Vizio's Requests are premature because they pertain to issues

4  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

5  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

6  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

7  action for breach of the Merger Agreement including its various theories of fraud

8  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

9  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

10  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

11  Merger Agreement, including the negotiation or entry into the Merger Agreement,

12  any breach of the Merger Agreement, or the termination of the Merger Agreement

13  has any relevance, and discovery should be limited to whether there was a breach of

14  the Framework Agreement.  LeLe reserves all rights, including the right to amend

15  and supplement its Responses and Objections to Vizio's Requests, should it become

16  necessary and appropriate to do so.

17      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

18  ambiguous and seeks the documents and communications of third parties or

19  documents and communications which are not in LeLe's possession, custody or

20  control.  Furthermore, this Request, which seeks discovery from individuals and

21  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

22  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

23  needs of the case.  Particularly if the case is limited to a breach of the Framework

24  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

25  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

26  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

27  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

28  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

ERVIN COHEN & JESSUP LLP

14676.8:9283165.1                    206                    8:17-CV-01175-DOC-JDE
JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1 LeTechnology, Inc. is not a party to this action.

2    LeLe further objects that this Request appears to seek documents and
3 communications protected by the attorney-client privilege and work product
4 doctrine.  LeLe objects to producing any privileged communications.  LeLe further
5 objects to producing any such documents created after this lawsuit was filed that
6 merely "Relate To" the subject matter of the Request as those documents would
7 clearly be protected by the attorney client privilege and attorney work product
8 doctrine.  LeLe further objects to logging all privileged and work product
9 documents created after this lawsuit was filed as unduly burdensome and
10 disproportionate to the needs of the case.

11 **<u>REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION</u>**
12 **<u>NO. 32 SHOULD BE COMPELLED:</u>**

13    Pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents
14 as they are kept in the usual course of business or must organize and label them to
15 correspond with the categories in the request."  In response to Plaintiff's RFPs,
16 Defendants produced 336 pages of documents consisting mostly of emails and
17 redlined versions of the agreements between the parties.  The responses were not
18 labeled to correspond with any specific categories set forth in Plaintiff's RFPs, nor
19 were they produced as kept in the ordinary and regular course of business.
20 Pointedly, no information was provided as to which file they came from, whose
21 possession they were in or which custodian or custodians of record maintained
22 them.  Instead, they were all loaded onto a ZIP file and emailed to Plaintiff.  This is
23 tantamount to simply placing the documents in a box, and providing them to
24 Plaintiff, which does not satisfy Rule 34(b)(2)(i).  *See  CooperVision, Inc. v. Ciba*
25 *Vision Corp.,* No. 2:06 CV 149, 2007 WL 2264848, at *5 (E.D.Tex. Aug. 6, 2007),
26 ("[S]imply placing documents in boxes and making them available does not
27 conform to the rule."); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535,
28 541 (D.Kan.2006) (where a producing party provided no information regarding the

ERVIN COHEN & JESSUP LLP

1  manner in which the documents were produced, including where they were

2  maintained, the identity of the custodian, and whether they were from a single

3  source or multiple sources of files, the producing party failed to carry its burden of

4  demonstrating that the documents were produced as they were maintained); *Wagner*

5  *v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001) ( "[P]roducing large

6  amounts of documents in no apparent order does not comply with a party's

7  obligation under Rule 34.") (*citations omitted*); *Stiller v. Arnold,* 167 F.R.D. 68, 71

8  (N.D.Ind.1996) ("Producing 7,000 pages of documents in no apparent order does

9  not comply with a party's obligation under Rule 34(b)."); *T.N. Taube Corp. v.*

10 *Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (in

11 response to production of 789 documents, bates-stamped and provided in a box with

12 no discernable order, the court expressed doubt that production was made as the

13 documents were kept in the usual course of business, and thus directed that the

14 documents be organized and labeled to indicate the specific document demand to

15 which each related); *Scripps Clinic & Research Found. v. Baxter Travenol*

16 *Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at * 3–4 (D.Del. June 21,

17 1988) (production of 45,000 documents "arranged in bundles within each of the

18 fifteen boxes, most of the bundles contain[ing] no designation as to the origin of the

19 file, the name of the file, or whether the bundle contained documents from multiple

20 files" deemed insufficient to satisfy the requirements of Rule 34(b)).  As

21 Defendants' production suffers for the same defects as those in the aforementioned

22 cases, Defendants must be compelled to produce the documents labeled per

23 category.

24 **REQUEST FOR PRODUCTION NO. 33:**

25     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

26 efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

27 identify and/or obtain "non-cash assets with a fair market value equal to US

28 $50,000,000 as a capital contribution" to contribute to a proposed joint venture with

ERVIN COHEN & JESSUP LLP

1 VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

2 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

3 LeEco restates and incorporates by reference the Preliminary Statement and

4 General Objections set forth above.

5 LeEco further objects that the definition of "Affiliates" is overbroad, vague

6 and ambiguous and seeks the documents and communications of third parties or

7 documents and communications which are not in LeEco's possession, custody or

8 control.  Furthermore, this Request, which seeks discovery from Unrelated Third

9 Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

10 is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

11 the case is limited to a breach of the Framework Agreement, the dispute is limited to

12 LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

13 another $10 million in escrow that is disputed.  The remaining dispute concerns the

14 Parties' obligations to each other in the context of the proposed China JV.

15 Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

16 been served with the Summons and FAC, and LeTechnology, Inc. is not a party to

17 this action.

18 LeEco further objects that this Request appears to seek documents protected

19 by the attorney-client privilege and work product doctrine.  Defendant objects to

20 producing any such documents created after this lawsuit was filed that merely

21 "Relate To" the subject matter of the Request as those documents would clearly be

22 protected by the attorney client privilege and attorney work product doctrine.

23 LeEco further objects to logging all privileged and work product documents created

24 after this lawsuit was filed as unduly burdensome and disproportionate to the needs

25 of the case.

26 Subject to and without waiving any of its objections, LeEco responds as

27 follows: LeEco conducted a reasonable search for documents within its possession,

28 custody or control and no responsive documents exist.

ERVIN COHEN & JESSUP LLP

**LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   and supplement its Responses and Objections to Vizio's Requests, should it become

2   necessary and appropriate to do so.

3       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

4   ambiguous and seeks the documents and communications of third parties or

5   documents and communications which are not in LeLe's possession, custody or

6   control.  Furthermore, this Request, which seeks discovery from individuals and

7   entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

8   calculated merely to harass and is overbroad, irrelevant, and not proportional to the

9   needs of the case.  Particularly if the case is limited to a breach of the Framework

10  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

11  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

12  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

13  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

14  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

15  LeTechnology, Inc. is not a party to this action.

16      LeLe further objects that this Request appears to seek documents and

17  communications protected by the attorney-client privilege and work product

18  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

19  objects to producing any such documents created after this lawsuit was filed that

20  merely "Relate To" the subject matter of the Request as those documents would

21  clearly be protected by the attorney client privilege and attorney work product

22  doctrine.  LeLe further objects to logging all privileged and work product

23  documents created after this lawsuit was filed as unduly burdensome and

24  disproportionate to the needs of the case.

25  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

26  **NO. 33 SHOULD BE COMPELLED:**

27      As Defendants' objections to this RFP are either in whole, or in substantial

28  part identical to the objections which they asserted to Plaintiff's RFP No. One,

ERVIN COHEN & JESSUP LLP

1  Plaintiff hereby incorporates by reference all of its reasons why a further response to
2  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
3  though set forth fully in this place.

4  **REQUEST FOR PRODUCTION NO. 34:**

5  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
6  ALL assets owned by LTI or financial resources available to LTI, at any time
7  between July 6, 2016 and the present, that were available to satisfy LTI's
8  representation in Section 5(d) of the GUARANTY that LTI would have "the
9  financial capacity to pay and perform the Obligation" of LeECO to pay the Buyer
10 Termination Fee Remainder if it should become due under the MERGER
11 AGREEMENT and that LTI "shall maintain such financial capacity for so long as
12 this Guarantee shall remain in effect."

13 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

14 LeEco restates and incorporates by reference the Preliminary Statement and
15 General Objections set forth above.  LeEco further objects to this Request as
16 premature and improper because Vizio's second through sixth causes of action in
17 the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants
18 LeEco's Motion to Dismiss, then the information and documents sought by this
19 Request are not relevant, making the Request disproportionate to the needs of the
20 case.  LeEco contends that, at this stage, any discovery in this matter should be
21 limited in scope.  Specifically, Vizio gave a release of all claims for breach of the
22 Merger Agreement (including its various theories of fraud related to that alleged
23 breach) to LeEco in the Framework Agreement upon receipt of $40 million, which
24 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
25 Merger Agreement, including the negotiation or entry into the Merger Agreement,
26 any breach of the Merger Agreement, or the termination of the Merger Agreement
27 has any relevance.  The Guaranty only applied to the Buyer Termination Fee
28 Remainder which was eliminated following the Parties' agreement they were

ERVIN COHEN & JESSUP LLP

1  terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

2  the mutual walk-away without there being any Buyer Termination Fee Penalty

3  (including but not limited to the Buyer Termination Fee Remainder).

4      LeEco further objects that this Request is compound and overbroad.  LeEco

5  further objects that the phrase "total financial resources available to" is vague and

6  ambiguous, and as phrased, calls for speculation.

7      LeEco further objects that, as phrased, this Request appears to seek

8  documents that are equally available to Vizio.  LeEco objects to searching for and

9  producing documents equally available to Vizio.

10     LeEco further objects that Request seeks the documents and communications

11  of third parties or documents and communications which are not in LeEco's

12  possession, custody or control.  Furthermore, this Request, which seeks discovery

13  from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated

14  merely to harass and is overbroad, irrelevant, and not proportional to the needs of

15  the case.  Particularly if the case is limited to a breach of the Framework Agreement,

16  the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio

17  of $40 million and another $10 million in escrow that is disputed.  The remaining

18  dispute concerns the Parties' obligations to each other in the context of the proposed

19  China JV.  Moreover, LeTechnology, Inc. is not a party to this action.

20     LeEco further objects that this Request appears to seek documents and

21  communications protected by the attorney-client privilege and work product

22  doctrine.  LeEco objects to producing any privileged communications.  Defendant

23  objects to producing any such documents created after this lawsuit was filed that

24  merely "Relate To" the subject matter of the Request as those documents would

25  clearly be protected by the attorney client privilege and attorney work product

26  doctrine.  LeEco further objects to logging all privileged and work product

27  documents created after this lawsuit was filed as unduly burdensome and

28  disproportionate to the needs of the case.

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

**LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

1

2    LeLe restates and incorporates by reference the Preliminary Statement and

3    General Objections set forth above.  LeLe further objects to this Request on the

4    grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

5    of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

6    LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

7    Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

8    and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

9    Vizio that give rise to this action nor is LeLe alleged to have made any statement to

10   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

11   never properly served in this action.  In addition to being premature, the Requests

12   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

13   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

14   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

15   seeks the documents and communications of third parties or documents and

16   communications which are not in LeLe's possession, custody or control.

17   Furthermore, Vizio's Requests are premature because they pertain to issues

18   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

19   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

20   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

21   action for breach of the Merger Agreement including its various theories of fraud

22   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

23   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

24   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

25   Merger Agreement, including the negotiation or entry into the Merger Agreement,

26   any breach of the Merger Agreement, or the termination of the Merger Agreement

27   has any relevance, and discovery should be limited to whether there was a breach of

28   the Framework Agreement.  LeLe reserves all rights, including the right to amend

ERVIN COHEN & JESSUP LLP

1  and supplement its Responses and Objections to Vizio's Requests, should it become

2  necessary and appropriate to do so.

3      LeLe further objects that this Request is compound and overbroad.  LeLe

4  further objects that the phrase "total financial resources available to" is vague and

5  ambiguous, and as phrased, calls for speculation.

6      LeLe further objects that, as phrased, this Request appears to seek documents

7  that are equally available to Vizio.  LeLe objects to searching for and producing

8  documents equally available to Vizio.

9      LeLe further objects that the Request seeks the documents and

10  communications of third parties or documents and communications which are not in

11  LeLe's possession, custody or control.  Furthermore, this Request, which seeks

12  discovery from individuals and entities ("Unrelated Third Parties") supposedly

13  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

14  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

15  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

16  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

17  million in escrow that is disputed.  The remaining dispute concerns LeEco and

18  Vizio's obligations to each other in the context of the proposed China JV.

19  Moreover, LeTechnology, Inc. is not a party to this action.

20      LeLe further objects that this Request appears to seek documents and

21  communications protected by the attorney-client privilege and work product

22  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

23  objects to producing any such documents created after this lawsuit was filed that

24  merely "Relate To" the subject matter of the Request as those documents would

25  clearly be protected by the attorney client privilege and attorney work product

26  doctrine.  LeLe further objects to logging all privileged and work product

27  documents created after this lawsuit was filed as unduly burdensome and

28  disproportionate to the needs of the case.

ERVIN COHEN & JESSUP LLP

**REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 34 SHOULD BE COMPELLED:**

As Defendants' objections to this RFP are either in whole, or in substantial part identical to the objections which they asserted to Plaintiff's RFP No. One, Plaintiff hereby incorporates by reference all of its reasons why a further response to RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as though set forth fully in this place.

Wholly apart from these reasons, the notion that documents which relate to the Merger Agreement and Guaranty are somehow irrelevant flies directly in the face of the alternative Claim for Relief for Breach of the Merger Agreement, let alone Rescission of the Framework Agreement.  The Guaranty is part of the Merger Agreement, and is relevant to alter ego liability as it states that LeEco has insufficient assets to cover the Merger.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding any unprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information…need not be admissible in evidence to be discoverable."  That is because "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation of his case." *Anderson v. Hansen*, 2013 WL 428737*4 (E.D. Cal.)

The notion that these documents need not be produced because the Franchise Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the Framework Agreement specifically carved out and left intact the "remaining Buyer Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

ERVIN COHEN & JESSUP LLP

1 sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

2 Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

3 settled law that if a defrauded party is induced by false representations to execute a

4 contract, the party has the option of rescinding the contract or affirming it and

5 recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

6 B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

7 *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

8 defrauded party is induced by false representations to execute a contract, the party

9 has the option of rescinding the contract or affirming it and recovering damages for

10 the fraud.")  Third, where, as here, the release was not the sole object of the

11 Framework Agreement, there is no requirement that any consideration be restored to

12 permit the pursuit of damages for fraudulent inducement of a settlement agreement.

13 *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

14 15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

15 rescission, such relief "shall not be denied because of a delay in restoring or

16 tendering restoration of such benefits before judgment unless such delay has been

17 substantially prejudicial to the other party, but [rather], the court may make a tender

18 of restoration a condition of its judgment."  *Cal. Civ. Code* §1693.  *Accord Taylor v.*

19 *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

20 Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

21 and Cabrera….But Taylor's claim for rescission…is a claim about the

22 circumstances that brought about the Settlement Agreement and therefore the tender

23 need not be made prior to determining whether Taylor actually has a definite ground

24 to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

25 to restore the Merger Agreement in its terminated state notwithstanding Defendants'

26 claim that the Framework Agreement somehow substitutes for the Merger

27 Agreement in its entirety, with or without the express carve out of the $50MM

28 Remaining Buyer Termination Fee Deposit provisions. *Airs Intern, Inc. v. Perfect*

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

2   California law and holding that fraud claim for rescission would operate to restore

3   old agreement notwithstanding that a new agreement had been substituted for the

4   old agreement).  Sixth, documents related to the Merger Agreement as well as the

5   Guaranty that is part and parcel thereof and the fraudulent misrepresentations that

6   gave rise to them are germane to explaining the circumstances which gave rise to the

7   Framework Agreement and/or whether Defendants likewise made fraudulent

8   representations or otherwise acted in good faith with respect to it, *i.e.* are equally

9   probative on issues of intent, knowledge, good faith and absence of mistake as to the

10  Framework Agreement and the dealings between VIZIO and Defendants.  *U.S. v.*

11  *Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd, White v. U.S.*, 479

12  U.S. 889 (1986) (evidence of prior bad acts of defendants in obtaining conventional

13  mobile home loans (*i.e.,* loan irregularities) admissible in subsequent trial of

14  fraudulent scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent

15  means to secure conventional loans is probative on issues of intent, knowledge,

16  good faith and absence of mistake in dealing with FHA transactions.").  *Accord,*

17  *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent

18  scheme and past failure to file tax returns admissible in subsequent complex tax

19  fraud conspiracy trial since the former "was used to explain how the…conspirators

20  met each other and garnered customers, while the latter constituted "prior acts" that

21  were "probative of issues of intent, knowledge, good faith and absence of mistake.")

22          In short, production should be ordered in full, without objection.

23  **REQUEST FOR PRODUCTION NO. 35:**

24          ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

25  payments or transfers made by LTI after July 6, 2016, if any, in which the total

26  assets then owned by LTI, or the total financial resources available to LTI, was less

27  than $50,000,000.00 either before and/or after the transaction.

28

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  The Guaranty only applied to the Buyer Termination Fee Remainder which was eliminated following the Parties' agreement they were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is the mutual walk-away without there being any Buyer Termination Fee Penalty (including but not limited to the Buyer Termination Fee Remainder).

LeEco further objects that this Request is compound and overbroad.  LeEco further objects that the phrase "total financial resources available to" is vague and ambiguous, and as phrased, calls for speculation.

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery

ERVIN COHEN & JESSUP LLP

1  from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated
2  merely to harass and is overbroad, irrelevant, and not proportional to the needs of
3  the case.  Particularly if the case is limited to a breach of the Framework Agreement,
4  the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio
5  of $40 million and another $10 million in escrow that is disputed.  The remaining
6  dispute concerns the Parties' obligations to each other in the context of the proposed
7  China JV.  Moreover, LeTechnology, Inc. is not a party to this action.

8      LeEco further objects that this Request appears to seek documents and
9  communications protected by the attorney-client privilege and work product
10  doctrine.  LeEco objects to producing any privileged communications.  Defendant
11  objects to producing any such documents created after this lawsuit was filed that
12  merely "Relate To" the subject matter of the Request as those documents would
13  clearly be protected by the attorney client privilege and attorney work product
14  doctrine.  LeEco further objects to logging all privileged and work product
15  documents created after this lawsuit was filed as unduly burdensome and
16  disproportionate to the needs of the case.

17  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

18      LeLe restates and incorporates by reference the Preliminary Statement and
19  General Objections set forth above.  LeLe further objects to this Request on the
20  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
21  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
22  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
23  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
24  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
25  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
26  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
27  never properly served in this action.  In addition to being premature, the Requests
28  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

ERVIN COHEN & JESSUP LLP

1   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

2   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

3   seeks the documents and communications of third parties or documents and

4   communications which are not in LeLe's possession, custody or control.

5       Furthermore, Vizio's Requests are premature because they pertain to issues

6   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

7   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

8   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

9   action for breach of the Merger Agreement including its various theories of fraud

10  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

11  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

12  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

13  Merger Agreement, including the negotiation or entry into the Merger Agreement,

14  any breach of the Merger Agreement, or the termination of the Merger Agreement

15  has any relevance, and discovery should be limited to whether there was a breach of

16  the Framework Agreement.  LeLe reserves all rights, including the right to amend

17  and supplement its Responses and Objections to Vizio's Requests, should it become

18  necessary and appropriate to do so.

19      LeLe further objects that this Request is compound and overbroad.  LeLe

20  further objects that the phrase "total financial resources available to" is vague and

21  ambiguous, and as phrased, calls for speculation.

22      LeLe further objects that, as phrased, this Request appears to seek documents

23  that are equally available to Vizio.  LeLe objects to searching for and producing

24  documents equally available to Vizio.

25      LeLe further objects that the Request seeks the documents and

26  communications of third parties or documents and communications which are not in

27  LeLe's possession, custody or control.  Furthermore, this Request, which seeks

28  discovery from individuals and entities ("Unrelated Third Parties") supposedly

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

2  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

3  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

4  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

5  million in escrow that is disputed.  The remaining dispute concerns LeEco and

6  Vizio's obligations to each other in the context of the proposed China JV.

7  Moreover, LeTechnology, Inc. is not a party to this action.

8      LeLe further objects that this Request appears to seek documents and

9  communications protected by the attorney-client privilege and work product

10  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

11  objects to producing any such documents created after this lawsuit was filed that

12  merely "Relate To" the subject matter of the Request as those documents would

13  clearly be protected by the attorney client privilege and attorney work product

14  doctrine.  LeLe further objects to logging all privileged and work product

15  documents created after this lawsuit was filed as unduly burdensome and

16  disproportionate to the needs of the case.

17  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

18  **NO. 35 SHOULD BE COMPELLED:**

19      As Defendants' objections to this RFP are either in whole, or in substantial

20  part identical to the objections which they asserted to Plaintiff's RFP No. One,

21  Plaintiff hereby incorporates by reference all of its reasons why a further response to

22  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

23  though set forth fully in this place.

24      Wholly apart from these reasons, the notion that documents which relate to

25  the Merger Agreement as well as the Guaranty thereof and the ability of the

26  affiliated Guarantor to perform are somehow irrelevant flies directly in the face of

27  the alternative Claim for Relief for Breach of the Merger Agreement, let alone

28  Rescission of the Framework Agreement.  Rule 26(b)(1) of the *Federal Rules of*

ERVIN COHEN & JESSUP LLP

1 *Civil Procedure* specifically provides that "[P]arties may obtain discovery regarding

2 any unprivileged matter that is relevant to any party's claim or defense and

3 proportional to the needs of the case, considering the importance of the issues at

4 stake in the action, the amount in controversy, the parties' relative access to relevant

5 information, the parties' resources, the importance of discovery in resolving the

6 issues and whether the burden or expense of the proposed discovery outweighs its

7 likely benefit.  Information…need not be admissible in evidence to be

8 discoverable."  That is because "[t]he purpose of discovery is to allow a broad

9 search for facts, the names of witnesses, or any other matters which may aid a party

10 in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

11 Cal.)

12        The notion that these documents need not be produced because the Franchise

13 Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the

14 Framework Agreement specifically carved out and left intact the "remaining Buyer

15 Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM

16 sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,

17 Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

18 settled law that if a defrauded party is induced by false representations to execute a

19 contract, the party has the option of rescinding the contract or affirming it and

20 recovering damages for fraud."  *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

21 B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

22 *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

23 defrauded party is induced by false representations to execute a contract, the party

24 has the option of rescinding the contract or affirming it and recovering damages for

25 the fraud.")  Third, where, as here, the release was not the sole object of the

26 Framework Agreement, there is no requirement that any consideration be restored to

27 permit the pursuit of damages for fraudulent inducement of a settlement agreement.

28 *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

14676.8:9283165.1    223    8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

2   rescission, such relief "shall not be denied because of a delay in restoring or

3   tendering restoration of such benefits before judgment unless such delay has been

4   substantially prejudicial to the other party, but [rather], the court may make a tender

5   of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

6   *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

7   Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

8   and Cabrera….But Taylor's claim for rescission…is a claim about the

9   circumstances that brought about the Settlement Agreement and therefore the tender

10  need not be made prior to determining whether Taylor actually has a definite ground

11  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

12  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

13  claim that the Framework Agreement somehow substitutes for the Merger

14  Agreement in its entirety, with or without the express carve out of the $50MM

15  Remaining Buyer Termination Fee Deposit provisions.  *Airs Intern, Inc. v. Perfect*

16  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

17  California law and holding that fraud claim for rescission would operate to restore

18  old agreement notwithstanding that a new agreement had been substituted for the

19  old agreement).  Sixth, documents related to the Merger Agreement as well as the

20  Guaranty thereof and the ability of the affiliated Guarantor to perform, together with

21  the fraudulent misrepresentations that gave rise to those instruments are germane to

22  explaining the circumstances which gave rise to the Framework Agreement and/or

23  whether Defendants likewise made fraudulent representations or otherwise acted in

24  good faith with respect to it, *i.e.* are equally probative on issues of intent,

25  knowledge, good faith and absence of mistake as to the Framework Agreement and

26  the dealings between VIZIO and Defendants.  *U.S. v. Jenkins*, 785 F.2d 1387, 1395-

27  1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889 (1986) (evidence of

28  prior bad acts of defendants in obtaining conventional mobile home loans (*i.e.,* loan

ERVIN COHEN & JESSUP LLP

1    irregularities) admissible in subsequent trial of fraudulent scheme to obtain FHA

2    loans since "[t]he fact that Jenkins used fraudulent means to secure conventional

3    loans is probative on issues of intent, knowledge, good faith and absence of mistake

4    in dealing with FHA transactions."). *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610

5    (9th Cir. 2016) (prior fraudulent land patent scheme and past failure to file tax

6    returns admissible in subsequent complex tax fraud conspiracy trial since the former

7    "was used to explain how the…conspirators met each other and garnered customers,

8    while the latter constituted "prior acts" that were "probative of issues of intent,

9    knowledge, good faith and absence of mistake.")

10         In short, production should be ordered in full, without objection.

11    **REQUEST FOR PRODUCTION NO. 36:**

12         ANY and ALL articles of incorporation, amended articles of incorporation,

13    bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL,

14    LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1,

15    2012.

16    **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

17         LeEco restates and incorporates by reference the Preliminary Statement and

18    General Objections set forth above.

19         LeEco objects that this Request compound and is overbroad as to time.

20         LeEco objects that the definition of "Affiliates" is overbroad, vague and

21    ambiguous and seeks the documents and communications of third parties or

22    documents and communications which are not in LeEco's possession, custody or

23    control.  Furthermore, this Request, which seeks discovery from Unrelated Third

24    Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

25    is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

26    the case is limited to a breach of the Framework Agreement, the dispute is limited to

27    LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

28    another $10 million in escrow that is disputed.  The remaining dispute concerns the

ERVIN COHEN & JESSUP LLP

1   Parties' obligations to each other in the context of the proposed China JV.

2   Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

3   been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

4   Estate Group LLC are not parties to this action.

5        LeEco further objects that this Request appears to seek documents protected

6   by the attorney-client privilege and work product doctrine.  LeEco further objects to

7   logging all privileged and work product documents created after this lawsuit was

8   filed as unduly burdensome and disproportionate to the needs of the case.

9        Subject to and without waiving any of its objections, LeEco responds as

10  follows: LeEco will conduct a reasonable search of documents within its possession,

11  custody or control.  LeEco will produce nonprivileged documents, from 2014 to the

12  present, in its possession, custody and control (on behalf of LeEco only), identified

13  during the search on a rolling basis, starting on April 25, 2018.  LeEco expects to

14  complete its rolling production on or before approximately July 25, 2018.

15  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

16       LeLe restates and incorporates by reference the Preliminary Statement and

17  General Objections set forth above.  LeLe further objects to this Request on the

18  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

19  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

20  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

21  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

22  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

23  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

24  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

25  never properly served in this action.  In addition to being premature, the Requests

26  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

27  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

28  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

ERVIN COHEN & JESSUP LLP

1 seeks the documents and communications of third parties or documents and

2 communications which are not in LeLe's possession, custody or control.

3     Furthermore, Vizio's Requests are premature because they pertain to issues

4 that would be rendered irrelevant were the Court to grant LeEco's pending MTD

5 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

6 LeEco's pending MTD would eliminate Vizio's second through sixth causes of

7 action for breach of the Merger Agreement including its various theories of fraud

8 related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

9 the Framework Agreement upon receipt of $40 million ("Released Claims"), which

10 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

11 Merger Agreement, including the negotiation or entry into the Merger Agreement,

12 any breach of the Merger Agreement, or the termination of the Merger Agreement

13 has any relevance, and discovery should be limited to whether there was a breach of

14 the Framework Agreement.  LeLe reserves all rights, including the right to amend

15 and supplement its Responses and Objections to Vizio's Requests, should it become

16 necessary and appropriate to do so.

17     LeLe objects that this Request compound and is overbroad as to time.

18     LeLe further objects that the definition of "Affiliates" is overbroad, vague and

19 ambiguous and seeks the documents and communications of third parties or

20 documents and communications which are not in LeLe's possession, custody or

21 control.  Furthermore, this Request, which seeks discovery from individuals and

22 entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

23 calculated merely to harass and is overbroad, irrelevant, and not proportional to the

24 needs of the case.  Particularly if the case is limited to a breach of the Framework

25 Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

26 payment to Vizio of $40 million and another $10 million in escrow that is disputed.

27 The remaining dispute concerns LeEco and Vizio's obligations to each other in the

28 context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

ERVIN COHEN & JESSUP LLP

1  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and
2  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

3       LeLe further objects that this Request appears to seek documents and
4  communications protected by the attorney-client privilege and work product
5  doctrine.  LeLe objects to producing any privileged communications.  LeLe further
6  objects to logging all privileged and work product documents created after this
7  lawsuit was filed as unduly burdensome and disproportionate to the needs of the
8  case.

9  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
10 **NO. 36 SHOULD BE COMPELLED:**

11      As Defendants' objections to this RFP are either in whole, or in substantial
12 part identical to the objections which they asserted to Plaintiff's RFP No. One,
13 Plaintiff hereby incorporates by reference all of its reasons why a further response to
14 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
15 though set forth fully in this place.  Quite simply, these documents are directly
16 relevant to proving alter ego liability and piercing the corporate veil.

17 **REQUEST FOR PRODUCTION NO. 37:**

18      DOCUMENTS sufficient to identify ALL officers, directors, partners,
19 shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of
20 their AFFILIATES at any time after January 1, 2012.

21 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

22      LeEco restates and incorporates by reference the Preliminary Statement and
23 General Objections set forth above.

24      LeEco objects that this Request is compound and is overbroad as to time.

25      LeEco objects that the definition of "Affiliates" is overbroad, vague and
26 ambiguous and seeks the documents and communications of third parties or
27 documents and communications which are not in LeEco's possession, custody or
28 control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties

ERVIN COHEN & JESSUP LLP

1  supposedly "affiliated" with LeEco appears calculated merely to harass and is

2  overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

3  the case is limited to a breach of the Framework Agreement, the dispute is limited to

4  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

5  another $10 million in escrow that is disputed.  The remaining dispute concerns the

6  Parties' obligations to each other in the context of the proposed China JV.

7  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

8  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

9  Estate Group LLC are not parties to this action.

10        LeEco objects that the Request appears calculated merely to harass and is

11  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

12  compound and overbroad.

13  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

14        LeLe restates and incorporates by reference the Preliminary Statement and

15  General Objections set forth above.  LeLe further objects to this Request on the

16  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

17  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

18  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

19  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

20  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

21  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

22  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

23  never properly served in this action.  In addition to being premature, the Requests

24  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

25  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

26  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

27  seeks the documents and communications of third parties or documents and

28  communications which are not in LeLe's possession, custody or control.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   Furthermore, Vizio's Requests are premature because they pertain to issues

2   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

3   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

4   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

5   action for breach of the Merger Agreement including its various theories of fraud

6   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

7   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

8   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

9   Merger Agreement, including the negotiation or entry into the Merger Agreement,

10  any breach of the Merger Agreement, or the termination of the Merger Agreement

11  has any relevance, and discovery should be limited to whether there was a breach of

12  the Framework Agreement.  LeLe reserves all rights, including the right to amend

13  and supplement its Responses and Objections to Vizio's Requests, should it become

14  necessary and appropriate to do so.

15      LeLe objects that this Request compound and is overbroad as to time.

16      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

17  ambiguous and seeks the documents and communications of third parties or

18  documents and communications which are not in LeLe's possession, custody or

19  control.  Furthermore, this Request, which seeks discovery from individuals and

20  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

21  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

22  needs of the case.  Particularly if the case is limited to a breach of the Framework

23  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

24  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

25  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

26  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

27  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

28  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

1    LeLe objects that the Request appears calculated merely to harass and is

2    vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

3    compound and overbroad.

4    **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

5    **NO. 37 SHOULD BE COMPELLED:**

6       As Defendants' objections to this RFP are either in whole, or in substantial

7    part identical to the objections which they asserted to Plaintiff's RFP No. One,

8    Plaintiff hereby incorporates by reference all of its reasons why a further response to

9    RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

10   though set forth fully in this place.  Quite simply, these documents are directly

11   relevant to proving alter ego liability and piercing the corporate veil.

12   **REQUEST FOR PRODUCTION NO. 38:**

13      ANY and ALL shares of stock, stock certificates, partnership interests, or

14   membership interests currently held or owned by any PERSONS in LeECO,

15   GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

16   **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

17      LeEco restates and incorporates by reference the Preliminary Statement and

18   General Objections set forth above.

19      LeEco objects that this Request is compound and is overbroad as to time.

20      LeEco objects that the definition of "Affiliates" is overbroad, vague and

21   ambiguous and seeks the documents and communications of third parties or

22   documents and communications which are not in LeEco's possession, custody or

23   control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties

24   supposedly "affiliated" with LeEco appears calculated merely to harass and is

25   overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

26   the case is limited to a breach of the Framework Agreement, the dispute is limited to

27   LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

28   another $10 million in escrow that is disputed.  The remaining dispute concerns the

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1 Parties' obligations to each other in the context of the proposed China JV.

2 Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

3 been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

4 Estate Group LLC are not parties to this action.

5     LeEco objects that the Request appears calculated merely to harass and is

6 vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

7 compound and overbroad.

8 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

9     LeLe restates and incorporates by reference the Preliminary Statement and

10 General Objections set forth above.  LeLe further objects to this Request on the

11 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

12 of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

13 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

14 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

15 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

16 Vizio that give rise to this action nor is LeLe alleged to have made any statement to

17 Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

18 never properly served in this action.  In addition to being premature, the Requests

19 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

20 are calculated merely to harass and are overbroad, irrelevant, and not proportional to

21 the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

22 seeks the documents and communications of third parties or documents and

23 communications which are not in LeLe's possession, custody or control.

24     Furthermore, Vizio's Requests are premature because they pertain to issues

25 that would be rendered irrelevant were the Court to grant LeEco's pending MTD

26 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

27 LeEco's pending MTD would eliminate Vizio's second through sixth causes of

28 action for breach of the Merger Agreement including its various theories of fraud

1    related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

2    the Framework Agreement upon receipt of $40 million ("Released Claims"), which

3    Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

4    Merger Agreement, including the negotiation or entry into the Merger Agreement,

5    any breach of the Merger Agreement, or the termination of the Merger Agreement

6    has any relevance, and discovery should be limited to whether there was a breach of

7    the Framework Agreement.  LeLe reserves all rights, including the right to amend

8    and supplement its Responses and Objections to Vizio's Requests, should it become

9    necessary and appropriate to do so.

10    LeLe objects that this Request is compound and is overbroad as to time.

11    LeLe further objects that the definition of "Affiliates" is overbroad, vague and

12    ambiguous and seeks the documents and communications of third parties or

13    documents and communications which are not in LeLe's possession, custody or

14    control.  Furthermore, this Request, which seeks discovery from individuals and

15    entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

16    calculated merely to harass and is overbroad, irrelevant, and not proportional to the

17    needs of the case.  Particularly if the case is limited to a breach of the Framework

18    Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

19    payment to Vizio of $40 million and another $10 million in escrow that is disputed.

20    The remaining dispute concerns LeEco and Vizio's obligations to each other in the

21    context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

22    Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

23    LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

24    LeLe objects that the Request appears calculated merely to harass and is

25    vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

26    compound and overbroad.

27

28

ERVIN COHEN & JESSUP LLP

1 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

2 **NO. 38 SHOULD BE COMPELLED:**

3       As Defendants' objections to this RFP are either in whole, or in substantial

4 part identical to the objections which they asserted to Plaintiff's RFP No. One,

5 Plaintiff hereby incorporates by reference all of its reasons why a further response to

6 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

7 though set forth fully in this place.  Quite simply, these documents are directly

8 relevant to proving alter ego liability and piercing the corporate veil.

9 **REQUEST FOR PRODUCTION NO. 39:**

10       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

11 ANY contract or agreement - - INCLUDING all written amendments and

12 supplements to any such contract or agreement and all written assignments and

13 modifications of any such contract or agreement - - whereby any PERSONS

14 acquired on any date after January 1, 2012, either in their own respective names or

15 under and pursuant to any fictitious business names, any right, title or interest in or

16 to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and

17 each or any of their respective employees, shares of stock, partnership interests,

18 membership interests, assets and/or liabilities, INCLUDING all loan commitments,

19 offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty

20 agreements, stock transfer agreements, membership interest transfer agreements,

21 credit agreements, sales orders, partnership agreements, sales agreements,

22 assignment agreements, hypothecation agreements, deregistration agreements,

23 dissolution agreements, purchase agreements, options agreements, stock

24 agreements, shares of stock, certificates of stock, joint venture agreements, asset

25 sale agreements, debt payment agreements, accommodation agreements, debt

26 protection agreements, asset transfer agreements, indemnity agreements, defense

27 agreements, hold harmless agreements, employee sharing agreements, employee

28 transfer agreements, security agreements, financing agreements, memorandum

14676.8:9283165.1      234      8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  agreements, letter agreements, loan agreements, insolvency agreements,
2  intercompany transfer agreements, escrow agreements, operating agreements, loan
3  commitments, limited liability company agreements, assumption agreements,
4  liquidation agreements, winding up agreements, creditor's agreements, letters of
5  credit, asset distribution or preservation agreements, liability distribution or transfer
6  agreements, membership distribution or transfer agreements, payment records,
7  promissory notes, governmental filings, security instruments, deeds and deeds of
8  trust.

9  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

10  LeEco restates and incorporates by reference the Preliminary Statement and
11  General Objections set forth above.

12  LeEco objects that this Request is compound and is overbroad as to time.

13  LeEco objects that the definition of "Affiliates" is overbroad, vague and
14  ambiguous and seeks the documents and communications of third parties or
15  documents and communications which are not in LeEco's possession, custody or
16  control.  Furthermore, this Request, which seeks discovery from Unrelated Third
17  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
18  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if
19  the case is limited to a breach of the Framework Agreement, the dispute is limited to
20  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
21  another $10 million in escrow that is disputed.  The remaining dispute concerns the
22  Parties' obligations to each other in the context of the proposed China JV.
23  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not
24  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real
25  Estate Group LLC are not parties to this action.

26  LeEco objects that the Request appears calculated merely to harass and is
27  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
28  compound and overbroad.

ERVIN COHEN & JESSUP LLP

**LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend

ERVIN COHEN & JESSUP LLP

1 | and supplement its Responses and Objections to Vizio's Requests, should it become
2 | necessary and appropriate to do so.

3 | LeLe objects that this Request is compound and is overbroad as to time.

4 | LeLe further objects that the definition of "Affiliates" is overbroad, vague and
5 | ambiguous and seeks the documents and communications of third parties or
6 | documents and communications which are not in LeLe's possession, custody or
7 | control.  Furthermore, this Request, which seeks discovery from individuals and
8 | entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears
9 | calculated merely to harass and is overbroad, irrelevant, and not proportional to the
10 | needs of the case.  Particularly if the case is limited to a breach of the Framework
11 | Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
12 | payment to Vizio of $40 million and another $10 million in escrow that is disputed.
13 | The remaining dispute concerns LeEco and Vizio's obligations to each other in the
14 | context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele
15 | Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and
16 | LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

17 | LeLe objects that the Request appears calculated merely to harass and is
18 | vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
19 | compound and overbroad.

20 | **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
21 | **NO. 39 SHOULD BE COMPELLED:**

22 | As Defendants' objections to this RFP are either in whole, or in substantial
23 | part identical to the objections which they asserted to Plaintiff's RFP No. One,
24 | Plaintiff hereby incorporates by reference all of its reasons why a further response to
25 | RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
26 | though set forth fully in this place.  Quite simply, these documents are directly
27 | relevant to proving alter ego liability and piercing the corporate veil.

28 |

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 40:**

ANY and ALL agendas, corporate minutes, and corporate resolutions for ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL, LELE, LTI, and LREG held on any date after January 1, 2012.

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

2  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

3  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

4  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

5  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

6  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

7  never properly served in this action.  In addition to being premature, the Requests

8  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

9  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

10  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

11  seeks the documents and communications of third parties or documents and

12  communications which are not in LeLe's possession, custody or control.

13      Furthermore, Vizio's Requests are premature because they pertain to issues

14  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

15  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

16  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

17  action for breach of the Merger Agreement including its various theories of fraud

18  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

19  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

20  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

21  Merger Agreement, including the negotiation or entry into the Merger Agreement,

22  any breach of the Merger Agreement, or the termination of the Merger Agreement

23  has any relevance, and discovery should be limited to whether there was a breach of

24  the Framework Agreement.  LeLe reserves all rights, including the right to amend

25  and supplement its Responses and Objections to Vizio's Requests, should it become

26  necessary and appropriate to do so.

27      LeLe objects that this Request is compound and is overbroad as to time.

28      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

ERVIN COHEN & JESSUP LLP

1 │ ambiguous and seeks the documents and communications of third parties or

2 │ documents and communications which are not in LeLe's possession, custody or

3 │ control.  Furthermore, this Request, which seeks discovery from individuals and

4 │ entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

5 │ calculated merely to harass and is overbroad, irrelevant, and not proportional to the

6 │ needs of the case.  Particularly if the case is limited to a breach of the Framework

7 │ Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

8 │ payment to Vizio of $40 million and another $10 million in escrow that is disputed.

9 │ The remaining dispute concerns LeEco and Vizio's obligations to each other in the

10 │ context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

11 │ Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

12 │ LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

13 │       LeLe objects that the Request appears calculated merely to harass and is

14 │ vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

15 │ compound and overbroad.

16 │ **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

17 │ **NO. 40 SHOULD BE COMPELLED:**

18 │       As Defendants' objections to this RFP are either in whole, or in substantial

19 │ part identical to the objections which they asserted to Plaintiff's RFP No. One,

20 │ Plaintiff hereby incorporates by reference all of its reasons why a further response to

21 │ RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

22 │ though set forth fully in this place.  Quite simply, these documents are directly

23 │ relevant to proving alter ego liability and piercing the corporate veil.

24 │ **REQUEST FOR PRODUCTION NO. 41:**

25 │       ANY and ALL agendas, minutes, and resolutions for ALL meetings of the

26 │ shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any

27 │ date after January 1, 2012.

28 │

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

2 LeEco restates and incorporates by reference the Preliminary Statement and
3 General Objections set forth above.

4 LeEco objects that this Request is compound and is overbroad as to time.

5 LeEco objects that the definition of "Affiliates" is overbroad, vague and
6 ambiguous and seeks the documents and communications of third parties or
7 documents and communications which are not in LeEco's possession, custody or
8 control. Furthermore, this Request, which seeks discovery from Unrelated Third
9 Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
10 is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if
11 the case is limited to a breach of the Framework Agreement, the dispute is limited to
12 LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
13 another $10 million in escrow that is disputed. The remaining dispute concerns the
14 Parties' obligations to each other in the context of the proposed China JV.
15 Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not
16 been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real
17 Estate Group LLC are not parties to this action.

18 LeEco objects that the Request appears calculated merely to harass and is
19 vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
20 compound and overbroad.

21 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

22 LeLe restates and incorporates by reference the Preliminary Statement and
23 General Objections set forth above. LeLe further objects to this Request on the
24 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
25 of the case. Vizio's Requests (identical to, and duplicative of, those propounded on
26 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
27 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
28 and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with

ERVIN COHEN & JESSUP LLP

1  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
2  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
3  never properly served in this action.  In addition to being premature, the Requests
4  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
5  are calculated merely to harass and are overbroad, irrelevant, and not proportional to
6  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
7  seeks the documents and communications of third parties or documents and
8  communications which are not in LeLe's possession, custody or control.

9      Furthermore, Vizio's Requests are premature because they pertain to issues
10  that would be rendered irrelevant were the Court to grant LeEco's pending MTD
11  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
12  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
13  action for breach of the Merger Agreement including its various theories of fraud
14  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
15  the Framework Agreement upon receipt of $40 million ("Released Claims"), which
16  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
17  Merger Agreement, including the negotiation or entry into the Merger Agreement,
18  any breach of the Merger Agreement, or the termination of the Merger Agreement
19  has any relevance, and discovery should be limited to whether there was a breach of
20  the Framework Agreement.  LeLe reserves all rights, including the right to amend
21  and supplement its Responses and Objections to Vizio's Requests, should it become
22  necessary and appropriate to do so.

23      LeLe objects that this Request is compound and is overbroad as to time.

24      LeLe further objects that the definition of "Affiliates" is overbroad, vague and
25  ambiguous and seeks the documents and communications of third parties or
26  documents and communications which are not in LeLe's possession, custody or
27  control.  Furthermore, this Request, which seeks discovery from individuals and
28  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

2  needs of the case.  Particularly if the case is limited to a breach of the Framework

3  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

4  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

5  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

6  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

7  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

8  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

9       LeLe objects that the Request appears calculated merely to harass and is

10  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

11  compound and overbroad.

12  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

13  **NO. 41 SHOULD BE COMPELLED:**

14       As Defendants' objections to this RFP are either in whole, or in substantial

15  part identical to the objections which they asserted to Plaintiff's RFP No. One,

16  Plaintiff hereby incorporates by reference all of its reasons why a further response to

17  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

18  though set forth fully in this place.  Quite simply, these documents are directly

19  relevant to proving alter ego liability and piercing the corporate veil.

20  **REQUEST FOR PRODUCTION NO. 42:**

21       ANY and ALL voting or operating agreements among shareholders or

22  members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any

23  date after January 1, 2012.

24  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

25       LeEco restates and incorporates by reference the Preliminary Statement and

26  General Objections set forth above.

27       LeEco objects that this Request is compound and is overbroad as to time.

28       LeEco objects that the definition of "Affiliates" is overbroad, vague and

1  ambiguous and seeks the documents and communications of third parties or

2  documents and communications which are not in LeEco's possession, custody or

3  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

4  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

5  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

6  the case is limited to a breach of the Framework Agreement, the dispute is limited to

7  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

8  another $10 million in escrow that is disputed.  The remaining dispute concerns the

9  Parties' obligations to each other in the context of the proposed China JV.

10  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

11  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

12  Estate Group LLC are not parties to this action.

13  LeEco objects that the Request appears calculated merely to harass and is

14  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

15  compound and overbroad.

16  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

17  LeLe restates and incorporates by reference the Preliminary Statement and

18  General Objections set forth above. LeLe further objects to this Request on the

19  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

20  of the case. Vizio's Requests (identical to, and duplicative of, those propounded on

21  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

22  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

23  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

24  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

25  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

26  never properly served in this action.  In addition to being premature, the Requests

27  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

28  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

14676.8:9283165.1                                      244                            8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  the needs of the case. Moreover, LeLe objects to this Request on the grounds that it

2  seeks the documents and communications of third parties or documents and

3  communications which are not in LeLe's possession, custody or control.

4        Furthermore, Vizio's Requests are premature because they pertain to issues

5  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

6  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

7  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

8  action for breach of the Merger Agreement including its various theories of fraud

9  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

10  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

11  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

12  Merger Agreement, including the negotiation or entry into the Merger Agreement,

13  any breach of the Merger Agreement, or the termination of the Merger Agreement

14  has any relevance, and discovery should be limited to whether there was a breach of

15  the Framework Agreement.  LeLe reserves all rights, including the right to amend

16  and supplement its Responses and Objections to Vizio's Requests, should it become

17  necessary and appropriate to do so.

18        LeLe objects that this Request is compound and is overbroad as to time.

19        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

20  ambiguous and seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or

22  control.  Furthermore, this Request, which seeks discovery from individuals and

23  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

24  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

25  needs of the case.  Particularly if the case is limited to a breach of the Framework

26  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

27  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

28  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

2  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

3  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

4  LeLe objects that the Request appears calculated merely to harass and is

5  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

6  compound and overbroad.

7  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

8  **NO. 42 SHOULD BE COMPELLED:**

9  As Defendants' objections to this RFP are either in whole, or in substantial

10  part identical to the objections which they asserted to Plaintiff's RFP No. One,

11  Plaintiff hereby incorporates by reference all of its reasons why a further response to

12  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

13  though set forth fully in this place.  Quite simply, these documents are directly

14  relevant to proving alter ego liability and piercing the corporate veil.

15  **REQUEST FOR PRODUCTION NO. 43:**

16  ANY and ALL contracts and agreements between or among LeECO,

17  GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in

18  effect at any point in time after January 1, 2012.

19  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

20  LeEco restates and incorporates by reference the Preliminary Statement and

21  General Objections set forth above.

22  LeEco objects that this Request is compound and is overbroad as to time.

23  LeEco further objects that this Request is compound and overbroad,

24  particularly in its request for "Any and All contracts and agreements between or

25  among...." LeEco further objects to this Request on the grounds that it fails to

26  describe the items for production with reasonable particularity as required by Rule

27  34, as the Request is not tethered to the claims at issue in this lawsuit.  LeEco

28  objects that the Request appears calculated merely to harass and is vague,

ERVIN COHEN & JESSUP LLP

1 | ambiguous, unduly burdensome, disproportional to the needs of the case, compound
2 | and overbroad.

3 |     LeEco objects that the definition of "Affiliates" is overbroad, vague and
4 | ambiguous and seeks the documents and communications of third parties or
5 | documents and communications which are not in LeEco's possession, custody or
6 | control. Furthermore, this Request, which seeks discovery Unrelated Third Parties
7 | supposedly "affiliated" with LeEco appears calculated merely to harass and is
8 | overbroad, irrelevant, and not proportional to the needs of the case. Particularly if
9 | the case is limited to a breach of the Framework Agreement, the dispute is limited to
10 | LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
11 | another $10 million in escrow that is disputed. The remaining dispute concerns the
12 | Parties' obligations to each other in the context of the proposed China JV.
13 | Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not
14 | been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real
15 | Estate Group LLC are not parties to this action.

16 | **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

17 |     LeLe restates and incorporates by reference the Preliminary Statement and
18 | General Objections set forth above. LeLe further objects to this Request on the
19 | grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
20 | of the case. Vizio's Requests (identical to, and duplicative of, those propounded on
21 | LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
22 | Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
23 | and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with
24 | Vizio that give rise to this action nor is LeLe alleged to have made any statement to
25 | Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was
26 | never properly served in this action. In addition to being premature, the Requests
27 | directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
28 | are calculated merely to harass and are overbroad, irrelevant, and not proportional to

ERVIN COHEN & JESSUP LLP

1   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

2   seeks the documents and communications of third parties or documents and

3   communications which are not in LeLe's possession, custody or control.

4        Furthermore, Vizio's Requests are premature because they pertain to issues

5   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

6   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

7   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

8   action for breach of the Merger Agreement including its various theories of fraud

9   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

10  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

11  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

12  Merger Agreement, including the negotiation or entry into the Merger Agreement,

13  any breach of the Merger Agreement, or the termination of the Merger Agreement

14  has any relevance, and discovery should be limited to whether there was a breach of

15  the Framework Agreement.  LeLe reserves all rights, including the right to amend

16  and supplement its Responses and Objections to Vizio's Requests, should it become

17  necessary and appropriate to do so.

18       LeLe objects that this Request is compound and is overbroad as to time.

19       LeLe further objects that this Request is compound and overbroad,

20  particularly in its request for "Any and All contracts and agreements between or

21  among...."

22       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

23  ambiguous and seeks the documents and communications of third parties or

24  documents and communications which are not in LeLe's possession, custody or

25  control.  Furthermore, this Request, which seeks discovery from individuals and

26  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

27  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

28  needs of the case.  Particularly if the case is limited to a breach of the Framework

1  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

2  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

3  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

4  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

5  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

6  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

7  LeLe further objects to the extent that this Request seeks documents and

8  communications protected by the attorney-client privilege and work product

9  doctrine.  LeLe objects to producing any privileged communications.

10  LeLe objects that the Request appears calculated merely to harass and is

11  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

12  compound and overbroad.

13  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

14  **NO. 43 SHOULD BE COMPELLED:**

15  As Defendants' objections to this RFP are either in whole, or in substantial

16  part identical to the objections which they asserted to Plaintiff's RFP No. One,

17  Plaintiff hereby incorporates by reference all of its reasons why a further response to

18  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

19  though set forth fully in this place.  Quite simply, these documents are directly

20  relevant to proving alter ego liability and piercing the corporate veil.

21  **REQUEST FOR PRODUCTION NO. 44:**

22  ANY and ALL DOCUMENTS prepared at any time since 2012 and through

23  and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG

24  and/or any of their AFFILIATES represented, stated, or otherwise held out that

25  LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE

26  or GLOBAL and/or to be substantially the same as LELE or GLOBAL,

27  INCLUDING advertising or promotional materials, press releases, WeChat and

28  other social media postings, investment reports, financial documents, and ANY

ERVIN COHEN & JESSUP LLP

1  DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or
2  market entity.

3  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

4  LeEco restates and incorporates by reference the Preliminary Statement and
5  General Objections set forth above.

6  LeEco objects that this Request is compound and is overbroad as to time.

7  LeEco objects that the definition of "Affiliates" is overbroad, vague and
8  ambiguous and seeks the documents and communications of third parties or
9  documents and communications which are not in LeEco's possession, custody or
10  control. Furthermore, this Request, which seeks discovery from Unrelated Third
11  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
12  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if
13  the case is limited to a breach of the Framework Agreement, the dispute is limited to
14  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
15  another $10 million in escrow that is disputed.  The remaining dispute concerns the
16  Parties' obligations to each other in the context of the proposed China JV.
17  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not
18  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real
19  Estate Group LLC are not parties to this action.

20  LeEco objects that the Request appears calculated merely to harass and is
21  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
22  compound and overbroad.

23  LeEco further objects that this Request appears to seek documents protected
24  by the attorney-client privilege and work product doctrine.  LeEco further objects to
25  logging all privileged and work product documents created after this lawsuit was
26  filed as unduly burdensome and disproportionate to the needs of the case.

27  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

28  LeLe restates and incorporates by reference the Preliminary Statement and

ERVIN COHEN & JESSUP LLP

1  General Objections set forth above.  LeLe further objects to this Request on the

2  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

3  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

4  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

5  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

6  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

7  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

8  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

9  never properly served in this action.  In addition to being premature, the Requests

10  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

11  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

12  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

13  seeks the documents and communications of third parties or documents and

14  communications which are not in LeLe's possession, custody or control.

15      Furthermore, Vizio's Requests are premature because they pertain to issues

16  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

17  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

18  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

19  action for breach of the Merger Agreement including its various theories of fraud

20  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

21  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

22  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

23  Merger Agreement, including the negotiation or entry into the Merger Agreement,

24  any breach of the Merger Agreement, or the termination of the Merger Agreement

25  has any relevance, and discovery should be limited to whether there was a breach of

26  the Framework Agreement.  LeLe reserves all rights, including the right to amend

27  and supplement its Responses and Objections to Vizio's Requests, should it become

28  necessary and appropriate to do so.

ERVIN COHEN & JESSUP LLP

1   LeLe objects that this Request is compound and is overbroad as to time.

2   LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3   ambiguous and seeks the documents and communications of third parties or

4   documents and communications which are not in LeLe's possession, custody or

5   control.  Furthermore, this Request, which seeks discovery from individuals and

6   entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

7   calculated merely to harass and is overbroad, irrelevant, and not proportional to the

8   needs of the case.  Particularly if the case is limited to a breach of the Framework

9   Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

10  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

11  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

12  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

13  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

14  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

15  LeLe further objects that this Request appears to seek documents and

16  communications protected by the attorney-client privilege and work product

17  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

18  objects to logging all privileged and work product documents created after this

19  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

20  case.

21  LeLe objects that the Request appears calculated merely to harass and is

22  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

23  compound and overbroad.

24  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

25  **NO. 44 SHOULD BE COMPELLED:**

26  As Defendants' objections to this RFP are either in whole, or in substantial

27  part identical to the objections which they asserted to Plaintiff's RFP No. One,

28  Plaintiff hereby incorporates by reference all of its reasons why a further response to

ERVIN COHEN & JESSUP LLP

1  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

2  though set forth fully in this place.  Quite simply, these documents are directly

3  relevant to proving alter ego liability and piercing the corporate veil.

4  **REQUEST FOR PRODUCTION NO. 45:**

5      DOCUMENTS sufficient to identify the location of the headquarters and all

6  administrative, manufacturing and distribution facilities for LeECO, GLOBAL,

7  LELE, LTI, LREG and/or any of their AFFILIATES at all times after January 1,

8  2012 and through the present day.

9  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

10     LeEco restates and incorporates by reference the Preliminary Statement and

11  General Objections set forth above.

12     LeEco objects that the Request is compound and is overbroad as to time.

13     LeEco objects that the definition of "Affiliates" is overbroad, vague and

14  ambiguous and seeks the documents and communications of third parties or

15  documents and communications which are not in LeEco's possession, custody or

16  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

17  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

18  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

19  the case is limited to a breach of the Framework Agreement, the dispute is limited to

20  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

21  another $10 million in escrow that is disputed.  The remaining dispute concerns the

22  Parties' obligations to each other in the context of the proposed China JV.

23  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

24  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

25  Estate Group LLC are not parties to this action.

26     LeEco objects that the Request calls for confidential information and/or trade

27  secrets.

28     LeEco objects that the Request appears calculated merely to harass and is

ERVIN COHEN & JESSUP LLP

1 vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

2 compound and overbroad.

3   LeEco further objects that this Request appears to seek documents protected

4 by the attorney-client privilege and work product doctrine.  LeEco further objects to

5 logging all privileged and work product documents created after this lawsuit was

6 filed as unduly burdensome and disproportionate to the needs of the case.

7   Subject to and without waiving any of its objections, LeEco responds as

8 follows: LeEco will conduct a reasonable search of documents within its possession,

9 custody or control and, subject to entry of a protective order, produce any

10 documents, from 2014 to the present, sufficient to identify the location of the

11 headquarters of LeEco.  LeEco will produce nonprivileged documents identified

12 during the search on a rolling basis, starting on April 25, 2018.  LeEco expects to

13 complete its rolling production on or before approximately July 25, 2018.

14 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

15   As Defendants' objections to this RFP are either in whole, or in substantial

16 part identical to the objections which they asserted to Plaintiff's RFP No. One,

17 Plaintiff hereby incorporates by reference all of its reasons why a further response to

18 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

19 though set forth fully in this place.  Quite simply, these documents are directly

20 relevant to proving alter ego liability and piercing the corporate veil.

21 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

22 **NO. 45 SHOULD BE COMPELLED:**

23   Pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents

24 as they are kept in the usual course of business or must organize and label them to

25 correspond with the categories in the request."  In response to Plaintiff's RFPs,

26 Defendants produced 336 pages of documents consisting mostly of emails and

27 redlined versions of the agreements between the parties.  The responses were not

28 labeled to correspond with any specific categories set forth in Plaintiff's RFPs, nor

ERVIN COHEN & JESSUP LLP

1  were they produced as kept in the ordinary and regular course of business.

2  Pointedly, no information was provided as to which file they came from, whose

3  possession they were in or which custodian or custodians of record maintained

4  them.  Instead, they were all loaded onto a ZIP file and emailed to Plaintiff.  This is

5  tantamount to simply placing the documents in a box, and providing them to

6  Plaintiff, which does not satisfy Rule 34(b)(2)(i).  *See  CooperVision, Inc. v. Ciba*

7  *Vision Corp.,* No. 2:06 CV 149, 2007 WL 2264848, at *5 (E.D.Tex. Aug. 6, 2007),

8  ("[S]imply placing documents in boxes and making them available does not

9  conform to the rule."); *Johnson v. Kraft Foods North America, Inc.,* 236 F.R.D. 535,

10  541 (D.Kan.2006) (where a producing party provided no information regarding the

11  manner in which the documents were produced, including where they were

12  maintained, the identity of the custodian, and whether they were from a single

13  source or multiple sources of files, the producing party failed to carry its burden of

14  demonstrating that the documents were produced as they were maintained)*; Wagner*

15  *v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001) ( "[P]roducing large

16  amounts of documents in no apparent order does not comply with a party's

17  obligation under Rule 34.") (*citations omitted*)*; Stiller v. Arnold,* 167 F.R.D. 68, 71

18  (N.D.Ind.1996) ("Producing 7,000 pages of documents in no apparent order does

19  not comply with a party's obligation under Rule 34(b).")*; T.N. Taube Corp. v.*

20  *Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) (in

21  response to production of 789 documents, bates-stamped and provided in a box with

22  no discernable order, the court expressed doubt that production was made as the

23  documents were kept in the usual course of business, and thus directed that the

24  documents be organized and labeled to indicate the specific document demand to

25  which each related); *Scripps Clinic & Research Found. v. Baxter Travenol*

26  *Laboratories, Inc.,* No. 87–140–CMW, 1988 WL 70013, at * 3–4 (D.Del. June 21,

27  1988) (production of 45,000 documents "arranged in bundles within each of the

28  fifteen boxes, most of the bundles contain[ing] no designation as to the origin of the

ERVIN COHEN & JESSUP LLP

1  file, the name of the file, or whether the bundle contained documents from multiple

2  files" deemed insufficient to satisfy the requirements of Rule 34(b)).  As

3  Defendants' production suffers for the same defects as those in the aforementioned

4  cases, Defendants must be compelled to produce the documents labeled per

5  category.

6  **REQUEST FOR PRODUCTION NO. 46:**

7       DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL,

8  LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1,

9  2012 and through the present day. "Identify" in this request means to provide the

10  full name, title, and current (or last known) address and phone number of each

11  employee, the entity with which each individual was employed, the date on which

12  the individual's employment began, and, if the individual is no longer employed, the

13  dates of his or her service with LeECO, GLOBAL, LELE, LTI, LREG or their

14  AFFILIATES.

15  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

16       LeEco restates and incorporates by reference the Preliminary Statement and

17  General Objections set forth above.

18       LeEco objects that this Request is compound and is overbroad as to time.

19  LeEco further objections that the information sought is irrelevant, and not

20  proportional to the needs of the case as there is no allegation of any employee acting

21  outside the scope of their authority.

22       LeEco objects that the definition of "Affiliates" is overbroad, vague and

23  ambiguous and seeks the documents and communications of third parties or

24  documents and communications which are not in LeEco's possession, custody or

25  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

26  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

27  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

28  the case is limited to a breach of the Framework Agreement, the dispute is limited to

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1   LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

2   another $10 million in escrow that is disputed.  The remaining dispute concerns the

3   Parties' obligations to each other in the context of the proposed China JV.

4   Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

5   been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

6   Estate Group LLC are not parties to this action.

7        LeEco objects that the Request appears calculated merely to harass and is

8   vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

9   compound and overbroad.

10  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

11       LeLe restates and incorporates by reference the Preliminary Statement and

12  General Objections set forth above.  LeLe further objects to this Request on the

13  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

14  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

15  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

16  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

17  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

18  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

19  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

20  never properly served in this action.  In addition to being premature, the Requests

21  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

22  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

23  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

24  seeks the documents and communications of third parties or documents and

25  communications which are not in LeLe's possession, custody or control.

26       Furthermore, Vizio's Requests are premature because they pertain to issues

27  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

28  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

ERVIN COHEN & JESSUP LLP

1  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
2  action for breach of the Merger Agreement including its various theories of fraud
3  related to that alleged breach. Vizio gave a release of all such claims to LeEco in
4  the Framework Agreement upon receipt of $40 million ("Released Claims"), which
5  Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the
6  Merger Agreement, including the negotiation or entry into the Merger Agreement,
7  any breach of the Merger Agreement, or the termination of the Merger Agreement
8  has any relevance, and discovery should be limited to whether there was a breach of
9  the Framework Agreement. LeLe reserves all rights, including the right to amend
10 and supplement its Responses and Objections to Vizio's Requests, should it become
11 necessary and appropriate to do so.

12     LeLe objects that this Request is compound and is overbroad as to time.
13 LeLe further objections that the information sought is irrelevant, and not
14 proportional to the needs of the case as there is no allegation of any employee acting
15 outside the scope of their authority.

16     LeLe further objects that the definition of "Affiliates" is overbroad, vague and
17 ambiguous and seeks the documents and communications of third parties or
18 documents and communications which are not in LeLe's possession, custody or
19 control. Furthermore, this Request, which seeks discovery from individuals and
20 entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears
21 calculated merely to harass and is overbroad, irrelevant, and not proportional to the
22 needs of the case. Particularly if the case is limited to a breach of the Framework
23 Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
24 payment to Vizio of $40 million and another $10 million in escrow that is disputed.
25 The remaining dispute concerns LeEco and Vizio's obligations to each other in the
26 context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele
27 Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and
28 LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  LeLe further objects to the extent that this Request seeks documents and
2  communications protected by the attorney-client privilege and work product
3  doctrine.  LeLe objects to producing any privileged communications.  LeLe further
4  objects to logging all privileged and work product documents created after this
5  lawsuit was filed as unduly burdensome and disproportionate to the needs of the
6  case.

7  LeLe objects that the Request appears calculated merely to harass and is
8  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
9  compound and overbroad.

10  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
11  **NO. 46 SHOULD BE COMPELLED:**

12  As Defendants' objections to this RFP are either in whole, or in substantial
13  part identical to the objections which they asserted to Plaintiff's RFP No. One,
14  Plaintiff hereby incorporates by reference all of its reasons why a further response to
15  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
16  though set forth fully in this place.  Quite simply, these documents are directly
17  relevant to proving alter ego liability and piercing the corporate veil.

18  **REQUEST FOR PRODUCTION NO. 47:**

19  DOCUMENTS sufficient to identify ALL employees, managers, consultants,
20  independent contractors, agents, attorneys, accountants, officers and/or directors
21  shared by, used by, loaned to, or otherwise transferred between one or more of
22  LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time
23  after January 1, 2012.

24  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

25  LeEco restates and incorporates by reference the Preliminary Statement and
26  General Objections set forth above.

27  LeEco objects that this Request is compound and is overbroad as to time.

28  LeEco objects that the definition of "Affiliates" is overbroad, vague and

ERVIN COHEN & JESSUP LLP

1   ambiguous and seeks the documents and communications of third parties or

2   documents and communications which are not in LeEco's possession, custody or

3   control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties

4   supposedly "affiliated" with LeEco appears calculated merely to harass and is

5   overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

6   the case is limited to a breach of the Framework Agreement, the dispute is limited to

7   LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

8   another $10 million in escrow that is disputed.  The remaining dispute concerns the

9   Parties' obligations to each other in the context of the proposed China JV.

10  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

11  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

12  Estate Group LLC are not parties to this action.

13        LeEco objects that the Request appears calculated merely to harass and is

14  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

15  compound and overbroad.

16  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

17        LeLe restates and incorporates by reference the Preliminary Statement and

18  General Objections set forth above.  LeLe further objects to this Request on the

19  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

20  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

21  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

22  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

23  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

24  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

25  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

26  never properly served in this action.  In addition to being premature, the Requests

27  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

28  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

2  seeks the documents and communications of third parties or documents and

3  communications which are not in LeLe's possession, custody or control.

4         Furthermore, Vizio's Requests are premature because they pertain to issues

5  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

6  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

7  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

8  action for breach of the Merger Agreement including its various theories of fraud

9  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

10  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

11  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

12  Merger Agreement, including the negotiation or entry into the Merger Agreement,

13  any breach of the Merger Agreement, or the termination of the Merger Agreement

14  has any relevance, and discovery should be limited to whether there was a breach of

15  the Framework Agreement.  LeLe reserves all rights, including the right to amend

16  and supplement its Responses and Objections to Vizio's Requests, should it become

17  necessary and appropriate to do so.

18         LeLe objects that this Request is compound and is overbroad as to time.

19         LeLe further objects that the definition of "Affiliates" is overbroad, vague and

20  ambiguous and seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or

22  control.  Furthermore, this Request, which seeks discovery from individuals and

23  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

24  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

25  needs of the case.  Particularly if the case is limited to a breach of the Framework

26  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

27  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

28  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

ERVIN COHEN & JESSUP LLP

1  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

2  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

3  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

4      LeLe further objects to the extent that this Request seeks documents and

5  communications protected by the attorney-client privilege and work product

6  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

7  objects to logging all privileged and work product documents created after this

8  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

9  case.

10     LeLe objects that the Request appears calculated merely to harass and is

11  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

12  compound and overbroad.

13  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

14  **NO. 47 SHOULD BE COMPELLED:**

15     As Defendants' objections to this RFP are either in whole, or in substantial

16  part identical to the objections which they asserted to Plaintiff's RFP No. One,

17  Plaintiff hereby incorporates by reference all of its reasons why a further response to

18  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

19  though set forth fully in this place.  Quite simply, these documents are directly

20  relevant to proving alter ego liability and piercing the corporate veil.

21  **REQUEST FOR PRODUCTION NO. 48:**

22     ANY and ALL DOCUMENTS RELATING TO monies transferred by,

23  between or among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

24  AFFILIATES since January 1, 2012, and through and including the present date,

25  INCLUDING intercorporate transfers, hypothecations, loans, gifts, dividends,

26  earnings and profits.

27  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

28     LeEco restates and incorporates by reference the Preliminary Statement and

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  General Objections set forth above.

2       LeEco objects that this Request is compound and is overbroad as to time.

3       LeEco objects that the definition of "Affiliates" is overbroad, vague and

4  ambiguous and seeks the documents and communications of third parties or

5  documents and communications which are not in LeEco's possession, custody or

6  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

7  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

8  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

9  the case is limited to a breach of the Framework Agreement, the dispute is limited to

10  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

11  another $10 million in escrow that is disputed.  The remaining dispute concerns the

12  Parties' obligations to each other in the context of the proposed China JV.

13  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

14  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

15  Estate Group LLC are not parties to this action.

16       LeEco objects that the Request appears calculated merely to harass and is

17  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

18  compound and overbroad.

19       LeEco further objects that this Request appears to seek documents protected

20  by the attorney-client privilege and work product doctrine.  LeEco further objects to

21  logging all privileged and work product documents created after this lawsuit was

22  filed as unduly burdensome and disproportionate to the needs of the case.

23  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

24       LeLe restates and incorporates by reference the Preliminary Statement and

25  General Objections set forth above.  LeLe further objects to this Request on the

26  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

27  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

28  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

14676.8:9283165.1      263      8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1    Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

2    and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with

3    Vizio that give rise to this action nor is LeLe alleged to have made any statement to

4    Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

5    never properly served in this action.  In addition to being premature, the Requests

6    directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

7    are calculated merely to harass and are overbroad, irrelevant, and not proportional to

8    the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

9    seeks the documents and communications of third parties or documents and

10   communications which are not in LeLe's possession, custody or control.

11          Furthermore, Vizio's Requests are premature because they pertain to issues

12   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

13   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

14   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

15   action for breach of the Merger Agreement including its various theories of fraud

16   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

17   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

18   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

19   Merger Agreement, including the negotiation or entry into the Merger Agreement,

20   any breach of the Merger Agreement, or the termination of the Merger Agreement

21   has any relevance, and discovery should be limited to whether there was a breach of

22   the Framework Agreement.  LeLe reserves all rights, including the right to amend

23   and supplement its Responses and Objections to Vizio's Requests, should it become

24   necessary and appropriate to do so.

25          LeLe objects that this Request is compound and is overbroad as to time.

26          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

27   ambiguous and seeks the documents and communications of third parties or

28   documents and communications which are not in LeLe's possession, custody or

ERVIN COHEN & JESSUP LLP

1  control.  Furthermore, this Request, which seeks discovery from individuals and

2  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

3  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

4  needs of the case.  Particularly if the case is limited to a breach of the Framework

5  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

6  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

7  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

8  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

9  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

10 LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

11      LeLe further objects that this Request appears to seek documents and

12 communications protected by the attorney-client privilege and work product

13 doctrine.  LeLe objects to producing any privileged communications.  LeLe further

14 objects to logging all privileged and work product documents created after this

15 lawsuit was filed as unduly burdensome and disproportionate to the needs of the

16 case.

17      LeLe objects that the Request appears calculated merely to harass and is

18 vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

19 compound and overbroad.

20 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

21 **NO. 48 SHOULD BE COMPELLED:**

22      As Defendants' objections to this RFP are either in whole, or in substantial

23 part identical to the objections which they asserted to Plaintiff's RFP No. One,

24 Plaintiff hereby incorporates by reference all of its reasons why a further response to

25 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

26 though set forth fully in this place.  Quite simply, these documents are directly

27 relevant to proving alter ego liability and piercing the corporate veil.

28

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 49:**

ANY and ALL DOCUMENTS RELATING TO contracts or agreements with third parties, loans, other obligations or instruments of debt that were paid, co-signed or guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since January 1, 2012, and through and including the present date.

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to

ERVIN COHEN & JESSUP LLP

1   logging all privileged and work product documents created after this lawsuit was

2   filed as unduly burdensome and disproportionate to the needs of the case.

3   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

4        LeLe restates and incorporates by reference the Preliminary Statement and

5   General Objections set forth above.  LeLe further objects to this Request on the

6   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

7   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

8   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

9   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

10  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

11  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

12  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

13  never properly served in this action.  In addition to being premature, the Requests

14  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

15  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

16  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

17  seeks the documents and communications of third parties or documents and

18  communications which are not in LeLe's possession, custody or control.

19       Furthermore, Vizio's Requests are premature because they pertain to issues

20  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

21  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

22  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

23  action for breach of the Merger Agreement including its various theories of fraud

24  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

25  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

26  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

27  Merger Agreement, including the negotiation or entry into the Merger Agreement,

28  any breach of the Merger Agreement, or the termination of the Merger Agreement

ERVIN COHEN & JESSUP LLP

1  has any relevance, and discovery should be limited to whether there was a breach of

2  the Framework Agreement.  LeLe reserves all rights, including the right to amend

3  and supplement its Responses and Objections to Vizio's Requests, should it become

4  necessary and appropriate to do so.

5        LeLe objects that this Request is compound and is overbroad as to time.

6        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

7  ambiguous and seeks the documents and communications of third parties or

8  documents and communications which are not in LeLe's possession, custody or

9  control.  Furthermore, this Request, which seeks discovery from individuals and

10  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

11  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

12  needs of the case.  Particularly if the case is limited to a breach of the Framework

13  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

14  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

15  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

16  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

17  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

18  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

19        LeLe further objects that this Request appears to seek documents and

20  communications protected by the attorney-client privilege and work product

21  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

22  objects to logging all privileged and work product documents created after this

23  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

24  case.

25        LeLe objects that the Request appears calculated merely to harass and is

26  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

27  compound and overbroad.

28

14676.8:9283165.1

268

8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

**REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 49 SHOULD BE COMPELLED:**

As Defendants' objections to this RFP are either in whole, or in substantial part identical to the objections which they asserted to Plaintiff's RFP No. One, Plaintiff hereby incorporates by reference all of its reasons why a further response to RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as though set forth fully in this place. Quite simply, these documents are directly relevant to proving alter ego liability and piercing the corporate veil.

**REQUEST FOR PRODUCTION NO. 50:**

ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO, GLOBAL, LELE, LTI, and LREG at or about (a) the date of its incorporation or formation, and (b) from and after January 1, 2012 and including the present date.

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

ERVIN COHEN & JESSUP LLP

1   LeEco objects that the Request appears calculated merely to harass and is

2   vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

3   compound and overbroad.

4   LeEco further objects that this Request appears to seek documents protected

5   by the attorney-client privilege and work product doctrine.  LeEco further objects to

6   logging all privileged and work product documents created after this lawsuit was

7   filed as unduly burdensome and disproportionate to the needs of the case.

8   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

9   LeLe restates and incorporates by reference the Preliminary Statement and

10  General Objections set forth above.  LeLe further objects to this Request on the

11  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

12  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

13  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

14  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

15  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

16  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

17  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

18  never properly served in this action.  In addition to being premature, the Requests

19  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

20  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

21  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

22  seeks the documents and communications of third parties or documents and

23  communications which are not in LeLe's possession, custody or control.

24  Furthermore, Vizio's Requests are premature because they pertain to issues

25  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

26  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

27  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

28  action for breach of the Merger Agreement including its various theories of fraud

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

2  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

3  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

4  Merger Agreement, including the negotiation or entry into the Merger Agreement,

5  any breach of the Merger Agreement, or the termination of the Merger Agreement

6  has any relevance, and discovery should be limited to whether there was a breach of

7  the Framework Agreement.  LeLe reserves all rights, including the right to amend

8  and supplement its Responses and Objections to Vizio's Requests, should it become

9  necessary and appropriate to do so.

10       LeLe objects that this Request is compound and is overbroad as to time.

11       LeLe further objects that the Request seeks the documents and

12  communications of third parties or documents and communications which are not in

13  LeLe's possession, custody or control.  Furthermore, this Request, which seeks

14  discovery from individuals and entities ("Unrelated Third Parties") supposedly

15  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

16  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

17  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

18  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

19  million in escrow that is disputed.  The remaining dispute concerns LeEco and

20  Vizio's obligations to each other in the context of the proposed China JV.

21  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

22  been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real

23  Estate Group LLC are not parties to this action.

24       LeLe further objects that this Request appears to seek documents and

25  communications protected by the attorney-client privilege and work product

26  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

27  objects to logging all privileged and work product documents created after this

28  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

14676.8.9283165.1

271

8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  case.

2      LeLe objects that the Request appears calculated merely to harass and is

3  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

4  compound and overbroad.

5  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

6  **NO. 50 SHOULD BE COMPELLED:**

7      As Defendants' objections to this RFP are either in whole, or in substantial

8  part identical to the objections which they asserted to Plaintiff's RFP No. One,

9  Plaintiff hereby incorporates by reference all of its reasons why a further response to

10  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

11  though set forth fully in this place.  Quite simply, these documents are directly

12  relevant to proving alter ego liability and piercing the corporate veil.

13  **REQUEST FOR PRODUCTION NO. 51:**

14      ANY and ALL financial statements and analyses for LeECO, GLOBAL,

15  LELE, LTI, and LREG since January 1, 2012, and through and including the present

16  date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance

17  sheets, and 4) ANY financial summaries or reports prepared for a) the use of JIA or

18  other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential

19  investors in, joint venturers with, or lenders to LeECO, GLOBAL, LELE, LTI,

20  LREG and/or any of their AFFILIATES.

21  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

22      LeEco restates and incorporates by reference the Preliminary Statement and

23  General Objections set forth above.

24      LeEco objects that this Request is compound and is overbroad as to time.

25      LeEco objects that the Request seeks the documents and communications of

26  third parties or documents and communications which are not in LeEco's

27  possession, custody or control.  Furthermore, this Request, which seeks discovery

28  from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated

ERVIN COHEN & JESSUP LLP

1   merely to harass and is overbroad, irrelevant, and not proportional to the needs of

2   the case.  Particularly if the case is limited to a breach of the Framework Agreement,

3   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio

4   of $40 million and another $10 million in escrow that is disputed.  The remaining

5   dispute concerns the Parties' obligations to each other in the context of the proposed

6   China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia

7   have not been served with the Summons and FAC, and LeTechnology, Inc., and

8   LeEco Real Estate Group LLC are not parties to this action.

9        LeEco objects that the Request appears calculated merely to harass and is

10   vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

11   compound and overbroad.

12        LeEco further objects that this Request appears to seek documents protected

13   by the attorney-client privilege and work product doctrine.  LeEco further objects to

14   logging all privileged and work product documents created after this lawsuit was

15   filed as unduly burdensome and disproportionate to the needs of the case.

16   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

17        LeLe restates and incorporates by reference the Preliminary Statement and

18   General Objections set forth above.  LeLe further objects to this Request on the

19   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

20   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

21   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

22   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

23   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

24   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

25   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

26   never properly served in this action.  In addition to being premature, the Requests

27   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

28   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

ERVIN COHEN & JESSUP LLP

1   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

2   seeks the documents and communications of third parties or documents and

3   communications which are not in LeLe's possession, custody or control.

4         Furthermore, Vizio's Requests are premature because they pertain to issues

5   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

6   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

7   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

8   action for breach of the Merger Agreement including its various theories of fraud

9   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

10  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

11  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

12  Merger Agreement, including the negotiation or entry into the Merger Agreement,

13  any breach of the Merger Agreement, or the termination of the Merger Agreement

14  has any relevance, and discovery should be limited to whether there was a breach of

15  the Framework Agreement.  LeLe reserves all rights, including the right to amend

16  and supplement its Responses and Objections to Vizio's Requests, should it become

17  necessary and appropriate to do so.

18        LeLe objects that this Request is compound and is overbroad as to time.

19        LeLe further objects that the Request seeks the documents and

20  communications of third parties or documents and communications which are not in

21  LeLe's possession, custody or control.  Furthermore, this Request, which seeks

22  discovery from individuals and entities ("Unrelated Third Parties") supposedly

23  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

24  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

25  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

26  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

27  million in escrow that is disputed.  The remaining dispute concerns LeEco and

28  Vizio's obligations to each other in the context of the proposed China JV.

ERVIN COHEN & JESSUP LLP

274
JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1   Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
2   been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real
3   Estate Group LLC are not parties to this action.

4        LeLe further objects that this Request appears to seek documents and
5   communications protected by the attorney-client privilege and work product
6   doctrine.  LeLe objects to producing any privileged communications.  LeLe further
7   objects to logging all privileged and work product documents created after this
8   lawsuit was filed as unduly burdensome and disproportionate to the needs of the
9   case.

10        LeLe objects that the Request appears calculated merely to harass and is
11   vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
12   compound and overbroad.

13   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
14   **NO. 51 SHOULD BE COMPELLED:**

15        As Defendants' objections to this RFP are either in whole, or in substantial
16   part identical to the objections which they asserted to Plaintiff's RFP No. One,
17   Plaintiff hereby incorporates by reference all of its reasons why a further response to
18   RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
19   though set forth fully in this place.  Quite simply, these documents are directly
20   relevant to proving alter ego liability and piercing the corporate veil.

21   **REQUEST FOR PRODUCTION NO. 52:**

22        ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits
23   of LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through
24   and including the present date.

25   **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

26        LeEco restates and incorporates by reference the Preliminary Statement and
27   General Objections set forth above.

28        LeEco objects that this Request is compound and is overbroad as to time.

ERVIN COHEN & JESSUP LLP

14676.8:9283165.1       275       8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   LeEco objects that the Request seeks the documents and communications of

2   third parties or documents and communications which are not in LeEco's

3   possession, custody or control.  Furthermore, this Request, which seeks discovery

4   from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated

5   merely to harass and is overbroad, irrelevant, and not proportional to the needs of

6   the case.  Particularly if the case is limited to a breach of the Framework Agreement,

7   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio

8   of $40 million and another $10 million in escrow that is disputed.  The remaining

9   dispute concerns the Parties' obligations to each other in the context of the proposed

10  China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia

11  have not been served with the Summons and FAC, and LeTechnology, Inc., and

12  LeEco Real Estate Group LLC are not parties to this action.

13  LeEco objects that the Request appears calculated merely to harass and is

14  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

15  compound and overbroad.

16  LeEco further objects that this Request appears to seek documents protected

17  by the attorney-client privilege and work product doctrine.  LeEco further objects to

18  logging all privileged and work product documents created after this lawsuit was

19  filed as unduly burdensome and disproportionate to the needs of the case.

20  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

21  LeLe restates and incorporates by reference the Preliminary Statement and

22  General Objections set forth above.  LeLe further objects to this Request on the

23  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

24  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

25  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

26  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

27  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

28  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

1  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
2  never properly served in this action.  In addition to being premature, the Requests
3  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
4  are calculated merely to harass and are overbroad, irrelevant, and not proportional to
5  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
6  seeks the documents and communications of third parties or documents and
7  communications which are not in LeLe's possession, custody or control.

8        Furthermore, Vizio's Requests are premature because they pertain to issues
9  that would be rendered irrelevant were the Court to grant LeEco's pending MTD
10  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
11  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
12  action for breach of the Merger Agreement including its various theories of fraud
13  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in
14  the Framework Agreement upon receipt of $40 million ("Released Claims"), which
15  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the
16  Merger Agreement, including the negotiation or entry into the Merger Agreement,
17  any breach of the Merger Agreement, or the termination of the Merger Agreement
18  has any relevance, and discovery should be limited to whether there was a breach of
19  the Framework Agreement.  LeLe reserves all rights, including the right to amend
20  and supplement its Responses and Objections to Vizio's Requests, should it become
21  necessary and appropriate to do so.

22        LeLe objects that this Request is compound and is overbroad as to time.

23        LeLe further objects that the Request seeks the documents and
24  communications of third parties or documents and communications which are not in
25  LeLe's possession, custody or control.  Furthermore, this Request, which seeks
26  discovery from individuals and entities ("Unrelated Third Parties") supposedly
27  "affiliated" with LeLe appears calculated merely to harass and is overbroad,
28  irrelevant, and not proportional to the needs of the case.  Particularly if the case is

ERVIN COHEN & JESSUP LLP

1  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

2  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

3  million in escrow that is disputed.  The remaining dispute concerns LeEco and

4  Vizio's obligations to each other in the context of the proposed China JV.

5  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

6  been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real

7  Estate Group LLC are not parties to this action.

8  　　　LeLe further objects that this Request appears to seek documents and

9  communications protected by the attorney-client privilege and work product

10  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

11  objects to logging all privileged and work product documents created after this

12  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

13  case.

14  　　　LeLe objects that the Request appears calculated merely to harass and is

15  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

16  compound and overbroad.

17  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

18  **NO. 52 SHOULD BE COMPELLED:**

19  　　　As Defendants' objections to this RFP are either in whole, or in substantial

20  part identical to the objections which they asserted to Plaintiff's RFP No. One,

21  Plaintiff hereby incorporates by reference all of its reasons why a further response to

22  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

23  though set forth fully in this place.  Quite simply, these documents are directly

24  relevant to proving alter ego liability and piercing the corporate veil.

25  **REQUEST FOR PRODUCTION NO. 53:**

26  　　　DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible

27  and intangible assets of any kind with a value in excess of $100,000 in which

28  LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES

ERVIN COHEN & JESSUP LLP

278
JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1    possessed an ownership interest at any point after July 1, 2016. "Identify" in this

2    request means to provide the description and location for each tangible and

3    intangible asset, the nature and size of the interest in that asset (e.g. a 50% equity

4    interest, a joint owner in common), and the last known market value of the asset.

5    **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

6         LeEco restates and incorporates by reference the Preliminary Statement and

7    General Objections set forth above.

8         LeEco objects that this Request is compound and is overbroad as to time.

9         LeEco objects that the Request seeks the documents and communications of

10   third parties or documents and communications which are not in LeEco's

11   possession, custody or control.  Furthermore, this Request, which seeks discovery

12   from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated

13   merely to harass and is overbroad, irrelevant, and not proportional to the needs of

14   the case.  Particularly if the case is limited to a breach of the Framework Agreement,

15   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio

16   of $40 million and another $10 million in escrow that is disputed.  The remaining

17   dispute concerns the Parties' obligations to each other in the context of the proposed

18   China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia

19   have not been served with the Summons and FAC, and LeTechnology, Inc., and

20   LeEco Real Estate Group LLC are not parties to this action.

21        LeEco objects that the Request appears calculated merely to harass and is

22   vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

23   compound and overbroad.

24        LeEco further objects that this Request appears to seek documents protected

25   by the attorney-client privilege and work product doctrine.  LeEco further objects to

26   logging all privileged and work product documents created after this lawsuit was

27   filed as unduly burdensome and disproportionate to the needs of the case.

28

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

**LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend

ERVIN COHEN & JESSUP LLP

1 and supplement its Responses and Objections to Vizio's Requests, should it become
2 necessary and appropriate to do so.

3   LeLe objects that this Request is compound and is overbroad as to time.

4   LeLe further objects that the Request seeks the documents and
5 communications of third parties or documents and communications which are not in
6 LeLe's possession, custody or control. Furthermore, this Request, which seeks
7 discovery from individuals and entities ("Unrelated Third Parties") supposedly
8 "affiliated" with LeLe appears calculated merely to harass and is overbroad,
9 irrelevant, and not proportional to the needs of the case. Particularly if the case is
10 limited to a breach of the Framework Agreement, the dispute is limited to LeEco's
11 (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10
12 million in escrow that is disputed. The remaining dispute concerns LeEco and
13 Vizio's obligations to each other in the context of the proposed China JV.
14 Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
15 been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real
16 Estate Group LLC are not parties to this action.

17   LeLe further objects that this Request appears to seek documents and
18 communications protected by the attorney-client privilege and work product
19 doctrine. LeLe objects to producing any privileged communications. LeLe further
20 objects to logging all privileged and work product documents created after this
21 lawsuit was filed as unduly burdensome and disproportionate to the needs of the
22 case.

23   LeLe objects that the Request appears calculated merely to harass and is
24 vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
25 compound and overbroad.

26 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
27 **NO. 53 SHOULD BE COMPELLED:**

28   As Defendants' objections to this RFP are either in whole, or in substantial

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1  part identical to the objections which they asserted to Plaintiff's RFP No. One,

2  Plaintiff hereby incorporates by reference all of its reasons why a further response to

3  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

4  though set forth fully in this place.  Quite simply, these documents are directly

5  relevant to proving alter ego liability and piercing the corporate veil.

6  **REQUEST FOR PRODUCTION NO. 54:**

7      DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or

8  liabilities of any kind with a value in excess of $100,000 owed by LeECO,

9  GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point

10  after July 1, 2016. "Identify" in this request means to provide the type of liability,

11  the amount currently owed, the PERSON to whom the liability is owed and that

12  PERSON's address and telephone number.

13  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

14      LeEco restates and incorporates by reference the Preliminary Statement and

15  General Objections set forth above.

16      LeEco objects that this Request is compound and is overbroad as to time.

17      LeEco objects that the Request seeks the documents and communications of

18  third parties or documents and communications which are not in LeEco's

19  possession, custody or control. Furthermore, this Request, which seeks discovery

20  from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated

21  merely to harass and is overbroad, irrelevant, and not proportional to the needs of

22  the case.  Particularly if the case is limited to a breach of the Framework Agreement,

23  the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio

24  of $40 million and another $10 million in escrow that is disputed.  The remaining

25  dispute concerns the Parties' obligations to each other in the context of the proposed

26  China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia

27  have not been served with the Summons and FAC, and LeTechnology, Inc., and

28  LeEco Real Estate Group LLC are not parties to this action.

ERVIN COHEN & JESSUP LLP

1   LeEco objects that the Request appears calculated merely to harass and is
2   vague, ambiguous, unduly burdensome, disproportional to the needs of the case,
3   compound and overbroad.

4   LeEco further objects that this Request appears to seek documents protected
5   by the attorney-client privilege and work product doctrine.  LeEco further objects to
6   logging all privileged and work product documents created after this lawsuit was
7   filed as unduly burdensome and disproportionate to the needs of the case.

8   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

9   LeLe restates and incorporates by reference the Preliminary Statement and
10  General Objections set forth above.  LeLe further objects to this Request on the
11  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
12  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
13  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
14  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
15  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
16  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
17  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
18  never properly served in this action.  In addition to being premature, the Requests
19  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")
20  are calculated merely to harass and are overbroad, irrelevant, and not proportional to
21  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it
22  seeks the documents and communications of third parties or documents and
23  communications which are not in LeLe's possession, custody or control.

24  Furthermore, Vizio's Requests are premature because they pertain to issues
25  that would be rendered irrelevant were the Court to grant LeEco's pending MTD
26  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).
27  LeEco's pending MTD would eliminate Vizio's second through sixth causes of
28  action for breach of the Merger Agreement including its various theories of fraud

ERVIN COHEN & JESSUP LLP

1    related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

2    the Framework Agreement upon receipt of $40 million ("Released Claims"), which

3    Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

4    Merger Agreement, including the negotiation or entry into the Merger Agreement,

5    any breach of the Merger Agreement, or the termination of the Merger Agreement

6    has any relevance, and discovery should be limited to whether there was a breach of

7    the Framework Agreement.  LeLe reserves all rights, including the right to amend

8    and supplement its Responses and Objections to Vizio's Requests, should it become

9    necessary and appropriate to do so.

10          LeLe objects that this Request is compound and is overbroad as to time.

11          LeLe further objects that the Request seeks the documents and

12   communications of third parties or documents and communications which are not in

13   LeLe's possession, custody or control.  Furthermore, this Request, which seeks

14   discovery from individuals and entities ("Unrelated Third Parties") supposedly

15   "affiliated" with LeLe appears calculated merely to harass and is overbroad,

16   irrelevant, and not proportional to the needs of the case.  Particularly if the case is

17   limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

18   (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

19   million in escrow that is disputed.  The remaining dispute concerns LeEco and

20   Vizio's obligations to each other in the context of the proposed China JV.

21   Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

22   been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real

23   Estate Group LLC are not parties to this action.

24          LeLe further objects that this Request appears to seek documents and

25   communications protected by the attorney-client privilege and work product

26   doctrine. LeLe objects to producing any privileged communications.  LeLe further

27   objects to logging all privileged and work product documents created after this

28   lawsuit was filed as unduly burdensome and disproportionate to the needs of the

ERVIN COHEN & JESSUP LLP

1    case.

2        LeLe objects that the Request appears calculated merely to harass and is

3    vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

4    compound and overbroad.

5    **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

6    **NO. 54 SHOULD BE COMPELLED:**

7        As Defendants' objections to this RFP are either in whole, or in substantial

8    part identical to the objections which they asserted to Plaintiff's RFP No. One,

9    Plaintiff hereby incorporates by reference all of its reasons why a further response to

10   RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

11   though set forth fully in this place.  Quite simply, these documents are directly

12   relevant to proving alter ego liability and piercing the corporate veil.

13   **REQUEST FOR PRODUCTION NO. 55:**

14       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

15   plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

16   AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible

17   assets of any kind that it possessed after July 1, 2016.

18   **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

19       LeEco restates and incorporates by reference the Preliminary Statement and

20   General Objections set forth above.

21       LeEco objects that this Request is compound and is overbroad as to time.

22       LeEco objects that the Request seeks the documents and communications of

23   third parties or documents and communications which are not in LeEco's

24   possession, custody or control.  Furthermore, this Request, which seeks discovery

25   from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated

26   merely to harass and is overbroad, irrelevant, and not proportional to the needs of

27   the case.  Particularly if the case is limited to a breach of the Framework Agreement,

28   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio

ERVIN COHEN & JESSUP LLP

1  of $40 million and another $10 million in escrow that is disputed.  The remaining

2  dispute concerns the Parties' obligations to each other in the context of the proposed

3  China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia

4  have not been served with the Summons and FAC, and LeTechnology, Inc., and

5  LeEco Real Estate Group LLC are not parties to this action.

6  LeEco objects that the Request appears calculated merely to harass and is

7  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

8  compound and overbroad.

9  LeEco further objects that this Request appears to seek documents protected

10  by the attorney-client privilege and work product doctrine.  LeEco further objects to

11  logging all privileged and work product documents created after this lawsuit was

12  filed as unduly burdensome and disproportionate to the needs of the case.

13  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

14  LeLe restates and incorporates by reference the Preliminary Statement and

15  General Objections set forth above.  LeLe further objects to this Request on the

16  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

17  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

18  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

19  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

20  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

21  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

22  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

23  never properly served in this action.  In addition to being premature, the Requests

24  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

25  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

26  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

27  seeks the documents and communications of third parties or documents and

28  communications which are not in LeLe's possession, custody or control.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    Furthermore, Vizio's Requests are premature because they pertain to issues

2    that would be rendered irrelevant were the Court to grant LeEco's pending MTD

3    Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

4    LeEco's pending MTD would eliminate Vizio's second through sixth causes of

5    action for breach of the Merger Agreement including its various theories of fraud

6    related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

7    the Framework Agreement upon receipt of $40 million ("Released Claims"), which

8    Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

9    Merger Agreement, including the negotiation or entry into the Merger Agreement,

10   any breach of the Merger Agreement, or the termination of the Merger Agreement

11   has any relevance, and discovery should be limited to whether there was a breach of

12   the Framework Agreement.  LeLe reserves all rights, including the right to amend

13   and supplement its Responses and Objections to Vizio's Requests, should it become

14   necessary and appropriate to do so.

15        LeLe objects that this Request is compound and is overbroad as to time.

16        LeLe further objects that the Request seeks the documents and

17   communications of third parties or documents and communications which are not in

18   LeLe's possession, custody or control.  Furthermore, this Request, which seeks

19   discovery from individuals and entities ("Unrelated Third Parties") supposedly

20   "affiliated" with LeLe appears calculated merely to harass and is overbroad,

21   irrelevant, and not proportional to the needs of the case.  Particularly if the case is

22   limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

23   (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

24   million in escrow that is disputed.  The remaining dispute concerns LeEco and

25   Vizio's obligations to each other in the context of the proposed China JV.

26   Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

27   been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real

28   Estate Group LLC are not parties to this action.

1    LeLe further objects that this Request appears to seek documents and

2  communications protected by the attorney-client privilege and work product

3  doctrine.  LeLe objects to producing any privileged communications.  LeLe further

4  objects to logging all privileged and work product documents created after this

5  lawsuit was filed as unduly burdensome and disproportionate to the needs of the

6  case.

7    LeLe objects that the Request appears calculated merely to harass and is

8  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

9  compound and overbroad.

10 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

11 **NO. 55 SHOULD BE COMPELLED:**

12    As Defendants' objections to this RFP are either in whole, or in substantial

13 part identical to the objections which they asserted to Plaintiff's RFP No. One,

14 Plaintiff hereby incorporates by reference all of its reasons why a further response to

15 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

16 though set forth fully in this place.  Quite simply, these documents are directly

17 relevant to proving alter ego liability and piercing the corporate veil.

18 **REQUEST FOR PRODUCTION NO. 56:**

19    The Master Agreement executed in or after December 2016 among LREG,

20 the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS

21 RELATING TO property owned by LREG in Santa Clara, California and ANY and

22 ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master

23 Agreement or to ANY transaction that occurred pursuant to the terms of the Master

24 Agreement.

25 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

26    LeEco restates and incorporates by reference the Preliminary Statement and

27 General Objections set forth above.  LeEco objects that the Request is calculated

28 merely to harass and is overbroad, irrelevant, and not proportional to the needs of

ERVIN COHEN & JESSUP LLP

1  the case.

2      LeEco further objects that this Request is compound and overbroad,

3  particularly in its request for "Any and All Documents or Communications relating

4  to any transfers of equity interests." Moreover, LeEco Real Estate Group LLC is not

5  a party to this action.

6      LeEco further objects that this Request appears to seek documents and

7  communications protected by the attorney-client privilege and work product

8  doctrine.  LeEco objects to producing any privileged communications.

9  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

10      LeLe restates and incorporates by reference the Preliminary Statement and

11  General Objections set forth above. LeLe further objects to this Request on the

12  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

13  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

14  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

15  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

16  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

17  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

18  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

19  never properly served in this action.  In addition to being premature, the Requests

20  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

21  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

22  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

23  seeks the documents and communications of third parties or documents and

24  communications which are not in LeLe's possession, custody or control.

25      Furthermore, Vizio's Requests are premature because they pertain to issues

26  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

27  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

28  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  action for breach of the Merger Agreement including its various theories of fraud

2  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

3  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

4  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

5  Merger Agreement, including the negotiation or entry into the Merger Agreement,

6  any breach of the Merger Agreement, or the termination of the Merger Agreement

7  has any relevance, and discovery should be limited to whether there was a breach of

8  the Framework Agreement.  LeLe reserves all rights, including the right to amend

9  and supplement its Responses and Objections to Vizio's Requests, should it become

10  necessary and appropriate to do so.

11       LeLe further objects that this Request is compound and overbroad,

12  particularly in its request for "Any and All Documents or Communications relating

13  to any transfers of equity interests." Moreover, LeEco Real Estate Group LLC is not

14  a party to this action.

15       LeLe further objects that this Request appears to seek documents and

16  communications protected by the attorney-client privilege and work product

17  doctrine.

18       LeLe objects to producing any privileged communications.

19  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

20  **NO. 56 SHOULD BE COMPELLED:**

21       As Defendants' objections to this RFP are either in whole, or in substantial

22  part identical to the objections which they asserted to Plaintiff's RFP No. One,

23  Plaintiff hereby incorporates by reference all of its reasons why a further response to

24  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

25  though set forth fully in this place.  Quite simply, these documents are directly

26  relevant to proving alter ego liability and piercing the corporate veil.

27  **REQUEST FOR PRODUCTION NO. 57:**

28       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

ERVIN COHEN & JESSUP LLP

1 ANY transfers of equity interests in LREG to the Genzon Group or to ANY

2 PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016,

3 INCLUDING agreements, emails, records of all payments made, and stock

4 certificates or other documents reflecting the transfer of any interest.

5 **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

6 LeEco restates and incorporates by reference the Preliminary Statement and

7 General Objections set forth above.  LeEco objects that the Request is calculated

8 merely to harass and is overbroad, irrelevant, and not proportional to the needs of

9 the case.

10 LeEco further objects that this Request is compound and overbroad,

11 particularly in its request for "Any and All Documents or Communications relating

12 to any transfers of equity interests." Moreover, LeEco Real Estate Group LLC is not

13 a party to this action.

14 LeEco further objects that this Request appears to seek documents and

15 communications protected by the attorney-client privilege and work product

16 doctrine.  LeEco objects to producing any privileged communications.

17 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

18 LeLe restates and incorporates by reference the Preliminary Statement and

19 General Objections set forth above.  LeLe further objects to this Request on the

20 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

21 of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

22 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

23 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

24 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

25 Vizio that give rise to this action nor is LeLe alleged to have made any statement to

26 Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

27 never properly served in this action.  In addition to being premature, the Requests

28 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

2   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

3   seeks the documents and communications of third parties or documents and

4   communications which are not in LeLe's possession, custody or control.

5          Furthermore, Vizio's Requests are premature because they pertain to issues

6   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

7   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

8   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

9   action for breach of the Merger Agreement including its various theories of fraud

10  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

11  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

12  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

13  Merger Agreement, including the negotiation or entry into the Merger Agreement,

14  any breach of the Merger Agreement, or the termination of the Merger Agreement

15  has any relevance, and discovery should be limited to whether there was a breach of

16  the Framework Agreement.  LeLe reserves all rights, including the right to amend

17  and supplement its Responses and Objections to Vizio's Requests, should it become

18  necessary and appropriate to do so.

19         LeLe further objects that this Request is compound and overbroad,

20  particularly in its request for "Any and All Documents or Communications relating

21  to any transfers of equity interests."  Moreover, LeEco Real Estate Group LLC is not

22  a party to this action.

23         LeLe further objects that this Request appears to seek documents and

24  communications protected by the attorney-client privilege and work product

25  doctrine.  LeLe objects to producing any privileged communications.

26  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

27  **NO. 57 SHOULD BE COMPELLED:**

28         As Defendants' objections to this RFP are either in whole, or in substantial

ERVIN COHEN & JESSUP LLP

1  part identical to the objections which they asserted to Plaintiff's RFP No. One,

2  Plaintiff hereby incorporates by reference all of its reasons why a further response to

3  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

4  though set forth fully in this place.  Quite simply, these documents are directly

5  relevant to proving alter ego liability and piercing the corporate veil.

6  **REQUEST FOR PRODUCTION NO. 58:**

7      DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial

8  accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

9  AFFILIATES was listed as an owner of the account at any point in 2017.

10  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

11      LeEco restates and incorporates by reference the Preliminary Statement and

12  General Objections set forth above.

13      LeEco objects that this Request is compound and is overbroad as to time.

14      LeEco objects that the definition of "Affiliates" is overbroad, vague and

15  ambiguous and seeks the documents and communications of third parties or

16  documents and communications which are not in LeEco's possession, custody or

17  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

18  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

19  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

20  the case is limited to a breach of the Framework Agreement, the dispute is limited to

21  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

22  another $10 million in escrow that is disputed.  The remaining dispute concerns the

23  Parties' obligations to each other in the context of the proposed China JV.

24  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

25  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

26  Estate Group LLC are not parties to this action.

27      LeEco objects that the Request appears calculated merely to harass and is

28  vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1    compound and overbroad.

2    **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

3    LeLe restates and incorporates by reference the Preliminary Statement and

4    General Objections set forth above.  LeLe further objects to this Request on the

5    grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

6    of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

7    LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

8    Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

9    and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

10   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

11   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

12   never properly served in this action.  In addition to being premature, the Requests

13   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

14   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

15   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

16   seeks the documents and communications of third parties or documents and

17   communications which are not in LeLe's possession, custody or control.

18   Furthermore, Vizio's Requests are premature because they pertain to issues

19   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

20   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

21   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

22   action for breach of the Merger Agreement including its various theories of fraud

23   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

24   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

25   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

26   Merger Agreement, including the negotiation or entry into the Merger Agreement,

27   any breach of the Merger Agreement, or the termination of the Merger Agreement

28   has any relevance, and discovery should be limited to whether there was a breach of

ERVIN COHEN & JESSUP LLP

1   the Framework Agreement.  LeLe reserves all rights, including the right to amend

2   and supplement its Responses and Objections to Vizio's Requests, should it become

3   necessary and appropriate to do so.

4         LeLe objects that this Request is compound and is overbroad as to time.

5         LeLe further objects that the definition of "Affiliates" is overbroad, vague and

6   ambiguous and seeks the documents and communications of third parties or

7   documents and communications which are not in LeLe's possession, custody or

8   control.

9         Furthermore, this Request, which seeks discovery from individuals and

10   entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

11   calculated merely to harass and is overbroad, irrelevant, and not proportional to the

12   needs of the case.  Particularly if the case is limited to a breach of the Framework

13   Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

14   payment to Vizio of $40 million and another $10 million in escrow that is disputed.

15   The remaining dispute concerns LeEco and Vizio's obligations to each other in the

16   context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

17   Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

18   LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

19         LeLe further objects to the extent that this Request seeks documents and

20   communications protected by the attorney-client privilege and work product

21   doctrine.  LeLe objects to producing any privileged communications.

22         LeLe objects that the Request appears calculated merely to harass and is

23   vague, ambiguous, unduly burdensome, disproportional to the needs of the case,

24   compound and overbroad.

25   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

26   **NO. 58 SHOULD BE COMPELLED:**

27         As Defendants' objections to this RFP are either in whole, or in substantial

28   part identical to the objections which they asserted to Plaintiff's RFP No. One,

ERVIN COHEN & JESSUP LLP

1  Plaintiff hereby incorporates by reference all of its reasons why a further response to

2  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

3  though set forth fully in this place.  Quite simply, these documents are directly

4  relevant to proving alter ego liability and piercing the corporate veil.

5  **REQUEST FOR PRODUCTION NO. 59:**

6    The letter or memo by JIA issued in or about November 2016 RELATING

7  TO financing issues being experienced by the global LeEco businesses and

8  announcing that JIA would reduce his own income to one yuan.  This letter was

9  referenced in an article by Bloomberg News, which article can be found at

10  https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-

11  confesses-to-cash-crunch-at-leeco.

12  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

13    LeEco restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.  LeEco further objects to this Request as

15  premature and improper because Vizio's second through sixth causes of action in

16  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

17  LeEco's Motion to Dismiss, then the information and documents sought by this

18  Request are not relevant, making the Request disproportionate to the needs of the

19  case.  LeEco contends that, at this stage, any discovery in this matter should be

20  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

21  Merger Agreement (including its various theories of fraud related to that alleged

22  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

23  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

24  Merger Agreement, including the negotiation or entry into the Merger Agreement,

25  any breach of the Merger Agreement, or the termination of the Merger Agreement

26  has any relevance.  LeEco reserves all rights, including the right to amend and

27  supplement its Response to this Request, should it become necessary and

28  appropriate to do so.

ERVIN COHEN & JESSUP LLP

1  Furthermore, this Request, which seeks discovery from Unrelated Third

2  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

3  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

4  the case is limited to a breach of the Framework Agreement, the dispute is limited to

5  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

6  another $10 million in escrow that is disputed.  The remaining dispute concerns the

7  Parties' obligations to each other in the context of the proposed China JV.

8  Moreover, Yueting Jia has not been served with the Summons and FAC.

9  LeEco further objects that this Request to the extent that is seeks documents

10  and communications protected by the attorney-client privilege and work product

11  doctrine.  LeEco objects to producing any privileged communications.

12  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

13  LeLe restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.  LeLe further objects to this Request on the

15  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

16  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

17  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

18  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

19  and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with

20  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

21  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

22  never properly served in this action.  In addition to being premature, the Requests

23  directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

24  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

25  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

26  seeks the documents and communications of third parties or documents and

27  communications which are not in LeLe's possession, custody or control.

28  Furthermore, Vizio's Requests are premature because they pertain to issues

ERVIN COHEN & JESSUP LLP

1   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

2   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

3   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

4   action for breach of the Merger Agreement including its various theories of fraud

5   related to that alleged breach. Vizio gave a release of all such claims to LeEco in

6   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

7   Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the

8   Merger Agreement, including the negotiation or entry into the Merger Agreement,

9   any breach of the Merger Agreement, or the termination of the Merger Agreement

10  has any relevance, and discovery should be limited to whether there was a breach of

11  the Framework Agreement. LeLe reserves all rights, including the right to amend

12  and supplement its Responses and Objections to Vizio's Requests, should it become

13  necessary and appropriate to do so.

14        LeLe further objects that the Request seeks the documents and

15  communications of third parties or documents and communications which are not in

16  LeLe's possession, custody or control. Furthermore, this Request, which seeks

17  discovery from individuals and entities ("Unrelated Third Parties") supposedly

18  "affiliated" with LeLe appears calculated merely to harass and is overbroad,

19  irrelevant, and not proportional to the needs of the case. Particularly if the case is

20  limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

21  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10

22  million in escrow that is disputed. The remaining dispute concerns LeEco and

23  Vizio's obligations to each other in the context of the proposed China JV.

24  Moreover, Yueting Jia has not been served with the Summons and FAC.

25        LeLe further objects that this Request to the extent that is seeks documents

26  and communications protected by the attorney-client privilege and work product

27  doctrine.

28        LeLe objects to producing any privileged communications.

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1 **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
2 **NO. 59 SHOULD BE COMPELLED:**

3       As Defendants' objections to this RFP are either in whole, or in substantial
4 part identical to the objections which they asserted to Plaintiff's RFP No. One,
5 Plaintiff hereby incorporates by reference all of its reasons why a further response to
6 RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as
7 though set forth fully in this place.

8       Wholly apart from these reasons, the notion that documents which relate to
9 the Merger Agreement and why the Merger was not consummated are somehow
10 irrelevant flies directly in the face of the alternative Claim for Relief for Breach of
11 the Merger Agreement, let alone Rescission of the Framework Agreement.  Rule
12 26(b)(1) of the *Federal Rules of Civil Procedure* specifically provides that "[P]arties
13 may obtain discovery regarding any unprivileged matter that is relevant to any
14 party's claim or defense and proportional to the needs of the case, considering the
15 importance of the issues at stake in the action, the amount in controversy, the
16 parties' relative access to relevant information, the parties' resources, the
17 importance of discovery in resolving the issues and whether the burden or expense
18 of the proposed discovery outweighs its likely benefit.  Information…need not be
19 admissible in evidence to be discoverable."  That is because "[t]he purpose of
20 discovery is to allow a broad search for facts, the names of witnesses, or any other
21 matters which may aid a party in the preparation of his case." *Anderson v. Hansen*,
22 2013 WL 428737*4 (E.D. Cal.)

23       The notion that these documents need not be produced because the Franchise
24 Agreement terminated the Merger Agreement is absurd.  First, Section 1.1 of the
25 Framework Agreement specifically carved out and left intact the "remaining Buyer
26 Termination Fee Deposit" provisions of the Merger Agreement; *i.e.,* the $50MM
27 sum remaining in escrow.  (Docket No. 35, FAC, ¶¶ 22, 36-37; Docket No. 23-3,
28 Wong Dec., Ex. 2 [Framework Agreement]).  Second, "under California law, [i]t is

ERVIN COHEN & JESSUP LLP

1  settled law that if a defrauded party is induced by false representations to execute a

2  contract, the party has the option of rescinding the contract or affirming it and

3  recovering damages for fraud." *In re Sepulveda*, 2017 WL 1505216*8 (9th Cir.

4  B.A.P. (applying this rule to settlement agreements.)  *Accord, Persson v. Smart*

5  *Inventions, Inc.*, 125 Cal.App. 4th 1141, 1153, (2005) ("[s]ettled law [is] that if a

6  defrauded party is induced by false representations to execute a contract, the party

7  has the option of rescinding the contract or affirming it and recovering damages for

8  the fraud.")  Third, where, as here, the release was not the sole object of the

9  Framework Agreement, there is no requirement that any consideration be restored to

10  permit the pursuit of damages for fraudulent inducement of a settlement agreement.

11  *Burton Way Hotels, Ltd. v. Four Seasons Hotels Limited*, 2012 WL 12883616*14-

12  15 (C.D. Cal.).  Fourth, even where a party that is so defrauded seeks relief based on

13  rescission, such relief "shall not be denied because of a delay in restoring or

14  tendering restoration of such benefits before judgment unless such delay has been

15  substantially prejudicial to the other party, but [rather], the court may make a tender

16  of restoration a condition of its judgment." *Cal. Civ. Code* §1693.  *Accord Taylor v.*

17  *Cabrera*, 2015 WL 12661919*5 & 7 (Selna, J.) ("The…Defendants argue that

18  Taylor, in order to seek rescission, must allege a tender of funds back to Veneciao

19  and Cabrera….But Taylor's claim for rescission…is a claim about the

20  circumstances that brought about the Settlement Agreement and therefore the tender

21  need not be made prior to determining whether Taylor actually has a definite ground

22  to rescind.").  Fifth, a successful claim for rescission based on fraud would operate

23  to restore the Merger Agreement in its terminated state notwithstanding Defendants'

24  claim that the Framework Agreement somehow substitutes for the Merger

25  Agreement in its entirety, with or without the express carve out of the $50MM

26  Remaining Buyer Termination Fee Deposit provisions.  *Airs Intern, Inc. v. Perfect*

27  *Scents Distributions Ltd.*, 902 F. Supp. 1141, 1147-1149 (N.D. Cal. 1995) (applying

28  California law and holding that fraud claim for rescission would operate to restore

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  old agreement notwithstanding that a new agreement had been substituted for the

2  old agreement).  Sixth, documents related to the Merger and the fraudulent

3  misrepresentations that gave rise to the Merger are germane to explaining the

4  circumstances which gave rise to the Framework Agreement and/or whether

5  Defendants likewise made fraudulent representations or otherwise acted in good

6  faith with respect to the Framework Agreement, *i.e.* are equally probative on issues

7  of intent, knowledge, good faith and absence of mistake as to the Framework

8  Agreement and the dealings between VIZIO and Defendants.  *U.S. v. Jenkins*, 785

9  F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*, *White v. U.S.*, 479 U.S. 889

10  (1986) (evidence of prior bad acts of defendants in obtaining conventional mobile

11  home loans (*i.e.,* loan irregularities) admissible in subsequent trial of fraudulent

12  scheme to obtain FHA loans since "[t]he fact that Jenkins used fraudulent means to

13  secure conventional loans is probative on issues of intent, knowledge, good faith and

14  absence of mistake in dealing with FHA transactions.").  *Accord, U.S. v. Ruiz*, 665

15  Fed. Appx. 607, 610 (9th Cir. 2016) (prior fraudulent land patent scheme and past

16  failure to file tax returns admissible in subsequent complex tax fraud conspiracy trial

17  since the former "was used to explain how the…conspirators met each other and

18  garnered customers, while the latter constituted "prior acts" that were "probative of

19  issues of intent, knowledge, good faith and absence of mistake.")

20       In short, production should be ordered in full, without objection.

21  **REQUEST FOR PRODUCTION NO. 60:**

22       ANY and ALL orders issued after January 1, 2016 by ANY court,

23  governmental entity, or administrative body that has the effect of seizing, or

24  restricting the disposition of, ANY assets owned by LeECO, GLOBAL, LELE, JIA,

25  LTI, LREG, and/or any of their AFFILIATES.

26  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

27       LeEco restates and incorporates by reference the Preliminary Statement and

28  General Objections set forth above.  LeEco further objects to this Request as

1  premature and improper because Vizio's second through sixth causes of action in

2  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

3  LeEco's Motion to Dismiss, then the information and documents sought by this

4  Request are not relevant, making the Request disproportionate to the needs of the

5  case.  LeEco contends that, at this stage, any discovery in this matter should be

6  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

7  Merger Agreement (including its various theories of fraud related to that alleged

8  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

9  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

10  Merger Agreement, including the negotiation or entry into the Merger Agreement,

11  any breach of the Merger Agreement, or the termination of the Merger Agreement

12  has any relevance.  LeEco reserves all rights, including the right to amend and

13  supplement its Response to this Request, should it become necessary and

14  appropriate to do so.

15        LeEco objects that the definition of "Affiliates" is overbroad, vague and

16  ambiguous and seeks the documents and communications of third parties or

17  documents and communications which are not in LeEco's possession, custody or

18  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

19  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

20  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

21  the case is limited to a breach of the Framework Agreement, the dispute is limited to

22  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

23  another $10 million in escrow that is disputed.  The remaining dispute concerns the

24  Parties' obligations to each other in the context of the proposed China JV.

25  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

26  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

27  Estate Group LLC are not parties to this action.

28        LeEco further objects that this Request to the extent that is seeks documents

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  and communications protected by the attorney-client privilege and work product

2  doctrine.

3  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

4      LeLe restates and incorporates by reference the Preliminary Statement and

5  General Objections set forth above.  LeLe further objects to this Request on the

6  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

7  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

8  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

9  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

10 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

11 Vizio that give rise to this action nor is LeLe alleged to have made any statement to

12 Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

13 never properly served in this action.  In addition to being premature, the Requests

14 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

15 are calculated merely to harass and are overbroad, irrelevant, and not proportional to

16 the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

17 seeks the documents and communications of third parties or documents and

18 communications which are not in LeLe's possession, custody or control.

19      Furthermore, Vizio's Requests are premature because they pertain to issues

20 that would be rendered irrelevant were the Court to grant LeEco's pending MTD

21 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

22 LeEco's pending MTD would eliminate Vizio's second through sixth causes of

23 action for breach of the Merger Agreement including its various theories of fraud

24 related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

25 the Framework Agreement upon receipt of $40 million ("Released Claims"), which

26 Vizio acknowledges receiving.

27      Thus, nothing about the negotiations regarding the Merger Agreement,

28 including the negotiation or entry into the Merger Agreement, any breach of the

303

ERVIN COHEN & JESSUP LLP

1  Merger Agreement, or the termination of the Merger Agreement has any relevance,

2  and discovery should be limited to whether there was a breach of the Framework

3  Agreement.  LeLe reserves all rights, including the right to amend and supplement

4  its Responses and Objections to Vizio's Requests, should it become necessary and

5  appropriate to do so.

6      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

7  ambiguous and seeks the documents and communications of third parties or

8  documents and communications which are not in LeLe's possession, custody or

9  control.  Furthermore, this Request, which seeks discovery from individuals and

10  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

11  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

12  needs of the case.  Particularly if the case is limited to a breach of the Framework

13  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

14  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

15  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

16  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

17  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

18  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

19      LeLe further objects that this Request to the extent that is seeks documents

20  and communications protected by the attorney-client privilege and work product

21  doctrine.  LeLe objects to producing any privileged communications.

22  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

23  **NO. 60 SHOULD BE COMPELLED:**

24      As Defendants' objections to this RFP are either in whole, or in substantial

25  part identical to the objections which they asserted to Plaintiff's RFP No. One,

26  Plaintiff hereby incorporates by reference all of its reasons why a further response to

27  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

28  though set forth fully in this place.

14676.8:9283165.1

304

8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1    Wholly apart from these reasons, the notion that documents which relate to

2    bad acts of the Defendants are somehow irrelevant flies directly in the face of the all

3    of Plaintiff's claims.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure*

4    specifically provides that "[P]arties may obtain discovery regarding any

5    unprivileged matter that is relevant to any party's claim or defense and proportional

6    to the needs of the case, considering the importance of the issues at stake in the

7    action, the amount in controversy, the parties' relative access to relevant

8    information, the parties' resources, the importance of discovery in resolving the

9    issues and whether the burden or expense of the proposed discovery outweighs its

10   likely benefit.  Information…need not be admissible in evidence to be

11   discoverable."  That is because "[t]he purpose of discovery is to allow a broad

12   search for facts, the names of witnesses, or any other matters which may aid a party

13   in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

14   Cal.).  *See U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*,

15   *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad acts of defendants in

16   obtaining conventional mobile home loans (*i.e.,* loan irregularities) admissible in

17   subsequent trial of fraudulent scheme to obtain FHA loans since "[t]he fact that

18   Jenkins used fraudulent means to secure conventional loans is probative on issues of

19   intent, knowledge, good faith and absence of mistake in dealing with FHA

20   transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior

21   fraudulent land patent scheme and past failure to file tax returns admissible in

22   subsequent complex tax fraud conspiracy trial since the former "was used to explain

23   how the…conspirators met each other and garnered customers, while the latter

24   constituted "prior acts" that were "probative of issues of intent, knowledge, good

25   faith and absence of mistake.")

26   In short, production should be ordered in full, without objection.

27   **REQUEST FOR PRODUCTION NO. 61:**

28   DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal

ERVIN COHEN & JESSUP LLP

1  actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any

2  of their AFFILIATES filed or pending in the United States at any point after January

3  1, 2016.  "Identify" in this request means to identify the court or administrative body

4  in which the action is pending, the name of the action, and the case number(s) of

5  that action or actions.

6  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

7        LeEco restates and incorporates by reference the Preliminary Statement and

8  General Objections set forth above.  LeEco further objects to this Request as

9  premature and improper because Vizio's second through sixth causes of action in

10  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

11  LeEco's Motion to Dismiss, then the information and documents sought by this

12  Request are not relevant, making the Request disproportionate to the needs of the

13  case.  LeEco contends that, at this stage, any discovery in this matter should be

14  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

15  Merger Agreement (including its various theories of fraud related to that alleged

16  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

17  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

18  Merger Agreement, including the negotiation or entry into the Merger Agreement,

19  any breach of the Merger Agreement, or the termination of the Merger Agreement

20  has any relevance.  LeEco reserves all rights, including the right to amend and

21  supplement its Response to this Request, should it become necessary and

22  appropriate to do so.

23        LeEco objects that the definition of "Affiliates" is overbroad, vague and

24  ambiguous and seeks the documents and communications of third parties or

25  documents and communications which are not in LeEco's possession, custody or

26  control.  Furthermore, this Request, which seeks discovery from Unrelated Third

27  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

28  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

ERVIN COHEN & JESSUP LLP

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1    the case is limited to a breach of the Framework Agreement, the dispute is limited to

2    LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

3    another $10 million in escrow that is disputed.  The remaining dispute concerns the

4    Parties' obligations to each other in the context of the proposed China JV.

5    Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

6    been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

7    Estate Group LLC are not parties to this action.

8        LeEco further objects that this Request to the extent that is seeks documents

9    and communications protected by the attorney-client privilege and work product

10    doctrine.  LeEco objects to producing any privileged communications.

11    **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

12        LeLe restates and incorporates by reference the Preliminary Statement and

13    General Objections set forth above.  LeLe further objects to this Request on the

14    grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

15    of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

16    LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

17    Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

18    and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

19    Vizio that give rise to this action nor is LeLe alleged to have made any statement to

20    Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

21    never properly served in this action.  In addition to being premature, the Requests

22    directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

23    are calculated merely to harass and are overbroad, irrelevant, and not proportional to

24    the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

25    seeks the documents and communications of third parties or documents and

26    communications which are not in LeLe's possession, custody or control.

27        Furthermore, Vizio's Requests are premature because they pertain to issues

28    that would be rendered irrelevant were the Court to grant LeEco's pending MTD

*ERVIN COHEN & JESSUP LLP*

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

2   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

3   action for breach of the Merger Agreement including its various theories of fraud

4   related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

5   the Framework Agreement upon receipt of $40 million ("Released Claims"), which

6   Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

7   Merger Agreement, including the negotiation or entry into the Merger Agreement,

8   any breach of the Merger Agreement, or the termination of the Merger Agreement

9   has any relevance, and discovery should be limited to whether there was a breach of

10  the Framework Agreement.  LeLe reserves all rights, including the right to amend

11  and supplement its Responses and Objections to Vizio's Requests, should it become

12  necessary and appropriate to do so.

13        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

14  ambiguous and seeks the documents and communications of third parties or

15  documents and communications which are not in LeLe's possession, custody or

16  control.  Furthermore, this Request, which seeks discovery from individuals and

17  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

18  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

19  needs of the case.  Particularly if the case is limited to a breach of the Framework

20  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

21  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

22  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

23  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

24  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

25  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

26        LeLe further objects that this Request to the extent that is seeks documents

27  and communications protected by the attorney-client privilege and work product

28  doctrine. LeLe objects to producing any privileged communications.

ERVIN COHEN & JESSUP LLP

**1**  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**
**2**  **NO. 62 SHOULD BE COMPELLED:**

**3**        As Defendants' objections to this RFP are either in whole, or in substantial

**4**  part identical to the objections which they asserted to Plaintiff's RFP No. One,

**5**  Plaintiff hereby incorporates by reference all of its reasons why a further response to

**6**  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

**7**  though set forth fully in this place.

**8**        Wholly apart from these reasons, the notion that documents which relate to

**9**  bad acts of the Defendants are somehow irrelevant flies directly in the face of the all

**10**  of Plaintiff's claims.  Rule 26(b)(1) of the *Federal Rules of Civil Procedure*

**11**  specifically provides that "[P]arties may obtain discovery regarding any

**12**  unprivileged matter that is relevant to any party's claim or defense and proportional

**13**  to the needs of the case, considering the importance of the issues at stake in the

**14**  action, the amount in controversy, the parties' relative access to relevant

**15**  information, the parties' resources, the importance of discovery in resolving the

**16**  issues and whether the burden or expense of the proposed discovery outweighs its

**17**  likely benefit.  Information…need not be admissible in evidence to be

**18**  discoverable."  That is because "[t]he purpose of discovery is to allow a broad

**19**  search for facts, the names of witnesses, or any other matters which may aid a party

**20**  in the preparation of his case."  *Anderson v. Hansen*, 2013 WL 428737*4 (E.D.

**21**  Cal.).  *See U.S. v. Jenkins*, 785 F.2d 1387, 1395-1396 (9th Cir. 1986), *cert. den'd*,

**22**  *White v. U.S.*, 479 U.S. 889 (1986) (evidence of prior bad acts of defendants in

**23**  obtaining conventional mobile home loans (*i.e.,* loan irregularities) admissible in

**24**  subsequent trial of fraudulent scheme to obtain FHA loans since "[t]he fact that

**25**  Jenkins used fraudulent means to secure conventional loans is probative on issues of

**26**  intent, knowledge, good faith and absence of mistake in dealing with FHA

**27**  transactions.").  *Accord, U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (prior

**28**  fraudulent land patent scheme and past failure to file tax returns admissible in

ERVIN COHEN & JESSUP LLP

1  subsequent complex tax fraud conspiracy trial since the former "was used to explain

2  how the…conspirators met each other and garnered customers, while the latter

3  constituted "prior acts" that were "probative of issues of intent, knowledge, good

4  faith and absence of mistake.")

5      Further, the requested documents are relevant to proving alter ego liability

6  and piercing the corporate veil.

7      In short, production should be ordered in full, without objection.

8  **REQUEST FOR PRODUCTION NO. 63:**

9      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

10  ANY actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or

11  any of their AFFILIATES to make payments that were or are due and owing at any

12  point after January 1, 2016.

13  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

14      LeEco restates and incorporates by reference the Preliminary Statement and

15  General Objections set forth above.  LeEco further objects to this Request as

16  premature and improper because Vizio's second through sixth causes of action in

17  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

18  LeEco's Motion to Dismiss, then the information and documents sought by this

19  Request are not relevant, making the Request disproportionate to the needs of the

20  case.  LeEco contends that, at this stage, any discovery in this matter should be

21  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

22  Merger Agreement (including its various theories of fraud related to that alleged

23  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

24  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

25  Merger Agreement, including the negotiation or entry into the Merger Agreement,

26  any breach of the Merger Agreement, or the termination of the Merger Agreement

27  has any relevance.  LeEco reserves all rights, including the right to amend and

28  supplement its Response to this Request, should it become necessary and

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1   appropriate to do so.

2       LeEco objects that the definition of "Affiliates" is overbroad, vague and
3   ambiguous and seeks the documents and communications of third parties or
4   documents and communications which are not in LeEco's possession, custody or
5   control.  Furthermore, this Request, which seeks discovery from Unrelated Third
6   Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
7   is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if
8   the case is limited to a breach of the Framework Agreement, the dispute is limited to
9   LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
10  another $10 million in escrow that is disputed.  The remaining dispute concerns the
11  Parties' obligations to each other in the context of the proposed China JV.
12  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not
13  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real
14  Estate Group LLC are not parties to this action.

15      LeEco further objects that this Request to the extent that is seeks documents
16  and communications protected by the attorney-client privilege and work product
17  doctrine.  LeEco objects to producing any privileged communications.

18  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

19      LeLe restates and incorporates by reference the Preliminary Statement and
20  General Objections set forth above.  LeLe further objects to this Request on the
21  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs
22  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on
23  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the
24  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process
25  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with
26  Vizio that give rise to this action nor is LeLe alleged to have made any statement to
27  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was
28  never properly served in this action.  In addition to being premature, the Requests

ERVIN COHEN & JESSUP LLP

1 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

2 are calculated merely to harass and are overbroad, irrelevant, and not proportional to

3 the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

4 seeks the documents and communications of third parties or documents and

5 communications which are not in LeLe's possession, custody or control.

6      Furthermore, Vizio's Requests are premature because they pertain to issues

7 that would be rendered irrelevant were the Court to grant LeEco's pending MTD

8 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

9 LeEco's pending MTD would eliminate Vizio's second through sixth causes of

10 action for breach of the Merger Agreement including its various theories of fraud

11 related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

12 the Framework Agreement upon receipt of $40 million ("Released Claims"), which

13 Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

14 Merger Agreement, including the negotiation or entry into the Merger Agreement,

15 any breach of the Merger Agreement, or the termination of the Merger Agreement

16 has any relevance, and discovery should be limited to whether there was a breach of

17 the Framework Agreement.  LeLe reserves all rights, including the right to amend

18 and supplement its Responses and Objections to Vizio's Requests, should it become

19 necessary and appropriate to do so.

20      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

21 ambiguous and seeks the documents and communications of third parties or

22 documents and communications which are not in LeLe's possession, custody or

23 control.  Furthermore, this Request, which seeks discovery from individuals and

24 entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

25 calculated merely to harass and is overbroad, irrelevant, and not proportional to the

26 needs of the case.  Particularly if the case is limited to a breach of the Framework

27 Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

28 payment to Vizio of $40 million and another $10 million in escrow that is disputed.

ERVIN COHEN & JESSUP LLP

1  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

2  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

3  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

4  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

5  LeLe further objects that this Request to the extent that is seeks documents

6  and communications protected by the attorney-client privilege and work product

7  doctrine.  LeLe objects to producing any privileged communications.

8  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

9  **NO. 63 SHOULD BE COMPELLED:**

10  As Defendants' objections to this RFP are either in whole, or in substantial

11  part identical to the objections which they asserted to Plaintiff's RFP No. One,

12  Plaintiff hereby incorporates by reference all of its reasons why a further response to

13  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

14  though set forth fully in this place.  Simply stated, the requested documents are

15  relevant to proving alter ego liability and piercing the corporate veil.

16  **REQUEST FOR PRODUCTION NO. 64:**

17  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

18  Yueting Jia's resignation in July 2017 as Chairman of ANY of the global LeEco

19  businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi

20  Holding Co., Ltd. (Beijing) and/or any of their AFFILIATES.

21  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

22  LeEco restates and incorporates by reference the Preliminary Statement and

23  General Objections set forth above.  LeEco further objects to this Request as

24  premature and improper because Vizio's second through sixth causes of action in

25  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

26  LeEco's Motion to Dismiss, then the information and documents sought by this

27  Request are not relevant, making the Request disproportionate to the needs of the

28  case.  LeEco contends that, at this stage, any discovery in this matter should be

ERVIN COHEN & JESSUP LLP

1    limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

2    Merger Agreement (including its various theories of fraud related to that alleged

3    breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

4    Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

5    Merger Agreement, including the negotiation or entry into the Merger Agreement,

6    any breach of the Merger Agreement, or the termination of the Merger Agreement

7    has any relevance.  LeEco reserves all rights, including the right to amend and

8    supplement its Response to this Request, should it become necessary and

9    appropriate to do so.

10        LeEco objects that the definition of "Affiliates" is overbroad, vague and

11   ambiguous and seeks the documents and communications of third parties or

12   documents and communications which are not in LeEco's possession, custody or

13   control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties

14   supposedly "affiliated" with LeEco appears calculated merely to harass and is

15   overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

16   the case is limited to a breach of the Framework Agreement, the dispute is limited to

17   LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

18   another $10 million in escrow that is disputed.  The remaining dispute concerns the

19   Parties' obligations to each other in the context of the proposed China JV.

20   Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

21   been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

22   Estate Group LLC are not parties to this action.

23        LeEco further objects that this Request to the extent that is seeks documents

24   and communications protected by the attorney-client privilege and work product

25   doctrine.  LeEco objects to producing any privileged communications.

26   **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

27        LeLe restates and incorporates by reference the Preliminary Statement and

28   General Objections set forth above.  LeLe further objects to this Request on the

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

2   of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

3   LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

4   Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

5   and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

6   Vizio that give rise to this action nor is LeLe alleged to have made any statement to

7   Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

8   never properly served in this action.  In addition to being premature, the Requests

9   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

10  are calculated merely to harass and are overbroad, irrelevant, and not proportional to

11  the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

12  seeks the documents and communications of third parties or documents and

13  communications which are not in LeLe's possession, custody or control.

14      Furthermore, Vizio's Requests are premature because they pertain to issues

15  that would be rendered irrelevant were the Court to grant LeEco's pending MTD

16  Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

17  LeEco's pending MTD would eliminate Vizio's second through sixth causes of

18  action for breach of the Merger Agreement including its various theories of fraud

19  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

20  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

21  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

22  Merger Agreement, including the negotiation or entry into the Merger Agreement,

23  any breach of the Merger Agreement, or the termination of the Merger Agreement

24  has any relevance, and discovery should be limited to whether there was a breach of

25  the Framework Agreement.  LeLe reserves all rights, including the right to amend

26  and supplement its Responses and Objections to Vizio's Requests, should it become

27  necessary and appropriate to do so.

28      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

1  ambiguous and seeks the documents and communications of third parties or

2  documents and communications which are not in LeLe's possession, custody or

3  control.  Furthermore, this Request, which seeks discovery from individuals and

4  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

5  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

6  needs of the case.  Particularly if the case is limited to a breach of the Framework

7  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

8  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

9  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

10  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

11  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

12  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

13       LeLe further objects that this Request to the extent that is seeks documents

14  and communications protected by the attorney-client privilege and work product

15  doctrine.  LeLe objects to producing any privileged communications.

16  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

17  **NO. 64 SHOULD BE COMPELLED:**

18       As Defendants' objections to this RFP are either in whole, or in substantial

19  part identical to the objections which they asserted to Plaintiff's RFP No. One,

20  Plaintiff hereby incorporates by reference all of its reasons why a further response to

21  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

22  though set forth fully in this place.  Simply stated, the requested documents are

23  relevant to proving alter ego liability and piercing the corporate veil.

24  **REQUEST FOR PRODUCTION NO. 65:**

25       ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

26  the sale, transfer, dissolution, winding up, or liquidation of LELE, GLOBAL,

27  LeECO, LTI, LREG or ANY of their AFFILIATES.

28

ERVIN COHEN & JESSUP LLP

**LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

   LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

   LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND
LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

1 been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

2 Estate Group LLC are not parties to this action.

3      LeEco further objects that this Request to the extent that is seeks documents

4 and communications protected by the attorney-client privilege and work product

5 doctrine.  LeEco objects to producing any privileged communications.

6 **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

7      LeLe restates and incorporates by reference the Preliminary Statement and

8 General Objections set forth above.  LeLe further objects to this Request on the

9 grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

10 of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

11 LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

12 Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

13 and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

14 Vizio that give rise to this action nor is LeLe alleged to have made any statement to

15 Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

16 never properly served in this action.  In addition to being premature, the Requests

17 directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

18 are calculated merely to harass and are overbroad, irrelevant, and not proportional to

19 the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

20 seeks the documents and communications of third parties or documents and

21 communications which are not in LeLe's possession, custody or control.

22      Furthermore, Vizio's Requests are premature because they pertain to issues

23 that would be rendered irrelevant were the Court to grant LeEco's pending MTD

24 Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

25 LeEco's pending MTD would eliminate Vizio's second through sixth causes of

26 action for breach of the Merger Agreement including its various theories of fraud

27 related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

28 the Framework Agreement upon receipt of $40 million ("Released Claims"), which

ERVIN COHEN & JESSUP LLP

1  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

2  Merger Agreement, including the negotiation or entry into the Merger Agreement,

3  any breach of the Merger Agreement, or the termination of the Merger Agreement

4  has any relevance, and discovery should be limited to whether there was a breach of

5  the Framework Agreement.  LeLe reserves all rights, including the right to amend

6  and supplement its Responses and Objections to Vizio's Requests, should it become

7  necessary and appropriate to do so.

8      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

9  ambiguous and seeks the documents and communications of third parties or

10  documents and communications which are not in LeLe's possession, custody or

11  control.  Furthermore, this Request, which seeks discovery from individuals and

12  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

13  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

14  needs of the case.  Particularly if the case is limited to a breach of the Framework

15  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

16  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

17  The remaining dispute concerns LeEco and Vizio's obligations to each other in the

18  context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

19  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

20  LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

21      LeLe further objects that this Request to the extent that is seeks documents

22  and communications protected by the attorney-client privilege and work product

23  doctrine.  LeLe objects to producing any privileged communications.

24  **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

25  **NO. 65 SHOULD BE COMPELLED:**

26      As Defendants' objections to this RFP are either in whole, or in substantial

27  part identical to the objections which they asserted to Plaintiff's RFP No. One,

28  Plaintiff hereby incorporates by reference all of its reasons why a further response to

ERVIN COHEN & JESSUP LLP

1  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

2  though set forth fully in this place.  Simply stated, the requested documents are

3  relevant to proving alter ego liability and piercing the corporate veil.

4  **REQUEST FOR PRODUCTION NO. 66:**

5          ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

6  plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or

7  ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make

8  arrangements or accommodations for or with their creditors; (b) assign, assume,

9  distribute or transfer any stock, membership interests, actual assets, actual liabilities,

10  contractual obligations, contingent liabilities, contingent assets, or employees of

11  LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or (c) to indemnify,

12  hold harmless or defend the obligations of any PERSON.

13  **LeECO RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

14          LeEco restates and incorporates by reference the Preliminary Statement and

15  General Objections set forth above.  LeEco further objects to this Request as

16  premature and improper because Vizio's second through sixth causes of action in

17  the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants

18  LeEco's Motion to Dismiss, then the information and documents sought by this

19  Request are not relevant, making the Request disproportionate to the needs of the

20  case.  LeEco contends that, at this stage, any discovery in this matter should be

21  limited in scope.  Specifically, Vizio gave a release of all claims for breach of the

22  Merger Agreement (including its various theories of fraud related to that alleged

23  breach) to LeEco in the Framework Agreement upon receipt of $40 million, which

24  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

25  Merger Agreement, including the negotiation or entry into the Merger Agreement,

26  any breach of the Merger Agreement, or the termination of the Merger Agreement

27  has any relevance.  LeEco reserves all rights, including the right to amend and

28  supplement its Response to this Request, should it become necessary and

ERVIN COHEN & JESSUP LLP

1  appropriate to do so.

2      LeEco objects that the definition of "Affiliates" is overbroad, vague and

3  ambiguous and seeks the documents and communications of third parties or

4  documents and communications which are not in LeEco's possession, custody or

5  control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties

6  supposedly "affiliated" with LeEco appears calculated merely to harass and is

7  overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if

8  the case is limited to a breach of the Framework Agreement, the dispute is limited to

9  LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10  another $10 million in escrow that is disputed.  The remaining dispute concerns the

11  Parties' obligations to each other in the context of the proposed China JV.

12  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not

13  been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real

14  Estate Group LLC are not parties to this action.

15      LeEco further objects that this Request to the extent that is seeks documents

16  and communications protected by the attorney-client privilege and work product

17  doctrine.  LeEco objects to producing any privileged communications.

18  **LELE RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

19      LeLe restates and incorporates by reference the Preliminary Statement and

20  General Objections set forth above.  LeLe further objects to this Request on the

21  grounds that it is premature, overbroad, irrelevant, and not proportional to the needs

22  of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on

23  LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the

24  Court to grant LeLe's pending Motion to Dismiss for insufficient service of process

25  and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with

26  Vizio that give rise to this action nor is LeLe alleged to have made any statement to

27  Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was

28  never properly served in this action.  In addition to being premature, the Requests

ERVIN COHEN & JESSUP LLP

1   directed at LeLe and the other individuals and entities ("Unrelated Third Parties")

2   are calculated merely to harass and are overbroad, irrelevant, and not proportional to

3   the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it

4   seeks the documents and communications of third parties or documents and

5   communications which are not in LeLe's possession, custody or control.

6        Furthermore, Vizio's Requests are premature because they pertain to issues

7   that would be rendered irrelevant were the Court to grant LeEco's pending MTD

8   Vizio's second through sixth causes of action in the FAC (in which LeLe joined).

9   LeEco's pending MTD would eliminate Vizio's second through sixth causes of

10  action for breach of the Merger Agreement including its various theories of fraud

11  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in

12  the Framework Agreement upon receipt of $40 million ("Released Claims"), which

13  Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

14  Merger Agreement, including the negotiation or entry into the Merger Agreement,

15  any breach of the Merger Agreement, or the termination of the Merger Agreement

16  has any relevance, and discovery should be limited to whether there was a breach of

17  the Framework Agreement.  LeLe reserves all rights, including the right to amend

18  and supplement its Responses and Objections to Vizio's Requests, should it become

19  necessary and appropriate to do so.

20       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

21  ambiguous and seeks the documents and communications of third parties or

22  documents and communications which are not in LeLe's possession, custody or

23  control.  Furthermore, this Request, which seeks discovery from individuals and

24  entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

25  calculated merely to harass and is overbroad, irrelevant, and not proportional to the

26  needs of the case.  Particularly if the case is limited to a breach of the Framework

27  Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

28  payment to Vizio of $40 million and another $10 million in escrow that is disputed.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   The remaining dispute concerns LeEco and Vizio's obligations to each other in the

2   context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

3   Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

4   LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

5          LeLe further objects that this Request to the extent that is seeks documents

6   and communications protected by the attorney-client privilege and work product

7   doctrine.  LeLe objects to producing any privileged communications.

8   **REASON WHY FURTHER RESPONSE TO REQUEST FOR PRODUCTION**

9   **NO. 66 SHOULD BE COMPELLED:**

10         As Defendants' objections to this RFP are either in whole, or in substantial

11  part identical to the objections which they asserted to Plaintiff's RFP No. One,

12  Plaintiff hereby incorporates by reference all of its reasons why a further response to

13  RFP No. 1 should be compelled, Sections 1 through 7, which are stated above, as

14  though set forth fully in this place.  Simply stated, the requested documents are

15  relevant to proving alter ego liability and piercing the corporate veil.

16  **PLAINTIFF'S REQUEST FOR MONETARY SANCTIONS AGAINST**

17  **LEECO AND LELE**

18         Under Rule 37(a)(3)(iv), a party may move for an order compelling a

19  discovery response where the opposing party fails to respond that a request for

20  production of documents will be permitted.  In this case, Defendants failed to

21  respond that 57 separate requests for production of documents will be permitted,

22  necessitating this motion.

23         Under *Fed. R. Civ. P.* 37 (a)(5)(A)(ii), sanctions "must" be  awarded if a

24  motion to compel is granted unless the Court finds the opposing party's

25  nondisclosure was "substantially justified."  Plaintiffs propounded RFPs upon

26  Defendants.  Defendants objected to 57 of 66 RFPs, and have failed to state that

27  production will be permitted.

28         Defendants' continued gamesmanship in this case has rendered the discovery

1 | process unduly burdensome and unnecessarily expensive for all parties and the
2 | Court. Defendants have engaged in the type of discovery abuse that an award of
3 | sanctions is designed to deter and curtail.

4 | As a result, Plaintiffs have unnecessarily incurred attorney's fees and costs by
5 | engaging in futile efforts to meet and confer with Defendants' counsel and by filing
6 | this motion to compel and for sanctions. Defendants' willful and inexcusable
7 | disregard of its discovery obligations deserves the imposition of sanctions, as
8 | authorized in *Fed. R. Civ. P.* 37(a)(5).

9 | If the Court agrees that Defendants should be required to pay Plaintiffs'
10 | reasonable expenses and attorney's fees incurred in making the motion, then
11 | Plaintiffs' counsel will file a declaration containing the amount of attorneys' fees
12 | incurred in this motion in accordance with the Court's ruling.

14 | DATED: July 26, 2018       ERVIN COHEN & JESSUP LLP
15 | Robert M. Waxman
David N. Tarlow
16 | Jason L. Haas

19 | By: _____
20 | Robert M. Waxman
Attorneys for Plaintiff VIZIO, INC., a
21 | California corporation

ERVIN COHEN & JESSUP LLP

1    DATED: July 26, 2018          GREENBERG TRAURIG, LLP

2                                       Jeff K. Joyner

3                                       Daniel Tyukody

4

5                             By: _____

6                                     Jeff K. Joyner

7                                     Attorneys for Defendants LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands, and; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company

14676.8:9283165.1                        325                      8:17-CV-01175-DOC-JDE

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

ERVIN COHEN & JESSUP LLP

**ERVIN COHEN & JESSUP** LLP

## DECLARATION OF DAVID N. TARLOW

I, David N. Tarlow, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am  a partner in the firm of Ervin Cohen & Jessup LLP, attorneys of record for Plaintiff/Cross-Defendant VIZIO, INC., a California corporation ("VIZIO").  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe that they are true. If called as a witness, I could and would competently testify to the matters stated herein.

2.     I make this declaration in support of Plaintiff's Motion to Compel Defendants LeEco V. Ltd. ("LeEco") and Lele Holding, Ltd. ("LeEco") to Provide Further Responses to Plaintiff's Request for Production of Documents (Set One) and to Produce Documents ("RFPs").

3.     A true and correct copy of Plaintiff's Request for Production of Documents (Set One) to Defendant LeEco is attached hereto as Exhibit "A."

4.     A true and correct copy of Plaintiff's Request for Production of Documents (Set One) to Defendant Lele is attached hereto as Exhibit "B."

5.     A true and correct copy of LeEco's Response to Request for Production of Documents (Set One) is attached hereto as Exhibit "C."

6.     A true and correct copy of Lele's Response to Request for Production of Documents (Set One) is attached hereto as Exhibit "D."

7.     A true and correct copy of a meet and confer letter which I sent to Defendants' counsel on June 8, 2018 is attached hereto as Exhibit "E."

8.     A true and correct copy of Defendant LeEco's Request for Production of Documents (Set One) to VIZIO is attached hereto as Exhibit "F."

9.     A true and correct copy of Defendant LeEco's Interrogatories (Set One) to VIZIO is attached hereto as Exhibit "G."

1    10.    A true and correct copy of Defendant LeEco's Request for Admissions
2  (Set One) to VIZIO is attached hereto as Exhibit "H."

3    11.    On or about June 18, 2018, I conducted a meet and confer telephonic
4  conference with Defendant's counsel Jeff Joyner and his associate regarding the
5  instant motion.  Mr. Joyner, stated to me, in sum and substance, that he was
6  contemplating the filing of a motion to stay discovery in this case pending the
7  outcome of the 12(b)(6) and 12(b)(5) motions to dismiss that were filed by
8  Defendants, but that he had been waiting for a response from me as to whether
9  Plaintiff would stipulate to same.  I told Mr. Joyner that Plaintiff would not stipulate
10 to a stay, and that consistent with the meet and confer letter which I had sent him,
11 the filing of motions to dismiss does not result in a stay of discovery.  Further, I told
12 Mr. Joyner that based upon the quickly approaching discovery cutoff date in
13 December, that discovery needed to be conducted immediately.

14    12.    On June 22, 2018, I received a letter from Mr. Joyner's associate
15 Attashin Safari, whereby he asked whether VIZIO would agree to a stay of these
16 proceedings, even though I had previously told Mr. Joyner that Plaintiff would not
17 stipulate to same.  A true and correct copy of same is attached hereto as Exhibit "I."

18    I declare under penalty of perjury under the laws of the United States of
19 America that the foregoing is true and correct.

20    Executed July 11, 2018, at Beverly Hills, California.

21

22                              /s/ David N. Tarlow
23                              David N. Tarlow

ERVIN COHEN & JESSUP LLP