Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
  jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendant. | Case No. 8:17-CV-01175-DOC-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION REQUESTING THAT THE COURT HEAR THE PARTIES' DISCOVERY DISPUTE PURSUANT TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER, INSTEAD OF PLAINTIFF'S PROPOSED MOTION TO COMPEL**<br><br>The Hon. John D. Early<br>Courtroom     6A |

14676.8:9310986.1                                                                8:17-CV-01175-DOC-JDE
PLAINTIFF VIZIO, INC'S NOTICE OF MOTION TO COMPEL DISCOVERY RESPONSES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants' Ex Parte Application ("Application") was filed at 10:00 p.m. on July 26, 2018 (Time Stamp on Docket No. 96). It does not comply with Judge Carter's Initial Standing Order directing that ex parte notice be given at least 24 hours in advance and that the moving papers state the giving of such notice as well as the warning that opposition papers must be filed within 24 hours following service. (Docket No. 12, p. 4, lns 5-10).[1] This late night filing, together with Defendants' failure to abide by Judge Carter's Initial Standing Order as well as Local Rule 7-19.1, are particularly troubling in light of Judge Early's additional requirement that "[I]f the application is opposed, opposition papers should be filed no later than noon on the first court day following service of the application." Stated differently, Defendants' late night filing was deliberately designed to deprive Plaintiff of the time protections for opposition built into both Judge Carter's Initial Standing Order as well as the local rules. It should be rejected out of hand.

Worse still, the Application is replete with false statements of fact. It states that Plaintiff "agree[ed] with Defendants' Motion to Stay would be the most efficient way to accomplish" the handling of the parties' discovery disputes. Indeed,

---

[1] The so-called notice of the Application is the June 20, 2018 letter of Attashin Safari to David Tarlow, Exhibit "1" to the Safari Declaration (Docket No. 96-3). That letter states: "[W]e will send you a draft of Defendants' Motion to Stay early next week. Please tell us on Monday, July 23, 2018 whether Plaintiff is amendable to proceeding this way. If not, Defendants will file an Ex Parte Application as early as Tuesday, July 24, 2018 asking the Court to decide this issue via Defendants' Motion to Stay." This purported "notice" does not come close to complying with Judge Carter's Initial Standing Order. Nowhere does it state the actual date/time of the Application, let alone warn that opposition would be due within 24 hours. Nor does it comply with the mandate of Local Rule 7-19.1 that Ex Parte notice "[a]dvise counsel for all…parties…of the date and substance of the proposed ex parte application…."

that "[w]hile Defendants were preparing their Motion to Stay, Plaintiff 'jumped the gun' and served Defendants with Plaintiff's Motion to Compel that addresses the same issues addressed in Defendants' Motion to Stay." (Docket No. 96, p. 3, lns 12-16). Untrue. The July 23, 2018 letter from Mr. Tarlow to Mr. Safari that is attached as Exhibit "2" to the Safari Declaration (Docket No. 96-3) is directly to the contrary. Mr. Tarlow's letter describes in detail that Plaintiffs' have **never** been in agreement with Defendants' piecemeal approach to resolve the parties' discovery disputes and that Defendants have been so repeatedly advised since March 12, 2018.[2] (*Id.*) Similarly, Plaintiff's Joint Stipulation takes issue with Defendants' complete refusal to provide anything but objections to 59 separate categories of requested documents based on identical boilerplate and improper objections. (Docket No. 96-1, Exhibit "A"). It covers a multitude of obstreperous and improper discovery tactics by Defendants and for that reason alone is vastly different from Defendants' Proposed Joint Stipulation Regarding LeEco V. Ltd. and Lele Holding's Joint Motion for a Protective Order to Stay or Limit Discovery (Docket No. 96-2, Exhibit B"). Indeed, Mr. Tarlow's July 23, 2018 letter to Mr. Safari (Docket No. 96-3, Exhibit "2") explains in footnote 2 that the length of Plaintiff's Joint Stipulation is the direct product of the Defendants' "repeatedly rais[ing] the same boilerplate objections to almost every single document request." Equally egregious, Defendants have flatly mischaracterized the contractual documents - - let alone purported settlement - - that are at the heart of this litigation and as will be demonstrated more fully below.

      The deficiencies in the Application are glaring. The death knell is the complete absence of "good cause". Defendants do not cite a single case or statute in their Application to support their wild argument about the propriety of a stay predicated on their motions to dismiss. Instead, they leap to the conclusion that

---

[2] The notion that some sort of emergency now exists that justifies the filing of the Application is absurd. Defendants have had since March 12 to file their Motion for Stay. Their failure to do so speaks volumes about the lack of good cause.

those motions justify a stay. That is not the law.

## II.

## **PRELIMINARY STATEMENT**

Plaintiff's claims are stated in the First Amended Complaint ("FAC"). (Docket No. 35). The gist of this case is that LeEco agreed to acquire VIZIO for approximately $2BB. (*Id.,* at ¶¶ 12 & 16). The document which the parties negotiated and executed to consummate LeEco's acquisition of VIZIO is the Merger Agreement.[3] (*Id.*) The Merger Agreement was the product of serious misrepresentations by the Defendants. (Docket No. 35, FAC, ¶¶ 11–15). However, in the event of a termination of the Merger Agreement by VIZIO for LeEco's breach, LeEco's failure to obtain regulatory approvals from the People's Republic of China or LeEco's failure to close the transaction for lack of the requisite financial wherewithal and/or pursuant to the provisions set forth in the Merger Agreement, LeEco agreed to pay VIZIO a $100MM termination fee. (*Id.,* at ¶¶ 22-23).

On March 30, 2017, VIZIO provided LeEco with a Notice of Termination of the Merger Agreement due to LeEco's breaches, triggering its obligation to pay the $100MM termination fee. (*Id.,* at ¶¶ 29-30). Thereafter, Defendants Lele Holding, LeEco Global Group Ltd., and LeEco, by and through Defendant Yueting Jia, among others, falsely promised VIZIO that, *inter alia*, in connection with VIZIO's agreement to terminate the Merger Agreement subject to specified carve-outs and forgo immediate payment of the $100MM termination fee, LeEco would enter into a Joint Venture with VIZIO to distribute VIZIO products in China. (*Id.,* at ¶¶ 33-35).[4]

---

[3] The Merger Agreement sans exhibits is attached as Exhibit "A" to the Declaration of Charles Hsieh ("Hsieh Dec.") in Support of Defendant LeEco V. Ltd.'s Reply in Support of its Motion to Set Aside Entry of Default (Docket No. 26-1).

[4] These allegations demonstrate the absurdity of the statement in the Application that Lele Holding is some sort of "after-thought" with no direct link to the misrepresentations that are at the heart of this lawsuit. (Docket No. 96, Application, p. 4, lns 12-15)

Additionally, $40MM which had been deposited into escrow under the Merger Agreement would be immediately released to VIZIO (*Id.,* at ¶ 33), while the remaining $10MM in that escrow was falsely promised to be withheld until 45 days after the parties executed the joint venture agreement - - but if no joint venture agreement was executed, then that $10MM sum was also to be released to VIZIO in accordance with the specifically carved out and still operative Buyer Termination Fee Deposit provisions of the Merger Agreement. (*Id.,* at ¶¶ 33-35).

    This proposal was memorialized in the Framework Agreement. (*Id.*, at ¶¶ 34-39).[5] LeEco then refused to negotiate the substantive terms of the joint venture agreement with VIZIO. (*Id.,* at ¶¶ 43-45). This lawsuit followed. LeEco is named in each Claim for Relief. The remaining defendants consist of LeEco Global Group, Ltd. ("Global Group"), the Chinese corporate parent of LeEco, (*Id.,* at ¶ 3), Defendant Lele Holding, a British Virgin Islands investment vehicle and personal holding company that is owned and controlled by Defendant Yueting Jia ("JIA"), let alone the parent company of Global Group as well as the ultimate corporate parent of LeEco (*Id.,* at ¶ 4), and Defendant JIA, who at all relevant times is or was (a) the Chairman of the Board of Global Group and its Chief Executive Officer, and (b) the sole or controlling owner of Lele Holding. (*Id.,* at ¶ 5). The remaining defendants were sued as the alter-egos of LeEco in the 1st through 5th Claims for Relief. (*Id.*, at ¶¶ 56-57, 65, 79, 92, and 105). They were also sued for the direct misrepresentations each made to fraudulently induce VIZIO to enter into the Framework Agreement in the 2nd through 5th Claims for Relief. (*Id.*, at ¶¶ 66-68, 75-77, 80-82, 89-90, 93-95, 102-104, and 105).

---

[5] The Framework Agreement is attached as Exhibit "B" to the Hsieh Dec., Docket No. 26-1. Section 1.1 of the Framework Agreement specifically carves out and states that "the terms [from the Merger Agreement] governing the release of the remaining Buyer Termination Fee Deposit [*i.e.,* $50MM in escrow] are not terminated, while the release provisions in Section 6.2 expressly exempt the terms "except as expressly set forth" in the Framework Agreement.

In November 2017, LeEco filed a Motion to Dismiss the 2nd through 6th Claims for Relief in the FAC. (Docket No. 47-1). VIZIO filed comprehensive Opposition. (Docket No. 50). That Motion has been under submission since January 8, 2018. In the meantime, on January 10, 2018, the Court issued an Order Setting Scheduling Conference. (Docket No. 54). This Scheduling Order "encouraged the parties to begin discovery." (*Id.*). To that end, on January 12, 2018, Plaintiff served its first set of Request for Production of Documents (Set One) on both LeEco and Lele Holding (hereinafter' the "RFPs") (See Declaration of David N. Tarlow ("Tarlow Dec.") Exhibits ("Exs.") A and B) pursuant to *Fed. R. Civ. P.* 34(b)(2)(A). Plaintiff's RFPs sought 65 separate categories of documents that are relevant to the claims made in the FAC.

In March 2018, Lele Holding also filed its Motion to Dismiss the FAC. (Docket No. 63-1). Once again, VIZIO filed comprehensive Opposition. (Docket Nos. 69, 69-1, 69-2, 69-3, 70, 71, 71-1, 71-2, 77 and 78). That motion has been under submission since April 2, 2018. In the meantime, on April 3, 2018, the Court issued its Scheduling Order & Order Re: Pretrial and Trial Procedures ("Scheduling Order"). (Docket No. 82.) The cutoff date for fact based discovery is December 14, 2018. (*Id.*).

On April 11, 2018, Defendants finally responded to the RFPs. They interposed a litany of boilerplate and specious objections to each request. Defendants agreed to produce documents on a rolling basis as to just six Categories, while at the same time objecting and refusing to even provide a privilege log. Indeed, with respect to every other RFP (other than RFP No. 33), Defendants asserted objections only. But worse still, nowhere did Defendants even indicate whether they were withholding documents pursuant to those objections. Instead, at the pre-motion conference, Defendants asserted that discovery pertaining to claims addressed by their Motions to Dismiss should be stayed pending the rulings thereon; *i.e.,* effectively bifurcating the lawsuit without bothering to file a motion for

bifurcation. Indeed, it was not until the evening of July 26, that Defendants even bothered to provide Plaintiff with motion for a stay or protective order, even though the discovery cutoff is less than six (6) months away. Instead, Defendants propounded written discovery on their own. (Tarlow Dec., Ex. C). This written discovery includes Defendants' RFPs, which in Category 11, request wholesale financial documents pertaining to the Merger Agreement; *i.e.,* the very same discovery they now seek to stay.[6] How can this be?

## III.

## THERE IS NO GOOD CAUSE FOR THE APPLICATION

### A. The Party Seeking A Stay Of Discovery Bears A Heavy Burden To Show Why Discovery Should Be Denied

It is axiomatic that "[under] the liberal discovery principles of the Federal Rules [moving parties are] required to carry a heavy burden of showing why discovery [should be] denied." *Blankenship v. Hearst Corp.,* 591 F.2d 418, 429 (9th Cir. 1975). This rule applies to stays sought where motions to dismiss are pending. *Skellerup Industries Ltd. v. City of Los Angeles,* 163 F.R.D. 598, 600 (C.D. Cal. 1995) ("A party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." Indeed, even Defendants admit that "the filing of a motion to dismiss does not automatically stay discovery…." (Docket No. 96, Application, p. 4, lns 16-17). That is because if "the Federal Rules contemplated that a motion to dismiss under *Fed. R. Civ. P.* 12(b)(6) would stay discovery, then the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation.")

---

[6] Category No. 11 from Defendants' RFPs requests "All Documents and Communications Relating To [a very broadly defined term] how [VIZIO] accounted for any and all transactions involving LeEco in [its] financial statements, including how revenue or income was booked, any analysis of loss contingencies (or recordings of loss contingencies), and the reversal or modification of any prior account entry related to the **Merger Agreement** or the Framework Agreement." (Emphasis added).

*Skellerup,* at pp. 600-601). *Accord, Vista del Sol Health Care Services, Inc. v. National Labor Relations Board,* 2014 WL12631660*1-2 (C.D. Cal., Morrow J.) ("The NLRB asked the court to…stay discovery so that the parties can avoid potentially unnecessary time and expense [in] responding to discovery requests" in light of its pending motion to dismiss the case for lack of jurisdiction, but "as a general matter, the court does not stay discovery…in cases where a motion to dismiss is pending unless a party provides a good reason for doing so [because if] the court's practice otherwise, some cases would remain pending a year or more before…progress on the litigation made.")

**B.     Good Cause Does Not Exist Simply Because the Moving Party Concludes That Its Motions To Dismiss Will Succeed**

It is well-settled that where, as here, the moving party "has done no more than to argue in conclusory fashion that its motion to dismiss will succeed", such "[i]dle speculation does not satisfy Rule 26(c)'s good cause requirement." *Skellerup, supra,* 163 F.R.D. at 600. This is because "[s]uch general arguments could be said to apply to any reasonably large civil litigation [and] if the court were to adopt [that] reasoning, it would undercut the Federal Rules' liberal discovery provisions…." (*Id.*) Nor does "[a] showing that discovery may involve some inconvenience and expense suffice to establish good cause for issuance of a protective order" for a stay on discovery vis-à-vis a pending motion to dismiss. *Twin City Fire Ins., Co. v. Employers Ins.of Wassau,* 124 F.R.D. 652, 653 (D. Nev. 1989).

The *Skellerup* decision is instructive. In that case, the Central District rejected the argument that the City's pending motion to dismiss a case dealing with the improper award of a construction contract demonstrated good cause to stay discovery. There, as here, the City argued in conclusory fashion that its motion to dismiss would succeed. 163 F.R.D. at 600. The Court ruled that such "[i]dle speculation does not satisfy Rule 26(c)'s good cause requirement." (*Id*.).

The *Skellerup* court then listed the factors that courts should consider when

deciding whether to stay discovery pending the outcome of an alleged dispositive motion. These factors include: "[T]he type of motion and whether it is a challenge as a matter of law or the sufficiency of the allegations; the nature and complexity of the action; whether counterclaims and/or cross-claims have been interposed; whether some or all of the defendants join in the request for a stay; the posture or stage of the litigation; the expected extent of discovery in light of the number of parties and complexity of the issues in the case; and any other relevant circumstances." (*Id.,* at 601).

The Defendants do not even attempt to discuss these factors. But there, as here, "even if Defendant[s]…motion were granted it would not result in the termination of this action." Nor, as shown more fully below, would it put an end to the discovery sought at bar vis-à-vis the remaining Claim for Relief. Instead, as *Skellerup* stated, "For the Magistrate Judge 'to make a preliminary finding of the likelihood of success on the motion to dismiss…would circumvent procedures for resolution of such a motion.'" (*Id.,* at 601).

### C. The Fact That The Motions To Dismiss Will Not Terminate the Entire Action Also Demonstrates The Absence of Good Cause

It is well-settled that "one of the principal factors to be considered in deciding whether to stay discovery pending a motion to dismiss is whether the motion to dismiss would result in a termination of the case." *Yardi Systems, Inc. v. RealPage, Inc.,* 2011 WL1322087*1 (C.D. Cal., McDermott, M.J.) ("In this case, Yardi did not seek dismissal of RealPage's trade secret misappropriation claim…. This fact weighs heavily against Yardi's motion" to Stay Discovery.") Pointedly, the fact that Defendants at bar seek to limit discovery to the claims that are allegedly subject to dismissal is of no moment where, as here, "there is likely to be substantial overlap between evidence relating to the dismissed claims and the other claims, and a prospect of endless disputes over what discovery solely related to the dismissal

1 claims." (*Id.* *1).[7]

### D. The Fact That Defendants Propounded Discovery On The Very Matters They Now Seek To Stay Demonstrates That No Good Cause Exists

It cannot be disputed that Defendants propounded discovery on the Merger Agreement, *i.e.,* the very same discovery they now seek to stay. That double standard is contrary to law. *See Novelposter v. Javitch Canfield Group,* 2014 WL12618174*1 (N.D. Cal.) ("While the movants…argue that they would suffer significant prejudice if discovery were to proceed, it is the movants who brought this lawsuit, so they cannot now complain about the burdens of moving forward with its resolution.");[8] *Banks v. Mac.,* 2013 WL323341*1 (D. Nev.) ("In fact, Plaintiff appears to be requesting…discovery…which is inconsistent with his request for a stay."). This is particularly true here, where Judge Carter issued the Scheduling Order (Docket No. 82) after Defendants' Motions to Dismiss were taken under submission and setting the cutoff date for fact-based discovery as of December 14, 2018; *i.e.,* suggesting that the Court intends for the parties to proceed with all fact-based discovery despite the pending Motions to Dismiss. *Long v. Hewlett-Packard, Co.,* 2006 WL3751447*2 (N.D. Cal.) ("In any event, the District Court's scheduling

---

[7] There is clearly substantial overlap in the instant case in the evidence between the claims that are the subject of the motions to dismiss and the First Claim for Relief for Breach of the Framework Agreement. The latter clearly encompasses the false promises related to the Section 1.1 carve out of the Buyer Termination Fee Deposit provisions of the Merger Agreement (Docket No. 35, FAC, ¶¶ 33-39, 43-47, 55, 58-64). Indeed, the Defendants have admitted that "the Framework Agreement…is one of the primary agreements in dispute between the parties and that bears directly upon a Merger Agreement that is another focus of dispute." (Docket No. 22-2, Declaration of David J. Tyukody in Support of Defendant LeEco V. Ltd.'s Motion to Set Aside Entry of Default, ¶ 2.) Here, discovery concerning the Merger Agreement is directly related to the meaning and interpretation of the Framework Agreement, Section 1.1 carve out of the Buyer Termination Fee Deposit provisions of the Merger Agreement.

[8] While Defendants did not bring this lawsuit - - albeit they have filed a Counterclaim (Docket No. 61), the fact that they propounded discovery upon the very same subject matter that they now seek to stay likewise demonstrates that they are in no position to complain about the same discovery directed to them.

1  order, which was issued the day after HP's motion to dismiss was deemed
2  submitted, suggests that the District Court intended for the parties to proceed
3  with…discovery…notwithstanding that the motion to dismiss is pending.") *Cf.,*
4  *Adaptive Tactical, LLC v. FAB Manufacturing & Import,* 2016 WL4699680*1 (D.
5  Idaho) (FAB Manufacturing has not established good cause that might otherwise
6  warrant expediting the…Court's ruling on the motion to stay. Despite filing a
7  motion to dismiss FAB Manufacturing agreed to participate in discovery by
8  stipulating to a joint litigation and discovery plan with Adaptive Tactical."). Stated
9  differently, the discovery plan at bar for fact-based and expert discovery that is
10 reflected in the Scheduling Order was made with Defendants' participation and
11 approval; *i.e.,* with much the same effect.

### IV.
### THE MOTIONS TO DISMISS ARE NOT WELL TAKEN IN ANY EVENT

    **A.**    LeEco's Motion to Dismiss

Plaintiff does not believe that it is appropriate for LeEco's Motion to Dismiss to be adjudicated by way of a discovery motion since that would require this Court "to circumvent the procedures for the resolution of such a motion" that has been fully briefed and is currently under submission before Judge Carter. Should this Court somehow disagree, then VIZIO respectfully submits that its Opposition to that Motion to Dismiss is dispositive. Opposition which makes short shrift of LeEco's wild arguments that:

        i.    Plaintiff somehow did not plead its fraud claims against Defendants with the required particularity notwithstanding the existence of the "who", "what", "when", "how", and "where". (Docket No. 50, Plaintiff's Opposition to Defendants' Partial Motion to Dismiss the First Amended Complaint, p. 7, ln 13 – p. 11, ln 3).

        ii.    Plaintiff somehow did not plead reasonable reliance on the false promises of Defendants notwithstanding that (a) the existence of an

ERVIN COHEN & JESSUP LLP

integration clause in the Framework Agreement and/or (b) representation by counsel in the negotiation of the underlying agreements, do not obviate justifiable reliance as a matter of law. (*Id.,* at p. 11, ln 6 – p. 14, ln 4).

    iii. Plaintiff's fraud based claims are somehow barred by the economic loss rule notwithstanding that it does not apply to fraudulent inducement of the Framework Agreement. (*Id.,* at p. 14, ln 8 – p. 19, ln 24).

    iv. Plaintiff's basis for damages for breach of the Framework Agreement supposedly does not differ from the recovery that it has sought in tort even though (a) the viability of a fraud claim rests on the defendant's conduct and not on the type of damage, and (b) the factual basis for the damages sought is significantly different between the contract and tort claims. (*Id.,* at p. 20, ln 4 – p. 21, ln 6).

    v. Plaintiff somehow did not plead a claim for promissory estoppel under the Framework Agreement notwithstanding that (a) each of the elements necessary to state such a claim exists, (b) the unique nature of a breach of an agreement to negotiate in good faith - - here there was far more - - does not obviate a claim for promissory estoppel, and (c) LeEco has [now] attacked the validity of the Framework Agreement in its own Cross-Complaint (Docket No. 61). (*See also* Docket No. 50, Plaintiff's Opposition to Defendant's Partial Motion to Dismiss The First Amended Complaint, p. 21, ln 9 – p. 22, ln 12),

    vi. Rescission of the Framework Agreement is somehow unavailable in the alternative because not pled in a single claim for relief notwithstanding (a) the requirement that the underlying contract be affirmed or rejected - - but not both - - in a single claim for relief, (b) California law expressly provides that tender of benefits received need not be made until it is actually determined whether grounds for recession exist, and (c) no such tender need be made in any event where the amount of underlying damages exceeds the sums that would otherwise be restored. (*Id.,* at p. 22, ln 15 – p. 24, ln 6).

vii. Plaintiff somehow cannot sue for breach of the Merger Agreement in the alternative notwithstanding that (a) this claim is expressly subject to the action for Rescission of the Framework Agreement as permitted by Rule 18(b) of the *Federal Rules of Civil Procedure*, and (b) it is axiomatic that a fraud claim for rescission would operate to restore the Merger Agreement to its terminated state immediately prior to the Framework Agreement. (*Id.,* at p. 24, lns 7-23).

b. **Lele Holding's Motion To Dismiss**

Plaintiff does not believe that it is appropriate for Lele Holding's Motion to Dismiss to be adjudicated by way of a discovery motion since that would likewise require this Court "to circumvent the procedures for the resolution of such a motion" that has been fully briefed and is currently under submission before Judge Carter. Should this Court somehow disagree, then VIZIO respectfully submits that its Opposition to that Motion to Dismiss is equally dispositive. Opposition which makes short shrift of LeEco's wild arguments that:

i. Chaoying Deng ("Deng"), the corporate officer/agent served on behalf of Lele Holding, was somehow not properly served for the latter notwithstanding that (a) Deng specifically stated to the process server that she is the agent for service of process for Lele Holding and could accept service for it. (Docket No., 77, Plaintiff VIZIO, Inc.'s Opposition to Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction ("Jurisdictional Opposition"), p. 3, ln 18 – p. 4, ln 13; Docket No. 66, Carroll Dec. of Diligence), and (b) Deng later specifically accepted service for Lele Holding (Docket No. 77, Jurisdictional Opposition, p. 4, lns 4-13; Docket No. 67, Hernandez-Govea Dec. of Diligence. *See also* Proof of Service, Docket No. 55).

ii. Deng supposedly has no ties to LeEco notwithstanding that she played a key role in LeEco's U.S. operations, including (a) serving as Chief Executive Officer of Le Technology, the corporate entity that

guaranteed payment of the $50MM Buyer Termination Fee Remainder if LeEco failed to perform under the Merger Agreement (Docket No. 77, Jurisdictional Opposition, p. 4, ln 21 – p. 5, ln 8; Docket No. 71-2, Haas Dec., Ex. 1 (Le Technology Statement of Information dated December 17, 2015 and January 9, 2017)), (b) directly or indirectly serving as the corporate supervisor of an individual who has declared under oath that he was a principal negotiator as to both the Merger and Framework Agreements for Defendant Global Group, Ltd. - - which owned [Defendant] LeEco (Docket No. 26-1, Hsieh Dec., ¶¶ 2-3). *See also* Docket No. 77, Jurisdictional Opposition, p. 5, lns 8-17), and (c) serving as the registered agent for service of process for LeEco Real Estate Group LLC ("LREG"), which is a single member limited liability company where Le Technology - - the corporate guarantor of $50 MM of LeEco debt to VIZIO - - is the sole member (Docket No. 77, Jurisdictional Opposition, p. 5, ln 18 – p. 6, ln 3; Docket No. 71-2, Hass Dec., Ex. 2, LREG Cert. Conversion, dated June 10, 2016). While in turn, LREG was another integral part of LeEco's operations, as it purchased nearly 50 acres of land in San Jose from Yahoo in 2016 for a reported $250 MM, with plans to build a huge R&D facility for LeEco's North American operations (Docket No. 77, Jurisdictional Opposition, p. 5, lns 23-28; Docket No. 71-2, Haas Dec., Ex. 3, June 16, 2016 Deed from Yahoo to the LREG, noting payment of transfer tax of $275,00).

        iii.    Lele Holding's sole business is supposedly located in the British Virgin Islands notwithstanding that (a) LeEco is a subsidiary of Defendant Global Group and the latter is wholly owned by Defendant JIA through Lele Holding. (Docket No. 77, Jurisdictional Opposition, p. 6, ln 10 – p. 7, ln 6; Docket No. 78, Ex. 2 to Wessel Dec., Joint Voluntary Notice to the Committee on Foreign Investment in the United States ("Joint Notice"); p. 4.), and (b) the Joint Notice specifically lists Lele Holding's principal place of business at the same Beijing address listed for JIA and LeEco (*Id.,* at p. 7).

        iv.    Faraday Future, where Deng, is also an executive, is

1 somehow independent of Defendant Lele Holding and any other corporate defendant
2 named in this lawsuit notwithstanding the wealth of publicly reported information to
3 the contrary (Docket No. 77, Jurisdictional Opposition, pp. 7-8).

          v.     Lele Holding was somehow not properly served
5 through Deng notwithstanding that (a) under Rule 4(h)(1)(B) of the *Federal Rules of*
6 *Civil Procedure* a foreign corporation may be served with a summons in a judicial
7 district "by delivering a copy of the summons and complaint to an officer, a
8 managing or a general agent, or any other agent authorized by appointment or by
9 law to receive service of process….", (b) the filing of a proof of service creates a
10 rebuttable presumption that the service was proper, (c) Deng admitted to being able
11 to accept service for Lele Holding and then later did so (Docket No. 77,
12 Jurisdictional Opposition, p. 9, lns 22-25; Docket No. 66, Carroll Dec., Diligence),
13 (d) Deng was also the agent for service of process and recent CEO of Faraday
14 Future, the CEO of Le Tech, and the agent for service of process for LREG, (Docket
15 No. 77, Jurisdictional Opposition, p. 9, ln 26 – p. 10, ln 2; Docket No. 71-2, Haas
16 Dec., Ex. 1 [Le Tech Stmt. Info], Ex. 2 [LREG Cert. Conversion], and Ex. 8
17 [Faraday Future Filings, 2, 4], and (e) Plaintiff's Proof of Service (Docket No. 55)
18 establishes that Lele Holding was properly served through serving the Summons and
19 FAC on Deng. (Docket No. 77, Jurisdictional Opposition, pp. 9-10).

20     Lele Holding is somehow not subject to personal jurisdiction in the within
21 action notwithstanding (a) that Lele Holding purposefully directed its activities
22 toward Plaintiff in California in order to convince VIZIO to engage in transactions
23 with subsidiaries of Lele Holding governed by California law, including direct
24 negotiations of the Merger and/or Framework Agreements *vis-a-vies* fraudulent
25 misrepresentations made by and on behalf of Lele Holding through JIA, and/or
26 others, with respect thereto (Docket No. 77, Jurisdictional Opposition, pp. 11, ln 13
27 – p. 14, ln 5) (*See also* Docket No. 23-2, Wang Dec., Opp. Mot. Set Aside Default,
28 ¶¶ 6-9, 12, 23, 26). *See also* Docket No. 23-3, Wong Dec. Opp. Mot. Set Aside

ERVIN COHEN & JESSUP LLP

1 Default, ¶¶ 12-17); and (b) ample evidence exists that Lele Holding is an alter-ego
2 of Global Corp. and LeEco, including that (i) the 2015 unaudited financial
3 statements for Lele Holding and Global Group that LeEco submitted with the Joint
4 Notice to the Committee on Foreign Investment in the United States are virtually
5 identical; *i.e.,* have almost no separate financial existence (Docket No. 77,
6 Jurisdictional Opposition, p. 17, lns 12-21; Docket No. 78, Ex. 3 [Lele Holding] and
7 Ex. 4 [Global Group] to Wessel Dec., (ii) Defendant JIA owns 100% of Lele
8 Holding, which owns 100% of Global Group, which owns 100% of LeEco (Docket
9 No. 77, Jurisdictional Opposition, p. 17, lns 21-25; Docket No. 78, Ex. 5 to Wessel
10 Dec., [Ex. H to Joint Notice]), (iii) LeEco was undercapitalized almost to the point
11 of having no assets at all, *i.e.,* always relying on the assets of Lele Holding/Global
12 Group to conduct the merger with VIZIO (Docket No. 77, Jurisdictional Opposition,
13 p. 17, ln 24 – p. 18, ln 2); Docket No. 77-1, Ex. 1 to Wessel Dec., [Limited
14 Guarantee], § 13 ["[VIZIO] acknowledges and agrees that the sole asset of [LeEco]
15 is cash in a *de minimus* amount, and that no additional funds are to be contributed to
16 [LeEco] unless and until the Closing [of the Merger] occurs."), (iv) Lele Holding
17 has the same principal place of business as LeEco and JIA (Docket No. 77,
18 Jurisdictional Opposition, p. 18, lns 2-5; Docket No. 78, Ex. 2 to Wessel Dec., Joint
19 Notice, ¶ 7); and (v) all of the Defendants in this lawsuit are represented by the same
20 counsel in the within action.
21   It is beyond dispute that these factors fall squarely within the criteria applied
22 in the Ninth Circuit and California courts to determine alter-ego liability. (Docket
23 No. 77, Jurisdictional Opposition, p. 15, ln 26 – p. 17, ln 3). Equally important, if
24 there is even a scintilla of doubt as to whether Lele Holding is subject to the
25 jurisdiction of this Court, jurisdictional discovery - - e.g., the alter-ego discovery
26 sought at bar, would certainly be allowed notwithstanding Lele Holding's Motion to
27 Dismiss. See *Harris Rutsky & Co. Inc. Services, Inc. v. Bell & Clements Ltd.*
28 *Eyeglasses*, 328 F. 3d 1122, 1135 (9th Cir. 2003) (reversing and remanding to allow

a plaintiff "the opportunity to develop the record and make a prima facie showing of jurisdictional facts with respect to "its alleged alter-ego.) *Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.,* 5 F.3d 378, 383 (9th Cir, 1993) (stay on discovery relevant to jurisdictional issue would be improper notwithstanding motion to dismiss for lack of jurisdiction). This is particularly true here, where alter-ego non-parties can even be added as judgment debtors subsequent to the entry of judgment. *In re Levander*, 180 F. 3d 1114, 1121-23 (9th Cir. 1999). Stated differently, the alter-ego issues pervade this lawsuit, notwithstanding Lele Holding's Motion to Dismiss.

## V.
## **CONCLUSION**

WHEREFORE, Plaintiff respectively submits that the Application be denied.

DATED: July 27, 2018            ERVIN COHEN & JESSUP LLP
                                                         Robert M. Waxman
                                                         David N. Tarlow
                                                         Jason L. Haas

                                            By: /s/ Robert M. Waxman
                                                Robert M. Waxman
                                                Attorneys for Plaintiff VIZIO, INC., a California corporation