1  Robert M. Waxman (SBN 89754)
    rwaxman@ecjlaw.com
2  David N. Tarlow (SBN 214050)
    dtarlow@ecjlaw.com
3  Jason L. Haas (SBN 217290)
    jhaas@ecjlaw.com
4  **ERVIN COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Ninth Floor
5  Beverly Hills, California 90212-2974
   Telephone  (310) 273-6333
6  Facsimile  (310) 859-2325

7  Attorneys for Plaintiff VIZIO, INC., a California corporation

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10

11  VIZIO, INC., a California corporation,        Case No. 8:17-CV-01175-DOC-JDE

12              Plaintiff,                        **DECLARATION OF DAVID
                                                  TARLOW IN OPPOSITION TO
13        v.                                      DEFENDANTS' EX PARTE
                                                  APPLICATION REQUESTING
14  LeECO V. LTD., an exempted                    THAT THE COURT HEAR THE
    company with limited liability                PARTIES' DISCOVERY DISPUTE
15  incorporated under the laws of the            PURSUANT TO DEFENDANTS'
    Cayman Islands; LeECO GLOBAL                  MOTION FOR A PROTECTIVE
16  GROUP LTD., a corporation organized           ORDER, INSTEAD OF
    and existing under the laws of the            PLAINTIFF'S PROPOSED
17  People's Republic of China; LELE              MOTION TO COMPEL
    HOLDING, LTD., a British Virgin
18  Islands Personal Holding Company;             The Hon. John D. Early
    YUETING JIA, an individual; and              Courtroom      6A
19  DOES 1 through 10,

20              Defendant.

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

## DECLARATION OF DAVID N. TARLOW

I, David N. Tarlow, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am  a partner in the firm of Ervin Cohen & Jessup LLP, attorneys of record for Plaintiff/Cross-Defendant VIZIO, INC., a California corporation ("VIZIO").  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe that they are true. If called as a witness, I could and would competently testify to the matters stated herein.

2.     I make this declaration in support of Plaintiff's Motion to Compel Defendants LeEco V. Ltd. ("LeEco") and Lele Holding, Ltd. ("LeEco") to Provide Further Responses to Plaintiff's Request for Production of Documents (Set One) and to Produce Documents ("RFPs").

3.     A true and correct copy of Plaintiff's Request for Production of Documents (Set One) to Defendant LeEco is attached hereto as Exhibit "A."

4.     A true and correct copy of Plaintiff's Request for Production of Documents (Set One) to Defendant Lele is attached hereto as Exhibit "B."

5.     A true and correct copy of LeEco's Response to Request for Production of Documents (Set One) is attached hereto as Exhibit "C."

6.     A true and correct copy of Lele's Response to Request for Production of Documents (Set One) is attached hereto as Exhibit "D."

7.     A true and correct copy of a meet and confer letter which I sent to Defendants' counsel on June 8, 2018 is attached hereto as Exhibit "E."

8.     A true and correct copy of Defendant LeEco's Request for Production of Documents (Set One) to VIZIO is attached hereto as Exhibit "F."

9.     A true and correct copy of Defendant LeEco's Interrogatories (Set One) to VIZIO is attached hereto as Exhibit "G."

JOINT STIPULATION RE VIZIO'S REQUESTS FOR PRODUCTION (SET ONE) TO DEFENDANTS LeECO AND LELE HOLDING, LTD.

1  10.  A true and correct copy of Defendant LeEco's Request for Admissions
2  (Set One) to VIZIO is attached hereto as Exhibit "H."

3  11.  On or about June 18, 2018, I conducted a meet and confer telephonic
4  conference with Defendant's counsel Jeff Joyner and his associate regarding the
5  instant motion.  Mr. Joyner, stated to me, in sum and substance, that he was
6  contemplating the filing of a motion to stay discovery in this case pending the
7  outcome of the 12(b)(6) and 12(b)(5) motions to dismiss that were filed by
8  Defendants, but that he had been waiting for a response from me as to whether
9  Plaintiff would stipulate to same.  I told Mr. Joyner that Plaintiff would not stipulate
10 to a stay, and that consistent with the meet and confer letter which I had sent him,
11 the filing of motions to dismiss does not result in a stay of discovery.  Further, I told
12 Mr. Joyner that based upon the quickly approaching discovery cutoff date in
13 December, that discovery needed to be conducted immediately.

14 12.  On June 22, 2018, I received a letter from Mr. Joyner's associate
15 Attashin Safari, whereby he asked whether VIZIO would agree to a stay of these
16 proceedings, even though I had previously told Mr. Joyner that Plaintiff would not
17 stipulate to same.  A true and correct copy of same is attached hereto as Exhibit "I."

18 I declare under penalty of perjury under the laws of the United States of
19 America that the foregoing is true and correct.

20 Executed July 11, 2018, at Beverly Hills, California.

22 /s/ David N. Tarlow
23 David N. Tarlow

ERVIN COHEN & JESSUP LLP

# EXHIBIT A

1   Robert M. Waxman (SBN 89754)
      rwaxman@ecjlaw.com
2   David N. Tarlow (SBN 214050)
      dtarlow@ecjlaw.com
3   Jason L. Haas (SBN 217290)
      jhaas@ecjlaw.com
4   **ERVIN COHEN & JESSUP LLP**
    9401 Wilshire Boulevard, Ninth Floor
5   Beverly Hills, California 90212-2974
    Telephone  (310) 273-6333
6   Facsimile  (310) 859-2325

7   Attorneys for Plaintiff VIZIO, INC., a California corporation

8

9                  **UNITED STATES DISTRICT COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11

12   VIZIO, INC., a California corporation,      Case No. 8:17-CV-01175-DOC-JDE

13                      Plaintiff,               **PLAINTIFF VIZIO, INC.'S
                                                 REQUEST FOR PRODUCTION OF
14            v.                                 DOCUMENTS TO DEFENDANT
                                                 LeECO V. LTD. (SET ONE)**
15   LeECO V. LTD., et al,
                                                 Judge:  Hon. David O. Carter
16                      Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

14676.8:3438883.2                                    8:17-CV-01175-DOC-JDE

ERVIN COHEN & JESSUP LLP

1   PROPOUNDING PARTY:       Plaintiff Vizio, Inc.

2   RESPONDING PARTY:        Defendant LeEco V. Ltd.

3   SET NO.:                 ONE (1)

4        Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Vizio, Inc.

5   propounds the following Request for Production of Documents, Set One to

6   Defendant, LeEco V. Ltd. ("Responding Party" or "LeECO"), to be responded to

7   fully, verified in writing under oath, within thirty (30) days of service of these

8   requests as provided for by Federal Rule of Civil Procedure 34(b)(2)(A).  All

9   objections, responses and responsive documents shall be served on Ervin Cohen &

10  Jessup LLP, 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, California 90212.

11       These Requests are governed by the Definitions and Instructions set forth

12  herein.

13                        **DEFINITIONS**

14       As used herein, and only for the purposes of these discovery requests, the

15  following terms have the following meanings:

16       1.    As used herein, the terms "YOU" or "YOUR" shall mean LeECO, and

17  to all agents and representatives of LeECO, and to all PERSONS acting or

18  purporting to act on its behalf or pursuant to its request.

19       2.    The word "COMPLAINT" shall mean and refer to the First Amended

20  Complaint filed by Vizio, Inc. in the above-captioned action on November 6, 2017.

21       3.    "VIZIO" shall mean and refer to Plaintiff Vizio, Inc., a California

22  corporation, and to all agents and representatives of VIZIO, and to all PERSONS

23  acting or purporting to act on its behalf or pursuant to its direction or request.

24       4.    "LeECO" shall mean Defendant LeEco V. Ltd., an exempted company

25  with limited liability incorporated under the laws of the Cayman Islands, and to all

26  agents and representatives of LeECO, and to all PERSONS acting or purporting to

27  act on its behalf or pursuant to its request.

28       5.    "GLOBAL" shall mean Defendant LeEco Global Group Ltd., a

14676.8.3438883.2                                          8:17-CV-01175-DOC-JDE

ERVIN COHEN & JESSUP LLP

1 corporation organized and existing under the laws of the People's Republic of
2 China, and to all agents and representatives of GLOBAL, and to all PERSONS
3 acting or purporting to act on its behalf or pursuant to its request.

4      6.    "LELE" shall mean Defendant Lele Holding Ltd., a personal holding
5 company organized and existing under the laws of the British Virgin Islands, and to
6 all agents and representatives of LELE, and to all PERSONS acting or purporting to
7 act on its behalf or pursuant to its request.

8      7.    "JIA" shall mean Defendant Yueting Jia, an individual who resides in
9 China and is the owner of GLOBAL through LELE, and to all agents and
10 representatives of JIA, and to all PERSONS acting or purporting to act on his behalf
11 or pursuant to his request.

12     8.    "MERGER SUB" shall mean Le V Merger Sub Inc., a California
13 corporation and indirect wholly-owned subsidiary of LeECO, and to all agents and
14 representatives of MERGER SUB, and to all PERSONS acting or purporting to act
15 on its behalf or pursuant to its request.

16     9.    "LTI" shall mean Le Technology, Inc., a California corporation and
17 subsidiary of GLOBAL, and to all agents and representatives of LTI, and to all
18 PERSONS acting or purporting to act on its behalf or pursuant to its request.

19     10.   "LREG" shall mean LeEco Real Estate Group LLC, a Delaware limited
20 liability company, and to all agents and representatives of LeEco Real Estate Group
21 LLC, and to all PERSONS acting or purporting to act on its behalf or pursuant to its
22 request.

23     11.   "MERGER AGREEMENT" shall mean and refer to that certain
24 Agreement and Plan of Merger, made as of July 6, 2016, by and among VIZIO,
25 LeECO, MERGER SUB, and Shareholder Representative Services LLC, a Colorado
26 limited liability company.

27     12.   "MERGER" shall mean and refer to that transaction among VIZIO,
28 LeECO, and MERGER SUB agreed to in the MERGER AGREEMENT and to any

1  and all potential transactions discussed between VIZIO and LeECO prior to entry of

2  the MERGER AGREEMENT, whether the potential transaction took the form of a

3  merger, acquisition, purchase of assets or other structure.

4        13.  "GUARANTY" shall mean and refer to that certain Limited Guarantee

5  made as of July 6, 2016, by LTI in favor of VIZIO.

6        14.  "FRAMEWORK AGREEMENT" shall mean and refer to that certain

7  Framework, Termination and Mutual General Release Agreement entered into as of

8  April 5, 2017 by and among VIZIO, LeECO, and MERGER SUB.

9        15.  "ESCROW AGREEMENT" shall mean and refer to that certain

10  Escrow Agreement, made as of July 6, 2016, by and among VIZIO, LeECO,

11  MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited

12  liability company, with Citibank, National Association.

13        16.  "ESCROW" shall mean and refer to the escrow created by the

14  ESCROW AGREEMENT in connection with the MERGER AGREEMENT.

15        17.  "CHINA" shall mean and refer to the People's Republic of China.

16        18.  As used herein, the term "COMMUNICATION" or

17  "COMMUNICATIONS" means the transmittal of information (in the form of facts,

18  ideas, inquiries, or otherwise) by any means, including but not limited to, any

19  meeting, conversation, discussion, conference, correspondence, message, or other

20  written or oral transmission, exchange, or transfer of information in any form

21  between two or more PERSONS, including in person or by telephone, facsimile,

22  telegraph, telex, e-mail or other tangible or electronic medium.

23        19.  As used herein, the terms "DOCUMENT" and "DOCUMENTS" shall

24  mean writings of every kind, source, and authorship, both originals and copies

25  thereof, in YOUR custody or control, or known by YOU to exist, irrespective of

26  whether the writing is one intended for or transmitted internally by YOU or intended

27  for or transmitted to any other person or entity, INCLUDING any government

28  agency, department, administrative entity, or other person or entity, the contents of

ERVIN COHEN & JESSUP LLP

1 which in any way RELATE, discuss, consider, or otherwise refer to the subject

2 matter of the particular discovery requested. "DOCUMENT" and "DOCUMENTS"

3 shall include the following: (1) all matter that is written, handwritten, typewritten,

4 printed, graphic, photocopied, photographic, or recorded, including sound

5 recordings or reproductions, however produced, reproduced or prepared, including,

6 but not limited to, notes, telegrams, notebooks, brochures, charts, photographs,

7 agreements, proposals, minutes, communications in words or symbols, interoffice

8 communications, studies, technical data, brochures, bulletins, reviews, compilations,

9 films, audio recordings, audio cassettes, videotapes, calendars, appointment books,

10 diaries, and work papers of any kind; (2) all machine or computer readable data

11 compilations or electronic or mechanical devices which contain information,

12 including, but not limited to, computer server(s), texts, tapes, diskettes, cards, hard

13 disks, optical disks, cassettes, and all other information storage or retrieval systems,

14 together with the codes, passwords and/or programming instructions and other

15 materials necessary to understand and use such systems; (3) all electronic mail,

16 instant mail, and social media accounts belonging to YOU; (4) all originals, drafts,

17 and copies that differ in any respect from the original, all marginal comments that

18 appear on such DOCUMENTS, and all transcripts or recordings of such

19 DOCUMENTS; (5) all attachments, enclosures or DOCUMENTS affixed or

20 referred to in such DOCUMENTS; and (6) all material within the scope of Rule

21 1001 of the Federal Rules of Evidence and California Evidence Code Sections 250,

22 255 and 260.

23      20. The terms "ANY," "ALL," "EACH," and "EVERY" should be

24 understood in their most inclusive sense as necessary to bring within the scope of

25 the discovery request all responses that might otherwise be construed to be outside

26 of their scope.

27      21. As used herein, the term "INCLUDING" shall mean including, but not

28 limited to, and shall not be interpreted to exclude any information otherwise within

ERVIN COHEN & JESSUP LLP

1    the scope of these Requests.

2        22.    As used herein, the term "PERSON" shall mean, without limitation, a

3    natural person, corporation, limited liability company, partnership, trust, association,

4    joint venture, firm, tenancy-in-common or other business enterprise, governmental

5    or legal entity and includes both the singular and plural as well as all representatives

6    of such PERSON or PERSON(S).

7        23.    The words "RELATING," "RELATE," "RELATE TO," "RELATING

8    TO," and "REFERRING" as used herein shall mean all matters or things that in any

9    way discuss, are connected to, arise from, consist of, reflect, summarize, evaluate, or

10   comment on the subject or object of the particular Request, or that have any logical

11   or factual connection to the matter discussed, and they shall include the common

12   meanings of all those terms, and shall include indirect as well as direct references to

13   the subject matter set forth in the Requests.

14       24. The term "AFFILIATE" shall mean a subsidiary corporation, sister

15   corporation, subsidiary limited liability company, sister limited liability company, or

16   ANY other form of business entity where: (1) at least 20% or more of the stock or

17   membership interests of that entity are held, owned, or controlled, either directly or

18   indirectly, by the PERSON identified in the request; (2) the entity holds, owns or

19   controls, either directly or indirectly, at least 20% or more of the stock or

20   membership interests of the PERSON identified in the request; or (3) at least 20% or

21   more of the stock or membership interests in both the entity and the PERSON

22   identified in the request are held, owned, or controlled, either directly or indirectly,

23   by the same PERSON.

24                        **INSTRUCTIONS**

25       1.    The time period covered by each of the within Requests shall be from

26   July 1, 2015 to the date of the service of your response to these Requests, except as

27   to those Requests that specifically state any other time period.

28       2.    To the extent that documents responsive to these requests contain text

ERVIN COHEN & JESSUP LLP

1    in the Chinese language (or any language other than English), YOU should produce
2    both the original document and any documents in YOUR possession, custody or
3    control that contain an English translation, in whole or in part, of the Chinese text in
4    the original document.

5           3.     As used herein, the terms "and" and "or" shall be interpreted
6    conjunctively or disjunctively, as necessary, to bring within the scope of these
7    Requests all DOCUMENTS that might otherwise be construed to be outside of the
8    scope of these requests.

9           4.     These Requests include DOCUMENTS within the custody, possession
10   and control of YOU and YOUR agents or AFFILIATES, INCLUDING YOUR
11   agent(s), representative(s), attorney(s), accountant(s), tax advisor(s) and investment
12   advisor(s), and any phone companies or banks YOU use.  If a DOCUMENT is
13   responsive to a request for production and is in YOUR control but is not in YOUR
14   possession or custody, identify the PERSON or entity with possession or custody.

15          5.     If a requested DOCUMENT is withheld or objected to based on a claim
16   of privilege or for other reasons, please serve the undersigned a privilege log, and
17   state with respect to each such withheld DOCUMENT:

18          (a)     The nature or basis of the claim of privilege or other ground for
19   nonproduction;

20          (b)     The names and addresses of all parties to the COMMUNICATION
21   (INCLUDING ALL parties who have been copied on the COMMUNICATION);

22          (c)     The date, subject matter, and number of pages of the DOCUMENT;
23   and

24          (d)     The current custodian and present location of the DOCUMENT.

25          6.     A representation of inability to comply with a particular request shall
26   state the specific reason for the inability to comply, INCLUDING whether the
27   particular DOCUMENT or other tangible thing has never existed, has been
28   destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in

ERVIN COHEN & JESSUP LLP

1 YOUR possession, custody, or control and/or the possession, custody or control of
2 any of YOUR AFFILIATES. The statement shall set forth the name and address of
3 any PERSON known or believed by that party to have possession, custody, or
4 control of that item or category of item.

5   7.   If only a part of a request is objectionable, the response shall identify
6 with particularity any DOCUMENT or other tangible thing falling within any
7 category of item in the request to which an objection is being made, and shall set
8 forth clearly the extent of and the specific ground for the objection. If there are no
9 DOCUMENTS responsive to any particular request or category, please so state in
10 writing, providing a representation of inability to comply with respect to the
11 remainder of that item or category.

12   8.   All paper DOCUMENTS are to be produced as they are kept in the
13 usual course of business with any identifying labels, file markings or similar
14 identifying features, and shall be organized and labeled to correspond to the
15 appropriate request herein. If a portion of a DOCUMENT is responsive, the entire
16 DOCUMENT is to be produced.

17   With respect to electronic DOCUMENTS, all spreadsheets, presentation and
18 design files (e.g. Excel, PowerPoint) are to be produced in electronic form in native
19 format, as kept in the ordinary course of business. All other electronically stored
20 information ("ESI") and imaged hard copy shall be produced in the format outlined
21 below. All ESI shall be rendered to TIFF image format, and accompanied by a
22 Concordance Image Cross Reference file. All applicable metadata/database fields
23 shall be extracted and provided in Concordance load file format:

24   (a)   Image File Format: All images, paper documents scanned to images, or
25 rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV
26 (2D Compression). Documents should be uniquely and sequentially Bates
27 numbered with an endorsement burned into each image. All TIFF file names shall
28 include the unique Bates number burned into the image. Each Bates number shall

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  be a standard length, include leading zeros in the number, and be unique for each

2  produced page.  All TIFF image files shall be stored with the ".tif" extension.

3  Images shall be OCR'd using a standard COTS products.  All pages of a document

4  or all pages of a collection of documents that comprise a folder or other logical

5  grouping, including a box, shall be delivered on a single piece of media.  No image

6  folder shall contain more than 2000 images.

7      (b)    Concordance Image Cross Reference File:  Images should be

8  accompanied by a Concordance Image Cross Reference file that associates each

9  Bates number with its corresponding single-page TIFF image file.  The Cross

10  Reference file should also contain the image file path for each Bates numbered page.

11      (c)    Concordance Load File:  Images should also be accompanied by a "text

12  load file" containing delimited text that will populate fields in a searchable, flat

13  database environment.

14      9.    If any DOCUMENT called for within a request has been destroyed or

15  discarded, identify the DOCUMENT and describe the date, manner of and reason

16  for its destruction.

17      10.    Each Request shall be construed independently, and no Request shall

18  be viewed as limiting the scope of any other Document Request.

19      11.    Each non-identical copy of a DOCUMENT, whether different from the

20  original because of handwritten notes, marks, attachments, or any other reason, is a

21  separate DOCUMENT that must be produced.

22      12.    The use of the singular form of any word includes the plural, and the

23  use of the plural form of any word includes the singular.

24          **REQUESTS FOR PRODUCTION**

25  **REQUEST FOR PRODUCTION NO. 1:**

26      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

27  the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the

28  negotiations that resulted in the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 2:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the GUARANTY.

**REQUEST FOR PRODUCTION NO. 3:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the negotiations that resulted in FRAMEWORK AGREEMENT.

**REQUEST FOR PRODUCTION NO. 4:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations that resulted in the ESCROW AGREEMENT.

**REQUEST FOR PRODUCTION NO. 5:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of management meetings, emails, marketing plans, operational plans, financial analyses, and strategy documents.

**REQUEST FOR PRODUCTION NO. 6:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER.

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS and COMMUNICATIONS posted by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or the MERGER.

**REQUEST FOR PRODUCTION NO. 8:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW.

ERVIN COHEN & JESSUP LLP

**ERVIN COHEN & JESSUP** LLP

1 **REQUEST FOR PRODUCTION NO. 9:**

2    ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

3 the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

4 JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

5 **REQUEST FOR PRODUCTION NO. 10:**

6    ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

7 the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

8 JIA, LTI or any of their AFFILIATES expected to receive from the public

9 announcement of the MERGER AGREEMENT or that any of those PERSONS

10 actually received following that announcement.

11 **REQUEST FOR PRODUCTION NO. 11:**

12    ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

13 the response of U.S. and Chinese markets or press to the proposed MERGER,

14 INCLUDING all articles, reports and other documents issued by stock markets,

15 bond markets, financial press, newspapers, and financial analysts.

16 **REQUEST FOR PRODUCTION NO. 12:**

17    ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

18 efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to

19 implement, meet the conditions for, or complete the MERGER with VIZIO.

20 **REQUEST FOR PRODUCTION NO. 13:**

21    ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

22 Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

23 agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

24 **REQUEST FOR PRODUCTION NO. 14:**

25    ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU

26 received from any PERSON, including AFFILIATES, third party businesses, and

27 governmental entities, regarding the proposed MERGER.

28

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 15:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT— whether located in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 16:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued, made or published by any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 17:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such

11

REQUEST FOR PRODUCTION OF DOCUMENTS

1  investments.

2  **REQUEST FOR PRODUCTION NO. 18:**

3       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

4  the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed

5  to complete the proposed MERGER with VIZIO.

6  **REQUEST FOR PRODUCTION NO. 19:**

7       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

8  efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER

9  SUB to complete the proposed MERGER with VIZIO INCLUDING

10  DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International

11  Capital; the Bank of China; Bank of China Limited Macau Branch; China

12  Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;

13  Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet

14  Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment

15  Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.

16  Ltd. or any of their AFFILIATES.

17  **REQUEST FOR PRODUCTION NO. 20:**

18       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

19  the terms on which the financing needed by LeECO and MERGER SUB to

20  complete the proposed MERGER with VIZIO could be obtained, INCLUDING

21  DOCUMENTS OR COMMUNICATIONS to or from: Hollyhigh International

22  Capital; the Bank of China; Bank of China Limited Macau Branch; China

23  Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;

24  Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet

25  Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment

26  Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.

27  Ltd. or any of their AFFILIATES.

28

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 21:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, regarding efforts to implement, meet the conditions for, or complete the MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete the MERGER.

**REQUEST FOR PRODUCTION NO. 22:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 23:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 24:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the actual assets and financing available to LeECO and MERGER SUB on or about April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

**REQUEST FOR PRODUCTION NO. 25:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 26:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the source of monies deposited in ESCROW to serve as the "Buyer Termination Fee Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT

ERVIN COHEN & JESSUP LLP

1 and used in Section 9.2 of the MERGER AGREEMENT.

2 **REQUEST FOR PRODUCTION NO. 27:**

3      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

4 the termination of the MERGER AGREEMENT.

5 **REQUEST FOR PRODUCTION NO. 28:**

6      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

7 reasons why the MERGER was not, or could not, be completed.

8 **REQUEST FOR PRODUCTION NO. 29:**

9      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a

10 potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE,

11 JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO

12 products in CHINA, INCLUDING emails, marketing plans, operational plans,

13 financial analyses, and strategy documents.

14 **REQUEST FOR PRODUCTION NO. 30:**

15      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

16 negotiations or discussions between VIZIO and LeECO to "negotiate in good faith

17 and execute one or more agreements" regarding a joint venture in CHINA as

18 required by Section 4 of the FRAMEWORK AGREEMENT.

19 **REQUEST FOR PRODUCTION NO. 31:**

20      DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual

21 relationships, and the terms of those relationships, between LeECO, GLOBAL,

22 LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other

23 PERSON on the other hand, that would have been impacted or affected by a joint

24 venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

25 **REQUEST FOR PRODUCTION NO. 32:**

26      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

27 efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

28 develop and obtain certification of the "LeEco Le App", as required of LeECO

REQUEST FOR PRODUCTION OF DOCUMENTS

ERVIN COHEN & JESSUP LLP

1  under Section 2.1.1 of the FRAMEWORK AGREEMENT.

2  **REQUEST FOR PRODUCTION NO. 33:**

3      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

4  efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

5  identify and/or obtain "non-cash assets with a fair market value equal to US

6  $50,000,000 as a capital contribution" to contribute to a proposed joint venture with

7  VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

8  **REQUEST FOR PRODUCTION NO. 34:**

9      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

10  ALL assets owned by LTI or financial resources available to LTI, at any time

11  between July 6, 2016 and the present, that were available to satisfy LTI's

12  representation in Section 5(d) of the GUARANTY that LTI would have "the

13  financial capacity to pay and perform the Obligation" of LeECO to pay the Buyer

14  Termination Fee Remainder if it should become due under the MERGER

15  AGREEMENT and that LTI "shall maintain such financial capacity for so long as

16  this Guarantee shall remain in effect."

17  **REQUEST FOR PRODUCTION NO. 35:**

18      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

19  payments or transfers made by LTI after July 6, 2016, if any, in which the total

20  assets then owned by LTI, or the total financial resources available to LTI, was less

21  than $50,000,000.00 either before and/or after the transaction.

22  **REQUEST FOR PRODUCTION NO. 36:**

23      ANY and ALL articles of incorporation, amended articles of incorporation,

24  bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL,

25  LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1,

26  2012.

27  **REQUEST FOR PRODUCTION NO. 37:**

28      DOCUMENTS sufficient to identify ALL officers, directors, partners,

ERVIN COHEN & JESSUP LLP

1  shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of

2  their AFFILIATES at any time after January 1, 2012.

3  **REQUEST FOR PRODUCTION NO. 38:**

4      ANY and ALL shares of stock, stock certificates, partnership interests, or

5  membership interests currently held or owned by any PERSONS in LeECO,

6  GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

7  **REQUEST FOR PRODUCTION NO. 39:**

8      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

9  ANY contract or agreement - - INCLUDING all written amendments and

10 supplements to any such contract or agreement and all written assignments and

11 modifications of any such contract or agreement - - whereby any PERSONS

12 acquired on any date after January 1, 2012, either in their own respective names or

13 under and pursuant to any fictitious business names, any right, title or interest in or

14 to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and

15 each or any of their respective employees, shares of stock, partnership interests,

16 membership interests, assets and/or liabilities, INCLUDING all loan commitments,

17 offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty

18 agreements, stock transfer agreements, membership interest transfer agreements,

19 credit agreements, sales orders, partnership agreements, sales agreements,

20 assignment agreements, hypothecation agreements, deregistration agreements,

21 dissolution agreements, purchase agreements, options agreements, stock

22 agreements, shares of stock, certificates of stock, joint venture agreements, asset

23 sale agreements, debt payment agreements, accommodation agreements, debt

24 protection agreements, asset transfer agreements, indemnity agreements, defense

25 agreements, hold harmless agreements, employee sharing agreements, employee

26 transfer agreements, security agreements, financing agreements, memorandum

27 agreements, letter agreements, loan agreements, insolvency agreements,

28 intercompany transfer agreements, escrow agreements, operating agreements, loan

ERVIN COHEN & JESSUP LLP

1  commitments, limited liability company agreements, assumption agreements,
2  liquidation agreements, winding up agreements, creditor's agreements, letters of
3  credit, asset distribution or preservation agreements, liability distribution or transfer
4  agreements, membership distribution or transfer agreements, payment records,
5  promissory notes, governmental filings, security instruments, deeds and deeds of
6  trust.

7  **REQUEST FOR PRODUCTION NO. 40:**

8       ANY and ALL agendas, corporate minutes, and corporate resolutions for
9  ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL,
10 LELE, LTI, and LREG held on any date after January 1, 2012.

11 **REQUEST FOR PRODUCTION NO. 41:**

12      ANY and ALL agendas, minutes, and resolutions for ALL meetings of the
13 shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any
14 date after January 1, 2012.

15 **REQUEST FOR PRODUCTION NO. 42:**

16      ANY and ALL voting or operating agreements among shareholders or
17 members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any
18 date after January 1, 2012.

19 **REQUEST FOR PRODUCTION NO. 43:**

20      ANY and ALL contracts and agreements between or among LeECO,
21 GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in
22 effect at any point in time after January 1, 2012.

23 **REQUEST FOR PRODUCTION NO. 44:**

24      ANY and ALL DOCUMENTS prepared at any time since 2012 and through
25 and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG
26 and/or any of their AFFILIATES represented, stated, or otherwise held out that
27 LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE
28 or GLOBAL and/or to be substantially the same as LELE or GLOBAL,

ERVIN COHEN & JESSUP LLP

14676.8.3438883.2                    17                    8:17-CV-01175-DOC-JDE

1 INCLUDING advertising or promotional materials, press releases, WeChat and
2 other social media postings, investment reports, financial documents, and ANY
3 DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or
4 market entity.

5 **REQUEST FOR PRODUCTION NO. 45:**

6 DOCUMENTS sufficient to identify the location of the headquarters and all
7 administrative, manufacturing and distribution facilities for LeECO, GLOBAL,
8 LELE, LTI, LREG and/or any of their AFFILIATES at all times after January 1,
9 2012 and through the present day.

10 **REQUEST FOR PRODUCTION NO. 46:**

11 DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL,
12 LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1,
13 2012 and through the present day. "Identify" in this request means to provide the
14 full name, title, and current (or last known) address and phone number of each
15 employee, the entity with which each individual was employed, the date on which
16 the individual's employment began, and, if the individual is no longer employed, the
17 dates of his or her service with LeECO, GLOBAL, LELE, LTI, LREG or their
18 AFFILIATES.

19 **REQUEST FOR PRODUCTION NO. 47:**

20 DOCUMENTS sufficient to identify ALL employees, managers, consultants,
21 independent contractors, agents, attorneys, accountants, officers and/or directors
22 shared by, used by, loaned to, or otherwise transferred between one or more of
23 LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time
24 after January 1, 2012.

25 **REQUEST FOR PRODUCTION NO. 48:**

26 ANY and ALL DOCUMENTS RELATING TO monies transferred by,
27 between or among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their
28 AFFILIATES since January 1, 2012, and through and including the present date,

ERVIN COHEN & JESSUP LLP

1  INCLUDING intercorporate transfers, hypothecations, loans, gifts, dividends,

2  earnings and profits.

3  **REQUEST FOR PRODUCTION NO. 49:**

4       ANY and ALL DOCUMENTS RELATING TO contracts or agreements with

5  third parties, loans, other obligations or instruments of debt that were paid, co-

6  signed or guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

7  AFFILIATES for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since

8  January 1, 2012, and through and including the present date.

9  **REQUEST FOR PRODUCTION NO. 50:**

10       ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

11  GLOBAL, LELE, LTI, and LREG at or about (a) the date of its incorporation or

12  formation, and (b) from and after January 1, 2012 and including the present date.

13  **REQUEST FOR PRODUCTION NO. 51:**

14       ANY and ALL financial statements and analyses for LeECO, GLOBAL,

15  LELE, LTI, and LREG since January 1, 2012, and through and including the present

16  date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance

17  sheets, and 4) ANY financial summaries or reports prepared for a) the use of JIA or

18  other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential

19  investors in, joint venturers with, or lenders to LeECO, GLOBAL, LELE, LTI,

20  LREG and/or any of their AFFILIATES.

21  **REQUEST FOR PRODUCTION NO. 52:**

22       ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits

23  of LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through

24  and including the present date.

25  **REQUEST FOR PRODUCTION NO. 53:**

26       DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible

27  and intangible assets of any kind with a value in excess of $100,000 in which

28  LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES

ERVIN COHEN & JESSUP LLP

1  possessed an ownership interest at any point after July 1, 2016. "Identify" in this

2  request means to provide the description and location for each tangible and

3  intangible asset, the nature and size of the interest in that asset (e.g. a 50% equity

4  interest, a joint owner in common), and the last known market value of the asset.

5  **REQUEST FOR PRODUCTION NO. 54:**

6  DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or

7  liabilities of any kind with a value in excess of $100,000 owed by LeECO,

8  GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point

9  after July 1, 2016. "Identify" in this request means to provide the type of liability,

10  the amount currently owed, the PERSON to whom the liability is owed and that

11  PERSON's address and telephone number.

12  **REQUEST FOR PRODUCTION NO. 55:**

13  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

14  plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

15  AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible

16  assets of any kind that it possessed after July 1, 2016.

17  **REQUEST FOR PRODUCTION NO. 56:**

18  The Master Agreement executed in or after December 2016 among LREG,

19  the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS

20  RELATING TO property owned by LREG in Santa Clara, California and ANY and

21  ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master

22  Agreement or to ANY transaction that occurred pursuant to the terms of the Master

23  Agreement.

24  **REQUEST FOR PRODUCTION NO. 57:**

25  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

26  ANY transfers of equity interests in LREG to the Genzon Group or to ANY

27  PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016,

28  INCLUDING agreements, emails, records of all payments made, and stock

ERVIN COHEN & JESSUP LLP

1 certificates or other documents reflecting the transfer of any interest.

2 **REQUEST FOR PRODUCTION NO. 58:**

3   DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial

4 accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

5 AFFILIATES was listed as an owner of the account at any point in 2017.

6 **REQUEST FOR PRODUCTION NO. 59:**

7   The letter or memo by JIA issued in or about November 2016 RELATING

8 TO financing issues being experienced by the global LeEco businesses and

9 announcing that JIA would reduce his own income to one yuan.  This letter was

10 referenced in an article by Bloomberg News, which article can be found at

11 https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-

12 confesses-to-cash-crunch-at-leeco.

13 **REQUEST FOR PRODUCTION NO. 60:**

14   ANY and ALL orders issued after January 1, 2016 by ANY court,

15 governmental entity, or administrative body that has the effect of seizing, or

16 restricting the disposition of, ANY assets owned by LeECO, GLOBAL, LELE, JIA,

17 LTI, LREG, and/or any of their AFFILIATES.

18 **REQUEST FOR PRODUCTION NO. 61:**

19   DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal

20 actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any

21 of their AFFILIATES filed or pending in the United States at any point after January

22 1, 2016.  "Identify" in this request means to identify the court or administrative body

23 in which the action is pending, the name of the action, and the case number(s) of

24 that action or actions.

25 **REQUEST FOR PRODUCTION NO. 62:**

26   ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

27 ANY actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or

28 any of their AFFILIATES to make payments that were or are due and owing at any

ERVIN COHEN & JESSUP LLP

1 | point after January 1, 2016.

2 | **REQUEST FOR PRODUCTION NO. 63:**

3 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

4 | Jia Yueting's resignation in July 2017 as Chairman of ANY of the global LeEco

5 | businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi

6 | Holding Co., Ltd. (Beijing) and/or any of their AFFILIATES.

7 | **REQUEST FOR PRODUCTION NO. 64:**

8 | ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

9 | the sale, transfer, dissolution, winding up, or liquidation of LELE, GLOBAL,

10 | LeECO, LTI, LREG or ANY of their AFFILIATES.

11 | **REQUEST FOR PRODUCTION NO. 65:**

12 | ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

13 | plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or

14 | ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make

15 | arrangements or accommodations for or with their creditors; (b) assign, assume,

16 | distribute or transfer any stock, membership interests, actual assets, actual liabilities,

17 | contractual obligations, contingent liabilities, contingent assets, or employees of

18 | LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or (c) to indemnify,

19 | hold harmless or defend the obligations of any PERSON.

20 | DATED: January 12, 2018            ERVIN COHEN & JESSUP LLP
  | Robert M. Waxman

21 | David N. Tarlow

22 | Jason L. Haas

23 |

24 |

25 | By: _Jason J. Haas_

  | Jason L. Haas

26 | Attorneys for Plaintiff VIZIO, INC., a
  | California corporation

27 |

28 |

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

On January 12, 2018, I served true copies of the following document(s) described as **PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LeECO V. LTD. (SET ONE)** on the interested parties in this action as follows:

Jeff K. Joyner, Esq.
Daniel Tyukody, Esq.
Robert H. Gruber, Esq.
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
joynerj@gtlaw.com
tyukodyd@gtlaw.com
gruberr@gtlaw.com

*Attorneys for Defendant*
*LeECO V. LTD.*

Chaoying Deng
7 Marguerite Dr.
Rancho Palos Verdes, CA 90275

*Agent for Service of Process for*
*Defendant LeLe Holding, Ltd.*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Ervin Cohen & Jessup LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 12, 2018, at Beverly Hills, California.



Joe Dirkx

14676.8:3438883.2

8:17-CV-01175-DOC-JDE

EXHIBIT B

Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
  jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation, | Case No. 8:17-CV-01175-DOC-JDE |
| Plaintiff, | **PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LELE HOLDING, LTD. (SET ONE)** |
| v. | |
| LeECO V. LTD., et al, | Judge:  Hon. David O. Carter |
| Defendants. | |

14676.8:8956549.1

8:17-CV-01175-DOC-JDE

REQUEST FOR PRODUCTION OF DOCUMENTS

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

| | |
|---|---|
| PROPOUNDING PARTY: | Plaintiff Vizio, Inc. |
| RESPONDING PARTY: | Defendant Lele Holding, Ltd. |
| SET NO.: | ONE (1) |

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Vizio, Inc. propounds the following Request for Production of Documents, Set One to Defendant, Lele Holding Ltd. ("Responding Party" or "LELE"), to be responded to fully, verified in writing under oath, within thirty (30) days of service of these requests as provided for by Federal Rule of Civil Procedure 34(b)(2)(A).  All objections, responses and responsive documents shall be served on Ervin Cohen & Jessup LLP, 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, California 90212.

These Requests are governed by the Definitions and Instructions set forth herein.

## DEFINITIONS

As used herein, and only for the purposes of these discovery requests, the following terms have the following meanings:

1.     As used herein, the terms "YOU" or "YOUR" shall mean LELE, and to all agents and representatives of LELE, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

2.     The word "COMPLAINT" shall mean and refer to the First Amended Complaint filed by Vizio, Inc. in the above-captioned action on November 6, 2017.

3.     "VIZIO" shall mean and refer to Plaintiff Vizio, Inc., a California corporation, and to all agents and representatives of VIZIO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its direction or request.

4.     "LeECO" shall mean Defendant LeEco V. Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands, and to all agents and representatives of LeECO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

5.     "GLOBAL" shall mean Defendant LeEco Global Group Ltd., a

1 corporation organized and existing under the laws of the People's Republic of
2 China, and to all agents and representatives of GLOBAL, and to all PERSONS
3 acting or purporting to act on its behalf or pursuant to its request.

4      6.    "LELE" shall mean Defendant Lele Holding Ltd., a personal holding
5 company organized and existing under the laws of the British Virgin Islands, and to
6 all agents and representatives of LELE, and to all PERSONS acting or purporting to
7 act on its behalf or pursuant to its request.

8      7.    "JIA" shall mean Defendant Yueting Jia, an individual who resides in
9 China and is the owner of GLOBAL through LELE, and to all agents and
10 representatives of JIA, and to all PERSONS acting or purporting to act on his behalf
11 or pursuant to his request.

12      8.    "MERGER SUB" shall mean Le V Merger Sub Inc., a California
13 corporation and indirect wholly-owned subsidiary of LeECO, and to all agents and
14 representatives of MERGER SUB, and to all PERSONS acting or purporting to act
15 on its behalf or pursuant to its request.

16      9.    "LTI" shall mean Le Technology, Inc., a California corporation and
17 subsidiary of GLOBAL, and to all agents and representatives of LTI, and to all
18 PERSONS acting or purporting to act on its behalf or pursuant to its request.

19      10.    "LREG" shall mean LeEco Real Estate Group LLC, a Delaware limited
20 liability company, and to all agents and representatives of LeEco Real Estate Group
21 LLC, and to all PERSONS acting or purporting to act on its behalf or pursuant to its
22 request.

23      11.    "MERGER AGREEMENT" shall mean and refer to that certain
24 Agreement and Plan of Merger, made as of July 6, 2016, by and among VIZIO,
25 LeECO, MERGER SUB, and Shareholder Representative Services LLC, a Colorado
26 limited liability company.

27      12.    "MERGER" shall mean and refer to that transaction among VIZIO,
28 LeECO, and MERGER SUB agreed to in the MERGER AGREEMENT and to any

ERVIN COHEN & JESSUP LLP

1  and all potential transactions discussed between VIZIO and LeECO prior to entry of

2  the MERGER AGREEMENT, whether the potential transaction took the form of a

3  merger, acquisition, purchase of assets or other structure.

4      13.   "GUARANTY" shall mean and refer to that certain Limited Guarantee

5  made as of July 6, 2016, by LTI in favor of VIZIO.

6      14.   "FRAMEWORK AGREEMENT" shall mean and refer to that certain

7  Framework, Termination and Mutual General Release Agreement entered into as of

8  April 5, 2017 by and among VIZIO, LeECO, and MERGER SUB.

9      15.   "ESCROW AGREEMENT" shall mean and refer to that certain

10  Escrow Agreement, made as of July 6, 2016, by and among VIZIO, LeECO,

11  MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited

12  liability company, with Citibank, National Association.

13      16.   "ESCROW" shall mean and refer to the escrow created by the

14  ESCROW AGREEMENT in connection with the MERGER AGREEMENT.

15      17.   "CHINA" shall mean and refer to the People's Republic of China.

16      18.   As used herein, the term "COMMUNICATION" or

17  "COMMUNICATIONS" means the transmittal of information (in the form of facts,

18  ideas, inquiries, or otherwise) by any means, including but not limited to, any

19  meeting, conversation, discussion, conference, correspondence, message, or other

20  written or oral transmission, exchange, or transfer of information in any form

21  between two or more PERSONS, including in person or by telephone, facsimile,

22  telegraph, telex, e-mail or other tangible or electronic medium.

23      19.   As used herein, the terms "DOCUMENT" and "DOCUMENTS" shall

24  mean writings of every kind, source, and authorship, both originals and copies

25  thereof, in YOUR custody or control, or known by YOU to exist, irrespective of

26  whether the writing is one intended for or transmitted internally by YOU or intended

27  for or transmitted to any other person or entity, INCLUDING any government

28  agency, department, administrative entity, or other person or entity, the contents of

ERVIN COHEN & JESSUP LLP

14676.8:8956549.1                              3                     8:17-CV-01175-DOC-JDE

1  which in any way RELATE, discuss, consider, or otherwise refer to the subject

2  matter of the particular discovery requested.  "DOCUMENT" and "DOCUMENTS"

3  shall include the following:  (1) all matter that is written, handwritten, typewritten,

4  printed, graphic, photocopied, photographic, or recorded, including sound

5  recordings or reproductions, however produced, reproduced or prepared, including,

6  but not limited to, notes, telegrams, notebooks, brochures, charts, photographs,

7  agreements, proposals, minutes, communications in words or symbols, interoffice

8  communications, studies, technical data, brochures, bulletins, reviews, compilations,

9  films, audio recordings, audio cassettes, videotapes, calendars, appointment books,

10  diaries, and work papers of any kind; (2) all machine or computer readable data

11  compilations or electronic or mechanical devices which contain information,

12  including, but not limited to, computer server(s), texts, tapes, diskettes, cards, hard

13  disks, optical disks, cassettes, and all other information storage or retrieval systems,

14  together with the codes, passwords and/or programming instructions and other

15  materials necessary to understand and use such systems; (3) all electronic mail,

16  instant mail, and social media accounts belonging to YOU; (4) all originals, drafts,

17  and copies that differ in any respect from the original, all marginal comments that

18  appear on such DOCUMENTS, and all transcripts or recordings of such

19  DOCUMENTS; (5) all attachments, enclosures or DOCUMENTS affixed or

20  referred to in such DOCUMENTS; and (6) all material within the scope of Rule

21  1001 of the Federal Rules of Evidence and California Evidence Code Sections 250,

22  255 and 260.

23      20.    The terms "ANY," "ALL," "EACH," and "EVERY" should be

24  understood in their most inclusive sense as necessary to bring within the scope of

25  the discovery request all responses that might otherwise be construed to be outside

26  of their scope.

27      21.    As used herein, the term "INCLUDING" shall mean including, but not

28  limited to, and shall not be interpreted to exclude any information otherwise within

ERVIN COHEN & JESSUP LLP

1    the scope of these Requests.

2        22.    As used herein, the term "PERSON" shall mean, without limitation, a

3    natural person, corporation, limited liability company, partnership, trust, association,

4    joint venture, firm, tenancy-in-common or other business enterprise, governmental

5    or legal entity and includes both the singular and plural as well as all representatives

6    of such PERSON or PERSON(S).

7        23.    The words "RELATING," "RELATE," "RELATE TO," "RELATING

8    TO," and "REFERRING" as used herein shall mean all matters or things that in any

9    way discuss, are connected to, arise from, consist of, reflect, summarize, evaluate, or

10   comment on the subject or object of the particular Request, or that have any logical

11   or factual connection to the matter discussed, and they shall include the common

12   meanings of all those terms, and shall include indirect as well as direct references to

13   the subject matter set forth in the Requests.

14       24. The term "AFFILIATE" shall mean a subsidiary corporation, sister

15   corporation, subsidiary limited liability company, sister limited liability company, or

16   ANY other form of business entity where: (1) at least 20% or more of the stock or

17   membership interests of that entity are held, owned, or controlled, either directly or

18   indirectly, by the PERSON identified in the request; (2) the entity holds, owns or

19   controls, either directly or indirectly, at least 20% or more of the stock or

20   membership interests of the PERSON identified in the request; or (3) at least 20% or

21   more of the stock or membership interests in both the entity and the PERSON

22   identified in the request are held, owned, or controlled, either directly or indirectly,

23   by the same PERSON.

24       **INSTRUCTIONS**

25       1.    The time period covered by each of the within Requests shall be from

26   July 1, 2015 to the date of the service of your response to these Requests, except as

27   to those Requests that specifically state any other time period.

28       2.    To the extent that documents responsive to these requests contain text

ERVIN COHEN & JESSUP LLP

1  in the Chinese language (or any language other than English), YOU should produce

2  both the original document and any documents in YOUR possession, custody or

3  control that contain an English translation, in whole or in part, of the Chinese text in

4  the original document.

5        3.    As used herein, the terms "and" and "or" shall be interpreted

6  conjunctively or disjunctively, as necessary, to bring within the scope of these

7  Requests all DOCUMENTS that might otherwise be construed to be outside of the

8  scope of these requests.

9        4.    These Requests include DOCUMENTS within the custody, possession

10  and control of YOU and YOUR agents or AFFILIATES, INCLUDING YOUR

11  agent(s), representative(s), attorney(s), accountant(s), tax advisor(s) and investment

12  advisor(s), and any phone companies or banks YOU use.  If a DOCUMENT is

13  responsive to a request for production and is in YOUR control but is not in YOUR

14  possession or custody, identify the PERSON or entity with possession or custody.

15        5.    If a requested DOCUMENT is withheld or objected to based on a claim

16  of privilege or for other reasons, please serve the undersigned a privilege log, and

17  state with respect to each such withheld DOCUMENT:

18        (a)    The nature or basis of the claim of privilege or other ground for

19  nonproduction;

20        (b)    The names and addresses of all parties to the COMMUNICATION

21  (INCLUDING ALL parties who have been copied on the COMMUNICATION);

22        (c)    The date, subject matter, and number of pages of the DOCUMENT;

23  and

24        (d)    The current custodian and present location of the DOCUMENT.

25        6.    A representation of inability to comply with a particular request shall

26  state the specific reason for the inability to comply, INCLUDING whether the

27  particular DOCUMENT or other tangible thing has never existed, has been

28  destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in

ERVIN COHEN & JESSUP LLP

1  YOUR possession, custody, or control and/or the possession, custody or control of
2  any of YOUR AFFILIATES.  The statement shall set forth the name and address of
3  any PERSON known or believed by that party to have possession, custody, or
4  control of that item or category of item.

5      7.    If only a part of a request is objectionable, the response shall identify
6  with particularity any DOCUMENT or other tangible thing falling within any
7  category of item in the request to which an objection is being made, and shall set
8  forth clearly the extent of and the specific ground for the objection.  If there are no
9  DOCUMENTS responsive to any particular request or category, please so state in
10 writing, providing a representation of inability to comply with respect to the
11 remainder of that item or category.

12     8.    All paper DOCUMENTS are to be produced as they are kept in the
13 usual course of business with any identifying labels, file markings or similar
14 identifying features, and shall be organized and labeled to correspond to the
15 appropriate request herein.  If a portion of a DOCUMENT is responsive, the entire
16 DOCUMENT is to be produced.

17     With respect to electronic DOCUMENTS, all spreadsheets, presentation and
18 design files (e.g. Excel, PowerPoint) are to be produced in electronic form in native
19 format, as kept in the ordinary course of business.  All other electronically stored
20 information ("ESI") and imaged hard copy shall be produced in the format outlined
21 below.  All ESI shall be rendered to TIFF image format, and accompanied by a
22 Concordance Image Cross Reference file.  All applicable metadata/database fields
23 shall be extracted and provided in Concordance load file format:

24     (a)    Image File Format:  All images, paper documents scanned to images, or
25 rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV
26 (2D Compression).  Documents should be uniquely and sequentially Bates
27 numbered with an endorsement burned into each image.  All TIFF file names shall
28 include the unique Bates number burned into the image.  Each Bates number shall

ERVIN COHEN & JESSUP LLP

1    be a standard length, include leading zeros in the number, and be unique for each

2    produced page.  All TIFF image files shall be stored with the ".tif" extension.

3    Images shall be OCR'd using a standard COTS products.  All pages of a document

4    or all pages of a collection of documents that comprise a folder or other logical

5    grouping, including a box, shall be delivered on a single piece of media.  No image

6    folder shall contain more than 2000 images.

7         (b)    Concordance Image Cross Reference File:  Images should be

8    accompanied by a Concordance Image Cross Reference file that associates each

9    Bates number with its corresponding single-page TIFF image file.  The Cross

10   Reference file should also contain the image file path for each Bates numbered page.

11        (c)    Concordance Load File:  Images should also be accompanied by a "text

12   load file" containing delimited text that will populate fields in a searchable, flat

13   database environment.

14        9.     If any DOCUMENT called for within a request has been destroyed or

15   discarded, identify the DOCUMENT and describe the date, manner of and reason

16   for its destruction.

17        10.    Each Request shall be construed independently, and no Request shall

18   be viewed as limiting the scope of any other Document Request.

19        11.    Each non-identical copy of a DOCUMENT, whether different from the

20   original because of handwritten notes, marks, attachments, or any other reason, is a

21   separate DOCUMENT that must be produced.

22        12.    The use of the singular form of any word includes the plural, and the

23   use of the plural form of any word includes the singular.

24                          **REQUESTS FOR PRODUCTION**

25   **REQUEST FOR PRODUCTION NO. 1:**

26        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

27   the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the

28   negotiations that resulted in the MERGER AGREEMENT.

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 2:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the GUARANTY.

**REQUEST FOR PRODUCTION NO. 3:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the negotiations that resulted in the FRAMEWORK AGREEMENT.

**REQUEST FOR PRODUCTION NO. 4:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations that resulted in the ESCROW AGREEMENT.

**REQUEST FOR PRODUCTION NO. 5:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of management meetings, emails, marketing plans, operational plans, financial analyses, and strategy documents.

**REQUEST FOR PRODUCTION NO. 6:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER.

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS and COMMUNICATIONS posted by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or the MERGER.

**REQUEST FOR PRODUCTION NO. 8:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW.

REQUEST FOR PRODUCTION OF DOCUMENTS .

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 9:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

**REQUEST FOR PRODUCTION NO. 10:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES expected to receive from the public announcement of the MERGER AGREEMENT or that any of those PERSONS actually received following that announcement.

**REQUEST FOR PRODUCTION NO. 11:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the response of U.S. and Chinese markets or press to the proposed MERGER, INCLUDING all articles, reports and other documents issued by stock markets, bond markets, financial press, newspapers, and financial analysts.

**REQUEST FOR PRODUCTION NO. 12:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to implement, meet the conditions for, or complete the MERGER with VIZIO.

**REQUEST FOR PRODUCTION NO. 13:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

**REQUEST FOR PRODUCTION NO. 14:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU received from any PERSON, including AFFILIATES, third party businesses, and governmental entities, regarding the proposed MERGER.

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 15:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—whether located in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 16:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued, made or published by any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 17:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such

1  investments.

2  **REQUEST FOR PRODUCTION NO. 18:**

3      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

4  the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed

5  to complete the proposed MERGER with VIZIO.

6  **REQUEST FOR PRODUCTION NO. 19:**

7      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

8  efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER

9  SUB to complete the proposed MERGER with VIZIO INCLUDING

10  DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International

11  Capital; the Bank of China; Bank of China Limited Macau Branch; China

12  Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;

13  Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet

14  Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment

15  Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.

16  Ltd. or any of their AFFILIATES.

17  **REQUEST FOR PRODUCTION NO. 20:**

18      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

19  the terms on which the financing needed by LeECO and MERGER SUB to

20  complete the proposed MERGER with VIZIO could be obtained, INCLUDING

21  DOCUMENTS OR COMMUNICATIONS to or from: Hollyhigh International

22  Capital; the Bank of China; Bank of China Limited Macau Branch; China

23  Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;

24  Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet

25  Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment

26  Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.

27  Ltd. or any of their AFFILIATES.

28

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 21:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, regarding efforts to implement, meet the conditions for, or complete the MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete the MERGER.

**REQUEST FOR PRODUCTION NO. 22:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 23:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 24:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the actual assets and financing available to LeECO and MERGER SUB on or about April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

**REQUEST FOR PRODUCTION NO. 25:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 26:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the source of monies deposited in ESCROW to serve as the "Buyer Termination Fee Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT

1 and used in Section 9.2 of the MERGER AGREEMENT.

2 **REQUEST FOR PRODUCTION NO. 27:**

3 ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

4 the termination of the MERGER AGREEMENT.

5 **REQUEST FOR PRODUCTION NO. 28:**

6 ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

7 reasons why the MERGER was not, or could not, be completed.

8 **REQUEST FOR PRODUCTION NO. 29:**

9 ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a

10 potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE,

11 JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO

12 products in CHINA, INCLUDING emails, marketing plans, operational plans,

13 financial analyses, and strategy documents.

14 **REQUEST FOR PRODUCTION NO. 30:**

15 ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

16 negotiations or discussions between VIZIO and LeECO to "negotiate in good faith

17 and execute one or more agreements" regarding a joint venture in CHINA as

18 required by Section 4 of the FRAMEWORK AGREEMENT.

19 **REQUEST FOR PRODUCTION NO. 31:**

20 DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual

21 relationships, and the terms of those relationships, between LeECO, GLOBAL,

22 LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other

23 PERSON on the other hand, that would have been impacted or affected by a joint

24 venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

25 **REQUEST FOR PRODUCTION NO. 32:**

26 ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

27 efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

28 develop and obtain certification of the "LeEco Le App", as required of LeECO

ERVIN COHEN & JESSUP LLP

1  under Section 2.1.1 of the FRAMEWORK AGREEMENT.

2  **REQUEST FOR PRODUCTION NO. 33:**

3        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

4  efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

5  identify and/or obtain "non-cash assets with a fair market value equal to US

6  $50,000,000 as a capital contribution" to contribute to a proposed joint venture with

7  VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

8  **REQUEST FOR PRODUCTION NO. 34:**

9        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

10  ALL assets owned by LTI or financial resources available to LTI, at any time

11  between July 6, 2016 and the present, that were available to satisfy LTI's

12  representation in Section 5(d) of the GUARANTY that LTI would have "the

13  financial capacity to pay and perform the Obligation" of LeECO to pay the Buyer

14  Termination Fee Remainder if it should become due under the MERGER

15  AGREEMENT and that LTI "shall maintain such financial capacity for so long as

16  this Guarantee shall remain in effect."

17  **REQUEST FOR PRODUCTION NO. 35:**

18        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

19  payments or transfers made by LTI after July 6, 2016, if any, in which the total

20  assets then owned by LTI, or the total financial resources available to LTI, was less

21  than $50,000,000.00 either before and/or after the transaction.

22  **REQUEST FOR PRODUCTION NO. 36:**

23        ANY and ALL articles of incorporation, amended articles of incorporation,

24  bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL,

25  LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1,

26  2012.

27  **REQUEST FOR PRODUCTION NO. 37:**

28        DOCUMENTS sufficient to identify ALL officers, directors, partners,

ERVIN COHEN & JESSUP LLP

14676.8:8956549.1                    15                    8:17-CV-01175-DOC-JDE

1 shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of

2 their AFFILIATES at any time after January 1, 2012.

3 **REQUEST FOR PRODUCTION NO. 38:**

4    ANY and ALL shares of stock, stock certificates, partnership interests, or

5 membership interests currently held or owned by any PERSONS in LeECO,

6 GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

7 **REQUEST FOR PRODUCTION NO. 39:**

8    ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

9 ANY contract or agreement - - INCLUDING all written amendments and

10 supplements to any such contract or agreement and all written assignments and

11 modifications of any such contract or agreement - - whereby any PERSONS

12 acquired on any date after January 1, 2012, either in their own respective names or

13 under and pursuant to any fictitious business names, any right, title or interest in or

14 to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and

15 each or any of their respective employees, shares of stock, partnership interests,

16 membership interests, assets and/or liabilities, INCLUDING all loan commitments,

17 offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty

18 agreements, stock transfer agreements, membership interest transfer agreements,

19 credit agreements, sales orders, partnership agreements, sales agreements,

20 assignment agreements, hypothecation agreements, deregistration agreements,

21 dissolution agreements, purchase agreements, options agreements, stock

22 agreements, shares of stock, certificates of stock, joint venture agreements, asset

23 sale agreements, debt payment agreements, accommodation agreements, debt

24 protection agreements, asset transfer agreements, indemnity agreements, defense

25 agreements, hold harmless agreements, employee sharing agreements, employee

26 transfer agreements, security agreements, financing agreements, memorandum

27 agreements, letter agreements, loan agreements, insolvency agreements,

28 intercompany transfer agreements, escrow agreements, operating agreements, loan

ERVIN COHEN & JESSUP LLP

commitments, limited liability company agreements, assumption agreements, liquidation agreements, winding up agreements, creditor's agreements, letters of credit, asset distribution or preservation agreements, liability distribution or transfer agreements, membership distribution or transfer agreements, payment records, promissory notes, governmental filings, security instruments, deeds and deeds of trust.

**REQUEST FOR PRODUCTION NO. 40:**

ANY and ALL agendas, corporate minutes, and corporate resolutions for ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL, LELE, LTI, and LREG held on any date after January 1, 2012.

**REQUEST FOR PRODUCTION NO. 41:**

ANY and ALL agendas, minutes, and resolutions for ALL meetings of the shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any date after January 1, 2012.

**REQUEST FOR PRODUCTION NO. 42:**

ANY and ALL voting or operating agreements among shareholders or members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any date after January 1, 2012.

**REQUEST FOR PRODUCTION NO. 43:**

ANY and ALL contracts and agreements between or among LeECO, GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in effect at any point in time after January 1, 2012.

**REQUEST FOR PRODUCTION NO. 44:**

ANY and ALL DOCUMENTS prepared at any time since 2012 and through and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES represented, stated, or otherwise held out that LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE or GLOBAL and/or to be substantially the same as LELE or GLOBAL,

ERVIN COHEN & JESSUP LLP

1   INCLUDING advertising or promotional materials, press releases, WeChat and

2   other social media postings, investment reports, financial documents, and ANY

3   DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or

4   market entity.

5   **REQUEST FOR PRODUCTION NO. 45:**

6       DOCUMENTS sufficient to identify the location of the headquarters and all

7   administrative, manufacturing and distribution facilities for LeECO, GLOBAL,

8   LELE, LTI, LREG and/or any of their AFFILIATES at all times after January 1,

9   2012 and through the present day.

10  **REQUEST FOR PRODUCTION NO. 46:**

11      DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL,

12  LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1,

13  2012 and through the present day. "Identify" in this request means to provide the

14  full name, title, and current (or last known) address and phone number of each

15  employee, the entity with which each individual was employed, the date on which

16  the individual's employment began, and, if the individual is no longer employed, the

17  dates of his or her service with LeECO, GLOBAL, LELE, LTI, LREG or their

18  AFFILIATES.

19  **REQUEST FOR PRODUCTION NO. 47:**

20      DOCUMENTS sufficient to identify ALL employees, managers, consultants,

21  independent contractors, agents, attorneys, accountants, officers and/or directors

22  shared by, used by, loaned to, or otherwise transferred between one or more of

23  LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time

24  after January 1, 2012.

25  **REQUEST FOR PRODUCTION NO. 48:**

26      ANY and ALL DOCUMENTS RELATING TO monies transferred by,

27  between or among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

28  AFFILIATES since January 1, 2012, and through and including the present date,

ERVIN COHEN & JESSUP LLP

1 INCLUDING intercorporate transfers, hypothecations, loans, gifts, dividends,

2 earnings and profits.

3 **REQUEST FOR PRODUCTION NO. 49:**

4     ANY and ALL DOCUMENTS RELATING TO contracts or agreements with

5 third parties, loans, other obligations or instruments of debt that were paid, co-

6 signed or guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

7 AFFILIATES for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since

8 January 1, 2012, and through and including the present date.

9 **REQUEST FOR PRODUCTION NO. 50:**

10     ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

11 GLOBAL, LELE, LTI, and LREG at or about (a) the date of its incorporation or

12 formation, and (b) from and after January 1, 2012 and including the present date.

13 **REQUEST FOR PRODUCTION NO. 51:**

14     ANY and ALL financial statements and analyses for LeECO, GLOBAL,

15 LELE, LTI, and LREG since January 1, 2012, and through and including the present

16 date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance

17 sheets, and 4) ANY financial summaries or reports prepared for a) the use of JIA or

18 other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential

19 investors in, joint venturers with, or lenders to LeECO, GLOBAL, LELE, LTI,

20 LREG and/or any of their AFFILIATES.

21 **REQUEST FOR PRODUCTION NO. 52:**

22     ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits

23 of LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through

24 and including the present date.

25 **REQUEST FOR PRODUCTION NO. 53:**

26     DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible

27 and intangible assets of any kind with a value in excess of $100,000 in which

28 LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES

ERVIN COHEN & JESSUP LLP

1 possessed an ownership interest at any point after July 1, 2016. "Identify" in this

2 request means to provide the description and location for each tangible and

3 intangible asset, the nature and size of the interest in that asset (e.g. a 50% equity

4 interest, a joint owner in common), and the last known market value of the asset.

5 **REQUEST FOR PRODUCTION NO. 54:**

6      DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or

7 liabilities of any kind with a value in excess of $100,000 owed by LeECO,

8 GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point

9 after July 1, 2016. "Identify" in this request means to provide the type of liability,

10 the amount currently owed, the PERSON to whom the liability is owed and that

11 PERSON's address and telephone number.

12 **REQUEST FOR PRODUCTION NO. 55:**

13      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

14 plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

15 AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible

16 assets of any kind that it possessed after July 1, 2016.

17 **REQUEST FOR PRODUCTION NO. 56:**

18      The Master Agreement executed in or after December 2016 among LREG,

19 the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS

20 RELATING TO property owned by LREG in Santa Clara, California and ANY and

21 ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master

22 Agreement or to ANY transaction that occurred pursuant to the terms of the Master

23 Agreement.

24 **REQUEST FOR PRODUCTION NO. 57:**

25      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

26 ANY transfers of equity interests in LREG to the Genzon Group or to ANY

27 PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016,

28 INCLUDING agreements, emails, records of all payments made, and stock

ERVIN COHEN & JESSUP LLP

1  certificates or other documents reflecting the transfer of any interest.

2  **REQUEST FOR PRODUCTION NO. 58:**

3         DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial

4  accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

5  AFFILIATES was listed as an owner of the account at any point in 2017.

6  **REQUEST FOR PRODUCTION NO. 59:**

7         The letter or memo by JIA issued in or about November 2016 RELATING

8  TO financing issues being experienced by the global LeEco businesses and

9  announcing that JIA would reduce his own income to one yuan.  This letter was

10  referenced in an article by Bloomberg News, which article can be found at

11  https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-

12  confesses-to-cash-crunch-at-leeco.

13  **REQUEST FOR PRODUCTION NO. 60:**

14         ANY and ALL orders issued after January 1, 2016 by ANY court,

15  governmental entity, or administrative body that has the effect of seizing, or

16  restricting the disposition of, ANY assets owned by LeECO, GLOBAL, LELE, JIA,

17  LTI, LREG, and/or any of their AFFILIATES.

18  **REQUEST FOR PRODUCTION NO. 61:**

19         DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal

20  actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any

21  of their AFFILIATES filed or pending in the United States at any point after January

22  1, 2016. "Identify" in this request means to identify the court or administrative body

23  in which the action is pending, the name of the action, and the case number(s) of

24  that action or actions.

25  **REQUEST FOR PRODUCTION NO. 62:**

26         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

27  ANY actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or

28  any of their AFFILIATES to make payments that were or are due and owing at any

ERVIN COHEN & JESSUP LLP

14676.8:8956549.1                       21                       8:17-CV-01175-DOC-JDE
REQUEST FOR PRODUCTION OF DOCUMENTS

1 | point after January 1, 2016.

2 | **REQUEST FOR PRODUCTION NO. 63:**

3 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

4 | Yueting Jia's resignation in July 2017 as Chairman of ANY of the global LeEco

5 | businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi

6 | Holding Co., Ltd. (Beijing) and/or any of their AFFILIATES.

7 | **REQUEST FOR PRODUCTION NO. 64:**

8 | ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

9 | the sale, transfer, dissolution, winding up, or liquidation of LELE, GLOBAL,

10 | LeECO, LTI, LREG or ANY of their AFFILIATES.

11 | **REQUEST FOR PRODUCTION NO. 65:**

12 | ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

13 | plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or

14 | ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make

15 | arrangements or accommodations for or with their creditors; (b) assign, assume,

16 | distribute or transfer any stock, membership interests, actual assets, actual liabilities,

17 | contractual obligations, contingent liabilities, contingent assets, or employees of

18 | LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or (c) to indemnify,

19 | hold harmless or defend the obligations of any PERSON.

20 | DATED: January 12, 2018

ERVIN COHEN & JESSUP LLP
Robert M. Waxman
David N. Tarlow
Jason L. Haas

By: _Jason L Haas_
Jason L. Haas
Attorneys for Plaintiff VIZIO, INC., a
California corporation

ERVIN COHEN & JESSUP LLP

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

On January 12, 2018, I served true copies of the following document(s) described as **PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LELE HOLDING, LTD. (SET ONE)** on the interested parties in this action as follows:

Jeff K. Joyner, Esq.
Daniel Tyukody, Esq.
Robert H. Gruber, Esq.
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
joynerj@gtlaw.com
tyukodyd@gtlaw.com
gruberr@gtlaw.com

*Attorneys for Defendant*
*LeECO V. LTD.*

Chaoying Deng
7 Marguerite Dr.
Rancho Palos Verdes, CA  90275

*Agent for Service of Process for*
*Defendant LeLe Holding, Ltd.*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Ervin Cohen & Jessup LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 12, 2018, at Beverly Hills, California.



Joe Dirkx

14676.8:8956549.1

8:17-CV-01175-DOC-JDE

REQUEST FOR PRODUCTION OF DOCUMENTS

ERVIN COHEN & JESSUP LLP

EXHIBIT C

1  Jeff K. Joyner (SBN CA 180485)
2  joynerj@gtlaw.com
   Daniel Tyukody (SBN CA 123323)
3  tyukodyd@gtlaw.com
   Robert H. Gruber (SBN CA 301620)
4  gruberr@gtlaw.com
5  GREENBERG TRAURIG, LLP
   1840 Century Park East, Suite 1900
6  Los Angeles, California 90067-2121
7  Telephone: 310.586.7700
   Facsimile: 310.586.7800
8
9  Attorneys for Defendant
10 LeECO V. LTD.

11              **UNITED STATES DISTRICT COURT**

12         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| VIZIO, INC., a California corporation, | CASE NO.  8:17-CV-01175-DOC-JDE |
| Plaintiff, | |
| v. | **DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)** |
| LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL HOLDING LT., a/k/a LE GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; and DOES 1 through 10, , | |
| Defendants. | JUDGE:  Hon. David O. Carter |
| LeECO V. LTD. | |
| Counter-Claimant, | |
| vs. | |
| VIZIO, a California corporation, | |
| Counter-Defendant. | |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

1

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1  **PROPOUNDING PARTY:**   **Plaintiff Vizio, Inc.**

2  **RESPONDING PARTY:**   **Defendant LeEco V. ltd.**

3  **SET NO.:**   **ONE (1)**

4

5                 **PRELIMINARY STATEMENT**

6      Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant and

7  Counter-Claimant, LeEco V. Ltd. ("LeEco") provides its Objections and Responses to

8  Plaintiff and Counter-Defendant Vizio Inc.'s ("Vizio") First Set of Request for Production

9  of Documents ("Requests"), as follows.

10      The vast majority of Vizio's Requests are "premature" because (i) they pertain to

11  issues that would be rendered irrelevant were the Court to grant LeEco's pending Motion

12  to Dismiss ("MTD") Vizio's second through sixth causes of action in the First Amended

13  Complaint ("FAC") or because (ii) they seek vastly overbroad and disproportionate

14  discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated"

15  with LeEco.  LeEco's pending MTD would eliminate Vizio's second through sixth causes

16  of action for breach of the Merger Agreement including its various theories of fraud

17  related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the

18  Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio

19  acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger

20  Agreement, including the negotiation or entry into the Merger Agreement, any breach of

21  the Merger Agreement, or the termination of the Merger Agreement has any relevance,

22  and discovery should be limited to whether there was a breach of the Framework

23  Agreement.

24      In addition to being premature, the Requests directed at Unrelated Third Parties are

25  calculated merely to harass and are overbroad, irrelevant, and not proportional to the

26  needs of the case.  If the case is limited to a breach of the Framework Agreement, the

27  dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

28

million and another $10 million in escrow that is disputed. The remaining disputed obligation concerns LeEco's obligation, if any, and to negotiate a proposed joint venture in China ("China JV") to contribute non-cash assets in China in connection with the proposed China JV.

LeEco has not completed investigation of the facts relating to this case, has not completed discovery, and has not completed preparation for trial. Therefore, these responses are based only on the information and documents presently available to and specifically known to LeEco. Further discovery, independent investigation, legal research and analysis may lead to the discovery of additional non-privileged responsive information which may lead to additions to, changes in, and variations from the information, responses and/or objections set forth below.

These responses are given without prejudice to LeEco's right to produce evidence of any subsequently discovered facts, including the right to supplement these responses if it obtains further evidence.

LeEco reserves the right to produce at trial and make reference to any evidence, facts, documents or information not discovered at this time, omitted through good faith error, mistake or oversight, or the relevance of which has not presently been identified by LeEco. LeEco further reserves the right to further modify these responses as a result of subsequently discovered information.

## GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION
## OF DOCUMENTS

1.    LeEco objects to the Requests to the extent that they purport to impose obligations on LeEco beyond those required under the Federal Rules of Civil Procedure.

2.    LeEco objects to each of the Requests to the extent that they are overbroad, irrelevant, and not proportional to the needs of the case, particularly to the extent they purport to require the production of "all" documents or "all" communications on a given

1   subject.

2       3.    LeEco objects to each and every Request to the extent that it seeks

3   information that is protected from discovery or disclosure by the work product doctrine or

4   the attorney-client privilege or any other constitutional, statutory, or judicially recognized

5   privilege, immunity, right of confidentiality or other protection from discovery or

6   disclosure. LeEco further objects to producing any such documents created after this

7   lawsuit was filed that merely "Relate To" the subject matter of the Request as those

8   documents would clearly be protected by the attorney client privilege and attorney work

9   product doctrine. LeEco further objects to logging all privileged and work product

10   documents created after this lawsuit was filed as unduly burdensome and disproportionate

11   to the needs of the case.

12       4.    LeEco objects to the Request to the extent that it is unduly burdensome or

13   seeks information or documents that are already in the possession, custody, or control of

14   Vizio or more readily obtainable from other entities, including third-parties and public

15   sources, and are equally accessible to Vizio as to LeEco.

16       5.    LeEco objects that the definition of "LeEco," "you," and "your" is overbroad

17   in that it incorporates the overbroad definition of all "Persons." In responding to these

18   Requests, LeEco will interpret "LeEco, "you," or "your" as referring to LeEco V. Ltd. and

19   anyone authorized to act on its behalf.

20       6.    LeEco objects that the definition of "Affiliates" is overbroad, vague and

21   ambiguous and seeks documents which are not in LeEco's possession, custody or control.

22       7.    LeEco objects to the definitions of "Documents" and "ESI," to the extent

23   they require searching or production of metadata and to the extent they purport to require

24   production in a specified format. Any responses to these Requests will be based on a

25   mutually agreeable ESI protocol. Regardless, LeEco objects, at this time, to always

26   producing documents in native format and/or always searching or producing metadata.

27   Those requirements may be appropriate for certain requests, but would be unduly

28

1  burdensome and disproportionate to the needs of the case for other requests.

2       8.    LeEco objects to each and every Request to the extent that it seeks LeEco's

3  confidential or proprietary information, or the confidential information of third-parties,

4  including confidential or personal information about LeEco's customers and confidential

5  information about LeEco's operations, sales and financial status.

6       9.    LeEco objects to each of the Requests to the extent that the burden or

7  expense of responding to such Requests outweighs the benefit of such discovery, and is

8  disproportional to the needs of the case considering the issues at stake at this stage of the

9  proceedings.

10      10.   LeEco objects to each of the Requests to the extent they are unreasonably

11  cumulative or duplicative, or that the information requested therein is obtainable from

12  some other source that is more convenient, less burdensome, or less expensive.

13      11.   LeEco objects to each of the Requests to the extent they call for the

14  dissemination of documents or information containing "state secrets," as the term is

15  defined under the People's Republic of China ("PRC") Law on Guarding State Secrets

16  (the "State Secrets Law").

17      12.   The Responses provided herein, and all information provided by LeEco in

18  response to Plaintiff's Requests, are based on information known at this time, and are

19  made without prejudice to LeEco's right to amend or supplement these responses, as

20  necessary.

21  ## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION

22  ## OF DOCUMENTS

23  **REQUEST FOR PRODUCTION NO. 1:**

24      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

25  MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the negotiations

26  that resulted in the MERGER AGREEMENT.

27

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

LeEco restates and incorporates by reference the Preliminary Statement and
General Objections set forth above.  LeEco further objects to this Request as premature
and improper because Vizio's second through sixth causes of action in the FAC are
subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to
Dismiss, then the information and documents sought by this Request are not relevant,
making the Request disproportionate to the needs of the case.  LeEco contends that, at this
stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a
release of all claims for breach of the Merger Agreement (including its various theories of
fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt
of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the
negotiations regarding the Merger Agreement, including the negotiation or entry into the
Merger Agreement, any breach of the Merger Agreement, or the termination of the
Merger Agreement has any relevance.  LeEco reserves all rights, including the right to
amend and supplement its Response to this Request, should it become necessary and
appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in
its request for "Any and All Documents or Communications that Relate To the Merger
Agreement, drafts of the Merger Agreement, or the negotiations that resulted in the
Merger Agreement."

LeEco further objects that, as phrased, this Request appears to seek documents that
are equally available to Vizio.  LeEco objects to searching for and producing documents
equally available to Vizio.

LeEco further objects that this Request appears to seek documents and
communications protected by the attorney-client privilege and work product doctrine.
LeEco objects to producing any privileged communications.  LeEco further objects to
producing any such documents created after this lawsuit was filed that merely "Relate To"

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1  the Merger Agreement, *et. al.*, as those documents would clearly be protected by the

2  attorney client privilege and attorney work product doctrine.  LeEco further objects to

3  logging all privileged and work product documents created after this lawsuit was filed as

4  unduly burdensome and disproportionate to the needs of the case.  LeEco further objects

5  to producing any such documents created before or during the negotiation and drafting of

6  the Merger Agreement that are protected by the attorney client privilege and attorney

7  work product doctrine.

8  **REQUEST FOR PRODUCTION NO. 2:**

9      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

10  GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the

11  GUARANTY.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

13      LeEco restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.  LeEco further objects to this Request as premature

15  and improper because Vizio's second through sixth causes of action in the FAC are

16  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

17  Dismiss, then the information and documents sought by this Request are not relevant,

18  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

19  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

20  release of all claims for breach of the Merger Agreement (including its various theories of

21  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

22  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

23  negotiations regarding the Merger Agreement, including the negotiation or entry into the

24  Merger Agreement, any breach of the Merger Agreement, or the termination of the

25  Merger Agreement has any relevance.  The Guaranty only applied to the Buyer

26  Termination Fee Remainder which was eliminated following the Parties' agreement they

27  were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

28

1  the mutual walk-away without there being any Buyer Termination Fee Penalty (including

2  but not limited to the Buyer Termination Fee Remainder).

3       LeEco further objects that this Request is compound and overbroad, particularly in

4  its request for "Any and All Documents or Communications that "Relate To the Guaranty,

5  drafts of the Guaranty, or the negotiations that resulted in the Guaranty."

6       LeEco further objects that, as phrased, this Request appears to seek documents that

7  are equally available to Vizio.  LeEco objects to searching for and producing documents

8  equally available to Vizio.

9       LeEco further objects that this Request appears to seek documents and

10  communications protected by the attorney-client privilege and work product doctrine.

11  LeEco objects to producing any privileged communications.  LeEco further objects to

12  producing any such documents created after this lawsuit was filed that merely "Relate To"

13  the Guaranty, *et al.*, as those documents would clearly be protected by the attorney client

14  privilege and attorney work product doctrine.  LeEco further objects to logging all

15  privileged and work product documents created after this lawsuit was filed as unduly

16  burdensome and disproportionate to the needs of the case.  LeEco further objects to

17  producing any such documents created before or during the negotiation and drafting of the

18  Merger Agreement (including the Guaranty) that are protected by the attorney client

19  privilege and attorney work product doctrine.

20  **REQUEST FOR PRODUCTION NO. 3:**

21       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

22  FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the

23  negotiations that resulted in the FRAMEWORK AGREEMENT.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

25       LeEco restates and incorporates by reference the Preliminary Statement and

26  General Objections set forth above.  LeEco further objects that this Request is compound

27  and overbroad, particularly in its request for "Any and All Documents or Communications

28

LA 133487811v11

1  that Relate To the Framework Agreement, drafts of the Framework Agreement, or the
2  negotiations that resulted in the Framework Agreement."

3        LeEco further objects that, as phrased, this Request appears to seek documents that
4  are equally available to Vizio.  LeEco objects to searching for and producing documents
5  equally available to Vizio.

6        LeEco further objects that this Request appears to seek documents and
7  communications protected by the attorney-client privilege and work product doctrine.
8  LeEco objects to producing any privileged communications.  LeEco further objects to
9  producing any such documents created after this lawsuit was filed that merely "Relate To"
10 the Framework Agreement, *et. al.*, as those documents would clearly be protected by the
11 attorney client privilege and attorney work product doctrine.  LeEco further objects to
12 logging all privileged and work product documents created after this lawsuit was filed as
13 unduly burdensome and disproportionate to the needs of the case.  LeEco further objects
14 to producing any such documents created before or during the negotiation and drafting of
15 the Framework Agreement that are protected by the attorney client privilege and attorney
16 work product doctrine.  LeEco therefore interprets this Request as seeking non-privileged
17 documents and communications relating to the Framework Agreement created before the
18 filing of this lawsuit.

19       Subject to and without waiving any of its objections, LeEco responds as follows:
20 LeEco will conduct a reasonable search of documents within its possession, custody or
21 control created prior to this lawsuit's filing date that relate to non-privileged documents
22 and communications relating to the Framework Agreement.  LeEco will produce
23 nonprivileged documents identified during the search on a rolling basis, starting on April
24 25, 2018.  LeEco expects to complete its rolling production on or before approximately
25 July 25, 2018.

26 **REQUEST FOR PRODUCTION NO. 4:**

27       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

28

1   ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations

2   that resulted in the ESCROW AGREEMENT.

3   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

4       LeEco restates and incorporates by reference the Preliminary Statement and

5   General Objections set forth above. LeEco further objects to this Request as premature

6   and improper because Vizio's second through sixth causes of action in the FAC are

7   subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to

8   Dismiss, then the information and documents sought by this Request are not relevant,

9   making the Request disproportionate to the needs of the case. Specifically, Vizio gave a

10   release of all claims for breach of the Merger Agreement (including its various theories of

11   fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

12   of $40 million, which Vizio acknowledges receiving. Thus, nothing about the

13   negotiations regarding the Merger Agreement, including the negotiation or entry into the

14   Merger Agreement, any breach of the Merger Agreement, or the termination of the

15   Merger Agreement has any relevance. Indeed, there is no dispute relating to the existence

16   of the funds in escrow or that $40 million was paid to Vizio from the escrow account held

17   by Citibank. Furthermore, the terms of the "Escrow Agreement" have no relation to the

18   resolution of the disposition of the remaining $10 million held in the escrow account.

19   LeEco reserves all rights, including the right to amend and supplement its Response to this

20   Request, should it become necessary and appropriate to do so.

21       LeEco further objects that this Request is compound and overbroad, particularly in

22   its request for "Any and All Documents or Communications that Relate To the Escrow

23   Agreement, drafts of the Escrow Agreement, or the negotiations that resulted in the

24   Escrow Agreement."

25       LeEco further objects that, as phrased, this Request appears to seek documents that

26   are equally available to Vizio. LeEco objects to searching for and producing documents

27   equally available to Vizio.

28

1    LeEco further objects that this Request appears to seek documents and
2    communications protected by the attorney-client privilege and work product doctrine.
3    LeEco objects to producing any privileged communications. LeEco further objects to
4    producing any such documents created after this lawsuit was filed that merely "Relate To"
5    the Escrow Agreement, *et.al.*, as those documents would clearly be protected by the
6    attorney client privilege and attorney work product doctrine. LeEco further objects to
7    logging all privileged and work product documents created after this lawsuit was filed as
8    unduly burdensome and disproportionate to the needs of the case. LeEco further objects
9    to producing any such documents created before or during the negotiation and drafting of
10   the Merger Agreement (including the Escrow Agreement) that are protected by the
11   attorney client privilege and attorney work product doctrine.

12   **REQUEST FOR PRODUCTION NO. 5:**

13       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO
14   VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board
15   minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of
16   management meetings, emails, marketing plans, operational plans, financial analyses, and
17   strategy documents.

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

19       LeEco restates and incorporates by reference the Preliminary Statement and
20   General Objections set forth above. LeEco further objects to this Request as premature
21   and improper because Vizio's second through sixth causes of action in the FAC are
22   subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to
23   Dismiss, then the information and documents sought by this Request are not relevant,
24   making the Request disproportionate to the needs of the case. LeEco contends that, at this
25   stage, any discovery in this matter should be limited in scope. LeEco reserves all rights,
26   including the right to amend and supplement its Response to this Request, should it
27   become necessary and appropriate to do so.

28

1        LeEco further objects that this Request is compound and overbroad, particularly in

2    its request for "Any and All Documents or Communications that Relate To Vizio or any

3    transaction with Vizio…." LeEco further objects to this Request on the grounds that it

4    fails to describe the items for production with reasonable particularity as required by Rule

5    34, as the Request is not tethered to the claims at issue in this lawsuit.  The only

6    transactions related to Vizio that are relevant here are those related to the Framework

7    Agreement and potentially the Merger Agreement depending on how the Court rules on

8    LeEco's Motion to Dismiss. LeEco further objects that this Request appears to seek

9    documents protected by the attorney-client privilege and work product doctrine.  Read

10    literally, this Request could call for the production of attorney-client privileged

11    communications and work product materials from LeEco's defense team that simply

12    include Vizio's name.  Defendant objects to producing any such documents created after

13    this lawsuit was filed that merely "Relate To" Vizio as those documents would clearly be

14    protected by the attorney client privilege and attorney work product doctrine.  LeEco

15    further objects to logging all privileged and work product documents created after this

16    lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

17    LeEco interprets this Request as seeking non-privileged documents and communications,

18    created prior to this lawsuit, relating to Vizio, or transactions between LeEco and Vizio, in

19    the context of the Framework Agreement.

20        Subject to and without waiving any of its objections, LeEco responds as follows:

21    LeEco will conduct a reasonable search of documents within its possession, custody or

22    control created prior to this lawsuit's filing date that relate to the Framework Agreement.

23    LeEco will produce nonprivileged documents identified during the search on a rolling

24    basis, starting on April 25, 2018.  LeEco expects to complete its rolling production on or

25    before approximately July 25, 2018.

26    **REQUEST FOR PRODUCTION NO. 6:**

27        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

28

1 | MERGER.

2 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

3 |      LeEco restates and incorporates by reference the Preliminary Statement and

4 | General Objections set forth above.  LeEco further objects to this Request as premature

5 | and improper because Vizio's second through sixth causes of action in the FAC are

6 | subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

7 | Dismiss, then the information and documents sought by this Request are not relevant,

8 | making the Request disproportionate to the needs of the case.  LeEco contends that, at this

9 | stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

10 | release of all claims for breach of the Merger Agreement (including its various theories of

11 | fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

12 | of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

13 | negotiations regarding the Merger Agreement, including the negotiation or entry into the

14 | Merger Agreement, any breach of the Merger Agreement, or the termination of the

15 | Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

16 | amend and supplement its Response to this Request, should it become necessary and

17 | appropriate to do so.

18 |      LeEco further objects that this Request is compound and overbroad, particularly in

19 | its request for "Any and All Documents or Communications that Relate To the Merger."

20 |      LeEco further objects that, as phrased, this Request appears to seek documents that

21 | are equally available to Vizio.  LeEco objects to searching for and producing documents

22 | equally available to Vizio.

23 |      LeEco further objects that this Request appears to seek documents and

24 | communications protected by the attorney-client privilege and work product doctrine.

25 | LeEco objects to producing any privileged communications.  LeEco further objects to

26 | producing any such documents created after this lawsuit was filed that merely "Relate To"

27 | the Merger, as those documents would clearly be protected by the attorney client privilege

28 |

LA 133487811v11

1   and attorney work product doctrine.  LeEco further objects to logging all privileged and

2   work product documents created after this lawsuit was filed as unduly burdensome and

3   disproportionate to the needs of the case.

4   **REQUEST FOR PRODUCTION NO. 7:**

5           ALL DOCUMENTS and COMMUNICATIONS posted by LeECO; GLOBAL,

6   LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or

7   the MERGER.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

9           LeEco restates and incorporates by reference the Preliminary Statement and

10  General Objections set forth above.  LeEco further objects to this Request as premature

11  and improper because Vizio's second through sixth causes of action in the FAC are

12  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

13  Dismiss, then the information and documents sought by this Request are not relevant,

14  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

15  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

16  release of all claims for breach of the Merger Agreement (including its various theories of

17  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

18  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

19  negotiations regarding the Merger Agreement, including the negotiation or entry into the

20  Merger Agreement, any breach of the Merger Agreement, or the termination of the

21  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

22  amend and supplement its Response to this Request, should it become necessary and

23  appropriate to do so.

24          LeEco further objects that this Request is compound and overbroad, particularly in

25  its request for "Any and All Documents or Communications ... Relating To Vizio or the

26  Merger."  LeEco further objects to this Request on the grounds that it fails to describe the

27  items for production with reasonable particularity as required by Rule 34, as the Request

28

1  is not tethered to the claims at issue in this lawsuit.  The only transactions related to Vizio

2  that are relevant here are those related to the Framework Agreement and potentially the

3  Merger Agreement depending on how the Court rules on LeEco's Motion to Dismiss.

4  LeEco further objects that this Request appears to seek documents protected by the

5  attorney-client privilege and work product doctrine.  Read literally, this Request could call

6  for the production of attorney-client privileged communications and work product

7  materials from LeEco's defense team that simply include Vizio's name.  Defendant

8  objects to producing any such documents created after this lawsuit was filed that merely

9  "Relate To" the Merger or Vizio as those documents would clearly be protected by the

10  attorney client privilege and attorney work product doctrine.  LeEco further objects to

11  logging all privileged and work product documents created after this lawsuit was filed as

12  unduly burdensome and disproportionate to the needs of the case.

13        LeEco also objects that the term "posted by" is vague and ambiguous.

14        LeEco further objects that the definition of "Affiliates" is overbroad, vague and

15  ambiguous and seeks the documents and communications of third parties or documents

16  and communications which are not in LeEco's possession, custody or control.

17  Furthermore, this Request, which seeks discovery from individuals and entities

18  ("Unrelated Third Parties") supposedly "affiliated" with LeEco appears calculated merely

19  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

20  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

21  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

22  another $10 million in escrow that is disputed.  The remaining dispute concerns the

23  Parties' obligations to each other in the context of the proposed China JV.  Moreover,

24  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

25  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

26  **REQUEST FOR PRODUCTION NO. 8:**

27        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

28

1 | ESCROW.

2 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

3 |    LeEco restates and incorporates by reference the Preliminary Statement and

4 | General Objections set forth above.  LeEco further objects to this Request as premature

5 | and improper because Vizio's second through sixth causes of action in the FAC are

6 | subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

7 | Dismiss, then the information and documents sought by this Request are not relevant,

8 | making the Request disproportionate to the needs of the case.  Specifically, Vizio gave a

9 | release of all claims for breach of the Merger Agreement (including its various theories of

10 | fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

11 | of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

12 | negotiations regarding the Merger Agreement, including the negotiation or entry into the

13 | Merger Agreement, any breach of the Merger Agreement, or the termination of the

14 | Merger Agreement has any relevance.  Indeed, there is no dispute relating to the existence

15 | of the funds in escrow or that $40 million was paid to Vizio from the escrow account held

16 | by Citibank.  Furthermore, the terms of the "Escrow Agreement" have no relation to the

17 | resolution of the disposition of the remaining $10 million held in the escrow account.

18 | LeEco reserves all rights, including the right to amend and supplement its Response to this

19 | Request, should it become necessary and appropriate to do so.

20 |    LeEco further objects that this Request is compound and overbroad, particularly in

21 | its request for "Any and All Documents or Communications that Relate To the Escrow."

22 |    LeEco further objects that, as phrased, this Request appears to seek documents that

23 | are equally available to Vizio.  LeEco objects to searching for and producing documents

24 | equally available to Vizio.

25 |    LeEco further objects that this Request appears to seek documents and

26 | communications protected by the attorney-client privilege and work product doctrine.

27 | LeEco objects to producing any privileged communications.  LeEco further objects to

28 |

LA 133487811v11

1  producing any such documents created after this lawsuit was filed that merely "Relate To"

2  the Escrow, as those documents would clearly be protected by the attorney client privilege

3  and attorney work product doctrine.  LeEco further objects to logging all privileged and

4  work product documents created after this lawsuit was filed as unduly burdensome and

5  disproportionate to the needs of the case.  LeEco further objects to producing any such

6  documents created before or during the negotiation and drafting of the Merger Agreement

7  (including the Escrow) that are protected by the attorney client privilege and attorney

8  work product doctrine.

9  **REQUEST FOR PRODUCTION NO. 9:**

10        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

11  benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or

12  any of their AFFILIATES expected to receive from the MERGER.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

14        LeEco restates and incorporates by reference the Preliminary Statement and

15  General Objections set forth above.  LeEco further objects to this Request as premature

16  and improper because Vizio's second through sixth causes of action in the FAC are

17  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

18  Dismiss, then the information and documents sought by this Request are not relevant,

19  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

20  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

21  release of all claims for breach of the Merger Agreement (including its various theories of

22  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

23  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

24  negotiations regarding the Merger Agreement, including the negotiation or entry into the

25  Merger Agreement, any breach of the Merger Agreement, or the termination of the

26  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

27  amend and supplement its Response to this Request, should it become necessary and

28

LA 133487811v11

1  appropriate to do so.

2      LeEco further objects that this Request is compound and overbroad, particularly in

3  its request for "Any and All Documents or Communications that Relate To the benefits—

4  financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of

5  their Affiliates expected to receive from the Merger."

6      LeEco further objects that the definition of "Affiliates" is overbroad, vague and

7  ambiguous and seeks the documents and communications of third parties or documents

8  and communications which are not in LeEco's possession, custody or control.

9  Furthermore, this Request, which seeks discovery from Unrelated Third Parties

10  supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

11  irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

12  to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

13  Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

14  escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

15  other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

16  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

17  LeTechnology, Inc. is not a party to this action.

18      LeEco further objects that this Request appears to seek documents and

19  communications protected by the attorney-client privilege and work product doctrine.

20  LeEco objects to producing any privileged communications.  LeEco further objects to

21  producing any such documents created after this lawsuit was filed that merely "Relate To"

22  the Merger, as those documents would clearly be protected by the attorney client privilege

23  and attorney work product doctrine.  LeEco further objects to logging all privileged and

24  work product documents created after this lawsuit was filed as unduly burdensome and

25  disproportionate to the needs of the case.

26  **REQUEST FOR PRODUCTION NO. 10:**

27      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

28

LA 133487811v11

1  benefits—financial, operational or otherwise that LeECO, GLOBAL, LELE, JIA, LTI or

2  any of their AFFILIATES expected to receive from the public announcement of the

3  MERGER AGREEMENT or that any of those PERSONS actually received following that

4  announcement.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

6        LeEco restates and incorporates by reference the Preliminary Statement and

7  General Objections set forth above.  LeEco further objects to this Request as premature

8  and improper because Vizio's second through sixth causes of action in the FAC are

9  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

10  Dismiss, then the information and documents sought by this Request are not relevant,

11  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

12  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

13  release of all claims for breach of the Merger Agreement (including its various theories of

14  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

15  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

16  negotiations regarding the Merger Agreement, including the negotiation or entry into the

17  Merger Agreement, any breach of the Merger Agreement, or the termination of the

18  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

19  amend and supplement its Response to this Request, should it become necessary and

20  appropriate to do so.

21        LeEco further objects that this Request is compound and overbroad, particularly in

22  its request for "Any and All Documents or Communications that Relate To the benefits—

23  financial, operational or otherwise that LeECO, GLOBAL, LELE, JIA, LTI or any of their

24  Affiliates expected to receive from the public announcement of the Merger Agreement or

25  that any of those Persons actually received following that announcement."

26        LeEco further objects that the definition of "Affiliates" is overbroad, vague and

27  ambiguous and seeks the documents and communications of third parties or documents

28

1  and communications which are not in LeEco's possession, custody or control.

2  Furthermore, this Request, which seeks discovery from Unrelated Third Parties

3  supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

4  irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

5  to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

6  Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

7  escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

8  other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

9  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

10  LeTechnology, Inc. is not a party to this action.

11  LeEco further objects that this Request appears to seek documents and

12  communications protected by the attorney-client privilege and work product doctrine.

13  LeEco objects to producing any privileged communications.  LeEco further objects to

14  producing any such documents created after this lawsuit was filed that merely "Relate To"

15  the Merger Agreement, as those documents would clearly be protected by the attorney

16  client privilege and attorney work product doctrine.  LeEco further objects to logging all

17  privileged and work product documents created after this lawsuit was filed as unduly

18  burdensome and disproportionate to the needs of the case.

19  **REQUEST FOR PRODUCTION NO. 11:**

20  ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

21  response of U.S. and Chinese markets or press to the proposed MERGER, INCLUDING

22  all articles, reports and other documents issued by stock markets, bond markets, financial

23  press, newspapers, and financial analysts.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

25  LeEco restates and incorporates by reference the Preliminary Statement and

26  General Objections set forth above.  LeEco further objects to this Request as premature

27  and improper because Vizio's second through sixth causes of action in the FAC are

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)
LA 133487811v11

1   subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

2   Dismiss, then the information and documents sought by this Request are not relevant,

3   making the Request disproportionate to the needs of the case.  LeEco contends that, at this

4   stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

5   release of all claims for breach of the Merger Agreement (including its various theories of

6   fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

7   of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

8   negotiations regarding the Merger Agreement, including the negotiation or entry into the

9   Merger Agreement, any breach of the Merger Agreement, or the termination of the

10  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

11  amend and supplement its Response to this Request, should it become necessary and

12  appropriate to do so.

13        LeEco further objects that this Request is compound and overbroad, particularly in

14  its request for "Any and All Documents or Communications that Relate To the response

15  of U.S. and Chinese markets or press to the proposed Merger...."

16        LeEco further objects that, as phrased, this Request appears to seek documents that

17  are equally available to Vizio, as the Request expressly calls for public information.

18  LeEco objects to searching for and producing documents equally available to Vizio.

19        LeEco further objects that this Request appears to seek documents and

20  communications protected by the attorney-client privilege and work product doctrine.

21  LeEco objects to producing any privileged communications.  LeEco further objects to

22  producing any such documents created after this lawsuit was filed that merely "Relate To"

23  the Merger, as those documents would clearly be protected by the attorney client privilege

24  and attorney work product doctrine.  LeEco further objects to logging all privileged and

25  work product documents created after this lawsuit was filed as unduly burdensome and

26  disproportionate to the needs of the case.

27

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET I)**

LA 133487811v11

**REQUEST FOR PRODUCTION NO. 12:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to implement, meet the conditions for, or complete the MERGER with VIZIO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance. LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to implement, meet the conditions for, or complete the Merger with Vizio."

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications. LeEco further objects to

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

1 producing any such documents created after this lawsuit was filed that merely "Relate To"

2 the Merger, as those documents would clearly be protected by the attorney client privilege

3 and attorney work product doctrine. LeEco further objects to logging all privileged and

4 work product documents created after this lawsuit was filed as unduly burdensome and

5 disproportionate to the needs of the case.

6      LeEco further objects that the definition of "Affiliates" is overbroad, vague and

7 ambiguous and seeks the documents and communications of third parties or documents

8 and communications which are not in LeEco's possession, custody or control.

9 Furthermore, this Request, which seeks discovery from Unrelated Third Parties

10 supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

11 irrelevant, and not proportional to the needs of the case. Particularly if the case is limited

12 to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

13 Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

14 escrow that is disputed. The remaining dispute concerns the Parties' obligations to each

15 other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele

16 Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

17 LeTechnology, Inc. is not a party to this action.

18 **REQUEST FOR PRODUCTION NO. 13:**

19      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

20 Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

21 agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

23      LeEco restates and incorporates by reference the Preliminary Statement and

24 General Objections set forth above. LeEco further objects to this Request as premature

25 and improper because Vizio's second through sixth causes of action in the FAC are

26 subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to

27 Dismiss, then the information and documents sought by this Request are not relevant,

28

LA 133487811v11

1    making the Request disproportionate to the needs of the case.  LeEco contends that, at this

2    stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

3    release of all claims for breach of the Merger Agreement (including its various theories of

4    fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

5    of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

6    negotiations regarding the Merger Agreement, including the negotiation or entry into the

7    Merger Agreement, any breach of the Merger Agreement, or the termination of the

8    Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

9    amend and supplement its Response to this Request, should it become necessary and

10   appropriate to do so.

11        LeEco further objects that this Request is compound and overbroad, particularly in

12   its request for "Any and All Documents or Communications that Relate To the Merger

13   Agreement...."

14        LeEco further objects that, as phrased, this Request appears to seek documents that

15   are equally available to Vizio.  LeEco objects to searching for and producing documents

16   equally available to Vizio.

17        LeEco further objects that this Request appears to seek documents and

18   communications protected by the attorney-client privilege and work product doctrine.

19   LeEco objects to producing any privileged communications.  LeEco further objects to

20   producing any such documents created after this lawsuit was filed that merely "Relate To"

21   the Merger Agreement, as those documents would clearly be protected by the attorney

22   client privilege and attorney work product doctrine.  LeEco further objects to logging all

23   privileged and work product documents created after this lawsuit was filed as unduly

24   burdensome and disproportionate to the needs of the case.  LeEco further objects to

25   producing any such documents created before or during the negotiation and drafting of the

26   Merger Agreement that are protected by the attorney client privilege and attorney work

27   product doctrine.

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

**REQUEST FOR PRODUCTION NO. 14:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU received from any PERSON, including AFFILIATES, third party businesses, and governmental entities, regarding the proposed MERGER.

**RESPONSE TO REQUEST FOR REQUEST FOR PRODUCTION NO. 14:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance. LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications ... regarding ... the proposed Merger."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio. LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and

1 | ambiguous and seeks the documents and communications of third parties or documents
2 | and communications which are not in LeEco's possession, custody or control.

3 |      LeEco further objects that this Request appears to seek documents and
4 | communications protected by the attorney-client privilege and work product doctrine.
5 | LeEco objects to producing any privileged communications. LeEco further objects to
6 | producing any such documents created after this lawsuit was filed that merely "Relate To"
7 | the Merger, as those documents would clearly be protected by the attorney client privilege
8 | and attorney work product doctrine. LeEco further objects to logging all privileged and
9 | work product documents created after this lawsuit was filed as unduly burdensome and
10 | disproportionate to the needs of the case.

11 | **REQUEST FOR PRODUCTION NO. 15:**

12 |      ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO,
13 | GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity,"
14 | as that term is defined in Section 10.2 of the MERGER AGREEMENT whether located in
15 | the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER
16 | AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the
17 | U.S. Department of Justice, the Committee on Foreign Investment in the United States,
18 | the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the
19 | Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"),
20 | Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

21 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

22 |      LeEco restates and incorporates by reference the Preliminary Statement and
23 | General Objections set forth above. LeEco further objects to this Request as premature
24 | and improper because Vizio's second through sixth causes of action in FAC are subject to
25 | LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then
26 | the information and documents sought by this Request are not relevant, making the
27 | Request disproportionate to the needs of the case. LeEco contends that, at this stage, any

28 |

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S**
**REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1  discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of

2  all claims for breach of the Merger Agreement (including its various theories of fraud

3  related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40

4  million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations

5  regarding the Merger Agreement, including the negotiation or entry into the Merger

6  Agreement, any breach of the Merger Agreement, or the termination of the Merger

7  Agreement has any relevance.  LeEco reserves all rights, including the right to amend and

8  supplement its Response to this Request, should it become necessary and appropriate to

9  do so.

10      LeEco further objects that this Request is compound and overbroad, particularly in

11  its request for "Any and All Documents or Communications sent by LeECO, GLOBAL,

12  LELE, JIA, LTI or any of their Affiliates to any "Governmental Entity," … whether

13  located in the United States, China, Taiwan, or otherwise—that Relates To the Merger

14  Agreement Or Merger…."  Furthermore, any information related to the U.S. approval is

15  irrelevant because it is undisputed that the U.S. approval was obtained.

16      LeEco further objects that this Request appears to seek documents and

17  communications protected by the attorney-client privilege and work product doctrine.

18  LeEco objects to producing any privileged communications.  LeEco further objects to

19  producing any such documents created after this lawsuit was filed that merely "Relate To"

20  the Merger or Merger Agreement, as those documents would clearly be protected by the

21  attorney client privilege and attorney work product doctrine.  LeEco further objects to

22  logging all privileged and work product documents created after this lawsuit was filed as

23  unduly burdensome and disproportionate to the needs of the case.

24      LeEco further objects that the definition of "Affiliates" is overbroad, vague and

25  ambiguous and seeks the documents and communications of third parties or documents

26  and communications which are not in LeEco's possession, custody or control.

27  Furthermore, this Request, which seeks discovery from Unrelated Third Parties

28

LA 133487811v11

1 | supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,
2 | irrelevant, and not proportional to the needs of the case. Particularly if the case is limited
3 | to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the
4 | Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in
5 | escrow that is disputed. The remaining dispute concerns the Parties' obligations to each
6 | other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele
7 | Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and
8 | LeTechnology, Inc. is not a party to this action.

9 | **REQUEST FOR PRODUCTION NO. 16:**

10 | ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued,
11 | made or published by any "Governmental Entity," as that term is defined in Section 10.2
12 | of the MERGER AGREEMENT in the United States, CHINA, Taiwan, or otherwise—
13 | RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S.
14 | Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign
15 | Investment in the United States, the CHINA Ministry of Commerce, the China Insurance
16 | Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform
17 | Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing
18 | Commission of Commerce.

19 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

20 | LeEco restates and incorporates by reference the Preliminary Statement and
21 | General Objections set forth above. LeEco further objects to this Request as premature
22 | and improper because Vizio's second through sixth causes of action in the FAC are
23 | subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to
24 | Dismiss, then the information and documents sought by this Request are not relevant,
25 | making the Request disproportionate to the needs of the case. LeEco contends that, at this
26 | stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a
27 | release of all claims for breach of the Merger Agreement (including its various theories of
28 |

1   fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

2   of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

3   negotiations regarding the Merger Agreement, including the negotiation or entry into the

4   Merger Agreement, any breach of the Merger Agreement, or the termination of the

5   Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

6   amend and supplement its Response to this Request, should it become necessary and

7   appropriate to do so.

8       LeEco further objects that this Request is compound and overbroad, particularly in

9   its request for "Any and All Documents or Communications drafted, sent, issued, made or

10   published by any "Governmental Entity," … in the United States, China, Taiwan, or

11   otherwise—Relating To Merger Agreement Or Merger…."  Furthermore, any information

12   related to the U.S. approval is irrelevant because it is undisputed that the U.S. approval

13   was obtained.

14       LeEco further objects that, as phrased, this Request appears to seek documents that

15   are equally available to Vizio.  LeEco objects to searching for and producing documents

16   equally available to Vizio.

17       LeEco further objects that this Request seeks the documents and communications of

18   third parties or documents and communications which are not in LeEco's possession,

19   custody or control.

20       LeEco further objects that this Request appears to seek documents and

21   communications protected by the attorney-client privilege and work product doctrine.

22   LeEco objects to producing any privileged communications.  LeEco further objects to

23   producing any such documents created after this lawsuit was filed that merely "Relate To"

24   the Merger or Merger Agreement as those documents would clearly be protected by the

25   attorney client privilege and attorney work product doctrine.  LeEco further objects to

26   logging all privileged and work product documents created after this lawsuit was filed as

27   unduly burdensome and disproportionate to the needs of the case.  LeEco further objects

28

1  to producing any such documents created before or during the negotiation and drafting of

2  the Merger Agreement that are protected by the attorney client privilege and attorney

3  work product doctrine.

4  **REQUEST FOR PRODUCTION NO. 17:**

5      ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or

6  published by any governmental entity in CHINA RELATING TO the standards of review

7  to be applied to proposed investments that originate in CHINA and are directed to another

8  country, INCLUDING any and all press releases issued on or about December 6, 2016

9  regarding new standards of review to be applied to such investments.

10 **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

11     LeEco restates and incorporates by reference the Preliminary Statement and

12 General Objections set forth above.  LeEco further objects to this Request as premature

13 and improper because Vizio's second through sixth causes of action in the FAC are

14 subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

15 Dismiss, then the information and documents sought by this Request are not relevant,

16 making the Request disproportionate to the needs of the case.  LeEco contends that, at this

17 stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

18 release of all claims for breach of the Merger Agreement (including its various theories of

19 fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

20 of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

21 negotiations regarding the Merger Agreement, including the negotiation or entry into the

22 Merger Agreement, any breach of the Merger Agreement, or the termination of the

23 Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

24 amend and supplement its Response to this Request, should it become necessary and

25 appropriate to do so.

26     LeEco further objects that this Request is compound and overbroad, particularly in

27 its request for "Any and All Documents or Communications sent, issued, made or

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)
LA 133487811v11

published by any governmental entity in China Relating To the standards of review...."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio. LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.

LeEco further objects to the extent that this Request seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 18:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the proposed MERGER with VIZIO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

LA 133487811v11

1  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

2  negotiations regarding the Merger Agreement, including the negotiation or entry into the

3  Merger Agreement, any breach of the Merger Agreement, or the termination of the

4  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

5  amend and supplement its Response to this Request, should it become necessary and

6  appropriate to do so.

7       LeEco further objects that this Request is compound and overbroad, particularly in

8  its request for "Any and All Documents or Communications Relating To the ability of

9  GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the

10  proposed Merger with Vizio."   LeEco further objects that the phrase "obtain the financing

11  needed" is vague and ambiguous and, as phrased, calls for speculation.

12       LeEco further objects that this Request appears to seek documents and

13  communications protected by the attorney-client privilege and work product doctrine.

14  LeEco objects to producing any privileged communications.  LeEco further objects to

15  producing any such documents created after this lawsuit was filed that merely "Relate To"

16  the Merger or Vizio, as those documents would clearly be protected by the attorney client

17  privilege and attorney work product doctrine.  LeEco further objects to logging all

18  privileged and work product documents created after this lawsuit was filed as unduly

19  burdensome and disproportionate to the needs of the case.

20       LeEco further objects that the Request seeks the documents and communications of

21  third parties or documents and communications which are not in LeEco's possession,

22  custody or control.  Furthermore, this Request, which seeks discovery from Unrelated

23  Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

24  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the

25  case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

26  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million

27  in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

28

1    other in the context of the proposed China JV.

2    Moreover, LeEco Global Group Ltd., has not been served with the Summons and FAC,

3    and Merger Sub is not a party to this action.

4    **REQUEST FOR PRODUCTION NO. 19:**

5         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO efforts,

6    by any PERSON, to obtain the financing needed by LeECO and MERGER SUB to

7    complete the proposed MERGER with VIZIO INCLUDING DOCUMENTS OR

8    COMMUNICATIONS to or from: Hollyhigh International Capital; the Bank of China;

9    Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset

10    Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings

11    (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai

12    Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A

13    Fund Management Co. Ltd. or any of their AFFILIATES.

14    **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

15         LeEco restates and incorporates by reference the Preliminary Statement and

16    General Objections set forth above.  LeEco further objects to this Request as premature

17    and improper because Vizio's second through sixth causes of action in the FAC are

18    subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

19    Dismiss, then the information and documents sought by this Request are not relevant,

20    making the Request disproportionate to the needs of the case.  LeEco contends that, at this

21    stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

22    release of all claims for breach of the Merger Agreement (including its various theories of

23    fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

24    of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

25    negotiations regarding the Merger Agreement, including the negotiation or entry into the

26    Merger Agreement, any breach of the Merger Agreement, or the termination of the

27    Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

28

LA 133487811v11

1  amend and supplement its Response to this Request, should it become necessary and

2  appropriate to do so.

3       LeEco further objects that this Request is compound and overbroad, particularly in

4  its request for "Any and All Documents or Communications Relating To efforts, by any

5  Person, to obtain the financing needed to complete the proposed Merger with Vizio…."

6  LeEco further objects that the phrase "obtain the financing needed" is vague and

7  ambiguous and, as phrased, calls for speculation.

8       LeEco further objects that this Request appears to seek documents and

9  communications protected by the attorney-client privilege and work product doctrine.

10  LeEco objects to producing any privileged communications.  LeEco further objects to

11  producing any such documents created after this lawsuit was filed that merely "Relate To"

12  the Merger or Vizio, as those documents would clearly be protected by the attorney client

13  privilege and attorney work product doctrine.  LeEco further objects to logging all

14  privileged and work product documents created after this lawsuit was filed as unduly

15  burdensome and disproportionate to the needs of the case.

16       LeEco further objects that the Request seeks the documents and communications of

17  third parties or documents and communications which are not in LeEco's possession,

18  custody or control.  Furthermore, this Request, which seeks discovery from Unrelated

19  Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

20  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the

21  case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

22  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million

23  in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

24  other in the context of the proposed China JV.

25  Moreover, Merger Sub is not a party to this action.

26  **REQUEST FOR PRODUCTION NO. 20:**

27       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the

28

LA 13348781 1v11

1 | terms on which the financing needed by LeECO and MERGER SUB to complete the

2 | proposed MERGER with VIZIO could be obtained, INCLUDING DOCUMENTS OR

3 | COMMUNICATIONS to or from: Hollyhigh International Capital; the Bank of China;

4 | Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset

5 | Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings

6 | (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai

7 | Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A

8 | Fund Management Co. Ltd. or any of their AFFILIATES.

9 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

10 |    LeEco restates and incorporates by reference the Preliminary Statement and

11 | General Objections set forth above.  LeEco further objects to this Request as premature

12 | and improper because Vizio's second through sixth causes of action in the FAC are

13 | subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

14 | Dismiss, then the information and documents sought by this Request are not relevant,

15 | making the Request disproportionate to the needs of the case.  LeEco contends that, at this

16 | stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

17 | release of all claims for breach of the Merger Agreement (including its various theories of

18 | fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

19 | of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

20 | negotiations regarding the Merger Agreement, including the negotiation or entry into the

21 | Merger Agreement, any breach of the Merger Agreement, or the termination of the

22 | Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

23 | amend and supplement its Response to this Request, should it become necessary and

24 | appropriate to do so.

25 |    LeEco further objects that this Request is compound and overbroad.  LeEco further

26 | objects that the phrase "terms on which financing…could be obtained" is vague and

27 | ambiguous and, as phrased, calls for speculation.

28 |

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

1  LeEco further objects that this Request appears to seek documents and
2  communications protected by the attorney-client privilege and work product doctrine.
3  LeEco objects to producing any privileged communications. LeEco further objects to
4  producing any such documents created after this lawsuit was filed that merely "Relate To"
5  the Merger or Vizio, as those documents would clearly be protected by the attorney client
6  privilege and attorney work product doctrine. LeEco further objects to logging all
7  privileged and work product documents created after this lawsuit was filed as unduly
8  burdensome and disproportionate to the needs of the case.

9  LeEco further objects that the Request seeks the documents and communications of
10 third parties or documents and communications which are not in LeEco's possession,
11 custody or control. Furthermore, this Request, which seeks discovery from Unrelated
12 Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
13 is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the
14 case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's
15 (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million
16 in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each
17 other in the context of the proposed China JV.

18 Moreover, Merger Sub is not a party to this action.

19 **REQUEST FOR PRODUCTION NO. 21:**

20  ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one
21 hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the
22 other hand, regarding efforts to implement; meet the conditions for, or complete the
23 MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete
24 the MERGER.

25 **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

26  LeEco restates and incorporates by reference the Preliminary Statement and
27 General Objections set forth above. LeEco further objects to this Request as premature

28

1    and improper because Vizio's second through sixth causes of action in the FAC are

2    subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

3    Dismiss, then the information and documents sought by this Request are not relevant,

4    making the Request disproportionate to the needs of the case.  LeEco contends that, at this

5    stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

6    release of all claims for breach of the Merger Agreement (including its various theories of

7    fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

8    of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

9    negotiations regarding the Merger Agreement, including the negotiation or entry into the

10   Merger Agreement, any breach of the Merger Agreement, or the termination of the

11   Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

12   amend and supplement its Response to this Request, should it become necessary and

13   appropriate to do so.

14       LeEco further objects that this Request is compound and overbroad, particularly in

15   its request for "Any and All Documents or Communications between Vizio, on one hand,

16   and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their Affiliates, on the other hand,

17   regarding efforts to implement; meet the conditions for, or complete the Merger or to

18   obtain the financing needed by LeECO and MERGER SUB to complete the Merger."

19   LeEco further objects that the phrase "obtain the financing needed" is vague and

20   ambiguous and, as phrased, calls for speculation.

21       LeEco further objects that this Request appears to seek documents and

22   communications protected by the attorney-client privilege and work product doctrine.

23   LeEco objects to producing any privileged communications.  LeEco further objects to

24   producing any such documents created after this lawsuit was filed that merely "Relate To"

25   the Merger or Vizio, as those documents would clearly be protected by the attorney client

26   privilege and attorney work product doctrine.  LeEco further objects to logging all

27   privileged and work product documents created after this lawsuit was filed as unduly

28

1 | burdensome and disproportionate to the needs of the case.

2 |     LeEco further objects that the definition of "Affiliates" is overbroad, vague and

3 | ambiguous and seeks the documents and communications of third parties or documents

4 | and communications which are not in LeEco's possession, custody or control.

5 | Furthermore, this Request, which seeks discovery from Unrelated Third Parties

6 | supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

7 | irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

8 | to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

9 | Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

10 | escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

11 | other in the context of the proposed China JV.

12 | Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been

13 | served with the Summons and FAC, and Merger Sub and LeTechnology, Inc. are not

14 | parties to this action.

15 | **REQUEST FOR PRODUCTION NO. 22:**

16 |     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

17 | "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of

18 | the MERGER AGREEMENT.

19 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

20 |     LeEco restates and incorporates by reference the Preliminary Statement and

21 | General Objections set forth above.  LeEco further objects to this Request as premature

22 | and improper because Vizio's second through sixth causes of action in the FAC are

23 | subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

24 | Dismiss, then the information and documents sought by this Request are not relevant,

25 | making the Request disproportionate to the needs of the case.  LeEco contends that, at this

26 | stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

27 | release of all claims for breach of the Merger Agreement (including its various theories of

28 |

LA 133487811v11

1  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

2  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

3  negotiations regarding the Merger Agreement, including the negotiation or entry into the

4  Merger Agreement, any breach of the Merger Agreement, or the termination of the

5  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

6  amend and supplement its Response to this Request, should it become necessary and

7  appropriate to do so.

8       LeEco further objects that this Request is compound and overbroad, particularly in

9  its request for "Any and All Documents or Communications Relating To the Equity

10 Commitment Letters…"

11      LeEco further objects that, as phrased, this Request appears to seek documents that

12 are equally available to Vizio.  LeEco objects to searching for and producing documents

13 equally available to Vizio.

14      LeEco further objects that this Request appears to seek documents and

15 communications protected by the attorney-client privilege and work product doctrine.

16 LeEco objects to producing any privileged communications.  LeEco further objects to

17 producing any such documents created after this lawsuit was filed that merely "Relate To"

18 terms within Merger Agreement, as those documents would clearly be protected by the

19 attorney client privilege and attorney work product doctrine.  LeEco further objects to

20 logging all privileged and work product documents created after this lawsuit was filed as

21 unduly burdensome and disproportionate to the needs of the case.

22 **REQUEST FOR PRODUCTION NO. 23:**

23      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

24 "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER

25 AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

26 **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

27      LeEco restates and incorporates by reference the Preliminary Statement and

28

LA 133487811v11

1  General Objections set forth above. LeEco further objects to this Request as premature

2  and improper because Vizio's second through sixth causes of action in the FAC are

3  subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to

4  Dismiss, then the information and documents sought by this Request are not relevant,

5  making the Request disproportionate to the needs of the case. LeEco contends that, at this

6  stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a

7  release of all claims for breach of the Merger Agreement (including its various theories of

8  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

9  of $40 million, which Vizio acknowledges receiving. Thus, nothing about the

10 negotiations regarding the Merger Agreement, including the negotiation or entry into the

11 Merger Agreement, any breach of the Merger Agreement, or the termination of the

12 Merger Agreement has any relevance. LeEco reserves all rights, including the right to

13 amend and supplement its Response to this Request, should it become necessary and

14 appropriate to do so.

15       LeEco further objects that this Request is compound and overbroad, particularly in

16 its request for "Any and All Documents or Communications Relating To the Debt

17 Financing Documents …"

18       LeEco further objects that, as phrased, this Request appears to seek documents that

19 are equally available to Vizio. LeEco objects to searching for and producing documents

20 equally available to Vizio.

21       LeEco further objects that this Request appears to seek documents and

22 communications protected by the attorney-client privilege and work product doctrine.

23 LeEco objects to producing any privileged communications. LeEco further objects to

24 producing any such documents created after this lawsuit was filed that merely "Relate To"

25 terms within Merger Agreement, as those documents would clearly be protected by the

26 attorney client privilege and attorney work product doctrine. LeEco further objects to

27 logging all privileged and work product documents created after this lawsuit was filed as

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

1  unduly burdensome and disproportionate to the needs of the case.

2  **REQUEST FOR PRODUCTION NO. 24:**

3      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the

4  actual assets and financing available to LeECO and MERGER SUB on or about April 6,

5  2017 for the purpose of completing the proposed MERGER with VIZIO.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

7      LeEco restates and incorporates by reference the Preliminary Statement and

8  General Objections set forth above.  LeEco further objects to this Request as premature

9  and improper because Vizio's second through sixth causes of action in the FAC are

10  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

11  Dismiss, then the information and documents sought by this Request are not relevant,

12  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

13  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

14  release of all claims for breach of the Merger Agreement (including its various theories of

15  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

16  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

17  negotiations regarding the Merger Agreement, including the negotiation or entry into the

18  Merger Agreement, any breach of the Merger Agreement, or the termination of the

19  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

20  amend and supplement its Response to this Request, should it become necessary and

21  appropriate to do so.

22      LeEco further objects that this Request is compound and overbroad.  LeEco further

23  objects that the phrase "actual assets and financing available" is vague and ambiguous.

24      LeEco further objects that this Request appears to seek documents and

25  communications protected by the attorney-client privilege and work product doctrine.

26  LeEco objects to producing any privileged communications.  LeEco further objects to

27  producing any such documents created after this lawsuit was filed that merely "Relate To"

28

1 | the Merger or Vizio, as those documents would clearly be protected by the attorney client
2 | privilege and attorney work product doctrine.  LeEco further objects to logging all
3 | privileged and work product documents created after this lawsuit was filed as unduly
4 | burdensome and disproportionate to the needs of the case.

5 |      LeEco further objects that the Request seeks the documents and communications of
6 | third parties or documents and communications which are not in LeEco's possession,
7 | custody or control.  Furthermore, this Request, which seeks discovery from Unrelated
8 | Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and
9 | is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the
10 | case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's
11 | (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million
12 | in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each
13 | other in the context of the proposed China JV.
14 | Moreover, Merger Sub is not a party to this action.

15 | **REQUEST FOR PRODUCTION NO. 25:**

16 |      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the
17 | "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee
18 | Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT
19 | and used in Section 9.2 of the MERGER AGREEMENT.

20 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

21 |      LeEco restates and incorporates by reference the Preliminary Statement and
22 | General Objections set forth above.  LeEco further objects to this Request as premature
23 | and improper because Vizio's second through sixth causes of action in the FAC are
24 | subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to
25 | Dismiss, then the information and documents sought by this Request are not relevant,
26 | making the Request disproportionate to the needs of the case.  LeEco contends that, at this
27 | stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a
28 |

release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  The Guaranty only applied to the Buyer Termination Fee Remainder which was eliminated following the Parties' agreement they were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is the mutual walk-away without there being any Buyer Termination Fee Penalty (including but not limited to the Buyer Termination Fee Remainder).

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the to the Buyer Termination Fee, Buyer Termination Fee Deposit or Buyer Termination Fee Remainder...."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" terms within Merger Agreement, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 26:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

1  source of monies deposited in ESCROW to serve as the "Buyer Termination Fee

2  Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT and

3  used in Section 9.2 of the MERGER AGREEMENT.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

5  　　LeEco restates and incorporates by reference the Preliminary Statement and

6  General Objections set forth above. LeEco further objects to this Request as premature

7  and improper because Vizio's second through sixth causes of action in the FAC are

8  subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to

9  Dismiss, then the information and documents sought by this Request are not relevant,

10  making the Request disproportionate to the needs of the case. LeEco contends that, at this

11  stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a

12  release of all claims for breach of the Merger Agreement (including its various theories of

13  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

14  of $40 million, which Vizio acknowledges receiving. Thus, nothing about the

15  negotiations regarding the Merger Agreement, including the negotiation or entry into the

16  Merger Agreement, any breach of the Merger Agreement, or the termination of the

17  Merger Agreement has any relevance. The Guaranty only applied to the Buyer

18  Termination Fee Remainder which was eliminated following the Parties' agreement they

19  were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

20  the mutual walk-away without there being any Buyer Termination Fee Penalty (including

21  but not limited to the Buyer Termination Fee Remainder).

22  　　LeEco further objects that this Request is compound and overbroad, particularly in

23  its request for "Any and All Documents or Communications Relating To the to the source

24  of monies deposited in Escrow to serve as the Buyer Termination Fee Deposit …"

25  　　LeEco further objects that, as phrased, this Request appears to seek documents that

26  are equally available to Vizio. LeEco objects to searching for and producing documents

27  equally available to Vizio.

28

1   LeEco further objects that this Request appears to seek documents and
2   communications protected by the attorney-client privilege and work product doctrine.
3   LeEco objects to producing any privileged communications.  LeEco further objects to
4   producing any such documents created after this lawsuit was filed that merely "Relate To"
5   terms within Merger Agreement, as those documents would clearly be protected by the
6   attorney client privilege and attorney work product doctrine.  LeEco further objects to
7   logging all privileged and work product documents created after this lawsuit was filed as
8   unduly burdensome and disproportionate to the needs of the case.
9   **REQUEST FOR PRODUCTION NO. 27:**
10      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the
11  termination of the MERGER AGREEMENT.
12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**
13      LeEco restates and incorporates by reference the Preliminary Statement and
14  General Objections set forth above.  LeEco further objects to this Request as premature
15  and improper because Vizio's second through sixth causes of action in the FAC are
16  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to
17  Dismiss, then the information and documents sought by this Request are not relevant,
18  making the Request disproportionate to the needs of the case.  LeEco contends that, at this
19  stage, any discovery in this matter should be limited in scope.  LeEco reserves all rights,
20  including the right to amend and supplement its Response to this Request, should it
21  become necessary and appropriate to do so.
22      LeEco further objects that this Request is compound and overbroad, particularly in
23  its request for "Any and All Documents or Communications Relating To the termination
24  of the Merger Agreement."  LeEco further objects that this Request appears to seek
25  documents protected by the attorney-client privilege and work product doctrine.
26  Defendant objects to producing any such documents created after this lawsuit was filed
27  that merely "Relate To" the Merger Agreement (or termination of it) as those documents
28

1  would clearly be protected by the attorney client privilege and attorney work product

2  doctrine.  LeEco further objects to logging all privileged and work product documents

3  created after this lawsuit was filed as unduly burdensome and disproportionate to the

4  needs of the case.  LeEco interprets this Request as seeking non-privileged documents and

5  communications, created prior to this lawsuit, relating to the termination of the Merger

6  Agreement in the context of the formation, negotiation and execution of the Framework

7  Agreement.

8        Subject to and without waiving any of its objections, LeEco responds as follows:

9  LeEco will conduct a reasonable search of documents within its possession, custody or

10  control created prior to this lawsuit's filing date that relate to relating to the termination of

11  the Merger Agreement in the context of the formation, negotiation and execution of the

12  Framework Agreement.  LeEco will produce nonprivileged documents identified during

13  the search on a rolling basis, starting on April 25, 2018.  LeEco expects to complete its

14  rolling production on or before approximately July 25, 2018.

15  **REQUEST FOR PRODUCTION NO. 28:**

16        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to reasons

17  why the MERGER was not, or could not, be completed.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

19        LeEco restates and incorporates by reference the Preliminary Statement and

20  General Objections set forth above.  LeEco further objects to this Request as premature

21  and improper because Vizio's second through sixth causes of action in the FAC are

22  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

23  Dismiss, then the information and documents sought by this Request are not relevant,

24  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

25  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

26  release of all claims for breach of the Merger Agreement (including its various theories of

27  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**
LA 133487811v11

1  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

2  negotiations regarding the Merger Agreement, including the negotiation or entry into the

3  Merger Agreement, any breach of the Merger Agreement, or the termination of the

4  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

5  amend and supplement its Response to this Request, should it become necessary and

6  appropriate to do so.

7          LeEco further objects that, as phrased, this Request appears to seek documents that

8  are equally available to Vizio.  LeEco objects to searching for and producing documents

9  equally available to Vizio.

10         LeEco further objects that this Request appears to seek documents and

11 communications protected by the attorney-client privilege and work product doctrine.

12 LeEco objects to producing any privileged communications.  LeEco further objects to

13 producing any such documents created after this lawsuit was filed that merely "Relate To"

14 the Merger, as those documents would clearly be protected by the attorney client privilege

15 and attorney work product doctrine.  LeEco further objects to logging all privileged and

16 work product documents created after this lawsuit was filed as unduly burdensome and

17 disproportionate to the needs of the case.

18 **REQUEST FOR PRODUCTION NO. 29:**

19         ANY and ALL DOCUMENTS OR. COMMUNICATIONS RELATING to a

20 potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA,

21 LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO products in

22 CHINA, INCLUDING emails, marketing plans, operational plans, financial analyses, and

23 strategy documents.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

25         LeEco restates and incorporates by reference the Preliminary Statement and

26 General Objections set forth above.

27         LeEco further objects that the definition of "Affiliates" is overbroad, vague and

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1 | ambiguous and seeks the documents and communications of third parties or documents
2 | and communications which are not in LeEco's possession, custody or control.
3 | Furthermore, this Request, which seeks discovery from Unrelated Third Parties
4 | supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,
5 | irrelevant, and not proportional to the needs of the case. Particularly if the case is limited
6 | to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the
7 | Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in
8 | escrow that is disputed. The remaining dispute concerns the Parties' obligations to each
9 | other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele
10 | Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and
11 | LeTechnology, Inc. is not a party to this action.

12 |     LeEco further objects that this Request appears to seek documents protected by the
13 | attorney-client privilege and work product doctrine. Defendant objects to producing any
14 | such documents created after this lawsuit was filed that merely "Relate To" the potential
15 | joint venture as those documents would clearly be protected by the attorney client
16 | privilege and attorney work product doctrine. LeEco further objects to logging all
17 | privileged and work product documents created after this lawsuit was filed as unduly
18 | burdensome and disproportionate to the needs of the case. LeEco interprets this Request
19 | as seeking non-privileged documents and communications, created prior to this lawsuit,
20 | relating to a potential joint venture between Vizio, on one hand, and LeEco, on the other.

21 |     Subject to and without waiving any of its objections, LeEco responds as follows:
22 | LeEco will conduct a reasonable search of documents within its possession, custody or
23 | control created prior to this lawsuit's filing date that relate to relating to a potential joint
24 | venture between Vizio, on one hand, and LeEco, on the other. LeEco will produce
25 | nonprivileged documents identified during the search on a rolling basis, starting on April
26 | 25, 2018. LeEco expects to complete its rolling production on or before approximately
27 | July 25, 2018.

28 |

**REQUEST FOR PRODUCTION NO. 30:**

ANY and ALL DOCUMENTS OR-COMMUNICATIONS RELATING to negotiations or discussions between VIZIO and LeECO to "negotiate in good faith and execute one or more agreements" regarding a joint venture in CHINA as required by Section 4 of the FRAMEWORK AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine. Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date. LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018. LeEco expects to complete its rolling production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 31:**

DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual relationships, and the terms of those-relationships, between LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other PERSON on the other hand, that would have been impacted or affected by a joint venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

LA 133487811v11

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance. LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad. LeEco also objects that the Request is unintelligible. LeEco further objects that the phrase "would have been impacted or affected by a joint venture" is vague and ambiguous and, as phrased, calls for speculation.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications. Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as

1  unduly burdensome and disproportionate to the needs of the case.

2        LeEco further objects that the definition of "Affiliates" is overbroad, vague and

3  ambiguous and seeks the documents and communications of third parties or documents

4  and communications which are not in LeEco's possession, custody or control.

5  Furthermore, this Request, which seeks discovery from Unrelated Third Parties

6  supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

7  irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

8  to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

9  Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

10  escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

11  other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

12  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

13  LeTechnology, Inc. is not a party to this action.

14  **REQUEST FOR PRODUCTION NO. 32:**

15        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts

16  by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to develop and

17  obtain certification of the "LeEco Le App", as required of LeECO under Section 2.1.1 of

18  the FRAMEWORK AGREEMENT.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

20        LeEco restates and incorporates by reference the Preliminary Statement and

21  General Objections set forth above.

22        LeEco further objects that the definition of "Affiliates" is overbroad, vague and

23  ambiguous and seeks the documents and communications of third parties or documents

24  and communications which are not in LeEco's possession, custody or control.

25  Furthermore, this Request, which seeks discovery from Unrelated Third Parties

26  supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

27  irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

28

LA 133487811v11

to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine. Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date. LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018. LeEco expects to complete its rolling production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 33:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to identify and/or obtain "non-cash assets with a fair market value equal to US $50,000,000 as a capital contribution" to contribute to a proposed joint venture with VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

LeEco restates and incorporates by reference the Preliminary Statement and

1 | General Objections set forth above.

2 |     LeEco further objects that the definition of "Affiliates" is overbroad, vague and

3 | ambiguous and seeks the documents and communications of third parties or documents

4 | and communications which are not in LeEco's possession, custody or control.

5 | Furthermore, this Request, which seeks discovery from Unrelated Third Parties

6 | supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

7 | irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

8 | to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

9 | Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

10 | escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

11 | other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

12 | Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

13 | LeTechnology, Inc. is not a party to this action.

14 |     LeEco further objects that this Request appears to seek documents protected by the

15 | attorney-client privilege and work product doctrine.  Defendant objects to producing any

16 | such documents created after this lawsuit was filed that merely "Relate To" the subject

17 | matter of the Request as those documents would clearly be protected by the attorney client

18 | privilege and attorney work product doctrine.  LeEco further objects to logging all

19 | privileged and work product documents created after this lawsuit was filed as unduly

20 | burdensome and disproportionate to the needs of the case.

21 |     Subject to and without waiving any of its objections, LeEco responds as follows:

22 | LeEco conducted a reasonable search for documents within its possession, custody or

23 | control and no responsive documents exist.

24 | **REQUEST FOR PRODUCTION NO. 34:**

25 |     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to ALL

26 | assets owned by LTI or financial resources available to LTI, at any time between July 6,

27 | 2016 and the present, that were available to satisfy LTI's representation in Section 5(d) of

28 |

1   the GUARANTY that LTI would have "the financial capacity to pay and perform the

2   Obligation" of LeECO to- pay the Buyer Termination Fee Remainder if it should become

3   due under the MERGER AGREEMENT and that LTI "shall maintain such financial

4   capacity for so long as this Guarantee shall remain in effect."

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

6        LeEco restates and incorporates by reference the Preliminary Statement and

7   General Objections set forth above.  LeEco further objects to this Request as premature

8   and improper because Vizio's second through sixth causes of action in the FAC are

9   subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

10  Dismiss, then the information and documents sought by this Request are not relevant,

11  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

12  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

13  release of all claims for breach of the Merger Agreement (including its various theories of

14  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

15  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

16  negotiations regarding the Merger Agreement, including the negotiation or entry into the

17  Merger Agreement, any breach of the Merger Agreement, or the termination of the

18  Merger Agreement has any relevance.  The Guaranty only applied to the Buyer

19  Termination Fee Remainder which was eliminated following the Parties' agreement they

20  were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

21  the mutual walk-away without there being any Buyer Termination Fee Penalty (including

22  but not limited to the Buyer Termination Fee Remainder).

23       LeEco further objects that this Request is compound and overbroad.  LeEco further

24  objects that the phrase "total financial resources available to" is vague and ambiguous, and

25  as phrased, calls for speculation.

26       LeEco further objects that, as phrased, this Request appears to seek documents that

27  are equally available to Vizio.  LeEco objects to searching for and producing documents

28

1    equally available to Vizio.

2          LeEco further objects that Request seeks the documents and communications of

3    third parties or documents and communications which are not in LeEco's possession,

4    custody or control.  Furthermore, this Request, which seeks discovery from Unrelated

5    Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

6    is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the

7    case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

8    (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million

9    in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

10   other in the context of the proposed China JV.  Moreover, LeTechnology, Inc. is not a

11   party to this action.

12         LeEco further objects that this Request appears to seek documents and

13   communications protected by the attorney-client privilege and work product doctrine.

14   LeEco objects to producing any privileged communications.  Defendant objects to

15   producing any such documents created after this lawsuit was filed that merely "Relate To"

16   the subject matter of the Request as those documents would clearly be protected by the

17   attorney client privilege and attorney work product doctrine.  LeEco further objects to

18   logging all privileged and work product documents created after this lawsuit was filed as

19   unduly burdensome and disproportionate to the needs of the case.

20   **REQUEST FOR PRODUCTION NO. 35:**

21         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

22   payments or transfers made by LTI after July 6, 2016, if any, in which the total assets then

23   owned by LTI, or the total financial resources available to LTI, was less than

24   $50,000,000.00 either before and/or after the transaction.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

26         LeEco restates and incorporates by reference the Preliminary Statement and

27   General Objections set forth above.  LeEco further objects to this Request as premature

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)
LA 133487811v11

1   and improper because Vizio's second through sixth causes of action in the FAC are

2   subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

3   Dismiss, then the information and documents sought by this Request are not relevant,

4   making the Request disproportionate to the needs of the case.  LeEco contends that, at this

5   stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

6   release of all claims for breach of the Merger Agreement (including its various theories of

7   fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

8   of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

9   negotiations regarding the Merger Agreement, including the negotiation or entry into the

10  Merger Agreement, any breach of the Merger Agreement, or the termination of the

11  Merger Agreement has any relevance.  The Guaranty only applied to the Buyer

12  Termination Fee Remainder which was eliminated following the Parties' agreement they

13  were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

14  the mutual walk-away without there being any Buyer Termination Fee Penalty (including

15  but not limited to the Buyer Termination Fee Remainder).

16          LeEco further objects that this Request is compound and overbroad. LeEco further

17  objects that the phrase "total financial resources available to" is vague and ambiguous, and

18  as phrased, calls for speculation.

19          LeEco further objects that, as phrased, this Request appears to seek documents that

20  are equally available to Vizio.  LeEco objects to searching for and producing documents

21  equally available to Vizio.

22          LeEco further objects that Request seeks the documents and communications of

23  third parties or documents and communications which are not in LeEco's possession,

24  custody or control.  Furthermore, this Request, which seeks discovery from Unrelated

25  Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

26  is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the

27  case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1  (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million
2  in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each
3  other in the context of the proposed China JV.  Moreover, LeTechnology, Inc. is not a
4  party to this action.
5      LeEco further objects that this Request appears to seek documents and
6  communications protected by the attorney-client privilege and work product doctrine.
7  LeEco objects to producing any privileged communications.  Defendant objects to
8  producing any such documents created after this lawsuit was filed that merely "Relate To"
9  the subject matter of the Request as those documents would clearly be protected by the
10  attorney client privilege and attorney work product doctrine.  LeEco further objects to
11  logging all privileged and work product documents created after this lawsuit was filed as
12  unduly burdensome and disproportionate to the needs of the case.
13  **REQUEST FOR PRODUCTION NO. 36:**
14      ANY and ALL articles of incorporation, amended articles of incorporation, bylaws,
15  amended bylaws and operating agreements in effect for LeECO, GLOBAL, LELE, LTI,
16  LREG, and/or any of their AFFILIATES at any time after January 1, 2012.
17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**
18      LeEco restates and incorporates by reference the Preliminary Statement and
19  General Objections set forth above.
20      LeEco objects that this Request compound and is overbroad as to time.
21      LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous
22  and seeks the documents and communications of third parties or documents and
23  communications which are not in LeEco's possession, custody or control.  Furthermore,
24  this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"
25  with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not
26  proportional to the needs of the case.  Particularly if the case is limited to a breach of the
27  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
28

1  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

2  remaining dispute concerns the Parties' obligations to each other in the context of the

3  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

4  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

5  Real Estate Group LLC are not parties to this action.

6          LeEco further objects that this Request appears to seek documents protected by the

7  attorney-client privilege and work product doctrine.  LeEco further objects to logging all

8  privileged and work product documents created after this lawsuit was filed as unduly

9  burdensome and disproportionate to the needs of the case.

10         Subject to and without waiving any of its objections, LeEco responds as follows:

11  LeEco will conduct a reasonable search of documents within its possession, custody or

12  control.  LeEco will produce nonprivileged documents, from 2014 to the present, in its

13  possession, custody and control (on behalf of LeEco only), identified during the search on

14  a rolling basis, starting on April 25, 2018.  LeEco expects to complete its rolling

15  production on or before approximately July 25, 2018.

16  **REQUEST FOR PRODUCTION NO. 37:**

17         DOCUMENTS sufficient to identify ALL officers, directors, partners, shareholders,

18  and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES

19  at any time after January 1, 2012.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

21         LeEco restates and incorporates by reference the Preliminary Statement and

22  General Objections set forth above.

23         LeEco objects that this Request is compound and is overbroad as to time.

24         LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

25  and seeks the documents and communications of third parties or documents and

26  communications which are not in LeEco's possession, custody or control.  Furthermore,

27  this Request, which seeks discovery Unrelated Third Parties  supposedly "affiliated" with

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)
LA 133487811v11

1  LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

2  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

3  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

4  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

5  remaining dispute concerns the Parties' obligations to each other in the context of the

6  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

7  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

8  Real Estate Group LLC are not parties to this action.

9      LeEco objects that the Request appears calculated merely to harass and is vague,

10  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

11  overbroad.

12  **REQUEST FOR PRODUCTION NO. 38:**

13      ANY and ALL shares of stock, stock certificates, partnership interests, or

14  membership interests currently held or owned by any PERSONS in LeECO, GLOBAL,

15  LELE, LTI, LREG and/or any of their AFFILIATES.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

17      LeEco restates and incorporates by reference the Preliminary Statement and

18  General Objections set forth above.

19      LeEco objects that this Request is compound and is overbroad as to time.

20      LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

21  and seeks the documents and communications of third parties or documents and

22  communications which are not in LeEco's possession, custody or control.  Furthermore,

23  this Request, which seeks discovery Unrelated Third Parties  supposedly "affiliated" with

24  LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

25  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

26  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

27  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

28

1    remaining dispute concerns the Parties' obligations to each other in the context of the

2    proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

3    Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

4    Real Estate Group LLC are not parties to this action.

5         LeEco objects that the Request appears calculated merely to harass and is vague,

6    ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

7    overbroad.

8    **REQUEST FOR PRODUCTION NO. 39:**

9         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY

10   contract or agreement - - INCLUDING all written amendments and supplements to any

11   such contract or agreement and all written assignments and modifications of any such

12   contract or agreement - - whereby any PERSONS acquired on any date after January 1,

13   2012, either in their own respective names or -under and pursuant to any fictitious

14   business names, any right, the or interest in or to LeECO, GLOBAL, LELE, LTI, LREG

15   and/or any of their AFFILIATES, and each or any of their respective employees,-shares of

16   stock, partnership interests, membership interests, assets and/or liabilities, INCLUDING

17   all loan commitments, offers to purchase, bills of sale, purchase orders, deposit receipts,

18   guaranty agreements, stock transfer agreements, membership interest transfer agreements,

19   credit agreements, sales orders, partnership agreements, sales agreements, assignment

20   agreements, hypothecation agreements, deregistration agreements, dissolution agreements,

21   purchase agreements, options agreements, stock agreements, shares of stock, certificates

22   of stock, joint venture agreements, asset sale agreements, debt payment agreements,

23   accommodation agreements, debt protection agreements, asset transfer agreements,

24   indemnity agreements, defense agreements, hold harmless agreements, employee sharing

25   agreements, employee transfer agreements, security agreements, financing agreements,

26   memorandum agreements, letter agreements, loan agreements, insolvency agreements,

27   intercompany transfer agreements, escrow agreements, operating agreements, loan

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

1   commitments, limited liability company agreements, assumption agreements, liquidation

2   agreements, winding up agreements, creditor's agreements, letters of credit, asset

3   distribution or preservation agreements, liability distribution or transfer agreements,

4   membership distribution or transfer agreements, payment records, promissory notes,

5   governmental filings, security instruments, deeds and deeds of trust.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

7         LeEco restates and incorporates by reference the Preliminary Statement and

8   General Objections set forth above.

9         LeEco objects that this Request is compound and is overbroad as to time.

10        LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

11   and seeks the documents and communications of third parties or documents and

12   communications which are not in LeEco's possession, custody or control.  Furthermore,

13   this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

14   with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

15   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

16   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

17   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

18   remaining dispute concerns the Parties' obligations to each other in the context of the

19   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

20   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

21   Real Estate Group LLC are not parties to this action.

22        LeEco objects that the Request appears calculated merely to harass and is vague,

23   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

24   overbroad.

25   **REQUEST FOR PRODUCTION NO. 40:**

26        ANY and ALL agendas, corporate minutes, and corporate resolutions for ALL

27   meetings of the Board of Directors and/or Managers for LeECO, GLOBAL, LELE, LTI,

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1   and LREG held on any date after January 1, 2012.

2   **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

3         LeEco restates and incorporates by reference the Preliminary Statement and

4   General Objections set forth above.

5         LeEco objects that this Request is compound and is overbroad as to time.

6         LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

7   and seeks the documents and communications of third parties or documents and

8   communications which are not in LeEco's possession, custody or control.  Furthermore,

9   this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

10  with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

11  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

12  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

13  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

14  remaining dispute concerns the Parties' obligations to each other in the context of the

15  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

16  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

17  Real Estate Group LLC are not parties to this action.

18        LeEco objects that the Request appears calculated merely to harass and is vague,

19  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

20  overbroad.

21  **REQUEST FOR PRODUCTION NO. 41:**

22        ANY and ALL agendas, minutes, and resolutions for ALL meetings of the

23  shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any date

24  after January 1, 2012.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

26        LeEco restates and incorporates by reference the Preliminary Statement and

27  General Objections set forth above.

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1    LeEco objects that this Request is compound and is overbroad as to time.

2    LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous
3    and seeks the documents and communications of third parties or documents and
4    communications which are not in LeEco's possession, custody or control.  Furthermore,
5    this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"
6    with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not
7    proportional to the needs of the case.  Particularly if the case is limited to a breach of the
8    Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
9    payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The
10   remaining dispute concerns the Parties' obligations to each other in the context of the
11   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting
12   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco
13   Real Estate Group LLC are not parties to this action.

14   LeEco objects that the Request appears calculated merely to harass and is vague,
15   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
16   overbroad.

17   **REQUEST FOR PRODUCTION NO. 42:**

18   ANY and ALL voting or operating agreements among shareholders or members for
19   LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any date after January 1,
20   2012.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

22   LeEco restates and incorporates by reference the Preliminary Statement and
23   General Objections set forth above.

24   LeEco objects that this Request is compound and is overbroad as to time.

25   LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous
26   and seeks the documents and communications of third parties or documents and
27   communications which are not in LeEco's possession, custody or control.  Furthermore,

28

LA 133487811v11

1  this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

2  with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

3  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

4  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

5  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

6  remaining dispute concerns the Parties' obligations to each other in the context of the

7  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

8  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

9  Real Estate Group LLC are not parties to this action.

10      LeEco objects that the Request appears calculated merely to harass and is vague,

11  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

12  overbroad.

13  **REQUEST FOR PRODUCTION NO. 43:**

14      ANY and ALL contracts and agreements between or among LeECO, GLOBAL,

15  LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in effect at any point

16  in time after January 1, 2012.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

18      LeEco restates and incorporates by reference the Preliminary Statement and

19  General Objections set forth above.

20      LeEco objects that this Request is compound and is overbroad as to time.

21      LeEco further objects that this Request is compound and overbroad, particularly in

22  its request for "Any and All contracts and agreements between or among…."  LeEco

23  further objects to this Request on the grounds that it fails to describe the items for

24  production with reasonable particularity as required by Rule 34, as the Request is not

25  tethered to the claims at issue in this lawsuit.  LeEco objects that the Request appears

26  calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional

27  to the needs of the case, compound and overbroad.

28

LA 133487811v11

1  LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

2  and seeks the documents and communications of third parties or documents and

3  communications which are not in LeEco's possession, custody or control.  Furthermore,

4  this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

5  LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

6  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

7  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

8  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

9  remaining dispute concerns the Parties' obligations to each other in the context of the

10  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

11  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

12  Real Estate Group LLC are not parties to this action.

13  **REQUEST FOR PRODUCTION NO. 44:**

14  ANY and ALL DOCUMENTS prepared at any time since 2012 and through and

15  including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG and/or any of

16  their AFFILIATES represented, stated, or otherwise held out that LeECO, MERGER

17  SUB, LTI, OR LREG were a part of, unit, or division of LELE or GLOBAL and/or to be

18  substantially the same as LELE or GLOBAL, INCLUDING advertising or promotional

19  materials, press releases, WeChat and other social media postings, investment reports,

20  financial documents, and ANY DOCUMENTS submitted to, or filed with, ANY

21  governmental, regulatory or market entity.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

23  LeEco restates and incorporates by reference the Preliminary Statement and

24  General Objections set forth above.

25  LeEco objects that this Request is compound and is overbroad as to time.

26  LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

27  and seeks the documents and communications of third parties or documents and

28

1   communications which are not in LeEco's possession, custody or control.  Furthermore,

2   this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

3   with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

4   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

5   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

6   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

7   remaining dispute concerns the Parties' obligations to each other in the context of the

8   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

9   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

10   Real Estate Group LLC are not parties to this action.

11       LeEco objects that the Request appears calculated merely to harass and is vague,

12   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

13   overbroad.

14       LeEco further objects that this Request appears to seek documents protected by the

15   attorney-client privilege and work product doctrine.  LeEco further objects to logging all

16   privileged and work product documents created after this lawsuit was filed as unduly

17   burdensome and disproportionate to the needs of the case.

18   **REQUEST FOR PRODUCTION NO. 45:**

19       DOCUMENTS sufficient to identify the location of the headquarters and all

20   administrative, manufacturing and distribution facilities for LeECO, GLOBAL, LELE,

21   LTI, LREG and/or any of their AFFILIATES at all times after January 1, 2012 and

22   through the present day.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

24       LeEco restates and incorporates by reference the Preliminary Statement and

25   General Objections set forth above.

26       LeEco objects that the Request is compound and is overbroad as to time.

27       LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

1  and seeks the documents and communications of third parties or documents and
2  communications which are not in LeEco's possession, custody or control.  Furthermore,
3  this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"
4  with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not
5  proportional to the needs of the case.  Particularly if the case is limited to a breach of the
6  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
7  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The
8  remaining dispute concerns the Parties' obligations to each other in the context of the
9  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting
10  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco
11  Real Estate Group LLC are not parties to this action.

12      LeEco objects that the Request calls for confidential information and/or trade
13  secrets.

14      LeEco objects that the Request appears calculated merely to harass and is vague,
15  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
16  overbroad.

17      LeEco further objects that this Request appears to seek documents protected by the
18  attorney-client privilege and work product doctrine.  LeEco further objects to logging all
19  privileged and work product documents created after this lawsuit was filed as unduly
20  burdensome and disproportionate to the needs of the case.

21      Subject to and without waiving any of its objections, LeEco responds as follows:
22  LeEco will conduct a reasonable search of documents within its possession, custody or
23  control and, subject to entry of a protective order, produce any documents, from 2014 to
24  the present, sufficient to identify the location of the headquarters of LeEco.  LeEco will
25  produce nonprivileged documents identified during the search on a rolling basis, starting
26  on April 25, 2018.  LeEco expects to complete its rolling production on or before
27  approximately July 25, 2018.

28

**REQUEST FOR PRODUCTION NO. 46:**

DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012 and through the present day. "Identify" in this request means to provide the full name, title, and current (or last known) address and phone number of each employee, the entity with which each- individual was employed, the date on which the individual's employment began, and, if the individual is no longer employed, the dates of his or her service with LeECO, GLOBAL, LELE, LTI, LREG or their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time. LeEco further objections that the information sought is irrelevant, and not proportional to the needs of the case as there is no allegation of any employee acting outside the scope of their authority.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

1   LeEco objects that the Request appears calculated merely to harass and is vague,

2   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

3   overbroad.

4   **REQUEST FOR PRODUCTION NO. 47:**

5   DOCUMENTS sufficient to identify ALL employees, managers, consultants,

6   independent contractors, agents, attorneys, accountants, officers and/or directors shared

7   by, used by, loaned to, or otherwise transferred between one or more of LeECO;

8   GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after

9   January 1, 2012.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

11   LeEco restates and incorporates by reference the Preliminary Statement and

12   General Objections set forth above.

13   LeEco objects that this Request is compound and is overbroad as to time.

14   LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

15   and seeks the documents and communications of third parties or documents and

16   communications which are not in LeEco's possession, custody or control.  Furthermore,

17   this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

18   LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

19   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

20   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

21   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

22   remaining dispute concerns the Parties' obligations to each other in the context of the

23   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

24   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

25   Real Estate Group LLC are not parties to this action.

26   LeEco objects that the Request appears calculated merely to harass and is vague,

27   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

1  overbroad.

2  **REQUEST FOR PRODUCTION NO. 48:**

3  ANY and ALL DOCUMENTS RELATING TO monies transferred by, between or

4  among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES since

5  January 1, 2012, and through and including the present date, INCLUDING intercorporate

6  transfers, hypothecations, loans, gifts, dividends, earnings and profits.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

8  LeEco restates and incorporates by reference the Preliminary Statement and

9  General Objections set forth above.

10  LeEco objects that this Request is compound and is overbroad as to time.

11  LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

12  and seeks the documents and communications of third parties or documents and

13  communications which are not in LeEco's possession, custody or control.  Furthermore,

14  this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

15  with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

16  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

17  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

18  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

19  remaining dispute concerns the Parties' obligations to each other in the context of the

20  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

21  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

22  Real Estate Group LLC are not parties to this action.

23  LeEco objects that the Request appears calculated merely to harass and is vague,

24  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

25  overbroad.

26  LeEco further objects that this Request appears to seek documents protected by the

27  attorney-client privilege and work product doctrine.  LeEco further objects to logging all

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1  privileged and work product documents created after this lawsuit was filed as unduly

2  burdensome and disproportionate to the needs of the case.

3  **REQUEST FOR PRODUCTION NO. 49:**

4        ANY and ALL DOCUMENTS RELATING TO contracts or agreements with third

5  parties, loans, other obligations or instruments of debt that were paid, cosigned or

6  guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES

7  for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since January 1, 2012, and

8  through and including the present date.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

10        LeEco restates and incorporates by reference the Preliminary Statement and

11  General Objections set forth above.

12        LeEco objects that this Request is compound and is overbroad as to time.

13        LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

14  and seeks the documents and communications of third parties or documents and

15  communications which are not in LeEco's possession, custody or control.  Furthermore,

16  this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

17  LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

18  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

19  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

20  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

21  remaining dispute concerns the Parties' obligations to each other in the context of the

22  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

23  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

24  Real Estate Group LLC are not parties to this action.

25        LeEco objects that the Request appears calculated merely to harass and is vague,

26  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

27  overbroad.

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1    LeEco further objects that this Request appears to seek documents protected by the

2  attorney-client privilege and work product doctrine.  LeEco further objects to logging all

3  privileged and work product documents created after this lawsuit was filed as unduly

4  burdensome and disproportionate to the needs of the case.

5  **REQUEST FOR PRODUCTION NO. 50:**

6    ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

7  GLOBAL, LELE, LTI, and LREG .at or about (a) the date of its incorporation or

8  formation, and (b) from and after January 1, 2012 and including the present date.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

10    LeEco restates and incorporates by reference the Preliminary Statement and

11  General Objections set forth above.

12    LeEco objects that this Request is compound and is overbroad as to time.

13    LeEco objects that the Request seeks the documents and communications of third

14  parties or documents and communications which are not in LeEco's possession, custody

15  or control.  Furthermore, this Request, which seeks discovery from Unrelated Third

16  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is

17  overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case

18  is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not

19  the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

20  escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

21  other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

22  Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and

23  LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

24    LeEco objects that the Request appears calculated merely to harass and is vague,

25  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

26  overbroad.

27    LeEco further objects that this Request appears to seek documents protected by the

28

1   attorney-client privilege and work product doctrine.  LeEco further objects to logging all

2   privileged and work product documents created after this lawsuit was filed as unduly

3   burdensome and disproportionate to the needs of the case.

4   **REQUEST FOR PRODUCTION NO. 51:**

5        ANY and ALL financial statements and analyses for LeECO, GLOBAL, LELE,

6   LTI, and LREG since January 1, 2012, and through and including the present date,

7   INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance sheets, and

8   4) ANY financial summaries or reports prepared for a) the use of JIA or other executives

9   at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential investors in, joint

10  venturers with, or lenders to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

11  AFFILIATES.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

13       LeEco restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.

15       LeEco objects that this Request is compound and is overbroad as to time.

16       LeEco objects that the Request seeks the documents and communications of third

17  parties or documents and communications which are not in LeEco's possession, custody

18  or control.  Furthermore, this Request, which seeks discovery from Unrelated Third

19  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is

20  overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case

21  is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not

22  the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

23  escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

24  other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

25  Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and

26  LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

27       LeEco objects that the Request appears calculated merely to harass and is vague,

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
2  overbroad.

3        LeEco further objects that this Request appears to seek documents protected by the
4  attorney-client privilege and work product doctrine. LeEco further objects to logging all
5  privileged and work product documents created after this lawsuit was filed as unduly
6  burdensome and disproportionate to the needs of the case.

7  **REQUEST FOR PRODUCTION NO. 52:**

8        ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits of
9  LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through and
10  including the present date.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

12        LeEco restates and incorporates by reference the Preliminary Statement and
13  General Objections set forth above.

14        LeEco objects that this Request is compound and is overbroad as to time.

15        LeEco objects that the Request seeks the documents and communications of third
16  parties or documents and communications which are not in LeEco's possession, custody
17  or control. Furthermore, this Request, which seeks discovery from Unrelated Third
18  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is
19  overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case
20  is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not
21  the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in
22  escrow that is disputed. The remaining dispute concerns the Parties' obligations to each
23  other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele
24  Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and
25  LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

26        LeEco objects that the Request appears calculated merely to harass and is vague,
27  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1 | overbroad.

2 |      LeEco further objects that this Request appears to seek documents protected by the

3 | attorney-client privilege and work product doctrine.  LeEco further objects to logging all

4 | privileged and work product documents created after this lawsuit was filed as unduly

5 | burdensome and disproportionate to the needs of the case.

6 | **REQUEST FOR PRODUCTION NO. 53:**

7 |      DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible and

8 | intangible assets of any kind with a value in excess of $100,000 in which LeECO,

9 | GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES possessed an

10 | ownership interest at any point after July 1, 2016. "Identify" in this request means to

11 | provide the description and location for each tangible and intangible asset, the nature and

12 | size of the interest in that asset (e.g. a 50% equity interest, a joint owner in common), and

13 | the last known market value of-the- asset.

14 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

15 |      LeEco restates and incorporates by reference the Preliminary Statement and

16 | General Objections set forth above.

17 |      LeEco objects that this Request is compound and is overbroad as to time.

18 |      LeEco objects that the Request seeks the documents and communications of third

19 | parties or documents and communications which are not in LeEco's possession, custody

20 | or control.  Furthermore, this Request, which seeks discovery from Unrelated Third

21 | Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is

22 | overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case

23 | is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not

24 | the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

25 | escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

26 | other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

27 | Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and

28 |

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1    LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

2         LeEco objects that the Request appears calculated merely to harass and is vague,

3    ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

4    overbroad.

5         LeEco further objects that this Request appears to seek documents protected by the

6    attorney-client privilege and work product doctrine.  LeEco further objects to logging all

7    privileged and work product documents created after this lawsuit was filed as unduly

8    burdensome and disproportionate to the needs of the case.

9    **REQUEST FOR PRODUCTION NO. 54:**

10        DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or

11   liabilities of any kind with a value in excess of $100,000 owed by LeECO, GLOBAL,

12   LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point after July 1, 2016.

13   "Identify" in this request means to provide the type of liability, the amount currently

14   owed, the PERSON to whom the liability is owed and that PERSON' s address and

15   telephone number.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

17        LeEco restates and incorporates by reference the Preliminary Statement and

18   General Objections set forth above.

19        LeEco objects that this Request is compound and is overbroad as to time.

20        LeEco objects that the Request seeks the documents and communications of third

21   parties or documents and communications which are not in LeEco's possession, custody

22   or control.  Furthermore, this Request, which seeks discovery from Unrelated Third

23   Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is

24   overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case

25   is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not

26   the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

27   escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

28

LA 133487811v11

1  other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

2  Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and

3  LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

4      LeEco objects that the Request appears calculated merely to harass and is vague,

5  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

6  overbroad.

7      LeEco further objects that this Request appears to seek documents protected by the

8  attorney-client privilege and work product doctrine.  LeEco further objects to logging all

9  privileged and work product documents created after this lawsuit was filed as unduly

10  burdensome and disproportionate to the needs of the case.

11  **REQUEST FOR PRODUCTION NO. 55:**

12      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO plans

13  or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

14  AFFILIATE& to sell or transfer ANY ownership interest in tangible and intangible assets

15  of any kind that it possessed after July 1, 2016.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

17      LeEco restates and incorporates by reference the Preliminary Statement and

18  General Objections set forth above.

19      LeEco objects that this Request is compound and is overbroad as to time.

20      LeEco objects that the Request seeks the documents and communications of third

21  parties or documents and communications which are not in LeEco's possession, custody

22  or control.  Furthermore, this Request, which seeks discovery from Unrelated Third

23  Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is

24  overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case

25  is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not

26  the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

27  escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)
LA 133487811v11

1   other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

2   Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and

3   LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

4   LeEco objects that the Request appears calculated merely to harass and is vague,

5   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

6   overbroad.

7   LeEco further objects that this Request appears to seek documents protected by the

8   attorney-client privilege and work product doctrine.  LeEco further objects to logging all

9   privileged and work product documents created after this lawsuit was filed as unduly

10  burdensome and disproportionate to the needs of the case.

11  **REQUEST FOR PRODUCTION NO. 56:**

12  The Master Agreement executed in or after December 2016 among LREG, the

13  Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS

14  RELATING TO property owned by LREG in Santa Clara, California and ANY and ALL

15  DOCUMENTS OR COMMUNICATIONS RELATING TO the Master Agreement or to

16  ANY transaction that occurred pursuant to the terms of the Master Agreement.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

18  LeEco restates and incorporates by reference the Preliminary Statement and

19  General Objections set forth above.  LeEco objects that the Request is calculated merely

20  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

21  LeEco further objects that this Request is compound and overbroad, particularly in

22  its request for "Any and All Documents or Communications relating to any transfers of

23  equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

24  LeEco further objects that this Request appears to seek documents and

25  communications protected by the attorney-client privilege and work product doctrine.

26  LeEco objects to producing any privileged communications.

27

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

1 | **REQUEST FOR PRODUCTION NO. 57:**

2 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY

3 | transfers of equity interests in LREG to the Genzon Group or to ANY PERSON other than

4 | LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016, INCLUDING agreements,

5 | emails, records of all payments made, and stock certificates or other documents reflecting

6 | the transfer of any interest.

7 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

8 | LeEco restates and incorporates by reference the Preliminary Statement and

9 | General Objections set forth above.  LeEco objects that the Request is calculated merely

10 | to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

11 | LeEco further objects that this Request is compound and overbroad, particularly in

12 | its request for "Any and All Documents or Communications relating to any transfers of

13 | equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

14 | LeEco further objects that this Request appears to seek documents and

15 | communications protected by the attorney-client privilege and work product doctrine.

16 | LeEco objects to producing any privileged communications.

17 | **REQUEST FOR PRODUCTION NO. 58:**

18 | DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial

19 | accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

20 | AFFILIATES was listed as an owner of the account at any point in 2017.

21 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

22 | LeEco restates and incorporates by reference the Preliminary Statement and

23 | General Objections set forth above.

24 | LeEco objects that this Request is compound and is overbroad as to time.

25 | LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

26 | and seeks the documents and communications of third parties or documents and

27 | communications which are not in LeEco's possession, custody or control.  Furthermore,

28 |

1 | this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"
2 | with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not
3 | proportional to the needs of the case. Particularly if the case is limited to a breach of the
4 | Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
5 | payment to Vizio of $40 million and another $10 million in escrow that is disputed. The
6 | remaining dispute concerns the Parties' obligations to each other in the context of the
7 | proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting
8 | Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco
9 | Real Estate Group LLC are not parties to this action.

10 | LeEco objects that the Request appears calculated merely to harass and is vague,
11 | ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
12 | overbroad.

13 | **REQUEST FOR PRODUCTION NO. 59:**

14 | The letter or memo by JIA issued in or about November 2016 RELATING TO
15 | financing issues being experienced by the global LeEco businesses and announcing that
16 | JIA would reduce his own income to one yuan. This letter was referenced in an article by
17 | Bloomberg News, which article can be found at
18 | https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-
19 | confesses-to-cash-crunch-at-leeco.

20 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

21 | LeEco restates and incorporates by reference the Preliminary Statement and
22 | General Objections set forth above. LeEco further objects to this Request as premature
23 | and improper because Vizio's second through sixth causes of action in the FAC are
24 | subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to
25 | Dismiss, then the information and documents sought by this Request are not relevant,
26 | making the Request disproportionate to the needs of the case. LeEco contends that, at this
27 | stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a

28 |

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1 | release of all claims for breach of the Merger Agreement (including its various theories of

2 | fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

3 | of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

4 | negotiations regarding the Merger Agreement, including the negotiation or entry into the

5 | Merger Agreement, any breach of the Merger Agreement, or the termination of the

6 | Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

7 | amend and supplement its Response to this Request, should it become necessary and

8 | appropriate to do so.

9 | Furthermore, this Request, which seeks discovery from Unrelated Third Parties

10 | supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

11 | irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

12 | to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

13 | Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

14 | escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

15 | other in the context of the proposed China JV.  Moreover, Yueting Jia has not been served

16 | with the Summons and FAC.

17 | LeEco further objects that this Request to the extent that is seeks documents and

18 | communications protected by the attorney-client privilege and work product doctrine.

19 | LeEco objects to producing any privileged communications.

20 | **REQUEST FOR PRODUCTION NO. 60:**

21 | ANY and ALL orders issued after January 1, 2016 by ANY court, governmental

22 | entity, or administrative body that has the effect of seizing, or restricting the disposition

23 | of, ANY assets owned by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

24 | AFFILIATES.

25 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

26 | LeEco restates and incorporates by reference the Preliminary Statement and

27 | General Objections set forth above.  LeEco further objects to this Request as premature

28 |

LA 133487811v11

1 | and improper because Vizio's second through sixth causes of action in the FAC are

2 | subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to

3 | Dismiss, then the information and documents sought by this Request are not relevant,

4 | making the Request disproportionate to the needs of the case. LeEco contends that, at this

5 | stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a

6 | release of all claims for breach of the Merger Agreement (including its various theories of

7 | fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

8 | of $40 million, which Vizio acknowledges receiving. Thus, nothing about the

9 | negotiations regarding the Merger Agreement, including the negotiation or entry into the

10 | Merger Agreement, any breach of the Merger Agreement, or the termination of the

11 | Merger Agreement has any relevance. LeEco reserves all rights, including the right to

12 | amend and supplement its Response to this Request, should it become necessary and

13 | appropriate to do so.

14 | LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

15 | and seeks the documents and communications of third parties or documents and

16 | communications which are not in LeEco's possession, custody or control. Furthermore,

17 | this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

18 | with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

19 | proportional to the needs of the case. Particularly if the case is limited to a breach of the

20 | Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

21 | payment to Vizio of $40 million and another $10 million in escrow that is disputed. The

22 | remaining dispute concerns the Parties' obligations to each other in the context of the

23 | proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

24 | Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

25 | Real Estate Group LLC are not parties to this action.

26 | LeEco further objects that this Request to the extent that is seeks documents and

27 | communications protected by the attorney-client privilege and work product doctrine.

28 |

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1 | LeEco objects to producing any privileged communications.

2 | **REQUEST FOR PRODUCTION NO. 61:**

3 |      DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal actions

4 | or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

5 | AFFILIATES filed or pending in the United States at any point after January 1, 2016.

6 | "Identify" in this request means to identify the court or administrative body in which the

7 | action is pending, the name of the action, and the case number(s) of that action or actions.

8 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

9 |      LeEco restates and incorporates by reference the Preliminary Statement and

10 | General Objections set forth above.  LeEco further objects to this Request as premature

11 | and improper because Vizio's second through sixth causes of action in the FAC are

12 | subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

13 | Dismiss, then the information and documents sought by this Request are not relevant,

14 | making the Request disproportionate to the needs of the case.  LeEco contends that, at this

15 | stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

16 | release of all claims for breach of the Merger Agreement (including its various theories of

17 | fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

18 | of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

19 | negotiations regarding the Merger Agreement, including the negotiation or entry into the

20 | Merger Agreement, any breach of the Merger Agreement, or the termination of the

21 | Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

22 | amend and supplement its Response to this Request, should it become necessary and

23 | appropriate to do so.

24 |      LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

25 | and seeks the documents and communications of third parties or documents and

26 | communications which are not in LeEco's possession, custody or control. Furthermore,

27 | this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

28 |

1  with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

2  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

3  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

4  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

5  remaining dispute concerns the Parties' obligations to each other in the context of the

6  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

7  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

8  Real Estate Group LLC are not parties to this action.

9      LeEco further objects that this Request to the extent that is seeks documents and

10  communications protected by the attorney-client privilege and work product doctrine.

11  LeEco objects to producing any privileged communications.

12  **REQUEST FOR PRODUCTION NO. 62:**

13      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY

14  actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

15  AFFILIATES to make payments that were or are due and owing at any point after

16  January 1, 2016.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

18      LeEco restates and incorporates by reference the Preliminary Statement and

19  General Objections set forth above.  LeEco further objects to this Request as premature

20  and improper because Vizio's second through sixth causes of action in the FAC are

21  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

22  Dismiss, then the information and documents sought by this Request are not relevant,

23  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

24  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

25  release of all claims for breach of the Merger Agreement (including its various theories of

26  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

27  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

28

LA 133487811v11

negotiations regarding the Merger Agreement, including the negotiation or entry into the
Merger Agreement, any breach of the Merger Agreement, or the termination of the
Merger Agreement has any relevance.  LeEco reserves all rights, including the right to
amend and supplement its Response to this Request, should it become necessary and
appropriate to do so.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous
and seeks the documents and communications of third parties or documents and
communications which are not in LeEco's possession, custody or control. Furthermore,
this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"
with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not
proportional to the needs of the case.  Particularly if the case is limited to a breach of the
Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The
remaining dispute concerns the Parties' obligations to each other in the context of the
proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting
Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco
Real Estate Group LLC are not parties to this action.

LeEco further objects that this Request to the extent that is seeks documents and
communications protected by the attorney-client privilege and work product doctrine.
LeEco objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 63:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO Jia
Yueting's resignation in July 2017 as Chairman of ANY of the global LeEco businesses,
INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi Holding Co., Ltd.
(Beijing) and/or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

LeEco restates and incorporates by reference the Preliminary Statement and

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

1    General Objections set forth above.  LeEco further objects to this Request as premature

2    and improper because Vizio's second through sixth causes of action in the FAC are

3    subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

4    Dismiss, then the information and documents sought by this Request are not relevant,

5    making the Request disproportionate to the needs of the case.  LeEco contends that, at this

6    stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

7    release of all claims for breach of the Merger Agreement (including its various theories of

8    fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

9    of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

10   negotiations regarding the Merger Agreement, including the negotiation or entry into the

11   Merger Agreement, any breach of the Merger Agreement, or the termination of the

12   Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

13   amend and supplement its Response to this Request, should it become necessary and

14   appropriate to do so.

15          LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

16   and seeks the documents and communications of third parties or documents and

17   communications which are not in LeEco's possession, custody or control. Furthermore,

18   this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

19   LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

20   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

21   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

22   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

23   remaining dispute concerns the Parties' obligations to each other in the context of the

24   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

25   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

26   Real Estate Group LLC are not parties to this action.

27          LeEco further objects that this Request to the extent that is seeks documents and

28

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

1    communications protected by the attorney-client privilege and work product doctrine.

2    LeEco objects to producing any privileged communications.

3    **REQUEST FOR PRODUCTION NO. 64:**

4         ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO the sale,

5    transfer, dissolution, winding up, or liquidation of LELE, GLOBAL, LeECO, LTI, LREG

6    or ANY of their AFFILIATES.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

8         LeEco restates and incorporates by reference the Preliminary Statement and

9    General Objections set forth above.  LeEco further objects to this Request as premature

10   and improper because Vizio's second through sixth causes of action in the FAC are

11   subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

12   Dismiss, then the information and documents sought by this Request are not relevant,

13   making the Request disproportionate to the needs of the case.  LeEco contends that, at this

14   stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

15   release of all claims for breach of the Merger Agreement (including its various theories of

16   fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

17   of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

18   negotiations regarding the Merger Agreement, including the negotiation or entry into the

19   Merger Agreement, any breach of the Merger Agreement, or the termination of the

20   Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

21   amend and supplement its Response to this Request, should it become necessary and

22   appropriate to do so.

23        LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

24   and seeks the documents and communications of third parties or documents and

25   communications which are not in LeEco's possession, custody or control. Furthermore,

26   this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

27   LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

28

LA 133487811v11

1   proportional to the needs of the case.  Particularly if the case is limited to a breach of the
2   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)
3   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The
4   remaining dispute concerns the Parties' obligations to each other in the context of the
5   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting
6   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco
7   Real Estate Group LLC are not parties to this action.

8          LeEco further objects that this Request to the extent that is seeks documents and
9   communications protected by the attorney-client privilege and work product doctrine.
10  LeEco objects to producing any privileged communications.

11  **REQUEST FOR PRODUCTION NO. 65:**

12          ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO plans,
13  discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or ANY of
14  their AFFILIATES to (a) provide notice to, protect or otherwise make arrangements or
15  accommodations for or with their creditors; (b) assign, assume, distribute or transfer any
16  stock, membership interests, actual assets, actual liabilities, contractual obligations,
17  contingent liabilities, contingent assets, or employees of LELE, GLOBAL, LeECO, LTI,
18  LREG or their AFFILIATES, or (c) to indemnify, hold harmless or defend the obligations
19  of any PERSON.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

21          LeEco restates and incorporates by reference the Preliminary Statement and
22  General Objections set forth above.  LeEco further objects to this Request as premature
23  and improper because Vizio's second through sixth causes of action in the FAC are
24  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to
25  Dismiss, then the information and documents sought by this Request are not relevant,
26  making the Request disproportionate to the needs of the case.  LeEco contends that, at this
27  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**
LA 133487811v11

1   release of all claims for breach of the Merger Agreement (including its various theories of

2   fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

3   of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

4   negotiations regarding the Merger Agreement, including the negotiation or entry into the

5   Merger Agreement, any breach of the Merger Agreement, or the termination of the

6   Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

7   amend and supplement its Response to this Request, should it become necessary and

8   appropriate to do so.

9       LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

10  and seeks the documents and communications of third parties or documents and

11  communications which are not in LeEco's possession, custody or control.  Furthermore,

12  this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

13  LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

14  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

15  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

16  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

17  remaining dispute concerns the Parties' obligations to each other in the context of the

18  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

19  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

20  Real Estate Group LLC are not parties to this action.

21

22

23

24

25

26

27

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S**
**REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1    LeEco further objects that this Request to the extent that is seeks documents and

2  communications protected by the attorney-client privilege and work product doctrine.

3  LeEco objects to producing any privileged communications.

4

5  DATED:  April 11, 2018                    GREENBERG TRAURIG, LLP

6

7                                                  By _____

8                                                      Jeff K. Joyner
                                                       Daniel Tyukody
9                                                      Attorneys for Defendant
                                                       LeECO V. LTD.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**90**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, 19th Floor, Los Angeles, CA 90067.

On the date given below, I served the **DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

Robert M. Waxman                              *Attorneys for Plaintiff Vizio, Inc.*
David N. Tarlow
Jason L. Haas
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
Tel: 310-273-6333/Fax: 310-859-2325
rwaxman@ecjlaw.com
dtarlow@ecjlaw.com
jhaas@ecjlaw.com

☒    **(BY FIRST CLASS MAIL)**
I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐    **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons above. I placed the envelope or package for collection and

☐    **(BY PERSONAL SERVICE)**
I caused such envelope to be delivered by hand to the offices listed above.

☒    **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 11, 2018, at Los Angeles, California.

_____
Delilah A. Phiefer

**PROOF OF SERVICE**

LA 133132130v1

EXHIBIT D

Jeff K. Joyner (SBN CA 180485)
*joynerj@gtlaw.com*
Daniel Tyukody (SBN CA 123323)
*tyukodyd@gtlaw.com*
Robert H. Gruber (SBN CA 301620)
*gruberr@gtlaw.com*
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone:  310.586.7700; Facsimile:  310.586.7800

Attorneys for Defendant
LeECO V. LTD.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>          Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL HOLDING LT., a/k/a LE GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; and DOES 1 through 10 ,<br><br>          Defendants. | CASE NO.  8:17-CV-01175-DOC-JDE<br><br>**DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION**<br><br>JUDGE:  Hon. David O. Carter |
| LeECO V. LTD.<br><br>          Counter-Claimant,<br><br>vs.<br><br>VIZIO, a California corporation,<br><br>          Counter-Defendant. | |

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

| | |
|---|---|
| **PROPOUNDING PARTY:** | **Plaintiff Vizio, Inc.** |
| **RESPONDING PARTY:** | **Defendant LeLe Holding Ltd.** |
| **SET NO.:** | **ONE (1)** |

## PRELIMINARY STATEMENT

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant LeLe Holding Ltd. ("LeLe") provides its Objections and Responses to Plaintiff and Counter-Defendant Vizio Inc.'s ("Vizio") First Set of Request for Production of Documents ("Requests"), as follows.

Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

Furthermore, Vizio's Requests are "premature" because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending Motion to Dismiss ("MTD") Vizio's second through sixth causes of action in the First Amended Complaint ("FAC") (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the

Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.

LeLe has not completed investigation of the facts relating to this case, has not completed discovery, and has not completed preparation for trial. Therefore, these responses are based only on the information and documents presently available to and specifically known to LeLe. Further discovery, independent investigation, legal research and analysis may lead to the discovery of additional non-privileged responsive information which may lead to additions to, changes in, and variations from the information, responses and/or objections set forth below.

These responses are given without prejudice to LeLe's right to produce evidence of any subsequently discovered facts, including the right to supplement these responses if it obtains further evidence.

LeLe reserves the right to produce at trial and make reference to any evidence, facts, documents or information not discovered at this time, omitted through good faith error, mistake or oversight, or the relevance of which has not presently been identified by LeLe. LeLe further reserves the right to further modify these responses as a result of subsequently discovered information.

## GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      LeLe objects to the Requests to the extent that they purport to impose obligations on LeLe beyond those required under the Federal Rules of Civil Procedure.

2.      LeLe objects to each of the Requests to the extent that they are overbroad, irrelevant, and not proportional to the needs of the case, particularly to the extent they purport to require the production of "all" documents or "all" communications on a given subject.

3.      LeLe objects to each and every Request to the extent that it seeks information that is protected from discovery or disclosure by the work product doctrine or the attorney-client privilege or any other constitutional, statutory, or judicially recognized privilege, immunity, right of confidentiality or other protection from discovery or disclosure.   LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.   LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

4.      LeLe objects to the Request to the extent that it is unduly burdensome or seeks information or documents that are already in the possession, custody, or control of Vizio or more readily obtainable from other entities, including third-parties and public sources, and are equally accessible to Vizio as to LeLe.

5.      LeLe objects that the definition of "LeLe," "you," and "your" is overbroad in that it incorporates the overbroad definition of all "Persons."   In responding to these Requests, LeLe will interpret "LeLe, "you," or "your" as referring to LeLe Holding Ltd. and anyone authorized to act on its behalf.

6.      LeLe objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks documents which are not in LeLe's possession, custody or control.

7.      LeLe objects to the definitions of "Documents" and "ESI," to the extent they require searching or production of metadata and to the extent they purport to require production in a specified format.   Any responses to these Requests will be based on a mutually agreeable ESI protocol.   Regardless, LeLe objects, at this time, to always producing documents in native format and/or always searching or producing metadata. Those requirements may be appropriate for certain requests, but would be unduly burdensome and disproportionate to the needs of the case for other requests.

8.     LeLe objects to each and every Request to the extent that it seeks LeLe's confidential or proprietary information, or the confidential information of third-parties, including confidential or personal information about LeLe's customers and confidential information about LeLe's operations, sales and financial status.

9.     LeLe objects to each of the Requests to the extent that the burden or expense of responding to such Requests outweighs the benefit of such discovery, and is disproportional to the needs of the case considering the issues at stake at this stage of the proceedings.

10.    LeLe objects to each of the Requests to the extent they are unreasonably cumulative or duplicative, or that the information requested therein is obtainable from some other source that is more convenient, less burdensome, or less expensive.

11.    LeLe objects to each of the Requests to the extent they call for the dissemination of documents or information containing "state secrets," as the term is defined under the People's Republic of China ("PRC") Law on Guarding State Secrets (the "State Secrets Law")

12.    The Responses provided herein, and all information provided by LeLe in response to Plaintiff's Requests, are based on information known at this time, and are made without prejudice to LeLe's right to amend or supplement these responses, as necessary.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the negotiations that resulted in the MERGER AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

1  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

2  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

3  pending Motion to Dismiss for insufficient service of process and lack of personal

4  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

5  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

6  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

7  In addition to being premature, the Requests directed at LeLe and the other individuals

8  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

9  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

10 Request on the grounds that it seeks the documents and communications of third parties or

11 documents and communications which are not in LeLe's possession, custody or control.

12      Furthermore, Vizio's Requests are premature because they pertain to issues that

13 would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

14 second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

15 pending MTD would eliminate Vizio's second through sixth causes of action for breach of

16 the Merger Agreement including its various theories of fraud related to that alleged

17 breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

18 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

19 Thus, nothing about the negotiations regarding the Merger Agreement, including the

20 negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

21 the termination of the Merger Agreement has any relevance, and discovery should be

22 limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

23 rights, including the right to amend and supplement its Responses and Objections to

24 Vizio's Requests, should it become necessary and appropriate to do so.

25      LeLe further objects that this Request is compound and overbroad, particularly in

26 its request for "Any and All Documents or Communications that Relate To the Merger

27 Agreement, drafts of the Merger Agreement, or the negotiations that resulted in the

28 Merger Agreement."

1       LeLe further objects that, as phrased, this Request appears to seek documents that

2   are equally available to Vizio.  LeLe objects to searching for and producing documents

3   equally available to Vizio.

4       LeLe further objects that this Request appears to seek documents and

5   communications protected by the attorney-client privilege and work product doctrine.

6   LeLe objects to producing any privileged communications.  LeLe further objects to

7   producing any such documents created after this lawsuit was filed that merely "Relate To"

8   the subject matter of the Request as those documents would clearly be protected by the

9   attorney client privilege and attorney work product doctrine.  LeLe further objects to

10  logging all privileged and work product documents created after this lawsuit was filed as

11  unduly burdensome and disproportionate to the needs of the case.

12  **REQUEST FOR PRODUCTION NO. 2**:

13      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

14  GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the

15  GUARANTY.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2**:

17      LeLe restates and incorporates by reference the Preliminary Statement and General

18  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

19  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

20  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

21  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

22  pending Motion to Dismiss for insufficient service of process and lack of personal

23  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

24  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

25  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

26  In addition to being premature, the Requests directed at LeLe and the other individuals

27  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

28  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

1  Request on the grounds that it seeks the documents and communications of third parties or

2  documents and communications which are not in LeLe's possession, custody or control.

3        Furthermore, Vizio's Requests are premature because they pertain to issues that

4  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

5  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

6  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

7  the Merger Agreement including its various theories of fraud related to that alleged

8  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

9  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

10  Thus, nothing about the negotiations regarding the Merger Agreement, including the

11  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

12  the termination of the Merger Agreement has any relevance, and discovery should be

13  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

14  rights, including the right to amend and supplement its Responses and Objections to

15  Vizio's Requests, should it become necessary and appropriate to do so.

16        LeLe further objects that this Request is compound and overbroad, particularly in

17  its request for "Any and All Documents or Communications that Relate To the Guaranty,

18  drafts of the Guaranty, or the negotiations that resulted in the Guaranty."

19        LeLe further objects that, as phrased, this Request appears to seek documents that

20  are equally available to Vizio.  LeLe objects to searching for and producing documents

21  equally available to Vizio.

22        LeLe further objects that this Request appears to seek documents and

23  communications protected by the attorney-client privilege and work product doctrine.

24  LeLe objects to producing any privileged communications.  LeLe further objects to

25  producing any such documents created after this lawsuit was filed that merely "Relate To"

26  the subject matter of the Request as those documents would clearly be protected by the

27  attorney client privilege and attorney work product doctrine.  LeLe further objects to

28  logging all privileged and work product documents created after this lawsuit was filed as

1   unduly burdensome and disproportionate to the needs of the case.

2   **REQUEST FOR PRODUCTION NO. 3:**

3        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

4   FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the

5   negotiations that resulted in the FRAMEWORK AGREEMENT.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

7        LeLe restates and incorporates by reference the Preliminary Statement and General

8   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

9   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

10   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

11   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

12   pending Motion to Dismiss for insufficient service of process and lack of personal

13   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

14   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

15   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

16   In addition to being premature, the Requests directed at LeLe and the other individuals

17   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

18   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

19   Request on the grounds that it seeks the documents and communications of third parties or

20   documents and communications which are not in LeLe's possession, custody or control.

21        Furthermore, Vizio's Requests are premature because they pertain to issues that

22   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

23   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

24   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

25   the Merger Agreement including its various theories of fraud related to that alleged

26   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

27   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

28   Thus, nothing about the negotiations regarding the Merger Agreement, including the

1  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

2  the termination of the Merger Agreement has any relevance, and discovery should be

3  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

4  rights, including the right to amend and supplement its Responses and Objections to

5  Vizio's Requests, should it become necessary and appropriate to do so.

6      LeLe further objects that this Request is compound and overbroad, particularly in

7  its request for "Any and All Documents or Communications that Relate To the

8  Framework Agreement, drafts of the Framework Agreement, or the negotiations that

9  resulted in the Framework Agreement."

10     LeLe further objects that, as phrased, this Request appears to seek documents that

11 are equally available to Vizio.  LeLe objects to searching for and producing documents

12 equally available to Vizio.

13     LeLe further objects that this Request appears to seek documents and

14 communications protected by the attorney-client privilege and work product doctrine.

15 LeLe objects to producing any privileged communications.  LeLe further objects to

16 producing any such documents created after this lawsuit was filed that merely "Relate To"

17 the subject matter of the Request as those documents would clearly be protected by the

18 attorney client privilege and attorney work product doctrine.  LeLe further objects to

19 logging all privileged and work product documents created after this lawsuit was filed as

20 unduly burdensome and disproportionate to the needs of the case.

21 **REQUEST FOR PRODUCTION NO. 4**:

22     ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

23 ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations

24 that resulted in the ESCROW AGREEMENT.

25 **RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

26     LeLe restates and incorporates by reference the Preliminary Statement and General

27 Objections set forth above.  LeLe further objects to this Request on the grounds that it is

28 premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

1   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

2   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

3   pending Motion to Dismiss for insufficient service of process and lack of personal

4   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

5   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

6   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

7   In addition to being premature, the Requests directed at LeLe and the other individuals

8   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

9   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

10  Request on the grounds that it seeks the documents and communications of third parties or

11  documents and communications which are not in LeLe's possession, custody or control.

12         Furthermore, Vizio's Requests are premature because they pertain to issues that

13  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

14  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

15  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

16  the Merger Agreement including its various theories of fraud related to that alleged

17  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

18  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

19  Thus, nothing about the negotiations regarding the Merger Agreement, including the

20  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

21  the termination of the Merger Agreement has any relevance, and discovery should be

22  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

23  rights, including the right to amend and supplement its Responses and Objections to

24  Vizio's Requests, should it become necessary and appropriate to do so.

25         LeLe further objects that this Request is compound and overbroad, particularly in

26  its request for "Any and All Documents or Communications that Relate To the Escrow

27  Agreement, drafts of the Escrow Agreement, or the negotiations that resulted in the

28  Escrow Agreement."

1    LeLe further objects that, as phrased, this Request appears to seek documents that

2    are equally available to Vizio.  LeLe objects to searching for and producing documents

3    equally available to Vizio.

4    LeLe further objects that this Request appears to seek documents and

5    communications protected by the attorney-client privilege and work product doctrine.

6    LeLe objects to producing any privileged communications.  LeLe further objects to

7    producing any such documents created after this lawsuit was filed that merely "Relate To"

8    the subject matter of the Request as those documents would clearly be protected by the

9    attorney client privilege and attorney work product doctrine.  LeLe further objects to

10   logging all privileged and work product documents created after this lawsuit was filed as

11   unduly burdensome and disproportionate to the needs of the case.

12   **REQUEST FOR PRODUCTION NO. 5**:

13   ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

14   VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board

15   minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of

16   management meetings, emails, marketing plans, operational plans, financial analyses, and

17   strategy documents.

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

19   LeLe restates and incorporates by reference the Preliminary Statement and General

20   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

21   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

22   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

23   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

24   pending Motion to Dismiss for insufficient service of process and lack of personal

25   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

26   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

27   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

28   In addition to being premature, the Requests directed at LeLe and the other individuals

1   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

2   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

3   Request on the grounds that it seeks the documents and communications of third parties or

4   documents and communications which are not in LeLe's possession, custody or control.

5           Furthermore, Vizio's Requests are premature because they pertain to issues that

6   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

7   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

8   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

9   the Merger Agreement including its various theories of fraud related to that alleged

10  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

11  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

12  Thus, nothing about the negotiations regarding the Merger Agreement, including the

13  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

14  the termination of the Merger Agreement has any relevance, and discovery should be

15  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

16  rights, including the right to amend and supplement its Responses and Objections to

17  Vizio's Requests, should it become necessary and appropriate to do so.

18          LeLe further objects that this Request is compound and overbroad, particularly in

19  its request for "Any and All Documents or Communications that Relate To Vizio or any

20  transaction with Vizio…."  LeLe further objects to this Request on the grounds that it fails

21  to describe the items for production with reasonable particularity as required by Rule 34,

22  as the Request is not tethered to the claims at issue in this lawsuit.  The only transactions

23  related to Vizio that are relevant here are those related to the Framework Agreement and

24  potentially the Merger Agreement depending on how the Court rules on LeEco's Motion

25  to Dismiss (to which LeLe joined).

26          LeLe further objects that this Request appears to seek documents and

27  communications protected by the attorney-client privilege and work product doctrine.

28  LeLe objects to producing any privileged communications.  Read literally, this Request

1  could call for the production of attorney-client privileged communications and work

2  product materials from LeLe's defense team that simply include Vizio's name.  LeLe

3  further objects to producing any such documents created after this lawsuit was filed that

4  merely "Relate To" the subject matter of the Request as those documents would clearly be

5  protected by the attorney client privilege and attorney work product doctrine.  LeLe

6  further objects to logging all privileged and work product documents created after this

7  lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

8  **REQUEST FOR PRODUCTION NO. 6:**

9       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

10  MERGER.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

12       LeLe restates and incorporates by reference the Preliminary Statement and General

13  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

14  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

15  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

16  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

17  pending Motion to Dismiss for insufficient service of process and lack of personal

18  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

19  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

20  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

21  In addition to being premature, the Requests directed at LeLe and the other individuals

22  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

23  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

24  Request on the grounds that it seeks the documents and communications of third parties or

25  documents and communications which are not in LeLe's possession, custody or control.

26       Furthermore, Vizio's Requests are premature because they pertain to issues that

27  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

28  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

1    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

2    the Merger Agreement including its various theories of fraud related to that alleged

3    breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

4    upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

5    Thus, nothing about the negotiations regarding the Merger Agreement, including the

6    negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

7    the termination of the Merger Agreement has any relevance, and discovery should be

8    limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

9    rights, including the right to amend and supplement its Responses and Objections to

10   Vizio's Requests, should it become necessary and appropriate to do so.

11        LeLe further objects that this Request is compound and overbroad, particularly in

12   its request for "Any and All Documents or Communications that Relate To the Merger."

13        LeLe further objects that, as phrased, this Request appears to seek documents that

14   are equally available to Vizio.  LeLe objects to searching for and producing documents

15   equally available to Vizio.

16        LeLe further objects that this Request appears to seek documents and

17   communications protected by the attorney-client privilege and work product doctrine.

18   LeLe objects to producing any privileged communications.  LeLe further objects to

19   producing any such documents created after this lawsuit was filed that merely "Relate To"

20   the subject matter of the Request as those documents would clearly be protected by the

21   attorney client privilege and attorney work product doctrine.  LeLe further objects to

22   logging all privileged and work product documents created after this lawsuit was filed as

23   unduly burdensome and disproportionate to the needs of the case.

24   **REQUEST FOR PRODUCTION NO. 7**:

25        ALL DOCUMENTS and COMMUNICATIONS posted by LeECO, GLOBAL,

26   LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or

27   the MERGER.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

1   LeLe further objects that this Request is compound and overbroad, particularly in

2   its request for "Any and All Documents or Communications … Relating To Vizio or the

3   Merger."   LeLe further objects to this Request on the grounds that it fails to describe the

4   items for production with reasonable particularity as required by Rule 34, as the Request

5   is not tethered to the claims at issue in this lawsuit.  The only transactions related to Vizio

6   that are relevant here are those related to the Framework Agreement and potentially the

7   Merger Agreement depending on how the Court rules on LeEco's Motion to Dismiss (to

8   which LeLe joined).

9   LeLe further objects that the definition of "Affiliates" is overbroad, vague and

10  ambiguous and seeks the documents and communications of third parties or documents

11  and communications which are not in LeLe's possession, custody or control.

12  Furthermore, this Request, which seeks discovery from individuals and entities

13  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

14  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

15  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

16  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

17  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

18  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

19  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

20  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

21  LeLe further objects that this Request appears to seek documents and

22  communications protected by the attorney-client privilege and work product doctrine.

23  LeLe objects to producing any privileged communications.  Read literally, this Request

24  could call for the production of attorney-client privileged communications and work

25  product materials from LeLe's defense team that simply include Vizio's name.  LeLe

26  further objects to producing any such documents created after this lawsuit was filed that

27  merely "Relate To" the subject matter of the Request as those documents would clearly be

28  protected by the attorney client privilege and attorney work product doctrine.  LeLe

1  further objects to logging all privileged and work product documents created after this

2  lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

3  **REQUEST FOR PRODUCTION NO. 8**:

4       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

5  ESCROW.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8**:

7       LeLe restates and incorporates by reference the Preliminary Statement and General

8  Objections set forth above. LeLe further objects to this Request on the grounds that it is

9  premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

10  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

11  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

12  pending Motion to Dismiss for insufficient service of process and lack of personal

13  jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

14  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

15  with California whatsoever. Furthermore, LeLe was never properly served in this action.

16  In addition to being premature, the Requests directed at LeLe and the other individuals

17  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

18  irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this

19  Request on the grounds that it seeks the documents and communications of third parties or

20  documents and communications which are not in LeLe's possession, custody or control.

21       Furthermore, Vizio's Requests are premature because they pertain to issues that

22  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

23  second through sixth causes of action in the FAC (in which LeLe joined). LeEco's

24  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

25  the Merger Agreement including its various theories of fraud related to that alleged

26  breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

27  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

28  Thus, nothing about the negotiations regarding the Merger Agreement, including the

1   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

2   the termination of the Merger Agreement has any relevance, and discovery should be

3   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

4   rights, including the right to amend and supplement its Responses and Objections to

5   Vizio's Requests, should it become necessary and appropriate to do so.

6       LeLe further objects that this Request is compound and overbroad, particularly in

7   its request for "Any and All Documents or Communications that Relate To the Escrow."

8       LeLe further objects that, as phrased, this Request appears to seek documents that

9   are equally available to Vizio.  LeLe objects to searching for and producing documents

10  equally available to Vizio.

11      LeLe further objects that this Request appears to seek documents and

12  communications protected by the attorney-client privilege and work product doctrine.

13  LeLe objects to producing any privileged communications.  LeLe further objects to

14  producing any such documents created after this lawsuit was filed that merely "Relate To"

15  the subject matter of the Request as those documents would clearly be protected by the

16  attorney client privilege and attorney work product doctrine.  LeLe further objects to

17  logging all privileged and work product documents created after this lawsuit was filed as

18  unduly burdensome and disproportionate to the needs of the case.

19  **REQUEST FOR PRODUCTION NO. 9**:

20      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

21  benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or

22  any of their AFFILIATES expected to receive from the MERGER.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

24      LeLe restates and incorporates by reference the Preliminary Statement and General

25  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

26  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

27  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

28  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

19                    CASE NO.  8:17-CV-01175-DOC-JDE

1   pending Motion to Dismiss for insufficient service of process and lack of personal

2   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

3   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

4   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

5   In addition to being premature, the Requests directed at LeLe and the other individuals

6   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

7   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

8   Request on the grounds that it seeks the documents and communications of third parties or

9   documents and communications which are not in LeLe's possession, custody or control.

10      Furthermore, Vizio's Requests are premature because they pertain to issues that

11   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

12   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

13   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

14   the Merger Agreement including its various theories of fraud related to that alleged

15   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

16   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

17   Thus, nothing about the negotiations regarding the Merger Agreement, including the

18   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

19   the termination of the Merger Agreement has any relevance, and discovery should be

20   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

21   rights, including the right to amend and supplement its Responses and Objections to

22   Vizio's Requests, should it become necessary and appropriate to do so.

23      LeLe further objects that this Request is compound and overbroad, particularly in

24   its request for "Any and All Documents or Communications that Relate To the benefits—

25   financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of

26   their Affiliates expected to receive from the Merger."

27      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

28   ambiguous and seeks the documents and communications of third parties or documents

1    and communications which are not in LeLe's possession, custody or control.

2    Furthermore, this Request, which seeks discovery from individuals and entities

3    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

4    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

5    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

6    limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

7    another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

8    and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

9    LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

10   the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

11          LeLe further objects that this Request appears to seek documents and

12   communications protected by the attorney-client privilege and work product doctrine.

13   LeLe objects to producing any privileged communications.  LeLe further objects to

14   producing any such documents created after this lawsuit was filed that merely "Relate To"

15   the subject matter of the Request as those documents would clearly be protected by the

16   attorney client privilege and attorney work product doctrine.  LeLe further objects to

17   logging all privileged and work product documents created after this lawsuit was filed as

18   unduly burdensome and disproportionate to the needs of the case.

19   **REQUEST FOR PRODUCTION NO. 10:**

20          ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

21   benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or

22   any of their AFFILIATES expected to receive from the public announcement of the

23   MERGER AGREEMENT or that any of those PERSONS actually received following that

24   announcement.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

26          LeLe restates and incorporates by reference the Preliminary Statement and General

27   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

28   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

2    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

3    pending Motion to Dismiss for insufficient service of process and lack of personal

4    jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

5    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

6    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

7    In addition to being premature, the Requests directed at LeLe and the other individuals

8    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

9    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

10    Request on the grounds that it seeks the documents and communications of third parties or

11    documents and communications which are not in LeLe's possession, custody or control.

12        Furthermore, Vizio's Requests are premature because they pertain to issues that

13    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

14    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

15    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

16    the Merger Agreement including its various theories of fraud related to that alleged

17    breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

18    upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

19    Thus, nothing about the negotiations regarding the Merger Agreement, including the

20    negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

21    the termination of the Merger Agreement has any relevance, and discovery should be

22    limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

23    rights, including the right to amend and supplement its Responses and Objections to

24    Vizio's Requests, should it become necessary and appropriate to do so.

25        LeLe further objects that this Request is compound and overbroad, particularly in

26    its request for "Any and All Documents or Communications that Relate To the benefits—

27    financial, operational or otherwise that LeECO, GLOBAL, LELE, JIA, LTI or any of their

28    Affiliates expected to receive from the public announcement of the Merger Agreement or

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1   that any of those Persons actually received following that announcement."

2        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3   ambiguous and seeks the documents and communications of third parties or documents

4   and communications which are not in LeLe's possession, custody or control.

5   Furthermore, this Request, which seeks discovery from individuals and entities

6   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

7   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

8   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

9   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

11  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

12  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

13  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

14       LeLe further objects that this Request appears to seek documents and

15  communications protected by the attorney-client privilege and work product doctrine.

16  LeLe objects to producing any privileged communications.  LeLe further objects to

17  producing any such documents created after this lawsuit was filed that merely "Relate To"

18  the subject matter of the Request as those documents would clearly be protected by the

19  attorney client privilege and attorney work product doctrine.  LeLe further objects to

20  logging all privileged and work product documents created after this lawsuit was filed as

21  unduly burdensome and disproportionate to the needs of the case.

22  **REQUEST FOR PRODUCTION NO. 11**:

23       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

24  response of U.S. and Chinese markets or press to the proposed MERGER, INCLUDING

25  all articles, reports and other documents issued by stock markets, bond markets, financial

26  press, newspapers, and financial analysts.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

28       LeLe restates and incorporates by reference the Preliminary Statement and General

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

2   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

3   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

4   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

5   pending Motion to Dismiss for insufficient service of process and lack of personal

6   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

7   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

8   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

9   In addition to being premature, the Requests directed at LeLe and the other individuals

10  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

11  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

12  Request on the grounds that it seeks the documents and communications of third parties or

13  documents and communications which are not in LeLe's possession, custody or control.

14      Furthermore, Vizio's Requests are premature because they pertain to issues that

15  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

16  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

17  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

18  the Merger Agreement including its various theories of fraud related to that alleged

19  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

20  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

21  Thus, nothing about the negotiations regarding the Merger Agreement, including the

22  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

23  the termination of the Merger Agreement has any relevance, and discovery should be

24  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

25  rights, including the right to amend and supplement its Responses and Objections to

26  Vizio's Requests, should it become necessary and appropriate to do so.

27      LeLe further objects that this Request is compound and overbroad, particularly in

28  its request for "Any and All Documents or Communications that Relate To the response

1  of U.S. and Chinese markets or press to the proposed Merger…."

2      LeLe further objects that, as phrased, this Request appears to seek documents that

3  are equally available to Vizio, as the Request expressly calls for public information.  LeLe

4  objects to searching for and producing documents equally available to Vizio.

5      LeLe further objects that this Request appears to seek documents and

6  communications protected by the attorney-client privilege and work product doctrine.

7  LeLe objects to producing any privileged communications.  LeLe further objects to

8  producing any such documents created after this lawsuit was filed that merely "Relate To"

9  the subject matter of the Request as those documents would clearly be protected by the

10  attorney client privilege and attorney work product doctrine.  LeLe further objects to

11  logging all privileged and work product documents created after this lawsuit was filed as

12  unduly burdensome and disproportionate to the needs of the case.

13  **REQUEST FOR PRODUCTION NO. 12**:

14      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

15  efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to

16  implement, meet the conditions for, or complete the MERGER with VIZIO.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12**:

18      LeLe restates and incorporates by reference the Preliminary Statement and General

19  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

20  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

21  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

22  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

23  pending Motion to Dismiss for insufficient service of process and lack of personal

24  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

25  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

26  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

27  In addition to being premature, the Requests directed at LeLe and the other individuals

28  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

1 | irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

2 | Request on the grounds that it seeks the documents and communications of third parties or

3 | documents and communications which are not in LeLe's possession, custody or control.

4 |    Furthermore, Vizio's Requests are premature because they pertain to issues that

5 | would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

6 | second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

7 | pending MTD would eliminate Vizio's second through sixth causes of action for breach of

8 | the Merger Agreement including its various theories of fraud related to that alleged

9 | breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

10 | upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

11 | Thus, nothing about the negotiations regarding the Merger Agreement, including the

12 | negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

13 | the termination of the Merger Agreement has any relevance, and discovery should be

14 | limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

15 | rights, including the right to amend and supplement its Responses and Objections to

16 | Vizio's Requests, should it become necessary and appropriate to do so.

17 |    LeLe further objects that this Request is compound and overbroad, particularly in

18 | its request for "Any and All Documents or Communications that Relate To efforts made

19 | by LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to implement, meet the

20 | conditions for, or complete the Merger with Vizio."

21 |    LeLe further objects that the definition of "Affiliates" is overbroad, vague and

22 | ambiguous and seeks the documents and communications of third parties or documents

23 | and communications which are not in LeLe's possession, custody or control.

24 | Furthermore, this Request, which seeks discovery from individuals and entities

25 | ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

26 | to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

27 | Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

28 | limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION

LA 133493446v6

1    another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

2    and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

3    LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

4    the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

5         LeLe further objects that this Request appears to seek documents and

6    communications protected by the attorney-client privilege and work product doctrine.

7    LeLe objects to producing any privileged communications.  LeLe further objects to

8    producing any such documents created after this lawsuit was filed that merely "Relate To"

9    the subject matter of the Request as those documents would clearly be protected by the

10   attorney client privilege and attorney work product doctrine.  LeLe further objects to

11   logging all privileged and work product documents created after this lawsuit was filed as

12   unduly burdensome and disproportionate to the needs of the case.

13   **REQUEST FOR PRODUCTION NO. 13**:

14        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

15   Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

16   agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 13**:

18        LeLe restates and incorporates by reference the Preliminary Statement and General

19   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

20   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

21   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

22   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

23   pending Motion to Dismiss for insufficient service of process and lack of personal

24   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

25   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

26   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

27   In addition to being premature, the Requests directed at LeLe and the other individuals

28   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

1   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

2   Request on the grounds that it seeks the documents and communications of third parties or

3   documents and communications which are not in LeLe's possession, custody or control.

4        Furthermore, Vizio's Requests are premature because they pertain to issues that

5   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

6   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

7   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

8   the Merger Agreement including its various theories of fraud related to that alleged

9   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

10  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

11  Thus, nothing about the negotiations regarding the Merger Agreement, including the

12  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

13  the termination of the Merger Agreement has any relevance, and discovery should be

14  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

15  rights, including the right to amend and supplement its Responses and Objections to

16  Vizio's Requests, should it become necessary and appropriate to do so.

17       LeLe further objects that this Request is compound and overbroad, particularly in

18  its request for "Any and All Documents or Communications that Relate To the Merger

19  Agreement...."

20       LeLe further objects that, as phrased, this Request appears to seek documents that

21  are equally available to Vizio.  LeLe objects to searching for and producing documents

22  equally available to Vizio.

23       LeLe further objects that this Request appears to seek documents and

24  communications protected by the attorney-client privilege and work product doctrine.

25  LeLe objects to producing any privileged communications.  LeLe further objects to

26  producing any such documents created after this lawsuit was filed that merely "Relate To"

27  the subject matter of the Request as those documents would clearly be protected by the

28  attorney client privilege and attorney work product doctrine.  LeLe further objects to

1   logging all privileged and work product documents created after this lawsuit was filed as

2   unduly burdensome and disproportionate to the needs of the case.

3   **REQUEST FOR PRODUCTION NO. 14**:

4        ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU received from

5   any PERSON, including AFFILIATES, third party businesses, and governmental entities,

6   regarding the proposed MERGER.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 14**:

8        LeLe restates and incorporates by reference the Preliminary Statement and General

9   Objections set forth above. LeLe further objects to this Request on the grounds that it is

10  premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

11  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

12  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

13  pending Motion to Dismiss for insufficient service of process and lack of personal

14  jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

15  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

16  with California whatsoever. Furthermore, LeLe was never properly served in this action.

17  In addition to being premature, the Requests directed at LeLe and the other individuals

18  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

19  irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this

20  Request on the grounds that it seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or control.

22       Furthermore, Vizio's Requests are premature because they pertain to issues that

23  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

24  second through sixth causes of action in the FAC (in which LeLe joined). LeEco's

25  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

26  the Merger Agreement including its various theories of fraud related to that alleged

27  breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

28  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

1  Thus, nothing about the negotiations regarding the Merger Agreement, including the

2  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

3  the termination of the Merger Agreement has any relevance, and discovery should be

4  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

5  rights, including the right to amend and supplement its Responses and Objections to

6  Vizio's Requests, should it become necessary and appropriate to do so.

7      LeLe further objects that this Request is compound and overbroad, particularly in

8  its request for "Any and All Documents or Communications ... regarding ... the proposed

9  Merger."

10     LeLe further objects that, as phrased, this Request appears to seek documents that

11  are equally available to Vizio.  LeLe objects to searching for and producing documents

12  equally available to Vizio.

13     LeLe further objects that the definition of "Affiliates" is overbroad, vague and

14  ambiguous and seeks the documents and communications of third parties or documents

15  and communications which are not in LeLe's possession, custody or control.

16     LeLe further objects that this Request appears to seek documents and

17  communications protected by the attorney-client privilege and work product doctrine.

18  LeLe objects to producing any privileged communications.  LeLe further objects to

19  producing any such documents created after this lawsuit was filed that merely "Relate To"

20  the subject matter of the Request as those documents would clearly be protected by the

21  attorney client privilege and attorney work product doctrine.  LeLe further objects to

22  logging all privileged and work product documents created after this lawsuit was filed as

23  unduly burdensome and disproportionate to the needs of the case.

24  **REQUEST FOR PRODUCTION NO. 15**:

25     ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO,

26  GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity,"

27  as that term is defined in Section 10.2 of the MERGER AGREEMENT—whether located

28  in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER

1 AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the

2 U.S. Department of Justice, the Committee on Foreign Investment in the United States,

3 the CHINA Ministry of Commerce, the China insurance Regulatory Commission, the

4 Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"),

5 Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

6 **RESPONSE TO REQUEST FOR PRODUCTION NO. 15**:

7        LeLe restates and incorporates by reference the Preliminary Statement and General

8 Objections set forth above. LeLe further objects to this Request on the grounds that it is

9 premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

10 Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

11 "premature" because they would be rendered irrelevant were the Court to grant LeLe's

12 pending Motion to Dismiss for insufficient service of process and lack of personal

13 jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

14 action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

15 with California whatsoever. Furthermore, LeLe was never properly served in this action.

16 In addition to being premature, the Requests directed at LeLe and the other individuals

17 and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

18 irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this

19 Request on the grounds that it seeks the documents and communications of third parties or

20 documents and communications which are not in LeLe's possession, custody or control.

21        Furthermore, Vizio's Requests are premature because they pertain to issues that

22 would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

23 second through sixth causes of action in the FAC (in which LeLe joined). LeEco's

24 pending MTD would eliminate Vizio's second through sixth causes of action for breach of

25 the Merger Agreement including its various theories of fraud related to that alleged

26 breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

27 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

28 Thus, nothing about the negotiations regarding the Merger Agreement, including the

1    negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

2    the termination of the Merger Agreement has any relevance, and discovery should be

3    limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

4    rights, including the right to amend and supplement its Responses and Objections to

5    Vizio's Requests, should it become necessary and appropriate to do so.

6        LeLe further objects that this Request is compound and overbroad, particularly in

7    its request for "Any and All Documents or Communications sent by LeECO, GLOBAL,

8    LELE, JIA, LTI or any of their Affiliates to any "Governmental Entity," … whether

9    located in the United States, China, Taiwan, or otherwise—that Relates To the Merger

10   Agreement Or Merger…."  Furthermore, any information related to the U.S. approval is

11   irrelevant because it is undisputed that the U.S. approval was obtained.

12       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

13   ambiguous and seeks the documents and communications of third parties or documents

14   and communications which are not in LeLe's possession, custody or control.

15   Furthermore, this Request, which seeks discovery from individuals and entities

16   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

17   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

18   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

19   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

20   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

21   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

22   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

23   the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

24       LeLe further objects that this Request appears to seek documents and

25   communications protected by the attorney-client privilege and work product doctrine.

26   LeLe objects to producing any privileged communications.  LeLe further objects to

27   producing any such documents created after this lawsuit was filed that merely "Relate To"

28   the subject matter of the Request as those documents would clearly be protected by the

1  attorney client privilege and attorney work product doctrine.  LeLe further objects to

2  logging all privileged and work product documents created after this lawsuit was filed as

3  unduly burdensome and disproportionate to the needs of the case.

4  **REQUEST FOR PRODUCTION NO. 16**:

5       ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued,

6  made or published by any "Governmental Entity," as that term is defined in Section 10.2

7  of the WLERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—

8  RELATING TO the WRGER AGREEMENT OR MERGER, INCLUDING the

9  U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on

10  Foreign Investment in the United States, the CHINA Ministry of Commerce, the China

11  Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development

12  Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the

13  Beijing Commission of Commerce.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16**:

15       LeLe restates and incorporates by reference the Preliminary Statement and General

16  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

17  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

18  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

19  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

20  pending Motion to Dismiss for insufficient service of process and lack of personal

21  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

22  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

23  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

24  In addition to being premature, the Requests directed at LeLe and the other individuals

25  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

26  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

27  Request on the grounds that it seeks the documents and communications of third parties or

28  documents and communications which are not in LeLe's possession, custody or control.

1    Furthermore, Vizio's Requests are premature because they pertain to issues that

2  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

3  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

4  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

5  the Merger Agreement including its various theories of fraud related to that alleged

6  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

7  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

8  Thus, nothing about the negotiations regarding the Merger Agreement, including the

9  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

10  the termination of the Merger Agreement has any relevance, and discovery should be

11  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

12  rights, including the right to amend and supplement its Responses and Objections to

13  Vizio's Requests, should it become necessary and appropriate to do so.

14    LeLe further objects that this Request is compound and overbroad, particularly in

15  its request for "Any and All Documents or Communications drafted, sent, issued, made or

16  published by any "Governmental Entity," … in the United States, China, Taiwan, or

17  otherwise—Relating To Merger Agreement Or Merger…."  Furthermore, any information

18  related to the U.S. approval is irrelevant because it is undisputed that the U.S. approval

19  was obtained.

20    LeLe further objects that, as phrased, this Request appears to seek documents that

21  are equally available to Vizio.  LeLe objects to searching for and producing documents

22  equally available to Vizio.

23    LeLe further objects that the Request seeks the documents and communications of

24  third parties or documents and communications which are not in LeLe's possession,

25  custody or control.

26    LeLe further objects that this Request appears to seek documents and

27  communications protected by the attorney-client privilege and work product doctrine.

28  LeLe objects to producing any privileged communications.  LeLe further objects to

1 │ producing any such documents created after this lawsuit was filed that merely "Relate To"

2 │ the subject matter of the Request as those documents would clearly be protected by the

3 │ attorney client privilege and attorney work product doctrine. LeLe further objects to

4 │ logging all privileged and work product documents created after this lawsuit was filed as

5 │ unduly burdensome and disproportionate to the needs of the case.

6 │ **REQUEST FOR PRODUCTION NO. 17**:

7 │      ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or

8 │ published by any governmental entity in CHINA RELATING TO the standards of review

9 │ to be applied to proposed investments that originate in CHINA and are directed to another

10 │ country, INCLUDING any and all press releases issued on or about December 6, 2016

11 │ regarding new standards of review to be applied to such investments.

12 │ **RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

13 │      LeLe restates and incorporates by reference the Preliminary Statement and General

14 │ Objections set forth above. LeLe further objects to this Request on the grounds that it is

15 │ premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

16 │ Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

17 │ "premature" because they would be rendered irrelevant were the Court to grant LeLe's

18 │ pending Motion to Dismiss for insufficient service of process and lack of personal

19 │ jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

20 │ action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

21 │ with California whatsoever. Furthermore, LeLe was never properly served in this action.

22 │ In addition to being premature, the Requests directed at LeLe and the other individuals

23 │ and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

24 │ irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this

25 │ Request on the grounds that it seeks the documents and communications of third parties or

26 │ documents and communications which are not in LeLe's possession, custody or control.

27 │      Furthermore, Vizio's Requests are premature because they pertain to issues that

28 │ would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

1    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

2    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

3    the Merger Agreement including its various theories of fraud related to that alleged

4    breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

5    upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

6    Thus, nothing about the negotiations regarding the Merger Agreement, including the

7    negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

8    the termination of the Merger Agreement has any relevance, and discovery should be

9    limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

10   rights, including the right to amend and supplement its Responses and Objections to

11   Vizio's Requests, should it become necessary and appropriate to do so.

12       LeLe further objects that this Request is compound and overbroad, particularly in

13   its request for "Any and All Documents or Communications sent, issued, made or

14   published by any governmental entity in China Relating To the standards of review...."

15       LeLe further objects that, as phrased, this Request appears to seek documents that

16   are equally available to Vizio.  LeLe objects to searching for and producing documents

17   equally available to Vizio.

18       LeLe further objects that the Request seeks the documents and communications of

19   third parties or documents and communications which are not in LeLe's possession,

20   custody or control.

21       LeLe further objects that this Request appears to seek documents and

22   communications protected by the attorney-client privilege and work product doctrine.

23   LeLe objects to producing any privileged communications.  LeLe further objects to

24   producing any such documents created after this lawsuit was filed that merely "Relate To"

25   the subject matter of the Request as those documents would clearly be protected by the

26   attorney client privilege and attorney work product doctrine.  LeLe further objects to

27   logging all privileged and work product documents created after this lawsuit was filed as

28   unduly burdensome and disproportionate to the needs of the case.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1    **REQUEST FOR PRODUCTION NO. 18**:

2        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the

3 ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed to

4 complete the proposed MERGER with VIZIO.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 18**:

6        LeLe restates and incorporates by reference the Preliminary Statement and General

7 Objections set forth above. LeLe further objects to this Request on the grounds that it is

8 premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

9 Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

10 "premature" because they would be rendered irrelevant were the Court to grant LeLe's

11 pending Motion to Dismiss for insufficient service of process and lack of personal

12 jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

13 action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

14 with California whatsoever. Furthermore, LeLe was never properly served in this action.

15 In addition to being premature, the Requests directed at LeLe and the other individuals

16 and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

17 irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this

18 Request on the grounds that it seeks the documents and communications of third parties or

19 documents and communications which are not in LeLe's possession, custody or control.

20        Furthermore, Vizio's Requests are premature because they pertain to issues that

21 would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

22 second through sixth causes of action in the FAC (in which LeLe joined). LeEco's

23 pending MTD would eliminate Vizio's second through sixth causes of action for breach of

24 the Merger Agreement including its various theories of fraud related to that alleged

25 breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

26 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

27 Thus, nothing about the negotiations regarding the Merger Agreement, including the

28 negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

1    the termination of the Merger Agreement has any relevance, and discovery should be

2    limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

3    rights, including the right to amend and supplement its Responses and Objections to

4    Vizio's Requests, should it become necessary and appropriate to do so.

5         LeLe further objects that this Request is compound and overbroad, particularly in

6    its request for "Any and All Documents or Communications Relating To the ability of

7    GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the

8    proposed Merger with Vizio."   LeLe further objects that the phrase "obtain the financing

9    needed" is vague and ambiguous and, as phrased, calls for speculation.

10        LeLe further objects that the Request seeks the documents and communications of

11   third parties or documents and communications which are not in LeLe's possession,

12   custody or control.  Furthermore, this Request, which seeks discovery from individuals

13   and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

14   calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

15   of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

16   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

17   million and another $10 million in escrow that is disputed.  The remaining dispute

18   concerns LeEco and Vizio's obligations to each other in the context of the proposed China

19   JV.  Moreover, LeEco Global Group Ltd., has not been served with the Summons and

20   FAC, and Merger Sub is not a party to this action.

21        LeLe further objects that this Request appears to seek documents and

22   communications protected by the attorney-client privilege and work product doctrine.

23   LeLe objects to producing any privileged communications.  LeLe further objects to

24   producing any such documents created after this lawsuit was filed that merely "Relate To"

25   the subject matter of the Request as those documents would clearly be protected by the

26   attorney client privilege and attorney work product doctrine.  LeLe further objects to

27   logging all privileged and work product documents created after this lawsuit was filed as

28   unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 19**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER SUB to complete the proposed MERGER with VIZIO INCLUDING DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International Capital; the Bank of China; Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

1  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

2  the Merger Agreement including its various theories of fraud related to that alleged

3  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

4  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

5  Thus, nothing about the negotiations regarding the Merger Agreement, including the

6  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

7  the termination of the Merger Agreement has any relevance, and discovery should be

8  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

9  rights, including the right to amend and supplement its Responses and Objections to

10  Vizio's Requests, should it become necessary and appropriate to do so.

11         LeLe further objects that this Request is compound and overbroad, particularly in

12  its request for "Any and All Documents or Communications Relating To efforts, by any

13  Person, to obtain the financing needed to complete the proposed Merger with Vizio...."

14  LeLe further objects that the phrase "obtain the financing needed" is vague and

15  ambiguous and, as phrased, calls for speculation.

16         LeLe further objects that the Request seeks the documents and communications of

17  third parties or documents and communications which are not in LeLe's possession,

18  custody or control.  Furthermore, this Request, which seeks discovery from individuals

19  and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

20  calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

21  of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

22  the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

23  million and another $10 million in escrow that is disputed.  The remaining dispute

24  concerns LeEco and Vizio's obligations to each other in the context of the proposed China

25  JV.  Moreover, Merger Sub is not a party to this action.

26         LeLe further objects that this Request appears to seek documents and

27  communications protected by the attorney-client privilege and work product doctrine.

28  LeLe objects to producing any privileged communications.  LeLe further objects to

1   producing any such documents created after this lawsuit was filed that merely "Relate To"

2   the subject matter of the Request as those documents would clearly be protected by the

3   attorney client privilege and attorney work product doctrine.  LeLe further objects to

4   logging all privileged and work product documents created after this lawsuit was filed as

5   unduly burdensome and disproportionate to the needs of the case.

6   **REQUEST FOR PRODUCTION NO. 20**:

7       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the

8   terms on which the financing needed by LeECO and MERGER SUB to complete the

9   proposed MERGER with VIZIO could be obtained, INCLUDING DOCUMENTS OR

10  COMMUNICATIONS to or from:  Hollyhigh International Capital; the Bank of China;

11  Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset

12  Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings

13  (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai

14  Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A

15  Fund Management Co. Ltd. or any of their AFFILIATES.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 20**:

17      LeLe restates and incorporates by reference the Preliminary Statement and General

18  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

19  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

20  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

21  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

22  pending Motion to Dismiss for insufficient service of process and lack of personal

23  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

24  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

25  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

26  In addition to being premature, the Requests directed at LeLe and the other individuals

27  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

28  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

1   Request on the grounds that it seeks the documents and communications of third parties or

2   documents and communications which are not in LeLe's possession, custody or control.

3         Furthermore, Vizio's Requests are premature because they pertain to issues that

4   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

5   second through sixth causes of action in the FAC (in which LeLe joined). LeEco's

6   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

7   the Merger Agreement including its various theories of fraud related to that alleged

8   breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

9   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

10  Thus, nothing about the negotiations regarding the Merger Agreement, including the

11  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

12  the termination of the Merger Agreement has any relevance, and discovery should be

13  limited to whether there was a breach of the Framework Agreement. LeLe reserves all

14  rights, including the right to amend and supplement its Responses and Objections to

15  Vizio's Requests, should it become necessary and appropriate to do so.

16        LeLe further objects that this Request is compound and overbroad. LeLe further

17  objects that the phrase "terms on which financing…could be obtained" is vague and

18  ambiguous and, as phrased, calls for speculation.

19        LeLe further objects that the Request seeks the documents and communications of

20  third parties or documents and communications which are not in LeLe's possession,

21  custody or control. Furthermore, this Request, which seeks discovery from individuals

22  and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

23  calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

24  of the case. Particularly if the case is limited to a breach of the Framework Agreement,

25  the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

26  million and another $10 million in escrow that is disputed. The remaining dispute

27  concerns LeEco and Vizio's obligations to each other in the context of the proposed China

28  JV. Moreover, Merger Sub is not a party to this action.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1    LeLe further objects that this Request appears to seek documents and

2    communications protected by the attorney-client privilege and work product doctrine.

3    LeLe objects to producing any privileged communications.  LeLe further objects to

4    producing any such documents created after this lawsuit was filed that merely "Relate To"

5    the subject matter of the Request as those documents would clearly be protected by the

6    attorney client privilege and attorney work product doctrine.  LeLe further objects to

7    logging all privileged and work product documents created after this lawsuit was filed as

8    unduly burdensome and disproportionate to the needs of the case.

9    **REQUEST FOR PRODUCTION NO. 21**:

10    ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one

11    hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the

12    other hand, regarding efforts to implement, meet the conditions for, or complete the

13    MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete

14    the MERGER.

15    **RESPONSE TO REQUEST FOR PRODUCTION NO. 21**:

16    LeLe restates and incorporates by reference the Preliminary Statement and General

17    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

18    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

19    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

20    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

21    pending Motion to Dismiss for insufficient service of process and lack of personal

22    jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

23    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

24    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

25    In addition to being premature, the Requests directed at LeLe and the other individuals

26    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

27    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

28    Request on the grounds that it seeks the documents and communications of third parties or

LA 133493446v6

1  documents and communications which are not in LeLe's possession, custody or control.

2       Furthermore, Vizio's Requests are premature because they pertain to issues that

3  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

4  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

5  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

6  the Merger Agreement including its various theories of fraud related to that alleged

7  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

8  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

9  Thus, nothing about the negotiations regarding the Merger Agreement, including the

10  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

11  the termination of the Merger Agreement has any relevance, and discovery should be

12  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

13  rights, including the right to amend and supplement its Responses and Objections to

14  Vizio's Requests, should it become necessary and appropriate to do so.

15       LeLe further objects that this Request is compound and overbroad, particularly in

16  its request for "Any and All Documents or Communications between Vizio, on one hand,

17  and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their Affiliates, on the other hand,

18  regarding efforts to implement; meet the conditions for, or complete the Merger or to

19  obtain the financing needed by LeECO and MERGER SUB to complete the Merger."

20  LeLe further objects that the phrase "obtain the financing needed" is vague and

21  ambiguous and, as phrased, calls for speculation.

22       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

23  ambiguous and seeks the documents and communications of third parties or documents

24  and communications which are not in LeLe's possession, custody or control.

25  Furthermore, this Request, which seeks discovery from individuals and entities

26  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

27  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

28  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

1  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

2  another $10 million in escrow that is disputed. The remaining dispute concerns LeEco

3  and Vizio's obligations to each other in the context of the proposed China JV. Moreover,

4  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

5  the Summons and FAC, and Merger Sub and LeTechnology, Inc. are not parties to this

6  action.

7        LeLe further objects that this Request appears to seek documents and

8  communications protected by the attorney-client privilege and work product doctrine.

9  LeLe objects to producing any privileged communications. LeLe further objects to

10  producing any such documents created after this lawsuit was filed that merely "Relate To"

11  the subject matter of the Request as those documents would clearly be protected by the

12  attorney client privilege and attorney work product doctrine. LeLe further objects to

13  logging all privileged and work product documents created after this lawsuit was filed as

14  unduly burdensome and disproportionate to the needs of the case.

15  **REQUEST FOR PRODUCTION NO. 22:**

16        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

17  "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of

18  the MERGER AGREEMENT.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

20        LeLe restates and incorporates by reference the Preliminary Statement and General

21  Objections set forth above. LeLe further objects to this Request on the grounds that it is

22  premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

23  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

24  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

25  pending Motion to Dismiss for insufficient service of process and lack of personal

26  jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

27  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

28  with California whatsoever. Furthermore, LeLe was never properly served in this action.

1    In addition to being premature, the Requests directed at LeLe and the other individuals

2    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

3    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

4    Request on the grounds that it seeks the documents and communications of third parties or

5    documents and communications which are not in LeLe's possession, custody or control.

6           Furthermore, Vizio's Requests are premature because they pertain to issues that

7    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

8    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

9    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

10   the Merger Agreement including its various theories of fraud related to that alleged

11   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

12   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

13   Thus, nothing about the negotiations regarding the Merger Agreement, including the

14   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

15   the termination of the Merger Agreement has any relevance, and discovery should be

16   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

17   rights, including the right to amend and supplement its Responses and Objections to

18   Vizio's Requests, should it become necessary and appropriate to do so.

19          LeLe further objects that this Request is compound and overbroad, particularly in

20   its request for "Any and All Documents or Communications Relating To the Equity

21   Commitment Letters..."

22          LeLe further objects that, as phrased, this Request appears to seek documents that

23   are equally available to Vizio.  LeLe objects to searching for and producing documents

24   equally available to Vizio.

25          LeLe further objects that this Request appears to seek documents and

26   communications protected by the attorney-client privilege and work product doctrine.

27   LeLe objects to producing any privileged communications.  LeLe further objects to

28   producing any such documents created after this lawsuit was filed that merely "Relate To"

1    the subject matter of the Request as those documents would clearly be protected by the

2    attorney client privilege and attorney work product doctrine.  LeLe further objects to

3    logging all privileged and work product documents created after this lawsuit was filed as

4    unduly burdensome and disproportionate to the needs of the case.

5    **REQUEST FOR PRODUCTION NO. 23**:

6        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

7    "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER

8    AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 23**:

10       LeLe restates and incorporates by reference the Preliminary Statement and General

11    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

12    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

13    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

14    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

15    pending Motion to Dismiss for insufficient service of process and lack of personal

16    jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

17    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

18    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

19    In addition to being premature, the Requests directed at LeLe and the other individuals

20    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

21    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

22    Request on the grounds that it seeks the documents and communications of third parties or

23    documents and communications which are not in LeLe's possession, custody or control.

24       Furthermore, Vizio's Requests are premature because they pertain to issues that

25    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

26    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

27    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

28    the Merger Agreement including its various theories of fraud related to that alleged

1  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

2  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

3  Thus, nothing about the negotiations regarding the Merger Agreement, including the

4  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

5  the termination of the Merger Agreement has any relevance, and discovery should be

6  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

7  rights, including the right to amend and supplement its Responses and Objections to

8  Vizio's Requests, should it become necessary and appropriate to do so.

9       LeLe further objects that this Request is compound and overbroad, particularly in

10  its request for "Any and All Documents or Communications Relating To the Debt

11  Financing Documents …"

12       LeLe further objects that, as phrased, this Request appears to seek documents that

13  are equally available to Vizio.  LeLe objects to searching for and producing documents

14  equally available to Vizio.

15       LeLe further objects that this Request appears to seek documents and

16  communications protected by the attorney-client privilege and work product doctrine.

17  LeLe objects to producing any privileged communications.  LeLe further objects to

18  producing any such documents created after this lawsuit was filed that merely "Relate To"

19  the subject matter of the Request as those documents would clearly be protected by the

20  attorney client privilege and attorney work product doctrine.  LeLe further objects to

21  logging all privileged and work product documents created after this lawsuit was filed as

22  unduly burdensome and disproportionate to the needs of the case.

23  **REQUEST FOR PRODUCTION NO. 24**:

24       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the

25  actual assets and financing available to LeECO and MERGER SUB on or about April 6,

26  2017 for the purpose of completing the proposed MERGER with VIZIO.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24**:

28       LeLe restates and incorporates by reference the Preliminary Statement and General

LA 133493446v6

1   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

2   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

3   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

4   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

5   pending Motion to Dismiss for insufficient service of process and lack of personal

6   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

7   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

8   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

9   In addition to being premature, the Requests directed at LeLe and the other individuals

10  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

11  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

12  Request on the grounds that it seeks the documents and communications of third parties or

13  documents and communications which are not in LeLe's possession, custody or control.

14       Furthermore, Vizio's Requests are premature because they pertain to issues that

15  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

16  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

17  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

18  the Merger Agreement including its various theories of fraud related to that alleged

19  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

20  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

21  Thus, nothing about the negotiations regarding the Merger Agreement, including the

22  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

23  the termination of the Merger Agreement has any relevance, and discovery should be

24  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

25  rights, including the right to amend and supplement its Responses and Objections to

26  Vizio's Requests, should it become necessary and appropriate to do so.

27       LeLe further objects that this Request is compound and overbroad.  LeLe further

28  objects that the phrase "actual assets and financing available" is vague and ambiguous.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1    LeLe further objects that the Request seeks the documents and communications of

2    third parties or documents and communications which are not in LeLe's possession,

3    custody or control.  Furthermore, this Request, which seeks discovery from individuals

4    and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

5    calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

6    of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

7    the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

8    million and another $10 million in escrow that is disputed.  The remaining dispute

9    concerns LeEco and Vizio's obligations to each other in the context of the proposed China

10   JV.  Moreover, Merger Sub is not a party to this action.

11   LeLe further objects that this Request appears to seek documents and

12   communications protected by the attorney-client privilege and work product doctrine.

13   LeLe objects to producing any privileged communications.  LeLe further objects to

14   producing any such documents created after this lawsuit was filed that merely "Relate To"

15   the subject matter of the Request as those documents would clearly be protected by the

16   attorney client privilege and attorney work product doctrine.  LeLe further objects to

17   logging all privileged and work product documents created after this lawsuit was filed as

18   unduly burdensome and disproportionate to the needs of the case.

19   **REQUEST FOR PRODUCTION NO. 25**:

20   ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

21   "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee

22   Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT

23   and used in Section 9.2 of the MERGER AGREEMENT.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 25**:

25   LeLe restates and incorporates by reference the Preliminary Statement and General

26   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

27   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

28   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

1   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

2   pending Motion to Dismiss for insufficient service of process and lack of personal

3   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

4   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

5   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

6   In addition to being premature, the Requests directed at LeLe and the other individuals

7   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

8   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

9   Request on the grounds that it seeks the documents and communications of third parties or

10  documents and communications which are not in LeLe's possession, custody or control.

11         Furthermore, Vizio's Requests are premature because they pertain to issues that

12  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

13  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

14  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

15  the Merger Agreement including its various theories of fraud related to that alleged

16  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

17  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

18  Thus, nothing about the negotiations regarding the Merger Agreement, including the

19  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

20  the termination of the Merger Agreement has any relevance, and discovery should be

21  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

22  rights, including the right to amend and supplement its Responses and Objections to

23  Vizio's Requests, should it become necessary and appropriate to do so.

24         LeLe further objects that this Request is compound and overbroad, particularly in

25  its request for "Any and All Documents or Communications Relating To the to the Buyer

26  Termination Fee, Buyer Termination Fee Deposit or Buyer Termination Fee

27  Remainder...."

28         LeLe further objects that, as phrased, this Request appears to seek documents that

1    are equally available to Vizio.  LeLe objects to searching for and producing documents

2    equally available to Vizio.

3        LeLe further objects that this Request appears to seek documents and

4    communications protected by the attorney-client privilege and work product doctrine.

5    LeLe objects to producing any privileged communications.  LeLe further objects to

6    producing any such documents created after this lawsuit was filed that merely "Relate To"

7    the subject matter of the Request as those documents would clearly be protected by the

8    attorney client privilege and attorney work product doctrine.  LeLe further objects to

9    logging all privileged and work product documents created after this lawsuit was filed as

10    unduly burdensome and disproportionate to the needs of the case.

11    **REQUEST FOR PRODUCTION NO. 26**:

12        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

13    source of monies deposited in ESCROW to serve as the "Buyer Termination Fee

14    Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT and

15    used in Section 9.2 of the MERGER AGREEMENT.

16    **RESPONSE TO REQUEST FOR PRODUCTION NO. 26**:

17        LeLe restates and incorporates by reference the Preliminary Statement and General

18    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

19    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

20    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

21    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

22    pending Motion to Dismiss for insufficient service of process and lack of personal

23    jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

24    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

25    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

26    In addition to being premature, the Requests directed at LeLe and the other individuals

27    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

28    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1    Request on the grounds that it seeks the documents and communications of third parties or

2    documents and communications which are not in LeLe's possession, custody or control.

3              Furthermore, Vizio's Requests are premature because they pertain to issues that

4    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

5    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

6    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

7    the Merger Agreement including its various theories of fraud related to that alleged

8    breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

9    upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

10   Thus, nothing about the negotiations regarding the Merger Agreement, including the

11   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

12   the termination of the Merger Agreement has any relevance, and discovery should be

13   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

14   rights, including the right to amend and supplement its Responses and Objections to

15   Vizio's Requests, should it become necessary and appropriate to do so.

16             LeLe further objects that this Request is compound and overbroad, particularly in

17   its request for "Any and All Documents or Communications Relating To the to the source

18   of monies deposited in Escrow to serve as the Buyer Termination Fee Deposit …"

19             LeLe further objects that, as phrased, this Request appears to seek documents that

20   are equally available to Vizio.  LeLe objects to searching for and producing documents

21   equally available to Vizio.

22             LeLe further objects that this Request appears to seek documents and

23   communications protected by the attorney-client privilege and work product doctrine.

24   LeLe objects to producing any privileged communications.  LeLe further objects to

25   producing any such documents created after this lawsuit was filed that merely "Relate To"

26   the subject matter of the Request as those documents would clearly be protected by the

27   attorney client privilege and attorney work product doctrine.  LeLe further objects to

28   logging all privileged and work product documents created after this lawsuit was filed as

1    unduly burdensome and disproportionate to the needs of the case.

2    **REQUEST FOR PRODUCTION NO. 27:**

3          ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

4    termination of the MERGER AGREEMENT.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

6          LeLe restates and incorporates by reference the Preliminary Statement and General

7    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

8    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

9    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

10   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

11   pending Motion to Dismiss for insufficient service of process and lack of personal

12   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

13   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

14   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

15   In addition to being premature, the Requests directed at LeLe and the other individuals

16   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

17   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

18   Request on the grounds that it seeks the documents and communications of third parties or

19   documents and communications which are not in LeLe's possession, custody or control.

20         Furthermore, Vizio's Requests are premature because they pertain to issues that

21   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

22   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

23   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

24   the Merger Agreement including its various theories of fraud related to that alleged

25   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

26   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

27   Thus, nothing about the negotiations regarding the Merger Agreement, including the

28   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

1   the termination of the Merger Agreement has any relevance, and discovery should be

2   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

3   rights, including the right to amend and supplement its Responses and Objections to

4   Vizio's Requests, should it become necessary and appropriate to do so.

5          LeLe further objects that this Request is compound and overbroad, particularly in

6   its request for "Any and All Documents or Communications Relating To the termination

7   of the Merger Agreement."

8          LeLe further objects that this Request appears to seek documents and

9   communications protected by the attorney-client privilege and work product doctrine.

10  LeLe objects to producing any privileged communications.  LeLe further objects to

11  producing any such documents created after this lawsuit was filed that merely "Relate To"

12  the subject matter of the Request as those documents would clearly be protected by the

13  attorney client privilege and attorney work product doctrine.  LeLe further objects to

14  logging all privileged and work product documents created after this lawsuit was filed as

15  unduly burdensome and disproportionate to the needs of the case.

16  **REQUEST FOR PRODUCTION NO. 28:**

17         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to reasons

18  why the MERGER was not, or could not, be completed.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

20         LeLe restates and incorporates by reference the Preliminary Statement and General

21  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

22  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

23  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

24  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

25  pending Motion to Dismiss for insufficient service of process and lack of personal

26  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

27  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

28  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

1   In addition to being premature, the Requests directed at LeLe and the other individuals

2   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

3   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

4   Request on the grounds that it seeks the documents and communications of third parties or

5   documents and communications which are not in LeLe's possession, custody or control.

6       Furthermore, Vizio's Requests are premature because they pertain to issues that

7   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

8   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

9   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

10  the Merger Agreement including its various theories of fraud related to that alleged

11  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

12  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

13  Thus, nothing about the negotiations regarding the Merger Agreement, including the

14  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

15  the termination of the Merger Agreement has any relevance, and discovery should be

16  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

17  rights, including the right to amend and supplement its Responses and Objections to

18  Vizio's Requests, should it become necessary and appropriate to do so.

19      LeLe further objects that, as phrased, this Request appears to seek documents that

20  are equally available to Vizio.  LeLe objects to searching for and producing documents

21  equally available to Vizio.

22      LeLe further objects that this Request appears to seek documents and

23  communications protected by the attorney-client privilege and work product doctrine.

24  LeLe objects to producing any privileged communications.  LeLe further objects to

25  producing any such documents created after this lawsuit was filed that merely "Relate To"

26  the subject matter of the Request as those documents would clearly be protected by the

27  attorney client privilege and attorney work product doctrine.  LeLe further objects to

28  logging all privileged and work product documents created after this lawsuit was filed as

1  unduly burdensome and disproportionate to the needs of the case.

2  **REQUEST FOR PRODUCTION NO. 29:**

3      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a

4  potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA,

5  LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO products in

6  CHINA, INCLUDING emails, marketing plans, operational plans, financial analyses, and

7  strategy documents.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

9      LeLe restates and incorporates by reference the Preliminary Statement and General

10 Objections set forth above.  LeLe further objects to this Request on the grounds that it is

11 premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

12 Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

13 "premature" because they would be rendered irrelevant were the Court to grant LeLe's

14 pending Motion to Dismiss for insufficient service of process and lack of personal

15 jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

16 action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

17 with California whatsoever.  Furthermore, LeLe was never properly served in this action.

18 In addition to being premature, the Requests directed at LeLe and the other individuals

19 and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

20 irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

21 Request on the grounds that it seeks the documents and communications of third parties or

22 documents and communications which are not in LeLe's possession, custody or control.

23      Furthermore, Vizio's Requests are premature because they pertain to issues that

24 would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

25 second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

26 pending MTD would eliminate Vizio's second through sixth causes of action for breach of

27 the Merger Agreement including its various theories of fraud related to that alleged

28 breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

1   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

2   Thus, nothing about the negotiations regarding the Merger Agreement, including the

3   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

4   the termination of the Merger Agreement has any relevance, and discovery should be

5   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

6   rights, including the right to amend and supplement its Responses and Objections to

7   Vizio's Requests, should it become necessary and appropriate to do so.

8         LeLe further objects that the definition of "Affiliates" is overbroad, vague and

9   ambiguous and seeks the documents and communications of third parties or documents

10  and communications which are not in LeLe's possession, custody or control.

11  Furthermore, this Request, which seeks discovery from individuals and entities

12  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

13  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

14  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

15  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

16  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

17  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

18  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

19  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

20        LeLe further objects that this Request appears to seek documents and

21  communications protected by the attorney-client privilege and work product doctrine.

22  LeLe objects to producing any privileged communications.  LeLe further objects to

23  producing any such documents created after this lawsuit was filed that merely "Relate To"

24  the subject matter of the Request as those documents would clearly be protected by the

25  attorney client privilege and attorney work product doctrine.  LeLe further objects to

26  logging all privileged and work product documents created after this lawsuit was filed as

27  unduly burdensome and disproportionate to the needs of the case.

28

1  **REQUEST FOR PRODUCTION NO. 30**:

2          ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

3  negotiations or discussions between VIZIO and LeECO to "negotiate in good with and

4  execute one or more agreements" regarding a joint venture in CHINA as required by

5  Section 4 of the FRAMEWORK AGREEMENT.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30**:

7          LeLe restates and incorporates by reference the Preliminary Statement and General

8  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

9  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

10  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

11  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

12  pending Motion to Dismiss for insufficient service of process and lack of personal

13  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

14  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

15  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

16  In addition to being premature, the Requests directed at LeLe and the other individuals

17  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

18  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

19  Request on the grounds that it seeks the documents and communications of third parties or

20  documents and communications which are not in LeLe's possession, custody or control.

21          Furthermore, Vizio's Requests are premature because they pertain to issues that

22  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

23  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

24  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

25  the Merger Agreement including its various theories of fraud related to that alleged

26  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

27  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

28  Thus, nothing about the negotiations regarding the Merger Agreement, including the

1    negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

2    the termination of the Merger Agreement has any relevance, and discovery should be

3    limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

4    rights, including the right to amend and supplement its Responses and Objections to

5    Vizio's Requests, should it become necessary and appropriate to do so.

6           LeLe further objects that this Request appears to seek documents and

7    communications protected by the attorney-client privilege and work product doctrine.

8    LeLe objects to producing any privileged communications.  LeLe further objects to

9    producing any such documents created after this lawsuit was filed that merely "Relate To"

10   the subject matter of the Request as those documents would clearly be protected by the

11   attorney client privilege and attorney work product doctrine.  LeLe further objects to

12   logging all privileged and work product documents created after this lawsuit was filed as

13   unduly burdensome and disproportionate to the needs of the case.

14   **REQUEST FOR PRODUCTION NO. 31**:

15          DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual

16   relationships, and the terms of those relationships, between LeECO, GLOBAL, LELE,

17   JIA, LTI and/or any of their AFFILIATES, on one hand, and any other PERSON on the

18   other hand, that would have been impacted or affected by a joint venture between LeECO

19   and VIZIO to distribute VIZIO products in CHINA.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 31**:

21          LeLe restates and incorporates by reference the Preliminary Statement and General

22   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

23   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

24   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

25   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

26   pending Motion to Dismiss for insufficient service of process and lack of personal

27   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

28   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

1    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

2    In addition to being premature, the Requests directed at LeLe and the other individuals

3    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

4    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

5    Request on the grounds that it seeks the documents and communications of third parties or

6    documents and communications which are not in LeLe's possession, custody or control.

7          Furthermore, Vizio's Requests are premature because they pertain to issues that

8    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

9    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

10   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

11   the Merger Agreement including its various theories of fraud related to that alleged

12   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

13   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

14   Thus, nothing about the negotiations regarding the Merger Agreement, including the

15   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

16   the termination of the Merger Agreement has any relevance, and discovery should be

17   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

18   rights, including the right to amend and supplement its Responses and Objections to

19   Vizio's Requests, should it become necessary and appropriate to do so.

20         LeLe further objects that this Request is compound and overbroad.  LeEco also

21   objects that the Request is unintelligible. LeLe further objects that the phrase "would have

22   been impacted or affected by a joint venture" is vague and ambiguous and, as phrased,

23   calls for speculation.

24         LeLe further objects that the definition of "Affiliates" is overbroad, vague and

25   ambiguous and seeks the documents and communications of third parties or documents

26   and communications which are not in LeLe's possession, custody or control.

27   Furthermore, this Request, which seeks discovery from individuals and entities

28   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

1  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.
2  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
3  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
4  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco
5  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,
6  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
7  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.
8        LeLe further objects that this Request appears to seek documents and
9  communications protected by the attorney-client privilege and work product doctrine.
10  LeLe objects to producing any privileged communications.  LeLe further objects to
11  producing any such documents created after this lawsuit was filed that merely "Relate To"
12  the subject matter of the Request as those documents would clearly be protected by the
13  attorney client privilege and attorney work product doctrine.  LeLe further objects to
14  logging all privileged and work product documents created after this lawsuit was filed as
15  unduly burdensome and disproportionate to the needs of the case.
16  **REQUEST FOR PRODUCTION NO. 32**:
17        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts
18  by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to develop and
19  obtain certification of the "LeEco Le App", as required of LeECO under Section 2.1.1 of
20  the FRAMEWORK AGREEMENT.
21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32**:
22        LeLe restates and incorporates by reference the Preliminary Statement and General
23  Objections set forth above.  LeLe further objects to this Request on the grounds that it is
24  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's
25  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are
26  "premature" because they would be rendered irrelevant were the Court to grant LeLe's
27  pending Motion to Dismiss for insufficient service of process and lack of personal
28  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

1  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

2  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

3  In addition to being premature, the Requests directed at LeLe and the other individuals

4  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

5  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

6  Request on the grounds that it seeks the documents and communications of third parties or

7  documents and communications which are not in LeLe's possession, custody or control.

8      Furthermore, Vizio's Requests are premature because they pertain to issues that

9  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

10  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

11  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

12  the Merger Agreement including its various theories of fraud related to that alleged

13  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

14  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

15  Thus, nothing about the negotiations regarding the Merger Agreement, including the

16  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

17  the termination of the Merger Agreement has any relevance, and discovery should be

18  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

19  rights, including the right to amend and supplement its Responses and Objections to

20  Vizio's Requests, should it become necessary and appropriate to do so.

21      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

22  ambiguous and seeks the documents and communications of third parties or documents

23  and communications which are not in LeLe's possession, custody or control.

24  Furthermore, this Request, which seeks discovery from individuals and entities

25  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

26  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

27  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

28  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

1   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

2   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

3   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

4   the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

5          LeLe further objects that this Request appears to seek documents and

6   communications protected by the attorney-client privilege and work product doctrine.

7   LeLe objects to producing any privileged communications.  LeLe further objects to

8   producing any such documents created after this lawsuit was filed that merely "Relate To"

9   the subject matter of the Request as those documents would clearly be protected by the

10  attorney client privilege and attorney work product doctrine.  LeLe further objects to

11  logging all privileged and work product documents created after this lawsuit was filed as

12  unduly burdensome and disproportionate to the needs of the case.

13  **REQUEST FOR PRODUCTION NO. 33**:

14         ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts

15  by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to identify

16  and/or obtain "non-cash assets with a fair market value equal to US $50,000,000 as a

17  capital contribution" to contribute to a proposed joint venture with VIZIO, as called for in

18  Section 3.1.1 of the FRAMEWORK AGREEMENT.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33**:

20         LeLe restates and incorporates by reference the Preliminary Statement and General

21  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

22  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

23  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

24  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

25  pending Motion to Dismiss for insufficient service of process and lack of personal

26  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

27  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

28  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

1    In addition to being premature, the Requests directed at LeLe and the other individuals

2    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

3    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

4    Request on the grounds that it seeks the documents and communications of third parties or

5    documents and communications which are not in LeLe's possession, custody or control.

6           Furthermore, Vizio's Requests are premature because they pertain to issues that

7    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

8    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

9    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

10   the Merger Agreement including its various theories of fraud related to that alleged

11   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

12   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

13   Thus, nothing about the negotiations regarding the Merger Agreement, including the

14   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

15   the termination of the Merger Agreement has any relevance, and discovery should be

16   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

17   rights, including the right to amend and supplement its Responses and Objections to

18   Vizio's Requests, should it become necessary and appropriate to do so.

19          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

20   ambiguous and seeks the documents and communications of third parties or documents

21   and communications which are not in LeLe's possession, custody or control.

22   Furthermore, this Request, which seeks discovery from individuals and entities

23   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

24   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

25   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

26   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

27   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

28   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

1  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

2  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

3      LeLe further objects that this Request appears to seek documents and

4  communications protected by the attorney-client privilege and work product doctrine.

5  LeLe objects to producing any privileged communications.  LeLe further objects to

6  producing any such documents created after this lawsuit was filed that merely "Relate To"

7  the subject matter of the Request as those documents would clearly be protected by the

8  attorney client privilege and attorney work product doctrine.  LeLe further objects to

9  logging all privileged and work product documents created after this lawsuit was filed as

10  unduly burdensome and disproportionate to the needs of the case.

11  **REQUEST FOR PRODUCTION NO. 34**:

12      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to ALL

13  assets owned by LTI or financial resources available to LTI, at any time between July 6,

14  2016 and the present, that were available to satisfy LTI' s representation in Section 5(d) of

15  the GUARANTY that LTI would have "the financial capacity to pay and perform the

16  Obligation" of LeECO to pay the Buyer Termination Fee Remainder if it should become

17  due under the MERGER AGREEMENT and that LTI "Shall maintain such financial

18  capacity for so long as this Guarantee shall remain in effect."

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**:

20      LeLe restates and incorporates by reference the Preliminary Statement and General

21  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

22  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

23  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

24  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

25  pending Motion to Dismiss for insufficient service of process and lack of personal

26  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

27  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

28  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1   In addition to being premature, the Requests directed at LeLe and the other individuals
2   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,
3   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this
4   Request on the grounds that it seeks the documents and communications of third parties or
5   documents and communications which are not in LeLe's possession, custody or control.

6        Furthermore, Vizio's Requests are premature because they pertain to issues that
7   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's
8   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's
9   pending MTD would eliminate Vizio's second through sixth causes of action for breach of
10  the Merger Agreement including its various theories of fraud related to that alleged
11  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement
12  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.
13  Thus, nothing about the negotiations regarding the Merger Agreement, including the
14  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or
15  the termination of the Merger Agreement has any relevance, and discovery should be
16  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all
17  rights, including the right to amend and supplement its Responses and Objections to
18  Vizio's Requests, should it become necessary and appropriate to do so.

19       LeLe further objects that this Request is compound and overbroad. LeLe further
20  objects that the phrase "total financial resources available to" is vague and ambiguous,
21  and as phrased, calls for speculation.

22       LeLe further objects that, as phrased, this Request appears to seek documents that
23  are equally available to Vizio.  LeLe objects to searching for and producing documents
24  equally available to Vizio.

25       LeLe further objects that the Request seeks the documents and communications of
26  third parties or documents and communications which are not in LeLe's possession,
27  custody or control.  Furthermore, this Request, which seeks discovery from individuals
28  and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

1 | calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs
2 | of the case. Particularly if the case is limited to a breach of the Framework Agreement,
3 | the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40
4 | million and another $10 million in escrow that is disputed. The remaining dispute
5 | concerns LeEco and Vizio's obligations to each other in the context of the proposed China
6 | JV. Moreover, LeTechnology, Inc. is not a party to this action.

7 |       LeLe further objects that this Request appears to seek documents and
8 | communications protected by the attorney-client privilege and work product doctrine.
9 | LeLe objects to producing any privileged communications. LeLe further objects to
10 | producing any such documents created after this lawsuit was filed that merely "Relate To"
11 | the subject matter of the Request as those documents would clearly be protected by the
12 | attorney client privilege and attorney work product doctrine. LeLe further objects to
13 | logging all privileged and work product documents created after this lawsuit was filed as
14 | unduly burdensome and disproportionate to the needs of the case.

15 | **REQUEST FOR PRODUCTION NO. 35**:

16 |       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
17 | payments or transfers made by LTI after July 6, 2016, if any, in which the total assets then
18 | owned by LTI, or the total financial resources available to LTI, was less than
19 | $50,000,000.00 either before and/or after the transaction.

20 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 35**:

21 |       LeLe restates and incorporates by reference the Preliminary Statement and General
22 | Objections set forth above. LeLe further objects to this Request on the grounds that it is
23 | premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's
24 | Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are
25 | "premature" because they would be rendered irrelevant were the Court to grant LeLe's
26 | pending Motion to Dismiss for insufficient service of process and lack of personal
27 | jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this
28 | action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

1   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

2   In addition to being premature, the Requests directed at LeLe and the other individuals

3   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

4   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

5   Request on the grounds that it seeks the documents and communications of third parties or

6   documents and communications which are not in LeLe's possession, custody or control.

7           Furthermore, Vizio's Requests are premature because they pertain to issues that

8   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

9   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

10  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

11  the Merger Agreement including its various theories of fraud related to that alleged

12  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

13  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

14  Thus, nothing about the negotiations regarding the Merger Agreement, including the

15  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

16  the termination of the Merger Agreement has any relevance, and discovery should be

17  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

18  rights, including the right to amend and supplement its Responses and Objections to

19  Vizio's Requests, should it become necessary and appropriate to do so.

20          LeLe further objects that this Request is compound and overbroad. LeLe further

21  objects that the phrase "total financial resources available to" is vague and ambiguous,

22  and as phrased, calls for speculation.

23          LeLe further objects that, as phrased, this Request appears to seek documents that

24  are equally available to Vizio.  LeLe objects to searching for and producing documents

25  equally available to Vizio.

26          LeLe further objects that the Request seeks the documents and communications of

27  third parties or documents and communications which are not in LeLe's possession,

28  custody or control.  Furthermore, this Request, which seeks discovery from individuals

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1   and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

2   calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

3   of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

4   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

5   million and another $10 million in escrow that is disputed.  The remaining dispute

6   concerns LeEco and Vizio's obligations to each other in the context of the proposed China

7   JV.  Moreover, LeTechnology, Inc. is not a party to this action.

8          LeLe further objects that this Request appears to seek documents and

9   communications protected by the attorney-client privilege and work product doctrine.

10   LeLe objects to producing any privileged communications.  LeLe further objects to

11   producing any such documents created after this lawsuit was filed that merely "Relate To"

12   the subject matter of the Request as those documents would clearly be protected by the

13   attorney client privilege and attorney work product doctrine.  LeLe further objects to

14   logging all privileged and work product documents created after this lawsuit was filed as

15   unduly burdensome and disproportionate to the needs of the case.

16   **REQUEST FOR PRODUCTION NO. 36**:

17          ANY and ALL articles of incorporation, amended articles of incorporation, bylaws,

18   amended bylaws and operating agreements in effect for LeECO, GLOBAL, LELE, LTI,

19   LREG, and/or any of their AFFILIATES at any time after January 1, 2012.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 36**:

21          LeLe restates and incorporates by reference the Preliminary Statement and General

22   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

23   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

24   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

25   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

26   pending Motion to Dismiss for insufficient service of process and lack of personal

27   jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

28   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

1    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

2    In addition to being premature, the Requests directed at LeLe and the other individuals

3    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

4    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

5    Request on the grounds that it seeks the documents and communications of third parties or

6    documents and communications which are not in LeLe's possession, custody or control.

7         Furthermore, Vizio's Requests are premature because they pertain to issues that

8    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

9    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

10   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

11   the Merger Agreement including its various theories of fraud related to that alleged

12   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

13   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

14   Thus, nothing about the negotiations regarding the Merger Agreement, including the

15   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

16   the termination of the Merger Agreement has any relevance, and discovery should be

17   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

18   rights, including the right to amend and supplement its Responses and Objections to

19   Vizio's Requests, should it become necessary and appropriate to do so.

20        LeLe objects that this Request compound and is overbroad as to time.

21        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

22   ambiguous and seeks the documents and communications of third parties or documents

23   and communications which are not in LeLe's possession, custody or control.

24   Furthermore, this Request, which seeks discovery from individuals and entities

25   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

26   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

27   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

28   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

1   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

2   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

3   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

4   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

5   not parties to this action.

6        LeLe further objects that this Request appears to seek documents and

7   communications protected by the attorney-client privilege and work product doctrine.

8   LeLe objects to producing any privileged communications.  LeLe further objects to

9   logging all privileged and work product documents created after this lawsuit was filed as

10  unduly burdensome and disproportionate to the needs of the case.

11  **REQUEST FOR PRODUCTION NO. 37**:

12       DOCUMENTS sufficient to identify ALL officers, directors, partners, shareholders,

13  and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES

14  at any time after January 1, 2012.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37**:

16       LeLe restates and incorporates by reference the Preliminary Statement and General

17  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

18  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

19  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

20  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

21  pending Motion to Dismiss for insufficient service of process and lack of personal

22  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

23  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

24  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

25  In addition to being premature, the Requests directed at LeLe and the other individuals

26  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

27  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

28  Request on the grounds that it seeks the documents and communications of third parties or

1   documents and communications which are not in LeLe's possession, custody or control.

2        Furthermore, Vizio's Requests are premature because they pertain to issues that

3   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

4   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

5   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

6   the Merger Agreement including its various theories of fraud related to that alleged

7   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

8   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

9   Thus, nothing about the negotiations regarding the Merger Agreement, including the

10  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

11  the termination of the Merger Agreement has any relevance, and discovery should be

12  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

13  rights, including the right to amend and supplement its Responses and Objections to

14  Vizio's Requests, should it become necessary and appropriate to do so.

15       LeLe objects that this Request compound and is overbroad as to time.

16       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

17  ambiguous and seeks the documents and communications of third parties or documents

18  and communications which are not in LeLe's possession, custody or control.

19  Furthermore, this Request, which seeks discovery from individuals and entities

20  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

21  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

22  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

23  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

24  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

25  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

26  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

27  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

28  not parties to this action.

1    LeLe objects that the Request appears calculated merely to harass and is vague,
2  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
3  overbroad.

4  **REQUEST FOR PRODUCTION NO. 38:**

5    ANY and ALL shares of stock, stock certificates, partnership interests, or
6  membership interests currently held or owned by any PERSONS in LeECO, GLOBAL,
7  LELE, LTI, LREG and/or any of their AFFILIATES.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

9    LeLe restates and incorporates by reference the Preliminary Statement and General
10  Objections set forth above. LeLe further objects to this Request on the grounds that it is
11  premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's
12  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are
13  "premature" because they would be rendered irrelevant were the Court to grant LeLe's
14  pending Motion to Dismiss for insufficient service of process and lack of personal
15  jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this
16  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts
17  with California whatsoever. Furthermore, LeLe was never properly served in this action.
18  In addition to being premature, the Requests directed at LeLe and the other individuals
19  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,
20  irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this
21  Request on the grounds that it seeks the documents and communications of third parties or
22  documents and communications which are not in LeLe's possession, custody or control.

23    Furthermore, Vizio's Requests are premature because they pertain to issues that
24  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's
25  second through sixth causes of action in the FAC (in which LeLe joined). LeEco's
26  pending MTD would eliminate Vizio's second through sixth causes of action for breach of
27  the Merger Agreement including its various theories of fraud related to that alleged
28  breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

1 │ upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

2 │ Thus, nothing about the negotiations regarding the Merger Agreement, including the

3 │ negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

4 │ the termination of the Merger Agreement has any relevance, and discovery should be

5 │ limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

6 │ rights, including the right to amend and supplement its Responses and Objections to

7 │ Vizio's Requests, should it become necessary and appropriate to do so.

8 │          LeLe objects that this Request is compound and is overbroad as to time.

9 │          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

10 │ ambiguous and seeks the documents and communications of third parties or documents

11 │ and communications which are not in LeLe's possession, custody or control.

12 │ Furthermore, this Request, which seeks discovery from individuals and entities

13 │ ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

14 │ to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

15 │ Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

16 │ limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

17 │ another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

18 │ and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

19 │ LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

20 │ the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

21 │ not parties to this action.

22 │          LeLe objects that the Request appears calculated merely to harass and is vague,

23 │ ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

24 │ overbroad.

25 │ **REQUEST FOR PRODUCTION NO. 39**:

26 │          ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY

27 │ contract or agreement - - INCLUDING all written amendments and supplements to any

28 │ such contract or agreement and all written assignments and modifications of any such

1  contract or agreement - - whereby any PERSONS acquired on any date after January 1,

2  2012, either in their own respective names or under and pursuant to any fictitious business

3  names, any right, title or interest in or to LeECO, GLOBAL, LELE, LTI, LREG and/or

4  any of their AFFILIATES, and each or any of their respective employees, shares of stock,

5  partnership interests, membership interests, assets and/or liabilities, INCLUDING all loan

6  commitments, offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty

7  agreements, stock transfer agreements, membership interest transfer agreements, credit

8  agreements, sales orders, partnership agreements, sales agreements, assignment

9  agreements, hypothecation agreements, deregistration agreements, dissolution agreements,

10  purchase agreements, options agreements, stock agreements, shares of stock, certificates

11  of stock, joint venture agreements, asset sale agreements, debt payment agreements,

12  accommodation agreements, debt protection agreements, asset transfer agreements,

13  indemnity agreements, defense agreements, hold harmless agreements, employee sharing

14  agreements, employee transfer agreements, security agreements, financing agreements,

15  memorandum agreements, letter agreements, loan agreements, insolvency agreements,

16  intercompany transfer agreements, escrow agreements, operating agreements, loan

17  commitments, limited liability company agreements, assumption agreements, liquidation

18  agreements, winding up agreements, creditor's agreements, letters of credit, asset

19  distribution or preservation agreements, liability distribution or transfer agreements,

20  membership distribution or transfer agreements, payment records, promissory notes,

21  governmental filings, security instruments, deeds and deeds of trust.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 39**:

23       LeLe restates and incorporates by reference the Preliminary Statement and General

24  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

25  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

26  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

27  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

28  pending Motion to Dismiss for insufficient service of process and lack of personal

jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.   Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.   Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).   LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.   Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.   LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

1  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

2  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

3  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

4  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

5  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

6  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

7  not parties to this action.

8      LeLe objects that the Request appears calculated merely to harass and is vague,

9  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

10  overbroad.

11  **REQUEST FOR PRODUCTION NO. 40:**

12      ANY and ALL agendas, corporate minutes, and corporate resolutions for ALL

13  meetings of the Board of Directors and/or Managers for LeECO, GLOBAL, LELE, LTI,

14  and LREG held on any date after January 1, 2012.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

16      LeLe restates and incorporates by reference the Preliminary Statement and General

17  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

18  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

19  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

20  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

21  pending Motion to Dismiss for insufficient service of process and lack of personal

22  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

23  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

24  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

25  In addition to being premature, the Requests directed at LeLe and the other individuals

26  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

27  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

28  Request on the grounds that it seeks the documents and communications of third parties or

1    documents and communications which are not in LeLe's possession, custody or control.

2         Furthermore, Vizio's Requests are premature because they pertain to issues that

3    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

4    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

5    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

6    the Merger Agreement including its various theories of fraud related to that alleged

7    breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

8    upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

9    Thus, nothing about the negotiations regarding the Merger Agreement, including the

10   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

11   the termination of the Merger Agreement has any relevance, and discovery should be

12   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

13   rights, including the right to amend and supplement its Responses and Objections to

14   Vizio's Requests, should it become necessary and appropriate to do so.

15        LeLe objects that this Request is compound and is overbroad as to time.

16        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

17   ambiguous and seeks the documents and communications of third parties or documents

18   and communications which are not in LeLe's possession, custody or control.

19   Furthermore, this Request, which seeks discovery from individuals and entities

20   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

21   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

22   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

23   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

24   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

25   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

26   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

27   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

28   not parties to this action.

1    LeLe objects that the Request appears calculated merely to harass and is vague,

2  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

3  overbroad.

4  **REQUEST FOR PRODUCTION NO. 41**:

5    ANY and ALL agendas, minutes, and resolutions for ALL meetings of the

6  shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG herd on any date

7  after January 1, 2012.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41**:

9    LeLe restates and incorporates by reference the Preliminary Statement and General

10  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

11  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

12  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

13  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

14  pending Motion to Dismiss for insufficient service of process and lack of personal

15  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

16  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

17  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

18  In addition to being premature, the Requests directed at LeLe and the other individuals

19  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

20  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

21  Request on the grounds that it seeks the documents and communications of third parties or

22  documents and communications which are not in LeLe's possession, custody or control.

23    Furthermore, Vizio's Requests are premature because they pertain to issues that

24  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

25  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

26  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

27  the Merger Agreement including its various theories of fraud related to that alleged

28  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

1 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.
2 Thus, nothing about the negotiations regarding the Merger Agreement, including the
3 negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or
4 the termination of the Merger Agreement has any relevance, and discovery should be
5 limited to whether there was a breach of the Framework Agreement. LeLe reserves all
6 rights, including the right to amend and supplement its Responses and Objections to
7 Vizio's Requests, should it become necessary and appropriate to do so.

8      LeLe objects that this Request is compound and is overbroad as to time.

9      LeLe further objects that the definition of "Affiliates" is overbroad, vague and
10 ambiguous and seeks the documents and communications of third parties or documents
11 and communications which are not in LeLe's possession, custody or control.
12 Furthermore, this Request, which seeks discovery from individuals and entities
13 ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely
14 to harass and is overbroad, irrelevant, and not proportional to the needs of the case.
15 Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
16 limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
17 another $10 million in escrow that is disputed. The remaining dispute concerns LeEco
18 and Vizio's obligations to each other in the context of the proposed China JV. Moreover,
19 LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
20 the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are
21 not parties to this action.

22      LeLe objects that the Request appears calculated merely to harass and is vague,
23 ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
24 overbroad.

25 **REQUEST FOR PRODUCTION NO. 42**:

26      ANY and ALL voting or operating agreements among shareholders or members for
27 LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any date after January 1,
28 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

1      LeLe objects that this Request is compound and is overbroad as to time.

2      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3  ambiguous and seeks the documents and communications of third parties or documents

4  and communications which are not in LeLe's possession, custody or control.

5  Furthermore, this Request, which seeks discovery from individuals and entities

6  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

7  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

8  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

9  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

11  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

12  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

13  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

14  not parties to this action.

15      LeLe objects that the Request appears calculated merely to harass and is vague,

16  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

17  overbroad.

18  **REQUEST FOR PRODUCTION NO. 43**:

19      ANY and ALL contracts and agreements between or among LeECO, GLOBAL,

20  LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in effect at any point

21  in time after January 1, 2012.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 43**:

23      LeLe restates and incorporates by reference the Preliminary Statement and General

24  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

25  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

26  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

27  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

28  pending Motion to Dismiss for insufficient service of process and lack of personal

1  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

2  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

3  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

4  In addition to being premature, the Requests directed at LeLe and the other individuals

5  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

6  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

7  Request on the grounds that it seeks the documents and communications of third parties or

8  documents and communications which are not in LeLe's possession, custody or control.

9        Furthermore, Vizio's Requests are premature because they pertain to issues that

10  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

11  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

12  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

13  the Merger Agreement including its various theories of fraud related to that alleged

14  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

15  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

16  Thus, nothing about the negotiations regarding the Merger Agreement, including the

17  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

18  the termination of the Merger Agreement has any relevance, and discovery should be

19  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

20  rights, including the right to amend and supplement its Responses and Objections to

21  Vizio's Requests, should it become necessary and appropriate to do so.

22        LeLe objects that this Request is compound and is overbroad as to time.

23        LeLe further objects that this Request is compound and overbroad, particularly in

24  its request for "Any and All contracts and agreements between or among...."

25        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

26  ambiguous and seeks the documents and communications of third parties or documents

27  and communications which are not in LeLe's possession, custody or control.

28  Furthermore, this Request, which seeks discovery from individuals and entities

1   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

2   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

3   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

4   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

5   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

6   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

7   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

8   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

9   not parties to this action.

10         LeLe further objects to the extent that this Request seeks documents and

11   communications protected by the attorney-client privilege and work product doctrine.

12   LeLe objects to producing any privileged communications.

13         LeLe objects that the Request appears calculated merely to harass and is vague,

14   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

15   overbroad.

16   **REQUEST FOR PRODUCTION NO. 44**:

17         ANY and ALL DOCUMENTS prepared at any time since 2012 and through and

18   including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG and/or any of

19   their AFFILIATES represented, stated, or otherwise held out that LeECO, MERGER

20   SUB, LTI, OR LREG were a part of, unit, or division of LELE or GLOBAL and/or to be

21   substantially the same as LELE or GLOBAL, INCLUDING advertising or promotional

22   materials, press releases, WeChat and other social media postings, investment reports,

23   financial documents, and ANY DOCUMENTS submitted to, or filed with, ANY

24   governmental, regulatory or market entity.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 44**:

26         LeLe restates and incorporates by reference the Preliminary Statement and General

27   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

28   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION

1    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

2    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

3    pending Motion to Dismiss for insufficient service of process and lack of personal

4    jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

5    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

6    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

7    In addition to being premature, the Requests directed at LeLe and the other individuals

8    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

9    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

10   Request on the grounds that it seeks the documents and communications of third parties or

11   documents and communications which are not in LeLe's possession, custody or control.

12          Furthermore, Vizio's Requests are premature because they pertain to issues that

13   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

14   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

15   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

16   the Merger Agreement including its various theories of fraud related to that alleged

17   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

18   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

19   Thus, nothing about the negotiations regarding the Merger Agreement, including the

20   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

21   the termination of the Merger Agreement has any relevance, and discovery should be

22   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

23   rights, including the right to amend and supplement its Responses and Objections to

24   Vizio's Requests, should it become necessary and appropriate to do so.

25          LeLe objects that this Request is compound and is overbroad as to time.

26          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

27   ambiguous and seeks the documents and communications of third parties or documents

28   and communications which are not in LeLe's possession, custody or control.

CASE NO.  8:17-CV-01175-DOC-JDE

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION

LA 133493446v6

1    Furthermore, this Request, which seeks discovery from individuals and entities

2    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

3    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

4    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

5    limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

6    another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

7    and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

8    LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

9    the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

10   not parties to this action.

11          LeLe further objects that this Request appears to seek documents and

12   communications protected by the attorney-client privilege and work product doctrine.

13   LeLe objects to producing any privileged communications.  LeLe further objects to

14   logging all privileged and work product documents created after this lawsuit was filed as

15   unduly burdensome and disproportionate to the needs of the case.

16          LeLe objects that the Request appears calculated merely to harass and is vague,

17   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

18   overbroad.

19   **REQUEST FOR PRODUCTION NO. 45**:

20          DOCUMENTS sufficient to identify the location of the headquarters and all

21   administrative, manufacturing and distribution facilities for LeECO, GLOBAL, LELE,

22   LTI, LREG and/or any of their AFFILIATES at all times after January 1, 2012 and

23   through the present day.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 45**:

25          LeLe restates and incorporates by reference the Preliminary Statement and General

26   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

27   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

28   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

1   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

2   pending Motion to Dismiss for insufficient service of process and lack of personal

3   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

4   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

5   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

6   In addition to being premature, the Requests directed at LeLe and the other individuals

7   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

8   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

9   Request on the grounds that it seeks the documents and communications of third parties or

10   documents and communications which are not in LeLe's possession, custody or control.

11          Furthermore, Vizio's Requests are premature because they pertain to issues that

12   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

13   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

14   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

15   the Merger Agreement including its various theories of fraud related to that alleged

16   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

17   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

18   Thus, nothing about the negotiations regarding the Merger Agreement, including the

19   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

20   the termination of the Merger Agreement has any relevance, and discovery should be

21   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

22   rights, including the right to amend and supplement its Responses and Objections to

23   Vizio's Requests, should it become necessary and appropriate to do so.

24          LeLe objects that the Request calls for confidential information and/or trade secrets.

25          LeLe objects that the Request is compound and is overbroad as to time.

26          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

27   ambiguous and seeks the documents and communications of third parties or documents

28   and communications which are not in LeLe's possession, custody or control.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1     Furthermore, this Request, which seeks discovery from individuals and entities

2     ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

3     to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

4     Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

5     limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

6     another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

7     and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

8     LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

9     the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

10     not parties to this action.

11        LeLe further objects that this Request appears to seek documents and

12     communications protected by the attorney-client privilege and work product doctrine.

13     LeLe objects to producing any privileged communications. LeLe further objects to

14     logging all privileged and work product documents created after this lawsuit was filed as

15     unduly burdensome and disproportionate to the needs of the case.

16        LeLe objects that the Request appears calculated merely to harass and is vague,

17     ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

18     overbroad.

19     **REQUEST FOR PRODUCTION NO. 46**:

20        DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL, LELE,

21     LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012 and

22     through the present day.  "Identify" in this request means to provide the full name, title,

23     and current (or last known) address and phone number of each employee, the entity with

24     which each individual was employed, the date on which the individual's employment

25     began, and, if the individual is no longer employed, the dates of his or her service with

26     LeECO, GLOBAL, LELE, LTI, LREG or their AFFILIATES.

27     **RESPONSE TO REQUEST FOR PRODUCTION NO. 46**:

28        LeLe restates and incorporates by reference the Preliminary Statement and General

1    Objections set forth above. LeLe further objects to this Request on the grounds that it is

2    premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

3    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

4    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

5    pending Motion to Dismiss for insufficient service of process and lack of personal

6    jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

7    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

8    with California whatsoever. Furthermore, LeLe was never properly served in this action.

9    In addition to being premature, the Requests directed at LeLe and the other individuals

10   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

11   irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this

12   Request on the grounds that it seeks the documents and communications of third parties or

13   documents and communications which are not in LeLe's possession, custody or control.

14      Furthermore, Vizio's Requests are premature because they pertain to issues that

15   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

16   second through sixth causes of action in the FAC (in which LeLe joined). LeEco's

17   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

18   the Merger Agreement including its various theories of fraud related to that alleged

19   breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

20   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

21   Thus, nothing about the negotiations regarding the Merger Agreement, including the

22   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

23   the termination of the Merger Agreement has any relevance, and discovery should be

24   limited to whether there was a breach of the Framework Agreement. LeLe reserves all

25   rights, including the right to amend and supplement its Responses and Objections to

26   Vizio's Requests, should it become necessary and appropriate to do so.

27      LeLe objects that this Request is compound and is overbroad as to time. LeLe

28   further objections that the information sought is irrelevant, and not proportional to the

1    needs of the case as there is no allegation of any employee acting outside the scope of

2    their authority.

3          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

4    ambiguous and seeks the documents and communications of third parties or documents

5    and communications which are not in LeLe's possession, custody or control.

6    Furthermore, this Request, which seeks discovery from individuals and entities

7    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

8    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

9    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

10   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

11   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

12   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

13   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

14   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

15   not parties to this action.

16         LeLe further objects to the extent that this Request seeks documents and

17   communications protected by the attorney-client privilege and work product doctrine.

18   LeLe objects to producing any privileged communications.  LeLe further objects to

19   logging all privileged and work product documents created after this lawsuit was filed as

20   unduly burdensome and disproportionate to the needs of the case.

21         LeLe objects that the Request appears calculated merely to harass and is vague,

22   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

23   overbroad.

24   **REQUEST FOR PRODUCTION NO. 47**:

25         DOCUMENTS sufficient to identify ALL employees, managers, consultants,

26   independent contractors, agents, attorneys, accountants, officers and/or directors shared

27   by, used by, loaned to, or otherwise transferred between one or more of LeECO,

28   GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after

1    January 1, 2012.

2    **RESPONSE TO REQUEST FOR PRODUCTION NO. 47**:

3          LeLe restates and incorporates by reference the Preliminary Statement and General

4    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

5    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

6    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

7    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

8    pending Motion to Dismiss for insufficient service of process and lack of personal

9    jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

10   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

11   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

12   In addition to being premature, the Requests directed at LeLe and the other individuals

13   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

14   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

15   Request on the grounds that it seeks the documents and communications of third parties or

16   documents and communications which are not in LeLe's possession, custody or control.

17         Furthermore, Vizio's Requests are premature because they pertain to issues that

18   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

19   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

20   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

21   the Merger Agreement including its various theories of fraud related to that alleged

22   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

23   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

24   Thus, nothing about the negotiations regarding the Merger Agreement, including the

25   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

26   the termination of the Merger Agreement has any relevance, and discovery should be

27   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

28   rights, including the right to amend and supplement its Responses and Objections to

1 | Vizio's Requests, should it become necessary and appropriate to do so.

2 |       LeLe objects that this Request is compound and is overbroad as to time.

3 |       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

4 | ambiguous and seeks the documents and communications of third parties or documents

5 | and communications which are not in LeLe's possession, custody or control.

6 | Furthermore, this Request, which seeks discovery from individuals and entities

7 | ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

8 | to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

9 | Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

10 | limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

11 | another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

12 | and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

13 | LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

14 | the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

15 | not parties to this action.

16 |       LeLe further objects to the extent that this Request seeks documents and

17 | communications protected by the attorney-client privilege and work product doctrine.

18 | LeLe objects to producing any privileged communications.  LeLe further objects to

19 | logging all privileged and work product documents created after this lawsuit was filed as

20 | unduly burdensome and disproportionate to the needs of the case.

21 |       LeLe objects that the Request appears calculated merely to harass and is vague,

22 | ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

23 | overbroad.

24 | **REQUEST FOR PRODUCTION NO. 48**:

25 |       ANY and ALL DOCUMENTS RELATING TO monies transferred by, between or

26 | among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES since

27 | January 1, 2012, and through and including the present date, INCLUDING intercorporate

28 | transfers, hypothecations, loans, gifts, dividends, earnings and profits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

1     LeLe objects that this Request is compound and is overbroad as to time.

2     LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3  ambiguous and seeks the documents and communications of third parties or documents

4  and communications which are not in LeLe's possession, custody or control.

5  Furthermore, this Request, which seeks discovery from individuals and entities

6  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

7  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

8  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

9  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

11  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

12  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

13  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

14  not parties to this action.

15     LeLe further objects that this Request appears to seek documents and

16  communications protected by the attorney-client privilege and work product doctrine.

17  LeLe objects to producing any privileged communications.   LeLe further objects to

18  logging all privileged and work product documents created after this lawsuit was filed as

19  unduly burdensome and disproportionate to the needs of the case.

20     LeLe objects that the Request appears calculated merely to harass and is vague,

21  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

22  overbroad.

23  **REQUEST FOR PRODUCTION NO. 49**:

24     ANY and ALL DOCUMENTS RELATING TO contracts or agreements with third

25  parties, loans, other obligations or instruments of debt that were paid, co-signed or

26  guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES

27  for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since January 1, 2012, and

28  through and including the present date.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

1    LeLe objects that this Request is compound and is overbroad as to time.

2    LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3    ambiguous and seeks the documents and communications of third parties or documents

4    and communications which are not in LeLe's possession, custody or control.

5    Furthermore, this Request, which seeks discovery from individuals and entities

6    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

7    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

8    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

9    limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

11   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

12   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

13   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

14   not parties to this action.

15   LeLe further objects that this Request appears to seek documents and

16   communications protected by the attorney-client privilege and work product doctrine.

17   LeLe objects to producing any privileged communications.  LeLe further objects to

18   logging all privileged and work product documents created after this lawsuit was filed as

19   unduly burdensome and disproportionate to the needs of the case.

20   LeLe objects that the Request appears calculated merely to harass and is vague,

21   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

22   overbroad.

23   **REQUEST FOR PRODUCTION NO. 50**:

24   ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

25   GLOBAL, LELE, LTI, and LREG at or about (a) the date of its incorporation or

26   formation, and (b) from and after January. 1, 2012 and including the present date.

27   **RESPONSE TO REQUEST FOR PRODUCTION NO. 50**:

28   LeLe restates and incorporates by reference the Preliminary Statement and General

1  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

2  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

3  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

4  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

5  pending Motion to Dismiss for insufficient service of process and lack of personal

6  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

7  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

8  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

9  In addition to being premature, the Requests directed at LeLe and the other individuals

10  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

11  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

12  Request on the grounds that it seeks the documents and communications of third parties or

13  documents and communications which are not in LeLe's possession, custody or control.

14      Furthermore, Vizio's Requests are premature because they pertain to issues that

15  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

16  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

17  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

18  the Merger Agreement including its various theories of fraud related to that alleged

19  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

20  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

21  Thus, nothing about the negotiations regarding the Merger Agreement, including the

22  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

23  the termination of the Merger Agreement has any relevance, and discovery should be

24  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

25  rights, including the right to amend and supplement its Responses and Objections to

26  Vizio's Requests, should it become necessary and appropriate to do so.

27      LeLe objects that this Request is compound and is overbroad as to time.

28      LeLe further objects that the Request seeks the documents and communications of

1    third parties or documents and communications which are not in LeLe's possession,

2    custody or control.  Furthermore, this Request, which seeks discovery from individuals

3    and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

4    calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

5    of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

6    the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

7    million and another $10 million in escrow that is disputed.  The remaining dispute

8    concerns LeEco and Vizio's obligations to each other in the context of the proposed China

9    JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

10    been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate

11    Group LLC are not parties to this action.

12        LeLe further objects that this Request appears to seek documents and

13    communications protected by the attorney-client privilege and work product doctrine.

14    LeLe objects to producing any privileged communications.  LeLe further objects to

15    logging all privileged and work product documents created after this lawsuit was filed as

16    unduly burdensome and disproportionate to the needs of the case.

17        LeLe objects that the Request appears calculated merely to harass and is vague,

18    ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

19    overbroad.

20    **REQUEST FOR PRODUCTION NO. 51**:

21        ANY and ALL financial statements and analyses for LeECO, GLOBAL, LELE,

22    LTI, and LREG since January 1, 2012, and through and including the present date,

23    INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance sheets, and

24    4) ANY financial summaries or reports prepared for a) the use of JIA or other executives

25    at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential investors in, joint

26    venturers with, or lenders to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

27    AFFILIATES.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

1    LeLe objects that this Request is compound and is overbroad as to time.

2    LeLe further objects that the Request seeks the documents and communications of

3    third parties or documents and communications which are not in LeLe's possession,

4    custody or control.  Furthermore, this Request, which seeks discovery from individuals

5    and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

6    calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

7    of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

8    the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

9    million and another $10 million in escrow that is disputed.  The remaining dispute

10   concerns LeEco and Vizio's obligations to each other in the context of the proposed China

11   JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

12   been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate

13   Group LLC are not parties to this action.

14   LeLe further objects that this Request appears to seek documents and

15   communications protected by the attorney-client privilege and work product doctrine.

16   LeLe objects to producing any privileged communications.  LeLe further objects to

17   logging all privileged and work product documents created after this lawsuit was filed as

18   unduly burdensome and disproportionate to the needs of the case.

19   LeLe objects that the Request appears calculated merely to harass and is vague,

20   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

21   overbroad.

22   **REQUEST FOR PRODUCTION NO. 52**:

23   ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits of

24   LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through and

25   including the present date.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 52**:

27   LeLe restates and incorporates by reference the Preliminary Statement and General

28   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's
Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are
"premature" because they would be rendered irrelevant were the Court to grant LeLe's
pending Motion to Dismiss for insufficient service of process and lack of personal
jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this
action nor is LeLe alleged to have made any statement to Vizio or have had any contacts
with California whatsoever.  Furthermore, LeLe was never properly served in this action.
In addition to being premature, the Requests directed at LeLe and the other individuals
and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,
irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this
Request on the grounds that it seeks the documents and communications of third parties or
documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that
would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's
second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's
pending MTD would eliminate Vizio's second through sixth causes of action for breach of
the Merger Agreement including its various theories of fraud related to that alleged
breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement
upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.
Thus, nothing about the negotiations regarding the Merger Agreement, including the
negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or
the termination of the Merger Agreement has any relevance, and discovery should be
limited to whether there was a breach of the Framework Agreement.  LeLe reserves all
rights, including the right to amend and supplement its Responses and Objections to
Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the Request seeks the documents and communications of
third parties or documents and communications which are not in LeLe's possession,

1    custody or control.  Furthermore, this Request, which seeks discovery from individuals

2    and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

3    calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

4    of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

5    the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

6    million and another $10 million in escrow that is disputed.  The remaining dispute

7    concerns LeEco and Vizio's obligations to each other in the context of the proposed China

8    JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

9    been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate

10   Group LLC are not parties to this action.

11       LeLe further objects that this Request appears to seek documents and

12   communications protected by the attorney-client privilege and work product doctrine.

13   LeLe objects to producing any privileged communications.  LeLe further objects to

14   logging all privileged and work product documents created after this lawsuit was filed as

15   unduly burdensome and disproportionate to the needs of the case.

16       LeLe objects that the Request appears calculated merely to harass and is vague,

17   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

18   overbroad.

19   **REQUEST FOR PRODUCTION NO. 53**:

20       DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible and

21   intangible assets of any kind with a value in excess of $100,000 in which LeECO,

22   GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES possessed an

23   ownership interest at any point after July 1, 2016.  "Identify" in this request means to

24   provide the description and location for each tangible and intangible asset, the nature and

25   size of the interest in that asset (e.g. a 50% equity interest, a joint owner in common), and

26   the last known market value of the asset.

27   **RESPONSE TO REQUEST FOR PRODUCTION NO. 53**:

28       LeLe restates and incorporates by reference the Preliminary Statement and General

1    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

2    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

3    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

4    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

5    pending Motion to Dismiss for insufficient service of process and lack of personal

6    jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

7    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

8    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

9    In addition to being premature, the Requests directed at LeLe and the other individuals

10   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

11   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

12   Request on the grounds that it seeks the documents and communications of third parties or

13   documents and communications which are not in LeLe's possession, custody or control.

14         Furthermore, Vizio's Requests are premature because they pertain to issues that

15   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

16   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

17   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

18   the Merger Agreement including its various theories of fraud related to that alleged

19   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

20   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

21   Thus, nothing about the negotiations regarding the Merger Agreement, including the

22   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

23   the termination of the Merger Agreement has any relevance, and discovery should be

24   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

25   rights, including the right to amend and supplement its Responses and Objections to

26   Vizio's Requests, should it become necessary and appropriate to do so.

27         LeLe objects that this Request is compound and is overbroad as to time.

28         LeLe further objects that the Request seeks the documents and communications of

third parties or documents and communications which are not in LeLe's possession,
custody or control.  Furthermore, this Request, which seeks discovery from individuals
and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears
calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs
of the case.  Particularly if the case is limited to a breach of the Framework Agreement,
the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40
million and another $10 million in escrow that is disputed.  The remaining dispute
concerns LeEco and Vizio's obligations to each other in the context of the proposed China
JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not
been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate
Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and
communications protected by the attorney-client privilege and work product doctrine.
LeLe objects to producing any privileged communications.    LeLe further objects to
logging all privileged and work product documents created after this lawsuit was filed as
unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague,
ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
overbroad.

**REQUEST FOR PRODUCTION NO. 54**:

DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or
liabilities of any kind with a value in excess of $100,000 owed by LeECO, GLOBAL,
LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point after July 1, 2016.
"Identify" in 4th is request means to provide the type of liability, the amount currently
owed, the PERSON to whom the liability is owed and that PERSON' s address and
telephone number.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54**:

LeLe restates and incorporates by reference the Preliminary Statement and General

Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the Request seeks the documents and communications of

1    third parties or documents and communications which are not in LeLe's possession,

2    custody or control.  Furthermore, this Request, which seeks discovery from individuals

3    and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

4    calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

5    of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

6    the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

7    million and another $10 million in escrow that is disputed.  The remaining dispute

8    concerns LeEco and Vizio's obligations to each other in the context of the proposed China

9    JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

10    been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate

11    Group LLC are not parties to this action.

12        LeLe further objects that this Request appears to seek documents and

13    communications protected by the attorney-client privilege and work product doctrine.

14    LeLe objects to producing any privileged communications.  LeLe further objects to

15    logging all privileged and work product documents created after this lawsuit was filed as

16    unduly burdensome and disproportionate to the needs of the case.

17        LeLe objects that the Request appears calculated merely to harass and is vague,

18    ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

19    overbroad.

20 **REQUEST FOR PRODUCTION NO. 55**:

21        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO plans

22    or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

23    AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible assets

24    of any kind that it possessed after July 1, 2016.

25 **RESPONSE TO REQUEST FOR PRODUCTION NO. 55**:

26        LeLe restates and incorporates by reference the Preliminary Statement and General

27    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

28    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

1  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

2  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

3  pending Motion to Dismiss for insufficient service of process and lack of personal

4  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

5  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

6  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

7  In addition to being premature, the Requests directed at LeLe and the other individuals

8  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

9  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

10  Request on the grounds that it seeks the documents and communications of third parties or

11  documents and communications which are not in LeLe's possession, custody or control.

12       Furthermore, Vizio's Requests are premature because they pertain to issues that

13  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

14  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

15  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

16  the Merger Agreement including its various theories of fraud related to that alleged

17  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

18  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

19  Thus, nothing about the negotiations regarding the Merger Agreement, including the

20  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

21  the termination of the Merger Agreement has any relevance, and discovery should be

22  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

23  rights, including the right to amend and supplement its Responses and Objections to

24  Vizio's Requests, should it become necessary and appropriate to do so.

25       LeLe objects that this Request is compound and is overbroad as to time.

26       LeLe further objects that the Request seeks the documents and communications of

27  third parties or documents and communications which are not in LeLe's possession,

28  custody or control.  Furthermore, this Request, which seeks discovery from individuals

1   and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

2   calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

3   of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

4   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

5   million and another $10 million in escrow that is disputed.  The remaining dispute

6   concerns LeEco and Vizio's obligations to each other in the context of the proposed China

7   JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

8   been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate

9   Group LLC are not parties to this action.

10      LeLe further objects that this Request appears to seek documents and

11  communications protected by the attorney-client privilege and work product doctrine.

12  LeLe objects to producing any privileged communications.  LeLe further objects to

13  logging all privileged and work product documents created after this lawsuit was filed as

14  unduly burdensome and disproportionate to the needs of the case.

15      LeLe objects that the Request appears calculated merely to harass and is vague,

16  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

17  overbroad.

18  **REQUEST FOR PRODUCTION NO. 56**:

19      The Master Agreement executed in or after December 2016 among LREG, the

20  Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS

21  RELATING TO property owned by LREG in Santa Clara, California and ANY and ALL

22  DOCUMENTS OR COMMUNICATIONS RELATING TO the Master Agreement or to

23  ANY transaction that occurred pursuant to the terms of the Master Agreement.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 56**:

25      LeLe restates and incorporates by reference the Preliminary Statement and General

26  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

27  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

28  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

1  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

2  pending Motion to Dismiss for insufficient service of process and lack of personal

3  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

4  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

5  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

6  In addition to being premature, the Requests directed at LeLe and the other individuals

7  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

8  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

9  Request on the grounds that it seeks the documents and communications of third parties or

10  documents and communications which are not in LeLe's possession, custody or control.

11      Furthermore, Vizio's Requests are premature because they pertain to issues that

12  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

13  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

14  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

15  the Merger Agreement including its various theories of fraud related to that alleged

16  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

17  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

18  Thus, nothing about the negotiations regarding the Merger Agreement, including the

19  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

20  the termination of the Merger Agreement has any relevance, and discovery should be

21  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

22  rights, including the right to amend and supplement its Responses and Objections to

23  Vizio's Requests, should it become necessary and appropriate to do so.

24      LeLe further objects that this Request is compound and overbroad, particularly in

25  its request for "Any and All Documents or Communications relating to any transfers of

26  equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

27      LeLe further objects that this Request appears to seek documents and

28  communications protected by the attorney-client privilege and work product doctrine.

1 | LeLe objects to producing any privileged communications.

2 | **REQUEST FOR PRODUCTION NO. 57**:

3 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY

4 | transfers of equity interests in LREG to the Genzon Group or to ANY PERSON other than

5 | LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016, INCLUDING agreements,

6 | emails, records of all payments made, and stock certificates or other documents reflecting

7 | the transfer of any interest.

8 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 57**:

9 | LeLe restates and incorporates by reference the Preliminary Statement and General

10 | Objections set forth above.  LeLe further objects to this Request on the grounds that it is

11 | premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

12 | Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

13 | "premature" because they would be rendered irrelevant were the Court to grant LeLe's

14 | pending Motion to Dismiss for insufficient service of process and lack of personal

15 | jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

16 | action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

17 | with California whatsoever.  Furthermore, LeLe was never properly served in this action.

18 | In addition to being premature, the Requests directed at LeLe and the other individuals

19 | and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

20 | irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

21 | Request on the grounds that it seeks the documents and communications of third parties or

22 | documents and communications which are not in LeLe's possession, custody or control.

23 | Furthermore, Vizio's Requests are premature because they pertain to issues that

24 | would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

25 | second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

26 | pending MTD would eliminate Vizio's second through sixth causes of action for breach of

27 | the Merger Agreement including its various theories of fraud related to that alleged

28 | breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

1  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

2  Thus, nothing about the negotiations regarding the Merger Agreement, including the

3  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

4  the termination of the Merger Agreement has any relevance, and discovery should be

5  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

6  rights, including the right to amend and supplement its Responses and Objections to

7  Vizio's Requests, should it become necessary and appropriate to do so.

8       LeLe further objects that this Request is compound and overbroad, particularly in

9  its request for "Any and All Documents or Communications relating to any transfers of

10  equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

11       LeLe further objects that this Request appears to seek documents and

12  communications protected by the attorney-client privilege and work product doctrine.

13  LeLe objects to producing any privileged communications.

14  **REQUEST FOR PRODUCTION NO. 58**:

15       DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial

16  accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

17  AFFILIATES was listed as an owner of the account at any point in 2017.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 58**:

19       LeLe restates and incorporates by reference the Preliminary Statement and General

20  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

21  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

22  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

23  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

24  pending Motion to Dismiss for insufficient service of process and lack of personal

25  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

26  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

27  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

28  In addition to being premature, the Requests directed at LeLe and the other individuals

1  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

2  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

3  Request on the grounds that it seeks the documents and communications of third parties or

4  documents and communications which are not in LeLe's possession, custody or control.

5      Furthermore, Vizio's Requests are premature because they pertain to issues that

6  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

7  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

8  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

9  the Merger Agreement including its various theories of fraud related to that alleged

10 breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

11 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

12 Thus, nothing about the negotiations regarding the Merger Agreement, including the

13 negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

14 the termination of the Merger Agreement has any relevance, and discovery should be

15 limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

16 rights, including the right to amend and supplement its Responses and Objections to

17 Vizio's Requests, should it become necessary and appropriate to do so.

18     LeLe objects that this Request is compound and is overbroad as to time.

19     LeLe further objects that the definition of "Affiliates" is overbroad, vague and

20 ambiguous and seeks the documents and communications of third parties or documents

21 and communications which are not in LeLe's possession, custody or control.

22 Furthermore, this Request, which seeks discovery from individuals and entities

23 ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

24 to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

25 Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

26 limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

27 another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

28 and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

1  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

2  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

3  not parties to this action.

4      LeLe further objects to the extent that this Request seeks documents and

5  communications protected by the attorney-client privilege and work product doctrine.

6  LeLe objects to producing any privileged communications.

7      LeLe objects that the Request appears calculated merely to harass and is vague,

8  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

9  overbroad.

10  **REQUEST FOR PRODUCTION NO. 59**:

11      The letter or memo by JIA issued in or about November 2016 RELATING TO

12  financing issues being experienced by the global LeEco businesses and announcing that

13  JIA would reduce his own income to one yuan.  This letter was referenced in an article by

14  Bloomberg News, which article can be found at

15  https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-

16  confesses-to-cash-crunch-at-leeco.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 59**:

18      LeLe restates and incorporates by reference the Preliminary Statement and General

19  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

20  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

21  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

22  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

23  pending Motion to Dismiss for insufficient service of process and lack of personal

24  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

25  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

26  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

27  In addition to being premature, the Requests directed at LeLe and the other individuals

28  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

1  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

2  Request on the grounds that it seeks the documents and communications of third parties or

3  documents and communications which are not in LeLe's possession, custody or control.

4       Furthermore, Vizio's Requests are premature because they pertain to issues that

5  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

6  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

7  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

8  the Merger Agreement including its various theories of fraud related to that alleged

9  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

10  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

11  Thus, nothing about the negotiations regarding the Merger Agreement, including the

12  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

13  the termination of the Merger Agreement has any relevance, and discovery should be

14  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

15  rights, including the right to amend and supplement its Responses and Objections to

16  Vizio's Requests, should it become necessary and appropriate to do so.

17       LeLe further objects that the Request seeks the documents and communications of

18  third parties or documents and communications which are not in LeLe's possession,

19  custody or control.  Furthermore, this Request, which seeks discovery from individuals

20  and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

21  calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

22  of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

23  the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

24  million and another $10 million in escrow that is disputed.  The remaining dispute

25  concerns LeEco and Vizio's obligations to each other in the context of the proposed China

26  JV.  Moreover, Yueting Jia has not been served with the Summons and FAC.

27       LeLe further objects that this Request to the extent that is seeks documents and

28  communications protected by the attorney-client privilege and work product doctrine.

1  LeLe objects to producing any privileged communications.

2  **REQUEST TOR PRODUCTION NO. 60:**

3      ANY and ALL orders issued after January 1, 2016 by ANY court, governmental

4  entity, or administrative body that has the effect of seizing, or restricting the disposition

5  of, ANY assets owned by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

6  AFFILIATES.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

8      LeLe restates and incorporates by reference the Preliminary Statement and General

9  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

10 premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

11 Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

12 "premature" because they would be rendered irrelevant were the Court to grant LeLe's

13 pending Motion to Dismiss for insufficient service of process and lack of personal

14 jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

15 action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

16 with California whatsoever.  Furthermore, LeLe was never properly served in this action.

17 In addition to being premature, the Requests directed at LeLe and the other individuals

18 and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

19 irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

20 Request on the grounds that it seeks the documents and communications of third parties or

21 documents and communications which are not in LeLe's possession, custody or control.

22     Furthermore, Vizio's Requests are premature because they pertain to issues that

23 would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

24 second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

25 pending MTD would eliminate Vizio's second through sixth causes of action for breach of

26 the Merger Agreement including its various theories of fraud related to that alleged

27 breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

28 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

1   Thus, nothing about the negotiations regarding the Merger Agreement, including the

2   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

3   the termination of the Merger Agreement has any relevance, and discovery should be

4   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

5   rights, including the right to amend and supplement its Responses and Objections to

6   Vizio's Requests, should it become necessary and appropriate to do so.

7        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

8   ambiguous and seeks the documents and communications of third parties or documents

9   and communications which are not in LeLe's possession, custody or control.

10   Furthermore, this Request, which seeks discovery from individuals and entities

11   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

12   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

13   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

14   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

15   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

16   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

17   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

18   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

19   not parties to this action.

20        LeLe further objects that this Request to the extent that is seeks documents and

21   communications protected by the attorney-client privilege and work product doctrine.

22   LeLe objects to producing any privileged communications.

23   **REQUEST FOR PRODUCTION NO. 61**:

24        DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal actions

25   or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

26   AFFILIATES filed or pending in the United States at any point after January 1, 2016.

27   "Identify" in this request means to identify the court or administrative body in which the

28   action is pending, the name of the action, and the case number(s) of that action or actions.

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 61**:

2         LeLe restates and incorporates by reference the Preliminary Statement and General

3   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

4   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

5   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

6   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

7   pending Motion to Dismiss for insufficient service of process and lack of personal

8   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

9   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

10  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

11  In addition to being premature, the Requests directed at LeLe and the other individuals

12  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

13  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

14  Request on the grounds that it seeks the documents and communications of third parties or

15  documents and communications which are not in LeLe's possession, custody or control.

16        Furthermore, Vizio's Requests are premature because they pertain to issues that

17  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

18  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

19  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

20  the Merger Agreement including its various theories of fraud related to that alleged

21  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

22  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

23  Thus, nothing about the negotiations regarding the Merger Agreement, including the

24  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

25  the termination of the Merger Agreement has any relevance, and discovery should be

26  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

27  rights, including the right to amend and supplement its Responses and Objections to

28  Vizio's Requests, should it become necessary and appropriate to do so.

1  LeLe further objects that the definition of "Affiliates" is overbroad, vague and
2  ambiguous and seeks the documents and communications of third parties or documents
3  and communications which are not in LeLe's possession, custody or control.
4  Furthermore, this Request, which seeks discovery from individuals and entities
5  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely
6  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.
7  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
8  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
9  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco
10 and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,
11 LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
12 the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are
13 not parties to this action.

14  LeLe LeLe further objects that this Request to the extent that is seeks documents
15 and communications protected by the attorney-client privilege and work product doctrine.
16 LeLe objects to producing any privileged communications.

17 **REQUEST FOR PRODUCTION NO. 62**:

18  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY
19 actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their
20 AFFILIATES to make payments that were or are due and owing at any point after
21 January 1, 2016.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 62**:

23  LeLe restates and incorporates by reference the Preliminary Statement and General
24 Objections set forth above.  LeLe further objects to this Request on the grounds that it is
25 premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's
26 Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are
27 "premature" because they would be rendered irrelevant were the Court to grant LeLe's
28 pending Motion to Dismiss for insufficient service of process and lack of personal

1    jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

2    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

3    with California whatsoever.  Furthermore, LeLe was never properly served in this action.

4    In addition to being premature, the Requests directed at LeLe and the other individuals

5    and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

6    irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

7    Request on the grounds that it seeks the documents and communications of third parties or

8    documents and communications which are not in LeLe's possession, custody or control.

9         Furthermore, Vizio's Requests are premature because they pertain to issues that

10   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

11   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

12   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

13   the Merger Agreement including its various theories of fraud related to that alleged

14   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

15   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

16   Thus, nothing about the negotiations regarding the Merger Agreement, including the

17   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

18   the termination of the Merger Agreement has any relevance, and discovery should be

19   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

20   rights, including the right to amend and supplement its Responses and Objections to

21   Vizio's Requests, should it become necessary and appropriate to do so.

22        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

23   ambiguous and seeks the documents and communications of third parties or documents

24   and communications which are not in LeLe's possession, custody or control.

25   Furthermore, this Request, which seeks discovery from individuals and entities

26   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

27   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

28   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
*LA 133493446v6*

1 | limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

2 | another $10 million in escrow that is disputed. The remaining dispute concerns LeEco

3 | and Vizio's obligations to each other in the context of the proposed China JV. Moreover,

4 | LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

5 | the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

6 | not parties to this action.

7 |       LeLe LeLe further objects that this Request to the extent that is seeks documents

8 | and communications protected by the attorney-client privilege and work product doctrine.

9 | LeLe objects to producing any privileged communications.

10 | **REQUEST FOR PRODUCTION NO. 63**:

11 |       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

12 | Yueting Jia's resignation in July 2017 as Chairman of ANY of the global LeEco

13 | businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi Holding

14 | Co., Ltd. (Beijing) and/or any of their AFFILIATES.

15 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 63**:

16 |       LeLe restates and incorporates by reference the Preliminary Statement and General

17 | Objections set forth above. LeLe further objects to this Request on the grounds that it is

18 | premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

19 | Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

20 | "premature" because they would be rendered irrelevant were the Court to grant LeLe's

21 | pending Motion to Dismiss for insufficient service of process and lack of personal

22 | jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this

23 | action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

24 | with California whatsoever. Furthermore, LeLe was never properly served in this action.

25 | In addition to being premature, the Requests directed at LeLe and the other individuals

26 | and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

27 | irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this

28 | Request on the grounds that it seeks the documents and communications of third parties or

1   documents and communications which are not in LeLe's possession, custody or control.

2           Furthermore, Vizio's Requests are premature because they pertain to issues that

3   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

4   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

5   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

6   the Merger Agreement including its various theories of fraud related to that alleged

7   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

8   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

9   Thus, nothing about the negotiations regarding the Merger Agreement, including the

10  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

11  the termination of the Merger Agreement has any relevance, and discovery should be

12  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

13  rights, including the right to amend and supplement its Responses and Objections to

14  Vizio's Requests, should it become necessary and appropriate to do so.

15          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

16  ambiguous and seeks the documents and communications of third parties or documents

17  and communications which are not in LeLe's possession, custody or control.

18  Furthermore, this Request, which seeks discovery from individuals and entities

19  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

20  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

21  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

22  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

23  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

24  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

25  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

26  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

27  not parties to this action.

28          LeLe further objects that this Request to the extent that is seeks documents and

1  communications protected by the attorney-client privilege and work product doctrine.

2  LeLe objects to producing any privileged communications.

3  **REQUEST FOR PRODUCTION NO. 64**:

4       ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO the sale,

5  transfer, dissolution, winding up, or liquidation of LELE, GLOBAL, LeECO, LTI, LREG

6  or ANY of their AFFILIATES.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 64**:

8       LeLe restates and incorporates by reference the Preliminary Statement and General

9  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

10  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

11  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

12  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

13  pending Motion to Dismiss for insufficient service of process and lack of personal

14  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

15  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

16  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

17  In addition to being premature, the Requests directed at LeLe and the other individuals

18  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

19  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

20  Request on the grounds that it seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or control.

22       Furthermore, Vizio's Requests are premature because they pertain to issues that

23  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

24  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

25  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

26  the Merger Agreement including its various theories of fraud related to that alleged

27  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

28  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

1   Thus, nothing about the negotiations regarding the Merger Agreement, including the

2   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

3   the termination of the Merger Agreement has any relevance, and discovery should be

4   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

5   rights, including the right to amend and supplement its Responses and Objections to

6   Vizio's Requests, should it become necessary and appropriate to do so.

7          LeLe further objects that the definition of "Affiliates" is overbroad, vague and

8   ambiguous and seeks the documents and communications of third parties or documents

9   and communications which are not in LeLe's possession, custody or control.

10  Furthermore, this Request, which seeks discovery from individuals and entities

11  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

12  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

13  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

14  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

15  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

16  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

17  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

18  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

19  not parties to this action.

20         LeLe further objects that this Request to the extent that is seeks documents and

21  communications protected by the attorney-client privilege and work product doctrine.

22  LeLe objects to producing any privileged communications.

23  **REQUEST FOR PRODUCTION NO. 65:**

24         ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO plans,

25  discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or ANY of

26  their AFFILIATES to (a) provide notice to, protect or otherwise make arrangements or

27  accommodations for or with their creditors; (b) assign, assume, distribute or transfer any

28  stock, membership interests, actual assets, actual liabilities, contractual obligations,

1  contingent liabilities, contingent assets, or employees of LELE, GLOBAL, LeECO, LTI,

2  LREG or their AFFILIATES, or (c) to indemnify, hold harmless or defend the obligations

3  of any PERSON.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 65**:

5        LeLe restates and incorporates by reference the Preliminary Statement and General

6  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

7  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

8  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

9  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

10  pending Motion to Dismiss for insufficient service of process and lack of personal

11  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

12  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

13  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

14  In addition to being premature, the Requests directed at LeLe and the other individuals

15  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

16  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

17  Request on the grounds that it seeks the documents and communications of third parties or

18  documents and communications which are not in LeLe's possession, custody or control.

19        Furthermore, Vizio's Requests are premature because they pertain to issues that

20  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

21  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

22  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

23  the Merger Agreement including its various theories of fraud related to that alleged

24  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

25  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

26  Thus, nothing about the negotiations regarding the Merger Agreement, including the

27  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

28  the termination of the Merger Agreement has any relevance, and discovery should be

1 | limited to whether there was a breach of the Framework Agreement.  LeLe reserves all
2 | rights, including the right to amend and supplement its Responses and Objections to
3 | Vizio's Requests, should it become necessary and appropriate to do so.

4 |      LeLe further objects that the definition of "Affiliates" is overbroad, vague and
5 | ambiguous and seeks the documents and communications of third parties or documents
6 | and communications which are not in LeLe's possession, custody or control.
7 | Furthermore, this Request, which seeks discovery from individuals and entities
8 | ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely
9 | to harass and is overbroad, irrelevant, and not proportional to the needs of the case.
10 | Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
11 | limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
12 | another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco
13 | and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,
14 | LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
15 | the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are
16 | not parties to this action.

17 |      LeLe further objects that this Request to the extent that is seeks documents and
18 | communications protected by the attorney-client privilege and work product doctrine.
19 | LeLe objects to producing any privileged communications.

22 | DATED:  April 11, 2018                    GREENBERG TRAURIG, LLP

24 |                                    By _____
25 |                                        Jeff K. Joyner
         Daniel Tyukody
26 |                                        Attorneys for Defendant
         LeECO V. LTD.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, 19th Floor, Los Angeles, CA 90067.

     On the date given below, I served the **DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

Robert M. Waxman                           *Attorneys for Plaintiff Vizio, Inc.*
David N. Tarlow
Jason L. Haas
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
Tel:  310-273-6333/Fax: 310-859-2325
rwaxman@ecjlaw.com
dtarlow@ecjlaw.com
jhaas@ecjlaw.com

☒    **(BY FIRST CLASS MAIL)**
I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service.  The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐    **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons above.  I placed the envelope or package for collection and

☐    **(BY PERSONAL SERVICE)**
I caused such envelope to be delivered by hand to the offices listed above.

☒    **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 11, 2018, at Los Angeles, California.

                                         **Delilah A. Phiefer**

LA 133132130v1

# EXHIBIT E

# ERVIN COHEN & JESSUP LLP

9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
dtarlow@ecjlaw.com
PH: 310.281.6372
FX: 310.859.2325
File 14676.8

June 8, 2018

**VIA E-MAIL AND U.S. MAIL**

Daniel J. Tyukody, Esq.
Jeff K. Joyner, Esq.
Alana Srour, Esq.
Greenberg Traurig
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121

Re:     **VIZIO, Inc. v. LeEco V. Ltd., Case No.: 17-CV-1175 DOC-jde.  Meet and Confer Letter
         Pursuant to Local Rule 37-1**

Dear Counsel:

Pursuant to LR 37-1, this letter will serve as request that you participate in a motion pre-filing conference of counsel with me within the next ten (10) days regarding Defendants LeEco V. Ltd. and LeLe Holding, Ltd's (hereinafter "Defendants") inadequate responses to Plaintiff's Requests for Production of Documents (Set One).

On January 12, 2018, Plaintiff served Requests for Production of Documents (Set One) upon both Defendants LeEco V. Ltd. and Lele Holding , Ltd. ("RFPs") via U.S. Mail.  Each and every request made in Plaintiff's RFPs was relevant to a claim or issue in this action.  Pointedly, the RFPs dealt with the representations made by LeEco in entering into Merger Agreements and Framework Agreement, the negotiations of the Merger Agreements and Framework Agreement which are relevant to both their interpretation and their breach, the breach of provisions of the Framework Agreement and Merger Agreement, the attempts (or non-attempts) of LeEco to comply with the provisions of the Merger Agreement and/or Framework Agreement, the circumstances surrounding the termination of the Merger Agreement, the alter ego status of the Defendants, the relationships among the Defendants and others relevant to show alter ego status, etc.  While this is not an exhaustive list of every topic covered by the RFPs, it is illustrative of the fact that Plaintiff propounded RFPs on issues raised in Plaintiff's First Amended Complaint ("FAC").

On April 11, 2018, your client provided responses to the RFPs.  Therein, in response to requests numbers 1, 2, 4, 6-26, 28, 31, 34, 35, 37-44, 46-65, your clients provided only

14676.8:9273723.1

Daniel J. Tyukody
June 8, 2018
Page 2

ERVIN COHEN & JESSUP LLP

boilerplate objections.  Further, your clients failed to even state whether they did a search for any documents which are responsive to any of these requests.  Instead, your clients took the position that many of the requests are irrelevant to these proceedings, seemingly based upon the fact that your clients have filed 12(b)(6) motions to dispose of most of Plaintiff's claims arising from the Merger Agreement or portions of the Framework Agreement which you do not believe warrant the assertion of claims, or seek information concerning the financial condition of your clients, even though that financial condition is relevant to the false representations allegedly made by your clients to VIZIO.  The objections made by your clients are simply without merit, and the responses made are inadequate.

First, the fact that your clients have filed Rule 12(b)(6) Motions to Dismiss does not excuse the requirement that they respond to discovery.  *See Vista del Sol Health Care Services, Inc. v. NLRB,* 2014 WL 12631660*2 (C.D. Cal., Morrow, J.) (noting that "if the Federal Rules contemplated that a motion to dismiss under Rule 12(b)(6) would stay discovery, they would have explicitly so stated "[such that] finding a stay of discovery [would be] directly at odds with the need for expeditious resolution of litigation.")  It is axiomatic that a 12(b)(6) motion does not ordinarily warrant a protective order or stay on discovery in the Ninth Circuit.  *Turner Broadcasting System, Inc., v. Tracinda Corp.,* 175 F.R.D. 554, 555-56 (D. Nevada 1997) ("To show good cause in the Ninth Circuit, the moving party must show more than apparently meritorious 12(b)(6) claim [since] a pending Motion to Dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery.")  That is because "[w]here a party claims that dismissal is likely, it requires the Court to make a preliminary finding of the likelihood of success on the Motion [and] this would circumvent the procedures for the resolution of such a motion."  (*Id.,* citing *4 J. Moore, Federal Practice* § 26.70[2], at 461.)  *Accord, Twin City Fire Ins. Co. v. Employers Ins. of Wassau,* 124 F.R.D. 652, 653 (D. Nevada 1989) (denying motion to stay discovery while 12(b)(6) motion was pending).  Third, LeEco never made a motion for stay or protective order, which is required "[w]here a dispute arises regarding the appropriateness of discovery pending a motion to dismiss", regardless of whether the challenge is jurisdictional or otherwise.  *Brown v. Stroud,* 2010 WL 3339524*2, n. 3 (N.D. Cal.).  Accordingly, the filing of 12(b)(6) motions is entirely irrelevant, and should not be used by your clients as justification for failure to comply with their obligations to respond to duly propounded discovery.

Second, pursuant to *Fed. R. Civ. P.* 26(b) "[u]nless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  All of the RFPs propounded by Plaintiff which

14676.8:9273723.1

Daniel J. Tyukody
June 8, 2018
Page 3

ERVIN COHEN & JESSUP LLP

your clients failed to properly respond to are relevant to Plaintiff's claims, and no court order
exists which limits Plaintiff's ability to obtain the discovery requested.  Responses to each and
every request is important to Plaintiff in its ability to prove its case, as Plaintiff only seeks the
production of documents relevant to prove the claims asserted in the FAC, including, but not
limited to: 1) the parties' interpretation of the contract; 2) the representations made by
Defendants in entering into the relevant contracts; 3) the various breaches by Defendants of
the various contracts; and 4) the alter ego status of Defendants and those related to
Defendants.

Third, your clients have objected to nearly all of the RFPs on the basis of attorney-client
privilege and work product doctrine (See RFP Nos. 1-36, 44-45, 48-57 and 59-65).  However,
under *Fed. R. Civ. P.* 26(b)(5)(A), your clients were expressly required to "describe the nature of
the documents, communications, or tangible things not produced or disclosed and to do so in a
manner that, without revealing information itself privileged or protected, will enable other
parties to assess the claim."  Your clients have failed to provide any information about any
document withheld pursuant to attorney-client privilege and work product doctrine, let alone
any information which would permit Plaintiff to assess any claim of privilege.  Accordingly,
these objections either need to be withdrawn, or your clients need to produce a privilege log
containing sufficient information to permit Plaintiff to assess the privilege claims.

Fourth, pursuant to *Fed. R. Civ. P.* 34(b)(2)(C), your clients were required to "state
whether any responsive material are being withheld on a basis of" an objection.  While your
client only stated that it would produce documents responsive to RFP Nos. 3, 5, 27, 29, 30, 32,
36 and 45, and that there were no responsive documents to RFP No. 33, your clients did not
bother to state whether they were withholding documents pursuant to any request based upon
any objection.  Your clients' responses were plainly improper and must be corrected.

Fifth, pursuant to *Fed. R. Civ. P.* 34(b)(2)(E)(i), "a party must produce documents as they
are kept in the usual course of business or must organize and label them to correspond with the
categories in the request."  In response to Plaintiff's 65 RFPs to each of your clients, they
produced 336 pages of documents consisting mostly of emails and redlined versions of the
agreements between the parties.  The responses were not labeled to correspond with the
categories, nor were they produced as kept in the ordinary and regular course of business, as
you sent them in ZIP files.  This document production did not comply with the Federal Rules and
must be corrected.  Further, we are 100% sure there are other documents in your clients'
possession, custody and control which are responsive to Plaintiff's requests which have not
been produced.  They must be produced forthwith.

Daniel J. Tyukody
June 8, 2018
Page 4

ERVIN COHEN & JESSUP LLP

Accordingly, I hereby request that you meet and confer with me, in person at my offices between now and June 18, 2018 regarding you clients' inadequate responses to RFPs and failure to produce documents.  Please contact me with your availability forthwith so that we can schedule the meeting.

Your prompt attention to this letter is appreciated.

Very truly yours,

David N. Tarlow

DNT:jd

CC:    Robert M. Waxman, Esq.
       Jerry Huang, Esq.
       Dennis Yeoh, Esq.

14676.8:9273723.1

EXHIBIT F

Jeff K. Joyner (SBN CA 180485)
joynerj@gtlaw.com
Daniel Tyukody (SBN CA 123323)
tyukodyd@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone:  310.586.7700
Facsimile:   310.586.7800

Attorneys for Defendant,
LeECO V. LTD.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendants.<br><hr>LeECO V. LTD.<br><br>Counter-Claimant,<br><br>vs.<br><br>VIZIO, a California corporation,<br><br>Counter-Defendant. | CASE NO.  8:17-CV-01175-DOC-JDE<br><br>**DEFENDANT LeECO V. LTD.'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE TO PLAINTIFF VIZIO INC.**<br><br>JUDGE: Hon. David O. Carter<br>Ctrm: 9D |

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

1 | PROPOUNDING PARTY:                Defendant, LeEco V. Ltd.

2 | RESPONDING PARTY:                 Plaintiff Vizio, Inc.

3 | SET NUMBER:                       One

4 | Pursuant to Rule 34 of the Federal Rule of Civil Procedure, Defendant LeEco V.

5 | Ltd. ("LeEco") hereby requests that Plaintiff, Vizio, Inc. ("Vizio" or "Plaintiff"), within

6 | thirty (30) days of service hereof, respond to the following Requests for Production of

7 | Documents and produce all responsive documents in its possession, custody or control at

8 | Greenberg Traurig, LLP, 1840 Century Park East, Suite 1900, Los Angeles, California

9 | 90067.

10 | **DEFINITIONS**

11 | As used herein, and only for purposes of these discovery requests, the following

12 | terms have the following meanings:

13 | 1.     As used herein, the term "LeEco" shall mean LeEco, and all agents and

14 | representatives of LeEco, and all Persons acting or purporting to act on its behalf.

15 | 2.     "Vizio" shall mean and refer to Plaintiff Vizio, Inc., a California

16 | corporation, and to all agents and representatives of Vizio, and to all Persons acting or

17 | purporting to act on its behalf.

18 | 3.     As used herein, the terms "You" or "Your" shall mean Vizio, and all agents

19 | and representatives of Vizio, and all Persons acting or purporting to act on its behalf.

20 | 4.     The word "Complaint" shall mean and refer to the First Amended Complaint

21 | filed by Vizio in the above-captioned action on November 6, 2017.

22 | 5.     As used herein, the term "Framework Agreement" shall mean and refer to

23 | that certain Framework, Termination and Mutual General Release Agreement entered

24 | into as of April 5, 2017 by and among Vizio and LeEco.

25 | 6.     As used herein, the term "Merger Agreement" shall mean and refer to that

26 | certain Agreement and Plan of Merger, made as of July 6, 2016, by and among Vizio,

27 | LeEco, Le V Merger Sub, Inc., and Shareholder Representative Services LLC.

28 |

1

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

7.     As used herein, the term "China JV" shall mean and refer to the proposed enterprise referenced in the Framework Agreement related to the formation of a proposed joint venture in the China.

8.     As used herein, the term "Communication" or "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including but not limited to, any meeting, conversation, discussion, conference, correspondence, message or other written or oral transmission, exchange, or transfer of information in any form between two or more Persons, including in person or by telephone, facsimile, telegraph, telex, e-mail or other tangible or electronic medium.

9.     "Documents" shall be defined to the broadest extent permitted by Federal Rule of Civil Procedure 34, and includes any recordation of any information or Communication, including metadata, and including whether the information or Communication is handwritten, typed, printed, or otherwise reproduced, whether in "hard-copy" form or digital form, and including all non-final drafts of Documents. The term Documents includes all non-identical copies, such as those bearing marginal comments, postscripts, changes, amendments, addenda or other notations not present on the original document.

10.     The terms "Any," "All," "Each," And "Every" should be understood in their most inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of their scope.

11.     As used herein, the term "Including" shall mean including, but not limited to, and shall not be interpreted to exclude any information otherwise within the scope of these Requests.

12.     As used herein, the term "Person" shall mean, without limitation, a natural person, corporation, limited liability company, partnership, trust, association, joint venture, firm, tenancy in common, or other business enterprise, governmental or legal entity and includes both the singular and plural as well as all representatives of such Person or Person(s).

2

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

6  and shall include indirect as well as direct references to the subject matter or any aspect

7  thereof.

8      14.    The singular shall include the plural and the plural shall include the singular.

9                      **INSTRUCTIONS**

10      1.    Produce all responsive documents that are in Plaintiff's possession, custody,

11  or control.

12      2.    When a request for production requests certain documents or things to which

13  Plaintiff claims any privilege or protection as a ground for nondisclosure, please state the

14  identity of each person who participated in or had knowledge of the document or thing

15  and provide the following:

16          a.  The privilege or protection that Plaintiff claims precludes disclosure;

17          b.  The subject matter of the document or thing (without revealing the

18              content as to which the privilege or protection is claimed);

19          c.  The date(s), author(s), addressee(s), and copies; and

20          d.  Any additional facts on which Plaintiff bases its claim of privilege or

21              protection.

22      3.    If Plaintiff objects to any of the following requests for production, and the

23  objectionable document or thing contains relevant non-objectionable matter, Plaintiff

24  must produce such non-objectionable matter.

25      4.    If Plaintiff objects to any part of a request for production and refuses to

26  produce documents or things in response to that part, state the objection and produce

27  documents or things in response to the remaining portion of that request for production.

28  If Plaintiff objects to the scope of a request for production and refuses to produce

3

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

1    13.    The words "Relating," "Relate," "Relate To," "Relating To" and

2  "Referring" as used herein shall mean all matters or things that in anyway discuss, are

3  connected to, arise from, consist of, reflect, summarize, evaluate, or comment on the

4  subject or object of the particular Request, or that have any logical or factual connection

5  to the matter discussed, and they shall include the common meanings of all those terms,

13.    The words "Relating," "Relate," "Relate To," "Relating To" and "Referring" as used herein shall mean all matters or things that in anyway discuss, are connected to, arise from, consist of, reflect, summarize, evaluate, or comment on the subject or object of the particular Request, or that have any logical or factual connection to the matter discussed, and they shall include the common meanings of all those terms, and shall include indirect as well as direct references to the subject matter or any aspect thereof.

14.    The singular shall include the plural and the plural shall include the singular.

## INSTRUCTIONS

1.    Produce all responsive documents that are in Plaintiff's possession, custody, or control.

2.    When a request for production requests certain documents or things to which Plaintiff claims any privilege or protection as a ground for nondisclosure, please state the identity of each person who participated in or had knowledge of the document or thing and provide the following:

    a.  The privilege or protection that Plaintiff claims precludes disclosure;

    b.  The subject matter of the document or thing (without revealing the content as to which the privilege or protection is claimed);

    c.  The date(s), author(s), addressee(s), and copies; and

    d.  Any additional facts on which Plaintiff bases its claim of privilege or protection.

3.    If Plaintiff objects to any of the following requests for production, and the objectionable document or thing contains relevant non-objectionable matter, Plaintiff must produce such non-objectionable matter.

4.    If Plaintiff objects to any part of a request for production and refuses to produce documents or things in response to that part, state the objection and produce documents or things in response to the remaining portion of that request for production. If Plaintiff objects to the scope of a request for production and refuses to produce

3

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

documents or things within that scope, Plaintiff must state the objection and produce documents or things for the scope which Plaintiff believes is appropriate (including with its production a specific statement as to why the broader scope is inappropriate).

5. If, in responding to the requests for production, Plaintiff claims that there is any ambiguity in either a particular request for production or in a definition or an instruction applicable thereto, such claim shall not be used as a basis for refusing to respond, but Plaintiff shall set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the particular request for production.

6. Identify any and all documents described in this request that have been destroyed, including a description of the documents destroyed, the author of the documents, as well as the date the documents were destroyed, the name of the person that requested the destruction of the documents, and the reason why the documents were destroyed.

7. Produce each document pursuant to these requests as the document was kept in the usual course of business, or identify the document according to the number of the request to which it corresponds.

8. Each document request propounded in the disjunctive shall also be read as if propounded in the conjunctive and vice versa. Each document request propounded in the singular shall also be read as if propounded in the plural and vice versa, whenever such a construction results in a broader disclosure of information. Each document request propounded in the present tense shall also be read as if propounded in the past tense and vice versa, whenever such construction results in a broader disclosure of information. "Any" includes "all" and vice versa, whenever such construction results in a broader disclosure of information.

9. These requests for production shall be deemed to be continuing, and Plaintiff shall be obligated to supplement and amend its answers, as required by Federal Rule of Civil Procedure 26(e). Plaintiff is requested to seasonably amend any response if

4

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

1 | Plaintiff obtains information upon the basis of which it knows that the prior response was
2 | incorrect or, though the response was correct when made, it is no longer correct.

3 |     10.    Electronically Stored Information ("ESI"): ESI is information created,
4 | manipulated, communicated, captured, and/or stored in digital form on or in any
5 | electronic media, desktop or laptop computer, tablets, servers, networks, removable
6 | media, "cloud" computing services, smart phones, tapes, databases and all backup media.
7 | ESI includes, but is not limited to the original and any identical and/or non-identical
8 | copies (whether different from the originals because of edits or notes made on such
9 | copies or otherwise) of ESI of any kind or description, whether inscribed by mechanical,
10 | facsimile, electronic, magnetic, digital, or other means.  Such data may include, but is not
11 | limited to, all text based files (including word processing Documents), presentation files
12 | (such as PowerPoint), spreadsheets (such as Excel), electronic mail files and information
13 | concerning or related to electronic mail (such as electronic mail receipts, transmittals,
14 | logs of electronic mail history and usage, header information, and deleted files),
15 | graphical files in any format, databases, calendar and scheduling information, task lists,
16 | telephone logs, contact managers, charts, graphs, outlines, all image files (pdf, tif, jpeg,
17 | gif, etc.), Internet or intranet messages (such as text, instant, and direct messages), voice
18 | mail, chat logs, electronic bulletin board messages, website postings of any nature, blog
19 | entries, all other methods by which messages may be transmitted by or through electronic
20 | means, and any and all miscellaneous files and/or file fragments, regardless of the
21 | medium or media on which they reside and regardless of whether such electronic data is
22 | in an active file, deleted file, or file fragment.  ESI also includes the file, folder tabs,
23 | and/or containers and labels appended to or associated with any physical storage device
24 | associated with each such original and/or copy means information and/or Documents that
25 | are stored in an Electronic medium.

26 |     11.    Production Images.  All Documents, not otherwise specified herein, shall be
27 | produced as single-page, uniquely and sequentially-numbered Group 4 Tagged Image
28 | Files ("TIFFs" or ".tif format") that reflect, without visual degradation, the full and

5

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

complete information contained on the original Document. All images shall be in black-and-white format, except where the context requires color for reason of clarity. For example, certain email exchanges between the parties leading up to the formulation of the Framework Agreement have comments in red on top of the original gray or black, on top of which another party adds comments in blue. Such documents would be difficult to follow without color reproduction. All images must be at least 300 dpi resolution.

12.    Bates Numbering: All images shall be assigned a Bates number that must always:   (1) be legible and unique across the entire document production and if appropriate, provide a confidentiality designation at a location that does not obliterate, conceal or interfere with any information from the source Document; (2) maintain a constant length (0-padded) across the entire production; (3) be sequential within a given document; (4) be located in the lower right-hand corner as to not obstruct the view of any text or images on the document itself; (5) Plaintiff's Bates number prefix shall include a unique, logical abbreviation of the entity or individual's actual name, and shall not use generic terms referencing Plaintiff's role in the litigation (*e.g.* "Plaintiff", "PL", "etc."); (6) avoid using the letter "o" or "O" at the end of the prefix, as it can be difficult for all parties to discern between the number "0" and the letter "O"; (7) unless otherwise stated above, native format Documents will be produced with TIFF placeholders that contain the original file extension, the Bates Number range for the Document and any confidentiality designation. If a Bates number or set of Bates numbers is skipped in a production, the Plaintiff will so note in a cover letter or production log accompanying the production.

13.    OCR and/or Extracted Text: Plaintiff shall produce Document level OCR and/or Extracted Text files for all Documents produced. The OCR and/or extracted text files shall be produced in ASCII text format and shall be labeled and produced on Production Media (as defined below). The text files will be named with the unique Bates Number of the first page of the corresponding Document followed by the extension ".txt." The OCR and/or extracted text files shall be produced in a separate directory

6

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

titled "TEXT," in the manner suitable for importing the information into Relativity or Concordance, or in some other mutually acceptable manner.  The text files will not contain any redacted portions of any redacted Documents.

14.   Load Files:  Plaintiff shall produce a "data load file" (i.e., .dat) or a load file in some other mutually agreeable industry standard format to accompany the image files. The data load file shall contain delimited text that will populate fields in a searchable database, such as Relativity or Concordance.   The data load file shall contain the metadata associated with each coding field specified in Exhibit 1.  In general, the load files shall be provided in the following format:

   i.   DAT file with standard Relativity or Concordance delimiters; ASCII 254 (QUOTE) ASCII 20 (COMMA);

   ii.   The fields should be consistent across all DAT files;

   iii.   Date fields should all be in mm/dd/yyyy format;

   iv.   PST Time Zone shall be applied to ESI without regard to the geographic location of the Custodians or data sets in order to enable de-duplication and uniform processing;

   v.   If there are links to native files, the hyperlink field should be in the DAT; and

   vi.   Document parent/child relationships should be maintained.

Plaintiff shall also produce an "image load file" (i.e., .opt) or a load file in some other mutually agreeable industry standard format to accompany the images.  The image load file format is a delimited ASCII file that contains information about where each Document begins and ends to facilitate the use of the produced images through a document review platform, such as Relativity or Concordance or other litigation support software.  The image load file consists of seven delimited entries (see viii below for an example):

   vii.   Alias/Image Key (usually BegDoc);

7

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

viii.   Volume name where documents/images reside;

ix.   Full path, including file name with extension, of the image;

x.   Document breaks, enter a Y to denote whether this image marks the beginning of a document;

xi.   Number of pages of the document or image;

xii.   Y indicates the first page of a document;

xiii.   Comma (,) indicates a page break or pages; and

xiv.   AB000001,VOL001,D:\DB\ABCASE\VOL001\IMAGES\001\AB00000 1.tif,Y,,,1

15.   Data Fields: To the extent available, the following fields should be included:

   a. Beginning Bates

   b. Ending Bates

   c. Beginning Attachment Bates

   d. Ending Attachment Bates

   e. Page Count

   f. Date and Time Sent

   g. Date and Time Created

   h. Date and Time Modified

   i. From

   j. To

   k. CC

   l. BCC

   m. Subject

   n. Author

   o. FILENAME

   p. File Extension

   q. Source

   r. Custodian

8

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

1       s.  Path to the Native

2       t.  Path to the Text File

3       16.   To the extent a file will not convert cleanly to image, You must produce a

4  Native copy, with an image place holder and a relative path to the Native in the Load file.

5  The file should be named after the First Bates Number.

6  **REQUESTS FOR PRODUCTION**

7  **REQUEST FOR PRODUCTION NO. 1:**

8       All Documents and Communications that Relate To the Framework Agreement,

9  Including those reflecting the negotiations that culminated in the Framework Agreement,

10 the process that resulted in Vizio's decision to enter into it (Including Board of Directors'

11 review and approval, based upon (among other things) the collection of relevant

12 Documents from the personal computers of Your Directors), and the reasons why Vizio

13 believes the Framework Agreement has been breached, as well as any damages Vizio

14 contends resulted therefrom.

15 **REQUEST FOR PRODUCTION NO. 2:**

16      All Documents and Communications Related To negotiating the proposed China

17 JV, Including the "repeated efforts" referenced in ¶ 73 of the Complaint, and draft

18 versions of the proposed China JV agreement Including but not limited to drafts

19 preliminary and subsequent to the draft attached as Exhibit 6 to the Declaration of Ben

20 Wong in Opposition to LeEco's Motion to Set Aside Entry of Default, and all Documents

21 reflecting time spent in connection with Your purported repeated efforts.

22 **REQUEST FOR PRODUCTION NO. 3:**

23      All Documents and Communications concerning Your decision to send a letter on

24 June 9, 2017 to LeEco Global Group terminating negotiations Relating To the China JV

25 and demanding immediate payment, purportedly pursuant to the terms of the Merger

26 Agreement.

27 **REQUEST FOR PRODUCTION NO. 4:**

28

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

All Documents and Communications Related To Your response to Charles Hsieh's letter of June 22, 2017 to Messrs. Binder and Huang, wherein (among other things) LeEco reiterated its desire to enter into the proposed China JV.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications Relating To Your efforts to implement the terms of the Framework Agreement Including:

(i)     all efforts to assist LeEco with developing and obtaining certification of the "LeEco Le App" application on Vizio's smart televisions and displays in North America, as referenced in Section 2.1.1 of the Framework Agreement, and such "smart televisions and displays" You identified as potentially appropriate for running this application;

(ii)    any efforts You made to make the LeEco Le App available on compatible smart televisions and displays in North America on the second screen of the Vizio SmartCast App for all Google Chromecast-enabled televisions and displays as well as in the My Apps folder for VIA devices (referenced in the Framework Agreement as the "App Processes") as referenced in Section 2.1.2 of the Framework Agreement;

(iii)   any "customary form agreement(s)" You identified internally and/or sent to LeEco to accomplish the above;

(iv)    any efforts You made to "develop and obtain certification of a data client" to be made available by LeEco as referenced in Section 2.2.1 of the Framework Agreement;

(v)     all efforts to assist and cooperate with the "Data Client Processes" referenced in Section 2.2.2 of the Framework Agreement, including any Communication Related To whether the inclusion of "Inscape Data Client" was consistent with "applicable law" within the jurisdiction(s) that Inscape Data was anticipated to be sold as part of a product;

10

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

1      (vi)   any analysis You did whether it was legally permissible for LeEco to have

2              access to Inscape data derived from the Inscape Data Client installations,

3              and then access to such information in connection with the proposed China

4              JV data, as referenced in Section 2.2.4 of the Framework Agreement.

5  **REQUEST FOR PRODUCTION NO. 6:**

6      All Documents and Communications Relating To Your efforts to "negotiate in

7  good faith and use reasonable efforts to form a commercial relationship" Related To the

8  China JV as referenced in Section 3.1 of the Framework Agreement, Including

9      (i)    the conditions pursuant to which Vizio would grant the China JV the right to

10            sell Vizio televisions in China, Including any agreements Related To

11            branding and distribution as referenced in Section 3.1 of the Framework

12            Agreement;

13      (ii)   efforts to preload EUI and Le contents on Vizio televisions and displays sold

14            in China, as referenced in Section 3.1 of the Framework Agreement;

15      (iii)  all agreements (or attempts at reaching agreements) and negotiations on

16            pricing on a per user/per television basis, as referenced in Section 2.2.3 of

17            the Framework Agreement;

18      (iv)  any non-cash assets You identified as desirable or acceptable for LeEco's

19            capital contribution to the proposed China JV as referenced in Section 3.2.1

20            of the Framework Agreement;

21      (v)   any negotiations or agreements You believe were reached on the "Initial JV

22            Term" referenced in Section 3.2.2 of the Framework Agreement, as well as

23            any agreements or negotiations pertaining to the "long-term partnership

24            spirit" that is also referenced therein;

25      (vi)   any agreements or negotiations pertaining to the "Sales Target" referenced

26            in Section 3.2.5 of the Framework Agreement;

27      (vii)  any negotiations or agreements on "reasonable competitive rates" that You

28            believed occurred in connection with Section 3.2.5(a) of the Framework

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

1   Agreement, or Your own contemporaneous internal evaluations of what

2   those rates might be;

3   (viii)   any agreement or negotiations You believe occurred in defining the amount

4   of the "Buyer Loan" referenced in Section 3.2.7 of the Framework

5   Agreement, Including to the conditions or Sales Target that would satisfy

6   the Buyer Loan being repaid in full;

7   (ix)   any Documents or Communications relating to the conditions pursuant to

8   which You would "consider participating in the China JV's financial

9   obligations" as set forth in Section 3.2.7(b) of the Framework Agreement, as

10   well as any Documents or Communications identifying an amount of Your

11   potential participation and the form Your participation would take (e.g., cash

12   vs. non-cash);

13   (x)   and any Documents or Communications relating to any and all "Formal

14   Agreements" as referenced in Section 4 of the Framework Agreement.

15   **REQUEST FOR PRODUCTION NO. 7:**

16   All Documents and Communications Relating To any damages You claim as a

17   result of a breach of the Framework Agreement.

18   **REQUEST FOR PRODUCTION NO. 8:**

19   All Documents and Communications that Relate To the benefits—financial,

20   operational or otherwise—that You expected to receive from the China JV.

21   **REQUEST FOR PRODUCTION NO. 9:**

22   All Documents and Communications sufficient to identify Your principal officers

23   who had a role in connection with negotiating or implementing the Framework

24   Agreement and All Your Directors since January 1, 2016.

25   **REQUEST FOR PRODUCTION NO. 10:**

26   All Documents and Communications concerning the aftermath of the decision to

27   terminate the Framework Agreement, Including communications between and among

28   Vizio's Board, its management, its shareholders, and the general public.

12

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications Relating To how You accounted for any and all transactions involving LeEco in Your financial statements, including how revenue or income was booked, any analysis of loss contingencies (or recordings of loss contingencies), and the reversal or modification of any prior accounting entry related to the Merger Agreement or the Framework Agreement.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications Relating To the due diligence and/or research You performed on LeEco Related To the Framework Agreement Including any assessments of LeEco's ability to comply with the terms of the Framework Agreement, and of LeEco's good faith or purported lack thereof.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications that You received from any Person regarding the Framework Agreement.

Dated:  June 22, 2018

GREENBERG TRAURIG LLP

By:
Jeffrey Joyner
Daniel Tyukody
Attorneys for Defendant and Counter-Claimant,
LeECO V. LTD.

DEFENDANT LEECO'S REQUESTS FOR PRODUCTION, SET ONE TO VIZIO

LA 133603309v14

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, 19th Floor, Los Angeles, CA 90067.

    On the date given below, I served the **DEFENDANT LeECO V. LTD.'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE TO PLAINTIFF, VIZIO INC.** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

Robert M. Waxman                      *Attorneys for Plaintiff Vizio, Inc.*
David N. Tarlow
Jason L. Haas
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
Tel: 310-273-6333/Fax: 310-859-2325
rwaxman@ecjlaw.com
dtarlow@ecjlaw.com
jhaas@ecjlaw.com

☒   **(BY FIRST CLASS MAIL)**
I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐   **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐   **(BY CM/ECF)**
Pursuant to CM/ECF System, registration as a CM/ECF user constitutes service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☐   **(BY E-MAIL)**
Based on court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐   **(BY FACSIMILE)**

1

**PROOF OF SERVICE**

LA 133132130v1

1  I transmitted the foregoing document(s) by facsimile sending number.  Pursuant to rule
2  2009(i)(4), I caused the machine to print a transmission record of the transmission, a true and
   correct copy of which is attached to this declaration.
3  ☐  **(BY PERSONAL SERVICE)**
   I caused such envelope to be delivered by hand to the offices listed above.
4  ☒  **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct, and
5                      that I am employed at the office of a member of the bar of this Court at
                       whose direction the service was made.
6  Executed on June 22, 2018, at Los Angeles, California.

7

8                                                      Michael A. Fairfax

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                    2
                                            **PROOF OF SERVICE**
   *LA 133132130v1*

EXHIBIT G

1   Jeff K. Joyner (SBN CA 180485)
    *joynerj@gtlaw.com*
2   Daniel Tyukody (SBN CA 123323)
    *tyukodyd@gtlaw.com*
3   GREENBERG TRAURIG, LLP
    1840 Century Park East, Suite 1900
4   Los Angeles, California 90067-2121
    Telephone: 310.586.7700
5   Facsimile: 310.586.7800

6   Attorneys for Defendant and Counter-Claimant
    LeECO V. LTD.
7

8

9                   UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  VIZIO, INC., a California corporation,      CASE NO.  8:17-CV-01175-DOC-JDE

            Plaintiff,                          **DEFENDANT LeECO V. LTD.'S**
13                                              **FIRST SET OF INTERROGATORIES**
        v.                                      **TO PLAINTIFF VIZIO INC.**
14
    LeECO V. LTD., an exempted company
15  with limited liability incorporated under
    the laws of the Cayman Islands; LeECO       JUDGE: Hon. David O. Carter
16  GLOBAL GROUP LTD., a corporation            Ctrm: 9D
    organized and existing under the laws of
17  the People's Republic of China; LELE
    HOLDING, LTD., a British Virgin
18  Islands Personal Holding Company;
    YUETING JIA, an individual; and
19  DOES 1 through 10,

20            Defendants.

21  _____

22  LeECO V. LTD.,

23            Counter-Claimant,

24      vs.

25  VIZIO, a California corporation,

26            Counter-Defendant.

27

28

| | | |
|---|---|---|
| 1 | PROPOUNDING PARTY: | Defendant, LeEco V. Ltd. |
| 2 | RESPONDING PARTY: | Plaintiff, Vizio, Inc. |
| 3 | SET NUMBER: | One |

4      Pursuant to Federal Rules of Civil Procedure Rules 26 and 33, Defendant LeEco V.
5  Ltd. hereby requests that Plaintiff Vizio, Inc., respond to the following Interrogatories
6  within 30 days from the date of service thereof.

7                            **DEFINITIONS**

8      As used herein, and only for purposes of these discovery requests, the following
9  terms have the following meanings:

10      1.    As used herein, the term "LeEco" shall mean LeEco, and all agents and
11  representatives of LeEco, and all Persons acting or purporting to act on its behalf.

12      2.    "Vizio" shall mean and refer to Plaintiff Vizio, Inc., a California corporation,
13  and to all agents and representatives of Vizio, and to all Persons acting or purporting to act
14  on its behalf.

15      3.    As used herein, the terms "You" or "Your" shall mean Vizio, and all agents
16  and representatives of Vizio, and all Persons acting or purporting to act on its behalf.

17      5.    As used herein, the term "Framework Agreement" shall mean and refer to
18  that certain Framework, Termination and Mutual General Release Agreement entered into
19  as of April 5, 2017 by and among Vizio and LeEco.

20      6.    The words "Relating," "Relate," "Relate To," "Relating To" and "Referring"
21  as used herein shall mean all matters or things that in anyway discuss, are connected to,
22  arise from, consist of, reflect, summarize, evaluate, or comment on the subject or object of
23  the particular Request, or that have any logical or factual connection to the matter
24  discussed, and they shall include the common meanings of all those terms, and shall
25  include indirect as well as direct references to the subject matter or any aspect thereof.

26                            **INSTRUCTIONS**

27      1.    For purposes of interpreting or construing the following Interrogatories, the
28  terms used are to be given their most expansive and inclusive interpretation unless

otherwise specifically limited in the Interrogatory itself.  This includes, without limitation, the following:

        a.    Construing the words "and" and "or" used in any Interrogatory in the disjunctive or conjunctive as necessary, to make the Interrogatory more inclusive;

        b.    Construing the words "any" and "all" used in any Interrogatory to mean "any and all" as necessary to make the Interrogatory more inclusive;

        c.    Construing the singular form of any word to include the plural and the plural form to include the singular; and

    2.    These Interrogatories shall be deemed to seek answers as of the date hereof and to the full extent of the Federal Rules of Civil Procedure.  Furthermore, these Interrogatories are of a continuing nature.  You are required to file and serve supplemental responses if You or any of Your attorneys, agents, or representatives obtains further or different information after the date of Your initial answer, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

    3.    If any information called for is withheld on the basis of a claim or privilege or attorney work-product, the claimed basis for withholding the information and the nature of the information withheld shall be set forth in a privilege log satisfying the requirements of Federal Rule of Civil Procedure 26(c) that includes a statement of all the circumstances which will be relied upon to support such a claim.

    4.    If You rely in whole or in part on Federal Rule of Civil Procedure 33(d) for Your answer to any part of an Interrogatory, please identify the specific document or group of documents by production number or by such other means as to ensure that the burden of ascertaining the answer to the Interrogatory or portion thereof is substantially the same for Defendants as it is for You.

    5.    If You cannot provide exact information, such as dates, periods or amounts, You shall provide good faith estimates to the extent possible and indicate that the information is estimated.

2

DEFENDANT LEECO'S INTERROGATORIES, SET ONE TO VIZIO

6.    If You object to any part of an Interrogatory and refuse to answer that part, state Your objection and answer the remaining portion of that Interrogatory.  If You object to the scope or time period of an Interrogatory and refuse to answer for that scope or time period, state Your objection and answer the Interrogatory for the scope or time period You believe is appropriate (including in Your answer a specific statement as to why You believe the scope or time period is inappropriate).

7.    If any of the following Interrogatories cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying Your inability to answer the remainder and stating whatever information You have concerning the unanswered portions.  If Your answer is qualified in any way, set forth the details of such qualification.

8.    If, in responding to the Interrogatories, You claim that there is any ambiguity in either a particular Interrogatory or in a definition or an instruction applicable thereto, such claim shall not be used by You as a basis for refusing to respond, but You shall set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the particular Interrogatory.

## **INTERROGATORIES**

## **INTERROGATORY NO. 1:**

Do You contend that the Framework Agreement, or any part thereof, is ambiguous?

//
//
//
//
//
//
//
//
//

DEFENDANT LEECO'S INTERROGATORIES, SET ONE TO VIZIO
LA 133635246v1

**INTERROGATORY NO. 2:**

If Your answer to Interrogatory No. 1 is anything other than an unequivocal no, describe which part or parts of the Framework Agreement you contend is ambiguous and why You believe it to be so.


DATED:  June 22, 2018                    GREENBERG TRAURIG, LLP


                                         By _____
                                         Jeff K. Joyner
                                         Daniel Tyukody
                                         Attorneys for Defendant and Counter-Claimant,
                                         LeECO V. LTD.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, 19th Floor, Los Angeles, CA  90067.

On the date given below, I served the **DEFENDANT LeECO V. LTD.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF VIZIO, INC.** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

Robert M. Waxman                    *Attorneys for Plaintiff Vizio, Inc.*
David N. Tarlow
Jason L. Haas
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
Tel: 310-273-6333/Fax: 310-859-2325
rwaxman@ecjlaw.com
dtarlow@ecjlaw.com
jhaas@ecjlaw.com

☒ **(BY FIRST CLASS MAIL)**
I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐ **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **(BY CM/ECF)**
Pursuant to CM/ECF System, registration as a CM/ECF user constitutes service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☐ **(BY E-MAIL)**
Based on court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **(BY FACSIMILE)**
I transmitted the foregoing document(s) by facsimile sending number. Pursuant to rule 2009(i)(4), I caused the machine to print a transmission record of the transmission, a true and correct copy of which is attached to this declaration.

PROOF OF SERVICE

LA 133132130v1

1  ☐  **(BY PERSONAL SERVICE)**
2  I caused such envelope to be delivered by hand to the offices listed above.

3  ☒  **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct, and
   that I am employed at the office of a member of the bar of this Court at
   whose direction the service was made.

4  Executed on June 22, 2018, at Los Angeles, California.

5
6                                                           Michael A. Fairfax

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          2
                                  **PROOF OF SERVICE**

LA 133132130v1

EXHIBIT H

1   Jeff K. Joyner (SBN CA 180485)
    joynerj@gtlaw.com
2   Daniel Tyukody (SBN CA 123323)
    tyukodyd@gtlaw.com
3   GREENBERG TRAURIG, LLP
    1840 Century Park East, Suite 1900
4   Los Angeles, California 90067-2121
    Telephone: 310.586.7700
5   Facsimile: 310.586.7800

6   Attorneys for Defendant and Counter-Claimant
    LeECO V. LTD.

7

8

9                    UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  VIZIO, INC., a California corporation,      CASE NO.  8:17-CV-01175-DOC-JDE

                    Plaintiff,
13                                              DEFENDANT LeECO V. LTD.'S
            v.                                  REQUEST FOR ADMISSIONS, SET
14                                              ONE TO PLAINTIFF VIZIO, INC.
    LeECO V. LTD., an exempted company
15  with limited liability incorporated under
    the laws of the Cayman Islands; LeECO       JUDGE:  Hon. David O. Carter
16  GLOBAL GROUP LTD., a corporation            Ctrm:  9D
    organized and existing under the laws of
17  the People's Republic of China; LELE
    HOLDING, LTD., a British Virgin
18  Islands Personal Holding Company;
    YUETING JIA, an individual; and
19  DOES 1 through 10,

20                  Defendants.

21  _____

22  LeECO V. LTD.

23                  Counter-Claimant,

24          vs.

25  VIZIO, a California corporation,

26                  Counter-Defendant.

27

28

                                        CASE NO.  8:17-CV-01175-DOC-JDE

1  PROPOUNDING PARTY:              Defendant, LeEco V. Ltd.

2  RESPONDING PARTY:              Plaintiff, Vizio, Inc.

3  SET NUMBER:                    One

4          Pursuant to Federal Rules of Civil Procedure Rules 36, Defendant LeEco V. Ltd.

5  hereby requests that Plaintiff Vizio, Inc., respond to the following Requests for Admission

6  within 30 days from the date of service thereof.

7                              **DEFINITIONS**

8          As used herein, and only for purposes of these discovery requests, the following

9  terms have the following meanings:

10         1.      As used herein, the term "LeEco" shall mean LeEco, and all agents and

11 representatives of LeEco, and all Persons acting or purporting to act on its behalf.

12         2.      "Vizio" shall mean and refer to Plaintiff Vizio, Inc., a California corporation,

13 and to all agents and representatives of Vizio, and to all Persons acting or purporting to act

14 on its behalf.

15         3.      As used herein, the terms "You" or "Your" shall mean Vizio, and all agents

16 and representatives of Vizio, and all Persons acting or purporting to act on its behalf.

17         5.      As used herein, the term "Framework Agreement" shall mean and refer to

18 that certain Framework, Termination and Mutual General Release Agreement entered into

19 as of April 5, 2017 by and among Vizio and LeEco.

20         6.      As used herein, the term "China JV" shall mean and refer to the proposed

21 enterprise referenced in the Framework Agreement related to the formation of a proposed

22 joint venture in the China.

23         7.      The words "Relating," "Relate," "Relate To," "Relating To" and "Referring"

24 as used herein shall mean all matters or things that in anyway discuss, are connected to,

25 arise from, consist of, reflect, summarize, evaluate, or comment on the subject or object of

26 the particular Request, or that have any logical or factual connection to the matter

27 discussed, and they shall include the common meanings of all those terms, and shall

28 include indirect as well as direct references to the subject matter or any aspect thereof.

## **INSTRUCTIONS**

1.      Each request for admission not only calls for your knowledge, but also for all knowledge that is available to you by reasonable inquiry and/or investigation, including inquiry of your representatives and attorneys.

2.      If you object to any request for admission, state the reason for your objection with particularity.

3.      If, in responding to the requests for admission, you claim that there is any ambiguity in either a particular request for admission or in a definition or an instruction applicable thereto, such claim shall not be used as a basis for refusing to respond, but you shall set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the particular request for admission.

4.      A failure to respond to a request for admission within 30 days after service thereof shall result in the matter being deemed admitted.

5.      These requests for admission shall be deemed to be continuing, and you are obligated to supplement and amend your answers, as required by Federal Rule of Civil Procedure 26(e). You are requested to reasonably amend any response if you obtain information upon the basis of which you know that the prior response was incorrect or, though the response was correct when made, it is no longer correct.

## **REQUESTS FOR ADMISSION**

### **REQUEST FOR ADMISSION NO. 1:**

Admit that You drafted Section 1.1 of the Framework Agreement.

### **REQUEST FOR ADMISSION NO. 2:**

Admit that the terms of the Framework Agreement Relating To the release of the $10 million currently held in escrow are ambiguous.

//
//
//
//

DEFENDANT LEECO'S REQUESTS FOR ADMISSION, SET ONE TO VIZIO
LA 133629476v1

**REQUEST FOR ADMISSION NO. 3:**

Admit that, as of at least June 9, 2017 when You sent the Demand for Immediate Payment to LeEco Global Group, You no longer had any interest in entering into the China JV.

DATED:  June 22, 2018                    GREENBERG TRAURIG, LLP

By _____

Jeff K. Joyner
Daniel Tyukody
Attorneys for Defendant and Counter-Claimant,
LeECO V. LTD.

DEFENDANT LEECO'S REQUESTS FOR ADMISSION, SET ONE TO VIZIO
LA 133629476v1

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, 19th Floor, Los Angeles, CA 90067.

     On the date given below, I served the **DEFENDANT LeECO V. LTD.'S REQUEST FOR ADMISSIONS, SET ONE TO PLAINTIFF VIZIO, INC.** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

Robert M. Waxman              *Attorneys for Plaintiff Vizio, Inc.*
David N. Tarlow
Jason L. Haas
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
Tel: 310-273-6333/Fax: 310-859-2325
rwaxman@ecjlaw.com
dtarlow@ecjlaw.com
jhaas@ecjlaw.com

☒ **(BY FIRST CLASS MAIL)**
I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐ **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **(BY CM/ECF)**
Pursuant to CM/ECF System, registration as a CM/ECF user constitutes service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☐ **(BY E-MAIL)**
Based on court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **(BY FACSIMILE)**
I transmitted the foregoing document(s) by facsimile sending number. Pursuant to rule 2009(i)(4), I caused the machine to print a transmission record of the transmission, a true and correct copy of which is attached to this declaration.

**PROOF OF SERVICE**

LA 133132130v1

☐ **(BY PERSONAL SERVICE)**
I caused such envelope to be delivered by hand to the offices listed above.

☒ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 22, 2018, at Los Angeles, California.

Michael A. Fairfax

LA 133132130v1

EXHIBIT I



Attashin Safari
Tel 310.586.7806
Fax 310.586.7800
Safaria@gtlaw.com

June 22, 2018

**VIA EMAIL**

**Ervin Cohen & Jessup LLP**
David N. Tarlow, Esq.
Robert M. Waxman, Esq.
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90210-2974

Re:     **VIZIO, Inc. v. LeEco V. Ltd., Case No.: 17-CV-1175/Meet and Confer Letter Pursuant to Local Rule 37-1.**

Dear David and Bob:

This memorializes our initial conversation June 18, 2018 with respect to our clients LeEco V. Ltd. ("LeEco") and LeLe Holding, Ltd's ("LeLe") responses to Vizio's meet-and-confer letter dated June 8, 2018.

As mentioned during our June 18th telephone conversation, the first and second points addressed in your June 8th letter are directly related to the issues LeEco and LeLe raised during our meet-and-confer with you on April 17, 2018 regarding their intended motions for a protective order to stay discovery ("Motion to Stay"). Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. Proc.") 26(c), this Court "may, for good cause issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . including forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. (26)(c)(1)(D). The Court may limit or stay discovery when a motion is potentially dispositive of the entire case or dispositive of the issues on which discovery is sought. *Mireskandari v. Daily Mail*, No. CV 12-02943 MMM (FFMx), 2013 U.S. Dist. LEXIS 199145, at *5-6 (C.D. Cal. Jan. 14, 2013). "Common situations in which a court may determine that staying discovery pending a ruling on a dispositive motion occur when dispositive motions raise issues of jurisdiction, venue, or immunity." *Pettit v. Pulte Mortg., LLC*, No. 2:11-CV-00149-GMN, 2011 WL 5546422, at *2 (D. Nev. Nov. 14, 2011) (granting defendants' motion to stay of discovery pending the dispositive motion). In considering a motion to stay discovery, courts consider Fed. R. Civ. Proc. 1's requirement that cases shall "be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Id.*

*LA 133694873v3*

June 22, 2018
Page 2

LeEco's Motion to Dismiss[1] seeks to eliminate Vizio's second through sixth causes of action for
breach of the Merger Agreement including its various theories of fraud related to that alleged
breach.  Therefore, the Court should stay discovery related to the negotiations regarding the
Merger Agreement, including the negotiation or entry into the Merger Agreement, any alleged
breach of the Merger Agreement, or the termination of the Merger Agreement pending the
decision on the LeEco's Motion to Dismiss.  In addition, should the Court grant LeEco's Motion
to Dismiss, discovery targeted at affiliates because the case will be limited to the dispute
regarding LeEco's (not its affiliates) payment to Vizio of the $10 million in escrow, and LeEco's
(not its affiliates) and Vizio's obligation, if any, to negotiate a proposed joint venture in China.
Even if the Court did not grant the Motion to Dismiss, Vizio's requests related to affiliates
amounts to harassment because Vizio has no justification for seeking discovery from global
enterprises who have no connection to the case.

Similarly, LeLe's Motion to Dismiss[2] would be dispositive of its involvement in this case.
Court's routinely stay discovery when a pending motion requires the resolution of jurisdictional
issues.  *See, e.g. Jeter v. President of the United States*, 670 F. App'x 493, 494 (9th Cir. 2016)
(holding that the district court did not abuse its discretion in granting defendants' motion for a
discovery stay because the pending motion to dismiss required resolution of jurisdictional
issues); *LG Corp. v. Huang Xiaowen*, No. 3:16-CV-1162-JLS-NLS, 2017 WL 2868416 (S.D.
Cal. Feb. 23, 2017) (noting that the court may stay discovery proceedings when jurisdiction is at
issue and granting a stay of discovery where the defendant's pending motion to dismiss raised
challenges to personal jurisdiction); *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670,
675 (S.D. Cal. 2001) ("When a defendant raises jurisdictional objections, the court may stay
discovery proceedings generally and limit discovery to matters relevant to the court's
jurisdiction. . . [c]ourts in other circuits have routinely stayed discovery on the merits altogether
while challenges to jurisdiction are pending."); *Top Rank, Inc. v. Haymon*, No.
CV154961JFWMRWX, 2015 WL 9952887, at *1 (C.D. Cal. Sept. 17, 2015) (noting that the
court has broad discretion to stay discovery pending the outcome of a potentially dispositive
motion); *Moore v. Webster*, 932 F.2d 1229, 1232 (8th Cir. 1991) (staying discovery pending
jurisdictional determination).  Therefore, all discovery propounded upon LeLe should be stayed
pending the Court's ruling on LeLe's Motion to Dismiss.

The third issue raised in your June 8th letter is resolved by LeEco and LeLe's agreement to serve
a privilege log.  With respect to the fourth issue set out in your June 8th letter, LeEco and LeLe
have not produced documents in response to RFP Nos. 1, 2, 4, 6-26, 28, 31, 34, 35, 37-44, 46-65.
The responses to these requests state the reasons for not producing responsive documents as
follows:

- These Requests are "premature and improper because Vizio's second through sixth
  causes of action in the FAC are subject to LeEco's pending Motion to Dismiss [and,

---

[1] Defendant LeEco V. Ltd.'s Partial Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. 47.
[2] Defendant LeLe Holding Ltd.'s Motion to Dismiss for Insufficient Service of Process and Lack of Personal
Jurisdiction, Dkt. 63.

*LA 133694873v3*

June 22, 2018
Page 3

therefore,] the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. . . ."

- The Requests seek discovery from affiliates that is overbroad and irrelevant, merely for harassment, and not proportional to the needs of the case.

As mentioned during our June 18th telephone conversation, we are at a loss to understand Vizio's fifth point addressed in your June 8th letter because the Federal Rules of Civil Procedure do not require that parties organize and label documents to correspond with the categories in the request when documents have been produced as they are kept in the usual course of business. Fed. R. Civ. P. 34(b)(2)(E)(i), ("a party must produce documents as they are kept in the usual course of business **or** must organize and label documents to correspond with the categories in the request.") (emphasis added). The contention that documents contained in a zip file are not produced as they were kept in the usual course of business is unsupportable. Merely unzipping the documents restores the files to their native format as they were kept in the usual course of business.

As requested in our April 17th meet-and-confer, please let us know if Vizio will agree to a stay of discovery based on the authority set out above in response to issues one and two so that LeEco and LeLe do not have to expend unnecessary resources filing motions to stay. We believe that issues three, four and five in your June 8th letter have been resolved as confirmed in this letter.

Best regards,

Attashin Safari

*LA 133694873v3*