1  Robert M. Waxman (SBN 89754)
     rwaxman@ecjlaw.com
2  David N. Tarlow (SBN 214050)
     dtarlow@ecjlaw.com
3  Jason L. Haas (SBN 217290)
     jhaas@ecjlaw.com
4  **ERVIN COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Ninth Floor
5  Beverly Hills, California 90212-2974
   Telephone  (310) 273-6333
6  Facsimile  (310) 859-2325

7  Attorneys for Plaintiff VIZIO, INC., a California corporation

8  ## UNITED STATES DISTRICT COURT

9  ## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>          Plaintiff,<br><br>          v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>          Defendants.<br>_____<br>LeECO V. LTD.<br><br>          Counter-Claimant,<br><br>          vs.<br><br>VIZIO, INC., a California corporation,<br><br>          Counter-Defendant. | Case No. 8:17-cv-01175-DOC-JDE<br><br>**SECOND AMENDED COMPLAINT FOR:**<br>**1)   BREACH OF FRAMEWORK AGREEMENT;**<br>**2)   FRAUD UNDERLYING FRAMEWORK AGREEMENT;**<br>**3)   NEGLIGENT MISREPRESENTATION UNDERLYING FRAMEWORK AGREEMENT;**<br>**4)   PROMISSORY ESTOPPEL; AND**<br>**5)   BREACH OF MERGER AGREEMENT; AND DEMAND FOR JURY TRIAL**<br><br>Judge:  Hon. David O. Carter<br>Crtrm.: 9D |

14676.8:9317018.1

SECOND AMENDED COMPLAINT

Plaintiff VIZIO, INC., a California corporation ("VIZIO" or "Plaintiff"), submits this Second Amended Complaint against Defendants LeECO V. LTD. ("LeEco"), an exempted company with limited liability incorporated under the laws of the Cayman Islands, LeECO GLOBAL GROUP LTD., ("Global Group"), a corporation organized and existing under the laws of the People's Republic of China, LELE HOLDING, LTD. ("Lele Holding"), a personal holding company organized and existing under the laws of the British Virgin Islands, and YUETING JIA, an individual ("JIA"); and DOES 1-10, inclusive, and alleges herein as follows:

## COMMON ALLEGATIONS

1.      Plaintiff is a California corporation with its principal place of business in Irvine, California, and is a well-known, worldwide leader engaged generally in the business of consumer electronic sales, such as smart televisions, displays and sound bars.

2.      Plaintiff is informed and believes, and thereon alleges, that Defendant LeEco is an exempted company with limited liability incorporated under the laws of the Cayman Islands with its principal place of business in Chaoyang District, Beijing, P.R. China.

3.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Global Group is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Chaoyang District, Beijing, P.R. China.  Plaintiff is informed and believes, and based thereon alleges, that Global Group is a parent company of LeEco and is engaged in the business of manufacturing and distributing electronics.

4.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Lele Holding is a personal holding company organized and existing under the laws of the British Virgin Islands, with its principal place of business in Chaoyang District, Beijing, P. R. China.  Plaintiff is further informed and believes, and based thereon alleges, that Lele Holding is an investment vehicle and personal

holding company that is owned and controlled by Defendant JIA and that it is the parent company of Defendant Global Group and as well as the ultimate corporate parent of Defendant LeEco.

5.     Plaintiff is informed and believes, and based thereon alleges, that Defendant JIA is a citizen of the People's Republic of China.  Plaintiff is further informed and believes, and based thereon alleges, that JIA is or was (a) the Chairman of the Board of Global Group and was Global Group's Chief Executive Officer at all relevant times as alleged in this First Amended Complaint and (b) the sole or controlling owner of Lele Holding, which is his personal investment vehicle.

6.     Due to Global Group's status as a foreign citizen corporation organized and existing under the laws of the People's Republic of China, Plaintiff may be required to serve it pursuant to the procedures established under the Hague Convention.

7.     Plaintiff is ignorant of the true names and capacities of the defendants named herein as DOES 1 through 10, inclusive ("Doe Defendants") (collectively, with all other Defendants whether named, added by Doe Amendment or otherwise joined into the action shall hereinafter be referred to as "Defendants") and therefore names said defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that the Doe Defendants are in some manner responsible to Plaintiff for the wrongful conduct and occurrences alleged herein.  Plaintiff will amend this Second Amended Complaint to allege the true names and capacities of any fictitiously named defendants once they have been ascertained.

8.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was acting as an agent, representative, servant, partner, or employee of each of the other Defendants and was acting in the course and scope of such agency, employment and representation.  Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants directed, authorized, affirmed, consented to, ratified, encouraged, approved,

1   adopted, and/or participated in the acts or transactions of each or any of the other

2   Defendants as alleged herein.

3   **JURISDICTION, VENUE, TIMELINESS AND CHOICE OF LAW**

4        9.     This Court has jurisdiction over this action due to a diversity of

5   citizenship pursuant to 28 U.S.C. § 1332 because at all times relevant hereto the

6   corporate defendants, were and are corporations organized and existing under the

7   laws of the Cayman Islands, the People's Republic of China, and the British Virgin

8   Islands, respectively, with their principal place of business in Beijing, P.R. China,

9   while JIA is likewise a citizen of the People's Republic of China, whereas Plaintiff

10  is a California corporation with its principal place of business in Irvine, California.

11  The amount in controversy exceeds $75,000 exclusive of interest and costs.

12       10.    Venue in the above-entitled Court is proper pursuant to 28 U.S.C. §

13  1391(b)(2) because a substantial part of the events or omissions giving rise to

14  Plaintiff's claim occurred in this District, namely the failure to pay monies due and

15  owing to VIZIO.

16  **FACTUAL ALLEGATIONS**

17  A.   **THE MERGER REPRESENTATIONS**

18       11.    Starting in or about December 2015, and continuing through and

19  including approximately July 6, 2016, (the "Serious Negotiations Period"), VIZIO,

20  by and through William Wang, ("Wang"), its Chief Executive Officer, Ben Wong

21  ("Wong"), its President, and Kurt Binder ("Binder"), its Chief Financial Officer,

22  among others, entered into serious negotiations over the phone, electronically and in

23  person at Irvine, California, and Beijing, People's Republic of China, with both Lele

24  Holding by and through JIA, its sole and controlling owner, as well as with Global

25  Group, by and through, among others, JIA, Winston Cheng ("Cheng"), its Sr. Vice

26  President of Finance, and Charles Hsieh ("Hsieh"), a director of Global Group, for

27  the merger of VIZIO with LeEco and Merger Sub.

28       12.    Plaintiff is informed and believes, and based thereon alleges, that

ERVIN COHEN & JESSUP LLP

3
**SECOND AMENDED COMPLAINT**

unbeknownst to it, prior to, and during the Serious Negotiations Period, Lele Holding and Global Group and their extended subsidiary or affiliated corporate entities were experiencing severe cash flow and financial problems.  Plaintiff is further informed and believes, and based thereon alleges, that during the Serious Negotiations Period, Lele Holding and Global Group, through, inter alia, JIA, represented to one or more of Wong, Binder, and/or Wang, among others, over the phone, electronically and in person at Irvine, California, and Bejing, People's Republic of China, that Lele Holding and Global Group and various of their subsidiary or affiliated corporate entities, were financially healthy and that they had the financial wherewithal to complete a $2,000,000,000 merger transaction with VIZIO (the "$2BB Financial Wherewithal Representations").

13.     Plaintiff is informed and believes, and based thereon alleges, that the $2BB Financial Wherewithal Representations were false at the time that they were made, and that Defendants, and each or either of them, knew that they were false and that they did not have the financial wherewithal to complete a $2BB merger with VIZIO.

14.     Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it, at the time that $2BB Financial Wherewithal Representations were made, Lele Holding, Global Group and their far-flung corporate empire had begun to collapse due to their severe cash flow and financial problems, and that they desperately needed to either obtain the instant financial stability, credibility and resources that a merger with VIZIO would bring, or at least to create a widespread and dramatic public impression of their own financial health and well-being to grow or continue in business that would come with the announcement of such an intended merger.

15.     Plaintiff is informed and believes, and based thereon alleges, that JIA as well as Lele Holding, Global Group and/or various of their subsidiary or affiliated corporate entities then concocted a secret plan at or about that time to (a) use a

SECOND AMENDED COMPLAINT

1  publicly announced intended merger with VIZIO to gain or try to obtain access to

2  VIZIO's large corporate clients and key decision makers threat for their own

3  purposes and by means of confidential client information that had been developed

4  by VIZIO at substantial cost, time and expense, and (b) create a false widespread

5  public impression of their own financial health during the Serious Negotiations

6  Period and beyond, with Defendants making the $2BB Financial Wherewithal

7  Representations to further that secret plan, and intending to induce Plaintiff to enter

8  into such a merger agreement and provide LeEco with access to VIZIO's

9  confidential corporate client information, including contact information, account

10  history, purchasing needs or requirements, contract terms, and the like.

11  B.  **THE MERGER AGREEMENT**

12    16.    On or about July 6, 2016, VIZIO, on the one hand, and LeEco, on the

13  other hand, as well as two other corporate entities named Le V Merger Sub, Inc.

14  ("Merger Sub") and Shareholder Representative Services LLC ("SRS") entered into

15  a written agreement entitled Agreement and Plan of Merger (hereinafter the "Merger

16  Agreement").

17    17.    Plaintiff is informed and believes, and based thereon alleges, that

18  between the date that the Merger Agreement was executed until its termination by

19  VIZIO as set forth below, LeEco obtained access to VIZIO's confidential corporate

20  client information such as contact information, account history, purchasing needs

21  and requirements, contract terms and the like, and then used that confidential

22  corporate client information strictly for its own purposes and/or for various of its

23  parent, affiliated or subsidiary corporate entities.

24    18.    Section 11.7 of the Merger Agreement provides that the internal laws

25  of the State of California govern the Merger Agreement and any claims or

26  controversies relating to it.

27    19.    Section 11.8 of the Merger Agreement provides for exclusive

28  jurisdiction and venue in the Santa Ana Branch of the Orange County Superior

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  Court and/or the Southern Division of the United States District Court for the

2  Central District of California in any action or proceeding relating to the Merger

3  Agreement and the transactions contemplated thereunder.

4      20.     Pursuant to Section 9.2 of the Merger Agreement, in the event that the

5  Merger Agreement was terminated by VIZIO pursuant to any of "Section 9.1(b)(ii)

6  (Buyer's (LeEco) or Merger Sub's Breach of Representations and Warranties); (ii)

7  Section 9.1(c)(ii) (Buyer's (LeEco) or Merger Sub's Breach of Covenants or

8  Agreements); (iii) Section 9.1(d) (End Date), and/or immediately prior to such

9  termination, the conditions in Section 7.1(d) (PRC Regulatory Approvals) have not

10 been satisfied primarily due to Buyer's (LeEco) or Merger Sub's failure to have

11 available sufficient cash on hand, together with Committed Financing, to

12 consummate the Merger and the other transactions contemplated by this Agreement,

13 and to perform their respective obligations under this Agreement; or (iv) Section

14 9.1(f) (Buyer's (LeEco) Failure to Close) (Each a Qualifying Buyer (LeEco)

15 Termination"), then Buyer (LeEco) shall pay, or cause to be paid, the Buyer

16 Termination Fee to the Company."

17     21.     Pursuant to Section 10.2 of the Merger Agreement, "'Buyer

18 Termination Fee' means the Buyer Termination Fee Deposit plus the Buyer

19 Termination Fee Remainder."

20     22.     Pursuant to Section 10.2 of the Merger Agreement, "'Buyer

21 Termination Fee Deposit' means the amount of fifty million dollars ($50,000,000)"

22 that Plaintiff is informed and believes, and based thereon alleges, was deposited into

23 escrow on or about the signing of the Merger Agreement by Lele Holding, Global

24 Group and/or various of their subsidiary or affiliated corporate entities pursuant to

25 the terms of the Merger Agreement and under Section 9.2(b) of the Merger

26 Agreement is to be automatically released by escrow and paid directly to Plaintiff

27 upon written notice from VIZIO of its termination of the Merger Agreement as a

28 result of a Qualifying Buyer Termination unless the Escrow Agent has received an

1    Order issued by a Governmental Entity of competent jurisdiction or has received

2    joint instructions from LeEco and Plaintiff to do otherwise.

3         23.     Pursuant to Section 10.2 of the Merger Agreement, "'Buyer

4    Termination Fee Remainder', means the amount of fifty million dollars

5    ($50,000,000)" that under Section 9.2(b) of the Merger Agreement is also to be paid

6    directly to VIZIO by LeEco through wire transfer within three (3) business days

7    following the occurrence of a closing or a valid termination of the Merger

8    Agreement by VIZIO as a result of a Qualifying Buyer Termination.

9         24.     Plaintiff relied on the $2BB Financial Wherewithal Representations to

10   enter into the Merger Agreement, and to permit LeEco to obtain access to VIZIO's

11   confidential corporate client information as set forth above.  VIZIO's reliance was

12   reasonable since it had no means to discover either the falsity of the $2BB Financial

13   Wherewithal Representations at the time they were made, nor the secret plan

14   concocted by JIA as well as Lele Holding, Global Group and/or various of their

15   subsidiary or affiliated corporate entities to (a) use a publicly announced intended

16   merger with VIZIO to gain or try to obtain access to VIZIO's large corporate clients

17   and key decision makers threat for their own purposes and by means of the

18   confidential corporate client information that had been developed by VIZIO at

19   substantial cost, time, and expense, and (b) create a false widespread public

20   impression of their own financial health and well-being.  Indeed, Section 6.8 of the

21   Merger Agreement justifies such reliance by VIZIO since it is consistent with the

22   $2BB Financial Wherewithal Representations and provides that there were no

23   financial contingencies to the obligations of LeEco and Merger Sub.

24   C.    **THE ESCROW AGREEMENT**

25        25.     Plaintiff is informed and believes, and based thereon alleges, that

26   concurrently with the execution of the Merger Agreement, VIZIO, LeEco, and SRS

27   entered into an Escrow Agreement ("the Escrow Agreement") with the Los Angeles

28   office of Citibank, National Association ("CNB") as Escrow Agent ("the CNB

ERVIN COHEN & JESSUP LLP

1  escrow").  Plaintiff is further informed and believes, and based thereon alleges, that
2  consistent with the terms of the Merger Agreement, the $50,000,000 Buyer
3  Termination Fee Deposit was, among other things, deposited into that escrow by
4  Lele Holding, Global Group and/or various of their subsidiary or affiliated corporate
5  entities.

6          26.     Section 4(a)(iii) of the Escrow Agreement largely tracks the terms of
7  Section 10.2 of the Merger Agreement as described in paragraph 22 of this First
8  Amended Complaint with respect to the release and payment of the $50,000,000
9  Buyer Termination Fee Deposit directly to VIZIO, albeit a joint written notice from
10 VIZIO and LeEco to CNB is listed in the Escrow Agreement as a trigger for any
11 such disbursement.  However, Section 4(a)(iv) of the Escrow Agreement also
12 provides that in any event CNB can distribute the $50,000,000 Buyer Termination
13 Fee Deposit consistent with the terms of a Final Determination made by a court of
14 competent jurisdiction.

15         27.     Section 5 of the Escrow Agreement provides that to the extent
16 practicable, the Escrow Agent is not to be made a party to any litigation involving
17 disputes between the parties.

18 D.    **BREACH AND TERMINATION OF THE MERGER AGREEMENT**

19         28.     On January 6, 2017, the merger deadline for the consummation of the
20 merger under the terms of the Merger Agreement was extended by the parties in
21 writing to April 6, 2017.

22         29.     Plaintiff is informed and believes, and based thereon alleges, that
23 LeEco breached the Merger Agreement.  These breaches by LeEco are tied to
24 specific terms of the Merger Agreement and include, inter alia:

25         a.     The failure of LeEco to use its reasonable best efforts "to
              consummate and make effective, in the most expeditious manner
26            practicable, the Merger" as required by Section 5.3 of the Merger
              Agreement.

27         b.     The failure of Le Eco to use its reasonable best efforts to satisfy
28            "on a timely basis all conditions precedent to funding under the Equity

ERVIN COHEN & JESSUP LLP

Commitment Letters…and in any Debt Financing Document," and to then "promptly notify [VIZIO] of such Financing Failure Event and…, the reasons therefore," coupled with its failure to "use…reasonable best efforts to obtain alternative financing…as promptly as practicable following the occurrence of such event" as required by Section 5.8 of the Merger Agreement.

c.      The concomitant failure of Le Eco to give Plaintiff "prompt notice of any breach, repudiation or threatened breach or repudiation by any party to the Equity Commitment Letters or any Debt Financing Documents" and to "provide [VIZIO] with a copy of, a new financing commitment" as required by Section 5.8 of the Merger Agreement.

d.      Acts taken by LeEco and/or its Affiliates "to amend, modify, supplement, restate, assign, substitute or replace any of the Equity Commitment Letters or any Debt Financing Document…without the consent of [VIZIO], particularly since such amendments, modifications, supplements, restatements, assignments, substitutions, replacements or waivers…resulted in a net reduction in the aggregate amount of the Financing…[or], imposed "new conditions on funding"…[and/or] expanded, amended, or modified any provision of the Equity Commitment Letters, in a manner that would be reasonably expected to…materially delay or prevent the funding in full of the Financing" contrary to Section 5.8 of the Merger Agreement.

e.      The failure of LeEco to "promptly prepare, file, effect and obtain as soon as reasonably practicable all Consents necessary to obtain from any person including from any Governmental Entity in order to consummate the Merger" and its concomitant failure to "prepare and file all filings required to obtain the PRC Overseas Investment Approvals as promptly as practicable" as required by Section 5.4(a) of the Merger Agreement.

f.      The failure of LeEco to (i) "promptly inform [VIZIO] of any material communication from…any…Governmental Entity", (ii) give VIZIO "reasonable advanced notice of all meetings or planned communications with any Governmental Entity", (iii) give VIZIO an opportunity to participate in each of such meetings or communications, (iv) keep VIZIO promptly apprised with respect to any material oral communications with any Governmental Entity, (v) provide VIZIO with a reasonable advance opportunity to review and comment upon…all material written communications…and planned oral communication with a Governmental Entity regarding the Merger and (vi) provide VIZIO with copies of "all written communications to or from any Governmental Entity relating to the Merger" as required by Section 5.4(d) of the Merger Agreement.

30.      Subsequent to LeEco's breaches of the Merger Agreement as set forth above, and on or about March 30, 2017, Plaintiff served a written Termination of Merger Agreement (the "Termination Notice") on LeEco, among others, through LeEco Global Group Ltd., as required by Section 11.6 of the Merger Agreement,

9

SECOND AMENDED COMPLAINT

1  which triggered the Buyer Termination Fee provisions of the Merger Agreement.

2  The Termination Notice described each such breach in detail.

3      31.    Plaintiff is informed and believes, and based thereon alleges, that as a

4  further and separate breach of the Merger Agreement, LeEco was not in position to

5  be able to close or consummate the merger by the mutually agreed extended date of

6  April 6, 2017 due to its failure to have sufficient cash on hand, together with

7  committed financing, as required by the Merger Agreement.  This additional and

8  further breach of the Merger Agreement was also included in the Termination

9  Notice and is likewise described in detail therein.

10      32.    Plaintiff is informed and believes, and based thereon alleges, that none

11  of the breaches of the Merger Agreement by LeEco were cured.  Plaintiff is further

12  informed and believes, and based thereon alleges, that in any event, such breaches

13  were not capable of being cured by LeEco.  Accordingly, the merger was not

14  consummated.

15  E.    **THE FRAMEWORK AGREEMENT**

16      33.    Shortly after receipt of the Termination Notice, Lele Holding, Global

17  Group and LeEco, by and through, inter alia, JIA, Hsieh and Richard Ren ("Ren") -

18  - LeEco's North American Chief Executive Officer - - discussed with Plaintiff by

19  and through Wong and/or Wang, among others, that the parties mutually terminate

20  the Merger Agreement, with specified carve outs or exceptions, and that going

21  forward, VIZIO and LeEco form a joint venture distributorship for operation in the

22  People's Republic of China, a primary purpose of which would be to promote,

23  market and sell VIZIO branded devices, such as televisions, displays and sound bars

24  through LeEco's distributing/Omni channels in China ("the Sales JV").  LeEco, Lele

25  Holding, and Global Group by and through, inter alia, JIA and/or Hsieh, then

26  ultimately promised Wong and/or Wang, among others, that in consideration for

27  VIZIO's agreement to, inter alia, jointly terminate the Merger Agreement subject to

28  specified carve outs or exceptions, and forgo immediate payment of the

10

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

$100,000,000 Buyer Termination Fee, LeEco would (a) cause joint escrow instructions to be prepared and signed in order to release from the CNB escrow the sum of $40,000,000 which would be paid directly to VIZIO from the Buyer Termination Fee Deposit upon the signing of a Framework, Termination and Mutual General Release Agreement between or among VIZIO and LeEco; (b) cause the remaining $10,000,000 of the Buyer Termination Fee Deposit to be released from that escrow and paid directly to VIZIO upon the execution within 45 days of a joint venture distributorship agreement for the Sales JV between VIZIO and LeEco - - but that if no such joint venture distributorship agreement was so signed within that 45 day time frame - - then nevertheless have that $10,000,000 sum released from the CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit provisions of the Merger Agreement; and (c) contribute capital in the form of non-cash assets to the Sales JV with a verified fair market value of at least $50,000,000.  In other words, the Defendants were promising to pay to VIZIO an amount equal to the $100,000,000 Buyer Termination Fee, albeit the former Buyer Termination Fee Remainder in the sum of $50,000,000 would now be in the form of a capital contribution from LeEco to the Sales JV which would also benefit VIZIO.

34.     Plaintiff is informed and believes, and based thereon alleges, that the promises described in subparts (b) and (c) of paragraph 33 of this First Amended Complaint were false at the time they were made and that Defendants made these promises with knowledge of their falsity and the intent to induce VIZIO to, inter alia, jointly terminate the Merger Agreement subject to specified exceptions or carve outs and forego immediate payment of the $100,000,000 Buyer Termination Fee, and enter into a Framework, Termination and Mutual General Release Agreement with LeEco.

35.     In reliance on the false promises of JIA and/or Hsieh, Lele Holding, Global Group and LeEco described in Paragraph 33 of this First Amended

11
SECOND AMENDED COMPLAINT

Complaint, VIZIO agreed to, and did enter into a Framework, Termination and

Mutual General Release Agreement with LeEco and Merger Sub on or about April

5, 2017 (the "Framework Agreement").

36.     Although the Merger Agreement was terminated by the Termination

Notice with the exception of, inter alia, the Buyer Termination Fee provisions,

Section 1.1 of the Framework Agreement provides for the further joint termination

of the Merger Agreement subject to specified carve outs or exceptions, concurrent

with the release from the CNB escrow and direct payment to VIZIO of $40,000,000

from the Buyer Termination Fee Deposit.

37.     That $40,000,000 sum was released from the CNB escrow and paid

directly to VIZIO concurrently with the execution of the Framework Agreement.

Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to

release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have

that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently

with the execution of the joint venture distribution agreement for the Sales JV

within 45 days from signature of the Framework Agreement and VIZIO's

concomitant receipt of the $40,000,000 portion of the Buyer Fee Termination

Deposit.  However, notwithstanding the foregoing, Section 1.1 of the Framework

Agreement specifically carves out and creates an exception for the terms of the

Merger Agreement governing the release of the remaining Buyer Termination Fee

Deposit, *i.e.,* the $10,000,000 sum.  In other words, the Framework Agreement

expressly carved out and left fully intact the provisions of the Merger Agreement

governing the release and payment of that $10,000,000 sum.

38.     Section 3 of the Framework Agreement requires that VIZIO and LeEco

negotiate in good faith and use reasonable efforts to reach further or additional terms

as to a commercial relationship between them in the form of a joint venture

distributorship (*i.e.,* the Sales JV) to be owned 50/50 and under which, inter alia, (a)

VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably

ERVIN COHEN & JESSUP LLP

competitive rates with the Sales JV, in turn, to have the exclusive right to distribute and sell VIZIO-branded devices in the People's Republic of China during the initial term, and (b) LeEco to contribute in the form of capital to the Sales JV non-cash assets with a verified fair market value equal to $50,000,000.  Section 4 of the Framework Agreement likewise requires the parties to negotiate in good faith and execute one or more agreements to, among other things, document the Sales JV within 45 days from the signing of the Framework Agreement and receipt by VIZIO of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April 5, 2017, *i.e.,* May 20, 2017.

39.     Plaintiff is informed and believes, and based thereon alleges, that as a result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to negotiate additional or further terms as well as to execute the joint venture distributorship agreement and document the Sales JV, and (b) the express exception carved out in in Section 1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the execution of a joint venture distribution agreement between VIZIO and LeEco and/or that any such joint venture distribution agreement was somehow a condition to the release and payment of that $10,000,000 sum, the Defendants have prevented

ERVIN COHEN & JESSUP LLP

SECOND AMENDED COMPLAINT

1    the fulfillment of the alleged condition or performance of that term and cannot rely

2    on same to defeat their liability thereon as set forth more fully below.

3        40.    Section 9.4 of the Framework Agreement provides that any claims or

4    controversies relating to the Framework Agreement are to be governed by the

5    internal laws of the State of California.  VIZIO is informed and believes, and based

6    thereon alleges, that the Framework Agreement and the joint venture distribution

7    agreement are therefore, subject to, inter alia, the provisions of the California

8    Commercial Code governing the sale of goods.

9        41.    Section 9.6 of the Framework Agreement provides for exclusive

10   jurisdiction and venue in the Orange County Superior Court and/or the Southern

11   Division of the United States District Court for the Central District of California for

12   any actions or proceedings related to the Framework Agreement.

13       42.    Section 7.9 of the Framework Agreement requires each party to execute

14   any further and additional documents that are reasonable and necessary to carry out

15   the provisions of the Framework Agreement.  Similarly, Section 9.8 of the

16   Framework Agreement reflects that irreparable damage will occur if any provisions

17   thereof are breached or not performed in accordance with their specific terms and

18   provides, among other things, for specific performance of the terms of the

19   Framework Agreement.

20   F.    **BREACH OF THE FRAMEWORK AGREEMENT**

21       43.    Shortly after the parties executed the Framework Agreement and

22   continuing thereafter, VIZIO made repeated efforts to communicate with and

23   negotiate further or additional terms of the Sales JV with LeEco, among others,

24   consistent with the Framework Agreement, including preparing and tendering a

25   draft thereof to, inter alia, LeEco.  Those efforts fell on deaf ears.  VIZIO's efforts

26   were met with practical radio silence notwithstanding that the 45 day time limit

27   imposed with regard thereto under Section 4 of the Framework Agreement, *i.e.,* May

28   20, 2017, has come and gone.

44.     From and after the execution of the Framework Agreement, the Defendants have failed and refused to participate in any such substantive negotiations whatsoever under or pursuant to the Framework Agreement, let alone in good faith during the mandatory 45 day time limit or otherwise.  The Defendants have not used any efforts, let alone reasonable efforts to form any sort of commercial joint-venture distributorship agreement with VIZIO within the required 45 day time limit and beyond.

45.     Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it and at the time Defendants made the promises described in subparts (b) and (c) of Paragraph 33 of this First Amended Complaint and then executed the Framework Agreement, they had no intention to pay or cause VIZIO to be paid the $10,000,000 remaining portion of the Buyer Termination Fee Deposit under the terms of the Merger Agreement or the Framework Agreement, nor did Defendants intend to execute a joint venture distributorship agreement with VIZIO and/or fund same with a capital contribution of $50,000,000 in verified non-cash assets, let alone participate in any substantive negotiations related thereto, whether in good faith or otherwise.  Instead, Plaintiff is further informed and believes, and based thereon alleges, that Defendants knowingly and secretly intended to do none of these things at that time and merely engaged in a subterfuge to try to reduce their liability from the $100,000,000 Buyer Termination Fee to the $40,000,000 sum that was released from the CNB escrow and paid directly to VIZIO concurrently with the Framework Agreement.

46.     Plaintiff relied on the promises described in Paragraph 33 of this First Amended Complaint and the concomitant execution of the Framework Agreement to, inter alia, enter into the Framework Agreement and, among other things, ostensibly forego immediate payment of the entire Buyer Termination Fee as would otherwise have been required under the Merger Agreement.  VIZIO's reliance was reasonable since it had no means to discover either the falsity of the promises

15

SECOND AMENDED COMPLAINT

1  described in Paragraph 33 of this First Amended Complaint at the time that they

2  were made nor the secret intention of Defendants not to perform as set forth in

3  Paragraph 45 of this First Amended Complaint.

4      47.    Plaintiff would not have entered into the Framework Agreement had it

5  known of the falsity of the promises described in paragraph 33 of this First

6  Amended Complaint at the time that they were made, nor the secret intention of

7  Defendants not to perform as set forth in paragraph 45 of this First Amended

8  Complaint.  Plaintiff is further informed and believes, and based thereon alleges,

9  that it has suffered reliance and/or lost opportunity damages in the sum of

10 $60,000,000 (*i.e.,* the $10,000,000 remaining portion of the Buyer Termination Fee

11 Deposit and the $50,000,000 Buyer Termination Fee Remainder) as a direct and

12 proximate result of the false promises alleged in paragraph 33 of this First Amended

13 Complaint, together with the false representations and promises made by

14 Defendants to induce VIZIO to enter into the Framework Agreement and the

15 Defendants' failure, *inter alia*, to participate in the substantive negotiations required

16 thereunder with respect to the Sales JV, whether in good faith or otherwise.

17 G.    **DEMANDS FOR PAYMENT**

18     48.    On June 9, 2017, Plaintiff sent a demand for payment ("the June 9

19 Payment Demand") to LeEco and LeEco Global Group Ltd., in the manner set forth

20 in the Framework Agreement and the Merger Agreement.  This demand letter

21 detailed Defendants' fraudulent conduct and concomitant breach of the Framework

22 Agreement, as well as LeEco's breach of the Merger Agreement, while at the same

23 time describing their complete failure to negotiate further and additional terms of the

24 Sales JV - - whether in good faith or otherwise - - let alone to memorialize the Sales

25 JV within the required 45 day time limit despite repeated oral and written overtures,

26 requests and instructions from VIZIO with regard thereto, including submission of a

27 draft joint venture agreement to Defendants.

28     49.    The June 9 Payment Demand stated in pertinent part that "since the

ERVIN COHEN & JESSUP LLP

1 terms of the Buyer Termination Fee Deposit remain in effect and in any event
2 LeEco has prevented performance, the remaining $10,000,000 Buyer Termination
3 Fee Deposit must be released from escrow and paid to VIZIO forthwith."  Indeed, to
4 facilitate that payment, the June 9 Payment Demand also enclosed Joint Written
5 Instructions to be signed and returned by LeEco.  No such signed Joint Written
6 Escrow Instructions were returned by LeEco.
7 ///

8        50.    The June 9 Payment Demand also explained that LeEco's failure to
9 release and pay the remaining $10,000,000 of the Buyer Termination Fee Deposit
10 was just the tip of the iceberg.  It described at length that LeEco has neither paid the
11 $50,000,000 Buyer Termination Fee Remainder to VIZIO nor has LeEco executed
12 the required joint venture distribution agreement, let alone funded the Sales JV with
13 a capital contribution of $50,000,000 in verified non-cash assets.  Accordingly, the
14 June 9 Payment Demand then demanded that LeEco pay directly to VIZIO the
15 $50,000,000 Buyer Termination Fee Remainder.

16        51.    LeEco has failed and refused to comply with the June 9 Payment
17 Demand.  As a result, on June 11, 2017, Plaintiff delivered an instruction (the "June
18 11 Instruction") to CNB notifying the Escrow Agent of the breaches discussed
19 above and demanding that it release payment to VIZIO of the $10,000,000
20 remaining portion of the Buyer Termination Fee Deposit in accordance with terms
21 of Section 9.2(b) of the Merger Agreement and Section 1.1 of the Framework
22 Agreement.  CNB has neither responded to the June 11 Instruction, nor has it
23 released and paid the remaining $10,000,000 portion of the Buyer Termination Fee
24 Deposit directly to VIZIO.

25        52.    On June 22, 2017, Global Group finally responded (the "Global Group
26 Response") to the June 9 Payment Demand and the June 11 Instruction.  Global
27 Group therein compounded its misconduct by actually instructing the Escrow Agent
28 to refrain from releasing and paying the remaining $10,000,000 portion of the Buyer

ERVIN COHEN & JESSUP LLP

Termination Fee Deposit directly to VIZIO.

53.     Plaintiff replied to the Global Group Response on June 23, 2017. Among other things, Plaintiff explained that Global Group had compounded its unlawful conduct by denying that the $10,000,000,000 in the CNB escrow should be immediately released to VIZIO and instructing the Escrow Agent to refrain from so releasing that sum.  Plaintiff then reiterated the demands made in, inter alia, the June 9 Payment Demand and the June 11 Instruction, while continuing to stand by the Termination Notice.

54.     Section 8 of the Framework Agreement provides under certain circumstances for the recovery of all costs and expenses, including reasonable attorneys' fees, with respect to various claims brought or maintained in connection with the Framework Agreement.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (BREACH OF THE FRAMEWORK AGREEMENT)

AS AND FOR A FIRST CLAIM FOR RELIEF BY VIZIO FOR BREACH OF THE FRAMEWORK AGREEMENT AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES AS FOLLOWS:

55.     VIZIO restates, realleges and incorporates paragraphs 1-54 as if fully set forth herein.

56.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times there existed a unity of interest and ownership between Lele Holding, Global Group and LeEco, such that LeEco is the alter ego of each or either of them. Plaintiff is further informed and believes, and based thereon, alleges that adherence to the fiction of the separate existence of LeEco, Lele Holding, and Global Group would permit an abuse of the corporate privilege and promote injustice by protecting Lele Holding, Global Group, and each or either of them, from liability for the wrongful acts committed by each or both of them, through or under the name of LeEco.

57.    Plaintiff is informed and believes, and based thereon alleges, that at all relevant times there existed a unity of interest and ownership between Lele Holding, Global Group and JIA, such that JIA is the alter ego of each or either of them. Plaintiff is further informed and believes, and based thereon, alleges that adherence to the fiction of the separate existence of JIA, Global Group, and Lele Holding would permit an abuse of the corporate privilege and promote injustice by protecting JIA from liability for the wrongful acts committed by each or either of them through or under the names of either or both of Lele Holding and/or Global Group.

58.    On or about April 5, 2017, VIZIO and LeEco entered into the Framework Agreement.

59.    Plaintiff has performed each of the obligations required under the Framework Agreement, except for those obligations that have been waived or which it has otherwise been excused from performing due to Defendants' breach of the Framework Agreement.

60.    Plaintiff is informed and believes, and based thereon alleges, that Defendants have breached the terms of the Framework Agreement, by among other things, failing to:

(a)    Participate in any substantive negotiations whatsoever with respect to the Sales JV under or pursuant to the Framework Agreement, let alone in good faith within the required 45 day time limit;

(b)    Use any efforts, let alone reasonable efforts, to further execute or memorialize the commercial distribution joint-venture relationship under or pursuant to the Framework Agreement within the required 45 day time limit;

(c)    Execute or memorialize the Sales JV under or pursuant to the Framework Agreement within the required 45 day time limit;

(d)    Release from escrow and pay directly to VIZIO the remaining $10,000,000 of the Buyer Termination Fee Deposit;

(e)    Pay VIZIO the $50,000,000 Buyer Termination Fee Remainder

ERVIN COHEN & JESSUP LLP

1  and/or to fund the Sales JV with a capital contribution in the form of non-cash assets

2  having a verified fair market value of $50,000,000.

3        61.    Plaintiff relied on the promises described in paragraph 33 of this First

4  Amended Complaint and the concomitant execution of the Framework Agreement,

5  to inter alia, enter into the Framework Agreement and ostensibly forego immediate

6  payment of the entire Buyer Termination Fee as would otherwise have been required

7  under this Merger Agreement.  VIZIO's reliance was reasonable since it had no

8  means to discover either the falsity of the promises described in paragraph 33 of this

9  First Amended Complaint at the time that they were made, nor the secret intention

10  of Defendants not to perform as set forth in paragraph 45 of this First Amended

11  Complaint.

12        62.    Plaintiff would not have entered into the Framework Agreement had it

13  known of the falsity of the promises described in Paragraph 33 of this First

14  Amended Complaint at the time that they were made, nor the secret intention of

15  Defendants not to perform as set forth in Paragraph 45 of this First Amended

16  Complaint.

17        63.    Plaintiff is informed and believes, and based thereon alleges, that

18  Defendants have also breached the implied covenant of good faith and fair dealing

19  which is implied in all contracts, in the acts taken above, which have substantially

20  deprived Plaintiff of material fruits and benefits of the Framework Agreement.

21        64.    Plaintiff is informed and believes, and based thereon alleges, that it has

22  suffered reliance and/or lost opportunity damages in the sum of $60,000,000 (*i.e.,*

23  the $10,000,000 remaining portion of the Buyer Termination Fee Deposit and the

24  $50,000,000 Buyer Termination Fee Remainder) as a direct and proximate result of

25  the false promises alleged in paragraph 33 of this First Amended Complaint,

26  together with the false representations and promises made by Defendants to induce

27  VIZIO to enter into the Framework Agreement and the Defendants' failure, *inter*

28  *alia*, to participate in the substantive negotiations required thereunder with respect to

ERVIN COHEN & JESSUP LLP

20

SECOND AMENDED COMPLAINT

1  the Sales JV, whether in good faith or otherwise, during the required 45 day time

2  limit and beyond.

3  **SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

4  **(FRAUD UNDERLYING THE FRAMEWORK AGREEMENT)**

5  AS AND FOR A SECOND CLAIM FOR RELIEF BY VIZIO FOR FRAUD

6  AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES AS

7  FOLLOWS:

8  65.     Plaintiff restates, realleges and incorporates paragraphs 1-54, and 56-64

9  as if fully set forth herein.

10  66.     Shortly after receipt of the Termination Notice, Defendants Lele

11  Holding, Global Group and LeEco, by and through, inter alia, JIA, Hsieh, and Ren,

12  contacted VIZIO by and through Wong and/or Wang, among others, to discuss that

13  the parties mutually terminate the Merger Agreement with specified carve outs or

14  exceptions, and that going forward, VIZIO and LeEco form a joint venture

15  distributorship for operation in the People's Republic of China, a primary purpose of

16  which would be to promote, market and sell VIZIO branded devices, such as

17  televisions, displays and sound bars through LeEco's distributing/Omni channels in

18  China.  LeEco, Lele Holding, and Global Group by and through, inter alia, JIA

19  and/or Hsieh, then ultimately promised Wong and/or Wang, among others, that in

20  consideration for VIZIO's agreement to, inter alia, jointly terminate the Merger

21  Agreement with LeEco subject to specified carve outs or exceptions, and forgo

22  immediate payment of the $100,000,000 Buyer Termination Fee, LeEco would (a)

23  cause joint escrow instructions to be prepared and signed in order to release from the

24  CNB escrow the sum of $40,000,000 which would be paid directly to VIZIO from

25  the Buyer Termination Fee Deposit upon the signing of a Framework, Termination

26  and Mutual General Release Agreement between or among VIZIO and LeEco; (b)

27  cause the remaining $10,000,000 of the Buyer Termination Fee Deposit to be

28  released from that escrow and paid directly to VIZIO upon the execution within 45

ERVIN COHEN & JESSUP LLP

days of a joint venture distributorship agreement for the Sales JV between VIZIO and LeEco - - but that if no such joint venture distributorship agreement was so signed within that 45 day time frame - - then nevertheless have that $10,000,000 sum released from the CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit provisions of the Merger Agreement; and (c) contribute capital in the form of non-cash assets to the Sales JV with a verified fair market value of at least $50,000,000.  In other words, the Defendants were promising to pay to VIZIO an amount equal to the $100,000,000 Buyer Termination Fee, albeit the former Buyer Termination Fee Remainder in the sum of $50,000,000 would now be in the form of a capital contribution from LeEco to the Sales JV, which would also benefit VIZIO.

67.     Plaintiff is informed and believes, and based thereon alleges, that the promises described in subparts (b) and (c) of paragraph 66 of this First Amended Complaint were false at the time that they were made and that Defendants made these promises with knowledge of their falsity and the intent to induce VIZIO to, inter alia, terminate the Merger Agreement subject to specified exceptions or carve outs, forego immediate payment of the $100,000,000 Buyer Termination Fee and enter into a Framework, Termination and Mutual General Release Agreement with LeEco.

68.     In reliance on the false promises of JIA and/or Hsieh, Lele Holding, Global Group and LeEco described in Paragraph 66 of this First Amended Complaint, VIZIO agreed to, and did enter into the Framework Agreement with LeEco on or about April 5, 2017.

69.     Although the Merger Agreement was terminated by the Termination Notice with exception of, inter alia, the Buyer Termination Fee provisions, Section 1.1 of the Framework Agreement provides for the further joint termination of the Merger Agreement subject to specified carve outs or exceptions, concurrent with the release from the CNB escrow and direct payment to VIZIO of $40,000,000 from the

22

ERVIN COHEN & JESSUP LLP

Buyer Termination Fee Deposit.

70.     That $40,000,000 sum was released from the CNB escrow and paid directly to VIZIO concurrently with the execution of the Framework Agreement. Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently with the execution of the joint venture distribution agreement for the Sales JV within 45 days from signature of the Framework Agreement and VIZIO's concomitant receipt of the $40,000,000 portion of the Buyer Termination Fee Deposit.  However, notwithstanding the foregoing, Section 1.1 of the Framework Agreement specifically carves out and creates an exception for the terms of the Merger Agreement governing the release of the remaining Buyer Termination Fee Deposit, *i.e.,* the $10,000,000 sum.  Stated differently, the Framework Agreement expressly carved out and left fully intact the provisions of the Merger Agreement governing the release and payment of that $10,000,000 sum.

71.     Section 3 of the Framework Agreement requires that VIZIO and LeEco negotiate in good faith and use reasonable efforts to reach further or additional terms as to a commercial relationship between them in the form of a joint venture distributorship (*i.e.,* the Sales JV) to be owned 50/50 and under which, inter alia, (a) VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably competitive rates with the Sales JV, in turn, to have the exclusive right to distribute and sell VIZIO-branded devices in the People's Republic of China during the initial term, and (b) LeEco to contribute in the form of capital to the Sales JV non-cash assets with a verified fair market value equal to $50,000,000.  Section 4 of the Framework Agreement likewise requires the parties to negotiate in good faith and execute one or more agreements to, among other things, document the Sales JV within 45 days from the signing of the Framework Agreement and receipt by VIZIO of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April

ERVIN COHEN & JESSUP LLP

5, 2017, *i.e.,* May 20, 2017.

72.     Plaintiff is informed and believes, and based thereon alleges, that as a result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to negotiate additional or further terms as well as execute the joint venture agreement and to document the Sales JV, and (b) the express exception carved out in Section 1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff, with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the execution of a joint venture distribution agreement between VIZIO and LeEco and/or that any such joint venture distribution agreement was somehow a condition to the release and payment of that $10,000,000 sum, the Defendants have prevented the fulfillment of the alleged condition or performance of that term and cannot rely on same to defeat their liability thereon.

73.     Shortly after the parties executed the Framework Agreement and continuing thereafter, VIZIO made repeated efforts to communicate with and negotiate further or additional terms of the Sales JV with LeEco consistent with the Framework Agreement, including preparing and tendering a draft thereof to LeEco. Those efforts fell on deaf ears.  VIZIO's efforts were met with practical radio silence notwithstanding that the 45 day time limit imposed with regard thereto under

SECOND AMENDED COMPLAINT

Section 4 of the Framework Agreement, *i.e.,* May 20, 2017, has come and gone.

74.     From and after the execution of the Framework Agreement, the Defendants have failed and refused to participate in any substantive negotiations whatsoever under or pursuant to the Framework Agreement, let alone in good faith during the 45 day time limit or otherwise.  The Defendants have not used any efforts, let alone reasonable efforts to form any sort of commercial joint-venture distributorship agreement with VIZIO within the 45 day time limit and beyond.

75.     Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it and at the time Defendants made the promises described in Paragraph 66 of this First Amended Complaint and then executed the Framework Agreement, they had no intention to pay or cause VIZIO to be paid the $10,000,000 remaining portion of the Buyer Termination Fee Deposit under the terms of the Merger Agreement or the Framework Agreement, nor did Defendants intend to execute a joint venture distributorship agreement with VIZIO and/or fund same with a capital contribution of $50,000,000 in verified non-cash assets, let alone participate in any substantive negotiations related thereto, whether in good faith or otherwise.  Instead, Plaintiff is further informed and believes, and based thereon alleges, that Defendants knowingly and secretly intended to do none of these things at that time and merely engaged in a subterfuge to try to reduce their liability from the $100,000,000 Buyer Termination Fee to the $40,000,000 sum that was released from the CNB escrow and paid directly to VIZIO concurrently with the Framework Agreement.

76.     Plaintiff relied on the promises described in Paragraph 66 of this First Amended Complaint and the concomitant execution of the Framework Agreement to, inter alia, enter into the Framework Agreement and, among other things, ostensibly forego immediate payment of the entire Buyer Termination Fee as would otherwise have been required under the Merger Agreement.  VIZIO's reliance was reasonable since it had no means to discover either the falsity of the promises

described in paragraph 66 of this First Amended Complaint at the time that they were made nor the secret intention of Defendants not to perform as set forth in paragraph 75 of this First Amended Complaint.

77.     Plaintiff would not have entered into the Framework Agreement had it known of the falsity of the promises described in paragraph 66 of this First Amended Complaint at the time that they were made, nor the secret intention of Defendants not to perform as set forth in paragraph 75 of this First Amended Complaint.  Plaintiff is further informed and believes, and based thereon alleges, that it has suffered damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee Deposit and the $50,000,000 Buyer Termination Fee Remainder) as a direct and proximate result of the false promises alleged in paragraph 65 of this First Amended Complaint, together with the false representations and promises made by Defendants to induce VIZIO to enter into the Framework Agreement and the Defendants' failure, *inter alia*, to participate in the substantive negotiations required thereunder with respect to the Sales JV, whether in good faith or otherwise.

78.     Plaintiff is informed and believes, and based thereon alleges, that the fraudulent conduct by Defendants as described above was willful, wanton and taken with a conscious disregard of the rights of Plaintiff, and was intended to, or likely to cause injury.  Therefore, Plaintiff respectfully requests that it be granted an award of punitive and exemplary damages against the Defendants herein.

79.     Plaintiff is informed and believes, and based thereon alleges that, as an alternative to the damages remedies set forth in paragraphs 47, 64 and 77 above, it will suffer substantial harm and injury under the Framework Agreement if that agreement is not rescinded due to the fraudulent conduct of Defendants set forth in paragraphs 66-78 of this Second Amended Complaint, but only if such rescission were to be ordered with: (a) the contractual relationship of the parties being returned to where they stood under the Merger Agreement as it existed immediately before

ERVIN COHEN & JESSUP LLP

1  the execution of the Framework Agreement, and with the Buyer Termination Fee

2  provisions remaining intact and having been triggered as described in paragraphs

3  29-32 of this Second Amended Complaint; (b) the $40,000,000 portion of the Buyer

4  Termination Fee Deposit that was previously released from the CNB escrow and

5  paid directly to VIZIO being applied solely as a credit against further payment from

6  Defendants to VIZIO of the entire $100,000,000 Buyer Termination Fee otherwise

7  due to Plaintiff; (c) the $10,000,000 remaining portion of the Buyer Termination Fee

8  Deposit being ordered released from the CNB escrow, paid directly to VIZIO, and

9  applied solely as a credit against further payment from Defendants of the entire

10  $100,000,000 Buyer Termination Fee otherwise due to Plaintiff; and (d) with any

11  Order crediting or otherwise concerning the monies addressed in b) and c) of this

12  paragraph to be issued only in connection with, and as a condition of, a judgment for

13  rescission of the Framework Agreement, as authorized by Section 1693 of the

14  California Civil Code.

15          80.     As an alternative to the damages remedies set forth in paragraphs 47,

16  64 and 77, Plaintiff intends service of the summons and Second Amended

17  Complaint in this action as an alternate remedy of and as notice of the rescission of

18  the Framework Agreement due to the fraudulent conduct of Defendants set forth in

19  paragraphs 66-78 of this Second Amended Complaint, but only if such rescission

20  were to be ordered with: (a) the contractual relationship of the parties being returned

21  to where they stood under the Merger Agreement as it existed immediately before

22  the execution of the Framework Agreement, and with the Buyer Termination Fee

23  provisions remaining intact and having been triggered as described in paragraphs

24  29-32 of this Second Amended Complaint; (b) the $40,000,000 portion of the Buyer

25  Termination Fee Deposit that was previously released from the CNB escrow and

26  paid directly to VIZIO being applied solely as a credit against further payment from

27  Defendants to VIZIO of the entire $100,000,000 Buyer Termination Fee otherwise

28  due to Plaintiff; (c) the $10,000,000 remaining portion of the Buyer Termination Fee

ERVIN COHEN & JESSUP LLP

1   Deposit being ordered released from the CNB escrow, paid directly to VIZIO, and

2   applied solely as a credit against further payment from Defendants of the entire

3   $100,000,000 Buyer Termination Fee otherwise due to Plaintiff; and (d) with any

4   Order crediting or otherwise concerning the monies addressed in b) and c) of this

5   paragraph to be issued only in connection with, and as a condition of, a judgment for

6   rescission of the Framework Agreement, as authorized by Section 1693 of the

7   California Civil Code.

8   **THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

9   **(NEGLIGENT MISREPRESENTATION UNDERLYING THE**

10  **FRAMEWORK AGREEMENT)**

11       AS AND FOR A THIRD CLAIM FOR RELIEF BY VIZIO FOR

12  NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS, AND EACH

13  OF THEM, PLAINTIFF ALLEGES AS FOLLOWS:

14       81.     Plaintiff restates, realleges and incorporates paragraphs 1-33, 35-44,

15  48-54, 56- 64, 66, and 68-74 as if fully set forth herein.

16       82.     Shortly after receipt of the Termination Notice, Defendants Lele

17  Holding, Global Group and LeEco, by and through, inter alia, JIA, Hsieh, and Ren,

18  contacted VIZIO by and through Wong and/or Wang, among others, to discuss that

19  the parties mutually terminate the Merger Agreement with specified carve outs or

20  exceptions, and that going forward, VIZIO and LeEco form a joint venture

21  distributorship for operation in the People's Republic of China, a primary purpose of

22  which would be to promote, market and sell VIZIO branded devices, such as

23  televisions, displays and sound bars through LeEco's distributing/Omni channels in

24  China.  LeEco, Lele Holding and Global Group by and through, inter alia, JIA

25  and/or Hsieh, then ultimately promised Wong and/or Wang, among others, that in

26  consideration for VIZIO's agreement to, inter alia, jointly terminate the Merger

27  Agreement with LeEco subject to specified carve outs or exceptions, and forgo

28  immediate payment of the $100,000,000 Buyer Termination Fee, LeEco would (a)

ERVIN COHEN & JESSUP LLP

cause joint escrow instructions to be prepared and signed in order to release from the CNB escrow the sum of $40,000,000 which would be paid directly to VIZIO from the Buyer Termination Fee Deposit upon the signing of a Framework, Termination and Mutual General Release Agreement between or among VIZIO and LeEco; (b) cause the remaining $10,000,000 of the Buyer Termination Fee Deposit to be released from that escrow and paid directly to VIZIO upon the execution within 45 days of a joint venture distributorship agreement for the Sales JV between VIZIO and LeEco - - but that if no such joint venture distributorship agreement was so signed within that 45 day time frame - - then nevertheless have that $10,000,000 sum released from the CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit provisions of the Merger Agreement; and (c) contribute capital in the form of non-cash assets to the Sales JV with a verified fair market value of at least $50,000,000.  In other words, the Defendants were promising to pay to VIZIO an amount equal to the $100,000,000 Buyer Termination Fee, albeit the former Buyer Termination Fee Remainder in the sum of $50,000,000 would now be in the form of a capital contribution from LeEco to the Sales JV, which would also benefit VIZIO.

83.     Plaintiff is informed and believes, and based thereon alleges, that the promises described in subparts (b) and (c) of paragraph 82 of this Second Amended Complaint were false at the time they were made and that Defendants made these promises with no reasonable grounds for believing them to be true and the intent to induce VIZIO to, inter alia, terminate the Merger Agreement subject to specified exceptions or carve outs, forego immediate payment of the $100,000,000 payment of the Buyer Termination Fee and enter into a Framework, Termination and Mutual General Release Agreement with LeEco.

84.     In reliance on the false promises of JIA and/or Hsieh, Lele Holding, Global Group and LeEco described in paragraph 83 of this Second Amended Complaint, VIZIO agreed to, and did enter into the Framework Agreement with

29

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    LeEco on or about April 5, 2017.

2    85.    Although the Merger Agreement was terminated by the Termination

3    Notice with exception of, inter alia, the Buyer Termination Fee provisions, Section

4    1.1 of the Framework Agreement provides for the further joint termination of the

5    Merger Agreement subject to specified carve outs or exceptions, concurrent with the

6    release from the CNB escrow and direct payment to VIZIO of $40,000,000 from the

7    Buyer Termination Fee Deposit.

8    86.    That $40,000,000 sum was released from the CNB escrow and paid

9    directly to VIZIO concurrently with the execution of the Framework Agreement.

10   Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to

11   release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have

12   that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently

13   with the execution of the joint venture distribution agreement for the Sales JV

14   within 45 days from signature of the Framework Agreement and VIZIO's

15   concomitant receipt of the $40,000,000 portion of the Buyer Termination Fee

16   Deposit.  However, notwithstanding the foregoing, Section 1.1 of the Framework

17   Agreement specifically carves out and creates an exception for the terms of the

18   Merger Agreement governing the release of the remaining Buyer Termination Fee

19   Deposit, *i.e.,* the $10,000,000 sum.  Stated differently, the Framework Agreement

20   expressly carved out and left fully intact the provisions of the Merger Agreement

21   governing the release and payment of that $10,000,000 sum.

22   87.    Section 3 of the Framework Agreement requires that VIZIO and LeEco

23   negotiate in good faith and use reasonable efforts to reach further or additional terms

24   as to a commercial relationship between them in the form of a joint venture

25   distributorship (*i.e.,* the Sales JV) to be owned 50/50 and under which, inter alia, (a)

26   VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably

27   competitive rates with the Sales JV, in turn, to have the exclusive right to distribute

28   and sell VIZIO-branded devices in the People's Republic of China during the initial

term; and (b) LeEco to contribute in the form of capital to the Sales JV non-cash assets with a verified fair market value equal to $50,000,000.  Section 4 of the Framework Agreement likewise requires the parties to negotiate in good faith and execute one or more agreements to, among other things, document the Sales JV within 45 days from the signing of the Framework Agreement and receipt by VIZIO of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April 5, 2017, *i.e.,* May 20, 2017.

88.     Plaintiff is informed and believes, and based thereon alleges, that as a result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to negotiate additional or further terms as well as execute the joint venture agreement and to document the Sales JV, and (b) the express exception carved out in Section 1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff, with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the execution of a joint venture distribution agreement between VIZIO and LeEco and/or that any such joint venture distribution agreement was somehow a condition to the release and payment of that $10,000,000 sum, the Defendants have prevented the fulfillment of the alleged condition or performance of that term and cannot rely on same to defeat their liability thereon.

31

ERVIN COHEN & JESSUP LLP

89.     Shortly after the parties executed the Framework Agreement and continuing thereafter, VIZIO made repeated efforts to communicate with and negotiate further or additional terms of the Sales JV with LeEco consistent with the Framework Agreement, including preparing and tendering a draft thereof to LeEco. Those efforts fell on deaf ears.  VIZIO's efforts were met with practical radio silence notwithstanding that the 45 day time limit imposed with regard thereto under Section 4 of the Framework Agreement, *i.e.,* May 20, 2017, has come and gone.

90.     From and after the execution of the Framework Agreement, the Defendants have failed and refused to participate in any such substantive negotiations whatsoever under or pursuant to the Framework Agreement, let alone in good faith during the 45 day time limit or otherwise.  The Defendants have not used any efforts, let alone reasonable efforts to form any sort of commercial joint-venture distributorship agreement with VIZIO within the 45 day time limit and beyond.

91.     Plaintiff is informed and believes, and based thereon alleges, that unbeknownst to it and at the time Defendants made the promises described in Paragraph 82 of this Second Amended Complaint and then executed the Framework Agreement, they had no reasonable grounds to believe that they would pay or cause VIZIO to be paid the $10,000,000 remaining portion of the Buyer Termination Fee Deposit under the terms of the Merger Agreement or the Framework Agreement, nor did Defendants have any reasonable grounds to believe that they would execute a joint venture distributorship agreement with VIZIO and/or fund same with a capital contribution of $50,000,000 in verified non-cash assets, let alone participate in any substantive negotiations related thereto, whether in good faith or otherwise. Instead, Plaintiff is further informed and believes, and based thereon alleges, that Defendants had no reasonable grounds to believe that they would do any of these things at that time and merely engaged in a subterfuge to try to reduce their liability from the $100,000,000 Buyer Termination Fee to the $40,000,000 sum that was

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   released from the CNB escrow and paid directly to VIZIO concurrently with the

2   Framework Agreement.

3        92.    Plaintiff relied on the promises described in Paragraph 82 of this

4   Second Amended Complaint and the concomitant execution of the Framework

5   Agreement to, inter alia, enter into the Framework Agreement and, among other

6   things, ostensibly forego immediate payment of the entire Buyer Termination Fee as

7   would otherwise have been required under the Merger Agreement.  VIZIO's

8   reliance was reasonable since it had no means to discover either the falsity of the

9   promises described in paragraph 82 of this Second Amended Complaint at the time

10  that they were made nor that Defendants had no reasonable grounds to believe that

11  they would do any of these things as set forth in paragraph 91 of this Second

12  Amended Complaint.

13       93.    Plaintiff would not have entered into the Framework Agreement had it

14  known of the falsity of the promises described in paragraph 82 of this Second

15  Amended Complaint at the time that they were made, nor that Defendants had no

16  reasonable grounds to believe that they would do any of these things as set forth in

17  paragraph 91 of this Second Amended Complaint.  Plaintiff is further informed and

18  believes, and based thereon alleges, that it has suffered damages in the sum of

19  $60,000,000 (*i.e.,* the $10,000,000 remaining portion of the Buyer Termination Fee

20  Deposit and the $50,000,000 Buyer Termination Fee Remainder) as a direct and

21  proximate result of the false promises alleged in paragraph 91 of this Second

22  Amended Complaint, together with the false representations and promises made by

23  Defendants to induce VIZIO to enter into the Framework Agreement and the

24  Defendants' failure, *inter alia*, to participate in the substantive negotiations required

25  thereunder with respect to the Sales JV, whether in good faith or otherwise.

26       **FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

27       **(PROMISSORY ESTOPPEL)**

28       AS AND FOR A FOURTH CLAIM FOR RELIEF BY VIZIO FOR

SECOND AMENDED COMPLAINT

PROMISSORY ESTOPPEL AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES AS FOLLOWS:

94.     Plaintiff restates, realleges and incorporates paragraphs 1-54, 56-64, and 66-77 as if fully set forth herein.

95.     Shortly after receipt of the Termination Notice, Defendants Lele Holding, Global Group and LeEco, by and through, inter alia, JIA, Hsieh, and Ren, contacted VIZIO by and through Wong and/or Wang, among others, to discuss that the parties mutually terminate the Merger Agreement with specified carve outs or exceptions, and that going forward, VIZIO and LeEco form a joint venture distributorship for operation in the People's Republic of China, a primary purpose of which would be to promote, market and sell VIZIO branded devices, such as televisions, displays and sound bars through LeEco's distributing/Omni channels in China.  LeEco, Lele Holding, and Global Group by and through, inter alai, JIA and/or Hsieh, then ultimately promised Wong and/or Wang, among others, that in consideration for VIZIO's agreement to, inter alia, jointly terminate the Merger Agreement with LeEco subject to specified carve outs or exceptions, and forgo immediate payment of the $100,000,000 Buyer Termination Fee, LeEco would (a) cause joint escrow instructions to be prepared and signed in order to release from the CNB escrow the sum of $40,000,000 which would be paid directly to VIZIO from the Buyer Termination Fee Deposit upon the signing of a Framework, Termination and Mutual General Release Agreement between or among VIZIO and LeEco; (b) cause the remaining $10,000,000 of the Buyer Termination Fee Deposit to be released from that escrow and paid directly to VIZIO upon the execution within 45 days of a joint venture distributorship agreement for the Sales JV between VIZIO and LeEco - - but that if no such joint venture distributorship agreement was so signed within that 45 day time frame - - then nevertheless have that $10,000,000 sum released from the CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer Termination Fee Deposit provisions of the Merger Agreement;

1   and (c) contribute capital in the form of non-cash assets to the Sales JV with a

2   verified fair market value of at least $50,000,000.  In other words, the Defendants

3   were promising to pay to VIZIO an amount equal to the $100,000,000 Buyer

4   Termination Fee, albeit the former Buyer Termination Fee Remainder in the sum of

5   $50,000,000 would now be in the form of a capital contribution from LeEco to the

6   Sales JV, which would also benefit VIZIO.

7         96.    Plaintiff is informed and believes, and based thereon alleges, that the

8   promises described in subparts (b) and (c) of paragraph 95 of this Second Amended

9   Complaint were false at the time that they were made and that Defendants made

10  these promises with knowledge of their falsity and the intent to induce VIZIO to,

11  inter alia, terminate the Merger Agreement subject to specified exceptions or carve

12  outs, forego immediate payment of the $100,000,000 Buyer Termination Fee and

13  enter into a Framework, Termination and Mutual General Release Agreement with

14  LeEco.

15        97.    In reliance on the false promises of JIA and/or Hsieh, Lele Holding,

16  Global Group and LeEco described in Paragraph 95 of this Second Amended

17  Complaint, VIZIO agreed to, and did enter into the Framework Agreement with

18  LeEco on or about April 5, 2017.

19        98.    Although the Merger Agreement was terminated by the Termination

20  Notice with exception of, inter alia, the Buyer Termination Fee provisions, Section

21  1.1 of the Framework Agreement provides for the further joint termination of the

22  Merger Agreement subject to specified carve outs or exceptions, concurrent with the

23  release from the CNB escrow and direct payment to VIZIO of $40,000,000 from the

24  Buyer Termination Fee Deposit.

25        99.    That $40,000,000 sum was released from the CNB escrow and paid

26  directly to VIZIO concurrently with the execution of the Framework Agreement.

27  Under Sections 1.2.2 and 4 of the Framework Agreement, LeEco further agreed to

28  release the remaining $10,000,000 of the Buyer Termination Fee Deposit and have

ERVIN COHEN & JESSUP LLP

35

SECOND AMENDED COMPLAINT

1  that $10,000,000 sum paid directly from the CNB escrow to VIZIO concurrently

2  with the execution of the joint venture distribution agreement for the Sales JV

3  within 45 days from signature of the Framework Agreement and VIZIO's

4  concomitant receipt of the $40,000,000 portion of the Buyer Termination Fee

5  Deposit.  However, notwithstanding the foregoing, Section 1.1 of the Framework

6  Agreement specifically carves out and creates an exception for the terms of the

7  Merger Agreement governing the release of the remaining Buyer Termination Fee

8  Deposit, *i.e.,* the $10,000,000 sum.  Stated differently, the Framework Agreement

9  expressly carved out and left fully intact the provisions of the Merger Agreement

10  governing the release and payment of that $10,000,000 sum.

11      100.   Section 3 of the Framework Agreement requires that VIZIO and LeEco

12  negotiate in good faith and use reasonable efforts to reach further or additional terms

13  as to a commercial relationship between them in the form of a joint venture

14  distributorship (*i.e.,* the Sales JV) to be owned 50/50 and under which, inter alia, (a)

15  VIZIO would sell VIZIO branded televisions to the Sales JV at reasonably

16  competitive rates with the Sales JV, in turn, to have the exclusive right to distribute

17  and sell VIZIO-branded devices in the People's Republic of China during the initial

18  term; and (b) LeEco to contribute in the form of capital to the Sales JV non-cash

19  assets with a verified fair market value equal to $50,000,000.  Section 4 of the

20  Framework Agreement likewise requires the parties to negotiate in good faith and

21  execute one or more agreements to, among other things, document the Sales JV

22  within 45 days from the signing of the Framework Agreement and receipt by VIZIO

23  of the $40,000,000 portion of the Buyer Termination Fee Deposit on or about April

24  5, 2017, *i.e.,* May 20, 2017.

25      101.   Plaintiff is informed and believes, and based thereon alleges, that as a

26  result of (a) the 45 day time limit set in Section 4 of the Framework Agreement to

27  negotiate additional or further terms as well as execute the joint venture agreement

28  and to document the Sales JV, and (b) the express exception carved out in Section

1.1 of the Framework Agreement which leaves intact the provisions of the Merger Agreement governing the release from escrow and direct payment to VIZIO of the $10,000,000 remaining portion of the Buyer Termination Fee Deposit, then (c) in the event that no such joint venture agreement was formed or otherwise memorialized within that 45 day time limit through no fault of VIZIO, (d) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit would be automatically due and payable to Plaintiff, with same to be released from the CNB escrow for direct payment to VIZIO in accordance with these remaining terms of the Merger Agreement which had remained intact.  Plaintiff is further informed and believes, and based thereon alleges, that to the extent, if at all, that release of this $10,000,000 portion of the Buyer Termination Fee Deposit from escrow and payment of same directly to VIZIO was nevertheless somehow dependent upon the execution of a joint venture distribution agreement between VIZIO and LeEco and/or that any such joint venture distribution agreement was somehow a condition to the release and payment of that $10,000,000 sum, the Defendants have prevented the fulfillment of the alleged condition or performance of that term and cannot rely on same to defeat their liability thereon.

102.   Shortly after the parties executed the Framework Agreement and continuing thereafter, VIZIO made repeated efforts to communicate with and negotiate further or additional terms of the Sales JV with LeEco consistent with the Framework Agreement, including preparing and tendering a draft thereof to LeEco. Those efforts fell on deaf ears.  VIZIO's efforts were met with practical radio silence notwithstanding that the 45 day time limit imposed with regard thereto under Section 4 of the Framework Agreement, *i.e.,* May 20, 2017, has come and gone.

103.   From and after the execution of the Framework Agreement, the Defendants have failed and refused to participate in any such substantive negotiations whatsoever under or pursuant to the Framework Agreement, let alone in good faith during the 45 day time limit or otherwise.  The Defendants have not

ERVIN COHEN & JESSUP LLP

1   used any efforts, let alone reasonable efforts to form any sort of commercial joint-
2   venture distributorship agreement with VIZIO within the 45 day time limit and
3   beyond.

4       104.   Plaintiff is informed and believes, and based thereon alleges, that
5   unbeknownst to it and at the time Defendants made the promises described in
6   Paragraph 95 of this Second Amended Complaint and then executed the Framework
7   Agreement, they had no intention to pay or cause VIZIO to be paid the $10,000,000
8   remaining portion of the Buyer Termination Fee Deposit under the terms of the
9   Merger Agreement or the Framework Agreement, nor did Defendants intend to
10   execute a joint venture distributorship agreement with VIZIO and/or fund same with
11   a capital contribution of $50,000,000 in verified non-cash assets, let alone
12   participate in any substantive negotiations related thereto, whether in good faith or
13   otherwise.  Instead, Plaintiff is further informed and believes, and based thereon
14   alleges, that Defendants knowingly and secretly intended to do none of these things
15   at that time and merely engaged in a subterfuge to try to reduce their liability from
16   the $100,000,000 Buyer Termination Fee to the $40,000,000 sum that was released
17   from the CNB escrow and paid directly to VIZIO concurrently with the Framework
18   Agreement.

19       105.   Plaintiff relied on the promises described in Paragraph 95 of this
20   Second Amended Complaint and the concomitant execution of the Framework
21   Agreement to, inter alia, enter into the Framework Agreement and, among other
22   things, ostensibly forego immediate payment of the entire Buyer Termination Fee as
23   would otherwise have been required under the Merger Agreement.  VIZIO's
24   reliance was reasonable since it had no means to discover either the falsity of the
25   promises described in paragraph 95 of this Second Amended Complaint at the time
26   that they were made nor the secret intention of Defendants not to perform as set
27   forth in paragraph 104 of this First Amended Complaint.

28       106.   Plaintiff would not have entered into the Framework Agreement had it

ERVIN COHEN & JESSUP LLP

38

SECOND AMENDED COMPLAINT

1   known of the falsity of the promises described in paragraph 95 of this Second

2   Amended Complaint at the time that they were made, nor the secret intention of

3   Defendants not to perform as set forth in paragraph 104 of this Second Amended

4   Complaint.  Plaintiff is further informed and believes, and based thereon alleges,

5   that it has suffered damages in the sum of $60,000,000 (*i.e.,* the $10,000,000

6   remaining portion of the Buyer Termination Fee Deposit and the $50,000,000 Buyer

7   Termination Fee Remainder) as a direct and proximate result of the false promises

8   alleged in paragraph 95 of this Second Amended Complaint, together with the false

9   representations and promises made by Defendants to induce VIZIO to enter into the

10   Framework Agreement and the Defendants' failure, *inter alia*, to participate in the

11   substantive negotiations required thereunder with respect to the Sales JV, whether in

12   good faith or otherwise.

13   **FIFTH CLAIM FOR RELIEF AGAINST LeECO AND DOES 1-10**

14   **(BREACH OF THE MERGER AGREEMENT)**

15   IN THE ALTERNATIVE, AS AND FOR A SIXTH CLAIM FOR RELIEF

16   FOR BREACH OF WRITTEN CONTRACT BY VIZIO AGAINST LeECO, DOE

17   DEFENDANTS 1-10, AND EACH OF THEM, PLAINTIFF ALLEGES AS

18   FOLLOWS:

19   107.   As an alternative theory of recovery and subject to the entry of a

20   judgment for rescission based on fraud as alternately set forth as a remedy in the

21   Second Claim for Relief, Plaintiff restates, realleges and incorporates paragraphs 1-

22   54, as if fully set forth herein.

23   108.   On or about July 6, 2016, VIZIO and LeEco entered into the Merger

24   Agreement.

25   109.   Plaintiff has performed each of the obligations required under the

26   Merger Agreement, except for those obligations for which it was excused from

27   performing or which have otherwise been waived due to LeEco's breach of same.

28   110.   Plaintiff is informed and believes, and based thereon alleges, that

ERVIN COHEN & JESSUP LLP

LeEco breached the Merger Agreement.  These breaches are tied to specific terms of the Merger Agreement and include, inter alia:

a.      The failure of LeEco to use its reasonable best efforts "to consummate and make effective, in the most expeditious manner practicable, the Merger" as required by Section 5.3 of the Merger Agreement.

b.      The failure of Le Eco to use its reasonable best efforts to satisfy "on a timely basis all conditions precedent to funding under the Equity Concomitant Letters…and in any Debt Financing Document," and to then "promptly notify [VIZIO] of such Financing Failure Event and…, the reasons therefore," coupled with its failure to "use…reasonable best efforts to obtain alternative financing…as promptly as practicable following the occurrence of such event" as required by Section 5.8 of the Merger Agreement.

c.      The commitment failure of Le Eco to give Plaintiff "prompt notice of any breach, repudiation or threatened breach or repudiation by any party to the Equity Commitment Letters or any Debt Financing Documents" and to "provide [VIZIO] with a copy of, a new financing commitment" as required by Section 5.8 of the Merger Agreement.

d.      Acts taken by LeEco and/or its Affiliates "to amend, modify, supplement, restate, assign, substitute or replace any of the Equity Commitment Letters or any Debt Financing Document…without the consent of [VIZIO], particularly since such amendments, modifications, supplements, restatements, assignments, substitutions, replacements or waivers…resulted in a net reduction in the aggregate amount of the Financing…[or], imposed "new conditions on funding"…[and/or] expanded, amended, or modified any provision of the Equity Commitment Letters, in a manner that would be reasonably expected to…materially delay or prevent the funding in full of the Financing" contrary to Section 5.8 of the Merger Agreement.

e.      The failure of LeEco to "promptly prepare, file, effect and obtain as soon as reasonably practicable all Consents necessary to obtain from any person including from any Governmental Entity in order to consummate the Merger" and its concomitant failure to "prepare and file all filings required to obtain the PRC Overseas Investment Approvals as promptly as practicable" as required by Section 5.4(a) of the Merger Agreement.

f.      The failure of LeEco to (i) "promptly inform [VIZIO] of any material communication from…any…Governmental Entity", (ii) give VIZIO "reasonable advanced notice of all meetings or planned communications with any Governmental Entity", (iii) give VIZIO an opportunity to participate in each of such meetings or communications, (iv) keep VIZIO promptly apprised with respect to any material oral communications with any Governmental Entity, (v) provide VIZIO with a reasonable advance opportunity to review and comment upon…all material written communications…and planned oral communication with a Governmental Entity regarding the Merger and (vi) provide VIZIO with copies of "all written communications to or

ERVIN COHEN & JESSUP LLP

40

SECOND AMENDED COMPLAINT

from any Governmental Entity relating to the Merger" as required by Section 5.4(d) of the Merger Agreement.

111.   Subsequent to LeEco's breaches of the Merger Agreement as set forth above, and on or about March 30, 2017, Plaintiff served a written Termination of Merger Agreement (the "Termination Notice") on LeEco, among others, through LeEco Global Group Ltd., as required by Section 11.6 of the Merger Agreement, which triggered the Buyer Termination Fee provisions of the Merger Agreement. The Termination Notice described each such breach in detail.

112.   Plaintiff is informed and believes, and based thereon alleges, that as a further and separate breach of the Merger Agreement, LeEco was not in position to be able to close or consummate the merger by the mutually agreed extended date of April 6, 2017 due to its failure to have sufficient cash on hand, together with committed financing, as required by the Merger Agreement.  This additional and further breach of the Merger Agreement was also included in the Termination Notice and is likewise described in detail therein.

113.   Plaintiff is informed and believes, and based thereon alleges, that none of the breaches of the Merger Agreement by LeEco were cured.  Plaintiff is further informed and believes, and based thereon alleges, that in any event, such breaches were not capable of being cured by LeEco.  Accordingly, the merger was not consummated.

114.   Plaintiff is informed and believes, and based thereon alleges, that LeEco has also breached the implied covenant of good faith and fair dealing which is implied in all contracts, in the acts taken which have deprived Plaintiff of the fruits and benefits of the contract.

115.   As a direct and proximate result of LeEco's breaches of the Merger Agreement, Plaintiff has been damaged in the amount of the $100,000,000 Buyer Termination Fee, but with the $40,000,000 portion of the Buyer Termination Fee Deposit that has already been released from the CNB escrow and paid directly to

ERVIN COHEN & JESSUP LLP

1  VIZIO, to be applied solely as a credit against the entire amount of the Buyer

2  Termination Fee that is otherwise due and owing.

3      WHEREFORE, Plaintiff prays for judgment as follows:

4      **FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

5      (1)    For damages to be proven at time of trial, but believed to be in the sum

6  of $60,000,000 with lawful interest thereon;

7      (2)    Reasonable attorneys' fees and costs;

8      **SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

9      (3)    For damages to be proven at time of trial, but believed to be in the sum

10  of $60,000,000 with lawful interest thereon;

11      (4)    For punitive and exemplary damages thereon;

12      (5)    As an alternative to the judgment for damages remedy in subpart (3),

13  above, then for, the entry of a judgment for rescission of the Framework Agreement

14  due to the fraudulent conduct of Defendants set forth in paragraphs 66-78 of this

15  Second Amended Complaint, but only if such rescission were to be ordered with: (a)

16  the contractual relationship of the parties being returned to where they stood under

17  the Merger Agreement as it existed immediately before the execution of the

18  Framework Agreement, and with the Buyer Termination Fee provisions remaining

19  intact and having been triggered as described in paragraphs 29-32 of this Second

20  Amended Complaint; (b) the $40,000,000 portion of the Buyer Termination Fee

21  Deposit that was previously released from the CNB escrow and paid directly to

22  VIZIO being applied solely as a credit against further payment from Defendants to

23  VIZIO of the entire $100,000,000 Buyer Termination Fee otherwise due to Plaintiff;

24  (c) the $10,000,000 remaining portion of the Buyer Termination Fee Deposit being

25  ordered released from the CNB escrow, paid directly to VIZIO, and applied solely

26  as a credit against further payment from Defendants of the entire $100,000,000

27  Buyer Termination Fee otherwise due to Plaintiff; and (d) with any Order crediting

28  or otherwise concerning the monies addressed in b) and c) of this paragraph to be

issued only in connection with, and as a condition of, a judgment for rescission of the Framework Agreement, as authorized by Section 1693 of the California Civil Code;

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

(6)     For damages to be proven at time of trial, but believed to be the sum of $60,000,000 with lawful interest thereon;

### FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

(7)     For damages to be proven at time of trial, but believed to be in the sum of $60,000,000 with lawful interest and reasonable attorneys' fees and costs;

### FIFTH CLAIM FOR RELIEF AGAINST LeECO

(8)     Subject to the entry of an alternate judgment for rescission of the Framework Agreement based on fraud and as specifically prayed as an alternative remedy in the Second Claim for Relief, then for damages to be proven at time of trial, but believed to be in the sum of $60,000,000 with lawful interest thereon.

### ON ALL CLAIMS FOR RELIEF

(9)     For costs of suit; and

(10)    For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

DATED:  August 10, 2018           ERVIN COHEN & JESSUP LLP
                                  Robert M. Waxman
                                  David N. Tarlow
                                  Jason L. Haas


                                  By: /s/ Robert M. Waxman
                                  Robert M. Waxman
                                  Attorneys for Plaintiff VIZIO, INC., a
                                  California corporation

ERVIN COHEN & JESSUP LLP