Jeff K. Joyner (SBN CA 180485)
joynerj@gtlaw.com
Daniel Tyukody (SBN CA 123323)
tyukodyd@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 9 0067-2121
Telephone:  310.586.7700
Facsimile:    310.586.7800

Attorneys for Defendant,
LeECO V. LTD., LELE HOLDING and YUETING JIA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendants. | CASE NO.  8:17-CV-01175-DOC-JDE<br><br>**DEFENDANT LELE HOLDING'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIM**<br><br>JUDGE:  Hon. David O. Carter<br>Ctrm:  9D<br>Date Filed:  November 6, 2017 |
| LeECO V. LTD., LELE HOLDING, LTD., YUETING JIA,<br><br>Counter-Claimants,<br><br>vs.<br><br>VIZIO, a California corporation,<br><br>Counter-Defendant. | |

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

Defendant Lele Holding, Ltd., ("Defendant") by its attorneys of record, responds to the allegations of the Second Amended Complaint ("SAC") filed in this action, dated August 10, 2018 as follows:

1.  Defendant is without sufficient information to admit or deny the allegations in Paragraph 1 of the SAC.

2.  Defendant admits the allegations in Paragraph 2 of the SAC.

3.  Defendant admits that at all relevant times as alleged in the SAC, Global Group, with an office located in Chaoyang District, Beijing, P.R. China, is a parent company of LeEco, and otherwise denies the allegations of Paragraph 3 of the SAC.

4.  Defendant admits that at all relevant times as alleged in the SAC, Mr. Jia owned LeLe Holding, a British Virgin Island holding company with an office located in Chaoyang District, Beijing, P.R., which is the ultimate parent company of LeEco V Ltd., and otherwise denies the allegations of Paragraph 4 of the SAC.

5.  Defendant admits that Jia is a citizen of the People's Republic of China and, at all relevant times as alleged in the SAC, he owned LeLe Holding, and he was Global Group's Director, and otherwise denies the allegations of Paragraph 5 of the Complaint.

6.  Defendant is without sufficient information to admit or deny the allegations in Paragraph 6 of the SAC.

7.  Defendant is without sufficient information to admit or deny the allegations in Paragraph 7 of the SAC.

8.  Defendant denies the allegations in Paragraph 8 of the SAC.

9.  Defendant admits this Court has jurisdiction over this action due to a diversity of citizenship but denies the allegation in Paragraph 9 of the SAC that Global Group is a corporation organized and existing under the laws of the People's Republic of China.

10.  Defendant admits the allegations in Paragraph 10 of the SAC.

11.  Defendant denies that it was involved in any negotiations with Vizio, or that Jia represented he was negotiating on behalf of anyone other than Global Group and

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

LeEco V. Defendant admits that during the time period referenced negotiations occurred and otherwise denies the allegations of Paragraph 11 of the SAC.

12.    Defendant admits that LeEco made representations including in Section 4.10 of the Merger Agreement regarding "Financing" which speaks for itself, and Defendant otherwise denies the allegations of Paragraph 12 of the SAC.

13.    Defendant denies the allegations in Paragraph 13 of the SAC.

14.    Defendant denies the allegations in Paragraph 14 of the SAC.

15.    Defendant denies the allegations in Paragraph 15 of the SAC.

16.    Defendant admits the allegations in Paragraph 16 of the SAC.

17.    Defendant denies the allegations in Paragraph 17 of the SAC.

18.    Defendant admits that Section 11.7 of the Merger Agreement speaks for itself and otherwise denies the allegations of Paragraph 18 of the SAC.

19.    Defendant admits that Section 11.8 of the Merger Agreement speaks for itself and otherwise denies the allegations of Paragraph 19 of the SAC.

20.    Defendant admits that Section 9.2 of the Merger Agreement speaks for itself and otherwise denies the allegations of Paragraph 20 of the SAC.

21.    Defendant admits that Section 10.2 of the Merger Agreement speaks for itself and otherwise denies the allegations of Paragraph 21 of the SAC.

22.    Defendant admits that the amount of fifty million dollars ($50,000,000.00) was deposited into escrow on or about the signing of the Merger Agreement. As to the remaining allegations, Section 10.2 of the Merger Agreement speaks for itself and Defendant otherwise denies the allegations of Paragraph 22 of the SAC.

23.    Defendant admits that Section 10.2 of the Merger Agreement speaks for itself and otherwise denies the allegations of Paragraph 23 of the SAC.

24.    Defendant denies the allegations in Paragraph 24 of the SAC.

25.    Defendant admits the allegations in Paragraph 25 of the SAC.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

26.     Defendant admits that Sections 10.2 of the Merger Agreement, and Sections 4(a)(iii) and 4(a)(iv) of the Escrow Agreement speak for themselves and otherwise denies the allegations of Paragraph 26 of the SAC.

27.     Defendant admits that Section 5 of the Escrow Agreement speaks for itself and otherwise denies the allegations of Paragraph 27 of the SAC.

28.     Defendant admits the allegations in Paragraph 28 of the SAC.

29.     Defendant denies the allegations in Paragraph 29 of the SAC.

30.     Defendant admits that the referenced communication was received and speaks for itself and denies the remaining allegations in Paragraph 30 of the SAC.

31.     Defendant admits that the referenced communication was received and speaks for itself and denies the remaining allegations in Paragraph 31 of the SAC.

32.     Defendant admits that the merger was not consummated but denies the remaining allegations in Paragraph 32 of the SAC.

33.     Defendant admits that following the Termination Notice, settlement discussions occurred, which ultimately resulted in the Framework, Termination and Mutual Release Agreement ("Framework Agreement"), which speaks for itself, and otherwise denies the remaining allegations in Paragraph 33 of the SAC, including but not limited to, denying that LeLe participated in any of these settlement discussions and that anyone participating in the discussions was acting in any capacity on behalf of LeLe.

34.     Defendant denies the allegations in Paragraph 34 of the SAC.

35.     Defendant admits that LeEco, Merger Sub and Vizio entered into the Framework Agreement as of April 5, 2017, but denies the remaining allegations in Paragraph 35 of the SAC.

36.     Defendant admits that Section 1.1 of the Framework Agreement speaks for itself and otherwise denies the allegations of Paragraph 36 of the SAC.

37.     Defendant admits that the $40,000,000 sum was released from escrow and paid directly to Vizio concurrently with the execution of and pursuant to the terms of the

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

Framework Agreement, and denies the remaining allegations in Paragraph 37 of the SAC.

38.    Defendant admits that Sections 3 and 4 of the Framework Agreement speak for themselves and otherwise denies the allegations of Paragraph 38 of the SAC.

39.    Defendant denies the allegations in Paragraph 39 of the SAC.

40.    Defendant admits that Section 9.4 of the Framework Agreement speaks for itself and otherwise denies the allegations of Paragraph 40 of the SAC.

41.    Defendant admits that Section 9.6 of the Framework Agreement speaks for itself and otherwise denies the allegations of Paragraph 41 of the SAC.

42.    Defendant admits that Sections 7.9 and 9.8 of the Framework Agreement speak for themselves and otherwise denies the allegations of Paragraph 42 of the SAC.

43.    Defendant admits that Vizio sent what is characterized as a draft of the China JV to LeEco and otherwise denies the allegations in Paragraph 43 of the SAC.

44.    Defendant denies the allegations in Paragraph 44 of the SAC.

45.    Defendant denies the allegations in Paragraph 45 of the SAC.

46.    Defendant denies the allegations in Paragraph 46 of the SAC.

47.    Defendant denies the allegations in Paragraph 47 of the SAC.

48.    Defendant admits that on June 9, 2017, Plaintiff sent a demand for payment ("the June 9 Payment Demand"). Defendant denies the remainder of the allegations in Paragraph 48 of the SAC.

49.    Defendant admits that the June 9 Payment Demand stated that "since the terms of the Buyer Termination Fee Deposit remain in effect and in any event LeEco has prevented performance, the remaining $10,000,000 Buyer Termination Fee Deposit must be released from escrow and paid to VIZIO forthwith," and enclosed Joint Written Instructions to be signed and returned by LeEco. Defendant denies the legal conclusions incorporated therein. Defendant denies the remainder of the allegations in Paragraph 49 of the SAC.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

50.     Defendant admits that the June 9 Payment Demand made certain demands that speak for themselves, and otherwise denies the allegations in Paragraph 50 of the SAC.

51.     Defendant admits that Vizio sent the referenced June 11, 2017 "Instructions" to Citibank, which speaks for itself. Defendant further admits that the referenced funds remain in escrow. Defendant is without sufficient information to admit or deny the remaining allegations in Paragraph 51 of the SAC.

52.     Defendant admits that Global Group informed the escrow agent that the parties had a dispute and that it did not agree that the $10 million should be released, and otherwise denies remaining allegations in Paragraph 52 of the SAC, including the characterization of such conduct as wrongful.

53.     Defendant admits that the referenced June 23, 2017 letter speaks for itself, and otherwise denies the allegations of Paragraph 53 of the SAC.

54.     Defendant admits that Section 8 of the Framework Agreement speaks for itself, and otherwise denies the allegations of Paragraph 54 of the SAC.

55.     In response to Paragraph 55, Defendant adopts, realleges, and incorporates by reference its responses to the allegations in Paragraphs 1-54 of the SAC.

56.     Defendant denies the allegations in Paragraph 56 of the SAC.

57.     Defendant denies the allegations in Paragraph 57 of the SAC.

58.     Defendant admits the allegations in Paragraph 58 of the SAC.

59.     Defendant denies the allegations in Paragraph 59 of the SAC.

60.     Defendant denies the allegations in Paragraph 60 of the SAC.

61.     Defendant denies the allegations in Paragraph 61 of the SAC.

62.     Defendant denies the allegations in Paragraph 62 of the SAC.

63.     Defendant denies the allegations in Paragraph 63 of the SAC.

64.     Defendant denies the allegations in Paragraph 64 of the SAC.

65.     In response to Paragraph 65, Defendant adopts, realleges, and incorporates by reference its responses to the allegations in Paragraphs 1-54, and 56-64 of the SAC.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

66.     Defendant admits that following the Termination Notice, settlement discussions occurred, which ultimately resulted in the Framework Agreement, which speaks for itself, and otherwise denies the remaining allegations in Paragraph 66 of the SAC, including but not limited to, denying that LeLe participated in any of these settlement discussions and that anyone participating in the discussions was acting in any capacity on behalf of LeLe.

67.     Defendant denies the allegations in Paragraph 67 of the SAC.

68.     Defendant admits that LeEco, Merger Sub and Vizio entered into the Framework Agreement as of April 5, 2017, but denies the remaining allegations in Paragraph 68 of the SAC.

69.     Defendant admits that Section 1.1 of the Framework Agreement speaks for itself and otherwise denies the allegations of Paragraph 69 of the SAC.

70.     Defendant admits that the $40,000,000 sum was released from escrow and paid directly to Vizio concurrently with the execution of the Framework Agreement, and denies the remaining allegations in Paragraph 70 of the SAC.

71.     Defendant admits that Sections 3 and 4 of the Framework Agreement speak for themselves and otherwise denies the allegations of Paragraph 71 of the SAC.

72.     Defendant denies the allegations in Paragraph 72 of the SAC.

73.     Defendant admits that Vizio sent what is characterized as a draft of the China JV to LeEco and otherwise denies the allegations in Paragraph 73 of the SAC.

74.     Defendant denies the allegations in Paragraph 74 of the SAC.

75.     Defendant denies the allegations in Paragraph 75 of the SAC.

76.     Defendant denies the allegations in Paragraph 76 of the SAC.

77.     Defendant denies the allegations in Paragraph 77 of the SAC.

78.     Defendant denies the allegations in Paragraph 78 of the SAC.

79.     Defendant denies the allegations in Paragraph 79 of the SAC.

80.     Defendant lacks sufficient knowledge to ascertain Plaintiff's purported intention and otherwise denies the allegations in Paragraph 80 of the SAC.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

81.     In response to Paragraph 81, Defendant adopts, realleges, and incorporates by reference its responses to the allegations in Paragraphs 1-33, 35-44, 48-54, 56-64, 66, and 68-74 of the SAC.

82.     Defendant admits that following the Termination Notice, settlement discussions occurred, which ultimately resulted in the Framework Agreement, which speaks for itself, and otherwise denies the remaining allegations in Paragraph 82 of the SAC, including but not limited to, denying that LeLe participated in any of these settlement discussions and that anyone participating in the discussions was acting in any capacity on behalf of LeLe.

83.     Defendant denies the allegations in Paragraph 83 of the SAC.

84.     Defendant admits that LeEco, Merger Sub and Vizio entered into the Framework Agreement as of April 5, 2017, but denies the remaining allegations in Paragraph 84 of the SAC.

85.     Defendant admits that Section 1.1 of the Framework Agreement speaks for itself and otherwise denies the allegations of Paragraph 85 of the SAC.

86.     Defendant admits that the $40,000,000 sum was released from escrow and paid directly to Vizio concurrently with the execution of the Framework Agreement, and denies the remaining allegations in Paragraph 86 of the SAC.

87.     Defendant admits that Sections 3 and 4 of the Framework Agreement speak for themselves and otherwise denies the allegations of Paragraph 87 of the SAC.

88.     Defendant denies the allegations in Paragraph 88 of the SAC.

89.     Defendant admits that Vizio sent what is characterized as a draft of the China JV to LeEco and otherwise denies the allegations in Paragraph 89 of the SAC.

90.     Defendant denies the allegations in Paragraph 90 of the SAC.

91.     Defendant denies the allegations in Paragraph 91 of the SAC.

92.     Defendant denies the allegations in Paragraph 92 of the SAC.

93.     Defendant denies the allegations in Paragraph 93 of the SAC.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

94.     In response to Paragraph 94, Defendant adopts, realleges, and incorporates by reference its responses to the allegations in Paragraphs 1-54, 56-64, and 66-77 of the SAC.

95.     Defendant admits that following the Termination Notice, settlement discussions occurred, which ultimately resulted in the Framework Agreement, which speaks for itself, and otherwise denies the remaining allegations in Paragraph 95 of the SAC, including but not limited to, denying that LeLe participated in any of these settlement discussions and that anyone participating in the discussions was acting in any capacity on behalf of LeLe.

96.     Defendant denies the allegations in Paragraph 96 of the SAC.

97.     Defendant admits that LeEco, Merger Sub and Vizio entered into the Framework Agreement as of April 5, 2017, but denies the remaining allegations in Paragraph 97 of the SAC.

98.     Defendant admits that Section 1.1 of the Framework Agreement speaks for itself and otherwise denies the allegations of Paragraph 98 of the SAC.

99.     Defendant admits that the $40,000,000 sum was released from escrow and paid directly to Vizio concurrently with the execution of the Framework Agreement, and denies the remaining allegations in Paragraph 99 of the SAC.

100.    Defendant admits that Sections 3 and 4 of the Framework Agreement speak for themselves and otherwise denies the allegations of Paragraph 100 of the SAC.

101.    Defendant denies the allegations in Paragraph 101 of the SAC.

102.    Defendant admits that Vizio sent what is characterized as a draft of the China JV to LeEco and otherwise denies the allegations in Paragraph 102 of the SAC.

103.    Defendant denies the allegations in Paragraph 103 of the SAC.

104.    Defendant denies the allegations in Paragraph 104 of the SAC.

105.    Defendant denies the allegations in Paragraph 105 of the SAC.

106.    Defendant denies the allegations in Paragraph 106 of the SAC.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

107.   The allegations in Paragraph 107 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

108.   The allegations in Paragraph 108 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

109.   The allegations in Paragraph 109 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

110.   The allegations in Paragraph 110 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

111.   The allegations in Paragraph 111 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

112.   The allegations in Paragraph 112 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

113.   The allegations in Paragraph 113 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

114.   The allegations in Paragraph 114 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

115.   The allegations in Paragraph 115 of the SAC are not alleged against Defendant.   Therefore, Defendant neither admits or denies the allegations.

Prayer for Relief.   Defendant denies that Plaintiff is entitled to the relief requested in its SAC or to any other relief whatsoever.

## DEFENDANT'S AFFIRMATIVE DEFENSES

Without waiving or excusing the burden of proof of Plaintiff, or admitting that Defendant has any burden of proof, Defendant asserts the following affirmative and other defenses. Defendant reserves the right to amend its Answer and to assert additional or different affirmative defenses based upon information or evidence developed in discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

9

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

Plaintiff's SAC and any purported claims for relief therein fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Laches Consent and/or Ratification)

Some or all of the claims asserted in the Second Amended Complaint are barred under the doctrines of waiver, estoppel, laches consent and/or ratification.

## THIRD AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Plaintiff has failed to mitigate any alleged damages.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's SAC and any claims therein are barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Excuse)

Defendant's performance was excused in whole or in part due to Plaintiff's failure to perform its contractual obligations.

## SIXTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

Some or all of the claims asserted in the SAC are barred by the doctrine of unjust enrichment.

## SEVENTH AFFIRMATIVE DEFENSE

### (Justification)

Some or all of the claims asserted in the SAC are barred because Defendant's conduct was justified.

## EIGHTH AFFIRMATIVE DEFENSE

### (Material Breach)

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

Some or all of the claims asserted in the SAC are barred because Plaintiff has materially breached its obligations under the contract, whether written or oral, express or implied.

## NINTH AFFIRMATIVE DEFENSE

### (No Breach of Duty)

Some or all of the claims asserted in the SAC are barred because in all of its dealings with Plaintiff under the contract, whether written or oral, express or implied, Defendant has fully complied with and fully performed all of its contractual, legal and other obligations owed to Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

### (Prior Breach)

Some or all of the claims asserted in the SAC are barred by Plaintiff's prior breach.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Set Off)

To the extent Plaintiff may be seeking an award of damages based upon the SAC, the supposed damages incurred by Plaintiff, if any, must be set off against and reduced by, any and all amounts of damage attributable to Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

### (Settlement, Accord and Satisfaction)

Plaintiff's claims are barred, in whole or in part, by the settlement or accord and satisfaction of claims.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Good Faith)

Defendant acted reasonably and in good faith in all actions related to the issues raised in the SAC.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

Any or all alleged damages sought in the SAC were not proximately or otherwise caused by any action of Defendant.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Perform)

Some or all of the claims asserted in the SAC are barred because Plaintiff never performed its contractual obligations.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Intervening Cause)

Plaintiff's claims are barred, in whole or in part, because any alleged damages were not cause by Defendant, but, instead, by intervening and superseding causes or circumstances.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Acts of Others)

Plaintiff's claims are barred, in whole or in part, because any alleged damages were caused by the acts or omissions of third parties for which Defendants are not responsible.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (No Punitive Damages)

The prayer in the SAC for an award of punitive damages is barred in whole or in part by the Eighth and Fourteenth Amendment to the United States Constitution, as punitive damages constitute excessive fines.  An award of punitive damages would be grossly excessive in relation to a legitimate interest in punishment and deterrence, if any, and would not comport with the constitutional requirements set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and its progeny including *State Farm Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).  Furthermore, an award of punitive damages requires clear and convincing evidence of fraud, oppression or malice, which showing cannot be made by Plaintiff against Defendant, and therefore, no basis for an award of punitive damages exists.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

## NINETEENTH AFFIRMATIVE DEFENSE

### (Fault of Plaintiff)

Plaintiff cannot recover against Defendant on any of the claims alleged in the Second Amended Complaint because its own actions or inactions were the sole, proximate, and legal cause of any injuries or damage they allegedly suffered.

## TWENTIETH AFFIRMATIVE DEFENSE

### (No Reliance)

Plaintiff's claims are barred in whole or in part because Plaintiff did not actually, reasonably, or justifiably rely to its detriment on any purported representations by Defendant.

## TWENTY- FIRST AFFIRMATIVE DEFENSE

### (Bad Faith)

Plaintiff's claims are barred in whole or in part by its own bad faith conduct.

## TWENTY- SECOND AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiff cannot recover against Defendant on any of the claims alleged in the Second Amended Complaint because it is barred by the equitable doctrine of estoppel.

## TWENTY- THIRD AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiff is barred from seeking equitable relief because Plaintiff now has, and at all times alleged in the Second Amended Complaint has had, an adequate remedy at law.

## TWENTY- FOURTH AFFIRMATIVE DEFENSE

### (Not a Proper Party)

Plaintiff cannot recover against Defendant because it is not a proper party. Pursuant to the Limited Guarantee, which was integral to the Merger Agreement, Vizio agreed not to pursue LeLe, Yueting Jia ("Mr. Jia"), LeEco Global Group Ltd. ("Global Group"), and numerous other "Affiliates" for the $50,000,000 Buyer Termination Fee Remainder.  The aforesaid are defined as Non-Recourse Parties under Section 13 of the

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

Limited Guarantee, pursuant to which Vizio obligated itself that "[n]otwithstanding anything that may be expressed or implied in this Guarantee *or any document or instrument delivered concurrently herewith* [*i.e.*, the Merger Agreement], by its acceptance of the benefits of this Guarantee, the Company acknowledges and agrees that it has no right of recovery against [a broad range of Non-Recourse Parties, including "Affiliates"] *through the Buyer or otherwise*, whether *by or through attempted piercing of the corporate veil.*"   The Limited Guarantee continues, "[t]he Company . . . acknowledges and agrees that recourse against the Guarantor . . . shall be the sole and exclusive remedy of the Company . . . against the Guarantor *and the Non-Recourse Parties* in respect of *any liabilities* or obligations arising under, *or in connection with*, the *Merger Agreement* … including by *piercing of the corporate veil by or through a claim by or on behalf of the Buyer.*"

## TWENTY- FIFTH AFFIRMATIVE DEFENSE

(Impossibility of Performance)

Plaintiff is prevented from pursuing a breach of the Agreement by virtue of the doctrine of impossibility of performance.

## TWENTY- SIXTH AFFIRMATIVE DEFENSE

(Frustration of Purpose)

Plaintiff is prevented from pursuing a breach of the Agreement by virtue of the doctrine of frustration of purpose.

## ADDITIONAL DEFENSES

Some or all of the claims asserted in the SAC are not asserted with sufficient clarity to enable Defendant to determine what additional defenses may exist to Plaintiff's claims.   Defendant, therefore, reserves the right to assert all other defenses that may pertain to the claims asserted in the SAC.

**WHEREFORE**, Defendant, prays that judgment be entered as follows:

1.   That Plaintiff take nothing by reason of its Second Amended Complaint; and

2.   That the Second Amended Complaint be Dismissed with Prejudice; and

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

3.      For attorney's fees and costs incurred herein; and

4.      For such other and further relief as the Court deems just and proper.

Dated:  August 24, 2018                    GREENBERG TRAURIG LLP


                                By:     /s/ Jeffrey Joyner
                                        Jeffrey Joyner
                                        Daniel Tyukody
                                        Attorneys for Defendants and Counter-Claimants,
                                        LeECO V. LTD., LELE HOLDING and
                                        YUETING JIA

## COUNTERCLAIM

Defendant and Counterclaimant Yueting Jia, an individual who is a citizen of the People's Republic of China ("Mr. Jia") (Defendant and Counterclaimant LeLe Holding Ltd., a British Virgin Islands company ("LeLe") filed the same counterclaim separately) (Jia and LeLe are collectively, "Counterclaimants") brings this Counterclaim against Plaintiff Vizio, Inc., a California corporation ("Vizio"), for damages for breach of contract, promissory estoppel, and declaratory relief, to enforce Vizio's agreement pursuant to the Limited Guarantee (as defined below), to not pursue the very alter ego allegations alleged against LeLe and Mr. Jia in this Action.

## PARTIES

1.      Counter-Claimant LeLe Holding Ltd. ("LeLe"), is a British Virgin Islands company.

2.      Counter-Claimant Yueting Jia ("Jia") is an individual who is a citizen of the People's Republic of China.

3.      Vizio is a California Corporation with its principal place of business in Irvine, California.

## JURISDICTION AND VENUE

4.      Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. Section 1332(a)(2) between a foreign corporation and a California corporation where the amount in controversy exceeds $75,000 exclusive of interest and costs.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

5.      Venue is proper based upon 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to this Counterclaim is based upon Counter-defendant's conduct occurring in this District, and under 28 U.S.C. Section 1391(b)(1) because Counter-defendant resided in this judicial district.

## **FACTUAL ALLEGATIONS**

6.      On or around July 6, 2016, Vizio (identified as the "Company" in the Merger Agreement), LeEco V. Ltd., an exempted company with limited liability under the laws of the Cayman Islands ("LeEco" or "Buyer"), Le V. Merger Sub, Inc., ("Merger Sub"), a California corporation, and Shareholder Representative Services LLC, a Colorado limited liability company (identified in the Merger Agreement as the "Shareholder Representative"), entered into the Agreement and Plan of Merger, dated as of July 6, 2016 ("Merger Agreement").[1]  LeEco and Vizio are hereinafter referenced to as the "Parties" to the Merger Agreement.  The Merger Agreement, excluding exhibits that are not relevant to the claims alleged herein, is attached as Exhibit "A" hereto.

7.      In connection with the Merger Agreement, as of July 6, 2016, Le Technology, Inc. (Le Tech" or "Guarantor") entered into the Limited Guarantee ("Guarantee").

8.      Counterclaimants are intended third-party beneficiaries of the "Limited Guarantee" attached hereto as Exhibit "B."

9.      The Limited Guarantee was an integral part of Merger Agreement and, among other things, is a specifically agreed to allocation of the risk under the Guarantee should the obligations thereunder be triggered pursuant to the terms of the Merger Agreement and the Limited Guarantee.

10.      The Merger Agreement contemplated LeEco acquiring Vizio for approximately $2 billion.  It included representations and warranties of the Parties and

---

[1] Citations to the Merger Agreement are designated as "MA § _____."  Capitalized terms not defined herein have their same meaning as in the referenced agreements to which they apply and all emphasis throughout the Counterclaims has been added.

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM
LA 133786700v5

certain conditions to the completion of the merger, as well as certain penalties if the representations, warranties and/or conditions were either incorrect or went unsatisfied. Each of the Parties to the Merger Agreement was represented by experienced counsel— Latham & Watkins LLP, on behalf of Vizio, and Skadden, Arps, Slate, Meagher & Flom LLP, on behalf of LeEco, along with counsel in China for the Parties who focused on Chinese law and regulatory issues.

11.    One of the conditions for the merger was the approval of all "Government Entities" with authority over the merger, which in the United States meant the Committee on Foreign Investment in the United States ("CFIUS"), and in China government entities charged with regulating Overseas Direct Investment ("ODI"). While CFIUS granted its approval of the merger, the relevant Chinese authorities did not, and did not provide any explanation for their failure to do so.

12.    The Merger Agreement contained a "Buyer Termination Fee" ("BTF") of $100 million payable by the Buyer to Vizio if the merger failed to close within a certain time (MA § Article IX).  There was no obligation to pay the BTF, however, if the merger failed to close as a result of an action by a Government Entity, defined to include the relevant Chinese authorities that "would prevent the Merger from occurring as contemplated by this Agreement on or prior to the applicable time on the End Date.  " unless the government "Action … was … primarily due to Buyer's and Merger Sub's failure to have available sufficient cash on hand, together with Committed Financing to consummate the Merger …." MA § 9.1(e).  If the failure to have sufficient cash on hand caused the government Action, then buyer was required to pay Vizio the BTF.  MA §§ 9.1(e); 9.2(a)

13.    The Buyer Termination Fee consisted of two components.  One component consisted of $50 million deposited in an escrow account at Citibank, N.A. in Los Angeles, defined as the "Buyer Termination Fee Deposit."  The second component, identified as the "Buyer Termination Fee Remainder" consisted of an additional $50 million that Buyer was required to pay to the Company.

17

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

14.     Pursuant to the Limited Guaranty, Le Tech guaranteed "the due and punctual payment, performance and discharge to the Company [Vizio] of the Buyer Termination Fee Remainder if and when payable under Section 9.2(b) of the Merger Agreement (the 'Obligation')."  Limited Guarantee ⁋ 1.

15.      Also in the Limited Guarantee, Vizio "acknowledge[d] and agree[d] that the sole asset of the Buyer [LeEco] is cash in a *de minimis* amount."  Limited Guarantee ¶ 13.

16.     Additionally, in the Guarantee, Vizio expressly agreed not to pursue a claim against any "Non-Recourse Party"—including "by or through attempted piercing of the corporate veil"—for the Obligation, with Non-Recourse Parties being defined as "*any of* [Guarantor's] *former, current or future director, officer,* employee, agent, general or limited partner, manager, member, stockholder, *Affiliate* or assignee or any former, current or future director, officer, employee, agent, general or limited partner, manager, member, stockholder, Affiliate or assignee of any of the foregoing (collectively, but not including the Buyer and Merger Sub, each a '<u>Non-Recourse Party</u>') …." Limited Guarantee ⁋ 13.

17.     Mr. Jia and LeLe each is a "Non-Recourse Party," as defined in the Guarantee.

18.     As such, in the Guarantee, Vizio and Guarantor agreed to a very precise allocation of the risk should the Buyer become obligated to pay the Buyer Termination Fee Remainder, and it is expressly stated that Vizio was not permitted to seek from either Mr. Jia or LeLe payment of any or all of the Buyer Termination Fee Remainder.

19.     Moreover, upon information and belief, Vizio agreed to this very specific allocation of the risk with a full understanding of the relevant facts and circumstances and having had a full opportunity to investigate and satisfy any concerns it may have had regarding its agreement not to pursue Mr. Jia or LeLe for payment of any part of the Buyer Termination Fee Remainder.

20.     Specifically, at the time it signed the Limited Guarantee—through Kurtis

18

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

Binder, Vizio's CFO—Vizio knew of the existence of Mr. Jia and of LeLe, as in the CFIUS application submitted jointly by Vizio and LeEco to the U.S. government, LeEco was described as being a subsidiary of LeEco Global Group Ltd., which was wholly owned by Mr. Jia through LeLe.  Vizio was obviously aware of the CFIUS application as it filed it under seal in connection with this litigation.  See ECF No. 78.

21.    Vizio had the opportunity to satisfy itself as to the ability of Le Tech to pay the Obligation (i.e., the $50 million Buyer Termination Fee Remainder) created by the Limited Guarantee.  Vizio's Chairman and CEO stated under penalty of perjury in this litigation that "from the beginning of the merger-related negotiations, Vizio was concerned about the ability of LeEco and Global holding to finance the merger." Declaration of William Wang in Opposition to Defendant LeEco V. Ltd.'s Motion to Set Aside Entry of Default (ECF No. 23-2) ¶ 9.

22.    Notwithstanding these concerns, and with full knowledge of them, Vizio agreed that its recourse against Guarantor under the Guarantee was Vizio's sole and exclusive remedy.

23.    Specifically, as to the Non-Recourse Parties, Vizio promised that "Notwithstanding anything that may be expressed or implied in this Guarantee or *any document or instrument delivered concurrently herewith* [i.e., the Merger Agreement], by its acceptance of the benefits of this Guarantee, *the Company acknowledges and agrees that it has no right of recovery against, and no personal liability shall attach to, through the Buyer or otherwise*, whether by or through attempted *piercing of the corporate veil*, by or through a claim by or on behalf of the Buyer *against any Non-Recourse Party*, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute, regulation or applicable law, or otherwise, except for its rights to recover from the Guarantor under and to the extent provided in this Guarantee and subject always to the Cap [i.e., the $50 million Buyer Termination Fee Remainder] and the other limitations described herein." Limited Guarantee ¶ 13.

24.    The Limited Guarantee also provides that:  "The Company further

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

*LA 133786700v5*

acknowledges and agrees that *recourse against the Guarantor* … shall be the *sole and exclusive remedy of the Company* and its Affiliates against the Guarantor and the Non-Recourse Parties in respect of *any* liabilities or obligations arising under, or in connection with, *the Merger Agreement* or the transactions contemplated thereby, including by *piercing of the corporate veil or by or through a claim by or on behalf of the Buyer*." Limited Guarantee ⁋ 13.

25.   The Limited Guarantee further provides that "The Company [Vizio] hereby covenants and agrees that it shall not institute, directly or indirectly, … any proceeding or bring any other claim arising under, or in connection with, the Merger Agreement or the transactions contemplated thereby or otherwise relating thereto, against the Guarantor or any Non-Recourse Party except claims against the Guarantor under this Guarantee." Limited Guarantee ⁋ 14.

26.   Notwithstanding this, as further discussed below, Vizio filed suit against Non-Recourse Parties LeLe and Mr. Jia for damages relating to breach of the Merger Agreement, and transactions relating to the Merger Agreement.

27.   A dispute arose between Vizio and LeEco regarding whether LeEco was to blame for the failure of the merger to be approved.  Vizio took the position that the Chinese government's failure to approve the merger was due to LeEco not having sufficient cash on hand and Committed Financing pursuant to Section 9.1(e) of the Merger Agreement, and demanded the entire Buyer Termination Fee of $100 million. LeEco took the position that it did have sufficient cash on hand and Committed Financing to accomplish the merger, but that the merger fell victim to Chinese government crackdown on transactions involving capital flight of assets outside China, and therefore it had not obligations to pay he BTF.

28.   Vizio and LeEco settled all disputes related to the Merger Agreement pursuant to a "Framework, Settlement and General Release Agreement" dated as of April 5, 2017 (the "Framework Agreement").  Pursuant to the Framework Agreement, in exchange for the payment of $40 million from the Buyer Termination Fee Deposit, which

Vizio admits receiving, Vizio released all claims against LeEco related in any way to the Merger Agreement.  In addition, the Parties contemplated a potential joint venture in China (the "Potential China JV"), which, were it accomplished, would have resulted in an additional $10 million payment to Vizio from the remaining portion of the Buyer Termination Fee Deposit.  LeEco also committed to contributing $50 million in noncash assets to the Potential China JV (which was to be jointly owned 50/50 between Vizio and LeEco), again provided the Parties could agree on the essential terms of and form that joint venture.

29.    The Framework Agreement did not actually require that the Parties reach an agreement on the Potential China JV, but it did require that they negotiate in good faith to try to achieve that.

30.    The Parties were unable to reach agreement on the terms of the China JV, with each side claiming the other failed to negotiate in good faith.

31.    On July 11, 2017, Vizio sued LeEco (along with LeEco's parent LeEco Global Group, Ltd.) for: (1) breach of the Framework Agreement; (2) fraud underlying the Framework Agreement; (3) negligent misrepresentation underlying the Framework Agreement; (4) promissory estoppel; (5) breach of the Merger Agreement; and (6) rescission.  None of these claims was brought against either Mr. Jia or LeLe.

32.    On November 6, 2017, Vizio filed a First Amended Complaint ("FAC") that for the first time included both Mr. Jia and LeLe under an alter ego theory of liability, ostensibly for the counts having to do with breach of the Framework Agreement (i.e., counts 1-4 above), but in essence seeking damages under the Merger Agreement for the portions of the Buyer Termination Fee that Vizio believes it is entitled to for an alleged breach of the Merger Agreement—in other words, the very thing that Vizio contractually bound itself not to do vis-à-vis Counterclaimants pursuant to the Limited Guarantee.

33.    The relief Vizio seeks from LeLe Holding and Mr. Jia further establishes that its claim is essentially made under the Merger Agreement.

34.    Vizio expressly seeks the damages theoretically available to it under the

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

Merger Agreement for the $50 million Buyer Termination Fee Remainder against Non-Recourse Parties Mr. Jia and Lele—the very thing proscribed by the Limited Guarantee. For example, Vizio's claim against Mr. Jia and LeLe for supposed breach of the Framework Agreement (count one of the SAC) requests the following: "Plaintiff … alleges, that it has suffered reliance and/or lost opportunity damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee Deposit *and the $50,000,000 Buyer Termination Fee Remainder*)" SAC ℙ 64.  Identical allegations are made against Non-Recourse Parties Mr. Jia and LeLe in connection with Vizio's second count for alleged fraud underlying the Framework Agreement (ℙ 77), third count for negligent misrepresentation underlying the Framework Agreement (ℙ 93), and its fourth count based upon a theory of promissory estoppel (ℙ 106).

35.    Thus, Vizio seeks to do indirectly what it cannot do directly, and attempts to both enforce the Merger Agreement's contractual remedies relating to the Buyer Termination Fee Remainder, while simultaneously avoiding its obligation not to pursue the Non-Recourse Parties identified in the Limited Guarantee for that sum.

36.    Moreover, Section 14 of the Limited Guarantee, as referenced above, specifies that Vizio "shall not institute, directly *or indirectly* …  any proceeding or bring any other claim arising under, or *in connection with*, the Merger Agreement or the transactions contemplated thereby or *otherwise relating* thereto …." Limited Guarantee ℙ 14.  The Framework Agreement is clearly "relat[ed]" to the Merger Agreement, as it repeatedly references the Merger Agreement.  It was through the Framework Agreement that an alleged $100 million liability was reduced to the settlement amount set forth therein.  Vizio now seeks to rescind that settlement, and paragraph 3 of the Limited Guarantee provides that "In the event that any payment hereunder is rescinded or must otherwise be returned for any reason whatsoever, the Guarantor shall remain liable hereunder as if such payment had not been made."  Limited Guarantee ℙ 3.  Thus, by seeking to resurrect the penalties available under the Merger Agreement, Vizio necessarily invokes the Limited guarantee and the protections afforded the "Non-

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM
*LA 133786700v5*

Recourse Parties" under it.

37.    Vizio has itself attempted to enforce the Limited Guarantee by filing suit on July 11, 2017 against Le Tech, LeEco Global Holding Ltd., and Le Global Group Ltd. in Orange County Superior Court in a case entitled: *Vizio, Inc. v. Le Technology, Inc., et al.*, Case No. 30-2017-00930922-CU-BC-CJC (the "Orange County Action").  Vizio subsequently voluntarily dismissed the Orange County Action without prejudice.

38.    On August 10, 2018, Vizio filed a Second Amended Complaint ("SAC") which repeated and realleged counts 1-4, referenced above, with the only material difference being that Vizio dropped count six for rescission of the Framework Agreement, following the Court's Order of July 27, 2018, which concluded (among other things) that rescission is a remedy and not a cause of action under California law.

## COUNT ONE FOR BREACH OF THE LIMITED GUARANTEE

39.    Counterclaimants restate, reallege and incorporate paragraphs 1 to 22 as if fully set forth herein.

40.    An enforceable agreement exists between Vizio and Le Tech. in the form of the Limited Guarantee, and Non-Recourse Parties were intended third party beneficiaries of that agreement.

41.    Le Tech made the promises set forth in the Limited Guarantee and obligated itself to pay the Obligation set forth therein.

42.    Vizio made an actual demand upon Le Tech for payment of the Obligation because the Merger Agreement failed to close.  However, payment of the Obligation was disputed because LeEco claimed that it was excused from paying the BTF because the failure to close was the result of the action of a Government Entity. This dispute was ultimately settled and compromised via the Framework Agreement, rendering Vizio's demand under the Limited Guarantee null and void.

43.    By bringing the claims set forth in Vizio's First, and Second Amended Complaints against Non-Recourse Parties Mr. Jia and LeLe, Vizio breached the Limited Guarantee.

LA 133786700v5

44.     Counterclaimants have suffered actual loss as a result of Vizio's breach, including both nominal damages and damages in the way of attorneys' fees for defending an action which should not have been brought against them. Although the Limited Guarantee does not have an attorneys' fees provision, the Merger Agreement, of which the Limited Guarantee is an integral part, does have an attorneys' fees provision.  The Merger Agreement defines "Losses" to mean all "costs, damages or expenses … including without limitation … reasonable attorneys' fees ….."  MA § 10.2.  In addition, Counterclaimants are informed and believe, and thereon allege, that the claims brought against them for payment of the Buyer Termination Fee Remainder (or its equivalent) were brought in obvious breach of the Limited Guarantee, or were otherwise brought in bad faith.

## COUNT TWO FOR PROMISSORY ESTOPPEL

45.     Counterclaimants restate, reallege and incorporate by reference paragraphs 1 to 22 and 24-28 as if fully set forth herein.

46.     In the Limited Guarantee, Vizio made a clear and unambiguous promise not to sue Counterclaimants for the Guarantee or its equivalent.

47.     Counterclaimants relied upon that promise and were justified in doing so. Among other things, Counterclaimants had no reasonable grounds to believe that despite the fact that the definition of Non-Recourse Parties was clearly designed to apply to each of them, and to their Affiliates, Vizio would attempt to avoid the clear and obvious intention of Limited Guarantee to provide Counterclaimants with peace of mind and the avoidance of expense regarding any attempt to collect from them the Guarantee or its equivalent regardless of the legal theory involved.  Counterclaimants' reliance was reasonable, as Vizio was a sophisticated party which could have attempted to carve out situations where the protections afforded Non-Recourse Parties would not apply, but did not do so.

48.     As set forth in paragraph 28 above, which is realleged and incorporated as if fully set forth herein, Counterclaimants suffered damages in reliance on Vizio's

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

promises.

## COUNT THREE FOR DECLARATORY RELIEF

49.     An actual controversy exists between the parties regarding the protections afforded Counterclaimants under the Limited Guarantee in the context of this lawsuit.

50.     A judicial determination regarding those rights, responsibilities and protections would serve a useful purpose in clarifying and settling the legal relations at issue, and would afford relief from the uncertainty, insecurity and controversy Counterclaimants face in connection with this proceeding.

51.     The effect of the Limited Guarantee was to hold harmless Counterclaimants for the very claims at issue, and is thus amenable to resolution notwithstanding the pendency of the underlying action.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray as follows:

1.     For damages to be proven at trial related to Vizio's breach of the Limited Guarantee pursuant to Counterclaimants' first cause of action;

2.     For damages to be proven at trial related to Vizio's breach of the promises made to Counterclaimants pursuant to Counterclaimants' second cause of action;

3.     For declaratory relief holding that the claims brought against Counterclaimants are in violation of the terms of the Limited Guarantee;

4.     For attorney's fees and costs pursuant to the contractual attorneys' fees provision and as otherwise available under applicable law;

//

//

//

//

//

//

//

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

LA 133786700v5

5.      For other relief the Court deems just and proper.


DATED:  August 24, 2018              GREENBERG TRAURIG, LLP



                                    By */s/ Jeffrey Joyner*
                                       Jeff K. Joyner
                                       Daniel Tyukody
                                       Attorneys for Defendants and Counter-Claimants
                                       LeECO V. LTD., LELE HOLDING and
                                       YUETING JIA

26

DEFENDANT LELE HOLDING'S ANSWER TO SAC AND COUNTERCLAIM

*LA 133786700v5*