Robert M. Waxman (SBN 89754)
    rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
    dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
    jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

Jeff K. Joyner (SBN CA 180485)
*joynerj@gtlaw.com*
Daniel Tyukody (SBN CA 123323)
*tyukodyd@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendants, LeECO V. LTD AND LELE HOLDING, LTD.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>        Plaintiff,<br><br>     v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>        Defendants.<br><br>_____<br><br>LeECO V. LTD.,<br><br>        Counter-Claimant, | CASE NO.  8:17-CV-01175-DOC-JDE<br><br>**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>JUDGE:  Hon. John D. Early<br>LOCATION: Telephonic Conference (Ctrm: 6A)<br>DATE:  August 28, 2018 at 10:00 a.m. |

LA 133792994v1

vs.

VIZIO, a California corporation,

Counter-Defendant.

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

*LA 133792994v1*

Pursuant to the Court's August 16, 2018 Scheduling Order, Plaintiff Vizio, Inc. ("Vizio") and Defendants LeEco V. Ltd. ("LeEco") and LeLe Holding, Ltd. ("LeLe") (collectively "Responding Defendants") hereby submit this Joint Report regarding the discovery disputes between the parties.

## I.    Brief Description of the Essential Nature of the Dispute

### A.    Responding Defendants' Brief Statement of the Nature of the Dispute

This dispute arises from (1) Plaintiff Vizio, Inc.'s Responses to LeEco V. Ltd.'s First Set of Request for Admissions ("Vizio's RFA Responses") and Plaintiff Vizio, Inc.'s Responses to Defendant LeEco V. Ltd.'s Request for Production of Documents, Set One to Plaintiff Vizio Inc. ("Vizio's RFP Responses"), and (2) Plaintiff Vizio, Inc.'s First Set of Requests for Production of Documents (the "Vizio's Requests").  LeEco intends to file a motion to compel Vizio to amend Vizio's RFA Responses with a "yes" or "no" answer to Request Nos. 1 and 3, and to compel Vizio to produce documents in response to LeEco's request for production of document No. 10.  Responding Defendants intend to seek a protective order consistent with their objections to producing documents in response to Vizio's Requests Nos. 7, 9-10, 12, 14-15, 20, 29, 31-33, and 36-62.

In Section II.A.1., LeEco discusses why Vizio's responses are deficient and must be amended.  In Section II.A.2.a., Responding Defendants contend that Vizio is not entitled to discovery on its alter ego allegations because the Limited Guarantee entered into between Vizio and Le Technology, Inc. ("Le Technology") as of July 6, 2017 expressly prevents Vizio from pursuing alter ego claims against certain of the Defendants. Responding Defendants further assert in Sections II.A.2.b-e. that, even if Vizio was not precluded from seeking such discovery (which it is), Vizio's Requests at issue improperly seek documents (1) of third-parties, (2) not in Responding Defendants' possession, custody or control, (3) in violation of privacy laws, and (4) grossly overbroad categories of documents outside the time frame appropriate for such requests.

In Section II.B., Vizio sets out its assertions in opposition to LeEco's and Responding Defendants' prospective motions to compel and for a protective order,

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

respectively.

### B.   Plaintiff's Brief Statement of the Nature of the Dispute

#### 1.   Factual Background

Plaintiff's claims are stated in the Second Amended Complaint ("SAC", Dkt 101). This lawsuit had its genesis when LeEco and other entities agreed to acquire VIZIO for approximately $2BB.  (Dkt 99, July 27, 2018 Civil Minutes – General ("the Order"), p. 2). The document which the parties negotiated and executed to consummate LeEco's acquisition of VIZIO is the Merger Agreement.  (*Id.*)  However, in the event of a termination of the Merger Agreement by VIZIO for LeEco's breach, VIZIO was to be paid a $100MM termination fee.  (*Id. See also* Dkt 101, SAC, ¶¶ 22-23).  Significantly, "VIZIO [also] alleges that Defendants made specific false promises on behalf of Defendants, which Defendants failed to perform [concerning the Merger Agreement], to wit:  the $2BB financial wherewithal representations affirming that "[Defendants] Lele Holding and Global Group and various subsidiary or affiliated corporate entities were financially healthy and that they had the financial wherewithal to complete a $2BB merger transaction with VIZIO."("$2BB Wherewithal Representations").

On March 30, 2017, VIZIO provided LeEco with a Notice of Termination of the Merger Agreement due to LeEco's breaches, triggering its obligation to pay the $100MM termination fee.  (Dkt 101, SAC, at ¶¶ 29-30).  Thereafter, Defendants Lele Holding, LeEco Global Group Ltd., and LeEco, by and through Jia, - - the ultimate owner - and other top of the chain executives, falsely promised VIZIO that, if the latter would agree (a) to "jointly" terminate the Merger Agreement subject to specified carve-outs and forgo immediate payment of the $100MM termination fee, then (b) LeEco would enter into a Joint Venture with VIZIO to distribute VIZIO products in China.  (*Id.,* at ¶¶ 33-35), while (c)  $40MM which had been deposited into escrow under the Merger Agreement would be immediately released to VIZIO (*Id.,* at ¶ 33), and (d) the remaining $10MM in that escrow would held for 45 days during the good faith negotiation period of the joint venture - - but if no joint venture agreement was executed within that 45 day period, the $10MM sum

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

was also to be released to VIZIO in accordance with the specifically carved out and still operative Buyer Termination Fee Deposit provisions of the Merger Agreement.  (*Id.,* at ¶¶ 33-35).  *See also,*Dkt. 99, the Order at p. 16.  The reliance and/or lost opportunity damages that VIZIO suffered in the sum of $60MM are likewise described at pp. 17-18 of the Order.

The Framework Agreement followed shortly thereafter.  (Dkt 101, SAC, at ¶¶ 34-39).  Unfortunately, LeEco refused to negotiate the substantive terms of the joint venture agreement with VIZIO.  (*Id.,* at ¶¶ 43-45).  This lawsuit was subsequently filed.  LeEco is named in each Claim for Relief.  Its corporate and individual parents – *i.e.,* the remaining defendants were only sued as the alter-egos of LeEco in the 1st through 5th Claims for Relief.  (*Id.,* at ¶¶ 56-57, 65, 79, 92, and 105).  In addition, they were sued for the direct misrepresentations each made to fraudulently induce VIZIO to enter into the Framework Agreement in the 2nd through 5th Claims for Relief.  (*Id.,* at ¶¶ 66-68, 75-77, 80-82, 89-90, 93-95, 102-104, and 105).  However, the Sixth Claim for Relief of the Merger Agreement is asserted just against LeEco, without any alter-ego allegations.

The Order carefully analyzes the alter-ego allegations.  Its examination is compelling.  Judge Carter explained "[the facts] show a commingling of funds and a disregard of corporate formalities between the two companies.  Throughout the parent and subsidiary companies, there is a connection and intermingling between the employees, assets and office locations.  Thus, VIZIO sufficiently establishes facts in support of the proposition that Lele Holding and LeEco are interconnected in ownership (through Jia) and through a unity of interest (through similarities in offices, employees, and intermingling of assets)."  Indeed, that "because Lele Holding and LeEco are intertwined in ownership and by assets, it would be unjust to allow the parent company to escape liability when it was a player in enabling the alleged fraud of the subsidiary [such that] VIZIO has…made a plausible case for finding that Lele Holding is the alter-ego of LeEco."  (Dkt 99, Order, pp. 29-30).  Pointedly, and "perhaps more significantly, the actions of LeEco and Jia, who plausibly are alter egos of Lele Holding, warrant sufficient

activity in California to extend specific jurisdiction."  (*Id.*, at 35).

### 2.  Subject Discovery

On January 12, 2018, Plaintiff served its first set of Request for Production of Documents (Set One) on both LeEco and Lele Holding (hereinafter the "RFPs"). Plaintiff's RFPs sought 65 separate categories of documents that are directly relevant to the claims made in the SAC.  Specifically, RFP Nos. 35-65 seek information that is critical for Plaintiff to buttress its evidence of both alter ego liability and the Defendants' fraud.  Despite the paramount nature of that inquiry, Defendants initially responded to the RFPs on April 11, 2018, interposing a litany of general objections as well as other boilerplate and specious objections to each such request.  However, their primary objection was that documents outside the narrow confines of the Framework Agreement were not discoverable.  Specifically, Defendants repeated the mantra that Judge Carter has rejected (Dkt 99, Order, at 4), *i.e.*, that "the parties agreed to the Framework Agreement…which LeEco alleges had the effect of terminating the Merger Agreement..." Accordingly, they refused to produce anything outside those narrow confines and even objected at the outset to the production of privilege log.

Subsequent to the Order, the parties again met and conferred per the directions of Magistrate Judge Early.  The Defendants reversed course, agreeing for the first time to produce all non-privileged documents related to the Merger Agreement (*i.e.,* RFP Nos 1 - 34); a production which also still has not been received.  But at the same time, they made the "new" wild claim that no documents concerning alter ego liability would be produced because of some sort of bar in the form of a Limited Guarantee; a document that was signed by VIZIO and a non-party, Le Technology Inc., contemporaneously with the Merger Agreement and as to which Judge Carter was well aware when the Order was made (Dkt 99, p 29).       The Defendants made this "new" wild claim notwithstanding that (a) the so-called guarantee bar is inconsistent with their "objection" made directly in response to the RFPs that the Framework Agreement somehow obviates anything connected to the Merger Agreement; (b) it was not raised in any of the "objections" that

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

Defendants actually interposed to the RFPs; (c) the language in paragraph 13 of the Limited Guarantee is to the contrary - - *i.e.,* extends only to claims for breach made directly under, or in connection with the Merger Agreement itself and the documents appended to it; and (d) to the extent - - if at all - - that same language could somehow be interpreted as encompassing the much-later Framework Agreement and the fraudulent representations leading to it - - that would be a direct violation of California public policy as reflected in *Civil Code* § 1668. *Peregrine Pharmaceuticals, Inc. v. Clinical Supplies,* 2014 WL 3791567*15 (C.D. Cal.) ("The cases uniformly hold that limitation of liability clauses are ineffective with respect to claims for fraud and misrepresentation [and this rule] applies even where the clause amounts to a limitation on damages limitations as opposed to an outright exemption [because] contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated.")

## II.   Brief Description of the Parties' Respective Positions

### A.   Responding Defendants' Position

#### 1.   Vizio's Responses To LeEco's First Set of Requests For Admissions And Requests For Production Are Deficient.

Vizio's RFA and RFP Responses are deficient for the following reasons.

RFA No. 1 states, "Admit that You drafted Section 1.1 of the Framework Agreement." Vizio avoids answering this question by stating that, "the Framework Agreement and the terms therein were drafted by Vizio and one or more of the Defendants." That is not responsive to the question presented. RFA No. 1 specifically asks whether Section 1.1 was drafted by Vizio, which Defendants believe the evidence inevitably will establish. There is a presumption under California law that when the language of a contract is ambiguous, the ambiguity is interpreted against the drafter. *S. California Reg'l Rail Auth. v. Hyundai Rotem Co.*, No. LACV1608042JAKJEMX, 2017 WL 2989178, at *8 (C.D. Cal. July 13, 2017). Knowing this, Vizio has refused to answer the RFA.

RFA No. 3 states, "Admit that, as of at least June 9, 2017 when You sent the

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

*LA 133792994v1*

Demand for Immediate Payment to LeEco Global Group, You no longer had any interest in entering into the China JV." Vizio refused to properly answer this request. There is a dispute between the parties as to whether, in connection with the obligation under Section 3.1 of the Framework Agreement, the Parties negotiated in good faith and used reasonable efforts to form a joint venture in China. Vizio's "response" to this RFA is specifically designed not to answer the question presented, and instead, merely consists of arguments. It is well established that, "[i]n responding to a request for admission, a party must either admit the matter, specifically deny it, or state in detail why the answering party cannot truthfully admit or deny it." *Bretana v. Int'l Collection Corp.*, No. C07-05934 JF (HRL), 2008 WL 4334710, at *2 (N.D. Cal. Sept. 22, 2008). Accordingly, Vizio must amend its deficient responses.

RFP No. 10 seeks "All Documents and Communications concerning the aftermath of the decision to terminate the Framework Agreement, including communications between and among Vizio's Board, its management, its shareholders, and the general public." Vizio has refused to produce any documents responsive to RFP No. 10. Discovering how Vizio was affected by the decision to terminate the Framework Agreement is directly relevant to the claims at issue in this litigation, including Defendants' defense to the alleged damages in this litigation. Accordingly, Vizio must produce documents responsive to RFP No. 10.

    **2.**    **The Court Should Enter a Protective Order Staying Responding Defendants' Responses to Certain of Vizio's Requests for Production of Documents.**

    **a)**    **The Limited Guarantee Precludes Vizio From Seeking Alter Ego Discovery Concerning Non-Recourse Parties LeLe Holding and Mr. Jia.**

    **(1)**    **Vizio Expressly Agreed in the Limited Guarantee It "Has No Right of Recovery . . . Through . . . Piercing**

**of the Corporate Veil" Claims Under the Merger Agreement and Framework Agreement Against LeLe Holding and Mr. Jia.**

Vizio's Requests Nos. 36 through 62 (the "Alter Ego Requests") are precluded because they pertain to claims and legal theories that Vizio expressly agreed to forego when executing the Limited Guarantee.  Pursuant to the Limited Guarantee, which was integral to the Merger Agreement[1], Vizio covenanted not to sue or seek alter ego discovery concerning "Non-Recourse Parties," defined as "*the Guarantor or any of its former, current or future director, officer,* employee, agent general or limited partner, manager, member, stockholder, *Affiliate* or assignee *or any former, current or future director, officer, employee, agen*t, general or limited partner, manager, member, stockholder, *Affiliate* or assignee *of any of the foregoing*." (Limited Guarantee, ¶ 13 (attached as Exhibit H to the Merger Agreement)). Vizio acknowledged and agreed "that it has no right of recovery against [the Non-Recourse Parties] *through the Buyer or otherwise*, whether *by or through attempted piercing of the corporate veil." (Id*). Vizio also covenanted that it "*shall not* institute, directly or indirectly, and shall cause its Affiliates not to institute, any proceeding or *bring any other claim arising under*, or in connection with, *the Merger Agreement* or the transactions contemplated thereby *or otherwise relating thereto*, against the Guarantor or any Non-Recourse Party except claims against the Guarantor under this Guarantee." (*Id.*, ¶14).

Thus, Vizio cannot pursue claims or discovery against LeLe, Yueting Jia ("Mr. Jia"), LeEco Global Group Ltd. ("Global Group"), and their "Affiliates." Vizio acknowledged that it cannot pursue claims against the Non-Recourse Parties under the Merger Agreement by naming only LeEco in its fifth cause of action for breach of the Merger Agreement, and has also acknowledged this in their meet and confer letter of August 24, 2018. Vizio's claims under the Framework Agreement suffer from the same problem. Vizio's claims and discovery violate the Limited Guarantee because Vizio

---

[1] The "Merger Agreement" refers to the Agreement and Plan of Merger dated July 6, 2016 between LeEco and Vizio.

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

alleges that it "has suffered damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee deposit and the $50,000,000 Buyer Termination Fee Remainder." (SAC, ¶ 64 (breach of the Framework Agreement); ¶ 77 (fraud underlying Framework Agreement); ¶ 93 (negligent misrepresentation underlying the Framework Agreement); ¶ 106 (promissory estoppel). In opposing LeEco's Motion to Dismiss, Vizio doubled-down on this argument, asserting that "the basis for the damages that Vizio has suffered for breach of the Framework Agreement" includes the $10 million in escrow and "*the remaining $50 mm* that would otherwise have been paid directly to Vizio under the terms of the *Buyer Termination Fee Remainder* of the Merger Agreement." (Opp. to MTD at 21:1-6) (emphasis added)). Vizio cannot argue that it is entitled to the contractual benefits of the Merger Agreement or Framework Agreement without also acknowledging its contractual proscription against bringing claims (and discovery related to those claims) against Mr. Jia, LeLe, and others defined as Non-Recourse Parties in the Limited Guarantee.

Under the Limited Guarantee, Vizio made two separate promises to release Non-Recourse Parties. First, Vizio promised that it "has no right of recovery against, and no personal liability shall attach to, the Guarantor or any of [the Non-Recourse Parties] . . . except for its rights to recover from the Guarantor under and to the extent provided in this Guarantee."  (Limited Guarantee, ¶ 13).  Second, Vizio promised that "recourse against the Guarantor under and pursuant to the terms of this Guarantee shall be the sole and exclusive remedy of the Company and its affiliates against the Guarantor and the Non-Recourse Parties *in respect of any liabilities or obligations arising under, or in connection with, the Merger Agreement* or the transactions contemplated thereby." (*Id.* (emphasis added)). The second promise is specific to the Merger Agreement.  The first is more general and, on its face, obligates Vizio not to sue the Non-Recourse Parties for any claims.

The Limited Guarantee therefore releases LeLe Holding and Mr. Jia from liability vis-à-vis Vizio generally, rather than merely in connection with the Merger Agreement.

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

This position is supported by additional language in the Limited Guarantee.  Paragraph 14 provides: "The Company hereby covenants and agrees that it *shall not* institute, directly or indirectly, and shall cause its Affiliates not to institute, any proceeding *or bring any other claim arising under*, or in connection with, *the Merger Agreement* or the transactions contemplated thereby or *otherwise relating thereto*, against the Guarantor or any Non-Recourse Party except claims against the Guarantor under this Guarantee." (Emphasis added). By releasing Non-Recourse Parties for claims "otherwise relating" to the Merger Agreement, the Limited Guarantee extends to the Framework Agreement.  Even though the Framework Agreement was not "contemplated by" the Merger Agreement (since it came later and is essentially a settlement agreement), the Framework Agreement "relates to" the Merger Agreement, and the Framework Agreement frequently references the Merger Agreement.

Other sections of the Limited Guarantee corroborate the parties' intent to make it apply to the Merger Agreement *and other related agreements*, like the Framework Agreement. Paragraph 4 of the Limited Guarantee provides that Le Technology's guarantee of the $50 million Remainder may be reduced by future agreements between the parties: "Notwithstanding anything to the contrary contained in this Guarantee, the Company hereby agrees that to *the extent the Buyer is relieved of all or any portion of the Obligation* by the satisfaction thereof or *pursuant to any written agreement with the Company entered* into prior to the Closing (any amount so relieved, the "Reduction Amount"), *the Cap shall be reduced by an amount equal to the Reduction Amount*." (Emphasis added). This indicates that the parties intended the Limited Guarantee to apply not only to the Merger Agreement, but also to other related agreements by which the parties further negotiated the $50 million payment.

Moreover, Section 13 of the Limited Guarantee provides that Vizio's promise that it "has no right of recovery against" the Non-Recourse Parties applies "[n]otwithstanding anything that may be expressed or implied in this Guarantee or any document or instrument delivered concurrently herewith." Section 14 of the Limited Guarantee extends

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

Vizio's promise to release Non-Recourse Parties to claims "arising under" transactions "otherwise relating" to the Merger Agreement (i.e., the Framework Agreement).

Further, paragraph 3 of the Limited Guarantee provides: "Subject to the express terms and conditions of this Guarantee, the Guarantor's liability hereunder is absolute, unconditional and *irrevocable. . . . In the event that any payment hereunder is rescinded* or must otherwise be returned for any reason whatsoever, *the Guarantor shall remain liable* hereunder as if such payment had not been made." (Emphasis added).  The Framework Agreement rescinded Le Technology's obligation to pay the $50 million Remainder by substituting a contribution of $50 million of non-cash assets. (Framework Agreement, § 3.2.1).  Under the Limited Guarantee, however, Le Technology was not absolved of the Obligation for which it continued to remain liable.  It follows that the Non-Recourse Parties' release from liability would continue as well, despite Vizio seeking to rescind the Framework Agreement which terminated the Merger Agreement.

### (2)    LeLe Holding and Mr. Jia Are Third Party Beneficiaries of the Limited Guarantee

Under New York law, "[a] party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit, and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *State of Cal. Publ. Employees' Retirement Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (2000).[2]  "[The] identity of a third-party beneficiary need not be set forth in the contract or, for that matter, even be known as of the time of its execution." *MK W. St. Co. v. Meridien Hotels*, 184 A.D.2d 312, 313 (1st Dept. 1992).

Vizio and Le Technology clearly intended to benefit all of the Non-Recourse Parties by entering the Limited Guarantee.  At the time it signed the Limited Guarantee,

---

[2] Pursuant to paragraph 12 of the Limited Guarantee, the Limited Guarantee shall be governed by, and construed in accordance with, the laws of the State of New York.

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

Vizio knew of the existence of Mr. Jia and of LeLe Holding.  Vizio and LeEco had jointly filed a confidential notice with the Committee on Foreign Investment of the United States ("CFIUS") that described LeEco as being a subsidiary of LeEco Global Group Ltd. ("LeEco Global"), which was wholly owned by LeLe Holding, which was owned by Mr. Jia.  (CFIUS Notice at 4).  Vizio also had the opportunity to satisfy itself as to the ability of Le Technology to pay the "Obligation" (i.e., the $50 million Buyer Termination Fee Remainder ("Remainder") created by the Limited Guarantee.  Vizio's Chairman and CEO has stated under penalty of perjury in this litigation that "from the beginning of the merger-related negotiations, Vizio was concerned about the ability of LeEco and Global holding to finance the merger."  Declaration of William Wang In Opposition to Defendant LeEco V. Ltd.'s Motion to Set Aside Entry of Default "Wang Decl." (ECF No. 23-2) ¶ 9. Vizio's intent to benefit the Affiliates also is "sufficiently immediate" from the face of the Limited Guarantee, under which Vizio expressly agreed "it has no right of recovery" for the Remainder against any "Non-Recourse Party," which is broadly defined as "the Guarantor or any of its former, current or future . . . Affiliate . . . or any . . . Affiliate or assignee of any of the foregoing."  (Limited Guarantee, ¶ 13).  Given the magnitude of potential liability, this hold harmless agreement is not incidental. Thus, LeLe Holding and Mr. Jia, as well as Le Technology's other "Affiliates," are likely third-party beneficiaries entitled to enforce the Limited Guarantee.

### (3)   The Framework Agreement Did Not Terminate the Limited Guarantee

The Limited Guarantee has strong language to protect it against being amended, waived, or terminated. It is an "irrevocable guarantee" (Limited Guarantee at ¶¶ 1, 3) "binding upon the Guarantor until the Obligation has been satisfied in full" (*Id.* at ¶ 8) that may only be waived or amended by "written agreement signed by the Company [Vizio] and the Guarantor [Le Technology]" and even then "such waiver shall be effective only in the specific instance and for the purpose for which given." (*Id.* at ¶ 10).

While the Framework Agreement terminated certain parts of the Merger

Agreement, it has no language terminating or directly relating to the Limited Guarantee. *See* Framework Agreement, § 1.1 ("the merger Agreement shall become null and void . . . except for Section 6.5 (Confidentiality of Terms of Transaction, Etc.) and Article XI (Miscellaneous) of the Merger Agreement and the terms governing the release of the remaining Buyer Termination Fee Deposit"). The Framework Agreement does not mention the Limited Guarantee.

Even if the Framework Agreement sought to amend or terminate the Limited Guarantee, which it did not, the Framework Agreement was not signed by Le Technology, as required to be an effective amendment.  The Limited Guarantee may only be waived or amended by "written agreement signed by the Company [Vizio] and the Guarantor [Le Technology]" and even then "such waiver shall be effective only in the specific instance and for the purpose for which given." (¶ 10).  Neither the Merger Agreement nor the Framework Agreement is signed by Le Technology.  As a result, the Limited Guarantee could not have been terminated by those agreements.

### (4)   The Limited Gurantee's Covenant Not To Sue Applies to Vizio's Claims that the Framework Agreement Was Procured by Fraud

The Limited Guarantee's covenant not to sue applies to Vizio's claim against the Non-Recourse parties that Framework Agreement was procured by fraud for two reasons. First, Vizio's claims allege fraud in the inducement of the Framework Agreement, not the Limited Guarantee.  Cases precluding parties from using a contract with a covenant not to sue (i.e. the Limited Guarantee, here) to shield themselves from liability involve allegations that the covenant not to sue must be rescinded because it was procured by fraud, not that a separate agreement (i.e. the Framework Agreement) was procured by fraud.  The cases that Vizio uses to support its position that the limitation of liability clause is ineffective with respect to fraud are also distinguishable in that the clauses at issue in those cases were limitations on damages clauses and not covenants not to sue. *See*

*Peregrine Pharm., Inc. v. Clinical Supplies Mgmt.*, No. SACV 12-1608 JGB (ANx), 2014 U.S. Dist. LEXIS 105756 (C.D. Cal. July 30, 2014) (clauses at issue were two limitations on damages clauses as opposed to a covenant not to sue clause); *Health Net of Cal., Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224 (2003) (clause at issue was a prohibition on any recovery of damages for any violation of statutory or regulatory law not made part of the parties' contractual obligations).

Second, the Limited Guarantee recites that it is "absolute, unconditional, and irrevocable" and that "in the event that [any] provision of this Guarantee are illegal, invalid, or unenforceable . . . then (i) the obligation of the Guarantor under this Guarantee shall terminate ab initio and thereupon be null and void." (Limited Guarantee, ¶ 8).  It also recites that "recourse against the Guarantor . . . shall be the sole and exclusive remedy of the Company and its Affiliates . . . in respect of any liabilities or obligations arising under, or in connection with, the Merger Agreement or the transactions contemplated thereby." (*Id.*, ¶ 13).  Fraud in the inducement is not a defense to a covenant not to sue where the guaranty recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of the guaranty.  *See Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 92 (1985) ("Fraud in the inducement of a guarantee . . . is not a defense to an action on the guarantee when the guarantee recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of the guarantee . . ."). Here, the Limited Guarantee bars Vizio's fraud claims against LeLe Holding and Mr. Jia.

Additionally, the Limited Guarantee recites that "the sole asset of the Buyer is cash in a de minimis amount, and that no additional funds are expected to be contributed to the Buyer unless and until the Closing occurs." (*Id.*).  In making these representations and covenants, Vizio had the opportunity to satisfy itself as to the ability of Le Technology to pay the $50 million Remainder.  Vizio's Chairman and CEO has stated under penalty of perjury in this litigation that "from the beginning of the merger-related negotiations, Vizio was concerned about the ability of LeEco and Global holding to finance the merger."  *See* Wang Decl. ¶ 9.  Similar recitations of absolute and unconditional enforceability have

been upheld by the courts in *Citibank* and *Quest Commercial* as precluding claims of
fraud in the inducement based on waiver theories.

### (5)    LeEco and LeLe Did Not Waive Their Objections to the Alter Ego Requests

LeEco and LeLe did not waive their objection to the Alter Ego Requests.  First,
among several other objections, LeEco and LeLe objected that the Requests were
"calculated merely to harass, and is overbroad, irrelevant, and not proportional to the
needs of the case. Particularly if the case is limited to a breach of the Framework
Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to
Vizio of $40 million and another $10 million in escrow that is disputed. The remaining
dispute concerns the Parties' obligations to each other in the context of the proposed
China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have
not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real
Estate Group LLC are not parties to this action."  Second, at the time of the objections to
Vizio's Requests, Vizio's First Amended Complaint did not mention the Limited
Guarantee, LeEco's and LeLe's motions to dismiss were pending and LeLe had not yet
filed its Counterclaim for breach of the Limited Guarantee, which was only recently
required to be filed on August 24, 2018.  Third, during the in-person meet-and-confer on
August 7, 2018 Vizio took the position that alter ego requests were supposedly limited to
the Framework Agreement, but then took the contrary position that the relevant discovery
went all the way back to the Merger Agreement. If Vizio were consistent, the relevant
alter ego period would be from roughly November of 2016 (when settlement discussions
regarding the Framework Agreement began) to the mid-April 2017, when the Framework
Agreement was signed.

Here, Vizio entered into the Limited Guarantee, and expressly promised not to
pierce the corporate veil.  Through Vizio's Requests, it attempts to seek indirectly through
the Framework Agreement what it cannot seek directly regarding the Merger Agreement

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

because Vizio is barred from piercing the corporate veil pursuant to the Limited Guarantee.  Accordingly, the Alter Ego Requests are improper and are calculated merely to harass LeEco and LeLe.

Moreover, the case that Vizio cites for its position that LeEco and LeLe somehow waived their objection to the Alter Ego Requests is unavailing as it exemplifies that even in the most egregious circumstances courts still strive to decide disputes on the substantive merits. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) (where corporation repeatedly refused to cooperate regarding discovery despite court orders, the Ninth Circuit still considered the merits of the corporation's discovery arguments and concluded that they were not well-taken under the circumstances).

### b) Vizio Cannot Demand Discovery Concerning Third-Parties That Are Not Alleged Alter Egos Of Responding Defendants.

The Alter Ego Requests are irrelevant, overbroad, unduly burdensome, and in violation of Vizio's contractual obligations insofar as they demand discovery relating to "Affiliates" against which Vizio makes no alter ego allegations in the operative Second Amended Complaint ("SAC") and agreed not to sue in the Limited Guarantee, and indeed has not sued in this action.  *See* SAC, ¶¶ 56-57.  This defect affects Requests Nos. 36-39, 43-49, 51-54, 58 & 60-65. The Alter Ego Requests broadly define the term "Affiliates" to mean any entity in which the Person referenced in Vizio's Requests owns at least a 20% interest.  This definition not only sweeps a vast number of entities with no connection to this case into Plaintiff's discovery, but violates Vizio's obligation not to sue Non-Recourse Parties.  In Vizio's Meet and Confer letter of August 24, 2018, Vizio cites the rule for the alter ego unity of interest prong and itself notes that, ". . . courts consider numerous factors, including 'inadequate capitalization, commingling of funds and other assets of *the two entities*, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in *the two entities*. . ." (emphasis added).  Yet, then argues in its August 24th letter that it needs discovery beyond the "two entities" LeEco and

LeLe Holdings regarding ". . . inadequate capitalization of one or more of LeEco, LeEco Global Group, LeLe Holdings *and their affiliates*. . ." (emphasis added). The alter ego factors only refer to the alleged alter ego entities themselves, not *affiliates*. Given Vizio's agreement that it is limiting its alter ego allegations to the Framework Agreement, this discovery represents "not merely a 'fishing expedition,' but . . . an effort to 'drain the pond and collect the fish from the bottom.'" *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (*quoting In re IBM Peripheral EDP Devices Anti–Trust Litigation*, 77 F.R.D. 39, 41–42 (N.D. Cal. 1977)). Discovery concerning non-parties should not be ordered.

### c) Vizio's Requests Improperly Demand That Responding Defendants Produce Documents Outside Their Possession, Custody, and Control.

The Alter Ego Requests and Vizio's Requests Nos. 7, 9-10, 12, 14-15, 20, 29, and 31-33 are improper and exceed the scope of the Federal Rules of Civil Procedure insofar as they demand documents outside LeLe's and LeEco's possession, custody, or control. Under the Federal Rules of Civil Procedure, Rule 34, documents are within a discovery target's control if the target has "the legal right to obtain the documents on demand." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999). ("It is not enough that a party may have a practical ability to obtain the requested documents from an affiliated organization, because the other entity could legally—and without breaching any contract—continue to refuse to turn over such documents."). Indeed, the case that Vizio itself cites to in its meet and confer letter of August 24, 2018 holds that, "[t]he party seeking production of the documents . . . bears the burden of proving that the opposing party has such control." *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Vizio cites to *Int'l Union of Petroleum & Indus. Workers* to support its position that Responding Defendants have possession, custody, or control of all the documents requested. Yet, the Court in *Int'l Union of Petroleum & Indus. Workers*

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

held that the appellee did not enjoy the right to demand the documents because it did not have the right to take possession of the records on demand.  Affiliated corporate entities—including subsidiaries, sister companies, and parent companies—do not have control over each other's documents absent a contractual or statutory right.  *See e.g., Ehrlich v. BMW of North America, LLC*, 2011 WL 3489105, *1 (C.D. Cal. May 2, 2011) ("Plaintiff has not established that Defendant BMW NA has legal control over documents in BMW AG's files.  BMW NA is owned by a company that is owned by BMW AG.  Nothing about this relationship suggests that BMW NA has the power to order BMW AG to turn over documents to BMW NA.  Nor has Plaintiff presented any evidence that BMW AG is under a contractual obligation to turn over documents requested by BMW NA"); *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys.*, Inc., 2006 WL 3742244, at *3 (N.D. Cal. Dec. 19, 2006) (denying motion to compel documents in sister corporation's possession where plaintiff showed the entities were "closely affiliated; that employees of one report to the other, that the companies are involved in each other's budget decisions, and do in fact share a great deal of information" because "[t]hese facts, however, even if wholly true, are insufficient to establish that MDL Inc. has the legal right to obtain documents in possession of MDL GmbH on demand.*");*  *See Micron Tech., Inc.*, 2006 WL 1646133 at *2 (denying motion to compel party SPIL to produce documents under the control of non-party SUI even though "SUI is 100% owned [indirectly] by SPIL, ... SUI would in the ordinary course of business have access to the documents," "SPIL created SUI to engage as SPIL's sales agent in North America," and "SUI and SPIL have overlapping management teams.").

Here, Vizio's definition of "Affiliates" includes numerous parent, sister, and subsidiary entities from which LeLe and LeEco do not have the legal right to obtain documents on demand.  Additionally, Vizio has failed to meet its burden of showing otherwise.  Thus, these Request are improper under Rule 34.

LA 133792994v1

### d)    The Alter Ego Requests Must Be Narrowed Insofar As They Seek Documents To Support Vizio's Alter Ego Allegations Reaching Back To 2012.

The Alter Ego Requests must be narrowed insofar as they seek documents to support Vizio's alter ego allegations reaching back to 2012.  Courts routinely limit discovery related to alter ego theories to the time frame that is directly relevant to the claim that includes alter ego allegations.  *See e.g. Del Campo v. Am. Corrective Counseling Servs, Inc.*, 2008 WL 4858502, *1-2 (N.D. Cal. Nov. 10, 2008) (reducing the scope of plaintiff's discovery to 2001 to 2004, rather than the demanded time frame of 1997 to 2008, because the reduced scope represented the period that defendants' alter ego corporations allegedly were operating a check diversion program in violation of the FDCPA).  Vizio has taken the position that the alter ego claims are limited to the Framework Agreement.  Thus, assuming *arguendo* that discovery on the alter ego claims is appropriate at all (which it is not), the relevant timeframe for the requests should be narrowly prescribed to the time period when the parties negotiated and entered the Framework Agreement in 2017.

For Vizio's improper assertion that it can seek discovery 5 years prior to the Framework Agreement, it relies in its meet-and-confer letter of August 24, 2018 solely on cases that are inapposite because they do not concern the permissible scope of alter ego discovery. *See U.S. v. Jenkins*, 785 F.2d 1387, 1396-97 (9th Cir. 1986) (ruling that evidence of criminal defendant's prior bad acts were probative "other-acts" evidence under FRE 404(b) in upholding fraud conviction involving no alter ego allegations); *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (ruling that trial court's admission of evidence of criminal defendant's prior bad acts was not an abuse of discretion); *Stowers v. Wells Fargo Bank, N.A*., 2014 WL 1245070, *8 (N.D. Cal. Mar. 25, 2014) (deciding the sufficiency of alter ego allegations on a motion to dismiss); *Sea-Land, Inc. v. Petter Source*, 993 F.2d 1309, 1311-12 (7th Cir. 1993) (applying the Seventh Circuit's veil piercing test to determine sufficiency of evidence after trial).  In addition, Vizio relies on a

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

1   case from the Western District of Texas which is not controlling in this district.  Thus, the

2   time period for the Alter Ego Requests should not reach back prior to 2017 when the

3   parties entered into the Framework Agreement.

4

5           **e)      The Alter Ego Requests Improperly Demand Documents**

6                    **Protected Under Privacy Laws.**

7           The Alter Ego Requests demand numerous categories of documents that are

8   shielded from discovery because disclosure would invade privileges protected by the right

9   to privacy, the tax return privilege, and Responding Defendants' and Affiliates' third-

10  party employees' rights to maintain their privacy.  In California, the right to privacy

11  protects against the unwarranted, compelled disclosure of private or sensitive information

12  regarding financial affairs and employment records.  *Valley Bank of Nevada v. Superior*

13  *Court*, 15 Cal. 3d 652, 656 (1975) (holding that a person has a reasonable expectation of

14  privacy in financial records).  In addition, the California Supreme Court has held that

15  there is a privilege against the disclosure of income tax returns.  *Webb v. Standard Oil*

16  *Co.*, 49 Cal. 2d 509, 513 (1957).

17          In addition, LeEco and LeLe did not waive their privacy objection to the Alter Ego

18  Requests.  LeEco and LeLe specifically set forth in their general objections that they

19  object "to each and every Request to the extent that it seeks information that is protected

20  from discovery or disclosure by . . . any [] constitutional, statutory, or judicially

21  recognized privilege, immunity, right of confidentiality or other protection from discovery

22  or disclosure." *See* Defendant LeEco V. Ltd.'s Response to Plaintiff Vizio, Inc.'s Request

23  for Production of Documents (Set 1), ¶ 3; Defendant LeLe Holding Ltd.'s Response to

24  Plaintiff Vizio, Inc.'s Request for Production of Documents (Set 1), ¶ 3. Moreover, LeEco

25  and LeLe specifically set forth in their general objections that they object "to each and

26  every Request to the extent that it seeks . . . the confidential information of third-parties."

27  *See* Defendant LeEco V. Ltd.'s Response to Plaintiff Vizio, Inc.'s Request for Production

28  of Documents (Set 1), ¶ 8; Defendant LeLe Holding Ltd.'s Response to Plaintiff Vizio,

Inc.'s Request for Production of Documents (Set 1), ¶ 8.

Moreover, "[f]ailure to object on privacy grounds does not automatically waive a right to privacy." *Pearce v. Club Med Sales*, 172 F.R.D. 407, 410 (N.D. Cal. 1997); *see also Heda v. Superior Court*, 225 Cal. App. 3d 525, 529 (1990) (finding where objections were made only on other grounds no waiver was made of privacy rights).

The cases that Vizio cites in its August 24, 2017 meet-and-confer letter for its position that Responding Defendants' privacy objections are somehow waived are unavailing as they are distinguishable from the case at hand. In *M2 Software, Inc. v. M2 Communs.*, L.L.C., 217 F.R.D. 499 (C.D. Cal. 2003), the defendant's responses to almost every document request simply stated, "[s]ubject to and without waiver of its General Objections . . . Plaintiff responds that, pursuant to FRCP 33(d), *it has produced and/or will produce documents responsive to this Request.*" *Id.* at 500-01 (emphasis added). The court held that the general objections were insufficient to raise any substantial, meaningful, or enforceable objections, the plaintiff waived objections by agreeing to produce all responsive documents and the plaintiff made no claim the documents were not within the scope of the requests. In contrast, Responding Defendants provided specific objections regarding "constitutional, statutory, or judicially recognized privilege" and "confidential information of third parties," non-boilerplate objections in response to each of Vizio's Requests in addition to their general objections and refused to produce any responsive documents based on the objections. In *Springer v. Gen. Atomics Aeronautical Sys. Inc.*, No. 16CV2331-BTM(KSC), 2018 WL 490745 (S.D. Cal. Jan. 18, 2018) the court found that that the responding party caused confusion by incorporating a boilerplate objection and then admitting to the document request. Unlike *Springer*, here the general objections relating to privacy and confidentiality are not contradicted by the Responding Defendants' individual objections, but further explained and supported. Furthermore, notwithstanding the fact that Responding Defendants did not respond with "boilerplate" objections, courts have held that FRCP Rule 34 "does not contain an explicit prohibition against boilerplate objections." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for*

*Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005); *see also Del Socorro Quintero Perez v. United States*, No. 13CV1417-WQH-BGS, 2016 WL 304877, at *2 (S.D. Cal. Jan. 25, 2016) (denying the plaintiffs' motion to waive the defendants purported boilerplate objections, and noting that cases make it "clear [that] the proper procedure when in receipt of seemingly boilerplate objections is to challenge them on their merits").

### B.     Brief Description of Plaintiff's Position

#### 1.     The Limited Guaranty Does Not Preclude VIZIO From Seeking Alter Ego Discovery

Defendants for the first time assert that "[p]ursuant to the Limited Guarantee, VIZIO agreed not to pursue Lele Holding, Yueting Jia, LeEco Global Group Ltd., and their Affiliates for the $50,000,000 Buyer Termination Fee Remainder." Incorrect. First, VIZIO is not seeking to impose alter ego liability against the remaining defendants for anything *"under or in connection with the Merger Agreement."* Instead, VIZIO is pursuing them for alter ego liability in connection with the separate breach of the much-later Framework Agreement and the fraudulent conduct that gave rise to it. Second, Defendants' objections to the subject discovery make no mention of the wild notion that some sort of bar under the earlier Limited Guarantee now exists. It is too little and too late for them to make this "new" objection now. Third, the Limited Guarantee was between VIZIO and Le Technology, Inc. The latter is not a party to this lawsuit and Defendants have no standing to raise the Limited Guarantee as some sort of bar to alter ego liability. This is particularly true here, where the Order specifically makes alter ego liability a prime subject of the litigation (See Dkt 99, pp. 28-30, 33 & 35). In short, alter ego liability and discovery on that subject are part and parcel of this lawsuit.

#### 2.     VIZIO Is Entitled to The Production Of All Of The Critical Documents

Defendants also claim that Plaintiff's RFPs request information that is irrelevant, overbroad and unduly burdensome, These claims are specious.

First, the Court has already found that VIZIO has made a plausible case that the

LA 133792994v1

remaining defendants are the alter egos of LeEco, such that they may be liable for the acts, liabilities and debts of LeEco.  [Order, pp. 28-30, 33 & 35].  As such, VIZIO is plainly entitled to take discovery as to alter-ego issues to buttress the factual showing that is front and center in Judge Carter's Order.  In order for VIZIO to meet its burden of proof as to the alter-ego liability, it must be able to buttress its evidence of factors, such as:  the common ownership of the entities, inadequate capitalization of one or more of the Defendants and their affiliates, commingling of funds between individuals and companies, shuffling of funds between individuals and companies, identical officers or directors, etc. (Dkt 99, Order, p. 28).  These are exactly the types of documents that have been sought in Categories 35 - 65 of the RFPs.  Accordingly, contracts, financial statements, assets and liabilities, loan agreements, guarantees, transfers of monies, lists of employees, officers, directors, attorneys, as well as corporate governance records clearly must be produced.

Second, Defendants' claim that they do not have possession, custody or control of documents is without merit and any foundation.  In fact, all of the requested documents are in the control of Defendants.  It is undisputed that "Lele Holding and the other corporate defendants are all under the common ownership and control of Jia".  Order, p. 27.  Indeed, LeEco admitted this was the case in the filing that it made with the Committee on Foreign Investment in the United States vis-à-vis the Merger Agreement (Dkt 78, Wessel Dec., Ex 2, pp. 4, 17, 18 and Ex 5; *i.e.,* Jia owns 100% of Lele Holding, Lele Holding owns 100% of LeEco Global Group, Ltd., LeEco Global Group, Ltd., owns 100% of LeEco).  Accordingly, the rule in the Ninth Circuit is crystal clear where, as here, the RFPs were specifically directed to the ultimate corporate parent; *i.e.,* "[the parent] must produce documents possessed by a subsidiary that the parent…owns or wholly controls."  *U.S. v. International Union of Petroleum & Indus. Wks.*, 870 F.2d 1450, 1452 (9th Cir. 1989).  Indeed, the reverse is also true here, where enterprise wide misrepresentations leading to the Merger and Framework Agreements were made by Jia and other top of the chain executives for themselves and as the agents for the corporate defendants as well as their affiliates.  *St. Jude Medical S.C., Inc. v. Janssen Counotte,* 305

F.R.D. 630, 638-39 (D. Ore., 2015).  ("Control [also] may be established by the existence of a principal-agent relationship.")

### 3.    Plaintiff's Request For The Production of Alter Ego Documents Going Back To January 1, 2012 Is Reasonable

A five-year look-back period for documents aimed at proving fraud and alter ego is reasonable.  Pointedly, one of the allegations made by VIZIO is that Jia made the $2BB Wherewithal Representations on his own behalf and for the remaining defendants and various other subsidiary or affiliated corporate entities (Order, p. 15).  A five-year look back at their financial condition is plainly required to determine whether those representations were true or false when made, and to establish alter ego liability.  *See U.S. v. Ruiz*, 665 F. Appx. 607, 610 (9th Cir. 2016).  (Court allowed evidence that Defendant failed to file tax returns for a period of five years since it was probative as to intent, knowledge, lack of good faith and absence of mistake in later tax fraud).  *C.f., U.S. v. Jenkins*, 785 F2d 1387, 1395 (9th Cir.), *cert. den'd*, 479 U.S. 889 (1986) ("The fact that Jenkins used fraudulent means to secure conventional loans [in the past] is probative on issues of intent, knowledge, good faith and absence of mistake in dealing with the [later] FHA transactions.")  *Accord, Rocha v. Metropolitan Life Ins. Co.*, 2005 WL 8156353 *2 (W.D. Tx) ("The basis of Rocha's action…is her allegation Seguros Genesis acted as an alter ego, joint enterprise, or single business enterprise of MLIC…The limited [6 year look back before subject policy purchase]…is not overbroad since it allows Rocha to seek documents pertinent to (1) Seguros Genesis' relationship to MLIC; (2) MLIC's ownership interest in Seguros Genesis and other subsidiaries and affiliates; and (3) the way in which the insurance policy was marketed to Rocha's sister.").

### 4.    Defendants Have Waived Any Claim That VIZIO's Requests Violate Privacy Laws, As They Did Not Assert Any Such Objections In Response To VIZIO's RFPs

The specific responses in the RFPs do not assert any privacy or confidentiality objections, let alone the tax return or trade secret privileges.  In fact, the boilerplate

introductory general objections was the only place where an attempt was made to interpose confidentiality. These general objections are tantamount to making no objections at all. In short, they are not enforceable objections to any particular discovery request. *See Fed. R. Civ. P.* 34(b)(2)(B). *See also M2 Software, Inc. v. M2 Communications, LLC,* 217 F.R.D. 499, 500 (C.D. Cal.) ("M2 Software's responses were preceded by two pages of boilerplate General Objections…. General objections are not sufficient, meaningful or enforceable objections to any particular discovery request.").

### 5.   VIZIO'S Responses to RFA Nos. 1 and 3, and RFP No. 10 Are All Proper

A simple reading of Defendants' RFA Nos. 1 and 3, and RFP No. 10 demonstrates that these requests are vague and ambiguous, such that a response to same cannot be given. Indeed, RFP No. 10 is incomprehensible. Worse still, RFP No. 10 seeks the production of private, confidential and privileged trade secret financial documents and tax returns as well as board/shareholder minutes, etc. VIZIO specifically objected to that production and carefully defined its objections to guard those matters of privilege. In any event, Plaintiff provided cogent information in response to RFA No. 1. Accordingly, the fact that Defendants raised these requests as an issue for the conference call with the Court is puzzling, to say the least.

### III.   Statement of the Relief Requested by the Prospective Moving Party

#### A.   A Statement of the Relief Requested by Responding Defendants

LeEco intends to seek an order compelling Vizio to answer LeEco's request for admission Nos. 1 and 3, and to produce documents in response to LeEco's request for production of documents Nos. 10. Pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 37, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. Proc (37)(a)(1). The party "seeking discovery may move for an order compelling an answer, designation, production or inspection." Fed. R. Civ. Proc (37)(a)(B).

Responding Defendants intend to seek a protective order consistent with their

objections to producing documents in response to Vizio's Requests Nos. Nos. 7, 9-10, 12, 14-15, 20, 29, 31-33, and 36-62.  Pursuant to FRCP Rule 26(c), a court "may, for good cause issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .  including forbidding … or limiting the scope of … discovery to certain matters."  Fed. R. Civ. Proc (26)(c)(1)(D).  FRCP Rule 26(c)(7) authorizes courts to issue protective orders "for good cause."  Fed. R. Civ. Proc (26)(c)(7).  Here, there is good cause to grant a protective order because the Limited Guarantee precludes Vizio from seeking alter ego discovery concerning Non-Recourse Parties, and the Alter Ego Requests are irrelevant, overbroad, unduly burdensome, and in violation of Vizio's contractual obligations.  In addition, the Alter Ego Requests improperly demand documents protected under privacy law.  Moreover, good cause exists to enter a protective over because the Alter Ego Requests and Vizio's Requests Nos. 7, 9-10, 12, 14-15, 20, 29, and 31-33 are improper and exceed the scope of the FRCP insofar as they demand documents outside LeLe's and LeEco's possession, custody, or control.  To the extent the Court does not prevent Vizio from seeking documents in response to Vizio's Requests in dispute, in the alternative, Responding Defendants motion will request that the Court order Vizio to withdraw or narrow its document requests consistent with Responding Defendants' objections.

## B.    A Statement of the Relief Requested by Vizio

Plaintiff requests that Defendants LeEco and LeLe Holdings be compelled to provide full responses to Plaintiff's RFP Nos. 35 through 65, without objections, and be required to produce all responsive documents in their possession, custody or control within twenty (20) days, along with their long awaited privilege log.

## IV.    Description of the Good Faith Efforts Undertaken Thus Far to Resolve the Dispute

## A.    Responding Defendants' Description of Good Faith Efforts Undertaken Thus Far to Resolve the Dispute

The parties conferred in a good faith effort to eliminate the necessity for hearing the

motion or to eliminate as many of the disputes as possible. In an effort to resolve the dispute, the parties met and conferred in person on August 7, 2018 at Greenberg Traurig's office in Los Angeles.  The parties discussed thoroughly the substance of the parties' disputes regarding Responding Defendants' responses to Vizio's RFPs and Vizio's RFA Responses and RFP Responses, and any potential resolution.

During the August 7th meet-and-confer, the parties agreed that Responding Defendants would prepare and send a letter on August 13, 2018 to Vizio's counsel to further meet and confer regarding their position regarding the discovery disputes.  Vizio sent Responding Defendants an email on August 13, 2018 providing two cases that Vizio contends support their assertion that a five-year period for discovery related to alter ego liability is not overbroad.  Responding Defendants sent the agreed upon meet and confer letter to Vizio on August 13, 2018, which outlined their positions that: Vizio is not entitled to seek certain discovery, including requests for documents related to alter ego allegations, because the Limited Guarantee expressly prevents Vizio from doing so; and even if Vizio was not precluded from seeking such discovery (which it is), Vizio's Requests at issue improperly seek documents (1) of third-parties, (2) not in Responding Defendants' possession, custody or control, (3) in violation of privacy laws, and (4) outside the time frame that is appropriate for such requests.  (*See* Exhibit 1, August 13, 2018 letter). Responding Defendants' meet and confer letter of August 13, 2018 further explained the deficiencies in Vizio's RFA and RFP Responses.  However, the parties have been unable to reach a resolution.  On Friday, August 24, 2018, Vizio's counsel sent the Responding Defendants' counsel a 10-page letter responded to the August 13, 2018 meet-and-confer letter setting out Vizio's legal authority and position with respect to each of the Responding Defendants' arguments.  (*See* Exhibit 2, August 24, 2018 letter)  In Vizio's counsel's August 24, 2018, letter Vizio also raised for the first time 9 new cases and several new assertions that the Limited Guarantee does not preclude Vizio's fraud claims, that the Framework Agreement terminated the Limited Guarantee and that the Responding Defendants waived their objections.  The Responding Defendants' reviewed Vizio's 10-

JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE

page letter over that weekend and responded to Vizio's counsel on Sunday, August 26, 2018.

### B.    Vizio's Description of Good Faith Efforts Undertaken Thus Far to Resolve the Dispute

In an attempt to resolve the dispute herein, the parties have met and conferred telephonically on at least two occasions, have met and conferred in person on two occasions (once at each attorney's office) and the parties have each provided to the other letters setting forth their positions, in detail, with legal authority.[3]

## V.    Three Proposed Dates and Times Agreeable to the Parties for a Conference with the Court

The Parties supplied the Court with three agreeable dates and times for a conference with the Court. The telephonic conference will take place on August 28, 2018 at 10:00 am.

## VI.    The Parties Prefer a telephonic informal conference.

The Parties agree that they prefer a telephonic conference.


DATED: August 27, 2018


GREENBERG TRAURIG, LLP


By /s/ Jeff K. Joyner
Jeff K. Joyner
Daniel Tyukody
Attorneys for Defendants,
LeECO V. LTD. AND LELE HOLDING, LTD.

---

[3] VIZIO's August 24 letter to Defendants is attached strictly as a matter of convenience for the Court.

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

LA 133792994v1

1    DATED:  August 27, 2018          ERVIN COHEN & JESSUP LLP

2

3                                      By /s/ Robert M. Waxman
                                          Robert M. Waxman
4                                         Attorneys for Plaintiff,
                                          Vizio, Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT REPORT RE DISCOVERY DISPUTE CONFERENCE**

*LA 133792994v1*