

Jeff Joyner
Tel 310.586.3877
Fax 310.586.7800
joynerj@gtlaw.com

August 13, 2018

<u>VIA EMAIL</u>

**Ervin Cohen & Jessup LLP**
Robert Waxman, Esq.
David N. Tarlow, Esq.
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90210-2974

Re:   *Vizio, Inc. v. LeEco V. Ltd., Case No.: 17-CV-1175*

Dear Messrs. Waxman and Tarlow:

      This letter follows our meeting on August 7, 2018 (the "Meeting") to further meet and confer regarding the First Set of Requests for Production of Documents (the "Requests") that Plaintiff Vizio, Inc. ("Vizio") has propounded on LeEco V. Ltd. ("LeEco") and LeLe Holding, Ltd. ("LeLe") (collectively "Responding Defendants") in the above-referenced matter. During our Meeting and pursuant to the Magistrate's Order dated July 30, 2018, Vizio agreed that Responding Defendants would send a letter to you today explaining why the Requests for documents related to alter ego allegations are improper.

      In this regard, the following memorializes Responding Defendants' positions that we asserted at the Meeting that Vizio is not entitled to seek certain discovery because the Limited Guarantee entered into between Vizio and Le Technology, Inc. prevents Vizio from doing so. This letter further sets out that, even if Vizio was not precluded from seeking such discovery (which it is), the Requests at issue improperly seek documents (1) of third-parties, (2) not in Responding Defendants' possession, custody or control, (3) in violation of privacy laws, and (4) outside the time frame that is appropriate for such requests. Finally, this letter sets out the deficiencies in Vizio's responses to LeEco's requests for admissions ("Vizio's RFA Responses") and requests for production of documents (Vizio's RFP Responses).

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN¬
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SEOUL~
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TOKYO¤
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

¬ OPERATES AS
  GREENBERG TRAURIG GERMANY, LLP
* OPERATES AS A
  SEPARATE UK REGISTERED LEGAL ENTITY
+ OPERATES AS
  GREENBERG TRAURIG, S.C.
** STRATEGIC ALLIANCE
~ OPERATES AS
  GREENBERG TRAURIG LLP
  FOREIGN LEGAL CONSULTANT OFFICE
^ A BRANCH OF
  GREENBERG TRAURIG, P.A.,
  FLORIDA, USA
¤ OPERATES AS
  GT TOKYO HORITSU JIMUSHO
~ OPERATES AS
  GREENBERG TRAURIG GRZESIAK SPIKE

LA 133774881v7

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
1840 Century Park East, Suite 1900, Los Angeles, California 90067-2121 ■ Tel: 310.586.7700 ■ Fax 310.586.7800

August 13, 2018
Page 2

### A. The Limited Guarantee Precludes Vizio From Seeking Alter Ego Discovery Concerning Non-Recourse Parties.

You stated at the Meeting that Vizio's discovery related to alter ego is limited to Vizio's claim for breach of the Framework Agreement.[1]  However, Vizio's alter ego discovery in reality seeks to reap all of the benefits of the Merger Agreement[2], without accepting any of its burdens. Requests Nos. 36 through 62 (the "Alter Ego Requests") pertain to the claims and legal theories that Vizio expressly agreed to forego when executing the Limited Guarantee.  Thus, insofar as the Requests seek discovery from the Non-Recourse Parties under the Limited Guarantee, the Alter Ego Requests are precluded.

Pursuant to the Limited Guarantee, which was integral to the Merger Agreement, Vizio agreed not to pursue LeLe, Yueting Jia ("Mr. Jia"), LeEco Global Group Ltd. ("Global Group"), and their "Affiliates" for the $50,000,000 Buyer Termination Fee Remainder.  (*See* Exhibit H to the Merger Agreement).  Both Mr. Jia and LeLe are Non-Recourse Parties, as defined in Section 13 of the Limited Guarantee, under which Vizio obligated itself that "[n]otwithstanding anything that may be expressed or implied in this Guarantee *or any document or instrument delivered concurrently herewith* [*i.e.*, the Merger Agreement], by its acceptance of the benefits of this Guarantee, the Company acknowledges and agrees that it has no right of recovery against [a broad range of Non-Recourse Parties, including "Affiliates"] *through the Buyer or otherwise*, whether *by or through attempted piercing of the corporate veil."*  The Limited Guarantee continues, "[t]he Company . . . acknowledges and agrees that recourse against the Guarantor . . . shall be the sole and exclusive remedy of the Company . . . in respect of *any liabilities* or obligations arising under, or in connection with, the *Merger Agreement* … including by *piercing of the corporate veil by or through a claim by or on behalf of the Buyer.*"

So clearly, as to anything connected with the Merger Agreement, neither Mr. Jia nor LeLe are proper parties.  Vizio acknowledged this by naming only LeEco in its fifth cause of action for the breach of the Merger Agreement.  You further committed to this position by your statements, at our meet and confer on August 7, 2018, that Vizio was only pursuing alter ego liability for breach of the Framework Agreement, not the Merger Agreement.  Yet, the damages that Vizio seeks—supposedly pursuant to the Framework Agreement—consist of the damages available under the Merger Agreement.  See SAC,¶ 64 (alleging "reliance and/or lost opportunity damages in the sum of $10,000,000 (i.e., the remaining of the Buyer Termination Fee Deposit and the $50,000,000 Buyer Termination Fee Remainder)" in Vizio's claim for breach of the Framework Agreement); *see also* ¶¶ 77 (fraud underlying the Framework Agreement), 93 (negligent misrepresentation under the Framework Agreement), 106 (promissory estoppel).  Vizio's theory is that it is supposedly allowed to pursue its contractual remedies under the

---

[1] The "Framework Agreement" refers to the Framework, Termination and Mutual General Release Agreement entered into as of April 5, 2015 among LeEco and Vizio.

[2] The "Merger Agreement" refers to the Agreement and Plan of Merger dated July 6, 2016 between LeEco and Vizio.

*LA 133774881v7*

August 13, 2018
Page 3

Merger Agreement, through the Framework Agreement, without having to be bound by the other terms in the Merger Agreement, namely the limitations on who it can sue pursuant to the Limited Guarantee. This cannot be, and is not, the law.

Vizio cannot argue that it is entitled to the contractual benefits of the Merger Agreement, without also acknowledging the Merger Agreement's contractual proscription against bringing claims (and discovery related to those claims) against Mr. Jia, LeLe, and others defined as Non-Recourse Parties in the Limited Guarantee. Put another way, Vizio may not do indirectly what it is clearly proscribed from doing directly. Thus, the Alter Ego Requests are improper insofar as they seek discovery related to Non-Recourse Parties that Vizio released under the Limited Guarantee.

> **B.     Vizio Cannot Demand Discovery Concerning Third-Parties That Are Not Alleged Alter Egos Of Responding Defendants.**

The Alter Ego Requests are irrelevant, overbroad, unduly burdensome, and in violation of Vizio's contractual obligations insofar as they demand discovery relating to "Affiliates" against which Vizio makes no alter ego allegations in the operative Second Amended Complaint ("SAC") and agreed not to sue in the Limited Guarantee. *See* FAC, ¶¶ 56-57. This defect affects Requests Nos. 36-39, 43-49, 51-54, 58 & 60-65.

The Alter Ego Requests broadly define the term "Affiliates" to mean any entity in which the Person referenced in the Request owns at least a 20% interest. This definition not only sweeps a vast number of entities with no connection to this case into Plaintiff's discovery, but violates Vizio's obligation not to sue Non-Recourse Parties. By way of example, if this definition were applied, LeLe and LeEco would be required to produce documents of Non-Recourse Parties related to *all contracts of any kind* (RFP 43), *all financial statements* (RFP 51), *all assets* in excess of $100,000 (RFP 53), *all liabilities* in excess of $100,000 (RFP 54), *any monies transferred* (RFP 47), *all loan agreements* (RFP 49), all documents related to *the capitalization* of any of these companies (RFP 50), *all corporate minutes*, board agendas and resolutions (RFPs 39-42), and the identities and *contact information* of *all employees* (RFP 45-46) for their Affiliates. Given Vizio's agreement that it is limiting its alter ego allegations to the Framework Agreement, this discovery represents "not merely a 'fishing expedition,' but . . . an effort to 'drain the pond and collect the fish from the bottom.'" *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (quoting *In re IBM Peripheral EDP Devices Anti–Trust Litigation,* 77 F.R.D. 39, 41–42 (N.D. Cal. 1977)).

> **C.     The Requests Improperly Demand That Responding Defendants Produce Documents Outside Their Possession, Custody, and Control.**

The Alter Ego Requests and Requests Nos. 7, 9-10, 12, 14-15, 20, 29, and 31-33 are improper and exceed the scope of the Federal Rules of Civil Procedure insofar as they demand documents outside LeLe's and LeEco's possession, custody, or control.

LA 133774881v7

August 13, 2018
Page 4

    Under the Federal Rules of Civil Procedure, Rule 34, documents are within a discovery target's control if the target has "the legal right to obtain the documents on demand." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("It is not enough that a party may have a practical ability to obtain the requested documents from an affiliated organization, because the other entity could legally—and without breaching any contract—continue to refuse to turn over such documents."). "A party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *Micron Tech., Inc. v. Tessera, Inc.*, 2006 WL 1646133, *1 (N.D. Cal. Jun. 4, 2006).

    Affiliated corporate entities—including subsidiaries, sister companies, and parent companies—do not have control over each other's documents absent a contractual or statutory right. *See e.g., Ehrlich v. BMW of North America, LLC*, 2011 WL 3489105, *1 (C.D. Cal. May 2, 2011) ("Plaintiff has not established that Defendant BMW NA has legal control over documents in BMW AG's files. BMW NA is owned by a company that is owned by BMW AG. Nothing about this relationship suggests that BMW NA has the power to order BMW AG to turn over documents to BMW NA. Nor has Plaintiff presented any evidence that BMW AG is under a contractual obligation to turn over documents requested by BMW NA"); *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, 2006 WL 3742244, at *3 (N.D. Cal. Dec. 19, 2006) (denying motion to compel documents in sister corporation's possession where plaintiff showed the entities were "closely affiliated; that employees of one report to the other, that the companies are involved in each other's budget decisions, and do in fact share a great deal of information" because "[t]hese facts, however, even if wholly true, are insufficient to establish that MDL Inc. has the legal right to obtain documents in possession of MDL GmbH on demand."); *See Micron Tech., Inc.,* 2006 WL 1646133 at *2 (denying motion to compel party SPIL to produce documents under the control of non-party SUI even though "SUI is 100% owned [indirectly] by SPIL, ... SUI would in the ordinary course of business have access to the documents," "SPIL created SUI to engage as SPIL's sales agent in North America," and "SUI and SPIL have overlapping management teams.").

    Here, Vizio's definition of "Affiliates" includes numerous parent, sister, and subsidiary entities from which LeLe and LeEco do not have the legal right to obtain documents on demand. Additionally, Vizio has failed to meet its burden of showing otherwise. This renders the Alter Ego Requests seeking Affiliates' documents improper under Rule 34.

    **D.    The Alter Ego Requests Must Be Narrowed Insofar As They Seek Documents To Support Vizio's Alter Ego Allegations Reaching Back To 2012.**

    In light of Vizio's position that the alter ego claims are limited to the Framework Agreement, the Alter Ego Requests are irrelevant and overbroad as to time insofar as they demand documents created prior to Vizio and LeEco entering into the Framework Agreement. If Vizio's position is accepted, the discovery timeframe would begin no earlier than November of 2016 when the parties began negotiating the Framework Agreement.

LA 133774881v7

August 13, 2018
Page 5

Courts routinely limit discovery related to alter ego theories to the time frame that is directly relevant to the claim that includes alter ego allegations. *See e.g. Del Campo v. Am. Corrective Counseling Servs, Inc.*, 2008 WL 4858502, *1-2 (N.D. Cal. Nov. 10, 2008) (reducing the scope of plaintiff's discovery to 2001 to 2004, rather than the demanded time frame of 1997 to 2008, because the reduced scope represented the period that defendants' alter ego corporations allegedly were operating a check diversion program in violation of the FDCPA); *Benchmark Design, Inc. v. BDC, Inc.*, No. CIV. 88-1007-FR, 1989 WL 81618, at *2 (D. Or. July 5, 1989) (limiting discovery of defendants' potentially co-owned assets to the four-year period relevant to plaintiff's alter ego allegations).

The cases you have provided to us in your email of this afternoon and Vizio's portion of a recent joint stipulation are inapposite because they do not concern the permissible scope of alter ego discovery. *See U.S. v. Jenkins*, 785 F.2d 1387, 1396-97 (9th Cir. 1986) (ruling that evidence of criminal defendant's prior bad acts were probative "other-acts" evidence under FRE 404(b) in upholding fraud conviction involving no alter ego allegations); *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (ruling that trial court's admission of evidence of criminal defendant's prior bad acts was not an abuse of discretion); *Stowers v. Wells Fargo Bank, N.A.*, 2014 WL 1245070, *8 (N.D. Cal. Mar. 25, 2014) (deciding the sufficiency of alter ego allegations on a motion to dismiss); *Sea-Land, Inc. v. Petter Source,* 993 F.2d 1309, 1311-12 (7th Cir. 1993) (applying the Seventh Circuit's veil piercing test to determine sufficiency of evidence after trial).

Here, the Alter Ego Requests demand information beginning in 2012 even though the parties did not enter into the Framework Agreement until 2017. Accordingly, Vizio must narrowly tailor its discovery to the specific time period when the parties negotiated and entered the Framework Agreement.

### E. The Alter Ego Requests Improperly Demand Documents Protected Under Privacy Laws

The Alter Ego Requests demand numerous categories of documents that are shielded from discovery because disclosure would invade privileges protected by the right to privacy, the tax return privilege, and Responding Defendants' and Affiliates' third-party employees' rights to maintain their privacy.

In this diversity action, state law governs privilege claims. Fed. R. Evid. 501. In California, the right to privacy is an "inalienable right" secured by Article I, Section I of the California Constitution. *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004 (2000). It protects against the unwarranted, compelled disclosure of private or sensitive information regarding financial affairs and employment records. *Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652, 656 (1975) (holding that a person has a reasonable expectation of privacy in financial records); *Board of Trustees v. Leach,* 258 Cal. App. 2d 281 (1968) ("[I]t is common knowledge that [employee personnel files] are among the most confidential and sensitive records

August 13, 2018
Page 6

kept by a private or public employer, and their use remains effective only so long as the confidence of the records, and the confidences of those who contribute to those records, are maintained."). Factors to consider in balancing the right of a civil litigant to discover relevant facts with a party's right to maintain reasonable privacy in sensitive affairs include "the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting disclosure and availability of alternative, less intrusive means for obtaining the requested information." *Hooser*, 84 Cal. App. 4th at 1004.

In addition, the California Supreme Court has held that Revenue and Taxation Code section 19282, which prohibits disclosure of tax returns, implicitly creates a privilege against the disclosure of income tax returns. *Webb v. Standard Oil Co.,* 49 Cal. 2d 509, 513 (1957). This privilege against forced disclosure of tax returns has been reaffirmed in a variety of situations. *See Sav-On Drugs v. Superior Court*, 15 Cal. 3d 1, 3, 6-7 (1975) (sales tax returns); *Crest Catering Co. v. Superior Court*, 62 Cal. 2d 274 (1965) (employment tax returns); *Rifkind v. Superior Court*, 123 Cal. App. 3d 1045, 1048-1049 (corporate income tax returns); *Brown v. Superior Court,* 71 Cal. App. 3d 141 (1977) (W-2 forms); *Fortunato v. Sup. Court*, 114 Cal. App. 4th 475, 482 (2003) (income tax returns). Further, Vizio raised the tax return privilege in objecting to Responding Defendants' discovery.

Here, the Alter Ego Requests demand that LeLe and LeEco produce privileged information and Vizio has not shown that the relevant factors favor production. This is particularly true for the Non-Recourse Parties which Vizio cannot pursue claims against arising out of the Merger Agreement.

### F.   Deficiencies In Vizio's Responses To LeEco's First Set of Requests For Admissions And Requests For Production.

We discussed during the Meeting that Vizio has not produced a single document in response to LeEco's RFPs, and the following deficiencies in Vizio's RFA and RFP Responses.

**RFA No. 1**: RFA No. 1 states, "Admit that You drafted Section 1.1 of the Framework Agreement." Vizio avoids answering this question by stating that, "the Framework Agreement and the terms therein were drafted by Vizio and one or more of the Defendants." That is in no way responsive to the question presented. RFA No. 1 specifically asks whether Section 1.1 was drafted by Vizio, which Defendants believe the evidence will inevitably establish. There is a presumption under California law that when the language of a contract is ambiguous, the ambiguity is interpreted against the drafter. *S. California Reg'l Rail Auth. v. Hyundai Rotem Co.*, No. LACV1608042JAKJEMX, 2017 WL 2989178, at *8 (C.D. Cal. July 13, 2017). That fundamental principal is what RFA No. 1 is directed towards, and is precisely what Vizio has blatantly refused to answer. Vizio must amend its response to either admit or deny that it drafted Section 1.1 of the Framework Agreement.

**RFA No. 3:**  RFA No. 3 states, "Admit that, as of at least June 9, 2017 when You sent the Demand for Immediate Payment to LeEco Global Group, You no longer had any interest in entering into the China JV." There is a dispute between the parties as to whether each party exercised good faith in connection with the obligation under Section 3.1 of the Framework Agreement that the Parties negotiate in good faith and use reasonable efforts to form a joint venture in China. Vizio's "response" to this RFA is specifically designed *not* to answer the question presented, and instead, merely consists of arguments. It is well established that, "[i]n responding to a request for admission, a party must either admit the matter, specifically deny it, or state in detail why the answering party cannot truthfully admit or deny it." *Bretana v. Int'l Collection Corp.*, No. C07-05934 JF (HRL), 2008 WL 4334710, at *2 (N.D. Cal. Sept. 22, 2008). Accordingly, Vizio must amend its deficient response.

**RFP No. 10:**  RFP No. 10 seeks "All Documents and Communications concerning the aftermath of the decision to terminate the Framework Agreement, including communications between and among Vizio's Board, its management, its shareholders, and the general public."  Vizio has refused to produce any documents responsive to RFP No. 10. Discovering how Vizio was affected by the decision to terminate the Framework Agreement is directly relevant to the claims at issue in this litigation, including Defendants' defense to the alleged damages in this litigation. Accordingly, Vizio must produce documents responsive to RFP No. 10.

If Vizio disagrees with any of the Responding Defendants' positions regarding Vizio's Requests or LeEco's RFAs and RFPs, please let us know Vizio's position with respect to those issues that remain in dispute.  If the parties are not able to resolve any such dispute by tomorrow, please provide us with three dates and times you are available so that we can coordinate our schedules and jointly submit three dates for a telephonic pre-discovery motion conference pursuant to the Magistrate Judge's Order dated July 30, 2018.  We are available from August 15 to 21 and August 27 to 30.

Sincerely,

*/s/ Jeff Joyner*

Jeff Joyner