Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
  jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff/Counter-Defendant VIZIO, Inc., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10, <br><br> Defendant. <br><br>———————————————— <br> LeECO V. LTD., <br><br> Counter-Claimant, <br><br> vs. <br><br> VIZIO, INC., a California corporation, <br><br> Counter-Defendant. | Case No. 8:17-CV-01175-DOC-JDE <br><br> The Hon. David O. Carter <br><br> **PLAINTIFF/COUNTER-DEFENDANT VIZIO, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS LELE HOLDING LTD.'S AND YUETING JIA'S COUNTERCLAIMS PURSUANT TO RULES 12(b)(6) and 12(b)(7).** <br><br> **Date:         October 29, 2018** <br> **Time:         8:30 a.m.** <br> **Courtroom:   9D** |

ERVIN COHEN & JESSUP LLP

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 29, 2018 at 8:30 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, the Honorable David O. Carter presiding, located at the Ronald Reagan Federal Building, United States Courthouse, 441 West Fourth Street, Santa Ana, California 92701, Plaintiff/Counter-Defendant VIZIO, Inc. ("VIZIO") will and hereby does move this Court for an order dismissing the First, Second and Third Counts for Relief in Counterclaimants Lele Holding Ltd.'s and Yueting  Jia's identical Counterclaims pursuant to *Federal Rules of Civil Procedure* 12(b)(6) and 12(b)(7) for failure to state a claim upon which relief can be granted and failure to join a required party.

The grounds of the Motion to Dismiss are as follows:  1) The Limited Guarantee upon which the First, Second and Third Claims for Relief in the Counterclaims are predicated, if interpreted in the manner suggested by Counterclaimants, has for its object, to release and exempt Counterclaimants from responsibility for their own breach of, and fraudulent inducement of VIZIO to enter into, the Framework Agreement and forego immediate payment of a $100MM Buyer Termination Fee to which VIZIO was otherwise entitled, and therefore, is neither enforceable as a matter of law pursuant to *California Civil Code* §§ 1667 and 1668 nor can it serve as a lawful basis for each or any of these Claims for Relief; 2) the plain terms of the Limited Guarantee simply do not release Counterclaimants from alter ego liability arising from their breach of, and fraudulent inducement of VIZIO to enter into the Framework Agreement, and therefore, neither each or any of Counterclaimants' Claims for Relief state a claim upon which relief may be granted; 3) the Second Claim for Relief for Promissory Estoppel is fatally defective since Counterclaimants have not demonstrated that they relied on any alleged promise made by VIZIO; and 4) the First, Second and Third Claims for Relief of the Counterclaims should be dismissed as Counterclaimants have failed to join a required party pursuant to *Fed. R. Civ. P.* 19, depriving the Court of the ability to

ERVIN COHEN & JESSUP LLP

1  afford complete relief in this action.

2      This Motion is made following the conference of counsel pursuant to Local

3  Rule 7-3, which took place on September 7, 2018.

4      This Motion is based upon this notice, the attached memorandum of points

5  and authorities, the files and records in this matter and on such other oral or

6  documentary evidence as may be presented at the hearing of this motion.

7  DATED:  September 14, 2018          ERVIN COHEN & JESSUP LLP
                                      Robert M. Waxman
8                                     David N. Tarlow
                                      Jason L. Haas
9

10

11
                                      By:  /s/ Robert M. Waxman
12                                         Robert M. Waxman
13                                         Attorneys for Plaintiff/Counter-Defendant
                                           VIZIO, Inc., a California corporation
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................... 7

II. PRELIMINARY STATEMENT ............................................................... 8

    A.    VIZIO's Pleadings ....................................................................... 8

    B.    The Prior Motion To Dismiss And The Order ..................................... 11

    C.    The Counterclaims ..................................................................... 14

    D.    The Counterclaims Are Nothing More Than A Reiteration Of The Release Or Covenant Not To Sue Theory That This Court Has Already Rejected .................................................................. 15

    E.    Le Tech Is A Required Party ......................................................... 18

III. STATEMENT OF LAW ......................................................................... 19

    A.    Standards On A Fed. R. Civ. P. 12(b)(6) Motion To Dismiss ............... 19

    B.    The So-Called Restrictive Language In The Limited Guarantee Cannot Be Enforced To Bar VIZIO From Suing Counterclaimants For "Any Claims" ............................................... 20

    C.    The Language Of The Limited Guarantee Does Not Support Lele And Jia's Claim That VIZIO Somehow Released Them From Liability In Connection With the Framework Agreement, Let Alone, The Fraudulent Inducement Thereof ..................................... 23

    D.    Counterclaimants Have Failed To Plead A Claim For Promissory Estoppel .................................................................. 24

    E.    All Three Counts In The Counterclaims Must Be Dismissed, As Lele And Jia Have Failed To Join A Required Party To This Action - Le Technology ................................................................ 25

IV. CONCLUSION ..................................................................................... 28

ERVIN COHEN & JESSUP LLP

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................19, 20

*Baker Pacific Corp. v. Suttles,*
    220 Cal. App. 3d 1148 (1990).............................................................16, 21, 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................19, 20

*Camacho v. Major League Baseball,*
    297 F.R.D. 457 (S.D. Cal. 2013)...........................................................................27

*Copeland v. Baskin Robbins, U.S.A.,*
    96 Cal. App. 4th 1251 (2002) .............................................................................18, 24

*Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.,*
    276 F. 3d 1150 (9th Cir. 2002)..........................................................................26, 27

*DotConnectAfrica Trust v. Internet Corporation for Assigned Names and Numbers,*
    2016 WL 9136168*4 ...........................................................................9, 16, 20

*E.E.O.C. v. Peabody Western Coal Co.,*
    400 F.3d 774 (9th Cir. 2005)...........................................................19, 25, 26, 27

*Granadino v. Wells Fargo Bank, N.A.,*
    236 Cal. App. 4th 411 (2015) ...............................................................................24

*Halsten v. Grass Valley Medical Reimbursement Fund, Ltd.,*
    784 F.2d 1392, 1402-03 (9th Cir.) .........................................................................9

*Health Net of California, Inc. v. Dept. of Health Services,*
    113 Cal.App. 4th 224 (2003)...............................................................................22

*In re Sepulveda,*
    2017 WL 1505216*8 (9th Cir. B.A.P.) ....................................................18, 24

*Jiminez v. 24 Hour Fitness USA, Inc.,*
    237 Cal. App. 4th 546 (2015) ...............................................................................13

*Lomayaktewa v. Hathaway,*
    520 F.2d 1324 (9th Cir. 1975) ...............................................................................26

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
    519 F.3d 1025 (9th Cir. 2008) ...............................................................................20

*McClain v. Octagon Plaza, LLC,*
    159 Cal. App. 4th 784 (2008)...............................................................................13

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

*Papasan v. Allain,*
  478 U.S. 265 (1986) ...................................................................................20

*Peregrine Pharmaceuticals, Inc. v. Clinical Supplies Management, Inc.,*
  2014 WL 3791567*5 ...........................................................................17, 22

*Rincon EV Realty LLC v. CPIII Rincon Towers,*
  *Inc.,* 8 Cal. App. 5th 1 (2017) ...................................................................19

*Seeger v. Odell,*
  18 Cal. 2d 409 (1941) ................................................................................13

*Skilstuf, Inc. v. CVS Caremark Corp.,*
  669 F. 3d 1005 (9th Cir. 2012) .................................................................22

*Stanley Elec. Co., Inc. v. Crawford Equipment and Engineering Co.,*
  249 F.R.D. 267 (S.D. Ohio 2008) .............................................................26

## STATUTES

*California Civil Code* § 1641 ............................................................................17

*California Civil Code* § 1667 .................................................................2, 16, 20

*California Civil Code* § 1668 ....................................................................passim

*California Civil Code* §1643 .............................................................................17

## RULES

*Federal Rules of Civil Procedure* Rule 12(b)(6) ...............................................19

*Federal Rules of Civil Procedure* Rule 12(b)(7) ...............................................25

*Federal Rules of Civil Procedure* Rule 19 ...............................................25, 26

*Federal Rules of Civil Procedure* Rule 19(a)(1)(A) .........................................19

PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS

ERVIN COHEN & JESSUP LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This Motion to Dismiss posits four basic issues for decision:

1.     Whether the Limited Guarantee that was "integral" to the Merger Agreement somehow bars any and all claims against Counterclaimants, where:

(a) the only causes of action as to which alter-ego liability have been sought are those for the breach and fraudulent inducement torts with respect to the much later Framework Agreement; and

(b) Counterclaimants have admitted that the Framework Agreement was "not [even] contemplated" when the Merger Agreement and Limited Guarantee were made.

2.     Whether the Limited Guarantee somehow bars any and all claims against Counterclaimants where:

(a) strong statutory California public policy prohibits enforcement of contractual  provisions that cut off liability for "any and all claims", particularly those for fraud based torts;

(b) the Limited Guarantee only prohibits alter-ego claims on direct causes of action for breach of the Merger Agreement, or for breach of express or implied warranties thereunder, or perhaps for negligent performance of the Merger Agreement, and

(c) the Fifth Claim for Breach of the Merger Agreement is the only cause of action "arising under, or in connection with the Merger Agreement, or the transactions contemplated thereby" and that cause of action is neither made against Counterclaimants nor does it even incorporate any alter-ego allegations by reference.

3.     Whether Counterclaimants can assert a Claim for Promissory Estoppel without pleading facts that show Counterclaimants' reliance on any alleged promise

1   by VIZIO.

2        4,    Whether Counterclaims can go forward in the absence of an

3   indispensable party, Le Technology, Inc., the entity with whom the Limited

4   Guarantee was made and in whose absence complete relief cannot be afforded in the

5   within action.

6        VIZIO respectfully submits that each of these questions requires the same

7   response:

8        "No."

9                    **II.**

10              **PRELIMINARY STATEMENT**

11     **A.**    **VIZIO's Pleadings**

12        Plaintiff/Counter-Defendant VIZIO, Inc. ("VIZIO") and Defendant LeECO

13   V. LTD., ("LeEco") and Le V Merger Sub Inc., ("Merger Sub") entered into a

14   written agreement with respect to the proposed merger of VIZIO into LeEco

15   (hereinafter the "Merger Agreement"), whereby LeEco was to pay to VIZIO the

16   sum of $2 billion. (Dkt 99, Civil Minutes – General, Order Granting in Part

17   LeEco's Motion to Dismiss; Denying Jia's Motion to Dismiss; Denying Lele

18   Holding's Motion to Dismiss; and Granting in Part VIZIO's Motion to Dismiss

19   ("Order"), p. 2).[1]  Under the Merger Agreement, in the event that the merger was

20   not consummated because of LeEco's breach of Section 9.1(b)(ii) (LeEco's breach

21   of representations or warranties), Section 9.1(c)(ii) (LeEco's breach of covenants or

22   agreements in the Merger Agreement) or Section 9.1(d) (LeEco's failure to close the

23   merger by the end date) and immediately prior to such termination, regulatory

24   approvals necessary for closing the merger had not been satisfied primarily due to

25   _____

26       [1] Many of the underlying facts and legal theories are discussed at length in the

27   Order.  Where appropriate, VIZIO will cite to the pages of the Order which discuss these underlying facts and legal theories for the convenience of the Court.

28

ERVIN COHEN & JESSUP LLP

LeEco and Merger Sub's failure to have sufficient cash on hand, LeEco would be obligated to pay a buyer termination fee to VIZIO of $100 MM (hereinafter the "Buyer Termination Fee"). (Order, Dkt 99, p. 2; Merger Agreement Paragraph 9.2(b). (Dkt 47-2, Pages 85-90 of the Merger Agreement). The Merger Agreement goes on to state in Section 11.7 that it and any claim or controversy arising out of the Merger Agreement shall be governed and construed in accordance with the domestic laws of the State of California. (*Id.*, at pp. 100-101).[2]  Similarly, the much later Framework Agreement also makes the same choice of California law. (Dkt 23-3, Wong Dec., Ex "2", Framework Agreement, ¶ 9.4).

On or about March 30, 2017, VIZIO served a written Notice of Termination of the Merger Agreement upon LeEco for its various breaches of the Merger Agreement. (Dkt 101, Second Amended Complaint ("SAC"), ¶ 29).   Shortly after receipt of the Termination Notice, Defendant/Counterclaimant Lele Holding, Ltd. ("Lele") , Defendant Le Eco Global Group Ltd. ("Global Group") and LeEco, by and through, *inter alia*, Defendant/Counterclaimant Yueting Jia ("Jia") - - discussed

---

[2] This choice of law language in the Merger Agreement goes hand in hand with the admission by Counterclaimants that the Limited Guarantee "was an integral part of the Merger Agreement." (Dkt 107 & 108, Counterclaims, p. 16, ¶ 9). But even if California law somehow does not govern by virtue of this "integral part" admission, let alone the choice of law provision in the Merger Agreement, that would be of no moment to this Motion to Dismiss where, as here, Counterclaimants have likewise admitted that the so-called restrictive language in the Limited Guarantee upon which the Counterclaims are based somehow "obligates VIZIO not to sue [Counterclaimants] for **any** claims." (Dkt 110, Joint Report re Discovery Dispute Conference, p. 10, lns 24-28).  That is because this admission is independently sufficient to trigger the application of California law since it flies directly in the face of strong California public policy to the contrary in § 1668 of the *California Civil Code*. *E.g., DotConnectAfrica Trust v. Internet Corporation for Assigned Names and Numbers*, 2016 WL 9136168*4 (C.D. Cal., Klausner, J) ("On its face, the Release is 'against the policy of the law' because it exempts ICANN from any and all claims arising out of the application process, even those arising from fraudulent or willful misconduct").  *See also Halsten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1402-03 (9th Cir. 1998) ("In diversity cases, federal courts apply the conflict – of – law principles of the forum state [and] in California, a court is not bound by a contract's choice of [foreign] law provision if strong public policy requires the application of California law.")

ERVIN COHEN & JESSUP LLP

1   with VIZIO, that the parties mutually terminate the Merger Agreement, with

2   specified carve outs or exceptions, and that going forward, VIZIO and LeEco form a

3   joint venture distributorship for operation in the People's Republic of China, a

4   primary purpose of which would be to promote, market and sell VIZIO branded

5   products through LeEco's distributing/Omni channels in China ("the Sales JV").

6   (*Id.,* at ¶ 33).  LeEco, Lele and Global Group by and through, *inter alia*, Jia, then

7   ultimately promised VIZIO that in consideration for VIZIO's agreement to, among

8   other things, jointly terminate the Merger Agreement subject to specified carve outs

9   or exceptions, and forego immediate payment of the $100MM Buyer Termination

10  Fee, LeEco would (a) cause joint escrow instructions to be prepared and signed in

11  order to release from the City National Bank ("CNB") escrow the sum of $40MM

12  which would be paid directly to VIZIO from the Buyer Termination Fee Deposit

13  upon the signing of a Framework, Termination and Mutual General Release

14  Agreement ("Framework Agreement") between or among VIZIO and LeEco; (b)

15  cause the remaining $10MM of the Buyer Termination Fee Deposit to be released

16  from that escrow and paid directly to VIZIO upon the execution within 45 days of a

17  joint venture distributorship agreement for the Sales JV between VIZIO and LeEco -

18  - but that if no such joint venture distributorship agreement was so signed within

19  that 45 day time frame - - then nevertheless have that $10MM sum released from the

20  CNB escrow and paid directly to VIZIO in accordance with the remaining Buyer

21  Termination Fee Deposit provisions of the Merger Agreement; and (c) contribute

22  capital in the form of non-cash assets to the Sales JV with a verified fair market

23  value of at least $50MM.  (*Id.*).  In other words, while the Merger Agreement would

24  cease to exist, the Defendants were promising to pay an amount equal to the

25  $100MM Buyer Termination Fee which they were originally required to pay under

26  the Merger Agreement, with $50MM now in the form of a capital contribution from

27  LeEco to the Sales JV which would also benefit VIZIO.  (*Id.*).  This new and

28  separate agreement was memorialized in the Framework Agreement.

1   Thereafter, the $40MM sum was released from escrow and paid to VIZIO

2   directly.  (*Id.,* ¶ 37).  However, Defendants then failed and refused to participate in

3   any substantive negotiations with respect to the joint-venture distributorship

4   agreement, failed to release the $10MM  remainder of the Buyer Termination Fee

5   which was in escrow, and failed to contribute the $50MM in non-cash assets to the

6   joint-venture.  (*Id.,* ¶¶ 43-45 & 50).  Simply put, Defendants defrauded VIZIO into

7   entering into the Framework Agreement in a subterfuge to reduce LeEco's liability

8   to pay the $100MM Buyer Termination Fee to the $40MM sum that was paid

9   directly to VIZIO concurrently with the Framework Agreement (*Id.,* ¶ 45).  In short,

10  Defendants had no intention of:  (a) entering into or performing any joint venture

11  with VIZIO; (b) releasing the $10MM in escrow to VIZIO; and (c) contributing

12  non-cash assets of $50MM to any joint venture with VIZIO.  (*Id.,* ¶ 45).

13  On July 11, 2017, VIZIO commenced the instant action by filing its

14  Complaint.  (Dkt 1).  On November 6, 2017, VIZIO filed its First Amended

15  Complaint ("FAC"), adding Lele and Jia as Defendants under an alter ego theory,

16  but not as to the Sixth Claim for Breach of the Merger Agreement.  (Dkt 35).

17  VIZIO then filed its SAC on August 10, 2018,  (Dkt 101).  Pointedly, the only claim

18  for relief "arising under, or in connection with the Merger Agreement or the

19  transactions contemplated thereby", is the Fifth Cause of Action for Breach of the

20  Merger Agreement; a Claim for Relief that is asserted only against LeEco.  Indeed,

21  it does not even incorporate by reference any alter-ego allegations.  (*Id.*, at p. 39, ln

22  13- p. 42, ln 2).

23  **B.    The Prior Motion To Dismiss And The Order**

24  On November 20, 2017, LeEco filed a Partial Motion to Dismiss the FAC.

25  (Dkt 47-1).[3]  The Counterclaimants asserted, albeit incorrectly, that the

26  _____

27  [3] Counterclaimants joined in LeEco's Partial Motion to Dismiss (Dkt 62, p. 1, lns 8-10 & Dkt 63, p. 1, lns 9-11).

28

ERVIN COHEN & JESSUP LLP

"Framework, Termination and Mutual General Release Agreement, as it suggests terminated the Merger Agreement and settled and released all claims that potentially could have been brought for a violation of the Merger Agreement, including anything concerning the negotiation of the Merger Agreement."  (Dkt 47-1, p. 6, lns 12-15).  Indeed, that "[i]n order to settle their disputes, the parties agreed to the Framework Agreement…which LeEco alleges had the effect of terminating the Merger Agreement in its entirety."  (Dkt 99, Order, p. 4).[4]  Counterclaimants also claimed, albeit incorrectly, that the Framework Agreement somehow eliminated VIZIO's claims for relief that were predicated on the fraudulent inducement of that instrument.  (Dkt 47-1, Partial Motion to Dismiss FAC, p. 12, ln 17-p.13, ln 3 & p. 17, ln 6–p. 20, ln 17).

The Court flatly rejected these assertions in the Order.  (Dkt 99).  The Court explained that:

> By statute and California public policy, LeEco and Vizio cannot agree to release Defendant LeEco from liability for fraud, regardless of any statement to the contrary in a contract. *See Cal. Civ. Code* § 1668. *California Civil Code* § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." *Id.* In other words, and as the California Court of Appeal noted:

> > A party to a contract who has been guilty of fraud in its inducement cannot absolve himself or herself from the effects of

---

[4] Counterclaimants went even further.  They made the same assertion under oath. (Dkt 26-1, Declaration of Charles Hsieh, ¶ 14, lns 6-8 & ¶ 17.)  Now however, Counterclaimants' "new" position is that the Limited Guarantee - - which they admit was an "integral part" of the Merger Agreement - - somehow obviates the much later Framework Agreement and the fraudulent inducement of that instrument by Counterclaimants.  This "new" wild claim (a) is the exact opposite of their prior assertion under oath that the Merger Agreement had been terminated in its entirety, and (b) the fact that if they had been correct, then the Limited Guarantee would likewise fail since it specifies in Section 8 that "the Guarantor shall be entitled to raise as a defense to the Obligation any and all defenses available to the Buyer." (Dkt 71-1, Wessel Dec., Ex "1", Limited Guarantee).  This "switch" in the "facts" should not be countenanced.

his or her fraud by any stipulation in the contract, either that no representations have been made, or that any right that might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision.

*McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 794 (2008) (citation omitted).  Therefore, the Framework Agreement's release of all claims that potentially could have been brought for a violation of the Merger Agreement is invalid if it was "procured by misrepresentation, overreaching, deception, or fraud," which Vizio alleges in the FAC. *See Jiminez v. 24 Hour Fitness USA, Inc.*, 237 Cal. App. 4th 546, 563 (2015); *see also Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941) (holding that one "who has been induced by fraudulent misrepresentations to enter into a contract . . . may have the contract . . . set aside"). (*Id.*, p. 13).

The Court then went on to find that VIZIO has made a plausible case for finding that Lele and Jia are the alter ego of LeEco. (*Id.*, at p. 35).  The Court emphasized that:

"Vizio has asserted that there is a unity of interest and ownership for LeLe Holding and LeEco, through the defendant Jia. LeLe Opp'n at 16. Vizio submits, as Exhibits 3 and 4 to the Wessel Declaration, the unaudited balance sheets of LeLe Holding, Global Group, and LeEco. Wessel Decl. Exs. 3, 4. Vizio points out that "these statements are virtually identical . . . Lele and LeEco Global have almost no separate financial existence." LeLe Opp'n at 17; see Wessel Decl. Exs. 3, 4. The balance sheets of the three companies demonstrate that these are not three separate entities, but one company with the same assets. See id. LeLe Holding and LeEco both share the same office address in China. Wessel Decl. Ex. 2. Le Technology, Inc. ("Le Tech"), the California Corporation that guaranteed the funds for the merger for LeEco, shares the same office address as Global Group in San Jose, California. Wessel Decl. Exs. 1, 2. Vizio also asserts that LeEco executive Charles Hsieh self-identified as the Director of Corporate Finance and Development for Le Tech.  LeLe Opp'n at 5.  This same executive Charles Hsieh was allegedly also a principal negotiator for Global Group, which owns LeEco. See Hsieh Decl. ¶¶ 2–3. Deng, the Vice President of Jia's other company Faraday Futures, is also listed as the Chief Executive Officer for Le Tech throughout the relevant time period. LeLe Opp'n at 5; Haas Decl. Ex. 1. Vizio argues that the fact that Le Tech offered to guarantee the $50 million termination fee for LeEco without any consideration, is telling. See Wessel Decl. Ex. 1, ¶ 1; LeLe Opp'n at 4–5. This shows a commingling of funds and a disregard of corporate formalities between the two companies. Throughout the parent and subsidiary companies, there is a connection and intermingling between the employees, assets, and office locations. Thus, Vizio sufficiently establishes facts in support of the proposition

ERVIN COHEN & JESSUP LLP

that LeLe Holding and LeEco are interconnected in ownership (through Jia) and through a unity of interest (through similarities in offices, employees, and intermingling of assets). Wessel Decl'n Exs. 3–5; LeLe Opp'n at 5."  (Docket No. 99, pages 28-29).

## C.    The Counterclaims

On August 24, 2018, both Lele and Jia filed separate but identical Counterclaims against VIZIO for Breach of the Limited Guarantee Agreement, Promissory Estoppel and Declaratory Relief.  (Dkt 107 & 108).  They allege that as an integral part of the Merger Agreement VIZIO entered into a Limited Guarantee with Le Technology, Inc., a California corporation ("Le Tech").  (*Id.*, Counterclaims, ¶ 9; *See also* Dkt 71-1, Wessel Dec., Ex. "1" thereto, Limited Guarantee).  Counterclaimants now assert that this Limited Guarantee somehow bars VIZIO from suing or obtaining relief against them for "**any claims**" whatsoever, whether based on fraud or any other intentional conduct resulting in alter-ego liability.  (Dkt 110, Joint Report re: Discovery Dispute Conference, p. 10, lns 24-28).  They rest this wild assertion on paragraphs 13-14 of the Limited Guarantee. (*Id.,* at pp. 10, ln 6-p. 11, ln 12.  *See also* Dkt 107 & 108, Counterclaims, ¶¶ 16-17 and 23-25).  These paragraphs provide in relevant part:

13. …Notwithstanding anything that may be expressed or implied in this Guarantee or any document or instrument delivered concurrently herewith…the Company [VIZIO] acknowledges and agrees that it has no right of recovery against, and no personal liability shall attach to, the Guarantor or any of its former, current or future director, officer, employee, agent, general or limited partner, manager, member, stockholder, Affiliate, assignee or any former, current or future director, officer, employee, agent, general or limited partner, manager, member, stockholder, Affiliate or assignee of any of the foregoing (collectively, but not including the Buyer and Merger Sub, each a "Non-Recourse Party") through the Buyer or otherwise, whether by or through attempted piercing of the corporate veil…by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute, regulation or applicable law, or otherwise, except for its rights to recover from the Guarantor under and to the extent provided in this Guarantee **and subject always to the** Cap **and other limitations described herein**.  The Company further acknowledges and agrees that recourse against the Guarantor…shall be the sole and exclusive remedy of the Company…against the Guarantor and the Non-Recourse Parties **in respect to any of the liabilities or obligations arising under or in**

ERVIN COHEN & JESSUP LLP

**connection with the Merger Agreement or the transactions contemplated thereby, including by piercing of the corporate veil or by or through a claim by or on behalf of the Buyer**…. (Emphasis added).

***

14.    [T]he Company hereby covenants and agrees that it shall not institute, directly or indirectly…any proceeding or bring any other claim arising under, or in connection with, the Merger Agreement or the transactions contemplated thereby or otherwise relating thereto, against the Guarantor or any Non-Recourse Party except claims against the Guarantor under this Guarantee." (collectively, the "so-called restrictive language"). (Dkt 71-1, Wessel Dec., Ex "1", Limited Guarantee).

D.    **The Counterclaims Are Nothing More Than A Reiteration Of The Release Or Covenant Not To Sue Theory That This Court Has Already Rejected**

Having lost their direct attack on the back-end - - that the Framework Agreement somehow releases or otherwise bars the fraudulent inducement related claims in the FAC - - which are substantially identical to those in the SAC – Counterclaimants now make the very same wild claim on the front end.  But this time in the shape of the Limited Guarantee.  Put differently, they substitute the purported covenant not to sue in the Limited Guarantee for the alleged release in the Framework Agreement.  While in both instances asserting that VIZIO cannot sue or obtain relief against Counterclaimants "for **any** claims." (*Compare*, Dkt 110, Joint Report re Discovery Dispute Conference, p. 10, lns 24-28, with Dkt 47-1, the Partial Motion to Dismiss the FAC, p. 12, ln 17- p. 13, ln 3 & p. 17, ln 6- p. 20, ln 17).  To do so, they simply ignore this Court's admonition that "[b]y statute and California public policy" there can be no "release from liability for fraud, regardless of any statement to the contrary in a contract." (Dkt 99, Order, p. 13).

Accordingly, the Counterclaims are misplaced.  First, to the extent that the Limited Guarantee does bar any and all claims against Counterclaimants, that prohibition must be disregarded as a matter of law.  The reason:  the strong public

ERVIN COHEN & JESSUP LLP

1  policy of California as reflected in *Civil Code* §§ 1667-1668.  The cases that hold so

2  are legion.  *E.g.,DotConnetAfrica Trust, supra,* 2016 WL 9136168*4*; Baker Pacific*

3  *Corp. v. Suttles,* 220 Cal. App. 3d 1148, 1151, 1153 (1990).  This is especially true

4  here, where Counterclaimants have admitted the Limited Guarantee has the very

5  same so-called restrictive language that was condemned in these cases.  (Dkt 110,

6  Joint Report re Discovery Dispute Conference, p. 10, lns 24-28.).

7          Second, on its face, paragraph 13 of the Limited Guarantee purports only to

8  bar VIZIO from pursuing claims against Non-Recourse Parties (including Lele and

9  Jia), for "the liabilities or obligations **arising under or in connection with the**

10  **Merger Agreement or the transactions contemplated thereby....**"  (Dkt 71-1

11  Wessel Dec., Ex. "1", Limited Guarantee, p. 5: "The Company further

12  acknowledges and agrees that recourse against the Guarantor…shall be the sole and

13  exclusive remedy of the Company…against the Guarantor and Non-Recourse

14  Parties in respect of any liabilities or obligations **arising under, or in connection**

15  **with, the Merger Agreement or the transactions contemplated thereby,**

16  **including by piercing of the corporate veil**…."  (the "Limiting Language")).[5]

17  There would be no rhyme or reason to put this Limiting Language into the Limited

18  Guarantee if, as Counterclaimants contend, the covenant not to sue bars any and all

19  claims that VIZIO may have against them for any reason whatsoever; *i.e.,* for

20  anything other than a direct action for breach of the Merger Agreement, or a breach

21  of express or implied warranties under the Merger Agreement, or perhaps negligent

---

[5] The sentence in Section 13 of the Limited Guarantee that is immediately prior to the Limiting Language states "Notwithstanding anything that may be expressed or implied in this Guarantee…the Company acknowledges and agrees that it has no right of recovery against, and no liability shall attach to the Guarantor…or…Non-Recourse Part[ies]…except for its right to recover from Guarantor…and subject always to…**the other limitations described herein.**"  The Limiting Language is in the very next sentence.  It is clearly "one of the other limitations described herein."

ERVIN COHEN & JESSUP LLP

1 performance of the Merger Agreement.[6]  Indeed, to read that language or the

2 verbiage in paragraph 14 of the Limited Guarantee discussing claims "arising under,

3 or in connection with, the Merger Agreement or the transactions contemplated

4 thereby or otherwise relating thereto" as somehow not restricted by the Limiting

5 Language and otherwise limited to direct causes of action for breach of the Merger

6 Agreement, or breach of express or implied warranties under the Merger Agreement

7 or perhaps negligent performance of the Merger Agreement, would be to make the

8 so-called restrictive language unenforceable for the reasons discussed above under

9 the strong public policy of California set forth in *Civil Code* §1668.  Pointedly, such

10 an impermissible construction would run afoul of the mandate of Civil Code §1643:

11 "A contract must receive such an interpretation as will make it lawful… if it can be

12 done without violating the intention of the parties."  Moreover, it would violate the

13 rule that "contractual clauses seeking to limit liability will be strictly construed and

14 any ambiguities resolved against the party seeking to limit its liability."  *Peregrine*

15 *Pharmaceuticals, Inc. v. Clinical Supplies Management, Inc.*, 2014 WL 3791567*5

16 (C.D. Cal., Bernal, J.)

17 Here, it is beyond dispute the Fifth Claim for Relief for Breach of the Merger

18 Agreement is the only cause of action brought "under or in connection with the

19 Merger Agreement or the transactions contemplated thereby."  As discussed above,

20 Counterclaimants are neither parties to that Claim nor are any alter-ego allegations

21 even incorporated by reference therein.  (Dkt 101, SAC, p. 39, ln 13-p. 42, ln 2.  *See*

22 *also* Dkt 99, Order, pp. 4-5).  Accordingly, Counterclaimants' admission that the

23 Framework Agreement - - and by definition, the fraudulent inducement thereof,

24 "were not contemplated by the Merger Agreement" (Dkt 110, Joint Report re

25 _____

26 [6] *See California Civil Code* § 1641:  "The whole of a contract is to be taken

27 together, so as to give effect to every part, each clause helping to interpret the others."

28

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  Discovery Dispute Conference, p. 11, lns 8-9) is not surprising.  It is, however,
2  dispositive.

3       Third, the notion advanced by Counterclaimants in paragraphs 32-33 of the
4  Counterclaims (Dkt 107 & 108) - - that the damages sought for breach of the
5  Framework Agreement and the fraudulent inducement thereof are some sort of
6  disguised damages under the Merger Agreement - - is incorrect as a matter of law.
7  The damages which VIZIO seeks are "reliance and lost opportunity damages in the
8  sum of $60MM (the $10MM still remaining in escrow and the $50MM termination
9  fee remaining) in damages."  (Dkt 99, Order, p. 17).  These damages are based upon
10 "the allegedly false representations that Defendants were able to execute a $2 billion
11 merger when signing the Merger Agreement [and]…upon the promise of the
12 $50MM contribution capital in the form of non-cash assets for their proposed joint
13 venture in China."  (*Id*.)  In short, that "VIZIO was allegedly induced to forego the
14 immediate payment of the $100 million termination fee."  (*Id.,* at p. 18).

15      These are the exact damages available to VIZIO for breach of the Framework
16 Agreement.  *See e.g., Copeland v. Baskin Robbins, U.S.A.,* 96 Cal. App. 4th 1251,
17 1263 (2002).  The same is equally true for the fraudulent inducement based claims
18 with respect to the Framework Agreement.  *In re Sepulveda,* 2017 WL 1505216*8
19 (9th Cir. B.A.P.) (party seeking damages for fraudulent inducement "may recover
20 out-of-pocket damages in addition to the benefit-of-the bargain damages.").  In
21 short, Counterclaimants are not being sued for "liabilities or obligations arising
22 under or in connection with the Merger Agreement, or any transactions
23 contemplated thereby."

24     **E.**    **Le Tech Is A Required Party**

25      Wholly apart from the mandate of *Civil Code* § 1668 and the fact that the so-
26 called restrictive language must be interpreted to only prohibit direct claims for
27 breach of the Merger Agreement, or breach of any express or implied warranties
28 thereunder, or perhaps the negligent performance of the Merger Agreement, the

**ERVIN COHEN & JESSUP LLP**

absence of Le Tech- - the actual signatory and other entity with whom the Limited Guarantee was made - - demonstrates that dismissal of the Counterclaims is required.  It is axiomatic that Rule 19(a)(1)(A) of the *Federal Rules of Civil Procedure* requires joinder if possible, but dismissal if not, when the Court cannot afford complete relief among existing parties without Le Tech.  *See e.g., E.E.O.C. v. Peabody Western Coal Co.,* 400 F.3d 774, 780 (9th Cir. 2005) ("[T]he Navajo Nation is a necessary party under Rule 19(a)(1) because the Nation is a party to the lease…and if the EEOC is victorious in this suit but the Nation has not been joined, the Nation could possibly initiate further action to enforce [lease terms]…even though [they] have been held illegal in this litigation.").  This is especially true here, where: (a) the construction and enforceability of the so-called restrictive language is at stake; and (b) without the joinder of Le Tech, that entity will not be bound by any decision of this Court and could easily institute litigation against VIZIO elsewhere to enforce these alleged terms of the Limited Guarantee as well as others therein that also contravene the public policy of California.  For example, the waiver of the right to trial by jury in paragraph 16 of the Limited Guarantee (Dkt 71-1, Wessel Dec., Limited Guarantee, Ex "1".)  *Rincon EV Realty LLC v. CPIII Rincon Towers, Inc.,* 8 Cal. App. 5th 1 (2017) (California's strong public policy prohibiting pre-dispute jury trial waivers precluded enforcement of New York law to the contrary despite New York choice of law contractual provision).

### III.

### STATEMENT OF LAW

#### A.   Standards On A Fed. R. Civ. P. 12(b)(6) Motion To Dismiss.

Under *Federal Rule of Civil Procedure* 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must

1  raise the right to relief beyond the speculative level; a plaintiff must provide "more

2  than labels and conclusions, and a formulaic recitation of the elements of a cause of

3  action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S.

4  265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-

5  pleaded factual allegations and construes all factual inferences in the light most

6  favorable to the plaintiff. See *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

7  1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal

8  conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

9  **B.**  **The So-Called Restrictive Language In The Limited Guarantee**

10    **Cannot Be Enforced To Bar VIZIO From Suing Counterclaimants**

11    **For "Any Claims"**

12  *California Civil Code* § 1667 provides:

13    That is not lawful which is:
14    1.    Contrary to an express provision of law.
15    2.    Contrary to the policy of express law, though not expressly prohibited, or
    3.    Otherwise contrary to good morals.

16  *California Civil Code* § 1668 provides:

17    All contracts which have for their object, directly or indirectly, to
18    exempt anyone from responsibility for his own fraud, or willful injury
    to the person or property of another, or violation of law, whether willful
19    or negligent, are against the policy of the law.

20    Counterclaimants have flatly stated that the so-called restrictive language

21  "obligates VIZIO not to sue [them] for any claims." (Dkt 110, Joint Report Re

22  Discovery Dispute Conference, p. 10, lns 24-28). Accepting that statement as true

23  for purposes of this Motion to Dismiss, the purported restrictive language is

24  prohibited by the strong public policy of California as set forth in §1668 of the *Civil*

25  *Code*. The cases so holding are compelling. *See DotConnectAfricaTrust*, *supra*,

26  2016 WL 9136168*4 (release of ICANN "from any and all claims…that arise out

27  of, are based upon, or in any way related to, action or failure to act, by ICANN in

28  connection with [its] review of this Application…is [on its face] against the policy

ERVIN COHEN & JESSUP LLP

1  of the law because it exempts ICANN from *any and all claims* arising out of the

2  application process, even those arising from fraudulent or willful conduct.  *Cal. Civ.*

3  *Code* §1668;"  *i.e.*, "the Release waives all liability, not just liability resulting from

4  negligence."); *Baker Pacific Corp.*, *supra*, 220 Cal. App. 3d at 1151, 1153.

5       *Baker Pacific* is directly on point.  In that case, the California Court of Appeal

6  held that a covenant not to sue executed by employees of an asbestos removal

7  company in a favor of a building owner under which the employees agreed not to

8  sue the building owner "*for, from and against any liability whatsoever*…and [to]

9  relinquish *any and all claims of every nature*…related to asbestos", violated

10  California's public policy as expressed in Section 1668 of the *Civil Code*.  There,

11  *Baker Pacific's* employees had the right to sue *Baker Pacific* and others, just not the

12  building owner.  *Baker Pacific Corp., supra,* 220 Cal.App. 3d at 1153.  Here, VIZIO

13  has the right to sue Le Tech and LeEco, but supposedly, not Counterclaimants - -

14  according to them.  There, *Baker Pacific* argued "that in exchange for voluntarily

15  signing the release, the employees obtained high-paying jobs while also retaining

16  recourse for injuries against their employer and other potential third parties such as

17  the manufacturer of protective equipment they wear.  Here, Counterclaimants

18  likewise assert that "VIZIO and Guarantor agreed to a very precise allocation of the

19  risk…."  (Dkt 107 & 108, Counterclaims, ¶ 18).

20       The *Baker Pacific* court rejected each of these arguments, whereby it stated:

21         It is hard to imagine a clearer or broader release.  There
can be no doubt that this release includes a release of

22         Metropolitan for its own fraud…as proscribed in Civil
Code Section 1668."  (*Id.*, at 1153.)

23

24       The *Baker Pacific* court then emphasized that "the broad release clearly

25  includes a release from liability for fraud and intentional acts and thus on its face

26

27

28

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  violates the public policy as set forth in *Civil Code Section* 1668." (*Id.*, at 1154).[7]

2  *Cf., Peregrine Pharmaceuticals v. Clinical Supplies Management, Inc.*, 2014 WL

3  3791567 * 4, 15 (C.D. Cal., Bernal, J.) ("The cases uniformly hold that limitation of

4  liability clauses are ineffective with respect to claims for fraud and

5  misrepresentation…."); *Health Net of California, Inc. v. Dept. of Health Services*,

6  113 Cal.App. 4th 224, 243 (2003), *rev. den'd* (contractual term added by way of

7  amendment and over the objections of the plaintiff which limited remedies to

8  equitable relief for statutory or regulatory violations unless the specific statute or

9  regulation was actually mentioned in the contract were unenforceable since "it is

10  now settled - - and in full accord with the language of the statute – that…under

11  Section 1668, a party [cannot] contract away liability for his fraudulent or

12  intentional acts or his negligent violation of statutory law, regardless of whether the

13  public interest is affected.")[8]

14      Section 1668 of the *Civil Code* is the death knell to the Counterclaims.  Here

15  too, "it is hard to imagine a clearer or broader release" than Counterclaimant's self-

16  described "obligation not to sue for **any** claims."  Since each of the Claims for

17  Relief in the Counterclaims are expressly grounded upon the allegation that VIZIO

18  agreed to release Lele and Jia from all liability, including that for fraud and

19  intentional wrongs arising from or in connection with the Framework Agreement

20  (Docket No. 107 and 108, ¶ 23, 43, 46 and 51), it is crystal clear that the

21  _____

22      [7] The *Baker Pacific* decision demonstrates that there is no difference in

23  treatment between a covenant not to sue and release under *Civil Code* §1668.  This is consistent with the Ninth Circuit's observation that "[u]nder the modern view a

24  covenant not to sue, like a release, operates as a complete bar to the underlying litigation."  *Skilstuf, Inc. v. CVS Caremark Corp.*, 669 F. 3d 1005, 1017, n. 10 (9th Cir. 2012).

25      [8] The fact that the prohibited contractual language in *Health Net* was added by

26  way of amendment and with the full knowledge/objection of the sophisticated corporate plaintiff, demonstrates that the underlying fraud need not occur at the time

27  of contracting, but rather, *Civil Code* § 1668 prohibits any attempt to obviate fraud or intentional conduct in the future.

28

PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS

1  Counterclaims are fatally defective.

2      C.    **The Language Of The Limited Guarantee Does Not Support Lele**

3          **And Jia's Claim That VIZIO Somehow Released Them From**

4          **Liability In Connection With the Framework Agreement, Let**

5          **Alone, The Fraudulent Inducement Thereof**

6      First, as set forth above, the Limiting Language limits the so-called restrictive

7  language to direct causes of action for breach of the Merger Agreement, or breach of

8  express or implied warranties under the Merger Agreement, or perhaps negligent

9  performance of the Merger Agreement.  To hold otherwise would not only make the

10  Limiting Language superfluous, but in addition, would fly in the face of the

11  requirement that "contractual clauses seeking to limit liability will be strictly

12  construed", let alone the statutory rules of construction addressed at p. 10, ln 3-

13  p. 11, ln 23).  Worse still, it would make so-called restrictive language

14  unenforceable as discussed in Subpart B, above.  In short, since the Fifth Claim for

15  Breach of the Merger Agreement is the only cause of action brought "under or in

16  connection with the Merger Agreement or the transactions contemplated thereby," it

17  is plain that the Counterclaims are not well taken.  This is especially true here,

18  where the Counterclaimants are neither parties to the Claim for Breach of the

19  Merger Agreement, nor are any alter-ego allegations even incorporated by reference

20  therein.

21      Second, the notion that the damages sought for breach of the Framework

22  Agreement and the fraudulent inducement thereof are some sort of disguised

23  damages under the Merger Agreement is patently incorrect.  As discussed above, the

24  damages that VIZIO seeks are "reliance and lost opportunity damages in the sum of

25  $60MM (the $10MM still remaining in escrow and the $50MM termination fee

26  remaining) in damages."  (Dkt 99, Order, p. 17).  These damages are based upon

27  "the allegedly false representations that Defendants were able to execute a $2 billion

28  merger when signing the Merger Agreement [and]…upon the promise of the

ERVIN COHEN & JESSUP LLP

PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS

1   $50MM contribution capital in the form of non-cash assets for their proposed joint

2   venture in China." (*Id.*)  In short, that "VIZIO was allegedly induced to forego the

3   immediate payment of the $100 million termination fee." (*Id.,* at p. 18).

4       These are the exact damages available to VIZIO for breach of the Framework

5   Agreement.  *See e.g., Copeland v. Baskin Robbins, U.S.A.,* 96 Cal. App. 4th 1251,

6   1263 (2002).  The same is likewise true for the fraudulent inducement based claims

7   with respect to the Framework Agreement.  *In re Sepulveda,* 2017 WL 1505216*8

8   (9th Cir. B.A.P.) (party seeking damages for fraudulent inducement "may recover

9   out-of-pocket damages in addition to the benefit-of-the bargain damages.").  In

10  short, Counterclaimants are not being sued for "liabilities or obligations arising

11  under or in connection with the Merger Agreement, or any transactions

12  contemplated thereby."  That is the death knell to the Counterclaims.

13      **D.**    <u>**Counterclaimants Have Failed To Plead A Claim For Promissory**</u>

14          <u>**Estoppel**</u>

15      A party seeking relief under the doctrine of promissory estoppel must show:

16  "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom

17  the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and

18  (4) the party asserting the estoppel must be injured by his reliance." *Granadino v.*

19  *Wells Fargo Bank, N.A.,* 236 Cal. App. 4th 411, 416 (2015), as modified (Apr. 29,

20  2015) (internal quotation omitted).

21      Counterclaimants have failed to plead facts which show that they relied on

22  any promise by VIZIO.  Pointedly, Lele and Jia claim that VIZIO made a "clear and

23  unambiguous promise not to sue Counterclaimants for the Guarantee or its

24  equivalent."  However, they have not alleged a single fact to show that they took

25  any action whatsoever in reliance upon VIZIO's so-called promises in the Limited

26  Guarantee or otherwise.  (Dkt 107 & 108, ¶ 46).

27      As Counterclaimants have failed to plead that they relied upon any promise

28  by VIZIO, the Second Count for Promissory Estoppel should be dismissed.

ERVIN COHEN & JESSUP LLP

**E.** **All Three Counts In The Counterclaims Must Be Dismissed, As Lele And Jia Have Failed To Join A Required Party To This Action - Le Technology**

*Fed. R. Civ. P.* 12(b)(7) provides that a party may assert the defense of failure to join a party under Rule 19 by motion.

*Fed. R. Civ. P.* 19 provides:

> (a) **Persons Required to Be Joined if Feasible**.
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest…
> (b) **When Joinder Is Not Feasible**. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

When determining whether a nonparty should be joined in an action under Rule 19, the Court performs a three-step process.  The first step is to determine whether the nonparty should be joined, *i.e.* "persons having an interest in the controversy, and who ought to be made parties."  *EEOC v. Peabody Western Coal Company*, *supra*, 400 F.3d at 779 (9th Circ. 2005).  The second step is to determine whether it is feasible to order the absentee nonparty joined.  It is not feasible "when venue is improper, when the absentee is not subject to personal jurisdiction, and

ERVIN COHEN & JESSUP LLP

1   when joinder would destroy subject matter jurisdiction. *Id.* "Finally, if joinder is

2   not feasible, the court must determine whether the case can proceed without the

3   absentee, or whether the absentee is an "indispensable party" such that the action

4   must be dismissed." *Id.*

5   "In determining whether an (absentee) is a necessary under Rule 19, we

6   consider whether, in the absence of the (absentee), complete relief can be

7   accorded…In the alternative, we consider whether the (absentee) claims a legally

8   protected interest in the subject of the suit such that a decision in its absence will (1)

9   impair or impede its ability to protect that interest; or (2) expose (the absentee) to

10  the risk of multiple or inconsistent obligations… If the (absentee) satisfies either of

11  these alternative tests, it is necessary to the instant litigation." *Dawavendewa v. Salt*

12  *River Project Agr. Imp. and Power Dist.*, 276 F. 3d 1150 (9th Cir. 2002). *See also,*

13  *EEOC v. Peabody Western Coal Company*, 610 F.3d 1070 (9th Cir. 2010).

14  Here, it is clear that Le Tech is a "required party." First, Counterclaimants

15  claim to be third party beneficiaries of the Limited Guarantee and have supposedly

16  brought their Counterclaims in that capacity. (Dkt 107 & 108, ¶ 8). Since the

17  Limited Guarantee was made between VIZIO and Le Technology, and bears only

18  their signatures, it is clear that Le Technology "has an interest in litigating the

19  construction and interpretation of the contract it signed with [VIZIO], specifically,

20  whether the contract between [Le Technology and VIZIO] created third party

21  beneficiary rights in [Counterclaimants]." *Stanley Elec. Co., Inc. v. Crawford*

22  *Equipment and Engineering Co.*, 249 F.R.D. 267, 274 (S.D. Ohio 2008) (actual

23  signatory parties to contract allegedly creating third party beneficiary rights were

24  required parties under FRCP 19).

25  Second, "no procedural principle is more deeply imbedded in the common

26  law than, that in action to set aside a…contract all parties who may be affected by

27  the determination are indispensable." *Lomayaktewa v. Hathaway*, 520 F.2d 1324,

28  1325 (9th Cir. 1975) (Hopi tribe necessary party under FRCP 19 to action brought

ERVIN COHEN & JESSUP LLP

PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS

1   by a third party against the lessee to cancel a lease under which the Hopi tribe was

2   the lessor).  While this lawsuit does not seek to set aside the Limited Guarantee, it is

3   crystal clear that the construction and enforceability of the so-called restrictive

4   language is very much at issue.  The rationale for this rule is simple:  complete relief

5   cannot be afforded in the absence of all such parties.  *See Dawavendewa v. Salt*

6   *River Project Agr. Imp. and Power Dist.*, *supra,* 276 F. 3d at 1155-56 (Navaho

7   Nation was required party to Title VII action brought by a member of the Hopi tribe

8   against a third party lessee challenging the enforceability of preferential hiring

9   provisions in a lease between the Navajo Nation and the third party lessee since the

10  underlying litigation sought declaratory and injunctive relief such that unless the

11  Navajo Nation was made a party " it could still attempt to enforce the lease

12  provision in [other] courts" regardless of whether Dawavendewa was victorious in

13  the subject litigation.)

14          Third, the fact that Counterclaimants have placed issues as to the construction

15  and enforceability of the so-called restrictive language at the front and center of this

16  case through their Third Claim for Declaratory Relief makes the joinder of Le Tech

17  indispensable.  *Camacho v. Major League Baseball*, 297 F.R.D. 457, 462 (S.D. Cal.

18  2013) ("Plaintiffs unequivocally seek a judicial determination of their rights and

19  duties under the alleged contracts between Mr. Pesqueira and the Red

20  Devils….[F]or purposes of Rule 19, the paramount concern is a Mexican court or

21  another in the United States determining that the Red Devils contracts are valid if

22  this Court finds they are not, or vice versa.")

23          Although Le Technology is a required party, the terms of the Limited

24  Guarantee may ostensibly impede its joinder, *i.e.,* paragraph 12 of the Limited

25  Guarantee provides for exclusive venue in New York.  (Dkt 71-1, Wessel Dec., Ex

26  "1", Limited Guarantee).  If enforceable, then that provision would obviate Le

27  Technology's joinder.  *EEOC v. Peabody Western Coal Co.*, *supra*, 400 F.3d at 779

28  (joinder not feasible when venue improper).  Since Le Technology is indispensable

ERVIN COHEN & JESSUP LLP

PLAINTIFF VIZIO, INC.'S MOTION TO DISMISS

1  to the construction and enforceability of the so-called restrictive language, and

2  complete relief cannot be afforded in its absence, the Counterclaims must be

3  dismissed.

4                                        **IV.**

5                                   **CONCLUSION**

6          Based upon the foregoing, it is respectfully requested that the First, Second

7  and Third Counts of Lele and Jia's Counterclaims be dismissed with prejudice,

8  along with whatever further relief this Court deems fair and just.

9  DATED: September 14, 2018          ERVIN COHEN & JESSUP LLP

10                                        Robert M. Waxman

11                                        David N. Tarlow
                                          Jason L. Haas

12

13

14                                  By:   /s/ Robert M. Waxman
                                          Robert M. Waxman

15                                        Attorneys for Plaintiff/Counter-Defendant

16                                        VIZIO, Inc., a California corporation

17

18

19

20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP