Jeff K. Joyner (SBN CA 180485)
joynerj@gtlaw.com
Daniel Tyukody (SBN CA 123323)
tyukodyd@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121 and
Telephone: 310.586.7700
Facsimile:  310.586.7800

Attorneys for Defendants,
LeECO V. LTD., LELE HOLDING LTD. and YUETING JIA

[ADDITIONAL ATTORNEYS CONTINUED ON PAGE 2]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendants.<br><hr>LeECO V. LTD., LELE HOLDING, LTD., YUETING JIA<br><br>Counter-Claimant,<br><br>vs.<br><br>VIZIO, a California corporation,<br><br>Counter-Defendant. | CASE NO.  8:17-CV-01175-DOC-JDE<br><br>**DEFENDANTS AND COUNTERCLAIMANTS LELE HOLDING, LTD'S AND YUETING JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO RULES 12(b)(6) AND 12(b)(7)**<br><br>Hearing Date:  October 29, 2018<br>Time:  8:30 a.m.<br>Courtroom:  9D |

---

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

Bridget S. Johnsen (SBN CA 210778)
bjohnsen@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, California 90013
Telephone:  (213) 896-6000
Facsimile:   (213) 896-6600

Attorneys for Defendant,
YUETING JIA


Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
  jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION. ...................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................... 3

III.   LEGAL STANDARD ON MOTIONS TO DISMISS ................................. 6

IV.   ARGUMENT ............................................................................................. 6

      A.     The Counterclaims Sufficiently Allege That The SAC Violates Vizio's Obligations Not To Sue Counterclaimants. ...................................... 6

      B.     Vizio's Allegations Of Fraud Do Not Preclude The Counterclaims. ............ 10

            1.     California Civil Code Section 1668 Does Not Apply Because the Limited Guarantee is Governed by New York Law. ..................... 11

            2.     The Limited Guarantee is a Valid Limitation of Liability Negotiated between Sophisticated Parties that Provides Vizio with Remedies for its Underlying Claims ............................................ 14

            3.     Vizio Cannot Selectively Enforce the Merger Agreement and Framework Agreement without Recognizing its Obligations under the Limited Guarantee. ............................................................ 16

            4.     Vizio Raises Issues of Fact that Cannot Be Decided on a Motion to Dismiss ................................................................................ 18

      C.     Counterclaimants Pleaded a Claim for Promissory Estoppel. ...................... 19

      D.     Le Tech Is Not A Required Party Under Rule 19. ......................................... 19

V.     CONCLUSION ......................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Airlift Int'l, Inc. v. McDonnell Douglas Corp.*,
  685 F.2d 267 (9th Cir. 1982) ....................................................................... 15

*Alpha Inv., LLC v. Zynga, Inc.*,
  No. C 11-03500 JSW, 2012 WL 2135291 (N.D. Cal. Jun. 12, 2012)...................... 2, 14

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D. N.J. 2009) .............................................................. 18

*Asarco, LLC v. Union Pac. R. Co.*,
  765 F.3d 999 (9th Cir. 2014) ...................................................................... 19

*Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*,
  299 F.3d 1007 (9th Cir. 2002) .................................................................... 21

*Camacho v. Major League Baseball*,
  297 F.R.D. 457 (S.D. Cal. 2013) ............................................................. 21, 22

*Chang v. Chen*,
  80 F.3d 1293 (9th Cir. 1996), *overruled on other grounds by Odom v.*
  *Microsoft Corp.*, 486 F.3d 451 (9th Cir. 2007) ................................................. 6

*Compare DotConnect Africa Trust v. Internet Corp. for Assigned Names and*
  *Numbers*, No. 16-cv-00862 RGK (JCx), 2016 WL9136168 (C.D. Cal.
  Apr. 12, 2016) ....................................................................................... 16

*Continental Airlines v. Goodyear Tire & Rubber Co.*,
  819 F.2d 1519 (9th Cir. 1987) ............................................................... 10, 17

*In re Crain*,
  243 B.R. 75 (C.D. Ca. 1999) ...................................................................... 10

*Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*,
  276 F.3d 1150 (9th Cir. 2002) ............................................................... 21, 22

*Delta Air Lines, Inc. v. McDonnell Douglas Corp.*,
  503 F.2d 239 (5th Cir. 1974) ...................................................................... 15

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*
  375 F.3d 861(9th Cir. 2004) ................................................................. 22, 23

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ...................................................................... 12

i

*Durning v. First Boston Corp.*,
   815 F.2d 1265 (9th Cir. 1987) ............................................................................ 2, 18

*Guadagno v. E\*Trade Bank*,
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ...................................................... 11

*Homedics, Inc. v. Valley Forge Ins. Co.*,
   315 F.3d 1135 (9th Cir. 2003) ...................................................................... 6

*Hoot Winc, L.L.C. v. RSM McGladrey Fin. Proc. Outsourcing, LLC*
   No. 08-cv-1559 BTM, 2009 WL 10672068 (S.D. Cal. Aug. 10, 2009)........................ 13

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*
   139 F. Supp. 3d 1141 .............................................................................. 22

*Lomayaktewa v. Hathaway*,
   520 F.2d 132 (9th Cir. 1975) .............................................................. 21, 22

*Makah Indian Tribe v. Verity*,
   910 F.2d 555 (9th Cir. 1990) .......................................................................... 21

*Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*,
   116 F. Supp. 3d 1010 (N.D. Cal. 2015) ................................................ 14, 15

*Morris v. Zusman*,
   857 F. Supp. 2d 1082 (D. Or. 2012) .......................................................... 3, 15

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
   355 F.Supp.2d 1061 (N.D. Cal. 2005) ........................................................ 21

*Northrop Corp. v. McDonnell Douglas Corp.*,
   705 F.2d 1030 (9th Cir.1983) .................................................................. 21

*Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of
   Los Angeles*,
   637 F.3d 993 (9th Cir. 2011) ........................................................................ 24

*Peregrine Pharm., Inc. v. Clinical Supplies Mgmt., Inc.*,
   No. SACV 12-1608 JGB ANX, 2014 WL 3791567 (C.D. Cal. July 31,
   2014) .................................................................................................. 16

*In re Rexplore, Inc. Sec. Litig.*,
   685 F. Supp. 1132 (N.D. Cal. 1988)............................................................ 18

*S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*,
   641 F.2d 746 (9th Cir. 1981) ...................................................................... 13

*Salt River Project Agr. Imp. & Power Dist. v. Lee*,
   672 F.3d 1176 (9th Cir. 2012) .............................................................. 3, 23

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS
COUNTERCLAIMS**

*Santa Fe Pointe, LP v. Greystone Servs Corp.*,
   2009 WL 1438285 (N.D. Cal. May 19, 2009)................................................ 12

*In re Sepulveda*,
   2017 WL 1505216 (9th Cir. B.A.P.) ............................................................ 10

*Shwarz v. United States*,
   234 F.3d 428 (9th Cir. 2000) ........................................................................ 6

*Stanley Elec. Co., Inc. v. Crawford Equipment and Engineering Co.*
   249 F.R.D. 267 (S.D. Ohio 2008)...................................................... 3, 20, 23

**State Cases**

*Baker Pac. Corp. v. Suttles*,
   220 Cal. App. 3d 1148 (1990) ..................................................................... 16

*Carlyle CIM Agent, LLC v. Trey Resources I, LLC*,
   50 N.Y.S.3d 326 (2017) .............................................................................. 12

*CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc.*,
   142 Cal. App. 4th 453 (2d Dist. 2006) ........................................................ 15

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith Co.*,
   68 Cal. App. 4th 445 (1998) .......................................................................... 8

*Copeland v. Baskin Robbins, U.S.A.*
   96 Cal. App. 4th 1251 (2002) ...................................................................... 10

*Farnham v. Superior Court*,
   60 Cal. App. 4th 69 (1997) .................................................................... 13, 14

*Health Net of Cal., Inc. v. Dep't of Health Servs.*,
   113 Cal. App. 4th 224 (2003) ...................................................................... 16

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (1992) .............................................................................. 2, 11

*Phillippine Airlines, Inc. v. McDonnell Douglas Corp.*,
   189 Cal. App. 3d 234 (1987) ....................................................................... 15

*Washington Mutual Bank, FA v. Superior Court*,
   24 Cal. 4th 906 (2001) ................................................................................ 13

**State Statutes**

Cal. Civ. Code § 1643 ........................................................................................ 16

Cal. Civ. Code § 1668 .................................................................... 2, 3, 10, 11, 13

Civil Code §§ 1667 and 1668 ............................................................................... 2

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

N.Y. Gen. Oblig. Law § 5-1401.......................................................................... 12

N.Y. Gen. Oblig. Law § 5-1402.......................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................... 6

Fed. R. Civ. P. 12(b)(7)..................................................................................... 21

Fed. R. Civ. P. 19(a)......................................................................................... 23

Fed. R. Civ. P. 19(a)(1)(A) ........................................................................ 20, 21

Fed. R. Civ. P. 19(b) ......................................................................................... 24

Fed. R. Civ. P. 19(b)(1)-(4)............................................................................... 24

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

Defendants and counterclaimants LeLe Holding, Ltd. ("LeLe") and Yueting Jia ("Jia") (the "Counterclaimants") submit this joint opposition (the "Opposition") to Plaintiff and Counter-Defendant Vizio, Inc's ("Vizio") Motion to Dismiss LeLe Holding Ltd.'s and Yueting Jia's Counterclaims Pursuant to Rules 12(b)(6) and 12(b)(7) (the "Motion").

# I.   INTRODUCTION.

The Counterclaims state a claim that Counts 1 through 4 in Vizio's Second Amended Complaint ("SAC") against Counterclaimants violate the Limited Guarantee. There are two reasons for this. First, even though the Limited Guarantee expressly states that Vizio has no right of recovery against Counterclaimants, Vizio is still pursuing them for the $50 million Buyer Termination Fee Remainder (the "Remainder"). Second, Vizio's claims "arise[e] under, or [are] in connection with, the Merger agreement or the transactions contemplated thereby or [that]otherwise relat[e] thereto." (ECF No. 108-2 (Limited Guarantee ("LG")), ¶¶ 13, 14.

Vizio's claims  trigger the "in connection with" language of the Limited Guarantee both because the Limited Guarantee is forward looking and expressly applies to future agreements (like the Framework Agreement[1]) that affect the Remainder, and because Vizio as the master of its own complaint, decided to expressly characterize its alleged damages against Counterclaimants by reference to the Merger Agreement,[2] notwithstanding Vizio's somewhat hard to believe statement that it is only pursuing Counterclaimants for causes of action related to the Framework Agreement.

The Court should deny Vizio's Motion because Vizio bases it on three key assertions of fact and law, none of which is true.

---

[1] The "Framework Agreement" refers to the Framework, Termination, and Mutual General Release Agreement dated April 5, 2017 between LeEco, Merger Sub, and Vizio.

[2] The "Merger Agreement" refers to the Agreement and Plan of Merger dated July 6, 2016 between LeEco, Le V Merger Sub. Inc. ("Merger Sub"), Shareholder Representative Services LLC ("Shareholder Representative"), and Vizio.

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

*First*, Vizio relies almost entirely on the assertion that California law, and thus Civil Code sections 1667 and 1668, determines the Parties' rights under the Limited Guarantee.[3] However, the Limited Guarantee provides that it "shall be governed by, and construed in accordance with, the laws of the State of New York." (LG, ¶ 12). Vizio's assertion (Mtn. at 9 n.2) that the California choice-of-law clause in the Merger Agreement somehow applies to the Limited Guarantee fails to meet Vizio's burden to establish that the Limited Guarantee's New York choice-of-law is *both* contrary to a fundamental California policy *and* that California has a materially greater interest in the issue at hand. California has a "strong policy favoring enforcement" of "arm's length contractual choice-of-law provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992). Vizio and Le Tech, sophisticated parties represented by experienced counsel[4] involved in a merger worth approximately $2 billion, clearly intended that New York law would govern the Limited Guarantee. Moreover, Vizio conveniently ignores the fact that even the Merger Agreement makes New York the appropriate forum for certain kind of claims related to the financing of the merger. (MA, ¶ 11.8). Clearly, the Parties recognized the appropriateness of New York as the forum and the source of law for certain kinds of claims, and the Motion simply ignores this critical issue.

*Second*, even if California law applied (and it does not), Sections 1667 and 1668 do not negate the provisions of the Limited Guarantee protecting Counterclaimants as "Non-Recourse Parties" from lawsuits by Vizio. Section 1668 only "precludes a release that would prevent a plaintiff from recovering *from anyone or any entity* for an intentional wrong."[5] *Alpha Inv., LLC v. Zynga, Inc.*, No. C 11-03500 JSW, 2012 WL 2135291, *6 (N.D. Cal. Jun. 12, 2012). Section 1668 does not apply because the Limited Guarantee

---

[3] The Limited Guarantee refers to the Limited Guarantee dated July 6, 2016 between Le Technology, Inc. ("Le Tech") and Vizio, which is attached to the Counterclaims as Exhibit B. (ECF No. 108-2).

[4] Latham & Watkins, LLP on behalf of Vizio, and Skadden, Arps, Slate, Meagher & Flom, LLP on behalf of LeEco.

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

gives Vizio the means to obtain complete relief by suing LeEco or Le Tech. *See also Morris v. Zusman,* 857 F. Supp. 2d 1082, 1097-98 (D. Or. 2012) (finding it "unthinkable" that Section 1668 could "invalidate a provision negotiated at arm's length between two parties of approximately equal bargaining power, capping the damages either party might seek against the other."). The Counterclaims thus do not violate California public policy.

*Third*, Vizio's claim that Le Tech is a party required to be joined under FRCP 19 is hard to take seriously. It is undisputed that the Counterclaims involve the rights and obligations of Vizio and Counterclaimants, who were intended third party beneficiaries to the Limited Guarantee. Thus "complete relief among the existing parties" can be achieved without bringing in Le Tech. Vizio's argument relies upon the unstated premise that a party to a contract is always indispensable, a proposition that is refuted by Vizio's primary authority, *Stanley Elec. Co., Inc. v. Crawford Equipment and Engineering Co.* 249 F.R.D. 267 (S.D. Ohio 2008), which characterized Vizio's approach as "thoughtless labeling" that was inconsistent with Rule 19's standards. Vizio never asserts that complete relief as between Vizio and the Counterclaimants cannot be obtained without Le Tech, and Le Tech would be largely if not entirely indifferent as to how the relevant sections of the Limited Guarantee relate to Vizio vis-à-vis the Counterclaimants. Even if one could construct some theoretical interest on the part of Le Tech—something Vizio does not even try to do—that hypothetical interest would not make Le Tech a "necessary" party under Rule 19, because the Non-Recourse Parties can more than adequately represent that interest. *See Salt River Project Agr. Imp. & Power Dist. v. Lee,* 672 F.3d 1176, 1179 (9th Cir. 2012). Counterclaimants have an interest in the Limited Guarantee's limitations on who Vizio may sue and for being appropriately interpreted and enforced.

Thus, the Court should overrule the Motion entirely and allow Counterclaimants to proceed to the discovery phase of this dispute.

## II.   FACTUAL BACKGROUND.

The Motion includes pages of alleged "facts" that are irrelevant to deciding the Motion and Vizio attempts to frame disputed facts in Vizio's favor despite the

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

requirement that Counterclaimants' allegations be assumed true at this stage. (*See e.g.,* Mtn. at 11:2-6 (stating Defendants never intended to perform under the Framework Agreement); *id*. at 17:17-21 (claiming "it is beyond dispute the Fifth Claim for Relief for Breach of the Merger Agreement is the only cause of action brought 'under or in connection with the Merger Agreement or the transactions contemplated thereby'"); *id.* at 10:14-21 (claiming Vizio is owed the $100 million Buyer Termination Fee because 'no such joint venture distributorship agreement was [] signed within th[e] 45 day time frame'")). Each of these statements is very much in dispute. The following summarizes the relevant facts as alleged in the Counterclaims.

Effective as of July 6, 2016, Vizio and LeEco entered the Merger Agreement pursuant to which LeEco was to acquire Vizio for approximately $2 billion subject to certain conditions. (Counterclaim ("CC") ECF Nos. 107, 108 ¶¶ 6, 10). If the Parties did not complete the Merger, a $100 million "Buyer Termination Fee" was potentially payable under the Merger Agreement to Vizio. *Id.*, ¶ 12. The Buyer Termination Fee consisted of two components: (1) a $50 million escrow deposit (the "Deposit") and (2) the $50 million Remainder guaranteed by Le Tech via the Limited Guarantee in favor of Vizio. (*Id.*, ¶ 12, *see also* Merger Agreement ("MA") ECF No. 108-1 ("MA"), § 9.2). Vizio "acknowledge[d] and agree[d] that the sole asset of the Buyer [LeEco] is cash in a *de minimis* amount." (CC, ¶ 15; LG, ¶ 13).

Vizio expressly agreed in the Limited Guarantee not to pursue a claim against any "Non-Recourse Party" for the Remainder. (CC, ¶16; LG, ¶ 13). Specifically, the Non-Recourse Parties are defined as "*the Guarantor or any of its former, current or future director, officer,* employee, agent general or limited partner, manager, member, stockholder, *Affiliate* or assignee *or any former, current or future director, officer, employee, agen*t, general or limited partner, manager, member, stockholder, *Affiliate* or assignee *of any of the foregoing* (collectively, but not including the Buyer and Merger Sub, each a '<u>Non-Recourse</u> <u>Party</u>')." (*Id.*) There is no dispute that Counterclaimants are Non-Recourse Parties.

Vizio agreed that it has "no right of recovery against . . . any Non-Recourse Party" "except for its rights to recover [the $50 million Remainder] against the Guarantor":

> Notwithstanding anything that may be expressed or implied in this Guarantee or any document or instrument delivered concurrently herewith [i.e., the Merger Agreement], by its acceptance of the benefits of this Guarantee, *the Company* acknowledges and agrees that it *has no right of recovery against, and no personal liability shall attach to,* through the Buyer or otherwise*, whether by or through attempted piercing of the corporate veil, by or through a claim by or on behalf of the Buyer against any Non-Recourse Party*, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute, regulation or applicable law, or otherwise, *except for its rights to recover from the Guarantor* under and to the extent provided in this Guarantee and subject always to the Cap [i.e., $50 million] and the other limitations described herein.

(CC, ¶ 23, LG, ¶ 13). The Limited Guarantee continues: "The Company further acknowledges and agrees that *recourse against the Guarantor under and pursuant to the terms of this Guarantee shall be the sole and exclusive remedy of the Company* and its Affiliates against the Guarantor and the Non-Recourse Parties in respect of any liabilities or obligations arising under, or in connection with, the Merger Agreement or the transactions contemplated thereby, *including by piercing of the corporate veil* or by or through a claim by or on behalf of the Buyer." (CC, ¶ 24; LG, ¶ 13). Vizio also covenanted that it "*shall not* institute, directly or indirectly, and shall cause its Affiliates not to institute, any proceeding or *bring any other claim arising under*, *or in connection with*, *the Merger Agreement* or the transactions contemplated thereby *or otherwise relating thereto*, against the Guarantor or any Non-Recourse Party except claims against the Guarantor under this Guarantee." (CC, ¶ 25; LG, ¶14). In short, Vizio expressly agreed that if LeEco, as the Buyer, or Le Tech, as the Guarantor, were unable to pay the Remainder, Vizio was not permitted to attempt to or recover the Remainder from any Non-Recourse Party, including Counterclaimants.

When a dispute arose concerning LeEco's obligation to pay Vizio the Buyer Termination Fee (CC, ¶ 27), LeEco and Vizio resolved their dispute by entering into the Framework Agreement, which did three things in connection with Merger Agreement. (*Id.*, ¶ 28). *First*, it terminated the Merger Agreement pursuant to Section 9.1(a) of the

5

Merger Agreement, which is the mutual walk away provision. (*Id.*). *Second*, in exchange for the payment of $40 million from the Deposit held in escrow under the Merger Agreement, Plaintiff granted LeEco a release of all claims "aris[ing] out of or in any way relate[d]" to (i) the negotiation or entry into the Merger Agreement, (ii) any breach of the Merger Agreement, and (iii) the termination of the Merger Agreement. (*Id.*). As such, LeEco no longer was obligated to pay the full Buyer Termination Fee. *Third*, it set up an alternative framework to the merger, with the potential formation of a proposed joint venture between the Parties in China. (*Id.*).

## III.   LEGAL STANDARD ON MOTIONS TO DISMISS

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts the non-moving party's material allegations as true and construes them in the light most favorable to the non-moving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). A claim can be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003). "[D]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 451 (9th Cir. 2007).

## IV.   ARGUMENT

### A.   The Counterclaims Sufficiently Allege That The SAC Violates Vizio's Obligations Not To Sue Counterclaimants.

The Counterclaims state a claim that Vizio violated the Limited Guarantee by bringing contract and tort claims that Vizio agreed not to pursue against Counterclaimants to recover the Remainder or its equivalent. (*See* CC, ¶¶ 16, 23-25, 32-37, 43, 46). As an initial matter, the Limited Guarantee is a forward-looking agreement that applies to the Remainder or any modification thereof that the parties agree to in writing. (*See* ECF No. 108-2, ¶ 4 ("[T]he Company [Vizio] hereby agrees that to the extent the Buyer [LeEco] is relieved of all or any portion of the Obligation . . . pursuant to any written agreement with

the Company entered into prior to the Closing . . . the Cap shall be reduced by an amount equal to the Reduction Amount."); *id.*, ¶ 7 ("[T]he Company may . . . make any agreement with the Buyer for the . . . compromise, discharge or release [of the Remainder] . . . without in any way . . . affecting the validity or enforceability of this Guarantee.").

In the Limited Guarantee, Vizio agreed three times not to sue Counterclaimants:[6]

First, "the Company [Vizio] acknowledges and agrees that it has *no right of recovery against, and no personal liability shall attach to* [*the Counterclaimants*] . . . whether by or through attempted piercing of the corporate veil . . . by any legal or equitable proceeding, by virtue of any statute, regulation or applicable law, or otherwise, *except for its rights to recover from the Guarantor under and to the extent provided in this Guarantee* and subject always to the Cap and the other limitations described herein." (CC, ¶ 23 (citing LG, ¶ 13)). This means any attempt to recover the Remainder from Counterclaimants violates the Limited Guarantee. There is no "Limiting Language," as Vizio calls it (Mtn. at 16:16-19, 23:6-9), in this sentence requiring precluded claims to arise under or in connection with the Merger Agreement.

Second, "[t]he Company *further* acknowledges and agrees that *recourse against the Guarantor* under and pursuant to the terms of this Guarantee *shall be the sole and exclusive remedy of the Company* and its Affiliates against the Guarantor and the Non-Recourse Parties *in respect of any liabilities or obligations arising under, or in connection with*, *the Merger Agreement or the transactions contemplated thereby*, *including* by *piercing of the corporate veil*." (CC, ¶ 24 (citing LG, ¶ 13)). This means recourse against Le Tech is Vizio's only remedy for damages in connection with the Merger Agreement. Vizio improperly attempts to copy and paste the "Limiting Language" from this sentence, that liabilities are in connection with the Merger Agreement, into the prior, independent

---

[6] The Counterclaims are not an attempt to "reiterate" arguments raised in LeEco's motion to dismiss the FAC, as Vizio argues. (Mtn., § II.D.). Vizio's covenants not to sue Counterclaimants in the Limited Guarantee are entirely different legal rights from the Framework Agreement's release of claims under the Merger Agreement, which were the subject of LeEco's motion to dismiss.

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

sentence of paragraph 13 and into paragraph 14 of the Limited Guarantee (*see* Mtn. at 16:16-19, 23:6-9).  But, this ignores the rule that "[c]ourts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith Co.*, 68 Cal. App. 4th 445, 473 (1998) (emphasis in original). Vizio's assertion that the Limited Guarantee is limited to "direct causes of action" under the Merger Agreement (Mtn. at 17:5-7, 23:6-9) is not based on the agreement's terms but rather Vizio's own interpretation.

Third, "[t]he Company hereby covenants and agrees that it *shall not institute,* directly or indirectly, and shall cause its Affiliates not to institute, any proceeding or bring *any other claim arising under, or in connection with*, *the Merger Agreement* or the transactions contemplated thereby *or otherwise relating thereto*, against the Guarantor or any Non-Recourse Party except claims against the Guarantor under this Guarantee." (CC, ¶ 25 (citing LG, ¶ 14)). This means Vizio cannot bring claims against Counterclaimants in connection with the Merger Agreement *or* the Framework Agreement (*i.e.,* a transaction "in connection with" or "otherwise relating" to the Merger Agreement or the Merger). The Framework Agreement was made "in connection with" *and* "otherwise relat[es]" to both the Merger Agreement and the merger because it (i) settled the parties' dispute under the Merger Agreement, (ii) referenced the Merger Agreement's mutual walk away provision (Section 9.1(a)), (iii) purportedly carved out portions of the Merger Agreement to survive under the Framework Agreement (at least, according to Vizio), and (iv) was entered "as consideration for terminating the Merger Agreement." (ECF No. 47-2, Ex. B). Indeed, Vizio expressly intended the Limited Guarantee to apply to future agreements (like the Framework Agreement) that modified the Remainder. (*See* ECF No., ¶ 7 ("[T]he Company may . . . make any agreement with the Buyer for the . . . compromise, discharge or release [of the Remainder] . . . without in any way . . . affecting the validity or enforceability of this Guarantee."). Given this provision and the forward-looking nature of the Limited Guarantee, Vizio's argument that the Framework Agreement was "not

COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

contemplated by the Merger Agreement" (Mtn. at 17:22-18-2) is especially misplaced, even putting aside the fact that the Framework Agreement clearly relates to the Merger Agreement.

Here, Counts 1 through 4 of the SAC violate the Limited Guarantee because they pursue Counterclaimants for the Remainder (which alone would be enough to trigger the Limited Guarantee) *and* the claims arise in connection with the Merger Agreement and the Framework Agreement. Vizio does not dispute that it seeks the Remainder from Counterclaimants, which is dispositive because that alone violates the Limited Guarantee. (LG, ¶ 13 (Vizio has "no right of recovery against [the Counterclaimants] . . . except for its rights to recover from the Guarantor under and to the extent provided in this Guarantee"). Instead, Vizio argues that its claims arise solely under the Framework Agreement (Mtn. at 23:21-23), which Vizio claims is not subject to the Limited Guarantee based on the "Limiting Language" (Mtn. at 16:16-19, 23:6-9). Vizio is incorrect that its claims arise under the Framework Agreement. First, the SAC requests "entry of a judgment for *rescission of the Framework Agreement* . . . but only if such rescission were to be ordered *with: (a) the contractual relationship of the parties being returned to where they stood under the Merger Agreement* as it existed immediately before the execution of the Framework Agreement, and *with the Buyer Termination Fee provisions remaining intact*." (SAC at 42:12-20). Second, Vizio characterized its damages in Counts 1 through 4 as arising under the Merger Agreement. (SAC, ¶¶ 64, 77; 93; 106 (alleging Vizio "suffered damages in the sum of $60,000,000 (i.e., the $10,000,000 remaining portion of the Buyer Termination Fee Deposit and the $50,000,000 *Buyer Termination Fee Remainder*."). Third, Vizio conceded in two separate filings before this Court that the requested relief is connected to the Merger Agreement. (*See* ECF No. 50 ) ("Opp. to MTD") at 21:1-6) ("*[T]he basis for the damages* that Vizio has suffered for breach of the Framework Agreement" includes "*the remaining $50 mm* that would otherwise have been paid directly to Vizio under the terms of the *Buyer Termination Fee Remainder* of the *Merger Agreement*."); Mtn. at 10:23-26 ("Defendants were promising [in the Framework

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

Agreement] to pay an amount equal to the $100MM Buyer Termination Fee which they were originally required to pay under the Merger Agreement."). Vizio cannot claim the contractual benefits of the Merger Agreement without acknowledging its agreement to forego claims against Counterclaimants. *See Continental Airlines v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1526 (9th Cir. 1987) ("[I]t is axiomatic that the entitled party must rescind the entire contract and may not retain the rights under it which he deems desirable and repudiate the remainder."). Here, Vizio is improperly seeking to rescind the Framework Agreement *and* obtain reliance damages based on the Merger Agreement while disavowing its obligations under Limited Guarantee.[7]

Thus, Counterclaimants state a claim against Vizio for breach of the Limited Guarantee based on Vizio's contract and tort claims against Counterclaimants to Recover the Remainder provided for with the Merger Agreement.

### B. Vizio's Allegations Of Fraud Do Not Preclude The Counterclaims.

Vizio's attempt to dismiss Counts 2 and 4 (relating to fraud) by invalidating the Limited Guarantee based on Vizio's mere allegation of fraud in the separate Framework Agreement should be overruled for four reasons.[8] First, Section 1668 does not apply because the Limited Guarantee is governed by New York law. Second, perhaps most importantly, the Limited Guarantee is an enforceable liability limitation entered by

---

[7] The cases Vizio cites on this point are inapposite, establishing only the general measure of damages for certain claims—i.e., that Vizio can seek reliance damages for breach of a contract to negotiate (*Copeland v. Baskin Robbins, U.S.A.* 96 Cal. App. 4th 1251,1263 (2002)) and benefit-of-the-bargain damages for fraud in the inducement (*In re Sepulveda*, 2017 WL 1505216 (9th Cir. B.A.P.). Further, *Sepulvada* is not binding or precedential. *In re Crain*, 243 F.R. 75 (C.D. Ca. 1999) ("The decisions of the BAP, however, do not carry the weight of stare decisis.").

[8] Even if the Court accepts Vizio's argument that its allegations of fraud vitiate the Limited Guarantee (which it should not), Counterclaimants still state a claim based on Vizio's contract claims for breach of the Framework Agreement and promissory estoppel. Vizio ignores its contract claims against Counterclaimants (Counts 1 and 3) when it incorrectly argues that "each of the Claims for Relief in the Counterclaims are expressly grounded upon the allegation that VIZIO agreed to release LeLe and Jia from all liability, including that for fraud and intentional wrongs." (Mtn. at 22:16-19).

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

sophisticated parties that expressly allows Vizio to pursue full relief by bringing claims against Le Tech and, thus, is permitted under Section 1668 even if the Court applies California law. Third, Vizio is not permitted to rescind the Limited Guarantee because it cannot pick and choose provisions from the Limited Guarantee (and Merger and Framework Agreements) to selectively enforce while disclaiming obligations. Fourth, to the extent the Court finds it ambiguous whether all Vizio's claims violate the Limited Guarantee, which Counterclaimants contend it is not, that is not a question regarding the sufficiency of the claim but rather a factual issue that cannot be resolved on a motion to dismiss.

### 1. California Civil Code Section 1668 Does Not Apply Because the Limited Guarantee is Governed by New York Law.

Vizio's attempt to invalidate a New York contract like the Limited Guarantee using California law fails because Vizio has shown no basis to disregard the reasonable choice of the sophisticated parties to the Limited Guarantee in selecting New York as its governing law. The Limited Guarantee provides: "*This Guarantee shall be governed by, and construed in accordance with, the laws of the State of New York* (without giving effect to the choice of law principles thereof that would apply the laws of any other jurisdiction)." (LG, ¶ 12). California has a "strong policy favoring enforcement" of "arm's-length contractual choice-of-law provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992).

Vizio argues that New York law should not apply in a single footnote that fails to even provide the relevant standard or meet Vizio's burden to demonstrate California's interest here. "Under California rules, a contract's choice-of-law provision determines the governing law unless: 1) the chosen state has no substantial relationship to the contracting parties *and* no reasonable basis for selecting the state exists; or 2) application of the chosen state's law would contradict a fundamental policy of the state of California *and* California has a materially greater interest in the matter." *Guadagno v. E\*Trade Bank,*

592 F. Supp. 2d 1263, 1269 (C.D. Cal. 2008).[9] California's choice of law standard requires application of New York law to the Limited Guarantee.

*First*, the parties had a reasonable basis for choosing New York law to govern the large financial commitment required for the merger. New York encourages parties to contracts exceeding $250,000 to apply New York law. *See* N.Y. Gen. Oblig. Law, § 5-1401 ("The parties to any contract . . . covering in the aggregate not less than two hundred fifty thousand dollars . . . may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state."); *id.* § 5-1402 (similar but applying to contracts exceeding $1 million). "The purpose of General Obligations Law § 5–1402 is to enhance New York as one of the world's major financial and commercial Centers, by encouraging the parties to significant commercial, mercantile or financial contracts to choose New York law and forum." *Carlyle CIM Agent, LLC v. Trey Resources I, LLC*, 50 N.Y.S.3d 326, 328 (2017). This alone makes the parties' choice of New York law reasonable. *See Santa Fe Pointe, LP v. Greystone Servs Corp.*, 2009 WL 1438285, *3 (N.D. Cal. May 19, 2009) (holding New York choice-of-law provision in guaranty enforceable under Section 5-1401 and rejecting defendant's attempt to apply California law). Contrary to Vizio's assertion (Mtn. at 9 n.2), the California choice of law provision in the separate Merger Agreement does not override the sophisticated parties' decision to govern the Limited Guarantee under New York law. Indeed, the Merger Agreement requires claims involving financing to be brought in New York, indicating that the parties' intended New York law to apply to all finance-related disputes. (ECF No. 108-1, ¶ 11.8 ("[E]ach of the parties agrees that it will not bring or support any proceeding involving the Debt Financing Sources . . .in any forum other than the Supreme Court of the State of New York . . . or . . . the United States District Court for the Southern District of New York.").

*Second*, Vizio has not met its burden to show that California public policy would be

---

[9] A court sitting in diversity applies the choice-of-law rules of the forum state. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001).

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

offended by application of New York law to the Limited Guarantee or that California has a materially greater interest in the dispute. *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001) ("[T]he other side [the party challenging the contract provision] [must] establish *both* that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue."). As discussed in detail in Section IV.B.2, California permits liability limitations for intentional wrongs that require claims to be brought against specified parties and not others. *See Farnham v. Superior Court,* 60 Cal. App. 4th 69, 77 (1997) (holding that exculpation clause insulating a business's officers, directors, and shareholders from liability "does not violate any fundamental public policy"). Accordingly, courts in the Ninth Circuit have repeatedly rejected arguments like Vizio's that contractual liability limitations governed by foreign law somehow "trigger" Section 1668. *See e.g., Hoot Winc, L.L.C. v. RSM McGladrey Fin. Proc. Outsourcing, LLC* No. 08-cv-1559 BTM (WMc), 2009 WL 10672068, at 1-2 (S.D. Cal. Aug. 10, 2009) (rejecting argument that respecting a Minnesota choice-of-law clause would allow defendant to escape alleged fraud and negligent misrepresentation in violation of Section 1668 because otherwise "no choice-of-law provision could ever be enforced" and "*[n]o cases have interpreted Cal. Civ. Code § 1668 in this fashion*."); *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 751-52 (9th Cir. 1981) (holding allegations of negligent and fraudulent misrepresentations in aircraft purchase agreement did not require application of Section 1668 to exculpatory clause governed by foreign law because "[u]nder the rule argued for, every allocation of risk between the contracting parties would have to withstand scrutiny under the public policy dictates of California.").

Thus, Vizio has not met its burden to identify a fundamental policy of California that would be violated by applying New York law to the Limited Guarantee and Ninth Circuit courts have rejected Vizio's argument that Section 1668 applies to limitation-of-liability clauses like that found in the Limited Guarantee. Nor has Vizio shown that California has a materially greater interest than New York in this dispute. Accordingly,

California law does not apply and cannot invalidate the Limited Guarantee.

> **2.**      **The Limited Guarantee is a Valid Limitation of Liability Negotiated between Sophisticated Parties that Provides Vizio with Remedies for its Underlying Claims.**

Even if California law applies, the Limited Guarantee is a valid limitation on liability between sophisticated businesses in an arm's length transaction that does not implicate the public interest and that expressly allows Vizio to bring claims against Le Tech to recover the Remainder so Vizio can obtain full relief without disrupting Defendants' business by improperly seeking to pierce the veil of numerous affiliates.

Section 1668 does not apply where a contractual liability limitation provides an avenue for recovery by, for example, permitting intentional tort claims against certain parties and not others.[10] *See Farnham.,* 60 Cal. App. 4th at 74 ("[A] contractual *limitation* on the liability of directors for defamation arising out of their roles as directors is equally valid where, as here, the injured party retains his right to seek redress from the corporation.") (emphasis in original); *Alpha Inv., LLC*, 2012 WL 2135291 at *6 (noting Section 1668 only "precludes a release that would prevent a plaintiff from recovering *from anyone or any entity* for an intentional wrong"). In *Farham*, the court upheld a liability limitation for intentional wrongs against corporate directors where the plaintiff was able to (and did) recover from the corporation for the directors' conduct. Because the plaintiff "retain [ed] his right to seek redress from the corporation," the contractual waiver was enforceable. *Farnham,* 60 Cal. App. 4th at 90. Similarly, in *Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010 (N.D. Cal. 2015), the court upheld a limitation on liability for fraud and other intentional wrongs where the contract "merely exempts employees and officers from personal liability" because

---

[10] While Vizio notes that limitations of liability are "strictly construed" (Mtn. at 17:13-14), "Section 1668 is not strictly applied." *Farnham*, 60 Cal. App. 4th at 74. For example, "[d]espite its purported application to 'all contracts,' section 1668 does not bar either contractual indemnity or insurance, notwithstanding that (aside from semantics) the practical effect of both is an 'exempt[ion]' from liability for negligence." *Id.*

14

1
2
3

"Plaintiffs may still pursue their tort claims against defendants AMSC and AMS." *Id.* at 1050-51 (*vacated in part to allow further fact finding on limitation of liability clause,* 2015 WL 4624678, *2 (N.D. Cal. Aug 3, 2015)).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Further, "contractual allocations of risk in nonconsumer commercial settings are routinely upheld" (*Phillippine Airlines, Inc. v. McDonnell Douglas Corp.*, 189 Cal. App. 3d 234, 242 (1987)), "even against claims that the breaching party violated a law or regulation." *CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc.*, 142 Cal. App. 4th 453, 472 (2d Dist. 2006). "[W]here the only question is which of two equal bargainers should bear the risk of economic loss in the event of a particular mishap, there is no reason for the courts to intervene and remake the parties' agreement." CAZA, 142 Cal. App. 4th at 475. For example, in *Morris v. Zusman*, 857 F. Supp. 2d 1082 (D. Or. 2012), the Court held that "negotiated agreements to cap available money damages at reasonable levels would not be within the scope of the statute," noting: "*it is unthinkable to me that the California courts would apply Section 1668 to invalidate a provision negotiated at arm's length between two parties of approximately equal bargaining power, capping the damages either party might seek against the other.*" *Id.* at 1097-98; *see also, Delta Air Lines, Inc. v. McDonnell Douglas Corp.*, 503 F.2d 239, 244 (5th Cir. 1974) (applying California law) (finding exculpatory clause in aircraft purchase agreement did not violate public policy because "[w]e are unable to agree that the contract between two industrial giants fixing the dollar responsibility for alleged negligence would be void under California law."); *Airlift Int'l, Inc. v. McDonnell Douglas Corp.*, 685 F.2d 267 (9th Cir. 1982) (holding exculpatory clause in aircraft purchase agreement precluded claims against manufacturer of plane that exploded allegedly from faulty component).

24
25
26

The cases Vizio cites to argue its fraud allegations concerning the separate Framework Agreement somehow vitiate the Limited Guarantee, which it does not allege was procured by fraud, are inapposite because they concern liability limitations that

27
28

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

precluded *all* recovery *and* industries that implicate the public interest.[11] Here, Section 1668 does not apply because the Limited Guarantee provides Vizio with an avenue to recover the Remainder and the merger does not raise public policy concerns. Vizio entered the Limited Guarantee after satisfying itself of Le Tech's ability to pay the Remainder, which Vizio agreed was its "sole and exclusive remedy." (CC, ¶ 22; *see also* ECF No. 23-2 (Opp. to MTD), ¶ 9). The Limited Guarantee prevents Vizio from ensnaring Le Tech's third-party affiliates, minimizing the disruption and cost of any dispute and fixing the responsibility on Le Tech to remedy Vizio's damages, if any. Such business judgments are permissible in California, as explained above. Vizio notes that "[a] contract must receive such an interpretation as will make it lawful . . . if it can be done without violating the intention of the parties" (Mtn. at 17:11-12 (citing Cal. Civ. Code, § 1643)). Rather than voiding the Limited Guaranty as Vizio suggests, Section 1643 requires interpreting the Limited Guarantee as a *valid* liability limitation to fix the responsible party in advance so Vizio can be made whole if it proves its claims. Thus, even if California law applies, the Limited Guarantee is permitted by Section 1668 because Vizio can be made whole.

### 3. Vizio Cannot Selectively Enforce the Merger Agreement and

---

[11] *Compare DotConnect Africa Trust v. Internet Corp. for Assigned Names and Numbers*, No. 16-cv-00862 RGK (JCx), 2016 WL9136168, *3-4 (C.D. Cal. Apr. 12, 2016) (voiding release that barred plaintiff from bringing "any and all claims" against the only wrongdoer, the worldwide organization responsible for assigning internet domains); *Baker Pac. Corp. v. Suttles*, 220 Cal. App. 3d 1148, 1155-56 (1990) (defendant forced asbestos removal employees to sign a release of all claims in a "'pistol to the head' approach to an employment relationship" that implicated public policy); *Health Net of Cal., Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224 (2003) (invalidating clause that prohibited "recovery of any damages *at all*" from the California Department of Health Services and "exempt[ed] DHS *completely* from responsibility for completed wrongs"); *with Peregrine Pharm., Inc. v. Clinical Supplies Mgmt., Inc.*, No. SACV 12-1608 JGB ANX, 2014 WL 3791567 (C.D. Cal. July 31, 2014) (*upholding* liability limitation because the parties were "two equal bargainers [that] apportioned the risk for violations of law").

**Framework Agreement without Recognizing its Obligations under the Limited Guarantee.**

Another independent basis to deny the Motion is that Vizio cannot pick and choose provisions from the Merger Agreement, Framework Agreement, and Limited Guarantee to selectively enforce rights while disclaiming obligations. An allegedly defrauded party must affirm or rescind the entire contract. *See Continental Airlines v. Goodyear Tire & Rubber Co*., 819 F.2d 1519, 1526 (9th Cir. 1987). In *Continental*, the Ninth Circuit found Section 1668 inapplicable and upheld a limitation of liability provision in an aircraft sale agreement that barred the buyer from pursuing the manufacturer for fraud or violating FAA regulations. *Id.* The exculpatory clause stated that "buyer waives all other remedies, warranties, guarantees or liabilities, express or implied." *Id.* at 1526. Plaintiff succeeded at trial on its claim that the manufacturer "made certain fraudulent misrepresentations in negotiating the contract" and claimed on appeal that the "fraud should vitiate the exculpatory clause." *Id.* Both the District Court and the Ninth Circuit rejected this argument. The Ninth Circuit held that plaintiff's "attempt to escape the exculpatory clause without voiding the entire contract [w]as a form of partial rescission" prohibited under California law. The Court noted, "it is axiomatic that the entitled party must rescind the entire contract and may not retain the rights under it which he deems desirable and repudiate the remainder." *Id.*

Here, Vizio seeks to exercise its rights under the Framework Agreement (*see* Count 1 and First Claim for Relief) and the Merger Agreement (*see* Second Claim for Relief for reinstatement of the Merger Agreement and Count 5). Vizio cannot simultaneously attempt to evade its obligations under the Limited Guarantee. Vizio concedes the Limited Guarantee is enforceable and does not allege any fraud relating thereto. (*See* Mtn. at 23:6-9 (acknowledging the Limited Guarantee at least applies to "direct causes of action for breach of the Merger Agreement, or breach of express or implied warranties under the Merger Agreement, or perhaps negligent performance of the Merger Agreement"). Indeed, the alleged fraud purportedly took place during negotiations over the Framework

Agreement in early 2017, long after the parties signed the Limited Guarantee. Having elected to affirm the Framework Agreement and the Merger Agreement, Vizio cannot selectively rescind the Limited Guarantee. Therefore, the Court should overrule Vizio's attempt to vitiate the Limited Guarantee based on its fraud allegations.

### 4.   Vizio Raises Issues of Fact that Cannot Be Decided on a Motion to Dismiss.

As set forth above, it is clear based on the express language of the Limited Guarantee, the Merger Agreement, and the Counterclaims that New York law applies and the Limited Guarantee bars Vizio's claims against Counterclaimants. To the extent ambiguity exits, which it does not, that raises a factual issue that must be resolved during litigation. Unable to win as a matter of law (as it must at this stage), Vizio attempts to create factual disputes concerning the reasonability of the parties' choice of New York law to govern the Limited Guarantee and the Limited Guarantee's application to claims arising under the Framework Agreement, which the Court cannot address on a motion to dismiss.

Vizio's argument for overriding the Limited Guarantee's choice-of-law clause would require the Court to review evidence of the parties' intent in choosing New York law and the connection of the parties and the transaction to New York, which is not present on the face of the Counterclaims. However, at this stage, the Court must accept as true Counterclaimants' allegation that New York law governs the Limited Guarantee. (*See* LG, ¶ 12; *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (documents attached to a complaint are properly considered on motion to dismiss)). Thus, Vizio's attempt to apply California law should be rejected as premature. *See In re Rexplore, Inc. Sec. Litig.*, 685 F.Supp. 1132, 1138-39 (N.D. Cal. 1988) (denying motion to dismiss because choice of law determination can only be made after all of the relevant evidence is before the court); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 293 (D. N.J. 2009) ("[T]he choice of law analysis is very fact intensive and should not be undertaken where a full factual record is required").

COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

Similarly, Vizio's arguments for overriding the plain language of the Limited Guarantee includes its false assertion that "it is beyond dispute the Fifth Claim for Relief for Breach of the Merger Agreement is the only cause of action brought 'under or in connection with the Merger Agreement or the transactions contemplated thereby." (Mtn. at 17:17-21). Contrary to Vizio's misstatement, the Limited Guarantee unambiguously precludes Vizio from suing Counterclaimants for the Remainder *or* for claims that "aris[e] under, or in connection with, the Merger Agreement or the transactions contemplated thereby or otherwise relating thereto." (LG, ¶¶ 13, 14). Any ambiguity that Vizio contends narrows its obligations under the Limited Guarantee cannot be resolved now. *See Asarco, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1009 (9th Cir. 2014) (holding that release agreement "present[ed] a fact issue that cannot be resolved on a motion to dismiss" as to whether plaintiff's claims arose under or in connection with released rights).

### C.     Counterclaimants Pleaded a Claim for Promissory Estoppel.

Vizio's sole challenge to the promissory estoppel claim is that Counterclaimants, who Vizio does not dispute are third-party beneficiaries entitled to enforce the Limited Guarantee, purportedly failed to plead sufficient reliance on Vizio's covenant not to sue them. (Mtn., § II.D). This ignores the allegations. Counterclaimants allege that "Vizio made a clear and unambiguous promise not to sue Counterclaimants for the Guarantee or its equivalent" and that "Counterclaimants *relied* upon that promise and were justified in doing so." (ECF 108, ¶¶ 46, 47). Counterclaimants allege several facts to support their reliance. They "had no reasonable grounds to believe that . . . Vizio would attempt to avoid the clear and obvious intention of the Limited Guarantee to provide Counterclaimants with *peace of mind* and the *avoidance of expense.*" (*Id.*, ¶ 47). Counterclaimants also relied on the "very precise allocation of the risk" that "expressly stated that Vizio was not permitted to seek from [Counterclaimants] any or all of the Buyer Termination Fee Remainder." (*Id.*, ¶ 18). These allegations sufficiently plead reliance.

### D.     Le Tech Is Not A Required Party Under Rule 19.

Vizio's argument in the Motion that Le Tech is a "required party" under Rule 19 borders on specious.  Vizio's main argument is undermined by its principal authority, *Stanley Elec. Co*., which rejected Vizio's position that merely being a signatory to a contract makes one a required party under Rule 19, calling that concept "thoughtless labeling."[12]  Vizio's Rule 19 argument is based upon precisely that.

Other than the fact that Le Tech is a signatory to the contract at issue—which courts have held is not itself sufficient where the suit, like this one, is not an action to set aside or decimate a contract—Vizio does not provide any reason why Le Tech should be a required party.  It is undisputed that the covenant not to sue at issue in the Counterclaims is solely related to the rights and obligations of Vizio vis-à-vis the Non-Recourse Parties, LeLe and Jia.  Vizio never attempts to argue why or how Le Tech has any interest in that dispute, nor does it argue that Le Tech's obligations or benefits under the Limited Guarantee will be affected by the dispute between Vizio and the Non-Recourse Parties.

The only issue under Rule 19(a)(1)(A) is whether the Court can afford "complete relief" to the "existing parties," so that "inquiry is limited to whether the …court can grant complete relief to the persons already parties …. The effect a decision may have on the absent party is not material."  *NGV Gaming, Ltd. v. Upstream Point Molate, LLC,* 355

---

[12] *See Stanley Elec. Co., Inc. v. Crawford Equipment and Engineering Co*. (S.D. Ohio 2008) 249 F.R.D. 267, 273 ("Des Champs argues for a general rule that a party to a contract  … is always indispensable, merely by virtue of having signed that contract. Des Champs is simply incorrect. Unlike joint tortfeasors in tort law, neither the Supreme Court nor any other court has broadly pronounced that a signatory to a contract is indispensable for that reason alone. Des Champs' argument is precisely the type of 'thoughtless labeling' based on bare legal relationships that should not be a part of the Rule 19 analysis.") (internal citation omitted).  Stanley involved a situation where a plaintiff put at issue the proportional liability of four named defendants (a contractor with whom plaintiff entered into an agreement) and three subcontractors with whom plaintiff did not directly engage.  Plaintiff claimed to be the intended third-party beneficiary of their apportionment of risk.  When plaintiff realized that two of the subcontractors destroyed diversity jurisdiction, plaintiff attempted to drop them which the court disallowed, because having put their proportionate liability at issue in its complaint, plaintiff could not leave two of the defendants hanging on the outcome of a case where they would no longer be present.

F.Supp.2d 1061, 1068 (N.D. Cal. 2005).[13]  Here, Vizio does not assert that the Court cannot grant complete relief to the Parties that are already before it (Vizio, LeLe and Jia), or even that the Court's decision would somehow affect Le Tech as an "absent party."

Vizio attempts to set up a straw man by arguing that "'no procedural principle is more deeply imbedded in the common law than, in an action to set aside a … contract all parties who may be affected by the determination are indispensable.'" (MTD (ECF 112) at 26:25-27:13.)  Yet, this is not an action to "set aside" a contract as Vizio acknowledges in its very next sentence where it states that "this lawsuit does not seek to set aside the Limited Guarantee." (*Id.* at 27). No one—not the Defendants, not Vizio, not Le Tech—is trying to set aside the Limited Guarantee.  And Vizio, who bears the burden of persuasion on its Motion,[14] has failed to assert  any basis on which the Limited Guarantee could or should be set aside, assuming someone were to even want to do that.

Vizio's case law authority—*Lomayaktewa v. Hathaway*, 520 F.2d 132 (9th Cir. 1975), *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150 (9th Cir. 2002), and *Camacho v. Major League Baseball*, 297 F.R.D. 457 (S.D. Cal. 2013)—only undermines its position. All were cases seeking to set aside a contract, which even Vizio acknowledges is not the case here.  In *Lomayaktewa,* leaders of the so-called "traditional Hopi" faction brought an action to void the lease of Indian land to coal-mining company.  *Lomayaktewa,* 520 F.2d at 1325. The court affirmed the order dismissing the action for failure to join the Hopi Tribe (among others), as indispensable parties because "the adverse effects of a cancellation of the lease on the Hopi Tribe far outweigh[ed] the

---

[13] *See also Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1014-15 (9th Cir. 2002) (complete relief was possible regardless of the absent party's participation); *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1044 (9th Cir.1983) ("In conducting a Rule 19(a)(1)(A) analysis, courts ask whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties.")

[14] With respect to motions under Rule 12(b)(7), "[t]he moving party has the burden of persuasion in arguing for dismissal."  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

adverse effects visited upon the 62 dissident traditional Hopis by reason of the failure to provide another forum for them." *Id.* at 1326.

In *Dawavendewa,* the Navajo Nation, which was not an initial party to the complaint, leased property to the defendant pursuant to a contract that provided preferential hiring to Navajos, which a Hopi claimed was discriminatory under Title VII. *Dawavendewa*, 276 F.3d at 1157. The plaintiff's challenge necessarily alleged that the contract was illegal, and in holding the Navajo Nation was an indispensable party, the court recognized that the defendant would be placed between the proverbial "rock and a hard place" unless the Navajo Nation were brought into the case, because an injunction against enforcement of that provision in the lease would have resulted in the defendant being in breach with the Navajos. *Id.* at 1156-1157.

Similarly, in *Comancho*, the Boston Red Sox scouted a player who, although he was allegedly already under contract with a Mexican league team known as the Red Devils, contended that he could sign with the Red Sox because his contract with the Red Devils was supposedly invalid for several reasons. *Comancho*, 297 F.R.D. at 459. The court reasonably concluded that the Red Devils were an indispensable party under Rule 19 because they had a legally protected interest that was otherwise unrepresented. *Id.* at 459-61.

As demonstrated, Vizio's authority is completely inapposite. In a case which is not "an action to set aside a contract . . . an attack on the terms of a negotiated agreement, or litigation seeking to decimate a contract," absentee signatories to the contract are simply not necessary, unless there are some other facts which make them so, a position Vizio never contends is the case here, for obvious reasons. *See Lennar Mare Island, LLC v. Steadfast Ins. Co.* 139 F. Supp. 3d 1141, 1151–52 (absentee not a necessary party because interests were adequately represented) (*citing Disabled Rights Action Committee v. Las Vegas Events, Inc.* 375 F.3d 861, 881(9th Cir. 2004) (signatory to a licensing agreement was not a required party where the plaintiff "does not allege that the licensing agreement is illegal, on its face or otherwise, and indeed, could not so allege" and "[a]ccordingly,…

reject[ing] the contention that [absentee] must be deemed necessary merely by virtue of its status as a party to a licensing agreement.")). In *Disabled Rights,* an advocacy organization sued the sponsor of a rodeo alleging violations of the public accommodation provision of the Americans with Disabilities Act. 375 F.3d at 866-67. One of the defendants moved under Rule 19 to join the state university system, which owned the arena where the rodeo was held. *Id.* at 867. The court, distinguishing both *Lomayaktwa and Dawavendewa,* found that "[n]o term of the contract requires discrimination on the basis of disability or precludes [defendants] from accommodating disabled individuals to the extent Title III requires them to do so. Thus, if Disabled Rights is successful, the contract would not be invalidated or "set aside," but would remain legally binding." Thus, the court rejected the notion that the absentee, although a signatory to the contract at issue, was a required party. *Id.* at 882. The same goes here where however the dispute between Vizio and the Non-Recourse Parties plays out, Le Tech is not affected.

Vizio makes a conclusory assertion that Le Tech is a necessary party because "it is crystal clear that the construction and enforceability of the so-called restrictive language is very much at issue." Mtn. 27:2-3. Here, the "so-called restrictive language" is only "very much at issue" vis-à-vis the Non-Recourse Parties and Vizio, and does not have anything to do with Le Tech.  Vizio has not asserted that the issue over the covenant not to sue Non-Recourse parties requires Le Tech to be present for purposes of asserting its rights, because Le Tech has no such interest. And as discussed above, the *Stanley* court's analysis dispenses with Vizio's core argument that merely being a signatory to a contract makes one an indispensable party for purposes of Rule 19.

Moreover, even when a party has an interest in the litigation, that party may not be necessary under Rule 19(a) if it is "adequately represented" by a present party. *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). Here, LeLe and Jia have a much more defined interest in addressing the relevant contractual issues than Le Tech, and they are defending that interest. Vizio does not assert that Le Tech is not "adequately represented," and Vizio fails to carry its burden of demonstrating that Le

**COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS
COUNTERCLAIMS**

Tech is a required party.

The remainder of Vizio's argument is that joinder of Le Tech may not be feasible because the Limited Guarantee provides for exclusive venue in New York.  (ECF 112, MTD at 27:23-28.)  This argument is of no consequence because Le Tech is not a required party (it is notable that Vizio references the New York venue provision without mentioning the New York choice of law provision).

And even in the unlikely event if that the Court were to find that Le Tech is a required party for which joinder is not feasible, that would not be the end of the story, because "[a]t all events, Rule 19(b) requires us to undertake a 'practical examination of [the] circumstances' to determine whether an action may proceed 'in equity and good conscience' without the absent party." *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 1000 (9th Cir. 2011) (internal citation omitted.); *see also* Fed. R. Civ. P. 19(b)(1)-(4). Here, Le Tech is so attenuated from the circumstances at issue involving the Non-Recourse Parties that neither Le Tech nor the existing parties will suffer any prejudice in Le Tech's absence, and LeLe and Jia would not have an adequate remedy if the Counterclaims were dismissed for non-joinder.  Equity and good conscience therefore dictate that the action should proceed without Le Tech.

## V.    CONCLUSION

Thus, the Motion must be denied in its entirety because the Counterclaims properly state a claim for each cause of action therein and Le Tech is not a required party.

Respectfully submitted,

DATED:  October 1, 2018                     GREENBERG TRAURIG, LLP


By /s/ Jeffrey K. Joyner
Jeffrey K. Joyner
Daniel Tyukody
Attorneys for Defendants
LeECO V. LTD., YUETING JIA and LELE
HOLDING LTD.

COUNTERCLAIMANTS LELE'S AND JIA'S JOINT OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS