Jeff K. Joyner (SBN CA 180485)
joynerj@gtlaw.com
Daniel Tyukody (SBN CA 123323)
tyukodyd@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone:  310.586.7700
Facsimile:   310.586.7800

Attorneys for Defendants,
LeECO V. LTD., LELE HOLDING, LTD., and YUETING JIA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; LELE HOLDING, LTD., a British Virgin Islands Personal Holding Company; YUETING JIA, an individual; and DOES 1 through 10,<br><br>Defendant.<br><br>LeECO V. LTD., LELE HOLDING, LTD., YUETING JIA<br><br>Counter-Claimant,<br><br>vs.<br><br>VIZIO, a California corporation, | Case No. 8:17-CV-01175-DOC-JDE<br><br>JUDGE:  Hon. John D. Early<br><br>**DECLARATION OF JEFF K. JOYNER IN SUPPORT OF DEFENDANTS LeECO V.  LTD.'S, LELE HOLDING, LTD.'S, AND YUETING JIA'S JOINT MOTION FOR A PROTECTIVE ORDER TO BIFURCATE ALTER EGO CLAIMS AND STAY RELATED DISCOVERY OR, IN THE ALTERNATIVE, TO LIMIT DISCOVERY**<br><br>[*Filed concurrently with Notice of Motion; Joint Stipulation; and [Proposed] Order*]<br><br>**Discovery Cutoff: December 14, 2018**<br>**Pre-trial Conference: August 5, 2019**<br>**Trial: August 13, 2019**<br>Date:          November 1, 2018<br>Time:          10:00 a.m.<br>Courtroom:  6A |

1

Counter-Defendant.

2

DECLARATION OF JEFF JOYNER

I, Jeffrey Joyner, declare and state as follows.

1.      I am a shareholder with the law firm of Greenberg Traurig, LLP, attorneys of record for the defendants LeEco V. Ltd. ("LeEco") and LeLe Holding, Ltd. ("LeLe") (collectively referred to as "Defendants").  Except as otherwise noted, I make this declaration based on my personal knowledge and, if called by a court of law, could and would completely testify to the facts set forth herein.

2.      I make this declaration in support of Defendants LeEco V. Ltd.'s, LeLe Holding, Ltd.'s and Yueting Jia's Joint Motion for a Protective Order to Bifurcate Alter Ego Claims and Stay Related Discovery or, in the Alternative, to Limit Discovery.

3.      Plaintiff Vizio, Inc. ("Plaintiff") served its First Set of Request for Production on LeEco and LeLe Holding, Ltd. ("Requests") on January 12, 2018. Attached as **Exhibit A** is a true and correct copy of Vizio, Inc.'s First Set of Request for Production to LeEco.   Attached as **Exhibit B** is a true and correct copy of Vizio, Inc.'s First Set of Request for Production to LeLe.

4.      Defendants timely served their responses to Plaintiff's Requests on April 11, 2018.  Attached as **Exhibit C** is a true and correct copy of LeEco's Responses to Vizio, Inc.'s First Set of Request for Production.  Attached as **Exhibit D** is a true and correct copy of LeLe's Responses to Vizio, Inc.'s First Set of Requests for Production.

5.      On August 7, 2018 (the "In-Person M&C"), counsel for the Parties met and conferred in person to discuss, *inter alia*, Plaintiff's improper discovery requests and Defendants' objections and responses thereto. David Tarlow, Robert Waxman, and Jason Haas appeared on behalf of Plaintiff, and Daniel Tyukody, Attashin Safari and I appeared on behalf of Defendants.  During that meeting, Daniel Tyukody and I explained Defendants' objections to Plaintiff's Requests, including Defendants' objection based on the Limited Guarantee entered between Plaintiff and Le Technology, Inc. The Parties' counsel also met and conferred about the temporal scope of the Requests, including the requests that Plaintiff propounded, that sought to apply a five-year look back period for alter ego discovery (seeking documents beginning January 1, 2012).  During the In-

DECLARATION OF JEFF JOYNER

Person MC, Plaintiff's counsel responded to Defendants' objections and the parties'
counsel agreed that Defendants' counsel would send to Plaintiff's counsel additional
authority supporting Defendants' discovery positions.

6.      On August 13, 2018 Plaintiff's counsel sent me an email containing
authority for its position that it is appropriate to look back to the formation of a company
when determining alter ego liability.  Attached as **Exhibit E** is a true and correct copy of
Plaintiff's counsel's August 13, 2018 email.

7.      On August 13, 2018, Defendants' counsel sent an eight-page meet-and-
confer letter to Plaintiff's counsel reiterating Defendants' objections based on the
Limited Guarantee and that the Requests are overly broad, unduly burdensome,
disproportionate to the needs of this case, and harassing.  The August 13, 2018 letter set
out in detail that the Requests improperly seek documents (a) of third-parties, (b) that are
not in Responding Defendants' possession, custody or control, (c) in violation of privacy
laws, and (d) outside the time frame that is appropriate for such requests as a five-year
look back period for alter ego discovery in this matter is overbroad.  Attached as **Exhibit
F** is a true and correct copy of the August 13, 2018 letter.

8.      Attached as **Exhibit G** is a true and correct copy of an August 15, 2018
email from Plaintiff's counsel agreeing that Plaintiff would respond by August 17, 2018
to Defendants' August 13, 2018 letter. Plaintiff's counsel responded a week later on
August 24, 2018. Attached as **Exhibit H** is a true and correct copy of the email
transmitting and attaching Plaintiff's counsel's August 24, 2018 letter.

9.      On August 27, 2018 the parties submitted a Joint Report Re: Discovery
Disputes ("Joint Report") (ECF No. 110).

10.     On August 28, 2018 at 10:00 a.m., the parties participated in a telephonic
conference regarding the discovery disputes with Magistrate Judge Early ("Telephonic
Court Conference"). The parties agreed to submit a joint stipulation regarding the
outstanding discovery disputes pursuant to Federal Rule of Civil Procedure 26 and Civil
Local Rule 37.

DECLARATION OF JEFF JOYNER

11.     On August 29, 2018, Plaintiff's counsel sent an email expressing that Plaintiff would be amenable to limiting the alter ego discovery to the period from December 1, 2013 to the present.  On August 31, 2018, Defendants' counsel responded that the time period was not acceptable for the reasons set forth in the Joint Report (ECF No. 110). Attached as **Exhibit I** is a true and correct copy of the August 29 through August 31 email exchange.

12.     Attached as **Exhibit J** is a true and correct copy of Plaintiff Vizio, Inc.'s Request for Production of Documents to Defendant Yueting Jia (Set One) ("Jia Requests") that Plaintiff served on September 24, 2018. Plaintiff never mentioned during the In-Person M&C, Joint Report or Telephonic Court Conference that it intended to propound the Jia Requests.  The Jia Requests include 73 requests that are almost identical to the Requests propounded on LeLe and LeEco including the Alter Ego and Financial requests that are the subject of the Motion.

13.     Attached as **Exhibit K** is a true copy of March 28, 2017 email from Ben Wong to Winston Cheng, produced in this action, Bates stamped LEECO0000830-834.

14.     Attached as **Exhibit L** is a true copy of an April 4, 2017 email from Jerry C. Huang attaching Plaintiff's redline of the draft of Framework Agreement, produced in this action, Bates stamped LEECO0002017-2055.

15.     Attached as **Exhibit M** is a true copy of a June 22, 2017 email and attached letter from Charles Hsieh, produced in this action, Bates stamped LEECO0000305-307.


Executed on this 26 day of September, 2018, in Los Angeles, California.


        */s/ Jeff K. Joyner*
        JEFF K. JOYNER

DECLARATION OF JEFF JOYNER

# EXHIBIT A

Robert M. Waxman (SBN 89754)
 rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
 dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
 jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LeECO V. LTD., et al,<br><br>Defendants. | Case No. 8:17-CV-01175-DOC-JDE<br><br>**PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LeECO V. LTD. (SET ONE)**<br><br>Judge:  Hon. David O. Carter |

ERVIN COHEN & JESSUP LLP

1 | PROPOUNDING PARTY:          Plaintiff Vizio, Inc.

2 | RESPONDING PARTY:           Defendant LeEco V. Ltd.

3 | SET NO.:                    ONE (1)

4 |     Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Vizio, Inc.

5 | propounds the following Request for Production of Documents, Set One to

6 | Defendant, LeEco V. Ltd. ("Responding Party" or "LeECO"), to be responded to

7 | fully, verified in writing under oath, within thirty (30) days of service of these

8 | requests as provided for by Federal Rule of Civil Procedure 34(b)(2)(A).  All

9 | objections, responses and responsive documents shall be served on Ervin Cohen &

10 | Jessup LLP, 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, California 90212.

11 |     These Requests are governed by the Definitions and Instructions set forth

12 | herein.

13 | ### DEFINITIONS

14 |     As used herein, and only for the purposes of these discovery requests, the

15 | following terms have the following meanings:

16 |     1.    As used herein, the terms "YOU" or "YOUR" shall mean LeECO, and

17 | to all agents and representatives of LeECO, and to all PERSONS acting or

18 | purporting to act on its behalf or pursuant to its request.

19 |     2.    The word "COMPLAINT" shall mean and refer to the First Amended

20 | Complaint filed by Vizio, Inc. in the above-captioned action on November 6, 2017.

21 |     3.    "VIZIO" shall mean and refer to Plaintiff Vizio, Inc., a California

22 | corporation, and to all agents and representatives of VIZIO, and to all PERSONS

23 | acting or purporting to act on its behalf or pursuant to its direction or request.

24 |     4.    "LeECO" shall mean Defendant LeEco V. Ltd., an exempted company

25 | with limited liability incorporated under the laws of the Cayman Islands, and to all

26 | agents and representatives of LeECO, and to all PERSONS acting or purporting to

27 | act on its behalf or pursuant to its request.

28 |     5.    "GLOBAL" shall mean Defendant LeEco Global Group Ltd., a

ERVIN COHEN & JESSUP LLP

corporation organized and existing under the laws of the People's Republic of China, and to all agents and representatives of GLOBAL, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

6.     "LELE" shall mean Defendant Lele Holding Ltd., a personal holding company organized and existing under the laws of the British Virgin Islands, and to all agents and representatives of LELE, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

7.     "JIA" shall mean Defendant Yueting Jia, an individual who resides in China and is the owner of GLOBAL through LELE, and to all agents and representatives of JIA, and to all PERSONS acting or purporting to act on his behalf or pursuant to his request.

8.     "MERGER SUB" shall mean Le V Merger Sub Inc., a California corporation and indirect wholly-owned subsidiary of LeECO, and to all agents and representatives of MERGER SUB, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

9.     "LTI" shall mean Le Technology, Inc., a California corporation and subsidiary of GLOBAL, and to all agents and representatives of LTI, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

10.    "LREG" shall mean LeEco Real Estate Group LLC, a Delaware limited liability company, and to all agents and representatives of LeEco Real Estate Group LLC, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

11.    "MERGER AGREEMENT" shall mean and refer to that certain Agreement and Plan of Merger, made as of July 6, 2016, by and among VIZIO, LeECO, MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited liability company.

12.    "MERGER" shall mean and refer to that transaction among VIZIO, LeECO, and MERGER SUB agreed to in the MERGER AGREEMENT and to any

ERVIN COHEN & JESSUP LLP

1  and all potential transactions discussed between VIZIO and LeECO prior to entry of
2  the MERGER AGREEMENT, whether the potential transaction took the form of a
3  merger, acquisition, purchase of assets or other structure.

4      13.   "GUARANTY" shall mean and refer to that certain Limited Guarantee
5  made as of July 6, 2016, by LTI in favor of VIZIO.

6      14.   "FRAMEWORK AGREEMENT" shall mean and refer to that certain
7  Framework, Termination and Mutual General Release Agreement entered into as of
8  April 5, 2017 by and among VIZIO, LeECO, and MERGER SUB.

9      15.   "ESCROW AGREEMENT" shall mean and refer to that certain
10 Escrow Agreement, made as of July 6, 2016, by and among VIZIO, LeECO,
11 MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited
12 liability company, with Citibank, National Association.

13     16.   "ESCROW" shall mean and refer to the escrow created by the
14 ESCROW AGREEMENT in connection with the MERGER AGREEMENT.

15     17.   "CHINA" shall mean and refer to the People's Republic of China.

16     18.   As used herein, the term "COMMUNICATION" or
17 "COMMUNICATIONS" means the transmittal of information (in the form of facts,
18 ideas, inquiries, or otherwise) by any means, including but not limited to, any
19 meeting, conversation, discussion, conference, correspondence, message, or other
20 written or oral transmission, exchange, or transfer of information in any form
21 between two or more PERSONS, including in person or by telephone, facsimile,
22 telegraph, telex, e-mail or other tangible or electronic medium.

23     19.   As used herein, the terms "DOCUMENT" and "DOCUMENTS" shall
24 mean writings of every kind, source, and authorship, both originals and copies
25 thereof, in YOUR custody or control, or known by YOU to exist, irrespective of
26 whether the writing is one intended for or transmitted internally by YOU or intended
27 for or transmitted to any other person or entity, INCLUDING any government
28 agency, department, administrative entity, or other person or entity, the contents of

ERVIN COHEN & JESSUP LLP

1  which in any way RELATE, discuss, consider, or otherwise refer to the subject

2  matter of the particular discovery requested.  "DOCUMENT" and "DOCUMENTS"

3  shall include the following:  (1) all matter that is written, handwritten, typewritten,

4  printed, graphic, photocopied, photographic, or recorded, including sound

5  recordings or reproductions, however produced, reproduced or prepared, including,

6  but not limited to, notes, telegrams, notebooks, brochures, charts, photographs,

7  agreements, proposals, minutes, communications in words or symbols, interoffice

8  communications, studies, technical data, brochures, bulletins, reviews, compilations,

9  films, audio recordings, audio cassettes, videotapes, calendars, appointment books,

10  diaries, and work papers of any kind; (2) all machine or computer readable data

11  compilations or electronic or mechanical devices which contain information,

12  including, but not limited to, computer server(s), texts, tapes, diskettes, cards, hard

13  disks, optical disks, cassettes, and all other information storage or retrieval systems,

14  together with the codes, passwords and/or programming instructions and other

15  materials necessary to understand and use such systems; (3) all electronic mail,

16  instant mail, and social media accounts belonging to YOU; (4) all originals, drafts,

17  and copies that differ in any respect from the original, all marginal comments that

18  appear on such DOCUMENTS, and all transcripts or recordings of such

19  DOCUMENTS; (5) all attachments, enclosures or DOCUMENTS affixed or

20  referred to in such DOCUMENTS; and (6) all material within the scope of Rule

21  1001 of the Federal Rules of Evidence and California Evidence Code Sections 250,

22  255 and 260.

23      20.    The terms "ANY," "ALL," "EACH," and "EVERY" should be

24  understood in their most inclusive sense as necessary to bring within the scope of

25  the discovery request all responses that might otherwise be construed to be outside

26  of their scope.

27      21.    As used herein, the term "INCLUDING" shall mean including, but not

28  limited to, and shall not be interpreted to exclude any information otherwise within

ERVIN COHEN & JESSUP LLP

1  the scope of these Requests.

2      22.    As used herein, the term "PERSON" shall mean, without limitation, a

3  natural person, corporation, limited liability company, partnership, trust, association,

4  joint venture, firm, tenancy-in-common or other business enterprise, governmental

5  or legal entity and includes both the singular and plural as well as all representatives

6  of such PERSON or PERSON(S).

7      23.    The words "RELATING," "RELATE," "RELATE TO," "RELATING

8  TO," and "REFERRING" as used herein shall mean all matters or things that in any

9  way discuss, are connected to, arise from, consist of, reflect, summarize, evaluate, or

10  comment on the subject or object of the particular Request, or that have any logical

11  or factual connection to the matter discussed, and they shall include the common

12  meanings of all those terms, and shall include indirect as well as direct references to

13  the subject matter set forth in the Requests.

14      24. The term "AFFILIATE" shall mean a subsidiary corporation, sister

15  corporation, subsidiary limited liability company, sister limited liability company, or

16  ANY other form of business entity where: (1) at least 20% or more of the stock or

17  membership interests of that entity are held, owned, or controlled, either directly or

18  indirectly, by the PERSON identified in the request; (2) the entity holds, owns or

19  controls, either directly or indirectly, at least 20% or more of the stock or

20  membership interests of the PERSON identified in the request; or (3) at least 20% or

21  more of the stock or membership interests in both the entity and the PERSON

22  identified in the request are held, owned, or controlled, either directly or indirectly,

23  by the same PERSON.

24                      **INSTRUCTIONS**

25      1.    The time period covered by each of the within Requests shall be from

26  July 1, 2015 to the date of the service of your response to these Requests, except as

27  to those Requests that specifically state any other time period.

28      2.    To the extent that documents responsive to these requests contain text

ERVIN COHEN & JESSUP LLP

1  in the Chinese language (or any language other than English), YOU should produce

2  both the original document and any documents in YOUR possession, custody or

3  control that contain an English translation, in whole or in part, of the Chinese text in

4  the original document.

5      3.    As used herein, the terms "and" and "or" shall be interpreted

6  conjunctively or disjunctively, as necessary, to bring within the scope of these

7  Requests all DOCUMENTS that might otherwise be construed to be outside of the

8  scope of these requests.

9      4.    These Requests include DOCUMENTS within the custody, possession

10  and control of YOU and YOUR agents or AFFILIATES, INCLUDING YOUR

11  agent(s), representative(s), attorney(s), accountant(s), tax advisor(s) and investment

12  advisor(s), and any phone companies or banks YOU use. If a DOCUMENT is

13  responsive to a request for production and is in YOUR control but is not in YOUR

14  possession or custody, identify the PERSON or entity with possession or custody.

15     5.    If a requested DOCUMENT is withheld or objected to based on a claim

16  of privilege or for other reasons, please serve the undersigned a privilege log, and

17  state with respect to each such withheld DOCUMENT:

18     (a)    The nature or basis of the claim of privilege or other ground for

19  nonproduction;

20     (b)    The names and addresses of all parties to the COMMUNICATION

21  (INCLUDING ALL parties who have been copied on the COMMUNICATION);

22     (c)    The date, subject matter, and number of pages of the DOCUMENT;

23  and

24     (d)    The current custodian and present location of the DOCUMENT.

25     6.    A representation of inability to comply with a particular request shall

26  state the specific reason for the inability to comply, INCLUDING whether the

27  particular DOCUMENT or other tangible thing has never existed, has been

28  destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in

ERVIN COHEN & JESSUP LLP

1 YOUR possession, custody, or control and/or the possession, custody or control of
2 any of YOUR AFFILIATES. The statement shall set forth the name and address of
3 any PERSON known or believed by that party to have possession, custody, or
4 control of that item or category of item.

5 7. If only a part of a request is objectionable, the response shall identify
6 with particularity any DOCUMENT or other tangible thing falling within any
7 category of item in the request to which an objection is being made, and shall set
8 forth clearly the extent of and the specific ground for the objection. If there are no
9 DOCUMENTS responsive to any particular request or category, please so state in
10 writing, providing a representation of inability to comply with respect to the
11 remainder of that item or category.

12 8. All paper DOCUMENTS are to be produced as they are kept in the
13 usual course of business with any identifying labels, file markings or similar
14 identifying features, and shall be organized and labeled to correspond to the
15 appropriate request herein. If a portion of a DOCUMENT is responsive, the entire
16 DOCUMENT is to be produced.

17 With respect to electronic DOCUMENTS, all spreadsheets, presentation and
18 design files (e.g. Excel, PowerPoint) are to be produced in electronic form in native
19 format, as kept in the ordinary course of business. All other electronically stored
20 information ("ESI") and imaged hard copy shall be produced in the format outlined
21 below. All ESI shall be rendered to TIFF image format, and accompanied by a
22 Concordance Image Cross Reference file. All applicable metadata/database fields
23 shall be extracted and provided in Concordance load file format:

24 (a) Image File Format: All images, paper documents scanned to images, or
25 rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV
26 (2D Compression). Documents should be uniquely and sequentially Bates
27 numbered with an endorsement burned into each image. All TIFF file names shall
28 include the unique Bates number burned into the image. Each Bates number shall

ERVIN COHEN & JESSUP LLP

1  be a standard length, include leading zeros in the number, and be unique for each
2  produced page.  All TIFF image files shall be stored with the ".tif" extension.
3  Images shall be OCR'd using a standard COTS products.  All pages of a document
4  or all pages of a collection of documents that comprise a folder or other logical
5  grouping, including a box, shall be delivered on a single piece of media.  No image
6  folder shall contain more than 2000 images.

7         (b)    Concordance Image Cross Reference File:  Images should be
8  accompanied by a Concordance Image Cross Reference file that associates each
9  Bates number with its corresponding single-page TIFF image file.  The Cross
10  Reference file should also contain the image file path for each Bates numbered page.

11        (c)    Concordance Load File:  Images should also be accompanied by a "text
12  load file" containing delimited text that will populate fields in a searchable, flat
13  database environment.

14        9.     If any DOCUMENT called for within a request has been destroyed or
15  discarded, identify the DOCUMENT and describe the date, manner of and reason
16  for its destruction.

17        10.    Each Request shall be construed independently, and no Request shall
18  be viewed as limiting the scope of any other Document Request.

19        11.    Each non-identical copy of a DOCUMENT, whether different from the
20  original because of handwritten notes, marks, attachments, or any other reason, is a
21  separate DOCUMENT that must be produced.

22        12.    The use of the singular form of any word includes the plural, and the
23  use of the plural form of any word includes the singular.

24                        **REQUESTS FOR PRODUCTION**

25  **REQUEST FOR PRODUCTION NO. 1:**

26        ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO
27  the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the
28  negotiations that resulted in the MERGER AGREEMENT.

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 2:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the GUARANTY.

**REQUEST FOR PRODUCTION NO. 3:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the negotiations that resulted in the FRAMEWORK AGREEMENT.

**REQUEST FOR PRODUCTION NO. 4:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations that resulted in the ESCROW AGREEMENT.

**REQUEST FOR PRODUCTION NO. 5:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of management meetings, emails, marketing plans, operational plans, financial analyses, and strategy documents.

**REQUEST FOR PRODUCTION NO. 6:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER.

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS and COMMUNICATIONS posted by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or the MERGER.

**REQUEST FOR PRODUCTION NO. 8:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW.

ERVIN COHEN & JESSUP LLP

1    **REQUEST FOR PRODUCTION NO. 9:**

2       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

3    the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

4    JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

5    **REQUEST FOR PRODUCTION NO. 10:**

6       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

7    the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

8    JIA, LTI or any of their AFFILIATES expected to receive from the public

9    announcement of the MERGER AGREEMENT or that any of those PERSONS

10    actually received following that announcement.

11    **REQUEST FOR PRODUCTION NO. 11:**

12       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

13    the response of U.S. and Chinese markets or press to the proposed MERGER,

14    INCLUDING all articles, reports and other documents issued by stock markets,

15    bond markets, financial press, newspapers, and financial analysts.

16    **REQUEST FOR PRODUCTION NO. 12:**

17       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

18    efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to

19    implement, meet the conditions for, or complete the MERGER with VIZIO.

20    **REQUEST FOR PRODUCTION NO. 13:**

21       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

22    Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

23    agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

24    **REQUEST FOR PRODUCTION NO. 14:**

25       ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU

26    received from any PERSON, including AFFILIATES, third party businesses, and

27    governmental entities, regarding the proposed MERGER.

28

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 15:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—whether located in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 16:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued, made or published by any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 17:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such

ERVIN COHEN & JESSUP LLP

1  investments.

2  **REQUEST FOR PRODUCTION NO. 18:**

3  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
4  the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed
5  to complete the proposed MERGER with VIZIO.

6  **REQUEST FOR PRODUCTION NO. 19:**

7  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
8  efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER
9  SUB to complete the proposed MERGER with VIZIO INCLUDING
10  DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International
11  Capital; the Bank of China; Bank of China Limited Macau Branch; China
12  Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;
13  Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet
14  Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment
15  Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.
16  Ltd. or any of their AFFILIATES.

17  **REQUEST FOR PRODUCTION NO. 20:**

18  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
19  the terms on which the financing needed by LeECO and MERGER SUB to
20  complete the proposed MERGER with VIZIO could be obtained, INCLUDING
21  DOCUMENTS OR COMMUNICATIONS to or from: Hollyhigh International
22  Capital; the Bank of China; Bank of China Limited Macau Branch; China
23  Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;
24  Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet
25  Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment
26  Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.
27  Ltd. or any of their AFFILIATES.

28

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 21:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, regarding efforts to implement, meet the conditions for, or complete the MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete the MERGER.

**REQUEST FOR PRODUCTION NO. 22:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 23:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 24:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the actual assets and financing available to LeECO and MERGER SUB on or about April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

**REQUEST FOR PRODUCTION NO. 25:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 26:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the source of monies deposited in ESCROW to serve as the "Buyer Termination Fee Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT

ERVIN COHEN & JESSUP LLP

1 | and used in Section 9.2 of the MERGER AGREEMENT.

2 | **REQUEST FOR PRODUCTION NO. 27:**

3 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
4 | the termination of the MERGER AGREEMENT.

5 | **REQUEST FOR PRODUCTION NO. 28:**

6 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
7 | reasons why the MERGER was not, or could not, be completed.

8 | **REQUEST FOR PRODUCTION NO. 29:**

9 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a
10 | potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE,
11 | JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO
12 | products in CHINA, INCLUDING emails, marketing plans, operational plans,
13 | financial analyses, and strategy documents.

14 | **REQUEST FOR PRODUCTION NO. 30:**

15 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
16 | negotiations or discussions between VIZIO and LeECO to "negotiate in good faith
17 | and execute one or more agreements" regarding a joint venture in CHINA as
18 | required by Section 4 of the FRAMEWORK AGREEMENT.

19 | **REQUEST FOR PRODUCTION NO. 31:**

20 | DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual
21 | relationships, and the terms of those relationships, between LeECO, GLOBAL,
22 | LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other
23 | PERSON on the other hand, that would have been impacted or affected by a joint
24 | venture between LeEco and VIZIO to distribute VIZIO products in CHINA.

25 | **REQUEST FOR PRODUCTION NO. 32:**

26 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
27 | efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to
28 | develop and obtain certification of the "LeEco Le App", as required of LeECO

ERVIN COHEN & JESSUP LLP

1  under Section 2.1.1 of the FRAMEWORK AGREEMENT.

2  **REQUEST FOR PRODUCTION NO. 33:**

3      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

4  efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

5  identify and/or obtain "non-cash assets with a fair market value equal to US

6  $50,000,000 as a capital contribution" to contribute to a proposed joint venture with

7  VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

8  **REQUEST FOR PRODUCTION NO. 34:**

9      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

10  ALL assets owned by LTI or financial resources available to LTI, at any time

11  between July 6, 2016 and the present, that were available to satisfy LTI's

12  representation in Section 5(d) of the GUARANTY that LTI would have "the

13  financial capacity to pay and perform the Obligation" of LeECO to pay the Buyer

14  Termination Fee Remainder if it should become due under the MERGER

15  AGREEMENT and that LTI "shall maintain such financial capacity for so long as

16  this Guarantee shall remain in effect."

17  **REQUEST FOR PRODUCTION NO. 35:**

18      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

19  payments or transfers made by LTI after July 6, 2016, if any, in which the total

20  assets then owned by LTI, or the total financial resources available to LTI, was less

21  than $50,000,000.00 either before and/or after the transaction.

22  **REQUEST FOR PRODUCTION NO. 36:**

23      ANY and ALL articles of incorporation, amended articles of incorporation,

24  bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL,

25  LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1,

26  2012.

27  **REQUEST FOR PRODUCTION NO. 37:**

28      DOCUMENTS sufficient to identify ALL officers, directors, partners,

ERVIN COHEN & JESSUP LLP

1  shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of

2  their AFFILIATES at any time after January 1, 2012.

3  **REQUEST FOR PRODUCTION NO. 38:**

4      ANY and ALL shares of stock, stock certificates, partnership interests, or

5  membership interests currently held or owned by any PERSONS in LeECO,

6  GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

7  **REQUEST FOR PRODUCTION NO. 39:**

8      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

9  ANY contract or agreement - - INCLUDING all written amendments and

10 supplements to any such contract or agreement and all written assignments and

11 modifications of any such contract or agreement - - whereby any PERSONS

12 acquired on any date after January 1, 2012, either in their own respective names or

13 under and pursuant to any fictitious business names, any right, title or interest in or

14 to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and

15 each or any of their respective employees, shares of stock, partnership interests,

16 membership interests, assets and/or liabilities, INCLUDING all loan commitments,

17 offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty

18 agreements, stock transfer agreements, membership interest transfer agreements,

19 credit agreements, sales orders, partnership agreements, sales agreements,

20 assignment agreements, hypothecation agreements, deregistration agreements,

21 dissolution agreements, purchase agreements, options agreements, stock

22 agreements, shares of stock, certificates of stock, joint venture agreements, asset

23 sale agreements, debt payment agreements, accommodation agreements, debt

24 protection agreements, asset transfer agreements, indemnity agreements, defense

25 agreements, hold harmless agreements, employee sharing agreements, employee

26 transfer agreements, security agreements, financing agreements, memorandum

27 agreements, letter agreements, loan agreements, insolvency agreements,

28 intercompany transfer agreements, escrow agreements, operating agreements, loan

ERVIN COHEN & JESSUP LLP

1 commitments, limited liability company agreements, assumption agreements,
2 liquidation agreements, winding up agreements, creditor's agreements, letters of
3 credit, asset distribution or preservation agreements, liability distribution or transfer
4 agreements, membership distribution or transfer agreements, payment records,
5 promissory notes, governmental filings, security instruments, deeds and deeds of
6 trust.

7 **REQUEST FOR PRODUCTION NO. 40:**

8 ANY and ALL agendas, corporate minutes, and corporate resolutions for
9 ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL,
10 LELE, LTI, and LREG held on any date after January 1, 2012.

11 **REQUEST FOR PRODUCTION NO. 41:**

12 ANY and ALL agendas, minutes, and resolutions for ALL meetings of the
13 shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any
14 date after January 1, 2012.

15 **REQUEST FOR PRODUCTION NO. 42:**

16 ANY and ALL voting or operating agreements among shareholders or
17 members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any
18 date after January 1, 2012.

19 **REQUEST FOR PRODUCTION NO. 43:**

20 ANY and ALL contracts and agreements between or among LeECO,
21 GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in
22 effect at any point in time after January 1, 2012.

23 **REQUEST FOR PRODUCTION NO. 44:**

24 ANY and ALL DOCUMENTS prepared at any time since 2012 and through
25 and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG
26 and/or any of their AFFILIATES represented, stated, or otherwise held out that
27 LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE
28 or GLOBAL and/or to be substantially the same as LELE or GLOBAL,

ERVIN COHEN & JESSUP LLP

1    INCLUDING advertising or promotional materials, press releases, WeChat and

2    other social media postings, investment reports, financial documents, and ANY

3    DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or

4    market entity.

5    **REQUEST FOR PRODUCTION NO. 45:**

6        DOCUMENTS sufficient to identify the location of the headquarters and all

7    administrative, manufacturing and distribution facilities for LeECO, GLOBAL,

8    LELE, LTI, LREG and/or any of their AFFILIATES at all times after January 1,

9    2012 and through the present day.

10   **REQUEST FOR PRODUCTION NO. 46:**

11       DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL,

12   LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1,

13   2012 and through the present day. "Identify" in this request means to provide the

14   full name, title, and current (or last known) address and phone number of each

15   employee, the entity with which each individual was employed, the date on which

16   the individual's employment began, and, if the individual is no longer employed, the

17   dates of his or her service with LeECO, GLOBAL, LELE, LTI, LREG or their

18   AFFILIATES.

19   **REQUEST FOR PRODUCTION NO. 47:**

20       DOCUMENTS sufficient to identify ALL employees, managers, consultants,

21   independent contractors, agents, attorneys, accountants, officers and/or directors

22   shared by, used by, loaned to, or otherwise transferred between one or more of

23   LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time

24   after January 1, 2012.

25   **REQUEST FOR PRODUCTION NO. 48:**

26       ANY and ALL DOCUMENTS RELATING TO monies transferred by,

27   between or among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

28   AFFILIATES since January 1, 2012, and through and including the present date,

ERVIN COHEN & JESSUP LLP

1 INCLUDING intercorporate transfers, hypothecations, loans, gifts, dividends,

2 earnings and profits.

3 **REQUEST FOR PRODUCTION NO. 49:**

4 ANY and ALL DOCUMENTS RELATING TO contracts or agreements with

5 third parties, loans, other obligations or instruments of debt that were paid, co-

6 signed or guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

7 AFFILIATES for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since

8 January 1, 2012, and through and including the present date.

9 **REQUEST FOR PRODUCTION NO. 50:**

10 ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

11 GLOBAL, LELE, LTI, and LREG at or about (a) the date of its incorporation or

12 formation, and (b) from and after January 1, 2012 and including the present date.

13 **REQUEST FOR PRODUCTION NO. 51:**

14 ANY and ALL financial statements and analyses for LeECO, GLOBAL,

15 LELE, LTI, and LREG since January 1, 2012, and through and including the present

16 date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance

17 sheets, and 4) ANY financial summaries or reports prepared for a) the use of JIA or

18 other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential

19 investors in, joint venturers with, or lenders to LeECO, GLOBAL, LELE, LTI,

20 LREG and/or any of their AFFILIATES.

21 **REQUEST FOR PRODUCTION NO. 52:**

22 ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits

23 of LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through

24 and including the present date.

25 **REQUEST FOR PRODUCTION NO. 53:**

26 DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible

27 and intangible assets of any kind with a value in excess of $100,000 in which

28 LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES

ERVIN COHEN & JESSUP LLP

1  possessed an ownership interest at any point after July 1, 2016. "Identify" in this
2  request means to provide the description and location for each tangible and
3  intangible asset, the nature and size of the interest in that asset (e.g. a 50% equity
4  interest, a joint owner in common), and the last known market value of the asset.

5  **REQUEST FOR PRODUCTION NO. 54:**

6       DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or
7  liabilities of any kind with a value in excess of $100,000 owed by LeECO,
8  GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point
9  after July 1, 2016. "Identify" in this request means to provide the type of liability,
10  the amount currently owed, the PERSON to whom the liability is owed and that
11  PERSON's address and telephone number.

12  **REQUEST FOR PRODUCTION NO. 55:**

13       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
14  plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their
15  AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible
16  assets of any kind that it possessed after July 1, 2016.

17  **REQUEST FOR PRODUCTION NO. 56:**

18       The Master Agreement executed in or after December 2016 among LREG,
19  the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS
20  RELATING TO property owned by LREG in Santa Clara, California and ANY and
21  ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master
22  Agreement or to ANY transaction that occurred pursuant to the terms of the Master
23  Agreement.

24  **REQUEST FOR PRODUCTION NO. 57:**

25       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
26  ANY transfers of equity interests in LREG to the Genzon Group or to ANY
27  PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016,
28  INCLUDING agreements, emails, records of all payments made, and stock

ERVIN COHEN & JESSUP LLP

1  certificates or other documents reflecting the transfer of any interest.

2  **REQUEST FOR PRODUCTION NO. 58:**

3  DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial

4  accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

5  AFFILIATES was listed as an owner of the account at any point in 2017.

6  **REQUEST FOR PRODUCTION NO. 59:**

7  The letter or memo by JIA issued in or about November 2016 RELATING

8  TO financing issues being experienced by the global LeEco businesses and

9  announcing that JIA would reduce his own income to one yuan.  This letter was

10  referenced in an article by Bloomberg News, which article can be found at

11  https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-

12  confesses-to-cash-crunch-at-leeco.

13  **REQUEST FOR PRODUCTION NO. 60:**

14  ANY and ALL orders issued after January 1, 2016 by ANY court,

15  governmental entity, or administrative body that has the effect of seizing, or

16  restricting the disposition of, ANY assets owned by LeECO, GLOBAL, LELE, JIA,

17  LTI, LREG, and/or any of their AFFILIATES.

18  **REQUEST FOR PRODUCTION NO. 61:**

19  DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal

20  actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any

21  of their AFFILIATES filed or pending in the United States at any point after January

22  1, 2016.  "Identify" in this request means to identify the court or administrative body

23  in which the action is pending, the name of the action, and the case number(s) of

24  that action or actions.

25  **REQUEST FOR PRODUCTION NO. 62:**

26  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

27  ANY actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or

28  any of their AFFILIATES to make payments that were or are due and owing at any

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1 | point after January 1, 2016.

2 | **REQUEST FOR PRODUCTION NO. 63:**

3 |     ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

4 | Jia Yueting's resignation in July 2017 as Chairman of ANY of the global LeEco

5 | businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi

6 | Holding Co., Ltd. (Beijing) and/or any of their AFFILIATES.

7 | **REQUEST FOR PRODUCTION NO. 64:**

8 |     ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

9 | the sale, transfer, dissolution, winding up, or liquidation of LELE, GLOBAL,

10 | LeECO, LTI, LREG or ANY of their AFFILIATES.

11 | **REQUEST FOR PRODUCTION NO. 65:**

12 |     ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

13 | plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or

14 | ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make

15 | arrangements or accommodations for or with their creditors; (b) assign, assume,

16 | distribute or transfer any stock, membership interests, actual assets, actual liabilities,

17 | contractual obligations, contingent liabilities, contingent assets, or employees of

18 | LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or (c) to indemnify,

19 | hold harmless or defend the obligations of any PERSON.

20 | DATED: January 12, 2018        ERVIN COHEN & JESSUP LLP
   |                                      Robert M. Waxman

21 |                                      David N. Tarlow

22 |                                      Jason L. Haas

23 |

24 |

25 | By: _Jason L. Haas_ _____

26 |                     Jason L. Haas
   |                     Attorneys for Plaintiff VIZIO, INC., a

27 |                     California corporation

28 |

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

On January 12, 2018, I served true copies of the following document(s) described as **PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LeECO V. LTD. (SET ONE)** on the interested parties in this action as follows:

Jeff K. Joyner, Esq.
Daniel Tyukody, Esq.
Robert H. Gruber, Esq.
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
joynerj@gtlaw.com
tyukodyd@gtlaw.com
gruberr@gtlaw.com

Chaoying Deng
7 Marguerite Dr.
Rancho Palos Verdes, CA 90275

*Agent for Service of Process for Defendant LeLe Holding, Ltd.*

*Attorneys for Defendant LeECO V. LTD.*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Ervin Cohen & Jessup LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 12, 2018, at Beverly Hills, California.



Joe Dirkx

ERVIN COHEN & JESSUP LLP

# EXHIBIT B

Robert M. Waxman (SBN 89754)
 rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
 dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
 jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation, | Case No. 8:17-CV-01175-DOC-JDE |
| Plaintiff, | **PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LELE HOLDING, LTD. (SET ONE)** |
| v. | |
| LeECO V. LTD., et al, | Judge:  Hon. David O. Carter |
| Defendants. | |

14676.8:8956549.1

8:17-CV-01175-DOC-JDE

REQUEST FOR PRODUCTION OF DOCUMENTS

ERVIN COHEN & JESSUP LLP

PROPOUNDING PARTY:      Plaintiff Vizio, Inc.

RESPONDING PARTY:       Defendant Lele Holding, Ltd.

SET NO.:                ONE (1)

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Vizio, Inc. propounds the following Request for Production of Documents, Set One to Defendant, Lele Holding Ltd. ("Responding Party" or "LELE"), to be responded to fully, verified in writing under oath, within thirty (30) days of service of these requests as provided for by Federal Rule of Civil Procedure 34(b)(2)(A).  All objections, responses and responsive documents shall be served on Ervin Cohen & Jessup LLP, 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, California 90212.

These Requests are governed by the Definitions and Instructions set forth herein.

## **DEFINITIONS**

As used herein, and only for the purposes of these discovery requests, the following terms have the following meanings:

1.      As used herein, the terms "YOU" or "YOUR" shall mean LELE, and to all agents and representatives of LELE, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

2.      The word "COMPLAINT" shall mean and refer to the First Amended Complaint filed by Vizio, Inc. in the above-captioned action on November 6, 2017.

3.      "VIZIO" shall mean and refer to Plaintiff Vizio, Inc., a California corporation, and to all agents and representatives of VIZIO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its direction or request.

4.      "LeECO" shall mean Defendant LeEco V. Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands, and to all agents and representatives of LeECO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

5.      "GLOBAL" shall mean Defendant LeEco Global Group Ltd., a

ERVIN COHEN & JESSUP LLP

1    corporation organized and existing under the laws of the People's Republic of
2    China, and to all agents and representatives of GLOBAL, and to all PERSONS
3    acting or purporting to act on its behalf or pursuant to its request.

4         6.    "LELE" shall mean Defendant Lele Holding Ltd., a personal holding
5    company organized and existing under the laws of the British Virgin Islands, and to
6    all agents and representatives of LELE, and to all PERSONS acting or purporting to
7    act on its behalf or pursuant to its request.

8         7.    "JIA" shall mean Defendant Yueting Jia, an individual who resides in
9    China and is the owner of GLOBAL through LELE, and to all agents and
10   representatives of JIA, and to all PERSONS acting or purporting to act on his behalf
11   or pursuant to his request.

12        8.    "MERGER SUB" shall mean Le V Merger Sub Inc., a California
13   corporation and indirect wholly-owned subsidiary of LeECO, and to all agents and
14   representatives of MERGER SUB, and to all PERSONS acting or purporting to act
15   on its behalf or pursuant to its request.

16        9.    "LTI" shall mean Le Technology, Inc., a California corporation and
17   subsidiary of GLOBAL, and to all agents and representatives of LTI, and to all
18   PERSONS acting or purporting to act on its behalf or pursuant to its request.

19        10.    "LREG" shall mean LeEco Real Estate Group LLC, a Delaware limited
20   liability company, and to all agents and representatives of LeEco Real Estate Group
21   LLC, and to all PERSONS acting or purporting to act on its behalf or pursuant to its
22   request.

23        11.    "MERGER AGREEMENT" shall mean and refer to that certain
24   Agreement and Plan of Merger, made as of July 6, 2016, by and among VIZIO,
25   LeECO, MERGER SUB, and Shareholder Representative Services LLC, a Colorado
26   limited liability company.

27        12.    "MERGER" shall mean and refer to that transaction among VIZIO,
28   LeECO, and MERGER SUB agreed to in the MERGER AGREEMENT and to any

ERVIN COHEN & JESSUP LLP

and all potential transactions discussed between VIZIO and LeECO prior to entry of the MERGER AGREEMENT, whether the potential transaction took the form of a merger, acquisition, purchase of assets or other structure.

13.     "GUARANTY" shall mean and refer to that certain Limited Guarantee made as of July 6, 2016, by LTI in favor of VIZIO.

14.     "FRAMEWORK AGREEMENT" shall mean and refer to that certain Framework, Termination and Mutual General Release Agreement entered into as of April 5, 2017 by and among VIZIO, LeECO, and MERGER SUB.

15.     "ESCROW AGREEMENT" shall mean and refer to that certain Escrow Agreement, made as of July 6, 2016, by and among VIZIO, LeECO, MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited liability company, with Citibank, National Association.

16.     "ESCROW" shall mean and refer to the escrow created by the ESCROW AGREEMENT in connection with the MERGER AGREEMENT.

17.     "CHINA" shall mean and refer to the People's Republic of China.

18.     As used herein, the term "COMMUNICATION" or "COMMUNICATIONS" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including but not limited to, any meeting, conversation, discussion, conference, correspondence, message, or other written or oral transmission, exchange, or transfer of information in any form between two or more PERSONS, including in person or by telephone, facsimile, telegraph, telex, e-mail or other tangible or electronic medium.

19.     As used herein, the terms "DOCUMENT" and "DOCUMENTS" shall mean writings of every kind, source, and authorship, both originals and copies thereof, in YOUR custody or control, or known by YOU to exist, irrespective of whether the writing is one intended for or transmitted internally by YOU or intended for or transmitted to any other person or entity, INCLUDING any government agency, department, administrative entity, or other person or entity, the contents of

ERVIN COHEN & JESSUP LLP

1   which in any way RELATE, discuss, consider, or otherwise refer to the subject

2   matter of the particular discovery requested.  "DOCUMENT" and "DOCUMENTS"

3   shall include the following:  (1) all matter that is written, handwritten, typewritten,

4   printed, graphic, photocopied, photographic, or recorded, including sound

5   recordings or reproductions, however produced, reproduced or prepared, including,

6   but not limited to, notes, telegrams, notebooks, brochures, charts, photographs,

7   agreements, proposals, minutes, communications in words or symbols, interoffice

8   communications, studies, technical data, brochures, bulletins, reviews, compilations,

9   films, audio recordings, audio cassettes, videotapes, calendars, appointment books,

10  diaries, and work papers of any kind; (2) all machine or computer readable data

11  compilations or electronic or mechanical devices which contain information,

12  including, but not limited to, computer server(s), texts, tapes, diskettes, cards, hard

13  disks, optical disks, cassettes, and all other information storage or retrieval systems,

14  together with the codes, passwords and/or programming instructions and other

15  materials necessary to understand and use such systems; (3) all electronic mail,

16  instant mail, and social media accounts belonging to YOU; (4) all originals, drafts,

17  and copies that differ in any respect from the original, all marginal comments that

18  appear on such DOCUMENTS, and all transcripts or recordings of such

19  DOCUMENTS; (5) all attachments, enclosures or DOCUMENTS affixed or

20  referred to in such DOCUMENTS; and (6) all material within the scope of Rule

21  1001 of the Federal Rules of Evidence and California Evidence Code Sections 250,

22  255 and 260.

23          20.    The terms "ANY," "ALL," "EACH," and "EVERY" should be

24  understood in their most inclusive sense as necessary to bring within the scope of

25  the discovery request all responses that might otherwise be construed to be outside

26  of their scope.

27          21.    As used herein, the term "INCLUDING" shall mean including, but not

28  limited to, and shall not be interpreted to exclude any information otherwise within

ERVIN COHEN & JESSUP LLP

1   the scope of these Requests.

2       22.    As used herein, the term "PERSON" shall mean, without limitation, a

3   natural person, corporation, limited liability company, partnership, trust, association,

4   joint venture, firm, tenancy-in-common or other business enterprise, governmental

5   or legal entity and includes both the singular and plural as well as all representatives

6   of such PERSON or PERSON(S).

7       23.    The words "RELATING," "RELATE," "RELATE TO," "RELATING

8   TO," and "REFERRING" as used herein shall mean all matters or things that in any

9   way discuss, are connected to, arise from, consist of, reflect, summarize, evaluate, or

10   comment on the subject or object of the particular Request, or that have any logical

11   or factual connection to the matter discussed, and they shall include the common

12   meanings of all those terms, and shall include indirect as well as direct references to

13   the subject matter set forth in the Requests.

14       24. The term "AFFILIATE" shall mean a subsidiary corporation, sister

15   corporation, subsidiary limited liability company, sister limited liability company, or

16   ANY other form of business entity where: (1) at least 20% or more of the stock or

17   membership interests of that entity are held, owned, or controlled, either directly or

18   indirectly, by the PERSON identified in the request; (2) the entity holds, owns or

19   controls, either directly or indirectly, at least 20% or more of the stock or

20   membership interests of the PERSON identified in the request; or (3) at least 20% or

21   more of the stock or membership interests in both the entity and the PERSON

22   identified in the request are held, owned, or controlled, either directly or indirectly,

23   by the same PERSON.

24                        **INSTRUCTIONS**

25       1.    The time period covered by each of the within Requests shall be from

26   July 1, 2015 to the date of the service of your response to these Requests, except as

27   to those Requests that specifically state any other time period.

28       2.    To the extent that documents responsive to these requests contain text

ERVIN COHEN & JESSUP LLP

in the Chinese language (or any language other than English), YOU should produce both the original document and any documents in YOUR possession, custody or control that contain an English translation, in whole or in part, of the Chinese text in the original document.

3.     As used herein, the terms "and" and "or" shall be interpreted conjunctively or disjunctively, as necessary, to bring within the scope of these Requests all DOCUMENTS that might otherwise be construed to be outside of the scope of these requests.

4.     These Requests include DOCUMENTS within the custody, possession and control of YOU and YOUR agents or AFFILIATES, INCLUDING YOUR agent(s), representative(s), attorney(s), accountant(s), tax advisor(s) and investment advisor(s), and any phone companies or banks YOU use.  If a DOCUMENT is responsive to a request for production and is in YOUR control but is not in YOUR possession or custody, identify the PERSON or entity with possession or custody.

5.     If a requested DOCUMENT is withheld or objected to based on a claim of privilege or for other reasons, please serve the undersigned a privilege log, and state with respect to each such withheld DOCUMENT:

(a)     The nature or basis of the claim of privilege or other ground for nonproduction;

(b)     The names and addresses of all parties to the COMMUNICATION (INCLUDING ALL parties who have been copied on the COMMUNICATION);

(c)     The date, subject matter, and number of pages of the DOCUMENT; and

(d)     The current custodian and present location of the DOCUMENT.

6.     A representation of inability to comply with a particular request shall state the specific reason for the inability to comply, INCLUDING whether the particular DOCUMENT or other tangible thing has never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in

ERVIN COHEN & JESSUP LLP

1   YOUR possession, custody, or control and/or the possession, custody or control of

2   any of YOUR AFFILIATES.  The statement shall set forth the name and address of

3   any PERSON known or believed by that party to have possession, custody, or

4   control of that item or category of item.

5          7.      If only a part of a request is objectionable, the response shall identify

6   with particularity any DOCUMENT or other tangible thing falling within any

7   category of item in the request to which an objection is being made, and shall set

8   forth clearly the extent of and the specific ground for the objection.  If there are no

9   DOCUMENTS responsive to any particular request or category, please so state in

10  writing, providing a representation of inability to comply with respect to the

11  remainder of that item or category.

12         8.      All paper DOCUMENTS are to be produced as they are kept in the

13  usual course of business with any identifying labels, file markings or similar

14  identifying features, and shall be organized and labeled to correspond to the

15  appropriate request herein.  If a portion of a DOCUMENT is responsive, the entire

16  DOCUMENT is to be produced.

17         With respect to electronic DOCUMENTS, all spreadsheets, presentation and

18  design files (e.g. Excel, PowerPoint) are to be produced in electronic form in native

19  format, as kept in the ordinary course of business.  All other electronically stored

20  information ("ESI") and imaged hard copy shall be produced in the format outlined

21  below.  All ESI shall be rendered to TIFF image format, and accompanied by a

22  Concordance Image Cross Reference file.  All applicable metadata/database fields

23  shall be extracted and provided in Concordance load file format:

24         (a)     Image File Format:  All images, paper documents scanned to images, or

25  rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV

26  (2D Compression).  Documents should be uniquely and sequentially Bates

27  numbered with an endorsement burned into each image.  All TIFF file names shall

28  include the unique Bates number burned into the image.  Each Bates number shall

ERVIN COHEN & JESSUP LLP

1    be a standard length, include leading zeros in the number, and be unique for each

2    produced page.  All TIFF image files shall be stored with the ".tif" extension.

3    Images shall be OCR'd using a standard COTS products.  All pages of a document

4    or all pages of a collection of documents that comprise a folder or other logical

5    grouping, including a box, shall be delivered on a single piece of media.  No image

6    folder shall contain more than 2000 images.

7        (b)    Concordance Image Cross Reference File:  Images should be

8    accompanied by a Concordance Image Cross Reference file that associates each

9    Bates number with its corresponding single-page TIFF image file.  The Cross

10   Reference file should also contain the image file path for each Bates numbered page.

11       (c)    Concordance Load File:  Images should also be accompanied by a "text

12   load file" containing delimited text that will populate fields in a searchable, flat

13   database environment.

14       9.    If any DOCUMENT called for within a request has been destroyed or

15   discarded, identify the DOCUMENT and describe the date, manner of and reason

16   for its destruction.

17       10.    Each Request shall be construed independently, and no Request shall

18   be viewed as limiting the scope of any other Document Request.

19       11.    Each non-identical copy of a DOCUMENT, whether different from the

20   original because of handwritten notes, marks, attachments, or any other reason, is a

21   separate DOCUMENT that must be produced.

22       12.    The use of the singular form of any word includes the plural, and the

23   use of the plural form of any word includes the singular.

24                          **REQUESTS FOR PRODUCTION**

25   **REQUEST FOR PRODUCTION NO. 1:**

26       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

27   the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the

28   negotiations that resulted in the MERGER AGREEMENT.

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 2:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the GUARANTY.

**REQUEST FOR PRODUCTION NO. 3:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the negotiations that resulted in the FRAMEWORK AGREEMENT.

**REQUEST FOR PRODUCTION NO. 4:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations that resulted in the ESCROW AGREEMENT.

**REQUEST FOR PRODUCTION NO. 5:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of management meetings, emails, marketing plans, operational plans, financial analyses, and strategy documents.

**REQUEST FOR PRODUCTION NO. 6:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER.

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS and COMMUNICATIONS posted by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or the MERGER.

**REQUEST FOR PRODUCTION NO. 8:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW.

1 **REQUEST FOR PRODUCTION NO. 9:**

2       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

3 the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

4 JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

5 **REQUEST FOR PRODUCTION NO. 10:**

6       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

7 the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

8 JIA, LTI or any of their AFFILIATES expected to receive from the public

9 announcement of the MERGER AGREEMENT or that any of those PERSONS

10 actually received following that announcement.

11 **REQUEST FOR PRODUCTION NO. 11:**

12       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

13 the response of U.S. and Chinese markets or press to the proposed MERGER,

14 INCLUDING all articles, reports and other documents issued by stock markets,

15 bond markets, financial press, newspapers, and financial analysts.

16 **REQUEST FOR PRODUCTION NO. 12:**

17       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

18 efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to

19 implement, meet the conditions for, or complete the MERGER with VIZIO.

20 **REQUEST FOR PRODUCTION NO. 13:**

21       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

22 Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

23 agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

24 **REQUEST FOR PRODUCTION NO. 14:**

25       ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU

26 received from any PERSON, including AFFILIATES, third party businesses, and

27 governmental entities, regarding the proposed MERGER.

28

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 15:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—whether located in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 16:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued, made or published by any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 17:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such

1    investments.

2    **REQUEST FOR PRODUCTION NO. 18:**

3           ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

4    the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed

5    to complete the proposed MERGER with VIZIO.

6    **REQUEST FOR PRODUCTION NO. 19:**

7           ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

8    efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER

9    SUB to complete the proposed MERGER with VIZIO INCLUDING

10   DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International

11   Capital; the Bank of China; Bank of China Limited Macau Branch; China

12   Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;

13   Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet

14   Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment

15   Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.

16   Ltd. or any of their AFFILIATES.

17   **REQUEST FOR PRODUCTION NO. 20:**

18          ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

19   the terms on which the financing needed by LeECO and MERGER SUB to

20   complete the proposed MERGER with VIZIO could be obtained, INCLUDING

21   DOCUMENTS OR COMMUNICATIONS to or from: Hollyhigh International

22   Capital; the Bank of China; Bank of China Limited Macau Branch; China

23   Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank;

24   Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet

25   Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment

26   Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co.

27   Ltd. or any of their AFFILIATES.

28

ERVIN COHEN & JESSUP LLP

1  **REQUEST FOR PRODUCTION NO. 21:**

2      ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO,

3  on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

4  AFFILIATES, on the other hand, regarding efforts to implement, meet the

5  conditions for, or complete the MERGER or to obtain the financing needed by

6  LeECO and MERGER SUB to complete the MERGER.

7  **REQUEST FOR PRODUCTION NO. 22:**

8      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

9  the "Equity Commitment Letters", as that term is defined and used in Sections 4.10

10  and 5.8 of the MERGER AGREEMENT.

11  **REQUEST FOR PRODUCTION NO. 23:**

12      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

13  the "Debt Financing Documents", as that term is defined in Section 10.2 of the

14  MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER

15  AGREEMENT.

16  **REQUEST FOR PRODUCTION NO. 24:**

17      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

18  the actual assets and financing available to LeECO and MERGER SUB on or about

19  April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

20  **REQUEST FOR PRODUCTION NO. 25:**

21      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

22  the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer

23  Termination Fee Remainder" as those terms are defined in Section 10.2 of the

24  MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

25  **REQUEST FOR PRODUCTION NO. 26:**

26      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

27  the source of monies deposited in ESCROW to serve as the "Buyer Termination Fee

28  Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT

1 | and used in Section 9.2 of the MERGER AGREEMENT.

2 | **REQUEST FOR PRODUCTION NO. 27:**

3 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

4 | the termination of the MERGER AGREEMENT.

5 | **REQUEST FOR PRODUCTION NO. 28:**

6 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

7 | reasons why the MERGER was not, or could not, be completed.

8 | **REQUEST FOR PRODUCTION NO. 29:**

9 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a

10 | potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE,

11 | JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO

12 | products in CHINA, INCLUDING emails, marketing plans, operational plans,

13 | financial analyses, and strategy documents.

14 | **REQUEST FOR PRODUCTION NO. 30:**

15 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

16 | negotiations or discussions between VIZIO and LeECO to "negotiate in good faith

17 | and execute one or more agreements" regarding a joint venture in CHINA as

18 | required by Section 4 of the FRAMEWORK AGREEMENT.

19 | **REQUEST FOR PRODUCTION NO. 31:**

20 | DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual

21 | relationships, and the terms of those relationships, between LeECO, GLOBAL,

22 | LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other

23 | PERSON on the other hand, that would have been impacted or affected by a joint

24 | venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

25 | **REQUEST FOR PRODUCTION NO. 32:**

26 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

27 | efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

28 | develop and obtain certification of the "LeEco Le App", as required of LeECO

ERVIN COHEN & JESSUP LLP

1 | under Section 2.1.1 of the FRAMEWORK AGREEMENT.

2 | **REQUEST FOR PRODUCTION NO. 33:**

3 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
4 | efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to
5 | identify and/or obtain "non-cash assets with a fair market value equal to US
6 | $50,000,000 as a capital contribution" to contribute to a proposed joint venture with
7 | VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

8 | **REQUEST FOR PRODUCTION NO. 34:**

9 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to
10 | ALL assets owned by LTI or financial resources available to LTI, at any time
11 | between July 6, 2016 and the present, that were available to satisfy LTI's
12 | representation in Section 5(d) of the GUARANTY that LTI would have "the
13 | financial capacity to pay and perform the Obligation" of LeECO to pay the Buyer
14 | Termination Fee Remainder if it should become due under the MERGER
15 | AGREEMENT and that LTI "shall maintain such financial capacity for so long as
16 | this Guarantee shall remain in effect."

17 | **REQUEST FOR PRODUCTION NO. 35:**

18 | ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
19 | payments or transfers made by LTI after July 6, 2016, if any, in which the total
20 | assets then owned by LTI, or the total financial resources available to LTI, was less
21 | than $50,000,000.00 either before and/or after the transaction.

22 | **REQUEST FOR PRODUCTION NO. 36:**

23 | ANY and ALL articles of incorporation, amended articles of incorporation,
24 | bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL,
25 | LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1,
26 | 2012.

27 | **REQUEST FOR PRODUCTION NO. 37:**

28 | DOCUMENTS sufficient to identify ALL officers, directors, partners,

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of
2  their AFFILIATES at any time after January 1, 2012.
3  **REQUEST FOR PRODUCTION NO. 38:**
4      ANY and ALL shares of stock, stock certificates, partnership interests, or
5  membership interests currently held or owned by any PERSONS in LeECO,
6  GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.
7  **REQUEST FOR PRODUCTION NO. 39:**
8      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO
9  ANY contract or agreement - - INCLUDING all written amendments and
10 supplements to any such contract or agreement and all written assignments and
11 modifications of any such contract or agreement - - whereby any PERSONS
12 acquired on any date after January 1, 2012, either in their own respective names or
13 under and pursuant to any fictitious business names, any right, title or interest in or
14 to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and
15 each or any of their respective employees, shares of stock, partnership interests,
16 membership interests, assets and/or liabilities, INCLUDING all loan commitments,
17 offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty
18 agreements, stock transfer agreements, membership interest transfer agreements,
19 credit agreements, sales orders, partnership agreements, sales agreements,
20 assignment agreements, hypothecation agreements, deregistration agreements,
21 dissolution agreements, purchase agreements, options agreements, stock
22 agreements, shares of stock, certificates of stock, joint venture agreements, asset
23 sale agreements, debt payment agreements, accommodation agreements, debt
24 protection agreements, asset transfer agreements, indemnity agreements, defense
25 agreements, hold harmless agreements, employee sharing agreements, employee
26 transfer agreements, security agreements, financing agreements, memorandum
27 agreements, letter agreements, loan agreements, insolvency agreements,
28 intercompany transfer agreements, escrow agreements, operating agreements, loan

1 commitments, limited liability company agreements, assumption agreements,

2 liquidation agreements, winding up agreements, creditor's agreements, letters of

3 credit, asset distribution or preservation agreements, liability distribution or transfer

4 agreements, membership distribution or transfer agreements, payment records,

5 promissory notes, governmental filings, security instruments, deeds and deeds of

6 trust.

7 **REQUEST FOR PRODUCTION NO. 40:**

8 ANY and ALL agendas, corporate minutes, and corporate resolutions for

9 ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL,

10 LELE, LTI, and LREG held on any date after January 1, 2012.

11 **REQUEST FOR PRODUCTION NO. 41:**

12 ANY and ALL agendas, minutes, and resolutions for ALL meetings of the

13 shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any

14 date after January 1, 2012.

15 **REQUEST FOR PRODUCTION NO. 42:**

16 ANY and ALL voting or operating agreements among shareholders or

17 members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any

18 date after January 1, 2012.

19 **REQUEST FOR PRODUCTION NO. 43:**

20 ANY and ALL contracts and agreements between or among LeECO,

21 GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in

22 effect at any point in time after January 1, 2012.

23 **REQUEST FOR PRODUCTION NO. 44:**

24 ANY and ALL DOCUMENTS prepared at any time since 2012 and through

25 and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG

26 and/or any of their AFFILIATES represented, stated, or otherwise held out that

27 LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE

28 or GLOBAL and/or to be substantially the same as LELE or GLOBAL,

*ERVIN COHEN & JESSUP LLP*

17

REQUEST FOR PRODUCTION OF DOCUMENTS

1 INCLUDING advertising or promotional materials, press releases, WeChat and

2 other social media postings, investment reports, financial documents, and ANY

3 DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or

4 market entity.

5 **REQUEST FOR PRODUCTION NO. 45:**

6 DOCUMENTS sufficient to identify the location of the headquarters and all

7 administrative, manufacturing and distribution facilities for LeECO, GLOBAL,

8 LELE, LTI, LREG and/or any of their AFFILIATES at all times after January 1,

9 2012 and through the present day.

10 **REQUEST FOR PRODUCTION NO. 46:**

11 DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL,

12 LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1,

13 2012 and through the present day. "Identify" in this request means to provide the

14 full name, title, and current (or last known) address and phone number of each

15 employee, the entity with which each individual was employed, the date on which

16 the individual's employment began, and, if the individual is no longer employed,

17 the dates of his or her service with LeECO, GLOBAL, LELE, LTI, LREG or their

18 AFFILIATES.

19 **REQUEST FOR PRODUCTION NO. 47:**

20 DOCUMENTS sufficient to identify ALL employees, managers, consultants,

21 independent contractors, agents, attorneys, accountants, officers and/or directors

22 shared by, used by, loaned to, or otherwise transferred between one or more of

23 LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time

24 after January 1, 2012.

25 **REQUEST FOR PRODUCTION NO. 48:**

26 ANY and ALL DOCUMENTS RELATING TO monies transferred by,

27 between or among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

28 AFFILIATES since January 1, 2012, and through and including the present date,

ERVIN COHEN & JESSUP LLP

1 INCLUDING intercorporate transfers, hypothecations, loans, gifts, dividends,

2 earnings and profits.

3 **REQUEST FOR PRODUCTION NO. 49:**

4 ANY and ALL DOCUMENTS RELATING TO contracts or agreements with

5 third parties, loans, other obligations or instruments of debt that were paid, co-

6 signed or guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

7 AFFILIATES for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since

8 January 1, 2012, and through and including the present date.

9 **REQUEST FOR PRODUCTION NO. 50:**

10 ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

11 GLOBAL, LELE, LTI, and LREG at or about (a) the date of its incorporation or

12 formation, and (b) from and after January 1, 2012 and including the present date.

13 **REQUEST FOR PRODUCTION NO. 51:**

14 ANY and ALL financial statements and analyses for LeECO, GLOBAL,

15 LELE, LTI, and LREG since January 1, 2012, and through and including the present

16 date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance

17 sheets, and 4) ANY financial summaries or reports prepared for a) the use of JIA or

18 other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential

19 investors in, joint venturers with, or lenders to LeECO, GLOBAL, LELE, LTI,

20 LREG and/or any of their AFFILIATES.

21 **REQUEST FOR PRODUCTION NO. 52:**

22 ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits

23 of LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through

24 and including the present date.

25 **REQUEST FOR PRODUCTION NO. 53:**

26 DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible

27 and intangible assets of any kind with a value in excess of $100,000 in which

28 LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES

ERVIN COHEN & JESSUP LLP

possessed an ownership interest at any point after July 1, 2016. "Identify" in this request means to provide the description and location for each tangible and intangible asset, the nature and size of the interest in that asset (e.g. a 50% equity interest, a joint owner in common), and the last known market value of the asset.

**REQUEST FOR PRODUCTION NO. 54:**

DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or liabilities of any kind with a value in excess of $100,000 owed by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point after July 1, 2016. "Identify" in this request means to provide the type of liability, the amount currently owed, the PERSON to whom the liability is owed and that PERSON's address and telephone number.

**REQUEST FOR PRODUCTION NO. 55:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible assets of any kind that it possessed after July 1, 2016.

**REQUEST FOR PRODUCTION NO. 56:**

The Master Agreement executed in or after December 2016 among LREG, the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS RELATING TO property owned by LREG in Santa Clara, California and ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master Agreement or to ANY transaction that occurred pursuant to the terms of the Master Agreement.

**REQUEST FOR PRODUCTION NO. 57:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY transfers of equity interests in LREG to the Genzon Group or to ANY PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016, INCLUDING agreements, emails, records of all payments made, and stock

1  certificates or other documents reflecting the transfer of any interest.

2  **REQUEST FOR PRODUCTION NO. 58:**

3  DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial

4  accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

5  AFFILIATES was listed as an owner of the account at any point in 2017.

6  **REQUEST FOR PRODUCTION NO. 59:**

7  The letter or memo by JIA issued in or about November 2016 RELATING

8  TO financing issues being experienced by the global LeEco businesses and

9  announcing that JIA would reduce his own income to one yuan. This letter was

10  referenced in an article by Bloomberg News, which article can be found at

11  https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-

12  confesses-to-cash-crunch-at-leeco.

13  **REQUEST FOR PRODUCTION NO. 60:**

14  ANY and ALL orders issued after January 1, 2016 by ANY court,

15  governmental entity, or administrative body that has the effect of seizing, or

16  restricting the disposition of, ANY assets owned by LeECO, GLOBAL, LELE, JIA,

17  LTI, LREG, and/or any of their AFFILIATES.

18  **REQUEST FOR PRODUCTION NO. 61:**

19  DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal

20  actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any

21  of their AFFILIATES filed or pending in the United States at any point after January

22  1, 2016. "Identify" in this request means to identify the court or administrative body

23  in which the action is pending, the name of the action, and the case number(s) of

24  that action or actions.

25  **REQUEST FOR PRODUCTION NO. 62:**

26  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

27  ANY actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or

28  any of their AFFILIATES to make payments that were or are due and owing at any

ERVIN COHEN & JESSUP LLP

1 point after January 1, 2016.

2 **REQUEST FOR PRODUCTION NO. 63:**

3 ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

4 Yueting Jia's resignation in July 2017 as Chairman of ANY of the global LeEco

5 businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi

6 Holding Co., Ltd. (Beijing) and/or any of their AFFILIATES.

7 **REQUEST FOR PRODUCTION NO. 64:**

8 ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

9 the sale, transfer, dissolution, winding up, or liquidation of LELE, GLOBAL,

10 LeECO, LTI, LREG or ANY of their AFFILIATES.

11 **REQUEST FOR PRODUCTION NO. 65:**

12 ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

13 plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or

14 ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make

15 arrangements or accommodations for or with their creditors; (b) assign, assume,

16 distribute or transfer any stock, membership interests, actual assets, actual liabilities,

17 contractual obligations, contingent liabilities, contingent assets, or employees of

18 LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or (c) to indemnify,

19 hold harmless or defend the obligations of any PERSON.

20 DATED: January 12, 2018   ERVIN COHEN & JESSUP LLP

21           Robert M. Waxman

22           David N. Tarlow

          Jason L. Haas

25 By: _____

26     Jason L. Haas

    Attorneys for Plaintiff VIZIO, INC., a

    California corporation

ERVIN COHEN & JESSUP LLP

**ERVIN COHEN & JESSUP** LLP

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

On January 12, 2018, I served true copies of the following document(s) described as **PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LELE HOLDING, LTD. (SET ONE)** on the interested parties in this action as follows:

Jeff K. Joyner, Esq.
Daniel Tyukody, Esq.
Robert H. Gruber, Esq.
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
joynerj@gtlaw.com
tyukodyd@gtlaw.com
gruberr@gtlaw.com

*Attorneys for Defendant*
*LeECO V. LTD.*

Chaoying Deng
7 Marguerite Dr.
Rancho Palos Verdes, CA 90275

*Agent for Service of Process for*
*Defendant LeLe Holding, Ltd.*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Ervin Cohen & Jessup LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 12, 2018, at Beverly Hills, California.



Joe Dirkx

14676.8:8956549.1

8:17-CV-01175-DOC-JDE

REQUEST FOR PRODUCTION OF DOCUMENTS

# ERVIN COHEN & JESSUP LLP

9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974

**TO:**

Jeff K. Joyner, Esq.
Daniel Tyukody, Esq.
Robert H. Gruber, Esq.
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121

JAN 16 2018

# EXHIBIT C

Jeff K. Joyner (SBN CA 180485)
*joynerj@gtlaw.com*
Daniel Tyukody (SBN CA 123323)
*tyukodyd@gtlaw.com*
Robert H. Gruber (SBN CA 301620)
*gruberr@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendant
LeECO V. LTD.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>     Plaintiff,<br><br>v.<br><br>LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL HOLDING LT., a/k/a LE GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; and DOES 1 through 10, ,<br><br>     Defendants.<br><hr>LeECO V. LTD.<br><br>     Counter-Claimant,<br><br>    vs.<br><br>VIZIO, a California corporation,<br><br>     Counter-Defendant. | CASE NO.  8:17-CV-01175-DOC-JDE<br><br>**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**<br><br>JUDGE:  Hon. David O. Carter |

**PROPOUNDING PARTY:**      **Plaintiff Vizio, Inc.**

**RESPONDING PARTY:**       **Defendant LeEco V. ltd.**

**SET NO.:**                **ONE (1)**

## PRELIMINARY STATEMENT

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant and Counter-Claimant, LeEco V. Ltd. ("LeEco") provides its Objections and Responses to Plaintiff and Counter-Defendant Vizio Inc.'s ("Vizio") First Set of Request for Production of Documents ("Requests"), as follows.

The vast majority of Vizio's Requests are "premature" because (i) they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending Motion to Dismiss ("MTD") Vizio's second through sixth causes of action in the First Amended Complaint ("FAC") or because (ii) they seek vastly overbroad and disproportionate discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeEco.  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.

In addition to being premature, the Requests directed at Unrelated Third Parties are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  If the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

million and another $10 million in escrow that is disputed.  The remaining disputed obligation concerns LeEco's obligation, if any, and to negotiate a proposed joint venture in China ("China JV") to contribute non-cash assets in China in connection with the proposed China JV.

LeEco has not completed investigation of the facts relating to this case, has not completed discovery, and has not completed preparation for trial.  Therefore, these responses are based only on the information and documents presently available to and specifically known to LeEco.  Further discovery, independent investigation, legal research and analysis may lead to the discovery of additional non-privileged responsive information which may lead to additions to, changes in, and variations from the information, responses and/or objections set forth below.

These responses are given without prejudice to LeEco's right to produce evidence of any subsequently discovered facts, including the right to supplement these responses if it obtains further evidence.

LeEco reserves the right to produce at trial and make reference to any evidence, facts, documents or information not discovered at this time, omitted through good faith error, mistake or oversight, or the relevance of which has not presently been identified by LeEco.  LeEco further reserves the right to further modify these responses as a result of subsequently discovered information.

## GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      LeEco objects to the Requests to the extent that they purport to impose obligations on LeEco beyond those required under the Federal Rules of Civil Procedure.

2.      LeEco objects to each of the Requests to the extent that they are overbroad, irrelevant, and not proportional to the needs of the case, particularly to the extent they purport to require the production of "all" documents or "all" communications on a given

subject.

3.     LeEco objects to each and every Request to the extent that it seeks information that is protected from discovery or disclosure by the work product doctrine or the attorney-client privilege or any other constitutional, statutory, or judicially recognized privilege, immunity, right of confidentiality or other protection from discovery or disclosure.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

4.     LeEco objects to the Request to the extent that it is unduly burdensome or seeks information or documents that are already in the possession, custody, or control of Vizio or more readily obtainable from other entities, including third-parties and public sources, and are equally accessible to Vizio as to LeEco.

5.     LeEco objects that the definition of "LeEco," "you," and "your" is overbroad in that it incorporates the overbroad definition of all "Persons."  In responding to these Requests, LeEco will interpret "LeEco, "you," or "your" as referring to LeEco V. Ltd. and anyone authorized to act on its behalf.

6.     LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks documents which are not in LeEco's possession, custody or control.

7.     LeEco objects to the definitions of "Documents" and "ESI," to the extent they require searching or production of metadata and to the extent they purport to require production in a specified format.  Any responses to these Requests will be based on a mutually agreeable ESI protocol.  Regardless, LeEco objects, at this time, to always producing documents in native format and/or always searching or producing metadata.  Those requirements may be appropriate for certain requests, but would be unduly

burdensome and disproportionate to the needs of the case for other requests.

8.    LeEco objects to each and every Request to the extent that it seeks LeEco's confidential or proprietary information, or the confidential information of third-parties, including confidential or personal information about LeEco's customers and confidential information about LeEco's operations, sales and financial status.

9.    LeEco objects to each of the Requests to the extent that the burden or expense of responding to such Requests outweighs the benefit of such discovery, and is disproportional to the needs of the case considering the issues at stake at this stage of the proceedings.

10.    LeEco objects to each of the Requests to the extent they are unreasonably cumulative or duplicative, or that the information requested therein is obtainable from some other source that is more convenient, less burdensome, or less expensive.

11.    LeEco objects to each of the Requests to the extent they call for the dissemination of documents or information containing "state secrets," as the term is defined under the People's Republic of China ("PRC") Law on Guarding State Secrets (the "State Secrets Law").

12.    The Responses provided herein, and all information provided by LeEco in response to Plaintiff's Requests, are based on information known at this time, and are made without prejudice to LeEco's right to amend or supplement these responses, as necessary.

## SPECIFIC OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the negotiations that resulted in the MERGER AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Merger Agreement, drafts of the Merger Agreement, or the negotiations that resulted in the Merger Agreement."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To"

1   the Merger Agreement, *et. al.*, as those documents would clearly be protected by the

2   attorney client privilege and attorney work product doctrine.  LeEco further objects to

3   logging all privileged and work product documents created after this lawsuit was filed as

4   unduly burdensome and disproportionate to the needs of the case.  LeEco further objects

5   to producing any such documents created before or during the negotiation and drafting of

6   the Merger Agreement that are protected by the attorney client privilege and attorney

7   work product doctrine.

8   **REQUEST FOR PRODUCTION NO. 2:**

9           ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

10  GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the

11  GUARANTY.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

13          LeEco restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.  LeEco further objects to this Request as premature

15  and improper because Vizio's second through sixth causes of action in the FAC are

16  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

17  Dismiss, then the information and documents sought by this Request are not relevant,

18  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

19  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

20  release of all claims for breach of the Merger Agreement (including its various theories of

21  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

22  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

23  negotiations regarding the Merger Agreement, including the negotiation or entry into the

24  Merger Agreement, any breach of the Merger Agreement, or the termination of the

25  Merger Agreement has any relevance.  The Guaranty only applied to the Buyer

26  Termination Fee Remainder which was eliminated following the Parties' agreement they

27  were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

the mutual walk-away without there being any Buyer Termination Fee Penalty (including
but not limited to the Buyer Termination Fee Remainder).

LeEco further objects that this Request is compound and overbroad, particularly in
its request for "Any and All Documents or Communications that "Relate To the Guaranty,
drafts of the Guaranty, or the negotiations that resulted in the Guaranty."

LeEco further objects that, as phrased, this Request appears to seek documents that
are equally available to Vizio.  LeEco objects to searching for and producing documents
equally available to Vizio.

LeEco further objects that this Request appears to seek documents and
communications protected by the attorney-client privilege and work product doctrine.
LeEco objects to producing any privileged communications.  LeEco further objects to
producing any such documents created after this lawsuit was filed that merely "Relate To"
the Guaranty, *et al.*, as those documents would clearly be protected by the attorney client
privilege and attorney work product doctrine.  LeEco further objects to logging all
privileged and work product documents created after this lawsuit was filed as unduly
burdensome and disproportionate to the needs of the case.  LeEco further objects to
producing any such documents created before or during the negotiation and drafting of the
Merger Agreement (including the Guaranty) that are protected by the attorney client
privilege and attorney work product doctrine.

## REQUEST FOR PRODUCTION NO. 3:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the
FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the
negotiations that resulted in the FRAMEWORK AGREEMENT.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

LeEco restates and incorporates by reference the Preliminary Statement and
General Objections set forth above.  LeEco further objects that this Request is compound
and overbroad, particularly in its request for "Any and All Documents or Communications

that Relate To the Framework Agreement, drafts of the Framework Agreement, or the negotiations that resulted in the Framework Agreement."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Framework Agreement, *et. al.*, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.  LeEco further objects to producing any such documents created before or during the negotiation and drafting of the Framework Agreement that are protected by the attorney client privilege and attorney work product doctrine.  LeEco therefore interprets this Request as seeking non-privileged documents and communications relating to the Framework Agreement created before the filing of this lawsuit.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date that relate to non-privileged documents and communications relating to the Framework Agreement.  LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018.  LeEco expects to complete its rolling production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 4:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations that resulted in the ESCROW AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance. Indeed, there is no dispute relating to the existence of the funds in escrow or that $40 million was paid to Vizio from the escrow account held by Citibank. Furthermore, the terms of the "Escrow Agreement" have no relation to the resolution of the disposition of the remaining $10 million held in the escrow account. LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Escrow Agreement, drafts of the Escrow Agreement, or the negotiations that resulted in the Escrow Agreement."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio. LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and
communications protected by the attorney-client privilege and work product doctrine.
LeEco objects to producing any privileged communications.  LeEco further objects to
producing any such documents created after this lawsuit was filed that merely "Relate To"
the Escrow Agreement, *et.al*., as those documents would clearly be protected by the
attorney client privilege and attorney work product doctrine.  LeEco further objects to
logging all privileged and work product documents created after this lawsuit was filed as
unduly burdensome and disproportionate to the needs of the case.  LeEco further objects
to producing any such documents created before or during the negotiation and drafting of
the Merger Agreement (including the Escrow Agreement) that are protected by the
attorney client privilege and attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 5:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO
VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board
minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of
management meetings, emails, marketing plans, operational plans, financial analyses, and
strategy documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

LeEco restates and incorporates by reference the Preliminary Statement and
General Objections set forth above.  LeEco further objects to this Request as premature
and improper because Vizio's second through sixth causes of action in the FAC are
subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to
Dismiss, then the information and documents sought by this Request are not relevant,
making the Request disproportionate to the needs of the case.  LeEco contends that, at this
stage, any discovery in this matter should be limited in scope.  LeEco reserves all rights,
including the right to amend and supplement its Response to this Request, should it
become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To Vizio or any transaction with Vizio…."  LeEco further objects to this Request on the grounds that it fails to describe the items for production with reasonable particularity as required by Rule 34, as the Request is not tethered to the claims at issue in this lawsuit.  The only transactions related to Vizio that are relevant here are those related to the Framework Agreement and potentially the Merger Agreement depending on how the Court rules on LeEco's Motion to Dismiss. LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  Read literally, this Request could call for the production of attorney-client privileged communications and work product materials from LeEco's defense team that simply include Vizio's name.  Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" Vizio as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case. LeEco interprets this Request as seeking non-privileged documents and communications, created prior to this lawsuit, relating to Vizio, or transactions between LeEco and Vizio, in the context of the Framework Agreement.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date that relate to the Framework Agreement. LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018.  LeEco expects to complete its rolling production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 6:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

MERGER.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Merger."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger, as those documents would clearly be protected by the attorney client privilege

and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 7:

ALL DOCUMENTS and COMMUNICATIONS posted by LeECO; GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or the MERGER.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications … Relating To Vizio or the Merger."   LeEco further objects to this Request on the grounds that it fails to describe the items for production with reasonable particularity as required by Rule 34, as the Request

is not tethered to the claims at issue in this lawsuit.  The only transactions related to Vizio
that are relevant here are those related to the Framework Agreement and potentially the
Merger Agreement depending on how the Court rules on LeEco's Motion to Dismiss.
LeEco further objects that this Request appears to seek documents protected by the
attorney-client privilege and work product doctrine.  Read literally, this Request could call
for the production of attorney-client privileged communications and work product
materials from LeEco's defense team that simply include Vizio's name.  Defendant
objects to producing any such documents created after this lawsuit was filed that merely
"Relate To" the Merger or Vizio as those documents would clearly be protected by the
attorney client privilege and attorney work product doctrine.  LeEco further objects to
logging all privileged and work product documents created after this lawsuit was filed as
unduly burdensome and disproportionate to the needs of the case.

LeEco also objects that the term "posted by" is vague and ambiguous.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and
ambiguous and seeks the documents and communications of third parties or documents
and communications which are not in LeEco's possession, custody or control.
Furthermore, this Request, which seeks discovery from individuals and entities
("Unrelated Third Parties") supposedly "affiliated" with LeEco appears calculated merely
to harass and is overbroad, irrelevant, and not proportional to the needs of the case.
Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
another $10 million in escrow that is disputed.  The remaining dispute concerns the
Parties' obligations to each other in the context of the proposed China JV.  Moreover,
LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

## REQUEST FOR PRODUCTION NO. 8:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

ESCROW.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  Indeed, there is no dispute relating to the existence of the funds in escrow or that $40 million was paid to Vizio from the escrow account held by Citibank.  Furthermore, the terms of the "Escrow Agreement" have no relation to the resolution of the disposition of the remaining $10 million held in the escrow account. LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Escrow."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

producing any such documents created after this lawsuit was filed that merely "Relate To" the Escrow, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.  LeEco further objects to producing any such documents created before or during the negotiation and drafting of the Merger Agreement (including the Escrow) that are protected by the attorney client privilege and attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 9:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and

**17**
**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S**
**REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the benefits— financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates expected to receive from the Merger."

LeEco further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 10:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

1  benefits—financial, operational or otherwise that LeECO, GLOBAL, LELE, JIA, LTI or
2  any of their AFFILIATES expected to receive from the public announcement of the
3  MERGER AGREEMENT or that any of those PERSONS actually received following that
4  announcement.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

6       LeEco restates and incorporates by reference the Preliminary Statement and
7  General Objections set forth above.  LeEco further objects to this Request as premature
8  and improper because Vizio's second through sixth causes of action in the FAC are
9  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to
10 Dismiss, then the information and documents sought by this Request are not relevant,
11 making the Request disproportionate to the needs of the case.  LeEco contends that, at this
12 stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a
13 release of all claims for breach of the Merger Agreement (including its various theories of
14 fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt
15 of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the
16 negotiations regarding the Merger Agreement, including the negotiation or entry into the
17 Merger Agreement, any breach of the Merger Agreement, or the termination of the
18 Merger Agreement has any relevance.  LeEco reserves all rights, including the right to
19 amend and supplement its Response to this Request, should it become necessary and
20 appropriate to do so.

21      LeEco further objects that this Request is compound and overbroad, particularly in
22 its request for "Any and All Documents or Communications that Relate To the benefits—
23 financial, operational or otherwise that LeECO, GLOBAL, LELE, JIA, LTI or any of their
24 Affiliates expected to receive from the public announcement of the Merger Agreement or
25 that any of those Persons actually received following that announcement."

26      LeEco further objects that the definition of "Affiliates" is overbroad, vague and
27 ambiguous and seeks the documents and communications of third parties or documents

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1    and communications which are not in LeEco's possession, custody or control.

2    Furthermore, this Request, which seeks discovery from Unrelated Third Parties

3    supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

4    irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

5    to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

6    Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

7    escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

8    other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

9    Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

10   LeTechnology, Inc. is not a party to this action.

11         LeEco further objects that this Request appears to seek documents and

12   communications protected by the attorney-client privilege and work product doctrine.

13   LeEco objects to producing any privileged communications.  LeEco further objects to

14   producing any such documents created after this lawsuit was filed that merely "Relate To"

15   the Merger Agreement, as those documents would clearly be protected by the attorney

16   client privilege and attorney work product doctrine.  LeEco further objects to logging all

17   privileged and work product documents created after this lawsuit was filed as unduly

18   burdensome and disproportionate to the needs of the case.

19   **REQUEST FOR PRODUCTION NO. 11:**

20         ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

21   response of U.S. and Chinese markets or press to the proposed MERGER, INCLUDING

22   all articles, reports and other documents issued by stock markets, bond markets, financial

23   press, newspapers, and financial analysts.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

25         LeEco restates and incorporates by reference the Preliminary Statement and

26   General Objections set forth above.  LeEco further objects to this Request as premature

27   and improper because Vizio's second through sixth causes of action in the FAC are

28

subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the response of U.S. and Chinese markets or press to the proposed Merger…."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio, as the Request expressly calls for public information. LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

**REQUEST FOR PRODUCTION NO. 12:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to implement, meet the conditions for, or complete the MERGER with VIZIO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to implement, meet the conditions for, or complete the Merger with Vizio."

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to

producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

**REQUEST FOR PRODUCTION NO. 13:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant,

making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Merger Agreement…."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger Agreement, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.  LeEco further objects to producing any such documents created before or during the negotiation and drafting of the Merger Agreement that are protected by the attorney client privilege and attorney work product doctrine.

*LA 133487811v11*

**REQUEST FOR PRODUCTION NO. 14:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU received from any PERSON, including AFFILIATES, third party businesses, and governmental entities, regarding the proposed MERGER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications … regarding … the proposed Merger."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and

ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications. LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 15:

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT whether located in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any

discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to any "Governmental Entity," … whether located in the United States, China, Taiwan, or otherwise—that Relates To the Merger Agreement Or Merger…."  Furthermore, any information related to the U.S. approval is irrelevant because it is undisputed that the U.S. approval was obtained.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger or Merger Agreement, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties

supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

**REQUEST FOR PRODUCTION NO. 16:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued, made or published by any "Governmental Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT in the United States, CHINA, Taiwan, or otherwise— RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

1   fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

2   of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

3   negotiations regarding the Merger Agreement, including the negotiation or entry into the

4   Merger Agreement, any breach of the Merger Agreement, or the termination of the

5   Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

6   amend and supplement its Response to this Request, should it become necessary and

7   appropriate to do so.

8        LeEco further objects that this Request is compound and overbroad, particularly in

9   its request for "Any and All Documents or Communications drafted, sent, issued, made or

10  published by any "Governmental Entity," … in the United States, China, Taiwan, or

11  otherwise—Relating To Merger Agreement Or Merger…."  Furthermore, any information

12  related to the U.S. approval is irrelevant because it is undisputed that the U.S. approval

13  was obtained.

14       LeEco further objects that, as phrased, this Request appears to seek documents that

15  are equally available to Vizio.  LeEco objects to searching for and producing documents

16  equally available to Vizio.

17       LeEco further objects that this Request seeks the documents and communications of

18  third parties or documents and communications which are not in LeEco's possession,

19  custody or control.

20       LeEco further objects that this Request appears to seek documents and

21  communications protected by the attorney-client privilege and work product doctrine.

22  LeEco objects to producing any privileged communications.  LeEco further objects to

23  producing any such documents created after this lawsuit was filed that merely "Relate To"

24  the Merger or Merger Agreement as those documents would clearly be protected by the

25  attorney client privilege and attorney work product doctrine.  LeEco further objects to

26  logging all privileged and work product documents created after this lawsuit was filed as

27  unduly burdensome and disproportionate to the needs of the case.  LeEco further objects

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

to producing any such documents created before or during the negotiation and drafting of the Merger Agreement that are protected by the attorney client privilege and attorney work product doctrine.

## REQUEST FOR PRODUCTION NO. 17:

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such investments.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications sent, issued, made or

published by any governmental entity in China Relating To the standards of review….”

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio. LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Defendant objects to producing any such documents created after this lawsuit was filed that merely “Relate To” the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.

LeEco further objects to the extent that this Request seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 18:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the proposed MERGER with VIZIO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the proposed Merger with Vizio."   LeEco further objects that the phrase "obtain the financing needed" is vague and ambiguous and, as phrased, calls for speculation.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger or Vizio, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeEco further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

1  other in the context of the proposed China JV.

2  Moreover, LeEco Global Group Ltd., has not been served with the Summons and FAC,

3  and Merger Sub is not a party to this action.

4  **REQUEST FOR PRODUCTION NO. 19:**

5  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO efforts,

6  by any PERSON, to obtain the financing needed by LeECO and MERGER SUB to

7  complete the proposed MERGER with VIZIO INCLUDING DOCUMENTS OR

8  COMMUNICATIONS to or from: Hollyhigh International Capital; the Bank of China;

9  Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset

10  Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings

11  (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai

12  Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A

13  Fund Management Co. Ltd. or any of their AFFILIATES.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

15  LeEco restates and incorporates by reference the Preliminary Statement and

16  General Objections set forth above.  LeEco further objects to this Request as premature

17  and improper because Vizio's second through sixth causes of action in the FAC are

18  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

19  Dismiss, then the information and documents sought by this Request are not relevant,

20  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

21  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

22  release of all claims for breach of the Merger Agreement (including its various theories of

23  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

24  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

25  negotiations regarding the Merger Agreement, including the negotiation or entry into the

26  Merger Agreement, any breach of the Merger Agreement, or the termination of the

27  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S**
**REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To efforts, by any Person, to obtain the financing needed to complete the proposed Merger with Vizio…." LeEco further objects that the phrase "obtain the financing needed" is vague and ambiguous and, as phrased, calls for speculation.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications. LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger or Vizio, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeEco further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.

Moreover, Merger Sub is not a party to this action.

## REQUEST FOR PRODUCTION NO. 20:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the

---

terms on which the financing needed by LeECO and MERGER SUB to complete the proposed MERGER with VIZIO could be obtained, INCLUDING DOCUMENTS OR COMMUNICATIONS to or from: Hollyhigh International Capital; the Bank of China; Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad.  LeEco further objects that the phrase "terms on which financing…could be obtained" is vague and ambiguous and, as phrased, calls for speculation.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger or Vizio, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeEco further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.

Moreover, Merger Sub is not a party to this action.

## REQUEST FOR PRODUCTION NO. 21:

ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, regarding efforts to implement; meet the conditions for, or complete the MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete the MERGER.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature

and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications between Vizio, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their Affiliates, on the other hand, regarding efforts to implement; meet the conditions for, or complete the Merger or to obtain the financing needed by LeECO and MERGER SUB to complete the Merger." LeEco further objects that the phrase "obtain the financing needed" is vague and ambiguous and, as phrased, calls for speculation.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger or Vizio, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly

burdensome and disproportionate to the needs of the case.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.

Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and Merger Sub and LeTechnology, Inc. are not parties to this action.

## REQUEST FOR PRODUCTION NO. 22:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of the MERGER AGREEMENT.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of

fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the Equity Commitment Letters…"

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" terms within Merger Agreement, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 23:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

LeEco restates and incorporates by reference the Preliminary Statement and

DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)

LA 133487811v11

General Objections set forth above.  LeEco further objects to this Request as premature
and improper because Vizio's second through sixth causes of action in the FAC are
subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to
Dismiss, then the information and documents sought by this Request are not relevant,
making the Request disproportionate to the needs of the case.  LeEco contends that, at this
stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a
release of all claims for breach of the Merger Agreement (including its various theories of
fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt
of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the
negotiations regarding the Merger Agreement, including the negotiation or entry into the
Merger Agreement, any breach of the Merger Agreement, or the termination of the
Merger Agreement has any relevance.  LeEco reserves all rights, including the right to
amend and supplement its Response to this Request, should it become necessary and
appropriate to do so.

LeEco further objects that this Request is compound and overbroad, particularly in
its request for "Any and All Documents or Communications Relating To the Debt
Financing Documents …"

LeEco further objects that, as phrased, this Request appears to seek documents that
are equally available to Vizio.  LeEco objects to searching for and producing documents
equally available to Vizio.

LeEco further objects that this Request appears to seek documents and
communications protected by the attorney-client privilege and work product doctrine.
LeEco objects to producing any privileged communications.  LeEco further objects to
producing any such documents created after this lawsuit was filed that merely "Relate To"
terms within Merger Agreement, as those documents would clearly be protected by the
attorney client privilege and attorney work product doctrine.  LeEco further objects to
logging all privileged and work product documents created after this lawsuit was filed as

1  unduly burdensome and disproportionate to the needs of the case.

2  **REQUEST FOR PRODUCTION NO. 24:**

3      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the

4  actual assets and financing available to LeECO and MERGER SUB on or about April 6,

5  2017 for the purpose of completing the proposed MERGER with VIZIO.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

7      LeEco restates and incorporates by reference the Preliminary Statement and

8  General Objections set forth above.  LeEco further objects to this Request as premature

9  and improper because Vizio's second through sixth causes of action in the FAC are

10  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

11  Dismiss, then the information and documents sought by this Request are not relevant,

12  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

13  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

14  release of all claims for breach of the Merger Agreement (including its various theories of

15  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

16  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

17  negotiations regarding the Merger Agreement, including the negotiation or entry into the

18  Merger Agreement, any breach of the Merger Agreement, or the termination of the

19  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

20  amend and supplement its Response to this Request, should it become necessary and

21  appropriate to do so.

22      LeEco further objects that this Request is compound and overbroad.  LeEco further

23  objects that the phrase "actual assets and financing available" is vague and ambiguous.

24      LeEco further objects that this Request appears to seek documents and

25  communications protected by the attorney-client privilege and work product doctrine.

26  LeEco objects to producing any privileged communications.  LeEco further objects to

27  producing any such documents created after this lawsuit was filed that merely "Relate To"

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

the Merger or Vizio, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeEco further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.

Moreover, Merger Sub is not a party to this action.

## REQUEST FOR PRODUCTION NO. 25:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a

release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  The Guaranty only applied to the Buyer Termination Fee Remainder which was eliminated following the Parties' agreement they were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is the mutual walk-away without there being any Buyer Termination Fee Penalty (including but not limited to the Buyer Termination Fee Remainder).

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the to the Buyer Termination Fee, Buyer Termination Fee Deposit or Buyer Termination Fee Remainder…."

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" terms within Merger Agreement, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 26:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

source of monies deposited in ESCROW to serve as the "Buyer Termination Fee Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  The Guaranty only applied to the Buyer Termination Fee Remainder which was eliminated following the Parties' agreement they were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is the mutual walk-away without there being any Buyer Termination Fee Penalty (including but not limited to the Buyer Termination Fee Remainder).

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the to the source of monies deposited in Escrow to serve as the Buyer Termination Fee Deposit …"

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

1      LeEco further objects that this Request appears to seek documents and

2  communications protected by the attorney-client privilege and work product doctrine.

3  LeEco objects to producing any privileged communications.  LeEco further objects to

4  producing any such documents created after this lawsuit was filed that merely "Relate To"

5  terms within Merger Agreement, as those documents would clearly be protected by the

6  attorney client privilege and attorney work product doctrine.  LeEco further objects to

7  logging all privileged and work product documents created after this lawsuit was filed as

8  unduly burdensome and disproportionate to the needs of the case.

9  **REQUEST FOR PRODUCTION NO. 27:**

10      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

11  termination of the MERGER AGREEMENT.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

13      LeEco restates and incorporates by reference the Preliminary Statement and

14  General Objections set forth above.  LeEco further objects to this Request as premature

15  and improper because Vizio's second through sixth causes of action in the FAC are

16  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

17  Dismiss, then the information and documents sought by this Request are not relevant,

18  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

19  stage, any discovery in this matter should be limited in scope.  LeEco reserves all rights,

20  including the right to amend and supplement its Response to this Request, should it

21  become necessary and appropriate to do so.

22      LeEco further objects that this Request is compound and overbroad, particularly in

23  its request for "Any and All Documents or Communications Relating To the termination

24  of the Merger Agreement."  LeEco further objects that this Request appears to seek

25  documents protected by the attorney-client privilege and work product doctrine.

26  Defendant objects to producing any such documents created after this lawsuit was filed

27  that merely "Relate To" the Merger Agreement (or termination of it) as those documents

28

would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.  LeEco interprets this Request as seeking non-privileged documents and communications, created prior to this lawsuit, relating to the termination of the Merger Agreement in the context of the formation, negotiation and execution of the Framework Agreement.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date that relate to relating to the termination of the Merger Agreement in the context of the formation, negotiation and execution of the Framework Agreement.  LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018.  LeEco expects to complete its rolling production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 28:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to reasons why the MERGER was not, or could not, be completed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  LeEco further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the Merger, as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 29:**

ANY and ALL DOCUMENTS OR. COMMUNICATIONS RELATING to a potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO products in CHINA, INCLUDING emails, marketing plans, operational plans, financial analyses, and strategy documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and

ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the potential joint venture as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.  LeEco interprets this Request as seeking non-privileged documents and communications, created prior to this lawsuit, relating to a potential joint venture between Vizio, on one hand, and LeEco, on the other.

Subject to and without waiving any of its objections, LeEco responds as follows:  LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date that relate to relating to a potential joint venture between Vizio, on one hand, and LeEco, on the other.  LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018.  LeEco expects to complete its rolling production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 30:**

ANY and ALL DOCUMENTS OR-COMMUNICATIONS RELATING to negotiations or discussions between VIZIO and LeECO to "negotiate in good faith and execute one or more agreements" regarding a joint venture in CHINA as required by Section 4 of the FRAMEWORK AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date.  LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018. LeEco expects to complete its rolling production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 31:**

DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual relationships, and the terms of those-relationships, between LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other PERSON on the other hand, that would have been impacted or affected by a joint venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco further objects that this Request is compound and overbroad.  LeEco also objects that the Request is unintelligible. LeEco further objects that the phrase "would have been impacted or affected by a joint venture" is vague and ambiguous and, as phrased, calls for speculation.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeEco objects to producing any privileged communications.  Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as

LA 133487811v11

1  unduly burdensome and disproportionate to the needs of the case.

2      LeEco further objects that the definition of "Affiliates" is overbroad, vague and

3  ambiguous and seeks the documents and communications of third parties or documents

4  and communications which are not in LeEco's possession, custody or control.

5  Furthermore, this Request, which seeks discovery from Unrelated Third Parties

6  supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

7  irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

8  to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the

9  Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in

10  escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

11  other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele

12  Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and

13  LeTechnology, Inc. is not a party to this action.

14  **REQUEST FOR PRODUCTION NO. 32:**

15      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts

16  by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to develop and

17  obtain certification of the "LeEco Le App", as required of LeECO under Section 2.1.1 of

18  the FRAMEWORK AGREEMENT.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

20      LeEco restates and incorporates by reference the Preliminary Statement and

21  General Objections set forth above.

22      LeEco further objects that the definition of "Affiliates" is overbroad, vague and

23  ambiguous and seeks the documents and communications of third parties or documents

24  and communications which are not in LeEco's possession, custody or control.

25  Furthermore, this Request, which seeks discovery from Unrelated Third Parties

26  supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad,

27  irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco will conduct a reasonable search of documents within its possession, custody or control created prior to this lawsuit's filing date.  LeEco will produce nonprivileged documents identified during the search on a rolling basis, starting on April 25, 2018. LeEco expects to complete its rolling production on or before approximately July 25, 2018.

## REQUEST FOR PRODUCTION NO. 33:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to identify and/or obtain "non-cash assets with a fair market value equal to US $50,000,000 as a capital contribution" to contribute to a proposed joint venture with VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

LeEco restates and incorporates by reference the Preliminary Statement and

General Objections set forth above.

LeEco further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving any of its objections, LeEco responds as follows: LeEco conducted a reasonable search for documents within its possession, custody or control and no responsive documents exist.

## REQUEST FOR PRODUCTION NO. 34:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to ALL assets owned by LTI or financial resources available to LTI, at any time between July 6, 2016 and the present, that were available to satisfy LTI's representation in Section 5(d) of

the GUARANTY that LTI would have "the financial capacity to pay and perform the Obligation" of LeECO to- pay the Buyer Termination Fee Remainder if it should become due under the MERGER AGREEMENT and that LTI "shall maintain such financial capacity for so long as this Guarantee shall remain in effect."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  The Guaranty only applied to the Buyer Termination Fee Remainder which was eliminated following the Parties' agreement they were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is the mutual walk-away without there being any Buyer Termination Fee Penalty (including but not limited to the Buyer Termination Fee Remainder).

LeEco further objects that this Request is compound and overbroad. LeEco further objects that the phrase "total financial resources available to" is vague and ambiguous, and as phrased, calls for speculation.

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents

1   equally available to Vizio.

2       LeEco further objects that Request seeks the documents and communications of

3   third parties or documents and communications which are not in LeEco's possession,

4   custody or control.  Furthermore, this Request, which seeks discovery from Unrelated

5   Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and

6   is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the

7   case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

8   (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million

9   in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

10  other in the context of the proposed China JV.  Moreover, LeTechnology, Inc. is not a

11  party to this action.

12      LeEco further objects that this Request appears to seek documents and

13  communications protected by the attorney-client privilege and work product doctrine.

14  LeEco objects to producing any privileged communications.  Defendant objects to

15  producing any such documents created after this lawsuit was filed that merely "Relate To"

16  the subject matter of the Request as those documents would clearly be protected by the

17  attorney client privilege and attorney work product doctrine.  LeEco further objects to

18  logging all privileged and work product documents created after this lawsuit was filed as

19  unduly burdensome and disproportionate to the needs of the case.

20  **REQUEST FOR PRODUCTION NO. 35:**

21      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

22  payments or transfers made by LTI after July 6, 2016, if any, in which the total assets then

23  owned by LTI, or the total financial resources available to LTI, was less than

24  $50,000,000.00 either before and/or after the transaction.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

26      LeEco restates and incorporates by reference the Preliminary Statement and

27  General Objections set forth above.  LeEco further objects to this Request as premature

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  The Guaranty only applied to the Buyer Termination Fee Remainder which was eliminated following the Parties' agreement they were terminating the Merger Agreement pursuant to Merger Agreement § 9.1(a), which is the mutual walk-away without there being any Buyer Termination Fee Penalty (including but not limited to the Buyer Termination Fee Remainder).

LeEco further objects that this Request is compound and overbroad. LeEco further objects that the phrase "total financial resources available to" is vague and ambiguous, and as phrased, calls for speculation.

LeEco further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeEco objects to searching for and producing documents equally available to Vizio.

LeEco further objects that Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

(not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeTechnology, Inc. is not a party to this action.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.  Defendant objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 36:**

ANY and ALL articles of incorporation, amended articles of incorporation, bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL, LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1, 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The
remaining dispute concerns the Parties' obligations to each other in the context of the
proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting
Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco
Real Estate Group LLC are not parties to this action.

LeEco further objects that this Request appears to seek documents protected by the
attorney-client privilege and work product doctrine.  LeEco further objects to logging all
privileged and work product documents created after this lawsuit was filed as unduly
burdensome and disproportionate to the needs of the case.

Subject to and without waiving any of its objections, LeEco responds as follows:
LeEco will conduct a reasonable search of documents within its possession, custody or
control.  LeEco will produce nonprivileged documents, from 2014 to the present, in its
possession, custody and control (on behalf of LeEco only), identified during the search on
a rolling basis, starting on April 25, 2018.  LeEco expects to complete its rolling
production on or before approximately July 25, 2018.

**REQUEST FOR PRODUCTION NO. 37:**

DOCUMENTS sufficient to identify ALL officers, directors, partners, shareholders,
and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES
at any time after January 1, 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

LeEco restates and incorporates by reference the Preliminary Statement and
General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous
and seeks the documents and communications of third parties or documents and
communications which are not in LeEco's possession, custody or control.  Furthermore,
this Request, which seeks discovery Unrelated Third Parties  supposedly "affiliated" with

LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 38:**

ANY and ALL shares of stock, stock certificates, partnership interests, or membership interests currently held or owned by any PERSONS in LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties  supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

## REQUEST FOR PRODUCTION NO. 39:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY contract or agreement - - INCLUDING all written amendments and supplements to any such contract or agreement and all written assignments and modifications of any such contract or agreement - - whereby any PERSONS acquired on any date after January 1, 2012, either in their own respective names or -under and pursuant to any fictitious business names, any right, the or interest in or to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and each or any of their respective employees,-shares of stock, partnership interests, membership interests, assets and/or liabilities, INCLUDING all loan commitments, offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty agreements, stock transfer agreements, membership interest transfer agreements, credit agreements, sales orders, partnership agreements, sales agreements, assignment agreements, hypothecation agreements, deregistration agreements, dissolution agreements, purchase agreements, options agreements, stock agreements, shares of stock, certificates of stock, joint venture agreements, asset sale agreements, debt payment agreements, accommodation agreements, debt protection agreements, asset transfer agreements, indemnity agreements, defense agreements, hold harmless agreements, employee sharing agreements, employee transfer agreements, security agreements, financing agreements, memorandum agreements, letter agreements, loan agreements, insolvency agreements, intercompany transfer agreements, escrow agreements, operating agreements, loan

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

commitments, limited liability company agreements, assumption agreements, liquidation agreements, winding up agreements, creditor's agreements, letters of credit, asset distribution or preservation agreements, liability distribution or transfer agreements, membership distribution or transfer agreements, payment records, promissory notes, governmental filings, security instruments, deeds and deeds of trust.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 39:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

## REQUEST FOR PRODUCTION NO. 40:

ANY and ALL agendas, corporate minutes, and corporate resolutions for ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL, LELE, LTI,

1    and LREG held on any date after January 1, 2012.

2    **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

3           LeEco restates and incorporates by reference the Preliminary Statement and

4    General Objections set forth above.

5           LeEco objects that this Request is compound and is overbroad as to time.

6           LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

7    and seeks the documents and communications of third parties or documents and

8    communications which are not in LeEco's possession, custody or control.  Furthermore,

9    this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

10   with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

11   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

12   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

13   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

14   remaining dispute concerns the Parties' obligations to each other in the context of the

15   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

16   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

17   Real Estate Group LLC are not parties to this action.

18          LeEco objects that the Request appears calculated merely to harass and is vague,

19   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

20   overbroad.

21   **REQUEST FOR PRODUCTION NO. 41:**

22          ANY and ALL agendas, minutes, and resolutions for ALL meetings of the

23   shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any date

24   after January 1, 2012.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

26          LeEco restates and incorporates by reference the Preliminary Statement and

27   General Objections set forth above.

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

## REQUEST FOR PRODUCTION NO. 42:

ANY and ALL voting or operating agreements among shareholders or members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any date after January 1, 2012.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 42:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore,

this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

## REQUEST FOR PRODUCTION NO. 43:

ANY and ALL contracts and agreements between or among LeECO, GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in effect at any point in time after January 1, 2012.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 43:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All contracts and agreements between or among…."  LeEco further objects to this Request on the grounds that it fails to describe the items for production with reasonable particularity as required by Rule 34, as the Request is not tethered to the claims at issue in this lawsuit.  LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LA 133487811v11

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

## REQUEST FOR PRODUCTION NO. 44:

ANY and ALL DOCUMENTS prepared at any time since 2012 and through and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES represented, stated, or otherwise held out that LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE or GLOBAL and/or to be substantially the same as LELE or GLOBAL, INCLUDING advertising or promotional materials, press releases, WeChat and other social media postings, investment reports, financial documents, and ANY DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or market entity.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 44:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and

communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 45:

DOCUMENTS sufficient to identify the location of the headquarters and all administrative, manufacturing and distribution facilities for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at all times after January 1, 2012 and through the present day.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 45:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that the Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

1  and seeks the documents and communications of third parties or documents and

2  communications which are not in LeEco's possession, custody or control.  Furthermore,

3  this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

4  with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

5  proportional to the needs of the case.  Particularly if the case is limited to a breach of the

6  Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

7  payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

8  remaining dispute concerns the Parties' obligations to each other in the context of the

9  proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

10  Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

11  Real Estate Group LLC are not parties to this action.

12       LeEco objects that the Request calls for confidential information and/or trade

13  secrets.

14       LeEco objects that the Request appears calculated merely to harass and is vague,

15  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

16  overbroad.

17       LeEco further objects that this Request appears to seek documents protected by the

18  attorney-client privilege and work product doctrine.  LeEco further objects to logging all

19  privileged and work product documents created after this lawsuit was filed as unduly

20  burdensome and disproportionate to the needs of the case.

21       Subject to and without waiving any of its objections, LeEco responds as follows:

22  LeEco will conduct a reasonable search of documents within its possession, custody or

23  control and, subject to entry of a protective order, produce any documents, from 2014 to

24  the present, sufficient to identify the location of the headquarters of LeEco.  LeEco will

25  produce nonprivileged documents identified during the search on a rolling basis, starting

26  on April 25, 2018.  LeEco expects to complete its rolling production on or before

27  approximately July 25, 2018.

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

## REQUEST FOR PRODUCTION NO. 46:

DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012 and through the present day. "Identify" in this request means to provide the full name, title, and current (or last known) address and phone number of each employee, the entity with which each- individual was employed, the date on which the individual's employment began, and, if the individual is no longer employed, the dates of his or her service with LeECO, GLOBAL, LELE, LTI, LREG or their AFFILIATES.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 46:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.  LeEco further objections that the information sought is irrelevant, and not proportional to the needs of the case as there is no allegation of any employee acting outside the scope of their authority.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 47:**

DOCUMENTS sufficient to identify ALL employees, managers, consultants, independent contractors, agents, attorneys, accountants, officers and/or directors shared by, used by, loaned to, or otherwise transferred between one or more of LeECO; GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1   overbroad.

2   **REQUEST FOR PRODUCTION NO. 48:**

3   ANY and ALL DOCUMENTS RELATING TO monies transferred by, between or

4   among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES since

5   January 1, 2012, and through and including the present date, INCLUDING intercorporate

6   transfers, hypothecations, loans, gifts, dividends, earnings and profits.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

8   LeEco restates and incorporates by reference the Preliminary Statement and

9   General Objections set forth above.

10   LeEco objects that this Request is compound and is overbroad as to time.

11   LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

12   and seeks the documents and communications of third parties or documents and

13   communications which are not in LeEco's possession, custody or control.  Furthermore,

14   this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

15   with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

16   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

17   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

18   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

19   remaining dispute concerns the Parties' obligations to each other in the context of the

20   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

21   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

22   Real Estate Group LLC are not parties to this action.

23   LeEco objects that the Request appears calculated merely to harass and is vague,

24   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

25   overbroad.

26   LeEco further objects that this Request appears to seek documents protected by the

27   attorney-client privilege and work product doctrine.  LeEco further objects to logging all

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

1    privileged and work product documents created after this lawsuit was filed as unduly

2    burdensome and disproportionate to the needs of the case.

3    **REQUEST FOR PRODUCTION NO. 49:**

4            ANY and ALL DOCUMENTS RELATING TO contracts or agreements with third

5    parties, loans, other obligations or instruments of debt that were paid, cosigned or

6    guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES

7    for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since January 1, 2012, and

8    through and including the present date.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

10           LeEco restates and incorporates by reference the Preliminary Statement and

11   General Objections set forth above.

12           LeEco objects that this Request is compound and is overbroad as to time.

13           LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

14   and seeks the documents and communications of third parties or documents and

15   communications which are not in LeEco's possession, custody or control.  Furthermore,

16   this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

17   LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

18   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

19   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

20   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

21   remaining dispute concerns the Parties' obligations to each other in the context of the

22   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

23   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

24   Real Estate Group LLC are not parties to this action.

25           LeEco objects that the Request appears calculated merely to harass and is vague,

26   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

27   overbroad.

28

*LA 133487811v11*

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 50:**

ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO, GLOBAL, LELE, LTI, and LREG .at or about (a) the date of its incorporation or formation, and (b) from and after January 1, 2012 and including the present date.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LeEco further objects that this Request appears to seek documents protected by the

attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 51:**

ANY and ALL financial statements and analyses for LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through and including the present date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance sheets, and 4) ANY financial summaries or reports prepared for a) the use of JIA or other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential investors in, joint venturers with, or lenders to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague,

ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 52:**

ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits of LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through and including the present date.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

overbroad.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 53:**

DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible and intangible assets of any kind with a value in excess of $100,000 in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES possessed an ownership interest at any point after July 1, 2016. "Identify" in this request means to provide the description and location for each tangible and intangible asset, the nature and size of the interest in that asset (e.g. a 50% equity interest, a joint owner in common), and the last known market value of-the- asset.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and

LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 54:

DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or liabilities of any kind with a value in excess of $100,000 owed by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point after July 1, 2016. "Identify" in this request means to provide the type of liability, the amount currently owed, the PERSON to whom the liability is owed and that PERSON' s address and telephone number.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 54:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 55:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATE& to sell or transfer ANY ownership interest in tangible and intangible assets of any kind that it possessed after July 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each

other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

LeEco further objects that this Request appears to seek documents protected by the attorney-client privilege and work product doctrine.  LeEco further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 56:

The Master Agreement executed in or after December 2016 among LREG, the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS RELATING TO property owned by LREG in Santa Clara, California and ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master Agreement or to ANY transaction that occurred pursuant to the terms of the Master Agreement.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 56:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco objects that the Request is calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications relating to any transfers of equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

LA 133487811v11

**REQUEST FOR PRODUCTION NO. 57:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY transfers of equity interests in LREG to the Genzon Group or to ANY PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016, INCLUDING agreements, emails, records of all payments made, and stock certificates or other documents reflecting the transfer of any interest.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco objects that the Request is calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

LeEco further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications relating to any transfers of equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

LeEco further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 58:**

DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES was listed as an owner of the account at any point in 2017.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.

LeEco objects that this Request is compound and is overbroad as to time.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control.  Furthermore,

this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

## REQUEST FOR PRODUCTION NO. 59:

The letter or memo by JIA issued in or about November 2016 RELATING TO financing issues being experienced by the global LeEco businesses and announcing that JIA would reduce his own income to one yuan. This letter was referenced in an article by Bloomberg News, which article can be found at https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-confesses-to-cash-crunch-at-leeco.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 59:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, Yueting Jia has not been served with the Summons and FAC.

LeEco further objects that this Request to the extent that is seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

## REQUEST FOR PRODUCTION NO. 60:

ANY and ALL orders issued after January 1, 2016 by ANY court, governmental entity, or administrative body that has the effect of seizing, or restricting the disposition of, ANY assets owned by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 60:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature

1    and improper because Vizio's second through sixth causes of action in the FAC are

2    subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

3    Dismiss, then the information and documents sought by this Request are not relevant,

4    making the Request disproportionate to the needs of the case.  LeEco contends that, at this

5    stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

6    release of all claims for breach of the Merger Agreement (including its various theories of

7    fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

8    of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

9    negotiations regarding the Merger Agreement, including the negotiation or entry into the

10   Merger Agreement, any breach of the Merger Agreement, or the termination of the

11   Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

12   amend and supplement its Response to this Request, should it become necessary and

13   appropriate to do so.

14        LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

15   and seeks the documents and communications of third parties or documents and

16   communications which are not in LeEco's possession, custody or control. Furthermore,

17   this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

18   with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

19   proportional to the needs of the case.  Particularly if the case is limited to a breach of the

20   Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties)

21   payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The

22   remaining dispute concerns the Parties' obligations to each other in the context of the

23   proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting

24   Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco

25   Real Estate Group LLC are not parties to this action.

26        LeEco further objects that this Request to the extent that is seeks documents and

27   communications protected by the attorney-client privilege and work product doctrine.

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

LeEco objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 61:**

DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES filed or pending in the United States at any point after January 1, 2016. "Identify" in this request means to identify the court or administrative body in which the action is pending, the name of the action, and the case number(s) of that action or actions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss. If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case. LeEco contends that, at this stage, any discovery in this matter should be limited in scope. Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance. LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated"

with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco further objects that this Request to the extent that is seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 62:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to make payments that were or are due and owing at any point after January 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery from Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco further objects that this Request to the extent that is seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 63:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO Jia Yueting's resignation in July 2017 as Chairman of ANY of the global LeEco businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi Holding Co., Ltd. (Beijing) and/or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

LeEco restates and incorporates by reference the Preliminary Statement and

General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco further objects that this Request to the extent that is seeks documents and

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

1   communications protected by the attorney-client privilege and work product doctrine.

2   LeEco objects to producing any privileged communications.

3   **REQUEST FOR PRODUCTION NO. 64:**

4         ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO the sale,

5   transfer, dissolution, winding up, or liquidation of LELE, GLOBAL, LeECO, LTI, LREG

6   or ANY of their AFFILIATES.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

8         LeEco restates and incorporates by reference the Preliminary Statement and

9   General Objections set forth above.  LeEco further objects to this Request as premature

10  and improper because Vizio's second through sixth causes of action in the FAC are

11  subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to

12  Dismiss, then the information and documents sought by this Request are not relevant,

13  making the Request disproportionate to the needs of the case.  LeEco contends that, at this

14  stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

15  release of all claims for breach of the Merger Agreement (including its various theories of

16  fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt

17  of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the

18  negotiations regarding the Merger Agreement, including the negotiation or entry into the

19  Merger Agreement, any breach of the Merger Agreement, or the termination of the

20  Merger Agreement has any relevance.  LeEco reserves all rights, including the right to

21  amend and supplement its Response to this Request, should it become necessary and

22  appropriate to do so.

23        LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous

24  and seeks the documents and communications of third parties or documents and

25  communications which are not in LeEco's possession, custody or control. Furthermore,

26  this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with

27  LeEco appears calculated merely to harass and is overbroad, irrelevant, and not

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S**
**REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**

*LA 133487811v11*

proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

LeEco further objects that this Request to the extent that is seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeEco objects to producing any privileged communications.

## REQUEST FOR PRODUCTION NO. 65:

ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make arrangements or accommodations for or with their creditors; (b) assign, assume, distribute or transfer any stock, membership interests, actual assets, actual liabilities, contractual obligations, contingent liabilities, contingent assets, or employees of LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or (c) to indemnify, hold harmless or defend the obligations of any PERSON.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 65:

LeEco restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeEco further objects to this Request as premature and improper because Vizio's second through sixth causes of action in the FAC are subject to LeEco's pending Motion to Dismiss.  If the Court grants LeEco's Motion to Dismiss, then the information and documents sought by this Request are not relevant, making the Request disproportionate to the needs of the case.  LeEco contends that, at this stage, any discovery in this matter should be limited in scope.  Specifically, Vizio gave a

release of all claims for breach of the Merger Agreement (including its various theories of fraud related to that alleged breach) to LeEco in the Framework Agreement upon receipt of $40 million, which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance.  LeEco reserves all rights, including the right to amend and supplement its Response to this Request, should it become necessary and appropriate to do so.

LeEco objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeEco's possession, custody or control. Furthermore, this Request, which seeks discovery Unrelated Third Parties supposedly "affiliated" with LeEco appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns the Parties' obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd., and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc., and LeEco Real Estate Group LLC are not parties to this action.

1    LeEco further objects that this Request to the extent that is seeks documents and
2    communications protected by the attorney-client privilege and work product doctrine.
3    LeEco objects to producing any privileged communications.

4

5    DATED:  April 11, 2018                    GREENBERG TRAURIG, LLP

6

7                                             By _____

8                                                Jeff K. Joyner
                                                 Daniel Tyukody
9                                                Attorneys for Defendant
                                                 LeECO V. LTD.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S
REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)**
*LA 133487811v11*

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, 19th Floor, Los Angeles, CA 90067.

      On the date given below, I served the **DEFENDANT LeECO V. LTD.'S RESPONSE TO PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET 1)** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

Robert M. Waxman                   ***Attorneys for Plaintiff Vizio, Inc.***
David N. Tarlow
Jason L. Haas
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
Tel:  310-273-6333/Fax: 310-859-2325
rwaxman@ecjlaw.com
dtarlow@ecjlaw.com
jhaas@ecjlaw.com

☒    **(BY FIRST CLASS MAIL)**
      I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service.  The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐    **(BY OVERNIGHT DELIVERY)**
      I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons above.  I placed the envelope or package for collection and

☐    **(BY PERSONAL SERVICE)**
      I caused such envelope to be delivered by hand to the offices listed above.

☒    **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 11, 2018, at Los Angeles, California.

_____
**Delilah A. Phiefer**

LA 133132130v1

# EXHIBIT D

Jeff K. Joyner (SBN CA 180485)
*joynerj@gtlaw.com*
Daniel Tyukody (SBN CA 123323)
*tyukodyd@gtlaw.com*
Robert H. Gruber (SBN CA 301620)
*gruberr@gtlaw.com*
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone:  310.586.7700; Facsimile:  310.586.7800

Attorneys for Defendant
LeECO V. LTD.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC., a California corporation, | CASE NO.  8:17-CV-01175-DOC-JDE |
| Plaintiff, | |
| v. | **DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION** |
| LeECO V. LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands; LeECO GLOBAL HOLDING LT., a/k/a LE GLOBAL GROUP LTD., a corporation organized and existing under the laws of the People's Republic of China; and DOES 1 through 10 , | JUDGE:  Hon. David O. Carter |
| Defendants. | |
| LeECO V. LTD. | |
| Counter-Claimant, | |
| vs. | |
| VIZIO, a California corporation, | |
| Counter-Defendant. | |

1   **PROPOUNDING PARTY:**       **Plaintiff Vizio, Inc.**

2   **RESPONDING PARTY:**       **Defendant LeLe Holding Ltd.**

3   **SET NO.:**                 **ONE (1)**

4

5                        **PRELIMINARY STATEMENT**

6           Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant

7   LeLe Holding Ltd. ("LeLe") provides its Objections and Responses to Plaintiff and

8   Counter-Defendant Vizio Inc.'s ("Vizio") First Set of Request for Production of

9   Documents ("Requests"), as follows.

10          Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V.

11  Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant

12  LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal

13  jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

14  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

15  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

16  In addition to being premature, the Requests directed at LeLe and the other individuals

17  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

18  irrelevant, and not proportional to the needs of the case.  LeLe reserves all rights,

19  including the right to amend and supplement its Responses and Objections to Vizio's

20  Requests, should it become necessary and appropriate to do so.

21          Furthermore, Vizio's Requests are "premature" because they pertain to issues that

22  would be rendered irrelevant were the Court to grant LeEco's pending Motion to Dismiss

23  ("MTD") Vizio's second through sixth causes of action in the First Amended Complaint

24  ("FAC") (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second

25  through sixth causes of action for breach of the Merger Agreement including its various

26  theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to

27  LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"),

28  which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION

LA 133493446v6

Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.

LeLe has not completed investigation of the facts relating to this case, has not completed discovery, and has not completed preparation for trial.  Therefore, these responses are based only on the information and documents presently available to and specifically known to LeLe.  Further discovery, independent investigation, legal research and analysis may lead to the discovery of additional non-privileged responsive information which may lead to additions to, changes in, and variations from the information, responses and/or objections set forth below.

These responses are given without prejudice to LeLe's right to produce evidence of any subsequently discovered facts, including the right to supplement these responses if it obtains further evidence.

LeLe reserves the right to produce at trial and make reference to any evidence, facts, documents or information not discovered at this time, omitted through good faith error, mistake or oversight, or the relevance of which has not presently been identified by LeLe.  LeLe further reserves the right to further modify these responses as a result of subsequently discovered information.

## GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      LeLe objects to the Requests to the extent that they purport to impose obligations on LeLe beyond those required under the Federal Rules of Civil Procedure.

2.      LeLe objects to each of the Requests to the extent that they are overbroad, irrelevant, and not proportional to the needs of the case, particularly to the extent they purport to require the production of "all" documents or "all" communications on a given subject.

3.     LeLe objects to each and every Request to the extent that it seeks information that is protected from discovery or disclosure by the work product doctrine or the attorney-client privilege or any other constitutional, statutory, or judicially recognized privilege, immunity, right of confidentiality or other protection from discovery or disclosure.   LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.   LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

4.     LeLe objects to the Request to the extent that it is unduly burdensome or seeks information or documents that are already in the possession, custody, or control of Vizio or more readily obtainable from other entities, including third-parties and public sources, and are equally accessible to Vizio as to LeLe.

5.     LeLe objects that the definition of "LeLe," "you," and "your" is overbroad in that it incorporates the overbroad definition of all "Persons."   In responding to these Requests, LeLe will interpret "LeLe, "you," or "your" as referring to LeLe Holding Ltd. and anyone authorized to act on its behalf.

6.     LeLe objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks documents which are not in LeLe's possession, custody or control.

7.     LeLe objects to the definitions of "Documents" and "ESI," to the extent they require searching or production of metadata and to the extent they purport to require production in a specified format.   Any responses to these Requests will be based on a mutually agreeable ESI protocol.   Regardless, LeLe objects, at this time, to always producing documents in native format and/or always searching or producing metadata. Those requirements may be appropriate for certain requests, but would be unduly burdensome and disproportionate to the needs of the case for other requests.

8.     LeLe objects to each and every Request to the extent that it seeks LeLe's confidential or proprietary information, or the confidential information of third-parties, including confidential or personal information about LeLe's customers and confidential information about LeLe's operations, sales and financial status.

9.     LeLe objects to each of the Requests to the extent that the burden or expense of responding to such Requests outweighs the benefit of such discovery, and is disproportional to the needs of the case considering the issues at stake at this stage of the proceedings.

10.     LeLe objects to each of the Requests to the extent they are unreasonably cumulative or duplicative, or that the information requested therein is obtainable from some other source that is more convenient, less burdensome, or less expensive.

11.     LeLe objects to each of the Requests to the extent they call for the dissemination of documents or information containing "state secrets," as the term is defined under the People's Republic of China ("PRC") Law on Guarding State Secrets (the "State Secrets Law")

12.     The Responses provided herein, and all information provided by LeLe in response to Plaintiff's Requests, are based on information known at this time, and are made without prejudice to LeLe's right to amend or supplement these responses, as necessary.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the negotiations that resulted in the MERGER AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Merger Agreement, drafts of the Merger Agreement, or the negotiations that resulted in the Merger Agreement."

1   LeLe further objects that, as phrased, this Request appears to seek documents that

2   are equally available to Vizio.  LeLe objects to searching for and producing documents

3   equally available to Vizio.

4   LeLe further objects that this Request appears to seek documents and

5   communications protected by the attorney-client privilege and work product doctrine.

6   LeLe objects to producing any privileged communications.  LeLe further objects to

7   producing any such documents created after this lawsuit was filed that merely "Relate To"

8   the subject matter of the Request as those documents would clearly be protected by the

9   attorney client privilege and attorney work product doctrine.  LeLe further objects to

10   logging all privileged and work product documents created after this lawsuit was filed as

11   unduly burdensome and disproportionate to the needs of the case.

12   **REQUEST FOR PRODUCTION NO. 2:**

13   ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

14   GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the

15   GUARANTY.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

17   LeLe restates and incorporates by reference the Preliminary Statement and General

18   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

19   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

20   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

21   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

22   pending Motion to Dismiss for insufficient service of process and lack of personal

23   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

24   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

25   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

26   In addition to being premature, the Requests directed at LeLe and the other individuals

27   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

28   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Guaranty, drafts of the Guaranty, or the negotiations that resulted in the Guaranty."

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as

8

CASE NO.  8:17-CV-01175-DOC-JDE
DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1  unduly burdensome and disproportionate to the needs of the case.

2  **REQUEST FOR PRODUCTION NO. 3**:

3  ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

4  FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT, or the

5  negotiations that resulted in the FRAMEWORK AGREEMENT.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3**:

7  LeLe restates and incorporates by reference the Preliminary Statement and General

8  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

9  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

10  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

11  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

12  pending Motion to Dismiss for insufficient service of process and lack of personal

13  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

14  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

15  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

16  In addition to being premature, the Requests directed at LeLe and the other individuals

17  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

18  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

19  Request on the grounds that it seeks the documents and communications of third parties or

20  documents and communications which are not in LeLe's possession, custody or control.

21  Furthermore, Vizio's Requests are premature because they pertain to issues that

22  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

23  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

24  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

25  the Merger Agreement including its various theories of fraud related to that alleged

26  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

27  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

28  Thus, nothing about the negotiations regarding the Merger Agreement, including the

negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Framework Agreement, drafts of the Framework Agreement, or the negotiations that resulted in the Framework Agreement."

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 4**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the negotiations that resulted in the ESCROW AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Escrow Agreement, drafts of the Escrow Agreement, or the negotiations that resulted in the Escrow Agreement."

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 5:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO VIZIO or to any transaction with VIZIO, INCLUDING corporate minutes or notes, board minutes or notes, corporate resolutions, shareholder minutes, minutes or notes of management meetings, emails, marketing plans, operational plans, financial analyses, and strategy documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals

and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To Vizio or any transaction with Vizio…." LeLe further objects to this Request on the grounds that it fails to describe the items for production with reasonable particularity as required by Rule 34, as the Request is not tethered to the claims at issue in this lawsuit. The only transactions related to Vizio that are relevant here are those related to the Framework Agreement and potentially the Merger Agreement depending on how the Court rules on LeEco's Motion to Dismiss (to which LeLe joined).

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications. Read literally, this Request

could call for the production of attorney-client privileged communications and work product materials from LeLe's defense team that simply include Vizio's name.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 6:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the MERGER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Merger."

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS and COMMUNICATIONS posted by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat RELATING TO VIZIO or the MERGER.

LA 133493446v6

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications … Relating To Vizio or the Merger."   LeLe further objects to this Request on the grounds that it fails to describe the items for production with reasonable particularity as required by Rule 34, as the Request is not tethered to the claims at issue in this lawsuit.  The only transactions related to Vizio that are relevant here are those related to the Framework Agreement and potentially the Merger Agreement depending on how the Court rules on LeEco's Motion to Dismiss (to which LeLe joined).

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  Read literally, this Request could call for the production of attorney-client privileged communications and work product materials from LeLe's defense team that simply include Vizio's name.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe

CASE NO.  8:17-CV-01175-DOC-JDE
DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1  further objects to logging all privileged and work product documents created after this

2  lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

3  **REQUEST FOR PRODUCTION NO. 8**:

4      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

5  ESCROW.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8**:

7      LeLe restates and incorporates by reference the Preliminary Statement and General

8  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

9  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

10 Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

11 "premature" because they would be rendered irrelevant were the Court to grant LeLe's

12 pending Motion to Dismiss for insufficient service of process and lack of personal

13 jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

14 action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

15 with California whatsoever.  Furthermore, LeLe was never properly served in this action.

16 In addition to being premature, the Requests directed at LeLe and the other individuals

17 and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

18 irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

19 Request on the grounds that it seeks the documents and communications of third parties or

20 documents and communications which are not in LeLe's possession, custody or control.

21     Furthermore, Vizio's Requests are premature because they pertain to issues that

22 would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

23 second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

24 pending MTD would eliminate Vizio's second through sixth causes of action for breach of

25 the Merger Agreement including its various theories of fraud related to that alleged

26 breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

27 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

28 Thus, nothing about the negotiations regarding the Merger Agreement, including the

negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Escrow."

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 9**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's

pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the benefits— financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates expected to receive from the Merger."

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents

1    and communications which are not in LeLe's possession, custody or control.

2    Furthermore, this Request, which seeks discovery from individuals and entities

3    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

4    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

5    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

6    limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

7    another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

8    and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

9    LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

10   the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

11         LeLe further objects that this Request appears to seek documents and

12   communications protected by the attorney-client privilege and work product doctrine.

13   LeLe objects to producing any privileged communications.  LeLe further objects to

14   producing any such documents created after this lawsuit was filed that merely "Relate To"

15   the subject matter of the Request as those documents would clearly be protected by the

16   attorney client privilege and attorney work product doctrine.  LeLe further objects to

17   logging all privileged and work product documents created after this lawsuit was filed as

18   unduly burdensome and disproportionate to the needs of the case.

19   **REQUEST FOR PRODUCTION NO. 10**:

20         ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

21   benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE, JIA, LTI or

22   any of their AFFILIATES expected to receive from the public announcement of the

23   MERGER AGREEMENT or that any of those PERSONS actually received following that

24   announcement.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

26         LeLe restates and incorporates by reference the Preliminary Statement and General

27   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

28   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the benefits— financial, operational or otherwise that LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates expected to receive from the public announcement of the Merger Agreement or

1   that any of those Persons actually received following that announcement.”

2       LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3   ambiguous and seeks the documents and communications of third parties or documents

4   and communications which are not in LeLe's possession, custody or control.

5   Furthermore, this Request, which seeks discovery from individuals and entities

6   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

7   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

8   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

9   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

11  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

12  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

13  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

14      LeLe further objects that this Request appears to seek documents and

15  communications protected by the attorney-client privilege and work product doctrine.

16  LeLe objects to producing any privileged communications.  LeLe further objects to

17  producing any such documents created after this lawsuit was filed that merely "Relate To"

18  the subject matter of the Request as those documents would clearly be protected by the

19  attorney client privilege and attorney work product doctrine.  LeLe further objects to

20  logging all privileged and work product documents created after this lawsuit was filed as

21  unduly burdensome and disproportionate to the needs of the case.

22  **REQUEST FOR PRODUCTION NO. 11**:

23      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO the

24  response of U.S. and Chinese markets or press to the proposed MERGER, INCLUDING

25  all articles, reports and other documents issued by stock markets, bond markets, financial

26  press, newspapers, and financial analysts.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

28      LeLe restates and incorporates by reference the Preliminary Statement and General

CASE NO.  8:17-CV-01175-DOC-JDE
DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the response

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION

of U.S. and Chinese markets or press to the proposed Merger….”

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio, as the Request expressly calls for public information.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely “Relate To” the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 12**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to implement, meet the conditions for, or complete the MERGER with VIZIO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are “premature” because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction (“MTD”).   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities (“Unrelated Third Parties”) are calculated merely to harass and are overbroad,

irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to implement, meet the conditions for, or complete the Merger with Vizio."

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

1  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

2  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

3  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

4  the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

5  　　　　LeLe further objects that this Request appears to seek documents and

6  communications protected by the attorney-client privilege and work product doctrine.

7  LeLe objects to producing any privileged communications.  LeLe further objects to

8  producing any such documents created after this lawsuit was filed that merely "Relate To"

9  the subject matter of the Request as those documents would clearly be protected by the

10  attorney client privilege and attorney work product doctrine.  LeLe further objects to

11  logging all privileged and work product documents created after this lawsuit was filed as

12  unduly burdensome and disproportionate to the needs of the case.

13  **REQUEST FOR PRODUCTION NO. 13**:

14  　　　　ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

15  Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

16  agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13**:

18  　　　　LeLe restates and incorporates by reference the Preliminary Statement and General

19  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

20  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

21  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

22  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

23  pending Motion to Dismiss for insufficient service of process and lack of personal

24  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

25  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

26  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

27  In addition to being premature, the Requests directed at LeLe and the other individuals

28  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications that Relate To the Merger Agreement…."

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to

28

1   logging all privileged and work product documents created after this lawsuit was filed as

2   unduly burdensome and disproportionate to the needs of the case.

3   **REQUEST FOR PRODUCTION NO. 14**:

4        ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU received from

5   any PERSON, including AFFILIATES, third party businesses, and governmental entities,

6   regarding the proposed MERGER.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 14**:

8        LeLe restates and incorporates by reference the Preliminary Statement and General

9   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

10  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

11  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

12  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

13  pending Motion to Dismiss for insufficient service of process and lack of personal

14  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

15  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

16  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

17  In addition to being premature, the Requests directed at LeLe and the other individuals

18  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

19  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

20  Request on the grounds that it seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or control.

22       Furthermore, Vizio's Requests are premature because they pertain to issues that

23  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

24  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

25  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

26  the Merger Agreement including its various theories of fraud related to that alleged

27  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

28  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

1  Thus, nothing about the negotiations regarding the Merger Agreement, including the

2  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

3  the termination of the Merger Agreement has any relevance, and discovery should be

4  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

5  rights, including the right to amend and supplement its Responses and Objections to

6  Vizio's Requests, should it become necessary and appropriate to do so.

7       LeLe further objects that this Request is compound and overbroad, particularly in

8  its request for "Any and All Documents or Communications … regarding … the proposed

9  Merger."

10      LeLe further objects that, as phrased, this Request appears to seek documents that

11  are equally available to Vizio.  LeLe objects to searching for and producing documents

12  equally available to Vizio.

13      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

14  ambiguous and seeks the documents and communications of third parties or documents

15  and communications which are not in LeLe's possession, custody or control.

16      LeLe further objects that this Request appears to seek documents and

17  communications protected by the attorney-client privilege and work product doctrine.

18  LeLe objects to producing any privileged communications.  LeLe further objects to

19  producing any such documents created after this lawsuit was filed that merely "Relate To"

20  the subject matter of the Request as those documents would clearly be protected by the

21  attorney client privilege and attorney work product doctrine.  LeLe further objects to

22  logging all privileged and work product documents created after this lawsuit was filed as

23  unduly burdensome and disproportionate to the needs of the case.

24  **REQUEST FOR PRODUCTION NO. 15**:

25      ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO,

26  GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental Entity,"

27  as that term is defined in Section 10.2 of the MERGER AGREEMENT—whether located

28  in the United States, CHINA, Taiwan, or otherwise—that RELATES TO the MERGER

AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the

negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications sent by LeECO, GLOBAL, LELE, JIA, LTI or any of their Affiliates to any "Governmental Entity," … whether located in the United States, China, Taiwan, or otherwise—that Relates To the Merger Agreement Or Merger…."  Furthermore, any information related to the U.S. approval is irrelevant because it is undisputed that the U.S. approval was obtained.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the

attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 16**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent, issued, made or published by any "Governmental Entity," as that term is defined in Section 10.2 of the WLERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—RELATING TO the WRGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications drafted, sent, issued, made or published by any "Governmental Entity," … in the United States, China, Taiwan, or otherwise—Relating To Merger Agreement Or Merger…."  Furthermore, any information related to the U.S. approval is irrelevant because it is undisputed that the U.S. approval was obtained.

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to

CASE NO.  8:17-CV-01175-DOC-JDE
DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 17**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such investments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications sent, issued, made or published by any governmental entity in China Relating To the standards of review…."

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 18**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the ability of GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the proposed MERGER with VIZIO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

1    the termination of the Merger Agreement has any relevance, and discovery should be

2    limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

3    rights, including the right to amend and supplement its Responses and Objections to

4    Vizio's Requests, should it become necessary and appropriate to do so.

5         LeLe further objects that this Request is compound and overbroad, particularly in

6    its request for "Any and All Documents or Communications Relating To the ability of

7    GLOBAL, LeECO and MERGER SUB to obtain the financing needed to complete the

8    proposed Merger with Vizio."   LeLe further objects that the phrase "obtain the financing

9    needed" is vague and ambiguous and, as phrased, calls for speculation.

10        LeLe further objects that the Request seeks the documents and communications of

11   third parties or documents and communications which are not in LeLe's possession,

12   custody or control.  Furthermore, this Request, which seeks discovery from individuals

13   and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

14   calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

15   of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

16   the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

17   million and another $10 million in escrow that is disputed.  The remaining dispute

18   concerns LeEco and Vizio's obligations to each other in the context of the proposed China

19   JV.  Moreover, LeEco Global Group Ltd., has not been served with the Summons and

20   FAC, and Merger Sub is not a party to this action.

21        LeLe further objects that this Request appears to seek documents and

22   communications protected by the attorney-client privilege and work product doctrine.

23   LeLe objects to producing any privileged communications.  LeLe further objects to

24   producing any such documents created after this lawsuit was filed that merely "Relate To"

25   the subject matter of the Request as those documents would clearly be protected by the

26   attorney client privilege and attorney work product doctrine.  LeLe further objects to

27   logging all privileged and work product documents created after this lawsuit was filed as

28   unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 19**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO efforts, by any PERSON, to obtain the financing needed by LeECO and MERGER SUB to complete the proposed MERGER with VIZIO INCLUDING DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International Capital; the Bank of China; Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To efforts, by any Person, to obtain the financing needed to complete the proposed Merger with Vizio…."  LeLe further objects that the phrase "obtain the financing needed" is vague and ambiguous and, as phrased, calls for speculation.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, Merger Sub is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to

producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 20**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the terms on which the financing needed by LeECO and MERGER SUB to complete the proposed MERGER with VIZIO could be obtained, INCLUDING DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International Capital; the Bank of China; Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.; Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp., Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad.  LeLe further objects that the phrase "terms on which financing…could be obtained" is vague and ambiguous and, as phrased, calls for speculation.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, Merger Sub is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications. LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 21**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, regarding efforts to implement, meet the conditions for, or complete the MERGER or to obtain the financing needed by LeECO and MERGER SUB to complete the MERGER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or

documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications between Vizio, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their Affiliates, on the other hand, regarding efforts to implement; meet the conditions for, or complete the Merger or to obtain the financing needed by LeECO and MERGER SUB to complete the Merger." LeLe further objects that the phrase "obtain the financing needed" is vague and ambiguous and, as phrased, calls for speculation.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and Merger Sub and LeTechnology, Inc. are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 22:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Equity Commitment Letters", as that term is defined and used in Sections 4.10 and 5.8 of the MERGER AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.

In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the Equity Commitment Letters…"

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To"

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1   the subject matter of the Request as those documents would clearly be protected by the

2   attorney client privilege and attorney work product doctrine.  LeLe further objects to

3   logging all privileged and work product documents created after this lawsuit was filed as

4   unduly burdensome and disproportionate to the needs of the case.

5   **REQUEST FOR PRODUCTION NO. 23**:

6        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

7   "Debt Financing Documents", as that term is defined in Section 10.2 of the MERGER

8   AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER AGREEMENT.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 23**:

10       LeLe restates and incorporates by reference the Preliminary Statement and General

11   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

12   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

13   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

14   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

15   pending Motion to Dismiss for insufficient service of process and lack of personal

16   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

17   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

18   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

19   In addition to being premature, the Requests directed at LeLe and the other individuals

20   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

21   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

22   Request on the grounds that it seeks the documents and communications of third parties or

23   documents and communications which are not in LeLe's possession, custody or control.

24       Furthermore, Vizio's Requests are premature because they pertain to issues that

25   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

26   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

27   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

28   the Merger Agreement including its various theories of fraud related to that alleged

breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the Debt Financing Documents …"

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 24**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the actual assets and financing available to LeECO and MERGER SUB on or about April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24**:

LeLe restates and incorporates by reference the Preliminary Statement and General

Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad.  LeLe further objects that the phrase "actual assets and financing available" is vague and ambiguous.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, Merger Sub is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 25**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

1   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

2   pending Motion to Dismiss for insufficient service of process and lack of personal

3   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

4   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

5   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

6   In addition to being premature, the Requests directed at LeLe and the other individuals

7   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

8   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

9   Request on the grounds that it seeks the documents and communications of third parties or

10  documents and communications which are not in LeLe's possession, custody or control.

11      Furthermore, Vizio's Requests are premature because they pertain to issues that

12  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

13  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

14  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

15  the Merger Agreement including its various theories of fraud related to that alleged

16  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

17  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

18  Thus, nothing about the negotiations regarding the Merger Agreement, including the

19  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

20  the termination of the Merger Agreement has any relevance, and discovery should be

21  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

22  rights, including the right to amend and supplement its Responses and Objections to

23  Vizio's Requests, should it become necessary and appropriate to do so.

24      LeLe further objects that this Request is compound and overbroad, particularly in

25  its request for "Any and All Documents or Communications Relating To the to the Buyer

26  Termination Fee, Buyer Termination Fee Deposit or Buyer Termination Fee

27  Remainder…."

28      LeLe further objects that, as phrased, this Request appears to seek documents that

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1  are equally available to Vizio.  LeLe objects to searching for and producing documents

2  equally available to Vizio.

3       LeLe further objects that this Request appears to seek documents and

4  communications protected by the attorney-client privilege and work product doctrine.

5  LeLe objects to producing any privileged communications.  LeLe further objects to

6  producing any such documents created after this lawsuit was filed that merely "Relate To"

7  the subject matter of the Request as those documents would clearly be protected by the

8  attorney client privilege and attorney work product doctrine.  LeLe further objects to

9  logging all privileged and work product documents created after this lawsuit was filed as

10  unduly burdensome and disproportionate to the needs of the case.

11  **REQUEST FOR PRODUCTION NO. 26**:

12       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

13  source of monies deposited in ESCROW to serve as the "Buyer Termination Fee

14  Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT and

15  used in Section 9.2 of the MERGER AGREEMENT.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26**:

17       LeLe restates and incorporates by reference the Preliminary Statement and General

18  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

19  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

20  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

21  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

22  pending Motion to Dismiss for insufficient service of process and lack of personal

23  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

24  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

25  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

26  In addition to being premature, the Requests directed at LeLe and the other individuals

27  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

28  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the to the source of monies deposited in Escrow to serve as the Buyer Termination Fee Deposit …"

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio. LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications. LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as

53

CASE NO.  8:17-CV-01175-DOC-JDE
DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1  unduly burdensome and disproportionate to the needs of the case.

2  **REQUEST FOR PRODUCTION NO. 27**:

3        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the

4  termination of the MERGER AGREEMENT.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27**:

6        LeLe restates and incorporates by reference the Preliminary Statement and General

7  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

8  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

9  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

10 "premature" because they would be rendered irrelevant were the Court to grant LeLe's

11 pending Motion to Dismiss for insufficient service of process and lack of personal

12 jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

13 action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

14 with California whatsoever.  Furthermore, LeLe was never properly served in this action.

15 In addition to being premature, the Requests directed at LeLe and the other individuals

16 and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

17 irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

18 Request on the grounds that it seeks the documents and communications of third parties or

19 documents and communications which are not in LeLe's possession, custody or control.

20        Furthermore, Vizio's Requests are premature because they pertain to issues that

21 would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

22 second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

23 pending MTD would eliminate Vizio's second through sixth causes of action for breach of

24 the Merger Agreement including its various theories of fraud related to that alleged

25 breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

26 upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

27 Thus, nothing about the negotiations regarding the Merger Agreement, including the

28 negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications Relating To the termination of the Merger Agreement."

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 28**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to reasons why the MERGER was not, or could not, be completed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.

In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as

1  unduly burdensome and disproportionate to the needs of the case.

2  **REQUEST FOR PRODUCTION NO. 29**:

3        ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a

4  potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA,

5  LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO products in

6  CHINA, INCLUDING emails, marketing plans, operational plans, financial analyses, and

7  strategy documents.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29**:

9        LeLe restates and incorporates by reference the Preliminary Statement and General

10  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

11  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

12  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

13  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

14  pending Motion to Dismiss for insufficient service of process and lack of personal

15  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

16  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

17  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

18  In addition to being premature, the Requests directed at LeLe and the other individuals

19  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

20  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

21  Request on the grounds that it seeks the documents and communications of third parties or

22  documents and communications which are not in LeLe's possession, custody or control.

23        Furthermore, Vizio's Requests are premature because they pertain to issues that

24  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

25  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

26  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

27  the Merger Agreement including its various theories of fraud related to that alleged

28  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION

LA 133493446v6

**REQUEST FOR PRODUCTION NO. 30**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to negotiations or discussions between VIZIO and LeECO to "negotiate in good with and execute one or more agreements" regarding a joint venture in CHINA as required by Section 4 of the FRAMEWORK AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the

negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

### REQUEST FOR PRODUCTION NO. 31:

DOCUMENTS OR COMMUNICATIONS sufficient to show any contractual relationships, and the terms of those relationships, between LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on one hand, and any other PERSON on the other hand, that would have been impacted or affected by a joint venture between LeECO and VIZIO to distribute VIZIO products in CHINA.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad.  LeEco also objects that the Request is unintelligible. LeLe further objects that the phrase "would have been impacted or affected by a joint venture" is vague and ambiguous and, as phrased, calls for speculation.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

## REQUEST FOR PRODUCTION NO. 32:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to develop and obtain certification of the "LeEco Le App", as required of LeECO under Section 2.1.1 of the FRAMEWORK AGREEMENT.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 32:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").  LeLe is not a party to the contracts with Vizio that give rise to this

action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

2   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

3   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

4   the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

5       LeLe further objects that this Request appears to seek documents and

6   communications protected by the attorney-client privilege and work product doctrine.

7   LeLe objects to producing any privileged communications.  LeLe further objects to

8   producing any such documents created after this lawsuit was filed that merely "Relate To"

9   the subject matter of the Request as those documents would clearly be protected by the

10  attorney client privilege and attorney work product doctrine.  LeLe further objects to

11  logging all privileged and work product documents created after this lawsuit was filed as

12  unduly burdensome and disproportionate to the needs of the case.

13  **REQUEST FOR PRODUCTION NO. 33**:

14      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to efforts

15  by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to identify

16  and/or obtain "non-cash assets with a fair market value equal to US $50,000,000 as a

17  capital contribution" to contribute to a proposed joint venture with VIZIO, as called for in

18  Section 3.1.1 of the FRAMEWORK AGREEMENT.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33**:

20      LeLe restates and incorporates by reference the Preliminary Statement and General

21  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

22  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

23  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

24  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

25  pending Motion to Dismiss for insufficient service of process and lack of personal

26  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

27  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

28  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

In addition to being premature, the Requests directed at LeLe and the other individuals
and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,
irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this
Request on the grounds that it seeks the documents and communications of third parties or
documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that
would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's
second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's
pending MTD would eliminate Vizio's second through sixth causes of action for breach of
the Merger Agreement including its various theories of fraud related to that alleged
breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement
upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.
Thus, nothing about the negotiations regarding the Merger Agreement, including the
negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or
the termination of the Merger Agreement has any relevance, and discovery should be
limited to whether there was a breach of the Framework Agreement.  LeLe reserves all
rights, including the right to amend and supplement its Responses and Objections to
Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and
ambiguous and seeks the documents and communications of third parties or documents
and communications which are not in LeLe's possession, custody or control.
Furthermore, this Request, which seeks discovery from individuals and entities
("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely
to harass and is overbroad, irrelevant, and not proportional to the needs of the case.
Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco
and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

1   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
2   the Summons and FAC, and LeTechnology, Inc. is not a party to this action.

3       LeLe further objects that this Request appears to seek documents and
4   communications protected by the attorney-client privilege and work product doctrine.
5   LeLe objects to producing any privileged communications.  LeLe further objects to
6   producing any such documents created after this lawsuit was filed that merely "Relate To"
7   the subject matter of the Request as those documents would clearly be protected by the
8   attorney client privilege and attorney work product doctrine.  LeLe further objects to
9   logging all privileged and work product documents created after this lawsuit was filed as
10  unduly burdensome and disproportionate to the needs of the case.

11  **REQUEST FOR PRODUCTION NO. 34**:

12      ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to ALL
13  assets owned by LTI or financial resources available to LTI, at any time between July 6,
14  2016 and the present, that were available to satisfy LTI' s representation in Section 5(d) of
15  the GUARANTY that LTI would have "the financial capacity to pay and perform the
16  Obligation" of LeECO to pay the Buyer Termination Fee Remainder if it should become
17  due under the MERGER AGREEMENT and that LTI "Shall maintain such financial
18  capacity for so long as this Guarantee shall remain in effect."

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**:

20      LeLe restates and incorporates by reference the Preliminary Statement and General
21  Objections set forth above.  LeLe further objects to this Request on the grounds that it is
22  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's
23  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are
24  "premature" because they would be rendered irrelevant were the Court to grant LeLe's
25  pending Motion to Dismiss for insufficient service of process and lack of personal
26  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this
27  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts
28  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad. LeLe further objects that the phrase "total financial resources available to" is vague and ambiguous, and as phrased, calls for speculation.

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV. Moreover, LeTechnology, Inc. is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications. LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine. LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 35**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO payments or transfers made by LTI after July 6, 2016, if any, in which the total assets then owned by LTI, or the total financial resources available to LTI, was less than $50,000,000.00 either before and/or after the transaction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad. LeLe further objects that the phrase "total financial resources available to" is vague and ambiguous, and as phrased, calls for speculation.

LeLe further objects that, as phrased, this Request appears to seek documents that are equally available to Vizio.  LeLe objects to searching for and producing documents equally available to Vizio.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals

LA 133493446v6

and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeTechnology, Inc. is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to producing any such documents created after this lawsuit was filed that merely "Relate To" the subject matter of the Request as those documents would clearly be protected by the attorney client privilege and attorney work product doctrine.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 36**:

ANY and ALL articles of incorporation, amended articles of incorporation, bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL, LELE, LTI, LREG, and/or any of their AFFILIATES at any time after January 1, 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

**REQUEST FOR PRODUCTION NO. 37**:

DOCUMENTS sufficient to identify ALL officers, directors, partners, shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or

1  documents and communications which are not in LeLe's possession, custody or control.

2      Furthermore, Vizio's Requests are premature because they pertain to issues that

3  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

4  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

5  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

6  the Merger Agreement including its various theories of fraud related to that alleged

7  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

8  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

9  Thus, nothing about the negotiations regarding the Merger Agreement, including the

10  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

11  the termination of the Merger Agreement has any relevance, and discovery should be

12  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

13  rights, including the right to amend and supplement its Responses and Objections to

14  Vizio's Requests, should it become necessary and appropriate to do so.

15      LeLe objects that this Request compound and is overbroad as to time.

16      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

17  ambiguous and seeks the documents and communications of third parties or documents

18  and communications which are not in LeLe's possession, custody or control.

19  Furthermore, this Request, which seeks discovery from individuals and entities

20  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

21  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

22  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

23  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

24  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

25  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

26  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

27  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

28  not parties to this action.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 38**:

ANY and ALL shares of stock, stock certificates, partnership interests, or membership interests currently held or owned by any PERSONS in LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD"). LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever. Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement

upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 39**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY contract or agreement - - INCLUDING all written amendments and supplements to any such contract or agreement and all written assignments and modifications of any such

contract or agreement - - whereby any PERSONS acquired on any date after January 1, 2012, either in their own respective names or under and pursuant to any fictitious business names, any right, title or interest in or to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and each or any of their respective employees, shares of stock, partnership interests, membership interests, assets and/or liabilities, INCLUDING all loan commitments, offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty agreements, stock transfer agreements, membership interest transfer agreements, credit agreements, sales orders, partnership agreements, sales agreements, assignment agreements, hypothecation agreements, deregistration agreements, dissolution agreements, purchase agreements, options agreements, stock agreements, shares of stock, certificates of stock, joint venture agreements, asset sale agreements, debt payment agreements, accommodation agreements, debt protection agreements, asset transfer agreements, indemnity agreements, defense agreements, hold harmless agreements, employee sharing agreements, employee transfer agreements, security agreements, financing agreements, memorandum agreements, letter agreements, loan agreements, insolvency agreements, intercompany transfer agreements, escrow agreements, operating agreements, loan commitments, limited liability company agreements, assumption agreements, liquidation agreements, winding up agreements, creditor's agreements, letters of credit, asset distribution or preservation agreements, liability distribution or transfer agreements, membership distribution or transfer agreements, payment records, promissory notes, governmental filings, security instruments, deeds and deeds of trust.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
2    limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
3    another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco
4    and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,
5    LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
6    the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are
7    not parties to this action.

8        LeLe objects that the Request appears calculated merely to harass and is vague,
9    ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
10   overbroad.

11   **REQUEST FOR PRODUCTION NO. 40**:

12       ANY and ALL agendas, corporate minutes, and corporate resolutions for ALL
13   meetings of the Board of Directors and/or Managers for LeECO, GLOBAL, LELE, LTI,
14   and LREG held on any date after January 1, 2012.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 40**:

16       LeLe restates and incorporates by reference the Preliminary Statement and General
17   Objections set forth above.  LeLe further objects to this Request on the grounds that it is
18   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's
19   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are
20   "premature" because they would be rendered irrelevant were the Court to grant LeLe's
21   pending Motion to Dismiss for insufficient service of process and lack of personal
22   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this
23   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts
24   with California whatsoever.  Furthermore, LeLe was never properly served in this action.
25   In addition to being premature, the Requests directed at LeLe and the other individuals
26   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,
27   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this
28   Request on the grounds that it seeks the documents and communications of third parties or

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

1    documents and communications which are not in LeLe's possession, custody or control.

2         Furthermore, Vizio's Requests are premature because they pertain to issues that

3    would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

4    second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

5    pending MTD would eliminate Vizio's second through sixth causes of action for breach of

6    the Merger Agreement including its various theories of fraud related to that alleged

7    breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

8    upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

9    Thus, nothing about the negotiations regarding the Merger Agreement, including the

10   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

11   the termination of the Merger Agreement has any relevance, and discovery should be

12   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

13   rights, including the right to amend and supplement its Responses and Objections to

14   Vizio's Requests, should it become necessary and appropriate to do so.

15        LeLe objects that this Request is compound and is overbroad as to time.

16        LeLe further objects that the definition of "Affiliates" is overbroad, vague and

17   ambiguous and seeks the documents and communications of third parties or documents

18   and communications which are not in LeLe's possession, custody or control.

19   Furthermore, this Request, which seeks discovery from individuals and entities

20   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

21   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

22   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

23   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

24   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

25   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

26   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

27   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

28   not parties to this action.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 41**:

ANY and ALL agendas, minutes, and resolutions for ALL meetings of the shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG herd on any date after January 1, 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION

upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 42**:

ANY and ALL voting or operating agreements among shareholders or members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any date after January 1, 2012.

LA 133493446v6

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

1    LeLe objects that this Request is compound and is overbroad as to time.

2    LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3    ambiguous and seeks the documents and communications of third parties or documents

4    and communications which are not in LeLe's possession, custody or control.

5    Furthermore, this Request, which seeks discovery from individuals and entities

6    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

7    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

8    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

9    limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

11   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

12   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

13   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

14   not parties to this action.

15   LeLe objects that the Request appears calculated merely to harass and is vague,

16   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

17   overbroad.

18   **REQUEST FOR PRODUCTION NO. 43**:

19   ANY and ALL contracts and agreements between or among LeECO, GLOBAL,

20   LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in effect at any point

21   in time after January 1, 2012.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 43**:

23   LeLe restates and incorporates by reference the Preliminary Statement and General

24   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

25   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

26   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

27   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

28   pending Motion to Dismiss for insufficient service of process and lack of personal

jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All contracts and agreements between or among…."

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities

("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects to the extent that this Request seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 44**:

ANY and ALL DOCUMENTS prepared at any time since 2012 and through and including the present date, in which LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES represented, stated, or otherwise held out that LeECO, MERGER SUB, LTI, OR LREG were a part of, unit, or division of LELE or GLOBAL and/or to be substantially the same as LELE or GLOBAL, INCLUDING advertising or promotional materials, press releases, WeChat and other social media postings, investment reports, financial documents, and ANY DOCUMENTS submitted to, or filed with, ANY governmental, regulatory or market entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above. LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case. Vizio's

Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, this Request, which seeks discovery from individuals and entities
("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely
to harass and is overbroad, irrelevant, and not proportional to the needs of the case.
Particularly if the case is limited to a breach of the Framework Agreement, the dispute is
limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and
another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco
and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,
LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with
the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are
not parties to this action.

LeLe further objects that this Request appears to seek documents and
communications protected by the attorney-client privilege and work product doctrine.
LeLe objects to producing any privileged communications.  LeLe further objects to
logging all privileged and work product documents created after this lawsuit was filed as
unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague,
ambiguous, unduly burdensome, disproportional to the needs of the case, compound and
overbroad.

**REQUEST FOR PRODUCTION NO. 45**:

DOCUMENTS sufficient to identify the location of the headquarters and all
administrative, manufacturing and distribution facilities for LeECO, GLOBAL, LELE,
LTI, LREG and/or any of their AFFILIATES at all times after January 1, 2012 and
through the present day.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45**:

LeLe restates and incorporates by reference the Preliminary Statement and General
Objections set forth above.  LeLe further objects to this Request on the grounds that it is
premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's
Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

"premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that the Request calls for confidential information and/or trade secrets.

LeLe objects that the Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

1   Furthermore, this Request, which seeks discovery from individuals and entities

2   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

3   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

4   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

5   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

6   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

7   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

8   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

9   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

10  not parties to this action.

11          LeLe further objects that this Request appears to seek documents and

12  communications protected by the attorney-client privilege and work product doctrine.

13  LeLe objects to producing any privileged communications. LeLe further objects to

14  logging all privileged and work product documents created after this lawsuit was filed as

15  unduly burdensome and disproportionate to the needs of the case.

16          LeLe objects that the Request appears calculated merely to harass and is vague,

17  ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

18  overbroad.

19  **REQUEST FOR PRODUCTION NO. 46**:

20          DOCUMENTS sufficient to identify ALL employees of LeECO, GLOBAL, LELE,

21  LTI, LREG and/or any of their AFFILIATES at any time after January 1, 2012 and

22  through the present day.  "Identify" in this request means to provide the full name, title,

23  and current (or last known) address and phone number of each employee, the entity with

24  which each individual was employed, the date on which the individual's employment

25  began, and, if the individual is no longer employed, the dates of his or her service with

26  LeECO, GLOBAL, LELE, LTI, LREG or their AFFILIATES.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 46**:

28          LeLe restates and incorporates by reference the Preliminary Statement and General

Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.  LeLe further objections that the information sought is irrelevant, and not proportional to the

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

needs of the case as there is no allegation of any employee acting outside the scope of their authority.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV. Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects to the extent that this Request seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications. LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 47**:

DOCUMENTS sufficient to identify ALL employees, managers, consultants, independent contractors, agents, attorneys, accountants, officers and/or directors shared by, used by, loaned to, or otherwise transferred between one or more of LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after

1  January 1, 2012.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 47**:

3  LeLe restates and incorporates by reference the Preliminary Statement and General

4  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

5  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

6  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

7  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

8  pending Motion to Dismiss for insufficient service of process and lack of personal

9  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

10  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

11  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

12  In addition to being premature, the Requests directed at LeLe and the other individuals

13  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

14  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

15  Request on the grounds that it seeks the documents and communications of third parties or

16  documents and communications which are not in LeLe's possession, custody or control.

17  Furthermore, Vizio's Requests are premature because they pertain to issues that

18  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

19  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

20  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

21  the Merger Agreement including its various theories of fraud related to that alleged

22  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

23  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

24  Thus, nothing about the negotiations regarding the Merger Agreement, including the

25  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

26  the termination of the Merger Agreement has any relevance, and discovery should be

27  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

28  rights, including the right to amend and supplement its Responses and Objections to

92

1    Vizio's Requests, should it become necessary and appropriate to do so.

2    LeLe objects that this Request is compound and is overbroad as to time.

3    LeLe further objects that the definition of "Affiliates" is overbroad, vague and

4    ambiguous and seeks the documents and communications of third parties or documents

5    and communications which are not in LeLe's possession, custody or control.

6    Furthermore, this Request, which seeks discovery from individuals and entities

7    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

8    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

9    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

10   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

11   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

12   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

13   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

14   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

15   not parties to this action.

16   LeLe further objects to the extent that this Request seeks documents and

17   communications protected by the attorney-client privilege and work product doctrine.

18   LeLe objects to producing any privileged communications.  LeLe further objects to

19   logging all privileged and work product documents created after this lawsuit was filed as

20   unduly burdensome and disproportionate to the needs of the case.

21   LeLe objects that the Request appears calculated merely to harass and is vague,

22   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

23   overbroad.

24   **REQUEST FOR PRODUCTION NO. 48**:

25   ANY and ALL DOCUMENTS RELATING TO monies transferred by, between or

26   among LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES since

27   January 1, 2012, and through and including the present date, INCLUDING intercorporate

28   transfers, hypothecations, loans, gifts, dividends, earnings and profits.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.    LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

## REQUEST FOR PRODUCTION NO. 49:

ANY and ALL DOCUMENTS RELATING TO contracts or agreements with third parties, loans, other obligations or instruments of debt that were paid, co-signed or guaranteed by LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES for or on behalf of LeECO, GLOBAL, LELE, LTI, or LREG since January 1, 2012, and through and including the present date.

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 49**:

2        LeLe restates and incorporates by reference the Preliminary Statement and General

3   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

4   premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

5   Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

6   "premature" because they would be rendered irrelevant were the Court to grant LeLe's

7   pending Motion to Dismiss for insufficient service of process and lack of personal

8   jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

9   action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

10  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

11  In addition to being premature, the Requests directed at LeLe and the other individuals

12  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

13  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

14  Request on the grounds that it seeks the documents and communications of third parties or

15  documents and communications which are not in LeLe's possession, custody or control.

16       Furthermore, Vizio's Requests are premature because they pertain to issues that

17  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

18  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

19  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

20  the Merger Agreement including its various theories of fraud related to that alleged

21  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

22  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

23  Thus, nothing about the negotiations regarding the Merger Agreement, including the

24  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

25  the termination of the Merger Agreement has any relevance, and discovery should be

26  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

27  rights, including the right to amend and supplement its Responses and Objections to

28  Vizio's Requests, should it become necessary and appropriate to do so.

1    LeLe objects that this Request is compound and is overbroad as to time.

2    LeLe further objects that the definition of "Affiliates" is overbroad, vague and

3    ambiguous and seeks the documents and communications of third parties or documents

4    and communications which are not in LeLe's possession, custody or control.

5    Furthermore, this Request, which seeks discovery from individuals and entities

6    ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

7    to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

8    Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

9    limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

10   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

11   and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

12   LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

13   the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

14   not parties to this action.

15   LeLe further objects that this Request appears to seek documents and

16   communications protected by the attorney-client privilege and work product doctrine.

17   LeLe objects to producing any privileged communications.  LeLe further objects to

18   logging all privileged and work product documents created after this lawsuit was filed as

19   unduly burdensome and disproportionate to the needs of the case.

20   LeLe objects that the Request appears calculated merely to harass and is vague,

21   ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

22   overbroad.

23   **REQUEST FOR PRODUCTION NO. 50**:

24   ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

25   GLOBAL, LELE, LTI, and LREG at or about (a) the date of its incorporation or

26   formation, and (b) from and after January. 1, 2012 and including the present date.

27   **RESPONSE TO REQUEST FOR PRODUCTION NO. 50**:

28   LeLe restates and incorporates by reference the Preliminary Statement and General

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the Request seeks the documents and communications of

third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 51**:

ANY and ALL financial statements and analyses for LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through and including the present date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3) balance sheets, and 4) ANY financial summaries or reports prepared for a) the use of JIA or other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of potential investors in, joint venturers with, or lenders to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 51**:

2         LeLe restates and incorporates by reference the Preliminary Statement and General

3    Objections set forth above.  LeLe further objects to this Request on the grounds that it is

4    premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

5    Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

6    "premature" because they would be rendered irrelevant were the Court to grant LeLe's

7    pending Motion to Dismiss for insufficient service of process and lack of personal

8    jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

9    action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

10   with California whatsoever.  Furthermore, LeLe was never properly served in this action.

11   In addition to being premature, the Requests directed at LeLe and the other individuals

12   and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

13   irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

14   Request on the grounds that it seeks the documents and communications of third parties or

15   documents and communications which are not in LeLe's possession, custody or control.

16        Furthermore, Vizio's Requests are premature because they pertain to issues that

17   would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

18   second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

19   pending MTD would eliminate Vizio's second through sixth causes of action for breach of

20   the Merger Agreement including its various theories of fraud related to that alleged

21   breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

22   upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

23   Thus, nothing about the negotiations regarding the Merger Agreement, including the

24   negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

25   the termination of the Merger Agreement has any relevance, and discovery should be

26   limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

27   rights, including the right to amend and supplement its Responses and Objections to

28   Vizio's Requests, should it become necessary and appropriate to do so.

1    LeLe objects that this Request is compound and is overbroad as to time.

2    LeLe further objects that the Request seeks the documents and communications of

3 third parties or documents and communications which are not in LeLe's possession,

4 custody or control.  Furthermore, this Request, which seeks discovery from individuals

5 and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

6 calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

7 of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

8 the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

9 million and another $10 million in escrow that is disputed.  The remaining dispute

10 concerns LeEco and Vizio's obligations to each other in the context of the proposed China

11 JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not

12 been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate

13 Group LLC are not parties to this action.

14    LeLe further objects that this Request appears to seek documents and

15 communications protected by the attorney-client privilege and work product doctrine.

16 LeLe objects to producing any privileged communications.  LeLe further objects to

17 logging all privileged and work product documents created after this lawsuit was filed as

18 unduly burdensome and disproportionate to the needs of the case.

19    LeLe objects that the Request appears calculated merely to harass and is vague,

20 ambiguous, unduly burdensome, disproportional to the needs of the case, compound and

21 overbroad.

22 **REQUEST FOR PRODUCTION NO. 52**:

23    ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits of

24 LeECO, GLOBAL, LELE, LTI, and LREG since January 1, 2012, and through and

25 including the present date.

26 **RESPONSE TO REQUEST FOR PRODUCTION NO. 52**:

27    LeLe restates and incorporates by reference the Preliminary Statement and General

28 Objections set forth above.  LeLe further objects to this Request on the grounds that it is

premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the Request seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession,

custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

## REQUEST FOR PRODUCTION NO. 53:

DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible and intangible assets of any kind with a value in excess of $100,000 in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES possessed an ownership interest at any point after July 1, 2016.  "Identify" in this request means to provide the description and location for each tangible and intangible asset, the nature and size of the interest in that asset (e.g. a 50% equity interest, a joint owner in common), and the last known market value of the asset.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 53:

LeLe restates and incorporates by reference the Preliminary Statement and General

Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the Request seeks the documents and communications of

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.    LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 54**:

DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or liabilities of any kind with a value in excess of $100,000 owed by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at any point after July 1, 2016. "Identify" in 4th is request means to provide the type of liability, the amount currently owed, the PERSON to whom the liability is owed and that PERSON' s address and telephone number.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54**:

LeLe restates and incorporates by reference the Preliminary Statement and General

Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the Request seeks the documents and communications of

third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.  LeLe objects to producing any privileged communications.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 55**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO plans or efforts by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES to sell or transfer ANY ownership interest in tangible and intangible assets of any kind that it possessed after July 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

1  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

2  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

3  pending Motion to Dismiss for insufficient service of process and lack of personal

4  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

5  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

6  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

7  In addition to being premature, the Requests directed at LeLe and the other individuals

8  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

9  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

10  Request on the grounds that it seeks the documents and communications of third parties or

11  documents and communications which are not in LeLe's possession, custody or control.

12      Furthermore, Vizio's Requests are premature because they pertain to issues that

13  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

14  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

15  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

16  the Merger Agreement including its various theories of fraud related to that alleged

17  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

18  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

19  Thus, nothing about the negotiations regarding the Merger Agreement, including the

20  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

21  the termination of the Merger Agreement has any relevance, and discovery should be

22  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

23  rights, including the right to amend and supplement its Responses and Objections to

24  Vizio's Requests, should it become necessary and appropriate to do so.

25      LeLe objects that this Request is compound and is overbroad as to time.

26      LeLe further objects that the Request seeks the documents and communications of

27  third parties or documents and communications which are not in LeLe's possession,

28  custody or control.  Furthermore, this Request, which seeks discovery from individuals

and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.  LeLe further objects to logging all privileged and work product documents created after this lawsuit was filed as unduly burdensome and disproportionate to the needs of the case.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 56**:

The Master Agreement executed in or after December 2016 among LREG, the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS RELATING TO property owned by LREG in Santa Clara, California and ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master Agreement or to ANY transaction that occurred pursuant to the terms of the Master Agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

"premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications relating to any transfers of equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine.

1   LeLe objects to producing any privileged communications.

2   **REQUEST FOR PRODUCTION NO. 57**:

3          ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY

4   transfers of equity interests in LREG to the Genzon Group or to ANY PERSON other than

5   LeECO, GLOBAL, LELE, JIA, or LTI after July 1, 2016, INCLUDING agreements,

6   emails, records of all payments made, and stock certificates or other documents reflecting

7   the transfer of any interest.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 57**:

9          LeLe restates and incorporates by reference the Preliminary Statement and General

10  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

11  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

12  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

13  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

14  pending Motion to Dismiss for insufficient service of process and lack of personal

15  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

16  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

17  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

18  In addition to being premature, the Requests directed at LeLe and the other individuals

19  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

20  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

21  Request on the grounds that it seeks the documents and communications of third parties or

22  documents and communications which are not in LeLe's possession, custody or control.

23         Furthermore, Vizio's Requests are premature because they pertain to issues that

24  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

25  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

26  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

27  the Merger Agreement including its various theories of fraud related to that alleged

28  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that this Request is compound and overbroad, particularly in its request for "Any and All Documents or Communications relating to any transfers of equity interests." Moreover, LeEco Real Estate Group LLC is not a party to this action.

LeLe further objects that this Request appears to seek documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 58**:

DOCUMENTS OR COMMUNICATIONS sufficient to identify all financial accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES was listed as an owner of the account at any point in 2017.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals

and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case. Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined). LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach. Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement. LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe objects that this Request is compound and is overbroad as to time.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed. The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV. Moreover,

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects to the extent that this Request seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.

LeLe objects that the Request appears calculated merely to harass and is vague, ambiguous, unduly burdensome, disproportional to the needs of the case, compound and overbroad.

**REQUEST FOR PRODUCTION NO. 59**:

The letter or memo by JIA issued in or about November 2016 RELATING TO financing issues being experienced by the global LeEco businesses and announcing that JIA would reduce his own income to one yuan.  This letter was referenced in an article by Bloomberg News, which article can be found at https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-confesses-to-cash-crunch-at-leeco.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59**:

LeLe restates and incorporates by reference the Preliminary Statement and General Objections set forth above.  LeLe further objects to this Request on the grounds that it is premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are "premature" because they would be rendered irrelevant were the Court to grant LeLe's pending Motion to Dismiss for insufficient service of process and lack of personal jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action. In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

1  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

2  Request on the grounds that it seeks the documents and communications of third parties or

3  documents and communications which are not in LeLe's possession, custody or control.

4          Furthermore, Vizio's Requests are premature because they pertain to issues that

5  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

6  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

7  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

8  the Merger Agreement including its various theories of fraud related to that alleged

9  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

10  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

11  Thus, nothing about the negotiations regarding the Merger Agreement, including the

12  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

13  the termination of the Merger Agreement has any relevance, and discovery should be

14  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

15  rights, including the right to amend and supplement its Responses and Objections to

16  Vizio's Requests, should it become necessary and appropriate to do so.

17          LeLe further objects that the Request seeks the documents and communications of

18  third parties or documents and communications which are not in LeLe's possession,

19  custody or control.  Furthermore, this Request, which seeks discovery from individuals

20  and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears

21  calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs

22  of the case.  Particularly if the case is limited to a breach of the Framework Agreement,

23  the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40

24  million and another $10 million in escrow that is disputed.  The remaining dispute

25  concerns LeEco and Vizio's obligations to each other in the context of the proposed China

26  JV.  Moreover, Yueting Jia has not been served with the Summons and FAC.

27          LeLe further objects that this Request to the extent that is seeks documents and

28  communications protected by the attorney-client privilege and work product doctrine.

1   LeLe objects to producing any privileged communications.

2   **REQUEST TOR PRODUCTION NO. 60**:

3          ANY and ALL orders issued after January 1, 2016 by ANY court, governmental

4   entity, or administrative body that has the effect of seizing, or restricting the disposition

5   of, ANY assets owned by LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

6   AFFILIATES.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 60**:

8          LeLe restates and incorporates by reference the Preliminary Statement and General

9   Objections set forth above.  LeLe further objects to this Request on the grounds that it is

10  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

11  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

12  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

13  pending Motion to Dismiss for insufficient service of process and lack of personal

14  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

15  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

16  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

17  In addition to being premature, the Requests directed at LeLe and the other individuals

18  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

19  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

20  Request on the grounds that it seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or control.

22         Furthermore, Vizio's Requests are premature because they pertain to issues that

23  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

24  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

25  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

26  the Merger Agreement including its various theories of fraud related to that alleged

27  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

28  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request to the extent that is seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 61:**

DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal actions or litigation against LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES filed or pending in the United States at any point after January 1, 2016. "Identify" in this request means to identify the court or administrative body in which the action is pending, the name of the action, and the case number(s) of that action or actions.

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 61**:

2      LeLe restates and incorporates by reference the Preliminary Statement and General

3  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

4  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

5  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

6  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

7  pending Motion to Dismiss for insufficient service of process and lack of personal

8  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

9  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

10  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

11  In addition to being premature, the Requests directed at LeLe and the other individuals

12  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

13  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

14  Request on the grounds that it seeks the documents and communications of third parties or

15  documents and communications which are not in LeLe's possession, custody or control.

16      Furthermore, Vizio's Requests are premature because they pertain to issues that

17  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

18  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

19  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

20  the Merger Agreement including its various theories of fraud related to that alleged

21  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

22  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

23  Thus, nothing about the negotiations regarding the Merger Agreement, including the

24  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

25  the termination of the Merger Agreement has any relevance, and discovery should be

26  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

27  rights, including the right to amend and supplement its Responses and Objections to

28  Vizio's Requests, should it become necessary and appropriate to do so.

1   LeLe further objects that the definition of "Affiliates" is overbroad, vague and

2   ambiguous and seeks the documents and communications of third parties or documents

3   and communications which are not in LeLe's possession, custody or control.

4   Furthermore, this Request, which seeks discovery from individuals and entities

5   ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

6   to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

7   Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

8   limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

9   another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

10  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

11  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

12  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

13  not parties to this action.

14  LeLe LeLe further objects that this Request to the extent that is seeks documents

15  and communications protected by the attorney-client privilege and work product doctrine.

16  LeLe objects to producing any privileged communications.

17  **REQUEST FOR PRODUCTION NO. 62**:

18  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY

19  actual or anticipated inability by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

20  AFFILIATES to make payments that were or are due and owing at any point after

21  January 1, 2016.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 62**:

23  LeLe restates and incorporates by reference the Preliminary Statement and General

24  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

25  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

26  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

27  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

28  pending Motion to Dismiss for insufficient service of process and lack of personal

jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this action nor is LeLe alleged to have made any statement to Vizio or have had any contacts with California whatsoever.  Furthermore, LeLe was never properly served in this action.  In addition to being premature, the Requests directed at LeLe and the other individuals and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad, irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this Request on the grounds that it seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.  Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control.  Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case.  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

not parties to this action.

LeLe LeLe further objects that this Request to the extent that is seeks documents

and communications protected by the attorney-client privilege and work product doctrine.

LeLe objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 63**:

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

Yueting Jia's resignation in July 2017 as Chairman of ANY of the global LeEco

businesses, INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi Holding

Co., Ltd. (Beijing) and/or any of their AFFILIATES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63**:

LeLe restates and incorporates by reference the Preliminary Statement and General

Objections set forth above.  LeLe further objects to this Request on the grounds that it is

premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

"premature" because they would be rendered irrelevant were the Court to grant LeLe's

pending Motion to Dismiss for insufficient service of process and lack of personal

jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

with California whatsoever.  Furthermore, LeLe was never properly served in this action.

In addition to being premature, the Requests directed at LeLe and the other individuals

and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

Request on the grounds that it seeks the documents and communications of third parties or

documents and communications which are not in LeLe's possession, custody or control.

Furthermore, Vizio's Requests are premature because they pertain to issues that would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's pending MTD would eliminate Vizio's second through sixth causes of action for breach of the Merger Agreement including its various theories of fraud related to that alleged breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving. Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request to the extent that is seeks documents and

1  communications protected by the attorney-client privilege and work product doctrine.

2  LeLe objects to producing any privileged communications.

3  **REQUEST FOR PRODUCTION NO. 64**:

4  ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO the sale,

5  transfer, dissolution, winding up, or liquidation of LELE, GLOBAL, LeECO, LTI, LREG

6  or ANY of their AFFILIATES.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 64**:

8  LeLe restates and incorporates by reference the Preliminary Statement and General

9  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

10  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

11  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

12  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

13  pending Motion to Dismiss for insufficient service of process and lack of personal

14  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

15  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

16  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

17  In addition to being premature, the Requests directed at LeLe and the other individuals

18  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

19  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

20  Request on the grounds that it seeks the documents and communications of third parties or

21  documents and communications which are not in LeLe's possession, custody or control.

22  Furthermore, Vizio's Requests are premature because they pertain to issues that

23  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

24  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

25  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

26  the Merger Agreement including its various theories of fraud related to that alleged

27  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

28  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION
LA 133493446v6

Thus, nothing about the negotiations regarding the Merger Agreement, including the negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or the termination of the Merger Agreement has any relevance, and discovery should be limited to whether there was a breach of the Framework Agreement.  LeLe reserves all rights, including the right to amend and supplement its Responses and Objections to Vizio's Requests, should it become necessary and appropriate to do so.

LeLe further objects that the definition of "Affiliates" is overbroad, vague and ambiguous and seeks the documents and communications of third parties or documents and communications which are not in LeLe's possession, custody or control. Furthermore, this Request, which seeks discovery from individuals and entities ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely to harass and is overbroad, irrelevant, and not proportional to the needs of the case. Particularly if the case is limited to a breach of the Framework Agreement, the dispute is limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco and Vizio's obligations to each other in the context of the proposed China JV.  Moreover, LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are not parties to this action.

LeLe further objects that this Request to the extent that is seeks documents and communications protected by the attorney-client privilege and work product doctrine. LeLe objects to producing any privileged communications.

**REQUEST FOR PRODUCTION NO. 65**:

ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO plans, discussions, strategies or efforts by LELE, GLOBAL, LeECO, LTI, LREG or ANY of their AFFILIATES to (a) provide notice to, protect or otherwise make arrangements or accommodations for or with their creditors; (b) assign, assume, distribute or transfer any stock, membership interests, actual assets, actual liabilities, contractual obligations,

1  contingent liabilities, contingent assets, or employees of LELE, GLOBAL, LeECO, LTI,

2  LREG or their AFFILIATES, or (c) to indemnify, hold harmless or defend the obligations

3  of any PERSON.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 65**:

5        LeLe restates and incorporates by reference the Preliminary Statement and General

6  Objections set forth above.  LeLe further objects to this Request on the grounds that it is

7  premature, overbroad, irrelevant, and not proportional to the needs of the case.  Vizio's

8  Requests (identical to, and duplicative of, those propounded on LeEco V. Ltd.) are

9  "premature" because they would be rendered irrelevant were the Court to grant LeLe's

10  pending Motion to Dismiss for insufficient service of process and lack of personal

11  jurisdiction ("MTD").   LeLe is not a party to the contracts with Vizio that give rise to this

12  action nor is LeLe alleged to have made any statement to Vizio or have had any contacts

13  with California whatsoever.  Furthermore, LeLe was never properly served in this action.

14  In addition to being premature, the Requests directed at LeLe and the other individuals

15  and entities ("Unrelated Third Parties") are calculated merely to harass and are overbroad,

16  irrelevant, and not proportional to the needs of the case.  Moreover, LeLe objects to this

17  Request on the grounds that it seeks the documents and communications of third parties or

18  documents and communications which are not in LeLe's possession, custody or control.

19        Furthermore, Vizio's Requests are premature because they pertain to issues that

20  would be rendered irrelevant were the Court to grant LeEco's pending MTD Vizio's

21  second through sixth causes of action in the FAC (in which LeLe joined).  LeEco's

22  pending MTD would eliminate Vizio's second through sixth causes of action for breach of

23  the Merger Agreement including its various theories of fraud related to that alleged

24  breach.  Vizio gave a release of all such claims to LeEco in the Framework Agreement

25  upon receipt of $40 million ("Released Claims"), which Vizio acknowledges receiving.

26  Thus, nothing about the negotiations regarding the Merger Agreement, including the

27  negotiation or entry into the Merger Agreement, any breach of the Merger Agreement, or

28  the termination of the Merger Agreement has any relevance, and discovery should be

1  limited to whether there was a breach of the Framework Agreement.  LeLe reserves all

2  rights, including the right to amend and supplement its Responses and Objections to

3  Vizio's Requests, should it become necessary and appropriate to do so.

4      LeLe further objects that the definition of "Affiliates" is overbroad, vague and

5  ambiguous and seeks the documents and communications of third parties or documents

6  and communications which are not in LeLe's possession, custody or control.

7  Furthermore, this Request, which seeks discovery from individuals and entities

8  ("Unrelated Third Parties") supposedly "affiliated" with LeLe appears calculated merely

9  to harass and is overbroad, irrelevant, and not proportional to the needs of the case.

10  Particularly if the case is limited to a breach of the Framework Agreement, the dispute is

11  limited to LeEco's (not the Unrelated Third Parties) payment to Vizio of $40 million and

12  another $10 million in escrow that is disputed.  The remaining dispute concerns LeEco

13  and Vizio's obligations to each other in the context of the proposed China JV.  Moreover,

14  LeEco Global Group Ltd., Lele Holding Ltd. and Yueting Jia have not been served with

15  the Summons and FAC, and LeTechnology, Inc. and LeEco Real Estate Group LLC are

16  not parties to this action.

17      LeLe further objects that this Request to the extent that is seeks documents and

18  communications protected by the attorney-client privilege and work product doctrine.

19  LeLe objects to producing any privileged communications.

20

21

22  DATED:  April 11, 2018       GREENBERG TRAURIG, LLP

23

24                 By _____

25                    Jeff K. Joyner
                    Daniel Tyukody

26                    Attorneys for Defendant
                    LeECO V. LTD.

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, 19th Floor, Los Angeles, CA 90067.

On the date given below, I served the **DEFENDANT LELE HOLDING LTD.'S RESPONSES TO VIZIO, INC.'S REQUESTS FOR PRODUCTION** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

Robert M. Waxman                                    ***Attorneys for Plaintiff Vizio, Inc.***
David N. Tarlow
Jason L. Haas
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
Tel:  310-273-6333/Fax: 310-859-2325
rwaxman@ecjlaw.com
dtarlow@ecjlaw.com
jhaas@ecjlaw.com

☒ **(BY FIRST CLASS MAIL)**
   I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service.  The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐ **(BY OVERNIGHT DELIVERY)**
   I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons above.  I placed the envelope or package for collection and

☐ **(BY PERSONAL SERVICE)**
   I caused such envelope to be delivered by hand to the offices listed above.

☒ **(FEDERAL)**     I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 11, 2018, at Los Angeles, California.

**Delilah A. Phiefer**

**PROOF OF SERVICE**

LA 133132130v1

# EXHIBIT E

**Safari, Attashin (Assoc-LA-LT)**

| | |
|---|---|
| **From:** | David Tarlow <dtarlow@ecjlaw.com> |
| **Sent:** | Monday, August 13, 2018 3:11 PM |
| **To:** | Joyner, Jeff K. (Shld-LA-IP-Tech) |
| **Cc:** | Robert Waxman; Srour, Alana C. (Assoc-LA-LT); Tyukody, Daniel J. (Shld-LA-LT); Jason Haas; Safari, Attashin (Assoc-LA-LT) |
| **Subject:** | Vizio v. LeEco- Meet and Confer Follow Up |

Mr. Joyner:

At our meet and confer last week, you and your team had promised to provide us with adequate authority to support of your position that the 5 year look back period for which Plaintiff requested alter ego discovery in its RFPs was somehow overbroad.  The purpose of providing us with such authority was an attempt to limit the issues which are to be discussed with the Magistrate Judge tomorrow.  Needless to say, it is now nearly a week later and we have not received any authority from you to support your assertion that a 5 year look back period is overbroad.  In fact, the case law which I have found indicates that it is entirely appropriate to look back to the formation of the company when determining alter ego liability.  See *Stowers v. Wells Fargo Bank, N.A.*, 2014 WL 1245070 * 7 (N.D. Cal.).  ("Generally, the corporate veil will only be pierced where the plaintiff can show that the company was intentionally set up to avoid liability or was intentionally undercapitalized when formed".)  *See Sea-Land, Inc. v. Petter Source*, 993 F.2d 1309, 1311-12 (7th Cir.).  If you contend that we are wrong on the law, you need to let us know at once.

Further, I am going to arrange for a conference call with the Court.  Please let me know what time tomorrow one of you can be available to be on the call with the Court so we can dispose of these issues.

Thanks for your immediate attention to this email.

David

---

**David N. Tarlow, Esq.**
ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 9th Floor | Beverly Hills, CA 90212-2974
(310) 281-6372 *(t)* | (310) 859-2325 *(f)*
www.ecjlaw.com | dtarlow@ecjlaw.com | About me

---

The information contained herein is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately.

# EXHIBIT F



Jeff Joyner
Tel 310.586.3877
Fax 310.586.7800
joynerj@gtlaw.com

August 13, 2018

**VIA EMAIL**

**Ervin Cohen & Jessup LLP**
Robert Waxman, Esq.
David N. Tarlow, Esq.
9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90210-2974

Re:     *Vizio, Inc. v. LeEco V. Ltd., Case No.: 17-CV-1175*

Dear Messrs. Waxman and Tarlow:

        This letter follows our meeting on August 7, 2018 (the "Meeting") to further meet and confer regarding the First Set of Requests for Production of Documents (the "Requests") that Plaintiff Vizio, Inc. ("Vizio") has propounded on LeEco V. Ltd. ("LeEco") and LeLe Holding, Ltd. ("LeLe") (collectively "Responding Defendants") in the above-referenced matter.  During our Meeting and pursuant to the Magistrate's Order dated July 30, 2018, Vizio agreed that Responding Defendants would send a letter to you today explaining why the Requests for documents related to alter ego allegations are improper.

        In this regard, the following memorializes Responding Defendants' positions that we asserted at the Meeting that Vizio is not entitled to seek certain discovery because the Limited Guarantee entered into between Vizio and Le Technology, Inc. prevents Vizio from doing so.  This letter further sets out that, even if Vizio was not precluded from seeking such discovery (which it is), the Requests at issue improperly seek documents (1) of third-parties, (2) not in Responding Defendants' possession, custody or control, (3) in violation of privacy laws, and (4) outside the time frame that is appropriate for such requests.  Finally, this letter sets out the deficiencies in Vizio's responses to LeEco's requests for admissions ("Vizio's RFA Responses") and requests for production of documents (Vizio's RFP Responses).

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN¬
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON°
LOS ANGELES
MEXICO CITY⁺
MIAMI
MILAN**
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SEOUL∞
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TOKYO¤
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

¬OPERATES AS
   GREENBERG TRAURIG GERMANY, LLP
° OPERATES AS A
   SEPARATE UK REGISTERED LEGAL ENTITY
⁺ OPERATES AS
   GREENBERG TRAURIG, S.C.
∞ STRATEGIC ALLIANCE
^ OPERATES AS
   GREENBERG TRAURIG LLP
   FOREIGN LEGAL CONSULTANT OFFICE
* A BRANCH OF
   GREENBERG TRAURIG, P.A.,
   FLORIDA, USA
¤ OPERATES AS
   GT TOKYO  HORITSU JIMUSHO
~ OPERATES AS
   GREENBERG TRAURIG GRZESIAK SPKE.

*LA 133774881v7*

August 13, 2018
Page 2

### A.    The Limited Guarantee Precludes Vizio From Seeking Alter Ego Discovery Concerning Non-Recourse Parties.

You stated at the Meeting that Vizio's discovery related to alter ego is limited to Vizio's claim for breach of the Framework Agreement.[1]  However, Vizio's alter ego discovery in reality seeks to reap all of the benefits of the Merger Agreement[2], without accepting any of its burdens.  Requests Nos. 36 through 62 (the "Alter Ego Requests") pertain to the claims and legal theories that Vizio expressly agreed to forego when executing the Limited Guarantee.  Thus, insofar as the Requests seek discovery from the Non-Recourse Parties under the Limited Guarantee, the Alter Ego Requests are precluded.

Pursuant to the Limited Guarantee, which was integral to the Merger Agreement, Vizio agreed not to pursue LeLe, Yueting Jia ("Mr. Jia"), LeEco Global Group Ltd. ("Global Group"), and their "Affiliates" for the $50,000,000 Buyer Termination Fee Remainder.  (*See* Exhibit H to the Merger Agreement.)  Both Mr. Jia and LeLe are Non-Recourse Parties, as defined in Section 13 of the Limited Guarantee, under which Vizio obligated itself that "[n]otwithstanding anything that may be expressed or implied in this Guarantee *or any document or instrument delivered concurrently herewith* [*i.e.*, the Merger Agreement], by its acceptance of the benefits of this Guarantee, the Company acknowledges and agrees that it has no right of recovery against [a broad range of Non-Recourse Parties, including "Affiliates"] *through the Buyer or otherwise*, whether *by or through attempted piercing of the corporate veil.*"  The Limited Guarantee continues, "[t]he Company . . . acknowledges and agrees that recourse against the Guarantor . . . shall be the sole and exclusive remedy of the Company . . . in respect of *any liabilities* or obligations arising under, or in connection with, the *Merger Agreement … including by piercing of the corporate veil by or through a claim by or on behalf of the Buyer.*"

So clearly, as to anything connected with the Merger Agreement, neither Mr. Jia nor LeLe are proper parties.  Vizio acknowledged this by naming only LeEco in its fifth cause of action for the breach of the Merger Agreement.  You further committed to this position by your statements, at our meet and confer on August 7, 2018, that Vizio was only pursuing alter ego liability for breach of the Framework Agreement, not the Merger Agreement.  Yet, the damages that Vizio seeks—supposedly pursuant to the Framework Agreement—consist of the damages available under the Merger Agreement.  *See* SAC,¶ 64 (alleging "reliance and/or lost opportunity damages in the sum of $10,000,000 (i.e., the remaining of the Buyer Termination Fee Deposit and the $50,000,000 Buyer Termination Fee Remainder)" in Vizio's claim for breach of the Framework Agreement); *see also* ¶¶ 77 (fraud underlying the Framework Agreement), 93 (negligent misrepresentation under the Framework Agreement), 106 (promissory estoppel).  Vizio's theory is that it is supposedly allowed to pursue its contractual remedies under the

---

[1] The "Framework Agreement" refers to the Framework, Termination and Mutual General Release Agreement entered into as of April 5, 2015 among LeEco and Vizio.

[2] The "Merger Agreement" refers to the Agreement and Plan of Merger dated July 6, 2016 between LeEco and Vizio.

August 13, 2018
Page 3

Merger Agreement, through the Framework Agreement, without having to be bound by the other terms in the Merger Agreement, namely the limitations on who it can sue pursuant to the Limited Guarantee. This cannot be, and is not, the law.

Vizio cannot argue that it is entitled to the contractual benefits of the Merger Agreement, without also acknowledging the Merger Agreement's contractual proscription against bringing claims (and discovery related to those claims) against Mr. Jia, LeLe, and others defined as Non-Recourse Parties in the Limited Guarantee.  Put another way, Vizio may not do indirectly what it is clearly proscribed from doing directly.  Thus, the Alter Ego Requests are improper insofar as they seek discovery related to Non-Recourse Parties that Vizio released under the Limited Guarantee.

**B.      Vizio Cannot Demand Discovery Concerning Third-Parties That Are Not Alleged Alter Egos Of Responding Defendants.**

The Alter Ego Requests are irrelevant, overbroad, unduly burdensome, and in violation of Vizio's contractual obligations insofar as they demand discovery relating to "Affiliates" against which Vizio makes no alter ego allegations in the operative Second Amended Complaint ("SAC") and agreed not to sue in the Limited Guarantee.  *See* FAC, ¶¶ 56-57.  This defect affects Requests Nos. 36-39, 43-49, 51-54, 58 & 60-65.

The Alter Ego Requests broadly define the term "Affiliates" to mean any entity in which the Person referenced in the Request owns at least a 20% interest.  This definition not only sweeps a vast number of entities with no connection to this case into Plaintiff's discovery, but violates Vizio's obligation not to sue Non-Recourse Parties.  By way of example, if this definition were applied, LeLe and LeEco would be required to produce documents of Non-Recourse Parties related to *all contracts of any kind* (RFP 43), *all financial statements* (RFP 51), *all assets* in excess of $100,000 (RFP 53), *all liabilities* in excess of $100,000 (RFP 54), *any monies transferred* (RFP 47), *all loan agreements* (RFP 49), all documents related to *the capitalization* of any of these companies (RFP 50), *all corporate minutes*, board agendas and resolutions (RFPs 39-42), and the identities and *contact information* of *all employees* (RFP 45-46) for their Affiliates.  Given Vizio's agreement that it is limiting its alter ego allegations to the Framework Agreement, this discovery represents "not merely a 'fishing expedition,' but . . . an effort to 'drain the pond and collect the fish from the bottom.'"  *Amcast Indus. Corp. v. Detrex Corp*., 138 F.R.D. 115, 121 (N.D. Ind. 1991) (quoting *In re IBM Peripheral EDP Devices Anti–Trust Litigation,* 77 F.R.D. 39, 41–42 (N.D. Cal. 1977)).

**C.      The Requests Improperly Demand That Responding Defendants Produce Documents Outside Their Possession, Custody, and Control.**

The Alter Ego Requests and Requests Nos. 7, 9-10, 12, 14-15, 20, 29, and 31-33 are improper and exceed the scope of the Federal Rules of Civil Procedure insofar as they demand documents outside LeLe's and LeEco's possession, custody, or control.

GREENBERG TRAURIG, LLP   ▪   Attorneys at Law   ▪   www.gtlaw.com

August 13, 2018
Page 4

Under the Federal Rules of Civil Procedure, Rule 34, documents are within a discovery target's control if the target has "the legal right to obtain the documents on demand." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("It is not enough that a party may have a practical ability to obtain the requested documents from an affiliated organization, because the other entity could legally—and without breaching any contract—continue to refuse to turn over such documents.").  "A party seeking production of documents bears the burden of establishing the opposing party's control over those documents."  *Micron Tech., Inc. v. Tessera, Inc.*, 2006 WL 1646133, *1 (N.D. Cal. Jun. 4, 2006).

Affiliated corporate entities—including subsidiaries, sister companies, and parent companies—do not have control over each other's documents absent a contractual or statutory right.  *See e.g., Ehrlich v. BMW of North America, LLC*, 2011 WL 3489105, *1 (C.D. Cal. May 2, 2011) ("Plaintiff has not established that Defendant BMW NA has legal control over documents in BMW AG's files. BMW NA is owned by a company that is owned by BMW AG. Nothing about this relationship suggests that BMW NA has the power to order BMW AG to turn over documents to BMW NA. Nor has Plaintiff presented any evidence that BMW AG is under a contractual obligation to turn over documents requested by BMW NA"); *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, 2006 WL 3742244, at *3 (N.D. Cal. Dec. 19, 2006) (denying motion to compel documents in sister corporation's possession where plaintiff showed the entities were "closely affiliated; that employees of one report to the other, that the companies are involved in each other's budget decisions, and do in fact share a great deal of information" because "[t]hese facts, however, even if wholly true, are insufficient to establish that MDL Inc. has the legal right to obtain documents in possession of MDL GmbH on demand."); *See Micron Tech., Inc.,* 2006 WL 1646133 at *2 (denying motion to compel party SPIL to produce documents under the control of non-party SUI even though "SUI is 100% owned [indirectly] by SPIL, ... SUI would in the ordinary course of business have access to the documents," "SPIL created SUI to engage as SPIL's sales agent in North America," and "SUI and SPIL have overlapping management teams.").

Here, Vizio's definition of "Affiliates" includes numerous parent, sister, and subsidiary entities from which LeLe and LeEco do not have the legal right to obtain documents on demand.  Additionally, Vizio has failed to meet its burden of showing otherwise.  This renders the Alter Ego Requests seeking Affiliates' documents improper under Rule 34.

**D.      The Alter Ego Requests Must Be Narrowed Insofar As They Seek Documents To Support Vizio's Alter Ego Allegations Reaching Back To 2012.**

In light of Vizio's position that the alter ego claims are limited to the Framework Agreement, the Alter Ego Requests are irrelevant and overbroad as to time insofar as they demand documents created prior to Vizio and LeEco entering into the Framework Agreement.  If Vizio's position is accepted, the discovery timeframe would begin no earlier than November of 2016 when the parties began negotiating the Framework Agreement.

*LA 133774881v7*

August 13, 2018
Page 5

Courts routinely limit discovery related to alter ego theories to the time frame that is directly relevant to the claim that includes alter ego allegations. *See e.g. Del Campo v. Am. Corrective Counseling Servs, Inc.*, 2008 WL 4858502, *1-2 (N.D. Cal. Nov. 10, 2008) (reducing the scope of plaintiff's discovery to 2001 to 2004, rather than the demanded time frame of 1997 to 2008, because the reduced scope represented the period that defendants' alter ego corporations allegedly were operating a check diversion program in violation of the FDCPA); *Benchmark Design, Inc. v. BDC, Inc.*, No. CIV. 88-1007-FR, 1989 WL 81618, at *2 (D. Or. July 5, 1989) (limiting discovery of defendants' potentially co-owned assets to the four-year period relevant to plaintiff's alter ego allegations).

The cases you have provided to us in your email of this afternoon and Vizio's portion of a recent joint stipulation are inapposite because they do not concern the permissible scope of alter ego discovery. *See U.S. v. Jenkins*, 785 F.2d 1387, 1396-97 (9th Cir. 1986) (ruling that evidence of criminal defendant's prior bad acts were probative "other-acts" evidence under FRE 404(b) in upholding fraud conviction involving no alter ego allegations); *U.S. v. Ruiz*, 665 Fed. Appx. 607, 610 (9th Cir. 2016) (ruling that trial court's admission of evidence of criminal defendant's prior bad acts was not an abuse of discretion); *Stowers v. Wells Fargo Bank, N.A.*, 2014 WL 1245070, *8 (N.D. Cal. Mar. 25, 2014) (deciding the sufficiency of alter ego allegations on a motion to dismiss); *Sea-Land, Inc. v. Petter Source,* 993 F.2d 1309, 1311-12 (7th Cir. 1993) (applying the Seventh Circuit's veil piercing test to determine sufficiency of evidence after trial).

Here, the Alter Ego Requests demand information beginning in 2012 even though the parties did not enter into the Framework Agreement until 2017.  Accordingly, Vizio must narrowly tailor its discovery to the specific time period when the parties negotiated and entered the Framework Agreement.

E.     **The Alter Ego Requests Improperly Demand Documents Protected Under Privacy Laws**

The Alter Ego Requests demand numerous categories of documents that are shielded from discovery because disclosure would invade privileges protected by the right to privacy, the tax return privilege, and Responding Defendants' and Affiliates' third-party employees' rights to maintain their privacy.

In this diversity action, state law governs privilege claims. Fed. R. Evid. 501.  In California, the right to privacy is an "inalienable right" secured by Article I, Section I of the California Constitution.  *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004 (2000).  It protects against the unwarranted, compelled disclosure of private or sensitive information regarding financial affairs and employment records.  *Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652, 656 (1975) (holding that a person has a reasonable expectation of privacy in financial records); *Board of Trustees v. Leach,* 258 Cal. App. 2d 281 (1968) ("[I]t is common knowledge that [employee personnel files] are among the most confidential and sensitive records

*LA 133774881v7*

August 13, 2018
Page 6

kept by a private or public employer, and their use remains effective only so long as the
confidence of the records, and the confidences of those who contribute to those records, are
maintained."). Factors to consider in balancing the right of a civil litigant to discover relevant
facts with a party's right to maintain reasonable privacy in sensitive affairs include "the purpose
of the information sought, the effect that disclosure will have on the affected persons and parties,
the nature of the objections urged by the party resisting disclosure and availability of alternative,
less intrusive means for obtaining the requested information." *Hooser*, 84 Cal. App. 4th at 1004.

In addition, the California Supreme Court has held that Revenue and Taxation Code
section 19282, which prohibits disclosure of tax returns, implicitly creates a privilege against the
disclosure of income tax returns.   *Webb v. Standard Oil Co.,* 49 Cal. 2d 509, 513 (1957). This
privilege against forced disclosure of tax returns has been reaffirmed in a variety of situations.
*See Sav-On Drugs v. Superior Court*, 15 Cal. 3d 1, 3, 6-7 (1975) (sales tax returns); *Crest
Catering Co. v. Superior Court*, 62 Cal. 2d 274 (1965) (employment tax returns); *Rifkind v.
Superior Court*, 123 Cal. App. 3d 1045, 1048-1049 (corporate income tax returns); *Brown v.
Superior Court,* 71 Cal. App. 3d 141 (1977) (W-2 forms); *Fortunato v. Sup. Court*, 114 Cal.
App. 4th 475, 482 (2003) (income tax returns). Further, Vizio raised the tax return privilege in
objecting to Responding Defendants' discovery.

Here, the Alter Ego Requests demand that LeLe and LeEco produce privileged
information and Vizio has not shown that the relevant factors favor production. This is
particularly true for the Non-Recourse Parties which Vizio cannot pursue claims against arising
out of the Merger Agreement.

**F.      Deficiencies In Vizio's Responses To LeEco's First Set of Requests For
Admissions And Requests For Production.**

We discussed during the Meeting that Vizio has not produced a single document in
response to LeEco's RFPs, and the following deficiencies in Vizio's RFA and RFP Responses.

**RFA No. 1**: RFA No. 1 states, "Admit that You drafted Section 1.1 of the Framework
Agreement." Vizio avoids answering this question by stating that, "the Framework
Agreement and the terms therein were drafted by Vizio and one or more of the
Defendants." That is in no way responsive to the question presented. RFA No. 1
specifically asks whether Section 1.1 was drafted by Vizio, which Defendants believe the
evidence will inevitably establish. There is a presumption under California law that when
the language of a contract is ambiguous, the ambiguity is interpreted against the drafter.
*S. California Reg'l Rail Auth. v. Hyundai Rotem Co.*, No. LACV1608042JAKJEMX,
2017 WL 2989178, at *8 (C.D. Cal. July 13, 2017). That fundamental principal is what
RFA No. 1 is directed towards, and is precisely what Vizio has blatantly refused to
answer. Vizio must amend its response to either admit or deny that it drafted Section 1.1
of the Framework Agreement.

*LA 133774881v7*

August 13, 2018
Page 7

**RFA No. 3:**  RFA No. 3 states, "Admit that, as of at least June 9, 2017 when You sent
the Demand for Immediate Payment to LeEco Global Group, You no longer had any
interest in entering into the China JV." There is a dispute between the parties as to
whether each party exercised good faith in connection with the obligation under Section
3.1 of the Framework Agreement that the Parties negotiate in good faith and use
reasonable efforts to form a joint venture in China. Vizio's "response" to this RFA is
specifically designed *not* to answer the question presented, and instead, merely consists
of arguments. It is well established that, "[i]n responding to a request for admission, a
party must either admit the matter, specifically deny it, or state in detail why the
answering party cannot truthfully admit or deny it." *Bretana v. Int'l Collection Corp.*, No.
C07-05934 JF (HRL), 2008 WL 4334710, at *2 (N.D. Cal. Sept. 22, 2008). Accordingly,
Vizio must amend its deficient response.

**RFP No. 10:**  RFP No. 10 seeks "All Documents and Communications concerning the
aftermath of the decision to terminate the Framework Agreement, including
communications between and among Vizio's Board, its management, its shareholders,
and the general public."  Vizio has refused to produce any documents responsive to RFP
No. 10. Discovering how Vizio was affected by the decision to terminate the Framework
Agreement is directly relevant to the claims at issue in this litigation, including
Defendants' defense to the alleged damages in this litigation. Accordingly, Vizio must
produce documents responsive to RFP No. 10.

If Vizio disagrees with any of the Responding Defendants' positions regarding Vizio's
Requests or LeEco's RFAs and RFPs, please let us know Vizio's position with respect to those
issues that remain in dispute.  If the parties are not able to resolve any such dispute by tomorrow,
please provide us with three dates and times you are available so that we can coordinate our
schedules and jointly submit three dates for a telephonic pre-discovery motion conference
pursuant to the Magistrate Judge's Order dated July 30, 2018.  We are available from August 15
to 21 and August 27 to 30.

Sincerely,

*/s/ Jeff Joyner*

Jeff Joyner

# EXHIBIT G

**Safari, Attashin (Assoc-LA-LT)**

| | |
|---|---|
| **From:** | David Tarlow <dtarlow@ecjlaw.com> |
| **Sent:** | Wednesday, August 15, 2018 12:42 PM |
| **To:** | Safari, Attashin (Assoc-LA-LT) |
| **Cc:** | Robert Waxman; Jason Haas; Srour, Alana C. (Assoc-LA-LT); Tyukody, Daniel J. (Shld-LA-LT); Fraser, Colin (Assoc-OC-LT); Cox, Johnice (Secy-LA-LT); Joyner, Jeff K. (Shld-LA-IP-Tech); Joe Dirkx; Teresa Castelli |
| **Subject:** | Re: Vizio v. LeEco- Meet and Confer Follow Up |

Ms. Safari:

You did not send your letter until 11:43 pm on 8/13 after I had gone to sleep.  I reviewed it yesterday, but I am in an all day mediation today.  I anticipate getting you a response to your letter by close of business tomorrow if possible, but if not, no later than Friday.  In the interim, we disagree with your positions and we are available to have a conference call with the Magistrate on Friday 8/17 after 1:30pm, on Monday 8/27 at anytime prior to 3pm, or on Tuesday 8/28 at anytime.

As you have stated that you are available 8/15-8/17 or 8/27 to 8/30, these proposed dates and times should work.  I will have my assistant call the court to schedule.

David

DAVID N. TARLOW, attorney at law
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, California 90067
Direct Dial: (310)281-6372
Fax: (310)859-2325

Sent from my iPhone.  Please excuse any typos or abbreviations.

On Aug 15, 2018, at 12:14 PM, "safaria@gtlaw.com" <safaria@gtlaw.com> wrote:

> Counsel:
>
> We did not receive a response to our letter of August 13, 2018. Please confirm whether there are any remaining disputes, as the parties are to jointly submit to the Courtroom Deputy 3 mutually agreeable dates and times for a telephonic pre-discovery motion conference with the Court.
>
> ---
> **From:** Safari, Attashin (Assoc-LA-LT)
> **Sent:** Monday, August 13, 2018 11:44 PM
> **To:** 'David Tarlow' <dtarlow@ecjlaw.com>; Robert Waxman <rwaxman@ecjlaw.com>; Jason Haas <jhaas@ecjlaw.com>
> **Cc:** Srour, Alana C. (Assoc-LA-LT) <sroura@gtlaw.com>; Tyukody, Daniel J. (Shld-LA-LT) <tyukodyd@gtlaw.com>; Fraser, Colin (Assoc-OC-LT) <frasercw@gtlaw.com>; Cox, Johnice (Secy-LA-LT) <coxj@gtlaw.com>; Joyner, Jeff K. (Shld-LA-IP-Tech) <joynerj@gtlaw.com>
> **Subject:** RE: Vizio v. LeEco- Meet and Confer Follow Up

1

Counsel:

Please see the attached letter.

**From:** David Tarlow [mailto:dtarlow@ecjlaw.com]
**Sent:** Monday, August 13, 2018 4:44 PM
**To:** Joyner, Jeff K. (Shld-LA-IP-Tech) <joynerj@gtlaw.com>
**Cc:** Robert Waxman <rwaxman@ecjlaw.com>; Srour, Alana C. (Assoc-LA-LT)
<sroura@gtlaw.com>; Tyukody, Daniel J. (Shld-LA-LT) <tyukodyd@gtlaw.com>; Jason
Haas <jhaas@ecjlaw.com>; Safari, Attashin (Assoc-LA-LT) <safaria@gtlaw.com>; Fraser,
Colin (Assoc-OC-LT) <frasercw@gtlaw.com>; Cox, Johnice (Secy-LA-LT)
<coxj@gtlaw.com>
**Subject:** RE: Vizio v. LeEco- Meet and Confer Follow Up

We look forward to your letter and 3 dates.

**David N. Tarlow, Esq.**

ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 9th Floor │ Beverly Hills, CA 90212-2974
(310) 281-6372 *(t)* │ (310) 859-2325 *(f)*
www.ecjlaw.com │ dtarlow@ecjlaw.com │ About me

The information contained herein is confidential and privileged attorney-client information or work
product intended only for the individual or entity to whom it is addressed. Any unauthorized use,
distribution or copying of this communication is strictly prohibited. If you have received this
communication in error, please notify me immediately.

**From:** joynerj@gtlaw.com [mailto:joynerj@gtlaw.com]
**Sent:** Monday, August 13, 2018 4:43 PM
**To:** David Tarlow
**Cc:** Robert Waxman; sroura@gtlaw.com; tyukodyd@gtlaw.com; Jason Haas;
safaria@gtlaw.com; frasercw@gtlaw.com; coxj@gtlaw.com
**Subject:** RE: Vizio v. LeEco- Meet and Confer Follow Up

Hi Dan,

During the meet-and-confer on August 7, 2018, Vizio and LeEco agreed that LeEco
would send a letter to you and your colleague Bob Waxman **today, August 13, 2018**
setting out why Vizio's requests related to finances and alter ego are improper.

With respect to the time frame covered by such requests, Bob stated during the April 7th
meeting that Vizio relies on the two cases citied in Vizio's portion of its recent joint
stipulation.  In your email of today, almost a week after the meet-and-confer,
you  provided us with two additional cases.  After we have reviewed the new cases, we
will include a discussion regarding the same in the letter we had been finalizing and
send it to you and Bob tonight.

2

In your email of today you suggest that any issues not resolved after Vizio has considered our letter will be discussed by the parties with the Magistrate Judge tomorrow.  To clarify, if a dispute remains tomorrow, the parties are required to "provide at least three mutually agreeable dates and times for a telephonic pre-discovery motion conference" with the Magistrate Judge.   So, there would not be a discussion with the Magistrate Judge tomorrow but, instead, the parties would jointly submit tomorrow three dates on which they are available for a telephonic conference.

Best, Jeff

**Jeff Joyner** |  v-Card + Bio
**Greenberg Traurig LLP | T: 310.586.3877 | F: 310.586.0577 | joynerj@gtlaw.com | WeChat ID: jjoyner | www.gtlaw.com**

**From:** David Tarlow [mailto:dtarlow@ecjlaw.com]
**Sent:** Monday, August 13, 2018 3:11 PM
**To:** Joyner, Jeff K. (Shld-LA-IP-Tech) <joynerj@gtlaw.com>
**Cc:** Robert Waxman <rwaxman@ecjlaw.com>; Srour, Alana C. (Assoc-LA-LT) <sroura@gtlaw.com>; Tyukody, Daniel J. (Shld-LA-LT) <tyukodyd@gtlaw.com>; Jason Haas <jhaas@ecjlaw.com>; Safari, Attashin (Assoc-LA-LT) <safaria@gtlaw.com>
**Subject:** Vizio v. LeEco- Meet and Confer Follow Up

Mr. Joyner:

At our meet and confer last week, you and your team had promised to provide us with adequate authority to support of your position that the 5 year look back period for which Plaintiff requested alter ego discovery in its RFPs was somehow overbroad.  The purpose of providing us with such authority was an attempt to limit the issues which are to be discussed with the Magistrate Judge tomorrow.  Needless to say, it is now nearly a week later and we have not received any authority from you to support your assertion that a 5 year look back period is overbroad.  In fact, the case law which I have found indicates that it is entirely appropriate to look back to the formation of the company when determining alter ego liability.  See *Stowers v. Wells Fargo Bank, N.A.*, 2014 WL 1245070 * 7 (N.D. Cal.).  ("Generally, the corporate veil will only be pierced where the plaintiff can show that the company was intentionally set up to avoid liability or was intentionally undercapitalized when formed".)  *See Sea-Land, Inc. v. Petter Source*, 993 F.2d 1309, 1311-12 (7th Cir.).  If you contend that we are wrong on the law, you need to let us know at once.

Further, I am going to arrange for a conference call with the Court.  Please let me know what time tomorrow one of you can be available to be on the call with the Court so we can dispose of these issues.

Thanks for your immediate attention to this email.

David

---

**David N. Tarlow, Esq.**
ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 9th Floor | Beverly Hills, CA 90212-2974
(310) 281-6372 *(t)* | (310) 859-2325 *(f)*
www.ecjlaw.com | dtarlow@ecjlaw.com | About me

The information contained herein is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately.

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate such information.

# EXHIBIT H

# ERVIN COHEN & JESSUP LLP

9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
dtarlow@ecjlaw.com
PH: 310.281.6372
FX: 310.859.2325
File 14676.8

August 24, 2018

**VIA E-MAIL AND U.S. MAIL**

Jeff Joyner, Esq.
Greenberg Traurig
1840 Century Park East, Suite 1900
Los Angeles, California 90067

Re:     **VIZIO, Inc. v. LeEco V. Ltd., Case No.: 17-CV-1175**

Dear Mr. Joyner:

I am in receipt of your letter dated August 13, 2018 that you sent shortly before midnight to further meet and confer regarding your client's untenable position with respect to both LeEco V. Ltd.'s ("LeEco") and LeLe Holding Ltd.'s ("LeLe") responses to Plaintiff's Requests for Production of Documents (Set One).

## A.     The Limited Guaranty Does Not Preclude VIZIO From Seeking Alter Ego Discovery.

First, you make the spurious argument that the "Limited Guarantee Precludes Vizio From Seeking Alter Ego Discovery Concerning Non-Recourse Parties." In support of your argument, you make the disingenuous statement that "[p]ursuant to the Limited Guarantee, which was integral to the Merger Agreement, Vizio agreed not to pursue LeLe, Yueting Jia, LeEco Global Group Ltd., and their Affiliates for the $50,000,000 Buyer Termination Fee Remainder." Your statement is disingenuous because, among other things, VIZIO is *not* seeking to impose alter ego liability against LeLe, Yueting Jia ("Jia"), LeEco Global Group Ltd., and their "Affiliates" for the $50,000,000 Buyer Termination Fee Remainder *under or in connection with the Merger Agreement*. Rather, VIZIO is pursuing LeLe, Jia, LeEco Global Group Ltd., and their "Affiliates" for alter ego liability in connection with the separate breach of the much-later Framework Agreement and the fraudulent conduct that gave rise to it.[1] Pointedly, the Claim for Breach of the Merger Agreement is neither asserted against any alter egos, nor does it even incorporate

---

[1] It is undisputed that the Framework Agreement did not exist at the time Merger Agreement was negotiated. Nor was it executed even close to that time. Simply stated, the Framework Agreement was not even contemplated when the Merger Agreement was negotiated and signed.

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 2

any alter ego allegations in the body of that cause of action.  (See Judge Carter's July 27, 2018 Order ("the Order"), Dkt 99, p. 4).

The fact that alter-ego liability has not been sought on the Claim for Breach of the Merger Agreement was not a coincidence.  That is because the so-called restrictive language in the Limited Guarantee is operative *only* with respect to "*liabilities or obligations arising under, or in connection with,* the Merger Agreement or the transactions *contemplated thereby.*"  (See, *e.g.,* Limited Guaranty ¶ 13).[2]  The Framework Agreement, which was not even on the radar screen when the Merger Agreement was negotiated and signed, is none of the above.  For the so-called restrictive language in the Limited Guarantee to go beyond what is written and encompass the much-later Framework Agreement, let alone the specific fraudulent conduct that gave rise to it, would be directly contrary to the public policy of California.  *Pergerine Pharmaceuticals, supra,* *15 ("The cases uniformly hold that limitation of liability clauses are ineffective with respect to claims for fraud and misrepresentation, regardless of whether the public interest is implicated.").  This rule applies "even where the clause amounts to a limitation on damages limitations as opposed to an outright exemption [because] 'contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated.'").  *Accord Health Net of California, Inc. v. Department of Health Services,* 113 Cal.App. 4th 224, 243, 247 (2003), *rev. den'd.* ("It is now settled – and in full accord with the language of [Civil Code § 1668] – that notwithstanding its different treatment of ordinary negligence, under Section 1668, 'a party [cannot] contract away liability for his fraudulent or intentional acts...regardless of whether the public interest is affected.")  In fact, as Judge Carter explained at p. 19 of the Order:  "While '[a] breach of contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach...'a party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to the contract.")

Second, you mischaracterize VIZIO's theory.  You describe this theory as being that "[VIZIO] is supposedly allowed to pursue its contractual remedies under the Merger Agreement, through the Framework Agreement...."  Wrong.  As the Order states on p. 15, "VIZIO alleges Defendants

---

[2] Interpreting the so-called restrictive language of the Limited Guarantee just as it is written - - to claims for breach made directly under, or in connection with the Merger Agreement itself, and the documents appended to it - - arguably comports with the public policy of California since "with respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy." *Peregrine Pharmaceuticals, Inc. v. Clinical Supplies,* 2014 WL 3791567 * 8 (C.D. Cal.) *See also, Cal. Civ. Code* § 1643, requiring that "a contract must receive such interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."  That is so even though "contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the drafting party."  (*Id.,* * 5).

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 3

made the $2BB Financial Wherewithal Representations" - *i.e.,* that LeLe Holding and Global
Group and various of their subsidiary or affiliated corporate entities, were financially healthy
and they had the financial wherewithal to complete a $2BB merger transaction with VIZIO - -
but that they "did not have the financial wherewithal to complete a $2BB merger with VIZIO"
and then later, made the repeated misrepresentations with respect to the Framework
Agreement that are identified on p. 16 of the Order to "induce VIZIO to jointly terminate the
Merger Agreement [and] induce it to enter the Framework Agreement, from which "it can be
inferred that the Framework Agreement was a subterfuge in order for Defendants to reduce
the $100MM liability from the termination of the Merger Agreement to the $40MM that was
disbursed to VIZIO". Specifically, the damages that VIZIO seeks are the "reliance and/or lost
opportunity charges in the sum of $60MM". (Order, p. 17). These damages result directly from
the breach of the Framework Agreement and the fraudulent conduct that gave rise to it; *i.e.,*
are not the pursuit of contractual remedies under the Merger Agreement through the
Framework Agreement.

Third, your clients' objections to the subject discovery make no mention of the wild notion that
some sort of bar under the earlier Limited Guarantee now exists as to alter-ego liability under
the much-later Framework Agreement and the specific fraudulent conduct that gave rise to it.
Instead, they simply repeat the mantra that Judge Carter has already rejected, *i.e.,* that "the
parties agreed to the Framework Agreement…which LeEco alleges had the effect of terminating
the Merger Agreement…." (Order, at 4). *See also,* your clients' Responses to each RFP
requesting documents related to alter-ego liability, Numbers 35 – 65. In fact, your clients took
this position under oath. (Dkt 26-1, Hsieh Dec., ¶ 14, lns 6 – 10). Needless to say, that position
is diametrically the opposite of your clients' new "claim" that the Limited Guarantee creates
some sort of bar to alter ego liability with respect to the much-later Framework Agreement and
the specific fraudulent conduct that gave rise to it. Stated differently, if the Merger was
effectively dead due to the Framework Agreement, as your clients' claimed, then the same
would necessarily be true for the Limited Guarantee. Your clients cannot have it both ways. In
any event, their failure to raise this "new" objection in a timely fashion is a waiver of that
specious claim. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.
1992) ("It is well settled that failure to object to discovery requests within the time required
constitutes a waiver of any objection.")

Finally, the Limited Guarantee was between VIZIO and Le Technology, Inc. The latter is not a
party to this lawsuit and your clients have no standing to raise the Limited Guarantee as some
sort of bar to alter ego liability as to the much-later Framework Agreement and the specific
fraudulent conduct that gave rise to it. This is particularly true here, where the Order
specifically makes alter ego liability a prime subject of the litigation (*See* pp. 28-30, 33 & 35). As
Judge Carter explained "[the facts] show a commingling of funds and a disregard of corporate

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 4

formalities between the two companies. Throughout the parent and subsidiary companies, there is a connection and intermingling between the employees, assets and office locations. Thus, VIZIO sufficiently establishes facts in support of the proposition that LeLe Holdings and LeEco are interconnected in ownership (through Jia) and through a unity of interest (through similarities in offices, employees, and intermingling of assets)." Indeed, that "because Lele Holding and LeEco are intertwined in ownership and by assets, it would be unjust to allow the parent company to escape liability when it was a player in enabling the alleged fraud of the subsidiary [such that] VIZIO has...made a plausible case for finding that Lele Holding is the alter-ego of LeEco." (Order, pp. 29-30). Pointedly, and "perhaps more significantly, the actions of LeEco and Jia, who plausibly are alter egos of Lele Holding, warrant sufficient activity in California to extend specific jurisdiction." (*Id.*, at 35).

In short, alter ego liability and discovery on that subject are part and parcel of this lawsuit. The fact that Judge Carter was well aware of the Limited Guaranty when the Order was made (p. 29), only serves to compel this conclusion.

**B.      VIZIO Is Entitled to The Production Of All Of The Relevant Documents.**

Your letter claims that the alter ego requests are irrelevant, overbroad, unduly burdensome and in violation of VIZIO's contractual obligation, which I take to mean the Limited Guarantee. This claim is specious.

First, for the reasons stated above, your reliance on the Limited Guarantee is misplaced. I will not address that issue again.

Second, the Court has already found that VIZIO has made a plausible case that LeLe Holding, LeEco Global Group and Jia are the alter egos of LeEco, such that they may be liable for the acts, liabilities and debts of LeEco. [Order, pp. 28-30, 33 & 35]. As such, VIZIO is plainly entitled to take discovery as to alter-ego issues to buttress the factual showing that is front and center in Judge Carter's Order.

The criteria to establish alter-ego liability is well established. Plaintiff is in entitled to the discovery requested to buttress the showing of alter-ego liability that it has already made. As Judge Carter wrote on p. 28 of the Order:

> "To establish a party as the alter ego of a corporation, the applicant must show '(1) that there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 5

follow.'" *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 597 (N.D. Cal. 2012)
*aff'd sub nom. Bank of Montreal v. Salyer*, 599 F. App'x 706 (9th Cir. 2015)
(quoting *Automotriz del Golfo de California v. Resnick*, 47 Cal. 2d 792, 796
(1957)); see also *United States v. Boyce*, 38 F. Supp. 3d 1135, 1154–55 (C.D. Cal.
2014), appeal dismissed (Nov. 13, 2014) (quoting *In re Schwarzkopf*, 626 F.3d
1032, 1038 (9th Cir. 2010)). Both factors are necessary for a Court to impose
alter ego liability. *Bank of Montreal*, 476 B.R. at 597."

Judge Carter then explained on the same page of the Order:

"In assessing the unity of interest prong, courts consider numerous factors,
including "inadequate capitalization, commingling of funds and other assets of
the two entities, the holding out by one entity that it is liable for the debts of the
other, identical equitable ownership in the two entities, use of the same offices
and employees, use of one as a mere conduit for the affairs of the other,
disregard of corporate formalities, lack of segregation of corporate records, and
identical directors and officers." *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99
Cal. App. 4th 228, 245 (2002) (citations omitted); *see also Bank of Montreal*, 476
B.R. at 597–98."

Judge Carter then observed on that same page of the Order that:

"No single factor is determinative, and instead a court must examine all the
circumstances to determine whether to apply the doctrine." *Virtualmagic Asia,
Inc.*, 99 Cal. App. 4th at 245. Further, "[c]ommon ownership alone is insufficient
to disregard the corporate form." *Stewart v. Screen Gems-EM*, 81 F. Supp. 3d
938, 961 (quoting *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014))
(internal quotation marks omitted)."

Accordingly, in order for VIZIO to meet its burden of proof as to the alter-ego liability, it must
be able to buttress its evidence of factors, such as: the common ownership of the entities,
inadequate capitalization of one or more of LeEco, LeEco Global Group, LeLe Holdings and their
affiliates, commingling of funds between individuals and companies, shuffling of funds between
individuals and companies, identical officers or directors, etc. These are exactly types of
documents that have been sought in Categories 35 - 65 of the RFPs. Accordingly, contracts,
financial statements, assets and liabilities, loan agreements, guarantees, transfers of monies,
lists of employees, officers, directors, attorneys, as well as corporate governance records clearly
must be produced. This is particularly true here, where the requested documents are plainly in
the possession , custody, or control of your clients.

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 6

Rule 26(b)(1) of the *Federal Rules of Civil Procedure* provides that parties may obtain discovery of any nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case…." This Rule also states that "[i]information within the scope of discovery need not be admissible in evidence to be discoverable. (Id.) Accordingly, "a party may request the production of any document within the scope of Rule 26(b)." *San Diego Unified Port Dist. v. National Union Fire Insurance Company*, 2017 WL 3877730*2 (S.D. Cal.).

It is axiomatic that all of the requested documents are in the possession, custody or control of your clients. First, it is undisputed that "Lele Holding and the other corporate defendants are all under the common ownership and control of Jia". Order, p. 27. Indeed, LeEco admitted this was the case in the filing that it made with the Committee on Foreign Investment in the United States vis-à-vis the Merger Agreement (Dkt 78, Wessel Dec., Ex 2, pp. 4, 17, 18 and Ex 5 ; *i.e.,* Jia owns 100% of Lele Holding, Lele Holding owns 100% of LeEco Global Group, Ltd., LeEco Global Group, Ltd., owns 100% of LeEco.[3] Accordingly, the rule in the Ninth Circuit is crystal clear where, as here, the RFPs were specifically directed to the ultimate corporate parent; *i.e.,* "[the parent] must produce documents possessed by a subsidiary that the parent…owns or wholly controls." *U.S. v. International Union of Petroleum & Indus. Wks.*, 870 F.2d 1450, 1452 (9th Cir. 1989).[4]

Second, the same rule also applies in reverse where, as here, the fraudulent misrepresentations were made by Jia and other top executives of the enterprise on his and their behalf, *e.g.,* the $2BB Financial Wherewithal Misrepresentations as well as the false representations that led to the Framework Agreement (Order, pp. 15-16. *See also,* Dkt 23-2, Wong Dec., ¶¶ 13 – 15 & Dkt 23-2, Wang Dec., ¶¶ 7 – 9), since the requisite control of documents "may [also] be established by the existence of a principal – agent relationship." *St. Jude Medical S.C., Inc. v. Janssen-Counotle*, 305 F.R.D. 630, 638-639 (D. Ore.) ("The fact-specific question presented here is whether documents and ESI held by Biotronik…sister company…their common parent…or another related…entity were within the effective control of Biotronik [the subsidiary]…St. Jude…has presented evidence that…Janssen negotiated with and received her job offer from Max Schaldach, the beneficial owner of the entire Biotronik Group….It is reasonable to infer

---

[3] The Order specifically references this governmental filing by LeEco in its discussion of the facts demonstrating alter-ego liability on p. 29.

[4] None of the three unpublished district cases that you cite stand for the proposition that "parent companies do not have control over [subsidiary] documents absent a contractual or statutory right." First, each such case involved document requests directed to subsidiary or sister corporations, not the corporate parent. *Ehrlich v. BMW of North America, LLC,* 2011 WL 3489105 (C.D. Cal) (subsidiary); *Micron Technology v. Tessera, Inc.,* 2006 WL 1646143 (N.D. Cal.) (subsidiary); *Beilstein-Institut Zur Forderung Der Chemischen,* 2006 WL 3742244 (N.D. Cal.) (sister corporation). Second, they cannot contravene the Ninth Circuit's holding in *International Union, supra,* that corporate control exists as a matter of law when the document request is directed to the corporate parent.

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 7

that the persons associated with Biotronik...European affiliates, including...Schaldach...who
negotiated [the] hiring...were acting as agents for Biotronik [which] is sufficient indication of
effective control to require the European affiliates of Biotronik...namely the Biotronik Group...to
conduct a reasonable and diligent search for documents...responsive to...subpoena served on
Biotronik....")[5]  This reasoning applies in spades here, where Judge Carter likewise described
"the *Lele Group*" on p. 34 of the Order.

In short, there is no foundation for the assertion that requested documents are somehow not
subject to your clients' possession, custody, or control.

**C.      A Look Back Period to 2012 For Alter Ego Documents Is Reasonable.**

In Plaintiff's alter-ego RFPs, VIZIO has largely requested documents going back to January 1,
2012.  A five-year look-back period is reasonable under the circumstances.  Pointedly, one of
the allegations made by VIZIO in this matter is that Jia made the $2BB Financial Wherewithal
Representations on his own behalf and for LeLe, LeEco Global Group Ltd. and various other
subsidiary or affiliated corporate entities (Order, p. 15).  A five-year look back at the financial
condition of LeEco, LeLe, and their parents, subsidiaries and sister companies is plainly required
to determine whether those representations were true or false when made.  *See U.S. v. Ruiz,*
665 F. Appx. 607, 610 (9th Cir. 2016).  (Court allowed evidence that Defendant failed to file tax
returns for a period of five years since it was probative as to intent, knowledge, lack of good
faith and absence of mistake in later tax fraud). *C.f., U.S. v. Jenkins*, 785 F2d 1387, 1395 (9th
Cir.), *cert. den'd*, 479 U.S. 889 (1986) ("The fact that Jenkins used fraudulent means to secure
conventional loans [in the past] is probative on issues of intent, knowledge, good faith and
absence of mistake in dealing with the [later] FHA transactions.") *Accord, Rocha v.
Metropolitan Life Ins. Co.*, 2005 WL 8156353 *2 (W.D. Tx) ("The basis of Rocha's action...is her
allegation Seguros Genesis acted as an alter ego, joint enterprise, or single business enterprise
of MLIC...The limited [6 year lookback before subject policy purchase]...is not overbroad since it
allows Rocha to seek documents pertinent to (1) Seguros Genesis' relationship to MLIC; (2)
MLIC's ownership interest in Seguros Genesis and other subsidiaries and affiliates; and (3) the
way in which the insurance policy was marketed to Rocha's sister.")  This is particularly true
here, where one alter-ego factor to be weighed by the Court is the capitalization or
undercapitalization of LeLe, Global Group, LeEco and their corporate affiliates, at inception and
thereafter.  Since Global Group and LeLe were both formed prior to December 2015 when the

---

[5] None of the three unpublished and earlier district court cases that you cited contravenes the holding of *St. Jude,
supra*.  Unlike *St. Jude*, and here, there were no enterprise wide misrepresentations made by the top of the chain
owners/executives acting for themselves and as agents for affiliated entities.  Nor did those courts find that a
plausible case of alter-ego liability already existed as Judge Carter has already ruled.

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 8

parties began to negotiate the merger, it cannot be reasonably be disputed that the look back period necessarily would have to extend beyond December 2015, for capitalization and other similar determinations (*e.g.*, transfer of funds, etc.) to be made in meaningful fashion.

The two cases which you cite for the proposition that a five (5) year look back period is somehow too long are *Del Campo v. Am Corrective Counseling Servs., Inc.,* 2008 WL 4858502 (N.D. Cal,. 2008) and *Benchmark Design, Inc. v. BDC, Inc.,* 1989 WL 81618 (D. Or July 5, 1989). Neither is on point. In *Del Campo,* the court reduced the look back period from 1997 to 2001-2004 because the alter ego companies were not formed until 2001. Thus, going back to 1997 was entirely unnecessary. In *Benchmark Design*, the court granted a 4 year look back from 1989 to 1985. However, the case does not indicate what period of time was being sought by the requesting party. Simply put, *Benchmark Design* is of no help whatsoever, as it does not indicate over what period alter ego discovery would be appropriate.

**D.      LeEco and Lele Have Waived Any Claim That VIZIO's Requests Violate Privacy Laws, As They Did Not Assert Any Such Objections In Response To VIZIO's RFPs.**

*Fed. R. Civ. P.* 34(b)(2)(B) requires: "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. In short, general and boilerplate objections are useless. *M2 Software, Inc. v. M2 Communications, LLC*, 217 F.R.D. 499, 500 (C.D. Cal.) ("M2 Software's responses were preceded by two pages of boilerplate 'General Objections."....General objections are not sufficient to raise any substantial, meaningful or enforceable objections to any particular discovery request."). *Accord Springer v. General Atomics Aeronautical Systems, Inc.*, 2018 WL 290745 * 1-2 (S.D. Cal.) (general objections found in introductory sections overruled as improper); *Bright v. Dennis Garberg and Associates, Inc.*, 2011 WL 13150146 * 5 (C.D. Cal. 2011) ("[D]efendants' general and boilerplate objections which have been incorporated into each discovery response are overruled because such general and boilerplate objections are improper.... Such general objections do not explain or analyze on a particularized basis, why each particular document request is objectionable, and thus are inadequate.").

In LeEco and LeLe's responses to RFPs, they never asserted any privacy or confidentiality objections, let alone the tax return or trade secret privileges. In fact, the only place where any objection on the basis of confidential, personal or proprietary information was attempted to be made was in the boilerplate introductory general objections. These general objections are tantamount to making no objections at all. In short, they are "not enforceable objections to any particular discovery request."

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 9

Finally, even assuming, *arguendo*, that these general, boilerplate objections are somehow
viable, VIZIO is plainly entitled to production at bar. The Court has already ruled that VIZIO has
stated a plausible case for alter ego liability. Accordingly, the alter ego discovery sought is both
relevant and necessary to Plaintiff's case, even if it would constitute trade secret information or
otherwise be protected by some sort of privacy rights. That is because a party seeking trade
secret discovery must show "that the information sought is relevant and necessary to proof of
or defense against, a material element of one or more causes of action presented in the case,
[such] that it is reasonable to conclude that the information sought is essential to a fair
resolution of the lawsuit, [the burden then shifts to] the holder of the [trade secret] to
demonstrate any claimed disadvantages of a protective order [and to show]that an alternative
to disclosure will not be unduly burdensome to the opposing side, [but rather], will maintain
the same fair balance in the litigation that would have been achieved by disclosure."
*Bridgestone/Firestone, Inc. v. Superior Court*, 7 Cal.App.4th 1384, 1393 (2011). (Emphasis
added).

In summary, your clients do not have any enforceable privacy or confidentiality objections at
bar, but even if they did, those objections are insufficient to prevent the production of
documents that are critical to establishing the existence of alter-ego liability. Equally
important, the notion that they can assert trade secret or tax return privileges when no such
objections were made, is not the rule in the Ninth Circuit. R*ichmark, supra,* 959 F.2d 1473.

**E.      VIZIO'S Responses to RFA Nos. 1 and 3, and RFP No. 10.**

VIZIO has properly responded to RFA Nos. 1 and 3. Specifically, RFA No. 1 is vague and
ambiguous as to whether LeEco is asking VIZIO to admit that it drafted Section 1.1 of the
Framework Agreement, to the exclusion of any other party. VIZIO objected on that basis.
Then, without waiving the objection, VIZIO specifically admitted that the Framework
Agreement and its terms were drafted by it and one or more of the Defendants. That
admission was an entirely appropriate response since VIZIO has provided details as to why it
could not admit or deny the request as stated, but then responded to the substance of the
request as required by Fed. R. Civ. P. 36(a)(4).

VIZIO's response to RFA No. 3 is likewise proper. That Request asks VIZIO to admit that as of
June 9, 2017, it no longer had any interest in entering into the China JV.

First, the term "China JV" is not defined. Nor does the RFA even specify with whom the
undefined China JV was to be entered. Wholly apart from these ambiguities, your clients have
asserted that "none of the essential terms regarding the proposed China JV were agreed upon
as of the date of the Framework Agreement." (Order, p. 19). Without in any way acquiescing in

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 10

your clients' assertion, VIZIO properly objected to that RFA on the ground that it called for speculation and was vague, ambiguous and unintelligible without further explanation as to what the precise terms of the "China JV" were as of June 9, 2017 - - especially in light of the utter refusal and failure of Defendants to negotiate the substantive terms of the "China JV" in good faith, let alone within the 45 day period mandated by the Framework Agreement.  This was, therefore, entirely appropriate.

Second, the RFA plainly seeks information that is not relevant to any claim or defense.  It is undisputed that the Framework Agreement was made on April 3, 2017.  It is likewise crystal clear that Section 4 of the Framework Agreement specifically states that "Buyer and the Company shall…execute one or more agreements to document the China JV…within 45 days of the date hereof."  Since June 9 was well outside of this 45 day window, whether VIZIO had any intent in entering into the "China JV" at that later date is not relevant to any claim or defense as required by Rule 26 (b) of the *Federal Rules of Civil Procedure*.

Finally, your assertion that VIZIO's response to RFA No. 10 is somehow inappropriate, is incorrect.  That RFP seeks all documents and communications "concerning the aftermath of the decision to terminate the Framework Agreement…."  First, this RFP is incomprehensible.  VIZIO properly objected on that basis.  Nowhere does it define "the aftermath", let alone specify any particular document or categories of documents or otherwise identify authors, recipients, dates/subject matter.  Second, the RFP is unreasonably overbroad on its face since it is unlimited as to time.  Again, VIZIO properly objected on this basis.  Third, the RFP arguably seeks VIZIO's tax returns and confidential, private, trade secret financial documents as well as board and shareholder minutes; *i.e.,* documents which VIZIO closely guards and keeps confidential.

VIZIO specifically defined its confidential and trade secret objection as including those specific items and it expressly objected on that basis.  Your letter admits on pp. 5 – 6, that (a) "the California Supreme Court has held that Revenue and Taxation Code section 1982, which prohibits the disclosure of tax returns, implicitly creates a privilege against the disclosure of income tax returns", and (b) "state law governs privilege claims."  Pointedly, California law also recognizes a trade secret privilege to withhold trade secret information from discovery.  *Evid. Code* § 1060.  This privilege can only be overcome where the party seeking same "makes a prima facie, particularized showing that the information sought is relevant and *necessary* to the proof of, or defense against, a material element of one or more causes of action presented in the case…."  *Bridgestone, supra,* 7 Cal.App. 4th at 1393.

You have made no such showing.  Nor can you.  The damages that VIZIO is seeking at bar are specified reliance and lost opportunity sums resulting directly from the breach of the

ERVIN COHEN & JESSUP LLP

Jeff Joyner, Esq.
August 24, 2018
Page 11

Framework Agreement and the fraud that gave rise to it; *i.e.,* $60MM (Order, pp. 17 – 18). These sums are calculable from the contract.  Thus, any suggestion that additional financial information is relevant - - it is not, which is another objection made by VIZIO - - but even if relevant, that information is certainly not "necessary."

Simply stated, RFP No. 10 fails on its face.

Very truly yours,

Robert M. Waxman

DNT:jd

14676.8:9330120.2

# EXHIBIT I

**Safari, Attashin (Assoc-LA-LT)**

| | |
|---|---|
| **From:** | Safari, Attashin (Assoc-LA-LT) |
| **Sent:** | Friday, August 31, 2018 11:59 AM |
| **To:** | 'David Tarlow'; Tyukody, Daniel J. (Shld-LA-LT); Joyner, Jeff K. (Shld-LA-IP-Tech); Srour, Alana C. (Assoc-LA-LT) |
| **Cc:** | Robert Waxman; Jason Haas; Catherine Veeneman |
| **Subject:** | RE: Vizio v. LeEco- Motion Conference Follow Up |

Counsel:

Vizio's agreement to amend the time period for its request for production of documents related to alter ego to start on December 1, 2013 is not acceptable to our clients for the reasons set forth in the joint report.

The format for the joint stipulation you suggest in your email is what Judge Early suggested at the pre-motion discovery conference and, therefore, is amenable to our clients with the clarification that our clients' portion of the joint stipulation will also include LeEco's motion to compel responses to LeEco's request for admissions and request for production of documents ("RFPs"). This is to let you know that our clients will also include in their motion to compel a request that the Court order Vizio to produce documents in response to LeEco's RFPs. At the August 7, 2018 meet-and-confer we raised the issue that Vizio had not yet produced a single document in response to the RFPs and you agreed that Vizio would begin producing documents last week. Despite this, we have not yet received any documents from Vizio.

Sincerely,
Attashin

**From:** David Tarlow [mailto:dtarlow@ecjlaw.com]
**Sent:** Wednesday, August 29, 2018 6:58 AM
**To:** Safari, Attashin (Assoc-LA-LT) <safaria@gtlaw.com>; Tyukody, Daniel J. (Shld-LA-LT) <tyukodyd@gtlaw.com>; Joyner, Jeff K. (Shld-LA-IP-Tech) <joynerj@gtlaw.com>; Srour, Alana C. (Assoc-LA-LT) <sroura@gtlaw.com>
**Cc:** Robert Waxman <rwaxman@ecjlaw.com>; Jason Haas <jhaas@ecjlaw.com>; Catherine Veeneman <cveeneman@ecjlaw.com>
**Subject:** Vizio v. LeEco- Motion Conference Follow Up

## Counsel:

It was a pleasure speaking with you and Judge Early yesterday at the conference. After considering Judge Early's thoughts on a reasonable time period for alter ego discovery, we would be amenable to limiting the time period to the December 1, 2013 to present time period for alter ego discovery. This period of time

commences approximately 2 years prior the parties' negotiation of the Merger Agreement.

Further, we are also amenable to the format of the motion being that of a discovery motion under Rule 37 for a  Protective Order and a Motion to Compel, whereby you, as the moving party, provide us with your portion stating your justification for moving for a protective order.  You may, but certainly do not have to, cite to each and every document request and response thereto.   Within 14 days of providing us with your portion, we will provide you with our response, so that the stipulation can be filed.  Both parties will then have the right to file a 5 page supplemental brief 14 days after the filing of the motion and Joint Stipulation.  Please let us know if you are amenable to this format.

Thanks for your prompt attention to this email.

Sincerely,

David N. Tarlow

Ervin Cohen & Jessup LLP

Tel. (310)281-6372

Sent from my iPad

# EXHIBIT J

Robert M. Waxman (SBN 89754)
   rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
   dtarlow@ecjlaw.com
Jason L. Haas (SBN 217290)
   jhaas@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Plaintiff VIZIO, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| VIZIO, INC., a California corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>LeECO V. LTD., et al,<br><br>                Defendants. | Case No. 8:17-CV-01175-DOC-JDE<br><br>**PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT YUETING JIA (SET ONE)**<br><br>Judge:  Hon. David O. Carter |

ERVIN COHEN & JESSUP LLP

PROPOUNDING PARTY:        Plaintiff VIZIO, Inc.

RESPONDING PARTY:         Defendant Yueting Jia

SET NO.:                  ONE (1)

Pursuant to *Federal Rule of Civil Procedure* Rule 34, Plaintiff VIZIO, Inc. propounds the following Request for Production of Documents, Set One to Defendant, Yueting Jia ("Responding Party" or "JIA"), to be responded to fully, verified in writing under oath, within thirty (30) days of service of these requests as provided for by *Federal Rule of Civil Procedure* 34(b)(2)(A).  All objections, responses and responsive documents shall be served on Ervin Cohen & Jessup LLP, 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, California 90212.

These Requests are governed by the Definitions and Instructions set forth herein.

## DEFINITIONS

As used herein, and only for the purposes of these discovery requests, the following terms have the following meanings:

1.     As used herein, the terms "YOU" or "YOUR" shall mean JIA, and to all agents and representatives of JIA, and to all PERSONS acting or purporting to act on his behalf or pursuant to his request.

2.     The letters "SAC" shall mean and refer to the Second Amended Complaint filed by VIZIO, Inc. in the above-captioned action on August 10, 2018.

3.     "VIZIO" shall mean and refer to Plaintiff Vizio, Inc., a California corporation, and to all agents and representatives of VIZIO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its direction or request.

4.     "LeECO" shall mean Defendant LeEco V. Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands, and to all agents and representatives of LeECO, and to all PERSONS acting or purporting to act on its behalf or pursuant to its request.

5.     "GLOBAL" shall mean Defendant LeEco Global Group Ltd., a

ERVIN COHEN & JESSUP LLP

1  corporation organized and existing under the laws of the People's Republic of

2  China, and to all agents and representatives of GLOBAL, and to all PERSONS

3  acting or purporting to act on its behalf or pursuant to its request.

4         6.     "LELE" shall mean Defendant Lele Holding Ltd., a personal holding

5  company organized and existing under the laws of the British Virgin Islands, and to

6  all agents and representatives of LELE, and to all PERSONS acting or purporting to

7  act on its behalf or pursuant to its request.

8         7.     "JIA" shall mean Defendant Yueting Jia, and to all agents and

9  representatives of JIA, and to all PERSONS acting or purporting to act on his behalf

10 or pursuant to his request.

11        8.     "MERGER SUB" shall mean Le V Merger Sub Inc., a California

12 corporation and indirect wholly-owned subsidiary of LeECO, and to all agents and

13 representatives of MERGER SUB, and to all PERSONS acting or purporting to act

14 on its behalf or pursuant to its request.

15        9.     "LTI" shall mean Le Technology, Inc., a California corporation and

16 subsidiary of GLOBAL, and to all agents and representatives of LTI, and to all

17 PERSONS acting or purporting to act on its behalf or pursuant to its request.

18        10.    "LREG" shall mean LeEco Real Estate Group LLC, a Delaware limited

19 liability company, and to all agents and representatives of LeEco Real Estate Group

20 LLC, and to all PERSONS acting or purporting to act on its behalf or pursuant to its

21 request.

22        11.    "MERGER AGREEMENT" shall mean and refer to that certain

23 Agreement and Plan of Merger, made as of July 6, 2016, by and among VIZIO,

24 LeECO, MERGER SUB, and Shareholder Representative Services LLC, a Colorado

25 limited liability company.

26        12.    "MERGER" shall mean and refer to that transaction among VIZIO,

27 LeECO, and MERGER SUB agreed to in the MERGER AGREEMENT and to any

28 and all potential transactions discussed between VIZIO and LeECO prior to entry of

1   the MERGER AGREEMENT, whether the potential transaction took the form of a

2   merger, acquisition, purchase of assets or other structure.

3       13.   "GUARANTY" shall mean and refer to that certain Limited Guarantee

4   made as of July 6, 2016, by LTI in favor of VIZIO.

5       14.   "FRAMEWORK AGREEMENT" shall mean and refer to that certain

6   Framework, Termination and Mutual General Release Agreement entered into as of

7   April 5, 2017 by and among VIZIO, LeECO, and MERGER SUB.

8       15.   "ESCROW AGREEMENT" shall mean and refer to that certain

9   Escrow Agreement, made as of July 6, 2016, by and among VIZIO, LeECO,

10  MERGER SUB, and Shareholder Representative Services LLC, a Colorado limited

11  liability company, with Citibank, National Association.

12      16.   "ESCROW" shall mean and refer to the escrow created by the

13  ESCROW AGREEMENT in connection with the MERGER AGREEMENT.

14      17.   "CHINA" shall mean and refer to the People's Republic of China.

15      18.   As used herein, the term "COMMUNICATION" or

16  "COMMUNICATIONS" means the transmittal of information (in the form of facts,

17  ideas, inquiries, or otherwise) by any means, including but not limited to, any

18  meeting, conversation, discussion, conference, correspondence, message, or other

19  written or oral transmission, exchange, or transfer of information in any form

20  between two or more PERSONS, including in person or by telephone, facsimile,

21  telegraph, telex, e-mail or other tangible or electronic medium.

22      19.   As used herein, the terms "DOCUMENT" and "DOCUMENTS" shall

23  mean writings of every kind, source, and authorship, both originals and copies

24  thereof, in YOUR custody or control, or known by YOU to exist, irrespective of

25  whether the writing is one intended for or transmitted internally by YOU or intended

26  for or transmitted to any other person or entity, INCLUDING any government

27  agency, department, administrative entity, or other person or entity, the contents of

28  which in any way RELATE, discuss, consider, or otherwise refer to the subject

ERVIN COHEN & JESSUP LLP

matter of the particular discovery requested.  "DOCUMENT" and "DOCUMENTS" shall include the following:  (1) all matter that is written, handwritten, typewritten, printed, graphic, photocopied, photographic, or recorded, including sound recordings or reproductions, however produced, reproduced or prepared, including, but not limited to, notes, telegrams, notebooks, brochures, charts, photographs, agreements, proposals, minutes, communications in words or symbols, interoffice communications, studies, technical data, brochures, bulletins, reviews, compilations, films, audio recordings, audio cassettes, videotapes, calendars, appointment books, diaries, and work papers of any kind; (2) all machine or computer readable data compilations or electronic or mechanical devices which contain information, including, but not limited to, computer server(s), texts, tapes, diskettes, cards, hard disks, optical disks, cassettes, and all other information storage or retrieval systems, together with the codes, passwords and/or programming instructions and other materials necessary to understand and use such systems; (3) all electronic mail, instant mail, and social media accounts belonging to YOU; (4) all originals, drafts, and copies that differ in any respect from the original, all marginal comments that appear on such DOCUMENTS, and all transcripts or recordings of such DOCUMENTS; (5) all attachments, enclosures or DOCUMENTS affixed or referred to in such DOCUMENTS; and (6) all material within the scope of Rule 1001 of the Federal Rules of Evidence and California Evidence Code Sections 250, 255 and 260.

20.    The terms "ANY," "ALL," "EACH," and "EVERY" should be understood in their most inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of their scope.

21.    As used herein, the term "INCLUDING" shall mean including, but not limited to, and shall not be interpreted to exclude any information otherwise within the scope of these Requests.

ERVIN COHEN & JESSUP LLP

22.    As used herein, the term "PERSON" shall mean, without limitation, a natural person, corporation, limited liability company, partnership, trust, association, joint venture, firm, tenancy-in-common or other business enterprise, governmental or legal entity and includes both the singular and plural as well as all representatives of such PERSON or PERSON(S).

23.    The words "RELATING," "RELATE," "RELATE TO," "RELATING TO," and "REFERRING" as used herein shall mean all matters or things that in any way discuss, are connected to, arise from, consist of, reflect, summarize, evaluate, or comment on the subject or object of the particular Request, or that have any logical or factual connection to the matter discussed, and they shall include the common meanings of all those terms, and shall include indirect as well as direct references to the subject matter set forth in the Requests.

24.    The term "AFFILIATE" shall mean a subsidiary corporation, sister corporation, subsidiary limited liability company, sister limited liability company, or ANY other form of business entity where: (1) at least 20% or more of the stock or membership interests of that entity are held, owned, or controlled, either directly or indirectly, by the PERSON identified in the request; (2) the entity holds, owns or controls, either directly or indirectly, at least 20% or more of the stock or membership interests of the PERSON identified in the request; or (3) at least 20% or more of the stock or membership interests in both the entity and the PERSON identified in the request are held, owned, or controlled, either directly or indirectly, by the same PERSON.

25.    The term "CRYPTOCURRENCY" shall mean any digital currency, token, or security in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, including but not limited to BitCoin, Ethereum, Ripple, etc.

26.    The term "DIGITAL WALLET" shall mean a physical device or online account which allows for the storage, retrieval, expenditure, and/or transfer of

1  CRYPTOCURRENCY.

2  **INSTRUCTIONS**

3     1.     The time period covered by each of the within Requests shall be from

4  July 1, 2015 to the date of the service of your response to these Requests, except as

5  to those Requests that specifically state any other time period.

6     2.     To the extent that documents responsive to these requests contain text

7  in the Chinese language (or any language other than English), YOU should produce

8  both the original document and any documents in YOUR possession, custody or

9  control that contain an English translation, in whole or in part, of the Chinese text in

10  the original document.

11     3.     As used herein, the terms "and" and "or" shall be interpreted

12  conjunctively or disjunctively, as necessary, to bring within the scope of these

13  Requests all DOCUMENTS that might otherwise be construed to be outside of the

14  scope of these requests.

15     4.     These Requests include DOCUMENTS within the custody, possession

16  and control of YOU and YOUR agents or AFFILIATES, INCLUDING YOUR

17  agent(s), representative(s), attorney(s), accountant(s), tax advisor(s) and investment

18  advisor(s), and any phone companies or banks YOU use.  If a DOCUMENT is

19  responsive to a request for production and is in YOUR control but is not in YOUR

20  possession or custody, identify the PERSON or entity with possession or custody.

21     5.     If a requested DOCUMENT is withheld or objected to based on a claim

22  of privilege or for other reasons, please serve the undersigned a privilege log, and

23  state with respect to each such withheld DOCUMENT:

24     (a)     The nature or basis of the claim of privilege or other ground for

25  nonproduction;

26     (b)     The names and addresses of all parties to the COMMUNICATION

27  (INCLUDING ALL parties who have been copied on the COMMUNICATION);

28     (c)     The date, subject matter, and number of pages of the DOCUMENT;

ERVIN COHEN & JESSUP LLP

and

       (d)    The current custodian and present location of the DOCUMENT.

6.    A representation of inability to comply with a particular request shall state the specific reason for the inability to comply, INCLUDING whether the particular DOCUMENT or other tangible thing has never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in YOUR possession, custody, or control and/or the possession, custody or control of any of YOUR AFFILIATES.  The statement shall set forth the name and address of any PERSON known or believed by that party to have possession, custody, or control of that item or category of item.

7.    If only a part of a request is objectionable, the response shall identify with particularity any DOCUMENT or other tangible thing falling within any category of item in the request to which an objection is being made, and shall set forth clearly the extent of and the specific ground for the objection.  If there are no DOCUMENTS responsive to any particular request or category, please so state in writing, providing a representation of inability to comply with respect to the remainder of that item or category.

8.    All paper DOCUMENTS are to be produced as they are kept in the usual course of business with any identifying labels, file markings or similar identifying features, and shall be organized and labeled to correspond to the appropriate request herein.  If a portion of a DOCUMENT is responsive, the entire DOCUMENT is to be produced.

With respect to electronic DOCUMENTS, all spreadsheets, presentation and design files (e.g. Excel, PowerPoint) are to be produced in electronic form in native format, as kept in the ordinary course of business.  All other electronically stored information ("ESI") and imaged hard copy shall be produced in the format outlined below.  All ESI shall be rendered to TIFF image format, and accompanied by a Concordance Image Cross Reference file.  All applicable metadata/database fields

ERVIN COHEN & JESSUP LLP

1   shall be extracted and provided in Concordance load file format:

2       (a)   Image File Format:  All images, paper documents scanned to images, or

3   rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV

4   (2D Compression).  Documents should be uniquely and sequentially Bates

5   numbered with an endorsement burned into each image.  All TIFF file names shall

6   include the unique Bates number burned into the image.  Each Bates number shall

7   be a standard length, include leading zeros in the number, and be unique for each

8   produced page.  All TIFF image files shall be stored with the ".tif" extension.

9   Images shall be OCR'd using a standard COTS products.  All pages of a document

10  or all pages of a collection of documents that comprise a folder or other logical

11  grouping, including a box, shall be delivered on a single piece of media.  No image

12  folder shall contain more than 2000 images.

13      (b)   Concordance Image Cross Reference File:  Images should be

14  accompanied by a Concordance Image Cross Reference file that associates each

15  Bates number with its corresponding single-page TIFF image file.  The Cross

16  Reference file should also contain the image file path for each Bates numbered page.

17      (c)   Concordance Load File:  Images should also be accompanied by a "text

18  load file" containing delimited text that will populate fields in a searchable, flat

19  database environment.

20      9.   If any DOCUMENT called for within a request has been destroyed or

21  discarded, identify the DOCUMENT and describe the date, manner of and reason

22  for its destruction.

23      10.   Each Request shall be construed independently, and no Request shall

24  be viewed as limiting the scope of any other Document Request.

25      11.   Each non-identical copy of a DOCUMENT, whether different from the

26  original because of handwritten notes, marks, attachments, or any other reason, is a

27  separate DOCUMENT that must be produced.

28      12.   The use of the singular form of any word includes the plural, and the

ERVIN COHEN & JESSUP LLP

1 use of the plural form of any word includes the singular.

2 **REQUESTS FOR PRODUCTION**

3 **REQUEST FOR PRODUCTION NO. 1:**

4 ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

5 the MERGER AGREEMENT, drafts of the MERGER AGREEMENT, or the

6 negotiations that resulted in the MERGER AGREEMENT.

7 **REQUEST FOR PRODUCTION NO. 2:**

8 ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

9 the GUARANTY, drafts of the GUARANTY, or the negotiations that resulted in the

10 GUARANTY.

11 **REQUEST FOR PRODUCTION NO. 3:**

12 ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

13 the FRAMEWORK AGREEMENT, drafts of the FRAMEWORK AGREEMENT,

14 or the negotiations that resulted in the FRAMEWORK AGREEMENT.

15 **REQUEST FOR PRODUCTION NO. 4:**

16 ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

17 the ESCROW AGREEMENT, drafts of the ESCROW AGREEMENT, or the

18 negotiations that resulted in the ESCROW AGREEMENT.

19 **REQUEST FOR PRODUCTION NO. 5:**

20 ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

21 VIZIO or to any transaction with VIZIO at any time since and including December

22 1, 2013, INCLUDING corporate minutes or notes, board minutes or notes, corporate

23 resolutions, shareholder minutes, minutes or notes of management meetings, emails,

24 texts or phone messages, marketing plans, operational plans, due diligence, financial

25 analyses, and strategy documents.

26 **REQUEST FOR PRODUCTION NO. 6:**

27 ANY and ALL DOCUMENTS OR COMMUNICATIONS between each or

28 any of LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES, on the one

1  hand, and any other PERSONS that did business with VIZIO and which business

2  relationship was disclosed by VIZIO to one or more of LeECO, GLOBAL, LELE,

3  JIA, LTI or any of their AFFILIATES, on the other hand, at any time between

4  December 1, 2013 to April 6, 2017.

5  **REQUEST FOR PRODUCTION NO. 7:**

6      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

7  the MERGER at any time since and including December 1, 2013.

8  **REQUEST FOR PRODUCTION NO. 8:**

9      ALL DOCUMENTS and COMMUNICATIONS posted by LeECO,

10  GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES on WeChat

11  RELATING TO VIZIO or the MERGER at any time since and including December

12  1, 2013.

13  **REQUEST FOR PRODUCTION NO. 9:**

14      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

15  the ESCROW.

16  **REQUEST FOR PRODUCTION NO. 10:**

17      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

18  the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

19  JIA, LTI or any of their AFFILIATES expected to receive from the MERGER.

20  **REQUEST FOR PRODUCTION NO. 11:**

21      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

22  the benefits—financial, operational or otherwise—that LeECO, GLOBAL, LELE,

23  JIA, LTI or any of their AFFILIATES expected to receive from the public

24  announcement of the MERGER AGREEMENT or that any of those PERSONS

25  actually received following that announcement.

26  **REQUEST FOR PRODUCTION NO. 12:**

27      ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

28  the response of U.S. and Chinese markets or press to the proposed MERGER,

ERVIN COHEN & JESSUP LLP

1   INCLUDING all articles, reports and other documents issued by stock markets,

2   bond markets, financial press, newspapers, and financial analysts.

3   **REQUEST FOR PRODUCTION NO. 13:**

4       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

5   efforts made by LeECO, GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to

6   implement, meet the conditions for, or complete the MERGER with VIZIO.

7   **REQUEST FOR PRODUCTION NO. 14:**

8       ANY and ALL DOCUMENTS OR COMMUNICATIONS that RELATE TO

9   Schedule 1.5 of the MERGER AGREEMENT, as called for in Section 1.5 of that

10  agreement, or that identify the individuals to be listed by LeECO on Schedule 1.5.

11  **REQUEST FOR PRODUCTION NO. 15:**

12      ANY and ALL DOCUMENTS OR COMMUNICATIONS that YOU

13  received from any PERSON, including AFFILIATES, third party businesses, and

14  governmental entities, regarding the proposed MERGER.

15  **REQUEST FOR PRODUCTION NO. 16:**

16      ANY and ALL DOCUMENTS OR COMMUNICATIONS sent by LeECO,

17  GLOBAL, LELE, JIA, LTI or any of their AFFILIATES to any "Governmental

18  Entity," as that term is defined in Section 10.2 of the MERGER AGREEMENT—

19  whether located in the United States, CHINA, Taiwan, or otherwise—that

20  RELATES TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S.

21  Federal Trade Commission, the U.S. Department of Justice, the Committee on

22  Foreign Investment in the United States, the CHINA Ministry of Commerce, the

23  China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National

24  Development Reform Commission ("NRDC"), Chaoyang District Commission of

25  Commerce, and the Beijing Commission of Commerce.

26  **REQUEST FOR PRODUCTION NO. 17:**

27      ANY and ALL DOCUMENTS OR COMMUNICATIONS drafted, sent,

28  issued, made or published by any "Governmental Entity," as that term is defined in

ERVIN COHEN & JESSUP LLP

Section 10.2 of the MERGER AGREEMENT—in the United States, CHINA, Taiwan, or otherwise—RELATING TO the MERGER AGREEMENT OR MERGER, INCLUDING the U.S. Federal Trade Commission, the U.S. Department of Justice, the Committee on Foreign Investment in the United States, the CHINA Ministry of Commerce, the China Insurance Regulatory Commission, the Shanghai Free Trade Zone, National Development Reform Commission ("NRDC"), Chaoyang District Commission of Commerce, and the Beijing Commission of Commerce.

**REQUEST FOR PRODUCTION NO. 18:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS sent, issued, made or published by any governmental entity in CHINA RELATING TO the standards of review to be applied to proposed investments that originate in CHINA and are directed to another country, INCLUDING any and all press releases issued on or about December 6, 2016 regarding new standards of review to be applied to such investments.

**REQUEST FOR PRODUCTION NO. 19:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the ability of JIA, GLOBAL, LeECO and MERGER SUB at any time since and including December 1, 2013 to obtain the financing needed to complete the proposed MERGER with VIZIO.

**REQUEST FOR PRODUCTION NO. 20:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO efforts, by any PERSON at any time since and including December 1, 2013, to obtain the financing needed by LeECO and MERGER SUB to complete the proposed MERGER with VIZIO INCLUDING DOCUMENTS OR COMMUNICATIONS to or from:  Hollyhigh International Capital; the Bank of China; Bank of China Limited Macau Branch; China Development Bank; China Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.;

ERVIN COHEN & JESSUP LLP

1 Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp.,

2 Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen

3 Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

4 **REQUEST FOR PRODUCTION NO. 21:**

5 　　　ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

6 the terms on which the financing needed by LeECO and MERGER SUB to

7 complete the proposed MERGER with VIZIO could be obtained at any time since

8 and including December 1, 2013, INCLUDING DOCUMENTS OR

9 COMMUNICATIONS to or from: Hollyhigh International Capital; the Bank of

10 China; Bank of China Limited Macau Branch; China Development Bank; China

11 Everwin Asset Management Co. Ltd.; CITIC Bank; Huaxia Life Insurance Co., Ltd.;

12 Leshi Holdings (Beijing) Co. Ltd.; Leshi Internet Information & Technology Corp.,

13 Beijing; Shanghai Yuetong Equity Investment Partnership Enterprise; and Shenzhen

14 Leshi Xingen M&A Fund Management Co. Ltd. or any of their AFFILIATES.

15 **REQUEST FOR PRODUCTION NO. 22:**

16 　　　ANY and ALL DOCUMENTS OR COMMUNICATIONS between VIZIO,

17 on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

18 AFFILIATES, on the other hand, regarding efforts to implement, meet the

19 conditions for, or complete the MERGER or to obtain the financing needed by

20 LeECO and MERGER SUB to complete the MERGER.

21 **REQUEST FOR PRODUCTION NO. 23:**

22 　　　ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

23 the "Equity Commitment Letters", as that term is defined and used in Sections 4.10

24 and 5.8 of the MERGER AGREEMENT.

25 **REQUEST FOR PRODUCTION NO. 24:**

26 　　　ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

27 the "Debt Financing Documents", as that term is defined in Section 10.2 of the

28 MERGER AGREEMENT and used in Sections 5.8 and 5.9 of the MERGER

ERVIN COHEN & JESSUP LLP

AGREEMENT.

**REQUEST FOR PRODUCTION NO. 25:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the actual assets and financing available to LeECO and MERGER SUB on or about April 6, 2017 for the purpose of completing the proposed MERGER with VIZIO.

**REQUEST FOR PRODUCTION NO. 26:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the "Buyer Termination Fee", "Buyer Termination Fee Deposit" or Buyer Termination Fee Remainder" as those terms are defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 27:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the source of monies deposited in ESCROW to serve as the "Buyer Termination Fee Deposit", as that term is defined in Section 10.2 of the MERGER AGREEMENT and used in Section 9.2 of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 28:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to the termination of the MERGER AGREEMENT.

**REQUEST FOR PRODUCTION NO. 29:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to reasons why the MERGER was not, or could not, be completed.

**REQUEST FOR PRODUCTION NO. 30:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to a potential joint venture between VIZIO, on one hand, and LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES, on the other hand, to distribute VIZIO products in CHINA at any time since and including December 1, 2013, INCLUDING emails, texts or phone messages, marketing plans, operational plans, financial analyses, and strategy documents.

ERVIN COHEN & JESSUP LLP

1  **REQUEST FOR PRODUCTION NO. 31:**

2  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

3  negotiations or discussions between VIZIO and LeECO to "negotiate in good faith

4  and execute one or more agreements" regarding a joint venture in CHINA as

5  required by Section 4 of the FRAMEWORK AGREEMENT.

6  **REQUEST FOR PRODUCTION NO. 32:**

7  DOCUMENTS OR COMMUNICATIONS at any time since and including

8  December 1, 2013 sufficient to show any contractual relationships, and the terms of

9  those relationships, between LeECO, GLOBAL, LELE, JIA, LTI and/or any of their

10  AFFILIATES, on one hand, and any other PERSON on the other hand, that would

11  have been impacted or affected by a joint venture between LeECO and VIZIO to

12  distribute VIZIO products in CHINA.

13  **REQUEST FOR PRODUCTION NO. 33:**

14  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

15  efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

16  develop and obtain certification of the "LeEco Le App", as required of LeECO

17  under Section 2.1.1 of the FRAMEWORK AGREEMENT.

18  **REQUEST FOR PRODUCTION NO. 34:**

19  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

20  efforts by LeECO, GLOBAL, LELE, JIA, LTI and/or any of their AFFILIATES to

21  identify and/or obtain "non-cash assets with a fair market value equal to US

22  $50,000,000 as a capital contribution" to contribute to a proposed joint venture with

23  VIZIO, as called for in Section 3.1.1 of the FRAMEWORK AGREEMENT.

24  **REQUEST FOR PRODUCTION NO. 35:**

25  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING to

26  ALL assets owned by LTI or financial resources available to LTI, at any time

27  between July 6, 2016 and the present, that were available to satisfy LTI's

28  representation in Section 5(d) of the GUARANTY that LTI would have "the

ERVIN COHEN & JESSUP LLP

financial capacity to pay and perform the Obligation" of LeECO to pay the Buyer Termination Fee Remainder if it should become due under the MERGER AGREEMENT and that LTI "shall maintain such financial capacity for so long as this Guarantee shall remain in effect."

**REQUEST FOR PRODUCTION NO. 36:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO payments or transfers made by LTI after July 6, 2016, if any, in which the total assets then owned by LTI, or the total financial resources available to LTI, was less than $50,000,000.00 either before and/or after the transaction.

**REQUEST FOR PRODUCTION NO. 37:**

ANY and ALL articles of incorporation, amended articles of incorporation, bylaws, amended bylaws and operating agreements in effect for LeECO, GLOBAL, LELE, LTI, LREG, and/or any of their AFFILIATES at any time after December 1, 2013.

**REQUEST FOR PRODUCTION NO. 38:**

DOCUMENTS sufficient to identify ALL officers, directors, partners, shareholders, and members for LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after December 1, 2013.

**REQUEST FOR PRODUCTION NO. 39:**

ANY and ALL shares of stock, stock certificates, partnership interests, or membership interests currently held or owned by any PERSONS in LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES.

**REQUEST FOR PRODUCTION NO. 40:**

ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO ANY contract or agreement - - INCLUDING all written amendments and supplements to any such contract or agreement and all written assignments and modifications of any such contract or agreement - - whereby any PERSONS acquired on any date after December 1, 2013, either in their own respective names

ERVIN COHEN & JESSUP LLP

1   or under and pursuant to any fictitious business names, any right, title or interest in

2   or to LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES, and

3   each or any of their respective employees, shares of stock, partnership interests,

4   membership interests, assets and/or liabilities, INCLUDING all loan commitments,

5   offers to purchase, bills of sale, purchase orders, deposit receipts, guaranty

6   agreements, stock transfer agreements, membership interest transfer agreements,

7   credit agreements, sales orders, partnership agreements, sales agreements, insurance

8   agreements, assignment agreements, hypothecation agreements, deregistration

9   agreements, dissolution agreements, purchase agreements, options agreements,

10   stock agreements, shares of stock, certificates of stock, joint venture agreements,

11   asset sale agreements, debt payment agreements, accommodation agreements, debt

12   protection agreements, asset transfer agreements, indemnity agreements, defense

13   agreements, hold harmless agreements, employee sharing agreements, employee

14   transfer agreements, security agreements, financing agreements, memorandum

15   agreements, letter agreements, loan agreements, insolvency agreements,

16   intercompany transfer agreements, escrow agreements, operating agreements, loan

17   commitments, limited liability company agreements, assumption agreements,

18   liquidation agreements, winding up agreements, creditor's agreements, letters of

19   credit, asset distribution or preservation agreements, liability distribution or transfer

20   agreements, membership distribution or transfer agreements, payment records,

21   promissory notes, governmental filings, security instruments, deeds and deeds of

22   trust.

23   **REQUEST FOR PRODUCTION NO. 41:**

24       ANY and ALL agendas, corporate minutes, and corporate resolutions for

25   ALL meetings of the Board of Directors and/or Managers for LeECO, GLOBAL,

26   LELE, LTI, and LREG held on any date after December 1, 2013.

27   **REQUEST FOR PRODUCTION NO. 42:**

28       ANY and ALL agendas, minutes, and resolutions for ALL meetings of the

ERVIN COHEN & JESSUP LLP

shareholders or members of LeECO, GLOBAL, LELE, LTI, and LREG held on any

date after December 1, 2013.

**REQUEST FOR PRODUCTION NO. 43:**

ANY and ALL voting or operating agreements among shareholders or

members for LeECO, GLOBAL, LELE, LTI, and LREG that were in effect on any

date after December 1, 2013.

**REQUEST FOR PRODUCTION NO. 44:**

ANY and ALL contracts and agreements between or among LeECO,

GLOBAL, LELE, JIA, LTI, LREG and/or any of their AFFILIATES that were in

effect at any point in time after December 1, 2013.

**REQUEST FOR PRODUCTION NO. 45:**

ANY and ALL DOCUMENTS prepared at any time since and including

December 1, 2013 and through and including the present date, in which JIA,

LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES

represented, stated, or otherwise held out that LeECO, MERGER SUB, LTI, OR

LREG were a part of, unit, or division of LELE or GLOBAL and/or to be

substantially the same as LELE or GLOBAL, INCLUDING advertising or

promotional materials, press releases, WeChat and other social media postings,

investment reports, financial documents, and ANY DOCUMENTS submitted to, or

filed with, ANY governmental, regulatory or market entity.

**REQUEST FOR PRODUCTION NO. 46:**

DOCUMENTS sufficient to identify (a) the location of the headquarters and

all administrative, manufacturing and distribution facilities for LeECO, GLOBAL,

LELE, LTI, LREG and/or any of their AFFILIATES at all times after December 1,

2013 and through the present day, and (b) the current principal places of business

and residence of JIA.

**REQUEST FOR PRODUCTION NO. 47:**

DOCUMENTS sufficient to identify ALL employees of JIA, LeECO,

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time after

2  December 1, 2013 and through the present day. "Identify" in this request means to

3  provide the full name, title, and current (or last known) address and phone number

4  of each employee, the PERSON or entity with each individual was employed, the

5  date on which the individual's employment began, and, if the individual is no longer

6  employed, the dates of his or her service with each or any of JIA, LeECO,

7  GLOBAL, LELE, LTI, LREG or their AFFILIATES.

8  **REQUEST FOR PRODUCTION NO. 48:**

9  DOCUMENTS sufficient to identify ALL employees, managers, consultants,

10  independent contractors, agents, attorneys, accountants, officers and/or directors

11  shared by, used by, loaned to, or otherwise transferred between one or more of JIA,

12  LeECO, GLOBAL, LELE, LTI, LREG and/or any of their AFFILIATES at any time

13  after December 1, 2013.

14  **REQUEST FOR PRODUCTION NO. 49:**

15  ANY and ALL DOCUMENTS RELATING TO monies transferred by,

16  between or among JIA, LeECO, GLOBAL, LELE, LTI, LREG and/or any of their

17  AFFILIATES since December 1, 2013, and through and including the present date,

18  INCLUDING intercorporate transfers, hypothecations, loans, gifts, dividends,

19  earnings and profits.

20  **REQUEST FOR PRODUCTION NO. 50:**

21  ANY and ALL DOCUMENTS RELATING TO contracts or agreements with

22  third parties, loans, other obligations or instruments of debt that were issued by or

23  to, paid, co-signed or guaranteed by JIA, LeECO, GLOBAL, LELE, LTI, LREG

24  and/or any of their AFFILIATES for or on behalf of LeECO, GLOBAL, LELE,

25  LTI, or LREG since December 1, 2013, and through and including the present date.

26  **REQUEST FOR PRODUCTION NO. 51:**

27  ANY and ALL DOCUMENTS RELATING TO the capitalization of LeECO,

28  GLOBAL, LELE, LTI, and LREG at or about (a) the date of its or their

1  incorporation or formation, and (b) from and after December 1, 2013 and through

2  and including the present date.

3  **REQUEST FOR PRODUCTION NO. 52:**

4       ANY and ALL financial statements and analyses for JIA, LeECO, GLOBAL,

5  LELE, LTI, and LREG since December 1, 2013, and through and including the

6  present date, INCLUDING 1) earnings statements, 2) profit and loss statements, 3)

7  balance sheets, and 4) ANY financial summaries or reports prepared for a) the use

8  of JIA or other executives at LeECO, GLOBAL, LELE, or LTI, or b) for the use of

9  potential investors in, joint venturers with, or lenders to JIA, LeECO, GLOBAL,

10  LELE, LTI, LREG and/or any of their AFFILIATES.

11  **REQUEST FOR PRODUCTION NO. 53:**

12       ANY and ALL DOCUMENTS RELATING TO quarterly and annual audits

13  of LeECO, GLOBAL, LELE, LTI, and LREG since December 1, 2013, and through

14  and including the present date.

15  **REQUEST FOR PRODUCTION NO. 54:**

16       DOCUMENTS OR COMMUNICATIONS sufficient to identify all tangible

17  and intangible assets of any kind with a value in excess of $100,000 in which each

18  or any of JIA, LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their

19  AFFILIATES possessed an ownership interest at any point after December 1, 2013.

20  "Identify" in this request means to provide the description and location for each

21  tangible and intangible asset, the nature and size of the interest in that asset (e.g. a

22  50% equity interest, a joint owner in common), and the last known market value of

23  the asset.

24  **REQUEST FOR PRODUCTION NO. 55:**

25       DOCUMENTS OR COMMUNICATIONS sufficient to identify all debts or

26  liabilities of any kind with a value in excess of $100,000 owed by each or any of

27  LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES at

28  any point after December 1, 2013. "Identify" in this request means to provide the

ERVIN COHEN & JESSUP LLP

1  type of liability, the amount currently owed, the PERSON to whom the liability is

2  owed and that PERSON's address and telephone number.

3  **REQUEST FOR PRODUCTION NO. 56:**

4       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

5  plans or efforts by each or any of LeECO, GLOBAL, LELE, JIA, LTI, LREG,

6  and/or any of their AFFILIATES to sell or transfer ANY ownership interest in

7  tangible and intangible assets of any kind that he, it or they possessed after

8  December 1, 2013.

9  **REQUEST FOR PRODUCTION NO. 57:**

10       The Master Agreement executed in or after December 2016 among LREG,

11  the Genzon Group (or any AFFILIATE of the Genzon Group) and other PERSONS

12  RELATING TO property owned by LREG in Santa Clara, California and ANY and

13  ALL DOCUMENTS OR COMMUNICATIONS RELATING TO the Master

14  Agreement or to ANY transaction that occurred pursuant to the terms of the Master

15  Agreement.

16  **REQUEST FOR PRODUCTION NO. 58:**

17       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

18  ANY transfers of equity interests in LREG to the Genzon Group or to ANY

19  PERSON other than LeECO, GLOBAL, LELE, JIA, or LTI after December 1, 2013,

20  INCLUDING agreements, emails, texts or phone messages, records of all payments

21  made, and stock certificates or other documents reflecting the transfer of any

22  interest.

23  **REQUEST FOR PRODUCTION NO. 59:**

24       ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

25  financial accounts in which LeECO, GLOBAL, LELE, JIA, LTI, LREG, and/or any

26  of their AFFILIATES was listed as an owner, partner, member or shareholder, or

27  otherwise claimed an ownership, equity, or economic interest on or in the account,

28  at any time since and including December 1, 2013, including but not limited to

ERVIN COHEN & JESSUP LLP

REQUEST FOR PRODUCTION OF DOCUMENTS

ERVIN COHEN & JESSUP LLP

1  offers to purchase, bills of sale, purchase orders, deposit receipts, stock transfer
2  agreements, membership interest transfer agreements, credit agreements, sales
3  orders, insurance agreements, assignment agreements, dissolution agreements,
4  purchase agreements, options agreements, asset sale agreements, debt payment
5  agreements, accommodation agreements, debt protection agreements, asset transfer
6  agreements, defense agreements, hold harmless agreements, security agreements,
7  financing agreements, memorandum agreements, letter agreements, insolvency
8  agreements, loan commitments, assumption agreements, liquidation agreements,
9  winding up agreements, creditor's agreements, letters of credit, asset distribution or
10 preservation agreements, liability distribution or transfer agreements, membership
11 distribution or transfer agreements, payment records, promissory notes,
12 governmental filings, and security instruments.

13 **REQUEST FOR PRODUCTION NO. 60:**

14        The letter or memo by JIA issued in or about November 2016 RELATING
15 TO financing issues being experienced by the global LeEco businesses and
16 announcing that JIA would reduce his own income to one yuan.  This letter was
17 referenced in an article by Bloomberg News, which article can be found at
18 https://www.bloomberg.com/news/articles/2016-11-07/troubled-chinese-billionaire-
19 confesses-to-cash-crunch-at-leeco.

20 **REQUEST FOR PRODUCTION NO. 61:**

21        ANY and ALL orders issued after January 1, 2016 by ANY court,
22 governmental entity, or administrative body that has the effect of (a) seizing, or
23 restricting the disposition of, ANY assets owned each or any of by LeECO,
24 GLOBAL, LELE, JIA, LTI, LREG, and/or any of their AFFILIATES, (b) directing
25 JIA to return to CHINA, and/or (c) restricting JIA's travel.

26 **REQUEST FOR PRODUCTION NO. 62:**

27        DOCUMENTS OR COMMUNICATIONS sufficient to identify ALL legal
28 actions or litigation against each or any of LeECO, GLOBAL, LELE, JIA, LTI,

1  LREG, and/or any of their AFFILIATES filed or pending in CHINA and/or the

2  United States at any point after December 1, 2013.  "Identify" in this request means

3  to identify the court or administrative body in which the action is pending, the name

4  of the action, and the case number(s) of that action or actions.

5  **REQUEST FOR PRODUCTION NO. 63:**

6  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

7  ANY actual or anticipated inability by each or any of LeECO, GLOBAL, LELE,

8  JIA, LTI and/or any of their AFFILIATES to make payments that were or are due

9  and owing at any time since and including December 1, 2013.

10  **REQUEST FOR PRODUCTION NO. 64:**

11  ANY and ALL DOCUMENTS OR COMMUNICATIONS RELATING TO

12  JIA's resignation in July 2017 as Chairman of ANY of the global LeEco businesses,

13  INCLUDING LeECO, GLOBAL, LELE, JIA, LTI, LREG, Leshi Holding Co., Ltd.

14  (Beijing) and/or any of their AFFILIATES.

15  **REQUEST FOR PRODUCTION NO. 65:**

16  ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

17  the sale, transfer, dissolution, winding up, or liquidation of LELE, GLOBAL,

18  LeECO, LTI, LREG or ANY of their AFFILIATES.

19  **REQUEST FOR PRODUCTION NO. 66:**

20  ANY and ALL DOCUMENTS or COMMUNICATIONS RELATING TO

21  plans, discussions, strategies or efforts by each or any of JIA, LELE, GLOBAL,

22  LeECO, LTI, LREG or ANY of their AFFILIATES to (a) provide notice to, protect

23  or otherwise make arrangements or accommodations for or with their creditors; (b)

24  assign, assume, distribute or transfer any stock, membership interests, actual assets,

25  actual liabilities, contractual obligations, contingent liabilities, contingent assets, or

26  employees of JIA, LELE, GLOBAL, LeECO, LTI, LREG or their AFFILIATES, or

27  (c) to indemnify, hold harmless or defend the obligations of any PERSON.

28

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 67:**

ANY and ALL DOCUMENTS RELATING TO the financial transactions of JIA, at any time since and including December 1, 2013, including but not limited to financial accounts in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, bank accounts in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, savings accounts in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, certificates of deposit in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, money market instruments in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, checking accounts in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, stock or commodity trading accounts in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, brokerage accounts in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, escrows in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, partnership agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, limited partnership agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, limited liability company agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, membership agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest,

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  operating agreements in which he was listed as owner, partner, member or

2  shareholder, or otherwise claimed an ownership, equity, or economic interest,

3  shareholder agreements in which he was listed as owner, partner, member or

4  shareholder, or otherwise claimed an ownership, equity, or economic interest,

5  escrow agreements in which he was listed as owner, partner, member or

6  shareholder, or otherwise claimed an ownership, equity, or economic interest, trust

7  agreements in which he was listed as trustor, trustee, beneficiary, owner, partner,

8  member or shareholder, or otherwise claimed an ownership, equity, economic or

9  beneficial interest, guaranty agreements, loan agreements, shares of stock in which

10  he was listed as owner, partner, member or shareholder, or otherwise claimed an

11  ownership, equity, or economic interest, stock registers in which he was listed as

12  owner, partner, member or shareholder, or otherwise claimed an ownership, equity,

13  or economic interest, stock transfer agreements in which he was listed as owner,

14  partner, member or shareholder, or otherwise claimed an ownership, equity, or

15  economic interest, employment agreements, indemnity agreements, independent

16  contractor agreements, loan applications in which he was listed as owner, partner,

17  member or shareholder, or otherwise claimed an ownership, equity, or economic

18  interest, insurance agreements in which he was listed as owner, partner, member or

19  shareholder, or otherwise claimed an ownership, equity, or economic interest,

20  insurance applications in which he was listed as owner, partner, member or

21  shareholder, or otherwise claimed an ownership, equity, or economic interest,

22  hypothecation agreements in which he was listed as owner, partner, member or

23  shareholder, or otherwise claimed an ownership, equity, or economic interest,

24  encumbrance agreements in which he was listed as owner, partner, member or

25  shareholder, or otherwise claimed an ownership, equity, or economic interest,

26  appraisals in which he was listed as owner, partner, member or shareholder, or

27  otherwise claimed an ownership, equity, or economic interest, deeds and deeds of

28  trust in which he was listed as trustor, trustee, beneficiary, owner, partner, member

or shareholder, or otherwise claimed an ownership, equity, economic or beneficial interest, bonds in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, bond trading accounts in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, gift transactions in which he was donor or donee, bond registries in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, art registries in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, certificates of authenticity in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, general ledgers, profit and loss statements, balance sheets, earnings records and financial summaries or reports, offers to purchase, bills of sale, purchase orders, deposit receipts, stock transfer agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, membership interest transfer agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, credit agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, sales orders, insurance agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, assignment agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, dissolution agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, purchase agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, option agreements in which he was listed as owner, partner, member or shareholder, or

ERVIN COHEN & JESSUP LLP

otherwise claimed an ownership, equity, or economic interest, asset sale agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, debt payment agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, accommodation agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, debt protection agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, asset transfer agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, defense agreements, hold harmless agreements, security agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, financing agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, memorandum agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, letter agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, insolvency agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, loan commitments, assumption agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, liquidation agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, winding up agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic interest, creditor's agreements in which he was listed as owner, partner, member or shareholder, or otherwise claimed an ownership, equity, or economic

ERVIN COHEN & JESSUP LLP

1  interest, letters of credit in which he was listed as owner, partner, member or

2  shareholder, or otherwise claimed an ownership, equity, or economic interest, asset

3  distribution or preservation agreements in which he was listed as owner, partner,

4  member or shareholder, or otherwise claimed an ownership, equity, or economic

5  interest, liability distribution or transfer agreements in which he was listed as owner,

6  partner, member or shareholder, or otherwise claimed an ownership, equity, or

7  economic interest, membership distribution or transfer agreements in which he was

8  listed as owner, partner, member or shareholder, or otherwise claimed an ownership,

9  equity, or economic interest, payment records in which he was listed as owner,

10 partner, member or shareholder, or otherwise claimed an ownership, equity, or

11 economic interest, promissory notes in which he was listed as owner, partner,

12 member or shareholder, or otherwise claimed an ownership, equity, or economic

13 interest, governmental filings in which he was listed as owner, partner, member or

14 shareholder, or otherwise claimed an ownership, equity, or economic interest, and

15 security instruments in which he was listed as owner, partner, member or

16 shareholder, or otherwise claimed an ownership, equity, or economic interest.

17 **REQUEST FOR PRODUCTION NO. 68:**

18     ANY and ALL DOCUMENTS RELATING TO the purchase, sale, or transfer

19 of CRYPTOCURRENCY by each or any of JIA, LELE, GLOBAL, LeECO, LTI,

20 LREG or any of their AFFILIATES at any time since December 1, 2013 through

21 and including the present date.

22 **REQUEST FOR PRODUCTION NO. 69:**

23     ANY and ALL DOCUMENTS RELATING TO the identity of ANY

24 DIGITAL WALLET owned or controlled by each or any of JIA, LELE, GLOBAL,

25 LeECO, LTI, LREG or any of their AFFILIATES at any time since December 1,

26 2013 through and including the present date, and used by each or any of them for

27 the purchase, sale, or transfer of CRYPTOCURRENCY.

28

ERVIN COHEN & JESSUP LLP

**REQUEST FOR PRODUCTION NO. 70:**

ANY and ALL DOCUMENTS RELATING TO the balance of ANY DIGITAL WALLET owned or controlled by each or any of JIA, LELE, GLOBAL, LeECO, LTI, LREG or any of their AFFILIATES at any time since December 1, 2013 through and including the present date, and used by each or any of them for the purchase, sale, or transfer of CRYPTOCURRENCY.

**REQUEST FOR PRODUCTION NO. 71:**

ANY and ALL DOCUMENTS RELATING TO the transactions of ANY DIGITAL WALLET owned or controlled by each or any of JIA, LELE, GLOBAL, LeECO, LTI, LREG or any of their AFFILIATES at any time since December 1, 2013 through and including the present date, and used by each or any of them for the purchase, sale, or transfer of CRYPTOCURRENCY.

**REQUEST FOR PRODUCTION NO. 72:**

ANY and ALL DOCUMENTS RELATING TO the physical location of ANY DIGITAL WALLET owned or controlled by each or any of JIA, LELE, GLOBAL, LeECO, LTI, LREG or any of their AFFILIATES at any time since December 1, 2013 through and including the present date, and used by each or any of them for the purchase, sale, or transfer of CRYPTOCURRENCY.

**REQUEST FOR PRODUCTION NO. 73:**

ANY and ALL DOCUMENTS RELATING TO the digital location of ANY DIGITAL WALLET owned or controlled by each or any of JIA, LELE, GLOBAL, LeECO, LTI, LREG or any of their AFFILIATES at any time since December 1, 2013 through and including the present date, and used by each or any of them for the purchase, sale, or transfer of CRYPTOCURRENCY.

///

///

///

///

ERVIN COHEN & JESSUP LLP

1   DATED: September 24, 2018          ERVIN COHEN & JESSUP LLP
                                        Robert M. Waxman
2                                       David N. Tarlow
                                        Jason L. Haas
3

4

5                                 By: _____
6                                       Robert M. Waxman
7                                       Attorneys for Plaintiff VIZIO, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

On September 24, 2018, I served true copies of the following document(s) described as **PLAINTIFF VIZIO, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT YUETING JIA (SET ONE)** on the interested parties in this action as follows:

Jeff K. Joyner, Esq.
Daniel Tyukody, Esq.
Robert H. Gruber, Esq.
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
joynerj@gtlaw.com
tyukodyd@gtlaw.com
gruberr@gtlaw.com

*Attorneys for Defendants*
*LeECO V. LTD.and LeLe Holding, Ltd.*

Bridget S. Johnsen, Esq.
SIDLEY AUSTIN LLP
555 W. Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
bjohnsen@sidley.com

*Attorneys for Defendant*
*YUETING JIA*

**BY E-MAIL OR ELECTRONIC TRANSMISSION**: I caused a copy of the document to be sent from e-mail address jdirkx@ecjlaw.com to the persons at the email address(es) listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 24, 2018, at Beverly Hills, California.

_____
Joe Dirkx

# EXHIBIT K

| Message | |
|---|---|
| **From:** | Ben Wong [Ben.Wong@vizio.com] |
| **Sent:** | 3/28/2017 6:18:25 PM |
| **To:** | Winston.CHENG（郑孝明）[/o=LETV/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Winston.CHENG768]; Richard [/o=LETV/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Richardeb6] |
| **CC:** | YT Jia(贾跃亭) [/o=LETV/ou=LETV/cn=RECIPIENTS/cn=LETVJIA]; William Wang [William.Wang@vizio.com]; Kurtis Binder [Kurtis.Binder@vizio.com]; Matt Mcrae [Matt.McRae@vizio.com] |
| **Subject:** | Re: 答复: our discussion; thanks!! |

Good morning Winston,

Thank you so much for the midnight con call! Here is the recap (which I'd reiterate the same position as communicated in previous emails and incorporating the steps **in red/bold**):

- VIZIO is requiring that LeEco pay the sum of $100 million to VIZIO through two installments.
- The first installment represents the release of $50 million from escrow immediately upon the execution of the release and termination agreement. This installment will be consideration paid for both parties agreeing to a (i) mutual release and covenant not to sue, (ii) termination of the merger agreement effective immediately, (iv) a mutual agreement to execute a commercial arrangement between VIZIO and LeEco in US, and (iii) joint approval on announcements or public communication regarding the termination of the transaction.
    - **LeEco shall direct the Escrow Agent to pay to VIZIO on _____;**
    - **VIZIO shall make the LeEco Le App available on its compatible VIA-enabled televisions in North America for a period up to three years as of the Effective Date subject to customary engineering and certification processes;**
- The second installment payment of $50 million (in US$ equivalent) will be used to fund a commercial / strategic relationship between VIZIO and LeShi/LeEco for expansion efforts in China. The proposed commercial relationship would provide for (i) VIZIO granting LeEco right to sell VIZIO televisions in China subject to our mutual consent to branding and distribution; (ii) VIZIO preloading the Le contents on VIZIO televisions and displays sold in China. (If I am not mistaken, YT suggested to William he'd

LEECO0000830

need another "low spec" brand to expand in China TV market). (iii) Vizio and LeShi/LeEco will form a joint venture in China;

- **LeEco shall contribute, cash denominated in *renminbi*, or other assets with a fair market value equal to US$50,000,000, as a capital contribution to a newly formed joint venture (the "China JV") between Vizio and LeEco;**
- **China JV will be owned and controlled 50% by VIZIO and 50% by LeEco;**
- **Vizio and LeEco will negotiate in good faith and execute one or more agreements with the China JV to document the commercial arrangements within 45 days of the effective date;**
- **China JV will promote/market Vizio branded devices (TVs, Sound Bars, etc.) through LeEco's current distributing/omni channels in China;**

- **If there was no agreement reached within 45 days, LeEco will pay Vizio in renminbi or other assets with a fair market value equal to US$50,000,000 within 90 days of the effective data;** (Winston, I added it in here; and I sure hope we don't have to "call it"; we should be able to reach an agreement with you within 45 days given our well-earned integrity/credibility;)

Winston, as said, we'd want to reach an agreement with you this week and maintain the "future collaborating potentials" between the YT and William. Looking forward to talking to you tonight. Thanks.

Ben

---

**From:** Ben Wong <Ben.Wong@vizio.com>
**Date:** Monday, March 27, 2017 at 6:15 PM
**To:** Richard Ren 任宏亮 <richard@le.com>
**Cc:** "YT Jia(贾跃亭)" <letvjia@le.com>, William Off Wang <William.Wang@vizio.com>, Kurtis Binder <Kurtis.Binder@vizio.com>, Matt McRae <Matt.McRae@vizio.com>, "Winston.CHENG（郑孝明）" <winston.cheng@le.com>, 王佳伟1 <jerry.wang@le.com>, Charles Hsieh <charles.hsieh@le.com>
**Subject:** Re: 答复: our discussion; thanks!!

Noted, thanks Richard. There were countless communications between the teams in relation to funding sources since the July, 2016 DA signing. Based on our

understanding of the collaborative intentions of both YT and William, it'd be the last debate we'd have, which I think we'd both try to avoid, why the deal didn't fall through.

Richard, I'd like to reiterate that our position would be the same as depicted in my last email to you:

- VIZIO is requiring that LeEco pay the sum of $100 million to VIZIO through two installments.
- The first installment represents the release of $50 million from escrow immediately upon the execution of the release and termination agreement. This installment will be consideration paid for both parties agreeing to a (i) mutual release and covenant not to sue, (ii) termination of the merger agreement effective immediately, **(iv) a mutual agreement to execute a commercial arrangement between VIZIO and LeEco in US, and** (iii) joint approval on announcements or public communication regarding the termination of the transaction.
- **The second installment payment of $50 million (in US$ equivalent) will be used to fund a commercial / strategic relationship between VIZIO and LeShi/LeEco for expansion efforts in China.** The proposed commercial relationship would provide for (i) VIZIO granting LeEco right to sell VIZIO televisions in China subject to our mutual consent to branding and distribution; (ii) VIZIO preloading the Le contents on VIZIO televisions and displays sold in China. (If I am not mistaken, YT suggested to William he'd need another "low spec" brand to expand in China TV market). (iii) Vizio and LeShi/LeEco will form a joint venture in China

In order to reach alignment, and confirm our understanding, please see comment below in **red**.

- LeEco will invest $50 million into a joint venture between LeEco and VIZIO.  This amount will come from the $50 million held in escrow currently. **(once Vizio receives the first US$50M, I'd assume we'd enter a commercial agreement in the States, please refer to 2 above, we'd communicate how we'd term it).**

LEECO0000832

- LeEco will assist in integrating VIZIO's televisions into the China market and LeEco's ecosystem generally **(this effort will be related to for second instalment of $50M in China, please refer to 3 above)**.
- The parties will mutually agree to terminate the merger agreement and agree to a release all claims and a covenant not to sue.

Please give me a ring if you needed further clarifications. Thanks.


Ben


**From:** Richard Ren 任宏亮 <richard@le.com>
**Date:** Sunday, March 26, 2017 at 8:11 PM
**To:** Ben Wong <Ben.Wong@vizio.com>
**Cc:** "YT Jia(贾跃亭)" <letvjia@le.com>, William Off Wang <William.Wang@vizio.com>, Kurtis Binder <Kurtis.Binder@vizio.com>, Matt McRae <Matt.McRae@vizio.com>, "Winston.CHENG（郑孝明）" <winston.cheng@le.com>, 王佳伟1 <jerry.wang@le.com>, Charles Hsieh <charles.hsieh@le.com>
**Subject:** 答复: our discussion; thanks!!

Hello Ben,

As we've mentioned previously and in our meeting with William, despite any rumors you may have heard to the contrary, funding sources for the acquisition have been and continue to remain available.  Additionally, with Rong Chuang China's 融创中国 RMB16.8Bn ($2.6bn) investment in LeShi, LeEco's interest in pursuing the complete acquisition of VIZIO remains extremely high.  However, given China's tightening regulatory policies regarding the transfer of funds offshore, completing the acquisition of VIZIO at the moment is not realistic.

As we wait for these regulatory policies to relax (which we believe will inevitably occur), we are interested in pursuing a strategic partnership with VIZIO in the meantime that we believe will benefit all parties greatly.  We propose the following next steps in building such partnership between LeEco and VIZIO:

1. LeEco will invest $50 million into a joint venture between LeEco and VIZIO.  This amount will come from the $50 million held in escrow currently.
2. LeEco will assist in integrating VIZIO's televisions into the China market and LeEco's ecosystem generally.
3. The parties will mutually agree to terminate the merger agreement and agree to a release all claims and a covenant not to sue.

Please let us know your thoughts as we believe these terms align with the matters discussed between YT and William.

Thanks,
Richard


**发件人:** Ben Wong [mailto:Ben.Wong@vizio.com]
**发送时间:** 2017年3月23日 8:47
**收件人:** Richard <richard@le.com>
**抄送:** YT Jia(贾跃亭) <letvjia@le.com>; William Wang <William.Wang@vizio.com>; Kurtis Binder

LEECO0000833

<Kurtis.Binder@vizio.com>; Matt Mcrae <Matt.McRae@vizio.com>
主題: our discussion; thanks!!

Hello Richard,

Thank you for calling me this afternoon as I think we are both anxious to amicably address this matter between our two companies. In order to summarize our position consistent with the conversation that William held with YT on Sunday, March 19th, we believe that VIZIO is entitled to the full termination fee ("break fee") which is $100 million as stated in the Definitive Agreement. As William explained to YT, both ODMs and channel customers have been constantly voicing their worries/concerns over LeEco's financials, its US market strategies since July 6 deal announcement, which reflected in their subpar supports for Vizio in the past quarters.

Anyway, as I told you, William has instructed me/Vizio team to work with you/LeEco to keep the relationship going (he's pretty sure YT would want the same too). The terms of our proposal are summarized as follows:

- VIZIO is requiring that LeEco pay the sum of $100 million to VIZIO through two installments.
- The first installment represents the release of $50 million from escrow immediately upon the execution of the release and termination agreement. This installment will be consideration paid for both parties agreeing to a (i) mutual release and covenant not to sue, (ii) termination of the merger agreement effective immediately, (iv) a mutual agreement to execute a commercial arrangement between VIZIO and LeEco in US, and (iii) joint approval on announcements or public communication regarding the termination of the transaction.
- The second installment payment of $50 million (in US$ equivalent) will be used to fund a commercial / strategic relationship between VIZIO and LeShi/LeEco for expansion efforts in China. The proposed commercial relationship would provide for (i) VIZIO granting LeEco right to sell VIZIO televisions in China subject to our mutual consent to branding and distribution; (ii) VIZIO preloading the Le contents on VIZIO televisions and displays sold in China. (If I am not mistaken, YT suggested to William he'd need another "low spec" brand to expand in China TV market). (iii) Vizio and LeShi/LeEco will form a joint venture in China.

We believe these terms are consistent with the collaborating spirit between William and YT (I understand you'd need to clarify the 2nd US$50M which you weren't present). We have already started drafting the documents with our legal counsel. Once we receive your feedbacks that these terms are acceptable to YT, we can finalize everything as soon as possible.

Please let me know when you are prepared to meet or discuss as I am available at your convenience. Thanks.

BTW, you probably met the copied individuals: Kurt is our CFO, Matt is our CTO; both of them have been involving the deal from the very beginning and they could work on the agreement (both financially and commercially) immediately. Thanks.

**BEN WONG**
VIZIO // PRESIDENT & COO
O 949.428.2543  C 714.336.8828
39 TESLA, IRVINE, CA 92618

Make Some Noise!
Earn Points. Win
Prizes.
VIZIOFanZone.com

[illegible fine print disclaimer text]

# EXHIBIT L

Message

| | |
|---|---|
| **From**: | Ben Wong [Ben.Wong@vizio.com] |
| **Sent**: | 4/4/2017 5:59:22 AM |
| **To**: | Winston.CHENG（郑孝明） [/o=LETV/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Winston.CHENG768] |
| **Subject**: | Fwd: revised agreement |
| **Attachments**: | image001.png; ATT00001.htm; image002.png; ATT00002.htm; Framework__Termination_and_Mutual_General_Release_VIZIO redline 040317.docx; ATT00003.htm; VIZIO revised agreement - clean 040317.docx; ATT00004.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** "Jerry C. Huang" <Jerry.Huang@vizio.com>
> **Date:** April 4, 2017 at 00:05:35 PDT
> **To:** "winston.cheng@le.com" <winston.cheng@le.com>
> **Cc:** Ben Wong <Ben.Wong@vizio.com>, Kurtis Binder <Kurtis.Binder@vizio.com>
> **Subject: revised agreement**
>
> Hello Winston,
>
> Per Ben's request, I am forwarding a redline and a clean version of our response to Skadden's earlier draft. There are some stylistic changes and clean ups. The substantive changes should track pretty closely to your discussions/agreement with Ben. Thanks.
>
> Best,
>
> Jerry

Jerry C. Huang
VIZIO // Vice President, General Counsel
O 949.777.0785   C 949.945.8260
39 TESLA, IRVINE, CA 92618

Make Some Noise!
Earn Points. Win Prizes.
VIZIOFanZone.com

LEECO0002018

Confidentiality Notice: This e-mail transmitted with any attachments is INTENDED recipient are the only. Its not confidential, privileged, or otherwise exempt from disclosure under applicable laws. You, may with our attachments. If you print, retain a copy, with this sender's acknowledge any e-mail by leave back. This e-mail is intended only for the intended or only named as the e-mail address. If you are not the intended recipient certified that you have received this e-mail in error, you are hereby advised that any dissemination, distribution or, known enter the recovery of this e-mail is strictly prohibited. You are further requested immediately that e-mail and to respond to the sender of the error. Thank you. INTENDED for proper delivery. Thank you.

LEECO0002019

SASMF Draft 4/2/17

FRAMEWORK, TERMINATION AND MUTUAL GENERAL RELEASE AGREEMENT

**Style Definition:** Header

**Style Definition:** Footer

THIS FRAMEWORK, TERMINATION AND MUTUAL GENERAL RELEASE AGREEMENT (this "Agreement") is entered into as of April [3], 2017, by and between LeEco V Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands ("Buyer"), Le V Merger Sub Inc., a California corporation and indirect wholly owned subsidiary of Buyer ("Merger Sub"),) and VIZIO, Inc., a California corporation (the "Company" or "VIZIO"). Buyer, Merger Sub and Company are sometimes referred to herein collectively as the "Parties" and individually as a "Party". Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Merger Agreement (as defined below).

RECITALS

WHEREAS, Buyer, Merger Sub, the Company and Shareholder Representative Services LLC, a Colorado limited liability company solely in its capacity as the representative of the holders of Company capital stock or options ("Shareholder Representative"), entered into that certain Agreement and Plan of Merger, dated July 6, 2016 (the "Merger Agreement") pursuant to which it wasis proposed that Merger Sub wouldwill merge with and into the Company, with the Company surviving and continuing operations as a wholly owned subsidiary of Buyer (the "Merger"); and

WHEREAS, Buyer and the Company now desire to terminate the Merger Agreement and enter into the Aagreements contained herein on the terms and conditions set forth herein; and.

WHEREAS, concurrently with the execution and delivery of this Agreement and in accordance with the terms and conditions of this Agreement, as a material inducement to each Party's willingness to enter into this Agreement and as consideration for terminating the Merger Agreement: (i) Buyer will pay US$100,000,000 as follows: (x) Buyer shall direct the Escrow Agent to pay the US$40,000,000 of Buyer Termination Fee Deposit to the Company concurrent with execution of this Agreement, (y) Buyer shall direct the Escrow Agent to pay the remaining US$10,000,000 of Buyer Termination Fee Deposit to the Company upon execution of the JV Agreement, and (z) Buyer shall contribute, or cause to be contributed, assets with a fair market value equal to US$50,000,000, as a capital contribution to the China JV (as defined below); (ii) the Company shall make the LeEco Le App (as defined below) available on its compatible televisions and displays; and (iii) Buyer shall make Inscape Data Client (as defined below) available on its compatible televisions and displays.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, the Pparties, intending to be legally bound, do hereby agree to the following:

1.    Termination of Merger Agreement and Release of Buyer Termination Fee Deposit.

    1.1    Termination.  Effective upon receipt by the Company of the Buyer the $40,000,000 of Termination Fee Deposit pursuant to Section 1.2 hereof (the "Effective Time"), Buyer and the Company hereby terminate the Merger Agreement pursuant to Section 9.1(a) of the Merger Agreement (the "Termination").  From and after the Effective Time, the Merger

**Formatted:** Justified

-1-

791436.01C-LACSR01A - MSW

Agreement shall become null and void, and the rights and obligations of each applicable Party or any of its or their Affiliates to any other Party under the Merger Agreement shall terminate, except for Section 6.5 (Confidentiality of Terms of Transaction, Etc.) and Article XI (Miscellaneous) of the Merger Agreement and the terms governing the release of the remaining Termination Fee Deposit. Buyer and Company agree to terminate the Merger Agreement pursuant to Section 9.1(a) of the Merger Agreement, effective as of the date hereof (the "Termination").

      1.2    Release of Buyer Termination Fee Deposit. In connection with and as full consideration for the Termination and, the releases set forth in Section 6 hereof, concurrently with below, the execution and delivery of this Agreement by entry into the Company to Buyer commercial arrangements contemplated in Section 2 below and the entry into a joint venture as contemplated in Section 3 below, Buyer agrees to release the Buyer Termination Fee Deposit to Company as follows:

      1.2.1    Buyer agrees to concurrently with the execution of this Agreement to immediately issue a Joint Release Instruction, in the form as attached as Exhibit "A" herewith, (as such term is defined in the Escrow Agreement, dated as of July 6, 2016, by and among Buyer, Company, Shareholder Representative and the Escrow Agent (the "Escrow Agreement")) with Company releasing forty twenty million dollars ($40 20,000,000) from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement) to Company.

      1.2.2    Concurrenlty with the Upon consummation of the JV Agreement (as defined below), Buyer agrees to issue a Joint Release Instruction, (as defined in the form as attached as Exhibit "B" herewith, Escrow Agreement) with Company releasing the remaining ten thirty million dollars ($10 30,000,000) from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement) to Company within three (3) business days of the date of consummation of the JV Agreement.

  2.    Commercial Relationships.

  2.1    LeEco Le App.

      2.1.1    Buyer shall develop and obtain certification of an application to be made available by the Company on all of the Company's smart televisions and displays in North America (the "LeEco Le App").

      2.1.2    Company shall make the LeEco Le App available on all its compatible smart televisions and displays in North America on the first screen of the Company app for all Google Chromecast-enabled televisions and displays as well as for VIA devices for a period of three (3) years from the date that the LeEco Le App obtains certification, subject to customary engineering and certification processes (the "App Processes"). The Company and Buyer shall enter into the Company's customary form agreement(s) for such arrangements. The Company shall use reasonable efforts to assist in the App Processes; provided that Buyer shall be solely responsible for all expenses related to and arising from (a) engineering, development and certification of the LeEco Le App and (b) taking the necessary measures to comply with applicable Laws in the engineering, development and certification of the LeEco Le App.

-2-

791436.01C-LACSR01A - MSW

LEECO0002021

2.2     Inscape Data.

2.2.1     The Company shall develop and obtain certification of a data client
to be made available by Buyer on all of Buyer's smart televisions and displays (the "Inscape
Data Client")

2.2.2     Buyer shall include the Inscape Data Client on all its smart
televisions and displays for a period of three (3) years from the date that the Inscape Data Client
obtains certification, subject to customary engineering and certification processes (the "Data
Client Processes").  Buyer will use reasonable efforts to assist with the Data Client Processes;
provided that Company shall be solely responsible for all expenses related to and arising from (a)
engineering, development and certification of the Inscape Data Client and (b) taking the
necessary measures to comply with applicable Laws in the engineering, development and
certification of the Inscape Data Client.

2.2.3   Subject to applicable law, each of the Company and Buyer shall
come to an agreement on pricing on a per user/per television basis.

2.2.42.2.3     Company shall have access to Inscape data sold by the
China JV so long as it holds at least 50% of the ownership interests in the Data JV.  Buyer shall
also have access to Inscape data sold by the China JV so long as it holds at least 50% of the
ownership interests in the China JV.

3.     Formation of a Joint Venture.

3.1     Following the Effective Time, the The Parties shallagree to negotiate in
good faith and use reasonable efforts to form a commercial relationship between the Company
and Buyer for expansion efforts in the People's Republic of China ("China").  The proposed
commercial relationship would provide for (i) the Company granting the China JV (as defined
below) the right to sell Company televisions in China subject to the mutual consent of the
Company and Buyer onto branding and distribution; (ii) the Company preloading EUI and Le
contents on Company televisions and displays sold in China; and (iii) the Company and Buyer
entering into the joint venture in China as described in this Section 3below (the "China JV").

3.2     The proposed terms of the China JV are as follows:

3.2.1     In connection therewith, Buyer will contribute non-cash assets
with a fair market value equal to US$50,000,000 as a capital contribution to the China JV (the
"Buyer Contribution").  The fair market valuation shall be audited and verified by an
independent, internationally recognized accounting firm.

3.2.2     The China JV will have an operational life of three (3) years from
the effective date of a formal joint venture agreement (the "JV Agreement") between Buyer and
the Company (the "Initial JV TermAgreement").

3.2.3     The China JV will be owned and controlled 50% by the Company
and 50% by Buyer.

-2-

791436.01C-LACSR01A - MSW

LEECO0002022

3.2.4    The China JV will promote and /market Company-branded devices (televisions, displays, sound bars, etc.) through Buyer's current distributing/omni channels in China.

3.2.5    The China JV will operate with the goal of deploying a mutually agreed upon number by Buyer and the Company of an aggregate of [1.5 million] Company-branded televisions and displays in China within the Initial three (3) years from the effective date of the JV Term and achieving such unit sales volume target for the China JV (the "Sales Target"). Agreement.

(a)    The If the China JV does not reach the [1.5 million] units within such three (3) year period, the JV Agreement will provide that Buyer will pay Company US$[•] (in cash or value equivalent) per unit for the difference between [1.5 million] minus the actual units sold through retail, mass and/or direct channels. Company shall sell units to the China JV at reasonable competitive rates that allow a reasonable margin of profit per unit sold by the China JV.

(b)    Buyer and Company will negotiate in good faith to extend the initial three-year operational life of the China JV if the above deployment goal is reached.

(c)(b)    The profit on sold through units sold by the China JV, i.e. through advertising, subscriptions, contents and hardware, etc. will be distributed pro rata to the China JV's equity holders on a quarterly basis.

(c)    Upon achievement of the Sales Target during the Initial JV Term, Buyer and the Company will negotiate in good faith to extend the Initial JV Term.

3.2.6    During the Initial JV Term initial 3-year operational life of the China JV, Company-branded devices will be distributed in China exclusively through the China JV, with EUI and Le content (or as designated by Buyer) as the exclusive content/streaming platform.

3.2.7    The JV Agreement will provide that Buyer will lend up to an aggregate of [XXXXXXXXX] to the China JV for working capital purposes over the Initial JV Term (the "Buyer Loan"). its initial three-year operational life.

(a)    Company and Buyer shall agree upon a three-year Sales Target unit sales volume target for the China JV. (the "Target"). If the China JV achieves the Sales Target in the Initial JV Term initial three-year operational life and the parties agree to continue the China JV operations, then the loan shall be repaid in full.

(b)    Notwithstanding the foregoing, Company will consider participating in the China JV's financial obligations only after it receives full US$50,000,000, in cash or value equivalents, such value equivalents to include assets contributed to the China JV by Buyer and its Affiliates at fair market value.

4.    Formal Agreements.  Buyer and the Company The parties shall negotiate in good faith and execute one or more agreements to document the China JV and the other commercial

-2-

LEECO0002023

arrangements set forth in Sections 2 and 3 hereof~~above~~ with the terms specified therein within forty-five (45) days of the date hereof.

Formatted: Underline
Formatted: Underline

5.    Publicity; Confidentiality and Mutual Non-Disparagement.

5.1    Except for a ~~mutually agreed press release stating that the parties~~ to the Merger Agreement have determined to terminate the Merger Agreement due to failure to obtain PRC regulatory approvals, the Parties~~force majeure, the parties hereto~~ will keep confidential the terms and status of this Agreement and the transactions contemplated hereby and thereby and none of the Parties shall, without the approval of the other, make any press release or other announcement concerning the existence of this Agreement or the terms of the transactions contemplated by this Agreement, except as and to the extent that any such Party shall be so obligated by applicable law, in which case the other Party shall be advised and the Parties shall use their reasonable commercial efforts to cause a mutually agreeable release or announcement to be issued.

Formatted: Justified

5.2    The Parties shall each refrain from making, and shall cause their respective Affiliates and their and their respective agents, subsidiaries, affiliates, successors, assigns, officers, key employees or directors not to make, any public statement or announcement that (i) states or implies that any Pparty or its Affiliates or subsidiaries or any of its or their respective officers or directors or ~~any~~ person who has served as an officer or director of Buyer, Merger Sub or any of their respective Affiliates or subsidiaries, violated or breached the Merger Agreement or (ii) constitutes an ad hominem attack on, or that otherwise disparages, impugns or is reasonably likely to damage the business or reputation of, (x) in the case of statements or announcements by Company, Buyer, Merger Sub or any of their respective Affiliates or subsidiaries or any of its or their respective officers or directors or any person who has served as an officer or director of Buyer, Merger Sub or any of their respective Affiliates or subsidiaries, or (y) in the case of statements or announcements by the Buyer or Merger Sub, the Company or its Affiliates or subsidiaries or any of its or their respective officers or directors or any person who has served as an officer or director of the Company or any of its Affiliates or subsidiaries.  The foregoing shall not restrict the ability of any person to comply with any subpoena or other legal process or respond to a request for information from any governmental authority with jurisdiction over the Pparty from whom information is sought.

6.    Release and Waiver.

6.1    Release By Buyer and Merger Sub.  Effective as of the Effective Time~~date~~ ~~hereof~~, except as expressly set forth herein, Buyer and Merger Sub, each on behalf of itself and its current, former and future parents, subsidiaries, Affiliates, related entities, predecessors, successors, officers, directors, managers, members, shareholders, agents, employees and assigns (individually, each a "Buyer Party Releasor" and collectively, the "Buyer Party Releasors") ~~"),~~ ~~agrees to, and~~ hereby ~~does,~~ generally releases, remises~~release, remise~~ and forever discharges the~~discharge~~ Company and the Company's past, present and future Affiliates, divisions, parents ~~and subsidiaries and their respective shareholders, owners, representatives, attorneys, agents,~~ officers, directors, managers, employees, assigns, heirs and successors in interest, and each of them (each a "Company Released Party" and collectively, the "Company Released Parties") from any and all claims, demands, causes of action, judgments, liens, indebtedness, obligations,

Formatted: Justified

-2-

LEECO0002024

rights, duties, contracts, agreements, undertakings, accounts, damages, liabilities, losses, costs or expenses, including attorneys' fees, of any kind or nature whatsoever (collectively, "Claims") whether known or unknown, liquidated or contingent, whether brought in an individual, derivative or representative capacity, now existing or hereafter arising, under contract, tort, violation of law or any other theory of liability, that arise out of or in any way relate, directly or indirectly, to any matter, cause or thing, act or failure to act whatsoever occurring at any time on or prior to the date hereof, relating to or arising from (a) negotiation or entry into the Merger Agreement, (b) any breach (or claim by Buyer or Merger Sub or any of their Affiliates of breach) of the Merger Agreement or any of the agreements ancillary thereto by the Company, (c) the termination of the Merger Agreement or (de) any of the transactions that have occurred pursuant to or are contemplated by the Merger Agreement or any of the agreements ancillary thereto (collectively, subclauses (a)-(de), the "Buyer Party Released Claims"); provided, however, the Buyer Party Released Claims shall not include any Claims arising from any breach by the Company of its obligations under this Agreement.").

6.2    Release By Company.  Effective as of the full release of the Buyer Termination Fee Deposit of $50,000,000date hereof, except as expressly set forth herein, the Company, on behalf of itself and its current, former and future parents, subsidiaries, Affiliates, related entities, predecessors, successors, officers, directors, managers, members, shareholders, agents, employees and assigns (individually, each a "Company Releasor" and collectively, the "Company Releasors") "), agrees to, and hereby does, generally releases, remisesrelease, remise and forever discharges Buyer, Merger Sub and each of their respective past, present and future Affiliates, divisions, parents and subsidiaries and their respective shareholders, owners, representatives, attorneys, agents, officers, directors, managers, employees, assigns, heirs and successors in interest, and each of them (each a "Buyer Released Party" and collectively, the "Buyer Released Parties") from any and all Claims whether known or unknown, liquidated or contingent, whether brought in an individual, derivative or representative capacity, now existing or hereafter arising, under contract, tort, violation of law or any other theory of liability, that arise out of or in any way relate, directly or indirectly, to any matter, cause or thing, act or failure to act whatsoever occurring at any time on or prior to the date hereof relating to or arising from (a) negotiation or entry into the Merger Agreement, (b) any breach (or claim by Company or any of its Affiliates of breach) of the Merger Agreement or any of the agreements ancillary thereto by Buyer or Merger Sub, (c) the termination of the Merger Agreement or (d or (c) any of the transactions that have occurred pursuant to or are contemplated by the Merger Agreement or any of the agreements ancillary thereto (collectively, subclauses (a)-(de), the "Company Released Claims"); provided, however, the Company Released Claims shall not include any Claims arising from any breach by Buyer or Merger Sub of its obligations under this Agreement.").

6.3    Covenant Not To Sue.  Buyer and Merger Sub, each on behalf of itself and the other Buyer Party Releasors, irrevocably covenants that neither Buyer, Merger Sub nor any of the other Buyer Party Releasors will, directly or indirectly, assert any Claim or demand, commence, institute, or voluntarily aid in any way, or cause to be commenced or instituted any proceeding of any kind against any Company Released Party in respect of any Buyer Party Released Claim.  The Company, on behalf of itself and the other Company Releasors, irrevocably covenants that neither the Company nor any of the other Company Releasors will, directly or indirectly, assert any Claim or demand, commence, institute, or voluntarily aid in any

-2-

791436.01C-LACSR01A - MSW

LEECO0002025

way, or cause to be commenced or instituted any proceeding of any kind against any Buyer
Released Party in respect of any Company Released Claim.

6.4    Waiver.  The Parties acknowledge that (a) Section 1542 of the California
Civil Code provides, and (b) certain other states have provisions substantially as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR
> AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR
> HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH
> THE DEBTOR."

Each Party acknowledges that such provisions are designed to protect a party from waiving
claims which it does not know exist or may exist.  Nonetheless, each Party agrees that the waiver
of such provisions is a material portion of the releases intended by this Agreement, and each
Party expressly waives and relinquishes any and all Claims, rights or benefits that it may have
under Section 1542 of the California Civil Code and any similar such provisions of any
jurisdiction.  In connection with such waiver and relinquishment, the Parties hereby acknowledge
that they or their attorneys may hereafter discover claims or facts in addition to, or different
from, those which he now knows or believes to exist, but that they expressly agree to fully,
finally and forever settle and release any and all Claims, known or unknown, suspected or
unsuspected, which exist or may exist on their behalf against the Company Released Parties and
the Buyer Released Parties at the time of execution of this Agreement.

EACH PARTY FURTHER ACKNOWLEDGES THAT IT IS AWARE THAT IT MAY
HEREAFTER DISCOVER CLAIMS OR FACTS IN ADDITION TO OR DIFFERENT FROM
THOSE IT NOW KNOWS OR BELIEVES TO BE TRUE WITH RESPECT TO THE
MATTERS RELEASED HEREIN.  NEVERTHELESS, IT IS THE INTENTION OF EACH
PARTY TO FULLY, FINALLY AND FOREVER SETTLE AND RELEASE ALL SUCH
MATTERS, AND ALL CLAIMS RELATIVE THERETO, WHICH DO NOW EXIST, MAY
EXIST, OR HERETOFORE HAVE EXISTED BETWEEN THEM.  IN FURTHERANCE OF
SUCH INTENTION, THE RELEASES GIVEN HEREIN SHALL BE AND REMAIN IN
EFFECT AS FULL AND COMPLETE GENERAL RELEASES OF ALL SUCH MATTERS,
NOTWITHSTANDING THE DISCOVERY OR EXISTENCE OF ANY ADDITIONAL OR
DIFFERENT CLAIMS OR FACTS RELATIVE THERETO.

7.    Representations and Warranties.  Each ~~party to the Agreement~~ represents
and warrants and agrees as follows:

7.1    Such Party~~It~~ has all requisite power and authority to execute, deliver and
perform this Agreement. The execution, delivery and performance of this Agreement (including,
without limitation, the releases set forth herein) have to the extent required, been duly and
validly authorized by all corporate proceedings of such Party.

7.2    No authorization, approval or other action, and no notice to or filing with,
any governmental authority or *regulatory body* is required for the due execution, delivery and/or
performance of this Agreement by such Party.

-2-

791436.01C-LACSR01A - MSW

**Formatted:** Justified

LEECO0002026

7.3     Such Pparty or representative thereof has read and considered this Agreement in its entirety and fully understands its contents and the significance of its contents. In executing this Agreement, such Pparty, or representative thereof, does so with full knowledge of any and all rights that it may have with respect to the matters set forth and the Claims released in this Agreement.

7.4     Such PartyIt has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the Claims disposed of by this Agreement.

7.5     Such PartyIt has received independent legal advice with respect to the matters set forth in this Agreement,and the Claims released in Sections 1.1 and 6 hereofof this Agreement and with respect to the rights and asserted rights arising out of such matters, and is entering into this Agreement of its own free will.

7.6     Such PartyIt does not rely upon any statement, representation or promise of another Pparty (or of any officer, agent, employee, representative, or attorney for another Pparty), in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

7.7     Such PartyIt knows of no other Person that may claim an interest in any of the Claims disposed of by such Pparty and is not aware of any litigation, arbitration or other pending proceeding regarding such Claims.

7.8     Such PartyIt has made such investigation of the facts pertaining to this settlement and Sections 1.1 and 6 hereofof this Agreement, and of all the matters pertaining thereto, as it deemed necessary.

7.9     Such PartyIt will execute all such further and additional documents as shall be reasonable and necessary to carry out the provisions of this Agreement.

8.     Indemnification.   The agreements contained in Sections 1.1 and 6 hereofof this Agreement may be pleaded by any of the Buyer Released Parties or Company Released Parties as a full and complete defense and may be used as the basis for an injunction against any action at law or equity instituted or maintained against any of them in violation hereof.  If any Claim is brought or maintained against any Buyer Released Party or Company Released Party in violation of this Agreement, the releasing party will be responsible for all costs and expenses, including, without limitation, reasonable attorneys' fees, incurred by the released party in defending same.

9.     Miscellaneous.

9.1     Entire Agreement.   This Agreement constitutes the entire agreement between the Partiesparties hereto and supersedes any prior understandings, agreements or representations by or between such parties, written or oral, that may have related in any way to the subject matter hereof.  This Agreement may not be amended except in a written instrument executed by Buyer and Company.  No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by the Partyparty hereto to be bound thereby.

-2-

791436.01C-LACSR01A - MSW

LEECO0002027

9.2    Counterparts.    This Agreement may be executed in two or more
counterparts, each of which shall be deemed an original but all of which together shall constitute
one and the same instrument.

9.3    Successors and Assigns.    This Agreement shall be binding upon and inure
to the benefit of the parties hereto and their respective heirs, successors and permitted assigns,
but neither this Agreement nor any of the rights or obligations hereunder may be assigned
(whether by operation of Law, through a change in control or otherwise) by Company without
the prior written consent of Buyer and Merger Sub, or by Buyer or Merger Sub without the prior
written consent of the Company.    Specifically with respect to Sections 1.1 and 6 hereof, this
Agreement is binding upon the Parties, the Buyer Party Releasors and Company Releasors and
their respective successors or assigns, and will inure to the benefit of each of the Buyer Released
Parties and the Company Released Parties.    The Parties acknowledge and agree that each of the
Buyer Released Parties and the Company Released Parties is a third party beneficiary of Sections
1.1 and 6 hereof of this Agreement, and shall be entitled to enforce the provisions in this
Agreement against the Company Releasors or Buyer Party Releasors, respectively, to the same
extent as if such Buyer Released Parties and Company Released Parties were party to Sections
1.1 and 6 hereof of this Agreement.

9.4    Governing Law.    This Agreement (and any claim or controversy arising
out of or relating to this Agreement) shall be governed by and construed in accordance with the
domestic Laws of the State of California without giving effect to any choice or conflict of law
provision or rule that would cause the application of the Laws of any jurisdiction other than the
State of California.

9.5    Notices.    All notices, requests, demands, claims and other communications
which are required or may be given under this Agreement shall be in writing and shall be
deemed to have been duly given when received if personally delivered; when transmitted if
transmitted by email (with electronic confirmation of transmission); the Business Day after it is
sent, if sent for next day delivery to a domestic address by recognized overnight delivery service
(e.g., Federal Express); and five Business Days after the date mailed by certified or registered
mail, postage prepaid, if sent by certified or registered mail, return receipt requested.    In each
case notice shall be sent to:

-2-

791436.01C-LACSR01A - MSW

LEECO0002028

If to Company:

VIZIO, Inc.
39 Tesla
Irvine, California 92618

Attention:  Kurtis J. Binder and Jerry C. Huang
Email: ~~No.~~ kurtis.binder@vizio.com and jerry.huang@vizio.com

with a copy (which shall not constitute notice) to:

Latham & Watkins LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
Attention:  R. Scott Shean and David C. Lee
Email: ~~No.:~~ scott.shean@lw.com and david.lee@lw.com

If to Buyer or Merger Sub:

LeEco Global Group Ltd.
16/F, LeEco Building, 105 Yaojiayuan Road
Chaoyang District, Beijing 100025, PRC
Attention:  Charles Hsieh
Email:  charles.hsieh@le.com

with a copy (which shall not constitute notice) to:

Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Attention:  Michael V. Gisser and Michael J. Mies
Email:  michael.gisser@skadden.com and michael.mies@skadden.com

Any Party~~party hereto~~ may send any notice, request, demand, claim or other communication hereunder to the intended recipient at the address set forth above using any other means, but no such notice, request, demand, claim or other communication shall be deemed to have been duly given unless and until it actually is received by the intended recipient.  Any Party~~party hereto~~ may change the address or facsimile number to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving each other Pp̲arty notice in the manner herein set forth.

9.6    Consent to Jurisdiction.    Each Pp̲arty hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Superior Court of California located in Santa Ana, California, or Federal court of the United States of America, sitting in the Central District of California, Southern Division, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, and each of the parties hereby irrevocably and unconditionally (a) agrees not to commence any such action or proceeding except in such courts, (b) agrees that any claim in respect of any such action

**Formatted:** Justified

-2-

~~791436.01C-LACSR01A - MSW~~

LEECO0002029

or proceeding may be heard and determined in such California State court or, to the extent permitted by law, in such Federal court, (c) waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any such action or proceeding in any such California State or Federal court, and (d) waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such California State or Federal court.  Each of the Partiesparties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each Party party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 9.5 hereof.  Nothing in this Agreement will affect the right of any Partyparty to this Agreement to serve process in any other manner permitted by law.

9.7   Severability of Provisions.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced as a result of any rule of law or public policy, all other terms and other provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated by this Agreement is not affected in any manner materially adverse to any Pparty.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Partiesparties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Pparties as closely as possible in an acceptable manner to the end that the transactions contemplated by this Agreement are fulfilled to the greatest extent possible.

9.8   Specific Performance.  The Partiesparties to this Agreement agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed by, or were otherwise breached by, the Pparties in accordance with their specific terms.  It is accordingly agreed that (x) Buyer and Merger Sub shall be entitled to an injunction or injunctions to prevent breaches of this Agreement by Company and to enforce specifically the terms and provisions of this Agreement, and (y) Company shall be entitled to an injunction or injunctions to prevent breaches of this Agreement by Buyer or Merger Sub and to enforce specifically the terms and provisions of this Agreement.  Any such injunction(s) or action seeking specific performance shall be subject to Section 9.6 hereofsought in California State court.

*[signature page follows]*

Formatted: BodyText 1

791436.01C-LACSR01A - MSW

LEECO0002030

**Formatted:** Normal, Justified

LEECO0002031

IN WITNESS WHEREOF, the Parties have executed and delivered this Framework, Termination and Mutual General Release Agreement as of the date first written above.

BUYER

LEECO V LTD.

By: _____
Name: _____
Title: _____

MERGER SUB

LE V MERGER SUB INC.

By: _____
Name: _____
Title: _____

**Formatted:** Underline

**Formatted:** Indent: Before:  0"

[signatures continued on next page]

US-DOCS\83351417.10

<u>COMPANY</u>

VIZIO, INC.

By: _____

Name: _____

Title: _____

US-DOCS\83351417.10

LEECO0002033

Exhibit A

**JOINT WRITTEN INSTRUCTIONS TO ESCROW AGENT
FOR RELEASE OF BUYER TERMINATION FEE ESCROW FUNDS**

April [ ], 2017

**VIA OVERNIGHT MAIL AND EMAIL**

Citibank, N.A.
787 West Fifth Street, 28th Floor
Los Angeles, CA 90071
Attention: Luda Semenova
Telephone No.: (213) 239-2136
E-mail: luda.semenova@citi.com

Dear Ms. Semenova:

Pursuant to Section 4(a)(ii) of the Escrow Agreement, dated as of July 6, 2016 (the "Escrow Agreement"), by and among LeEco V l.td., a Cayman Islands exempted company with limited liability (the "Buyer"), VIZIO, Inc. a California corporation (the "Company"), and Shareholder Representative Services LLC, a Colorado limited liability company, and Citibank, National Association (the "Escrow Agent"), the Escrow Agent is hereby jointly instructed, authorized and directed by Buyer and the Company as follows:

1.      The Escrow Agent is jointly instructed, authorized and directed to release to the Company the sum of US$40,000,000, which amount represents the Buyer Termination Fee Deposit Amount (as defined in the Escrow Agreement), from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement), by wire transfer of immediately available funds to the account designated below:

Account Name: VIZIO, Inc.
Account Number: 83900266
Bank Name: East West Bank
ABA Number: 322070381
Bank Address: 19540 Jamboree, Irvine, CA 92612
Beneficiary Address: 39 Tesla, Irvine, CA 92618
Amount: US$40,000,000.00

2.      No instructions, authorizations and directions have been given hereunder with respect to any other continuing obligations or duties of the Escrow Agent other than as expressly set forth herein.

*[Signature Page Follows]*

US-DOCS\83351417.10

LEECO0002034

IN WITNESS WHEREOF, the undersigned have executed these Joint Written Instructions on the date first written above.

VIZIO, INC.

By: _____
Name: _____
Title: _____


LEECO V LTD.

By: _____
Name: _____
Title: _____

US-DOCS\83351417.10

LEECO0002035

Exhibit B

## JOINT WRITTEN INSTRUCTIONS TO ESCROW AGENT FOR RELEASE OF BUYER TERMINATION FEE ESCROW FUNDS

[ ], 2017

**VIA OVERNIGHT MAIL AND EMAIL**

Citibank, N.A.
787 West Fifth Street, 28th Floor
Los Angeles, CA 90071
Attention: Luda Semenova
Telephone No.: (213) 239-2136
E-mail: luda.semenova@citi.com

Dear Ms. Semenova:

Pursuant to Section 4(a)(ii) of the Escrow Agreement, dated as of July 6, 2016 (the "Escrow Agreement"), by and among LeEco V Ltd., a Cayman Islands exempted company with limited liability (the "Buyer"), VIZIO, Inc. a California corporation (the "Company"), and Shareholder Representative Services LLC, a Colorado limited liability company, and Citibank, National Association (the "Escrow Agent"), the Escrow Agent is hereby jointly instructed, authorized and directed by Buyer and the Company as follows:

3.     The Escrow Agent is jointly instructed, authorized and directed to release to the Company the sum of US$10,000,000, which amount represents the Buyer Termination Fee Deposit Amount (as defined in the Escrow Agreement), from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement), by wire transfer of immediately available funds to the account designated below:

Account Name: VIZIO, Inc.
Account Number: 83900266
Bank Name: East West Bank
ABA Number: 322070381
Bank Address: 19540 Jamboree, Irvine, CA 92612
Beneficiary Address: 39 Tesla, Irvine, CA 92618
Amount: US$10,000,000.00

4.     No instructions, authorizations and directions have been given hereunder with respect to any other continuing obligations or duties of the Escrow Agent other than as expressly set forth herein.

*[Signature Page Follows]*

US-DOCS\83351417.10

IN WITNESS WHEREOF, the undersigned have executed these Joint Written Instructions on the date first written above.

VIZIO, INC.

By: _____
Name: _____
Title: _____

LEECO V LTD.

By: _____
Name: _____
Title: _____

LEECO0002037

LEECO0002038

FRAMEWORK, TERMINATION AND MUTUAL GENERAL RELEASE AGREEMENT

THIS FRAMEWORK, TERMINATION AND MUTUAL GENERAL RELEASE AGREEMENT (this "Agreement") is entered into as of April [3], 2017, by and between LeEco V Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands ("Buyer"), Le V Merger Sub Inc., a California corporation and indirect wholly owned subsidiary of Buyer ("Merger Sub"), and VIZIO, Inc., a California corporation (the "Company" or "VIZIO"). Buyer, Merger Sub and Company are sometimes referred to herein collectively as the "Parties" and individually as a "Party". Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Merger Agreement (as defined below).

RECITALS

WHEREAS, Buyer, Merger Sub, the Company and Shareholder Representative Services LLC, a Colorado limited liability company solely in its capacity as the representative of the holders of Company capital stock or options ("Shareholder Representative"), entered into that certain Agreement and Plan of Merger, dated July 6, 2016 (the "Merger Agreement") pursuant to which it was proposed that Merger Sub would merge with and into the Company, with the Company surviving and continuing operations as a wholly owned subsidiary of Buyer (the "Merger");

WHEREAS, Buyer and the Company now desire to terminate the Merger Agreement and enter into the Agreement contained herein on the terms and conditions set forth herein; and

WHEREAS, concurrently with the execution and delivery of this Agreement and in accordance with the terms and conditions of this Agreement, as a material inducement to each Party's willingness to enter into this Agreement and as consideration for terminating the Merger Agreement: (i) Buyer will pay US$100,000,000 as follows: (x) Buyer shall direct the Escrow Agent to pay the US$40,000,000 of Buyer Termination Fee Deposit to the Company concurrent with execution of this Agreement, (y) Buyer shall direct the Escrow Agent to pay the remaining US$10,000,000 of Buyer Termination Fee Deposit to the Company upon execution of the JV Agreement, and (z) Buyer shall contribute, or cause to be contributed, assets with a fair market value equal to US$50,000,000, as a capital contribution to the China JV (as defined below); (ii) the Company shall make the LeEco Le App (as defined below) available on its compatible televisions and displays; and (iii) Buyer shall make Inscape Data Client (as defined below) available on its compatible televisions and displays.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, the Parties, intending to be legally bound, hereby agree to the following:

1. Termination of Merger Agreement and Release of Buyer Termination Fee Deposit.

1.1 Termination. Effective upon receipt by the Company of the Buyer the $40,000,000 of Termination Fee Deposit pursuant to Section 1.2 hereof (the "Effective Time"), Buyer and the Company hereby terminate the Merger Agreement pursuant to Section 9.1(a) of the Merger Agreement (the "Termination"). From and after the Effective Time, the Merger

LEECO0002039

Agreement shall become null and void, and the rights and obligations of each applicable Party or any of its or their Affiliates to any other Party under the Merger Agreement shall terminate, except for Section 6.5 (Confidentiality of Terms of Transaction, Etc.) and Article XI (Miscellaneous) of the Merger Agreement and the terms governing the release of the remaining Termination Fee Deposit.

   1.2 <u>Release of Buyer Termination Fee Deposit</u>.  In connection with and as full consideration for the Termination and the releases set forth in <u>Section 6</u> hereof, concurrently with the execution and delivery of this Agreement by the Company to Buyer, Buyer agrees to release the Buyer Termination Fee Deposit to Company as follows:

   1.2.1 Buyer agrees to concurrently with the execution of this Agreement to issue a Joint Release Instruction, in the form as attached as Exhibit "A" herewith, (as such term is defined in the Escrow Agreement, dated as of July 6, 2016, by and among Buyer, Company, Shareholder Representative and the Escrow Agent (the "<u>Escrow Agreement</u>")) with Company releasing forty million dollars ($40,000,000) from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement) to Company.

   1.2.2 Concurrenlty with the consummation of the JV Agreement (as defined below), Buyer agrees to issue a Joint Release Instruction, in the form as attached as Exhibit "B" herewith, with Company releasing the remaining ten million dollars ($10,000,000) from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement) to Company.

   2. <u>Commercial Relationships</u>.

   2.1 <u>LeEco Le App</u>.

   2.1.1 Buyer shall develop and obtain certification of an application to be made available by the Company on all of the Company's smart televisions and displays in North America (the "<u>LeEco Le App</u>").

   2.1.2 Company shall make the LeEco Le App available on all its compatible smart televisions and displays in North America for all Google Chromecast-enabled televisions and displays as well as for VIA devices for a period of three (3) years from the date that the LeEco Le App obtains certification, subject to customary engineering and certification processes (the "<u>App Processes</u>").  The Company and Buyer shall enter into the Company's customary form agreement(s) for such arrangements.  The Company shall use reasonable efforts to assist in the App Processes; <u>provided</u> that Buyer shall be solely responsible for all expenses related to and arising from (a) engineering, development and certification of the LeEco Le App and (b) taking the necessary measures to comply with applicable Laws in the engineering, development and certification of the LeEco Le App.

   2.2 <u>Inscape Data</u>.

2.2.1   The Company shall develop and obtain certification[1] of a data client to be made available by Buyer on all of Buyer's smart televisions and displays (the "Inscape Data Client")

2.2.2   Buyer shall include the Inscape Data Client on all its smart televisions and displays for a period of three (3) years from the date that the Inscape Data Client obtains certification, subject to customary engineering and certification processes (the "Data Client Processes").   Buyer will use reasonable efforts to assist with the Data Client Processes; provided that Company shall be solely responsible for all expenses related to and arising from (a) engineering, development and certification of the Inscape Data Client and (b) taking the necessary measures to comply with applicable Laws in the engineering, development and certification of the Inscape Data Client.

2.2.3   Subject to applicable law, each of the Company and Buyer shall have access to Inscape data sold by the China JV so long as it holds at least 50% of the ownership interests in the China JV.

3.      Formation of a Joint Venture.

3.1      Following the Effective Time, the Parties shall negotiate in good faith and use reasonable efforts to form a commercial relationship between the Company and Buyer for expansion efforts in the People's Republic of China ("China").   The proposed commercial relationship would provide for (i) the Company granting the China JV the right to sell Company televisions in China subject to the mutual consent of the Company and Buyer on branding and distribution; (ii) the Company preloading EUI and Le contents on Company televisions and displays sold in China; and (iii) the Company and Buyer entering into the joint venture in China as described in this Section 3 (the "China JV").

3.2      The proposed terms of the China JV are as follows:

3.2.1   In connection therewith, Buyer will contribute non-cash assets with a fair market value equal to US$50,000,000 as a capital contribution to the China JV (the "Buyer Contribution").   The fair market valuation shall be audited and verified by an independent, internationally recognized accounting firm.

3.2.2   The China JV will have an operational life of three (3) years from the effective date of a formal joint venture agreement (the "JV Agreement") between Buyer and the Company (the "Initial JV Term").

3.2.3   The China JV will be owned and controlled 50% by the Company and 50% by Buyer.

3.2.4   The China JV will promote and market Company-branded devices (televisions, displays, sound bars, etc.) through Buyer's current distributing/omni channels in China.

_____

3.2.5    The China JV will operate with the goal of deploying a mutually agreed upon number by Buyer and the Company of Company-branded televisions and displays in China within the Initial JV Term and achieving such unit sales volume target for the China JV (the "Sales Target").

(a)    The Company shall sell units to the China JV at reasonable competitive rates that allow a reasonable margin of profit per unit sold by the China JV.

(b)    The profit on units sold by the China JV, i.e. through advertising, subscriptions, contents and hardware, etc. will be distributed pro rata to the China JV's equity holders on a quarterly basis.

(c)    Upon achievement of the Sales Target during the Initial JV Term, Buyer and the Company will negotiate in good faith to extend the Initial JV Term.

3.2.6    During the Initial JV Term, Company-branded devices will be distributed in China exclusively through the China JV, with EUI and Le content (or as designated by Buyer) as the exclusive content/streaming platform.

3.2.7    The JV Agreement will provide that Buyer will lend up to an aggregate of [XXXXXXXX] to the China JV for working capital purposes over the Initial JV Term (the "Buyer Loan").

(a)    Company and Buyer shall agree upon a three-year Sales Target for the China JV.  If the China JV achieves the Sales Target in the Initial JV Term and the parties agree to continue the China JV operations, then the loan shall be repaid in full.

(b)    Notwithstanding the foregoing, Company will consider participating in the China JV's financial obligations only after it receives full US$50,000,000, in cash or value equivalents, such value equivalents to include assets contributed to the China JV by Buyer and its Affiliates at fair market value.

4.    Formal Agreements.  Buyer and the Company shall negotiate in good faith and execute one or more agreements to document the China JV and the other commercial arrangements set forth in Sections 2 and 3 hereof with the terms specified therein within forty-five (45) days of the date hereof.

5.    Publicity; Confidentiality and Mutual Non-Disparagement.

5.1    Except for a mutually agreed press release stating that the parties to the Merger Agreement have determined to terminate the Merger Agreement due to failure to obtain PRC regulatory approvals, the Parties will keep confidential the terms and status of this Agreement and the transactions contemplated hereby and thereby and none of the Parties shall, without the approval of the other, make any press release or other announcement concerning the existence of this Agreement or the terms of the transactions contemplated by this Agreement, except as and to the extent that any such Party shall be so obligated by applicable law, in which case the other Party shall be advised and the Parties shall use their reasonable commercial efforts to cause a mutually agreeable release or announcement to be issued.

5.2     The Parties shall each refrain from making, and shall cause their respective Affiliates and their and their respective agents, subsidiaries, affiliates, successors, assigns, officers, key employees or directors not to make, any public statement or announcement that (i) states or implies that any Party or its Affiliates or subsidiaries or any of its or their respective officers or directors or any person who has served as an officer or director of Buyer, Merger Sub or any of their respective Affiliates or subsidiaries, violated or breached the Merger Agreement or (ii) constitutes an ad hominem attack on, or that otherwise disparages, impugns or is reasonably likely to damage the business or reputation of, (x) in the case of statements or announcements by Company, Buyer, Merger Sub or any of their respective Affiliates or subsidiaries or any of its or their respective officers or directors or any person who has served as an officer or director of Buyer, Merger Sub or any of their respective Affiliates or subsidiaries, or (y) in the case of statements or announcements by the Buyer or Merger Sub, the Company or its Affiliates or subsidiaries or any of its or their respective officers or directors or any person who has served as an officer or director of the Company or any of its Affiliates or subsidiaries.  The foregoing shall not restrict the ability of any person to comply with any subpoena or other legal process or respond to a request for information from any governmental authority with jurisdiction over the Party from whom information is sought.

6.      <u>Release and Waiver</u>.

6.1     <u>Release By Buyer and Merger Sub</u>.  Effective as of the Effective Time, except as expressly set forth herein, Buyer and Merger Sub, each on behalf of itself and its current, former and future parents, subsidiaries, Affiliates, related entities, predecessors, successors, officers, directors, managers, members, shareholders, agents, employees and assigns (individually, each a "<u>Buyer Party Releasor</u>" and collectively, the "<u>Buyer Party Releasors</u>") hereby generally releases, remises and forever discharges the Company and the Company's past, present and future Affiliates, divisions, parents and subsidiaries and their respective shareholders, owners, representatives, attorneys, agents, officers, directors, managers, employees, assigns, heirs and successors in interest, and each of them (each a "<u>Company Released Party</u>" and collectively, the "<u>Company Released Parties</u>") from any and all claims, demands, causes of action, judgments, liens, indebtedness, obligations, rights, duties, contracts, agreements, undertakings, accounts, damages, liabilities, losses, costs or expenses, including attorneys' fees, of any kind or nature whatsoever (collectively, "<u>Claims</u>") whether known or unknown, liquidated or contingent, whether brought in an individual, derivative or representative capacity, now existing or hereafter arising, under contract, tort, violation of law or any other theory of liability, that arise out of or in any way relate, directly or indirectly, to any matter, cause or thing, act or failure to act whatsoever occurring at any time on or prior to the date hereof, relating to or arising from (a) negotiation or entry into the Merger Agreement, (b) any breach (or claim by Buyer or Merger Sub or any of their Affiliates of breach) of the Merger Agreement or any of the agreements ancillary thereto by the Company, (c) the termination of the Merger Agreement or (d) any of the transactions that have occurred pursuant to or are contemplated by the Merger Agreement or any of the agreements ancillary thereto (collectively, subclauses (a)-(d), the "<u>Buyer Party Released Claims</u>"); <u>provided,</u> however, the Buyer Party Released Claims shall not include any Claims arising from any breach by the Company of its obligations under this Agreement.

6.2     Release By Company.   Effective as of the full release of the Buyer Termination Fee Deposit of $50,000,000, except as expressly set forth herein, the Company, on behalf of itself and its current, former and future parents, subsidiaries, Affiliates, related entities, predecessors, successors, officers, directors, managers, members, shareholders, agents, employees and assigns (individually, each a "Company Releasor" and collectively, the "Company Releasors") hereby generally releases, remises and forever discharges Buyer, Merger Sub and each of their respective past, present and future Affiliates, divisions, parents and subsidiaries and their respective shareholders, owners, representatives, attorneys, agents, officers, directors, managers, employees, assigns, heirs and successors in interest, and each of them (each a "Buyer Released Party" and collectively, the "Buyer Released Parties") from any and all Claims whether known or unknown, liquidated or contingent, whether brought in an individual, derivative or representative capacity, now existing or hereafter arising, under contract, tort, violation of law or any other theory of liability, that arise out of or in any way relate, directly or indirectly, to any matter, cause or thing, act or failure to act whatsoever occurring at any time on or prior to the date hereof relating to or arising from (a) negotiation or entry into the Merger Agreement, (b) any breach (or claim by Company or any of its Affiliates of breach) of the Merger Agreement or any of the agreements ancillary thereto by Buyer or Merger Sub, (c) the termination of the Merger Agreement or (d) any of the transactions that have occurred pursuant to or are contemplated by the Merger Agreement or any of the agreements ancillary thereto (collectively, subclauses (a)-(d), the "Company Released Claims"); provided, however, the Company Released Claims shall not include any Claims arising from any breach by Buyer or Merger Sub of its obligations under this Agreement.

6.3     Covenant Not To Sue.   Buyer and Merger Sub, each on behalf of itself and the other Buyer Party Releasors, irrevocably covenants that neither Buyer, Merger Sub nor any of the other Buyer Party Releasors will, directly or indirectly, assert any Claim or demand, commence, institute, or voluntarily aid in any way, or cause to be commenced or instituted any proceeding of any kind against any Company Released Party in respect of any Buyer Party Released Claim.   The Company, on behalf of itself and the other Company Releasors, irrevocably covenants that neither the Company nor any of the other Company Releasors will, directly or indirectly, assert any Claim or demand, commence, institute, or voluntarily aid in any way, or cause to be commenced or instituted any proceeding of any kind against any Buyer Released Party in respect of any Company Released Claim.

6.4     Waiver.   The Parties acknowledge that (a) Section 1542 of the California Civil Code provides, and (b) certain other states have provisions substantially as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Each Party acknowledges that such provisions are designed to protect a party from waiving claims which it does not know exist or may exist.   Nonetheless, each Party agrees that the waiver of such provisions is a material portion of the releases intended by this Agreement, and each Party expressly waives and relinquishes any and all Claims, rights or benefits that it may have

under Section 1542 of the California Civil Code and any similar such provisions of any jurisdiction. In connection with such waiver and relinquishment, the Parties hereby acknowledge that they or their attorneys may hereafter discover claims or facts in addition to, or different from, those which he now knows or believes to exist, but that they expressly agree to fully, finally and forever settle and release any and all Claims, known or unknown, suspected or unsuspected, which exist or may exist on their behalf against the Company Released Parties and the Buyer Released Parties at the time of execution of this Agreement.

EACH PARTY FURTHER ACKNOWLEDGES THAT IT IS AWARE THAT IT MAY HEREAFTER DISCOVER CLAIMS OR FACTS IN ADDITION TO OR DIFFERENT FROM THOSE IT NOW KNOWS OR BELIEVES TO BE TRUE WITH RESPECT TO THE MATTERS RELEASED HEREIN. NEVERTHELESS, IT IS THE INTENTION OF EACH PARTY TO FULLY, FINALLY AND FOREVER SETTLE AND RELEASE ALL SUCH MATTERS, AND ALL CLAIMS RELATIVE THERETO, WHICH DO NOW EXIST, MAY EXIST, OR HERETOFORE HAVE EXISTED BETWEEN THEM. IN FURTHERANCE OF SUCH INTENTION, THE RELEASES GIVEN HEREIN SHALL BE AND REMAIN IN EFFECT AS FULL AND COMPLETE GENERAL RELEASES OF ALL SUCH MATTERS, NOTWITHSTANDING THE DISCOVERY OR EXISTENCE OF ANY ADDITIONAL OR DIFFERENT CLAIMS OR FACTS RELATIVE THERETO.

7. <u>Representations and Warranties</u>. Each Party represents and warrants and agrees as follows:

7.1 Such Party has all requisite power and authority to execute, deliver and perform this Agreement. The execution, delivery and performance of this Agreement (including, without limitation, the releases set forth herein) have, to the extent required, been duly and validly authorized by all corporate proceedings of such Party.

7.2 No authorization, approval or other action, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and/or performance of this Agreement by such Party.

7.3 Such Party or representative thereof has read and considered this Agreement in its entirety and fully understands its contents and the significance of its contents. In executing this Agreement, such Party, or representative thereof, does so with full knowledge of any and all rights that it may have with respect to the matters set forth and the Claims released in this Agreement.

7.4 Such Party has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the Claims disposed of by this Agreement.

7.5 Such Party has received independent legal advice with respect to the matters set forth in this Agreement, the Claims released in <u>Sections 1.1</u> and <u>6</u> hereof and with respect to the rights and asserted rights arising out of such matters, and is entering into this Agreement of its own free will.

7.6 Such Party does not rely upon any statement, representation or promise of another Party (or of any officer, agent, employee, representative, or attorney for another Party),

in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

   7.7 Such Party knows of no other Person that may claim an interest in any of the Claims disposed of by such Party and is not aware of any litigation, arbitration or other pending proceeding regarding such Claims.

   7.8 Such Party has made such investigation of the facts pertaining to this settlement and <u>Sections 1.1</u> and <u>6</u> hereof, and of all the matters pertaining thereto, as it deemed necessary.

   7.9 Such Party will execute all such further and additional documents as shall be reasonable and necessary to carry out the provisions of this Agreement.

   8. <u>Indemnification</u>.  The agreements contained in <u>Sections 1.1</u> and <u>6</u> hereof may be pleaded by any of the Buyer Released Parties or Company Released Parties as a full and complete defense and may be used as the basis for an injunction against any action at law or equity instituted or maintained against any of them in violation hereof.  If any Claim is brought or maintained against any Buyer Released Party or Company Released Party in violation of this Agreement, the releasing party will be responsible for all costs and expenses, including, without limitation, reasonable attorneys' fees, incurred by the released party in defending same.

   9. <u>Miscellaneous</u>.

   9.1 <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties and supersedes any prior understandings, agreements or representations by or between such parties, written or oral, that may have related in any way to the subject matter hereof.  This Agreement may not be amended except in a written instrument executed by Buyer and Company.  No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by the Party to be bound thereby.

   9.2 <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

   9.3 <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and permitted assigns, but neither this Agreement nor any of the rights or obligations hereunder may be assigned (whether by operation of Law, through a change in control or otherwise) by Company without the prior written consent of Buyer and Merger Sub, or by Buyer or Merger Sub without the prior written consent of the Company.  Specifically with respect to <u>Sections 1.1</u> and <u>6</u> hereof, this Agreement is binding upon the Parties, the Buyer Party Releasors and Company Releasors and their respective successors or assigns, and will inure to the benefit of each of the Buyer Released Parties and the Company Released Parties.  The Parties acknowledge and agree that each of the Buyer Released Parties and the Company Released Parties is a third party beneficiary of <u>Sections 1.1</u> and <u>6</u> hereof, and shall be entitled to enforce the provisions in this Agreement against the Company Releasors or Buyer Party Releasors, respectively, to the same extent as if such Buyer Released Parties and Company Released Parties were party to <u>Sections 1.1</u> and <u>6</u> hereof.

LEECO0002046

9.4     Governing Law.  This Agreement (and any claim or controversy arising out of or relating to this Agreement) shall be governed by and construed in accordance with the domestic Laws of the State of California without giving effect to any choice or conflict of law provision or rule that would cause the application of the Laws of any jurisdiction other than the State of California.

9.5     Notices.  All notices, requests, demands, claims and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by email (with electronic confirmation of transmission); the Business Day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and five Business Days after the date mailed by certified or registered mail, postage prepaid, if sent by certified or registered mail, return receipt requested.  In each case notice shall be sent to:

If to Company:

VIZIO, Inc.
39 Tesla
Irvine, California 92618
Attention:  Kurtis J. Binder and Jerry C. Huang
Email:  kurtis.binder@vizio.com and jerry.huang@vizio.com

with a copy (which shall not constitute notice) to:

Latham & Watkins LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
Attention:  R. Scott Shean and David C. Lee
Email:  scott.shean@lw.com and david.lee@lw.com

If to Buyer or Merger Sub:

LeEco Global Group Ltd.
16/F, LeEco Building, 105 Yaojiayuan Road
Chaoyang District, Beijing 100025, PRC
Attention:  Charles Hsieh
Email:  charles.hsieh@le.com

with a copy (which shall not constitute notice) to:

Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Attention:  Michael V. Gisser and Michael J. Mies
Email:  michael.gisser@skadden.com and michael.mies@skadden.com

Any Party may send any notice, request, demand, claim or other communication hereunder to the intended recipient at the address set forth above using any other means, but no such notice, request, demand, claim or other communication shall be deemed to have been duly given unless and until it actually is received by the intended recipient.  Any Party may change the address or facsimile number to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving each other Party notice in the manner herein set forth.

        9.6    <u>Consent to Jurisdiction</u>.    Each Party hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Superior Court of California located in Santa Ana, California, or Federal court of the United States of America, sitting in the Central District of California, Southern Division, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, and each of the parties hereby irrevocably and unconditionally (a) agrees not to commence any such action or proceeding except in such courts, (b) agrees that any claim in respect of any such action or proceeding may be heard and determined in such California State court or, to the extent permitted by law, in such Federal court, (c) waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any such action or proceeding in any such California State or Federal court, and (d) waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such California State or Federal court.  Each of the Parties agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each Party irrevocably consents to service of process in the manner provided for notices in <u>Section 9.5</u> hereof.  Nothing in this Agreement will affect the right of any Party to serve process in any other manner permitted by law.

        9.7    <u>Severability of Provisions</u>.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced as a result of any rule of law or public policy, all other terms and other provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated by this Agreement is not affected in any manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated by this Agreement are fulfilled to the greatest extent possible.

        9.8    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed by, or were otherwise breached by, the Parties in accordance with their specific terms.  It is accordingly agreed that (x) Buyer and Merger Sub shall be entitled to an injunction or injunctions to prevent breaches of this Agreement by Company and to enforce specifically the terms and provisions of this Agreement, and (y) Company shall be entitled to an injunction or injunctions to prevent breaches of this Agreement by Buyer or Merger Sub and to enforce specifically the terms and provisions of this Agreement.  Any such injunction(s) or action seeking specific performance shall be subject to <u>Section 9.6</u> hereof.

[*signature page follows*]

LEECO0002049

IN WITNESS WHEREOF, the Parties have executed and delivered this Framework, Termination and Mutual General Release Agreement as of the date first written above.

BUYER

LEECO V LTD.

By:    _____
Name:  _____
Title: _____

MERGER SUB

LE V MERGER SUB INC.

By:    _____
Name:  _____
Title: _____

COMPANY

VIZIO, INC.

By:    _____
Name:  _____
Title: _____

US-DOCS:83351417.10

LEECO0002050

Exhibit A

**JOINT WRITTEN INSTRUCTIONS TO ESCROW AGENT**
**FOR RELEASE OF BUYER TERMINATION FEE ESCROW FUNDS**

April [  ], 2017

**VIA OVERNIGHT MAIL AND EMAIL**

Citibank, N.A.
787 West Fifth Street, 28th Floor
Los Angeles, CA 90071
Attention: Luda Semenova
Telephone No.: (213) 239-2136
E-mail: luda.semenova@citi.com

Dear Ms. Semenova:

Pursuant to Section 4(a)(ii) of the Escrow Agreement, dated as of July 6, 2016 (the "Escrow Agreement"), by and among LeEco V Ltd., a Cayman Islands exempted company with limited liability (the "Buyer"), VIZIO, Inc. a California corporation (the "Company"), and Shareholder Representative Services LLC, a Colorado limited liability company, and Citibank, National Association (the "Escrow Agent"), the Escrow Agent is hereby jointly instructed, authorized and directed by Buyer and the Company as follows:

1.    The Escrow Agent is jointly instructed, authorized and directed to release to the Company the sum of US$40,000,000, which amount represents the Buyer Termination Fee Deposit Amount (as defined in the Escrow Agreement), from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement), by wire transfer of immediately available funds to the account designated below:

Account Name: VIZIO, Inc.
Account Number: 83900266
Bank Name: East West Bank
ABA Number: 322070381
Bank Address: 19540 Jamboree, Irvine, CA 92612
Beneficiary Address: 39 Tesla, Irvine, CA 92618
Amount: US$40,000,000.00

2.    No instructions, authorizations and directions have been given hereunder with respect to any other continuing obligations or duties of the Escrow Agent other than as expressly set forth herein.

*[Signature Page Follows]*

US-DOCS\83351417.10

IN WITNESS WHEREOF, the undersigned have executed these Joint Written Instructions on the date first written above.

VIZIO, INC.

By: _____
Name: _____
Title: _____

LEECO V LTD.

By: _____
Name: _____
Title: _____

US-DOCS\83351417.10

LEECO0002052

Exhibit B

## JOINT WRITTEN INSTRUCTIONS TO ESCROW AGENT
## FOR RELEASE OF BUYER TERMINATION FEE ESCROW FUNDS

[ ], 2017

**VIA OVERNIGHT MAIL AND EMAIL**

Citibank, N.A.
787 West Fifth Street, 28th Floor
Los Angeles, CA 90071
Attention: Luda Semenova
Telephone No.: (213) 239-2136
E-mail: luda.semenova@citi.com

Dear Ms. Semenova:

Pursuant to Section 4(a)(ii) of the Escrow Agreement, dated as of July 6, 2016 (the "Escrow Agreement"), by and among LeEco V Ltd., a Cayman Islands exempted company with limited liability (the "Buyer"), VIZIO, Inc. a California corporation (the "Company"), and Shareholder Representative Services LLC, a Colorado limited liability company, and Citibank, National Association (the "Escrow Agent"), the Escrow Agent is hereby jointly instructed, authorized and directed by Buyer and the Company as follows:

3. The Escrow Agent is jointly instructed, authorized and directed to release to the Company the sum of US$10,000,000, which amount represents the Buyer Termination Fee Deposit Amount (as defined in the Escrow Agreement), from the Buyer Termination Fee Escrow Account (as defined in the Escrow Agreement), by wire transfer of immediately available funds to the account designated below:

Account Name: VIZIO, Inc.
Account Number: 83900266
Bank Name: East West Bank
ABA Number: 322070381
Bank Address: 19540 Jamboree, Irvine, CA 92612
Beneficiary Address: 39 Tesla, Irvine, CA 92618
Amount: US$10,000,000.00

4. No instructions, authorizations and directions have been given hereunder with respect to any other continuing obligations or duties of the Escrow Agent other than as expressly set forth herein.

*[Signature Page Follows]*

US-DOCS\83351417.10

IN WITNESS WHEREOF, the undersigned have executed these Joint Written Instructions on the date first written above.


VIZIO, INC.


By:      _____

Name:   _____

Title:    _____


LEECO V LTD.


By:      _____

Name:   _____

Title:    _____

LEECO0002054

LEECO0002055

# EXHIBIT M

Message
_____

**From:**   Charles Hsieh [/O=LETV/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CHARLES HSIEH4DA]
**Sent:**   6/22/2017 8:48:17 AM
**To:**   Jerry C. Huang [Jerry.Huang@vizio.com]; Kurtis Binder [Kurtis.Binder@vizio.com]
**CC:**   William Wang [William.Wang@vizio.com]; Ben Wong [Ben.Wong@vizio.com]; Matt Mcrae
[Matt.McRae@vizio.com]; Robert Waxman [rwaxman@ECJLAW.COM]; SCOTT.SHEAN@LW.com; David.Lee@lw.com;
Semenova, Luda [luda.semenova@citi.com]; Gao, Z. Julie [Julie.Gao@skadden.com]; Mies, Michael J
[Michael.Mies@skadden.com]; Gisser, Michael V [Michael.Gisser@skadden.com]; Richard [/o=LETV/ou=Exchange
Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Richardeb6]; Amu(阿不力克木.阿不力米提)
[/o=LETV/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=ablikim.ablimit1c1]; Jun LIANG(
梁军) [/o=LETV/ou=LETV/cn=Recipients/cn=liangjun]
**Subject:**   Response to Demand
**Attachments:**   LeEco Response Letter.pdf

Messiers Huang and Binder,

Please see the attached response to your letter dated June 9.  As described in the letter and in my conversation with
Ben, we continue to wish to negotiate the JV agreement as contemplated in the framework agreement both parties
executed.  We believe this is a win-win relationship with both parties being the beneficiaries.

Kind Regards,
Charles

**Charles Hsieh**
Director of Corporate Finance and Development



2236 Barrington Ave
Los Angeles, CA 90064
www.leeco.com
(m): 213.369.6499
WeChat: charleschsieh

 LeEco

June 22, 2017

VIZIO, Inc.
39 Tesla
Irvine, California 92618
Attention: Kurtis J. Binder and Jerry C. Huang

Re:   Demand for Immediate Payment

Dear Messrs. Binder and Huang:

I write in response to Mr. Huang's letter addressed to LeEco Global Group Ltd. ("LeEco
Global") dated June 9, 2017 (the "June 9 Letter"). Capitalized terms used but not otherwise
defined herein shall have the respective meanings ascribed to them in the Agreement and Plan of
Merger (the "Merger Agreement"), by and among LeEco V Ltd. ("LeEco"), Le V Merger Sub
Inc. ("Merger Sub"), VIZIO, Inc. ("VIZIO") and Shareholder Representative Services LLC,
dated as of July 6, 2016 and/or the Framework, Termination and Mutual General Release
Agreement (the "Framework Agreement"), by and among LeEco, Merger Sub and VIZIO, dated
as of April 5, 2017.

LeEco Global unequivocally denies (i) that VIZIO validly terminated the Merger
Agreement with the letter of March 30, 2017 from Mr. Binder, (ii) any suggestion that the
Merger Agreement was terminated other than pursuant to the Framework Agreement, (iii) all
claims of breach of the Merger Agreement and the Framework Agreement made in the June 9
Letter, and (iv) VIZIO's allegations of fraud in connection with LeEco Global's entry into the
Framework Agreement and purported lack of good faith or prevention of performance thereafter.
LeEco Global also disagrees that failure to deliver the joint written instructions as demanded in
the June 9 Letter is a breach by LeEco Global of the Merger Agreement or the Framework
Agreement or that any Buyer Termination Fee is now due.[1] While LeEco is disappointed by the
inaccuracies in VIZIO's June 9 Letter, we see little benefit to arguing about history and the
record, which speak for themselves. Despite our differences, LeEco Global remains committed
to working with VIZIO toward our companies' mutual benefit.

In that regard, as I communicated to Ben Wong at VIZIO on June 13, LeEco Global still
wishes to enter into a joint venture agreement as contemplated by the Framework Agreement and
is ready, willing and able to negotiate such agreement with VIZIO. LeEco Global looks forward

---

[1] For the reasons set forth herein, LeEco also categorically denies the assertions in the June 13, 2017 letter from
Robert M. Waxman to the Escrow Agent and Shareholder Representative Services, and opposes the release of the
escrowed amounts demanded therein.



3553 North 1st St
San Jose, CA 95134

LEECO0000306

to a mutually beneficial partnership with VIZIO and would like to begin discussions as soon as possible with me as the point of contact.

LeEco Global hopes that VIZIO will join LeEco Global in negotiating in good faith and executing the one or more agreements necessary to document the China JV and other commercial arrangements set forth in <u>Sections 2</u> and <u>3</u> of the Framework Agreement. If you have any questions, please contact me at <u>charles.hsieh@le.com</u> or (213)369-6499 to discuss.

Yours sincerely,

Charles Hsieh
of LEECO GLOBAL GROUP LTD.

Cc:   William Wang and Ben Wong, VIZIO, Inc.
Board of Directors of VIZIO, Inc.
Managing Director, Shareholder Representative Services LLC
R. Scott Shean, Latham & Watkins LLP
David C. Lee, Latham & Watkins LLP
Robert M. Waxman, Esq.
Luda Semenova, Citibank, N.A.
Julie Z. Gao, Skadden, Arps, Slate, Meagher & Flom LLP
Michael J. Mies, Skadden, Arps, Slate, Meagher & Flom LLP



3553 North 1st St
San Jose, CA 95134

LEECO0000307